# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| REMINGTON OUTDOOR COMPANY, INC., *et al.*,[1] | Case No. 20-81688-11 |
| Debtors. | Joint Administration Requested |

## DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF PRIME CLERK LLC AS CLAIMS, NOTICING AND SOLICITATION AGENT EFFECTIVE AS OF THE PETITION DATE

Remington Outdoor Company, Inc. and its affiliated debtors, as debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") hereby file this application (the "**Application**") for entry of an order, pursuant to section 156(c) of title 28 of the United States Code, sections 105(a) and 327(a) of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "**Bankruptcy Code**"), Rules 2002(f), 2014(a), 2016, and 6003 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2016-1 of the Local Rules of the United States Bankruptcy Court Northern District of Alabama (the "**Local Bankruptcy Rules**"), authorizing the employment and retention of Prime Clerk LLC ("**Prime Clerk**") as claims, noticing and solicitation agent (the "**Claims, Noticing and Solicitation Agent**") in the Chapter 11 Cases effective as of the Petition Date (as defined below). In support of the Application, the Debtors submit the *Declaration of Benjamin J. Steele in Support*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405). The Debtors' corporate headquarters are located at 100 Electronics Boulevard SW, Huntsville, AL 35824.

43701636 v1

*of Debtors' Application for Entry of an Order Authorizing the Employment and Retention of Prime Clerk LLC as Claims, Noticing and Solicitation Agent Effective as of the Petition Date* (the "**Steele Declaration**"), attached hereto as **Exhibit A**, and respectfully represent as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. The Debtors confirm their consent to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409 and Local Bankruptcy Rule 1073-1.

3. The statutory and procedural predicates for the relief requested herein are 28 U.S.C. § 156(c), Bankruptcy Code sections 105(a), 327, 328(a), and 1107, Bankruptcy Rules 2002(f), 2014(a), 2016, and 6003, and Local Bankruptcy Rule 2016-1.

## BACKGROUND

4. On the date hereof (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner and no

committee has been appointed or designated in these Chapter 11 Cases. The Debtors' request for joint administration of these Chapter 11 Cases for procedural purposes only is currently pending.

5. The Debtors are one of America's oldest and largest manufacturers of firearms, ammunition and related products for commercial, military, and law enforcement customers throughout the world. The Debtors employ approximately 2,100 full-time employees and operate seven manufacturing facilities located across the United States. The Debtors' corporate headquarters is located in Huntsville, Alabama.

6. Additional information regarding the Debtors' businesses, assets, capital structure, and the circumstances leading to the filing of these Chapter 11 Cases is set forth in the *Declaration of Ken D'Arcy in Support of Chapter 11 Petitions and First Day Pleadings of Remington Outdoor Company, Inc. and its Affiliated Debtors and Debtors in Possession* (the "**First Day Declaration**"), filed contemporaneously herewith and incorporated by reference herein.

## RELIEF REQUESTED

7. By this Application, the Debtors request entry of an order, substantially in the form attached hereto as **Exhibit B** (the "**Proposed Order**"), to employ and retain Prime Clerk as the Claims, Noticing and Solicitation Agent for the Debtors and their Chapter 11 Cases to, among other things: (a) serve as the noticing agent to mail notices to the estates' creditors, equity security holders, and parties in interest; (b) provide computerized claims, objection, solicitation, and balloting database services; and (c) provide expertise, consultation, and assistance in claim and ballot processing and other administrative services with respect to the Debtors' Chapter 11 Cases, in accordance with the terms and conditions of that certain engagement agreement executed on May 12, 2020, including any amendments and schedules thereto and attached as **Exhibit 1** to the Proposed Order (the "**Engagement Agreement**"). The Debtors' selection of Prime Clerk to act as the Claims, Noticing and Solicitation Agent is appropriate under the circumstances and in the

best interests of the Debtors' estates. The Debtors submit that, based on all engagement proposals obtained and reviewed, Prime Clerk's rates are competitive and reasonable given Prime Clerk's quality of services and expertise. The terms of Prime Clerk's retention are set forth in the Engagement Agreement.

8. Although the Debtors have not yet filed their schedules of assets and liabilities, they anticipate that there will be thousands of parties to be noticed. In view of the number of anticipated notice parties and the complexity of the Debtors' businesses, the Debtors submit that the appointment of a claims, noticing and solicitation agent (a) will provide the most effective and efficient means of, and relieve the Debtors and/or the Office of the Clerk of the Bankruptcy Court (the "**Clerk**") of, the administrative burden of noticing, administering claims, and soliciting and tabulating votes and (b) is in the best interests of both the Debtors' estates and their creditors.

## BASIS FOR RELIEF REQUESTED

### A. Prime Clerk's Qualifications

9. Prime Clerk is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases. Prime Clerk's professionals have experience in noticing, claims administration, solicitation, balloting and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. Prime Clerk's professionals have acted as debtor's counsel or official claims, noticing and solicitation agent in many large bankruptcy cases in various districts nationwide. Prime Clerk's active and former cases include, among others: *J.C. Penney Co., Inc.*, No. 20-20182 (DRJ) (Bankr. S.D. Tex.); *Sheridan Holding Co. I, LLC*, No. 20-31884 (DRJ) (Bankr. S.D. Tex.); *McDermott Int'l, Inc.*, No. 20-30336 (DRJ) (Bankr. S.D. Tex.); *Kingfisher Midstream, LLC*, No. 19-35133 (MI) (Bankr. S.D. Tex.); *EP Energy Corp.*, No. 19-35654 (MI) (Bankr. S.D. Tex.); *Sheridan Holding Co. II, LLC*, No. 19-35198 (MI) (Bankr. S.D. Tex.); *Alta Mesa Res.,*

Case 20-81688-CRJ11    Doc 20    Filed 07/28/20    Entered 07/28/20 00:56:25    Desc Main
Document    Page 4 of 40

*Inc.*, No. 19-35133 (MI) (Bankr. S.D. Tex.); *Sanchez Energy Corp.*, No. 19-34508 (MI) (Bankr. S.D. Tex.); *Weatherford Int'l plc*, No. 19-33694 (DRJ) (Bankr. S.D. Tex.); *Monitronics Int'l, Inc.*, No. 19-33650 (DRJ) (Bankr. S.D. Tex.); *Deluxe Ent. Servs. Group Inc.*, No. 19-23774 (RDD) (Bankr. S.D.N.Y.); *Purdue Pharma L.P.*, No. 19-23649 (RDD) (Bankr. S.D.N.Y.); *Paddock Enters., LLC*, No. 20-10028 (LSS) (Bankr. D. Del); *High Ridge Brands Co.*, No. 19-12689 (BLS) (Bankr. D. Del); *PHI, Inc*., No. 19-30923 (HDH) (Bankr. N.D. Tex.); *Payless Holdings LLC*, No. 19-40883 (Bankr. E.D. Mo.); and *PG&E Corp.*, No. 19-30088 (DM) (Bankr. N.D. Cal.).

