# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| REMINGTON OUTDOOR COMPANY, INC., *et al.*,[1] | Case No. 20-81688-11 |
|  | Joint Administration Requested |
| Debtors. |  |

## DEBTORS' APPLICATION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING THE EMPLOYMENT AND RETENTION OF DUCERA PARTNERS LLC AS INVESTMENT BANKER TO THE DEBTORS

Remington Outdoor Company, Inc. and its affiliated debtors, as debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") hereby file this application (the "**Application**") for entry of an interim order, substantially in the form of **Exhibit B** hereto (the "**Proposed Interim Order**"), and a final order substantially in the form of **Exhibit C** hereto (the "**Proposed Final Order**," and together with the Proposed Interim Order, the "**Proposed Orders**"), pursuant to section 327(a) of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "**Bankruptcy Code**") and Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), authorizing the employment and retention of Ducera Partners LLC and, where appropriate, Ducera Securities LLC (collectively, "**Ducera**") as investment banker to the Debtors as of the Petition Date (as defined below), in accordance with the terms and conditions of that certain engagement letter executed on

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405). The Debtors' corporate headquarters are located at 100 Electronics Boulevard SW, Huntsville, AL 35824.

43873320 v1

May 15, 2020, including any amendments and schedules thereto (the "**Engagement Agreement**"),[2] attached as __Exhibit 1__ to the Proposed Orders.  In support of this Application, the Debtors submit the *Declaration of Bradley C. Meyer in Support of Debtors' Application for Entry of Interim and Final Orders Authorizing the Employment and Retention of Ducera Partners LLC as Investment Banker to the Debtors* (the "**Meyer Declaration**"), attached hereto as __Exhibit A__, and respectfully represent as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter interim and final orders consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and procedural predicates for the relief requested herein are Bankruptcy Code section 327(a) and Bankruptcy Rules 2014 and 2016.  Compensation will be in accordance with sections 330 and 331 of the Bankruptcy Code.

## GENERAL BACKGROUND

4.      On the date hereof (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner and no committee has been appointed or designated in these Chapter 11 Cases.  The Debtors' request for joint administration of these Chapter 11 Cases for procedural purposes only is currently pending.

---

[2] Certain confidential sale information in the Engagement Agreement has been redacted as attached in Exhibit 1 to the Proposed Orders. An unredacted version of the Engagement Agreement has been provided to the Bankruptcy Administrator.

5. The Debtors are one of America's oldest and largest manufacturers of firearms, ammunition and related products for commercial, military, and law enforcement customers throughout the world. The Debtors employ approximately 2,100 full-time employees and operate seven manufacturing facilities located across the United States. The Debtors' corporate headquarters is located in Huntsville, Alabama.

6. Additional information regarding the Debtors' businesses, assets, capital structure, and the circumstances leading to the filing of these Chapter 11 Cases is set forth in the *Declaration of Ken D'Arcy in Support of Chapter 11 Petitions and First Day Pleadings of Remington Outdoor Company, Inc. and its Affiliated Debtors and Debtors in Possession* (the "**First Day Declaration**"), filed contemporaneously herewith and incorporated by reference herein.

**RELIEF REQUESTED**

7. By this Application, the Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **<u>Exhibit B</u>** and **<u>Exhibit C</u>**, respectively, to employ and retain Ducera pursuant to section 327(a) of the Bankruptcy Code as their investment banker in these Chapter 11 Cases, effective as of the Petition Date.

**BASIS FOR RELIEF REQUESTED**

A. **Ducera's Qualifications**

8. As described more fully in the Meyer Declaration, the Debtors engaged Ducera as their investment banker in November 2019 to assist the Debtors in connection with one or more potential transactions (a "**Transaction**") including:

(a) an acquisition, merger, consolidation or other business combination pursuant to which the business or assets of the Debtors are, directly or indirectly, combined with, or acquired by, another company;

(b) the acquisition, directly or indirectly, by a buyer or buyers (which term shall include a "group" of persons as defined in Section 13(d) of the Securities Exchange Act of 1934, as amended) of equity interests or options, or any

Case 20-81688-CRJ11   Doc 21   Filed 07/28/20   Entered 07/28/20 00:58:58   Desc Main
Document      Page 3 of 113

combination hereof, constituting a majority of the then-outstanding stock of the Debtors or possessing a majority of the then-outstanding voting power of the Company (the "**Voting Stock**");

(c)      any other purchase or acquisition, directly or indirectly, by a buyer or buyers or a majority of the assets or Voting Stock of the Debtors; or

(d)      the formation of a joint venture partnership or similar entity with the Debtors or direct investment in the Debtors for the purposes of effecting a transfer of a majority of the Voting Stock of the Debtors to a third party, a lease of assets with or without a purchase option, a merger, consolidation or other business combination, a tender offer, or any similar transaction, including through a sale of a material portion of the Debtors assets pursuant to section 363 of the Bankruptcy Code.

9.      The Debtors submit that a successful Transaction or series of Transactions is the best way to maximize the value of the Debtors' assets. To that end, Ducera has been working since November 2019 to contact potential strategic and financial acquirers and prepare confidential information memoranda describing the Debtors' business, operations, properties, financial condition and financial prospects for distribution to interested parties. In addition, Ducera has also provided advice on structure, negotiation strategy, valuation analyses, financial terms and other financial matters, as well as negotiated confidentiality agreements on the Debtors' behalf. The Debtors seek to retain Ducera to serve as their investment banker in connection with these Chapter 11 Cases so that they may continue to assist the Debtors in providing the services described herein.

10.     The Debtors seek to retain Ducera because of its experience in, among other areas, providing leading-edge capital structure and restructuring advice in workout and bankruptcy situations. Ducera's debtor-advisory services include a wide range of activities such as providing advice on maximizing value of the estate through the chapter 11 process, evaluating the needs for DIP financing and potential sources of such financing, assisting in developing, negotiating, and validating capital structure alternatives, conducting diligence on underlying business plans and liquidity projections, evaluating contracts and operating agreements to assess business risk from

vendors, and evaluating potential contract rejections. In addition, Ducera professionals have extensive experience in investigating and analyzing potential claims of debtors and their estates. Ducera has (i) substantial experience with, and knowledge of, companies involved in retail, consumer products and other merchandising-related industries; (ii) extensive knowledge of potential buyers interested in the Debtors' industry; and (iii) substantial sell-side investment banking and restructuring transaction experience. In addition to numerous out-of-court restructuring and sale assignments, Ducera professionals have served as an investment banker to debtors, creditor groups, and asset purchasers in a number of bankruptcy matters including, among others: *In re Imerys Talc America, Inc.*, Case No. 19-10289 (Bankr. D. Del.); *In re Paniolo Cable Company, LLC*, Case No. 18-01319 (Bankr. D. Haw.); *In re Specialty Retail Shops Holding Corp.*, Case No. 19-80064 (Bankr. D. Neb.); *In re Sungevity*, Case No. 17-10561 (Bankr. D. Del.); *In re Toys "R" Us, Inc.*, Case No. 17-034665 (Bankr E.D. Va.); *In re Panda Temple Power, LLC*, Case No. 17-10839 (Bankr. D. Del.); *In re Dacco Transmission Parts (NY), Inc.*, Case No. 16-13245 (Bankr. S.D.N.Y.); *In re Hercules Offshore, Inc.*, Case No. 16-11385 (Bankr. D. Del.); *In re Illinois Power Generating Co.*, Case No. 16-36326 (Bankr. S.D. Tex.); and *In re Paragon Offshore PLC*, Case No. 16-10386 (Bankr. D. Del.). As a result, the Debtors believe that Ducera is well qualified to perform these services and represent the Debtors' interests in their Chapter 11 Cases.

Case 20-81688-CRJ11 Doc 21 Filed 07/28/20 Entered 07/28/20 00:58:58 Desc Main
Document Page 5 of 113

**B.        Services to Be Provided**

11.        The Engagement Agreement governs the relationship between Ducera and the Debtors.  The terms and conditions of the Engagement Agreement were heavily negotiated, and reflect the parties' mutual agreement as to the substantial efforts and resources that will be required in this engagement.  Under the Engagement Agreement, the Debtors anticipate that Ducera will perform such financial and investment banking services for the Debtors in connection with the Transactions as Ducera and the Debtors deem appropriate and feasible during these Chapter 11 Cases, including:[3]

(a)        *General Investment Banking Services*, which may include: (1) becoming familiar with the business, operations, financial condition, and capital structure of the Debtors; (2) assisting with the development of financial data and presentations to the Debtors and the Board of Directors of the Debtors (the "**Board**"), various creditors, and other parties; (3) analyzing the Debtors' financial liquidity and evaluating alternatives to improve such liquidity; (4) assisting with the evaluation of the Debtors' valuation, debt capacity and alternative capital structures in light of its projected cash flow; and (5) providing such other advisory services as are customarily provided in connection with the analysis and negotiation of any of the Transactions, including, without limitation, any testimony in connection with the foregoing.

(b)        *Restructuring Services*, which may include: (1) analyzing various Restructuring (as defined in the Engagement Agreement) scenarios and the potential impact of these scenarios on the value of the Debtors and the recoveries of those stakeholders impacted by the Restructuring; (2) providing strategic advice with regard to Restructuring or refinancing the Debtors' existing obligations; (3) providing financial advice and assistance to the Debtors in developing a Restructuring; (4) providing financial advice and assistance to the Debtors in structuring any new securities to be issued under a Restructuring; (5) assisting the Debtors and/or participating in

---

[3]  Summaries and other descriptions of the terms of the Engagement Agreement set forth herein are not intended to replace the terms of the Engagement Agreement, which shall govern in their entirety to the extent of any inconsistency between this Application, the Meyer Declaration and the Engagement Agreement.  The Proposed Orders are intended to modify or qualify the Engagement Agreement in certain respects (as is necessary in connection with Ducera's retention in these Chapter 11 Cases) and shall control in the event of any inconsistencies between this Application, the Engagement Agreement, the Meyer Declaration and the Proposed Orders.

negotiations with entities or groups affected by the Restructuring; and (6) providing any required testimony in connection with the foregoing.

(c) *Transaction Services*, which may include (1) providing financial advice to the Debtors in structuring, evaluating and effectuating a Transaction, identifying potential counterparties and, if requested, contacting and soliciting potential counterparties; (2) assisting with the arrangement and execution of a Transaction, including identifying potential counterparties or parties in interest, assisting in the due diligence process, and negotiating the terms of any proposed Transaction; (3) providing strategic advice to the Debtors in connection with the evaluation of, and responses to, activist shareholder action; and (4) providing any testimony in connection with the foregoing.

(d) *Financing Services*, which may include: (1) providing financial advice to the Debtors in connection with the structure and effectuation of a Financing (as defined in the Engagement Agreement), identifying potential investors and, at the Debtors' request, contacting and soliciting such investors; (2) assisting with the arrangement of a Financing, including identifying potential sources of capital, assisting in the due diligence process, and negotiating the terms of any proposed Financing; and (3) providing any testimony in connection with the foregoing;

## C. No Duplication of Services

12. The services provided by Ducera are distinct and specific investment banking services, and such services will complement and not duplicate the services rendered by any other professional retained in these Chapter 11 Cases. As set forth in the Meyer Declaration, Ducera understands that the Debtors have retained and may retain additional professionals during the term of the engagement and Ducera agrees to work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

## D. Professional Compensation

13. In consideration of the services to be provided by Ducera pursuant to the terms of the Engagement Agreement and subject to Court approval, the applicable provisions of the Bankruptcy Code, and the Bankruptcy Rules, the Debtors have agreed to the following fee structure (the "**Fee Structure**"):

(a)　*Monthly Advisory Fee.*　In connection with the provision of general investment banking services, the Debtors have agreed to pay Ducera a non-refundable monthly cash fee of $150,000 (the "**Monthly Advisory Fee**") due a payable each month during the engagement.

(b)　*Restructuring Fee.*　In connection with the provision of Restructuring services, the Debtors have agreed to pay Ducera a restructuring fee of $3,500,000 (the "**Restructuring Fee**") earned and payable upon consummation of a Restructuring for the Debtors.

(c)　*Transaction Fee.*　In connection with the provision of Transaction services, the Debtors have agreed to pay Ducera a transaction fee equal to 1.75% of the proceeds received by the Debtors' estates (the "**Transaction Fee**") payable upon the consummation of any Transaction.

(d)　*Financing Fee.*　In connection with the provision of Financing services, the Debtors have agreed to pay Ducera a financing fee (the "**Financing Fee**"), which shall be earned upon commitment and payable upon the closing or termination of such Financing, equal to: (i) 1.5% of the face amount of any senior secured debt raised by the Debtors, including, but not limited to, debtor-in-possession Financing, revolving credit and asset backed lending facilities, and exit Financing, *provided* that the Financing Fee shall be no less than $500,000; and (ii) 3.5% of the face amount of any unsecured debt or equity raised by the Debtors in connection with a Restructuring or Transaction.

*provided* that, the Debtors are (1) only obligated to pay Ducera the greater of the Restructuring Fee and the Transaction Fee, and *not* both a Restructuring Fee and a Transaction Fee, and (2) the Financing Fee will be credited against the Transaction Fee for the Financing that is provided by the Stalking Horse Bidder or such other winning bidder of any Transaction.

14.　Under Bankruptcy Code section 327(a), the Debtors may retain Ducera on reasonable terms and conditions. The Debtors believe that the Fee Structure described in the Engagement Agreement is reasonable and that it is comparable to those generally charged by investment banking and financial advisory firms of similar stature to Ducera for comparable engagements.

Case 20-81688-CRJ11　Doc 21　Filed 07/28/20　Entered 07/28/20 00:58:58　Desc Main
Document　　Page 8 of 113

15. The hours worked, the results achieved, and the ultimate benefit to the Debtors of the work performed by Ducera in connection with the engagement may vary and this has been taken into account in setting the above fees.

16. In addition, given the numerous issues which Ducera may be required to address in the performance of its services under the Engagement Agreement, Ducera's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Ducera's services for engagements of this nature in an out-of-court context, the Debtors believe that the Fee Structure set forth in the Engagement Agreement—including the Monthly Advisory Fee, Restructuring Fee, Transaction Fee, and Financing Fee—is reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

17. Pursuant to sections 330 and 331 of the Bankruptcy Code and the Bankruptcy Rules, Ducera will apply to the Court for final allowance of compensation and reimbursement of expenses (but shall not be required to file monthly or interim fee applications), which may be incorporated with a motion seeking approval of any Restructuring, Transaction, or Financing. Because Ducera is being compensated under a transaction-based Fee Structure (and not based on an hourly rate), the Debtors request that Ducera not be required to submit detailed time records in support of its final fee application. The Debtors submit that the terms and conditions set forth in the Engagement Agreement, which are similar to the terms and conditions Ducera offers to similar clients for similar services, are reasonable.

E. **Indemnification Provisions**

18. As part of the overall compensation payable to Ducera under the terms of the Engagement Agreement, the Debtors have agreed to certain indemnification and contribution provisions described in Annex A to the Engagement Agreement (the "**Indemnification**

**Provisions**").  As more fully set forth in the Engagement Agreement, the Indemnification Provisions provide that the Debtors will indemnify and hold harmless Ducera and its affiliates and their respective members, managers, directors, officers, partners, agents, and employees (collectively, the "**Indemnified Parties**") from and against any losses, claims, expenses (including reasonable attorneys' fees), damages or liabilities (including actions or proceedings in respect thereof (collectively, "**Losses**") (i) as a result of (a) the Debtors' actions or failures to act (including statements or omissions made or information provided by the Debtors or their agents) in connection with the engagement; or (b) actions or failures to act by an Indemnified Person in connection with this engagement with the Debtors' consent, or otherwise in reasonable reliance on the Debtors' direction, actions, or failures to act in each case in connection with the engagement; or (ii) otherwise related to or arising out of the engagement, Ducera's performance thereof or any other services Ducera is asked to provide to the Debtors pursuant to the Engagement Agreement (in each case, including activities prior to the date hereof); *except* that these provisions shall not apply to any Losses (nor shall the limitation of liability above apply) to the extent that they are finally determined by a court of competent jurisdiction to have resulted from the bad faith, willful misconduct, or gross negligence of an Indemnified Person; *provided*, *however*, that the Debtors' obligations as set forth in the Engagement Agreement and as described in this Paragraph shall be subject to the provisions of the Proposed Orders during the pendency of the Chapter 11 Cases.

19.     The Debtors and Ducera believe that the Indemnification Provisions are customary and reasonable for investment banking engagements, both out-of-court and in chapter 11 cases. Indemnification provisions for advisors have been approved in other chapter 11 cases in this District.  *See, e.g.*, *In re Mission Coal Co., LLC*, Case No. 18-04177-TOM11 (Bankr. N.D. Ala. Nov. 30, 2018) [Doc. 364]; *In re Walter Energy, Inc.*, Case No. 15-02741-TOM11 (Bankr. N.D.

Ala. Oct. 1, 2015) [Doc. 819]; *In re Belle Foods, LLC*, Case No. 13-81963-JAC11 (Bankr. N.D. Ala. July 18, 2013) [Doc. 158].

### F. Ducera's Disinterestedness

20. To the best of the Debtors' knowledge, information and belief, and based entirely and in reliance upon the Meyer Declaration: (a) Ducera is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code and referenced by section 328(c) of the Bankruptcy Code, and holds no interest materially adverse to the Debtors, their creditors, and shareholders for the matters for which Ducera is to be employed; and (b) Ducera has no connection to the Debtors, their creditors, shareholders or related parties herein except as disclosed in the Meyer Declaration. Moreover, the retention and employment of Ducera is necessary and in the best interests of the Debtors, their estates, creditors and equity interest holders.

21. Also, to the best of the Debtors' knowledge, information and belief, and based entirely and in reliance upon the Meyer Declaration: (i) to the best of Debtor's knowledge, information and belief, none of Ducera's past or current engagements would or does appear to create an interest materially adverse to the interests of the Debtors, creditors, or equity security holders in these Chapter 11 Cases. As such the Debtors believe that Ducera is disinterested and holds no materially adverse interest as to the matters upon which it is to be retained. To the extent Ducera discovers any facts bearing on the matters described herein during the period of Ducera's retention, it will supplement the information contained in the Meyer Declaration.

### G. The Relief Requested Should Be Granted

22. The Debtors seek authority to retain and employ Ducera as their investment banker under Bankruptcy Code section 327, which provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are

disinterested persons, to represent or assist the [Debtors] in carrying out the [Debtors'] duties under this title." 11 U.S.C. § 327(a). Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy Code and provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

23. The Debtors seek approval of the Fee Structure and the Engagement Agreement (including the Indemnification Provisions) pursuant to Bankruptcy Code section 328(a), which provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Accordingly, Bankruptcy Code section 328 permits the compensation of professionals, including consultants, on flexible terms that reflect the nature of their services and market conditions. Thus, section 328 is a significant departure from prior bankruptcy practice relating to the compensation of professionals. Indeed, as the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum (In re Nat'l Gypsum Co.)*, 123 F.3d 861, 862 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

> (internal citations omitted).

Case 20-81688-CRJ11    Doc 21    Filed 07/28/20    Entered 07/28/20 00:58:58    Desc Main
Document    Page 12 of 113

24.     The Debtors believe that the Fee Structure in the Engagement Agreement sets forth reasonable terms and conditions of employment and should be approved under Bankruptcy Code section 328(a).  The Fee Structure adequately reflects (i) the nature of the services to be provided by Ducera and (ii) fee and expense structures and indemnification provisions typically used by Ducera and other leading investment banking firms.  In addition, as noted above, Ducera is "disinterested" and all of its fees and expenses are subject to approval of the Court in accordance with the Bankruptcy Code, the Bankruptcy Rules, and further orders of the Court.

25.     The Debtors respectfully request that Ducera's retention be made effective as of the Petition Date so that Ducera may be compensated for all services it has performed for the benefit of the Debtors' bankruptcy estates.  Indeed, Ducera rendered these services to the Debtors in advance of approval of this Application in anticipation that its retention would be approved as of the Petition Date.  Due in part to the many significant, pressing issues facing the Debtors in the early days of these Chapter 11 Cases, Ducera has been focused on ensuring a smooth transition for the Debtors into chapter 11, and working with the Debtors' other advisors and other parties in interest on numerous strategic negotiations. Compensating Ducera for the necessary and critical services performed as of the Petition Date would not prejudice third parties as the services performed by Ducera were needed in any event and any other professional would have had to be similarly compensated.  The Debtors, their estates and creditors, received a material benefit from the services rendered by Ducera after the Petition Date, and the Debtors believe it just and appropriate to compensate Ducera accordingly.  The Debtors respectfully submit that the circumstances of these Chapter 11 Cases warrant approval of the Application as of the Petition Date.

26.     For the foregoing reasons, the Debtors submit that the relief requested in the Application is in the best interests of the Debtors, their estates, and all other parties in interest in these Chapter 11 Cases and the Court should approve the retention and employment of Ducera pursuant to the terms set forth in the Engagement Agreement.

## NOTICE

27.     Notice of the hearing on the relief requested in this Application will be provided by the Debtors in accordance and compliance with Bankruptcy Rules 4001 and 9014 and is sufficient under the circumstances.  The Debtors will provide notice of this Application to the following parties-in-interest: (i) the Bankruptcy Administrator; (ii) the Debtors' consolidated list of creditors holding the forty largest unsecured claims; (iii) counsel to Whitebox Advisors LLC, as Priority Term Loan Lender; (iv) counsel to Cantor Fitzgerald Securities, as Priority Term Loan Agent under the Debtors' prepetition Priority Term Loan Credit Agreement; (v) counsel to Ankura Trust Company, as FILO Agent under the Debtors' prepetition FILO Term Loan Agreement, and as Exit Term Loan Agent under the Debtors' prepetition Exit Term Loan Agreement; (vi) counsel to Franklin, Inc., as FILO Lender; (vii) the United States Internal Revenue Service; (viii) counsel to the United Mine Workers of America; and (ix) all parties entitled to notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary under the circumstances.

WHEREFORE, the Debtors respectfully request entry of interim and final orders, substantially in the forms attached hereto as **Exhibit B** and **Exhibit C**, respectively, authorizing the employment and retention of Ducera as investment banker to the Debtors in these Chapter 11 Cases as requested in this Application, and granting such other and further relief as may be just and proper under the circumstances.

