**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

In re:

REMINGTON OUTDOOR COMPANY, INC.,
*et al.*,[1]

                           Debtors.

Chapter 11

Case No. 20-81688-11

Joint Administration Requested

### DEBTORS' MOTION FOR (I) AN ORDER ESTABLISHING BIDDING PROCEDURES AND GRANTING RELATED RELIEF AND (II) AN ORDER OR ORDERS APPROVING THE SALE OF THE DEBTORS' ASSETS

Remington Outdoor Company, Inc. ("**Remington**" or the "**Company**"), and its affiliated debtors and debtors in possession in the above-captioned Chapter 11 cases (collectively, the "**Debtors**") seek entry of an order, substantially in the form attached hereto as <u>Exhibit A</u> (the "**Bidding Procedures Order**"), (i) approving the proposed bidding procedures attached hereto as <u>Exhibit B</u> (the "**Bidding Procedures**") by which the Debtors will solicit and select the highest or otherwise best offer for the sale of substantially all or a portion of their assets (the "**Acquired Assets**") through one or more sales of the Acquired Assets (each, a "**Sale Transaction**" or "**Sale**"); (ii) establishing procedures for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts (the "**Assumption and Assignment Procedures**"); (iii) approving the form and manner of notice with respect to certain procedures, protections, schedules, and agreements described herein and attached hereto, including the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405). The Debtors' corporate headquarters are located at 100 Electronics Boulevard SW, Huntsville, AL 35824.

Case 20-81688-CRJ11    Doc 29    Filed 07/28/20    Entered 07/28/20 01:44:38    Desc Main
Document      Page 1 of 107

Debtors' selection of one or more stalking horse bidders (each, a "**Stalking Horse Bidder**"), if any, and the provision of Bid Protections (as defined below) to such Stalking Horse Bidder, if necessary; (iv) authorizing but not directing the Debtors' use of a portion of the sale proceeds to pay the Priority Term Loan Obligations and a portion of the FILO Term Loan Obligations; (v) scheduling (a) an auction (the "**Auction**") if the Debtors receive two (2) or more timely and acceptable Qualified Bids (as defined below), and (b) a final hearing (the "**Sale Hearing**") to approve one or more Sales of the Acquired Assets; and (vi) granting related relief. The Debtors further request that, at the Sale Hearing, this Court enter an order or orders (each, a "**Sale Order**"), a proposed version of which will be filed before the Sale Hearing, (x) authorizing the sale of the Acquired Assets free and clear of liens, claims, interests, and encumbrances (collectively, the "**Interests**"); (y) authorizing the assumption and assignment of certain executory contracts and unexpired leases; and (z) granting related relief. In support of this motion (this "**Motion**"), the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.      By this Motion, the Debtors seek authority to continue a marketing and sale process to sell all or substantially all of their Acquired Assets to maximize the value of the Debtors' estates for their creditors.

2.      Prior to the commencement of the Chapter 11 Cases (as defined below), the Debtors spent significant time and effort addressing their numerous balance sheet and operational challenges, including soliciting interest from potential investors and buyers. After exploring a number of alternative transaction structures and extensive good faith negotiations spanning approximately seven months, the Debtors are close to reaching an agreement with potential purchasers for the sale of a substantial portion of the Debtors' assets as a going concern. While negotiations are not quite final, the Debtors anticipate designating one or more stalking horse

bidders (each, a "**Stalking Horse Bidder**") for the various segments of its business shortly after the Petition Date (as defined below).

3.        The Debtors commenced the Chapter 11 Cases with a view toward ensuring that the sale process for the sale of substantially all of their assets on a going concern basis maximizes the value to their estates, and best protects the interests of their employees, as well as secured and unsecured creditors.  The Debtors believe that the Bidding Procedures for which they hereby seek approval are designed to maximize purchasers' participation in the Sale while maintaining maximum optionality for the Debtors and their stakeholders and are both a valid exercise of the Debtors' business judgment and consistent with their fiduciary obligations to their stakeholders.

4.        The Debtors seek approval of a sale process that (i) is open to all potential bidders, including third parties and current holders of debt in the Debtors' capital structure; (ii) protects the best interests of the Debtors' estates and stakeholders; and (iii) preserves the Debtors' right to exercise their fiduciary duties should a value-maximizing alternative materialize, including a plan of reorganization.  This approach is grounded in the Debtors' belief that conducting a fair and robust auction at this time is the most viable option to maximize the distributable value of their assets and elicit a market test of the bid offered by any Stalking Horse Bidder.  Additionally, the Debtors' secured creditors are supportive of the sale process.  For all of the foregoing reasons and those set forth herein, the Debtors believe the sale process embodied in the Bidding Procedures is a valid exercise of their business judgment, is in the best interests of their estates and creditors, and should be approved.

## JURISDICTION

5.        This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *General Order of Reference* of the United States District Court for the Northern District

of Alabama dated July 16, 1984, as amended July 17, 1984. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

6. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The predicates for the relief requested herein are Sections 105, 363, and 365 of title 11 of the United States Code (the "**Bankruptcy Code**"); and rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## BACKGROUND

**A.    General Background**

8. On the date hereof (the "**Petition Date**"), each of the Debtors commenced a voluntary case under Chapter 11 of Bankruptcy Code with the United States Bankruptcy Court for the Northern District of Alabama (the "**Bankruptcy Court**"). Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors-in-possession.

9. Contemporaneously herewith, the Debtors filed a motion seeking joint administration of their Chapter 11 cases (the "**Chapter 11 Cases**") pursuant to Bankruptcy Rule 1015(b). As of the date hereof, the United States Bankruptcy Administrator for the Northern District of Alabama (the "**Bankruptcy Administrator**") has not appointed any official committee of unsecured creditors in the Chapter 11 Cases pursuant to Section 1102 of the Bankruptcy Code (a "**Committee**"). No trustee, examiner, or other statutory committee has been appointed in the Chapter 11 Cases.

10. Founded in 1816, Remington and its subsidiaries are among America's oldest and largest manufacturer of firearms, ammunition, and related products for commercial, military, and law enforcement customers. The Debtors own a diverse portfolio of category-defining brands,

Case 20-81688-CRJ11    Doc 29    Filed 07/28/20    Entered 07/28/20 01:44:38    Desc Main
Document        Page 4 of 107

including Remington, Marlin, Bushmaster, Barnes Bullets, Advanced Armament Corp., and Dakota Arms.

11.     On March 25, 2018, after experiencing a significant decline in sales and revenues, Remington and certain of its subsidiaries filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Prior Cases**") to implement a comprehensive balance sheet restructuring pursuant to a joint prepackaged plan of reorganization. The Debtors confirmed their *Joint Prepackaged Chapter 11 Plan of Remington Outdoor Company, Inc. and its Affiliated Debtors and Debtors in Possession* on May 4, 2018, and emerged from the Prior Cases on May 15, 2018 with a more streamlined capital structure.

12.     Although the Prior Cases restructured the balance sheet, the Debtors emerged from the Prior Cases with an elevated level of inventory and a wide range of brands that extended the Debtors beyond their core focus. Most importantly, the unfavorable business trends continued after exit from the Prior Cases.

13.     In order to provide the Debtors more runway, in late 2018 and early 2019, the Debtors commenced a robust process to refinance its existing asset based credit facility (the "**Exit ABL Facility**") as a means to alleviate covenant concerns and provide new capital. The Debtors engaged Ducera Partners LLC, and, where appropriate, Ducera Securities LLC ("**Ducera**"), to advise the Debtors and market the investment. As part of the refinancing process, Ducera contacted over sixty (60) potential lenders to solicit financing interest. The Debtors received three (3) non-binding indications of interest. Ultimately, the Debtors moved forward with a priority term loan facility (the "**Priority Term Loan Facility**") from Whitebox Advisors, and the Loan and Security Agreement was entered into on April 18, 2019 (the "**Priority Term Loan Credit**

Agreement"), by and among Debtor FGI Operating Company, LLC, as borrower, the other Debtors, as guarantors, Cantor Fitzgerald Securities, as administrative agent (the "**Priority Term Loan Agent**"), and the lenders from time to time party thereto (the "**Priority Term Loan Lenders**"), refinancing the Exit ABL Facility, resolving covenant concerns that existed at the time, and providing incremental liquidity to the Debtors.

14. The Debtors appointed a new chief executive officer, chief financial officer, and chief operating officer in 2019. After these appointments, the Debtors undertook an analysis of their strategic priorities, various cost-cutting measures, and financing alternatives. The Debtors initiated a reduction of excess inventory and sought increased profitability via continued improvements in operational efficiencies, growth in international and dealer sales channels, and growth in defense and law enforcement channels.

15. Despite the Debtors' efforts, which resulted in significantly improved efficiencies and savings, their financial performance continued to deteriorate, owing in large part to the inability to purchase raw materials at the required level to grow revenues. At the conclusion of 2019, the Debtors had realized approximately $437.5 million in total net sales and an adjusted EBITDA of $(74.7) million. In comparison, in 2015 and 2016, the Debtors had achieved approximately $808.9 million and $865.1 million in sales and $64 million and $119.8 million in adjusted EBITDA, respectively.

16. The Debtors also continued to face liquidity pressure and were increasingly challenged to meet the collateral base floor imposed requirements under the Priority Term Loan Facility. That limited availability of the credit line and triggered an obligation to post cash collateral in the amount of any difference between the Debtors' borrowing base and the collateral base floor. In February 2020, the Debtors negotiated an amendment to the Priority Term Loan

Credit Agreement that reduced the collateral base floor by $7.5 million and deferred a $5 million amortization payment for a month and a half, but the amendment did not provide a permanent liquidity solution.

17.     To preserve liquidity, the Debtors deferred payment of the firearms and ammunition excise tax under 26 U.S.C. Section 4181 (the "**Excise Tax**") in compliance with the CARES Act.

18.     The COVID-19 pandemic has recently sparked increased demand for the Debtors' core products. The Debtors, however, have been unable to meet such demand because of the need to suspend operations temporarily to respond to the pandemic and insufficient liquidity to fund raw material purchases needed to scale up production.  As a result, the Debtors' liquidity remains challenged.

19.     A description of the Debtors and their business is set forth in greater detail in the *Declaration of Ken D'Arcy in Support of Chapter 11 Petitions and First Day Pleadings of Remington Outdoor Company, Inc. and Its Affiliated Debtors and Debtors-Possession* (the "**D'Arcy Declaration**") filed on the Petition Date and is incorporated herein by reference.[2]

**B.      Specific Background**

> *i.    The Debtors' Pre-Petition Marketing and Sales Efforts*

20.     In late 2019, the Debtors embarked on a process to explore strategic alternatives. Among the options considered were a potential recapitalization of the Prepetition Facilities, refinancing of the Priority Term Loan Facility, a potential equity raise, and a potential sale of the Debtors' assets or merger.  The Debtors were willing to entertain both in-court and out-of-court options during this process.

---

[2] Capitalized terms used herein without definition have the meanings given to such terms in the D'Arcy Declaration.

21.     On December 2, 2019, the Debtors again engaged Ducera to advise them in connection with exploring strategic alternatives.  Ducera contacted over 200 potential new investors regarding engaging in a potential transaction with the Debtors, including over twenty (20) potential lenders regarding a possible refinancing of the Priority Term Loan Facility.  Of these, approximately forty (40), entered into confidentiality agreements and engaged in further dialogue and diligence with Ducera and the Debtors.  Ultimately, approximately five (5) potential investors submitted non-binding indications of intents with proposed investment terms.  One of those proposals was a proposal by an entity to purchase the Debtors' businesses as a going concern (the "**Potential Bidder**").

22.     For most of February 2020 and into March 2020, the Debtors with the assistance of Ducera and their other advisors negotiated over terms of potential transactions with these parties. While some of these parties were forced to halt their participation in the process due to the impacts on their businesses from the COVID-19 pandemic, among other reasons, the bid to acquire the businesses by the Potential Bidder, emerged as the lead bid.

23.     Ducera also concurrently engaged in in-depth discussions with all of the Debtors' major stakeholders, including the Priority Term Loan Lenders, FILO Lenders, Exit Term Loan Lenders, and the Debtors' major shareholders, to investigate the viability of a consensual out-of-court restructuring.  None of these stakeholders, however, offered a proposal that was feasible.

24.     In April 2020, the board of directors of ROC also formed a special restructuring committee comprised of solely independent and disinterested directors (the "**Restructuring Committee**") to, among other things, review and evaluate, with the assistance of legal counsel, financial and other advisors, any and all possible transactions available to the Debtors.

25.     Although a deal in principle had been reached with the Potential Bidder, in May and June 2020, the Debtors, with the assistance of Ducera and its other advisors and under the supervision of the Restructuring Committee, made another solicitation for additional bids for the Company in order to both further market test the Potential Bidder bid and to serve as back-ups in the event that the offer fell through.  The Debtors and their advisors engaged a number of parties, including private equity firms and strategics to evaluate interest in asset sale transactions.  The Debtors set a response deadline of June 8, 2020 and received bids through June 15, 2020.  During the solicitation period, interested parties were requested to provide indications of interest on any potential asset sale transactions including both segment and enterprise level transactions.

26.     The Debtors and the Potential Bidder's representatives negotiated a final purchase agreement and debtor in possession financing agreement on or about June 18, 2020, which remained subject to final approval by the Potential Bidder's regulatory and legal oversight.  Among other things, the negotiated transaction provided for the assumption by the buyer of many ordinary course pre-petition liabilities including taxes and trade accounts payable.  While the negotiated transaction received certain of the required regulatory approvals, the transaction with the Potential Bidder became the subject of public reports, and final approval by the Potential Bidder's governing bodies expected in mid-July 2020 was not completed within the timeframe necessary to move forward with the transaction.  The Company and the Restructuring Committee concluded that they could no longer wait to see if the Potential Bidder could successfully complete the governance approval process, whether based upon the negotiated transaction or some modification of that agreement.  The Debtors extended deadlines for the Potential Bidder and other bidders and then worked to develop their options.

Case 20-81688-CRJ11    Doc 29    Filed 07/28/20    Entered 07/28/20 01:44:38    Desc Main
Document      Page 9 of 107

27. Multiple parties continued diligence efforts and provided indications of interest. In July 2020, the Debtors prepared and distributed a form of asset purchase agreement. As of the Petition Date, at least 4 potential purchasers in addition to the Potential Bidder submitted a markup of the form asset purchase agreement, and the Debtors continued to receive expressions of interest from still other potential bidders who are conducting diligence. The Debtors continue to negotiate with each of these bidders. While negotiations progressed, the Debtors had not yet finalized the terms of these sales by the time that their liquidity position necessitated this filing. The Debtors are assessing all of these options, including sales for all or parts of their businesses.

28. The Debtors are also engaged in negotiations with those potential purchasers regarding assuming the role of the Stalking Horse Bidder for the purchase of the Acquired Assets or a portion thereof comprising a particular segment of the Debtors' business. For example, it is possible that the Debtors may determine to designate a Stalking Horse Bidder for their firearms business and a separate Stalking Horse Bidder for its ammunition business. If an agreement is reached, a proposed Stalking Horse Bidder may request certain bid protections, including a break-up fee and expense reimbursement. The Debtors will provide notice of such designation and any requested bid protections as soon as reasonably practicable before the hearing on this Motion.

*ii.    The Proposed Post-Petition Sale Process*

29. The Debtors, in consultation with their advisors, believe that pursuing a Sale Transaction at this time is the course of action most likely to maximize value and encourage robust bidder participation. Indeed, the proposed sale process takes into consideration the robust marketing process engaged in prior to the Petition Date, provides flexibility for the sale of all or a portion of the Acquired Assets, and delivers market feedback regarding the value of the bid proposed by any Stalking Horse Bidder. This approach represents a sound exercise of the Debtors'

business judgment, is consistent with their fiduciary obligation to maximize the recoverable value of their estates, and is in the best interest of the Debtors' estates and creditors.

30.     Accordingly, by this Motion, the Debtors seek authority to implement the Bidding Procedures outlined herein to efficiently market and solicit offers for the Acquired Assets.  The Debtors believe that the relief requested herein will bolster the prospects of maximizing the value of their assets for the benefits of their estates.

**C.     The Proposed Bidding, Notice, and Assumption and Assignment Procedures**

*i.   Proposed Timeline for the Sale*

31.     The Debtors propose the following timeline for the Sale:[3]

| Deadline | Action |
|---|---|
| August 17, 2020 at 10:00 a.m. (prevailing Central Time) | Hearing to consider approval of the Bidding Procedures and entry of the Bidding Procedures Order |
| August 21, 2020 | Sale Notice Mailing Date |
| August 21, 2020 | Assumption and Assignment Service Date |
| August 24, 2020 at 4:00 p.m. (prevailing Central Time) | Sale Objection Deadline (defined below) |
| September 1, 2020 at 5:00 p.m. (prevailing Central Time) | Bid Deadline |
| September 1, 2020 at 12:00 p.m. (prevailing Central Time) | Reply Deadline (defined below) |
| September 4, 2020 by 4:00 p.m. (prevailing Central Time) or 14 days following service of the Supplemental Notice of Assumption and Assignment | Assumption and Assignment Objection Deadline (defined below) |
| September 8, 2020 at 10:00 a.m. (prevailing Central Time) | Auction |
| September 9, 2020 | Post-Auction Notice |
| September 10, 2020 at 10:00 a.m. (prevailing Central Time) | Sale Hearing |

---

[3] The Debtors, in the exercise of their business judgment, reserve the right to modify these sale-related dates to achieve the maximum value for the Assets.

The Debtors submit that this proposed timeline is eminently reasonable, will foster robust participation in the sale process, is consistent with local practice and custom, and will not prejudice any parties in interest.

### ii. The Bidding Procedures

32.     The Bidding Procedures are designed to maximize value for the Debtors' estates, while ensuring an orderly and efficient sale process.  The Bidding Procedures describe, among other things, (i) the procedures for interested parties to access due diligence materials, submit bids, and participate in the Auction; (ii) the time, place, and process of any Auction; (iii) the selection and approval of any ultimately successful bidders; and (iv) the deadlines with respect to the foregoing.  The Debtors believe, with the support of their secured creditors, that the Bidding Procedures provide for a sale process that will maximize the value of their estates and encourage robust participation in the bid process from all potential bidders.  Indeed, as discussed above, moving forward with this process at this time, and in the manner described herein, will support two very important goals:  (a) encouraging participation from the widest possible group of bidders for the Debtors' assets; and  (b) improving recoveries for the Debtors' various creditor constituencies.

33.     A summary of the principal terms of the Bidding Procedures, a complete copy of which is attached hereto as <u>Exhibit B</u>, is as follows:[4]

| | |
|---|---|
| **Assets to Be Sold (p. 1)** | All or substantially all of the Acquired Assets either through one sale to a Successful Bidder or multiple sales to multiple Successful Bidders. |
| | The Debtors will consider, without limitation: (1) bids to acquire all of the Debtors' operating segments (the "**Whole Company**"), including all or substantially all of their assets (a "**Whole Company Bid**") or (2) separate bids |

---

[4]  The following summary is qualified in its entirety by reference to the provisions of the Bidding Procedures.  In the event of any inconsistencies between the provisions of the Bidding Procedures and the terms herein, the terms of the Bidding Procedures shall govern.  Capitalized terms not defined in this table shall have the meaning ascribed to them in the Bidding Procedures.

| | |
|---|---|
| | to acquire (x) all or a portion of the Debtors' business segment relating to the design, manufacture and marketing of ammunition (the "**Ammunitions Business**"), including the production facilities owned or operated by the Debtors in Lonoke, Arkansas, and Mona, Utah, under the *Remington* and *Barnes Bullets* brands (an "**Ammunitions Business Bid**") and (y) all or a portion of the Debtors' business segment relating to the design, manufacture and marketing of shotguns, rifles, handguns and modular firearms and related components (the "**Firearms Business**") and all or substantially of the Debtors' remaining assets not subject to an Ammunitions Business Bid (a "**Firearms Business Bid**"). |
| **Stalking Horse Bid (p. 3)** | The Debtors will continue to solicit stalking horse bids for the Debtors' assets through the Bid Deadline (as defined below). In the event that the Debtors designate one or more Stalking Horse Bidders and enter into an asset purchase agreement with such Stalking Horse Bidders (each, a "**Stalking Horse APA**") on or before the Bid Deadline, the Debtors will provide three (3) business days' notice of the designation of any such Stalking Horse Bidder and an opportunity to object to the designation of such Stalking Horse Bidder and disclosure of any Bid Protections set forth in the applicable Stalking Horse APA. |
| **Access to Diligence Materials (p. 3)** | To receive access to due diligence materials and to participate in the bidding process, an interested party must submit to the Debtors (i) an executed confidentiality agreement in form and substance satisfactory to the Debtors (which, for the avoidance of doubt, may be substantially in the form attached to the Bidding Procedures as Exhibit 2) or may be a confidentiality agreement already in existence between such party and the Debtors, (ii) evidence demonstrating the party's financial ability to consummate a Sale Transaction for the Acquired Assets or, if such party has been formed for the purpose of entering into a Sale Transaction, evidence from such party's equity holder(s), sponsor(s) or other financial backer(s) ("**Bid Sponsor**"), demonstrating such Bid Sponsor's financial ability to consummate a Sale Transaction, and (iii) a statement that such party has a bona fide interest in purchasing all or some of the Acquired Assets.

A party who, in the Debtors' reasonable discretion, satisfies the requirements set forth in the immediately preceding sentence for receiving access to diligence materials shall be a "**Diligence Party**." As promptly as practicable after the Debtors determine that a party is a Diligence Party, the Debtors will deliver to the Diligence Party access to the Debtors' confidential electronic data room. The Debtors will afford any Diligence Party the time and opportunity to conduct reasonable due diligence before the Bid Deadline (as defined below). Notwithstanding the foregoing, the Debtors reserve the right to withhold any diligence materials that the Debtors determine are sensitive or otherwise not appropriate for disclosure to a Diligence Party who the Debtors determine is a competitor of the Debtors or is affiliated with any competitor of the Debtors. Neither the Debtors nor their representatives shall be obligated |

| | |
|---|---|
| | to furnish information of any kind whatsoever to any person that is not determined to be a Diligence Party. The Debtors shall not exclude a party from diligence who has complied with subsections (i) and (ii) of the preceding paragraph, unless they have first consulted with the Consultation Parties (as defined in the Bidding Procedures) regarding such determination. |
| **Qualification of Bidders and Qualified Bids (pp. 4-7)** | To be eligible to participate in the Auction, each offer, solicitation, or proposal (each, a "**Bid**"), and each party submitting such a Bid (each, a "**Bidder**") must satisfy each of the conditions set forth below, as determined by the Debtors. A Bid will not be considered qualified for the Auction if such Bid does not satisfy each of the following conditions (provided, that the Debtors, in consultation with the Bid Consultation Parties may waive or modify the application of such conditions to any Bid): |

(a)    <u>Good Faith Deposit</u>: Each Bid for all or a portion of the Acquired Assets must be accompanied by a deposit (a "**Good Faith Deposit**") submitted by wire transfer of immediately available funds to an account identified by the Debtors. Each Good Faith Deposit must equal (1) in the case of a Bid for all or a portion of the Acquired Assets, the amount of 10% of the proposed cash consideration of such Bid or (2) such other amount as the Debtors determine, in consultation with the Bid Consultation Parties (as defined in the Bidding Procedures); *provided, however*, that any Prepetition Secured Creditor submitting a Bid primarily composed of a credit bid pursuant to Section 363(k) of the Bankruptcy Code shall not be required to submit a Good Faith Deposit for the portion of the Bid consisting of a credit bid.

