IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| REMINGTON OUTDOOR COMPANY, INC., *et al.*, | Case No. 20-81688-CRJ11 |
| Debtors. | Jointly Administered |

**OBJECTION OF CONSTELLATION NEWENERGY – GAS DIVISION, LLC
TO THE DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL
ORDERS (I) DETERMINING ADEQUATE ASSURANCE OF PAYMENT
FOR FUTURE UTILITY SERVICES, (II) PROHIBITING UTILITY
COMPANIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICES,
(III) ESTABLISHING PROCEDURES FOR DETERMINING ADEQUATE
ASSURANCE OF PAYMENT, AND (IV) SCHEDULING A FINAL HEARING**

Constellation NewEnergy – Gas Division, LLC ("CNEG"), by counsel, hereby objects to the *Debtors' Motion For Entry of Interim and Final Orders (I) Determining Adequate Assurance of Payment For Future Utility Services, (II) Prohibiting Utility Companies From Altering, Refusing, or Discontinuing Services, (III) Establishing Procedures For Determining Adequate Assurance of Payment, and (IV) Scheduling a Final Hearing* (the "Utility Motion") (Docket No. 15), and sets forth the following:

**Introduction**

The Debtors' Utility Motion improperly seeks to shift the Debtors' obligations under Section 366(c)(3) from modifying the amount of the adequate assurance of payment requested by CNEG under Section 366(c)(2) to setting the form and amount of the adequate assurance of payment acceptable to the Debtors. This Court should not permit the Debtors to shift their statutory burden.

The Debtors seek to have this Court approve their form of adequate assurance of payment, which is a bank account containing $354,329.13 that supposedly reflects an amount equal to approximately one-half of the Debtors' monthly utility charges over the past twelve months (the "Bank Account"). The Court should reject the Debtors' proposed Bank Account because: (1) CNEG bills the Debtors on a monthly basis and provides the Debtors with generous payment terms pursuant to the Gas Agreement (as defined below), and a two-week account is not sufficient in amount or in form to provide CNEG with adequate assurance of payment; (2) Section 366(c) of the Bankruptcy Code specifically defines the forms of adequate assurance of payment in Section 366(c)(1), none of which include a segregated bank account; and (3) even if this Court were to improperly consider the Bank Account as a form of adequate assurance of payment for CNEG, the Court should reject it as an insufficient form of adequate assurance of payment for the reasons set forth in Section A.1. of this Objection.

CNEG is seeking a two-month cash deposit in the amount of $87,024 from the Debtors, which is an amount that CNEG can obtain pursuant to the Gas Agreement (as defined below). Based on all the foregoing, this Court should deny the Utility Motion as to CNEG because the amount of the CNEG post-petition deposit request is reasonable under the circumstances and should not be modified.

## Facts

### Procedural Facts

1. On July 27, 2020 (the "Petition Date"), the Debtors commenced their cases under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") that are now pending with this Court. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

2. The Debtors' chapter 11 bankruptcy cases are being jointly administered.

### The Utility Motion

3. On July 28, 2020, the Debtors filed the Utility Motion.

4. On July 30, 2020, the Court entered the *Interim Order (I) Determining Adequate Assurance of Payment For Future Utility Services, (II) Prohibiting Utility Companies From Altering, Refusing, or Discontinuing Services, (III) Establishing Procedures For Determining Adequate Assurance of Payment, and (IV) Granting Related Relief* (the "Interim Utility Order")(Docket No. 75). The Interim Utility Order set (i) an objection deadline of August 7, 2020 and (ii) the final hearing on the Utility Motion to take place on August 11, 2020 at 9:00 a.m. Interim Utility Order at ¶ 2.

5. Through the Utility Motion, the Debtors seek to avoid the applicable legal standards under Sections 366(c)(2) and (3) by seeking Court approval for their own form of adequate assurance of payment, which is the Bank Account containing $354,329.13 that supposedly reflects an amount equal to approximately one-half of the Debtors' monthly utility charges over the past twelve months. Utility Motion at ¶ 14.

6. The proposed Bank Account is not acceptable to CNEG and should not be considered relevant by this Court because Sections 366(c)(2) and (3) do not allow the Debtors to establish the form or amount of adequate assurance of payment. Under Sections 366(c)(2) and (3), this Court and the Debtors are limited to modifying, if at all, the amount of the security sought by CNEG under Section 366(c)(2).

