# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHERN DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| REMINGTON OUTDOOR COMPANY, INC., *et al.*,[1] | Case No. 20-81688-CRJ11 |
| Debtors. | Jointly Administered |

**NOTICE OF FILING SUPPLEMENTAL DECLARATION OF BRADLEY C. MEYER IN SUPPORT OF DEBTORS' APPLICATION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING THE RETENTION AND EMPLOYMENT OF <u>DUCERA PARTNERS LLC AS INVESTMENT BANKER TO THE DEBTORS</u>**

**COME NOW,** Remington Outdoor Company, Inc. and its affiliated debtors, as debtors and debtors-in-possession in the above-captioned chapter 11 cases, by and through undersigned counsel, and submit the attached *Supplemental Declaration of Bradley C. Meyer in Support of Debtors' Application for Entry of Interim and Final Orders Authorizing the Retention and Employment of Ducera Partners LLC as Investment Banker to the Debtors*, related to Docket No. 21.

Respectfully submitted, this the 7th day of August 2020.

*/s/ Derek F. Meek*
**BURR & FORMAN LLP**
Derek F. Meek
Hanna Lahr
420 20th Street North, Suite 3400
Birmingham, AL 35203
Telephone:     (205) 251-3000
Facsimile:     (205) 458-5100

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405). The Debtors' corporate headquarters are located at 100 Electronics Boulevard SW, Huntsville, AL 35824.

43951995 v1

Email:   dmeek@burr.com
         hlahr@burr.com

- and -

**O'MELVENY & MYERS LLP**
Stephen H. Warren (admitted *pro hac vice*)
Karen Rinehart (admitted *pro hac vice*)
400 South Hope Street
Los Angeles, CA  90071-2899
Telephone:      (213) 430-6000
Facsimile:      (213) 430-6407
Email: swarren@omm.com
       krinehart@omm.com

*Attorneys for the Debtors and Debtors in Possession*

**Supplemental Declaration of Bradley C. Meyer**

43951995 v1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

|  |  |
|---|---|
| In re:<br><br>REMINGTON OUTDOOR COMPANY, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-81688-CRJ11<br><br>Jointly Administered<br><br>**Re: ECF No. 21** |

### SUPPLEMENTAL DECLARATION OF BRADLEY C. MEYER IN SUPPORT OF DEBTORS' APPLICATION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING THE RETENTION AND EMPLOYMENT OF DUCERA PARTNERS LLC AS INVESTMENT BANKER TO THE DEBTORS

I, Bradley C. Meyer, make this declaration pursuant to 28 U.S.C. § 1746 and state as follows:

1. I am a Partner at the firm of Ducera Partners LLC and a registered representative of Ducera Securities LLC (collectively, "**Ducera**"), an internationally recognized investment banking firm, which maintains its headquarters at 499 Park Avenue, 16th Floor, New York, New York 10022. Unless otherwise stated, I have personal knowledge of all facts set forth in this Declaration, and they are true and correct.

2. I am duly authorized to make this supplemental declaration (this "**Supplemental Declaration**") on behalf of Ducera and submit this Supplemental Declaration in support of the *Debtors' Application for Entry of Interim and Final Orders Authorizing the Retention and Employment of Ducera Partners LLC as Investment Banker to the Debtors*, dated July 28, 2020

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405). The Debtors' corporate headquarters are located at 100 Electronics Boulevard SW, Huntsville, AL 35824.

43949537 v1

[ECF No. 21] (the "**Application**"),[2] in which the Debtors seek entry of interim and final orders authorizing the employment of Ducera as investment banker to the Debtors pursuant to Bankruptcy Code section 327(a), Bankruptcy Rules 2014(a) and 2016, and Local Rule 2016-1 and under the terms and conditions set forth in the Application.

3.　　Except as otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would testify thereto. Certain of the disclosures set forth herein are related to matters within the knowledge of other employees of Ducera and are based on information provided by them.

## RESTRUCTURING FEE CLARIFICATION

4.　　While Ducera acknowledges that the definition of "Restructuring" under footnote 2 of the Engagement Agreement includes any "restructuring, reorganization, modification, rescheduling and/or recapitalization . . . under chapters 7 and 11 of the [Bankruptcy Code]," Ducera understands that the necessary requirements for the Restructuring Fee (as defined in footnote 2 of the Engagement Agreement) can only be attained in these cases through the confirmation of a plan of reorganization under chapter 11 of the Bankruptcy Code.

5.　　Footnote 6 of the Engagement Agreement confirms this interpretation by providing that, in the case of a Court-approved Restructuring, the Restructuring Fee is earned on "the date that the applicable Chapter 11 plan of reorganization becomes effective in accordance with the terms and conditions thereof."

6.　　To avoid any ambiguity regarding the Restructuring Fee, Ducera has agreed that the following language may be included in the proposed Final Order, attached hereto as **Exhibit A**:　"For the avoidance of doubt and notwithstanding anything to the contrary in the

---

[2]　Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

43949537 v1

Engagement Agreement, no Restructuring Fee shall be earned unless a chapter 11 plan is confirmed in these Chapter 11 Cases."

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Executed on August 7, 2020

_/s/ Bradley C. Meyer_
Bradley C. Meyer
Partner
Ducera Partners LLC
499 Park Avenue, 16th Floor
New York, New York 10022

43949537 v1

**Exhibit A**

**Proposed Final Order**

43949537 v1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| REMINGTON OUTDOOR COMPANY, INC., *et al.*,[1] | Case No. 20-81688-CRJ11 |
| Debtors. | Jointly Administered |

## FINAL ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF DUCERA PARTNERS LLC AS INVESTMENT BANKER TO THE DEBTORS

Upon the *Debtors' Application for Entry of Interim and Final Orders Authorizing the Employment and Retention of Ducera Partners LLC as Investment Banker to the Debtors* (the "**Application**")[2] filed by the above-captioned debtors and debtors in possession (the "**Debtors**") for entry of a final order (this "**Final Order**") pursuant to Bankruptcy Code section 327(a) and Bankruptcy Rules 2014(a) and 2016, and Local Bankruptcy Rule 2016-1 authorizing the Debtors to retain and employ Ducera Partners LLC ("**Ducera**"), as investment banker for the Debtors effective as of July 28, 2020 (the "**Petition Date**"), in accordance with the terms and conditions of that certain engagement letter executed on May 15, 2020, including any amendments and schedules thereto (the "**Engagement Agreement**"), attached hereto as **Exhibit 1**, all as more fully set forth in the Application; and upon consideration of the Meyer Declaration and Supplemental Declaration filed in support thereof; and upon the First Day Declaration; and it

