# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| REMINGTON OUTDOOR COMPANY, INC., *et al.*, | ) ) ) | Case No. 20-81688-11 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

## LIMITED OBJECTION OF THE CITY OF HUNTSVILLE, ALABAMA TO THE DEBTORS' MOTION FOR (I) AN ORDER ESTABLISHING BIDDING PROCEDURES AND GRANTING RELATED RELIEF AND (II) AN ORDER OR ORDERS APPROVING THE SALE OF THE DEBTORS' ASSETS

The City of Huntsville, Alabama (the "City") hereby submits this Limited Objection (this "Objection") to the *Debtors' Motion for (I) an Order Establishing Bidding Procedures and Granting Related Relief and (II) an Order or Orders Approving the Sale of the Debtors' Assets* [Doc. 29] (the "Motion")[1] filed by the Debtors. In support of this Objection, the City states as follows:

## BACKGROUND

1. Prior to the Petition Date, the City, the Industrial Development Board of the City of Huntsville (the "IDB") Madison County, Alabama (the "County," and together with the City and the IDB, the "Local Authorities"), and Debtor Remington Outdoor Company, Inc. ("ROC") entered into that certain Project Development Agreement dated February 27, 2014 (as assigned and amended from time to time, the "Development Agreement").

2. Debtor Remington Arms Company, LLC ("RAC") subsequently assumed all rights and obligations of ROC under the Development Agreement pursuant to that certain Assignment

---

[1] Capitalized terms not otherwise defined herein shall have the meaning attributable to them in the Motion.

and Assumption of Development Agreement dated March 5, 2014, by and between ROC, as assignor, and RAC, as assignee (the "Assignment").

3. Pursuant to the Development Agreement, the Local Authorities and the Debtors identified certain real property (the "Huntsville Project Site") with an approximately 843,715 square foot facility (the "Huntsville Facility") as a suitable location for the Debtors to renovate and equip a manufacturing facility for the Debtors (the "Huntsville Project").

4. To incentivize the Debtors to undertake the Huntsville Project, the Local Authorities financed the acquisition of the Huntsville Project Site and a portion of the costs to renovate and equip the Huntsville Facility and provided various tax abatements to ROC and RAC. Specifically, pursuant to the Development Agreement, the Local Authorities advanced the sum of $12,500,000 to or for the benefit of the Debtors, with such funds to be used by the Debtors to the pay for the costs of acquiring the Huntsville Project Site and the Huntsville Facility, and to pay for a portion of the Huntsville Project renovations.

5. To evidence the financing provided to the Debtors by the Local Authorities pursuant to the Development Agreement, RAC issued a Promissory Note executed by RAC in favor of the City dated March 6, 2014 in the principal amount of Twelve Million Five Hundred Thousand and No/100 Dollars ($12,500,000.00) (the "Note").

6. To secure ROC's and RAC's obligations under the Development Agreement and the Note, RAC executed, among other things, a Mortgage and Security Agreement in favor of the City dated March 6, 2014, and recorded in the Office of the Judge of Probate of Madison County, Alabama as Instrument No. 2014-00118250, pursuant to which RAC granted the City a first-priority lien and security interest on, without limitation, the Huntsville Project Site and Huntsville Facility (collectively, the "Collateral").

7. The Development Agreement, the Note, and the Mortgage are cross-defaulted.

8. In exchange for the Local Authorities' commitments, the ROC and RAC agreed in the Development Agreement to, among other things, reach yearly minimum hiring and wage levels at the Huntsville Facility and to repay the indebtedness due under the Note and the Mortgage.

9. ROC and RAC were in default prepetition and remain in default under the terms of the Development Agreement for, among other things, failing to satisfy the minimum employment and wage requirements at the Facility (the "Default").[2]

10. The current outstanding principal indebtedness secured by the Mortgage is $12.5 million, excluding accrued interest and other fees and charges due under the Development Agreement, the Note, and the Mortgage.

## LIMITED OBJECTION

11. The City supports the Debtors' efforts to sell substantially all of their assets, including the Huntsville Facility, on a going concern basis and does not object generally to the Debtors' Motion. However, the City does have limited objections to certain aspects of the Motion and the Bidding Procedures proposed therein. Specifically, the City objects to the Motion on a limited basis because (i) the proposed Bidding Procedures do not include the City as a Consultation Party, despite designating other secured creditors as Consultation Parties; (ii) the proposed Bidding Procedures do not acknowledge and preserve the City's right to credit bid for its Collateral, despite specifically acknowledging and preserving other secured creditors' credit bid rights; (iii) the Bidding Procedures' proposed deadline to object to the Sale is set before the Bid Deadline and, thus, does not provide the City with sufficient notice and opportunity to review and object to a proposed Sale; and (iv) the Motion does not request authorization to pay the City the obligations

---

[2] The Debtors acknowledged their defaults in their first day pleadings. *See Declaration of Ken D'Arcy in Support of Chapter 11 Petitions and First Day Pleadings of Remington Outdoor Company, Inc. and its Affiliated Debtors and Debtors-in-Possession* [Doc. 6], at ¶ 35 ("The Debtors were not in compliance with the employment goal [for the Huntsville Facility] for the annual test period most recently ended.").

secured by the Mortgage in cash at closing from the Sale proceeds, despite seeking such authorization to pay certain other secured creditors' claims.

