## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| REMINGTON OUTDOOR COMPANY, INC. *et al.*,[1] | § § § § § | Case No. 20-81688-CRJ11 Jointly Administered |
| Debtors. | § § § § | |

## MOTION OF THE SANDY HOOK FAMILIES, PURSUANT TO 11 U.S.C. §§ 105(a) AND 1102(a)(4), TO <u>RECONSTITUTE THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS</u>

Donna L. Soto, Ian and Nicole Hockley, David C. Wheeler, Mary A. D'Avino, Mark and Jacqueline Barden, William D. Sherlach, Neil and Scarlett Lewis, Leonard Pozner and Gilles J. Rousseau (the "**Sandy Hook Families**" or the "**Families**"), by and through their undersigned counsel, hereby move (the "**Motion**") for entry of an order under sections 105(a) and 1102 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**") directing the Bankruptcy Administrator for the Northern District of Alabama to change the membership of the official committee of unsecured creditors (the "**Committee**") and appoint tort and/or wrongful death claimants such as the Sandy Hook Families to the Committee in a manner that ensures their adequate representation on the Committee. In support of the Motion, the Families cite to the Declaration of Tazewell T. Shepard IV (the "<u>Shepard Decl.</u>") attached as **Exhibit A** to the

*Objection of the Sandy Hook Families to Debtors' Motion for (I) an Order Establishing Bidding*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405) (collectively, the "**Debtors**"). The Debtors' corporate headquarters is located at 100 Electronics Blvd SW, Huntsville, Alabama 35824.

*Procedures and Granting Related Relief and (II) an Order or Orders Approving the Sale of the Debtors' Assets* [Docket No. 243].

<u>**PRELIMINARY STATEMENT**</u>

1.      The Sandy Hook Families lost their loved ones nearly eight years ago during one of the most shocking instances of gun violence in the nation's history, and they allege that the Debtors' marketing of the assault weapon used by the shooter played a role in the December 14, 2012 shooting.  The Sandy Hook Families represent a substantial creditor constituency of the Debtors, yet the Debtors have scrupulously avoided any mention of the facts or circumstances surrounding the Sandy Hook Families' claims against the Debtors, despite the fact that the viability of the Families' complaints against the Debtors was recently affirmed by the Connecticut Supreme Court—a decision as to which the United States Supreme Court denied certiorari review.

2.      The Debtors' refusal to acknowledge the existence of the Sandy Hook Families or the size and validity of their claims is no accident.  During the Debtors' prior chapter 11 case—a prepackaged case that was confirmed in forty (40) days and in which unsecured claims were unimpaired—the Sandy Hook Families were listed in the Debtors' Official Form 204 filed pursuant to Rule 1007(d) of the Federal Rules of Bankruptcy Procedure (the "**<u>Bankruptcy Rules</u>**").  *See In re Remington Outdoor Co., Inc.*, No. 18-10684 (BLS), Docket No. 1 at 14–19 (Bankr. D. Del. March 25, 2018).  What is more, when the Debtors commenced their first chapter 11 cases, the Sandy Hook Families were appealing a trial court order dismissing their complaint against the Debtors.  Since then, the Connecticut Supreme Court reversed that dismissal, affirming the viability of the Sandy Hook Families' wrongful marketing claims against the Debtors.  Thus, the Sandy Hook Families' claims against the Debtors are unquestionably stronger today than they were in 2018.  However, with the appointment of an unsecured creditors'

Case 20-81688-CRJ11    Doc 311    Filed 08/12/20    Entered 08/12/20 15:08:15    Desc
Main Document      Page 2 of 26

committee inevitable in these cases, the Debtors omitted the Sandy Hook Families' claims from their Consolidated Creditor List (as defined below).  We are left to infer that the Debtors are attempting to ensure the Families are not represented by any estate fiduciary.

3.     The Court may order that the Committee be reconstituted if "the change is necessary to ensure adequate representation of creditors."  11 U.S.C. § 1102(a)(4).  To adequately represent creditors, a committee must adequately represent the different creditor types, including those groups of creditors whose interest may conflict, as courts have consistently found that inclusion of disparate voices on a statutory creditors committee is beneficial to a debtor and its estate.

4.     Here, the Committee has no representation from any tort and/or wrongful death claimants, including the Sandy Hook Families, although such claimants comprise one of the Debtors' most substantial creditor groups.  It consists of nine (9) trade or marketing services creditors, the Arkansas Economic Development Commission, and the Pension Benefit Guarantee Corporation ("PBGC"). Therefore, the Committee does not adequately represent all creditors.  A survey of recent cases demonstrates that, in nearly every (if not every) chapter 11 case involving high-profile alleged prepetition tort and/or wrongful death actions, tort and/or wrongful death claimants are represented either on an unsecured creditors' committee or through a separate committee.  Such precedent is followed even where, as in the *Purdue* cases, the Debtors dispute their ultimate liability to the alleged victims, and where, as in the *Insys* cases, the Debtors did not list the alleged victims in their Official Form 204.  The Debtors' purposeful exclusion of the Sandy Hook Families on their Consolidated Creditor List is no reason to exclude them from being adequately and proportionately represented on the Committee in these cases.

3

5.    The Sandy Hook Families do not, by this Motion, seek to reconstitute the Committee such that it becomes a vehicle to advance their interests alone.  Rather, the Sandy Hook Families seek adequate and proportionate representation of tort and/or wrongful death claimants such as themselves, consistent with the strictures of the Bankruptcy Code.  Accordingly, and for the reasons discussed below, the Court should grant the Motion.

## JURISDICTION AND VENUE

6.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.

