## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| REMINGTON OUTDOOR COMPANY, INC., *et. al.*, | : | Case No. 20-81688-11 |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |

**LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF REMINGTON OUTDOOR COMPANY, INC. ET. AL. TO DEBTORS' MOTION FOR (I) AN ORDER ESTABLISHING BIDDING PROCEDURES AND RELATED RELIEF AND (II) AN ORDER OR ORDERS APPROVING THE SALE OF THE DEBTORS' ASSETS**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned chapter 11 cases of Remington Outdoor Company, Inc. and its twelve (12) affiliated debtors (collectively, the "Debtors"), by and through its proposed undersigned counsel, hereby submits this limited objection (the "Objection") to the Debtors' Motion for (I) an Order establishing Bidding Procedures and Related Relief and (II) and Order or Orders Approving the Sale of the Debtors' Assets [Docket No. 29] (the "Bid Procedures Motion"). In support of this Objection, the Committee respectfully states as follows:

### I.    PRELIMINARY STATEMENT

1.    The Committee's paramount goal in these chapter 11 cases is to safeguard the rights of the unsecured creditors and ensure a fair process towards maximizing the value of all the Debtors' assets, not solely for the secured lenders, but for all creditor constituents. The Committee does not believe that a sale of a complex company at a breakneck speed being dictated by the secured lenders at this early stage of the case is in the best interest of all parties. At this time, the

Committee cannot support the expedited procedures sought in the Bid Procedures Motion without the opportunity to complete its own diligence. There is no urgency demanding that the sale process be run on such a short timeframe—there is no stalking horse that the Debtors risk losing without immediate procedures in place nor are the Debtors precluded from trying to market the assets in the absence of approved bid procedures. The Committee is fully committed to continuing to work with the Debtors and their advisors to maximize the value for all creditors.

## II. JURISDICTION

2. This Court has jurisdiction to consider this Objection pursuant to 28 U.S.C. §§ 1334 and 157(b). This is a core proceeding pursuant to 28 U.S.C. §§157(b). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The Committee has standing to bring this Objection pursuant to §1109(b) of title 11 of the United States Code.

## III. BACKGROUND

### A. General Background

4. On July 27, 2020 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases")[Doc. No. 1]. The Debtors are operating their businesses and managing their financial affairs as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner in the Chapter 11 Cases. On July 30, 2020, this Court entered an Order (I) Directing Joint Administration of Related Chapter 11 Cases and (II) Granted Relating Relief [Doc. No. 89].

5. On July 28, 2020, the Debtors filed their Bid Procedures Motion [Docket No. 29] seeking approval of certain procedures relating to the sale of substantially all of the Debtors' assets.

6. On August 6, 2020, the Bankruptcy Administrator for the Northern District of Alabama (the "Bankruptcy Administrator") appointed the Committee pursuant to Bankruptcy Code § 1102(a)(1) [Doc. No. 217]. The Committee is comprised of eleven (11) members: (a) Pension Benefit Guaranty Corporation; (b) Arkansas Economic Development Commission; (c) Safari Classics Productions; (d) Qiqihar Hawk Industries Co., Ltd.; (e) Dasan USA, Inc.; (f) Die-Namic Inc.; (g) G&R Manufacturing; (h) Amark Engineering & Mfg., Inc.; (i) Art Guild of Philadelphia, Inc., dba Art Guild Inc.; (j) A.M. Castle & Co., dba Castle Metals; and (k) St. Marks Powder, Inc.

7. On August 7, 2020 (the "Retention Date"), the Committee selected Fox Rothschild as its lead counsel and Baker, Donelson, Bearman, Caldwell, and Berkowitz, PC. ("Baker Donelson") as its co-counsel in the Chapter 11 Cases.

8. On August 9, 2020, the Debtors granted the Committee an extension of time to review and respond to the Bid Procedures Motion and extended the deadline to file an objection to August 13, 2020, 12:00 p.m. CT. Since that extension was granted, counsel to the Debtor and the Committee have been attempting to reach a resolution with respect to the terms of the Bid Procedures Motion.

9. A number of the concerns of the Committee have been resolved through these discussions, including the following: a) the Committee will be a Consultation Party and a Bid Consultation Party; b) the Committee will be given a copy of the Form APA to review; and c) the Committee will have the opportunity to object to the designation of a stalking horse purchaser, including the opportunity to object to the Breakup Fee and the Expenses.

10. Unfortunately, however, the Committee's primary concerns related to the break neck pace of the sale process have not been alleviated. The Debtors and their lenders have

3

4844-0304-3783v2

Case 20-81688-CRJ11    Doc 321    Filed 08/13/20    Entered 08/13/20 11:46:55    Desc
Main Document    Page 3 of 9

proposed an abbreviated schedule to sell substantially all of the Debtors' assets – including a non-binding indication of interest by August 21st (in 8 days), a bid deadline by September 1st (in only 19 days), and a process intended to sell assets that are not yet even the subject of an APA by September 10, 2020, less than one month from now. These tight time frames may inadvertently discourage bidders from participating thereby reducing the opportunity to maximize value to the estate.

