| | |
|---|---|
| *In re:* | Chapter 11 |
| REMINGTON OUTDOOR COMPANY, INC., *et al.*[1] | Case No. 20-81688-CRJ-11 |
| *Debtors.* | Jointly Administered |

**OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' MOTION FOR ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 AND 507 (I) AUTHORIZING USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III) MODIFYING AUTOMATIC STAY, (IV) GRANTING RELATED RELIEF, AND (V) SCHEDULING A FINAL HEARING**

The Official Committee of Unsecured Creditors of Remington Outdoor Company, Inc., *et al.* (the "Committee"), hereby submits its objection (the "Objection") to the *Debtor's Motion for Orders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection, (III) Modifying Automatic Stay, (IV) Granting Related Relief, and (V) Scheduling a Final Hearing* [ECF No. 7] (the "Motion[2]"), and respectfully states as follows:

## I.   PRELIMINARY STATEMENT

The stated goals of these Chapter 11 Cases are to "effectuate a prompt sale of substantially all of [the Debtor's] assets" and "confirm a Chapter 11 Plan to address their existing obligations

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc.(3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405). The Debtors' corporate headquarters are located at 100 Electronics Boulevard SW, Huntsville, AL 35824.

[2] All capitalized terms not defined herein shall carry the meaning assigned to them in the Motion or the *Declaration of Ken D'Arcy in Support of Chapter 11 Petitions and First Day Pleadings of Remington Outdoor Company, Inc. and its Affiliated Debtors and Debtors-In-Possession* (the "Declaration" or "Decl."), as applicable.

113200116
4844-7356-1799v1
2616900-014462 08/13/2020

that are not otherwise assumed through the sale." Decl. ¶ 10.  The Proposed Order authorizing use of cash collateral only advances one of these goals – a prompt sale – while relegating the Debtors' estates to administrative insolvency and a likely chapter 7 conversion.  Onerous lending terms and severe liquidity constraints imposed by the Prepetition Secured Creditors are among the factors that led to the Debtors' second chapter 11 filing in as many years.  To deal with their liquidity issues prior to filing bankruptcy, the Debtors deferred under the CARES Act and otherwise failed to pay federal firearms and ammunition excise taxes to the tune of $16.5 million.[3]  Having already reaped the benefit of this federal tax windfall and $25 million of additional unsecured debt, the Prepetition Secured Creditors continue to restrict the Debtors' liquidity and obtain benefits from the chapter 11 process at the expense of unsecured creditors.

The proposed cash collateral agreement has been described as "synthetic" debtor-in-possession ("DIP") financing arrangement and indeed has all of the hallmarks of DIP loan.  Akin to a commitment fee for DIP financing, the Proposed Order includes an excessive Consent Fee that is based not on the additional liquidity provided to the Debtors' estates ($23,500,000), but rather the entirety of the Petition Date Priority Term Loan Amount (approximately $78,100,000, including prepayment premium and exit fees of $2.6 million).  In turn, the Debtors will have to pay Whitebox Advisors approximately $2.7 million merely to access their own cash to fund a sale process for the primary benefit of Whitebox Advisors.  The Debtors are also required to pay the Prepetition Secured Creditors' default interest and professional fees, and the Proposed Order

---

[3] The Motion estimates the Excise Tax liability at $14.8 million, while the Taxes Motion estimates the amount as $16.5 million.  Based on the Committee's review, the actual prepetition liability appears to be approximately $16.5 million – $13.5 million for 2020 Q1 and Q2, and approximately $3.0 million for the beginning of Q3.

4844-7356-1799v1
2616900-014462 08/13/2020

purports to grant the Prepetition Secured Creditors an absolute right to credit bid their alleged secured claims.

While the Prepetition Secured Creditors would continue restricting the Debtors' access to cash, charge exorbitant fees, and seek to have their claims paid upon sale outside of a confirmed chapter 11 plan, the proposed Budget fails to account for substantial administrative and priority claims, including the aforementioned Excise Taxes and section 503(b)(9) claims. These budget deficiencies present an insurmountable barrier to plan confirmation. In the meantime, the Proposed Order would enable the Prepetition Secured Creditors to use the Chapter 11 Cases to maximize the value of their alleged collateral at a substantial premium compared to what they would obtain through a state court foreclosure proceeding.  Finally, the Proposed Order provides broad releases in favor of the Prepetition Secured Creditors and unreasonably limits the Committee's ability to investigate potential objections, claims and causes of action against them.  Unless and until the Committee's investigation is complete, no Challenges have been asserted, and a sufficient wind down budget is reserved, the Prepetition Secured Creditors should not be paid directly upon sale of substantially all of the Debtors' assets as currently proposed.

