UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| | § | Case No. 20-81688-CRJ11 |
| REMINGTON OUTDOOR COMPANY, | § | |
| INC. *et al.*,[1] | § | Jointly Administered |
| | § | |
| | § | |
| Debtors. | § | |
| | § | |

**MOTION FOR LEAVE TO CONDUCT
DISCOVERY PURSUANT TO BANKRUPTCY RULE 2004**

Donna L. Soto, Ian and Nicole Hockley, David C. Wheeler, Mary A. D'Avino, Mark and Jacqueline Barden, William D. Sherlach, Neil Heslin and Scarlett Lewis, Leonard Pozner, and Gilles J. Rousseau (the "**Sandy Hook Families**" or the "**Families**")[2] hereby submit this motion (the "**Motion**") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Order**"), pursuant to section 105(a) of Title 11 of the United States Code (the "**Bankruptcy Code**"), and Rule 2004 ("**Rule 2004**") of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), authorizing and directing discovery from Remington Outdoor Company, Inc.; FGI Holding Company, LLC; FGI Operating Company, LLC; Remington Arms Company, LLC ; Barnes Bullets, LLC; TMRI, Inc.; RA Brands, L.L.C.; FGI Finance, Inc.;

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405) (collectively, the "Debtors"). The Debtors' corporate headquarters is located at 100 Electronics Blvd SW, Huntsville, Alabama 35824.

[2] Capitalized terms that are not defined herein have the meanings given to them in the Sandy Hook Families' Objection to the Bidding Procedures Motion or, if not defined therein, in the Bidding Procedures Motion or *Declaration of Ken D'Arcy in Support of Chapter 11 Petitions and First Day Pleadings of Remington Outdoor Company, Inc. and Its Affiliated Debtors and Debtors-in-Possession* (the "**D'Arcy Declaration**").

1

Remington Arms Distribution Company, LLC; Huntsville Holdings LLC; 32E Productions, LLC; Great Outdoors Holdco, LLC; and Outdoor Services, LLC (the "**Debtors**"). In support of this Motion, the Sandy Hook Families respectfully represent as follows:

## PRELIMINARY STATEMENT

1. On December 14, 2012, the Sandy Hook Families lost their loved ones in one of the most shocking instances of gun violence in the nation's history, an incident that was caused in part by the Debtors' unlawful marketing of the assault weapon used by the shooter. In December 2014, the Families brought wrongful death claims against the Debtors on behalf of those loved ones (the "**Sandy Hook Wrongful Death Action**"). Since then, the Sandy Hook Families and the Debtors have been engaged in a hard-fought legal battle which has been continually hampered by the Debtors' attempt to stall the litigation in procedural motion practice, delays in making timely productions of relevant documents, and efforts to prevent the depositions of witnesses.

2. As the Court is aware, on March 19, 2019, the Connecticut Supreme Court affirmed the viability of the Families' wrongful marketing claims—a decision that the Supreme Court denied certiorari review. Following the denial of certiorari, the Sandy Hook Wrongful Death Action returned to the Connecticut state court for discovery and trial. Shortly thereafter, the Debtors began exploring strategic alternatives, ultimately culminating in the commencement of these cases.

3. The Families believe that the Debtors' financial performance improved dramatically in the months leading up to the commencement of these chapter 11 cases. The Families also believe that a desire to avoid the cost of litigating the Sandy Hook Wrongful Death Action, the liability associated with it, and potential reputational damage associated with having their wrongful marketing practices brought to light, motivated the Debtors' commencement of

these cases and their proposed expedited sale timeline, despite the lack of any external exigency necessitating such relief.

4. The Debtors' actions since the commencement of these cases corroborates the Sandy Hook Families' suspicions. Despite being well-aware of the potential size and nature of the Families' claims, the Debtors purposefully omitted the Families from their consolidated list of the forty (40) largest unsecured claims in these cases [Docket No. 4]. That omission had the effect of depriving the Sandy Hook Families of any formal role in these chapter 11 cases as a member of the statutory committee of unsecured creditors (the "**Committee**"). To remedy this plain error, the Sandy Hook Families filed a motion to reconstitute the Committee so that it can fairly and adequately represent *all* of the Debtors' creditors, including tort and/or wrongful death claimants such as the Families. [Docket No. 311].