### B.    Services to be Provided

10.    This Application pertains to the work to be performed by Prime Clerk under Bankruptcy Code section 327(a) and under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c).  Under the Engagement Agreement, Prime Clerk will perform the following services in its role as Claims, Noticing and Solicitation Agent, at the request of the Debtors or the Clerk:

(a)    Assist the Debtors with the preparation and distribution of all required notices and documents in these Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including (i) notice of the commencement of these Chapter 11 Cases and the initial meeting of creditors under Bankruptcy Code section 341(a), (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan and (vii) all other notices, orders, pleadings, publications and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of these Chapter 11 Cases;

(b)    Maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "**Schedules**"), listing the Debtors' known creditors and the amounts owed thereto;

(c)    Maintain (i) a list of all potential creditors, equity holders and other parties-in-interest and (ii) a "core" mailing list consisting of all parties described in

Bankruptcy Rule 2002(i), (j) and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010, and update and make said lists available upon request by a party-in-interest or the Clerk;

(d) Furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e) Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(f) For *all* notices, motions, orders or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service within seven business days of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service and (iv) the date served;

(g) Process all proofs of claim received, including those received by the Clerk, check said processing for accuracy and maintain the original proofs of claim in a secure area;

(h) Provide an electronic interface for filing proofs of claim;

(i) Maintain the official claims register for each Debtor (collectively, the "**Claims Registers**") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (*e.g.,* secured, unsecured, priority, etc.), (vi) the applicable Debtor and (vii) any disposition of the claim;

(j) Provide public access to the Claims Registers, including complete proofs of claim with attachments, if any, without charge;

(k) Implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

(l) Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

43701636 v1

6

(m)     Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Prime Clerk, not less than weekly;

(n)     Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

(o)     Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

(p)     Identify and correct any incomplete or incorrect addresses in any mailing or service lists;

(q)     Assist in the dissemination of information to the public and respond to requests for administrative information regarding these Chapter 11 Cases as directed by the Debtors or the Court, including through the use of a case website and/or call center;

(r)     Monitor the Court's docket in these Chapter 11 Cases and, when filings are made in error or containing errors, alert the filing party of such error and work with them to correct any such error;

(s)     Comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders, and other requirements;

(t)     If these Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk's office within three days of notice to Prime Clerk of entry of the order converting the cases;

(u)     Thirty days prior to the close of these Chapter 11 Cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing Prime Clerk as Claims, Noticing and Solicitation Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of these Chapter 11 Cases;

(v)     Within seven days of notice to Prime Clerk of entry of an order closing these Chapter 11 Cases, provide to the Court the final version of the Claims Registers as of the date immediately before the close of the Chapter 11 Cases;

(w)     At the close of these Chapter 11 Cases, (i) box and transport all original documents, in proper format, as provided by the Clerk's office, to (A) the Philadelphia Federal Records Center, 14700 Townsend Road, Philadelphia, PA 19154-1096 or (B) any other location requested by the Clerk's office;

and (ii) docket a completed SF-135 Form indicating the accession and location numbers of the archived claims;

(x)    Assist the Debtors with, among other things, plan solicitation services including: (i) balloting; (ii) distribution of applicable solicitation materials; (iii) tabulation and calculation of votes; (iv) determining with respect to each ballot cast, its timeliness and its compliance with the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules, and procedures ordered by this Court; (v) preparing an official ballot certification and testifying, if necessary, in support of the ballot tabulation results; and (vi) in connection with the foregoing services, process requests for documents from parties in interest, including, if applicable, brokerage firms, bank back-offices and institutional holders;

(y)    If requested, assist with the preparation of the Debtors' Schedules and gather data in conjunction therewith;

(z)    Provide a confidential data room, if requested;

(aa)   Coordinate publication of certain notices in periodicals and other media;

(bb)   Manage and coordinate any distributions pursuant to a chapter 11 plan; and

(cc)   Provide such other processing, solicitation, balloting, and other administrative services described in the Engagement Agreement, that may be requested from time to time by the Debtors, the Court, or the Clerk.

11.    The Claims Registers shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by Prime Clerk.

**C.    Professional Compensation**

12.    The Debtors respectfully request that the undisputed fees and expenses incurred by Prime Clerk in the performance of the above services be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business pursuant to the Engagement Agreement without further application to or order of the Court.

13.    Prime Clerk agrees to (a) maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and (b) serve monthly invoices on the Debtors, the Bankruptcy Administrator for the Northern District of Alabama (the "**Bankruptcy**

**Administrator**"), counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors, and any party-in-interest who specifically requests service of the monthly invoices. If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute. If resolution is not achieved, the parties may seek resolution of the matter from the Court.

14. Prior to the Petition Date, the Debtors provided Prime Clerk an advance in the amount of $50,000. Prime Clerk seeks to first apply the advance to all prepetition invoices, and thereafter, to have the advance replenished to the original advance amount, and thereafter, to hold the advance under the Engagement Agreement during these Chapter 11 Cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

15. Additionally, under the terms of the Engagement Agreement, the Debtors have agreed to indemnify, defend and hold harmless Prime Clerk and its members, officers, employees, representatives, affiliates, consultants, subcontractors and agents (collectively, the "**Indemnified Parties**") under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from Prime Clerk's gross negligence or willful misconduct or as otherwise provided in the Engagement Agreement or Proposed Order (the "**Indemnification Provisions**"). The Debtors believe that the Indemnification Provisions are customary, reasonable, and necessary to retain the services of a claims, noticing and solicitation agent in these Chapter 11 Cases.