Dated: July 28, 2020

*/s/ Derek F. Meek*

**BURR & FORMAN LLP**
Derek F. Meek
Hanna Lahr
420 20th Street North, Suite 3400
Birmingham, AL 35203
Telephone:  (205) 251-3000
Facsimile:   (205) 458-5100
Email: dmeek@burr.com
       hlahr@burr.com

- and -

**O'MELVENY & MYERS LLP**
Stephen H. Warren (*pro hac vice* admission pending)
Karen Rinehart (*pro hac vice* admission pending)
400 South Hope Street
Los Angeles, CA  90071-2899
Telephone:  (213) 430-6000
Facsimile:   (213) 430-6407
Email: swarren@omm.com
krinehart@omm.com

*Proposed Attorneys for the Debtors and Debtors in Possession*

Case 20-81688-CRJ11    Doc 21    Filed 07/28/20    Entered 07/28/20 00:58:58    Desc Main
Document      Page 15 of 113

**<u>Exhibit A</u>**

**Meyer Declaration**

43873320 v1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| REMINGTON OUTDOOR COMPANY, INC., *et al.*,[1] | Case No. 20-81688-11 |
|  | Joint Administration Requested |
| Debtors. |  |

## DECLARATION OF BRADLEY C. MEYER IN SUPPORT OF DEBTORS' APPLICATION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING THE RETENTION AND EMPLOYMENT OF DUCERA PARTNERS LLC AS INVESTMENT BANKER TO THE DEBTORS

I, Bradley C. Meyer, make this declaration pursuant to 28 U.S.C. § 1746 and state as follows:

1.    I am a Partner at the firm of Ducera Partners LLC and a registered representative of Ducera Securities LLC (collectively, "**Ducera**"), an internationally recognized investment banking firm, which maintains its headquarters at 499 Park Avenue, 16th Floor, New York, New York 10022.  Unless otherwise stated, I have personal knowledge of all facts set forth in this Declaration, and they are true and correct.

2.    I am duly authorized to make this declaration (this "**Declaration**") on behalf of Ducera and submit this Declaration in support of the *Debtors' Application for Entry of Interim and Final Orders Authorizing the Retention and Employment of Ducera Partners LLC as Investment*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405).  The Debtors' corporate headquarters are located at 100 Electronics Boulevard SW, Huntsville, AL 35824.

43873320 v1

*Banker to the Debtors* (the "**Application**"),[2] filed concurrently with this Declaration, in which the Debtors seek entry of interim and final orders authorizing the employment of Ducera as investment banker to the Debtors pursuant to Bankruptcy Code section 327(a), Bankruptcy Rules 2014(a) and 2016, and under the terms and conditions set forth in the Application.

3.      Except as otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would testify thereto.  Certain of the disclosures set forth herein are related to matters within the knowledge of other employees of Ducera and are based on information provided by them.

## DUCERA'S QUALIFICATIONS

4.      In November 2019, the Debtors engaged Ducera as their investment banker to assist the Debtors in connection with one or more potential transactions (a "**Transaction**") including:

    (a)     an acquisition, merger, consolidation or other business combination pursuant to which the business or assets of the Debtors are, directly or indirectly, combined with, or acquired by, another company;

    (b)     the acquisition, directly or indirectly, by a buyer or buyers (which term shall include a "group" of persons as defined in Section 13(d) of the Securities Exchange Act of 1934, as amended) of equity interests or options, or any combination hereof, constituting a majority of the then-outstanding stock of the Debtors or possessing a majority of the then-outstanding voting power of the Company (the "**Voting Stock**");

    (c)     any other purchase or acquisition, directly or indirectly, by a buyer or buyers or a majority of the assets or Voting Stock of the Debtors; or

    (d)     the formation of a joint venture partnership or similar entity with the Debtors or direct investment in the Debtors for the purposes of effecting a transfer of a majority of the Voting Stock of the Debtors to a third party, a lease of assets with or without a purchase option, a merger, consolidation or other business combination, a tender offer, or any similar transaction, including through a sale of a material portion of the Debtors assets pursuant to section 363 of the Bankruptcy Code.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

5.     In order to maximize the value of the Debtors' assets, Ducera has been working since November 2019 to contact potential strategic and financial acquirers and prepare confidential information memoranda describing the Debtors' business, operations, properties, financial condition and financial prospects for distribution to interested parties.  In addition, Ducera has also provided advice on structure, negotiation strategy, valuation analyses, financial terms and other financial matters, as well as negotiated confidentiality agreements on the Debtors' behalf.

6.     Ducera possesses extensive knowledge and expertise relevant to the Debtors' business and is well qualified to advise the Debtors in these Chapter 11 Cases.  Ducera has (i) substantial experience with, and knowledge of, companies involved in retail, consumer products and other merchandising-related industries; (ii) extensive knowledge of potential buyers interested in the Debtors' industry; and (iii) substantial sell-side investment banking and restructuring transaction experience.  In addition to numerous out-of-court restructuring and sale assignments, the Ducera professionals have served as an investment banker to debtors, creditor groups and asset purchasers in a number of bankruptcy matters including: *In re Imerys Talc America, Inc.*, Case No. 19-10289 (Bankr. D. Del.); *In re Paniolo Cable Company, LLC*, Case No. 18-01319 (Bankr. D. Haw.); *In re Specialty Retail Shops Holding Corp.*, Case No. 19-80064 (Bankr. D. Neb.); *In re Sungevity*, Case No. 17-10561 (Bankr. D. Del.); *In re Toys "R" Us, Inc.*, Case No. 17-034665 (Bankr E.D. Va.); *In re Panda Temple Power, LLC*, Case No. 17-10839 (Bankr. D. Del.); *In re Dacco Transmission Parts (NY), Inc.*, Case No. 16-13245 (Bankr. S.D.N.Y.); *In re Hercules Offshore, Inc.*, Case No. 16-11385 (Bankr. D. Del.); *In re Illinois Power Generating Co.*, Case No. 16-36326 (Bankr. S.D. Tex.); and *In re Paragon Offshore PLC*, Case No. 16-10386 (Bankr. D. Del.).

## SERVICES TO BE PROVIDED

7.     The Engagement Agreement governs the relationship between Ducera and the Debtors.  The terms and conditions of the Engagement Agreement were heavily negotiated, and reflect the parties' mutual agreement as to the substantial efforts and resources that will be required in this engagement.  Under the Engagement Agreement, the Debtors anticipate that Ducera will perform such financial and investment banking services for the Debtors in connection with the Transactions as Ducera and the Debtors deem appropriate and feasible during these Chapter 11 Cases, including:[3]

(a)    *General Investment Banking Services*, which may include: (1) becoming familiar with the business, operations, financial condition, and capital structure of the Debtors; (2) assisting with the development of financial data and presentations to the Debtors and the Board of Directors of the Debtors (the "**Board**"), various creditors, and other parties; (3) analyzing the Debtors' financial liquidity and evaluating alternatives to improve such liquidity; (4) assisting with the evaluation of the Debtors' valuation, debt capacity and alternative capital structures in light of its projected cash flow; and (5) providing such other advisory services as are customarily provided in connection with the analysis and negotiation of any of the Transactions, including, without limitation, any testimony in connection with the foregoing.

(b)    *Restructuring Services*, which may include: (1) analyzing various Restructuring (as defined in the Engagement Agreement) scenarios and the potential impact of these scenarios on the value of the Debtors and the recoveries of those stakeholders impacted by the Restructuring; (2) providing strategic advice with regard to Restructuring or refinancing the Debtors' existing obligations; (3) providing financial advice and assistance to the Debtors in developing a Restructuring; (4) providing financial advice and assistance to the Debtors in structuring any new securities to be issued under a Restructuring; (5) assisting the Debtors and/or participating in

---

[3]  Summaries and other descriptions of the terms of the Engagement Agreement set forth herein are not intended to replace the terms of the Engagement Agreement, which shall govern in their entirety to the extent of any inconsistency between this Declaration, the Application and the Engagement Agreement.  The Proposed Orders are intended to modify or qualify the Engagement Agreement in certain respects (as is necessary in connection with Ducera's retention in these Chapter 11 Cases) and shall control in the event of any inconsistencies between this Declaration, the Application, the Engagement Agreement and the Proposed Orders.

negotiations with entities or groups affected by the Restructuring; and (6) providing any required testimony in connection with the foregoing.

(c) *Transaction Services*, which may include (1) providing financial advice to the Debtors in structuring, evaluating and effectuating a Transaction, identifying potential counterparties and, if requested, contacting and soliciting potential counterparties; (2) assisting with the arrangement and execution of a Transaction, including identifying potential counterparties or parties in interest, assisting in the due diligence process, and negotiating the terms of any proposed Transaction; (3) providing strategic advice to the Debtors in connection with the evaluation of, and responses to, activist shareholder action; and (4) providing any testimony in connection with the foregoing.

(d) *Financing Services*, which may include: (1) providing financial advice to the Debtors in connection with the structure and effectuation of a Financing (as defined in the Engagement Agreement), identifying potential investors and, at the Debtors' request, contacting and soliciting such investors; (2) assisting with the arrangement of a Financing, including identifying potential sources of capital, assisting in the due diligence process, and negotiating the terms of any proposed Financing; and (3) providing any testimony in connection with the foregoing.

## NO DUPLICATION OF SERVICES

8.      Ducera understands that the Debtors have retained and may retain additional professionals during the term of the engagement and agrees to work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.  I believe that Ducera is providing distinct and specific investment banking services as set forth in the Engagement Agreement, and such services are not expected to duplicate those to be provided by any other consultants or advisors.

## PROFESSIONAL COMPENSATION

9.      In consideration of the services to be provided by Ducera pursuant to the terms of the Engagement Agreement and subject to Court approval, the applicable provisions of the Bankruptcy Code, and the Bankruptcy Rules, the Debtors have agreed to the following fee structure (the "**Fee Structure**"):

(a) *Monthly Advisory Fee.* In connection with the provision of general investment banking services, the Debtors have agreed to pay Ducera a non-refundable monthly cash fee of $150,000 (the "**Monthly Advisory Fee**") due a payable each month during the engagement.

(b) *Restructuring Fee.* In connection with the provision of Restructuring services, the Debtors have agreed to pay Ducera a restructuring fee of $3,500,000 (the "**Restructuring Fee**") earned and payable upon consummation of a Restructuring for the Debtors.

(c) *Transaction Fee.* In connection with the provision of Transaction services, the Debtors have agreed to pay Ducera a transaction fee equal to 1.75% of the proceeds received by the Debtors' estates (the "**Transaction Fee**") payable upon the consummation of any Transaction.

(d) *Financing Fee.* In connection with the provision of Financing services, the Debtors have agreed to pay Ducera a financing fee (the "**Financing Fee**"), which shall be earned upon commitment and payable upon the closing or termination of such Financing, equal to: (i) 1.5% of the face amount of any senior secured debt raised by the Debtors, including, but not limited to, debtor-in-possession Financing, revolving credit and asset backed lending facilities, and exit Financing, *provided* that the Financing Fee shall be no less than $500,000; and (ii) 3.5% of the face amount of any unsecured debt or equity raised by the Debtors in connection with a Restructuring or Transaction.

*provided* that, the Debtors are (1) only obligated to pay Ducera the greater of the Restructuring Fee and the Transaction Fee, and *not* both a Restructuring Fee and a Transaction Fee, and (2) the Financing Fee will be credited against the Transaction Fee for the Financing that is provided by the Stalking Horse Bidder or such other winning bidder of any Transaction.

10. To the extent that the Debtors request that Ducera perform additional services not contemplated by the Engagement Agreement or directly related to the services detailed in the Engagement Agreement, the Debtors will seek further approval from the Court for any such additional services and will set forth, in additional to a description of the additional services to be performed, the fees sought to be paid for such services.

11. Pursuant to sections 330 and 331 of the Bankruptcy Code and the Bankruptcy Rules, Ducera will apply to the Court for final allowance of compensation and reimbursement of

expenses (but shall not be required to file monthly or interim fee applications), which may be incorporated with a motion seeking approval of any Restructuring, Transaction, or Financing. Because Ducera is being compensated under a fixed Fee Structure, the Ducera requests that it not be required to submit detailed time records in support of its final fee application.

12. I believe that the foregoing fees are reasonable and comparable to those generally charged by investment bankers of similar stature to Ducera for comparable engagements, both in and out of chapter 11. The Fee Structure summarized above and described more fully in the Engagement Agreement is consistent with Ducera's normal and customary billing practices for comparably-sized and complex cases and transactions, both in and out of court, involving the services to be provided in connection with chapter 11 cases. Moreover, the fees are consistent with and typical of arrangements entered into by Ducera and other investment banking firms with the rendering of comparable services to clients such as the Debtors. I believe that the fees are both reasonable and market-based.

## INDEMNIFICATION PROVISIONS

13. As part of the overall compensation payable to Ducera under the terms of the Engagement Agreement, the Debtors have agreed to certain indemnification and contribution provisions described in Annex A to the Engagement Agreement (the "**Indemnification Provisions**"). As more fully set forth in the Engagement Agreement, the Indemnification Provisions provide that the Debtors will indemnify and hold harmless Ducera and its affiliates and their respective members, managers, directors, officers, partners, agents, and employees (collectively, the "**Indemnified Parties**") from and against any losses, claims, expenses (including reasonable attorneys' fees), damages or liabilities (including actions or proceedings in respect thereof (collectively, "**Losses**") (i) As a result of (a) the Debtors' actions or failures to act

Case 20-81688-CRJ11    Doc 21    Filed 07/28/20    Entered 07/28/20 00:58:58    Desc Main
Document      Page 23 of 113

(including statements or omissions made or information provided by the Debtors or their agents) in connection with the engagement; or (b) actions or failures to act by an Indemnified Person in connection with this engagement with the Debtors' consent, or otherwise in reasonable reliance on the Debtors' direction, actions, or failures to act in each case in connection with the engagement; or (ii) otherwise related to or arising out of the engagement, Ducera's performance thereof or any other services Ducera is asked to provide to the Debtors pursuant to the Engagement Agreement (in each case, including activities prior to the date hereof); *except* that these provisions shall not apply to any Losses (nor shall the limitation of liability above apply) to the extent that they are finally determined by a court of competent jurisdiction to have resulted from the bad faith, willful misconduct, or gross negligence of an Indemnified Person; *provided*, *however*, that the Debtors' obligations as set forth in the Engagement Agreement and as described in this Paragraph shall be subject to the provisions of the Proposed Orders during the pendency of the Chapter 11 Cases.

14.     The terms of the Engagement Agreement, including the Indemnification Provisions, were fully negotiated between the Debtors and Ducera at arm's length.  I believe that the Indemnification Provisions, as modified by the Proposed Orders, are customary, reasonable and in the best interests of the Debtors, their estates and creditors.

### DUCERA'S DISINTERESTEDNESS

15.     In connection with Ducera's proposed retention by the Debtor, Ducera undertook to determine whether it had any conflicts or other relationships that might cause it not to be disinterested, or to hold or represent an interest adverse to the Debtor.  The Debtor has provided Ducera with a list of the names (collectively, the "**Potential Parties in Interest**")[4] of individuals

---

[4]  As may be necessary, Ducera will supplement this Declaration if it becomes aware of a relationship that may adversely affect Ducera's retention in this case or would otherwise require disclosure (any such declaration, a "**Supplemental Declaration**").

Case 20-81688-CRJ11    Doc 21    Filed 07/28/20    Entered 07/28/20 00:58:58    Desc Main
Document       Page 24 of 113

or institutions in the following categories: (a) the Debtors and their affiliates; (b) current and former officers and directors of the Debtors; (c) banking relationships of the Debtors; (d) bankruptcy judges for the United States Bankruptcy Court for the Northern District of Alabama; (e) insurers of the Debtors; (f) landlords of the Debtors; (g) the largest customers of the Debtors; (h) lenders to the Debtors; (i) litigants against the Debtors; (j) the Debtors professionals; (k) the non-Debtors professionals; (l) major equity holders of the Debtors; (m) Governmental regulatory agencies; (n) vendors of the Debtors; (o) the fifty largest unsecured creditors of the Debtors; (p) unions with contracts with the Debtors; (q) other significant creditors of the Debtors; (r) significant competitors of the Debtors; (s) attorneys for the Bankruptcy Administrator; (t) utilities of the Debtors; and (u) shippers to and warehousemen for the Debtors. The Potential Parties in Interest are set forth on **Schedule 1** hereto.[5]

16. Ducera, together with its affiliates, utilizes certain procedures (the "**Ducera Firm Procedures**") to determine if it has any conflicts or other relationships that might cause it not to be disinterested, or to hold or represent an interest adverse to the Debtor. In implementing the Ducera Firm Procedures, the following actions were taken to identify parties that may have connections to the Debtors and to determine Ducera's relationship with such parties:

(a) Ducera requested and obtained from the Debtor extensive lists of the Potential Parties in Interest. The list of Potential Parties in Interest which Ducera reviewed is annexed hereto as **Schedule 1**.

(b) Ducera then compared the names of each of the Potential Parties in Interest to the names in the master electronic database of Ducera's current and former clients (the "**Client Database**"). The Client Database generally includes the name of each client of Ducera, the name of each party that is or was known to be adverse to such client of Ducera in connection with the matter in which Ducera is representing such client, the name of each party that has, or has had, a substantial role with regard to the subject matter of

---

[5] Ducera's inclusion of parties in Schedule 1 is solely to disclose Ducera's conflict search process and is not an admission that any party has a valid claim against the Debtors or that any party properly belongs on Schedule 1 or has a claim or legal relationship to the Debtors of the nature described in Schedule 1.

Case 20-81688-CRJ11    Doc 21    Filed 07/28/20    Entered 07/28/20 00:58:58    Desc Main
Document      Page 25 of 113

Ducera's retention, and the names of the Ducera professionals who are or were primarily responsible for matters for such clients.

(c)    An email was issued to all partners and managing directors at Ducera requesting disclosure of information regarding: (i) any known personal connections between the respondent or Ducera on the one hand, and either the Potential Parties in Interest or the Debtor, on the other hand; (ii) any known connection or representation by the respondent or Ducera of any of the Potential Parties in Interest in matters relating to the Debtor; and (iii) any other conflict or reason why Ducera may be unable to represent the Debtors.

17.    As a result of the Ducera Firm Procedures, I have thus far ascertained that, except as may be set forth herein, upon information and belief, if retained, Ducera:

(a)    is not a creditor of the Debtors (including by reason of unpaid fees for prepetition services) or an equity security holder of the Debtors;

(b)    is not and has not been, within 2 years before the date of the filing of the petition, a director, officer, or an employee of the Debtors; and

(c)    does not have any interest materially adverse to that of the Debtor's estate, or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason.

18.    As can be expected with respect to any professional services firm, Ducera provides services to many clients with interests in the Debtors' Chapter 11 Cases.  To the best of my knowledge, except as indicated below, Ducera's services for such clients do not relate to the Debtors' Chapter 11 Cases.

19.    Further, as part of its diverse practice, Ducera appears in numerous cases and proceedings, and participates in transactions that involve many different professionals, including attorneys, accountants, and financial consultants, who represent claimants and parties in interest in the Debtors' Chapter 11 Cases.  In addition, Ducera has performed in the past, and may perform in the future, advisory consulting services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of which may be involved in these proceedings.  At times, Ducera is hired directly by attorneys and law firms to provide services for

the benefit of one or more parties, some of whom may not be known to Ducera and/or may be parties in interest in these proceedings. Also, persons that may become parties in interest in these Chapter 11 Cases, and persons that have business relationships with the Debtors, are competitors of the Debtors or that are customers of the Debtors, may be or may have been: (a) parties in interest in other bankruptcy cases where Ducera has acted or is currently acting as financial advisor or investment banker to the debtors or to other parties in interest; (b) affiliates and/or subsidiaries of or creditors of persons by whom Ducera may have been engaged, is currently engaged or may in the future be engaged; or (c) affiliates of or entities involved in matters wholly-unrelated to these Chapter 11 Cases where Ducera has acted or is currently acting as financial advisor or investment banker for creditors and/or steering committees. Lastly, in the ordinary course of business, Ducera has relationships with financial advisors, legal advisors and creditors that may be or may become involved in these Chapter 11 Cases.

20. As a result of working in the investment banking, financial advisory, and restructuring industries, professionals at Ducera have professional relationships with certain of the disinterested directors of the Debtors. Ducera also has been engaged in the past, and may be engaged in the future, by entities whose boards include directors who are serving as directors of the Debtors.

21. Based on the conflicts search conducted to date, to the best of my knowledge, neither I, Ducera, nor any partner or associate thereof, have any connection with the Debtors, their affiliates, creditors, or any other parties in interest, their respective attorneys and accountants, the Bankruptcy Administrator, any person employed in the Office of the Bankruptcy Administrator, or any bankruptcy judge currently serving on the United States Bankruptcy Court for the Northern District of Alabama, except as disclosed or otherwise described herein.

22.     Ducera has not, does not, and will not, represent any entity other than the Debtor in these Chapter 11 Cases.

23.     As specifically set forth below and in the attached **Schedule 2**, Ducera has relationships with certain creditors and other parties in interest in ongoing matters unrelated to the Debtors and these Chapter 11 Cases. None of the representations described herein are materially adverse to the interests of the estates. Moreover, pursuant to section 327(c) of the Bankruptcy Code, Ducera is not disqualified from acting as Debtor financial advisor merely because it represents certain of the Debtors' creditors or other parties in interest in matters unrelated to these Chapter 11 Cases.

24.     If any new material relevant facts or relationships are discovered or arise, Ducera will promptly file a Supplemental Declaration.

25.     To the best of my knowledge, (a) no commitments have been made or received by Ducera with respect to compensation or payment in connection with these Chapter 11 Cases other than in accordance with the provisions of the Bankruptcy Code, and (b) Ducera has no agreement with any other entity to share with such entity any compensation received by Ducera in connection with these Chapter 11 Cases.

26.     I have read the Application that accompanies this Declaration and, to the best of my knowledge, information and belief, the contents of such Application are true and correct.


*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*

Case 20-81688-CRJ11    Doc 21    Filed 07/28/20    Entered 07/28/20 00:58:58    Desc Main
Document    Page 28 of 113

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Executed on July 27, 2020

/s/ Bradley C. Meyer
Bradley C. Meyer
Partner
Ducera Partners LLC
499 Park Avenue, 16th Floor
New York, New York 10022

43873320 v1

## <u>Schedule 1</u>

**List of Potential Parties in Interest**

43873320 v1

# LIST OF PARTIES SEARCHED[1]

## DEBTORS

Remington Outdoor Company, Inc.

FGI Holding Company, LLC

FGI Operating Company, LLC

Barnes Bullets, LLC

Remington Arms Company, LLC

Huntsville Holdings LLC

TMRI, Inc.

Remington Arms Distribution Company, LLC

32E Productions, LLC

Great Outdoors Holdco, LLC

RA Brands, L.L.C.

FGI Finance Inc.

Outdoor Services, LLC

## NON-DEBTOR CORPORATE ENTITIES

Remington Outdoor (UK) Ltd.