(b)    <u>Assets</u>: Each Bid must clearly state which of the Acquired Assets the Qualified Bidder is agreeing to purchase and assume, including whether the Bid is a Firearms Bid, an Ammunitions Bid, a Whole Company Bid, or other Bid.

(c)    <u>Assumption of Liabilities</u>: Each Bid must clearly state which liabilities and obligations of the Debtors the Qualified Bidder is agreeing to assume.

(d)    <u>Bids for Portions of the Assets</u>: A Bid may offer to purchase (i) the Ammunitions Business; (ii) the Firearms Business; (iii) the Whole Company or (iv) a portion of the foregoing. The Debtors may, in consultation with the Bid Consultation Parties, waive or modify the application of the Qualified Bid conditions in respect of Bids.

(e)    <u>Purchase Price</u>: Each Bid must clearly set forth the purchase price to be paid for the Acquired Assets proposed to be acquired including and identifying separately any cash and non-cash components. Any Whole Company Bid must clearly set forth the

portion of the purchase price applicable to each of the Firearms Business and the Ammunitions Business.

(f) <u>Same or Better Terms</u>: In the event the Debtors enter into a Stalking Horse APA, each Bid for any Acquired Assets (alone or combined with Bids for other Acquired Assets) must be on terms that, in the Debtors' business judgment, in consultation with the Bid Consultation Parties, are the same or better than the terms of the Stalking Horse APA applicable to the assets that are the subject of such Bid after taking account of the Bid Protections (as hereinafter defined).

(g) <u>Executed Agreement</u>: Each Bid must be based on the Asset Purchase Agreement attached to the Bidding Procedures as <u>Exhibit 1</u> (the "**Form APA**") and must include executed transaction documents, signed by an authorized representative of such Bidder, pursuant to which the Bidder proposes to effectuate a Sale Transaction (the "**Modified Purchase Agreement**"). A Bid shall also include a copy of the Modified Purchase Agreement marked against the Form APA to show all changes requested by the Bidder (including those related to purchase price). Each such Modified Purchase Agreement must provide for payment in cash at closing of the Expense Reimbursement (as defined below) and Break-Up Fee (as defined below) to any Stalking Horse Bidder that entered into a Stalking Horse APA applicable to the assets that are the subject of such Bid.

(h) <u>Designation of Assigned Contracts and Leases, Payment of Cure Amounts</u>: A Bid must identify any and all executory contracts and unexpired leases of the Debtors that the Bidder wishes to have assumed and assigned to it at closing and provide for the payment of all cure amounts payable with respect to such contracts and leases under the Bankruptcy Code.

(i) <u>Transition Services Agreement</u>: A Bid that is not a Whole Company Bid must indicate its intentions with respect to entering into a transition services agreement with any Successful Bidder for the remainder of the Debtors' assets.

(j) <u>Corporate Authority</u>: A Bid must include written evidence reasonably acceptable to the Debtors demonstrating appropriate corporate authorization to consummate the proposed Sale Transaction, *provided* that, if the Bidder is an entity specially formed for the purpose of effectuating the Sale Transaction, then the Bidder must furnish written evidence reasonably acceptable to

Case 20-81688-CRJ11    Doc 29    Filed 07/28/20    Entered 07/28/20 01:44:38    Desc Main
Document    Page 15 of 107

the Debtors of the approval of the Sale Transaction by the Bid Sponsor(s) of such Bidder.

(k) Disclosure of Identity of Bidder: A Bid must fully disclose the identity of each entity that will be bidding for or purchasing the Acquired Assets or otherwise participating in connection with such Bid (including any Bid Sponsor(s) if the Bidder is an entity specifically formed for the purpose of effectuating the Sale Transaction), and the complete terms of any such participation, including any binding agreements, arrangements, or understandings concerning a collaborative or joint bid or any other combination concerning the proposed Bid.

(l) Proof of Financial Ability to Perform: A Bid must include written evidence that the Debtors reasonably conclude, in consultation with their advisors and the Bid Consultation Parties, demonstrates that the Bidder has the necessary financial ability to (i) close the Sale Transaction and (ii) provide adequate assurance of future performance under all contracts to be assumed and assigned in such Sale Transaction. Such information must include, *inter alia*, the following:

(1) contact names and numbers for verification of financing sources;

(2) evidence of the Bidder's internal resources and proof of debt funding commitments from a recognized financial institution and, if applicable, equity commitments in an aggregate amount equal to the cash portion of such Bid (including, if applicable, the Bidder's payment of cure amounts) or the posting of an irrevocable letter of credit from a recognized banking institution issued in favor of the Debtors in such amount, in each case, as are needed to close the Sale Transaction;

(3) if the Bidder is an entity specifically formed for the purpose of effectuating the Sale Transaction, a written commitment from such entity's Bid Sponsor(s) to be responsible for such entity's obligations in connection with the bidding process;

(4) the Bidder's current financial statements (audited if they exist) or other similar financial information reasonably acceptable to the Debtors;

(5) a description of the Bidder's pro forma capital structure; and

|  |  | (6) | any such other form of financial disclosure or credit-quality support information or enhancement reasonably requested by the Debtors, in consultation with the Bid Consultation Parties, demonstrating that such Bidder has the ability to close the Sale Transaction. |
|  | (m) | | **Regulatory and Third Party Approvals**: A Bid must set forth each regulatory and third-party approval required for the Bidder to consummate the Sale Transaction, if any, and the time period within which the Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty (30) days following execution and delivery of the Modified Purchase Agreement, those actions the Bidder will take to ensure receipt of such approval(s) as promptly as possible); *provided, however*, that the timing and likelihood of receiving any such regulatory and third-party approvals will be a consideration in determining the highest or otherwise best Bid. |
|  | (n) | | **Contingencies**: Each Bid may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence. |
|  | (o) | | **Irrevocable**: Each Bid must expressly provide that (1) the Bidder is prepared to consummate the transaction set forth in the Modified Purchase Agreement promptly following entry of the Sale Order and satisfaction of the closing conditions (if any) set forth in the Modified Purchase Agreement, and (2) the offer reflected in such Bid shall remain open and irrevocable until the conclusion of the Auction, provided that if such Bid is accepted as the Successful Bid or the Backup Bid, such Bid shall continue to remain open and irrevocable as provided under "Closing the Auction; Successful Bidder" and "Backup Bidder" in the Bidding Procedures. |
|  | (p) | | **Time Frame for Closing**: A Bid must be reasonably likely (based on available financing, antitrust or other regulatory issues) to be consummated within an acceptable timeframe. |
|  | (q) | | **Acknowledgment**: Each Bid must include an acknowledgment and representation by an authorized person of the Bidder that the Bidder: (i) has had an opportunity to conduct any and all required due diligence regarding the Acquired Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Acquired Assets in making its Bid; (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied (by operation of |

law or otherwise), regarding the Acquired Assets or the completeness of any information provided in connection therewith or with the Auction, except as expressly stated in the Modified Purchase Agreement; (iv) has authorization and approval necessary to close on the delivered Modified Purchase Agreement; (v) has irrevocable financing commitment or cash on hand to consummate the proposed sale and pay the purchase price in cash; (vi) is not entitled to any expense reimbursement, break-up fee, or similar type of payment in connection with its Bid; (vii) has not and will not engage in any collusion with respect to any Bids, the Auction or the Sale; (viii) agrees to abide by the terms of the Bidding Procedures; and (ix) after the conclusion of the Auction, if any, will not submit a Bid or seek to reopen the Auction.

(r)   Bid Deadline: Each Bid must be received by each of the following parties, in writing, on or before **September 1, 2020 at 5:00 p.m. (prevailing Central Time)** or such earlier date as may be designated by the Debtors in consultation with the Consultation Parties (the "**Bid Deadline**"): (i) proposed counsel for the Debtors, O'Melveny & Myers LLP, Attn: Steve Warren (swarren@omm.com) and Jennifer Taylor (jtaylor@omm.com); (ii) proposed co-counsel for the Debtors, Burr & Forman LLP, Attn: Derek Meek (dmeek@burr.com) and Hanna Lahr (hlahr@burr.com); (iii) counsel for the Restructuring Committee, Akin Gump Strauss Hauer & Feld LLP, Attn: Sarah Schultz (sschultz@akingump.com) and Chance Hiner (chiner@akingump.com); and (iv) advisors for the Debtors, Ducera Partners, Attn: Bradley Meyer (bmeyer@ducerapartners.com). Promptly upon receipt, the Debtors shall provide all Bids to the Bid Consultation Parties.

A Bid received from a Bidder on or before the Bid Deadline that meets the requirements set forth above for the applicable Acquired Assets shall constitute a "**Qualified Bid**" for such Acquired Assets, and such Bidder shall constitute a "**Qualified Bidder**" for such Acquired Assets. Each Stalking Horse APA will be deemed a Qualified Bid for all purposes, and each Stalking Horse Bidder will be deemed a Qualified Bidder.

| | |
|---|---|
| **Credit Bidding (p. 8)** | Notwithstanding anything else contained in the Bidding Procedures, the Prepetition Secured Creditors shall have the right, subject in all respects to the Bankruptcy Code and other applicable law and the satisfaction in cash or assumption of claims secured by senior liens, to credit bid all or any portion of their allowed secured claims at the Auction pursuant to Section 363(k) of the Bankruptcy Code or other applicable law, in accordance with the applicable terms of the Prepetition Credit Documents; *provided* that such Bid is subject to the Intercreditor Agreement (as defined in the D'Arcy Declaration) and the rights of the Committee as set forth in paragraph 9 of the Bidding Procedures Order. |
| **Stalking Horse Bid Protections (p. 8)** | In the event the Debtors designate one or more Stalking Horse Bidders and enter into a Stalking Horse APA, recognizing a Stalking Horse Bidder's expenditure of time, energy and resources in connection with the proposed Sale Transaction set forth in any Stalking Horse APA, and the benefit that those efforts provided to all interested parties, if, among other circumstances set forth in the Stalking Horse APA, the Stalking Horse Bidder is not the Successful Bidder, the Debtors may seek authority to pay to such Stalking Horse Bidder a Break-Up Fee and Expense Reimbursement, which will be governed by the provisions of the Stalking Horse APA, if any, and the Bidding Procedures Order.<br><br>Absent further order of the Court, the Stalking Horse APA shall (i) limit the break-up fee in favor of the Stalking Horse Bidder in an amount of no more than 3.5% of the cash consideration proposed to be paid at closing by the Stalking Horse Bidder under the applicable Stalking Horse APA (the "**Break-Up Fee**"); (ii) limit any reimbursement for the Stalking Horse Bidder's and its attorneys', accountants', investment bankers' and representatives' documented fees and expenses actually and reasonably incurred in negotiating and documenting the Stalking Horse APA, and in preserving and protecting Stalking Horse Bidder's rights and interests as buyer and lender in connection with the Chapter 11 Cases to an amount not to exceed 1.0% of the cash consideration proposed to be paid at closing by the Stalking Horse Bidder under the applicable Stalking Horse APA (the "**Expense Reimbursement**"); and/or (iii) set the initial overbid protection (the "**Minimum Overbid Increment**" and, together with the Break-Up Fee and the Expense Reimbursement, the "**Bid Protections**") in amounts to be determined by the Debtors in accordance with the Bidding Procedures. |
| **Auction (pp. 8-9)** | If two (2) or more Qualified Bids for the same Acquired Assets are received by the Bid Deadline, the Debtors will conduct the Auction to determine the highest or otherwise best Qualified Bid. Only Qualified Bidders may participate in the Auction.<br><br>If no Qualified Bid for the Acquired Assets is received by the Bid Deadline (other than that of any Stalking Horse Bidder), the Debtors, in consultation |

| | |
|---|---|
| | with the Consultation Parties, may cancel the Auction and seek approval of the transaction contemplated by the Stalking Horse APA, if any. |
| | The Auction shall take place on **September 8, 2020 at 10:00 a.m. (prevailing Central Time)** virtually via video-conferencing technology, or such other place and time as the Debtors shall notify all Qualified Bidders and the Consultation Parties. The Auction shall be conducted according to the following procedures: |
| | Only the Debtors, the Consultation Parties, any Stalking Horse Bidder, any Qualified Bidders, and/or other party as the Debtors may determine to include in their discretion, in each case along with their representatives and advisors, shall be entitled to attend the Auction (such attendance to be in person via video-conference) and only any Stalking Horse Bidder, the other Qualified Bidders will be entitled to make any Overbids (as defined below) at the Auction. |
| | The Debtors and their advisors shall direct and preside over the Auction, which shall be transcribed. Other than as expressly set forth in the Bidding Procedures, the Debtors (in consultation with the Consultation Parties or, to the extent provided in the Bidding Procedures, the Bid Consultation Parties) may conduct the Auction in the manner they determine will result in the highest or otherwise best offer for any of the Acquired Assets. The Debtors shall use their best efforts to, at least 24 hours prior to commencement of the Auction, provide the Consultation Parties and each Qualified Bidder participating in the Auction with a complete and correct copy of the agreement (either the Stalking Horse APA, if any, or the Modified Purchase Agreement) associated with the Qualified Bid deemed by the Debtors to be the highest or otherwise best bid for the Acquired Assets (such highest or otherwise best Qualified Bid, the "**Auction Baseline Bid**"). At the start of the Auction, the Debtors shall describe the material terms of the Auction Baseline Bid and each Qualified Bidder participating in the Auction must confirm that (a) it has not engaged in any collusion with respect to the bidding or sale of any of the Acquired Assets described herein, (b) it has reviewed, understands, and accepts the Bidding Procedures, (c) it has consented to the core jurisdiction of the Bankruptcy Court (as described more fully below), and (d) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder. |
| **Terms and Announcement of Overbids (pp. 9-11)** | An "**Overbid**" is any bid made at the Auction, in accordance with the requirements set forth in the Bidding Procedures, subsequent to the Debtors' announcement of the respective Auction Baseline Bid. To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions: |
| | (a) Minimum Overbid Increments: The initial Overbid, if any, shall provide for total consideration to the Debtors with a value that exceeds the value of the consideration under the Auction |

Baseline Bid by an incremental amount that is not less than the sum of (x) $500,000 (the "**Minimum Overbid Increment**") plus (y) the aggregate amount of any Bid Protections, without duplication, under the Stalking Horse APA applicable to the assets that are the subject of such Overbid, if any, and each successive Overbid shall exceed the then-existing Overbid by an incremental amount that is not less than the Minimum Overbid Increment. In considering the value of any Overbid, the Debtors shall take into account the effect of the Bid Protections. In the event a Stalking Horse Bidder is designated prior to the Bid Deadline, if such Stalking Horse Bidder bids at the Auction, it will be entitled to "credit" in the amount of the applicable Bid Protections to be counted towards its Bid such that the cash and/or non-cash consideration proposed by it plus the applicable Bid Protection "credit" must exceed the then-existing Overbid by an incremental amount that is not less than the Minimum Overbid Increment. The Debtors reserve the right, in consultation with the Bid Consultation Parties, to announce reductions or increases in the Minimum Overbid Increment at any time during the Auction. Additional consideration in excess of the amount set forth in the respective Auction Baseline Bid may include (i) cash and/or non-cash consideration, *provided, however,* that the value for such non-cash consideration shall be determined by the Debtors in their reasonable business judgment in consultation with the Bid Consultation Parties (considering factors that include the proposed terms thereof and the creditworthiness of the Bidder) and the Debtors reserve the right to adjust the value of or reject any such non-cash consideration, *provided further* that the Bid Consultation Parties reserve the right to object to the Debtors' determination and such dispute may be resolved by the Court at the Sale Hearing, and (ii) in the case of a Bid by the Prepetition Secured Creditors, a credit bid of up to the full amount of the such secured creditors' allowed secured claim, subject to the Bankruptcy Code and other applicable law and the satisfaction in cash or assumption of claims secured by senior liens, *provided* that such Bid otherwise complies with the requirements set forth in the Bidding Procedures and subject to the rights of the Committee as set forth in paragraph 9 of the Bidding Procedures Order.

(b)  Remaining Terms Are the Same as for Qualified Bids: Except as modified in the Bidding Procedures, an Overbid at the Auction must comply with the conditions for a Qualified Bid set forth above, *provided, however,* that the Bid Deadline shall not apply. Any Overbid must include, in addition to the amount and the form of consideration of the Overbid, a

Case 20-81688-CRJ11    Doc 29    Filed 07/28/20    Entered 07/28/20 01:44:38    Desc Main
Document    Page 21 of 107

| | |
|---|---|
| | description of all changes requested by the Bidder to the Stalking Horse APA (if any) or Modified Purchase Agreement, as the case may be, in connection therewith. For the avoidance of doubt, any Overbid shall be irrevocable and shall remain open and binding on the Bidder in accordance with these Bidding Procedures and the conditions for a Qualified Bid.<br><br>At the Debtors' discretion, to the extent not previously provided (which shall be determined by the Debtors in consultation with the Bid Consultation Parties), a Bidder submitting an Overbid at the Auction must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors), as the Debtors, in their reasonable business judgment in consultation with the Bid Consultation Parties, may request, demonstrating such Bidder's ability to consummate the Sale Transaction proposed by such Overbid.<br><br>**Announcement and Consideration of Overbids.**<br><br>(a) <u>Announcement of Overbids</u>: A Bidder submitting an Overbid at the Auction shall announce at the Auction the material terms of such Overbid, including the total amount and type of consideration offered in such Overbid.<br><br>(b) <u>Consideration of Overbids</u>: The Debtors reserve the right, in their reasonable business judgment in consultation with the Consultation Parties, to make one or more continuances of the Auction to, among other things: facilitate discussions between the Debtors and individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; and give Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment in consultation with the Bid Consultation Parties, may require, that the Qualified Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed Sale Transaction at the prevailing Overbid amount; *provided* that, to the extent the Debtors determine to request that any Qualified Bidder increase the amount of their Good Faith Deposit, the Debtors first shall consult with the Bid Consultation Parties before making such request. |
| **Closing the Auction;** | The Auction shall continue until there is only one (1) Qualified Bid for the Acquired Assets that the Debtors determine in their reasonable business |

Case 20-81688-CRJ11    Doc 29    Filed 07/28/20    Entered 07/28/20 01:44:38    Desc Main Document    Page 22 of 107

| | |
|---|---|
| **Successful Bidder (p. 12)** | judgment, in consultation with the Bid Consultation Parties, is the highest or otherwise best Qualified Bid with respect to the assets to which it pertains, as applicable, at the Auction. Thereafter, the Debtors shall select such Qualified Bid, in consultation with the Bid Consultation Parties, as the overall highest or otherwise best Qualified Bid (such Bid(s), the "**Successful Bid(s)**," and the Bidder submitting such Successful Bid(s), the "**Successful Bidder(s)**"). In making this decision, the Debtors shall consider the Bid Assessment Criteria.[5] |
| | The Auction shall close when the Successful Bidder(s) submits fully executed sale and transaction documents memorializing the terms of the Successful Bid(s). |
| | Promptly following the Debtors' selection of the Successful Bid(s) and the conclusion of the Auction, the Debtors shall announce the Successful Bid(s) and Successful Bidder(s) and shall file with the Bankruptcy Court notice of the Successful Bid(s) and Successful Bidder(s). |
| | The Successful Bidder(s) shall be required to keep the Successful Bid(s) open and irrevocable until the closing of the transactions contemplated thereby. The Sale and transaction documents approved by the Bankruptcy Court pursuant to the Sale Order shall be irrevocable and enforceable against the Successful Bidder. |
| **Closing with Alternative Backup Bidders (pp. 12-13)** | Notwithstanding anything in the Bidding Procedures to the contrary, the Qualified Bid for the Acquired Assets that the Debtors determine in their reasonable business judgment, in consultation with the Bid Consultation Parties, is the next highest or otherwise best Qualified Bid(s) with respect to such Acquired Assets, as applicable, at the Auction after the Successful Bid(s), will be designated as the "**Backup Bid(s)**" and the Bidder submitting such Backup Bid(s), the "**Backup Bidder(s)**." The Backup Bidder shall be required to keep the Backup Bid open and irrevocable until the earlier of 5:00 p.m. (prevailing Central Time) on the date that is sixty (60) days after the date of entry of the Sale Order (the "**Outside Backup Date**") or the closing of the transaction with the Successful Bidder. |
| | Following entry of the Sale Order, if the Successful Bidder(s) fails to consummate the Successful Bid(s), the Debtors may, in consultation with the Bid Consultation Parties, designate the applicable Backup Bid to be the new Successful Bid and the Backup Bidder to be the new Successful Bidder, and the Debtors will be authorized, but not required, to consummate the transaction with the Backup Bidder without further order of the Bankruptcy Court. In such case of a breach or failure to perform on the part of the Successful Bidder, the defaulting Successful Bidder's deposit shall be forfeited to the Debtors. The Debtors specifically reserve the right to seek all available damages, including specific performance, from any defaulting |

---

[5] The Prepetition Secured Creditors reserve the right to determine the allocation of the value between the ABL Priority Collateral and the TL Priority Collateral in accordance with the terms of the Intercreditor Agreement.

| | |
|---|---|
| | Successful Bidder (including any Backup Bidder designated as a Successful Bidder) in accordance with the terms of the Bidding Procedures. |
| **Modification of Bidding and Auction Procedures (p. 11)** | The Debtors (in consultation with the Bid Consultation Parties), in the exercise of their fiduciary duties for the purpose of maximizing value for their estates from the sale process, may modify the Bidding Procedures and implement additional procedural rules for conducting the Auction. Specifically, among other things, the Debtors, in consultation with the Bid Consultation Parties, may determine to select more than one Successful Bid and more than one Successful Bidder (and/or more than one Backup Bid and more than one Backup Bidder, in which event such Backup Bids may provide for groupings of Acquired Assets that are different from the groupings of Acquired Assets reflected in the Successful Bid(s)) for separate portions of the Acquired Assets. |

## D. Notice Procedures

34.    The Debtors propose the following notice procedures to be implemented in connection with the sale process.

### i. *Notice of Sale, Auction, and Sale Hearing*

35.    Within seven (7) days after the entry of the Bidding Procedures Order or as soon as reasonably practicable thereafter (the "**Mailing Date**"), the Debtors shall serve a sale notice, substantially in the form attached hereto as <u>Exhibit C</u> (the "**Sale Notice**"), the Form APA, the Bidding Procedures Order, and the Bidding Procedures by first-class mail, postage prepaid, or, for those parties who have consented to receive notice by the Electronic Case Files ("**ECF**") system, by ECF, upon (i) all entities reasonably known to have expressed an interest in a transaction with respect to all or part of the Acquired Assets within the past two years; (ii) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon or with respect to any of the Acquired Assets; (iii) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief granted herein; (iv) counsel for the Committee, if any; (v) counsel to Cantor Fitzgerald Securities, as Priority Term Loan Agent under the Debtors' prepetition Priority Term Loan Credit Agreement; (vi) counsel to Ankura Trust Company, LLC, as FILO Agent under the Debtors' prepetition FILO Term Loan Agreement, and

as Exit Term Loan Agent under the Debtors' prepetition Exit Term Loan Agreement; (vii) counsel to the FILO Lenders; (viii) counsel to the Stalking Horse Bidder, if any; (ix) counsel to Whitebox Advisors LLC; (x) counsel for the Restructuring Committee; (xi) counsel to the Huntsville Note holder; (xii) the Bankruptcy Administrator; (xiii) the Securities and Exchange Commission; (xiv) the Internal Revenue Service; (xv) counsel to the United Mine Workers of America; and (xvi) all known creditors of the Debtors, including their contract counterparties; *provided, however*, that to the extent email addresses are available, parties referenced in this paragraph 35 may be served by email. The Debtors request that such notice be deemed sufficient and proper notice of the Sale Transaction with respect to known interested parties.