7. The Debtors claim that to the best of their knowledge, there are no defaults or arrearages with respect to the Debtors' undisputed invoices for prepetition utility services. Utility Motion at ¶ 7. However, Section 366(c)(3)(B)(ii) expressly provides that in making an

3

adequate assurance of payment determination, a court may not consider a debtor's timely payment of prepetition utility charges.

8. Although not requested in the Utility Motion, the Interim Utility Order provides that monies contained in the Bank Account on behalf of a utility shall be returned to the Debtors on the earlier of (i) entry of an order authorizing the return or release of the monies contained in the Bank Account to the Debtors, or (ii) the effective date of a Chapter 11 plan. Interim Utility Order at ¶ 7. As CNEG bills the Debtors in arrears, and CNEG would likely provide post-petition utility goods/services to the Debtors through the effective date of a plan, any monies contained in the Bank Account on behalf of CNEG should not be returned to the Debtors until the Debtors confirm that they have paid in full their post-petition utility expenses owed to CNEG.

9. The Utility Motion does not address why the Bank Account would be underfunded with only two-weeks of utility charges when the Debtors know that CNEG is required by contract to bill the Debtors monthly. Moreover, presumably the Debtors want CNEG to continue to bill them monthly and provide them with the same generous payment terms that they received prepetition. Accordingly, if the Bank Account is relevant, which CNEG disputes, the Debtors need to explain: (A) why they are only proposing to deposit a supposed two-week amount into the Bank Account for CNEG; and (B) how such an insufficient amount could even begin to constitute adequate assurance of payment for CNEG's monthly bills.

10. Furthermore, the Utility Motion does not address why this Court should consider modifying, if at all, the amount of CNEG's adequate assurance request pursuant to Section 366(c)(2). Rather, without providing any specifics, the Utility Motion merely states that the Bank Account, "in conjunction with the Debtors' ability to pay for future utility services in

4

accordance with prepetition practice," constitutes sufficient adequate assurance of payment to the Debtors' utility providers. Utility Motion at ¶ 9.

## Facts Regarding CNEG

11. CNEG provides natural gas and related services to the Debtors pursuant to a Base Contract for Sale and Purchase of Natural Gas (NAESB) and related Transaction Confirmation (collectively, the "Gas Agreement") that set forth the terms and conditions concerning CNEG's provision of natural gas and related services to the Debtors. CNEG has continued to provide the Debtors with natural gas and related services pursuant to the Gas Agreement since the Petition Date.

12. Pursuant to the Gas Agreement, the Debtors receive approximately one month of natural gas and related services before CNEG issues a bill. Once a bill is issued, the Debtors have 15 days to pay the applicable bill. If the Debtors fail to timely pay a bill, a late fee may be subsequently imposed on the account. Accordingly, the Debtors could receive approximately two months of natural gas and related services before CNEG could terminate the Gas Agreement after a post-petition payment default.

13. The estimated pre-petition debt owed by the Debtors to CNEG is approximately $60,000. CNEG is requesting a two-month cash deposit of $87,024 as adequate assurance of payment from the Debtors, which is an amount it can obtain from the Debtors pursuant to the terms and conditions of the Gas Agreements.

## Discussion

**A. THE UTILITY MOTION SHOULD BE DENIED AS TO CNEG.**

Sections 366(c)(2) and (3) of the Bankruptcy Code provide:

> (2) Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if

during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility;

(3)(A) On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).

As set forth by the United States Supreme Court, "[i]t is well-established that 'when the statute's language is plain, the sole function of the courts--at least where the disposition required by the text is not absurd--is to enforce it according to its terms.'" *Lamie v. United States Trustee*, 540 U.S. 526, 534, 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004) (*quoting Hartford Underwriters Ins. Co.* v. *Union Planters Bank, N. A.,* 530 U.S. 1, 6, 120 S. Ct., 1942, 147 L. Ed. 2d 1 (2000)). *Rogers v. Laurain (In re Laurain)*, 113 F.3d 595, 597 (6th Cir. 1997) ("Statutes . . . must be read in a 'straightforward' and 'commonsense' manner."). A plain reading of Section 366(c)(2) makes clear that a debtor is required to provide adequate assurance of payment satisfactory to its utilities on or within thirty (30) days of the filing of the petition. *In re* Lucre, 333 B.R. 151, 154 (Bankr. W.D. Mich. 2005). If a debtor believes the **amount** of the utility's request needs to be modified, then the debtor can file a motion under Section 366(c)(3) requesting the court to modify the **amount** of the utility's request under Section 366(c)(2).