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405). The Debtors' corporate headquarters are located at 100 Electronics Boulevard SW, Huntsville, AL 35824.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

43949537 v1

appearing that (i) the Court has jurisdiction over these Chapter 11 Cases and the Application under 28 U.S.C. §§ 1334(b) and 157, and the *Amended General Order of Reference* from the United States District Court for the Northern District of Alabama dated as of July 17, 1984, (ii) venue of these Chapter 11 Cases and the Application in this Court is proper under 28 U.S.C. §§ 1408 and 1409 and Local Bankruptcy Rule 1073-1, (iii) the Application is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Court may enter interim and final orders consistent with Article III of the United States Constitution, and (iv) notice of the Application and Final Hearing was adequate and proper under the circumstances, and no other or further notice need be given; and this Court being satisfied, based on the representations made in the Application and the Meyer Declaration, that Ducera is a "disinterested person" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and as required under section 327(a) of the Bankruptcy Code, and that Ducera represents no interest adverse to the Debtors' estates; and the Court having held a final hearing, if necessary, to consider the relief requested in the Application (the "**Final Hearing**"); and upon the record of the Final Hearing, if any; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and it appearing that the relief requested in the Application is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT:**

1. The Application is GRANTED on a final basis to the extent set forth herein.

2. In accordance with Bankruptcy Code section 327(a), the Debtors are authorized to employ and retain Ducera as their investment banker effective as of the Petition Date under the terms set forth in the Application, the Meyer Declaration, the Supplemental Declaration, and the

Case 20-81688-CRJ11    Doc 233    Filed 08/07/20    Entered 08/07/20 14:28:27    Desc
Main Document    Page 9 of 28

Engagement Agreement, including the Fee Structure and Indemnification Provisions set forth therein (as modified by this Final Order).

3.       All of Ducera's fees and expenses, as set forth in the Engagement Agreement, are approved pursuant to section 328(a) of the Bankruptcy Code and shall not be evaluated under the standard set forth in section 330 of the Bankruptcy Code, except that the Bankruptcy Administrator shall retain all rights to object to Ducera's fees under the Engagement Agreement based on the reasonableness standard provided for in section 330 of the Bankruptcy Code. Ducera's fees and expenses shall be paid in the amounts, at the times and in the manner described in the Engagement Agreement.

4.       The terms of the Engagement Agreement, as modified by this Final Order, are reasonable terms and conditions of employment and are approved.

5.       Ducera shall use reasonable efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these Chapter 11 Cases.

6.       The Indemnification Provisions set forth in the Engagement Agreement are approved, subject during the pendency of these Chapter 11 Cases to the following:

> (a)       if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these Chapter 11 Cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these Chapter 11 Cases, Ducera believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Agreement, as modified by this Final Order, including without limitation the advancement of defense costs, Ducera must file an application therefore in this Court, and the Debtors may not pay any such amounts to Ducera before the entry of an order by this Court approving such payment. This subparagraph (a) is intended only to specify the period during which the Court shall have jurisdiction over any request by Ducera for indemnification, contribution or reimbursement and is not a provision limiting the duration of the Debtors' obligation to indemnify;

> (b)       subject to the provisions of subparagraph (c) below, the Debtors are authorized to indemnify, and shall indemnify, Ducera in accordance with

Case 20-81688-CRJ11    Doc 233    Filed 08/07/20    Entered 08/07/20 14:28:27    Desc
Main Document      Page 10 of 28

the Engagement Agreement for any claim arising from related to or in connection with the services provided for, whether prepetition or post-petition, in the Engagement Agreement; and

(c)     notwithstanding any provisions of the Engagement Agreement to the contrary, the Debtors shall have no obligation to indemnify Ducera or provide contribution or reimbursement to Ducera for any claim or expense that is either (i) judicially determined to have resulted primarily from the willful misconduct, gross negligence, bad faith or self-dealing of Ducera, or (ii) settled prior to a judicial determination as to Ducera's willful misconduct, gross negligence, bad faith or self-dealing, but determined by the Court, after notice and a hearing pursuant to this subparagraph (c), to be a claim or expense for which Ducera should not receive indemnity, contribution or reimbursement under the terms of the Engagement Agreement.

7.     For the avoidance of doubt and notwithstanding anything to the contrary in the Engagement Agreement, no Restructuring Fee shall be earned unless a chapter 11 plan is confirmed in these Chapter 11 Cases.

8.     To the extent there may be any inconsistency between the terms of the Application, the Engagement Agreement, the Meyer Declaration and this Final Order, this Final Order shall govern.

9.     Notice of the Application is adequate under Bankruptcy Rule 6004(a).

10.     The Debtors are authorized to take all actions necessary to implement the relief granted in this Final Order.

11.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Final Order.

Dated: _____, 2020        _____
                                      HON. CLIFTON R. JESSUP, JR.
                                      UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**

**Ducera Engagement Agreement**

43949537 v1



**Ducera Partners LLC**
499 Park Avenue
16th Floor
New York, NY 10022

p (212) 671-9700

DuceraPartners.com

May 15, 2020

<u>**CONFIDENTIAL**</u>

Remington Outdoor Company, Inc.
870 Remington Drive
P.O. Box 700
Madison, North Carolina 27025

Attention: Ken D'Arcy, Chief Executive Officer

Ladies and Gentlemen:

This amended, restated, and superseding engagement letter (the "**Superseding Agreement**" or the "**Agreement**") confirms the understanding and agreement between Remington Outdoor Company, Inc. and Ducera Partners LLC and its affiliates including, where appropriate, Ducera Securities LLC (collectively, "**Ducera**") as set forth herein.[1]  For purposes of this Superseding Agreement, Remington Outdoor Company, Inc., including any and all affiliates and subsidiaries, shall be referred to herein collectively as, the "**Company**."  This Superseding Agreement also confirms the agreement of the Company to perform its obligations, and make applicable acknowledgements, as expressly set forth herein.

**Section 1.**    **Scope of Engagement and Services**.  During the Term (defined in **Section 8**), Ducera shall provide investment banking services to the Company, including the Board of Directors of the Company (collectively, the "**Board**"), as the case may be, relating to the services set forth herein:

(a)    *General Financial Advisory and Investment Banking Services*.  Pursuant to this Superseding Agreement, if requested by the Company or the Board, Ducera shall: (1) familiarize ourselves with the business, operations, financial condition, and capital structure of the Company; (2) assist with the development of financial data and presentations to the Company and the Board, various creditors, and other parties; (3) analyze the Company's financial liquidity and evaluate alternatives to improve such liquidity; (4) assist with the evaluation of the Company's valuation, debt capacity and alternative capital structures in light of its projected cash flow; and, (5) provide such other advisory services as are customarily provided in connection with the analysis and negotiation of any of the transactions contemplated by this Superseding Agreement including, without limitation, any testimony in support thereof.