12. First, as set out hereinabove, the City is a prepetition secured creditor with a first priority lien and security interest on the Collateral. [*See also* Doc. 6, p. 35.] However, the proposed Bidding Procedures only provide that "the lenders and agents under the Debtors' prepetition Priority Term Loan Credit Agreement, FILO Term Loan Agreement and Exit Term Loan Agreement" are "Consultation Parties" and "Bid Consultation Parties" under the Bidding Procedures. [*See* Doc. 29, p. 85.] As a substantial prepetition secured creditor of RAC, the Bidding Procedures should provide that the City, or its designee, shall also serve as a Consultation Party with respect to the Debtors' evaluation of any bids received that include the Huntsville Facility.

13. Similarly, the Bidding Procedures only provide that "the *Prepetition Secured Creditors* shall have the right, subject in all respects to the Bankruptcy Code and other applicable law and the satisfaction in cash or assumption of claims secured by senior liens, to credit bid all or any portion of their allowed secured claims at the Auction pursuant to Section 363(k) of the Bankruptcy Code or other applicable law." [*Id.* at p. 80 (emphasis added).] "Prepetition Secured Creditors" are defined in the D'Arcy Declaration and do not include the City. [*See* Doc. 6, p. 12]. As a substantial prepetition secured creditor of RAC, the City's right to credit bid at the Auction pursuant to Section 363(k) of the Bankruptcy Code should be explicitly acknowledged and preserved in the Bidding Procedures.

14. The City also objects to the Bidding Procedures because they require that the City file any objection to the Sale before the Bid Deadline. Without having the opportunity to review

any qualified Bids or Modified Purchase Agreements,[3] the City will be without sufficient information to adequately determine if a Sale Objection is necessary to enforce its rights and protect its interests. Accordingly, the deadline to file any Sale Objection should be moved after the Bid Deadline.

15. Finally, the City objects to the Motion because the Debtors have not requested authorization to pay the City's secured obligations at closing in cash from the proceeds of the Sale, despite proposing such treatment for other secured creditors. In the Motion, the Debtors request authority to pay the Priority Term Loan Obligations and the FILO Term Loan Obligations with cash proceeds from the Sale. Without explanation, the Debtors do not propose similar treatment for the City, despite acknowledging the City's first priority mortgage on the Huntsville Facility. As a first-priority secured creditor, the City is likewise entitled to payment at closing of cash proceeds from any sale of its Collateral in the amount of its allowed secured claim. The City, therefore, requests that any order approving the Motion grant the Debtors authority to pay RAC's obligations under the Note with the cash proceeds from the Sale.

## NOTICE

16. The City will provide notice of this Objection by email or via CM/ECF to (i) counsel for the Debtors, O'Melveny & Myers LLP, 400 South Hope Street, 18th Floor, Los Angeles, CA 90071, Attn: Steve Warren (swarren@omm.com) and Jennifer Taylor (jtaylor@omm.com); (ii) co-counsel for the Debtors, Burr & Forman LLP, 420 North 20th Street, Suite 3400, Birmingham, Alabama 35203, Attn: Derek Meek (dmeek@burr.com) and Hanna Lahr (hlahr@burr.com); (iii) counsel for the Restructuring Committee, Akin Gump Strauss Hauer & Feld LLP, 2300 N. Field Street, Suite 1800, Dallas, TX 75201, Attn: Sarah Schultz (sschultz@akingump.com); (iv) the

---

[3] The City notes that the definition of "Sale Objection" in the Motion appears to exclude any sale objections related to "the specific identity of any Stalking Horse Bidder, the form of any Stalking Horse APA, or the specific identity of the Successful Bidder or Backup Bidder." [Doc. 29, p. 26.]

Bankruptcy Administrator, 400 Well Street, Decatur, Alabama 35602, Attn: Richard Blythe (richard_blythe@alnba.uscourts.gov); (v) counsel to the FILO Lenders, Pillsbury Winthrop Shaw Pittman LLP, Four Embarcadero Center, 22nd Floor, San Francisco, CA 94111-5998, Attn: Joshua D. Morse (joshua.morse@pillsburylaw.com) and Andrew V. Alfano (andrew.alfano@pillsburylaw.com); (vi) counsel to Whitebox Advisors LLC, Brown Rudnick LLP, One Financial Center, Boston, Massachusetts 02111, Attn: Andreas Andromalos (aandromalos@brownrudnick.com) and Tia C. Wallach (twallach@brownrudnick.com); and (vii) all parties that have requested notice in the Debtors' bankruptcy cases.

## RESERVATION OF RIGHTS

17. The City reserves the right to join in the objections of other interested parties, to supplement or amend this Objection, and to make any additional arguments at any hearings on the Motion. The City further reserves the right to file any additional objections to the Sale or any proposed Assumption and Assignment of the Development Agreement, Note or Mortgage.

**WHEREFORE**, City respectfully requests that the Court deny approval of the Bidding Procedures as currently proposed and grant the City such other and further relief as the Court deems to be just and proper.

Dated: August 7, 2020

/s/ Jay R. Bender
Jay R. Bender
Andrew J. Shaver
**BRADLEY ARANT BOULT CUMMINGS, LLP**
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 521-8000
jbender@bradley.com
ashaver@bradley.com

*Attorneys for the City of Huntsville, Alabama*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on August 7, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties registered to receive such service:

                                      /s/ Jay R. Bender
                                      Of Counsel