7.    This Court has jurisdiction over the Bidding Procedures Motion and this Objection pursuant to 28 U.S.C. §§ 157 and 1334.  This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(A), (M), (N) and (O).  Venue is proper in the Court pursuant to 28 U.S.C. § 1408 and 1409(a).  The Court may enter a final order consistent with Article III of the United States Constitution, and the Sandy Hook Families consent to entry of a final order by this Court solely with respect to this Motion.  For the avoidance of doubt, the Sandy Hook Families do not consent to the jurisdiction of this Court over any of their claims relating to the Sandy Hook Wrongful Death Action.

## RELEVANT FACTUAL BACKGROUND

### A.    The Sandy Hook Families' Actions Against Debtors

8.    On December 14, 2012, the Sandy Hook Families lost their loved ones, some as young as six years old, in a school shooting perpetrated with an AR-15 made and marketed by the Debtors.  On December 13, 2014, the Sandy Hook Families brought wrongful death claims against

4

the Debtors on behalf of those loved ones in Connecticut state court (the "**Sandy Hook Wrongful Death Action**").

9.      The Sandy Hook Families seek justice for their loved ones and seek to hold the Debtors accountable for its role in their deaths.  They allege that the Debtors promoted the use of civilian assault rifles for offensive, military-style attack missions, and that this marketing technique played a causal role in the shooting at Sandy Hook Elementary School.

10.     On March 19, 2019, the Connecticut Supreme Court held that the Sandy Hook Families' wrongful marketing claims state valid causes of action under Connecticut law and ordered that the wrongful death claims proceed to discovery and trial.  *See Soto* v. *Bushmaster Firearms Int'l, LLC*, 202 A.3d 262, 273 (Conn. 2019), *cert. denied sub nom. Remington Arms Co., LLC* v. *Soto*, 140 S. Ct. 513; (Shepard Decl. Ex. B.).  As the Connecticut Supreme Court observed, "[t]he most directly foreseeable harm associated with" the alleged wrongful marketing claims "is that innocent third parties could be shot as a result.  The decedents are the ones who got shot."  *Id.* at 291.

11.     On November 12, 2019, the United States Supreme Court denied the Debtors' petition for a writ of certiorari challenging that decision.  *See Remington Arms Co., LLC* v. *Soto*, 140 S. Ct. 513 (2019).  That same day, the Connecticut trial court presiding over the Sandy Hook Wrongful Death Action scheduled the case for a status conference on December 4, 2020.  (Shepard Decl. Ex. O).  The status conference ultimately took place on December 11, 2020.

12.     Within weeks of exhausting their avenues of appellate review and facing discovery and an eventual trial, on December 2, 2019, the Debtors began exploring strategic alternatives to sell their businesses, which ultimately led to the commencement of these cases and the Debtors' proposed sale free and clear of the Sandy Hook liabilities.  (D'Arcy Decl. ¶ 48.)

13.     There is also no question that the Committee, as it is currently constituted, has no incentive to consider the interests of tort and other wrongful death claimants such as the Sandy Hook Families.  Unlike the current members of the Committee (as defined below), who will be primarily interested in the continuation of the Debtors' businesses with as little interruption as possible, the Sandy Hook Families are focused on fully prosecuting claims against the Debtors.

14.     Not only are tort and wrongful death claimants interests in these cases unique when compared to the current Committee members, their claims are substantial.  Courts and Connecticut juries routinely award damages in the millions of dollars in cases involving the loss of human life, such as the Sandy Hook Wrongful Death Action.[2]  In such cases, damages are intended to account for lost enjoyment of life and lost earnings—in this case, across all decedents, totaling hundreds of years—and compensate for the terror, pain, and suffering these children and educators endured just prior to their deaths while a shooter armed with an AR-15 roamed their elementary school halls.

15.     Here, the Sandy Hook Families' damages may be significantly increased due to the number of victims, their ages, and the nature of the Debtors' culpability.  The Debtors surely know this—they are represented in the wrongful death cases by multiple law firms and have paid them (according only to the Debtors' filings in connection with the commencement of these cases)[3] over a million dollars in fees to defend the Sandy Hook Wrongful Death Action and filed dozens of

---

[2]     See, e.g., Regina Canty as Adm'x of the Estate of Shamaia L. Smith v. Kenneth J. Otto, Sr., No. HHD-CV07-5010481-S, 2013 Jury Verdicts LEXIS 14693 (Nov. 18, 2013) ($9,158,233 award); Ahmed Oadeh, Adm'r of the Estate of Fira Oadeh v. Maria Fagan and Kenneth Fagan, Pers. Representatives of the Estate of Timothy E. Fagan, No. CV13-6046339-S, 2016 Jury Verdicts LEXIS 5078 (Apr. 25, 2016) ($7,767,046 award); Demetria Rogers as Adm'x of the Estate of William Rogers, Jr. v. American Chair Car Servs. Inc. and Herbert Perry, No. CV03-0402592-S, 2006 Jury Verdicts LEXIS 45406 (Feb. 17, 2006) ($3,200,000 award); Rebecca Iannatuoni, Successor Adm'x of the Estate of Alan E. Jarecki, Deceased v. Catherine M. Florio, CV11-6024700-S (Conn. Super. Apr. 22, 2016) ($12,032,500 award); Morrin v. Koplin, UWY-CV11-6012598-S 373 (Conn. Super. Jan. 1, 2014) ($8,008,500 award). (Shepard Decl. Ex. F–J.)

[3]     See In re Remington Outdoor Co., Inc., Docket No. 4 at 1, No. 20-81688-CRJ11.

6

procedural and discovery motions to obstruct the progress of the case. In addition, when the Debtors commenced these chapter 11 cases, the parties had been engaged in discovery for nearly ten (10) months. They exchanged thousands of documents and the Sandy Hook Families prevailed in multiple discovery disputes. Six (6) depositions have been taken, with two (2) more scheduled (but then stayed by these bankruptcy cases) for the week of August 3, 2020. A trial date was set for September 2021. (Shepard Decl. Ex. N)

**B.** **Commencement of These Chapter 11 Cases and Appointment of the Committee**

16. On July 27, 2020 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, thereby commencing these chapter 11 cases and immediately staying the Sandy Hook Wrongful Death Action.