### B. Sale Process

11. For several months in early 2020, the Debtors were locked in negotiations with one primary potential purchaser who walked away from the opportunity after lengthy negotiations. It was not until May 2020 that the Restructuring Committee instructed the investment bankers to conduct a further outreach for interested purchasers. *Bid Procedures Motion,* ¶ 24-25.

12. The Bid Procedures Motion fails to provide detail concerning the marketing process performed prepetition or the parties who have expressed an interest in Debtors' assets, including when the buyer outreach concluded, the number of potential buyers contacted pre-petition and when potential buyers began diligence in earnest. Therefore, it is difficult to gauge what the appropriate length of the sale process should be.[1]

13. It appears from the relatively limited information that the Committee and its advisors have obtained, that since buyer outreach began in May 2020, the Debtors have contact more than 300 parties to gauge their interest in the Company. The Debtors are currently involved in active dialogue with as many as seventy-seven (77) different potential purchasers who are

---

[1] The Committee's Financial Advisor was just recently provided a very high-level buyer contact log, but this report still does not provide adequate visibility to allow the committee to evaluate the adequacy of the Debtors' efforts to market the companies.

4844-0304-3783v2

interested in various permutations of the Company's assets, certain of which only entered the process after the Petition Date. Working with a large bidder universe like this would increase the likelihood of constraints around information flow and access to management, its advisors and the Company's facilities. In addition to the sheer size of the potential bidder universe, there are other factors complicating the potential buyers' ability to evaluate the assets, including the need for buyers to conduct carve-out analyses, contemplate licensing arrangements for IP that is shared across the Debtors' various divisions, and to negotiate potential transition services agreements.

14. The Committee has come to understand that in some instances, buyers are only interested in portions of a particular division (as opposed to the entire piece of the business). This is the case for both the firearms and ammunition components where interest is brand specific. Further there are liquidators for all or parts of the business.

15. The potential process of evaluating bids on various combinations of subsets of assets, brands, division, and individual assets will be extraordinarily complex. And it seems unlikely that the Debtors could effectively negotiate with so many potential buyers on such a truncated timeframe.

16. The Committee would also like to know whether the proposed rapid sale process discouraged prospective international buyers from the process. The Committee is concerned that the requested timing of this sale process may limit the ability of potential purchasers to fully formulate value-maximizing bids, or to formulate bids at all.

17. To be clear, the Committee is not opposed to the Debtors' request to sell substantially all of its assets free and clear of liens, claims and encumbrances. But it does have significant concerns about the truncated timeline that would be employed for the bidding procedures, the Auction and the Sale Closing and consequently presents this limited Objection.

## IV. LIMITED OBJECTION

### A. The Sale Process Should be Extended for Thirty Days.

18. As a general matter, section 363 sales held on an expedited basis are disfavored. Courts are "extremely concerned by this time-trap," which is "inconsistent with the Code, due process of law, the exercise of the courts authority and simple common sense." *In re Bombay Co., Inc.*, No. 07-44084-rfn-11, 2007 WL 2826071, at *3 (Bankr. N.D. Tex. Sept. 26, 2007). Thus, "[a]t a minimum, if section 363(b)(1) is the means for effecting the debtor's disposition, the creditors should have the luxury of enough time for their representative to assess fully the proposed transactions." *Id*. at *4; *see also In re Braniff Airways, Inc.*, 700 F.2d 935, 940 (5th Cir. 1983) ("The debtor and the Bankruptcy Court should not be able to short circuit the requirements of Chapter 11 for confirmation of a reorganization plan by establishing the terms of the plan *sub rosa* in connection with a sale of assets."); *In re Humboldt Creamery, LLC*, No. 09-11078, 2009 WL 2820610, at *2 (Bankr. N.D. Cal. Aug. 14, 2009)(stating that, in expedited §363 sales, "the judge is reduced to a figurehead without any meaningful discretion and might as well leave his or her signature stamp with the debtor's counsel and go on vacation or shift attention to consumer cases where the law may still mean something"); *In re Gulf Coast Oil Corp.*, 404 B.R. 407, 420-21 (Bankr. S.D. Tex. 2009) (discussing §363 sales and stating that "[t]he lack of transparency, the pace of the process, and the inconsistent treatment by the courts . . . leave the bankruptcy courts and parties in interest vulnerable to unfair dealing, abuse, and sweetheart deals") (internal citations omitted).

19. Common sense suggests that allowing a reasonable time for a deliberate, unrushed sales process has the highest likelihood of resulting in a sale that would benefit all creditors, not just the secured lenders.