While the Committee is supportive of a going concern sale process that maximizes the value of the Debtors' assets for the benefit of creditors, the Court should not approve a cash collateral arrangement for the sole benefit of the Prepetition Secured Creditors.  For the reasons, as further discussed below, absent substantial modifications to the Proposed Order that appropriately balance the interests of all creditors and maintain the reasonable prospect of confirming a plan, the Committee respectfully requests that the Court deny the Motion.

4844-7356-1799v1
2616900-014462 08/13/2020

## II. RELEVANT BACKGROUND

### A. The Chapter 11 Cases

1. On July 28, 2020, the Debtors filed the above-captioned Chapter 11 Cases. The same day, the Debtors filed the Motion, as well as the *Debtor's Motion for (I) an Order Establishing Bidding Procedures and Granting Related Relief and (II) an Order or Orders Approving the Sale of the Debtors' Assets* [ECF No. 29] (the "Sale Motion").

2. On August 6, 2020 (the "Appointment Date"), the Bankruptcy Administrator for the Northern District of Alabama appointed the Committee. *See* [ECF No. 217].

### B. The Prepetition Claims

3. According to the Debtors, the Prepetition Secured Creditors hold aggregate prepetition claims in the amount of $241,207,574.49 as follows: (i) a priority Term Loan Facility with a balance of approximately $75,500,000 owed to the Priority Term Loan Lenders;[4] (ii) a FILO Term Loan Facility with a balance of approximately $55,000,000 owed to the FILO Lenders;[5] and (iii) an Exit Term Loan Facility with a balance of approximately $110,700,000 owed to the Exit Term Loan Lenders.[6] Decl. ¶¶ 27, 30, 33. The relationship between the Debtors and the Prepetition Secured Creditors, including each party's relative rights, priority and remedies, is

---

[4] The Priority Term Loan Agent is Cantor Fitzgerald Securities. The Priority Term Loan Lender is Whitebox Advisors LLC ("Whitebox Advisors").

[5] The FILO Agent is Ankura Trust Company, LLC. The FILO Lenders are believed to include Pandora Select Partners, LP, Ankura Trust Company, LLC, Funds and accounts managed by Franklin Advisers, Inc., JPMorgan Chase Bank, N.A., and funds and accounts managed by JPMorgan Chase Bank, N.A., J.P. Morgan Investment Management Inc., funds and accounts managed by J.P. Morgan Investment Management Inc., Lord Abbett, funds and accounts managed by Lord Abbett Renaissance Investment Holdings Ltd., and the Teachers Retirement Systems of Oklahoma.

[6] The Exit Term Loan Agent is Ankura Trust Company, LLC. The Exit Term Lenders are believed to include funds and accounts managed by Franklin Advisers Inc., funds and accounts managed by JPMorgan Chase Bank, N.A., Lord Abbet Investment Trust, funds and accounts managed by Lord Abbet, Commander Navy Installations Command Retirement Trust, and the Teachers Retirement Systems of Oklahoma.

4

governed by a prepetition Intercreditor Agreement between the Debtors and the Prepetition Agents.  Decl. ¶ 34.

4.     Prior to the Petition Date, the Debtors allegedly faced severe liquidity pressure due to both "unfavorable business trends" and the borrowing base floor requirements imposed by the Priority Term Loan Facility.  Decl. ¶¶ 26, 40, 44.  Rather than prepay the Priority Term Loan Facility, which would trigger prepayment and exit fees, the Debtors were required to deposit cash in a blocked account – the Dominion Account – controlled by the Priority Term Loan Lenders to meet the borrowing base deficiency.  Decl. ¶ 26.  As of the Petition Date, the Debtors had transferred approximately $38.7 million of cash collateral to the Dominion Account.  Decl. ¶ 26.

5.     The Priority Term Loan Lenders are oversecured and thus have an equity cushion in their alleged collateral in an undisclosed amount.  Motion at 11 ("As of the Petition Date, the value of the collateral securing the Priority Term Loan Obligations exceeded the amount of the Priority Term Loan Obligations.").

6.     As a direct result of the prepetition liquidity pressure exerted by the Priority Term Loan Lender, the Debtors deferred payment of a firearms and ammunition excise tax under 26 U.S. § 4181 (the "Excise Tax") pursuant to a provision in the CARES Act.  Decl. ¶ 45.  The amount of the Excise Tax is allegedly $14.8 million, but more current information obtained by the Committee's financial advisor suggests that the liability could be as much as $16 million.  Motion at 7.  The Debtors estimate an additional $25 million in outstanding claims owed to their vendors, suppliers and service providers.  Decl. ¶ 37.