5. The Sandy Hook Families' concerns in these cases relate to how the Debtors' proposed chapter 11 timeline and strategy may impact the rights of tort and wrongful death claimants such as themselves, as well as whether there was a good faith basis for the Debtors to commence these cases at all. As it stands, the Debtors are proposing to use a short stay in chapter 11 to effectuate an expedited sale for the benefit of one constituency—their secured lenders—and to marginalize the voices of tort and wrongful death liabilities, including their significant and notorious liability to the Sandy Hook Families, even though those are the very liabilities they are attempting to avoid.

6. In connection with the Families' objection to the Debtors' proposed sale process, they have served targeted document requests on the Debtors broadly seeking discovery testing the Debtors' professed need for a section 363 sale of all their assets at breakneck pace despite the lack of any clear rationale, as well as discovery regarding whether the cases were commenced with a

3

Case 20-81688-CRJ11    Doc 381    Filed 08/17/20    Entered 08/17/20 19:22:14    Desc
Main Document    Page 3 of 14

proper organization purpose, or whether they are an improper attempt by a solvent entity to shed isolated liabilities it could otherwise satisfy.³ After one meet and confer, the Debtors have not produced any documents; they have not provided any formal responses to the Families' requests; and they have not committed to any timeline on which they will produce documents to the Families. Their strategy appears to be to run down the clock, after which they will presumably complain that a proposed section 363 sale of substantially all of their assets is the only available means by which they can maximize value.

7. The concerns raised by the Sandy Hook Families are plainly appropriate for discovery under Rule 2004, and the Sandy Hook Families have articulated good cause for seeking and obtaining such discovery. *See Buckner* v. *Okla. Tax Comm'n (In re Buckner),* 2001 Bankr. LEXIS 1053, at *11 (10th Cir. B.A.P. Aug. 30, 2001) ("As a general rule, examinations under Rule 2004 are allowed for the purpose of discovering assets, examining transactions, and determining whether wrongdoing has occurred."). The Sandy Hook Families have requested most of the discovery proposed by this Motion from the Debtors informally prior to filing this Motion. The Debtors' obstructionist tactics, however, "contravene[] the overarching principles of transparency and disclosure that inhere in the bankruptcy process." *In re Molina*, 420 B.R. 825, 831 (Bankr. D.N.M. 2009). The Debtors should not be allowed to use the chapter 11 process for the sole benefit of their secured lenders without the attendant disclosure obligations. Accordingly, and for the reasons discussed below, the Motion should be granted.

---

³ Discovery under Rule 2004 may be precluded where there is a pending proceeding against the discovery target. In such circumstances, the relevant inquiry is whether "the Rule 2004 examination will lead to discovery of evidence related to the pending proceeding." *In re Washington Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009). Discovery in the Sandy Hook Wrongful Death Action, which is currently stayed, is based on the Families' allegations that the Debtors' marketing violated the Connecticut Unfair Trade Practices Act and therefore focuses on the Debtors' marketing practices.

4

## JURISDICTION AND VENUE

8.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are § 105(a) of the Bankruptcy Code and Rule 2004.  The Sandy Hook Families consent to entry of a final order by this Court solely with respect to this Motion.  For the avoidance of doubt, the Sandy Hook Families do not consent to the jurisdiction of this Court over any of their claims relating to the Sandy Hook Wrongful Death Action.

## BACKGROUND

9.     On July 27, 2020, the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner.

10.    On August 6, 2020, the Bankruptcy Administrator appointed the Committee, which did not include the Sandy Hook Families.  On August 12, 2020, the Families filed a motion to reconstitute the Committee to ensure adequate representation of creditors by appointing tort and/or wrongful death claimants, such as the Sandy Hook Families, to the Committee or, in the alternative, to order the formation of a separate committee of tort claimants.

11.    On August 7, 2020, the Sandy Hook Families objected [Docket No. 243] (the "**Bidding Procedures Objection**") to the *Debtors' Motion for (i) an Order Establishing Bidding Procedures and Granting Related Relief and (ii) an Order or Orders Approving the Sale of the Debtors' Assets* [Docket No. 29] (the "**Bidding Procedures Motion**").  First, the Sandy Hook Families objected to the Debtors' proposed timeline for the sale, and asked the Court to adopt a reasonable timeline that will allow them to evaluate several key issues, including (i) the Debtors'

5

finances and purported need for an expedited sale process; (ii) the role the Sandy Hook Families' lawsuit had in these chapter 11 cases; and (iii) the Debtors' insurance arrangements. (Bidding Procedures Objection ¶¶ 41–52.) Second, the Sandy Hook Families objected to several of the bidding procedures, including the selection of a stalking horse bidder without any proposed bidder or agreement. (Bidding Procedures Objection ¶¶ 57–62.)