### D. Disinterestedness

16. Prime Clerk has reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors, and, to the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Steele Declaration,

Case 20-81688-CRJ11    Doc 20    Filed 07/28/20    Entered 07/28/20 00:56:25    Desc Main
Document      Page 9 of 40

Prime Clerk has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

17.     To the best of the Debtors' knowledge, Prime Clerk is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b), as Prime Clerk represents in the Steele Declaration, among other things, that:

(a)     Prime Clerk, its members, and employees are not and were not, within two years before the date of the filing of these Chapter 11 Cases, creditors, equity security holders, insiders, or employees of the Debtors;

(b)     Prime Clerk will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims, Noticing and Solicitation Agent in these Chapter 11 Cases;

(c)     By accepting employment in these Chapter 11 Cases, Prime Clerk waives any rights to receive compensation from the United States government in connection with these Chapter 11 Cases;

(d)     In its capacity as the Claims, Noticing and Solicitation Agent in these Chapter 11 Cases, Prime Clerk will not be an agent of the United States and will not act on behalf of the United States;

(e)     Prime Clerk will not employ any past or present employees of the Debtors in connection with its work as the Claims, Noticing and Solicitation Agent in these Chapter 11 Cases;

(f)     Prime Clerk is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

(g)     In its capacity as Claims, Noticing and Solicitation Agent in these Chapter 11 Cases, Prime Clerk will not intentionally misrepresent any fact to any person;

(h)     Prime Clerk shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(i)     Prime Clerk will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)     None of the services provided by Prime Clerk as Claims, Noticing and Solicitation Agent in these Chapter 11 Cases shall be at the expense of the Clerk's office.

Prime Clerk will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

18.     To the extent that there is any inconsistency between this Application, the Proposed Order and the Engagement Agreement, the Proposed Order shall govern.

## NOTICE

19.     Notice of the hearing on the relief requested in this Application will be provided by the Debtors in accordance and compliance with Bankruptcy Rules 4001 and 9014, as well as applicable Local Bankruptcy Rules, and is sufficient under the circumstances.  The Debtors will provide notice of this Application to the following parties-in-interest: (i) the Bankruptcy Administrator; (ii) the Debtors' consolidated list of creditors holding the forty largest unsecured claims; (iii) counsel to Whitebox Advisors LLC, as Priority Term Loan Lender; (iv) counsel to Cantor Fitzgerald Securities, as Priority Term Loan Agent under the Debtors' prepetition Priority Term Loan Credit Agreement; (v) counsel to Ankura Trust Company, LLC, as FILO Agent under the Debtors' prepetition FILO Term Loan Agreement, and as Exit Term Loan Agent under the Debtors' prepetition Exit Term Loan Agreement; (vi) counsel to Franklin Advisors, Inc., as FILO Lender; (vii) the United States Internal Revenue Service; (viii) counsel to the United Mine Workers of America; and (ix) all parties entitled to notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary under the circumstances.

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form attached hereto as **Exhibit B**, authorizing the employment and retention of Prime Clerk to act as

Claims, Noticing and Solicitation Agent for the Debtors as requested in this Application, and

granting such other relief as may be just and proper under the circumstances.

Dated: July 28, 2020

/s/ Derek F. Meek
**BURR & FORMAN LLP**
Derek F. Meek
Hanna Lahr
420 20th Street North, Suite 3400
Birmingham, AL 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
Email: dmeek@burr.com
         hlahr@burr.com

- and -

**O'MELVENY & MYERS LLP**
Stephen H. Warren (*pro hac vice* admission pending)
Karen Rinehart (*pro hac vice* admission pending)
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
Email: swarren@omm.com
         krinehart@omm.com

*Proposed Attorneys for the Debtors and Debtors in Possession*

# **EXHIBIT A**

## **Steele Declaration**

43701636 v1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| REMINGTON OUTDOOR COMPANY, INC., *et al.*,[2] | Case No. 20-81688-11 |
| Debtors. | Joint Administration Requested |

**DECLARATION OF BENJAMIN J. STEELE IN SUPPORT OF DEBTORS'
APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE
EMPLOYMENT AND RETENTION OF PRIME CLERK LLC AS CLAIMS,
NOTICING AND SOLICITATION AGENT EFFECTIVE AS OF THE PETITION DATE**

I, Benjamin J. Steele, make this declaration pursuant to 28 U.S.C. § 1746 and state as follows:

1.    I am a Vice President of Prime Clerk LLC ("**Prime Clerk**"), a chapter 11 administrative services firm whose headquarters are located at One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, New York 10165.  I am duly authorized to make this declaration (the "**Declaration**") on behalf of Prime Clerk and submit this Declaration in support of the above-captioned debtors' (collectively, the "**Debtors**") *Application for Entry of an Order Authorizing the Employment and Retention of Prime Clerk LLC as Claims, Noticing and Solicitation Agent Effective as of the Petition Date,* which was filed contemporaneously herewith (the "**Application**").[3]

---

[2]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405).  The Debtors' corporate headquarters are located at 100 Electronics Boulevard SW, Huntsville, AL 35824.

[3]  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

43701636 v1

2.    Except as otherwise noted in this Declaration, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

3.    Prime Clerk is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases. Prime Clerk's professionals have experience in noticing, claims administration, solicitation, balloting and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. Prime Clerk's professionals have acted as debtor's counsel or official claims, noticing and solicitation agent in many large bankruptcy cases in various districts nationwide. Prime Clerk's active and former cases include, among others: *J.C. Penney Co., Inc.*, No. 20-20182 (DRJ) (Bankr. S.D. Tex.); *Sheridan Holding Co. I, LLC*, No. 20-31884 (DRJ) (Bankr. S.D. Tex.); *McDermott Int'l, Inc.*, No. 20-30336 (DRJ) (Bankr. S.D. Tex.); *Kingfisher Midstream, LLC*, No. 19-35133 (MI) (Bankr. S.D. Tex.); *EP Energy Corp.*, No. 19-35654 (MI) (Bankr. S.D. Tex.); *Sheridan Holding Co. II, LLC*, No. 19-35198 (MI) (Bankr. S.D. Tex.); *Alta Mesa Res., Inc.*, No. 19-35133 (MI) (Bankr. S.D. Tex.); *Sanchez Energy Corp.*, No. 19-34508 (MI) (Bankr. S.D. Tex.); *Weatherford Int'l plc*, No. 19-33694 (DRJ) (Bankr. S.D. Tex.); *Monitronics Int'l, Inc.*, No. 19-33650 (DRJ) (Bankr. S.D. Tex.); *Deluxe Ent. Servs. Group Inc.*, No. 19-23774 (RDD) (Bankr. S.D.N.Y.); *Purdue Pharma L.P.*, No. 19-23649 (RDD) (Bankr. S.D.N.Y.); *Paddock Enters., LLC*, No. 20-10028 (LSS) (Bankr. D. Del); *High Ridge Brands Co.*, No. 19-12689 (BLS) (Bankr. D. Del); *PHI, Inc.*, No. 19-30923 (HDH) (Bankr. N.D. Tex.); *Payless Holdings LLC*, No. 19-40883 (Bankr. E.D. Mo.); and *PG&E Corp.*, No. 19-30088 (DM) (Bankr. N.D. Cal.).