Remington Licensing Corporation

Remington Charitable Fund

## CREDIT FACILITY LENDERS

### Priority Term Loan Lenders

Cantor Fitzgerald Securities

Whitebox GT Fund, LP

Whitebox Multi-Strategy Partners, LP

Whitebox Credit Partners, LP

Whitebox Asymmetric Partners, LP

Pandora Select Partners, LP

---

[1] Inclusion in a category for search purposes is solely to illustrate the conflicts search process and is not an admission that any party has a valid claim against the Debtors or that any party properly belongs in the Debtors' schedules or has a claim or legal relationship to the Debtors of the nature described in the schedules.

1

Whitebox Caja Blanca Fund, LP

**FILO Lenders**[2]

Ankura Trust Company, LLC

Funds and accounts managed by Franklin Advisers, Inc.

**Exit Term Loan Lenders**

Ankura Trust Company, LLC

Funds and accounts managed by Franklin Advisers, Inc.

JPMorgan Chase Bank, N.A.; funds and accounts managed by JPMorgan Chase Bank, N.A.

J.P. Morgan Investment Management Inc.; funds and accounts managed by J.P. Morgan Investment Management Inc.

Lord Abbett; funds and accounts managed by Lord Abbett

Renaissance Investment Holdings Ltd.

Teachers Retirement Systems of Oklahoma

---

[2] Where available, the names of the individual funds and accounts managed by investment advisors that are holders of the FILO Term Loan, the Exit Term Loan, and equity securities have been provided to the Office of the Bankruptcy Administrator.

### STOCKHOLDERS: KNOWN CURRENT / RECENT STOCKHOLDERS

Funds and accounts managed by Franklin Advisers, Inc.

Funds and accounts managed by J.P. Morgan Investment Management Inc.

Funds and accounts managed by JPMorgan Chase Bank, N.A

Funds and accounts managed by Lord Abbett

First Southern Securities, LLC

Logen Asset Management, L.P.

Whitebox Multi-Strategy Partners, LP

Whitebox Asymmetric Partners, LP

Renaissance Investment Holdings, Ltd.

Newmark Capital Funding 2013-1CLO

ACIS CLO 2013-1, Ltd.

Artisan Credit Opportunities Master Fund LP

DG Value Partners, LP

DG Value Partners II Master Fund, LP

Cantor Fitzgerald & Co.

Antora Peak Capital Management LP

Antora Peak Credit Opportunities Fund, LP

Schultze Master Fund, Ltd.

Hillmark Funding, Ltd.

ACIS CLO 2014-3 Ltd.

ACIS CLO 2014-4 Ltd.

ACIS CLO 2014-5 Ltd.

ACIS CLO 2014-6 Ltd.

BTIG, LLC

LCM XIII Limited Partnership

LCM XIV Limited Partnership

LCM XV Limited Partnership

LCM XVI Limited Partnership

LCM XVII Limited Partnership

LCM XVIII Limited Partnership

LCM XIX Limited Partnership

Case 20-81688-CRJ11    Doc 21    Filed 07/28/20    Entered 07/28/20 00:58:58    Desc Main
Document      Page 33 of 113

LCM XX Limited Partnership

LCM XXI Limited Partnership

LCM XXII LTD.

LCM XXIII LTD.

LCM XXIV LTD.

LCM XXV LTD.

**OFFICERS AND DIRECTORS**

Melissa Anderson

Mark Boyadjian

Jeff Brown

Emile Buzaid

Joanne Chomiak

Melissa Cofield

Ken D'Arcy

Gene Davis

Billy Hogue

Rick Kilts

William Krogseng

Mark Little

Matt McCarrol

Chuck Rink

Charles Thurman

Matt Trask

John Trull

Brian Wheatley

Ehsan Zargar

## BANK ACCOUNTS

Adirondack Bank

Cadence Bank

First State Bank

Wells Fargo Bank

## COMPANY-HELD EQUITY INTERESTS

Walmart Inc.

## UCC SEARCH NAMES

Remington Outdoor Company, Inc.

FGI Holding Company, LLC

FGI Operating Company, LLC

Barnes Bullets, LLC

Remington Arms Company, LLC

Huntsville Holdings LLC

TMRI, Inc.

Remington Arms Distribution Company, LLC

32E Productions, LLC

Great Outdoors Holdco, LLC

RA Brands, L.L.C.

FGI Finance Inc.

Outdoor Services, LLC

Remington Outdoor (UK) Ltd.

Remington Licensing Corporation

Remington Charitable Fund

## DEBTORS' PROFESSIONALS

O'Melveny & Myers LLP

M-III Advisory Partners, LP

Akin Gump

Womble Bond Dickson

5

Shook, Hardy, and Bacon

Swanson, Martin, and Bell

## EQUITY OWNERS, POTENTIALLY 5% OR GREATER

Schultze Master Fund, Ltd.

Funds and accounts managed by Franklin Advisers, Inc.

Funds and accounts managed by J.P. Morgan Investment Management Inc. and/or funds and accounts managed by JPMorgan Chase Bank, N.A.

## 40 LARGEST UNSECURED CREDITORS

Pension Benefit Guaranty Corporation

State of Arkansas, Business Development, Arkansas Economic Development Commission

City of Huntsville, Alabama

State of Alabama

State of Missouri

St. Marks Powder

Eco-Bat Indiana LLC

Art Guild Inc.

Dasan USA Inc.

Alliant TechSystems Operations LLC

QIQIHAR Hawk Industries Co. Ltd.

MSC Industrial Supply Co.

Swanson Martin & Bell

SAP America Inc.

Helio Precision Inc.

The Doe Run Company

DIE-NAMIC Inc.

Alltrista Plastics LLC

A M Castle & Co. / Castle Metals

Decimet Sales Inc.

Kennametal Inc.

Brothers & Co.

Vista Outdoor Sales LLC

Amark Engineering & Mfg Inc.

6

Geodis Logistics LLC

Chessgroup

Continental Traffic Service Inc.

Dayton Lamina Corp.

Safari Classics Production

General Dynamics

G & R Manufacturing

National Rifle Association

Oberg Industries

Westrock Converting

Bushnell Inc.

Electro-Tech Inc.

Nordic Components Inc.

Producto Corporation

Luvata Appleton LLC

Village of Ilion Treasurer, Utica, NY

**32E Productions, LLC**

Cantor Fitzgerald Securities

Ankura Trust Company, LLC

**Barnes Bullets, LLC**

Bank of America, N.A.

Ankura Trust Company, LLC

Wilmington Trust, National Association

Cantor Fitzgerald Securities

**FGI Finance Inc.**

Bank of America, N.A.

Ankura Trust Company, LLC

Wilmington Trust, National Association

Cantor Fitgerald Securities

Case 20-81688-CRJ11    Doc 21    Filed 07/28/20    Entered 07/28/20 00:58:58    Desc Main
Document      Page 37 of 113

**FGI Holding Company, LLC**

Bank of America, N.A.

Ankura Trust Company, LLC

Wilmington Trust, National Association

Cantor Fitzgerald Securities

**FGI Operating Company, LLC**

Bank of America, N.A.

Ankura Trust Company, LLC

Wilmington Trust, National Association

Cantor Fitzgerald Securities

**Great Outdoors Holdco, LLC**

Cantor Fitzgerald Securities

Ankura Trust Company, LLC

**Huntsville Holdings Company, LLC**

Ameritas Life Insurance Corporation

**Huntsville Holdings LLC**

Cantor Fitzgerald Securities

Ankura Trust Company, LLC

**Outdoor Services, L.L.C.**

Caterpillar Financial Services Corporation

**Outdoor Services LLC**

Internal Revenue Service

**Outdoor Services, LLC**

Cantor Fitzgerald Securities

Ankura Trust Company, LLC

**RA Brands, L.L.C.**

Bank of America, N.A.

Ankura Trust Company, LLC

Wilmington Trust, National Association

Cantor Fitzgerald Securities


**Remington Arms Company, LLC**

Air Liquide Industrial U.S. LP

Bank of America, N.A.

Ankura Trust Company, LLC

Wilmington Trust, National Association

NMHG Financial Services, Inc.

HYG Financial Services, Inc.

J.R. Automation Technologies, LLC

Cantor Fitzgerald Securities


**Remington Arms Company, Inc. and Herkimer County Sheriff**

Richard Keith Caister and d/b/a RKC Products

The Edmunds Manufacturing Company and d/b/a Edmunds Gages


**Remington Arms Company, Inc.**

Regions Commercial Equipment Finance, LLC


**Remington Arms Distribution Company, LLC**

Wilmington Trust, National Association

Bank of America, N.A.

Ankura Trust Company, LLC

Cantor Fitzgerald Securities

**Remington Charitable Fund**

[No Results]


**Remington Licensing Corporation**

[No Results]

9

**Remington Outdoor (UK) Ltd.**

[No Results]

**Remington Outdoor Company, Inc.**

Wilmington Trust, National Association

Bank of America, N.A.

Ankura Trust Company, LLC

Cantor Fitzgerald Securities

**Remington Outdoors Company, Inc.**

Ellison Technologies

**TMRI, Inc.**

Bank of America, N.A.

Ankura Trust Company, LLC

Wilmington Trust, National Association

Cantor Fitzgerald Securities

## LETTERS OF CREDIT

Geodis Logistics LLC

## FREIGHT BROKERS AND COMMON CARRIERS

CTSI

Continental Traffic Service, Inc.

## INSURANCE

Sompo

Berkshire Hathaway

Greewich Insurance Company

XL Insurance America, Inc.

National Fire & Marine Insurance

Ironshore

Hiscox/StarStone/ACT

AIG

Starr Aviation

Indemnity Insurance Company of North America

Chubb

Endurance

Markel

Axis

Navigators

Beazley

Berkley Pro

US Specialty

WorldSource

XL

Berkley Asset Protection

Illinois Union Insurance Co. (Chubb)

James River Insurance Company

North American Capacity Insurance Company

Westchester Surplus Lines Insurance Company

ACE Property & Casualty Insurance Company

## **LANDLORDS**

PanCal Southhaven One 127, LLC

First Stamford Place SPE L.L.C. and Merrifield First Stamford SPE L.L.C.

Stout Industral Properties, LLC

PAM Industrial Properties, LLC

Norma J. Allen

Sturgis Economic Development Corporation

BCR Enterprises, Ltd.

Glassell Family LLC

FW Properties, L.L.C.

Eagle Bulk Shipping International (USA) LLC (Subtenant)

## LITIGATION (PENDING / POTENTIAL)

United Mine Workers of America, Local Union 717

U.S. Environmental Protection Agency

Chemetco, Inc. Superfund Site

Layne Kay and Emily Kay v. Barnes Bullets (Utah Supreme Court, Appellate Case No. 2018-0821-SC)

Lori Evans (USDC, E.D. Ark., Case No. 4:19-cv-801)

Sharron Evars (USDC, N.D. Ala., Case No. 5:20-cv-0705)

John Coburn (EEOC Case No. 493-2020-00206)

Alison Manning (EEOC Case No. 420-2020-01534)

Mollie Todd (Smalls Claims Court, District Court of Madison County, Ala., Case No. 47-SM-2019-000969.00)

Worker's Comp Litigant:  Floyd Brothers (Case No. G807557)

Workers Comp Litigant:  Avery Gardner (Case No. F701796)

Workers Comp Litigant:  Johnathan Oliver (Case No. G602108)

Workers Comp Litigant:  Anthony Webster (Case No. G70625)

Workers Comp Litigant:  Chris Strong (Case No. G703571)

Workers Comp Litigant:  Richard Zona (Case No. 985039)

Workers Comp Litigant:  Ruth Suarez (Case No. 300084274)

Workers Comp Litigant:  Corey Castleman (Case No. 201356687)

Workers Comp Litigant:  Nicholas Croan (Case No. 16-014763)

Workers Comp Litigant:  Monica Czarrunchick (Case No. G0743503)

Workers Comp Litigant:  Jason Lape (Case No. G1328832)

Workers Comp Litigant:  Colleen Smith (Case No. G0634470)

Workers Comp Litigant:  Colleen Stanburg (Case No. 60309132)

Workers Comp Litigant:  Susan Barger (Case No. 60703435)

Workers Comp Litigant:  Stephen Brown (Case No. 60500499)

Workers Comp Litigant:  Adam Boepple (Case No. G1851684)

Workers Comp Litigant:  Kim Faubert (Case No. GL450563)

Workers Comp Litigant:  Kevin Trevor (Case No. G1067691)

Workers Comp Litigant:  Matthew Davis (Case No. 60805819)

Workers Comp Litigant:  Lois Sill (Case No. G0490071)

Workers Comp Litigant:  Kerry Atwood (Case No. 60703961)

Workers Comp Litigant:  Scott Miller (Case No. 60607085)

Workers Comp Litigant: Raymond Wiegand (Case No. 60506411)

Workers Comp Litigant: Todd Zielinski (Case No. G2063301)

Workers Comp Litigant: Eugene Smith (Case No. 60608514)

Workers Comp Litigant: Larry Hallenbeck (Case No. G2210819)

Workers Comp Litigant: John McKusick (Case No. G1975913)

Workers Comp Litigant: Jessica Boepple (Case No. G1583518)

Workers Comp Litigant: Basilio Santiago (Case No. G1581701)

Workers Comp Litigant: Douglas Pedrick (Case No. G2211672)

Workers Comp Litigant: Eric True (Case No. G1702070)

Workers Comp Litigant: Cynthia Uhlig (Case No. G1975103)

Workers Comp Litigant: Wade Haponski (Case No. G2212070)

JoAnn Harris (USDC, W.D. Okla., Case No. 5:15-cv-1375) / USCA, 8th Circuit

Ryan Carr (USDC, W.D. Okla., Case No. 5:16-cv-1153)

Cody Shearouse (USDC, S.D. Ga., Case No. 4:17-cv-0107)

Vincent Tate (Circuit Court for the County of Henrico, Va., Case No. 087CL17004633-00)

Roger Stringer, (USDC, S.D. Miss., Case No. 2:18-cv-0059) USCA, 5th Circuit

Kimberly Hyder, (USDC, S.D. Miss., Case No. 2:18-cv-0059) USCA, 5th Circuit

Zachary Stringer, (USDC, S.D. Miss., Case No. 2:18-cv-0059) USCA, 5th Circuit

Sharon Teague and Randall Teague (Estate of Mark Randall Teague) (USDC, D. Mont., Case No. 9:18-cv-0184)

Brett Nielsen (USDC, D. Utah, Case No. 2:20-cv-0011)

Richard Clay (Estate of) (Circuit Court of St. Clair County, Ala., Case No. CV2018-900221)

Alyssa Scott (Estate of) (USDC, N.D. Ala., Case No. 19-cv-1891)

Steven Wharton (San Diego County Superior Court, State of California, Case No. 37-2019-000121144-CU-PL-CTL)

Miguel Angeles (Santa Barbara County Superior Court, State of California, Case No. 18-cv-4922)

Travis Walton (Los Angeles County Superior Court, State of California, Case No. BC723793)

Precious Sequin (USDC, E.D. La., Case No. 2:14-cv-2442) USCA, 5th Circuit

Primus Group, LLC (USDC, S.D. Ohio, Case No. 2:19-cv-3450) USCA, 6th Circuit

Donna L. Soto (Estate of Victoria L. Soto) v. Bushmaster Firearms International, LLC, et al. (Superior Court for the Judicial District of Fairfield, Bridgeport, Conn., Case No. FBT-CV15-6048103-S, Case Transferred to UWY-CV15-6050025-S)

Ian Hockley and Nicole Hockley (Estate of Dylan C. Hockley) v. Bushmaster Firearms International, LLC, et al. (Superior Court for the Judicial District of Fairfield, Bridgeport, Conn., Case No. FBT-CV15-6048103-S, Case Transferred to UWY-CV15-6050025-S)

William D. Sherlach (Estate of Mary Joy Sherlach) v. Bushmaster Firearms International, LLC, et al. (Superior Court for the Judicial District of Fairfield, Bridgeport, Conn., Case No. FBT-CV15-6048103-S, Case Transferred to UWY-CV15-6050025-S)

Leonard Pozner (Estate of Noah S. Pozner) v. Bushmaster Firearms International, LLC, et al. (Superior Court for the Judicial District of Fairfield, Bridgeport, Conn., Case No. FBT-CV15-6048103-S, Case Transferred to UWY-CV15-6050025-S)

Gilles J. Rousseau (Estate of Lauren G. Rousseau) v. Bushmaster Firearms International, LLC, et al. (Superior Court for the Judicial District of Fairfield, Bridgeport, Conn., Case No. FBT-CV15-6048103-S, Case Transferred to UWY-CV15-6050025-S)

David C. Wheeler (Estate of Benjamin A. Wheeler) v. Bushmaster Firearms International, LLC, et al. (Superior Court for the Judicial District of Fairfield, Bridgeport, Conn., Case No. FBT-CV15-6048103-S, Case Transferred to UWY-CV15-6050025-S)

Neil Heslin and Scarlett Lewis (Estate of Jesse McCord Lewis) v. Bushmaster Firearms International, LLC, et al. (Superior Court for the Judicial District of Fairfield, Bridgeport, Conn., Case No. FBT-CV15-6048103-S, Case Transferred to UWY-CV15-6050025-S)

Mark Barden and Jacqueline Barden (Estate of Daniel G. Barden) v. Bushmaster Firearms International, LLC, et al. (Superior Court for the Judicial District of Fairfield, Bridgeport, Conn., Case No. FBT-CV15-6048103-S, Case Transferred to UWY-CV15-6050025-S)

Mary D'Avino (Estate of Rachel M. D'Avino) v. Bushmaster Firearms International, LLC, et al. (Superior Court for the Judicial District of Fairfield, Bridgeport, Conn., Case No. FBT-CV15-6048103-S, Case Transferred to UWY-CV15-6050025-S)

Natalie Hammond v. Bushmaster Firearms International, LLC, et al. (Superior Court for the Judicial District of Fairfield, Bridgeport, Conn., Case No. FBT-CV15-6048103-S, Case Transferred to UWY-CV15-6050025-S)

Pollard v. Remington (USCA, 8th Circuit)


### TAXING AUTHORITIES

Ohio Treasurer of State, Columbus, Ohio

Delaware Division of Corporations, Dover, Delaware

Alabama Department of Revenue, Montgomery, Alabama

Franchise Tax Board, Sacramento, California

Tennessee Department of Revenue, Nashville, Tennessee

North Carolina Department of Revenue - W/H

Clark County Treasurer, Jeffersonville, Indiana

La Porte County Treasurer, Michigan City, Indiana

North Carolina Secretary of State, Raleigh, North Carolina

James W. Wilburn III, Treasurer, Lenoir City, Tennessee

Loudon County Trustee, Loudon, Tennessee

Case 20-81688-CRJ11    Doc 21    Filed 07/28/20    Entered 07/28/20 00:58:58    Desc Main
Document    Page 44 of 113

North Carolina Division of Motor Vehicles, Raleigh, North Carolina

Randolph County Treasurer, Chester, Illinois

Receiver of Taxes, Mohawk, NY

Village of Ilion Treasurer, Ilion, NY

Desoto County, Tax Collector, Hernando, Mississippi

Treasurer of Hancock County, Findlay, Ohio

Lonoke County Collector, Lonoke, Arkansas

Marion County Collector, Yellville, Arkansas

Benton County Collector, Bentonville, Arkansas

Office of the Fayette County Sheriff, Lexington, Kentucky

Crittenden County Sheriff, Marion, Kentucky

Douglas County Tax Commissioner, Douglasville, Georgia

Pinellas County Tax Collector, Seminole, Florida

Juab County Assessor, Nephi, Utah

Lafayette County Collector, Lexington, Missouri

Madison County Tax Collector, Huntsville, Alabama

Butler County Sheriff, Morgantown, Kentucky

Collector of Revenue, Springfield, Missouri

Rockingham County Tax Department, Charlotte, North Carolina

Wake County Department of Revenue, Raleigh, North Carolina

Alabama Department of Revenue, Birmingham, Alabana

City of Huntsville, Huntsville, Alabama

Arizona Department of Revenue, Phoenix, Arizona

State of Arkansas, Little Rock, Arkansas

State of California, Sacramento, California

Colorado Department of Revenue, Denver, Colorado

State of Connecticut, Hartford, Connecticut

Florida Department of Revenue, Tallahassee, Florida

Georgia Sales and Use Tax Division, Atlanta, Georgia

State of Hawaii, Honolulu, Hawaii

Idaho State Tax Commission, Boise, Idaho

Illinois Department of Revenue, Springfield, Illinois

Indiana Department of Revenue, Indianapolis, Indiana

State of Iowa Treasurer, Des Moines, Iowa

Kansas Department of Revenue, Topeka, Kansas

Kentucky State Treasurer, Frankfort, Kentucky

Louisiana Department of RevenueBaton Ruoge, Louisiana

Maine Bureau of Taxation, Augusta, Maine

Maryland Comptroller of the Treasury, Baltimore, Maryland

Massachusetts Department of Revenue, Boston, Massachusetts

State of Michigan, Lansing, Michigan

Minnesota Department of Revenue, St. Paul, Minnesota

Mississippi Tax Commission, Jackson, Mississippi

Missouri Department of Revenue, Jefferson City, Missouri

Nebraska Department of Revenue, Lincoln, Nebraska

Nevada Department of Taxation, Las Vegas, Nevada

State of New Jersey, Trenton, New Jersey

New Mexico Taxation and Revenue Department, Santa Fe, New Mexico

New York State Sales Tax, Albany, NY

North Carolina Department of Revenue, Raleigh, North Carolina

State of North Dakota, Bismarck, North Dakota

Treasurer of State, Columbus, Ohio

Oklahoma Tax Commission, Oklahoma City, Oklahoma

Pennsylvania Department of Revenue, Harrisburg, Pennsylvania

State of Rhode Island, Providence, Rhode Island

South Carolina Department of Revenue, Columbia, South Carolina

South Dakota Department of Revenue, Sioux Falls, South Dakota

Texas State Treasurer, Austin, Texas

Utah State Tax Commission, Salt lake City, Utah

Vermont Department of Taxes, Montpelier, Vermont

Virginia Department of Taxation, Richmond, Virginia

State of Washington Department of Revenue, Seattle, Washington

Department of Tax & Revenue, Charleston, West Virginia

Wisconsin Department of Revenue, Milwaukee, Wisconsin

Wyoming Department of Revenue, Cheyenne, Wyoming

District of Columbia Government, Washington, DC

Alcohol Tobacco Tax & Trade Bureau. Cincinnati, Ohio

## **PROMISSORY NOTES**

Industrial Row Realty LLC (as successor-in-interest to H&R 1871, LLC)

L R Nash (SMK) Ltd.

Remington Arms Company, LLC

## **OTHER EQUITY INTERESTS**

Remington Licensing Corporation

Sporting Activities Insurance Limited

Wal-Mart Stores, Inc.