36.     Notice by mail to all parties potentially interested in purchasing the Debtors' Acquired Assets or participating in the Auction is impracticable. As a result, the Debtors have determined that it is in the best interest of their estates to also provide notice by publication. Pursuant to Bankruptcy Rules 2002 and 6004, the Debtors propose to publish the Sale Notice in a form substantially similar to the notice attached hereto as Exhibit D, in the *New York Times* on one occasion on the Mailing Date or as soon as reasonably practicable thereafter. In addition, the Debtors (i) respectfully request the authority, but not the direction, to publish the Sale Notice in additional publications as the Debtors deem appropriate and (ii) will cause the Sale Notice to be posted on the website maintained for the Chapter 11 Cases at https://cases.primeclerk.com/RemingtonOutdoor (the "**Case Website**").

*ii.   Date, Time, Place, and Notice of Auction*

37.     The Auction, if any, shall take place on **September 8, 2020 at 10:00 a.m. (prevailing Central Time)** virtually via video-conferencing technology, or such other place and time as the Debtors shall notify all Qualified Bidders and the Consultation Parties.

### iii. Notice of Successful Bidder

38.     As soon as reasonably practicable after the conclusion of the Auction, the Debtors shall file on the docket, but not serve, a notice identifying any Successful Bidder(s) (the "**Post-Auction Notice**"), substantially in the form attached hereto as <u>Exhibit E</u>.

### iv. Date, Time, and Place of Sale Hearing

39.     The Sale Hearing shall be conducted by the Bankruptcy Court on **September 10, 2020 at 10:00 a.m. (prevailing Central Time)** or such other date as the Court is available and may, in accordance with the Bidding Procedures Order, be adjourned or rescheduled without notice.  At the Sale Hearing, the Debtors will seek Bankruptcy Court approval of the Successful Bid and the Backup Bid (if any).  Unless the Bankruptcy Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on matters relating to the Sale Transaction(s) and there will be no further bidding at the Sale Hearing.  In the event that the Successful Bidder cannot or refuses to consummate the Sale because of the breach or failure on the part of the Successful Bidder, the Backup Bidder will be deemed the new Successful Bidder and the Debtors shall be authorized, but not required, to close with the Backup Bidder on the Backup Bid without further order of the Bankruptcy Court.

### v. Objection Deadline

40.     Any and all objections, if any, to any Sale Transaction but excluding any objection based on the specific identity of any Stalking Horse Bidder, the form of any Stalking Horse APA, or the specific identity of the Successful Bidder or Backup Bidder (a "**Sale Objection**"), must be filed by **August 24, 2020 at 4:00 p.m. (prevailing Central Time)** (the "**Sale Objection Deadline**") and served on (i) proposed counsel for the Debtors, O'Melveny & Myers LLP, 400 South Hope Street, 18th Floor, Los Angeles, CA  90071, Attn:  Steve Warren (swarren@omm.com) and Jennifer Taylor (jtaylor@omm.com); (ii) proposed co-counsel for the

Case 20-81688-CRJ11    Doc 29    Filed 07/28/20    Entered 07/28/20 01:44:38    Desc Main
Document      Page 26 of 107

Debtors, Burr & Forman LLP, 420 North 20th Street, Suite 3400, Birmingham, Alabama 35203, Attn: Derek Meek (dmeek@burr.com) and Hanna Lahr (hlahr@burr.com); (iii) counsel for the Restructuring Committee, Akin Gump Strauss Hauer & Feld LLP, 2300 N. Field Street, Suite 1800, Dallas, TX 75201, Attn: Sarah Schultz (sschultz@akingump.com); (iv) counsel for the Committee, if any; (v) the Bankruptcy Administrator, 400 Well Street, Decatur, Alabama 35602, Attn: Richard Blythe (richard_blythe@alnba.uscourts.gov); (vi) counsel to the Stalking Horse Bidder, if any; (vii) counsel to the FILO Lenders, Pillsbury Winthrop Shaw Pittman LLP, Four Embarcadero Center, 22nd Floor, San Francisco, CA 94111-5998, Attn: Joshua D. Morse (joshua.morse@pillsburylaw.com) and Andrew V. Alfano (andrew.alfano@pillsburylaw.com); (viii) counsel to Whitebox Advisors LLC, Brown Rudnick LLP, One Financial Center, Boston, Massachusetts 02111, Attn: Andreas Andromalos (aandromalos@brownrudnick.com) and Tia C. Wallach (twallach@brownrudnick.com); (ix) all parties that have requested notice in the Chapter 11 Cases (collectively (i)-(ix), the "**Objection Recipients**"); and (x) counsel to any Successful Bidder(s), if known on the Sale Objection Deadline.

41.     All replies to any Sale Objection or Designated Contract Objection (as defined below) must be filed by **September 1, 2020 at 12:00 p.m. (prevailing Central Time)** (the "**Reply Deadline**").

42.     Any party failing to timely file an objection to any Sale Transaction will be forever barred from objecting and will be deemed to have consented to any Sale Transaction, including the transfer of the Debtors' right, title and interest in, to, and under the Debtors' Acquired Assets free and clear of any and all liens, claims, encumbrances and other interests in accordance with a definitive agreement for any Sale Transaction.

Case 20-81688-CRJ11    Doc 29    Filed 07/28/20    Entered 07/28/20 01:44:38    Desc Main
Document      Page 27 of 107

43. Following the Auction, the Debtors shall serve the Post-Auction Notice. The Debtor proposes that any objections regarding the adequate assurance of future performance of the Successful Bidder or the Backup Bidder (other than the Stalking Horse Bidder) may be raised at the Sale Hearing.

**E.     Assumption and Assignment Procedures**

44. The Debtors propose the procedures set forth below for notifying counterparties to executory contracts and unexpired leases of proposed cure amounts in the event the Debtors decide to assume and assign such contracts or leases.

*i.     Notice of Assumption and Assignment*

45. On or before **August 21, 2020**, (any such date, the "**Assumption and Assignment Service Date**") the Debtors shall file with the Court, and post on the Case Website, a notice of assumption and assignment, substantially in the form attached hereto as <u>Exhibit F</u> (the "**Notice of Assumption and Assignment**") and, included therewith, a list (the "**Designated Contracts List**") that specifies (i) each of the Debtors' executory contracts and unexpired leases (the "**Designated Contracts**") and (ii) the proposed amount necessary, if any, to cure all monetary defaults, if any, under each Designated Contract (the "**Cure Costs**").  If no Cure Cost is listed on the Designated Contracts List, the Debtors believe that there is no Cure Cost, as of the date of such notice.  The Debtors shall serve, via first class mail, a customized version of the Notice of Assumption and Assignment, without the Designated Contracts List, which will include (a) instructions regarding how to view that list on the Case Website (the "**DCL Instructions**"); (b) information necessary and appropriate to provide notice of the relevant proposed assumption and assignment of Designated Contract(s) and rights thereunder; (c) Cure Costs, if any; and (d) the procedures for objecting thereto ((b)-(d) collectively, the "**Necessary Notice Information**") on all counterparties to the Designated Contracts.  The Debtors shall serve, via first class mail, a modified version of

Case 20-81688-CRJ11     Doc 29     Filed 07/28/20     Entered 07/28/20 01:44:38     Desc Main
Document        Page 28 of 107

the Notice of Assumption and Assignment that contains the DCL Instructions and Necessary Notice Information on the Rule 2002 Notice List. Service as set forth herein shall be deemed proper, due, timely, good, and sufficient notice and no other or further notice is necessary.

46.     A counterparty to a Designated Contract listed on the Notice of Assumption and Assignment may file an objection (a "**Designated Contract Objection**") only if such objection is to the proposed assumption and assignment of the applicable Designated Contract or the proposed Cure Costs, if any. All Designated Contract Objections (which do not, for the avoidance of doubt, include any objection regarding the adequate assurance of future performance of any Stalking Horse Bidder, Successful Bidder or the Backup Bidder) must (i) state, with specificity, the legal and factual basis for the objection as well as what Cure Costs are required, if any; (ii) include appropriate documentation in support thereof; and (iii) be filed and served on the Objection Recipients no later than 4:00 p.m. (prevailing Central Time) fourteen (14) days following the Assumption and Assignment Service Date (the "**Assumption and Assignment Objection Deadline**").

47.     If a counterparty to a Designated Contract files a Designated Contract Objection in a manner that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute prior to the Sale Hearing, the amount to be paid or reserved with respect to such objection will be determined at the Sale Hearing, such later hearing date that the Debtors determine in their discretion, or such other date determined by this Court.

               *ii.  Supplemental Notice of Assumption and Assignment*

48.     Although the Debtors intend to make a good-faith effort to identify all Designated Contracts that may be assumed and assigned in connection with a Sale Transaction, the Debtors may discover certain contracts inadvertently omitted from the Designated Contracts list or Successful Bidder(s) may identify other executory contracts or unexpired leases that they desire to

Case 20-81688-CRJ11    Doc 29    Filed 07/28/20    Entered 07/28/20 01:44:38    Desc Main
Document      Page 29 of 107

assume and assign in connection with the Sale. Accordingly, the Debtors reserve the right, at any time after the Assumption and Assignment Service Date and before the closing of a Sale Transaction, to (i) supplement the list of Designated Contracts on the Notice of Assumption and Assignment with previously omitted Designated Contracts in accordance with the definitive agreement for a Sale Transaction; (ii) remove a Designated Contract from the list of contracts ultimately selected as a Designated Contract that a Successful Bidder proposes be assumed and assigned to it in connection with a Sale Transaction; and/or (iii) modify the previously stated Cure Cost associated with any Designated Contract.

49.     In the event that the Debtors exercise any of the rights reserved above, the Debtors will promptly serve a supplemental notice of assumption and assignment (a "**Supplemental Notice of Assumption and Assignment**"). The Supplemental Notice of Assumption and Assignment will be served by electronic transmission, hand delivery, or overnight mail on the counterparty (and its attorney, if known) to each impacted Designated Contract at the last known address available to the Debtors. Each Supplemental Notice of Assumption and Assignment will include the same information with respect to listed Designated Contracts as was included in the Notice of Assumption and Assignment.

50.     Any counterparty to a Designated Contract listed on a Supplemental Notice of Assumption and Assignment may file an objection (a "**Supplemental Designated Contract Objection**"). A Supplemental Designated Contract Objection may be filed only if such objection is to the proposed assumption and assignment of the applicable Designated Contract or the proposed Cure Costs, if any. All Supplemental Designated Contract Objections (which do not, for the avoidance of doubt, include any objection regarding the adequate assurance of future performance of any Stalking Horse Bidder, Successful Bidder or the Backup Bidder) must (i) state,

with specificity, the legal and factual basis thereof as well as what Cure Costs the objecting party believes are required, if any; (ii) include appropriate documentation in support of the objection; and (iii) be filed and served on the Objection Recipients no later than fourteen (14) days from the date of service of such Supplemental Notice of Assumption and Assignment, which date will be set forth in the Supplemental Notice of Assumption and Assignment.

51. If a counterparty to a Designated Contract files a Supplemental Designated Contract Objection in a manner that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute, the Debtors will seek an expedited hearing before the Court (a "**Supplemental Designated Contract Hearing**") to determine the Cure Costs, if any, and approve the assumption of the relevant Designated Contracts.  If there is no such objection, then the Debtors will obtain an order of this Court, including by filing a certification of no objection, (a "**Supplemental Designated Contract Order**") fixing the Cure Costs and approving the assumption of any Designated Contract listed on a Supplemental Notice of Assumption and Assignment.

### iii. Additional Procedures

52. If the counterparty to a Designated Contract does not file and serve a Designated Contract Objection or Supplemental Designated Contract Objection in a manner that is consistent with the requirements set forth above, such counterparty will be deemed to have consented to the assumption and assignment of the Designated Contract to a Successful Bidder as an Acquired Contract (as defined below), notwithstanding any anti-alienation provision or other restriction on assumption or assignment in the Designated Contract, and shall be forever barred from asserting any objection with regard to such assumption and assignment, except with respect to the adequate assurance of future performance by such Successful Bidder.

Case 20-81688-CRJ11    Doc 29    Filed 07/28/20    Entered 07/28/20 01:44:38    Desc Main
Document      Page 31 of 107

53.     Any objections to the proposed form of adequate assurance of future performance of a Successful Bidder (other than any Stalking Horse Bidder) must be raised at the Sale Hearing or Supplemental Designated Contract Hearing, as applicable, and will be resolved at the hearing at which it is raised or, in the Debtors' discretion, adjourned to a later hearing.

54.     Absent the filing of a Designated Contract Objection or Supplemental Designated Contract Objection and a subsequent order of the Court establishing an alternative Cure Cost, (i) the Cure Costs, if any, set forth in the Notice of Assumption and Assignment (or Supplemental Notice of Assumption and Assignment) shall be controlling, notwithstanding anything to the contrary in any Designated Contract or any other document, and (ii) the counterparty to the Designated Contract will be deemed to have consented to the assumption, assignment, and sale of the Designated Contract and the Cure Costs, if any, and will be forever barred from asserting any other claims related to such Designated Contract against the Debtors or the applicable Successful Bidder, or the property of any of them.

55.     The inclusion of a Designated Contract on the Notice of Assumption and Assignment (or Supplemental Notice of Assumption and Assignment) will not (a) obligate the Debtors to assume any Designated Contract listed thereon or the Successful Bidder(s) to take assignment of such Designated Contract or (b) constitute any admission or agreement of the Debtors that such Designated Contract is an executory contract.  Only those Designated Contracts that are included on a schedule of assumed and Acquired Contracts attached to the final purchase agreement with the Successful Bidder(s) (each, an "**Acquired Contract**") will be assumed and assigned to the Successful Bidder(s).

56.     Assignment by the Debtors to the Successful Bidder of a contract, lease or any other liability assumed under Section 365 of the Bankruptcy Code or otherwise relieves the Debtors and their estates from any such liability so assigned.

## RELIEF REQUESTED

57.     By this Motion, the Debtors request entry of the Bidding Procedures Order, which will authorize and approve, among other things:  (i) the Bidding Procedures for soliciting bids; (ii) the Assumption and Assignment Procedures; (iii) the form and manner of notice with respect to certain procedures, protections, schedules, and agreements described herein and attached hereto;[6] (iv) the selection of the Stalking Horse Bidder, if any, and the provision of Bid Protections to such Stalking Horse Bidder, if necessary; (v) authorization, but not direction, to pay the Priority Term Loan Obligations and a portion of the FILO Term Loan Obligations with the proceeds of the Sale;[7] (vi) scheduling the Auction (if any) and the Sale Hearing; and (vii) granting related relief.  At the Sale Hearing, the Debtors will also request entry of the Sale Order (or Sale Orders) that will approve the Sale Transaction or Sale Transactions.

## SUPPORTING AUTHORITY

58.     Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Courts, in applying this Section, have required that the sale of a debtor's assets be based upon the sound business judgment of the debtor.  *See, e.g.*, *In re Gulf States Steel, Inc. of Ala.*, 285 B.R. 497, 515 (Bankr. N.D. Ala. 2002); *Dai-Ichi Kangyo Bank, Ltd.*

---

[6]  To the extent that any of the deadlines set forth in this Motion do not comply with the Local Rules, the Debtors hereby request a waiver of any such Local Rule.

[7]  By this Motion, the Debtors are seeking the authority, but not the obligation, to pay the Priority Term Loan Obligations and a portion of the FILO Term Loan Obligations with the proceeds of the Sale.  The Debtors and all other parties in interest reserve the right to contest and dispute such relief.

Case 20-81688-CRJ11    Doc 29    Filed 07/28/20    Entered 07/28/20 01:44:38    Desc Main
Document      Page 33 of 107

*v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147 (Bankr. D. Del. 1999) (holding that an asset sale may be authorized under Section 363 of the Bankruptcy Code if the court finds a "sound business purpose" for the sale) (citing *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983)); *In re Bryan*, 2013 WL 4716194 (Bankr. M.D. Ala. Sept. 3, 2013); *In re Dunhill Entities, L.P.*, 2010 WL 6982622 (Bankr. S.D. Ala. May 25, 2010); *see also Official Comm. of Unsecured Creditors v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge reviewing a Section 363(b) application must find from the evidence presented a good business reason to grant such application).

59. "[T]he business judgment rule operates as a presumption 'that directors making a business decision, not involving self-interest, act on an informed basis, in good faith and in the honest belief that their actions are in the corporation's best interest.'" *Continuing Creditors' Comm. of Star Telecomms., Inc. v. Edgecomb*, 385 F.Supp.2d 449, 462 (D. Del. 2004) (quoting *Grobow v. Perot*, 539 A.2d 180, 187 (Del. 1988) *overruled on other grounds*, *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000)); *see also Ad Hoc Comm. of Equity Holders of Tectonic Network, Inc. v. Wolford*, 554 F. Supp.2d 538, 555 n.111 (D. Del. 2008) (same). Thus, this Court should grant the relief requested in this Motion if the Debtors demonstrate a sound business justification therefor. *See In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 179 (D. Del. 1991).

60. The Debtors have sound business justifications for selling the Acquired Assets at this time. The Debtors are committed to acquitting their fiduciary obligation to maximize distributable value for their creditors through realignment of their operating cost structure and implementing a process to advance these cases to an expedient, successful exit from Chapter 11. The Debtors commenced the Chapter 11 Cases to facilitate a sale to the highest or best bidder on

a going concern basis. The Debtors believe that a sale under Section 363 of the Bankruptcy Code would provide for the most value-maximizing outcome of these cases and best protect the interests of its employees as well as secured and unsecured creditors.

61. The Debtors seek approval of a sale process that is calculated to foster the broadest possible participation by potential bidders. While the Debtors have not yet designated a stalking horse bidder, the Debtors intend to designate one or more stalking horse bids serving as the floor while preserving the Debtors' right to exercise their fiduciary duties should a value-maximizing alternative materialize. This approach is grounded in the Debtors' belief that commencing a fair and robust sale and auction process at this time may maximize the distributable value of their estates and elicit valuable market feedback regarding any Stalking Horse APA for their stakeholders. Additionally, the Debtors' secured creditors are supportive of the sale process.

62. Accordingly, the Debtors submit that the Bidding Procedures are designed to maximize the value of the Acquired Assets and that the sale of the Acquired Assets to a Successful Bidder (or Successful Bidders) is in the Debtors' best interests and should be approved.

## A. The Bidding Procedures Are Fair, Designed To Maximize The Value Received For The Acquired Assets and Consistent with the Debtors' Reasonable Business Judgment.

63. The Bidding Procedures are consistent with the Debtors' reasonable business judgment and should be approved. Courts have made clear that a debtor's business judgment is entitled to substantial deference. *See, e.g.*, *Stanizale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 234 (3d Cir. 2005) (indicating the "business judgment rule creates a presumption that directors making a business decision, not involving self-interest, act on an informed basis, in good faith and in the honest belief that their actions are in the corporation's best interest" (quotations omitted)). To that end, courts recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are

appropriate in the context of bankruptcy sales. *See, e.g.*, *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993) (noting that such procedures "encourage bidding and to maximize the value of the debtor's assets").

64.     The Debtors believe that the Bidding Procedures are appropriate under Sections 105 and 363 of the Bankruptcy Code to ensure that the bidding process is fair and reasonable and will yield the maximum value for their estates and creditors. The currently proposed Bidding Procedures will establish parameters pursuant to which the value of the Acquired Assets may be fully tested at the Auction and ensuing Sale Hearing. Such procedures will increase the likelihood that the Debtors receive the greatest possible consideration for the Acquired Assets because they will ensure a competitive and fair bidding process that will encourage participation by financially capable bidders who demonstrate the ability to close such a transaction. Indeed, the Debtors have put limited (if any) constraints on the ability of prospective purchasers to bid on the Acquired Assets, and instead have encouraged bid flexibility by, *inter alia*, allowing the Debtors to consider all competing offers and to select, in their reasonable business judgment, and after consultation with the Consultation Parties (as defined in the Bidding Procedures), the highest or otherwise best offer for the Acquired Assets. The Bidding Procedures also provide potential bidders with sufficient notice and an opportunity to acquire information necessary to submit a timely and informed bid. Further, the Debtors have instituted mechanisms to ensure an open and robust bidding process at the Auction.

65.     The Bidding Procedures are consistent with the precedent in this District. *See, e.g.*, *In re Walter Energy, Inc.*, No. 15-02741-TOM11 (Bankr. N.D. Ala. Nov. 25, 2015) [Doc. 1119];

*In re Bruno's Supermarkets*, No. 09-00634-BGC11 (Bankr. N.D. Ala. Apr. 14, 2009) [Doc. 652];

*In re Bill Heard Enters.*, No. 08-83029-JAC11 (Bankr. N.D. Ala. Nov. 14, 2008) [Doc. 596].

66.     Accordingly, for all of the foregoing reasons, the Debtors believe that the Bidding Procedures (i) will encourage robust bidding for the Acquired Assets, (ii) are consistent with other procedures previously approved by courts in this District and (iii) are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings and should be approved.

**B.     Bid Protections Are Necessary to Preserve the Value of the Debtors' Estates.**

67.     By this Motion, the Debtors request approval to enter into a Stalking Horse APA, as an exercise of their business judgment and in accordance with the Bidding Procedures, and to offer Bid Protections in connection therewith, if necessary.  Specifically, the Debtors may offer the Stalking Horse Bidder the following Bid Protections:  (i) a Break-Up Fee; (ii) the Expense Reimbursement; and/or (iii) a Minimum Overbid Increment.

68.     Approval of these forms of Bid Protections in connection with the sale of significant assets pursuant to Section 363 of the Bankruptcy Code has become an established practice in Chapter 11 cases.  *See, e.g.*, *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 534–35 (3d Cir. 1999); *Integrated Res., Inc.*, 147 B.R. at 656–57 (noting that overbid procedures and break-up fee arrangements that have been negotiated by a debtor are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid"); *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (holding that the business judgment standard protects break-up fees and other contractual provisions negotiated in good faith).  Even though bidding incentives are measured against a business judgment standard in non-bankruptcy transactions, the administrative expense provisions of Section 503(b) of the Bankruptcy Code govern in the

bankruptcy context. *In re O'Brien*, 181 F.3d at 532–33. Accordingly, to be approved, bidding incentives must provide some post-petition benefit to the debtor's estate. *See In re O'Brien*, 181 F.3d at 533.

69.    The Debtors believe that the Bid Protections are a necessary inducement to the Stalking Horse Bidder contractually committing to serve as a bidder at a price the Debtors believe is fair, while providing the Debtors with an opportunity to enhance the value to their estate through an auction process. Without the Bid Protections, a Stalking Horse Bidder may not be willing to enter into the Stalking Horse APA. The Bid Protections were negotiated in good faith. Further, the amount of the Bid Protections are reasonable and appropriate in light of the size and nature of the Sale Transaction and the efforts that have been and will be expended by the Stalking Horse Bidder. Payment of the Bid Protections also will not diminish the value of Debtors' estates, as the Debtors do not intend to terminate the Stalking Horse APA and pay the Bid Protections, unless doing so would permit the Debtors to accept a better Bid.

70.    This Court has approved protections similar to the proposed Bid Protections as reasonable and consistent with the type and range of Bid Protections typically approved. *See, e.g.*, *In re Walter Energy, Inc.*, No. 15-02741-TOM11 (Bankr. N.D. Ala. Nov. 25, 2015) [Doc. 1119]; *In re Bill Heard Enters., Inc.*, No. 08-83029-JAC11 (Bankr. N.D. Ala. Nov. 14, 2008) [Doc. 596]; *In re Carraway Methodist Health Sys.*, No. 06-03501-TOM11 (Bankr. N.D. Ala. Oct. 6, 2006) [Doc. 166].