In this case, the Debtors filed the Utility Motion to improperly shift the focus of their obligations under Section 366(c)(3) from modifying the amount of the adequate assurance of payment requested under Section 366(c)(2) to setting the form and amount of the adequate assurance of payment acceptable to the Debtors. Accordingly, this Court should not reward the Debtors for their failure to comply with the requirements of Section 366(c) and deny the Utility Motion as to CNEG.

6

1. **The Debtors' Proposed Bank Account Is Not Relevant And Even If It Is Considered, It Is Unsatisfactory Because It Does Not Provide CNEG With Adequate Assurance of Payment.**

This Court should not even consider the Bank Account as a form of adequate assurance of payment because: (1) it is not relevant because Section 366(c)(3) provides that a debtor can only modify "the amount of an assurance of payment under paragraph (2)"; and (2) the Bank Account is not a form of adequate assurance of payment recognized by Section 366(c)(1)(A). Moreover, even if the Court were to consider the Bank Account, the Bank Account is an improper and otherwise unreliable form of adequate assurance of future payment for the following reasons:

1. Unlike the statutory approved forms of adequate assurance of payment, the Bank Account is not something held by CNEG. Accordingly, CNEG would have no control over how long the Bank Account will remain in place.

2. In order to access the Bank Account, CNEG would have to incur the expense to draft, file and serve a default pleading with the Court and possibly litigate the demand if the Debtors refuse to honor a disbursement request.

3. It is underfunded from the outset because CNEG issues monthly bills and by the time a default notice is issued the Debtors will have received approximately 60 days of commodity.

4. The Debtors may close the Bank Account before all post-petition utility charges are paid in full.

Accordingly, the Court should not approve the Bank Account as adequate assurance as to CNEG because the Bank Account is: (a) not the **form** of adequate assurance requested by CNEG; (b) not a form recognized by Section 366(c)(1)(A); and (c) an otherwise unreliable form of adequate assurance.

2. **The Utility Motion Should Be Denied As To CNEG Because the Debtors Have Not Set Forth Any Basis For Modifying CNEG's Requested Deposit.**

In the Utility Motion, the Debtors fail to address why this Court should modify the

7

amount of CNEG's request for adequate assurance of payment. Under Section 366(c)(3), the Debtors have the burden of proof as to whether the amount of CNEG's adequate assurance of payment request should be modified. *See In re Stagecoach Enterprises, Inc.*, 1 B.R. 732, 734 (Bankr. M.D. Fla. 1979) (holding that the debtor, as the petitioning party at a Section 366 hearing, bears the burden of proof). However, the Debtors do not provide the Court with any evidence or factually supported documentation to explain why the amount of CNEG's adequate assurance request should be modified. Accordingly, the Court should deny the relief requested by Debtors in the Utility Motion and require the Debtors to comply with the requirements of Section 366(c) with respect to CNEG.

      **B. THE COURT SHOULD ORDER THE DEBTORS TO PROVIDE THE ADEQUATE ASSURANCE OF PAYMENT REQUESTED BY CNEG PURSUANT TO SECTION 366 OF THE BANKRUPTCY CODE.**

Section 366(c) was amended to overturn decisions such as *Virginia Electric and Power Company v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997), that held that an administrative expense, without more, could constitute adequate assurance of payment in certain cases. Section 366(c)(1)(A) specifically defines the forms that assurance of payment may take as follows:

> (i) a cash deposit;
> (ii) a letter of credit;
> (iii) a certificate of deposit;
> (iv) a surety bond;
> (v) a prepayment of utility consumption; or
> (vi) another form of security that is mutually agreed upon between the utility and the debtor or the trustee.

Section 366 of the Bankruptcy Code was enacted to balance a debtor's need for utility services from a provider that holds a monopoly on such services, with the need of the utility to ensure for itself and its rate payers that it receives payment for providing these essential services. *See In re Hanratty*, 907 F.2d 1418, 1424 (3d Cir. 1990). The deposit or other security "should

8

bear a reasonable relationship to expected or anticipated utility consumption by a debtor." *In re Coastal Dry Dock & Repair Corp.*, 62 B.R. 879, 883 (Bankr. E.D.N.Y. 1986). In making such a determination, it is appropriate for the Court to consider "the length of time necessary for the utility to effect termination once one billing cycle is missed." *In re Begley*, 760 F.2d 46, 49 (3d Cir. 1985).