---

[1]    The advisory services and compensation arrangements set forth in this Superseding Agreement amend, supplement, and replace the prior agreement between the Company and Ducera, dated November 22, 2019 (the "**Ducera November Engagement Letter**"), and any other agreements entered into between the Company and Ducera prior to the date hereof; *provided*, *however*, that the indemnification previously agreed to by the Company shall continue to be in full force and effect with regard to work done by Ducera under the Ducera November Engagement Letter and any other agreements entered into between the Company and Ducera prior to the date hereof.

(b)    *Restructuring Services*.[2]  If requested by the Company or the Board, Ducera shall:  (1) analyze various Restructuring scenarios and the potential impact of these scenarios on the value of the Company and the recoveries of those stakeholders impacted by the Restructuring; (2) provide strategic advice with regard to restructuring or refinancing the Company's Existing Obligations;[3] (3) provide financial advice and assistance to the Company in developing a Restructuring; (4) in connection therewith, provide financial advice and assistance to the Company in structuring any new securities to be issued under a Restructuring; (5) assist the Company and/or participate in negotiations with entities or groups affected by the Restructuring; and (6) provide any required testimony in  connection with the foregoing.

(c)    *Transaction Services*.[4]  If requested by the Company or the Board, Ducera shall:  (1) provide financial advice to the Company in structuring, evaluating and effectuating a Transaction, identify potential counterparties and, if requested, contact and solicit potential counterparties; (2) assist with the arrangement and execution of a Transaction, including identifying potential counterparties or parties in interest, assisting in the due diligence process, and negotiating the terms of any proposed Transaction; (3) provide strategic advice to the Company in

---

[2]    For purposes of this Superseding Agreement, the term "**Restructuring**" shall mean any restructuring, reorganization, modification, rescheduling and/or recapitalization (whether or not pursuant to one or more proceedings voluntarily or involuntarily commenced under chapters 7 or 11 of title 11 of the United States Code, 11 U.S.C. 101–1532 (as amended, the "**Bankruptcy Code**") or any cases converted thereto (the "**Bankruptcy Cases**" and the court having jurisdiction over such cases, the "**Bankruptcy Court**")) of the Company's Existing Obligations (as defined herein) that is achieved (other than a **Transaction** (as defined herein)) through, without limitation:  (a) a solicitation of waivers and consents from the holders of Existing Obligations; (b) rescheduling of the maturities of Existing Obligations; (c) a change in interest rates, repurchase, settlement, repayment, or forgiveness of Existing Obligations; (d) an amendment to the Existing Obligations; (e) conversion of Existing Obligations into equity; (f) an exchange offer, or an amend-and-extend involving the issuance of new loans and/or securities in exchange for Existing Obligations (excluding, for the avoidance of doubt, any general forbearance granted by holders of Existing Obligations); or, (g) the issuance of new loans and/or securities, sale or disposition of assets, sale of debt or equity securities or other interests, or other similar transaction or series of transactions.

[3]    For purposes of this Superseding Agreement, the term "**Existing Obligations**" shall mean the material outstanding indebtedness of the Company including, but not limited to, bank debt, bond debt, asset back lending facilities, term loans, credit facilities, trade claims, leases (both on and off balance sheet), pension obligations, litigation-related claims and obligations, other on and off balance sheet indebtedness, workers' compensation claims and obligations, and other liabilities.

[4]    For purposes of this Superseding Agreement, the term "**Transaction**" shall mean any transaction or series of transactions involving: (i) an acquisition, merger, consolidation or other business combination pursuant to which the business or assets of the Company are, directly or indirectly, combined with, or acquired by, another company; (ii) the acquisition, directly or indirectly, by a buyer or buyers (which term shall include a "group" of persons as defined in Section 13(d) of the Securities Exchange Act or 1934, as amended) of equity interests or options, or any combination hereof, constituting a majority of the then-outstanding stock of the Company or possessing a majority of the then-outstanding voting power of the Company ("**Voting Stock**"); (iii) any other purchase or acquisition, directly or indirectly, by a buyer or buyers or a majority of the assets or Voting Stock of the Company; or (iv) the formation of a joint venture partnership or similar entity with the Company or direct investment in the Company for the purposes of effecting a transfer of a majority of the Voting Stock of the Company to a third party, a lease of assets with or without a purchase option, a merger, consolidation or other business combination, a tender offer, or any similar transaction, including through a sale of a material portion of the Company's assets pursuant to Section 363 of the Bankruptcy Code (defined herein).

2

connection with the evaluation of, and responses to, activist shareholder action; and (4) provide any testimony in connection therewith.

(d) *Financing Services*.[5] If requested by the Company or the Board, Ducera shall: (1) provide financial advice to the Company in connection with the structure and effectuation of a Financing, identify potential Investors and, at the Company's request, contact and solicit such Investors; (2) assist with the arrangement of a Financing, including identifying potential sources of capital, assisting in the due diligence process, and negotiating the terms of any proposed Financing; and (3) provide any testimony in connection therewith; *provided*, *however*, it is understood and agreed that nothing contained herein shall constitute an express or implied commitment by Ducera to act in any capacity or to underwrite, place or purchase any financing or securities, which commitment shall only be set forth in a separate underwriting, placement agency or other appropriate agreement relating to the Financing. The Company may accept or reject any investor or any Financing in its sole discretion.

(e) *Generally*. *Notwithstanding anything contained in this Agreement to the contrary*, Ducera shall have no responsibility for designing or implementing any initiatives to improve the Company's operations, profitability, cash management or liquidity or to provide any fairness, valuation or solvency opinions or to make any independent evaluation or appraisal of any assets or liabilities of the Company or any other party. Ducera makes no representations or warranties about the Company's ability to (1) successfully improve its operations, (2) maintain or secure sufficient liquidity to operate its business, or (3) successfully complete a Restructuring, Transaction, or Financing. Ducera is retained under this Agreement solely to provide advice and services regarding the transactions contemplated by this Agreement. Ducera's engagement does not encompass providing "crisis management." The advisory services and compensation arrangements set forth in this Agreement do not encompass other investment banking services or transactions that may be undertaken by Ducera at the request of the Company or the Board, or any other specific services not set forth in this Agreement. The terms and conditions of such investment banking services, including compensation and arrangements, would be set forth in a separate written letter agreement between Ducera and the Company, as approved by the Board.