17. Along with their petitions, the Debtors filed a consolidated list of the forty (40) largest unsecured claims in these cases. [Docket No. 4] (the "**Consolidated Creditor List**"). The Consolidated Creditor List includes one (1) contingent and unliquidated claim (the Pension Benefit Guaranty Corp. (the "**PBGC**"); five (5) unliquidated claims (including the PBGC's), four of which arise under "Development Agreements"; and thirty-five (35) Trade, Professional Services and Marketing Services Claims ranging between approximately $151,000 and $1.83 million. The Sandy Hook Families' claims were not listed on the Consolidated Creditor List.

18. The Debtors' omission of the Sandy Hook Families' claims was no oversight. In the Debtors' 2018 bankruptcy, the Debtors included the Sandy Hook Families' in their consolidated creditor list, despite the fact that the Sandy Hook Families were, at that point, appealing the dismissal of their claims. *See In re Remington Outdoor Co., Inc.*, Docket No. 1 at 184, No. 18-10684 (BLS) (Bankr. D. Del.). Yet now, after the Sandy Hook Families successful

7

appeal restoring their claims, and with discovery proceeding and the claims set for trial, the Debtors omitted the Sandy Hook Families from their Consolidated Creditor List.

19.     There is a clear rationale for the Debtors' decision:  since the Debtors are pursuing an expedited sale of substantially all of their assets free and clear of certain claims and liabilities, it is to their advantage if they can deprive the Sandy Hook Families of a meaningful formal role in these chapter 11 cases and ensure their voices and resources are diminished while the Debtors try to jettison a notorious and potentially massive liability.

20.     On August 6, 2020, the Bankruptcy Administrator for the Northern District of Alabama (the "**Bankruptcy Administrator**") filed a notice of appointment of an official committee of unsecured creditors (the "**Committee**") [Docket No. 217].  The Committee, which the Bankruptcy Administrator acknowledged was formed based solely on the information provided by the Debtors in the Consolidated Creditor List,[4] consists of eleven (11) members, including the PBGC, who holds a contingent and unliquidated claim, the Arkansas Economic Development Commission, whose claim is unliquidated, and nine (9) creditors with Trade or Marketing Services claims ranging from approximately $214,000 to $1.8 million.

## ARGUMENT

21.     The Committee, as currently constituted, does not adequately represent the Debtors' creditors, and the Court should order the Bankruptcy Administrator to change the membership of the Committee to ensure that the Sandy Hook Families are adequately represented.

22.     Section 1102(a)(4) of the Bankruptcy Code provides that "the court may order the [Bankruptcy Administrator] to change the membership of a committee . . . if the court determines

---

[4]     *See* Aug. 6, 2020 Hr'g Tr. at 11:6–21 (stating that "what [the Bankruptcy Administrator has done] is . . . used the debtors' list of their top 40 in accordance with the court order that allowed a consolidated Committee and task our office with soliciting and forming that Committee.")

that the change is necessary to ensure adequate representation of creditors." 11 U.S.C. § 1102(a)(4). Upon a motion to reconstitute the Committee, the Court "must necessarily conduct an independent review of whether there is adequate representation by an existing committee." *See In re Enron Corp.*, 279 B.R. 671, 684 (Bankr. S.D.N.Y. 2002). Accordingly, the Court reviews the Bankruptcy Administrator's appointment of existing Committee members *de novo*. *See id.*; *In re Park W. Circle Realty, LLC*, 2010 WL 3219531, at *2 (Bankr. S.D.N.Y. Aug. 11, 2010).

23.     When determining whether to change the membership of a committee under section 1102(a)(4), courts consider the following factors:

(a)     the ability of the committee to function;
(b)     the nature of the case;
(c)     the standing and desires of the various constituencies;
(d)     the ability of creditors to participate in the case even without an official committee and the potential to recover expenses pursuant to section 503(b);
(e)     whether different classes may be treated differently under a plan and need representation;
(f)     the motivation of the movants;
(g)     the delay and additional cost of granting the motion;
(h)     the point in the proceeding when the motion is made;
(i)     the tasks the committee is to perform; and
(j)     any other relevant factors.

*See Park W.*, 2010 WL 3219531, at *2; *Dana Corp.*, 344 B.R. 35, 38 (Bankr. S.D.N.Y. 2006); *Enron*, 279 B.R. at 685.[5] No one factor is dispositive, and courts should apply the factors on a case-by-case basis. *See Dana Corp.*, 344 B.R. at 38 (citing *In re Kalvar Microfilm*, 195 B.R. 599, 601 (Bankr. D. Del. 1996)).

---

[5]     Courts use the same factors to determine whether to appoint an additional official committee under section 1102(a)(2) of the Bankruptcy Code, which also requires a finding of lack of "adequate representation." *See Park W.*, 2010 WL 3219531, n.4 ("[T]he principle and analysis with respect to 'adequate representation' [under section 1102(a)(2)] are applicable to the considerations of that term as it applies under § 1102(a)(4)."). Accordingly, courts cite interchangeably to cases interpreting both sections of the Bankruptcy Code.