4844-0304-3783v2

20. While the Debtors may assert that a truncated time period is necessary for the sale process given its limited cash resources, the secured creditors have already agreed to a sale process in bankruptcy. As such, the secured creditors must understand that, in order to receive the extraordinary protections afforded by sales in bankruptcy proceedings; it must "pay the freight." *See Encore Health Assoc.*, 312 B.R. 52, 57, n. 10 (Bankr. E.D. Penn. 2004)("most secured creditors understand the necessity of making some distribution available to other creditors as the price of a court approved sale.").

21. Moreover, it is illusory for the Debtor and the secured creditors to argue lack of cash resources when they are the parties that have set up and control the sale process. Any truncated timetable suggested for the sale process should not be permitted by this Court.

**B. The Notice of the Bid Procedures and Sale Should Be Widely Distributed.**

22. The Committee agrees with the Debtors that the Notice of the Sale and the Bid Procedures should be served on all of those entities listed by the Debtors in its Bid Procedures Motion. *Bid Procedures Motion, ¶ 35*.

23. The Committee further believes that the list should be expanded to include any parties identified by the Committee or AlixPartners LLP as potentially interested parties.

**C. The Sale Proceeds Should Be Held In Escrow Pending The Close of the Lien Investigation Period and All Liens Should Attach to the Proceeds.**

24. The Bid Procedures Motion seeks approval of the Debtors' proposed disbursements of the sale proceeds at Closing to the Priority Term Loan Obligations and a portion of the FILO Term Loan Obligations. *Bid Procedures Motion, ¶57*.

25. The sale proceeds should not be disbursed without an Order of this Court and none of the secured lenders should be paid at Closing. Rather the Sale proceeds should be held

7

4844-0304-3783v2

Case 20-81688-CRJ11    Doc 321    Filed 08/13/20    Entered 08/13/20 11:46:55    Desc
Main Document    Page 7 of 9

in escrow until the Challenge Period has passed and the various secured creditors' liens have not been challenged.

V. RESERVATION OF RIGHTS

26. The Committee reserves its rights to supplement or otherwise adopt additional arguments in connection with this Objection up to and including at the hearing on approval of the Bidding Procedures. Further, nothing contained herein shall be deemed as a waiver of any right of the Committee to object to the sale of substantially all of the Debtor's assets pursuant to 11 U.S.C. § 363 or otherwise.

VI. NOTICE

27. The Committee will provide notice of this Objection by email or via CM/ECF to (i) counsel for the Debtors, O'Melveny & Myers LLP, 400 South Hope Street, 18th Floor, Los Angeles, CA 90071, Attn: Steve Warren (swarren@omm.com) and Jennifer Taylor (jtaylor@omm.com); (ii) co-counsel for the Debtors, Burr & Forman LLP, 420 North 20th Street, Suite 3400, Birmingham, Alabama 35203, Attn: Derek Meek (dmeek@burr.com) and Hanna Lahr (hlahr@burr.com); (iii) counsel for the Restructuring Committee, Akin Gump Strauss Hauer & Feld LLP, 2300 N. Field Street, Suite 1800, Dallas, TX 75201, Attn: Sarah Schultz (sschultz@akingump.com); (iv) the Bankruptcy Administrator, 400 Well Street, Decatur, Alabama 35602, Attn: Richard Blythe (richard_blythe@alnba.uscourts.gov); (v) counsel to the FILO Lenders, Pillsbury Winthrop Shaw Pittman LLP, Four Embarcadero Center, 22nd Floor, San Francisco, CA 94111-5998, Attn: Joshua D. Morse (joshua.morse@pillsburylaw.com) and Andrew V. Alfano (andrew.alfano@pillsburylaw.com); (vi) counsel to Whitebox Advisors LLC, Brown Rudnick LLP, One Financial Center, Boston, Massachusetts 02111, Attn: Andreas Andromalos (aandromalos@brownrudnick.com) and Tia C. Wallach

(twallach@brownrudnick.com); and (vii) all parties that have requested notice in the Debtors' bankruptcy cases.

**WHEREFORE**, the Committee requests that (a) the Bid Procedures be modified to address the limited objections raised in this Objection and (b) the Court grant any further relief the Court deems proper and just.

**BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, P.C.**

*/s/Matthew M. Cahill*
Matthew M. Cahill, Esq.
Rita L. Hullett, Esq.
420 20th Street N
Birmingham, AL 35203
Telephone: (205) 276-9807
Email: rhullett@bakerdonelson.com
       mcahill@bakerdonelson.com


- and -

**FOX ROTHSCHILD LLP**

*/s/ Gordon E. Gouveia*
Gordon E. Gouveia
321 N. Clark St., Ste. 1600
Chicago, IL 60654
Telephone: (312) 980-3816
ggouveia@foxrothschild.com

and

Michael A. Sweet
345 California Street, Ste. 2200
San Francisco, CA 94104
(415) 364-5560
msweet@foxrothschild.com

4844-0304-3783v2