### C.     Proposed Use of Cash Collateral

7.     The Motion seeks entry of interim and final orders approving the Debtors' use of Cash Collateral of the Prepetition Secured Creditors.  The Prepetition Secured Creditors have

5

4844-7356-1799v1
2616900-014462 08/13/2020

agreed to permit the Debtors to access $23.5 million in the Dominion Account. Motion at 20. The Debtors state that the use of Cash Collateral is critical to their "ability to finance their operations, maintain business relationships, pay employees, protect the value of their assets, and otherwise finance their operations." Motion at 19. As it relates to the Debtors' sale efforts, "any buyer looking to acquire the Debtors' assets as a going concern will want to make sure that the Debtors' operations remain stable." Motion at 19.

8.     The adequate protection contemplated by the Motion includes: payment of postpetition interest at the default rate; superpriority liens on all assets of the Debtors; superpriority administrative claims; and a "Consent Fee" payable to the Priority Term Loan Lenders in the amount of 3.50% of their total prepetition claim.

9.     On July 30, 2020, the Court entered an *Interim Order pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 593 and 507 (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection, (III) Modifying Automatic Stay, (IV) Granting Related Relief, and (V) Scheduling a Final Hearing* [ECF No. 90]. The Budget attached to the Interim Order includes a so-called wind down budget with low ($9 million) and high case ($13.9 million) scenarios for post-sale bankruptcy related expenses and accrued operating expenses. It is not clear from the Proposed Order whether the Debtors will have access to the high case amount if required to fund administrative and priority claims, and it should. Moreover, the Debtors' ability to use these funds post-sale should not be strictly limited to the specific line items set forth in the wind down budget.

10.     A final hearing on the Motion is scheduled for August 18, 2020, at which time the Debtors will request entry of a proposed final order (the "Proposed Order") granting the Motion. [ECF No. 266].

4844-7356-1799v1
2616900-014462 08/13/2020

### III. __OBJECTION__

11.     Rather than obtain debtor in possession financing from a third party to finance their operations through a sale, the Debtors have elected to use cash collateral of the Prepetition Secured Creditors.  Given the nature of Priority Term Loan Lender's control over the Debtors' cash, the Priority Term Loan Lender is in a position to dictate onerous terms.

12.     In this context, courts recognize that "debtors-in-possession generally enjoy little negotiating power with a proposed lender, particularly when the lender has a pre-petition lien on cash collateral." *Resolution Trust Corp. v. Official Unsecured Creditors' Comm. of Defender Drug Stores, Inc. (In re Defender Drug Stores, Inc.),* 145 B.R. 312, 317 (B.A.P. 9th Cir. 1992). S*ee also In re The Colad Grp., Inc.,* 324 B.R. 208, 219 (Bankr. W.D.N.Y. 2005) (noting that the proposed postpetition lender, also the debtor's prepetition lender, was in a position to dictate terms, and thus the proposed postpetition financing facility did not represent fair terms). As a result, courts are generally cautious not to approve financing terms that are considered harmful to the estate and creditors. *See, e.g., In re Ames Dep't Stores, Inc.,* 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (noting that "the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest").

13.     While certain terms favorable to a lender may be permitted as a reasonable exercise of the debtor's business judgment, bankruptcy courts have not approved financing arrangements that convert the bankruptcy process from one designed to benefit all creditors to one designed for the sole (or primary) benefit of the lender.  *See In re Tenney Vill. Co.,* 104 B.R. 562 (Bankr. D.N.H. 1989); *Defender Drug Stores,* 145 B.R. at 317.

7

4844-7356-1799v1
2616900-014462 08/13/2020

14.     The Proposed Order is a clear product of overreaching by the Prepetition Secured Creditors, created by the kind of imbalance in negotiating leverage cautioned against in the foregoing cases.  The Proposed Order makes clear that the purpose of these Chapter 11 Cases is not to maximize the value of the Debtors' estates, but to dispose of the Prepetition Secured Creditors' alleged collateral at great cost and expense to the Debtors and the unsecured creditors.

### A.     The Consent Fee is Excessive and Should Not Be Approved.

15.     One of the many forms of adequate protection provided to the Priority Term Loan Lenders is a "Consent Fee" of 3.50%.  While DIP lenders often charge a commitment fee for new money loaned to debtor in possession, the Consent Fee is a similar charge for the Debtors' use of their own cash.  Moreover, the Consent Fee is not based on the funds that are being made available to the Debtors, but rather the entire balance of the Priority Term Loan Lenders' prepetition claim (approximately $78,100,000), which results in a fee of approximately $2.7 million.   The Consent Fee is in addition to payment of (a) postpetition interest at the Default Rate of 13.5%, (b) an Exit Fee, and (c) a Prepayment Premium.  Whitebox Advisors is also entitled to recover interest on the Consent Fee, which is PIK'd until the claim is paid.  Proposed Order ¶¶E (i), G (ii)(a).  Although the Consent Fee could have been reduced to 2.50% if the Debtors had secured a stalking horse bidder within ten (10) days of the Petition Date, that deadline passed without satisfying that condition.  Proposed Order ¶E (i).