12. On August 11, 2020, the Sandy Hook Families sent the Debtors their first set of document requests in relation to the Bidding Procedures Objection, attached hereto as **Exhibit B**. On August 12, 2020, the parties had a meet and confer to discuss those document requests. At that meet and confer, the Debtors agreed to send a response indicating which of the requests they would agree to answer, and that another meet and confer could be scheduled for the end of that week. The Sandy Hook Families have not received any response, and the Debtors have not contacted the Sandy Hook Families regarding an additional meet and confer. Accordingly, in light of the timeline of these cases and the Debtors' failure to engage substantively with the Families' discovery requests, the Families request the Court grant this Motion.

13. On August 17, 2020, the Debtors replied to the Sandy Hook Families' Bidding Procedures Objection [Docket No. 354] ("**Reply to Bidding Procedures Objection**") and to objections to the Cash Collateral motion by the Committee and Bankruptcy Administrator [Docket No. 352] ("**Reply to Cash Collateral Objections**").

**RELIEF REQUESTED**

14. By this Motion, the Sandy Hook Families seek entry of an Order authorizing Rule 2004 discovery of the Debtors, including compelling the Debtors to produce documents responsive to the requests set forth in **Exhibit B**. The Sandy Hook Families also request authority to take depositions of relevant witnesses about the same matters.

6

## BASIS FOR RELIEF REQUESTED

15. Rule 2004 provides that, on motion of a party in interest, the Court may authorize the examination of any entity, through both document requests and depositions, relating "to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." Fed. R. Bankr. P. 2004(b); *In re Hampton Island Owner's Ass'n, Inc.*, 723 F. App'x 972, 973 (11th Cir. 2018). The specific purpose of an examination under Rule 2004 "is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred." *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004); *see also In re Duratech Indus., Inc.*, 241 B.R. 291, 296 (Bankr. E.D.N.Y. 1999) (Rule 2004 facilitates "the central purpose of a bankruptcy case, namely, to maximize the distribution of assets or plan payments to unsecured creditors."). Courts have held that discovery and examination under Rule 2004 is even broader than the Federal Rules. *In re Fred Ayers Co.*, 266 B.R. 557, 560 (Bankr. M.D. Ga. 2001) (citing *In re Valley Forge Plaza Associates*, 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990)). The Sandy Hook Families' discovery requests are limited, seeking information directly related to the Debtors' business operations, financial condition, and assets, as well as information necessary to establish whether wrongdoing has occurred—discovery directly related to the Families' claims in these cases, and to whether these cases were commenced for an improper purpose.

16. The party seeking Rule 2004 discovery has the burden to show good cause for the examination it seeks, and Bankruptcy Court Rule 2004 commits to the sound discretion of the bankruptcy court the decision whether to grant or deny a request. *In re Gaime*, 2018 Bankr. LEXIS 4136, at *4 (Bankr. M.D. Fla. Dec. 18, 2018). Good cause can be shown by "demonstrating either that the Rule 2004 discovery is needed to establish a claim, or that the denial of the discovery

7

would cause undue hardship or injustice." *Id.* (citing *ePlus, Inc.* v. *Katz (In re Metiom, Inc.)*, 318 B.R. 263, 268 (S.D.N.Y. 2004)).

17. The Sandy Hook Families have demonstrated good cause for the Rule 2004 discovery, which is needed to adequately protect their interests and prevent undue hardship and injustice.

18. *First*, the discovery the Sandy Hook Families seek is necessary to substantiate their arguments why the Debtors' proposed sale timeline is unnecessarily short and potentially designed to accomplish a quick sale, free and clear of notorious tort and wrongful death liabilities, without any legitimate opportunity for scrutiny by a third party or other estate fiduciary. While section 363 sales on an expedited timeframe may be approved under the appropriate circumstances, here the Sandy Hook Families do not believe the facts and circumstances justify the relief the Debtors have sought because they have failed to demonstrate a good business reason, and it will not maximize the value of the sale. (Bidding Procedures Objection ¶¶ 38–46.) Fact discovery is, however, a necessary prerequisite to proving whether the Debtors' proposed sale timeline is justified. *See In re Underwood*, 457 B.R. 635, 644 (Bankr. S.D. Ohio 2011) (holding good cause existed where the party seeking discovery wanted to investigate whether "an abuse of the bankruptcy process occurred").