4.    As agent and custodian of Court records pursuant to 28 U.S.C. § 156(c), Prime Clerk will perform, at the request of the Clerk, the services specified in the Application and the

Case 20-81688-CRJ11    Doc 20    Filed 07/28/20    Entered 07/28/20 00:56:25    Desc Main
Document    Page 15 of 40

Engagement Agreement, and, at the Debtors' request, any related administrative, technical and support services as specified in the Application and the Engagement Agreement. In performing such services, Prime Clerk will charge the Debtors the rates set forth in the Engagement Agreement, which is attached as Exhibit 1 to the Proposed Order.

5. Prime Clerk represents, among other things, the following:

(a) Prime Clerk, its members and employees are not and were not, within two years before the date of filing of these Chapter 11 Cases, creditors, equity security holders, insiders, or employees of the Debtors;

(b) Prime Clerk will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Chairs and Noticing Agent in these Chapter 11 Cases;

(c) By accepting employment in these Chapter 11 Cases, Prime Clerk waives any rights to receive compensation from the United States government in connection with these Chapter 11 Cases;

(d) In its capacity as the Claims, Noticing and Solicitation Agent in these Chapter 11 Cases, Prime Clerk will not be an agent of the United States and will not act on behalf of the United States;

(e) Prime Clerk will not employ any past or present employees of the Debtors in connection with its work as the Claims, Noticing and Solicitation Agent in these Chapter 11 Cases;

(f) Prime Clerk is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

(g) In its capacity as Claims, Noticing and Solicitation Agent in these Chapter 11 Cases, Prime Clerk will not intentionally misrepresent any fact to any person;

(h) Prime Clerk shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(i) Prime Clerk will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

Case 20-81688-CRJ11 Doc 20 Filed 07/28/20 Entered 07/28/20 00:56:25 Desc Main
Document Page 16 of 40

   (j) None of the services provided by Prime Clerk as Claims, Noticing and Solicitation Agent in these Chapter 11 Cases shall be at the expense of the Clerk's office.

6. In accordance with section 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014, I caused to be submitted for review by our conflicts system the names of all known potential parties-in-interest (the "**Potential Parties in Interest**") in these Chapter 11 Cases.  The list of Potential Parties in Interest was provided by the Debtors and included, among other parties, the Debtors, non-Debtor affiliates, current and former directors and officers of the Debtors, significant stockholders, secured creditors, lenders, the Debtors' 40 largest unsecured creditors on a consolidated basis and other parties.  The results of the conflict check were compiled and reviewed by Prime Clerk professionals under my supervision.  At this time, and as set forth in further detail herein, Prime Clerk is not aware of any connection that would present a disqualifying conflict of interest. Should Prime Clerk discover any new relevant facts or connections bearing on the matters described herein during the period of its retention, Prime Clerk will use reasonable efforts to file promptly a supplemental declaration.

7. To the best of my knowledge, and based solely upon information provided to me by the Debtors, and except as provided herein, neither Prime Clerk, nor any of its professionals, has any materially adverse connection to the Debtors, their creditors or other relevant parties. Prime Clerk may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which Prime Clerk serves or has served in a neutral capacity as claims, noticing and solicitation agent and/or administrative advisor for another chapter 11 debtor.

8. Certain of Prime Clerk's professionals were partners of or formerly employed by firms that are providing or may provide professional services to parties in interest in these cases. Such firms include O'Melveny & Myers LLP ("**O'Melveny**"); Kirkland & Ellis LLP; Weil, Gotshal & Manges LLP; Mayer Brown LLP; Fried, Frank, Harris, Shriver & Jacobson LLP;

Bracewell LLP; Proskauer Rose LLP; Curtis, Mallet-Prevost, Colt & Mosle LLP; Baker & Hostetler LLP; Togut, Segal &Segal LLP; Gibson, Dunn & Crutcher LLP; Willkie Farr & Gallagher, LLP; Centerview Partners LLC; KPMG LLP; PricewaterhouseCoopers LLP; Epiq Bankruptcy Solutions, LLC; Donlin, Recano & Company, Inc. and Kurtzman Carson Consultants LLC. Except as may be disclosed herein, these professionals did not work on any matters involving the Debtors while employed by their previous firms. Moreover, these professionals were not employed by their previous firms when these Chapter 11 Cases were filed.

9.     Prime Clerk hereby discloses the following connections, each of which Prime Clerk believes do not present an interest adverse to the Debtors or preclude Prime Clerk from meeting the disinterestedness standard under the Bankruptcy Code and is disclosed solely out of an abundance of caution:

- Howard A. Blaustein, Senior Managing Director of Prime Clerk, was formerly an attorney with O'Melveny, counsel to the Debtors in these chapter 11 cases. Mr. Blaustein left O'Melveny in 2003. Mr. Blaustein did not work on any matters involving the Debtors during his time at O'Melveny.

- A Consultant at Prime Clerk has a personal relationship with an Associate at Akin Gump Strauss Hauer & Feld LLP, counsel to the Special Committee of the Board of Directors of Debtor Remington Outdoor Company, Inc.