## UTILITY PROVIDERS

AAA Disposal Services Inc. (Disposal)

ADCO Companies Ltd. (Boiler Room / Steam)

Airgas USA LLC (Gas)

AT&T (Phone at all Remington Locations)

Centracom (Telephone)

CenturyLink (Telephone)

CenturyLink Communications LLC (Telephone)

City of Huntsville Utilities (Huntsville, Alabama) (Electricity)

City of Lexington, Missouri (Water / Sewer)

Constellation NewEnergy - Gas Division

Cox Communications (Internet Services)

Duke Energy (Electricity)

Empire District (Electricity)

Evergy Inc. (Energy)

First Electric Cooperative Corp. (Electricity)

Frontier Communications (Internet / Telephone)

Herkimer County Sewer District (Mohawk, NY) (Sewer)

Ilion Water Department (Ilion, NY) (Water)

Intercall (Atlanta, GA) (Telephone)

Jay Mecham's Country Garbage (Mona, Utah) (Landfill Usage)

Madison Electric Inc. (Madison, Alabama) (Electricity)

Mail Finance Inc. (Dallas, Texas) (Electricity)

Mona City (Mona, Utah) (Water / Sewer)

National Grid (Gas)

Piedmont Natural Gas Company (Dallas, Texas) (Gas)

Rocky Mountain Power (Electricity)

Spectrum (Cable TV and Internet)

Sprague Operating Resources LLC (Electricity / Gas)

Town of Mayodan (Mayodan, NC) (Water / Sewer)

Verizon (Telephone)

Village of Ilion, Light Department (Ilion, NY) (Electricity)

18

Waste Management (Carol Stream, Illinois) (Waste Management)

Waste Management of Alabama North (Huntsville, Alabama) (Waste Management)

Waste Management of New York - Utica (Waste Management)

Windstream Corporation (Louisville, Kentucky) (Data Networking / Communications)

## ALABAMA BANKRUPTCY JUDGES (N.D. ALA.)

James J. Robinson

Tamara O. Mitchell

Jennifer H. Henderson

Clifton R. Jessup, Jr.

D. Sims Crawford

## BANKRUPTCY ADMINISTRATOR / TRIAL ATTORNEYS (N.D. ALA.)

Thomas Corbett (Bankruptcy Administrator)

Richard Blythe (Assistant Bankruptcy Administrator)

Jon Dudeck (Deputy in Charge)

Tazewell Shepard (U.S. Trustee's Office, Northern Division)

Judith Thompson (U.S. Trustee's Office, Northern Division)

Michele T. Hatcher (U.S. Trustee's Office, Northern Division)

## EXECUTORY CONTRACTS
## (FROM SPREADSHEET DATED 4/27/20 FROM CLIENT)

Windstream

Microsoft EA & SCE

Rimini Street

Paymetric

BAH (formerly Morphick)

Panaya

DPSI

ERP Maestro

DarkTrace

NetBrain

SAP / SuccessFactors

19

SAP C4C

SEI

AT&T

CISCO SmartNet (via CDW)

Segra (formerly Data Chambers / Northstate)

Sunview Software

Illinois Department of Natural Resources

National Skeet Shooting Association

Widen Enterprise Inc.

MODX System

NRA Publications

Oracle / Bronto

Magento / Adobe

Union Sportsmen's Alliance

National Wild Turkey Federation

Boone & Crockett Club

Rocky Mountain Elk Foundation

Western Hunting & Conservation Expo

Full Curl Society

Sportsman for Fish & Wildlife

Ducks Unlimited

Outdoor Sportsmans Group

Heartland Waterfowl

Whitetails Unlimited

Phesants Forever

Delta Waterfowl

Independent Hunting LLC

Zmags Corp

Ruffed Grouse Society

Safari Classic Productions

Sportscar Vintage Racing Association

National Machinery

Siemens

Video Jet

Westrock

Sprague

Toshiba

SAP Success Factors

RSR (Quemetco EcoBat) Lead

Doe Run Lead

Gopher Resources - Lead

Cintas

G4S

Diversified Maintenance-RWS, LLC

Niagara LaSalle

Precision Kidd

Eaton Steel

## ADDITIONAL EXECUTORY CONTRACTS
### (FROM SPREADSHEETS DATED 5/7/20 AND 5/11/20)

**SOURCING - Direct (Raw Materials)**
RSR (Quemetco (EcoBat))
Doe Run
Gopher Resources
Sanders
Aurubis
General Dynamics-OTS
LyondelBassel

**SOURCING - Direct (Not Raw Materials)**
National Machinery
Westrock
Manth Brownell

**SOURCING - Indirect**
Sprague Operating Resources
G4S
Siemens (Fire Alarm (Lonoked))
Diversified Maintenance
Pitney Bowes
Stanley Security
Les Olson (Barnes CyberSecurity)

21

Aagard Group
Airgas
Alabama Equipment
American Food & Vending
American Safety & Health Institute (HSI)
Applied Combustion and Equipment
Arkansas Copier Center
Carlson Wagonlit Travel
Cintas
CoreTrust
Diversified Maintenance
Mail Finance / Ed & Ed Business Technology
Instream Environmental
Les Olson (MONA Barnes CyberSecurity)
LiftOne
Meridian IT
MSC Industrial Supply
National Machinery
Nationwide Power
Otis Elevator Company
Pitney Bowes
Schnitzer Southeast
Security Equipment Inc.
Shred-It
Siemens
SiteHawk
Southern Sweepers
Sprague Operating Resources
Stanley Security
Trane Building Services
Vanguard Cleaning Systems
Videojet
Waste Management
Wiese USA
Stryker Tech LLC

**SALES - Retail Customers (Domestic)**

Mills Fleet Farm

Academy Sports & Outdoors

Bass Pro - Cabela's

Bi-Mart

Dunham's Sporting Goods

Mattoon Rural King

Midway Arms

Pacific Flyway

Scheel's Consolidated

Big 5 Corporation

**SALES - Wholesale Distributors (Domestic)**

All State Police Equipment

Bailey's Firearms Country

Bailey's House of Guns

Barney's

Craig's Firearms

Davidson's

Ed's Public Safety

Firing Line

H&H Gunrange

Kiesler

Lawmen Supply Company

Lawmens' & Shooters

Lawmen's Distribution

LC Action

Lou's Police Distributors

Michigan Police Equipment

Proforce

Smyrna

Surplus Arms & Ammo

Targetmaster

The Attic

Town Police Supply

Witmer Associates

Galls

Bangers LP

Big Rock Sports, LLC

Bill Hicks & Co., Ltd.

Camfour, Inc.

Davidson's, Inc.

Grice Wholesale

Hicks Inc.

Lew Horton Distributing Co., Inc.

RSR Group

Sports South, LLC

VF Grace, Inc.

Williams Shooters Supply Inc.

Zanders Sporting Goods


**SALES - Sales Reps (Domestic)**

Maschmedt & Associates

Murski Breeding Sales, Inc.

ProActive Sales & Marketing


**SALES - Wholesale Distributors (Foreign)**

A&A Dealers

AS Oliva

Abaco Hardware

Aekaphatt Firearms Ltd.

Al Hadaf

Arcocity

Armaq

Artemis

Artemix

Astroclassic

B&B Target

Bell

Bignami

Borchers

Bowmac

BRS

Cabela's

Cairo

Casa El Cazador

CB Servis Centrum

Central Dealers

Chasse Et Loisirs

Civil Arms

Comercial Palmera

Delta Firearms

Diamantopoulos

Discovery

Dolphin Gun Company

Dossul

Edelweiss

Ellwood Epps

Europa

Fancesa

Faulkners

Firearms Training Institute

Formalito

Full Metal

GDV

GP Interarms

General Dynamics

Glaser

Glenn's Ammo

Gowen

Gravel

Grunig

Helmut Hoffman - Germany

Helmut Hoffman - Austria

Hokuto Trading

25

Horst Trigatti

Hubertech

Importadora Daher

Izhevsky

Jaguar Gruppen

Jakt & Friluft

Juan Ruiz de Velazco (Vega Seis)

Krometal

Kulim Arms

Lawry Shooting Sports

LDS Long Distance Services

Le Baron

Leonowens

Magne Landro

Magnum

Mario Ludwig

Meguro Gun Shop

Midarms

Municiones

Nippo Kogyo

Norma AS

Norma Precision AB

Normark

North Sylva

Omnium Celdonien

Outdoor Brands

Parabellum

PB Dionisio

Peche

Pronature

Purnavu Muiza

Raja Firearms

Raytrade

Case 20-81688-CRJ11    Doc 21    Filed 07/28/20    Entered 07/28/20 00:58:58    Desc Main
Document    Page 56 of 113

Raytrade UK Ltd

Redl Sports

Riflecraft

Rivolier

RUAG Germany

Safari & Outdoor

Safari Master

Sail Outdoors

Sako

Sarsilmaz

Shooting Supply Ltd.

Skenco Europe

Skenco International

Soboce

Sofarca

Sologne

Special Tactical

Star Force

Tankeeraq

Thai National

The Gunshop

Topth

Veidihornid

Velkoobchod Zbrane

West Gun Trading Co.

Wholesale Sports


**SALES - Brokers (Foreign)**

ARLE

Atlantic Diving Supply

Aquaterro

Aquila

Ascim

Azimuth Defense

B&B Target

BU Combines

Banzai SPOL S.R.O.

Cairo

Century Dynamics

Clemente Serna Barrera

Continental Defence Solutions

Cornerstone Technica

Counter Measures Technologies

Droo Tactical Trading

DSE Corporation

Dukef Holdings

DW Global

Eton International

Eurooptic

G4 Solutions & Research

Glaser Trading

Glaucus APS

Global Nepal Trading & Consultants

Goldbelt Wolf

Gravel Agency

Hantaurus Shot OY

Helmut Hoffman - Germany

Hyphen Industrial

Iberfix

Igniter

Importadora

K Tree Corp.

Korea Infomax Science

Kornnarath Ltd.

LE&M Distributors

Leonowens

LHB Ltd.

MG Suber & Associates

Magne Landro AS

Magnum Vadasz

Milipol ZRT

Mission Equipment Sweden

Naphantorn Limited Partnership

Nathat

PB Dionisio

Poligoni Shenjetarise Katana

Priamos s Coumas

Prof Investment Co.

Promoteq Sandviken

Quintilio Chesi E Hijos

Rainier Arms

Rein International Group

Rescomp

Richmond Global Traders

Riflecraft

Rigg AS

Rivolier SAS

Royal Defence

RUAG Ammotec

SEEEP

Sirien SA

Tactical Power

Tactical Trading

Thai National Trading Co.

UMO

Val Redena

W.H. Brennan

XTEK

**SALES - Foreign Governments**

Republic of Tunisia

Royal Defence, for Resale to Thailand


**SALES - U.S. Government**

US Department of Homeland Security - FLETC

US Department of Justice

US Army Contracting Command - Foreign Military Sales

NSWC

US Department of Energy

US21 Inc. / US Department of State

US Department of Agriculture - FS

US SOCOM - United States Special Operations Command

US Department of Homeland Security - ICE

US Department of Homeland Security - USSS

US Department of State

FRS


**LICENSING - Outbound Trademark Licenses**

Ashgrove Marketing

Baschieri & Pellagri

Buck Knives

Coastal Pet

Crosman / Velocity Outdoor

Deperate Enterprises

Gator Cases

High Performance Designs

IRIS

Nippo Kogyo

Open Roads Brands

Outdoor Cap

PEM America

SMK

Smoky Mountain Knife Works

Southern Fried Cotton

Top Promotions

Vintage Editions

**LICENSING - Inbound Licenses**

Haas Outdoors, Inc.

Jordan Outdoor Enterprises, Ltd.

MagPul Industries Corp.

National Machinery

Ducks Unlimited

Norgon, LLC

Silvers, Robert

Advanced Technology International USA, LLC

Veil Camo LLC

**MARKETING - TV Sponsorship Agreements**

Heartland Waterfowl

Independent Hunting

Outdoor Sportsman Group

**MARKETING - Marketing Transaction Agreements**

NRA

Delta Waterfowl

Full Curl Society

National Wild Turkey Federation

Outdoor Sportsman Group/KSE Sportsman

Pheasants Forever

Rocky Mountain Elk Foundation

Rocky Mountain Elk Foundation (1st amendment)

Ruffed Grouse Society

SportscarVintage Racing Association

Western Hunting & Conservation Expo

Sportsmen for Fish & Wildlife

Whitetails Unlimited


**MARKETING - Event Sponsorship Agreements**

None


**MARKETING - Conservation Sponsorship Agreements**

Ducks Unlimited

**CONSUMER SERVICE - Rebate Services**

Velocity


**CONSUMER SERVICE - Warranty and Repair Services**

Wild West Guns

Sprague's Sports Inc.

J & G Gunsmithing

Higher Power Outfitters Inc.

Scheels All Sport

Mann & Son Sporting Goods

Paducah Shooters Supply

Williams Gun Sight

Dick Williams Gun Shop, Inc.

Alhman's Inc.

B&B Arms

Skip's Gun Shop

Wild West Guns

The Gunworks of Central New York

Sports World

Allison & Carey Gunworks

Southland Gun Works, Inc.

Scheels All Sport

Triton Arms

Carter Gunsmithing

**CUSTOMER SERVICE - Co-Op Program**

None

**FULFILLMENT - Logistics and Warehousing**

Geodis

Continental Traffic Service

DG Advisor LLC

Livingston

GCB Glover Customs Brokers

**FULFILLMENT - Shipping**

CTSI

FedEx Transportation Services

Manitoulin Transport

Old Dominion Freight Line

Saia Inc.

YRC Inc.

Swift Transportation

United Parcel Service

Ozark Motor Linds (Ozark Motor Lines)

A. Duie Pyle

Teals Express

XPO Logistics

**COMPLIANCE - Environmental Health & Safety**

Cintas

HSI

Safety Kleen

Siemens

Site Hawk

VSC

Waste Management

ACE Industries

Advantage

Case 20-81688-CRJ11    Doc 21    Filed 07/28/20    Entered 07/28/20 00:58:58    Desc Main
Document      Page 63 of 113

Air Gas

ALX

American Equipment Inc.

Aon

Apex Engineering

Bell

Bronstein Container

Brown Randall

Call-Em-All

Cell Mark

Clean Harbors

Concentra

Confidata

CTEH

David's Fire Equipment

Dr. McFadden

ECCI

Enersolv

Environmental Resource Center

Environmental Works

Fastenal

Foster Brothers

Frakes

FTN

G4S

Gallagher Bassett

Gellco

GHD

Grainger

HazMat

Heritage

Howa

Hoya

Case 20-81688-CRJ11    Doc 21    Filed 07/28/20    Entered 07/28/20 00:58:58    Desc Main
Document      Page 64 of 113

Independent Electric

Industrial Health Council

Industrial Hearing

Instream

Interplex

JJKeller Online

Johnson Contracting

K Safety

Koorsen

K-ter

L&T Health Systems

Life Science Labs

Lion Technologies

LSC

Marx Optical

Melfie's Shoes

Metalico

MJ Communications

Modern Shoes

MSC

MT2

Northern Safety

One Stop

Opaque Smoke School

Paper & Dust Pros

Pollution Control Incorporated

Shoe Maker

Simplex Grinell

Slocum Dickson

Sound Choice

Southern Optical (switching vendor)

Spohns

Terrell Technical

35

Thompson Tractor

Tim Crumb

TK Group

Utah Fire Equipment

Utah Manufacturing Association

Utah Safety Council

WCF Insurance

Work Wear


**COMPLIANCE - Firearms, Ammo and Sales**

Navex Global

Amber Roads

Orchid Advisors


**FINANCE - Insurance Brokerage**

Aon


**FINANCE - Insurance Policies**

None


**INFORMATION TECHNOLOGY - Software**

SAP

Microsoft

DarkTrace

Windstream


**SALES - International Warehouse and Distribution Agreements**

Borchers, S.A.

Helmut Hofmann GMBH

Jaguar Gruppen A/S

Midarms, SPRL

Norma Precision AB

Raytrade Pty Ltd.

Raytrade UK Limited

Sako Ltd.

Skenco Europe, Kft.

**LEASES**

Norma J. Allen

Sturgis Economic Development Corporation

FW Properties, LLC

Toyota Industries Commercial Finance

HYG Financial Services

BCR Enterprises Ltd.

Empire State Realty Trust (ESRT) First Stamford Place SPE LLC

Eagle Bulk Shipping International (USA) LLC

GEODIS Logistics LLC

Arkansas Copier (De Large)

Safety Kleen

Wiese Lifts

Mail Finance Inc.

Stout Industrial (Tom Stout and Pam Stout)

PAM Industrial Properties

Applied Combustion

MacCopy

Great America Financial/Toshiba Business Solutions

Glassell Family LLC

S&K Industries

PanCal Southhaven One 127, LLC


**OTHER PARTIES SUBMITTING LOI'S**

(CONFIDENTIAL)

<u>**Schedule 2**</u>

**Potential Connections or Related Parties**

(1)     The State of South Dakota is a taxing authority of the Debtor. The South Dakota Investment Council (a/k/a SDIC) is a shareholder of a current client of Ducera in an unrelated M&A transaction.

(2)     The State of California is a taxing authority of the Debtor. The California Public Utilities Commission (a/k/a CPUC) is a current client of Ducera in an unrelated advisory engagement in connection with the PG&E chapter 11 cases.

(3)     Franklin Advisers, Inc. and its managed accounts (collectively, "**Franklin**") is a (i) lender under the Debtors' prepetition FILO Term Loan Agreement; (ii) lender under the Debtors' Exit Term Loan Agreement; and (iii) current or recent stockholder of the Debtors. Franklin is a historical and current client of Ducera in unrelated restructuring situations, as well as in connection with advising certain First Lien Lenders of the Debtors in connection with the Debtors' 2018 chapter 11 cases under *In re Remington Outdoor Co., Inc.*, Case No. 18-10684 (BLS) (Bankr. D. Del.) (the "**2018 Chapter 11 Cases**").

(4)     The Cincinnati High Yield Desk of J.P. Morgan Investment Management Inc., as investment manager and authorized agent of certain discretionary accounts ("**JPM-CHY**") is a current or recent stockholder of the Debtors. JPM-CHY is a historical and current client in unrelated restructuring situations, as well as in connection with advising certain First Lien Lenders of the Debtors in connection with the 2018 Chapter 11 Cases.

(5)     The Indianapolis High Yield Desk of JPMorgan Investment Management Inc., as investment manager and authorized agent of certain discretionary accounts ("**JPM-IHY**") is a current or recent stockholder of the Debtor. JPM-IHY is a historical and current client in unrelated restructuring situations.

(6)     Whitebox Advisors LLC, as investment manager and authorized agent of certain discretionary accounts ("**Whitebox**") is a (a) lender under the Debtors' prepetition Priority Term Loan Credit Agreement; and (b) current or recent stockholder of the Debtors. Whitebox is a historical and current client of Ducera in unrelated restructuring and M&A situations.

43873320 v1

**Exhibit B**

**Proposed Interim Order**

43873320 v1

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| REMINGTON OUTDOOR COMPANY, INC., *et al.*,[1] | Case No. 20-81688-11 |
| Debtors. | Joint Administration Requested |

## INTERIM ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF DUCERA PARTNERS LLC AS INVESTMENT BANKER TO THE DEBTORS

Upon the *Debtors' Application for Entry of Interim and Final Orders Authorizing the Employment and Retention of Ducera Partners LLC as Investment Banker to the Debtors* (the "**Application**")[2] filed by the above-captioned debtors and debtors in possession (the "**Debtors**") for entry of an interim order (this "**Interim Order**") pursuant to Bankruptcy Code section 327(a) and Bankruptcy Rules 2014(a) and 2016 authorizing the Debtors to retain and employ Ducera Partners LLC ("**Ducera**"), as investment banker for the Debtors effective as of [July 27, 2020] (the "**Petition Date**"), in accordance with the terms and conditions of that certain engagement letter executed on May 15, 2020, including any amendments and schedules thereto (the "**Engagement Agreement**"), attached hereto as **Exhibit 1**, all as more fully set forth in the Application; and upon consideration of the Meyer Declaration filed contemporaneously therewith; and upon the First Day Declaration; and it appearing that (i) the Court has jurisdiction over these Chapter 11 Cases and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405). The Debtors' corporate headquarters are located at 100 Electronics Boulevard SW, Huntsville, AL 35824.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

43873320 v1

the Application under 28 U.S.C. §§ 1334(b) and 157, and the *Amended General Order of Reference* from the United States District Court for the Northern District of Alabama dated as of July 17, 1984, (ii) venue of these Chapter 11 Cases and the Application in this Court is proper under 28 U.S.C. §§ 1408 and 1409, (iii) the Application is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Court may enter interim and final orders consistent with Article III of the United States Constitution, and (iv) notice of the Application was adequate and proper under the circumstances, and no other or further notice need be given; and this Court being satisfied, based on the representations made in the Application and the Meyer Declaration, that Ducera is a "disinterested person" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and as required under section 327(a) of the Bankruptcy Code, and that Ducera represents no interest adverse to the Debtors' estates; and the Court having held an interim hearing, if necessary, to consider the relief requested in the Application (the "**Interim Hearing**"); and upon the record of the Interim Hearing, if any; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and it appearing that the relief requested in the Application is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED, ADJUDGED, AND DECREED THAT**:

1.     The Application is GRANTED on an interim basis to the extent set forth herein.

2.     In accordance with Bankruptcy Code section 327(a), the Debtors are authorized to employ and retain Ducera as their investment banker effective as of the Petition Date under the terms set forth in the Application, the Meyer Declaration, and the Engagement Agreement,

Case 20-81688-CRJ11    Doc 21    Filed 07/28/20    Entered 07/28/20 00:58:58    Desc Main
Document      Page 71 of 113

including the Fee Structure and Indemnification Provisions set forth therein (as modified by this Interim Order).

3.     All of Ducera's fees and expenses, as set forth in the Engagement Agreement, are approved pursuant to section 328(a) of the Bankruptcy Code and shall not be evaluated under the standard set forth in section 330 of the Bankruptcy Code, except that the Bankruptcy Administrator shall retain all rights to object to Ducera's fees under the Engagement Agreement based on the reasonableness standard provided for in section 330 of the Bankruptcy Code.  Ducera's fees and expenses shall be paid in the amounts, at the times and in the manner described in the Engagement Agreement.

4.     The terms of the Engagement Agreement, as modified by this Interim Order, are reasonable terms and conditions of employment and are approved.