Case 20-81688-CRJ11    Doc 29    Filed 07/28/20    Entered 07/28/20 01:44:38    Desc Main
Document    Page 38 of 107

**C. Approval of the Sale Is Warranted under Section 363(b) of the Bankruptcy Code.[8]**

71.     As set forth above, a debtor may be authorized to sell assets out of the ordinary course of business pursuant to Section 363 of the Bankruptcy Code and before obtaining a confirmed Chapter 11 plan when it demonstrates a sound business purpose for doing so.  *See In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147-49 (3d Cir. 1986) (implicitly adopting the "sound business judgment test" of *Lionel*); *Gulf States Steel, Inc. of Ala.* 285 B.R. at 515; *In re Dura Auto. Sys., Inc.*, No. 06-11202 (KJC), 2007 WL 7728109, at *5 (Bankr. D. Del. Aug. 15, 2007) (finding that "[t]he Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale prior to, and outside of, a plan of reorganization"); *Dai-Ichi Kangyo Bank Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under [Section 363(b)], courts require the debtor to show that a sound business purpose justifies such actions . . . ."); *Delaware & Hudson Ry. Co.*, 124 B.R. at 176 (sale of substantially all of debtor's assets outside of reorganization plan is appropriate when a sound business reason justifies such a sale); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) (concluding that "there must be some articulated business justification, other than appeasement of major creditors, for using, selling or leasing property out of the ordinary course of business before the bankruptcy

---

[8]  No consumer privacy ombudsman is required to be appointed in connection with the proposed Sale Transaction. Under Section 363(b)(1), property of the estate can be sold other than in the ordinary course of business "except that if the debtor in connection with offering a product or a service discloses to an individual a policy *prohibiting the transfer of personally identifiable information* about individuals to persons that are not affiliated with the debtor and if such policy is in effect on the date of the commencement of the case, then the trustee may not sell or lease personally identifiable information to any person unless:  (A) such sale or such lease is consistent with such policy; or (B) [a consumer privacy ombudsperson is appointed and makes a report.]"  11 U.S.C. § 363(b)(1) (emphasis added).  The Remington privacy policy specifically discloses that "We reserve the right to transfer any information, including Personal Information, in the event all, or a portion, of our business or assets are sold or transferred, including in connection with a sale, merger, consolidation, change in control, transfer of assets, reorganization or liquidation of our business."  Because Remington's policy disclosed to individuals does not in fact prohibit the transfer of personally identifiable information in these circumstances, Section 363(b)(1)(B) is not applicable.

judge may order such disposition under section 363(b)"); *Titusville Country Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991) (stating that the "sound business purpose test" is appropriate). Once a court has determined there is a sound business justification for a sale outside of a plan, the court must also determine that (i) the trustee has provided the interested parties with adequate and reasonable notice, (ii) the sale price is fair and reasonable and (iii) the purchaser is proceeding in good faith. *Delaware & Hudson*, 124 B.R. at 176.

72.     The Debtors submit that the sale of the Acquired Assets is based upon their sound business judgment. As explained above, the Debtors have determined that a sale, conducted in accordance with the Bidding Procedures, is in the best interest of their estates. The Debtors believe that continuing and concluding the sale process that they have been pursuing for months now will allow them to obtain the highest market value available for the Acquired Assets while preserving the Debtors' right to exercise their fiduciary duties should a value-maximizing alternative materialize.

73.     The Debtors also meet the additional requirements necessary to approve a sale under Section 363 of the Bankruptcy Code. As stated herein, the Debtors will provide adequate notice of the Sale to interested parties, and the Debtors believe that the notice procedures described herein are reasonable and adequate under the circumstances. Additionally, the Debtors will enter into a purchase agreement with a Successful Bidder after a substantial and deliberate effort to market the Acquired Assets is fair and reasonable. Accordingly, the Debtors submit that it is a valid exercise of their business judgment to seek the relief requested by this Motion.

**D. The Proposed Sale Transaction Satisfies the Requirements of Bankruptcy Code Section 363(f) for a Sale Free and Clear of Interests.**

74.     Pursuant to the Form APA, the sale is free and clear of any interest under Section 363(f) of the Bankruptcy Code, except as provided therein. Section 363(f) of the Bankruptcy Code provides that a sale of encumbered property "free and clear of any interest" is permissible, only if "applicable non-bankruptcy law permits sale of such property free and clear of such interest," entities holding interests in the property consent to the sale, "such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property, such interest is in bona fide dispute, *or* such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." 11 U.S.C. § 363(f) (emphasis supplied).

75.     Section 363(f) of the Bankruptcy Code is drafted in the disjunctive and, as such, it is necessary to meet only one of these five conditions. To the extent an entity with liens on the Acquired Assets does not consent to the proposed Sale Transaction, the Debtors believe that they will be able to demonstrate at the Sale Hearing satisfaction of the requirements of Section 363(f) of the Bankruptcy Code. Alternatively, the Debtors may sell the Acquired Assets free and clear of any other interests under Section 363(f)(5), because the liens on any Acquired Assets sold will attach to the proceeds of such a sale and entities holding such interests could be compelled to accept money satisfaction in legal or equitable proceedings. Accordingly, pursuant to Section 363 of the Bankruptcy Code, the Debtors may sell the Acquired Assets free and clear of all liens, claims, and encumbrances.

76.     The Debtors also submit that it is appropriate to sell the Acquired Assets free and clear of successor liability relating to the Debtors' business except as otherwise provided pursuant to the terms of the agreed-upon asset purchase agreement. Such a provision ensures that the

Case 20-81688-CRJ11    Doc 29    Filed 07/28/20    Entered 07/28/20 01:44:38    Desc Main
Document        Page 41 of 107

Successful Bidder is protected from any claims or lawsuits premised on the theory that the Successful Bidder is a successor in interest to one or more of the Debtors. Courts have consistently held that a buyer of a debtor's assets pursuant to a Section 363 of the Bankruptcy Code sale takes free and clear from successor liability relating to the debtor's business. *See, e.g.*, *United States v. Knox-Schillinger (In re Trans World Airlines, Inc.)*, 322 F.3d 283, 288-90 (3d Cir. 2003) (sale of assets pursuant to Section 363(f) barred successor liability claims for employment discrimination and rights under travel voucher program); *United Mine Workers of Am. 1992 Benefit Plan v. Leckie Smokeless Coal Co.* (*In re Leckie Smokeless Coal Co.*), 99 F.3d 573, 585-86 (4th Cir. 1996) (affirming the sale of debtors' assets free and clear of certain taxes); *Amphenol Corp. v. Shandler* (*In re Insilco Techs., Inc.*), 351 B.R. 313, 321-22 (Bankr. D. Del. 2006) (stating that a 363 sale permits a buyer to take ownership of property without concern that a creditor will file suit based on a successor liability theory); *In re General Motors Corp.*, 407 B.R. 463, 505-06 (Bankr. S.D.N.Y. 2009), *aff'd sub nom., In re Motors Liquidation Corp.,* 428 B.R. 43 (S.D.N.Y. 2010) & 430 B.R. 65 (S.D.N.Y. 2010) (permitting "[debtor]'s assets to pass to the purchaser free and clear of successor liability claims, and in that connection, [] issu[ing] the requested findings and associated injunction."); *In re Chrysler LLC*, 405 B.R. 84, 111 (Bankr. S.D.N.Y. 2009) ("[*I*]*n personam* claims, including any potential state successor or transferee liability claims against New Chrysler, as well as *in rem* interests, are encompassed by Section 363(f) and are therefore extinguished by the Sale Transaction."); *Gulf States Steel*, 285 B.R. at 506.

77. The purpose of an order purporting to authorize the transfer of assets free and clear of all liens, claims, encumbrances, and all other interests would be frustrated if claimants could thereafter use the transfer as a basis to assert claims against a purchaser arising from a seller's pre-sale conduct. Moreover, without such assurances, the Debtors would run the risk that potential

bidders may not enter the auction or, if they did, would do so with reduced bid amounts. To that end, the Successful Bidder should not be liable under any theory of successor liability relating to the Debtors' businesses, but should hold the Acquired Assets free and clear.

**E.    A Successful Bidder Should Be Entitled to the Protections of Section 363(m) of the Bankruptcy Code.**

78.    Pursuant to Section 363(m) of the Bankruptcy Code, a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims. *See Miami Ctr. Ltd. P'ship v. Bank of New York*, 838 F.2d 1547, 1554 (11th Cir. 1988); *Mark Bell Furniture Warehouse, Inc., v. D. M. Reid Assocs., Ltd.* (*In re Mark Bell Furniture Warehouse, Inc.*), 992 F.2d 7, 8 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985); *In re Congoleum Corp.*, No. 03-51524, 2007 WL 1428477, *2 (Bankr. D. N.J. May 11, 2007); *Abbotts Dairies of Pa.*, 788 F.2d 143, 147 (3d Cir. 1986).

79.    Any agreement consummating a Sale or Sales will be negotiated at arm's-length by sophisticated parties, each represented by their own advisors. Accordingly, the Debtors request that the Sale Order (or Sale Orders) include a provision that the Successful Bidder (or Successful Bidders) for the Acquired Assets, is a "good faith" purchaser within the meaning of Section 363(m) of the Bankruptcy Code. The Debtors believe that providing any Successful Bidder with such protection will ensure that the maximum price will be received by the Debtors for the Acquired Assets and closing of the same will occur promptly.

**F.    Notice of the Auction and Sale Hearing Is Reasonable and Appropriate.**

80.    The Debtors submit that the Sale Notice as set forth above, along with publication of the Sale Notice as described herein on one occasion on the Mailing Date or as soon as reasonably practicable thereafter (and in local publications of general circulation as the Debtors deem appropriate) is reasonable and appropriate and will be adequate to ensure that all interested parties

have the opportunity to bid for the Acquired Assets, and/or object to the proposed sale of the Debtors' Acquired Assets. Accordingly, the Debtors submit that the foregoing method of notice is reasonable under the circumstances.

## G. Assumption and Assignment of Executory Contracts and Unexpired Leases Should Be Authorized.

81. Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The standard governing a debtor's decision to assume or reject an executory contract or unexpired lease is whether the debtor's reasonable business judgment supports assumption or rejection. *See*, *e.g.*, *In re Gardinier, Inc.*, 831 F.2d 974, 976, n.2 (11th Cir. 1987); *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (debtor's decision to assume or reject executory contract is governed by business judgment standard and can only be overturned if decision was product of bad faith, whim, or caprice); *In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) (assumption or rejection of lease "will be a matter of business judgment by the bankruptcy court" (citation omitted)); *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39-40 (3d Cir. 1989) (same). If the debtor's business judgment has been reasonably exercised, a court should approve the assumption or rejection of an unexpired lease or executory contract. *See Grp. of Inst. Investors v. Chicago M. St. P. & P.R.R. Co.*, 318 U.S. 523 (1943); *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d at 39-40. The business judgment test "requires only that the trustee [or debtor in possession] demonstrate that [assumption or] rejection of the contract will benefit the estate." *Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co., (In re Wheeling-Pittsburgh Steel Corp.)*, 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987) (quoting *In re Stable Mews Assocs.*, 41 B.R. 594, 596 (Bankr. S.D.N.Y 1984)). Any more exacting scrutiny would slow the administration of a debtor's estate, increase costs,

interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially. *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985) (citation omitted). In addition, for a debtor to assume an executory contract, it must "cure, or provide adequate assurance that the debtor will promptly cure," any default, including compensation for any "actual pecuniary loss" relating to such default. 11 U.S.C. § 365(b)(1)(A).

82.     Once an executory contract is assumed, the trustee or debtor in possession may elect to assign such contract. *See L.R.S.C. Co. v. Rickel Home Ctrs., Inc. (In re Rickel Home Ctr., Inc.)*, 209 F.3d 291, 299 (3d Cir. 2000) (indicating that "[t]he Code generally favors free assignability as a means to maximize the value of the debtor's estate"); *Leonard v. General Motors Corp. (In re Headquarters Dodge, Inc.*), 13 F.3d 674, 682 (3d Cir. 1994) (noting that purpose of Section 365(f) of the Bankruptcy Code is to assist trustee in realizing the full value of the debtor's assets).

83.     Section 365(f) of the Bankruptcy Code provides that the "trustee may assign an executory contract . . . only if the trustee assumes such contract . . . and adequate assurance of future performance is provided." 11 U.S.C. § 365(f)(2). The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given a "practical, pragmatic construction." *In re Citrus Tower Blvd. Imaging Ctr., LLC*, 2012 WL 1820814, at *5 (Bankr. N.D. Ga. Apr. 2, 2012); *In re DBSI, Inc.*, 405 B.R. 698, 708 (Bankr. D. Del. 2009); *EBG Midtown S. Corp. v. McLaren/Hart Env. Eng'g Corp. (In re Sanshoe Worldwide Corp.)*, 139 B.R. 585, 592 (S.D.N.Y. 1992); *In re Decora Indus.*, 2002 U.S. Dist. LEXIS 27031, at * 23 (D. Del. 2002) ("adequate assurance falls short of an absolute guaranty of payment"

Case 20-81688-CRJ11    Doc 29    Filed 07/28/20    Entered 07/28/20 01:44:38    Desc Main
Document      Page 45 of 107

(citation omitted)); *Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1988).

84.     Adequate assurance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned.  *See, e.g.*, *In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance is present when prospective assignee of lease from debtor has financial resources and has expressed willingness to devote sufficient funding to business to give it strong likelihood of succeeding).

85.     To facilitate and effect the proposed Sale Transaction, the Debtors request approval of the assumption and assignment of any Acquired Contracts to any Successful Bidder under Section 365 of the Bankruptcy Code.  The Debtors further request that the Sale Order(s) provide that the Acquired Contracts will be transferred to, and remain in full force and effect for the benefit of, the Successful Bidder(s) notwithstanding any provisions in the Acquired Contracts, including those described in Sections 365(b)(2), (f)(1) and (f)(3) of the Bankruptcy Code that prohibit such assignment.

86.     Any Successful Bidder must (i) submit evidence sufficient to demonstrate its financial wherewithal and ability to consummate the Sale Transaction, including the assumption of the Acquired Contracts at the closing of the purchase agreement and (ii) provide adequate assurance of future performance in connection with any assigned executory contracts and leases. Furthermore, to the extent that any defaults exist under any executory contract or unexpired lease that is to be assumed and assigned in connection with the sale of the Acquired Assets, the Successful Bidder will cure any such default prior to such assumption and assignment.

87.     The Debtors will present facts at the Sale Hearing to demonstrate the financial credibility, willingness, and ability of the Successful Bidder to perform under the Acquired

Case 20-81688-CRJ11     Doc 29     Filed 07/28/20     Entered 07/28/20 01:44:38     Desc Main
Document         Page 46 of 107

Contracts. The Sale Hearing thus will afford the Court and other interested parties the opportunity to evaluate the ability of the Successful Bidder to provide adequate assurance of future performance under the Acquired Contracts, as required under Section 365(b)(1)(C) of the Bankruptcy Code. Further, as set forth above, the Debtors will give notice to all parties to the Acquired Contracts of their intention to assume the Acquired Contracts and what the Debtors believe are the Cure Costs.

88.     Accordingly, the Debtors submit that implementation of the proposed Assumption and Assignment Procedures is appropriate in the Chapter 11 Cases. The Court therefore should have a sufficient basis to authorize the Debtors to reject or assume and assign contracts as will be set forth in the Successful Bidder's purchase agreement.

**H.      Payment of the Priority Term Loan Obligations and a Portion of the FILO Term Loan Obligations from the Sale Proceeds Should Be Authorized.**

89.     By this Motion, the Debtors request the authority, but not obligation, to pay (i) the Priority Term Loan Obligations in cash from the Sale proceeds and (ii) subject to the Intercreditor Agreement, the FILO Term Loan Obligations from the Sale proceeds and, solely to the extent that the Priority Term Loan Obligations are paid in full in cash, any amounts in the Dominion Account (as defined in the Priority Term Loan Credit Agreement) in an amount equal to $35 million or such other amount agreed to by the Debtors and the FILO Term Loan Secured Creditors to be disclosed to the Court in advance of the Sale Hearing, it being agreed and understood that (x) any such payment shall be funded first, and solely to the extent that the Priority Term Loan Obligations are paid in full in cash, from any amounts in the Dominion Account to the extent retained by the Debtors after the closing date of the Sale and (y) following entry of the Bidding Procedures Order, the Debtors shall negotiate in good faith with the FILO Term Loan Secured Creditors concerning such other amount. Any further payment to the FILO Agent, for the account of the FILO Term

Loan Secured Creditors, shall be subject to Court order or provided under the Debtors' Chapter 11 plan.

90.     As more fully set forth in the Priority Term Loan Documents and subject to Permitted Prior Liens and the Intercreditor Agreement, prior to the Petition Date, to secure repayment of the Priority Term Loan Obligations the Debtors granted the Priority Term Loan Agent valid, binding, properly perfected, enforceable, non-avoidable first priority security interests in and liens on (a) certain assets of the Debtors, including, without limitation, accounts receivable, intellectual property, inventory, and proceeds thereof and (b) substantially all other assets of the Debtors that do not constitute ABL Priority Collateral. The Priority Term Loan Obligations have first priority perfected liens on the Acquired Assets, senior to all other Prepetition Secured Obligations. With no dispute as to the validity of the liens securing the Priority Term Loan Obligations in the view of the Debtors, the Debtors believe in their good faith judgment that it is in the best interests of their stakeholders to repay the Priority Term Loan Obligations promptly upon the closing of the Sale in order to cut off the accrual of interest on the Priority Term Loan Obligations that would otherwise erode the availability of the Sale proceeds for downstream creditors. Accordingly, the Debtors seek authority but not the obligation to repay (i) the Priority Term Loan Obligations within three (3) business days of receipt of the cash proceeds from the Sale.

91.     Similarly, as more fully set forth in the FILO Term Loan Documents and subject to Permitted Prior Liens and the Intercreditor Agreement, prior to the Petition Date, to secure repayment of the FILO Term Loan Obligations the Debtors granted the FILO Agent valid, binding, properly perfected, enforceable, non-avoidable (a) first priority security interests in and liens on the TL Priority Collateral and (b) second priority security interests in and liens on the ABL Priority

Collateral. With no dispute as to the validity of the liens securing the FILO Term Loan Obligations in the view of the Debtors, the Debtors believe in their good faith judgment that it is in the best interests of their stakeholders to repay a portion of the FILO Term Loan Obligations from the Sale proceeds. Subject to the Intercreditor Agreement, the Debtors should be authorized, but not directed to pay an amount to be agreed upon by the Debtors and the FILO Term Loan Secured Creditors to be disclosed to the Court in advance of the Sale Hearing, which amount would be (a) funded first, solely to the extent that the Priority Term Loan Obligations are paid in full in cash, from the remaining funds from the Dominion Account and (b) determined in connection with agreement upon a wind-down budget that provides for the administrative costs incurred in connection with the sale process.

## REQUEST FOR WAIVER OF STAY

92.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). Bankruptcy Rule 6006(d) further provides that an "order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6006(d).

93.     The Debtors believe that any Sale Transaction should be consummated as soon as practicable to preserve and maximize value. Accordingly, the Debtors request that any Sale Order approving the sale of the Acquired Assets and the assumption and assignment of the Designated Contracts be effective immediately upon entry of such order and that the fourteen-day stay under Bankruptcy Rules 6004(h) and 6006(d) be waived.

Case 20-81688-CRJ11    Doc 29    Filed 07/28/20    Entered 07/28/20 01:44:38    Desc Main
Document      Page 49 of 107

## NOTICE

94.     The Debtors will provide notice of this Motion by facsimile, e-mail, overnight delivery, or hand delivery to: (i) the Bankruptcy Administrator; (ii) counsel to the Committee, if one is appointed; (iii) the holders of the forty largest unsecured claims against the Debtors on a consolidated basis; (iv) counsel to Cantor Fitzgerald Securities, as Priority Term Loan Agent under the Debtors' prepetition Priority Term Loan Credit Agreement; (v) counsel to Ankura Trust Company, LLC, as FILO Agent under the Debtors' prepetition FILO Term Loan Agreement, and as Exit Term Loan Agent under the Debtors' prepetition Exit Term Loan Agreement; (vi) counsel to the FILO Lenders; (vii) counsel for the Restructuring Committee; (viii) counsel to the Huntsville Note holder; (ix) counsel to Whitebox Advisors LLC; (x) the Securities and Exchange Commission; (xi) the Internal Revenue Service; (xii) counsel to the United Mine Workers of America; and (xiii) all parties entitled to notice pursuant to Local Rule 9013-1(m). Following the hearing, a copy of this Motion and any order entered with respect to it will be served on the foregoing parties and all parties having filed requests for notice in the Chapter 11 Cases. A copy of this Motion is also available on the Debtors' Case Website at https://cases.primeclerk.com/RemingtonOutdoor. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

95.     No prior request for the relief sought in this Motion has been made to this or any other court.

*(Remainder of page intentionally left blank)*

**WHEREFORE**, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated:     July 28, 2020

/s/ Derek F. Meek
**BURR & FORMAN LLP**
Derek F. Meek
Hanna Lahr
420 North 20th Street, Suite 3400
Birmingham, Alabama  35203
Telephone:  (205) 251-3000
Facsimile:   (205) 458-5100
Email: dmeek@burr.com
       hlahr@burr.com

- and -

**O'MELVENY & MYERS LLP**
Stephen H. Warren (*pro hac vice* pending)
Karen Rinehart (*pro hac vice* pending)
400 South Hope Street
Los Angeles, CA  90071-2899
Telephone:  (213) 430-6000
Facsimile:   (213) 430-6407

Jennifer Taylor (*pro hac vice* pending)
Two Embarcadero Center, 28th Floor
San Francisco, CA  94111
Telephone:  (415) 984-8700
Facsimile:   (415) 984-8701

*Proposed Attorneys for the*
*Debtors and Debtors in Possession*

**Exhibit A**

**Proposed Bidding Procedures Order**

43887222 v1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| REMINGTON OUTDOOR COMPANY, INC., *et al.*,[1] | Case No. 20-81688-11 |
| Debtors. | Joint Administration Requested |

## ORDER ESTABLISHING BIDDING PROCEDURES RELATING
## TO THE SALES OF ALL OR A PORTION OF THE DEBTORS' ASSETS

This matter having come before the Court upon the motion (the "**Motion**")[2] by Remington Outdoor Company, Inc., ("**Remington**" or the "**Company**"), and its affiliated debtors and debtors in possession (collectively the "**Debtors**") in the above-captioned Chapter 11 cases (collectively, the "**Chapter 11 Cases**"), seeking entry of this order (this "**Bidding Procedures Order**") (i) approving the proposed bidding procedures attached hereto as <u>Exhibit 1</u> (the "**Bidding Procedures**") by which the Debtors will solicit and select the highest or otherwise best offer for the sale of substantially all or a portion of their assets (the "**Acquired Assets**") through one or more sales of the Acquired Assets (each, a "**Sale Transaction**" or "**Sale**"); (ii) establishing procedures for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts (the "**Assumption and Assignment Procedures**"); (iii) approving the form and manner of notice with respect to certain procedures, protections,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405). The Debtors' corporate headquarters are located at 100 Electronics Boulevard SW, Huntsville, AL 35824.