CNEG bills the Debtors on a monthly basis for the charges already incurred by the Debtors in the prior month. CNEG then provides the Debtors with 15 days to pay a bill before a late fee may be charged, and also provides written notice before utility goods/services can be terminated for non-payment pursuant to the Gas Agreement. Based on the foregoing contract-mandated billing cycle, the minimum period of time the Debtors could receive service from CNEG before termination of service for non-payment of post-petition bills is approximately two (2) months. Moreover, even if the Debtors timely pay their post-petition utility bills, CNEG still has potential exposure of approximately 60 days based on its billing cycle. Furthermore, the amount of the CNEG deposit request is the amount that the Gas Agreement permits CNEG to request from the Debtors. CNEG is not taking the position that the deposit that it is entitled to obtain pursuant to the Gas Agreement is binding on this Court, but instead is introducing that amount as evidence of amount that the Gas Agreement permits CNEG to request from the Debtors.

WHEREFORE, the CNEG respectfully requests that this Court enter an order:

1. Denying the Utility Motion as to CNEG;

2. Awarding CNEG the post-petition adequate assurance of payment pursuant to Section 366 in the amount and form satisfactory to CNEG, which is the form and amount requested herein; and

9

3. Providing such other and further relief as the Court deems just and appropriate.

Dated: August 5, 2020.

/s/ Eric T. Ray
Eric T. Ray
WALLER LANSDEN DORTCH & DAVIS, LLP
1901 Sixth Avenue North, Suite 1400
Birmingham, Alabama 35203-2623
Telephone: (205) 226-5714
Email: Eric.Ray@wallerlaw.com

-and-

Russell R. Johnson III, Esq. (*pro hac pending*)
Virginia State Bar No. 31468
John M. Craig (*pro hac pending*)
Virginia State Bar No. 32977
Law Firm of Russell R. Johnson III, PLC
2258 Wheatlands Drive
Manakin-Sabot, Virginia 23103
Phone: (804) 749-8861
Facsimile: (804) 749-8862
Email: russell@russelljohnsonlawfirm.com,
john@russelljohnsonlawfirm.com

*Co-Counsel for Constellation NewEnergy – Gas Division, LLC*

**CERTIFICATE OF SERVICE**

       I hereby certify that on August 5, 2020, a true and correct copy of the foregoing *Objection* was served via the Court's CM/ECF electronic notification system on all parties requesting same, and via email to the parties listed below:

Stephen H. Warren, Esq. swarren@omm.com
Karen Rinehart, Esq. krinehart@omm.com
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA, 90071

Derek F. Meek, Esq. dmeek@burr.com
Hanna Lahr, Esq. hlahr@burr.com
Burr & Forman LLP
420 20th Street North, Suite 3400
Birmingham, AL 35203

Richard Blythe, Esq. richard_blythe@alnba.uscourts.gov
Bankruptcy Administrator for the Northern District of Alabama
P.O. Box 3045
Decatur, AL 35602

Andreas Andromalos, Esq. aandromalos@brownrudnick.com
Tia C. Wallach, Esq. twallach@brownrudnick.com
Brown Rudnick LLP
One Financial Center
Boston MA, 02111

Jeremy Retherford, Esq. jretherford@balch.com
Balch & Bingham LLP
1901 Sixth Avenue North, Suite 1500
Birmingham, AL 35203

Kathleen LaManna, Esq. klamanna@goodwin.com
Nathan Plotkin, Esq. nplotkin@goodwin.com
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103

Donald Bernstein, Esq. donald.bernstein@davispolk.com
Joanna McDonald, Esq. joanna.mcdonald@davispolk.com
Davis, Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

Benjamin S. Goodman, Esq. bgoldman@handfirm.com
Hand Arendall Harrison Sale
1810 5th Avenue North, Suite 400
Birmingham, AL 35203

Joshua Morse, Esq. joshua.morse@pillsburylaw.com
Andrew Alfano, Esq. andrew.alfano@pillsburylaw.com
Pillsbury Winthrop Shaw Pittman LLP
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998

Daniel Sparks, Esq. ddsparks@csattorneys.com
Bill Bensinger, Esq. bdbensinger@csattorneys.com
Christian & Small LLP
505 North 20th Street, Suite 1800
Birmingham, AL 35203

/s/ Eric T. Ray
Of Counsel