Section 2. **Compensation**. Subject to **Section 8**, in consideration of Ducera's services set forth in **Section 1**, the Company agrees to pay Ducera:

(a) For services rendered in accordance with **Section 1(a)**, a nonrefundable monthly cash fee of $150,000 (the "**Monthly Advisory Fee**") due and payable each month during the engagement, with the Monthly Advisory Fee commencing as of April 1, 2020, and each and every month thereafter until the termination of Ducera's services pursuant to this Agreement; *plus*,

(b) For services rendered in accordance with **Section 1(b)**, a restructuring fee of $3,500,000, earned and payable upon consummation of a Restructuring (the "**Restructuring**

---

[5] For purposes of this Superseding Agreement, the term "**Financing**" shall mean a private issuance, sale, or placement of the equity, equity-linked, preferred equity, including warrants or hybrid capital, convertible debt, financing instruments, obligations, or debt (including, but not limited to, revolving credit and asset backed lending facilities, and debtor-in-possession financing) of the Company with one or more lenders and/or investors, or any other type of loan, financing, debt, or rights offering (each such lender or investor, an "**Investor**").

3

**Fee**"); _provided, however,_ that no more than one Restructuring Fee shall be payable to Ducera hereunder;[6] _plus_,

(c)     For services rendered in accordance with **Section 1(c)**, a transaction fee payable upon consummation of any Transaction (the "**Transaction Fee**"). The Transaction Fee shall equal one-hundred-and-seventy five basis points (1.75%) of the Proceeds received by the Estate;[7]

(d)     For services rendered in accordance with **Section 1(d)**, a financing fee (the "**Financing Fee**"), which shall be earned upon commitment and payable upon the closing or termination of such Financing, equal to:

    (1)    1.500% of the face amount of any senior secured debt Raised by the Company including, but not limited to, debtor-in-possession Financing, revolving credit and asset backed lending facilities, and exit Financing; _provided_ that the Financing Fee shall be no less than $500,000;[8] and,

---

[6]     For purposes of this Superseding Agreement, a Restructuring shall be deemed to have been consummated upon: (a) the closing of the applicable transaction by which the Existing Obligations of the Company are to be restructured or refinanced (including, for avoidance of doubt, a payment in full of the Existing Obligations); or, (b) in the case of a Court approved Restructuring, the date that the applicable Chapter 11 plan of reorganization becomes effective in accordance with the terms and conditions thereof; _provided_, that if the Restructuring is to be completed, in whole or in part, through a pre-arranged or pre-packaged Restructuring: (i) 50% of the Restructuring Fee shall be earned and shall be payable upon obtaining support (e.g. via a term sheet, restructuring support agreement or other agreement in principle documenting they key terms of such prearranged Plan) from one or more of the Company's key creditor classes (e.g., Term Loan Lenders) that is sufficient to justify filing such pre-arranged or pre-packaged Restructuring; and (ii) the remainder of such fees shall be earned and shall be payable upon consummation of the Restructuring; _provided, further_, that in the event that Ducera is paid a Restructuring Fee in connection with a pre-arranged or pre-packaged Restructuring, and such a Restructuring is not thereafter consummated, then such fee previously paid to Ducera may be credited by the Company against any subsequent fee hereunder that becomes payable by the Company to Ducera or, if such crediting  does not equal 100% of the pre-paid portion of the Restructuring Fee, then such fee shall be returned to the Company upon the termination of the Superseding Agreement.

[7]     For purposes of this Superseding Agreement, the term "**Proceeds**" shall include any and all forms of consideration including, but not limited to: (a) all cash paid or payable to the Estate or its shareholders (or holders of executive equity awards ("**Awards**")), including indemnity and net working capital escrow amounts; (b) the fair market value of all notes, securities and other property issued or delivered or to be issued or delivered to the Estate (including holders of Awards); (c) the amount of any extraordinary dividends or distributions paid to the Estate (including Awards) in connection with or contemplated by the Transaction; and, (e) the fair market value of any debt and equity securities or other consideration (including, but not limited to, take-back paper), directly or indirectly, received by the Estate (including Awards) upon consummation of such a Transaction. ████████████████████████████

[8]     For purposes of this Agreement, the term, "**Raised**," shall mean the total amount committed by an Investor on terms acceptable to the Company and the Board, irrespective as to whether or not the Company draws any or all of the amount committed by an Investor, and whether or not the Company applies such amounts to finance any of its obligations or a transaction. _For illustrative purposes_, in connection with any revolving credit or asset backed lending facilities, all fees set forth in **Section 2** shall be calculated based on the total amount of the facility, including any letters of credit, irrespective as to whether the Company is permitted immediately to draw upon the full amount of facility, including any borrowing base, at the time of commitment.

4

> (2)        3.500% of the face amount of any unsecured debt or equity Raised by the Company in connection with a Restructuring or a Transaction.

No more than one Transaction Fee shall be payable to Ducera hereunder.

        (e)     *Notwithstanding anything else contained in this Superseding Agreement*, the Company and Ducera acknowledge and agree that (1) the Company shall be obligated to pay Ducera the greater of the Restructuring Fee and the Transaction Fee, and _not_ both a Restructuring Fee and a Transaction Fee; (2) the Financing Fee shall be credited against the Transaction Fee if, and only if, the Financing is provided by the same party as the Stalking Horse bidder or such other winning bidder; and (3) Ducera shall receive no more than the Monthly Advisory Fee, and shall not receive any Restructuring, Transaction, or Financing Fees in the event that a material portion of the Company's assets (i.e., greater than $2/3^{rd}$ of the Company's assets) are sold pursuant to Chapter 7 of the Bankruptcy Code.

        (f)     The Company and Ducera acknowledge and agree that the Company is under no obligation to consummate a Restructuring, Financing, or Transaction as set forth herein and, in the event the Company is unable or unwilling to do so, the Company and the Board will have no obligation or liability (other than the Terms and Conditions set forth in **Annex A**) to Ducera other than the payment of the Monthly Advisory Fee due up to the date of termination of this Superseding Agreement. The Company and Ducera further acknowledge and agree that:  (i) hours worked, (ii) the results achieved, and, (iii) the ultimate benefit to the Company of the work performed, in each case, in connection with this engagement, may be variable, and that the Company and Ducera have taken such factors into account in setting the fees hereunder.  To the extent further services are requested by the Company and/or the Board, the Company and Ducera agree to negotiate in good faith a reasonable scope of services and fee structure in connection with any such further services provided by Ducera, depending on the size, scope and nature of the services to be provided, as well as any discount for payments rendered in connection with the scope of services set forth in **Section 1**.