9

24.    In synthesizing the above factors, courts often "employ a two-step process." *In re Residential Capital, LLC*, 480 B.R. 550, 557 (Bankr. S.D.N.Y. 2012).  First, using a subset of the above factors, courts determine whether the movant "is adequately represented by an existing committee." *Mirant Ams. Energy Mktg., L.P.* v. *Official Comm. of Unsecured Creditors of Enron Corp.*, 2003 WL 22327118, at *4 (S.D.N.Y. Oct. 10, 2003).  "If a court finds inadequate representation, it will then determine whether it should exercise its discretion under the particular circumstances of the case," using certain of the factors outlined above.  *Id.*; *see also In re Dewey & LeBoeuf LLP*, 2012 WL 5985325, at *3 (Bankr. S.D.N.Y. Nov. 29, 2012) ("First, a court determines whether the appointment of an additional committee is necessary to assure the movants are adequately represented . . . . Second, if the answer to the first question is 'yes,' then the court must decide whether it should exercise its discretion and order such appointment.").

## I.    Tort and Wrongful Death Claimants Are Not Adequately Represented on the Committee

25.    Tort and wrongful death claimants such as the Sandy Hook Families are not represented on the Committee, and neither are their interests.  Therefore, the Committee does not adequately represent the Debtors' creditors.  The Committee, as currently constituted, consists almost entirely of trade creditors and other entities whose primary source of recovery (assuming the Debtors' assets are sold in a section 363 sale) will be the purchaser's assumption of their contracts and/or the continuation of their business relationship with the purchaser of the Debtors' assets.  Tort and wrongful death claimants such as the Sandy Hook Families, however, are differently situated.  Given the nature of such claims and the likelihood that the Debtors will seek to sell their assets free and clear of any claims associated with such liabilities, such claimants' interests in these cases are materially different than the existing Committee members.  The Sandy Hook Families, for example, are not only focused the integrity of the chapter 11 process, but also

10

on ensuring that their claims against the Debtors, the Debtors' insurance policies and potentially the Debtors' directors and officers are preserved to the greatest extent possible so that the Sandy Hook Wrongful Death Action can ultimately be tried in a full and fair manner. Under these circumstances, it cannot be seriously disputed that the omission of tort and wrongful death claimants like the Sandy Hook Families from the Committee is an error that must be rectified.

26. Exclusion of claimants such as the Sandy Hook Families from the Committee also appears to be without recent precedent: in nearly every chapter 11 case involving substantial alleged tort and/or wrongful death claims, claimants have either served on the official creditors' committee, or the court or United States Trustee has constituted separate committees dedicated to representing their interests, including where the debtor disputed its liability to them, and even where the claimants were not included on the debtor's list of top unsecured creditors pursuant to Bankruptcy Rule 1007(d). *See, e.g.*, *In re TK Holdings, Inc.*, No. 17-11375 (BLS), Docket Nos. 164 & 167 (Bankr. D. Del. 2017) (appointing one committee of unsecured creditors and one committee of unsecured tort claimant creditors); *In re The Weinstein Co. Holdings LLC*, No. 18-10601 (MFW), Docket No. 122 (Bankr. D. Del. 2018) (appointing five-member unsecured creditors' committee consisting of two sexual abuse survivors); *In re USA Gymnastics*, No. 18-09108 (RLM), Docket No. 97 (Bankr. S.D. Ind. 2018) (appointing one committee of sexual abuse survivors); *In re Insys Therapeutics, Inc.*, No. 19-11292 (KG), Docket No. 88 (Bankr. D. Del. 2019) (appointing nine-member unsecured creditors' committee with five litigation claimants who asserted claims ranging from medical negligence, fraud and misrepresentation, and ***none of whom were listed in the debtors' list of top unsecured creditors pursuant to Bankruptcy Rule 1007(d)***); *In re Purdue Pharma, L.P.*, No. 19-23649 (RDD), Docket No. 131 (Bankr. S.D.N.Y. 2019) (appointing nine-member Creditors' Committee consisting of four individuals impacted by the

11

opioid crisis); *In re Imerys Talc Am., Inc.*, 19-10289 (LSS), Docket Nos. 131 & 132 (Bankr. D. Del. 2019) (appointing committee of unsecured creditors and one committee of unsecured tort claimant creditors); *In re Boy Scouts of Am.*, No. 20-10343 (LSS), Docket Nos. 141 & 142 (Bankr. D. Del. 2020) (appointing committee of unsecured creditors and one committee of unsecured tort claimant creditors).

27.     Here, leaving the Sandy Hook Families off of the Debtors' Consolidated Creditor List has thus far succeeded in marginalizing the Sandy Hook Families; the Bankruptcy Administrator constituted the Committee in admittedly sole reliance on the Consolidated Creditor List, which has the effect of depriving a significant creditor constituency of the Debtors of proper representation by an estate fiduciary.  The Debtors' conduct in this regard can and should be rectified by granting the Motion.

## A.     Adequate Representation Requires That Different Types of Creditors Have a Voice on the Committee

28.     An official creditors' committee should be representative of a debtor's different kinds of creditors.  "The formation of a creditors' committee is purposely intended to represent the necessarily different interests and concerns of the creditors it represents." *Enron*, 279 B.R. at 685 (internal quotation mark omitted).  Where, as here, the Committee simply excludes an entire significant category of the Debtors' creditors, section 1102(a)(4) of the Bankruptcy Code authorizes the Court to order the reconstitution of the Committee.

29.     Courts have articulated standards for what constitutes adequate representation.  *See In re Dow Corning Corp.*, 194 B.R. 121, 141 (Bankr. E.D. Mich. 1996), *rev'd on other grounds*, 212 B.R. 258 (E.D. Mich. 1997).  "[A]dequate representation exists through a single committee as long as the diverse interests of the various creditor groups are represented on and have participated in that committee." *In re Sharon Steel Corp.*, 100 B.R. 767, 777-78 (Bankr. W.D. Pa. 1989).