16.     The Priority Term Loan Lenders are only entitled to "adequate protection" for the use of their cash collateral.  11 U.S.C. § 363(e).  Under § 361 of the Bankruptcy Code, adequate protection may be provided by any of cash payments, the grant of additional or replacement liens, or the grant of such other relief as will result in the creditor realizing the "indubitable equivalent" of its security interest. *See* 11 U.S.C. § 361; *see also In re Coker,* 216 B.R. 843, 855 (Bankr. N.D.

8

4844-7356-1799v1
2616900-014462 08/13/2020

Ala. 1997).  The Consent Fee is none of these.  Charging a fee in addition to receiving default interest payments, prepayment premiums, exit fees, adequate protection liens, and super-priority claims is not a component of adequate protection and is therefore not permitted by the Bankruptcy Code.  The Debtors contend that the Priority Term Loan Lender is over-secured and they should be required to demonstrate why the Priority Term Loan Lender's interests are not adequately protected by an equity cushion.   In any event, the excessive Consent Fee should not be permitted.

17.    Even in the DIP financing context (which this is not), where lender fees are common, the fee must be reasonable and typically is based on the size on the lending facility.  In particular, "a proposed financing will not be approved where it is apparent that the purpose of the financing is to benefit a creditor rather than the estate."  *Ames Dep't Stores,* 115 B.R. at 39; *see also See In re Aqua Assocs.*, 123 B.R. 192, 195-98 (Bankr. E.D. Pa. 1991) ("[C]redit should not be approved when it is sought for the primary benefit of a party other than the debtor.").  To this end, courts should approve postpetition financing to the extent it is "in the best interests of the general creditor body."  *In re Roblin Indus.*, 52 B.R. 241, 244 (Bankr. W.D.N.Y. 1985).

18.    The Consent Fee, by contrast, is not based on the Cash Collateral advanced to the Debtors, but on the <u>entire claim</u> of the Priority Term Loan Lenders.  The Consent Fee charged by the Priority Term Loan Lenders, calculated as a percentage of the proposed Cash Collateral made available under the Proposed Order, is **<u>11.6%</u>**, far above the median of 2.0% of similar-size DIP loans approved in recent cases.  When combined with the default interest rate proposed to be paid, the Priority Term Loan Lenders will earn an annualized rate of return of 109.3% on the $23.5 million of Cash Collateral made available to the Debtors.  The Consent Fee is a clear overreach by Whitebox Advisors and should not be approved by the Court.

9

4844-7356-1799v1
2616900-014462 08/13/2020

**B.** **The Proposed Order: (i) prevents the Debtors from using Cash Collateral and Sale Proceeds to pay administrative and priority claims; and (ii) eliminates the Debtors' ability to surcharge the Prepetition Secured Creditors' collateral.**

19.     The Proposed Order will force the Debtors into administrative insolvency and prevent confirmation of a chapter 11 plan.

20.     <u>First</u>, the Budget has glaring deficiencies that will undoubtedly render the Debtors' estates administratively insolvent and otherwise unable to confirm a chapter 11 plan following the proposed sale.  Specifically, the Budget fails to provide for payment of:  (i) administrative claims under § 503(b)(9) (the Committee has not even received an estimate of § 503(b)(9) claims); (ii) the priority Excise Taxes, which are estimated to be approximately $16 million (for the period of January 2020 through the Petition Date); and (iii) the costs of curing defaults under executory contracts.  Moreover, the Budget assumes payment of only $250,000 in quarterly bankruptcy fees, which represent one quarterly payment when the Chapter 11 Cases will most assuredly continue through the fourth quarter of 2020.  Without payment of these claims, confirmation of a chapter 11 plan will be impossible.  In total, the Committee estimates that the Budget fails to account for approximately $20 million of potential administrative and priority claims that must be paid to confirm a chapter 11 plan.

21.     Further complicating the matter, upon the closing of a sale, the Proposed Orders require payment of the "Net Sale Proceeds" to the Priority Term Loan Secured Creditors.  Proposed Order ¶ G(ii)(e).  The term "Net Sale Proceeds" accounts only for payment of various costs of sale as well as "such other administrative expenses . . . that are set forth in the Budget . . . or such other wind-down budget as may be reasonably agreed by the Debtors and the Prepetition Secured Creditors."  *Id*.  In other words, after the Secured Creditors achieve their objective of a sale, the Debtors will have no ability to pay administrative and priority claims as required to confirm a

4844-7356-1799v1
2616900-014462 08/13/2020

chapter 11 plan. The Prepetition Secured Creditors will be in a position to leave the federal government and other creditors of these estates holding the proverbial bag. The Court should not approve a cash collateral order that allows for distribution of sale proceeds to the Prepetition Secured Creditors without (i) a mechanism for payment of administrative and priority claims, and (ii) an opportunity for the Committee to examine and Challenge, if necessary, the Secured Creditors' liens and then having to seek disgorgement of funds.