19. *Second*, the Sandy Hook Families believe the facts and circumstances surrounding the commencement of these cases raise legitimate questions whether these cases have been commenced for a legitimate reorganization purpose, or whether the Debtors are seeking to use chapter 11 to benefit their secured lenders in an attempt to avoid a significant and notorious liability. The Debtors began considering a sale of their business just three weeks after the U.S. Supreme Court denied the Remington Defendants' petition for a writ of certiorari—their last hope

of preventing the Sandy Hook Wrongful Death Action from proceeding to trial. Good cause exists to determine whether or not those claims affected the Debtors' decisions in this matter.

20. The Families also believe that the Debtors' debt is currently trading at or above par, meaning that the value of the Debtors' assets exceeds the face amount of their funded indebtedness. In support of the commencement of these cases, the Debtors referred vaguely to their 2019 net sales and "adjusted EBITDA", which they compare to 2015 and 2016 results, and conclusory statements relating to "unfavorable business trends," an "elevated level of inventory," and an "inability to purchase raw materials at the required level to grow revenues." (D'Arcy Decl. ¶¶ 40–43.) The Sandy Hook Families suspect, however, that the Debtors' financial position has in fact been improving, and that a desire to avoid continuing costs associated with litigating the Sandy Hook Wrongful Death Action, as well as the potentially significant liability associated therewith, were major factors motivating the commencement of these cases and their proposed path and timeline. Discovery will allow the Sandy Hook Families to test these vague assertions of financial need, and to provide the Court with the full picture of the Debtors' financial situation.

21. The Debtors attempt to justify their request for such a quick sale process by arguing it will allow them to complete the sale before their liquidity runs out. (Reply to Bidding Procedures Objection ¶¶ 14–15.) However, they have brought this issue on themselves by their prior actions in this case, most notably choosing to forego DIP Financing. The Debtors stated they "scoured the marketplace" and contacted "over 15 potential DIP lenders . . . who historically provide DIP financing" earlier this year, but due to Remington Outdoor Company, Inc.'s "complex capital structure," they were unsuccessful in obtaining financing. (Reply to Cash Collateral Objections ¶¶ 11–12; 22). The Debtors state that once the proposed sale to their originally intended stalking horse bidder failed to progress, they were again given the chance to obtain DIP financing through

a DIP loan from secured creditors. (*Id*. ¶ 12.) Instead, the Debtors decided to go with a Cash Collateral arrangement "to save time and legal expense." (*Id*.) However, the Debtors could have solved both of these issues if they had secured the DIP Financing. With this extra liquidity, the Debtors would not need to save time or legal expense, and would have no need for such a quick sales process that benefits no one but themselves.

22. *Third*, the Sandy Hook Families need time to investigate the Debtors' insurance arrangements, and the effect that any sale process may have on their insurance policies. The Sandy Hook Families require time to investigate the Debtors' policies to (1) determine what insurance coverage is available; (2) ascertain what other claims have been made or will be made on the policies, and (3) understand what the Debtors have done to ensure the continuing availability of potential insurance coverage for the Sandy Hook Families' claims. If the Debtors' insurance policies would leave the Sandy Hook Families with nothing, that would certainly cause undue hardship or injustice. The Sandy Hook Families require discovery to ensure this will not happen.

23. Good cause therefore exists to investigate and evaluate the reasons why the Debtors believe the proposed chapter 11 path is necessary or even optimal for the Debtors, and why the Debtors are pursuing such an aggressive timeline without any clear external motivating factor. without the Rule 2004 discovery sought herein, the Sandy Hook Families will have no meaningful ability to ensure that they are being treated fairly and equitably, and would clearly experience undue hardship and injustice. These articulated justifications fit squarely within Rule 2004's purpose of "discovering assets, examining transactions, and determining whether wrongdoing has occurred." *Buckner,* 2001 Bankr. LEXIS 1053, at *11; *see also In re Millennium Lab Holdings II, LLC,* 562 B.R. 614, 627 (Bankr. D. Del. 2016) (holding good cause existed where the Trustee

argued the facts created "a strong suspicion of wrongdoing" which "fit[] squarely within the purpose of Rule 2004").