10.     Prime Clerk has and will continue to represent clients in matters unrelated to these Chapter 11 Cases. In addition, Prime Clerk and its personnel have and will continue to have relationships personally or in the ordinary course of its business with certain vendors, professionals, financial institutions, and other parties in interest that may be involved in the Debtors' Chapter 11 Cases. Prime Clerk may also provide professional services to entities or persons that may be creditors or parties in interest in these Chapter 11 Cases, which services do not directly relate to, or have any direct connection with, these Chapter 11 Cases or the Debtors.

11.     Prime Clerk and its personnel in their individual capacities regularly utilize the services of law firms, investment banking and advisory firms, accounting firms and financial advisors.  Such firms engaged by Prime Clerk or its personnel may appear in Chapter 11 Cases representing the Debtors or parties in interest.  All engagements where such firms represent Prime Clerk or its personnel in their individual capacities are unrelated to these Chapter 11 Cases.

12.     Prime Clerk is an indirect subsidiary of Duff & Phelps LLP ("**D&P**").  D&P is the global advisor that protects, restores, and maximizes value for clients.  Within the D&P corporate structure, Prime Clerk operates independently from D&P.  As such, any relationships that D&P and its affiliates maintain do not create an interest of Prime Clerk that is materially adverse to the Debtors' estates or any class of creditors or security holders.  D&P is not currently identified on the Potential Parties in Interest list, but Prime Clerk makes this disclosure out of an abundance of caution.

13.     As part of its conflicts check process, Prime Clerk submitted for review by each of its partners and employees the list of Potential Parties in Interest provided by the Debtors to determine whether any partner or employee holds an adverse interest to any of the Debtors and/or is a "disinterested person," as such term is defined in the Bankruptcy Code.  In addition, the partners and employees of Prime Clerk were asked to review their investment holdings, to the extent possible, to determine whether they have any direct or indirect ownership of the Debtors' securities.  Upon information and belief, and upon such reasonable inquiry by Prime Clerk and the results thereof, Prime Clerk is not aware that any of its partners or employees directly or indirectly own any debt or equity securities of a company that is a Debtor or of any of its affiliates.  Moreover, Prime Clerk has a policy prohibiting its partners and employees from using confidential information that may come to their attention in the course of their work.  In this regard, subject to

Case 20-81688-CRJ11    Doc 20    Filed 07/28/20    Entered 07/28/20 00:56:25    Desc Main
Document      Page 19 of 40

non-discretionary Investment Funds (as defined below), all Prime Clerk partners and employees are barred from trading in securities with respect to matters in which Prime Clerk is retained.

14. As a general matter, in the infrequent case when a Prime Clerk partner or employee may, directly or indirectly, own a debt or equity security of a company which may become or becomes a debtor or a debtor affiliate, such ownership would be substantially less than one percent of any such debtor or debtor affiliate. Additionally, from time to time, Prime Clerk partners or employees may personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds and other types of investment funds (the "**Investment Funds**"), through which such individuals may indirectly acquire a debt or equity security of many companies, one of which may be one of the Debtors or their affiliates. Any partner or employee who has made any such investment does not manage or otherwise control such Investment Fund. The Investment Funds are managed by third parties, and Prime Clerk partners or employees that may invest in the particular Investment Fund have no influence, discretion, or control over the Investment Fund's decision to buy, sell or vote any particular debt or equity securities comprising the particular Investment Fund and in certain instances, partners or employees may not be aware of the particular debt or equity securities comprising the particular Investment Fund.

15. Based on the foregoing, I believe that Prime Clerk is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged. Moreover, to the best of my knowledge and belief, neither Prime Clerk nor any of its partners or employees hold or represent any interest materially adverse to the Debtors' estates.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Case 20-81688-CRJ11    Doc 20    Filed 07/28/20    Entered 07/28/20 00:56:25    Desc Main
Document    Page 20 of 40

Executed on July 27, 2020

/s/ *Benjamin J. Steele*
Benjamin J. Steele
Vice President
Prime Clerk LLC
One Grand Central Place
60 East 42nd Street, Suite 1440
New York, New York 10165

**EXHIBIT B**

**Proposed Order**

43701636 v1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| REMINGTON OUTDOOR COMPANY, INC., *et al.*,[1] | Case No. 20-81688-11 |
| Debtors. | Joint Administration Requested |

## ORDER AUTHORIZING
## THE EMPLOYMENT AND RETENTION OF PRIME CLERK LLC AS CLAIMS,
## NOTICING AND SOLICITATION AGENT EFFECTIVE AS OF THE PETITION DATE

Upon the application (the "**Application**")[2] of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") for entry of an order (this "**Order**") pursuant to 28 U.S.C. § 156(c) and sections 105(a) and 327(a) of the Bankruptcy Code (a) authorizing the Debtors to employ and retain Prime Clerk LLC ("**Prime Clerk**") as claims, noticing and solicitation agent for the Debtors ("**Claims, Noticing and Solicitation Agent**") effective as of [July 27, 2020] (the "**Petition Date**"), in accordance with the terms and conditions of that certain engagement agreement executed on May 12, 2020, including any amendments and schedules thereto (the "**Engagement Agreement**") attached hereto as **Exhibit 1**, and (b) granting related relief, all as more fully set forth in the Application; and upon the Steele Declaration submitted in support of the Application; and upon the First Day Declaration; and it appearing that (i) the Court has jurisdiction over these Chapter 11 Cases and the Application under 28 U.S.C. §§ 1334(b) and 157,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405). The Debtors' corporate headquarters are located at 100 Electronics Boulevard SW, Huntsville, AL 35824.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

43701636 v1

and the *Amended General Order of Reference* from the United States District Court for the Northern District of Alabama dated as of July 17, 1984, (ii) venue of these Chapter 11 Cases and the Application in this Court is proper under 28 U.S.C. §§ 1408 and 1409 and Local Bankruptcy Rule 1073-1, (iii) the Application is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Court may enter a final order consistent with Article III of the United States Constitution, and (iv) notice of the Application was adequate and proper under the circumstances, and no other or further notice need be given; and this Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Application and opportunity for a hearing on the Application were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "**Hearing**"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED, ADJUDGED, AND DECREED THAT**:

1.       The Application is GRANTED as set forth herein.

2.       The Debtors are authorized to employ and retain Prime Clerk as Claims, Noticing and Solicitation Agent effective as of the Petition Date under the terms set forth in this Order.