5.     Ducera shall use reasonable efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these Chapter 11 Cases.

6.     The Indemnification Provisions set forth in the Engagement Agreement are approved, subject during the pendency of these Chapter 11 Cases to the following:

> (a)     if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these Chapter 11 Cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these Chapter 11 Cases, Ducera believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Agreement, as modified by this Interim Order, including without limitation the advancement of defense costs, Ducera must file an application therefore in this Court, and the Debtors may not pay any such amounts to Ducera before the entry of an order by this Court approving such payment.  This subparagraph (a) is intended only to specify the period during which the Court shall have jurisdiction over any request by Ducera for indemnification, contribution or reimbursement and is not a provision limiting the duration of the Debtors' obligation to indemnify;

> (b)     subject to the provisions of subparagraph (c) below, the Debtors are authorized to indemnify, and shall indemnify, Ducera in accordance with

Case 20-81688-CRJ11    Doc 21    Filed 07/28/20    Entered 07/28/20 00:58:58    Desc Main
Document    Page 72 of 113

the Engagement Agreement for any claim arising from related to or in connection with the services provided for, whether prepetition or post-petition, in the Engagement Agreement; and

(c)    notwithstanding any provisions of the Engagement Agreement to the contrary, the Debtors shall have no obligation to indemnify Ducera or provide contribution or reimbursement to Ducera for any claim or expense that is either (i) judicially determined to have resulted primarily from the willful misconduct, gross negligence, bad faith or self-dealing of Ducera, or (ii) settled prior to a judicial determination as to Ducera's willful misconduct, gross negligence, bad faith or self-dealing, but determined by the Court, after notice and a hearing pursuant to this subparagraph (c), to be a claim or expense for which Ducera should not receive indemnity, contribution or reimbursement under the terms of the Engagement Agreement.

7.    To the extent there may be any inconsistency between the terms of the Application, the Engagement Agreement, the Meyer Declaration and this Interim Order, this Interim Order shall govern.

8.    Notice of the Application is adequate under Bankruptcy Rule 6004(a).

9.    The Debtors are authorized to take all actions necessary to implement the relief granted in this Interim Order.

10.    The final hearing (the "**Final Hearing**") on the Application is scheduled for _____, 2020, at \_\_:\_\_ \_.m., Central Time, before this Court. Any objections or responses to entry of a final order on the Application shall be filed on or before 4:00 p.m. Central Time on _____, 2020, and served on the following parties: (a) proposed counsel for the Debtors, O'Melveny & Myers LLP, 400 South Hope Street, Los Angeles, CA, 90071 (Attn: Stephen H. Warren and Karen Rinehart) (Emails: swarren@omm.com; krinehart@omm.com) and Burr & Forman LLP, 420 20th Street North, Suite 3400, Birmingham, AL 35203 (Attn: Derek F. Meek and Hanna Lahr) (Emails: dmeek@burr.com; hlahr@burr.com); (b) the Office of the Bankruptcy Administrator for the Northern District of Alabama, P.O. Box 3045, Decatur, AL 35602 (Attn: Richard Blythe) (Email: richard_blythe@alnba.uscourts.gov); and (c) counsel to the

Creditors' Committee (if any). In the event no objections to the entry of a final order on the Application are timely received, this Court may enter a final order without need for a hearing thereon.

11. No later than two (2) business days after the date this Interim Order is entered, the Debtors shall cause this Interim Order to be served via first class U.S. mail on the following parties, which shall constitute adequate notice of the Final Hearing on the Application: (i) the Bankruptcy Administrator; (ii) the Debtors' consolidated list of creditors holding the forty largest unsecured claims; (iii) counsel to Whitebox Advisors LLC, as Priority Term Loan Lender; (iv) counsel to Cantor Fitzgerald Securities, as Priority Term Loan Agent under the Debtors' prepetition Priority Term Loan Credit Agreement; (v) counsel to Ankura Trust Company, as FILO Agent under the Debtors' prepetition FILO Term Loan Agreement, and as Exit Term Loan Agent under the Debtors' prepetition Exit Term Loan Agreement; (vi) counsel to Franklin Advisors, Inc., as FILO Lender; (vii) the United States Internal Revenue Service; (viii) counsel to the United Mine Workers of America; and (ix) all parties entitled to notice pursuant to Bankruptcy Rule 2002.

12. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Interim Order.

Dated: _____, 2020

_____
UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**

**Ducera Engagement Agreement**

43873320 v1

# Ducera

May 15, 2020

**Ducera Partners LLC**
499 Park Avenue
16th Floor
New York, NY 10022

p (212) 671-9700

DuceraPartners.com

**CONFIDENTIAL**

Remington Outdoor Company, Inc.
870 Remington Drive
P.O. Box 700
Madison, North Carolina 27025

Attention: Ken D'Arcy, Chief Executive Officer

Ladies and Gentlemen:

This amended, restated, and superseding engagement letter (the "**Superseding Agreement**" or the "**Agreement**") confirms the understanding and agreement between Remington Outdoor Company, Inc. and Ducera Partners LLC and its affiliates including, where appropriate, Ducera Securities LLC (collectively, "**Ducera**") as set forth herein.[1]  For purposes of this Superseding Agreement, Remington Outdoor Company, Inc., including any and all affiliates and subsidiaries, shall be referred to herein collectively as, the "**Company**."  This Superseding Agreement also confirms the agreement of the Company to perform its obligations, and make applicable acknowledgements, as expressly set forth herein.

**Section 1.     Scope of Engagement and Services**.  During the Term (defined in **Section 8**), Ducera shall provide investment banking services to the Company, including the Board of Directors of the Company (collectively, the "**Board**"), as the case may be, relating to the services set forth herein:

(a)     *General Financial Advisory and Investment Banking Services*.  Pursuant to this Superseding Agreement, if requested by the Company or the Board, Ducera shall: (1) familiarize ourselves with the business, operations, financial condition, and capital structure of the Company; (2) assist with the development of financial data and presentations to the Company and the Board, various creditors, and other parties; (3) analyze the Company's financial liquidity and evaluate alternatives to improve such liquidity; (4) assist with the evaluation of the Company's valuation, debt capacity and alternative capital structures in light of its projected cash flow; and, (5) provide such other advisory services as are customarily provided in connection with the analysis and negotiation of any of the transactions contemplated by this Superseding Agreement including, without limitation, any testimony in support thereof.

---

[1]     The advisory services and compensation arrangements set forth in this Superseding Agreement amend, supplement, and replace the prior agreement between the Company and Ducera, dated November 22, 2019 (the "**Ducera November Engagement Letter**"), and any other agreements entered into between the Company and Ducera prior to the date hereof; *provided*, *however*, that the indemnification previously agreed to by the Company shall continue to be in full force and effect with regard to work done by Ducera under the Ducera November Engagement Letter and any other agreements entered into between the Company and Ducera prior to the date hereof.

1

(b)    *Restructuring Services*.[2]  If requested by the Company or the Board, Ducera shall:  (1) analyze various Restructuring scenarios and the potential impact of these scenarios on the value of the Company and the recoveries of those stakeholders impacted by the Restructuring; (2) provide strategic advice with regard to restructuring or refinancing the Company's Existing Obligations;[3] (3) provide financial advice and assistance to the Company in developing a Restructuring; (4) in connection therewith, provide financial advice and assistance to the Company in structuring any new securities to be issued under a Restructuring; (5) assist the Company and/or participate in negotiations with entities or groups affected by the Restructuring; and (6) provide any required testimony in connection with the foregoing.

(c)    *Transaction Services*.[4]  If requested by the Company or the Board, Ducera shall:  (1) provide financial advice to the Company in structuring, evaluating and effectuating a Transaction, identify potential counterparties and, if requested, contact and solicit potential counterparties; (2) assist with the arrangement and execution of a Transaction, including identifying potential counterparties or parties in interest, assisting in the due diligence process, and negotiating the terms of any proposed Transaction; (3) provide strategic advice to the Company in

---

[2]    For purposes of this Superseding Agreement, the term "**Restructuring**" shall mean any restructuring, reorganization, modification, rescheduling and/or recapitalization (whether or not pursuant to one or more proceedings voluntarily or involuntarily commenced under chapters 7 or 11 of title 11 of the United States Code, 11 U.S.C. 101–1532 (as amended, the "**Bankruptcy Code**") or any cases converted thereto (the "**Bankruptcy Cases**" and the court having jurisdiction over such cases, the "**Bankruptcy Court**")) of the Company's Existing Obligations (as defined herein) that is achieved (other than a **Transaction** (as defined herein)) through, without limitation:  (a) a solicitation of waivers and consents from the holders of Existing Obligations; (b) rescheduling of the maturities of Existing Obligations; (c) a change in interest rates, repurchase, settlement, repayment, or forgiveness of Existing Obligations; (d) an amendment to the Existing Obligations; (e) conversion of Existing Obligations into equity; (f) an exchange offer, or an amend-and-extend involving the issuance of new loans and/or securities in exchange for Existing Obligations (excluding, for the avoidance of doubt, any general forbearance granted by holders of Existing Obligations); or, (g) the issuance of new loans and/or securities, sale or disposition of assets, sale of debt or equity securities or other interests, or other similar transaction or series of transactions.

[3]    For purposes of this Superseding Agreement, the term "**Existing Obligations**" shall mean the material outstanding indebtedness of the Company including, but not limited to, bank debt, bond debt, asset back lending facilities, term loans, credit facilities, trade claims, leases (both on and off balance sheet), pension obligations, litigation-related claims and obligations, other on and off balance sheet indebtedness, workers' compensation claims and obligations, and other liabilities.

[4]    For purposes of this Superseding Agreement, the term "**Transaction**" shall mean any transaction or series of transactions involving: (i) an acquisition, merger, consolidation or other business combination pursuant to which the business or assets of the Company are, directly or indirectly, combined with, or acquired by, another company; (ii) the acquisition, directly or indirectly, by a buyer or buyers (which term shall include a "group" of persons as defined in Section 13(d) of the Securities Exchange Act or 1934, as amended) of equity interests or options, or any combination hereof, constituting a majority of the then-outstanding stock of the Company or possessing a majority of the then-outstanding voting power of the Company ("**Voting Stock**"); (iii) any other purchase or acquisition, directly or indirectly, by a buyer or buyers or a majority of the assets or Voting Stock of the Company; or (iv) the formation of a joint venture partnership or similar entity with the Company or direct investment in the Company for the purposes of effecting a transfer of a majority of the Voting Stock of the Company to a third party, a lease of assets with or without a purchase option, a merger, consolidation or other business combination, a tender offer, or any similar transaction, including through a sale of a material portion of the Company's assets pursuant to Section 363 of the Bankruptcy Code (defined herein).

2

connection with the evaluation of, and responses to, activist shareholder action; and (4) provide any testimony in connection therewith.

(d)     *Financing Services.*[5]  If requested by the Company or the Board, Ducera shall:  (1) provide financial advice to the Company in connection with the structure and effectuation of a Financing, identify potential Investors and, at the Company's request, contact and solicit such Investors; (2) assist with the arrangement of a Financing, including identifying potential sources of capital, assisting in the due diligence process, and negotiating the terms of any proposed Financing; and (3) provide any testimony in connection therewith; *provided*, *however*, it is understood and agreed that nothing contained herein shall constitute an express or implied commitment by Ducera to act in any capacity or to underwrite, place or purchase any financing or securities, which commitment shall only be set forth in a separate underwriting, placement agency or other appropriate agreement relating to the Financing.  The Company may accept or reject any investor or any Financing in its sole discretion.

(e)     *Generally.  Notwithstanding anything contained in this Agreement to the contrary*, Ducera shall have no responsibility for designing or implementing any initiatives to improve the Company's operations, profitability, cash management or liquidity or to provide any fairness, valuation or solvency opinions or to make any independent evaluation or appraisal of any assets or liabilities of the Company or any other party.  Ducera makes no representations or warranties about the Company's ability to (1) successfully improve its operations, (2) maintain or secure sufficient liquidity to operate its business, or (3) successfully complete a Restructuring, Transaction, or Financing.  Ducera is retained under this Agreement solely to provide advice and services regarding the transactions contemplated by this Agreement.  Ducera's engagement does not encompass providing "crisis management."  The advisory services and compensation arrangements set forth in this Agreement do not encompass other investment banking services or transactions that may be undertaken by Ducera at the request of the Company or the Board, or any other specific services not set forth in this Agreement.  The terms and conditions of such investment banking services, including compensation and arrangements, would be set forth in a separate written letter agreement between Ducera and the Company, as approved by the Board.

Section 2.     **Compensation**.  Subject to **Section 8**, in consideration of Ducera's services set forth in **Section 1**, the Company agrees to pay Ducera:

(a)     For services rendered in accordance with **Section 1(a)**, a nonrefundable monthly cash fee of $150,000 (the "**Monthly Advisory Fee**") due and payable each month during the engagement, with the Monthly Advisory Fee commencing as of April 1, 2020, and each and every month thereafter until the termination of Ducera's services pursuant to this Agreement; *plus*,

(b)     For services rendered in accordance with **Section 1(b)**, a restructuring fee of $3,500,000, earned and payable upon consummation of a Restructuring (the "**Restructuring**

---

[5]     For purposes of this Superseding Agreement, the term "**Financing**" shall mean a private issuance, sale, or placement of the equity, equity-linked, preferred equity, including warrants or hybrid capital, convertible debt, financing instruments, obligations, or debt (including, but not limited to, revolving credit and asset backed lending facilities, and debtor-in-possession financing) of the Company with one or more lenders and/or investors, or any other type of loan, financing, debt, or rights offering (each such lender or investor, an "**Investor**").

3

Fee"); _provided, however,_ that no more than one Restructuring Fee shall be payable to Ducera hereunder; [6] _plus,_

(c)     For services rendered in accordance with **Section 1(c)**, a transaction fee payable upon consummation of any Transaction (the "**Transaction Fee**").  The Transaction Fee shall equal one-hundred-and-seventy five basis points (1.75%) of the Proceeds received by the Estate;[7]

(d)     For services rendered in accordance with **Section 1(d)**, a financing fee (the "**Financing Fee**"), which shall be earned upon commitment and payable upon the closing or termination of such Financing, equal to:

> (1)     1.500% of the face amount of any senior secured debt Raised by the Company including, but not limited to, debtor-in-possession Financing, revolving credit and asset backed lending facilities, and exit Financing; _provided_ that the Financing Fee shall be no less than $500,000;[8] and,

---

[6]     For purposes of this Superseding Agreement, a Restructuring shall be deemed to have been consummated upon: (a) the closing of the applicable transaction by which the Existing Obligations of the Company are to be restructured or refinanced (including, for avoidance of doubt, a payment in full of the Existing Obligations); or, (b) in the case of a Court approved Restructuring, the date that the applicable Chapter 11 plan of reorganization becomes effective in accordance with the terms and conditions thereof; _provided,_ that if the Restructuring is to be completed, in whole or in part, through a pre-arranged or pre-packaged Restructuring: (i) 50% of the Restructuring Fee shall be earned and shall be payable upon obtaining support (e.g. via a term sheet, restructuring support agreement or other agreement in principle documenting they key terms of such prearranged Plan) from one or more of the Company's key creditor classes (e.g., Term Loan Lenders) that is sufficient to justify filing such pre-arranged or pre-packaged Restructuring; and (ii) the remainder of such fees shall be earned and shall be payable upon consummation of the Restructuring; _provided, further,_ that in the event that Ducera is paid a Restructuring Fee in connection with a pre-arranged or pre-packaged Restructuring, and such a Restructuring is not thereafter consummated, then such fee previously paid to Ducera may be credited by the Company against any subsequent fee hereunder that becomes payable by the Company to Ducera or, if such crediting  does not equal 100% of the pre-paid portion of the Restructuring Fee, then such fee shall be returned to the Company upon the termination of the Superseding Agreement.

[7]     For purposes of this Superseding Agreement, the term "**Proceeds**" shall include any and all forms of consideration including, but not limited to: (a) all cash paid or payable to the Estate or its shareholders (or holders of executive equity awards ("**Awards**")), including indemnity and net working capital escrow amounts; (b) the fair market value of all notes, securities and other property issued or delivered or to be issued or delivered to the Estate (including holders of Awards); (c) the amount of any extraordinary dividends or distributions paid to the Estate (including Awards) in connection with or contemplated by the Transaction; and, (e) the fair market value of any debt and equity securities or other consideration (including, but not limited to, take-back paper), directly or indirectly, received by the Estate (including Awards) upon consummation of such a Transaction. ███████████████████████████████████████████████████████████████████

[8]     For purposes of this Agreement, the term, "**Raised**," shall mean the total amount committed by an Investor on terms acceptable to the Company and the Board, irrespective as to whether or not the Company draws any or all of the amount committed by an Investor, and whether or not the Company applies such amounts to finance any of its obligations or a transaction.  _For illustrative purposes_, in connection with any revolving credit or asset backed lending facilities, all fees set forth in **Section 2** shall be calculated based on the total amount of the facility, including any letters of credit, irrespective as to whether the Company is permitted immediately to draw upon the full amount of facility, including any borrowing base, at the time of commitment.

4

(2)        3.500% of the face amount of any unsecured debt or equity Raised by the Company in connection with a Restructuring or a Transaction.

No more than one Transaction Fee shall be payable to Ducera hereunder.

(e)        *Notwithstanding anything else contained in this Superseding Agreement*, the Company and Ducera acknowledge and agree that (1) the Company shall be obligated to pay Ducera the greater of the Restructuring Fee and the Transaction Fee, and _not_ both a Restructuring Fee and a Transaction Fee; (2) the Financing Fee shall be credited against the Transaction Fee if, and only if, the Financing is provided by the same party as the Stalking Horse bidder or such other winning bidder; and (3) Ducera shall receive no more than the Monthly Advisory Fee, and shall not receive any Restructuring, Transaction, or Financing Fees in the event that a material portion of the Company's assets (i.e., greater than 2/3rd of the Company's assets) are sold pursuant to Chapter 7 of the Bankruptcy Code.

(f)        The Company and Ducera acknowledge and agree that the Company is under no obligation to consummate a Restructuring, Financing, or Transaction as set forth herein and, in the event the Company is unable or unwilling to do so, the Company and the Board will have no obligation or liability (other than the Terms and Conditions set forth in **Annex A**) to Ducera other than the payment of the Monthly Advisory Fee due up to the date of termination of this Superseding Agreement. The Company and Ducera further acknowledge and agree that:  (i) hours worked, (ii) the results achieved, and, (iii) the ultimate benefit to the Company of the work performed, in each case, in connection with this engagement, may be variable, and that the Company and Ducera have taken such factors into account in setting the fees hereunder.  To the extent further services are requested by the Company and/or the Board, the Company and Ducera agree to negotiate in good faith a reasonable scope of services and fee structure in connection with any such further services provided by Ducera, depending on the size, scope and nature of the services to be provided, as well as any discount for payments rendered in connection with the scope of services set forth in **Section 1**.

Section 3.        **Expenses and Payments**.  In addition to the fees set forth in **Section 2**, the Company agrees upon request to promptly reimburse Ducera for its reasonable and documented out-of-pocket expenses, including, but not limited to, travel and transportation expenses, third party research and telecommunication expenses, printing cost, courier and other shipping and mailing cost (but excluding any expenses of Ducera's external legal counsel, absent the prior written (email to be sufficient) consent); _provided_, _however_, that the total amount of expenses shall not exceed $50,000 without the Company's prior written (email to be sufficient) approval (not to be unreasonably withheld); _provided_, _further_, that this **Section 3** shall in no way affect the Company's obligations as set forth in **Annex A** hereto.  All payments due under this Superseding Agreement (including under **Section 2** and **Section 3** hereof) shall be made in U.S. dollars in immediately available funds, free and clear of any set off, claim and applicable taxes (with appropriate gross up for any taxes withheld).

Section 4.        **Information and Announcements**.

(a)        Ducera's advice hereunder is intended solely for the benefit and use of the

Company and the Board (in their capacity as directors and, as applicable, officers of the Company), and such advice may not be used or relied upon for any other purpose or by any other person, including any security holder (in their capacity as such), employee or creditor of the Company. No advice rendered by Ducera, whether formal or informal, may be disclosed or described, in whole or in part, or otherwise referred to, without Ducera's prior written consent, which shall not be unreasonably withheld *except*: (i) to the Company's or the Board's other professional advisors (who may not further disclose such information or use it in any way other than in connection with the services contemplated by this Superseding Agreement, except as permitted herein); or, (ii) as Legally Required.[9]  In addition, the terms of this Superseding Agreement may not be disclosed or described, in whole or in part, without Ducera's prior written consent, which shall not be unreasonably withheld, *except*: (x) to the Company's or the Board's other professional advisors (who may not further disclose such information or use it in any way other than in connection with the services contemplated by this Superseding Agreement, except as permitted herein); (y) as Legally Required, including in connection with the filing of any retention application seeking with a bankruptcy court seeking authority for the Company to retain Ducera.  The Company shall be solely responsible for the accuracy and completeness of, and Ducera shall have no liability with respect to, any materials required to be disclosed to third parties or submitted to any regulatory authorities in connection with any services contemplated by this Superseding Agreement.

(b)      In performing its services hereunder, Ducera shall be entitled to rely without investigation upon all available information, including information supplied to it by or on behalf of the Company, any counterparty or their respective officers, directors, employees, accountants, counsel and other representatives and shall not be responsible for the accuracy or completeness of, or have any obligation to verify, the same. Ducera will not conduct any appraisal of assets or liabilities of any party to a transaction or evaluate the solvency thereof under any state or federal bankruptcy, insolvency or similar law.  The Company further represents and warrants to Ducera that, all written information made available to Ducera pursuant hereto will, to the best of the Company's knowledge, be complete and correct in all material respects and will not contain any untrue statement of material fact or omit to state a material fact necessary in order to make the statements therein, in light of the circumstances under which they were made, not misleading, unless otherwise clearly noted thereon or the materials are of such a nature as Ducera would or should have known that they were incomplete or otherwise subject to significant uncertainties and contingencies.

(c)      Ducera will keep confidential information of the Company made available to Ducera in connection with this Superseding Agreement, any advice rendered to the Company in connection with this engagement, and the terms of the Superseding Agreement, pursuant to that letter agreement between the Company and Ducera, dated February 11, 2019 (the "**Confidentiality Agreement**"). Ducera and the Company agree that the Confidentiality Agreement is still in effect as of the date of this Superseding Agreement has not previously been terminated by either party.

---

[9]      For purposes of this Superseding Agreement, the term "**Legally Required**" shall mean as requested or required by law, judicial authority, regulation, rule, legal process, governmental agency or other regulatory authority (including, without limitation, any stock exchange or self-regulatory organization), action, investigation or proceeding (including, without limitation, as part of any interrogatory, court order, subpoena, administrative proceeding, civil investigatory demand, in each case whether oral or written, or any other legal or regulatory process) or as required by the Company's certificate of incorporation, bylaws or stockholders' agreement.

6

Ducera understands and agrees that it may receive material non-public information regarding the Company in connection with its engagement and it will hold such information pursuant to the Confidentiality Agreement, and agrees to comply with all applicable securities laws in connection with any such information.

**Section 5.**     **Terms and Conditions**.  Because Ducera will be acting as an independent contractor to the Company in connection with this Superseding Agreement, the Company and Ducera agree to the Terms and Conditions contained in **Annex A** (the "**Terms and Conditions**"), which **Annex A** is incorporated by reference into this Superseding Agreement and is an integral part hereof.