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Motion or the Bidding Procedures, as applicable.

schedules, and agreements described herein and attached hereto, including the Debtors' selection of one or more stalking horse bidders (each, a "**Stalking Horse Bidder**"), if any, and the provision of Bid Protections (as defined below) to such Stalking Horse Bidder, if necessary; (iv) scheduling (a) an auction (the "**Auction**") if the Debtors receive two (2) or more timely and acceptable Qualified Bids (as defined below), and (b) a final hearing (the "**Sale Hearing**") to approve one or more Sales of the Acquired Assets; and (v) granting related relief; and it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors, and other parties-in-interest; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that the Motion is a core proceeding pursuant to 28 U.S.C. § 157; and adequate notice of the Motion and opportunity for objection having been given, with no objections having been filed, or all objections having been resolved or overruled, as the case may be; and it appearing that no other notice need be given; and after due deliberation and sufficient cause therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *General Order of Reference* of the United States District Court for the Northern District of Alabama dated July 16, 1984, as amended on July 17, 1984.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The predicates for the relief granted herein are Sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.  Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.       The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Bidding Procedures Order is in the best interests of the Debtors and their respective estates, creditors, and all other parties in interest.

C. The notice of the Motion, the Bidding Procedures Hearing, and the proposed entry of this Bidding Procedures Order was adequate and sufficient under the circumstances of the Chapter 11 Cases, and such notice complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Accordingly, no further notice of the Motion, the Bidding Procedures Hearing, or this Bidding Procedures Order is necessary or required.

D. The Debtors have demonstrated a compelling and sound business justification for the Court to grant the relief requested in the Motion, including, without limitation, to (i) approve the Bidding Procedures, including the procedures for selecting one or more Stalking Horse Bidders and the provision of the Bid Protections to be determined, (ii) establish the Assumption and Assignment Procedures, (iii) approve the form and manner of notice of all procedures, protections, schedules, and agreements described in the Motion and attached thereto, (iv) schedule a date for the (a) Auction and (b) Sale Hearing; and (v) grant related relief as set forth herein. Such compelling and sound business justification, which was set forth in the Motion and on the record at the Bidding Procedures Hearing, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

E. The Bidding Procedures, substantially in the form attached hereto as <u>Exhibit 1</u> and incorporated herein by reference as if fully set forth in this Bidding Procedures Order, are fair, reasonable and appropriate and represent the best method for maximizing the value of the Debtors' estates.

F. The Debtors are authorized to pay the break-up fee and expense reimbursement comprising the Bid Protections. The Bid Protections, to the extent payable under any Stalking Horse APA, (a)(x) are actual and necessary costs and expenses of preserving the Debtors' estate within the meaning of Section 503(b) of the Bankruptcy Code, and (y) shall be treated as allowed

Case 20-81688-CRJ11    Doc 29    Filed 07/28/20    Entered 07/28/20 01:44:38    Desc Main
Document      Page 55 of 107

administrative claims against the Debtors' estates pursuant to Sections 105(a) and 364(c)(1) of the Bankruptcy Code, are commensurate to the real and material benefits conferred upon the Debtors' estates by the Stalking Horse Bidders, and (c) are fair, reasonable and appropriate, including in light of the size and nature of the Sale Transaction, the necessity to announce a sale transaction for the Acquired Assets, and the efforts that have been and will be expended by the Stalking Horse Bidders. The Bid Protections are a material inducement for, and condition of, each Stalking Horse Bidder's execution of the applicable Stalking Horse APA. Unless it is assured that the Bid Protections will be available, the Stalking Horse Bidders are unwilling to remain obligated to consummate the Sale Transaction or otherwise be bound under its Stalking Horse APA (including the obligations to maintain its committed offer while such offer is subject to higher or better offers as contemplated by the Bidding Procedures).

G. The Sale Notice and the Publication Notice, substantially in the forms attached to the Motion as <u>Exhibit C</u> and <u>Exhibit D</u>, respectively, and incorporated herein by reference as if fully set forth in this Bidding Procedures Order, are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the sale of Acquired Assets, including the sale of Acquired Assets free and clear of all liens, claims, and encumbrances, the Sale Transaction(s), the Bidding Procedures, the Auction and the Sale Hearing, and no other or further notice is required.

H. The Post-Auction Notice, substantially in the form attached to the Motion as <u>Exhibit E</u> and incorporated herein by reference as if fully set forth in this Bidding Procedures Order, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Successful Bidder(s), and no other or further notice is required.

I.      The Assumption and Assignment Notice, substantially in the form attached to the Motion as <u>Exhibit F</u> and incorporated herein by reference as if fully set forth in this Bidding Procedures Order, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the potential assumption and assignment of the Designated Contracts in connection with the sale of the Acquired Assets and the related Cure Costs, and no other or further notice is required.

J.      The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are adopted as such. To the extent any conclusions of law are findings of fact, they are adopted as such.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is granted as set forth herein.[3]

2.      All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the Bidding Procedures Hearing or by stipulation filed with the Court are overruled except as otherwise set forth herein.

**I.      The Timeline for the Sale**

3.      The Debtors are authorized to proceed with the Sale Transaction(s) in accordance with the Bidding Procedures and are authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures in accordance with the following timeline:

---

[3] Notwithstanding anything to the contrary herein, the consummation of any Sale Transaction(s) is subject to entry of the Sale Order(s).

Case 20-81688-CRJ11    Doc 29    Filed 07/28/20    Entered 07/28/20 01:44:38    Desc Main
Document    Page 57 of 107

| Deadline | Action |
| --- | --- |
| August 17, 2020 at 10:00 a.m. (prevailing Central Time) | Hearing to consider approval of the Bidding Procedures and entry of the Bidding Procedures Order |
| August 21, 2020 | Sale Notice Mailing Date |
| August 21, 2020 | Assumption and Assignment Service Date |
| August 24, 2020 at 4:00 p.m. (prevailing Central Time) | Sale Objection Deadline (defined below) |
| September 1, 2020 at 5:00 p.m. (prevailing Central Time) | Bid Deadline |
| September 1, 2020 at 12:00 p.m. (prevailing Central Time) | Reply Deadline (defined below) |
| September 4, 2020 by 4:00 p.m. (prevailing Central Time) or 14 days following service of the Supplemental Notice of Assumption and Assignment | Assumption and Assignment Objection Deadline |
| September 8, 2020 at 10:00 a.m. (prevailing Central Time) | Auction |
| September 9, 2020 | Post-Auction Notice |
| September 10, 2020 at 10:00 a.m. (prevailing Central Time) | Sale Hearing |

4.  For the avoidance of doubt, the Debtors reserve the right, and are authorized to, modify the above timeline and the Bidding Procedures (the "**Modifications**") in accordance with the provisions of the Bidding Procedures; *provided, however*, that the Debtors shall consult with the Consultation Parties or, to the extent provided therein, the Bid Consultation Parties, with respect to any Modifications.

## II.     The Bidding Procedures

5.  The Bidding Procedures are approved in their entirety. The Debtors are authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures in accordance therewith. The failure to specifically include or reference a particular

provision of the Bidding Procedures in this Bidding Procedures Order shall not diminish or impair the effectiveness of such provision.

6.     The Debtors are authorized, in accordance with the Bidding Procedures, to require Diligence Parties to submit written indications of interest specifying, among other things, the Acquired Assets proposed to be acquired, the amount and type of consideration to be offered, and any other material terms to be included in a bid by such party.

7.     The process and requirements associated with submitting a Qualified Bid are approved as fair, reasonable, appropriate and designed to maximize recoveries for the benefit of the Debtors' estates, creditors, and other parties in interest. As further described in the Bidding Procedures, the Bid Deadline shall be **September 1, 2020 at 5:00 p.m. (prevailing Central Time)**. Any disputes or objections to the selection of Qualified Bid(s), Successful Bid(s), or Backup Bid(s) (all as defined in the Bidding Procedures) shall be resolved by this Court at the Sale Hearing as set forth herein.

8.     The Debtors are authorized to conduct the Auction in accordance with the Bidding Procedures. The Auction shall take place on **September 8, 2020 at 10:00 a.m. (prevailing Central Time)** virtually via video conferencing technology, or at such other place and time as the Debtors shall notify all Qualified Bidders and the Consultation Parties.

9.     The Prepetition Secured Creditors shall have the right, subject in all respects to the Bankruptcy Code and other applicable law and the satisfaction in cash or assumption of claims secured by senior liens, to credit bid all or any portion of their allowed secured claims pursuant to Section 363(k) of the Bankruptcy Code or other applicable law, in accordance with the applicable provisions of the Prepetition Credit Documents and any such credit bid shall be deemed a Qualified Bid subject to the Intercreditor Agreement (as defined in the D'Arcy Declaration); *provided*,

*however*, that nothing herein or in the Bidding Procedures shall affect or in any way limit the right or ability of any party in interest, including the Committee, to object to the Prepetition Secured Creditors' right to credit bid, including the nature, amount, or scope of such credit bid, subject to the (a) applicable provisions of the Court's *Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing Use Of Cash Collateral, (II) Granting Adequate Protection, (III) Modifying Automatic Stay, (IV) Granting Related Relief, and (V) Scheduling A Final Hearing* [Docket No. __], including paragraph 20 and the Challenge Period (as defined therein), as the same may be modified in accordance with its terms and (b) Sale Objection Deadline (as defined below).

### III.    Stalking Horse Bidder and Bid Protections

10.    In accordance with the Bidding Procedures, the Debtors may designate one or more Stalking Horse Bidders for the various segments of their business and may enter into an asset purchase agreement with each Stalking Horse Bidder (each, a "**Stalking Horse APA**"), subject to higher or otherwise better offers at the Auction, which establishes a minimum Qualified Bid at the Auction with respect to the assets that are the subject thereof.

11.    Absent further order of the Court, the Stalking Horse APA shall (i) limit the break-up fee in favor of the Stalking Horse Bidder in the amount of no more than 3.5% of the cash consideration proposed to be paid at closing by the Stalking Horse Bidder under the applicable Stalking Horse APA (the "**Break-Up Fee**"); (ii) limit any reimbursement for the Stalking Horse Bidder's and its attorneys', accountants', investment bankers' and representatives' documented fees and expenses actually and reasonably incurred in negotiating and documenting the Stalking Horse APA, and in preserving and protecting Stalking Horse Bidder's rights and interests as buyer and lender in connection with the Chapter 11 Cases to an amount not to exceed 1.0% of the cash consideration proposed to be paid by at closing the Stalking Horse Bidder under the applicable Stalking Horse APA (the "**Expense Reimbursement**"); and/or (iii) set the initial overbid

protection (the "**Minimum Overbid Increment**" and, together with the Break-Up Fee and the Expense Reimbursement, the "**Bid Protections**") in amounts to be determined by the Debtors in accordance with the Bidding Procedures. In the event that the Debtors determine that the Bid Protections must exceed the amounts set forth herein, the Court shall hold a hearing on the approval of any such greater Bid Protections on an expedited basis, upon the request of the Debtors.

12.     The Bid Protections, to the extent payable under the Stalking Horse APAs, shall (a) constitute an allowed administrative expense claim against the Debtors pursuant to Sections 105(a) and 364(c)(1) of the Bankruptcy Code. Subject to the foregoing, the Bid Protections shall be paid (i) in cash from the proceeds of any approved Sale or (ii) credited against the purchase price if, after an Auction, the Stalking Horse Bid, as enhanced at the Auction, is the Successful Bid and the Sale contemplated by the Stalking Horse APA (as enhanced at the auction) is consummated.

13.     In the event that the Debtors select one or more parties to serve as a Stalking Horse Bidder, upon such selection, the Debtors shall provide, to all parties on the Rule 2002 List, all parties expressing an interest in the Acquired Assets and all parties holding liens on such Acquired Assets, three (3) business days' notice and an opportunity to object to the determination of such Stalking Horse Bidder and disclosure of the Bid Protections set forth in the Stalking Horse APA, and absent objection, the Debtors selection of such Stalking Horse Bidder shall be deemed designated without further order of the Court. To the extent necessary, the Debtors' right to seek this Court's approval of one or more Stalking Horse Bidders, with notice and a hearing, is hereby preserved.

## IV.     Notice Procedures

14.     The form of Sale Notice substantially in the form attached to the Motion as <u>Exhibit C</u> is approved.

15.     Within seven (7) days after the entry of this Bidding Procedures Order or as soon as reasonably practicable thereafter, the Debtors shall serve the Sale Notice, the Form APA, this Bidding Procedures Order, including the Bidding Procedures by first-class mail, postage prepaid, or, for those parties who have consented to receive notice by the Electronic Case Files ("**ECF**") system, by ECF, upon (i) all entities reasonably known to have expressed an interest in a transaction with respect to all or part of the Acquired Assets within the past two years; (ii) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon or with respect to any of the Acquired Assets; (iii) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief granted herein; (iv) counsel for the Committee, if any; (v) counsel to Cantor Fitzgerald Securities, as Priority Term Loan Agent under the Debtors' prepetition Priority Term Loan Credit Agreement; (vi) counsel to Ankura Trust Company, LLC, as FILO Agent under the Debtors' prepetition FILO Term Loan Agreement, and as Exit Term Loan Agent under the Debtors' prepetition Exit Term Loan Agreement; (vii) counsel to FILO Lenders; (viii) counsel to the Stalking Horse Bidder, if any; (ix) counsel to Whitebox Advisors LLC; (x) counsel for the Restructuring Committee; (xi) counsel to the Huntsville Note holder; (xii) the Bankruptcy Administrator; (xiii) the Securities and Exchange Commission; (xiv) the Internal Revenue Service; (xv) counsel to the United Mine Workers of America; and (xvi) all known creditors of the Debtors, including their contract counterparties; *provided, however*, that to the extent email addresses are available, parties referenced in this paragraph 15 may be served by email.

16.     Service of the Sale Notice as described above shall be sufficient and proper notice of the Sale Transaction with respect to known interested parties.

17. The Publication Notice, substantially in the form attached to the Motion as <u>Exhibit D</u>, is approved. The Debtors are directed to publish the Sale Notice, as modified for publication, in the *New York Times*, on one occasion on the Mailing Date or as soon as reasonably practicable thereafter. In addition, the Debtors are authorized, but not directed, to (i) publish the Sale Notice in additional publications as the Debtors deem appropriate and (ii) cause the Sale Notice to be posted on their case information website at https://cases.primeclerk.com/RemingtonOutdoor.

18. Service of the Publication Notice as described above shall be sufficient and proper notice of the Sale Transaction with respect to all unknown parties.

19. The form of the Post-Auction Notice, substantially in the form attached to the Motion as <u>Exhibit E</u> is approved. As soon as reasonably practicable after the conclusion of the Auction, the Debtors shall file on the docket, but not serve, the Post-Auction Notice identifying any Successful Bidder(s).

## V. Assumption and Assignment Procedures

20. The Assumption and Assignment Procedures, as detailed in the Motion and incorporated herein by reference as if fully set forth in this Bidding Procedures Order, are approved.

21. The Notice of Assumption and Assignment, substantially in the form attached to the Motion as <u>Exhibit F</u> is approved.

22. On or before **August 21, 2020** (any such date, the "**Assumption and Assignment Service Date**"), the Debtors shall file with the Court, and post on the Case Website at https://cases.primeclerk.com/RemingtonOutdoor, the Notice of Assumption and Assignment and Designated Contracts List. If no Cure Cost is listed on the Designated Contracts List, the Debtors believe that there is no Cure Cost, as of the date of such notice. On the Assumption and Assignment Service Date, the Debtors shall serve, via first-class mail, a customized version of the Notice of

Assumption and Assignment that contains the DCL Instructions and Necessary Notice Information, but omits the Designated Contracts List, on all counterparties to the Designated Contracts. In addition, the Debtors shall serve, via first-class mail, a modified version of the Notice of Assumption and Assignment that contains the DCL Instructions and Necessary Notice Information, but omits the Designated Contracts List on all parties on the Rule 2002 Notice List. Service of such Notice of Assumption and Assignment as set forth herein shall be deemed proper, due, timely, good and sufficient notice of, among other things, the proposed assumption and assignment of the Designated Contracts and rights thereunder, the Cure Costs, and the procedures for objecting thereto, and no other or further notice is necessary.

23. Any objection by a counterparty to a Designated Contract (which does not, for the avoidance of doubt, include any objection regarding the adequate assurance of future performance of any Stalking Horse Bidder, Successful Bidder or the Backup Bidder) (a "**Designated Contract Objection**") must (i) be to the proposed assumption and assignment of the applicable Designated Contract or Cure Costs, if any; (ii) state, with specificity, the legal and factual basis thereof as well as what Cure Costs such objecting party believes are required, if any; and (iii) include appropriate documentation in support thereof. All Designated Contract Objections must be filed and served on (i) proposed counsel for the Debtors, O'Melveny & Myers LLP, 400 South Hope Street, 18th Floor, Los Angeles, CA 90071, Attn: Steve Warren (swarren@omm.com) and Jennifer Taylor (jtaylor@omm.com); (ii) proposed co-counsel for the Debtors, Burr & Forman LLP, 420 North 20th Street, Suite 3400, Birmingham, Alabama 35203, Attn: Derek Meek (dmeek@burr.com) and Hanna Lahr (hlahr@burr.com); (iii) counsel for the Restructuring Committee, Akin Gump Strauss Hauer & Feld LLP, 2300 N. Field Street, Suite 1800, Dallas, TX 75201, Attn: Sarah Schultz (sschultz@akingump.com); (iv) counsel for the Committee, if any; (v) the Bankruptcy

Administrator, 400 Well Street, Decatur, Alabama 35602, Attn: Richard Blythe (richard_blythe@alnba.uscourts.gov); (vi) counsel to the Stalking Horse Bidder, if any; (vii) counsel to the FILO Lenders, Pillsbury Winthrop Shaw Pittman LLP, Four Embarcadero Center, 22nd Floor, San Francisco, CA 94111-5998, Attn: Joshua D. Morse (joshua.morse@pillsburylaw.com) and Andrew V. Alfano (andrew.alfano@pillsburylaw.com); (viii) counsel to Whitebox Advisors LLC, Brown Rudnick LLP, One Financial Center, Boston, Massachusetts 02111, Attn: Andreas Andromalos (aandromalos@brownrudnick.com) and Tia C. Wallach (twallach@brownrudnick.com); (ix) all parties that have requested notice in the Chapter 11 Cases (collectively (i)–(ix), the "**Objection Recipients**"); and (x) counsel to any Successful Bidder(s), if known on the Sale Objection Deadline no later than 4:00 p.m. (prevailing Central Time) fourteen (14) days following the Assumption and Assignment Service Date (the "**Assumption and Assignment Objection Deadline**").

24.     If a Designated Contract Objection is not consensually resolved before the Sale Hearing, the amount to be paid or reserved with respect to such objection shall be determined at the Sale Hearing, such later hearing date that the Debtors determine in their discretion, or such other date determined by this Court.

25.     Any time after the Assumption and Assignment Service Date and before the closing of a Sale Transaction, the Debtors reserve the right, and are authorized but not directed, to (i) supplement the Designated Contracts List with previously omitted Designated Contracts in accordance with the definitive agreement for a Sale Transaction, (ii) remove a Designated Contract from the list of contracts that a Successful Bidder proposes be assumed and assigned to it in connection with a Sale Transaction, or (iii) modify the previously stated Cure Cost associated with any Designated Contract.

26.    In the event the Debtors exercise any of the rights listed above, the Debtors shall promptly serve the Supplemental Notice of Assumption and Assignment by electronic transmission, hand delivery, or overnight mail on the counterparty (and its attorney, if known) to each Designated Contract listed on the Supplemental Notice of Assumption and Assignment at the last known address available to the Debtors.  Each Supplemental Notice of Assumption and Assignment shall set forth (i) the name and address of the counterparty to the Designated Contract listed thereon; (ii) the proposed effective date of the assignment (subject to the right of the applicable Successful Bidder, if any, to withdraw such request for assumption and assignment of that Designated Contract prior to the closing of the applicable Sale Transaction); (iii) sufficient information to identify the Designated Contract; (iv) the Cure Costs, if any; and (v) proposed adequate assurance, if known on the Assumption and Assignment Service Date.  The Debtors are authorized, but not directed, to modify the Supplemental Notice of Assumption and Assignment as necessary and appropriate to provide customized individual notice to each Designated Contract counterparty.   In addition, the Debtors are authorized, but not directed, to supplement the Designated Contract List on the Case Website with any additional Designated Contracts as the Debtors deem appropriate in their discretion.  Service of such Supplemental Notice of Assumption and Assignment as set forth herein shall be deemed proper, due, timely, good and sufficient notice of, among other things, the proposed assumption and assignment of the Designated Contracts and rights thereunder, the Cure Costs, and the procedures for objecting thereto, and no other or further notice is necessary.

27.    Any objection by a counterparty to a Designated Contract listed on a Supplemental Notice of Assumption and Assignment (which does not, for the avoidance of doubt, include any objection regarding the adequate assurance of future performance of any Stalking Horse Bidder,

Successful Bidder or the Backup Bidder) (a "**Supplemental Designated Contract Objection**") must (i) be to the proposed assumption and assignment of the applicable Designated Contract or the proposed Cure Costs, if any; (ii) state, with specificity, the legal and factual basis thereof as well as what Cure Costs such objecting party believes are required, if any; (iii) include appropriate documentation in support of the objection; and (iv) be filed and served on the Objection Recipients no later than fourteen (14) days from the date of service of such Supplemental Notice of Assumption and Assignment.

28. If a Supplemental Designated Contract Objection is not consensually resolved by the proposed effective date of assignment of the Designated Contract that is the subject of a Supplemental Designated Contract Objection, the Debtors shall seek an expedited hearing before the Court (a "**Supplemental Designated Contract Hearing**") to determine the Cure Costs, if any, and approve the assumption of the relevant Designated Contracts. If there is no such objection, then the Debtors shall obtain an order of this Court, including by filing a certification of no objection, (a "**Supplemental Designated Contract Order**") fixing the Cure Costs and approving the assumption of any Designated Contract listed on a Supplemental Notice of Assumption and Assignment.

29. Absent the filing of a Designated Contract Objection or Supplemental Designated Contract Objection and a subsequent order of the Court establishing an alternative Cure Cost, the Cure Costs, if any, set forth in the Notice of Assumption and Assignment (or Supplemental Notice of Assumption and Assignment) shall be controlling, notwithstanding anything to the contrary in any Designated Contract or any other document, and the counterparty to the Designated Contract will be deemed to have consented to the assumption, assignment, and sale of the Designated Contract and the Cure Costs, if any, and will be forever barred from asserting any other claims

related to such Designated Contract against the Debtors or the applicable Successful Bidder, or the property of any of them, except with respect to adequate assurance of future performance by such Successful Bidder. For the avoidance of doubt, any objections to the proposed form of adequate assurance of future performance of any Successful Bidder (other than a Stalking Horse Bidder) must be raised at the Sale Hearing or Supplemental Designated Contract Hearing, as applicable, and will be resolved at the hearing at which it is raised or, in the Debtors' discretion, adjourned to a later hearing.

30. The inclusion of a Designated Contract on the Notice of Assumption and Assignment (or Supplemental Notice of Assumption and Assignment) will not (a) obligate the Debtors to assume any Designated Contract listed thereon nor the Successful Bidder(s) to take assignment of such Designated Contract or (b) constitute any admission or agreement of the Debtors that such Designated Contract is an "executory" contract. Only those Designated Contracts that are included on a schedule of assumed and Acquired Contracts attached to the final purchase agreement with the Successful Bidder(s) (each, an "**Acquired Contract**") will be assumed and assigned to the Successful Bidder(s).

31. Assignment by the Debtors to the Successful Bidder of a contract, lease or any other liability assumed under Section 365 of the Bankruptcy Code or otherwise relieves the Debtors and their estates from any such liability so assigned.