        **Section 3.**     **Expenses and Payments**.  In addition to the fees set forth in **Section 2**, the Company agrees upon request to promptly reimburse Ducera for its reasonable and documented out-of-pocket expenses, including, but not limited to, travel and transportation expenses, third party research and telecommunication expenses, printing cost, courier and other shipping and mailing cost (but excluding any expenses of Ducera's external legal counsel, absent the prior written (email to be sufficient) consent); _provided_, _however_, that the total amount of expenses shall not exceed $50,000 without the Company's prior written (email to be sufficient) approval (not to be unreasonably withheld); _provided_, _further_, that this **Section 3** shall in no way affect the Company's obligations as set forth in **Annex A** hereto.  All payments due under this Superseding Agreement (including under **Section 2** and **Section 3** hereof) shall be made in U.S. dollars in immediately available funds, free and clear of any set off, claim and applicable taxes (with appropriate gross up for any taxes withheld).

        **Section 4.**     **Information and Announcements**.

        (a)     Ducera's advice hereunder is intended solely for the benefit and use of the

5

Company and the Board (in their capacity as directors and, as applicable, officers of the Company), and such advice may not be used or relied upon for any other purpose or by any other person, including any security holder (in their capacity as such), employee or creditor of the Company. No advice rendered by Ducera, whether formal or informal, may be disclosed or described, in whole or in part, or otherwise referred to, without Ducera's prior written consent, which shall not be unreasonably withheld *except*: (i) to the Company's or the Board's other professional advisors (who may not further disclose such information or use it in any way other than in connection with the services contemplated by this Superseding Agreement, except as permitted herein); or, (ii) as Legally Required.[9]  In addition, the terms of this Superseding Agreement may not be disclosed or described, in whole or in part, without Ducera's prior written consent, which shall not be unreasonably withheld, *except*: (x) to the Company's or the Board's other professional advisors (who may not further disclose such information or use it in any way other than in connection with the services contemplated by this Superseding Agreement, except as permitted herein); (y) as Legally Required, including in connection with the filing of any retention application seeking with a bankruptcy court seeking authority for the Company to retain Ducera.  The Company shall be solely responsible for the accuracy and completeness of, and Ducera shall have no liability with respect to, any materials required to be disclosed to third parties or submitted to any regulatory authorities in connection with any services contemplated by this Superseding Agreement.

(b)     In performing its services hereunder, Ducera shall be entitled to rely without investigation upon all available information, including information supplied to it by or on behalf of the Company, any counterparty or their respective officers, directors, employees, accountants, counsel and other representatives and shall not be responsible for the accuracy or completeness of, or have any obligation to verify, the same. Ducera will not conduct any appraisal of assets or liabilities of any party to a transaction or evaluate the solvency thereof under any state or federal bankruptcy, insolvency or similar law.  The Company further represents and warrants to Ducera that, all written information made available to Ducera pursuant hereto will, to the best of the Company's knowledge, be complete and correct in all material respects and will not contain any untrue statement of material fact or omit to state a material fact necessary in order to make the statements therein, in light of the circumstances under which they were made, not misleading, unless otherwise clearly noted thereon or the materials are of such a nature as Ducera would or should have known that they were incomplete or otherwise subject to significant uncertainties and contingencies.

(c)     Ducera will keep confidential information of the Company made available to Ducera in connection with this Superseding Agreement, any advice rendered to the Company in connection with this engagement, and the terms of the Superseding Agreement, pursuant to that letter agreement between the Company and Ducera, dated February 11, 2019 (the "**Confidentiality Agreement**"). Ducera and the Company agree that the Confidentiality Agreement is still in effect as of the date of this Superseding Agreement has not previously been terminated by either party.

---

[9]     For purposes of this Superseding Agreement, the term "**Legally Required**" shall mean as requested or required by law, judicial authority, regulation, rule, legal process, governmental agency or other regulatory authority (including, without limitation, any stock exchange or self-regulatory organization), action, investigation or proceeding (including, without limitation, as part of any interrogatory, court order, subpoena, administrative proceeding, civil investigatory demand, in each case whether oral or written, or any other legal or regulatory process) or as required by the Company's certificate of incorporation, bylaws or stockholders' agreement.

6

Ducera understands and agrees that it may receive material non-public information regarding the Company in connection with its engagement and it will hold such information pursuant to the Confidentiality Agreement, and agrees to comply with all applicable securities laws in connection with any such information.

**Section 5.** **Terms and Conditions**. Because Ducera will be acting as an independent contractor to the Company in connection with this Superseding Agreement, the Company and Ducera agree to the Terms and Conditions contained in **Annex A** (the "**Terms and Conditions**"), which **Annex A** is incorporated by reference into this Superseding Agreement and is an integral part hereof.

**Section 6.** **Acknowledgements and Waivers**.

(a) The Company acknowledges and agrees that Ducera has been retained solely to act as investment banker in accordance with **Section 1** and that no fiduciary or agency relationship between the Company and Ducera has been created in respect of any of the transactions set forth herein or Ducera's engagement hereunder, regardless of whether Ducera has advised or is advising the Company on other matters. In connection with the engagement, Ducera is acting as an independent contractor, with obligations owing solely to the Company and the Board and not in any other capacity. Except as expressly contemplated by the Terms and Conditions as set forth in **Annex A**, the engagement is not intended to confer rights upon any persons not a party hereto (including security holders, employees or creditors of the Company).

(b) This Superseding Agreement shall be binding upon and inure to the benefit of the Company, Ducera and their respective successors and assigns. If any term, provision, covenant or restriction herein (including the Terms and Conditions) is held by a court of competent jurisdiction to be invalid, void or unenforceable or against public policy, the remainder of the terms, provisions and restrictions contained herein shall remain in full force and effect and shall in no way be modified or invalidated.

(c) Ducera and its affiliates and certain of their respective members, officers, managers, directors and employees, as well as certain funds in which they may have financial interests, may from time-to-time acquire, hold or make direct or indirect investments in, or otherwise finance, a wide variety of companies, including parties that may have interests with respect to the Company or any transaction or other parties involved in a transaction, from which conflicting interests or duties with respect to the Company, its directors, officers and employees may arise (any such party, a "**Conflicted Party**" and collectively, the "**Conflicted Parties**"). Ducera is not currently advising, and shall not advise, any Conflicted Party, including the parties listed on **Schedule A** hereto, in any matter related to the Company, this engagement or the transactions contemplated hereunder. Without limitation to the foregoing sentence, during the Term, Ducera will promptly (and otherwise upon the written request of the Company) inform the Board of the existence of any actual conflicts of interest that may arise after the date of this Superseding Agreement and agree to take such action as the Board may reasonably request to mitigate the effects of the circumstances described herein. The Company acknowledges and agrees that Ducera does, and may continue to, represent the Conflicted Parties in other matters unrelated to this engagement and the Company.