12

"What is required is adequate representation of various creditor types," and "[w]hat the Code requires is that conflicting groups of creditors have a voice through adequate representation on a Committee." *In re Hills Stores Co.*, 137 B.R. 4, 7 (Bankr. S.D.N.Y. 1992); *see also In re Ne. Dairy Co-op. Fed'n, Inc.*, 59 B.R. 531, 534 (Bankr. N.D.N.Y. 1986) ("[I]nclusion of entities with differing reorganizational aspirations often are of benefit to the debtor."). The guiding principle in nearly every case is that adequate representation requires different types of creditors—and creditors with conflicting interests in particular—on the committee. As the court noted in *Dow Corning*:

> For a particular group of creditors to be adequately represented by an existing committee, it is not necessary for the committee to be an exact reflection of that committee's designated constituents. Instead, ***adequate representation exists if the interests of that particular group of creditors have a meaningful voice on the committee in relation to their posture in the case***.

194 B.R. at 141 (emphasis added); *see also In re Garden Ridge Corp.*, 2005 WL 523129, at *3 (Bankr. D. Del. Mar. 2, 2005) ("[A]dequate representation exists through a single committee so long as the diverse interests of the various creditor groups are represented on and have participated in that committee." (internal quotation marks and citations omitted)); *In re Daig Corp.*, 17 B.R. 41, 43 (Bankr. D. Minn. 1981) (noting that creditors' committee "is purposely intended to represent the necessarily different interests and concerns of the creditors it represents" and "[t]here is simply no other entity established by the Code to guard those interests").[6]

---

[6] The various provisions of section 1102 of the Bankruptcy Code confirm that diverse interests must be represented on official committees. *See* 11 U.S.C. § 1102(b)(1) (recommending that an official committee of creditors "shall ordinarily consist of the persons, willing to serve, that hold the seven largest claims against the debtor of ***the kinds represented on such committee***," and contemplating appointment of a committee organized prepetition as the official committee "if such committee was fairly chosen and ***is representative of the different kinds of claims to be represented***") (emphasis added); *id.* § 1102(a)(2) (authorizing a court to order the appointment of additional official committees "if necessary to assure ***adequate representation*** of creditors") (emphasis added).

13

30. When the interests of "distinct" creditor groups are each represented on an official committee by "active, competent, financially sophisticated and strong-willed representatives," then the ability of such members to "adjust their differences within the framework of the existing Official Committee" will strengthen the prospect of consensual resolutions. *Sharon Steel*, 100 B.R. at 779.

**B.     The Committee Does Not Adequately Represent Tort and Wrongful Death Claimants**

31. Tort and wrongful death claims like the Sandy Hook Families' are substantial and unique, and their claims are not represented by the Committee as it is currently constituted. The size of the Sandy Hook Families' claims is demonstrated by the fact that, in their prior bankruptcy case, the Debtors listed the claims relating to the Sandy Hook Wrongful Death Action in their list of top unsecured creditors pursuant to Bankruptcy Rule 1007(d).[7] Yet, barely two years after the effective date of the Debtors' first prepackaged chapter 11 plan, having de-levered by approximately $650 million since the commencement of their first chapter 11 case, and after the Connecticut Supreme Court affirmed the validity of the Sandy Hook Wrongful Death Action, the Debtors excluded the Sandy Hook Families from the Debtors' Consolidated Creditor List. The Sandy Hook Families' claims are also unique when compared to the other Committee members' claims: unlike every other Committee member, the Sandy Hook Families' claims arise out of the Debtors' role in the mass shooting at Sandy Hook Elementary School. Put simply, it is common sense that a Committee comprised entirely of the Debtors' regular business counterparties cannot adequately represent tort and/or wrongful death claimants such as the Sandy Hook Families.

---

[7]     *See Sandy Hook Families' (1) Objection to the Debtors' List of Top 40 Unsecured Creditors and (2) Emergency Motion for a Status Conference* ¶ 9 [Docket No. 192].

32.     Courts consider the numerous factors in determining whether a creditors'
committee adequately represents a particular group of creditors, which are discussed below.  Not
surprisingly, each factor demonstrates that the Committee does not adequately represent tort and/or
wrongful death claimants such as the Sandy Hook Families.

### 1.     The Composition of the Committee

33.     Naturally, a "determination of whether there is proper balance, and thus adequate
representation, on a committee requires an awareness of the committee's composition."  *Dow
Corning*, 194 B.R. at 142; *see also In re Drexel Burnham Lambert Grp., Inc.*, 118 B.R. 209, 212
(Bankr. S.D.N.Y. 1990) ("The standard of adequate representation, however, lies not in the
uniqueness of a single claim but 'in the nature of the case and the composition of the committee.'").
The Bankruptcy Code does not "mandate [that] a committee must faithfully reproduce the exact
complexion of the creditor body"; what "is required is adequate representation of various creditor
types."  *Hills Stores*, 137 B.R. at 6-7; *see also Park W.*, 2010 WL 3219531, at *4 ("Although
committees do not necessarily need to reflect the precise composition of the creditor body,
committees should adequately represent the various creditor types.").   Thus, the aim of the
Bankruptcy Administrator (and, if necessary, the Court) is to "strike a proper balance."  *Mirant*,
2003 WL 22327118, at *6 (internal quotation marks and citations omitted); *Enron*, 279 B.R. at
690.

34.     Here, the Committee does not include ***any*** tort or wrongful death claimants like the
Sandy Hook Families—who the Debtors have previously acknowledged are among their most
significant unsecured creditors.  Moreover, as discussed above, the Committee is currently made
up of creditors who are likely to be primarily interested in a continuing business relationship with
the purchaser of the Debtors' assets, as well as the PBGC, which may not have any claim at all in

15

these cases. Far from being balanced and representative of the Debtors' different types of creditors, the Committee represents solely the interests of those creditors that are most likely to receive favored treatment.