22.     Second, the Proposed Order grants the Prepetition Secured Creditors "the benefits of a waiver of (i) the provisions of Section 506(c) of the Bankruptcy Code" and "(ii) any 'equities of the case' claims under Section 552(b) of the Bankruptcy Code." Proposed Order ¶ H. The effect of these waivers is to eliminate one of the only potential avenues of recovery for the estates and shifts the burden of preserving the Prepetition Secured Creditors' collateral to the unsecured creditors. *See, e.g., Precision Steel Shearing v. Fremont Fin. Corp. (In re Visual Indus.),* 57 F.3d 321, 325 (3d Cir. 1995) ("[Section] 506(c) is designed to prevent a windfall to the secured creditor . . . . The rule understandably shifts to the secured party . . . the costs of preserving or disposing of the secured party's collateral, which costs might otherwise be paid from the unencumbered assets of the bankruptcy estate. . . .") (internal citation omitted); *see also In re Codesco, Inc.,* 18 B.R. 225, 230 (Bankr. S.D.N.Y. 1982) ("The underlying rationale for charging a lienholder with the costs and expenses of preserving or disposing of the secured collateral is that the general estate and unsecured creditors should not be required to bear the cost of protecting what is not theirs."); *In re Muma Servs.*, 322 B.R. 541, 558-59 (Bankr. D. Del. 2005) (*quoting Delbridge v. Prod. Credit Ass'n & Fed. Land Bank*, 104 B.R. 824, 826 (E.D. Mich. 1989) ("The purpose of the [§ 552(b)] exception is to prevent a secured creditor from reaping benefits from collateral that has appreciated

11

4844-7356-1799v1
2616900-014462 08/13/2020

in value as a result of the [debtor-in-possession's] use of other assets of the estate (which normally would go to general creditors) to cause the appreciated value.").

23. The waivers thus permit the Prepetition Secured Creditors to reap the benefits of the sale process while failing to pay the freight of the associated costs of the Chapter 11 Cases. If the Prepetition Creditors wish to utilize the Chapter 11 Cases to dispose of their collateral but will not voluntarily pay administrative and priority claims, the Debtors should preserve their rights under §§ 506(c) and 552(b) of the Bankruptcy Code.

24. _Third_, the Proposed Orders grant Adequate Protection Liens and Super Priority Claims to the Prepetition Secured Creditors on all personal and real property of the Debtors, including "Commercial Tort Claims," but excluding Avoidance Actions. Proposed Order ¶¶ 5, 6. Notably, the Prepetition Secured Creditors could not obtain a lien on Commercial Tort Claims outside of bankruptcy without specifically delineating each action in which it claimed a lien. *See, e.g., Helms v. Certified Packaging Corp.*, 551 F.3d 675, 681 (7th Cir. 2008) (holding that, unlike most other forms of collateral, UCC requires specific identification of each tort claim in security agreement). Given that the Prepetition Secured Creditors are essentially using the Chapter 11 Cases to dispose of their Collateral (and without paying the attendant costs), they should not receive collateral unavailable to them outside of bankruptcy. Accordingly, Avoidance Actions and Commercial Tort Claims (specifically D&O claims and related insurance policies and proceeds) should be expressly excluded from the Adequate Protection Liens and Super Priority Claims. Moreover, the Proposed Orders should clarify that the proceeds of the Avoidance Actions and Commercial Tort Claims are also excluded from the Adequate Protection Liens and Super Priority Claims.

12

4844-7356-1799v1
2616900-014462 08/13/2020

25.     <u>Fourth</u>, the Committee is concerned with the sufficiency of the Carve-Out for professional fees.  As a threshold matter, it is unclear whether the Professional Fee Reserve includes the Secured Creditor's professional fees.  The Proposed Orders require payment of the Secured Creditors' professional fees.  Proposed Order ¶ G(ii), (iii), (iv).  However, the Professional Fee Reserve is defined as a reserve account for satisfying the fees and expenses of the "Case Professionals," *i.e.*, the professionals of the Debtors, the Restructuring Committee and the Committee.  Final Order ¶ 16.  The Proposed Order should clarify that the Professional Fee Reserve is $8,445,750 and is not subject to the Prepetition Secured Creditors professional fee claims.

26.     The Committee also believes that the total budgeted professional fees are inadequate, particularly given (i) the status of the sale and (ii) that the Debtors are responsible for paying the Secured Creditors' professional fees.  The Budget estimates total professional fees and expenses of approximately $8.4 million through sale closing.  But without a stalking horse in place, the parties' professionals will be involved in an intense effort to compare and analyze competing bids, resulting in higher fees than would be generated during a typical sale process.  Already, there are dozens of parties in active discussions with the Debtors about participating in the auction. Again, the terms of the Proposed Order and Budget risk leaving administrative claims unpaid and hindering efforts at plan confirmation.