24. Accordingly, the Sandy Hook Families respectfully request that the Court grant this Motion and issue an Order substantially in the form of **Exhibit A** hereto.

## NO PRIOR REQUEST

25. No prior motion for the relief requested herein has been made by the Sandy Hook Families to this Court or any other court.

## NOTICE

26. Notice of this Motion will be provided to (i) counsel for the Debtors, O'Melveny & Myers LLP, 400 South Hope Street, 18th Floor, Los Angeles, California 90071, Attn: Steve Warren (swarren@omm.com) and Jennifer Taylor (jtaylor@omm.com); (ii) co-counsel for the Debtors, Burr & Forman LLP, 420 North 20th Street, Suite 3400, Birmingham, Alabama 35203, Attn: Derek Meek (dmeek@burr.com) and Hanna Lahr (hlahr@burr.com); (iii) counsel for the Restructuring Committee, Akin Gump Strauss Hauer & Feld LLP, 2300 N. Field Street, Suite 1800, Dallas, Texas 75201, Attn: Sarah Schultz (sschultz@akingump.com); (iv) the Bankruptcy Administrator, 400 Well Street, Decatur, Alabama 35602, Attn: Richard Blythe (richard_blythe@alnba.uscourts.gov); (v) counsel to the FILO Lenders, Pillsbury Winthrop Shaw Pittman LLP, Four Embarcadero Center, 22nd Floor, San Francisco, California 94111, Attn: Joshua D. Morse (joshua.morse@pillsburylaw.com) and Andrew V. Alfano (andrew.alfano@pillsburylaw.com); (vi) counsel to Whitebox Advisors LLC, Brown Rudnick LLP, One Financial Center, Boston, Massachusetts 02111, Attn: Andreas Andromalos (aandromalos@brownrudnick.com) and Tia C. Wallach (twallach@brownrudnick.com); and (vii) all parties that have requested notice in the Debtors' bankruptcy cases.. The Sandy Hook Families submit that such notice is sufficient and no other or further notice need be provided.

## RESERVATION OF RIGHTS

27.     The Sandy Hook Families reserves their rights to request and conduct any other discovery, pursuant to Rule 2004 or other applicable law, from any person or entity.

*[Remainder of page intentionally left blank]*

# CONCLUSION

**WHEREFORE**, for the reasons set forth herein, the Sandy Hook Families respectfully request that this Court enter an Order, pursuant to Rule 2004, in the form attached hereto as **Exhibit A**, and grant the Sandy Hook Families such other and further relief as this Court may deem just and proper.

Dated: August 17, 2020
Huntsville, Alabama

Respectfully submitted,

By: Tazewell T. Shepard IV
Tazewell T. Shepard III
Tazewell T. Shepard IV
State Bar No. 24004246
**SPARKMAN, SHEPARD & MORRIS, P.C.**
P.O. Box 19045
Huntsville, AL 35804
Tel: (256) 512-9924
ty@ssmattorneys.com

**KOSKOFF KOSKOFF & BIEDER**
Joshua Koskoff (admitted *pro hac vice*)
Alinor Sterling (admitted *pro hac vice*)
David Bernard (admitted *pro hac vice*)
Jeffrey Wisner (admitted *pro hac vice*)
350 Fairfield Avenue
Bridgeport, CT 06604
Tel: (203) 336-4421
jkoskoff@koskoff.com

- and -

**SELENDY & GAY PLLC**
Faith Gay (admitted *pro hac vice*)
1290 Avenue of the Americas,
New York, NY 10104
Tel. (212) 390-9000
fgay@selendygay.com

*Counsel for the Sandy Hook Families*

**CERTIFICATE OF SERVICE**

       This is to certify that I have this the 17th day of August, 2020 served the foregoing pleading upon the Debtor's 40 largest unsecured creditors, all counsel of record requesting notice, all other persons requesting notice, and the Office of the Bankruptcy Administrator by electronic service through the Court's CM/ECF system and/or by placing a copy of same in the United States Mail, postage pre-paid.

                                              /s/ Tazewell T. Shepard IV
                                              Tazewell T. Shepard IV