3.       Prime Clerk is authorized and directed to perform noticing services and to receive, maintain, record and otherwise administer the proofs of claim filed in these Chapter 11 Cases, and all related tasks, all as described in the Application, the Engagement Agreement, and this Order.

Case 20-81688-CRJ11    Doc 20    Filed 07/28/20    Entered 07/28/20 00:56:25    Desc Main
Document      Page 24 of 40

The Clerk shall provide Prime Clerk with ECF credentials that allow Prime Clerk to receive ECF notifications and file certificates of service.

4.  Prime Clerk shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in these Chapter 11 Cases and is authorized and directed to maintain official claims registers for each of the Debtors, to provide public access to every proof of claim unless otherwise ordered by the Court and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

5.  Prime Clerk is authorized and directed to provide an electronic interface for filing proofs of claim and to obtain a post office box or address for the receipt of proofs of claim. Prime Clerk shall provide public access to the claims register, including complete proofs of claim with attachments, if any, without charge.

6.  Prime Clerk is authorized to take such other action to comply with all duties set forth in the Application.

7.  The Debtors are authorized to compensate Prime Clerk in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by Prime Clerk and the rates charged for each, and to reimburse Prime Clerk for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Prime Clerk to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

8.  Prime Clerk shall maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and shall serve monthly invoices on the Debtors, the Bankruptcy Administrator, counsel for the Debtors, counsel for any official committee monitoring

the expenses of the Debtors, and any party-in-interest who specifically requests service of the monthly invoices.

9. The parties shall meet and confer in an attempt to resolve any dispute that may arise relating to the Engagement Agreement or monthly invoices; *provided* that the parties may seek resolution of the matter from the Court if resolution is not achieved.

10. Without further order of the Court, pursuant to section 503(b)(l)(A) of the Bankruptcy Code, the fees and expenses of Prime Clerk under this Order shall be an administrative expense of the Debtors' estates.

11. Prime Clerk may apply its advance to all prepetition invoices, which advance shall be replenished to the original advance amount, and thereafter, Prime Clerk may hold its advance under the Engagement Agreement during the Chapter 11 Cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

12. The Debtors shall indemnify the Indemnified Parties (as defined in the Engagement Agreement) under the terms of the Engagement Agreement, as modified pursuant to this Order.

13. Prime Clerk shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Agreement for services other than the services provided under the Engagement Agreement, unless such services and the indemnification, contribution or reimbursement therefor are approved by the Court.

14. Notwithstanding anything to the contrary in the Engagement Agreement, the Debtors shall have no obligation to indemnify the Indemnified Parties, or provide contribution or reimbursement to Prime Clerk, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen solely from Prime Clerk's gross negligence, willful misconduct, or fraud; (ii) for a contractual dispute in which the Debtors allege the breach

Case 20-81688-CRJ11    Doc 20    Filed 07/28/20    Entered 07/28/20 00:56:25    Desc Main
Document    Page 26 of 40

of Prime Clerk's contractual obligations if this Court determines that indemnification, contribution, or reimbursement would not be permissible under applicable law; or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which Prime Clerk should not receive indemnity, contribution or reimbursement under the terms of the Engagement Agreement as modified by this Order.

15.     If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these Chapter 11 Cases (that order having become a final order no longer subject to appeal), or (ii) the entry of an order closing these Chapter 11 Cases, Prime Clerk believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Agreement (as modified by this Order), including the advancement of defense costs, Prime Clerk must file an application therefor in this Court, and the Debtors may not pay any such amounts to Prime Clerk before the entry of an order by this Court approving the payment. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Prime Clerk for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify the Indemnified Parties. All parties in interest shall retain the right to object to any demand by the Indemnified Parties for indemnification, contribution or reimbursement. If Prime Clerk seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Engagement Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Prime Clerk's own applications, both interim and final, and determined by this Court after notice and a hearing.

16.     In the event Prime Clerk is unable to provide the services set out in this order, Prime Clerk will immediately notify the Clerk and the Debtors' attorneys and, upon approval of the Court, cause to have all proofs of claim and computer information turned over to another claims, noticing and solicitation agent with the advice and consent of the Clerk and the Debtors' attorneys.

17.     After entry of an order terminating Prime Clerk's services, upon the closing of these cases, or for any other reason, Prime Clerk shall be responsible for archiving all proofs of claim with the Federal Archives Record Administration, if applicable, and shall be compensated by the Debtors in connection therewith.

18.     The Debtors and Prime Clerk are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

19.     Notwithstanding any term in the Engagement Agreement to the contrary, the Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

20.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, this Order shall be immediately effective and enforceable upon its entry.

21.     Prime Clerk shall not cease providing claims processing services during the Chapter 11 Cases for any reason, including nonpayment, without an order of the Court.

22.     In the event of any inconsistency between the Engagement Agreement, the Application, the Steele Declaration and this Order, this Order shall govern.

Dated: _____, 2020              _____
                                            UNITED STATES BANKRUPTCY JUDGE

## **EXHIBIT 1**

**Prime Clerk Engagement Agreement**

43701636 v1

**Prime Clerk LLC Engagement Agreement**

This Agreement is entered into as of May 12, 2020 between Prime Clerk LLC ("***Prime Clerk***") and Remington Outdoor Company, Inc. (together with its affiliates and subsidiaries, the "***Company***").[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.  **Services**

    (a) Prime Clerk agrees to provide the Company with consulting services regarding legal noticing, claims management and reconciliation, plan solicitation, balloting, disbursements, preparation of schedules of assets and liabilities and statements of financial affairs, communications, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement) and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations or court rules or orders (all such services collectively, the "***Services***").

    (b) The Company acknowledges and agrees that Prime Clerk will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "***Company Parties***") with respect to providing Services hereunder. The parties agree that Prime Clerk may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.

    (c) The Company agrees and understands that Prime Clerk shall not provide the Company or any other party with legal advice.

2.  **Rates, Expenses and Payment**

    (a) Prime Clerk will provide the Services on an as-needed basis and upon request or agreement of the Company, in each case in accordance with the rate structure attached hereto and incorporated by reference herein (the "***Rate Structure***"); provided, however that Prime Clerk will provide a discount of 15% off the attached hourly rates. The Company agrees to pay for reasonable out of pocket expenses incurred by Prime Clerk in connection with providing Services hereunder.