**Section 6.**     **Acknowledgements and Waivers**.

(a)     The Company acknowledges and agrees that Ducera has been retained solely to act as investment banker in accordance with **Section 1** and that no fiduciary or agency relationship between the Company and Ducera has been created in respect of any of the transactions set forth herein or Ducera's engagement hereunder, regardless of whether Ducera has advised or is advising the Company on other matters.  In connection with the engagement, Ducera is acting as an independent contractor, with obligations owing solely to the Company and the Board and not in any other capacity.  Except as expressly contemplated by the Terms and Conditions as set forth in **Annex A**, the engagement is not intended to confer rights upon any persons not a party hereto (including security holders, employees or creditors of the Company).

(b)     This Superseding Agreement shall be binding upon and inure to the benefit of the Company, Ducera and their respective successors and assigns.  If any term, provision, covenant or restriction herein (including the Terms and Conditions) is held by a court of competent jurisdiction to be invalid, void or unenforceable or against public policy, the remainder of the terms, provisions and restrictions contained herein shall remain in full force and effect and shall in no way be modified or invalidated.

(c)     Ducera and its affiliates and certain of their respective members, officers, managers, directors and employees, as well as certain funds in which they may have financial interests, may from time-to-time acquire, hold or make direct or indirect investments in, or otherwise finance, a wide variety of companies, including parties that may have interests with respect to the Company or any transaction or other parties involved in a transaction, from which conflicting interests or duties with respect to the Company, its directors, officers and employees may arise (any such party, a "**Conflicted Party**" and collectively, the "**Conflicted Parties**").  Ducera is not currently advising, and shall not advise, any Conflicted Party, including the parties listed on **Schedule A** hereto, in any matter related to the Company, this engagement or the transactions contemplated hereunder.  Without limitation to the foregoing sentence, during the Term, Ducera will promptly (and otherwise upon the written request of the Company) inform the Board of the existence of any actual conflicts of interest that may arise after the date of this Superseding Agreement and agree to take such action as the Board may reasonably request to mitigate the effects of the circumstances described herein.  The Company acknowledges and agrees that Ducera does, and may continue to, represent the Conflicted Parties in other matters unrelated to this engagement and the Company.

(d)    Subject to **Section 6(c)**, the Company acknowledges and agrees that Ducera and its affiliates may be engaged in a broad range of transactions involving interests that differ from those of the Company and that Ducera has no obligation to disclose such interests and transactions to the Company.  The Company waives, to the fullest extent permitted by law, any claims it may have against Ducera for breach of fiduciary duty or alleged breach of fiduciary duty and agrees that Ducera shall have no liability (whether direct or indirect) to the Company in respect of such a fiduciary duty claim or to any person asserting a fiduciary duty claim on behalf of or in right of the Company, including the Company's security holders, employees, or creditors.  The Company understands that Ducera is not undertaking to provide any legal, accounting or tax advice in connection with the engagement and that Ducera's role in any due diligence will be limited solely to performing such review as it deems advisable to support its own analysis and shall not be on behalf of or for the benefit of the Company.

(e)    To help the government fight the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify and record information that identifies each entity or person that engages Ducera's services.  Pursuant to such requirement, Ducera may from time to time request copies of documents that would be necessary to comply with the foregoing federal law.  The Company further acknowledges and agrees that, in accordance with 31 CFR § 1010.230 and to the extent applicable, to complete the Certification Regarding Beneficial Owners of Legal Entity Customers in connection with the execution of this Superseding Agreement.

**Section 7.    Governing Law; Submission to Jurisdiction; Waiver of Jury Trial**.  All aspects of the relationship created by this Superseding Agreement and any other agreements relating to Ducera's engagement, shall be governed by and construed in accordance with the laws of the State of New York, applicable to contracts made and to be performed therein and, in connection therewith, the parties hereto consent to the exclusive jurisdiction of the Supreme Court of the State of New York sitting in New York County or the United States District Court for the Southern District of New York and agree to venue in such courts.  Notwithstanding the foregoing, solely for purposes of enforcing the Company's obligations hereunder, the Company consents to personal jurisdiction, service and venue in any court proceeding in which any claim relating to or arising out of Ducera's engagement is brought by or against any Indemnified Person.  DUCERA AND THE COMPANY (ON ITS OWN BEHALF AND, TO THE MAXIMUM EXTENT PERMITTED BY LAW, ON BEHALF OF ITS SECURITY HOLDERS AND CREDITORS) EACH HEREBY AGREES TO WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM, COUNTERCLAIM OR ACTION ARISING OUT OF OR RELATING TO THIS SUPERSEDING AGREEMENT OR DUCERA'S ENGAGEMENT.

**Section 8.    Termination**.

(a)    Ducera's engagement hereunder shall commence upon the execution of this Superseding Agreement by Ducera and the Company, and will continue until the Superseding Agreement is terminated by either party hereto upon thirty (30) days' prior written notice to the other party (the "**Term**").

(b)    In the event of any termination of Ducera's engagement hereunder, any fees set forth in **Section 2** paid or due to be paid prior to termination shall remain the property of Ducera.

8

No termination of Ducera's engagement hereunder shall affect the Company's obligations pursuant to the Terms and Conditions or its obligations to reimburse Ducera for fees and expenses, payable or incurred in accordance with **Section 2** and/or **Section 3** prior to the termination of this Superseding Agreement, and the Terms and Conditions set forth in **Annex A** shall survive any termination of this Superseding Agreement.

(c)     In the event of any termination of Ducera's engagement (other than (i) by Ducera; or, (ii) by the Company based on actions taken, or failures to act, by Ducera in bad faith, willful misconduct or gross negligence which actions remain unremediated by Ducera within five (5) business days after written notice from the Company of its intention to terminate this Superseding Agreement on the basis of such actions or failure to act specifying in reasonable detail the basis for such termination, Ducera shall continue to be entitled to the full amount of the fees set forth in **Section 2** (other than the Monthly Advisory Fee) in the event that at any time prior to the expiration of Tail Period, the Company consummates a Restructuring, Transaction, or Financing; [10] *provided, however,* if Ducera has a financial advisory, investment banking, or consulting relationship with one or more Conflicted Parties in connection with the Company during the Tail Period, Ducera shall not be entitled to any fees set forth in **Section 2** (other than Monthly Advisor Fees paid prior to the termination of this Agreement).

(d)     Except as specifically provided for herein, no termination of Ducera's engagement shall affect:  (1) the Company's obligations pursuant to the Terms and Conditions as set forth in **Annex A** or its obligations to reimburse Ducera for earned fees and expenses, payable or incurred in accordance with **Section 2** and **Section 3** prior to the termination of this Superseding Agreement; (2) Ducera's obligations pursuant to **Section 4(c)**, **Section 6(d)** and the **Confidentiality Agreement**; or, (3) **Section 7**, **Section 8**, **Section 9** or **Section 10**.

Section 9.     **Bankruptcy Court Approval**.  In the event that the Company is or becomes a debtor under the Bankruptcy Code, whether voluntarily or involuntarily, the Company shall use commercially reasonable effort to seek an order authorizing Ducera's employment pursuant to the terms of this Superseding Agreement, as a professional person pursuant to, and subject to the standard of review of, Section 328(a) of the Bankruptcy Code and applicable federal and local rules and orders and not subject to any other standard of review under Section 330 of the Bankruptcy Code.  In so agreeing to Ducera's retention, the Company acknowledges that it believes that Ducera's general restructuring and liability management experience and expertise, our knowledge of the capital markets, and our merger and acquisition capabilities will inure to the benefit of the Company in pursuing any transaction, that the value to the Company of our services derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the contingent fees are reasonable regardless of the number of hours to be expended by our professionals in the performance of the services to be provided hereunder.  The Company shall submit Ducera's retention application as soon as practicable following the Company's filing under the Bankruptcy Code, or the entry of an order for relief in any involuntary case filed against the Company, and use its reasonable efforts to cause such application to be considered on the most expedited basis.   The retention application and the proposed order authorizing Ducera's employment shall be provided to Ducera as much in advance of any Bankruptcy filing as is

---

[10]     For purposes of this Superseding Agreement, the term "**Tail Period**" shall mean any time prior to the expiration of twelve (12) months after any such termination.

practicable, and must be acceptable to Ducera in its reasonable discretion. Following entry of the order authorizing Ducera's employment, the Company shall pay all reasonable and documented fees and expenses due pursuant to this Superseding Agreement, as approved by the Bankruptcy Court, as promptly as possible in accordance with the terms of this Superseding Agreement, the Bankruptcy Code and applicable rules and orders. Ducera shall have no obligation to provide services under this Superseding Agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Ducera's retention under this Superseding Agreement is approved under the Bankruptcy Code by final order of the Bankruptcy Court which is acceptable to Ducera and which approves this Superseding Agreement in all material respects. If the order authorizing Ducera's employment is not obtained, or is later reversed, modified or set aside for any reason, Ducera may terminate this Superseding Agreement.

**Section 10.** **Entire Agreement; Amendments**. This Superseding Agreement, including **Annex A**, constitutes the entire agreement between Ducera and the Company with respect to the engagement and supersedes all other oral and written representations, understandings or agreements relating to this engagement. No alteration, waiver, amendment, change or supplement hereto shall be binding or effective unless the same is set forth in writing signed by a duly authorized representative of each party.

**Section 11.** **Arbitration**. Any controversy or claim arising out of or relating to this Superseding Agreement or the transactions described herein, or the breach, termination or validity of this Superseding Agreement (including the determination of the scope or applicability of this agreement to arbitrate) (in any such case, a "**Dispute**"), will be resolved as follows:

(a) **Efforts to Resolve**. The parties will use reasonable efforts to resolve the Dispute through direct discussions during the thirty (30) days after a party gives the other party written notice of a Dispute.

(b) **Procedures**. Failing such resolution, any party can submit the Dispute to arbitration by delivering written notice to the other party. The Dispute will be finally settled by binding arbitration in The City of New York, New York, before a single arbitrator. The arbitration will be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures (or pursuant to its Streamlined Arbitration Rules and Procedures then in effect if the amount in controversy is $250,000 or less). The arbitrator will be chosen in accordance with applicable JAMS rules and procedures then in effect. Judgment upon the arbitration award may be entered by any court having jurisdiction. The arbitration award, including the determination of any amount of damages suffered by any party by reason of the acts or omissions of any other party, will be final and binding upon the parties to the maximum extent permitted by law. This section will not preclude the parties from seeking provisional or interim relief from a court of competent jurisdiction before the appointment of an arbitrator.

(c) **Continue to Perform**. When a Dispute occurs, and while it is under arbitration, the parties will continue to fulfill their respective obligations, and will be entitled to exercise their respective rights under this Superseding Agreement.

(d) **Confidentiality**. The Dispute resolution proceedings contemplated by this section (and all related claims, defenses and proceedings, including the existence of the Dispute

10

and the fact that there is an arbitration proceeding) will be kept confidential and private as permitted by law (except as necessary to enter judgment upon the award or as otherwise required by applicable law). The parties therefore cannot disclose the existence, content or results of any proceedings conducted in accordance with this provision, and any materials submitted in connection with those proceedings will not be admissible in any other proceeding; *provided, however*, that this confidentiality provision will not prevent a petition to vacate or enforce an arbitral award, and will not bar disclosures required by the Company's certificate of incorporation, bylaws or stockholders' agreement or applicable law, rule, regulation, stock exchange listing agreement or legal process.

       (e)    **Binding Nature**. The parties intend that this section be valid, binding, enforceable and irrevocable.

*         *         *

We are pleased to accept the engagement and look forward to working with you. Please confirm your agreement with the foregoing (including the attached Terms and Conditions) by signing each of the enclosed copies of this Superseding Agreement and returning to us one fully signed copy.

Very truly yours,

**DUCERA PARTNERS LLC** *and, where appropriate, its affiliates, including Ducera Securities LLC*

By: _____
Name: Bradley C. Meyer
Title: Partner

Accepted, Agreed, and Effective as
of April 1, 2020:

**REMINGTON OUTDOOR COMPANY, INC.**
   *and all direct and indirect subsidiaries*

By: _____
   Name: Ken D'Arcy
   Title: Chief Executive Officer

and the fact that there is an arbitration proceeding) will be kept confidential and private as permitted by law (except as necessary to enter judgment upon the award or as otherwise required by applicable law). The parties therefore cannot disclose the existence, content or results of any proceedings conducted in accordance with this provision, and any materials submitted in connection with those proceedings will not be admissible in any other proceeding; *provided, however*, that this confidentiality provision will not prevent a petition to vacate or enforce an arbitral award, and will not bar disclosures required by the Company's certificate of incorporation, bylaws or stockholders' agreement or applicable law, rule, regulation, stock exchange listing agreement or legal process.

(e) **Binding Nature**. The parties intend that this section be valid, binding, enforceable and irrevocable.

\*　　　　\*　　　　\*

We are pleased to accept the engagement and look forward to working with you. Please confirm your agreement with the foregoing (including the attached Terms and Conditions) by signing each of the enclosed copies of this Superseding Agreement and returning to us one fully signed copy.

Very truly yours,

**DUCERA PARTNERS LLC** *and, where appropriate, its affiliates, including Ducera Securities LLC*

By: _____
Name: Bradley C. Meyer
Title: Partner

Accepted, Agreed, and Effective as
of April 1, 2020:

**REMINGTON OUTDOOR COMPANY, INC.**
*and all direct and indirect subsidiaries*

By: _____
Name: Ken D'Arcy
Title: Chief Executive Officer

11

## TERMS AND CONDITIONS – ANNEX A

In further consideration of the engagement of Ducera Partners LLC and its affiliates including, where appropriate, Ducera Securities LLC (collectively, "**Ducera**") to render corporate finance and other investment banking advisory services to Remington Outdoor Company, Inc. (collectively with its subsidiaries, the "**Company**") pursuant to the Superseding Agreement to which these Terms and Conditions are attached, the Company and Ducera hereby agree that these Terms and Conditions shall be incorporated by reference into the Superseding Agreement and shall form an integral part thereof.  Capitalized terms used but not defined herein shall have the same meanings specified in the Superseding Agreement and any references to this Superseding Agreement or the engagement shall mean the Superseding Agreement together with these Terms and Conditions.

A.      The Company agrees to indemnify and hold harmless Ducera, its affiliates, the respective members, managers, directors, officers, partners, agents and employees of Ducera and its affiliates (collectively, "**Indemnified Persons**") from and against, and the Company agrees that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or its owners, parents, affiliates, security holders or creditors (in their respective capacities as such) for, any losses, claims, expenses (including reasonable attorneys' fees), damages or liabilities (including actions or proceedings in respect thereof) (collectively, "**Losses**"):

> (1)     As a result of (a) the Company's actions or failures to act (including statements or omissions made or information provided by the Company or its agents) in connection with the engagement; or (b) actions or failures to act by an Indemnified Person in connection with this engagement with the Company's consent, or otherwise in reasonable reliance on the Company's direction, actions, or failures to act in each case in connection with the engagement; or

> (2)     Otherwise related to or arising out of the engagement, Ducera's performance thereof or any other services Ducera is asked to provide to the Company pursuant to this Superseding Agreement (in each case, including activities prior to the date hereof), _except_ that this **Annex A(A)(1)** and **A(A)(2)** shall not apply to any Losses (nor shall the limitation of liability above apply) to the extent that they are finally determined by a court of competent jurisdiction to have resulted from the bad faith, willful misconduct, or gross negligence of an Indemnified Person.

B.      If such indemnification is for any reason not available (other than connection with situations covered by the exceptions set forth in **Annex A(A)(2)**), or is insufficient to hold an Indemnified Person harmless, the Company agrees to contribute to the Losses involved in such proportion as is appropriate to reflect the Relative Economic Interests (as defined herein) of the Company, on the one hand, and of Ducera, on the other hand, with respect to the engagement; or, if such allocation is determined by a court of competent jurisdiction to be unavailable, in such proportion as is appropriate to reflect other equitable considerations such as the relative fault of the Company on the one hand, and of Ducera on the other hand; _provided_, _however_, that, to the

extent permitted by applicable law, the Indemnified Persons shall not be responsible for Losses which in the aggregate exceed the amount of all fees actually received by Ducera from the Company in connection with the engagement.

C.       The "**Relative Economic Interests**" of the Company, on the one hand, and Ducera, on the other hand, with respect to the engagement shall be deemed to be in the same proportion as (1) the total value paid or proposed to be paid or received or proposed to be received by the Company and its security holders, as the case may be, pursuant to the transaction(s) contemplated by the engagement, whether or not consummated, bears to (2) all fees actually received by Ducera in connection with the engagement. Without limiting the generality of the foregoing, in no event shall any Indemnified Person have any liability to the Company or any of its affiliates or security holders (in their respective capacities as such) for any consequential, special, exemplary or punitive damages arising out of the engagement or the performance thereof (other than such damages which the Company is required to pay to a third party).

D.       If any Indemnified Person becomes involved in any capacity in any action, claim, suit, investigation or proceeding, actual or threatened, brought by or against any person, including security holders of the Company, in connection with or as a result of the engagement, the Company also agrees to reimburse such Indemnified Persons for their reasonable and documented expenses (including, without limitation, reasonable and documented legal fees and other costs and expenses incurred in connection with investigating, preparing for and responding to third-party subpoenas or enforcing the engagement by one set of counsel and local counsel, as applicable) as such expenses are incurred; and, provided further, that such party receiving reimbursement of expenses shall return any such reimbursements in the event that a court of competent jurisdiction finally determines that indemnification is unavailable in connection with situations covered by the exceptions set forth in **Annex A(A)(2)**.

E.       Ducera shall not be liable for any settlement of any claim, action, suit, investigation or proceeding effected without its consent. The Company will not, without Ducera's prior written consent (which consent shall not be unreasonably withheld, conditioned, or delayed), settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any claim, action, suit, investigation or proceeding in respect of which it is foreseeable that indemnification may be sought hereunder, whether or not an Indemnified Person is a party thereto, unless such settlement, compromise, consent or termination includes an unconditional release of each Indemnified Person from any liabilities arising out of such claim, action, suit, investigation or proceeding. The Company will not permit any settlement or compromise to include, or consent to the entry of any judgment that includes, a statement as to, or an admission of fault, culpability or a failure to act by or on behalf of an Indemnified Person, without such Indemnified Person's prior written consent (which consent shall not be unreasonably withheld, conditioned, or delayed). The Company shall not be required to indemnify any Indemnified Person for any settlement effected without the Company's consent (which consent shall not be unreasonably withheld, conditioned or delayed).

F.       The Company's obligations pursuant to these Terms and Conditions shall inure to the benefit of any successors, assigns, heirs and personal representatives of each Indemnified Person and are in addition to any rights that each Indemnified Person may have at common law or otherwise. Prior to entering into any agreement or arrangement with respect to, or effecting, any

extraordinary transaction that is reasonably likely to impair the Company's ability to meet its current and potential future obligations pursuant to these Terms and Conditions, the Company will notify Ducera in writing thereof and, if requested by Ducera, shall use commercially reasonable efforts to arrange alternative means of providing for the obligations of the Company set forth herein upon terms and conditions reasonably satisfactory to Ducera. For the avoidance of doubt, the preceding sentence shall not trigger any further obligation on the part of the Company in any transaction in which the Company's obligations under the engagement are assumed by a successor company by operation of law, including through merger.

G. Reasonably promptly after receipt by Ducera of notice of its involvement in any action, claim, suit, investigation or proceeding, Ducera shall, if a claim for indemnification in respect thereof is to be made against the Company under these Terms and Conditions, notify the Company of such involvement to the extent permitted by applicable laws and regulations. Failure by Ducera to so notify the Company, if permitted by applicable laws and regulations, shall relieve the Company from the obligations to indemnify or otherwise to Ducera under these Terms and Conditions only to the extent that the Company suffers actual and material prejudice as a result of such failure. The Company, following its acknowledgment of its obligation to indemnify such Indemnified Person, shall be entitled to assume the defense of any such action or proceeding with counsel reasonably satisfactory to the Indemnified Person. No Indemnified Person may settle any such action or proceeding for which indemnification is or will be sought prior to the Company having the reasonable opportunity to assume its defense. Upon assumption by the Company of the defense of any such action or proceeding, the Indemnified Person shall have the right to participate in such action or proceeding and to retain its own counsel, but the Company shall not be liable for any legal expenses of other counsel subsequently incurred by such Indemnified Person in connection with the defense thereof unless: (i) the Company has agreed in writing to pay such fees and expenses; (ii) the Company shall have failed to employ counsel reasonably satisfactory to the Indemnified Person in a timely manner; or (iii) the Indemnified Person shall have been advised by counsel that there are actual or potential conflicting interests between the Company and the Indemnified Person, including situations in which there are one or more legal defenses available to the Indemnified Person that are different from or additional to those available to the Company; _provided, however_, that the Company shall not, in connection with any one such action or proceeding or separate but substantially similar actions or proceedings arising out of the same general allegations, be liable for the fees and expenses of more than one separate firm of attorneys at any time for all Indemnified Persons including Ducera, _except_ to the extent that local counsel, in addition to its regular counsel, is required in order to effectively defend against such action or proceeding and _except_ as may be required pursuant to **Annex A(G)(iii)**.

H. The obligations of the parties hereto pursuant to these Terms and Conditions shall survive any expiration or Term of the Superseding Agreement or Ducera's engagement hereunder.