## VI. The Sale Hearing

32. A Sale Hearing to (i) approve a sale of a portion or substantially all of the Acquired Assets to the Successful Bidder(s) and (ii) authorize the assumption and assignment of certain executory contracts and unexpired leases shall be held on **September 10, 2020 at 10:00 a.m. (prevailing Central Time)**, and may be adjourned or rescheduled without notice, subject to paragraph 4 of this Bidding Procedures Order. At the Sale Hearing, the Debtors will seek

Bankruptcy Court approval of the Successful Bid(s) and the Backup Bid(s) (if any). Unless the Bankruptcy Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on matters relating to the Sale Transaction(s) and there will be no further bidding at the Sale Hearing. In the event that the Successful Bidder(s) cannot or refuses to consummate the Sale(s) because of the breach or failure on the part of such Successful Bidder, the Debtors may, in accordance with the Bidding Procedures, designate the Backup Bid to be the new Successful Bid and the Backup Bidder to be the new Successful Bidder, and the Debtors shall be authorized, but not required, to consummate the applicable transaction with the Backup Bidder without further order of the Bankruptcy Court.

33.     Any and all objections, if any, to any Sale Transaction (but excluding any objection based on the specific identity of any Stalking Horse Bidder, the form of any Stalking Horse APA, or the specific identity of the Successful Bidder or Backup Bidder) must be filed no later than **August 24, 2020 at 4:00 p.m. (prevailing Central Time)** (the "**Sale Objection Deadline**"). Any and all such objections must be served on the Objection Recipients and counsel to any Successful Bidder(s), if known on the Sale Objection Deadline. All replies to such objections must be filed by **September 1, 2020 at 12:00 p.m.** (prevailing Central Time) (the "**Reply Deadline**").

34.     Any party failing to timely file an objection to any Sale Transaction will be forever barred from objecting and will be deemed to have consented to any Sale Transaction, including the transfer of the Debtors' right, title and interest in, to, and under the Debtors' Acquired Assets free and clear of any and all liens, claims, encumbrances and other interests in accordance with a definitive agreement for any Sale Transaction.

35.     Promptly following the Auction, the Debtors shall serve the Post-Auction Notice. The Debtors propose that any objections regarding the adequate assurance of future performance

Case 20-81688-CRJ11    Doc 29    Filed 07/28/20    Entered 07/28/20 01:44:38    Desc Main
Document      Page 69 of 107

of the Successful Bidder or the Backup Bidder (other than the Stalking Horse Bidder) may be raised at the Sale Hearing.

## VII. Other Provisions

36.     Notwithstanding anything herein or in the Bidding Procedures to the contrary, the Debtors shall not be permitted to modify the consultation rights of the Consultation Parties or the Bid Consultation Parties in the Bidding Procedures absent further order of this Court or the consent of any affected Consultation or Bid Consultation Parties.

37.     The Debtors are authorized and empowered to take such action as may be necessary to implement and effect the terms and requirements established under this Bidding Procedures Order.

38.     This Bidding Procedures Order shall be binding on and inure to the benefit of the Debtors, including any Chapter 7 or Chapter 11 trustee or other fiduciary appointed for the estates of the Debtors.

39.     This Bidding Procedures Order shall constitute the findings of fact and conclusions of law and shall take immediate effect upon execution hereof.

40.     To the extent this Bidding Procedures Order is inconsistent with any prior order or pleading with respect to the Motion in these cases, the terms of this Bidding Procedures Order shall govern.

41.     To the extent any of the deadlines set forth in this Bidding Procedures Order do not comply with the Local Rules, such Local Rules are waived and the terms of this Bidding Procedures Order shall govern.

42.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014, or otherwise, this Court, for good cause shown, orders that the terms and conditions of this Bidding Procedures Order shall be immediately effective and enforceable upon its entry.

Case 20-81688-CRJ11    Doc 29    Filed 07/28/20    Entered 07/28/20 01:44:38    Desc Main
Document      Page 70 of 107

43.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Bidding Procedures Order, including, but not limited to, any matter, claim, or dispute arising from or relating to the Bidding Procedures, any Stalking Horse APA, and the implementation of this Bidding Procedures Order.

Dated: _____, 2020

_____
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit 1</u>**

**Bidding Procedures**

43887222 v1

# REMINGTON OUTDOOR COMPANY, INC.
## BIDDING PROCEDURES[1]

### Introduction

Remington Outdoor Company, Inc. and several of its subsidiaries (collectively, the "**Debtors**")[2] are debtors in possession in Chapter 11 cases (jointly administered under Case No. 20-81688-11) pending in the United States Bankruptcy Court for the Northern District of Alabama (the "**Bankruptcy Court**").

By the Sale Motion, the Debtors sought approval of, among other things, the procedures (the "**Bidding Procedures**") by which they will solicit and select the highest or otherwise best offer for the sale of all or substantially all of their assets (the "**Acquired Assets**") either through one sale to a Successful Bidder (as defined below) or multiple sales to multiple Successful Bidders.

The Debtors will consider, without limitation: (1) bids to acquire all of the Debtors' operating segments (the "**Whole Company**"), including all or substantially all of their assets (a "**Whole Company Bid**") or (2) separate bids to acquire (x) all or a portion of the Debtors' business segment relating to the design, manufacture and marketing of ammunition (the "**Ammunitions Business**"), including the production facilities owned or operated by the Debtors in Lonoke, Arkansas, and Mona, Utah, under the *Remington* and *Barnes Bullets* brands (an "**Ammunitions Business Bid**") and (y) all or a portion of the Debtors' business segment relating to the design, manufacture and marketing of shotguns, rifles, handguns and modular firearms and related components (the "**Firearms Business**") and all or substantially of the Debtors' remaining assets not subject to an Ammunitions Business Bid (a "**Firearms Business Bid**").

On [____], 2020, the Bankruptcy Court entered an order (the "**Bidding Procedures Order**"), which, among other things, approved the Bidding Procedures set forth below pursuant to which the Debtors will solicit bids for the purchase of substantially all or a portion of their Acquired Assets.

---

[1]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Debtors' *Motion for (I) an Order Establishing Bidding Procedures and Granting Related Relief and (II) an Order or Orders Approving the Sale of the Assets* (the "**Sale Motion**").

[2]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405).  The Debtors' corporate headquarters are located at 100 Electronics Boulevard SW, Huntsville, AL 35824.

## Key Dates

These Bidding Procedures provide interested parties with the opportunity to complete diligence, to submit competing bids for all or a portion of the Acquired Assets, and to participate in an auction to be conducted by the Debtors (the "**Auction**").

The key dates for the sale process are as follows:

| Deadline | Action |
|---|---|
| August 17, 2020 at 10:00 a.m. (prevailing Central Time) | Hearing to consider approval of the Bidding Procedures and entry of the Bidding Procedures Order |
| August 21, 2020 | Sale Notice Mailing Date |
| August 21, 2020 | Assumption and Assignment Service Date |
| August 24, 2020 at 4:00 p.m. (prevailing Central Time) | Sale Objection Deadline (defined in the Bidding Procedures Order) excluding any objection based on identity of Stalking Horse Bidders, Successful Bidder or Backup Bidder |
| September 1, 2020 at 5:00 p.m. (prevailing Central Time) | Bid Deadline |
| September 1, 2020 at 12:00 p.m. (prevailing Central Time) | Reply Deadline (defined below) |
| September 4, 2020 by 4:00 p.m. (prevailing Central Time) or 14 days following service of the Supplemental Notice of Assumption and Assignment | Assumption and Assignment Objection Deadline (defined in the Bidding Procedures Order) excluding any objection related to adequate assurance of future performance of any Stalking Horse Bidder, Successful Bidder or Backup Bidder |
| September 8, 2020 at 10:00 a.m. (prevailing Central Time) | Auction |
| September 9, 2020 | Post-Auction Notice |
| September 10, 2020 at 10:00 a.m. (prevailing Central Time) | Sale Hearing |

## Stalking Horse APA

The Debtors will continue to solicit stalking horse bids for the Debtors' assets through the Bid Deadline. In the event that the Debtors designate a stalking horse bidder (a "**Stalking Horse Bidder**") and enter into an asset purchase agreement with the Stalking Horse Bidder (a "**Stalking**

Horse APA") on or before the Bid Deadline, the Debtors will provide three (3) business days' notice of the designation of the Stalking Horse Bidder and an opportunity to object to the designation of such Stalking Horse Bidder and disclosure of any Bid Protections set forth in the Stalking Horse APA.

## Access to Debtors' Diligence Materials.

To receive access to due diligence materials and to participate in the bidding process, an interested party must submit to the Debtors (i) an executed confidentiality agreement in form and substance satisfactory to the Debtors (which, for the avoidance of doubt, may be substantially in the form attached hereto as Exhibit 2) or may be a confidentiality agreement already in existence between such party and the Debtors, (ii) evidence demonstrating the party's financial ability to consummate a sale transaction for the Acquired Assets (a "**Sale Transaction**") or, if such party has been formed for the purpose of entering into a Sale Transaction, evidence from such party's equity holder(s), sponsor(s) or other financial backer(s) ("**Bid Sponsor**"), demonstrating such Bid Sponsor's financial ability to consummate a Sale Transaction, and (iii) a statement that such party has a bona fide interest in purchasing all or some of the Acquired Assets.

A party who, in the Debtors' reasonable discretion, satisfies the requirements set forth in the immediately preceding sentence for receiving access to diligence materials shall be a "**Diligence Party**." As promptly as practicable after the Debtors determine that a party is a Diligence Party, the Debtors will deliver to the Diligence Party access to the Debtors' confidential electronic data room. The Debtors will afford any Diligence Party the time and opportunity to conduct reasonable due diligence before the Bid Deadline (as defined below). Notwithstanding the foregoing, the Debtors reserve the right to withhold any diligence materials that the Debtors determine are sensitive or otherwise not appropriate for disclosure to a Diligence Party who the Debtors determine is a competitor of the Debtors or is affiliated with any competitor of the Debtors. Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be a Diligence Party. The Debtors shall not exclude a party from diligence who has complied with subsections (i) and (ii) of the preceding paragraph, unless they have first consulted with the Consultation Parties (as defined below) regarding such determination.

All due diligence requests must be directed to Ducera Partners, Attn: Bradley Meyer (bmeyer@ducerapartners.com) and O'Melveny & Myers LLP, Attn: Logan Tiari (ltiari@omm.com).

Each Diligence Party and Qualified Bidder (as defined below) shall comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding such Bidder and its contemplated transaction. Failure by a Diligence Party to comply with requests for additional information and due diligence access may be a basis for the Debtors to determine, in consultation with the Consultation Parties, that such bidder is not a Qualified Bidder. Failure by a Qualified Bidder to comply with requests for additional information and due diligence access may be a basis for the Debtors to determine, in consultation with the Consultation Parties, that a bid made by such Qualified Bidder is not a Qualified Bid. The Debtors reserve the right, in their discretion, in consultation with the Consultation Parties, to permit a Diligence Party or Qualified Bidder to remedy any such failure to comply.

## Indications of Interest

The Debtors reserve the right, in consultation with the Consultation Parties, to require Diligence Parties to submit written indications of interest specifying, among other things, the Acquired Assets proposed to be acquired, the amount and type of consideration to be offered, and any other material terms to be included in a bid by such party. A Diligence Party that fails to comply with any such request by the Debtors, in the Debtors' discretion and in consultation with the Consultation Parties, may not be provided further diligence access or be permitted to participate further in the auction process. The Debtors also reserve the right to exclude any Diligence Party (prior to its submission of a Qualified Bid) from continuing in the auction process if the Debtors determine, in consultation with the Consultation Parties, that the consideration proposed to be paid by such Diligence Party is insufficient.

## Auction Qualification Process

To be eligible to participate in the Auction, each offer, solicitation, or proposal (each, a "**Bid**"), and each party submitting such a Bid (each, a "**Bidder**") must satisfy each of the conditions set forth below, as determined by the Debtors. A Bid will not be considered qualified for the Auction if such Bid does not satisfy each of the following conditions (provided, that the Debtors, in consultation with the Bid Consultation Parties may waive or modify the application of such conditions to any Bid):

(a)     <u>Good Faith Deposit</u>: Each Bid for all or a portion of the Acquired Assets must be accompanied by a deposit (a "**Good Faith Deposit**") submitted by wire transfer of immediately available funds to an account identified by the Debtors. Each Good Faith Deposit must equal (1) in the case of a Bid for all or a portion of the Acquired Assets, the amount of 10% of the cash consideration offered in such Bid or (2) such other amount as the Debtors determine, in consultation with the Bid Consultation Parties (as defined below); *provided*, *however*, that any Prepetition Secured Creditor submitting a Bid primarily composed of a credit bid pursuant to Section 363(k) of the Bankruptcy Code shall not be required to submit a Good Faith Deposit for the portion of the Bid consisting of a credit bid.

(b)     <u>Assets</u>: Each Bid must clearly state which of the Acquired Assets the Qualified Bidder is agreeing to purchase and assume, including whether the Bid is a Firearms Bid, an Ammunitions Bid, a Whole Company Bid, or other Bid.

(c)     <u>Assumption of Liabilities</u>: Each Bid must clearly state which liabilities and obligations of the Debtors the Qualified Bidder is agreeing to assume.

(d)     <u>Bids for Portions of the Assets</u>: A Bid may offer to purchase (i) the Ammunitions Business, (ii) the Firearms Business, (iii) the Whole Company or (iv) a portion of the foregoing. The Debtors may, in consultation with the Bid Consultation Parties, waive or modify the application of the Qualified Bid conditions in respect of Bids.

(e)     <u>Purchase Price</u>: Each Bid must clearly set forth the purchase price to be paid for the Acquired Assets proposed to be acquired including and identifying separately any cash and non-cash components. Any Whole Company Bid must clearly set

forth the portion of the purchase price applicable to each of the Firearms Business and the Ammunitions Business.

(f) <u>Same or Better Terms</u>:  In the event the Debtors enter into a Stalking Horse APA, each Bid for any Acquired Assets (alone or combined with Bids for other Acquired Assets) must be on terms that, in the Debtors' business judgment, in consultation with the Bid Consultation Parties, are the same or better than the terms of the Stalking Horse APA applicable to the assets that are the subject of such Bid after taking account of the Bid Protections.

(g) <u>Executed Agreement</u>:  Each Bid must be based on the form asset purchase agreement attached hereto as <u>Exhibit 1</u> (the "**Form APA**") and must include executed transaction documents, signed by an authorized representative of such Bidder, pursuant to which the Bidder proposes to effectuate a Sale Transaction (the "**Modified Purchase Agreement**").  A Bid shall also include a copy of the Modified Purchase Agreement marked against the Form APA to show all changes requested by the Bidder (including those related to purchase price).  Each such Modified Purchase Agreement must provide for payment in cash at closing of the Expense Reimbursement and Break-Up Fee to any Stalking Horse Bidder that entered into a Stalking Horse APA applicable to the assets that are the subject of such Bid.

(h) <u>Designation of Assigned Contracts and Leases, Payment of Cure Amounts</u>:  A Bid must identify any and all executory contracts and unexpired leases of the Debtors that the Bidder wishes to have assumed and assigned to it at closing and provide for the payment of all cure amounts payable with respect to such contracts and leases under the Bankruptcy Code.

(i) <u>Transition Services Agreement</u>:  A Bid that is not a Whole Company Bid must indicate its intentions with respect to a transition services agreement with any Successful Bidder for the remainder of the Debtors' assets.

(j) <u>Corporate Authority</u>:  A Bid must include written evidence reasonably acceptable to the Debtors demonstrating appropriate corporate authorization to consummate the proposed Sale Transaction, *provided* that, if the Bidder is an entity specially formed for the purpose of effectuating the Sale Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the Sale Transaction by the Bid Sponsor(s) of such Bidder.

(k) <u>Disclosure of Identity of Bidder</u>:  A Bid must fully disclose the identity of each entity that will be bidding for or purchasing the Acquired Assets or otherwise participating in connection with such Bid (including any Bid Sponsor(s) if the Bidder is an entity specifically formed for the purpose of effectuating the Sale Transaction), and the complete terms of any such participation, including any binding agreements, arrangements, or understandings concerning a collaborative or joint bid or any other combination concerning the proposed Bid.

(l) <u>Proof of Financial Ability to Perform</u>: A Bid must include written evidence that the Debtors reasonably conclude, in consultation with their advisors and the Bid Consultation Parties, demonstrates that the Bidder has the necessary financial ability to (i) close the Sale Transaction and (ii) provide adequate assurance of future performance under all contracts to be assumed and assigned in such Sale Transaction. Such information must include, *inter alia*, the following:

(1) contact names and numbers for verification of financing sources;

(2) evidence of the Bidder's internal resources and proof of debt funding commitments from a recognized financial institution and, if applicable, equity commitments in an aggregate amount equal to the cash portion of such Bid (including, if applicable, the Bidder's payment of cure amounts) or the posting of an irrevocable letter of credit from a recognized banking institution issued in favor of the Debtors in such amount, in each case, as are needed to close the Sale Transaction;

(3) if the Bidder is an entity specifically formed for the purpose of effectuating the Sale Transaction, a written commitment from such entity's Bid Sponsor(s) to be responsible for such entity's obligations in connection with the bidding process;

(4) the Bidder's current financial statements (audited if they exist) or other similar financial information reasonably acceptable to the Debtors;

(5) a description of the Bidder's pro forma capital structure; and

(6) any such other form of financial disclosure or credit-quality support information or enhancement reasonably requested by the Debtors, in consultation with the Bid Consultation Parties, demonstrating that such Bidder has the ability to close the Sale Transaction.

(m) <u>Regulatory and Third Party Approvals</u>: A Bid must set forth each regulatory and third-party approval required for the Bidder to consummate the Sale Transaction, if any, and the time period within which the Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty (30) days following execution and delivery of the Modified Purchase Agreement, those actions the Bidder will take to ensure receipt of such approval(s) as promptly as possible); *provided, however*, that the timing and likelihood of receiving any such regulatory and third-party approvals will be a consideration in determining the highest or otherwise best Bid.

(n) <u>Contingencies</u>: Each Bid may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence.

(o) <u>Irrevocable</u>: Each Bid must expressly provide that (1) the Bidder is prepared to consummate the transaction set forth in the Modified Purchase Agreement

promptly following entry of the Sale Order and satisfaction of the closing conditions (if any) set forth in the Modified Purchase Agreement, and (2) the offer reflected in such Bid shall remain open and irrevocable until the conclusion of the Auction, *provided* that if such Bid is accepted as the Successful Bid or the Backup Bid (each as defined herein), such Bid shall continue to remain open and irrevocable as provided under "Closing the Auction; Successful Bidder" and "Backup Bidder" below.

(p)  <u>Time Frame for Closing</u>:  A Bid must be reasonably likely (based on available financing, antitrust or other regulatory issues) to be consummated within an acceptable timeframe.

(q)  <u>Acknowledgment</u>: Each Bid must include an acknowledgment and representation by an authorized person of the Bidder that the Bidder: (i) has had an opportunity to conduct any and all required due diligence regarding the Acquired Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Acquired Assets in making its Bid; (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Acquired Assets or the completeness of any information provided in connection therewith or with the Auction, except as expressly stated in the Modified Purchase Agreement; (iv) has authorization and approval necessary to close on the delivered Modified Purchase Agreement; (v) has irrevocable financing commitment or cash on hand to consummate the proposed sale and pay the purchase price in cash; (vi) is not entitled to any expense reimbursement, break-up fee, or similar type of payment in connection with its Bid; (vii) has not and will not engage in any collusion with respect to any Bids, the Auction or the Sale; (viii) agrees to abide by the terms of the Bidding Procedures; and (ix) after the conclusion of the Auction, if any, will not submit a Bid or seek to reopen the Auction.

(r)  <u>Bid Deadline</u>:  Each Bid must be received by each of the following parties, in writing, on or before **September 1, 2020 at 5:00 p.m. (prevailing Central Time)** or such earlier date as may be designated by the Debtors in consultation with the Consultation Parties (the "**Bid Deadline**"):  (i) proposed counsel for the Debtors, O'Melveny & Myers LLP, Attn: Steve Warren (swarren@omm.com) and Jennifer Taylor (jtaylor@omm.com); (ii) proposed co-counsel for the Debtors, Burr & Forman LLP, Attn:  Derek Meek (dmeek@burr.com) and Hanna Lahr (hlahr@burr.com); (iii) counsel for the Restructuring Committee, Akin Gump Strauss Hauer & Feld LLP, Attn: Sarah Schultz (sschultz@akingump.com) and Chance Hiner (chiner@akingump.com); and (iv) advisors for the Debtors, Ducera Partners, Attn: Bradley Meyer (bmeyer@ducerapartners.com).  Promptly upon receipt, the Debtors shall provide all Bids to the Bid Consultation Parties.

A Bid received from a Bidder on or before the Bid Deadline that meets the requirements set forth above for the applicable Acquired Assets shall constitute a "**Qualified Bid**" for such Acquired Assets, and such Bidder shall constitute a "**Qualified Bidder**" for such Acquired Assets.

Any Stalking Horse APA will be deemed a Qualified Bid for all purposes, and any Stalking Horse Bidder will be deemed to be a Qualified Bidder.

Notwithstanding anything else contained herein, the Prepetition Secured Creditors shall have the right, subject in all respects to the Bankruptcy Code and other applicable law and the satisfaction in cash or assumption of claims secured by senior liens, to credit bid all or any portion of their allowed secured claims at the Auction pursuant to Section 363(k) of the Bankruptcy Code or other applicable law, in accordance with the applicable terms of the Prepetition Credit Documents, and any such credit bid shall be deemed a Qualified Bid, subject to the Intercreditor Agreement (as defined in the D'Arcy Declaration) and the rights of the Committee as set forth in paragraph 9 of the Bidding Procedures Order.

## Stalking Horse Bid

Recognizing a Stalking Horse Bidder's expenditure of time, energy and resources in connection with the proposed Sale Transaction set forth in any Stalking Horse APA, and the benefit that those efforts provided to all interested parties, if, among other circumstances set forth in the Stalking Horse APA, the Stalking Horse Bidder is not the Successful Bidder, the Debtors may seek authority to pay to such Stalking Horse Bidder a Break-Up Fee and Expense Reimbursement (collectively, the "**Bid Protections**"), which will be governed by the provisions of the Stalking Horse APA, if any, and the Bidding Procedures Order.

Other than as provided by order of the Bankruptcy Court prior to entry of the Bidding Procedures Order, no party submitting a Bid shall be entitled to a break-up fee or expense reimbursement except for the Bid Protections for the Stalking Horse Bidder that are approved by the Bankruptcy Court. Any substantial contribution claims by any Bidder are deemed waived.

## Highest or Otherwise Best Bid

Whenever these Bidding Procedures refer to the highest or otherwise best Qualified Bid, such determination shall take into account any factors the Debtors, in consultation with the Bid Consultation Parties, reasonably deem relevant to the value of the Qualified Bid to the estates and may include, but are not limited to, the following (i) the amount and nature of the consideration, including any Assumed Liabilities (as defined in the Modified Purchase Agreement); (ii) the number, type and nature of any changes to the Form APA requested by each Qualified Bidder; (iii) the extent to which such modifications are likely to delay closing of the sale of the Acquired Assets and the cost to the Debtors of such modifications or delay; (iv) the likelihood of the Qualified Bidder being able to close the proposed transaction (including obtaining any required regulatory approvals) and the timing thereof; and (v) the net benefit to the Debtors' estates (collectively, the "**Bid Assessment Criteria**").