7

(d)     Subject to **Section 6(c)**, the Company acknowledges and agrees that Ducera and its affiliates may be engaged in a broad range of transactions involving interests that differ from those of the Company and that Ducera has no obligation to disclose such interests and transactions to the Company.  The Company waives, to the fullest extent permitted by law, any claims it may have against Ducera for breach of fiduciary duty or alleged breach of fiduciary duty and agrees that Ducera shall have no liability (whether direct or indirect) to the Company in respect of such a fiduciary duty claim or to any person asserting a fiduciary duty claim on behalf of or in right of the Company, including the Company's security holders, employees, or creditors.  The Company understands that Ducera is not undertaking to provide any legal, accounting or tax advice in connection with the engagement and that Ducera's role in any due diligence will be limited solely to performing such review as it deems advisable to support its own analysis and shall not be on behalf of or for the benefit of the Company.

(e)     To help the government fight the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify and record information that identifies each entity or person that engages Ducera's services.  Pursuant to such requirement, Ducera may from time to time request copies of documents that would be necessary to comply with the foregoing federal law.  The Company further acknowledges and agrees that, in accordance with 31 CFR § 1010.230 and to the extent applicable, to complete the Certification Regarding Beneficial Owners of Legal Entity Customers in connection with the execution of this Superseding Agreement.

Section 7.     **Governing Law; Submission to Jurisdiction; Waiver of Jury Trial**.  All aspects of the relationship created by this Superseding Agreement and any other agreements relating to Ducera's engagement, shall be governed by and construed in accordance with the laws of the State of New York, applicable to contracts made and to be performed therein and, in connection therewith, the parties hereto consent to the exclusive jurisdiction of the Supreme Court of the State of New York sitting in New York County or the United States District Court for the Southern District of New York and agree to venue in such courts.  Notwithstanding the foregoing, solely for purposes of enforcing the Company's obligations hereunder, the Company consents to personal jurisdiction, service and venue in any court proceeding in which any claim relating to or arising out of Ducera's engagement is brought by or against any Indemnified Person.  DUCERA AND THE COMPANY (ON ITS OWN BEHALF AND, TO THE MAXIMUM EXTENT PERMITTED BY LAW, ON BEHALF OF ITS SECURITY HOLDERS AND CREDITORS) EACH HEREBY AGREES TO WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM, COUNTERCLAIM OR ACTION ARISING OUT OF OR RELATING TO THIS SUPERSEDING AGREEMENT OR DUCERA'S ENGAGEMENT.

Section 8.     **Termination**.

(a)     Ducera's engagement hereunder shall commence upon the execution of this Superseding Agreement by Ducera and the Company, and will continue until the Superseding Agreement is terminated by either party hereto upon thirty (30) days' prior written notice to the other party (the "**Term**").

(b)     In the event of any termination of Ducera's engagement hereunder, any fees set forth in **Section 2** paid or due to be paid prior to termination shall remain the property of Ducera.

8

No termination of Ducera's engagement hereunder shall affect the Company's obligations pursuant to the Terms and Conditions or its obligations to reimburse Ducera for fees and expenses, payable or incurred in accordance with **Section 2** and/or **Section 3** prior to the termination of this Superseding Agreement, and the Terms and Conditions set forth in **Annex A** shall survive any termination of this Superseding Agreement.

(c)     In the event of any termination of Ducera's engagement (other than (i) by Ducera; or, (ii) by the Company based on actions taken, or failures to act, by Ducera in bad faith, willful misconduct or gross negligence which actions remain unremediated by Ducera within five (5) business days after written notice from the Company of its intention to terminate this Superseding Agreement on the basis of such actions or failure to act specifying in reasonable detail the basis for such termination, Ducera shall continue to be entitled to the full amount of the fees set forth in **Section 2** (other than the Monthly Advisory Fee) in the event that at any time prior to the expiration of Tail Period, the Company consummates a Restructuring, Transaction, or Financing;[10] *provided, however,* if Ducera has a financial advisory, investment banking, or consulting relationship with one or more Conflicted Parties in connection with the Company during the Tail Period, Ducera shall not be entitled to any fees set forth in **Section 2** (other than Monthly Advisor Fees paid prior to the termination of this Agreement).

(d)     Except as specifically provided for herein, no termination of Ducera's engagement shall affect:  (1) the Company's obligations pursuant to the Terms and Conditions as set forth in **Annex A** or its obligations to reimburse Ducera for earned fees and expenses, payable or incurred in accordance with **Section 2** and **Section 3** prior to the termination of this Superseding Agreement; (2) Ducera's obligations pursuant to **Section 4(c)**, **Section 6(d)** and the **Confidentiality Agreement**; or, (3) **Section 7**, **Section 8**, **Section 9** or **Section 10**.

Section 9.     **Bankruptcy Court Approval**.  In the event that the Company is or becomes a debtor under the Bankruptcy Code, whether voluntarily or involuntarily, the Company shall use commercially reasonable effort to seek an order authorizing Ducera's employment pursuant to the terms of this Superseding Agreement, as a professional person pursuant to, and subject to the standard of review of, Section 328(a) of the Bankruptcy Code and applicable federal and local rules and orders and not subject to any other standard of review under Section 330 of the Bankruptcy Code.  In so agreeing to Ducera's retention, the Company acknowledges that it believes that Ducera's general restructuring and liability management experience and expertise, our knowledge of the capital markets, and our merger and acquisition capabilities will inure to the benefit of the Company in pursuing any transaction, that the value to the Company of our services derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the contingent fees are reasonable regardless of the number of hours to be expended by our professionals in the performance of the services to be provided hereunder.  The Company shall submit Ducera's retention application as soon as practicable following the Company's filing under the Bankruptcy Code, or the entry of an order for relief in any involuntary case filed against the Company, and use its reasonable efforts to cause such application to be considered on the most expedited basis.  The retention application and the proposed order authorizing Ducera's employment shall be provided to Ducera as much in advance of any Bankruptcy filing as is

---

[10]     For purposes of this Superseding Agreement, the term "**Tail Period**" shall mean any time prior to the expiration of twelve (12) months after any such termination.

practicable, and must be acceptable to Ducera in its reasonable discretion. Following entry of the order authorizing Ducera's employment, the Company shall pay all reasonable and documented fees and expenses due pursuant to this Superseding Agreement, as approved by the Bankruptcy Court, as promptly as possible in accordance with the terms of this Superseding Agreement, the Bankruptcy Code and applicable rules and orders. Ducera shall have no obligation to provide services under this Superseding Agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Ducera's retention under this Superseding Agreement is approved under the Bankruptcy Code by final order of the Bankruptcy Court which is acceptable to Ducera and which approves this Superseding Agreement in all material respects. If the order authorizing Ducera's employment is not obtained, or is later reversed, modified or set aside for any reason, Ducera may terminate this Superseding Agreement.