35.     Nor does the Committee even come close to "strik[ing] a proper balance." *Mirant*, 2003 WL 22327118, at *64. Neither the Sandy Hook Families nor any other tort and/or wrongful death claimants are represented at all on the Committee, yet their claims are substantial and are also of an entirely different nature than the claims of existing Committee members. The discrepancy between tort and wrongful death claims and the claims of the Committee members is exactly why, in almost every other chapter 11 cases involving serious pre-petition misconduct, victims have either served on an official creditors' committee or on a separate committee dedicated to representing victims' interests.

36.     Absent adequate representation of the Sandy Hook Families, the Committee cannot speak for all types of the Debtors' creditors; rather, it can speak only for those favored creditors the Debtors decided to list on their Consolidated Creditors List and who were selected to serve on the Committee.

## 2.     Whether Different Classes Will Be Treated Differently Under Plan

37.     The "chief concern of adequacy of representation is whether it appears that different classes of debt may be treated differently under a plan." *Dow Corning*, 194 B.R. at 145 (citing *Drexel Burnham*, 118 B.R. at 212). This concern is connected to the role that a creditors' committee often plays in assisting the formulation of a plan of reorganization: if unsecured creditors will be placed in different classes, then it is imperative that the creditors' committee be attuned to the different interests of those classes. *Id.*

16

38.     This "chief concern" is critically important in these cases and strongly supports

including tort and/or wrongful death claimants such as the Sandy Hook Families on the Committee.

As discussed above, the Committee currently consists of creditors whose primary interest is in

seeing their prepetition trade claims paid and/or in seeing the purchaser assume their contracts or

continue a business relationship with them.   To the extent the Committee is involved in

negotiations around a 363 sale and/or chapter 11 plan, its lack of any of tort and/or wrongful death

claimants will render it unable to adequately take their interests into account.  The *Dow Corning*

court's statement in ordering physician creditors be added to the creditors committee applies with

equal force here:  "since the posture of the physicians is so different from the other non-tort

unsecured creditors, it is likely that any plan will treat the claims differently.  ***The [creditors'***

***committee] is in no position to negotiate for the physicians' special treatment***."  194 B.R. at 145

(emphasis added).

39.     Without representation of tort and/or wrongful death claimants such as the Sandy

Hook Families on the Committee, the Committee will be unable to engage in sale and/or plan

negotiations in a manner that adequately represents all unsecured creditors, including tort and

wrongful death claimants.

### 3.     The Standing and Desires of the Various Constituencies[8]

40.     Although they share certain common overlapping interests, such as maximizing

value, the Debtors' creditor constituencies have different interests and desires.  The Sandy Hook

Families' primary goals are to ensure the Debtors are held to account for their role in the deaths of

---

[8]     Some courts interpret this factor as requiring an evaluation of the differing interests of creditors, *see Dana*, 344
B.R. at 39, while other courts perform a more perfunctory review of whether the creditors have standing and
whether other creditors support or oppose the relief sought, *see Park W.*, 2010 WL 3219531, at *2.  Since the
Debtors have previously acknowledged the significance of the Sandy Hook Families' claims in their previous
chapter 11 filings, there is no principled basis for them to support excluding all Sandy Hook Families from serving
on the Committee.

17

their loved ones.  That objective, of course, is entirely consistent with the primary objective of any creditors' committee, as it is accomplished by ensuring these cases are conducted in an honest, transparent and fair manner that respects the various rights all of the Debtors' differing stakeholders, including tort and wrongful death claimants.  As discussed, while the Sandy Hook Families' interests may diverge from the interests of the Debtors' "ordinary course" creditors in certain regards, that potential conflict is not a basis to exclude them from the Committee.  To the contrary, competing interests are to be expected on any creditors' committee and the inclusion of differing perspectives on one committee is a benefit, not a hindrance.  "As in most Chapter 11 cases, there will be common interests among various groups of unsecured creditors.  The inclusion of such groups within one committee may facilitate the consensual resolution of the conflicting priorities among the holders of unsecured claims and thereby facilitate the negotiation of a consensual plan."  *Hills Stores*, 137 B.R. at 7; *see also Garden Ridge*, 2005 WL 523129, at *4 ("A committee of unsecured creditors often consists of creditors with a variety of viewpoints, and thus conflicts are not uncommon, especially when creditors are acting individually to protect their separate business interests.").

### 4. The Nature of the Case

41.    Courts evaluating the nature of the case often consider the size of the creditor requesting relief relative to the overall composition of the creditor body.  *See, e.g.*, *Park W.*, 2010 WL 3219531, at *3 (noting the "size of Constantine Cannon's claim relative to the claims of other unsecured creditors in these cases"); *In re Budd Co.*, 512 B.R. 910, 913 (Bankr. N.D. Ill. 2014) (comparing size of asbestos-related claims to total liabilities of debtor).  The Debtors have stated they omitted the Sandy Hook Families' claims from the Consolidated Creditor List because the Families only sought damages in excess of  $15,000 in the Sandy Hook Wrongful Death Action,

18

claiming "that does not rise to the level of listing them on the top 40 unsecured creditor list." Aug. 6, 2020 Hr'g Tr. at 9:4–21.

42.     The Debtors' stated rationale for why they omitted the Families from their Consolidated Creditor List does not hold up to even modest scrutiny. As the Debtors and their counsel are well aware, the Families' allegation of damages is purely jurisdictional in nature, and it has nothing to do with the Families' actual belief as to the Debtors' liability stemming from their role in the mass shooting at Sandy Hook Elementary School.[9] The Debtors' actions in their prior chapter 11 cases completely undermine their stated rationale. As previously explained, the Debtors listed the Sandy Hook Families among their largest unsecured creditors, despite the complaint that was operative at the time having the same jurisdictional allegations as to damages. (Shepard Decl. Ex. L). What's more, the Sandy Hook Families' claims have become stronger since then, as their viability has been affirmed by the Connecticut Supreme Court. (Shepard Decl. Ex. B). Without a coherent reason for omitting the Sandy Hook Families from their Consolidated Creditor List, the rational conclusion is that the Debtors' omission was motivated by an effort to minimize the Sandy Hook Families' ability to participate in these chapter 11 cases.