27.     In sum, the Committee is concerned that the terms of the proposed use of Cash Collateral will lead to administrative insolvency and prevent the Debtors from confirming a chapter 11 plan.  The Committee therefore requests modifications to the Proposed Order and Budget in accordance with the issues addressed herein.

4844-7356-1799v1
2616900-014462 08/13/2020

**C.** **The Releases impair the Committee's right to pursue derivative claims.**

28.     The Proposed Order releases all claims of the Debtors against the Prepetition Secured Lenders, including any lender liability claims. Proposed Order ¶ 12. E (vi). Although the proposed release is facially limited to claims by the Debtors, it may nevertheless effectively preclude a Challenge by the Committee. The Debtors are a collection of Delaware corporations and subsidiary LLCs. The Committee is cognizant of the fact that certain bankruptcy courts, applying section 18-1002 of the Delaware Liability Company Act,[7] have found that derivative standing for claims by an LLC is limited to the LLC's members or an assignee. *See In re HH Liquidation, LLC*, 590 B.R. 211 (Bankr. D. Del. 2018); *In re PennySaver USA Publishing, LLC*, 587 B.R. 445 (Bankr. D. Del. 2018); *In re Dura Automotive Systems, LLC*, case no. 19-12378 (KBO) (Bankr. D. Del. June 9, 2020). In contrast, Delaware law "permits creditors to bring derivative actions against corporations because when the Debtor is insolvent, the fiduciary duty owed to the shareholders is transferred to the creditors." *In re PennySaver*, 587 B.R. at 467; *see also North American Catholic Educational Programming Foundation, Inc. v. Gheewala*, 930 A.2d 92, 101 (Del. 2007) ("Creditors of an insolvent corporation have standing to maintain derivative claims against directors on behalf of the corporation for breaches of fiduciary duty).

29.     The Debtors have not provided information to the Committee regarding any investigation of potential claims they might have against the Prepetition Secured Lenders, the

---

[7]     Section 18-1002 provides: "In a derivative action, the plaintiff must be a member or an assignee of a limited liability company interest at the time of bringing the action and: (1) At the time of the transaction which the plaintiff complaint; or (2) The plaintiff's status as a member or an assignee of a limited liability company interest had devolved upon the plaintiff by operation of law pursuant to the terms of a limited company agreement from a person who was a member or an assignee of a limited liability company interest at the time of the transaction."

14

4844-7356-1799v1
2616900-014462 08/13/2020

value of such claims, and why releasing such claims is appropriate in the context of the use of Cash Collateral. Accordingly, it is imperative to preserve such claims to afford the Committee a meaningful opportunity to investigate those claims and bring any necessary Challenges. Accordingly, the Proposed Order should be modified to provide as to the LLC Debtors that the releases are not effective immediately such that the releases will not impair the Committee's potential standing to assert derivative claims. Instead, the effective date of the release should therefore be delayed until the expiration of the Challenge Deadline.

**D. The Proposed Order hinders the Committee's investigation rights.**

30. Under Bankruptcy Code section 1103(c)(2), one of the duties of a Committee is to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor . . . and any other matter relevant to the formulation of the plan." 11 U.S.C. § 1103(c)(2). These statutory duties encompass the investigation of the purported liens of, and potential claims against, the Prepetition Secured Parties.

31. The Proposed Order, however, includes restrictions that unduly restrain and obstruct the Committee's ability to fulfill its duties. Specifically, the Proposed Order provides that all stipulations and findings therein – including the validity, extent and priority of the Prepetition Secured Creditor's liens – are binding on all parties in interest, including the Committee, unless the Committee commences an action against the Prepetition Lenders within the Challenge Period, *i.e.* by August 26, 2020, or 30 days from the Petition Date. Proposed Order ¶ 20.

32. Consistent with standard practice in large chapter 11 cases, the Challenge Period should be sixty (60) days after the Appointment Date. Given the August 6 Appointment Date, the proposed Challenge Period only gives the Committee a total of 20 days to: (i) retain counsel, (ii) conduct discovery to investigate potential Challenges relating to over $200 million of secured

15

4844-7356-1799v1
2616900-014462 08/13/2020

claims; and (iii) draft a complaint(s) against the Prepetition Secured Creditors. This timeframe is simply unrealistic, particularly considering that the focus of the Committee since formation has been on this Motion and the Sale Motion, in addition to getting up to speed on the Chapter 11 Cases. Extending the Challenge Period will enable the Committee fully and appropriately investigate claims for the benefit of the Debtors' estates. Additionally, the Proposed Order should expressly reserve the Committee's right to seek an extension of the Challenge Period for cause.