    (b) The Rate Structure sets forth individual unit pricing for each of the Services. The Company may request separate Services or all of the Services.

    (c) Prime Clerk will bill the Company no less frequently than monthly. All invoices shall be due and payable upon receipt. Where an expense or group of expenses to be incurred is expected to exceed $10,000 (e.g., publication notice), Prime Clerk may require advance or direct payment from the Company before the performance of Services hereunder. If any amount is unpaid as of 30 days after delivery of an invoice, the Company agrees to pay a late charge equal to 1.5% of the total amount unpaid every 30 days.

---

[1] The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.

(d) In case of a good faith dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Prime Clerk within 10 days of receipt of the invoice. The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof. Late charges shall not accrue on any amounts disputed in good faith.

(e) The Company shall pay any fees and expenses for Services relating to, arising out of or resulting from any error or omission made by the Company or the Company Parties.

(f) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Prime Clerk or paid by Prime Clerk to a taxing authority.

(g) Upon execution of this Agreement, the Company shall pay Prime Clerk an advance of $50,000. Prime Clerk may use such advance against unpaid fees and expenses hereunder. Prime Clerk may use the advance against all prepetition fees and expenses, which advance then shall be replenished immediately by the Company to the original advance amount; thereafter, Prime Clerk may hold such advance to apply against unpaid fees and expenses hereunder.

(h) Prime Clerk reserves the right to make reasonable increases to the Rate Structure on an annual basis effective on the first business day of each year. If such annual increases represent an increase greater than 10% from the previous year's levels, Prime Clerk shall provide 30 days' notice to the Company of such increases.

## 3. Retention in Bankruptcy Case

(a) If the Company commences a case pursuant to title 11 of the United States Code (the "***Bankruptcy Code***"), the Company promptly shall file applications with the Bankruptcy Court to retain Prime Clerk (i) as claims and noticing agent pursuant to 28 U.S.C. § 156(c) and (ii) as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for all Services that fall outside the scope of 28 U.S.C. § 156(c). The form and substance of such applications and any order approving them shall be reasonably acceptable to Prime Clerk.

(b) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Prime Clerk will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

## 4. Confidentiality

(a) The Company and Prime Clerk agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the party's possession or known to it, independently developed, lawfully obtained from a third party or required to be disclosed by law, then a party shall bear no responsibility for publicly disclosing such information.

(b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time to seek any remedy available under applicable law to prevent disclosure of the information.

## 5. Property Rights

Prime Clerk reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation and any other information or property (collectively, "**Property**") furnished by Prime Clerk for itself or for use by the Company hereunder. Fees and expenses paid by the Company do not vest in the Company any rights in such Property. Such Property is only being made available for the Company's use during and in connection with the Services provided by Prime Clerk hereunder.

## 6. Bank Accounts

At the request of the Company or the Company Parties, Prime Clerk shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction. To the extent that certain financial products are provided to the Company pursuant to Prime Clerk's agreement with financial institutions, Prime Clerk may receive compensation from such institutions for the services Prime Clerk provides pursuant to such agreement.

## 7. Term and Termination

(a) This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to the other party; or (ii) immediately upon written notice for Cause (as defined herein). "**Cause**" means (i) gross negligence or willful misconduct of Prime Clerk that causes material harm to the Company's restructuring under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Prime Clerk invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the advance held by Prime Clerk where Prime Clerk reasonably believes it will not be paid.

(b) If this Agreement is terminated after Prime Clerk is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Prime Clerk of its duties under such retention, which order shall be in form and substance reasonably acceptable to Prime Clerk.

(c) If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Prime Clerk hereunder.

(d) If this Agreement is terminated, Prime Clerk shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Prime Clerk shall provide the necessary staff, services and assistance required for such an orderly transfer. The Company agrees to pay for such Services pursuant to the Rate Structure.

## 8. No Representations or Warranties

Prime Clerk makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

9.  **Indemnification**

    (a) To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Prime Clerk and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (collectively, the "**Indemnified Parties**") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "**Losses**") resulting from, arising out of or related to Prime Clerk's performance hereunder. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

    (b) Prime Clerk and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the Services provided hereunder.

    (c) The Company's indemnification of Prime Clerk hereunder shall exclude Losses resulting from Prime Clerk's gross negligence or willful misconduct.

    (d) The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

10. **Limitations of Liability**

Except as expressly provided herein, Prime Clerk's liability to the Company for any Losses, unless due to Prime Clerk's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company for the portion of the particular work that gave rise to the alleged Loss. In no event shall Prime Clerk's liability to the Company for any Losses arising out of this Agreement exceed the total amount actually paid to Prime Clerk for Services provided hereunder. In no event shall Prime Clerk be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

11. **Company Data**

    (a) The Company is responsible for, and Prime Clerk does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Prime Clerk and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "**SOFAs and Schedules**"). Prime Clerk bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

    (b) The Company agrees, represents and warrants to Prime Clerk that before delivery of any information to Prime Clerk: (i) the Company has full authority to deliver such information to Prime Clerk; and (ii) Prime Clerk is authorized to use such information to perform Services hereunder.

    (c) Any data, storage media, programs or other materials furnished to Prime Clerk by the Company may be retained by Prime Clerk until the Services provided hereunder are paid in full. The Company shall remain liable for all fees and expenses incurred by Prime Clerk under this Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Prime Clerk. Any such disposal shall be in a manner requested by or

acceptable to the Company; provided that if the Company has not utilized Prime Clerk's Services for a period of 90 days or more, Prime Clerk may dispose of any such materials, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice. The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data or information provided by the Company to Prime Clerk.

(d) If Prime Clerk is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

## 12. <u>Non-Solicitation</u>

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of Prime Clerk during the term of this Agreement and for a period of 12 months after termination thereof unless Prime Clerk provides prior written consent to such solicitation or retention.

## 13. <u>Force Majeure</u>

Whenever performance by Prime Clerk of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Prime Clerk's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

## 14. <u>Choice of Law</u>

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York, without respect to its conflicts of laws provisions.

## 15. <u>Arbitration</u>

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. There shall be three arbitrators named in accordance with such rules. The arbitration shall be conducted in the English language in New York, New York in accordance with the United States Arbitration Act.

## 16. <u>Integration; Severability; Modifications; Assignment</u>

(a) Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals,



understandings, agreements and communications between the parties relating to the subject matter hereof.