## Schedule A

### Pre-Existing Relationship Person

Pre-Existing Relationship Person with respect to a Financing:

1. Franklin Advisers, Inc. and its managed accounts

2. The Cincinnati High Yield Desk of J.P. Morgan Investment Management Inc., as investment manager and authorized agent of certain discretionary accounts

3. The Indianapolis High Yield Desk of JPMorgan Investment Management Inc., as investment manager of certain discretionary accounts

4. Whitebox Advisors LLC

**Exhibit C**

**Proposed Final Order**

43873320 v1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| REMINGTON OUTDOOR COMPANY, INC., *et al.*,[1] | Case No. 20-81688-11 |
| Debtors. | Joint Administration Requested |

**FINAL ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF
DUCERA PARTNERS LLC AS  INVESTMENT BANKER TO THE DEBTORS**

Upon the *Debtors' Application for Entry of Interim and Final Orders Authorizing the Employment and Retention of Ducera Partners LLC as Investment Banker to the Debtors* (the "**Application**")[2] filed by the above-captioned debtors and debtors in possession (the "**Debtors**") for entry of a final order (this "**Final Order**") pursuant to Bankruptcy Code section 327(a) and Bankruptcy Rules 2014(a) and 2016 authorizing the Debtors to retain and employ Ducera Partners LLC ("**Ducera**"), as investment banker for the Debtors effective as of [July 27, 2020] (the "**Petition Date**"), in accordance with the terms and conditions of that certain engagement letter executed on May 15, 2020, including any amendments and schedules thereto (the "**Engagement Agreement**"), attached hereto as **Exhibit 1**, all as more fully set forth in the Application; and upon consideration of the Meyer Declaration filed contemporaneously therewith; and upon the First Day Declaration; and it appearing that (i) the Court has jurisdiction over these Chapter 11 Cases and

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405).  The Debtors' corporate headquarters are located at 100 Electronics Boulevard SW, Huntsville, AL 35824.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

43873320 v1

the Application under 28 U.S.C. §§ 1334(b) and 157, and the *Amended General Order of Reference* from the United States District Court for the Northern District of Alabama dated as of July 17, 1984, (ii) venue of these Chapter 11 Cases and the Application in this Court is proper under 28 U.S.C. §§ 1408 and 1409, (iii) the Application is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Court may enter interim and final orders consistent with Article III of the United States Constitution, and (iv) notice of the Application and Final Hearing was adequate and proper under the circumstances, and no other or further notice need be given; and this Court being satisfied, based on the representations made in the Application and the Meyer Declaration, that Ducera is a "disinterested person" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and as required under section 327(a) of the Bankruptcy Code, and that Ducera represents no interest adverse to the Debtors' estates; and the Court having held a final hearing, if necessary, to consider the relief requested in the Application (the "**Final Hearing**"); and upon the record of the Final Hearing, if any; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and it appearing that the relief requested in the Application is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED, ADJUDGED, AND DECREED THAT**:

1. The Application is GRANTED on a final basis to the extent set forth herein.

2. In accordance with Bankruptcy Code section 327(a), the Debtors are authorized to employ and retain Ducera as their investment banker effective as of the Petition Date under the terms set forth in the Application, the Meyer Declaration, and the Engagement Agreement,

Case 20-81688-CRJ11    Doc 21    Filed 07/28/20    Entered 07/28/20 00:58:58    Desc Main
Document      Page 94 of 113

including the Fee Structure and Indemnification Provisions set forth therein (as modified by this Final Order).

3.     All of Ducera's fees and expenses, as set forth in the Engagement Agreement, are approved pursuant to section 328(a) of the Bankruptcy Code and shall not be evaluated under the standard set forth in section 330 of the Bankruptcy Code, except that the Bankruptcy Administrator shall retain all rights to object to Ducera's fees under the Engagement Agreement based on the reasonableness standard provided for in section 330 of the Bankruptcy Code. Ducera's fees and expenses shall be paid in the amounts, at the times and in the manner described in the Engagement Agreement.

4.     The terms of the Engagement Agreement, as modified by this Final Order, are reasonable terms and conditions of employment and are approved.

5.     Ducera shall use reasonable efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these Chapter 11 Cases.

6.     The Indemnification Provisions set forth in the Engagement Agreement are approved, subject during the pendency of these Chapter 11 Cases to the following:

(a)     if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these Chapter 11 Cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these Chapter 11 Cases, Ducera believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Agreement, as modified by this Final Order, including without limitation the advancement of defense costs, Ducera must file an application therefore in this Court, and the Debtors may not pay any such amounts to Ducera before the entry of an order by this Court approving such payment. This subparagraph (a) is intended only to specify the period during which the Court shall have jurisdiction over any request by Ducera for indemnification, contribution or reimbursement and is not a provision limiting the duration of the Debtors' obligation to indemnify;

(b)     subject to the provisions of subparagraph (c) below, the Debtors are authorized to indemnify, and shall indemnify, Ducera in accordance with

the Engagement Agreement for any claim arising from related to or in connection with the services provided for, whether prepetition or post-petition, in the Engagement Agreement; and

(c)     notwithstanding any provisions of the Engagement Agreement to the contrary, the Debtors shall have no obligation to indemnify Ducera or provide contribution or reimbursement to Ducera for any claim or expense that is either (i) judicially determined to have resulted primarily from the willful misconduct, gross negligence, bad faith or self-dealing of Ducera, or (ii) settled prior to a judicial determination as to Ducera's willful misconduct, gross negligence, bad faith or self-dealing, but determined by the Court, after notice and a hearing pursuant to this subparagraph (c), to be a claim or expense for which Ducera should not receive indemnity, contribution or reimbursement under the terms of the Engagement Agreement.

7.     To the extent there may be any inconsistency between the terms of the Application, the Engagement Agreement, the Meyer Declaration and this Final Order, this Final Order shall govern.

8.     Notice of the Application is adequate under Bankruptcy Rule 6004(a).

9.     The Debtors are authorized to take all actions necessary to implement the relief granted in this Final Order.

10.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Final Order.

Dated:  _____, 2020          _____
                                        UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit 1</u>**

**Ducera Engagement Agreement**

43873320 v1

# Ducera

**Ducera Partners LLC**
499 Park Avenue
16th Floor
New York, NY 10022

p (212) 671-9700

DuceraPartners.com

May 15, 2020

<u>**CONFIDENTIAL**</u>

Remington Outdoor Company, Inc.
870 Remington Drive
P.O. Box 700
Madison, North Carolina 27025

Attention: Ken D'Arcy, Chief Executive Officer

Ladies and Gentlemen:

  This amended, restated, and superseding engagement letter (the "**Superseding Agreement**" or the "**Agreement**") confirms the understanding and agreement between Remington Outdoor Company, Inc. and Ducera Partners LLC and its affiliates including, where appropriate, Ducera Securities LLC (collectively, "**Ducera**") as set forth herein.[1]  For purposes of this Superseding Agreement, Remington Outdoor Company, Inc., including any and all affiliates and subsidiaries, shall be referred to herein collectively as, the "**Company**."  This Superseding Agreement also confirms the agreement of the Company to perform its obligations, and make applicable acknowledgements, as expressly set forth herein.

  **Section 1.**  **Scope of Engagement and Services**.  During the Term (defined in **Section 8**), Ducera shall provide investment banking services to the Company, including the Board of Directors of the Company (collectively, the "**Board**"), as the case may be, relating to the services set forth herein:

    (a)  *General Financial Advisory and Investment Banking Services*.  Pursuant to this Superseding Agreement, if requested by the Company or the Board, Ducera shall: (1) familiarize ourselves with the business, operations, financial condition, and capital structure of the Company; (2) assist with the development of financial data and presentations to the Company and the Board, various creditors, and other parties; (3) analyze the Company's financial liquidity and evaluate alternatives to improve such liquidity; (4) assist with the evaluation of the Company's valuation, debt capacity and alternative capital structures in light of its projected cash flow; and, (5) provide such other advisory services as are customarily provided in connection with the analysis and negotiation of any of the transactions contemplated by this Superseding Agreement including, without limitation, any testimony in support thereof.

---

[1]  The advisory services and compensation arrangements set forth in this Superseding Agreement amend, supplement, and replace the prior agreement between the Company and Ducera, dated November 22, 2019 (the "**Ducera November Engagement Letter**"), and any other agreements entered into between the Company and Ducera prior to the date hereof; *provided*, *however*, that the indemnification previously agreed to by the Company shall continue to be in full force and effect with regard to work done by Ducera under the Ducera November Engagement Letter and any other agreements entered into between the Company and Ducera prior to the date hereof.

1

(b) *Restructuring Services*.[2] If requested by the Company or the Board, Ducera shall:  (1) analyze various Restructuring scenarios and the potential impact of these scenarios on the value of the Company and the recoveries of those stakeholders impacted by the Restructuring; (2) provide strategic advice with regard to restructuring or refinancing the Company's Existing Obligations;[3] (3) provide financial advice and assistance to the Company in developing a Restructuring; (4) in connection therewith, provide financial advice and assistance to the Company in structuring any new securities to be issued under a Restructuring; (5) assist the Company and/or participate in negotiations with entities or groups affected by the Restructuring; and (6) provide any required testimony in  connection with the foregoing.

(c) *Transaction Services*.[4] If requested by the Company or the Board, Ducera shall:  (1) provide financial advice to the Company in structuring, evaluating and effectuating a Transaction, identify potential counterparties and, if requested, contact and solicit potential counterparties; (2) assist with the arrangement and execution of a Transaction, including identifying potential counterparties or parties in interest, assisting in the due diligence process, and negotiating the terms of any proposed Transaction; (3) provide strategic advice to the Company in

---

[2] For purposes of this Superseding Agreement, the term "**Restructuring**" shall mean any restructuring, reorganization, modification, rescheduling and/or recapitalization (whether or not pursuant to one or more proceedings voluntarily or involuntarily commenced under chapters 7 or 11 of title 11 of the United States Code, 11 U.S.C. 101–1532 (as amended, the "**Bankruptcy Code**") or any cases converted thereto (the "**Bankruptcy Cases**" and the court having jurisdiction over such cases, the "**Bankruptcy Court**")) of the Company's Existing Obligations (as defined herein) that is achieved (other than a **Transaction** (as defined herein)) through, without limitation:  (a) a solicitation of waivers and consents from the holders of Existing Obligations; (b) rescheduling of the maturities of Existing Obligations; (c) a change in interest rates, repurchase, settlement, repayment, or forgiveness of Existing Obligations; (d) an amendment to the Existing Obligations; (e) conversion of Existing Obligations into equity; (f) an exchange offer, or an amend-and-extend involving the issuance of new loans and/or securities in exchange for Existing Obligations (excluding, for the avoidance of doubt, any general forbearance granted by holders of Existing Obligations); or, (g) the issuance of new loans and/or securities, sale or disposition of assets, sale of debt or equity securities or other interests, or other similar transaction or series of transactions.

[3] For purposes of this Superseding Agreement, the term "**Existing Obligations**" shall mean the material outstanding indebtedness of the Company including, but not limited to, bank debt, bond debt, asset back lending facilities, term loans, credit facilities, trade claims, leases (both on and off balance sheet), pension obligations, litigation-related claims and obligations, other on and off balance sheet indebtedness, workers' compensation claims and obligations, and other liabilities.

[4] For purposes of this Superseding Agreement, the term "**Transaction**" shall mean any transaction or series of transactions involving: (i) an acquisition, merger, consolidation or other business combination pursuant to which the business or assets of the Company are, directly or indirectly, combined with, or acquired by, another company; (ii) the acquisition, directly or indirectly, by a buyer or buyers (which term shall include a "group" of persons as defined in Section 13(d) of the Securities Exchange Act or 1934, as amended) of equity interests or options, or any combination hereof, constituting a majority of the then-outstanding stock of the Company or possessing a majority of the then-outstanding voting power of the Company ("**Voting Stock**"); (iii) any other purchase or acquisition, directly or indirectly, by a buyer or buyers or a majority of the assets or Voting Stock of the Company; or (iv) the formation of a joint venture partnership or similar entity with the Company or direct investment in the Company for the purposes of effecting a transfer of a majority of the Voting Stock of the Company to a third party, a lease of assets with or without a purchase option, a merger, consolidation or other business combination, a tender offer, or any similar transaction, including through a sale of a material portion of the Company's assets pursuant to Section 363 of the Bankruptcy Code (defined herein).

2

connection with the evaluation of, and responses to, activist shareholder action; and (4) provide any testimony in connection therewith.

(d) *Financing Services*.[5] If requested by the Company or the Board, Ducera shall: (1) provide financial advice to the Company in connection with the structure and effectuation of a Financing, identify potential Investors and, at the Company's request, contact and solicit such Investors; (2) assist with the arrangement of a Financing, including identifying potential sources of capital, assisting in the due diligence process, and negotiating the terms of any proposed Financing; and (3) provide any testimony in connection therewith; *provided*, *however*, it is understood and agreed that nothing contained herein shall constitute an express or implied commitment by Ducera to act in any capacity or to underwrite, place or purchase any financing or securities, which commitment shall only be set forth in a separate underwriting, placement agency or other appropriate agreement relating to the Financing. The Company may accept or reject any investor or any Financing in its sole discretion.

(e) *Generally. Notwithstanding anything contained in this Agreement to the contrary*, Ducera shall have no responsibility for designing or implementing any initiatives to improve the Company's operations, profitability, cash management or liquidity or to provide any fairness, valuation or solvency opinions or to make any independent evaluation or appraisal of any assets or liabilities of the Company or any other party. Ducera makes no representations or warranties about the Company's ability to (1) successfully improve its operations, (2) maintain or secure sufficient liquidity to operate its business, or (3) successfully complete a Restructuring, Transaction, or Financing. Ducera is retained under this Agreement solely to provide advice and services regarding the transactions contemplated by this Agreement. Ducera's engagement does not encompass providing "crisis management." The advisory services and compensation arrangements set forth in this Agreement do not encompass other investment banking services or transactions that may be undertaken by Ducera at the request of the Company or the Board, or any other specific services not set forth in this Agreement. The terms and conditions of such investment banking services, including compensation and arrangements, would be set forth in a separate written letter agreement between Ducera and the Company, as approved by the Board.

Section 2. **Compensation**. Subject to **Section 8**, in consideration of Ducera's services set forth in **Section 1**, the Company agrees to pay Ducera:

(a) For services rendered in accordance with **Section 1(a)**, a nonrefundable monthly cash fee of $150,000 (the "**Monthly Advisory Fee**") due and payable each month during the engagement, with the Monthly Advisory Fee commencing as of April 1, 2020, and each and every month thereafter until the termination of Ducera's services pursuant to this Agreement; *plus*,

(b) For services rendered in accordance with **Section 1(b)**, a restructuring fee of $3,500,000, earned and payable upon consummation of a Restructuring (the "**Restructuring**

---

[5]     For purposes of this Superseding Agreement, the term "**Financing**" shall mean a private issuance, sale, or placement of the equity, equity-linked, preferred equity, including warrants or hybrid capital, convertible debt, financing instruments, obligations, or debt (including, but not limited to, revolving credit and asset backed lending facilities, and debtor-in-possession financing) of the Company with one or more lenders and/or investors, or any other type of loan, financing, debt, or rights offering (each such lender or investor, an "**Investor**").

3

Fee"); _provided, however,_ that no more than one Restructuring Fee shall be payable to Ducera hereunder;[6] _plus,_

      (c)     For services rendered in accordance with **Section 1(c)**, a transaction fee payable upon consummation of any Transaction (the "**Transaction Fee**"). The Transaction Fee shall equal one-hundred-and-seventy five basis points (1.75%) of the Proceeds received by the Estate;[7]

      (d)     For services rendered in accordance with **Section 1(d)**, a financing fee (the "**Financing Fee**"), which shall be earned upon commitment and payable upon the closing or termination of such Financing, equal to:

      (1)     1.500% of the face amount of any senior secured debt Raised by the Company including, but not limited to, debtor-in-possession Financing, revolving credit and asset backed lending facilities, and exit Financing; _provided_ that the Financing Fee shall be no less than $500,000;[8] and,

---

[6]     For purposes of this Superseding Agreement, a Restructuring shall be deemed to have been consummated upon: (a) the closing of the applicable transaction by which the Existing Obligations of the Company are to be restructured or refinanced (including, for avoidance of doubt, a payment in full of the Existing Obligations); or, (b) in the case of a Court approved Restructuring, the date that the applicable Chapter 11 plan of reorganization becomes effective in accordance with the terms and conditions thereof; _provided_, that if the Restructuring is to be completed, in whole or in part, through a pre-arranged or pre-packaged Restructuring: (i) 50% of the Restructuring Fee shall be earned and shall be payable upon obtaining support (e.g. via a term sheet, restructuring support agreement or other agreement in principle documenting they key terms of such prearranged Plan) from one or more of the Company's key creditor classes (e.g., Term Loan Lenders) that is sufficient to justify filing such pre-arranged or pre-packaged Restructuring; and (ii) the remainder of such fees shall be earned and shall be payable upon consummation of the Restructuring; _provided, further_, that in the event that Ducera is paid a Restructuring Fee in connection with a pre-arranged or pre-packaged Restructuring, and such a Restructuring is not thereafter consummated, then such fee previously paid to Ducera may be credited by the Company against any subsequent fee hereunder that becomes payable by the Company to Ducera or, if such crediting  does not equal 100% of the pre-paid portion of the Restructuring Fee, then such fee shall be returned to the Company upon the termination of the Superseding Agreement.

[7]     For purposes of this Superseding Agreement, the term "**Proceeds**" shall include any and all forms of consideration including, but not limited to: (a) all cash paid or payable to the Estate or its shareholders (or holders of executive equity awards ("**Awards**")), including indemnity and net working capital escrow amounts; (b) the fair market value of all notes, securities and other property issued or delivered or to be issued or delivered to the Estate (including holders of Awards); (c) the amount of any extraordinary dividends or distributions paid to the Estate (including Awards) in connection with or contemplated by the Transaction; and, (e) the fair market value of any debt and equity securities or other consideration (including, but not limited to, take-back paper), directly or indirectly, received by the Estate (including Awards) upon consummation of such a Transaction. ██████████████████████████ ███████████████████████████████████████████████████████████

[8]     For purposes of this Agreement, the term, "**Raised**," shall mean the total amount committed by an Investor on terms acceptable to the Company and the Board, irrespective as to whether or not the Company draws any or all of the amount committed by an Investor, and whether or not the Company applies such amounts to finance any of its obligations or a transaction. _For illustrative purposes_, in connection with any revolving credit or asset backed lending facilities, all fees set forth in **Section 2** shall be calculated based on the total amount of the facility, including any letters of credit, irrespective as to whether the Company is permitted immediately to draw upon the full amount of facility, including any borrowing base, at the time of commitment.

4

<blockquote>
(2)    3.500% of the face amount of any unsecured debt or equity Raised by the Company in connection with a Restructuring or a Transaction.
</blockquote>

No more than one Transaction Fee shall be payable to Ducera hereunder.

(e)    *Notwithstanding anything else contained in this Superseding Agreement*, the Company and Ducera acknowledge and agree that (1) the Company shall be obligated to pay Ducera the greater of the Restructuring Fee and the Transaction Fee, and *not* both a Restructuring Fee and a Transaction Fee; (2) the Financing Fee shall be credited against the Transaction Fee if, and only if, the Financing is provided by the same party as the Stalking Horse bidder or such other winning bidder; and (3) Ducera shall receive no more than the Monthly Advisory Fee, and shall not receive any Restructuring, Transaction, or Financing Fees in the event that a material portion of the Company's assets (i.e., greater than 2/3rd of the Company's assets) are sold pursuant to Chapter 7 of the Bankruptcy Code.

(f)    The Company and Ducera acknowledge and agree that the Company is under no obligation to consummate a Restructuring, Financing, or Transaction as set forth herein and, in the event the Company is unable or unwilling to do so, the Company and the Board will have no obligation or liability (other than the Terms and Conditions set forth in **Annex A**) to Ducera other than the payment of the Monthly Advisory Fee due up to the date of termination of this Superseding Agreement. The Company and Ducera further acknowledge and agree that: (i) hours worked, (ii) the results achieved, and, (iii) the ultimate benefit to the Company of the work performed, in each case, in connection with this engagement, may be variable, and that the Company and Ducera have taken such factors into account in setting the fees hereunder. To the extent further services are requested by the Company and/or the Board, the Company and Ducera agree to negotiate in good faith a reasonable scope of services and fee structure in connection with any such further services provided by Ducera, depending on the size, scope and nature of the services to be provided, as well as any discount for payments rendered in connection with the scope of services set forth in **Section 1**.

**Section 3.**    **Expenses and Payments**. In addition to the fees set forth in **Section 2**, the Company agrees upon request to promptly reimburse Ducera for its reasonable and documented out-of-pocket expenses, including, but not limited to, travel and transportation expenses, third party research and telecommunication expenses, printing cost, courier and other shipping and mailing cost (but excluding any expenses of Ducera's external legal counsel, absent the prior written (email to be sufficient) consent); *provided*, *however*, that the total amount of expenses shall not exceed $50,000 without the Company's prior written (email to be sufficient) approval (not to be unreasonably withheld); *provided*, *further*, that this **Section 3** shall in no way affect the Company's obligations as set forth in **Annex A** hereto. All payments due under this Superseding Agreement (including under **Section 2** and **Section 3** hereof) shall be made in U.S. dollars in immediately available funds, free and clear of any set off, claim and applicable taxes (with appropriate gross up for any taxes withheld).

**Section 4.**    **Information and Announcements**.

(a)    Ducera's advice hereunder is intended solely for the benefit and use of the

Case 20-81688-CRJ11   Doc 21   Filed 07/28/20   Entered 07/28/20 00:58:58   Desc Main
Document   Page 102 of 113

Company and the Board (in their capacity as directors and, as applicable, officers of the Company), and such advice may not be used or relied upon for any other purpose or by any other person, including any security holder (in their capacity as such), employee or creditor of the Company. No advice rendered by Ducera, whether formal or informal, may be disclosed or described, in whole or in part, or otherwise referred to, without Ducera's prior written consent, which shall not be unreasonably withheld *except*: (i) to the Company's or the Board's other professional advisors (who may not further disclose such information or use it in any way other than in connection with the services contemplated by this Superseding Agreement, except as permitted herein); or, (ii) as Legally Required.[9]  In addition, the terms of this Superseding Agreement may not be disclosed or described, in whole or in part, without Ducera's prior written consent, which shall not be unreasonably withheld, *except*: (x) to the Company's or the Board's other professional advisors (who may not further disclose such information or use it in any way other than in connection with the services contemplated by this Superseding Agreement, except as permitted herein); (y) as Legally Required, including in connection with the filing of any retention application seeking with a bankruptcy court seeking authority for the Company to retain Ducera.  The Company shall be solely responsible for the accuracy and completeness of, and Ducera shall have no liability with respect to, any materials required to be disclosed to third parties or submitted to any regulatory authorities in connection with any services contemplated by this Superseding Agreement.

(b)     In performing its services hereunder, Ducera shall be entitled to rely without investigation upon all available information, including information supplied to it by or on behalf of the Company, any counterparty or their respective officers, directors, employees, accountants, counsel and other representatives and shall not be responsible for the accuracy or completeness of, or have any obligation to verify, the same. Ducera will not conduct any appraisal of assets or liabilities of any party to a transaction or evaluate the solvency thereof under any state or federal bankruptcy, insolvency or similar law.  The Company further represents and warrants to Ducera that, all written information made available to Ducera pursuant hereto will, to the best of the Company's knowledge, be complete and correct in all material respects and will not contain any untrue statement of material fact or omit to state a material fact necessary in order to make the statements therein, in light of the circumstances under which they were made, not misleading, unless otherwise clearly noted thereon or the materials are of such a nature as Ducera would or should have known that they were incomplete or otherwise subject to significant uncertainties and contingencies.

(c)     Ducera will keep confidential information of the Company made available to Ducera in connection with this Superseding Agreement, any advice rendered to the Company in connection with this engagement, and the terms of the Superseding Agreement, pursuant to that letter agreement between the Company and Ducera, dated February 11, 2019 (the "**Confidentiality Agreement**"). Ducera and the Company agree that the Confidentiality Agreement is still in effect as of the date of this Superseding Agreement has not previously been terminated by either party.