## Auction

If two (2) or more Qualified Bids for the same Acquired Assets are received by the Bid Deadline, the Debtors will conduct the Auction to determine the highest or otherwise best Qualified Bid. Only Qualified Bidders may participate in the Auction.

If no Qualified Bid for the Acquired Assets is received by the Bid Deadline (other than that of any Stalking Horse Bidder), the Debtors, in consultation with the Consultation Parties, may cancel the Auction and seek approval of the transaction contemplated by the Stalking Horse APA, if any.

**<u>Procedures for Auction</u>**

The Auction shall take place on **September 8, 2020 at 10:00 a.m.** (prevailing Central Time) virtually via video-conferencing technology, or such other place and time as the Debtors shall notify all Qualified Bidders and the Consultation Parties. The Auction shall be conducted according to the following procedures:

Only the Debtors, the Consultation Parties, any Stalking Horse Bidder, any other Qualified Bidders, and/or other party as the Debtors may determine to include in their discretion, in each case along with their representatives and advisors, shall be entitled to attend the Auction (such attendance to be in person via video-conference) and only Qualified Bidders will be entitled to make any Overbids (as defined below) at the Auction.

*The Debtors Shall Conduct the Auction.*

The Debtors and their advisors shall direct and preside over the Auction, which shall be transcribed. Other than as expressly set forth herein, the Debtors (in consultation with the Consultation Parties or, to the extent provided herein, the Bid Consultation Parties) may conduct the Auction in the manner they determine will result in the highest or otherwise best offer for any of the Acquired Assets. The Debtors shall use their best efforts to, at least 24 hours prior to commencement of the Auction, provide the Consultation Parties and each Qualified Bidder participating in the Auction with a complete and correct copy of the proposed purchase agreement (either the Stalking Horse APA, if any, or the Modified Purchase Agreement) associated with the Qualified Bid deemed by the Debtors to be the highest or otherwise best bid for the Acquired Assets (such highest or otherwise best Qualified Bid, the "**Auction Baseline Bid**"). At the start of the Auction, the Debtors shall describe the material terms of the Auction Baseline Bid and each Qualified Bidder participating in the Auction must confirm that (a) it has not engaged in any collusion with respect to the bidding or sale of any of the Acquired Assets described herein, (b) it has reviewed, understands, and accepts the Bidding Procedures, (c) it has consented to the core jurisdiction of the Bankruptcy Court (as described more fully below), and (d) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder.

*Terms of Overbids.*

An "**Overbid**" is any bid made at the Auction, in accordance with the requirements set forth herein, subsequent to the Debtors' announcement of the respective Auction Baseline Bid. To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

(a)  <u>Minimum Overbid Increments</u>: The initial Overbid, if any, shall provide for total consideration to the Debtors with a value that exceeds the value of the consideration under the Auction Baseline Bid by an incremental amount that is not less than the

sum of (x) $500,000 (the "**Minimum Overbid Increment**") plus (y) the aggregate amount of any Bid Protections, if any, without duplication, under any Stalking Horse APA applicable to the assets that are the subject of the Overbid, and each successive Overbid shall exceed the then-existing Overbid by an incremental amount that is not less than the Minimum Overbid Increment. In considering the value of any Overbid, the Debtors shall take into account the effect of the Bid Protections. In the event a Stalking Horse Bidder is designated prior to the Bid Deadline, if such Stalking Horse Bidder bids at the Auction, it will be entitled to "credit" in the amount of the applicable Bid Protections to be counted towards its Bid such that the cash and/or non-cash consideration proposed by it plus the applicable Bid Protection "credit" must exceed the then-existing Overbid by an incremental amount that is not less than the Minimum Overbid Increment. The Debtors reserve the right, in consultation with the Bid Consultation Parties, to announce reductions or increases in the Minimum Overbid Increment at any time during the Auction. Additional consideration in excess of the amount set forth in the respective Auction Baseline Bid may include (i) cash and/or non-cash consideration, *provided*, *however*, that the value for such non-cash consideration shall be determined by the Debtors in their reasonable business judgment in consultation with the Bid Consultation Parties (considering factors that include the proposed terms thereof and the creditworthiness of the Bidder) and the Debtors reserve the right to adjust the value of or reject any such non-cash consideration, *provided further* that the Bid Consultation Parties reserve the right to object to the Debtors' determination and such dispute may be resolved by the Court at the Sale Hearing, and (ii) in the case of a Bid by the Prepetition Secured Creditors, a credit bid of up to the full amount of the such secured creditors' allowed secured claim, subject to the Bankruptcy Code and other applicable law and the satisfaction in cash or assumption of claims secured by senior liens, *provided* that such Bid otherwise complies with the requirements set forth herein and subject to the rights of the Committee as set forth in paragraph 9 of the Bidding Procedures Order.

(b)  <u>Remaining Terms Are the Same as for Qualified Bids</u>: Except as modified herein, an Overbid at the Auction must comply with the conditions for a Qualified Bid set forth above, *provided, however*, that the Bid Deadline shall not apply. Any Overbid must include, in addition to the amount and the form of consideration of the Overbid, a description of all changes requested by the Bidder to the Stalking Horse APA, if any, or Modified Purchase Agreement, as the case may be, in connection therewith. For the avoidance of doubt, any Overbid shall be irrevocable and shall remain open and binding on the Bidder in accordance with these Bidding Procedures and the conditions for a Qualified Bid.

At the Debtors' discretion, to the extent not previously provided (which shall be determined by the Debtors in consultation with the Bid Consultation Parties), a Bidder submitting an Overbid at the Auction must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors), as the Debtors, in their reasonable business judgment in consultation with the Bid Consultation

Parties, may request, demonstrating such Bidder's ability to consummate the Sale Transaction proposed by such Overbid.

*Announcement and Consideration of Overbids.*

(a) <u>Announcement of Overbids</u>: A Bidder submitting an Overbid at the Auction shall announce at the Auction the material terms of such Overbid, including the total amount and type of consideration offered in such Overbid.

(b) <u>Consideration of Overbids</u>: The Debtors reserve the right, in their reasonable business judgment in consultation with the Consultation Parties, to make one or more continuances of the Auction to, among other things: facilitate discussions between the Debtors and individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; and give Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment in consultation with the Bid Consultation Parties, may require, that the Qualified Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed Sale Transaction at the prevailing Overbid amount; *provided* that, to the extent the Debtors determine to request that any Qualified Bidder increase the amount of their Good Faith Deposit, the Debtors first shall consult with the Bid Consultation Parties before making such request.

*Additional Procedures.*

The Debtors (in consultation with the Bid Consultation Parties), in the exercise of their fiduciary duties for the purpose of maximizing value for their estates from the sale process, may modify the Bidding Procedures and implement additional procedural rules for conducting the Auction. Specifically, among other things, the Debtors, in consultation with the Bid Consultation Parties, may determine to select more than one Successful Bid and more than one Successful Bidder (and/or more than one Backup Bid and more than one Backup Bidder, in which event such Backup Bids may provide for groupings of Acquired Assets that are different from the groupings of Acquired Assets reflected in the Successful Bid(s)) for separate portions of the Acquired Assets.

*Consent to Jurisdiction as Condition to Bidding.*

All Qualified Bidders shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court to enter an order or orders, which shall be binding in all respects, in any way related to the Debtors, their Chapter 11 cases, the Bidding Procedures, the applicable purchase agreement, the Auction, or the construction and enforcement of documents relating to any Sale Transaction and waived any right to a jury trial in connection with any disputes relating to the Debtors, their Chapter 11 cases, the Bidding Procedures, the applicable purchase agreement, the Auction, or the construction and enforcement of documents relating to any Sale Transaction.

*Sale Is As Is/Where Is.*

Any of the Acquired Assets sold pursuant to the Bidding Procedures shall be sold free and clear of all liens claims and encumbrances as permitted by Section 363(f) of the Bankruptcy Code other than any Permitted Liens and Assumed Liabilities and conveyed at Closing in their then-present condition, "**AS IS, WHERE IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED**", except to the extent set forth in the definitive agreement for the Successful Bid, if applicable.

*Closing the Auction; Successful Bidder.*

The Auction shall continue until there is only one (1) Qualified Bid for all or a portion of the Acquired Assets that the Debtors determine in their reasonable business judgment, in consultation with the Bid Consultation Parties, is the highest or otherwise best Qualified Bid with respect to the assets to which it pertains, as applicable, at the Auction. Thereafter, the Debtors shall select such Qualified Bid, in consultation with the Bid Consultation Parties, as the overall highest or otherwise best Qualified Bid (such Bid(s), the "**Successful Bid(s)**," and the Bidder submitting such Successful Bid(s), the "**Successful Bidder(s)**"). In making this decision, the Debtors shall consider the Bid Assessment Criteria.

The Auction shall close when the Successful Bidder(s) submits fully executed sale and transaction documents memorializing the terms of the Successful Bid(s).

Promptly following the Debtors' selection of the Successful Bid(s) and the conclusion of the Auction, the Debtors shall announce the Successful Bid(s) and Successful Bidder(s) and shall file with the Bankruptcy Court notice of the Successful Bid(s) and Successful Bidder(s).

The Successful Bidder(s) shall be required to keep the Successful Bid(s) open and irrevocable until the closing of the transactions contemplated thereby. The sale and transaction documents approved by the Bankruptcy Court pursuant to the Sale Order shall be irrevocable and enforceable against the Successful Bidder.

*Backup Bidder.*

Notwithstanding anything in the Bidding Procedures to the contrary, the Qualified Bid for the Acquired Assets that the Debtors determine in their reasonable business judgment, in consultation with the Bid Consultation Parties, is the next highest or otherwise best Qualified Bid(s) with respect to such Acquired Assets, as applicable, at the Auction after the Successful Bid(s), will be designated as the "**Backup Bid(s)**" and the Bidder submitting such Backup Bid(s), the "**Backup Bidder(s)**." The Backup Bidder shall be required to keep the Backup Bid open and irrevocable until the earlier of 5:00 p.m. (prevailing Central Time) on the date that is sixty (60) days after the date of entry of the Sale Order (the "**Outside Backup Date**") or the closing of the transaction with the Successful Bidder.

Following entry of the Sale Order, if the Successful Bidder(s) fails to consummate the Successful Bid(s), the Debtors may, in consultation with the Bid Consultation Parties, designate the applicable Backup Bid to be the new Successful Bid and the Backup Bidder to be the new Successful Bidder, and the Debtors will be authorized, but not required, to consummate the transaction with the Backup Bidder without further order of the Bankruptcy Court. In such case

of a breach or failure to perform on the part of the Successful Bidder, the defaulting Successful Bidder's deposit shall be forfeited to the Debtors. The Debtors specifically reserve the right to seek all available damages, including specific performance, from any defaulting Successful Bidder (including any Backup Bidder designated as a Successful Bidder) in accordance with the terms of the Bidding Procedures.

## Return of Good Faith Deposits

The Good Faith Deposits of all Qualified Bidders shall be held in one or more accounts by the Debtors, but shall not become property of the Debtors' estates; *provided*, *however*, that the Good Faith Deposit of any Successful Bidder (including any Backup Bidder that becomes a Successful Bidder) may be forfeited to the Debtors or credited towards the purchase price set forth in the Successful Bid, in either case as provided in these Bidding Procedures. The Good Faith Deposit of any Qualified Bidder that is neither the Successful Bidder nor the Backup Bidder shall be returned to such Qualified Bidder not later than seven (7) days after the Sale Hearing. The Good Faith Deposit of the Backup Bidder, if any, shall be returned to the Backup Bidder not later than three (3) business days after (i) the closing of the transaction with the Successful Bidder for the Acquired Assets bid upon by the Backup Bidder and (ii) the Outside Backup Date; *provided*, *however*, that if the Backup Bid becomes the Successful Bid as provided herein, any subsequent breach or failure to perform by the Backup Bidder may result in the forfeit of the Good Faith Deposit of the Backup Bidder to the Debtors. Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that may have accrued thereon. If the Successful Bidder consummates the Successful Bid, its Good Faith Deposit shall be credited towards the purchase price set forth in the Successful Bid. The provisions of the Stalking Horse APA, if any, shall control the terms of the deposit advanced by the Stalking Horse Bidder.

## The Consultation Parties

The Debtors shall consult with the lenders and agents under the Debtors' prepetition Priority Term Loan Credit Agreement, FILO Term Loan Agreement and Exit Term Loan Agreement (collectively, the "**Consultation Parties**" and each, a "**Consultation Party**") as explicitly provided for in these Bidding Procedures; *provided*, *however*, that, in certain circumstances as set forth in these Bidding Procedures, the Debtors shall consult only with the Bid Consultation Parties (as defined below). The "**Bid Consultation Parties**" shall be all Consultation Parties (and their respective counsel and advisors, if any) other than any Consultation Party (and its counsel and advisors, if any) that submits a Bid or has a Bid submitted on its behalf for so long as such Bid remains open. For the avoidance of doubt, the Debtors' obligation to consult with the Consultation Parties may, in the Debtors' discretion, be met by (i) consultation solely with the respective counsel and advisors, if any, to each of the Consultation Parties, as set forth in "Auction Qualification Process – Bid Deadline" above (collectively, the "**Consultation Party Counsel and Advisors**"); or (ii) consultation with each of the Consultation Parties and their Consultation Party Counsel and Advisors at the same time or in separate communications.

## Reservation of Rights of the Debtors

Except as otherwise provided in these Bidding Procedures or the Bidding Procedures Order, the Debtors further reserve the right, in their reasonable business judgment in consultation

with the Consultation Parties or, to the extent provided herein, the Bid Consultation Parties to: (i) determine which bidders are Qualified Bidders; (ii) determine which Bids are Qualified Bids; (iii) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (iv) reject, at any time prior to the closing of the Auction or, if no Auction is held, at any time prior to entry of the Sale Order, any Bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of these Bidding Procedures, the requirements of the Bankruptcy Code, or (c) contrary to the best interests of the Debtors and their estates; (v) waive terms and conditions set forth herein with respect to all potential bidders; (vi) impose additional terms and conditions; (vii) extend the deadlines set forth herein; (viii) continue or cancel the Auction and/or Sale Hearing in open court, or by filing a notice on the docket of the Debtors' Chapter 11 cases, without further notice; (ix) include any other party as a Consultation Party and attendee at the Auction; and (x) modify the Bidding Procedures and implement additional procedural rules for conducting the Auction so long as such rules are not inconsistent in any material respect with the Bankruptcy Code, the Bidding Procedures Order, or any other order of the Court.

**<u>Exhibit 1</u>**

**Form APA**

**Exhibit 2**

**Confidentiality Agreement**

**Exhibit C**

**Sale Notice**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| REMINGTON OUTDOOR COMPANY, INC., *et al.*,[1] | Case No. 20-81688-11 |
| Debtors. | Joint Administration Requested |

## NOTICE OF SALE, AUCTION, AND SALE HEARING

**PLEASE TAKE NOTICE** that, on July 27, 2020, the debtors and debtors in possession in the above-captioned Chapter 11 cases (collectively, the "**Debtors**") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that, on July 27, 2020, the Debtors filed a motion (the "**Motion**")[2] with the United States Bankruptcy Court for the Northern District of Alabama (the "**Bankruptcy Court**") seeking, among other things, entry of an order (the "**Bidding Procedures Order**"): (i) approving the proposed bidding procedures (the "**Bidding Procedures**") by which the Debtors will solicit and select the highest or otherwise best offer for the sale of substantially all or a portion of their assets (the "**Acquired Assets**") through one or more sales of the Acquired Assets (each, a "**Sale Transaction**" or "**Sale**"); (ii) establishing procedures for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts (the "**Assumption and Assignment Procedures**"); (iii) approving the form and manner of notice with respect to certain procedures, protections, schedules, and agreements, including the Debtors' selection of one or more stalking horse bidders (each, a "**Stalking Horse Bidder**"), if any, and the provision of Bid Protections (as defined below) to such Stalking Horse Bidder, if necessary; (iv) scheduling (a) an auction (the "**Auction**") if the Debtors receive two (2) or more timely and acceptable Qualified Bids (as defined below), and (b) a final hearing (the "**Sale Hearing**") to approve one or more Sales of the Acquired Assets; and (v) granting related relief.

**PLEASE TAKE FURTHER NOTICE** that, on [__], 2020, the Bankruptcy Court entered the Bidding Procedures Order [Doc. __].

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405). The Debtors' corporate headquarters are located at 100 Electronics Boulevard SW, Huntsville, AL 35824.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Bidding Procedures Order, the Debtors may designate one or more Stalking Horse Bidders for the various segments of their business and may enter into an asset purchase agreement with each Stalking Horse Bidder (each, a "**Stalking Horse APA**"). In the event that the Debtors designate one or more Stalking Horse Bidders, the Debtors will provide three (3) business days' notice and an opportunity to object to the designation of such Stalking Horse Bidder and disclosure of the Bid Protections set forth in the Stalking Horse APA.

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Bidding Procedures Order, if the Debtors receive two (2) or more timely and acceptable Qualified Bids for the same Acquired Assets, the Debtors will conduct the Auction on **[__], 2020 at 10:00 a.m. (prevailing Central Time)** virtually via video-conference technology, or such other place and time as the Debtors shall notify all Qualified Bidders and the Consultation Parties. Any party that wishes to take part in this process and submit a bid for the Acquired Assets must submit its Bid by **[__], 2020 at 5:00 p.m. (prevailing Central Time)** (the "**Bid Deadline**") and in accordance with the Bidding Procedures. Only the Debtors, the Consultation Parties, any Stalking Horse Bidder, any other Qualified Bidder and/or other party as the Debtors may determine to include in their discretion, in each case, along with their representatives and advisors, shall be entitled to attend the Auction (such attendance to be in person via video-conference) and only Qualified Bidders will be entitled to make any Overbids at the Auction. The Debtors have the right to adjourn or cancel the Auction at or prior to the Auction. **All interested or potentially affected parties should carefully read the Bidding Procedures and the Bidding Procedures Order**.

**PLEASE TAKE FURTHER NOTICE the Sale Hearing to consider approval of the sale of the Acquired Assets to the Successful Bidder(s) at the Auction, <u>free and clear of all liens, claims, interests, and encumbrances</u> in accordance with Section 363(f) of the Bankruptcy Code, will be held before the Honorable Clifton R. Jessup, Jr., United States Bankruptcy Judge, 3rd Floor Courtroom, at the United States Bankruptcy Court for the Northern District of Alabama located at the U.S. Post Office and Courthouse, 400 Well Street, Decatur, Alabama, 35601 on [__], 2020 at 10:00 a.m. (prevailing Central Time).**

**PLEASE TAKE FURTHER NOTICE** that objections to the Sales(s), if any, must be filed and served so as to be actually received by the Objection Recipients no later than **[__], 2020 at 4:00 p.m. (prevailing Central Time)**.

**PLEASE TAKE FURTHER NOTICE** that the Objection Recipients are: (i) proposed counsel for the Debtors, O'Melveny & Myers LLP, 400 South Hope Street, 18th Floor, Los Angeles, CA 90071, Attn: Steve Warren (swarren@omm.com) and Jennifer Taylor (jtaylor@omm.com); (ii) proposed co-counsel for the Debtors, Burr & Forman LLP, 420 North 20th Street, Suite 3400, Birmingham, Alabama 35203, Attn: Derek Meek (dmeek@burr.com) and Hanna Lahr (hlahr@burr.com); (iii) counsel for the Restructuring Committee, Akin Gump Strauss Hauer & Feld LLP, 2300 N. Field Street, Suite 1800, Dallas, TX 75201, Attn: Sarah Schultz (sschultz@akingump.com); (iv) counsel for the Committee, if any; (v) the Bankruptcy Administrator, 400 Well Street, Decatur, Alabama 35602, Attn: Richard Blythe (richard_blythe@alnba.uscourts.gov); (vi) counsel to the Stalking Horse Bidder, if any; (vii) counsel to the FILO Lenders, Pillsbury Winthrop Shaw Pittman LLP, Four Embarcadero Center, 22nd Floor, San Francisco, CA 94111-5998, Attn: Joshua D. Morse

(joshua.morse@pillsburylaw.com) and Andrew V. Alfano (andrew.alfano@pillsburylaw.com); (viii) counsel to Whitebox Advisors LLC, Brown Rudnick LLP, One Financial Center, Boston, Massachusetts 02111, Attn: Andreas Andromalos (aandromalos@brownrudnick.com) and Tia C. Wallach (twallach@brownrudnick.com); and (ix) all parties that have requested notice in the Chapter 11 Cases.

**PLEASE TAKE FURTHER NOTICE THAT UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND THE BANKRUPTCY COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER HEARING AND NOTICE.**

**PLEASE TAKE FURTHER NOTICE** that this Notice of Sale, Auction, and Sale Hearing is subject to the terms and conditions of the Motion and the Bidding Procedures Order, with such Bidding Procedures Order controlling in the event of any conflict, and the Debtors encourage parties in interest to review such documents in their entirety. Parties interested in receiving more information regarding the sale of the Acquired Assets and/or copies of any related document, including the Motion or the Bidding Procedures Order, may make a written request to: Ducera Partners, Attn: Bradley Meyer (bmeyer@ducerpartners.com) and O'Melveny & Myers LLP, Attn: Steve Warren (swarren@omm.com) and Jennifer Taylor (jtaylor@omm.com). In addition, copies of the Motion and attached Form APA, the Bidding Procedures Order and this Notice may be examined by interested parties (i) free of charge at the website established for these Chapter 11 cases by the Debtors' claims agent, Prime Clerk, at https://cases.primeclerk.com/RemingtonOutdoor, or (ii) on the Bankruptcy Court's electronic docket for the Debtors' Chapter 11 cases, which is posted on the Internet at www.alnb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov).

*(Remainder of page intentionally left blank)*

Dated:      [___], 2020

_____

**BURR & FORMAN LLP**
Derek F. Meek
Hanna Lahr
420 North 20th Street, Suite 3400
Birmingham, Alabama  35203
Telephone:   (205) 251-3000
Facsimile:   (205) 458-5100
Email: dmeek@burr.com
         hlahr@burr.com


- and -

**O'MELVENY & MYERS LLP**
Stephen H. Warren (*pro hac vice* pending)
Karen Rinehart (*pro hac vice* pending)
400 South Hope Street
Los Angeles, CA  90071-2899
Telephone:   (213) 430-6000
Facsimile:   (213) 430-6407


Jennifer Taylor (*pro hac vice* pending)
Two Embarcadero Center, 28th Floor
San Francisco, CA  94111
Telephone:   (415) 984-8700
Facsimile:   (415) 984-8701


*Proposed Attorneys for the*
*Debtors and Debtors in Possession*

**Exhibit D**

**Publication Notice**

43887222 v1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| REMINGTON OUTDOOR COMPANY, INC., *et al.*,[1] | Case No. 20-81688-11 |
| Debtors. | Joint Administration Requested |

## NOTICE OF SALE, AUCTION, AND SALE HEARING

**PLEASE TAKE NOTICE** that, on July 27, 2020, the debtors and debtors in possession in the above-captioned Chapter 11 cases (collectively, the "**Debtors**") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that, on July 27, 2020, the Debtors filed a motion (the "**Motion**")[2] with the United States Bankruptcy Court for the Northern District of Alabama (the "**Bankruptcy Court**") seeking, among other things, entry of an order (the "**Bidding Procedures Order**"): (i) approving the proposed bidding procedures (the "**Bidding Procedures**") by which the Debtors will solicit and select the highest or otherwise best offer for the sale of substantially all or a portion of their assets (the "**Acquired Assets**") through one or more sales of the Acquired Assets (each, a "**Sale Transaction**" or "**Sale**"); (ii) establishing procedures for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts (the "**Assumption and Assignment Procedures**"); (iii) approving the form and manner of notice with respect to certain procedures, protections, schedules, and agreements, including the Debtors' selection of one or more stalking horse bidders (each, a "**Stalking Horse Bidder**"), if any, and the provision of Bid Protections (as defined below) to such Stalking Horse Bidder, if necessary; (iv) scheduling (a) an auction (the "**Auction**") if the Debtors receive two (2) or more timely and acceptable Qualified Bids (as defined below), and (b) a final hearing (the "**Sale Hearing**") to approve one or more Sales of the Acquired Assets; and (v) granting related relief.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405). The Debtors' corporate headquarters are located at 100 Electronics Boulevard SW, Huntsville, AL 35824.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

1) ASSET PURCHASE AGREEMENT

The Debtors filed a form asset purchase agreement with the Motion (the "**Form APA**"). Pursuant to the Bidding Procedures Order, the Debtors may designate one or more Stalking Horse Bidders for the various segments of their business and may enter into an asset purchase agreement with each Stalking Horse Bidder (each, a "**Stalking Horse APA**"). In the event that the Debtors designate one or more Stalking Horse Bidders, the Debtors will provide three (3) business days' notice and an opportunity to object to the designation of such Stalking Horse Bidder and disclosure of the Bid Protections set forth in the Stalking Horse APA.