**Section 10.    Entire Agreement; Amendments**.    This Superseding Agreement, including **Annex A**, constitutes the entire agreement between Ducera and the Company with respect to the engagement and supersedes all other oral and written representations, understandings or agreements relating to this engagement. No alteration, waiver, amendment, change or supplement hereto shall be binding or effective unless the same is set forth in writing signed by a duly authorized representative of each party.

**Section 11.    Arbitration**.  Any controversy or claim arising out of or relating to this Superseding Agreement or the transactions described herein, or the breach, termination or validity of this Superseding Agreement (including the determination of the scope or applicability of this agreement to arbitrate) (in any such case, a "**Dispute**"), will be resolved as follows:

(a)    **Efforts to Resolve**.  The parties will use reasonable efforts to resolve the Dispute through direct discussions during the thirty (30) days after a party gives the other party written notice of a Dispute.

(b)    **Procedures**.  Failing such resolution, any party can submit the Dispute to arbitration by delivering written notice to the other party. The Dispute will be finally settled by binding arbitration in The City of New York, New York, before a single arbitrator. The arbitration will be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures (or pursuant to its Streamlined Arbitration Rules and Procedures then in effect if the amount in controversy is $250,000 or less). The arbitrator will be chosen in accordance with applicable JAMS rules and procedures then in effect. Judgment upon the arbitration award may be entered by any court having jurisdiction. The arbitration award, including the determination of any amount of damages suffered by any party by reason of the acts or omissions of any other party, will be final and binding upon the parties to the maximum extent permitted by law. This section will not preclude the parties from seeking provisional or interim relief from a court of competent jurisdiction before the appointment of an arbitrator.

(c)    **Continue to Perform**.  When a Dispute occurs, and while it is under arbitration, the parties will continue to fulfill their respective obligations, and will be entitled to exercise their respective rights under this Superseding Agreement.

(d)    **Confidentiality**.  The Dispute resolution proceedings contemplated by this section (and all related claims, defenses and proceedings, including the existence of the Dispute

10

and the fact that there is an arbitration proceeding) will be kept confidential and private as permitted by law (except as necessary to enter judgment upon the award or as otherwise required by applicable law).  The parties therefore cannot disclose the existence, content or results of any proceedings conducted in accordance with this provision, and any materials submitted in connection with those proceedings will not be admissible in any other proceeding; *provided, however*, that this confidentiality provision will not prevent a petition to vacate or enforce an arbitral award, and will not bar disclosures required by the Company's certificate of incorporation, bylaws or stockholders' agreement or applicable law, rule, regulation, stock exchange listing agreement or legal process.

        (e)    **Binding Nature**.  The parties intend that this section be valid, binding, enforceable and irrevocable.

*           *           *

We are pleased to accept the engagement and look forward to working with you.  Please confirm your agreement with the foregoing (including the attached Terms and Conditions) by signing each of the enclosed copies of this Superseding Agreement and returning to us one fully signed copy.

Very truly yours,

**DUCERA PARTNERS LLC** *and, where appropriate, its affiliates, including Ducera Securities LLC*

By: _____
Name: Bradley C. Meyer
Title: Partner

Accepted, Agreed, and Effective as
of April 1, 2020:

**REMINGTON OUTDOOR COMPANY, INC.**
   *and all direct and indirect subsidiaries*

By: _____
    Name: Ken D'Arcy
    Title: Chief Executive Officer

and the fact that there is an arbitration proceeding) will be kept confidential and private as permitted by law (except as necessary to enter judgment upon the award or as otherwise required by applicable law). The parties therefore cannot disclose the existence, content or results of any proceedings conducted in accordance with this provision, and any materials submitted in connection with those proceedings will not be admissible in any other proceeding; *provided, however*, that this confidentiality provision will not prevent a petition to vacate or enforce an arbitral award, and will not bar disclosures required by the Company's certificate of incorporation, bylaws or stockholders' agreement or applicable law, rule, regulation, stock exchange listing agreement or legal process.

(e) **Binding Nature**. The parties intend that this section be valid, binding, enforceable and irrevocable.

\*        \*        \*

We are pleased to accept the engagement and look forward to working with you. Please confirm your agreement with the foregoing (including the attached Terms and Conditions) by signing each of the enclosed copies of this Superseding Agreement and returning to us one fully signed copy.

Very truly yours,

**DUCERA PARTNERS LLC** *and, where appropriate, its affiliates, including Ducera Securities LLC*

By: _____
Name: Bradley C. Meyer
Title: Partner

Accepted, Agreed, and Effective as
of April 1, 2020:

**REMINGTON OUTDOOR COMPANY, INC.**
*and all direct and indirect subsidiaries*

By: _____
Name: Ken D'Arcy
Title: Chief Executive Officer

11

# TERMS AND CONDITIONS – ANNEX A

In further consideration of the engagement of Ducera Partners LLC and its affiliates including, where appropriate, Ducera Securities LLC (collectively, "**Ducera**") to render corporate finance and other investment banking advisory services to Remington Outdoor Company, Inc. (collectively with its subsidiaries, the "**Company**") pursuant to the Superseding Agreement to which these Terms and Conditions are attached, the Company and Ducera hereby agree that these Terms and Conditions shall be incorporated by reference into the Superseding Agreement and shall form an integral part thereof. Capitalized terms used but not defined herein shall have the same meanings specified in the Superseding Agreement and any references to this Superseding Agreement or the engagement shall mean the Superseding Agreement together with these Terms and Conditions.

A. The Company agrees to indemnify and hold harmless Ducera, its affiliates, the respective members, managers, directors, officers, partners, agents and employees of Ducera and its affiliates (collectively, "**Indemnified Persons**") from and against, and the Company agrees that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or its owners, parents, affiliates, security holders or creditors (in their respective capacities as such) for, any losses, claims, expenses (including reasonable attorneys' fees), damages or liabilities (including actions or proceedings in respect thereof) (collectively, "**Losses**"):

    (1) As a result of (a) the Company's actions or failures to act (including statements or omissions made or information provided by the Company or its agents) in connection with the engagement; or (b) actions or failures to act by an Indemnified Person in connection with this engagement with the Company's consent, or otherwise in reasonable reliance on the Company's direction, actions, or failures to act in each case in connection with the engagement; or

    (2) Otherwise related to or arising out of the engagement, Ducera's performance thereof or any other services Ducera is asked to provide to the Company pursuant to this Superseding Agreement (in each case, including activities prior to the date hereof), *except* that this **Annex A(A)(1)** and **A(A)(2)** shall not apply to any Losses (nor shall the limitation of liability above apply) to the extent that they are finally determined by a court of competent jurisdiction to have resulted from the bad faith, willful misconduct, or gross negligence of an Indemnified Person.