43.     Courts also consider the circumstances surrounding a debtor's filing for bankruptcy when evaluating whether creditor representation is adequate. As discussed above, it is reasonable to infer, based on the Debtors' conduct in their prior chapter 11 cases and based on the progress the Families made in prosecuting the Sandy Hook Wrongful Death Action, that the Sandy Hook Wrongful Death Action was a significant factor in the Debtors' decision to commence these chapter 11 cases. It is also reasonable to conclude that the cost and expense of litigating the Sandy

---

[9]     If the Debtors actually believed the Families were only seeking approximately $15,000 per family, there would be no rational way to justify the vast sums of money the Debtors have spent defending the Sandy Hook Wrongful Death Action.

19

Hook Wrongful Death Action, and liability in connection therewith, was a motivating factor behind the Debtors' proposed section 363 sale process.

44.     As discussed above, the Debtors began exploring their strategic alternatives shortly after the Connecticut Supreme Court ruled that the Sandy Hook Wrongful Death Action must proceed.  (D'Arcy Decl. ¶ 47).  And when the Debtors commenced these Chapter 11 Cases, the parties had been engaged in discovery for nearly ten (10) months.  During that time, they had exchanged thousands of documents and the Sandy Hook Families prevailed in multiple discovery disputes.  Six (6) depositions had been taken, and two (2) more were scheduled for the week of August 3, 2020.  A trial date was set for September 2021.  (Shepard Decl. Ex. N).  While the Debtors' "first day" pleadings steadfastly avoid any mention of the Sandy Hook Wrongful Death Action, despite listing them among the Debtors' most significant unsecured creditors in their prior chapter 11 cases, that omission cannot negate the inference that the Sandy Hook Wrongful Death Action was a significant factor in motivating them to commence these cases, and potentially in shaping the Debtors chapter 11 strategy.[10]   Unlike the Debtors, the Court and the Bankruptcy Administrator should not ignore claimants like the Sandy Hook Families, but should give them the opportunity to fully participate in this process with the benefits afforded by representation on the Committee.

### 5.     The Ability of the Committee to Function Properly and Tasks the Committee is to Perform

45.     "The final factor to consider when determining whether a committee is adequately representative is the ability of the committee to properly perform its functions.  The word

---

[10]   See Scott Cohn, *Gun Maker Remington Files for Bankruptcy for the Second Time*, CNBC (Jul. 28 2020, 10:32 A.M.)  https://www.cnbc.com/2020/07/28/gun-maker-remington-files-for-bankruptcy-for-the-second-time.html; Gillian Friedman, *One of America's Oldest Gun Makers files for Bankruptcy for 2nd Time*, New York Times (Jul. 28, 2020) https://www.nytimes.com/2020/07/28/business/remington-bankruptcy-guns.html.

'function' obviously refers to the committee's role in a chapter 11 proceeding as set forth in § 1103(c)." *Dow Corning*, 194 B.R. at 142. In light of the role the Committee might play in these cases, its current composition will hinder its ability to function properly. For example, the Committee will inevitably seek to play a significant role in the Debtors' proposed sale process and in formulating and negotiating a chapter 11 plan, and its current composition impairs its ability to properly function for the benefit of all significant unsecured creditors in either posture.

46.     In connection with a potential sale, the current members of the Committee will be focused almost entirely on ensuring their relationships continue with the purchaser of the Debtors' assets, and potentially that the purchaser assumes their ordinary course business-related liabilities, such as the PBGC's. Similarly, under a chapter 11 plan, the Committee will be focused on maximizing the recovery to unsecured creditors in absolute dollars. Tort and wrongful death claimants, however, have concerns that are much different and more expansive. They will be focused on ensuring the cases are conducted transparently and fairly; on ensuring any purchaser of the Debtors' assets assumes the Debtors' accountability in connection with their underlying tort or wrongful death actions, or that adequate provision is made to ensure that the Sandy Hook Wrongful Death Action, among others, is litigated to conclusion. They will also be focused on ensuring the scope of the release and exculpation clauses are narrow in connection with a plan, and on ensuring that the Debtors' insurance coverage is available to satisfy liabilities arising out of their claims. As it is currently constituted, the Committee shares none of these concerns, and there is no reason to think they will do anything to advance tort or wrongful death claimants' interests unless they are actually represented on the Committee.

47.     Finally, even if the Committee is "functioning" as currently constituted, that does not demonstrate that the Committee is adequately representing tort or wrongful death claimants.

21

The problem is that a committee may function just fine, reaching consensus on all issues, and still not adequately represent a particular group of creditors. ***This can occur, for instance, if the committee is so dominated by one group of creditors that a separate group has virtually no say in the decision-making process***. Consequently, courts look to see whether conflicts of interest on the committee ***effectively disenfranchise*** particular groups of creditors.

*Enron*, 279 B.R. at 686 (emphasis added) (internal quotation marks omitted); *Dow Corning*, 194 B.R. at 142 (same); *see also Park W.*, 2010 WL 3219531, at *3 ("[A] functioning committee, alone, does not necessarily ensure that all creditors groups are adequately represented."). Tort and wrongful death claimants do not have any say in the decision-making process of the Committee and are not adequately represented by the Committee.