33.     The Proposed Order also limits the Committee to spending "more than an aggregate of $25,000 of the proceeds of the Prepetition Collateral (including the Cash Collateral) or the Carve-Out . . . during the Challenge Period to investigate the claims and liens of the Prepetition Secured Creditors." Proposed Order ¶ 18. The limited investigation budget provides the Prepetition Secured Lenders with further insulation and benefit at the expense of unsecured creditors. *See In re Tenney Village, Co., Inc.,* 104 B.R. 562, 568-69 (Bankr. D.N.H. 1989) (court found that a cap on fees to bring actions against prepetition lenders disincentivized bringing said actions in disregard of the debtor's duty to the estate). Again, if the Prepetition Secured Lenders are going to utilize the Chapter 11 Cases to dispose of their collateral, the Committee must have sufficient resources to examine their potential claims against the Prepetition Secured Creditors. The Committee submits that in the context of a case with this degree of complexity and appropriate investigation budget is $125,000.00.

34.     The Debtors suggest that the constraints on the Committee's investigation rights are appropriate because of the Prior Cases. However, the Committee's proposed counsel in these Chapter 11 Cases served as committee counsel in the Prior Cases and can represent to the Court that there was no meaningful lien investigation in those cases because they involved a prepackaged plan of reorganization with 100% distributions to unsecured creditors. In these cases, by contrast,

16

the Debtors have alleged that the Prepetition Secured Creditors are woefully undersecured, and unsecured creditors risk recovering nothing. Accordingly, a thorough investigation of the Prepetition Secured Creditors' liens is necessary and appropriate in furtherance of discharging the Committee's statutory duties.

35. The Committee further requests that the Proposed Order expressly grant the Committee standing to pursue any Challenge against the Prepetition Secured Lenders. Granting such relief at this juncture would avoid the unnecessary consumption of resources attendant to filing a motion for standing at a later date and would alleviate concerns associated with the Debtors' proposed releases. At a minimum, the Proposed Order should be modified to provide for the tolling of the Challenge Deadline pending the Court's ruling on any motion to grant the Committee standing.

36. Finally, the Proposed Order permits the Debtors to settle and compromise any Challenge filed by the Committee against the Prepetition Secured Lenders. Proposed Order ¶ 20(b). Should the Committee obtain standing to pursue claims because the Debtor unjustifiably refuses to assert those claims, the Debtors should not have the right to interfere with the Committee's pursuit of those claims. Accordingly, this provision should be stricken from the Proposed Order.

**E. Other provisions in the Proposed Order are unreasonable and should not be approved without modification.**

37. In addition to the objectionable provisions of the Proposed Order noted above, the Committee believes that certain other provisions are improper and should not be approved by the Court. These include the following:

    a. <u>Sale Deadlines.</u> The Proposed Order prohibits the use of Cash Collateral after certain Termination Events, including the failure of the Debtors to meet certain sale

17

milestones. *See* Proposed Order ¶ 11(xi), (xii), (xv), and (xvi). The Committee objects to these Termination Events as inappropriate for the reasons set forth in the Committee's *Limited Objection to the Debtors' Motion for (I) an Order establishing Bidding Procedures and Related Relief and (ii) and Order or Orders Approving the Sale of the Debtors' Assets*, filed concurrently herewith, and incorporates those arguments by reference here.

b. <u>Authority to Settle Claims.</u> Paragraph F (vi)(3) of the Proposed Order prohibits the Debtors from making any payments "in settlement of any claim, action or proceeding." The provision should be modified to permit the Debtors to pay such amounts approved by the Court.

c. <u>Rights and Remedies upon a Termination Event.</u>

   i. Paragraph 12(b) of the Proposed Order requires that a Termination Notice must be served on the Debtors and various other professionals. The Committee and its proposed counsel should be added as required service parties.

   ii. Paragraph 12(c)(i) provides that, upon issuance of a Termination Notice by the Priority Term Loan Agent, the automatic stay is deemed modified to permit the Priority Term Loan Secured Lenders to exercise all rights and remedies against the PPE Collateral. The provision should be revised to match the less objectionable remedy provided to the Controlling Agent in paragraph 12(c)(ii) (upon issuance of a Termination Notice by the Controlling Agent, the Controlling Agent shall be entitled to file a motion on seven (7) business days' notice for relief from the automatic stay). The Debtors offered no principled reason to differentiate between the lender's remedies, let alone evidence of why sty relief absent a motion would be necessary. Given the highly prejudicial nature of the relief, the Committee believes it appropriate to remove the provision.

   iii. Paragraph 12(d) should be modified to provide that the Remedies Notice Period may be extended by order of the Court.

d. <u>Proofs of Claim.</u>

   i. Paragraph 15 of the Proposed Order provides that the Prepetition Secured Lenders are not required to file proofs of claim. The provision should either be removed or modified to require the Prepetition Secured Lenders to provide documentation supporting their claims to the Committee.