(b) If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Prime Clerk.

(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Prime Clerk may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.

## 17. **Effectiveness of Counterparts**

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement. This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

## 18. **Notices**

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

| | |
|---|---|
| If to Prime Clerk: | Prime Clerk LLC<br>One Grand Central Place<br>60 East 42nd Street, Suite 1440<br>New York, NY 10165<br>Attn: Shai Waisman<br>Tel: (212) 257-5450<br>Email: swaisman@primeclerk.com |
| If to the Company: | Remington Outdoor Company, Inc.<br>870 Remington Drive<br>Madison, NC 27025<br>Attn: Mark Little, Chief Financial Officer<br>Emile Buzaid, Associate General Counsel<br>Tel: (336) 698-5174<br>Email: mark.little@remington.com<br>emile.busaid@remington.com |
| With a copy to: | O'Melveny & Myers LLP<br>400 South Hope Street, 18th Floor<br>Los Angeles, CA 90071<br>Attn: Stephen H. Warren<br>Karen Rinehart<br>Tel: (213) 430-6000 |

6

Email: swarren@omm.com
krinehart@omm.com

*[Signature page follows]*

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**Prime Clerk LLC**

By:  Shira Weiner
Title:  General Counsel


**Remington Outdoor Company, Inc.**
**on behalf of itself and its affiliated entities**

By:  MARK LILLIE
Title:  CFO

8


# R A T E S

**Quality.**
**Partnership.**
**Expertise.**
**Innovation.**

| Claim and Noticing Rates | |
| --- | --- |
| **TITLE** | **HOURLY RATE** |
| **Analyst** <br> The Analyst processes incoming proofs of claim, ballots and return mail, and physically executes outgoing mailings with adherence to strict quality control standards. | **$30 - $50** |
| **Technology Consultant** <br> The Technology Consultant provides database support for complex reporting requests and administers complicated variable data mailings. | **$35 - $95** |
| **Consultant/Senior Consultant** <br> The Consultant is the day-to-day contact for mailings, updates the case website, prepares and executes affidavits of service, responds to creditor inquiries and maintains the official claim register, including processing of claims objections and transfers. Prime Clerk Consultants have between three and five years of experience. <br><br> The Senior Consultant directs the data collection process for the master mailing list and Schedules & SOFA, oversees all mailings, performs quality control checks on all claims and ballots, and generates claim and ballot reports.  Prime Clerk's Senior Consultants average over five years of experience. | **$65 - $165** |
| **Director** <br> The Director is the lead contact for the company, counsel and advisors on the case engagement and oversees all aspects of the bankruptcy administration, including managing the internal case team. In many instances, the executives of Prime Clerk will serve in this role at this rate. Prime Clerk's Directors have over ten years of experience and are typically former restructuring attorneys or paralegals. | **$175 - $195** |
| **Chief Operating Officer and Executive Vice President** <br> Michael Frishberg, Prime Clerk's COO, and Ben Schrag, Prime Clerk's Executive Vice President, both former restructuring attorneys with collectively over twenty five years of experience, will add an additional supervisory layer to this matter at no charge. | **No charge** |


# RATES

**Quality.**
**Partnership.**
**Expertise.**
**Innovation.**

### Solicitation, Balloting and Tabulation Rates

| TITLE | HOURLY RATE |
|---|---|
| **Solicitation Consultant**<br>The Solicitation Consultant reviews, tabulates and audits ballots, and executes plan solicitation and other public securities mailings. In addition, the Solicitation Consultant prepares customized reports relating to voting and other corporate events (such as exchange offers and rights subscriptions) and interfaces with banks, brokers, nominees, depositories and their agents regarding solicitations and other communications. Solicitation Consultants average over five years of experience. | **$190** |
| **Director of Solicitation**<br>The Director of Solicitation is the lead consultant in the plan solicitation process. The Director oversees and coordinates soliciting creditor votes on a plan of reorganization and will attest to solicitation processes and results. The Director also advises on public securities noticing and related actions, including voting, exchange offers, treatment elections, rights subscriptions and distributions and coordinates with banks, brokers, nominees, their agents and depositories to ensure the smooth execution of these processes. Prime Clerk's Director of Solicitation has over 15 years of experience and is a former restructuring attorney. | **$210** |

### Printing and Noticing Services

| | |
|---|---|
| **Printing** | **$0.10 per page** |
| **Customization/Envelope Printing** | **$0.05 each** |
| **Document folding and inserting** | **No charge** |
| **Postage/Overnight Delivery** | **Preferred Rates** |
| **Public Securities Events** | **Varies by Event** |
| **E-mail Noticing** | **No charge** |
| **Fax Noticing** | **$0.05 per page** |
| **Proof of Claim Acknowledgment Card** | **No charge** |
| **Envelopes** | **Varies by Size** |

### Newspaper and Legal Notice Publishing

| | |
|---|---|
| **Coordinate and publish legal notices** | **Available on request** |


# R A T E S

**Quality.**
**Partnership.**
**Expertise.**
**Innovation.**

## Case Website

| | |
|---|---|
| Case Website setup | No charge |
| Case Website hosting | No charge |
| Update case docket and claims register | No charge |

## Client Access

| | |
|---|---|
| Access to secure client login (unlimited users) | No charge |
| Client customizable reports on demand or via scheduled email delivery (unlimited quantity) | No charge |
| Real time dashboard analytics measuring claim and ballot information and document processing status | No charge |

## Data Administration and Management

| | |
|---|---|
| Inputting proofs of claim and ballots | Standard hourly rates (no per claim or ballot charge) |
| Electronic Imaging | $0.12 per image |
| Data Storage, maintenance and security | $0.10 per record per month |
| Virtual Data Rooms | Available on request |

## On-line Claim Filing Services

| | |
|---|---|
| On-line claim filing | No charge |

## Call Center Services

| | |
|---|---|
| Case-specific voice-mail box | No charge |
| Interactive Voice Response ("IVR") | No charge |
| Monthly maintenance | No charge |
| Call center personnel | Standard hourly rates |
| Live chat | Standard hourly rates |

## Disbursement Services

| | |
|---|---|
| Check issuance and/or Form 1099 | Available on request |
| W-9 mailing and maintenance of TIN database | Standard hourly rates |