---

[9]     For purposes of this Superseding Agreement, the term "**Legally Required**" shall mean as requested or required by law, judicial authority, regulation, rule, legal process, governmental agency or other regulatory authority (including, without limitation, any stock exchange or self-regulatory organization), action, investigation or proceeding (including, without limitation, as part of any interrogatory, court order, subpoena, administrative proceeding, civil investigatory demand, in each case whether oral or written, or any other legal or regulatory process) or as required by the Company's certificate of incorporation, bylaws or stockholders' agreement.

6

Ducera understands and agrees that it may receive material non-public information regarding the Company in connection with its engagement and it will hold such information pursuant to the Confidentiality Agreement, and agrees to comply with all applicable securities laws in connection with any such information.

**Section 5.**      **Terms and Conditions**. Because Ducera will be acting as an independent contractor to the Company in connection with this Superseding Agreement, the Company and Ducera agree to the Terms and Conditions contained in **Annex A** (the "**Terms and Conditions**"), which **Annex A** is incorporated by reference into this Superseding Agreement and is an integral part hereof.

**Section 6.**      **Acknowledgements and Waivers**.

(a)      The Company acknowledges and agrees that Ducera has been retained solely to act as investment banker in accordance with **Section 1** and that no fiduciary or agency relationship between the Company and Ducera has been created in respect of any of the transactions set forth herein or Ducera's engagement hereunder, regardless of whether Ducera has advised or is advising the Company on other matters. In connection with the engagement, Ducera is acting as an independent contractor, with obligations owing solely to the Company and the Board and not in any other capacity. Except as expressly contemplated by the Terms and Conditions as set forth in **Annex A**, the engagement is not intended to confer rights upon any persons not a party hereto (including security holders, employees or creditors of the Company).

(b)      This Superseding Agreement shall be binding upon and inure to the benefit of the Company, Ducera and their respective successors and assigns. If any term, provision, covenant or restriction herein (including the Terms and Conditions) is held by a court of competent jurisdiction to be invalid, void or unenforceable or against public policy, the remainder of the terms, provisions and restrictions contained herein shall remain in full force and effect and shall in no way be modified or invalidated.

(c)      Ducera and its affiliates and certain of their respective members, officers, managers, directors and employees, as well as certain funds in which they may have financial interests, may from time-to-time acquire, hold or make direct or indirect investments in, or otherwise finance, a wide variety of companies, including parties that may have interests with respect to the Company or any transaction or other parties involved in a transaction, from which conflicting interests or duties with respect to the Company, its directors, officers and employees may arise (any such party, a "**Conflicted Party**" and collectively, the "**Conflicted Parties**"). Ducera is not currently advising, and shall not advise, any Conflicted Party, including the parties listed on **Schedule A** hereto, in any matter related to the Company, this engagement or the transactions contemplated hereunder. Without limitation to the foregoing sentence, during the Term, Ducera will promptly (and otherwise upon the written request of the Company) inform the Board of the existence of any actual conflicts of interest that may arise after the date of this Superseding Agreement and agree to take such action as the Board may reasonably request to mitigate the effects of the circumstances described herein. The Company acknowledges and agrees that Ducera does, and may continue to, represent the Conflicted Parties in other matters unrelated to this engagement and the Company.

7

(d)     Subject to **Section 6(c)**, the Company acknowledges and agrees that Ducera and its affiliates may be engaged in a broad range of transactions involving interests that differ from those of the Company and that Ducera has no obligation to disclose such interests and transactions to the Company. The Company waives, to the fullest extent permitted by law, any claims it may have against Ducera for breach of fiduciary duty or alleged breach of fiduciary duty and agrees that Ducera shall have no liability (whether direct or indirect) to the Company in respect of such a fiduciary duty claim or to any person asserting a fiduciary duty claim on behalf of or in right of the Company, including the Company's security holders, employees, or creditors. The Company understands that Ducera is not undertaking to provide any legal, accounting or tax advice in connection with the engagement and that Ducera's role in any due diligence will be limited solely to performing such review as it deems advisable to support its own analysis and shall not be on behalf of or for the benefit of the Company.

(e)     To help the government fight the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify and record information that identifies each entity or person that engages Ducera's services. Pursuant to such requirement, Ducera may from time to time request copies of documents that would be necessary to comply with the foregoing federal law. The Company further acknowledges and agrees that, in accordance with 31 CFR § 1010.230 and to the extent applicable, to complete the Certification Regarding Beneficial Owners of Legal Entity Customers in connection with the execution of this Superseding Agreement.

**Section 7.     Governing Law; Submission to Jurisdiction; Waiver of Jury Trial**. All aspects of the relationship created by this Superseding Agreement and any other agreements relating to Ducera's engagement, shall be governed by and construed in accordance with the laws of the State of New York, applicable to contracts made and to be performed therein and, in connection therewith, the parties hereto consent to the exclusive jurisdiction of the Supreme Court of the State of New York sitting in New York County or the United States District Court for the Southern District of New York and agree to venue in such courts. Notwithstanding the foregoing, solely for purposes of enforcing the Company's obligations hereunder, the Company consents to personal jurisdiction, service and venue in any court proceeding in which any claim relating to or arising out of Ducera's engagement is brought by or against any Indemnified Person. DUCERA AND THE COMPANY (ON ITS OWN BEHALF AND, TO THE MAXIMUM EXTENT PERMITTED BY LAW, ON BEHALF OF ITS SECURITY HOLDERS AND CREDITORS) EACH HEREBY AGREES TO WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM, COUNTERCLAIM OR ACTION ARISING OUT OF OR RELATING TO THIS SUPERSEDING AGREEMENT OR DUCERA'S ENGAGEMENT.

**Section 8.     Termination**.

(a)     Ducera's engagement hereunder shall commence upon the execution of this Superseding Agreement by Ducera and the Company, and will continue until the Superseding Agreement is terminated by either party hereto upon thirty (30) days' prior written notice to the other party (the "**Term**").

(b)     In the event of any termination of Ducera's engagement hereunder, any fees set forth in **Section 2** paid or due to be paid prior to termination shall remain the property of Ducera.

Case 20-81688-CRJ11     Doc 21     Filed 07/28/20     Entered 07/28/20 00:58:58     Desc Main
Document     Page 105 of 113

No termination of Ducera's engagement hereunder shall affect the Company's obligations pursuant to the Terms and Conditions or its obligations to reimburse Ducera for fees and expenses, payable or incurred in accordance with **Section 2** and/or **Section 3** prior to the termination of this Superseding Agreement, and the Terms and Conditions set forth in **Annex A** shall survive any termination of this Superseding Agreement.

(c)     In the event of any termination of Ducera's engagement (other than (i) by Ducera; or, (ii) by the Company based on actions taken, or failures to act, by Ducera in bad faith, willful misconduct or gross negligence which actions remain unremediated by Ducera within five (5) business days after written notice from the Company of its intention to terminate this Superseding Agreement on the basis of such actions or failure to act specifying in reasonable detail the basis for such termination, Ducera shall continue to be entitled to the full amount of the fees set forth in **Section 2** (other than the Monthly Advisory Fee) in the event that at any time prior to the expiration of Tail Period, the Company consummates a Restructuring, Transaction, or Financing; [10] *provided, however,* if Ducera has a financial advisory, investment banking, or consulting relationship with one or more Conflicted Parties in connection with the Company during the Tail Period, Ducera shall not be entitled to any fees set forth in **Section 2** (other than Monthly Advisor Fees paid prior to the termination of this Agreement).

(d)     Except as specifically provided for herein, no termination of Ducera's engagement shall affect:  (1) the Company's obligations pursuant to the Terms and Conditions as set forth in **Annex A** or its obligations to reimburse Ducera for earned fees and expenses, payable or incurred in accordance with **Section 2** and **Section 3** prior to the termination of this Superseding Agreement; (2) Ducera's obligations pursuant to **Section 4(c)**, **Section 6(d)** and the **Confidentiality Agreement**; or, (3) **Section 7**, **Section 8**, **Section 9** or **Section 10**.

**Section 9.     Bankruptcy Court Approval**.  In the event that the Company is or becomes a debtor under the Bankruptcy Code, whether voluntarily or involuntarily, the Company shall use commercially reasonable effort to seek an order authorizing Ducera's employment pursuant to the terms of this Superseding Agreement, as a professional person pursuant to, and subject to the standard of review of, Section 328(a) of the Bankruptcy Code and applicable federal and local rules and orders and not subject to any other standard of review under Section 330 of the Bankruptcy Code.  In so agreeing to Ducera's retention, the Company acknowledges that it believes that Ducera's general restructuring and liability management experience and expertise, our knowledge of the capital markets, and our merger and acquisition capabilities will inure to the benefit of the Company in pursuing any transaction, that the value to the Company of our services derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the contingent fees are reasonable regardless of the number of hours to be expended by our professionals in the performance of the services to be provided hereunder.  The Company shall submit Ducera's retention application as soon as practicable following the Company's filing under the Bankruptcy Code, or the entry of an order for relief in any involuntary case filed against the Company, and use its reasonable efforts to cause such application to be considered on the most expedited basis.  The retention application and the proposed order authorizing Ducera's employment shall be provided to Ducera as much in advance of any Bankruptcy filing as is

---

[10]     For purposes of this Superseding Agreement, the term "**Tail Period**" shall mean any time prior to the expiration of twelve (12) months after any such termination.

9

practicable, and must be acceptable to Ducera in its reasonable discretion. Following entry of the order authorizing Ducera's employment, the Company shall pay all reasonable and documented fees and expenses due pursuant to this Superseding Agreement, as approved by the Bankruptcy Court, as promptly as possible in accordance with the terms of this Superseding Agreement, the Bankruptcy Code and applicable rules and orders. Ducera shall have no obligation to provide services under this Superseding Agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Ducera's retention under this Superseding Agreement is approved under the Bankruptcy Code by final order of the Bankruptcy Court which is acceptable to Ducera and which approves this Superseding Agreement in all material respects. If the order authorizing Ducera's employment is not obtained, or is later reversed, modified or set aside for any reason, Ducera may terminate this Superseding Agreement.

**Section 10. Entire Agreement; Amendments**. This Superseding Agreement, including **Annex A**, constitutes the entire agreement between Ducera and the Company with respect to the engagement and supersedes all other oral and written representations, understandings or agreements relating to this engagement. No alteration, waiver, amendment, change or supplement hereto shall be binding or effective unless the same is set forth in writing signed by a duly authorized representative of each party.

**Section 11. Arbitration**. Any controversy or claim arising out of or relating to this Superseding Agreement or the transactions described herein, or the breach, termination or validity of this Superseding Agreement (including the determination of the scope or applicability of this agreement to arbitrate) (in any such case, a "**Dispute**"), will be resolved as follows:

(a) **Efforts to Resolve**. The parties will use reasonable efforts to resolve the Dispute through direct discussions during the thirty (30) days after a party gives the other party written notice of a Dispute.

(b) **Procedures**. Failing such resolution, any party can submit the Dispute to arbitration by delivering written notice to the other party. The Dispute will be finally settled by binding arbitration in The City of New York, New York, before a single arbitrator. The arbitration will be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures (or pursuant to its Streamlined Arbitration Rules and Procedures then in effect if the amount in controversy is $250,000 or less). The arbitrator will be chosen in accordance with applicable JAMS rules and procedures then in effect. Judgment upon the arbitration award may be entered by any court having jurisdiction. The arbitration award, including the determination of any amount of damages suffered by any party by reason of the acts or omissions of any other party, will be final and binding upon the parties to the maximum extent permitted by law. This section will not preclude the parties from seeking provisional or interim relief from a court of competent jurisdiction before the appointment of an arbitrator.

(c) **Continue to Perform**. When a Dispute occurs, and while it is under arbitration, the parties will continue to fulfill their respective obligations, and will be entitled to exercise their respective rights under this Superseding Agreement.

(d) **Confidentiality**. The Dispute resolution proceedings contemplated by this section (and all related claims, defenses and proceedings, including the existence of the Dispute

and the fact that there is an arbitration proceeding) will be kept confidential and private as permitted by law (except as necessary to enter judgment upon the award or as otherwise required by applicable law). The parties therefore cannot disclose the existence, content or results of any proceedings conducted in accordance with this provision, and any materials submitted in connection with those proceedings will not be admissible in any other proceeding; *provided, however*, that this confidentiality provision will not prevent a petition to vacate or enforce an arbitral award, and will not bar disclosures required by the Company's certificate of incorporation, bylaws or stockholders' agreement or applicable law, rule, regulation, stock exchange listing agreement or legal process.

(e)  **Binding Nature**.  The parties intend that this section be valid, binding, enforceable and irrevocable.

*          *          *

We are pleased to accept the engagement and look forward to working with you.  Please confirm your agreement with the foregoing (including the attached Terms and Conditions) by signing each of the enclosed copies of this Superseding Agreement and returning to us one fully signed copy.

Very truly yours,

**DUCERA PARTNERS LLC** *and, where appropriate, its affiliates, including Ducera Securities LLC*

By: _____
Name: Bradley C. Meyer
Title: Partner

Accepted, Agreed, and Effective as of April 1, 2020:

**REMINGTON OUTDOOR COMPANY, INC.**
*and all direct and indirect subsidiaries*

By: _____
　　Name: Ken D'Arcy
　　Title: Chief Executive Officer

11

and the fact that there is an arbitration proceeding) will be kept confidential and private as permitted by law (except as necessary to enter judgment upon the award or as otherwise required by applicable law). The parties therefore cannot disclose the existence, content or results of any proceedings conducted in accordance with this provision, and any materials submitted in connection with those proceedings will not be admissible in any other proceeding; *provided, however*, that this confidentiality provision will not prevent a petition to vacate or enforce an arbitral award, and will not bar disclosures required by the Company's certificate of incorporation, bylaws or stockholders' agreement or applicable law, rule, regulation, stock exchange listing agreement or legal process.

(e) **Binding Nature**. The parties intend that this section be valid, binding, enforceable and irrevocable.

\*                   \*                   \*

We are pleased to accept the engagement and look forward to working with you. Please confirm your agreement with the foregoing (including the attached Terms and Conditions) by signing each of the enclosed copies of this Superseding Agreement and returning to us one fully signed copy.

Very truly yours,

**DUCERA PARTNERS LLC** *and, where appropriate, its affiliates, including Ducera Securities LLC*

By: _____
Name: Bradley C. Meyer
Title: Partner

Accepted, Agreed, and Effective as
of April 1, 2020:

**REMINGTON OUTDOOR COMPANY, INC.**
*and all direct and indirect subsidiaries*

By: _____
Name: Ken D'Arcy
Title: Chief Executive Officer

11

In further consideration of the engagement of Ducera Partners LLC and its affiliates including, where appropriate, Ducera Securities LLC (collectively, "**Ducera**") to render corporate finance and other investment banking advisory services to Remington Outdoor Company, Inc. (collectively with its subsidiaries, the "**Company**") pursuant to the Superseding Agreement to which these Terms and Conditions are attached, the Company and Ducera hereby agree that these Terms and Conditions shall be incorporated by reference into the Superseding Agreement and shall form an integral part thereof. Capitalized terms used but not defined herein shall have the same meanings specified in the Superseding Agreement and any references to this Superseding Agreement or the engagement shall mean the Superseding Agreement together with these Terms and Conditions.

A. The Company agrees to indemnify and hold harmless Ducera, its affiliates, the respective members, managers, directors, officers, partners, agents and employees of Ducera and its affiliates (collectively, "**Indemnified Persons**") from and against, and the Company agrees that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or its owners, parents, affiliates, security holders or creditors (in their respective capacities as such) for, any losses, claims, expenses (including reasonable attorneys' fees), damages or liabilities (including actions or proceedings in respect thereof) (collectively, "**Losses**"):

(1) As a result of (a) the Company's actions or failures to act (including statements or omissions made or information provided by the Company or its agents) in connection with the engagement; or (b) actions or failures to act by an Indemnified Person in connection with this engagement with the Company's consent, or otherwise in reasonable reliance on the Company's direction, actions, or failures to act in each case in connection with the engagement; or

(2) Otherwise related to or arising out of the engagement, Ducera's performance thereof or any other services Ducera is asked to provide to the Company pursuant to this Superseding Agreement (in each case, including activities prior to the date hereof), *except* that this **Annex A(A)(1)** and **A(A)(2)** shall not apply to any Losses (nor shall the limitation of liability above apply) to the extent that they are finally determined by a court of competent jurisdiction to have resulted from the bad faith, willful misconduct, or gross negligence of an Indemnified Person.

B. If such indemnification is for any reason not available (other than connection with situations covered by the exceptions set forth in **Annex A(A)(2)**), or is insufficient to hold an Indemnified Person harmless, the Company agrees to contribute to the Losses involved in such proportion as is appropriate to reflect the Relative Economic Interests (as defined herein) of the Company, on the one hand, and of Ducera, on the other hand, with respect to the engagement; or, if such allocation is determined by a court of competent jurisdiction to be unavailable, in such proportion as is appropriate to reflect other equitable considerations such as the relative fault of the Company on the one hand, and of Ducera on the other hand; *provided*, *however*, that, to the

extent permitted by applicable law, the Indemnified Persons shall not be responsible for Losses which in the aggregate exceed the amount of all fees actually received by Ducera from the Company in connection with the engagement.

C.     The "**Relative Economic Interests**" of the Company, on the one hand, and Ducera, on the other hand, with respect to the engagement shall be deemed to be in the same proportion as (1) the total value paid or proposed to be paid or received or proposed to be received by the Company and its security holders, as the case may be, pursuant to the transaction(s) contemplated by the engagement, whether or not consummated, bears to (2) all fees actually received by Ducera in connection with the engagement.  Without limiting the generality of the foregoing, in no event shall any Indemnified Person have any liability to the Company or any of its affiliates or security holders (in their respective capacities as such) for any consequential, special, exemplary or punitive damages arising out of the engagement or the performance thereof (other than such damages which the Company is required to pay to a third party).

D.     If any Indemnified Person becomes involved in any capacity in any action, claim, suit, investigation or proceeding, actual or threatened, brought by or against any person, including security holders of the Company, in connection with or as a result of the engagement, the Company also agrees to reimburse such Indemnified Persons for their reasonable and documented expenses (including, without limitation, reasonable and documented legal fees and other costs and expenses incurred in connection with investigating, preparing for and responding to third-party subpoenas or enforcing the engagement) by one set of counsel and local counsel, as applicable) as such expenses are incurred; and, provided further, that such party receiving reimbursement of expenses shall return any such reimbursements in the event that a court of competent jurisdiction finally determines that indemnification is unavailable in connection with situations covered by the exceptions set forth in **Annex A(A)(2)**.

E.     Ducera shall not be liable for any settlement of any claim, action, suit, investigation or proceeding effected without its consent.  The Company will not, without Ducera's prior written consent (which consent shall not be unreasonably withheld, conditioned, or delayed), settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any claim, action, suit, investigation or proceeding in respect of which it is foreseeable that indemnification may be sought hereunder, whether or not an Indemnified Person is a party thereto, unless such settlement, compromise, consent or termination includes an unconditional release of each Indemnified Person from any liabilities arising out of such claim, action, suit, investigation or proceeding.  The Company will not permit any settlement or compromise to include, or consent to the entry of any judgment that includes, a statement as to, or an admission of fault, culpability or a failure to act by or on behalf of an Indemnified Person, without such Indemnified Person's prior written consent (which consent shall not be unreasonably withheld, conditioned, or delayed).  The Company shall not be required to indemnify any Indemnified Person for any settlement effected without the Company's consent (which consent shall not be unreasonably withheld, conditioned or delayed).

F.     The Company's obligations pursuant to these Terms and Conditions shall inure to the benefit of any successors, assigns, heirs and personal representatives of each Indemnified Person and are in addition to any rights that each Indemnified Person may have at common law or otherwise.  Prior to entering into any agreement or arrangement with respect to, or effecting, any

extraordinary transaction that is reasonably likely to impair the Company's ability to meet its current and potential future obligations pursuant to these Terms and Conditions, the Company will notify Ducera in writing thereof and, if requested by Ducera, shall use commercially reasonable efforts to arrange alternative means of providing for the obligations of the Company set forth herein upon terms and conditions reasonably satisfactory to Ducera. For the avoidance of doubt, the preceding sentence shall not trigger any further obligation on the part of the Company in any transaction in which the Company's obligations under the engagement are assumed by a successor company by operation of law, including through merger.

G.    Reasonably promptly after receipt by Ducera of notice of its involvement in any action, claim, suit, investigation or proceeding, Ducera shall, if a claim for indemnification in respect thereof is to be made against the Company under these Terms and Conditions, notify the Company of such involvement to the extent permitted by applicable laws and regulations. Failure by Ducera to so notify the Company, if permitted by applicable laws and regulations, shall relieve the Company from the obligations to indemnify or otherwise to Ducera under these Terms and Conditions only to the extent that the Company suffers actual and material prejudice as a result of such failure. The Company, following its acknowledgment of its obligation to indemnify such Indemnified Person, shall be entitled to assume the defense of any such action or proceeding with counsel reasonably satisfactory to the Indemnified Person. No Indemnified Person may settle any such action or proceeding for which indemnification is or will be sought prior to the Company having the reasonable opportunity to assume its defense. Upon assumption by the Company of the defense of any such action or proceeding, the Indemnified Person shall have the right to participate in such action or proceeding and to retain its own counsel, but the Company shall not be liable for any legal expenses of other counsel subsequently incurred by such Indemnified Person in connection with the defense thereof unless: (i) the Company has agreed in writing to pay such fees and expenses; (ii) the Company shall have failed to employ counsel reasonably satisfactory to the Indemnified Person in a timely manner; or (iii) the Indemnified Person shall have been advised by counsel that there are actual or potential conflicting interests between the Company and the Indemnified Person, including situations in which there are one or more legal defenses available to the Indemnified Person that are different from or additional to those available to the Company; _provided, however_, that the Company shall not, in connection with any one such action or proceeding or separate but substantially similar actions or proceedings arising out of the same general allegations, be liable for the fees and expenses of more than one separate firm of attorneys at any time for all Indemnified Persons including Ducera, _except_ to the extent that local counsel, in addition to its regular counsel, is required in order to effectively defend against such action or proceeding and _except_ as may be required pursuant to **Annex A(G)(iii)**.

H.    The obligations of the parties hereto pursuant to these Terms and Conditions shall survive any expiration or Term of the Superseding Agreement or Ducera's engagement hereunder.

## Schedule A

### Pre-Existing Relationship Person

Pre-Existing Relationship Person with respect to a Financing:

1. Franklin Advisers, Inc. and its managed accounts

2. The Cincinnati High Yield Desk of J.P. Morgan Investment Management Inc., as investment manager and authorized agent of certain discretionary accounts

3. The Indianapolis High Yield Desk of JPMorgan Investment Management Inc., as investment manager of certain discretionary accounts

4. Whitebox Advisors LLC