2) AUCTION

Pursuant to the Bidding Procedures Order, if the Debtors receive two (2) or more timely and acceptable Qualified Bids for the same Acquired Assets, the Debtors will conduct the Auction on **[__], 2020 at 10:00 a.m. (prevailing Central Time)** virtually via video-conference technology, or such other place and time as the Debtors shall notify all Qualified Bidders and the Consultation Parties. Any party that wishes to take part in this process and submit a bid for the Acquired Assets must submit its Bid by **[__], 2020 at 5:00 p.m. (prevailing Central Time)** (the "**Bid Deadline**") and in accordance with the Bidding Procedures. Only the Debtors, the Consultation Parties, any Stalking Horse Bidder, any other Qualified Bidder and/or other party as the Debtors may determine to include in their discretion, in each case, along with their representatives and advisors, shall be entitled to attend the Auction (such attendance to be in person via video-conference) and only Qualified Bidders will be entitled to make any Overbids at the Auction. The Debtors have the right to adjourn or cancel the Auction at or prior to the Auction. **All interested or potentially affected parties should carefully read the Bidding Procedures and the Bidding Procedures Order**.

3) SALE HEARING

**The Sale Hearing to consider approval of the sale of the Acquired Assets to the Successful Bidder(s) at the Auction, <u>free and clear of all liens, claims, interests, and encumbrances</u> in accordance with Section 363(f) of the Bankruptcy Code, will be held before the Honorable Clifton R. Jessup, Jr., United States Bankruptcy Judge, 3rd Floor Courtroom, at the United States Bankruptcy Court for the Northern District of Alabama located at the U.S. Post Office and Courthouse, 400 Well Street, Decatur, Alabama, 35601 on [__], 2020 at 10:00 a.m. (prevailing Central Time).** Objections to the Sales(s), if any, must be filed and served so as to be actually received by the Objection Recipients no later than **[__], 2020 at 4:00 p.m. (prevailing Central Time)**. The Objection Recipients are: (i) proposed counsel for the Debtors, O'Melveny & Myers LLP, 400 South Hope Street, 18th Floor, Los Angeles, CA 90071, Attn: Steve Warren (swarren@omm.com) and Jennifer Taylor (jtaylor@omm.com); (ii) proposed co-counsel for the Debtors, Burr & Forman LLP, 420 North 20th Street, Suite 3400, Birmingham, Alabama 35203, Attn: Derek Meek (dmeek@burr.com) and Hanna Lahr (hlahr@burr.com); (iii) counsel for the Restructuring Committee, Akin Gump Strauss Hauer & Feld LLP, 2300 N. Field Street, Suite 1800, Dallas, TX 75201, Attn: Sarah Schultz (sschultz@akingump.com); (iv) counsel for the Committee, if any; (v) the Bankruptcy Administrator, 400 Well Street, Decatur, Alabama 35602, Attn: Richard Blythe (richard_blythe@alnba.uscourts.gov); (vi) counsel to the Stalking Horse Bidder, if any; (vii) counsel to the FILO Lenders, Pillsbury Winthrop Shaw Pittman LLP,

Four Embarcadero Center, 22nd Floor, San Francisco, CA 94111-5998, Attn: Joshua D. Morse (joshua.morse@pillsburylaw.com) and Andrew V. Alfano (andrew.alfano@pillsburylaw.com); (viii) counsel to Whitebox Advisors LLC, Brown Rudnick LLP, One Financial Center, Boston, Massachusetts 02111, Attn: Andreas Andromalos (aandromalos@brownrudnick.com) and Tia C. Wallach (twallach@brownrudnick.com); and (ix) all parties that have requested notice in the Chapter 11 Cases.

**PLEASE TAKE FURTHER NOTICE THAT UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND THE BANKRUPTCY COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER HEARING AND NOTICE.**

4) <u>COPIES OF THE MOTION AND BIDDING PROCEDURES ORDER</u>

This Notice of Sale, Auction, and Sale Hearing is subject to the terms and conditions of the Motion and the Bidding Procedures Order, with such Bidding Procedures Order controlling in the event of any conflict, and the Debtors encourage parties in interest to review such documents in their entirety. Parties interested in receiving more information regarding the sale of the Acquired Assets and/or copies of any related document, including the Motion or the Bidding Procedures Order, may make a written request to: Ducera Partners, Attn: Bradley Meyer (bmeyer@ducerpartners.com) and O'Melveny & Myers LLP, Attn: Steve Warren (swarren@omm.com) and Jennifer Taylor (jtaylor@omm.com). In addition, copies of the Motion and attached Form APA, the Bidding Procedures Order and this Notice may be examined by interested parties (i) free of charge at the website established for these Chapter 11 cases by the Debtors' claims agent, Prime Clerk, at https://cases.primeclerk.com/RemingtonOutdoor, or (ii) on the Bankruptcy Court's electronic docket for the Debtors' Chapter 11 cases, which is posted on the Internet at www.alnb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov).

**<u>Exhibit E</u>**

**Post-Auction Notice**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

In re:

REMINGTON OUTDOOR COMPANY, INC.,
*et al.*,[1]

Debtors.

Chapter 11

Case No. 20-81688-11

Joint Administration Requested

## NOTICE OF SUCCESSFUL AND BACKUP BIDDERS WITH RESPECT TO THE AUCTIONS OF THE DEBTORS' ASSETS

**PLEASE TAKE NOTICE** that, on [__], 2020, the United States Bankruptcy Court for the Northern District of Alabama (the "**Bankruptcy Court**") entered an order [Doc. __] (the "**Bidding Procedures Order**"): (i) approving the proposed bidding procedures (the "**Bidding Procedures**") by which the Debtors will solicit and select the highest or otherwise best offer for the sale of substantially all or a portion of their assets (the "**Acquired Assets**") through one or more sales of the Acquired Assets (each, a "**Sale Transaction**" or "**Sale**"); (ii) establishing procedures for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts (the "**Assumption and Assignment Procedures**"); (iii) approving the form and manner of notice with respect to certain procedures, protections, schedules, and agreements, including the Debtors' selection of one or more stalking horse bidders (each, a "**Stalking Horse Bidder**"), if any, and the provision of Bid Protections (as defined below) to such Stalking Horse Bidder, if necessary; (iv) scheduling (a) an auction (the "**Auction**") if the Debtors receive two (2) or more timely and acceptable Qualified Bids (as defined below), and (b) a final hearing (the "**Sale Hearing**") to approve one or more Sales of the Acquired Assets; and (v) granting related relief.

**PLEASE TAKE FURTHER NOTICE** that, on [__], 2020 at 10:00 a.m. (prevailing Central Time), pursuant to the Bidding Procedures Order, the Debtors conducted the Auction(s) with respect to certain of the Acquired Assets.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405). The Debtors' corporate headquarters are located at 100 Electronics Boulevard SW, Huntsville, AL 35824.

43887222 v1

**PLEASE TAKE FURTHER NOTICE** that, at the conclusion of the Auction, the Debtors, in consultation with their professionals and the Bid Consultation Parties, selected the following Successful Bidder(s) and Backup Bidder(s) with respect to the Acquired Assets:

| Asset(s) | Successful Bidder | Backup Bidder |
|---|---|---|
|  |  |  |

**PLEASE TAKE FURTHER NOTICE that the Sale Hearing to consider approval of the sale of the Acquired Assets to the Successful Bidder(s) at the Auction, <u>free and clear of all liens, claims, interests, and encumbrances</u> in accordance with Section 363(f) of the Bankruptcy Code, will be held before the Honorable Clifton R. Jessup, Jr., United States Bankruptcy Judge, 3rd Floor Courtroom, at the United States Bankruptcy Court for the Northern District of Alabama located at the U.S. Post Office and Courthouse, 400 Well Street, Decatur, Alabama, 35601 on [__], 2020 at 10:00 a.m. (prevailing Central Time).** The Sale Hearing may be adjourned or rescheduled without notice.

**PLEASE TAKE FURTHER NOTICE** that, at the Sale Hearing, the Debtors will seek Bankruptcy Court approval of the Successful Bid(s) and the Backup Bid(s) (if any). Unless the Bankruptcy Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on matters relating to the Sale Transaction(s) and there will be no further bidding at the Sale Hearing. In the event that the Successful Bidder(s) cannot or refuses to consummate the Sale(s) because of the breach or failure on the part of the Successful Bidder, the Backup Bidder will be deemed the new Successful Bidder and the Debtors shall be authorized, but not required, to close with the Backup Bidder on the Backup Bid without further order of the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that this Notice of Successful and Backup Bidders is subject to the terms and conditions of the Motion and the Bidding Procedures Order, with such Bidding Procedures Order controlling in the event of any conflict, and the Debtors encourage parties in interest to review such documents in their entirety. Parties interested in receiving more information regarding the sale of the Acquired Assets and/or copies of any related document, including the Motion or the Bidding Procedures Order, may make a written request to: Ducera Partners, Attn: Bradley Meyer (bmeyer@ducerpartners.com) and O'Melveny & Myers LLP, Attn: Steve Warren (swarren@omm.com) and Jennifer Taylor (jtaylor@omm.com). In addition, copies of the Motion and attached Form APA, the Bidding Procedures Order and this Notice may be examined by interested parties (i) free of charge at the website established for these Chapter 11 cases by the Debtors' claims agent, Prime Clerk, at https://cases.primeclerk.com/RemingtonOutdoor, or (ii) on the Bankruptcy Court's electronic docket for the Debtors' Chapter 11 cases, which is posted on the Internet at www.alnb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov).

*(Remainder of page intentionally left blank)*

Dated:     [____], 2020

_____

**BURR & FORMAN LLP**
Derek F. Meek
Hanna Lahr
420 North 20th Street, Suite 3400
Birmingham, Alabama  35203
Telephone:   (205) 251-3000
Facsimile:   (205) 458-5100
Email: dmeek@burr.com
          hlahr@burr.com

- and -

**O'MELVENY & MYERS LLP**
Stephen H. Warren (*pro hac vice* pending)
Karen Rinehart (*pro hac vice* pending)
400 South Hope Street
Los Angeles, CA  90071-2899
Telephone:   (213) 430-6000
Facsimile:   (213) 430-6407

Jennifer Taylor (*pro hac vice* pending)
Two Embarcadero Center, 28th Floor
San Francisco, CA  94111
Telephone:   (415) 984-8700
Facsimile:   (415) 984-8701

*Proposed Attorneys for the*
*Debtors and Debtors in Possession*

**Exhibit F**

**Assumption and Assignment Notice**

43887222 v1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| REMINGTON OUTDOOR COMPANY, INC., *et al.*,[1] | Case No. 20-81688-11 |
| Debtors. | Joint Administration Requested |

**NOTICE OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES THAT MAY BE ASSUMED AND ASSIGNED IN CONNECTION WITH THE SALE OF THE DEBTORS' ASSETS AND THE PROPOSED CURE COST WITH RESPECT THERETO**

**YOU ARE RECEIVING THIS NOTICE OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES THAT MAY BE ASSUMED AND ASSIGNED IN CONNECTION WITH THE SALE OF THE DEBTORS' ASSETS AND THE PROPOSED CURE AMOUNT WITH RESPECT THERETO (THE "NOTICE OF ASSUMPTION AND ASSIGNMENT") BECAUSE YOU MAY BE A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH REMINGTON OUTDOOR COMPANY OR ONE OR MORE OF ITS AFFILIATED DEBTORS (COLLECTIVELY, THE "DEBTORS"). PLEASE READ THIS NOTICE CAREFULLY AS YOUR RIGHTS MAY BE AFFECTED BY THE TRANSACTIONS DESCRIBED HEREIN.**

  **PLEASE TAKE NOTICE** that on July 27, 2020, the Debtors filed a motion (the "**Motion**")[2] with the United States Bankruptcy Court for the Northern District of Alabama (the "**Bankruptcy Court**") seeking, among other things, entry of an order (the "**Bidding Procedures Order**"): (i) approving the proposed bidding procedures (the "**Bidding Procedures**") by which the Debtors will solicit and select the highest or otherwise best offer for the sale of substantially all or a portion of their assets (the "**Acquired Assets**") through one or more sales of the Acquired Assets (each, a "**Sale Transaction**" or "**Sale**"); (ii) establishing procedures for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts (the "**Assumption and Assignment Procedures**"); (iii) approving the form and manner of notice with respect to certain procedures, protections, schedules, and agreements, including the

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405). The Debtors' corporate headquarters are located at 100 Electronics Boulevard SW, Huntsville, AL 35824.

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

43887222 v1

Debtors' selection of one or more stalking horse bidders (each, a "**Stalking Horse Bidder**"), if any, and the provision of Bid Protections (as defined below) to such Stalking Horse Bidder, if necessary; (iv) scheduling (a) an auction (the "**Auction**") if the Debtors receive two (2) or more timely and acceptable Qualified Bids (as defined below), and (b) a final hearing (the "**Sale Hearing**") to approve one or more Sales of the Acquired Assets; and (v) granting related relief.

        **PLEASE TAKE FURTHER NOTICE** that on **[__], 2020**, the Bankruptcy Court entered the Bidding Procedures Order [Doc. __].

        **PLEASE TAKE FURTHER NOTICE** that the Bidding Procedures Order, among other things, established procedures for the assumption and assignment of certain executory contracts and unexpired leases that the Debtors believe they might seek to assume and assign in connection with a Sale Transaction (collectively, the "**Designated Contracts**") to a purchaser and the determination of related Cure Costs (as defined below). The Debtors are parties to numerous Designated Contracts and, in accordance with the Bidding Procedures Order, hereby file this notice identifying (i) the Designated Contracts, which may be assumed and assigned to the Stalking Horse Bidder, if any, or such other Successful Bidder(s) in connection with the Sale Transaction(s) and (ii) the proposed amounts, if any, the Debtors believe are owed to the counterparty to the Designated Contract to cure any defaults or arrears existing under the Designated Contract (the "**Cure Costs**"), both as set forth on Exhibit 1 attached hereto. Other than the Cure Costs listed on Exhibit 1, the Debtors are not aware of any amounts due and owing under the Designated Contracts listed therein.

        **PLEASE TAKE FURTHER NOTICE** that the hearing to approve the sale of the Acquired Assets (the "**Sale Hearing**") will be held before the Honorable Clifton R. Jessup, Jr., United States Bankruptcy Judge, 3rd Floor Courtroom, at the United States Bankruptcy Court for the Northern District of Alabama located at the U.S. Post Office and Courthouse, 400 Well Street, Decatur, Alabama, 35601 on **[__], 2020 at 10:00 a.m. (prevailing Central Time)**.

        **PLEASE TAKE FURTHER NOTICE** that the listing of a Designated Contract on Exhibit 1 does not constitute an admission that the Designated Contract is an executory contract or unexpired lease as contemplated by Section 365(a) of the Bankruptcy Code or that the Debtors have any liability thereunder, and the Debtors expressly reserve all of their rights, claims, causes of action, and defenses with respect to the Designated Contracts listed on Exhibit 1.

        **PLEASE TAKE FURTHER NOTICE** that a counterparty to a Designated Contract listed on this Notice of Assumption and Assignment may file an objection (a "**Designated Contract Objection**") only if such objection is to the proposed assumption and assignment of the applicable Designated Contract or the proposed Cure Costs, if any. All Designated Contract Objections must (1) state, with specificity, the legal and factual basis for the objection as well as what Cure Costs are required, if any, (2) include appropriate documentation in support thereof, and (3) be filed and served on the Objection Recipients no later than **4:00 p.m. (prevailing Central Time) fourteen (14) days following the Assumption and Assignment Service Date** (the "**Assignment and Assumption Objection Deadline**").

        **PLEASE TAKE FURTHER NOTICE** that the Objection Recipients are: (i) proposed counsel for the Debtors, O'Melveny & Myers LLP, 400 South Hope Street, 18th Floor, Los

Angeles, CA 90071, Attn: Steve Warren (swarren@omm.com) and Jennifer Taylor (jtaylor@omm.com); (ii) proposed co-counsel for the Debtors, Burr & Forman LLP, 420 North 20th Street, Suite 3400, Birmingham, Alabama 35203, Attn: Derek Meek (dmeek@burr.com) and Hanna Lahr (hlahr@burr.com); (iii) counsel for the Restructuring Committee, Akin Gump Strauss Hauer & Feld LLP, 2300 N. Field Street, Suite 1800, Dallas, TX 75201, Attn: Sarah Schultz (sschultz@akingump.com); (iv) counsel for the Committee, if any; (v) the Bankruptcy Administrator, 400 Well Street, Decatur, Alabama 35602, Attn: Richard Blythe (richard_blythe@alnba.uscourts.gov); (vi) counsel to the Stalking Horse Bidder, if any; (vii) counsel to the FILO Lenders, Pillsbury Winthrop Shaw Pittman LLP, Four Embarcadero Center, 22nd Floor, San Francisco, CA 94111-5998, Attn: Joshua D. Morse (joshua.morse@pillsburylaw.com) and Andrew V. Alfano (andrew.alfano@pillsburylaw.com); (viii) counsel to Whitebox Advisors LLC, Brown Rudnick LLP, One Financial Center, Boston, Massachusetts 02111, Attn: Andreas Andromalos (aandromalos@brownrudnick.com) and Tia C. Wallach (twallach@brownrudnick.com); and (ix) all parties that have requested notice in the Chapter 11 Cases.

**PLEASE TAKE FURTHER NOTICE THAT IF A COUNTERPARTY TO A DESIGNATED CONTRACT FILES A DESIGNATED CONTRACT OBJECTION IN A MANNER THAT IS CONSISTENT WITH THE REQUIREMENTS SET FORTH ABOVE, AND THE PARTIES ARE UNABLE TO CONSENSUALLY RESOLVE THE DISPUTE PRIOR TO THE SALE HEARING, THE AMOUNT TO BE PAID OR RESERVED WITH RESPECT TO SUCH OBJECTION WILL BE DETERMINED AT THE SALE HEARING, SUCH LATER HEARING DATE THAT THE DEBTORS DETERMINE IN THEIR DISCRETION, OR SUCH OTHER DATE DETERMINED BY THIS COURT. ALL OTHER OBJECTIONS TO THE PROPOSED ASSUMPTION AND ASSIGNMENT OF THE DEBTORS' RIGHT, TITLE, AND INTEREST IN, TO, AND UNDER THE DESIGNATED CONTRACTS WILL BE HEARD AT THE SALE HEARING.**

**PLEASE TAKE FURTHER NOTICE** that if the counterparty to a Designated Contract does not timely file and serve a Designated Contract Objection that is consistent with the requirements set forth above by the Assignment and Assumption Objection Deadline, such counterparty will be deemed to have consented to the assumption and assignment of the Designated Contract to a Successful Bidder, notwithstanding any anti-alienation provision or other restriction on assumption or assignment in the Designated Contract, and shall be forever barred from asserting any objection with regard to such assumption and assignment and/or Cure Costs set forth in <u>Exhibit 1</u>, except with respect to the adequate assurance of future performance by the Successful Bidder(s). Any objections to any Stalking Horse Bidder or Successful Bidder's proposed form of adequate assurance of future performance must be raised at the Sale Hearing or Supplemental Designated Contract Hearing, as applicable, and will be resolved at the hearing at which it is raised or, in the Debtors' discretion, adjourned to a later hearing.

**PLEASE TAKE FURTHER NOTICE** that although the Debtors have made a good faith effort to identify all Designated Contracts that might be assumed and assigned in connection with a Sale Transaction, the Debtors may discover certain contracts inadvertently omitted from the Designated Contracts list or Successful Bidder(s) may identify other executory contracts or unexpired leases that they desire to assume and assign in connection with the Sale. Accordingly, the Debtors have reserved the right, at any time after the Assumption and Assignment Service Date

and before the closing of a Sale Transaction, to (i) supplement the list of Designated Contracts on this Notice of Assumption and Assignment with previously omitted Designated Contracts in accordance with the definitive agreement for a Sale Transaction, (ii) remove a Designated Contract from the list of contracts ultimately selected as a Designated Contract that a Successful Bidder proposes be assumed and assigned to it in connection with a Sale Transaction, and/or (iii) modify the previously stated Cure Cost associated with any Designated Contract.

**PLEASE TAKE FURTHER NOTICE** that in the event that the Debtors exercise any of the rights reserved above, the Debtors will promptly serve a supplemental notice of assumption and assignment (a "**Supplemental Notice of Assumption and Assignment**") by electronic transmission, hand delivery, or overnight mail on the counterparty (and its attorney, if known) to each impacted Designated Contract at the last known address available to the Debtors.

**PLEASE TAKE FURTHER NOTICE** that this Notice of Assumption and Assignment is subject to the terms and conditions of the Motion and the Bidding Procedures Order, with such Bidding Procedures Order controlling in the event of any conflict, and the Debtors encourage parties-in-interest to review such documents in their entirety. Parties with questions regarding the Assumption and Assignment Procedures contained herein should contact the Debtors' counsel at the contact information provided below.

**PLEASE TAKE FURTHER NOTICE** that the inclusion of a Designated Contract on this Notice of Assumption and Assignment (or Supplemental Notice of Assumption and Assignment) will not obligate the Debtors to assume any Designated Contract listed thereon or the Successful Bidder(s) to take assignment of such Designated Contract. Only those Designated Contracts that are included on a schedule of assumed and assigned executory contracts and unexpired leases attached to the final purchase agreement with the Successful Bidder(s) (each, an "**Acquired Contract**") will be assumed and assigned to the Successful Bidder(s).

*(Remainder of page intentionally left blank)*

Dated:        [___], 2020

_____

**BURR & FORMAN LLP**
Derek F. Meek
Hanna Lahr
420 North 20th Street, Suite 3400
Birmingham, Alabama  35203
Telephone:   (205) 251-3000
Facsimile:    (205) 458-5100
Email:  dmeek@burr.com
            hlahr@burr.com

- and -

**O'MELVENY & MYERS LLP**
Stephen H. Warren (*pro hac vice* pending)
Karen Rinehart (*pro hac vice* pending)
400 South Hope Street
Los Angeles, CA  90071-2899
Telephone:   (213) 430-6000
Facsimile:    (213) 430-6407

Jennifer Taylor (*pro hac vice* pending)
Two Embarcadero Center, 28th Floor
San Francisco, CA  94111
Telephone:   (415) 984-8700
Facsimile:    (415) 984-8701

*Proposed Attorneys for the*
*Debtors and Debtors in Possession*