B. If such indemnification is for any reason not available (other than connection with situations covered by the exceptions set forth in **Annex A(A)(2)**), or is insufficient to hold an Indemnified Person harmless, the Company agrees to contribute to the Losses involved in such proportion as is appropriate to reflect the Relative Economic Interests (as defined herein) of the Company, on the one hand, and of Ducera, on the other hand, with respect to the engagement; or, if such allocation is determined by a court of competent jurisdiction to be unavailable, in such proportion as is appropriate to reflect other equitable considerations such as the relative fault of the Company on the one hand, and of Ducera on the other hand; *provided*, *however*, that, to the

extent permitted by applicable law, the Indemnified Persons shall not be responsible for Losses which in the aggregate exceed the amount of all fees actually received by Ducera from the Company in connection with the engagement.

C.      The "**Relative Economic Interests**" of the Company, on the one hand, and Ducera, on the other hand, with respect to the engagement shall be deemed to be in the same proportion as (1) the total value paid or proposed to be paid or received or proposed to be received by the Company and its security holders, as the case may be, pursuant to the transaction(s) contemplated by the engagement, whether or not consummated, bears to (2) all fees actually received by Ducera in connection with the engagement. Without limiting the generality of the foregoing, in no event shall any Indemnified Person have any liability to the Company or any of its affiliates or security holders (in their respective capacities as such) for any consequential, special, exemplary or punitive damages arising out of the engagement or the performance thereof (other than such damages which the Company is required to pay to a third party).

D.      If any Indemnified Person becomes involved in any capacity in any action, claim, suit, investigation or proceeding, actual or threatened, brought by or against any person, including security holders of the Company, in connection with or as a result of the engagement, the Company also agrees to reimburse such Indemnified Persons for their reasonable and documented expenses (including, without limitation, reasonable and documented legal fees and other costs and expenses incurred in connection with investigating, preparing for and responding to third-party subpoenas or enforcing the engagement by one set of counsel and local counsel, as applicable) as such expenses are incurred; and, provided further, that such party receiving reimbursement of expenses shall return any such reimbursements in the event that a court of competent jurisdiction finally determines that indemnification is unavailable in connection with situations covered by the exceptions set forth in **Annex A(A)(2)**.

E.      Ducera shall not be liable for any settlement of any claim, action, suit, investigation or proceeding effected without its consent. The Company will not, without Ducera's prior written consent (which consent shall not be unreasonably withheld, conditioned, or delayed), settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any claim, action, suit, investigation or proceeding in respect of which it is foreseeable that indemnification may be sought hereunder, whether or not an Indemnified Person is a party thereto, unless such settlement, compromise, consent or termination includes an unconditional release of each Indemnified Person from any liabilities arising out of such claim, action, suit, investigation or proceeding. The Company will not permit any settlement or compromise to include, or consent to the entry of any judgment that includes, a statement as to, or an admission of fault, culpability or a failure to act by or on behalf of an Indemnified Person, without such Indemnified Person's prior written consent (which consent shall not be unreasonably withheld, conditioned, or delayed). The Company shall not be required to indemnify any Indemnified Person for any settlement effected without the Company's consent (which consent shall not be unreasonably withheld, conditioned or delayed).

F.      The Company's obligations pursuant to these Terms and Conditions shall inure to the benefit of any successors, assigns, heirs and personal representatives of each Indemnified Person and are in addition to any rights that each Indemnified Person may have at common law or otherwise. Prior to entering into any agreement or arrangement with respect to, or effecting, any

extraordinary transaction that is reasonably likely to impair the Company's ability to meet its current and potential future obligations pursuant to these Terms and Conditions, the Company will notify Ducera in writing thereof and, if requested by Ducera, shall use commercially reasonable efforts to arrange alternative means of providing for the obligations of the Company set forth herein upon terms and conditions reasonably satisfactory to Ducera. For the avoidance of doubt, the preceding sentence shall not trigger any further obligation on the part of the Company in any transaction in which the Company's obligations under the engagement are assumed by a successor company by operation of law, including through merger.

G.      Reasonably promptly after receipt by Ducera of notice of its involvement in any action, claim, suit, investigation or proceeding, Ducera shall, if a claim for indemnification in respect thereof is to be made against the Company under these Terms and Conditions, notify the Company of such involvement to the extent permitted by applicable laws and regulations. Failure by Ducera to so notify the Company, if permitted by applicable laws and regulations, shall relieve the Company from the obligations to indemnify or otherwise to Ducera under these Terms and Conditions only to the extent that the Company suffers actual and material prejudice as a result of such failure. The Company, following its acknowledgment of its obligation to indemnify such Indemnified Person, shall be entitled to assume the defense of any such action or proceeding with counsel reasonably satisfactory to the Indemnified Person. No Indemnified Person may settle any such action or proceeding for which indemnification is or will be sought prior to the Company having the reasonable opportunity to assume its defense. Upon assumption by the Company of the defense of any such action or proceeding, the Indemnified Person shall have the right to participate in such action or proceeding and to retain its own counsel, but the Company shall not be liable for any legal expenses of other counsel subsequently incurred by such Indemnified Person in connection with the defense thereof unless: (i) the Company has agreed in writing to pay such fees and expenses; (ii) the Company shall have failed to employ counsel reasonably satisfactory to the Indemnified Person in a timely manner; or (iii) the Indemnified Person shall have been advised by counsel that there are actual or potential conflicting interests between the Company and the Indemnified Person, including situations in which there are one or more legal defenses available to the Indemnified Person that are different from or additional to those available to the Company; _provided, however_, that the Company shall not, in connection with any one such action or proceeding or separate but substantially similar actions or proceedings arising out of the same general allegations, be liable for the fees and expenses of more than one separate firm of attorneys at any time for all Indemnified Persons including Ducera, _except_ to the extent that local counsel, in addition to its regular counsel, is required in order to effectively defend against such action or proceeding and _except_ as may be required pursuant to **Annex A(G)(iii)**.

H.      The obligations of the parties hereto pursuant to these Terms and Conditions shall survive any expiration or Term of the Superseding Agreement or Ducera's engagement hereunder.

<u>**Schedule A**</u>

**Pre-Existing Relationship Person**

Pre-Existing Relationship Person with respect to a Financing:

1.  Franklin Advisers, Inc. and its managed accounts

2.  The Cincinnati High Yield Desk of J.P. Morgan Investment Management Inc., as investment manager and authorized agent of certain discretionary accounts

3.  The Indianapolis High Yield Desk of JPMorgan Investment Management Inc., as investment manager of certain discretionary accounts

4.  Whitebox Advisors LLC