## II.   The Court Should Exercise Its Discretion to Reconstitute the Committee to Include Substantial Tort and Wrongful Death Claimant Participation

48.     "If a court finds inadequate representation, it will then determine whether it should exercise its discretion under the particular circumstances of the case."  *Mirant*, 2003 WL 22327118, at *4.  To determine whether, upon a finding of inadequate representation, a court should exercise its discretion to reconstitute a committee, courts consider the following factors, each of which supports granting tort and other wrongful death claimants representation on the Committee.

49.     *First*, delay and additional cost to reconstitute the Committee will be *de minimis*. The Committee was formed [less than one week] ago—on August 6, 2020, and has only recently hired advisers.  Because these cases were so recently commenced and the Committee so recently formed, there will be no delay or additional cost.  As previously described, the Sandy Hook Families have been engaged in lengthy and hard-fought litigation with the Debtors for years.  They are familiar with the Debtors' business, their practices and their state of affairs.  It is thus possible

22

to reconstitute the Committee with members that are very familiar with these cases and will therefore expedite the Committee's work. *See Park W.*, 2010 WL 3219531, at *4 (finding that creditor's knowledge of the debtor's business would benefit the committee).

50.     *Second*, the Sandy Hook Families can participate in these cases in their own right, but the Debtors' behavior to date demonstrates their complete unwillingness to engage meaningfully with the Sandy Hook Families unless they are forced to do so. To date, the Sandy Hook Families are receiving *pro bono* counsel in these chapter 11 cases; their ability to obtain *pro bono* legal services cannot justify excluding them from membership on the Committee. Including them as members on the Committee will break this logjam and force the Debtors and other parties in interest to finally recognize that one of the largest (if not the largest) creditor constituency of a manufacturer of assault weapons is a group of tort and wrongful death claimants.

51.     *Third*, the Sandy Hook Families seek to reconstitute the Committee so that it can function in a manner that is consistent with that which is intended by the Bankruptcy Code. A Committee that reflects the views of different types of creditors will be better able to function and better motivated to maximize the assets available for distribution. *See Garden Ridge*, 2005 WL 523129, at *3 ("The chief purpose of an official committee is to maximize distribution to this class."). The Sandy Hook Families' significant economic interest in these cases will ensure they invest significant time and resources into assisting the Committee in fulfilling its statutory duties. *See Park W.*, 2010 WL 3219531, at *4 ("[W]ith such a substantial claim, [creditor] has a greater incentive to invest time and effort to make a positive contribution to the Committee.").

## III.     The Court Should, in the Alternative, Appoint an Additional Committee of Tort Claimants Under Section 1102(a)(2) of the Bankruptcy Code

52.     If the Court finds that the tort and/or wrongful death claimants like the Sandy Hook Families are not adequately represented by the Committee but should not be appointed as members

23

of the Committee, the Sandy Hook Families respectfully request that the Court follow the precedent set by the bankruptcy courts in the *Takata*, *USA Gymnastics*, *Purdue*, *Imerys*, and *Boy Scouts* chapter 11 cases and appoint a separate official committee of tort claimants pursuant to section 1102(a)(2) of the Bankruptcy Code. Section 1102(a)(2) of the Bankruptcy Code provides that "[o]n request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary ***to assure adequate representation of creditors*** . . . ." 11 U.S.C. § 1102(a)(2) (emphasis added). The standard to appoint an additional committee under section 1102(a)(2) is the same as the standard for reconstituting an existing committee under section 1102(a)(4). *Park W.*, 2010 WL 3219531, n.6.

## <u>CONCLUSION</u>

53. For the foregoing reasons, the Sandy Hook Families respectfully requests that the Court enter an order, substantially in the form attached hereto as <u>Exhibit A</u>, (a) directing the Bankruptcy Administrator to change the membership of the Committee pursuant to sections 105(a) and 1102(a)(4) of the Bankruptcy Code and appoint tort claimants to the Committee in a manner that is commensurate to their interests in these chapter 11 cases and that ensures adequate representation of Sandy Hook Families on the Committee, (b) in the alternative, appointing an additional official committee of tort claimants pursuant to sections 105(a) and 1102(a)(2) of the Bankruptcy Code, and (c) granting such other and further relief as this Court deems fair and just.

24

Dated:  August 7, 2020
        Huntsville, Alabama

Respectfully submitted,

By: /s/ Tazewell T. Shepard IV
Tazewell T. Shepard III
Tazewell T. Shepard IV
State Bar No. 24004246
**SPARKMAN, SHEPARD & MORRIS, P.C.**
P.O. Box 19045
Huntsville, AL 35804
Tel: (256) 512-9924
ty@ssmattorneys.com

**KOSKOFF KOSKOFF & BIEDER**
Joshua Koskoff (admitted *pro hac vice*)
Alinor Sterling (admitted *pro hac vice*)
Jeffrey Wisner (admitted *pro hac vice*)
350 Fairfield Avenue
Bridgeport, CT 06604
Tel: (203) 336-4421
jkoskoff@koskoff.com

- and -

**SELENDY & GAY PLLC**
Faith Gay (admitted *pro hac vice*)
1290 Avenue of the Americas,
New York, NY 10104
Tel. (212) 390-9000
fgay@selendygay.com

*Counsel for the Sandy Hook Families*

25

## <u>CERTIFICATE OF SERVICE</u>

       This is to certify that I have this the 12th day of August, 2020 served the foregoing pleading upon the Debtor's 40 largest unsecured creditors, all counsel of record requesting notice, all other persons requesting notice, and the Office of the Bankruptcy Administrator by electronic service through the Court's CM/ECF system and/or by placing a copy of same in the United States Mail, postage pre-paid.

*/s/ Tazewell T. Shepard IV*
Tazewell T. Shepard IV

Case 20-81688-CRJ11    Doc 311    Filed 08/12/20    Entered 08/12/20 15:08:15    Desc
Main Document        Page 26 of 26