   ii. Paragraph 15 further provides that the "books and records of the Prepetition Agents" are deemed "conclusive as to the amounts of the claims of each such party absent manifest error." Nothing in the Bankruptcy Code

18

4844-7356-1799v1
2616900-014462 08/13/2020

authorizes this relief; to the contrary, it shifts the burden of the Prepetition Lenders to prove the validity of their claims to the unsecured creditors to disprove their validity. Accordingly, this provision should be stricken.

    iii. Finally, Paragraph 15 should be revised to clarify that the claims of the Prepetition Secured Creditors remain subject to the filing of a timely Challenge.

    e. <u>Carve-Out.</u>

      i. The Carve-Out should include the reasonable expenses of the members of the Committee up to an aggregate amount of $10,000.00.

      ii. Paragraph 16(g) of the Proposed Order unnecessarily burdens professionals by requiring weekly submission of accrued fee estimates to the Debtors. The provision should be revised to require bi-weekly submissions.

    f. <u>Credit-Bidding.</u>

      i. The Proposed Order permits the Prepetition Secured Parties to credit bid the full amount of any remaining Prepetition Obligations and any superpriority claims in a sale of any Prepetition Collateral. The Prepetition Secured Parties' rights to credit bid should remain subject to the power of the Court granted in Bankruptcy Code section 363(k) to restrict credit bidding for cause. *See, e.g., In re Fisker Automotive Holdings, Inc.,* 510 B.R. 55, 59 (Bankr. D. Del. 2014) (denying credit bid where credit bidding would freeze competitive bidding altogether); *In re Free Lance Star Publ'g Co. of Fredericksburg Va.,* 512 B.R. 798 (Bankr. E.D. Va. 2014) (cause existed to limit creditor's right to bid at auction sale even as to assets to which creditor has security interest); *In re RML Dev., Inc.,* 528 B.R. 150, 156 (Bankr. W.D. Tenn. 2014) (limiting secured creditor's ability to credit bid because a "bona fide dispute exists to the extent of the amount of that claim").

## IV. <u>RESERVATION OF RIGHTS</u>

38. The Committee reserves its rights to supplement or otherwise adopt additional arguments in connection with this Objection up to and including at the Final Hearing on the Motion.

19

4844-7356-1799v1
2616900-014462 08/13/2020

## V.    NOTICE

39.    The Committee will provide notice of this Objection by email or via CM/ECF to a) O'Melveny & Myers LLP (Attn: Steve Warren and Jennifer Taylor) and Burr & Forman LLP (Attn: Derek Meek and Hanna Lahr), proposed counsel for the Debtors; (b) Akin Gump Strauss Hauer & Feld LLP (Attn: Sarah Schultz and Joanna Newdeck), counsel for the Restructuring Committee; (c) the Bankruptcy Administrator; (d) Shipman & Goodwin LLP (Attn: Kathleen LaManna and Nate Plotkin), counsel to Cantor Fitzgerald Securities, as Priority Term Loan Agent; (e) Brown Rudnick LLP (Attn: Andreas P. Andromalos and Tia C. Wallach), counsel to Whitebox Advisors LLC; (g) Davis Polk & Wardwell LLP (Attn: Donald Bernstein and Joanna McDonald), counsel to Ankura Trust Company, LLC as FILO Agent and Exit Term Loan Agent; (f) Pillsbury Winthrop Shaw Pittman LLP (Attn: Joshua D. Morse and Andrew V. Alfano) and Christian & Small LLP (Attn: Daniel D. Sparks and Bill D. Bensinger), counsel to the FILO Lenders; and (g) all parties that have requested notice in the Debtors' bankruptcy cases.

## V.    CONCLUSION

40.    For the reasons stated and upon the cited authorities, the Committee respectfully requests that the Court deny the Motion unless the Proposed Order is modified consistent with the objections and proposed revisions set forth herein.

**WHEREFORE**, the Committee requests that this Court sustain this Objection and grant such other relief as is necessary and proper.

4844-7356-1799v1
2616900-014462 08/13/2020

**BAKER DONELSON BEARMAN CALDWELL &
BERKOWITZ, P.C.**

*/s/Matthew M. Cahill*
Matthew M. Cahill, Esq.
Rita L. Hullett, Esq.
420 20th Street N
Birmingham, AL  35203
Telephone: (205) 276-9807
Email: rhullett@bakerdonelson.com
        mcahill@bakerdonelson.com


-    and -

**FOX ROTHSCHILD LLP**

*/s/ Gordon E. Gouveia*
Gordon E. Gouveia
321 N. Clark St., Ste. 1600
Chicago, IL 60654
Telephone: (312) 980-3816
ggouveia@foxrothschild.com

and

Michael A. Sweet
345 California Street, Ste. 2200
San Francisco, CA 94104
(415) 364-5560
msweet@foxrothschild.com

21

4844-7356-1799v1
2616900-014462 08/13/2020