# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

In re:

REMINGTON OUTDOOR COMPANY,
INC., *et al.*,[1]

    Debtors.

Chapter 11

Case No. 20-81688-11

Joint Administration Requested

## ORDER ESTABLISHING BIDDING PROCEDURES RELATING
## TO THE SALES OF ALL OR A PORTION OF THE DEBTORS' ASSETS

This matter having come before the Court upon the motion (the "**Motion**")[2] by Remington

Outdoor Company, Inc., ("**Remington**" or the "**Company**"), and its affiliated debtors and debtors

in possession (collectively the "**Debtors**") in the above-captioned Chapter 11 cases (collectively,

the "**Chapter 11 Cases**"), seeking entry of this order (this "**Bidding Procedures Order**") (i)

approving the proposed bidding procedures attached hereto as <u>Exhibit 1</u> (the "**Bidding**

**Procedures**") by which the Debtors will solicit and select the highest or otherwise best offer for

the sale of substantially all or a portion of their assets (the "**Acquired Assets**") through one or

more sales of the Acquired Assets (each, a "**Sale Transaction**" or "**Sale**"); (ii) establishing

procedures for the assumption and assignment of executory contracts and unexpired leases,

including notice of proposed cure amounts (the "**Assumption and Assignment Procedures**");

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405). The Debtors' corporate headquarters is located at 100 Electronics Blvd SW, Huntsville, Alabama 35824.

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Motion or the Bidding Procedures, as applicable.

44013472 v1

(iii) approving the form and manner of notice with respect to certain procedures, protections, schedules, and agreements described herein and attached hereto, including the procedures for the Debtors' selection of one or more stalking horse bidders (each, a "**Stalking Horse Bidder**"), if any, and the provision of Bid Protections (as defined below) to such Stalking Horse Bidder, if necessary; (iv) scheduling (a) an auction (the "**Auction**") if the Debtors receive two (2) or more timely and acceptable Qualified Bids (as defined below), and (b) a final hearing (the "**Sale Hearing**") to approve one or more Sales of the Acquired Assets; and (v) granting related relief; and it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors, and other parties-in-interest; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that the Motion is a core proceeding pursuant to 28 U.S.C. § 157; and adequate notice of the Motion and opportunity for objection having been given, with no objections having been filed, or all objections having been resolved or overruled, as the case may be; and it appearing that no other notice need be given; and after due deliberation and sufficient cause therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *General Order of Reference* of the United States District Court for the Northern District of Alabama dated July 16, 1984, as amended on July 17, 1984. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The predicates for the relief granted herein are Sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B. The legal and factual bases set forth in the Motion establish just cause for the relief granted herein. Entry of this Bidding Procedures Order is in the best interests of the Debtors and their respective estates, creditors, and all other parties in interest.

C.     The notice of the Motion, the Bidding Procedures Hearing, and the proposed entry of this Bidding Procedures Order was adequate and sufficient under the circumstances of the Chapter 11 Cases, and such notice complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  Accordingly, no further notice of the Motion, the Bidding Procedures Hearing, or this Bidding Procedures Order is necessary or required.

D.     The Debtors have demonstrated a compelling and sound business justification for the Court to grant the relief requested in the Motion, including, without limitation, to (i) approve the Bidding Procedures, including the procedures for selecting one or more Stalking Horse Bidders and the provision of the Bid Protections to be determined, (ii) establish the Assumption and Assignment Procedures, (iii) approve the form and manner of notice of all procedures, protections, schedules, and agreements described in the Motion and attached hereto, (iv) schedule a date for the (a) Auction and (b) Sale Hearing; and (v) grant related relief as set forth herein.  Such compelling and sound business justification, which was set forth in the Motion and on the record at the Bidding Procedures Hearing, including the *Declaration of Bradley C. Meyer in Support of Debtors' Cash Collateral Motion and Bidding Procedures Motion* (the "**Meyer Declaration**") and the *Declaration of Colin M. Adams in Support of Debtors' Cash Collateral Motion and Bidding Procedures Motion* (the "**Adams Declaration**") are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

E.     The Bidding Procedures, substantially in the form attached hereto as Exhibit 1 and incorporated herein by reference as if fully set forth in this Bidding Procedures Order, are fair, reasonable and appropriate and represent the best method for maximizing the value of the Debtors' estates.

F.　　The Debtors are authorized to pay the break-up fee and expense reimbursement comprising the Bid Protections.  The Bid Protections, to the extent payable under any Stalking Horse APA, (a)(x) are actual and necessary costs and expenses of preserving the Debtors' estate within the meaning of Section 503(b) of the Bankruptcy Code, and (y) shall be treated as allowed administrative claims against the Debtors' estates pursuant to Sections 105(a) and 364(c)(1) of the Bankruptcy Code, are commensurate to the real and material benefits conferred upon the Debtors' estates by the Stalking Horse Bidders, and (c) are fair, reasonable and appropriate, including in light of the size and nature of the Sale Transaction, the necessity to announce a sale transaction for the Acquired Assets, and the efforts that have been and will be expended by the Stalking Horse Bidders.  The Bid Protections are a material inducement for, and condition of, each Stalking Horse Bidder's execution of the applicable Stalking Horse APA.  Unless it is assured that the Bid Protections will be available, the Stalking Horse Bidders are unwilling to remain obligated to consummate the Sale Transaction or otherwise be bound under its Stalking Horse APA (including the obligations to maintain its committed offer while such offer is subject to higher or better offers as contemplated by the Bidding Procedures).

G.　　The Sale Notice and the Publication Notice, substantially in the forms attached hereto as Exhibit 2 and Exhibit 3, respectively, and incorporated herein by reference as if fully set forth in this Bidding Procedures Order, are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the sale of Acquired Assets, including the sale of Acquired Assets free and clear of all liens, claims, and encumbrances, the Sale Transaction(s), the Bidding Procedures, the Auction and the Sale Hearing, and no other or further notice is required.

H.     The Post-Auction Notice, substantially in the form attached hereto as <u>Exhibit 4</u> and incorporated herein by reference as if fully set forth in this Bidding Procedures Order, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Successful Bidder(s), and no other or further notice is required.

I.     The Assumption and Assignment Notice, substantially in the form attached hereto as <u>Exhibit 5</u> and incorporated herein by reference as if fully set forth in this Bidding Procedures Order, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the potential assumption and assignment of the Designated Contracts in connection with the sale of the Acquired Assets and the related Cure Costs, and no other or further notice is required.

J.     The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are adopted as such. To the extent any conclusions of law are findings of fact, they are adopted as such.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.     The Motion is granted as set forth herein.[3]

2.     All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the Bidding Procedures Hearing or by stipulation filed with the Court are overruled except as otherwise set forth herein.

---

[3] Notwithstanding anything to the contrary herein, the consummation of any Sale Transaction(s) is subject to entry of the Sale Order(s).

## I. The Timeline for the Sale

3. The Debtors are authorized to proceed with the Sale Transaction(s) in accordance with the Bidding Procedures and are authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures in accordance with the following timeline:

4. Deadline

| Deadline | Action |
|---|---|
| August 18, 2020 at 10:00 a.m. (prevailing Central Time) | Hearing to consider approval of the Bidding Procedures and entry of the Bidding Procedures Order |
| August 21, 2020 | Sale Notice Mailing Date |
| August 21, 2020 | Assumption and Assignment Service Date |
| September 1, 2020 at 4:00 p.m. (prevailing Central Time) | Sale Objection Deadline (defined below) excluding any objection based on identity of Stalking Horse Bidders, Successful Bidder or Backup Bidder or the form or substance of the Stalking Horse Bid, Successful Bid or Backup Bid |
| September 4, 2020 at 5:00 p.m. (prevailing Central Time) | Bid Deadline |
| September 8, 2020 at 12:00 p.m. (prevailing Central Time) | Reply Deadline (defined below) |
| September 8, 2020 by 4:00 p.m. (prevailing Central Time) or 14 days following service of the Supplemental Notice of Assumption and Assignment | Assumption and Assignment Objection Deadline (defined below) excluding any objection related to adequate assurance of future performance of any Stalking Horse Bidder, Successful Bidder or Backup Bidder |
| September 17, 2020 at 10:00 a.m. (prevailing Central Time) | Auction |
| September 21, 2020 | Post-Auction Notice |
| September 23, 2020 at 10:00 a.m. (prevailing Central Time) | Sale Hearing |

5.     For the avoidance of doubt, the Debtors reserve the right, and are authorized to, modify the above timeline and the Bidding Procedures (the "**Modifications**") in accordance with the provisions of the Bidding Procedures; *provided, however*, that the Debtors shall consult with the Consultation Parties or, to the extent provided therein, the Bid Consultation Parties, with respect to any Modifications.  The Committee's right to request an extension of the above timeline for cause is expressly reserved.

## II.     The Bidding Procedures

6.     The Bidding Procedures are approved in their entirety.  The Debtors are authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures in accordance therewith.  The failure to specifically include or reference a particular provision of the Bidding Procedures in this Bidding Procedures Order shall not diminish or impair the effectiveness of such provision.

7.     The Debtors are authorized, in accordance with the Bidding Procedures, to require Diligence Parties to submit written indications of interest specifying, among other things, the Acquired Assets proposed to be acquired, the amount and type of consideration to be offered, and any other material terms to be included in a bid by such party.

8.     The process and requirements associated with submitting a Qualified Bid are approved as fair, reasonable, appropriate and designed to maximize recoveries for the benefit of the Debtors' estates, creditors, and other parties in interest.  As further described in the Bidding Procedures, the Bid Deadline shall be **September 4, 2020 at 5:00 p.m. (prevailing Central Time)**.  Any disputes or objections to the selection of Qualified Bid(s), Successful Bid(s), or Backup Bid(s) (all as defined in the Bidding Procedures) shall be resolved by this Court at the Sale Hearing as set forth herein.

9.     The Debtors are authorized to conduct the Auction in accordance with the Bidding Procedures.  The Auction shall take place on **September 17, 2020 at 10:00 a.m. (prevailing Central Time)** virtually via video conferencing technology, or at such other place and time as the Debtors shall notify all Qualified Bidders and the Consultation Parties.

10.     The Prepetition Secured Creditors shall have the right, subject in all respects to the Bankruptcy Code and other applicable law and the satisfaction in cash or assumption of claims secured by senior liens, to credit bid all or any portion of their allowed secured claims pursuant to Section 363(k) of the Bankruptcy Code or other applicable law, in accordance with the applicable provisions of the Prepetition Credit Documents and any such credit bid shall be deemed a Qualified Bid subject to the Intercreditor Agreement (as defined in the D'Arcy Declaration); *provided*, *however*, that nothing herein or in the Bidding Procedures shall affect or in any way limit the right or ability of any party in interest, including the Committee, to object to the Prepetition Secured Creditors' right to credit bid, including the nature, amount, or scope of such credit bid, subject to the (a) applicable provisions of the Court's *Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing Use Of Cash Collateral, (II) Granting Adequate Protection, (III) Modifying Automatic Stay, (IV) Granting Related Relief, and (V) Scheduling A Final Hearing* Docket No. 90, including paragraph 20 and the Challenge Period (as defined therein), as the same may be modified in accordance with its terms and (b) Sale Objection Deadline (as defined below).

## III.    Stalking Horse Bidder and Bid Protections

11.     In accordance with the Bidding Procedures, the Debtors may designate one or more Stalking Horse Bidders for the various segments of their business and may enter into an asset purchase agreement with each Stalking Horse Bidder (each, a "**Stalking Horse APA**"), subject to higher or otherwise better offers at the Auction, which establishes a minimum Qualified Bid at the Auction with respect to the assets that are the subject thereof.

12.     Absent further order of the Court, the Stalking Horse APA shall (i) limit the break-up fee in favor of the Stalking Horse Bidder in the amount of no more than 3.5% of the cash consideration proposed to be paid at closing by the Stalking Horse Bidder under the applicable Stalking Horse APA (the "**Break-Up Fee**"); (ii) limit any reimbursement for the Stalking Horse Bidder's and its attorneys', accountants', investment bankers' and representatives' documented fees and expenses actually and reasonably incurred in negotiating and documenting the Stalking Horse APA, and in preserving and protecting Stalking Horse Bidder's rights and interests as buyer and lender in connection with the Chapter 11 Cases to an amount not to exceed 1.0% of the cash consideration proposed to be paid by at closing the Stalking Horse Bidder under the applicable Stalking Horse APA (the "**Expense Reimbursement**"); and/or (iii) set the initial overbid protection (the "**Minimum Overbid Increment**" and, together with the Break-Up Fee and the Expense Reimbursement, the "**Bid Protections**") in amounts to be determined by the Debtors in accordance with the Bidding Procedures. In the event that the Debtors determine that the Bid Protections must exceed the amounts set forth herein, the Court shall hold a hearing on the approval of any such greater Bid Protections on an expedited basis, upon the request of the Debtors.

13.     The Bid Protections, to the extent payable under the Stalking Horse APAs, shall (a) constitute an allowed administrative expense claim against the Debtors pursuant to Sections 105(a) and 364(c)(1) of the Bankruptcy Code. Subject to the foregoing, the Bid Protections shall be paid (i) in cash from the proceeds of any approved Sale or (ii) credited against the purchase price if, after an Auction, the Stalking Horse Bid, as enhanced at the Auction, is the Successful Bid and the Sale contemplated by the Stalking Horse APA (as enhanced at the auction) is consummated.

14.     In the event that the Debtors select one or more parties to serve as a Stalking Horse Bidder, upon such selection, the Debtors shall provide, to all parties on the Rule 2002 List, all

parties expressing an interest in the Acquired Assets and all parties holding liens on such Acquired Assets, three (3) business days' notice and an opportunity to object to the determination of such Stalking Horse Bidder and disclosure of the Bid Protections set forth in the Stalking Horse APA, and absent objection, the Debtors selection of such Stalking Horse Bidder shall be deemed designated without further order of the Court. To the extent necessary, the Debtors' right to seek this Court's approval of one or more Stalking Horse Bidders, with notice and a hearing, is hereby preserved.

### IV. Notice Procedures

15.     The form of Sale Notice substantially in the form attached hereto as <u>Exhibit 2</u> is approved.

16.     Within seven (7) days after the entry of this Bidding Procedures Order or as soon as reasonably practicable thereafter, the Debtors shall serve the Sale Notice and this Bidding Procedures Order, including the Bidding Procedures by first-class mail, postage prepaid, or, for those parties who have consented to receive notice by the Electronic Case Files ("**ECF**") system, by ECF, upon (i) all entities reasonably known to have expressed an interest in a transaction with respect to all or part of the Acquired Assets within the past two years; (ii) any parties identified by AlixPartners as potential bidders; (iii) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon or with respect to any of the Acquired Assets; (iv) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief granted herein; (v) counsel for the Committee; (vi) counsel to Cantor Fitzgerald Securities, as Priority Term Loan Agent under the Debtors' prepetition Priority Term Loan Credit Agreement; (vii) counsel to Ankura Trust Company, LLC, as FILO Agent under the Debtors' prepetition FILO Term Loan Agreement, and as Exit Term Loan Agent under the Debtors' prepetition Exit Term Loan Agreement; (viii) counsel to FILO Lenders; (ix) counsel to

the Stalking Horse Bidder, if any; (x) counsel to Whitebox Advisors LLC; (xi) counsel for the Restructuring Committee; (xii) counsel to the Huntsville Note holder; (xiii) the Bankruptcy Administrator; (xiv) the Securities and Exchange Commission; (xv) the Internal Revenue Service; (xvi) counsel to the United Mine Workers of America; and (xvii) all known creditors of the Debtors, including their contract counterparties; *provided, however*, that to the extent email addresses are available, parties referenced in this paragraph 15 may be served by email.

17.     Service of the Sale Notice as described above shall be sufficient and proper notice of the Sale Transaction with respect to known interested parties.

18.     The Publication Notice, substantially in the form attached hereto as <u>Exhibit 3</u>, is approved.  The Debtors are directed to publish the Sale Notice, as modified for publication, in the *New York Times*, on one occasion on the Mailing Date or as soon as reasonably practicable thereafter.  In addition, the Debtors are authorized, but not directed, to (i) publish the Sale Notice in additional publications as the Debtors deem appropriate and (ii) cause the Sale Notice to be posted on their case information website at https://cases.primeclerk.com/RemingtonOutdoor.

19.     Service of the Publication Notice as described above shall be sufficient and proper notice of the Sale Transaction with respect to all unknown parties.

20.     The form of the Post-Auction Notice, substantially in the form attached hereto as <u>Exhibit 4</u> is approved.  As soon as reasonably practicable after the conclusion of the Auction, the Debtors shall file on the docket, but not serve, the Post-Auction Notice identifying any Successful Bidder(s).

## V.     Assumption and Assignment Procedures

21.     The Assumption and Assignment Procedures, as detailed in the Motion and incorporated herein by reference as if fully set forth in this Bidding Procedures Order, are approved.

22. The Notice of Assumption and Assignment, substantially in the form attached hereto as Exhibit 5 is approved.

23. On or before **August 21, 2020** (any such date, the "**Assumption and Assignment Service Date**"), the Debtors shall file with the Court, and post on the Case Website at https://cases.primeclerk.com/RemingtonOutdoor, the Notice of Assumption and Assignment and Designated Contracts List. If no Cure Cost is listed on the Designated Contracts List, the Debtors believe that there is no Cure Cost, as of the date of such notice. On the Assumption and Assignment Service Date, the Debtors shall serve, via first-class mail, a customized version of the Notice of Assumption and Assignment that contains the DCL Instructions and Necessary Notice Information, but omits the Designated Contracts List, on all counterparties to the Designated Contracts. In addition, the Debtors shall serve, via first-class mail, a modified version of the Notice of Assumption and Assignment that contains the DCL Instructions and Necessary Notice Information, but omits the Designated Contracts List on all parties on the Rule 2002 Notice List. Service of such Notice of Assumption and Assignment as set forth herein shall be deemed proper, due, timely, good and sufficient notice of, among other things, the proposed assumption and assignment of the Designated Contracts and rights thereunder, the Cure Costs, and the procedures for objecting thereto, and no other or further notice is necessary.

24. Any objection by a counterparty to a Designated Contract (which does not, for the avoidance of doubt, include any objection regarding the adequate assurance of future performance of any Stalking Horse Bidder, Successful Bidder or the Backup Bidder) (a "**Designated Contract Objection**") must (i) be to the proposed assumption and assignment of the applicable Designated Contract or Cure Costs, if any; (ii) state, with specificity, the legal and factual basis thereof as well as what Cure Costs such objecting party believes are required, if any; and (iii) include appropriate

documentation in support thereof. All Designated Contract Objections must be filed and served on (i) counsel for the Debtors, O'Melveny & Myers LLP, 400 South Hope Street, 18th Floor, Los Angeles, CA 90071, Attn: Steve Warren (swarren@omm.com) and Jennifer Taylor (jtaylor@omm.com); (ii) co-counsel for the Debtors, Burr & Forman LLP, 420 North 20th Street, Suite 3400, Birmingham, Alabama 35203, Attn: Derek Meek (dmeek@burr.com) and Hanna Lahr (hlahr@burr.com); (iii) counsel for the Restructuring Committee, Akin Gump Strauss Hauer & Feld LLP, 2300 N. Field Street, Suite 1800, Dallas, TX 75201, Attn: Sarah Schultz (sschultz@akingump.com); (iv) counsel for the Committee, Fox Rothschild LLP, 345 California Street, Suite 2200, San Francisco, California 94104, Attn: Michael A. Sweet (msweet@foxrothschild.com) and Baker Donelson Bearman Caldwell & Berkowitz, P.C., 420 20th Street North, Birmingham, Alabama 35203, Attn: Matthew Cahill (mcahill@bakerdonelson.com) and Rita Hullett (rhullett@bakerdonelson.com); (v) the Bankruptcy Administrator, 400 Well Street, Decatur, Alabama 35602, Attn: Richard Blythe (richard_blythe@alnba.uscourts.gov); (vi) counsel to the Stalking Horse Bidder, if any; (vii) counsel to the FILO Lenders, Pillsbury Winthrop Shaw Pittman LLP, Four Embarcadero Center, 22nd Floor, San Francisco, CA 94111-5998, Attn: Joshua D. Morse (joshua.morse@pillsburylaw.com) and Andrew V. Alfano (andrew.alfano@pillsburylaw.com); (viii) counsel to Whitebox Advisors LLC, Brown Rudnick LLP, One Financial Center, Boston, Massachusetts 02111, Attn: Andreas Andromalos (aandromalos@brownrudnick.com) and Tia C. Wallach (twallach@brownrudnick.com); (ix) all parties that have requested notice in the Chapter 11 Cases (collectively (i)–(ix), the "**Objection Recipients**"); and (x) counsel to any Successful Bidder(s), if known on the Sale Objection Deadline no later than 4:00 p.m. (prevailing Central Time) fourteen (14) days following the

Assumption and Assignment Service Date (the "**Assumption and Assignment Objection Deadline**").

25.     If a Designated Contract Objection is not consensually resolved before the Sale Hearing, the amount to be paid or reserved with respect to such objection shall be determined at the Sale Hearing, such later hearing date that the Debtors determine in their discretion, or such other date determined by this Court.

26.     Any time after the Assumption and Assignment Service Date and before the closing of a Sale Transaction, the Debtors reserve the right, and are authorized but not directed, to (i) supplement the Designated Contracts List with previously omitted Designated Contracts in accordance with the definitive agreement for a Sale Transaction, (ii) remove a Designated Contract from the list of contracts that a Successful Bidder proposes be assumed and assigned to it in connection with a Sale Transaction, or (iii) modify the previously stated Cure Cost associated with any Designated Contract.

27.     In the event the Debtors exercise any of the rights listed above, the Debtors shall promptly serve the Supplemental Notice of Assumption and Assignment by electronic transmission, hand delivery, or overnight mail on the counterparty (and its attorney, if known) to each Designated Contract listed on the Supplemental Notice of Assumption and Assignment at the last known address available to the Debtors.  Each Supplemental Notice of Assumption and Assignment shall set forth (i) the name and address of the counterparty to the Designated Contract listed thereon; (ii) the proposed effective date of the assignment (subject to the right of the applicable Successful Bidder, if any, to withdraw such request for assumption and assignment of that Designated Contract prior to the closing of the applicable Sale Transaction); (iii) sufficient information to identify the Designated Contract; (iv) the Cure Costs, if any; and (v) proposed

adequate assurance, if known on the Assumption and Assignment Service Date. The Debtors are authorized, but not directed, to modify the Supplemental Notice of Assumption and Assignment as necessary and appropriate to provide customized individual notice to each Designated Contract counterparty. In addition, the Debtors are authorized, but not directed, to supplement the Designated Contract List on the Case Website with any additional Designated Contracts as the Debtors deem appropriate in their discretion. Service of such Supplemental Notice of Assumption and Assignment as set forth herein shall be deemed proper, due, timely, good and sufficient notice of, among other things, the proposed assumption and assignment of the Designated Contracts and rights thereunder, the Cure Costs, and the procedures for objecting thereto, and no other or further notice is necessary.

28.     Any objection by a counterparty to a Designated Contract listed on a Supplemental Notice of Assumption and Assignment (which does not, for the avoidance of doubt, include any objection regarding the adequate assurance of future performance of any Stalking Horse Bidder, Successful Bidder or the Backup Bidder) (a "**Supplemental Designated Contract Objection**") must (i) be to the proposed assumption and assignment of the applicable Designated Contract or the proposed Cure Costs, if any; (ii) state, with specificity, the legal and factual basis thereof as well as what Cure Costs such objecting party believes are required, if any; (iii) include appropriate documentation in support of the objection; and (iv) be filed and served on the Objection Recipients no later than fourteen (14) days from the date of service of such Supplemental Notice of Assumption and Assignment.

29.     If a Supplemental Designated Contract Objection is not consensually resolved by the proposed effective date of assignment of the Designated Contract that is the subject of a Supplemental Designated Contract Objection, the Debtors shall seek an expedited hearing before

the Court (a "**Supplemental Designated Contract Hearing**") to determine the Cure Costs, if any, and approve the assumption of the relevant Designated Contracts. If there is no such objection, then the Debtors shall obtain an order of this Court, including by filing a certification of no objection, (a "**Supplemental Designated Contract Order**") fixing the Cure Costs and approving the assumption of any Designated Contract listed on a Supplemental Notice of Assumption and Assignment.

30.     Absent the filing of a Designated Contract Objection or Supplemental Designated Contract Objection and a subsequent order of the Court establishing an alternative Cure Cost, the Cure Costs, if any, set forth in the Notice of Assumption and Assignment (or Supplemental Notice of Assumption and Assignment) shall be controlling, notwithstanding anything to the contrary in any Designated Contract or any other document, and the counterparty to the Designated Contract will be deemed to have consented to the assumption, assignment, and sale of the Designated Contract and the Cure Costs, if any, and will be forever barred from asserting any other claims related to such Designated Contract against the Debtors or the applicable Successful Bidder, or the property of any of them, except with respect to adequate assurance of future performance by such Successful Bidder. For the avoidance of doubt, any objections to the proposed form of adequate assurance of future performance of any Successful Bidder (other than a Stalking Horse Bidder) must be raised at the Sale Hearing or Supplemental Designated Contract Hearing, as applicable, and will be resolved at the hearing at which it is raised or, in the Debtors' discretion, adjourned to a later hearing.

31.     The inclusion of a Designated Contract on the Notice of Assumption and Assignment (or Supplemental Notice of Assumption and Assignment) will not (a) obligate the Debtors to assume any Designated Contract listed thereon nor the Successful Bidder(s) to take

assignment of such Designated Contract or (b) constitute any admission or agreement of the Debtors that such Designated Contract is an "executory" contract. Only those Designated Contracts that are included on a schedule of assumed and Acquired Contracts attached to the final purchase agreement with the Successful Bidder(s) (each, an "**Acquired Contract**") will be assumed and assigned to the Successful Bidder(s).

32. Assignment by the Debtors to the Successful Bidder of a contract, lease or any other liability assumed under Section 365 of the Bankruptcy Code or otherwise relieves the Debtors and their estates from any such liability so assigned.

## VI. The Sale Hearing

33. A Sale Hearing to (i) approve a sale of a portion or substantially all of the Acquired Assets to the Successful Bidder(s) and (ii) authorize the assumption and assignment of certain executory contracts and unexpired leases shall be held on **September 23, 2020 at 10:00 a.m. (prevailing Central Time)**, and may be adjourned or rescheduled without notice, subject to paragraph 4 of this Bidding Procedures Order. At the Sale Hearing, the Debtors will seek Bankruptcy Court approval of the Successful Bid(s) and the Backup Bid(s) (if any). Unless the Bankruptcy Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on matters relating to the Sale Transaction(s) and there will be no further bidding at the Sale Hearing. In the event that the Successful Bidder(s) cannot or refuses to consummate the Sale(s) because of the breach or failure on the part of such Successful Bidder, the Debtors may, in accordance with the Bidding Procedures, designate the Backup Bid to be the new Successful Bid and the Backup Bidder to be the new Successful Bidder, and the Debtors shall be authorized, but not required, to consummate the applicable transaction with the Backup Bidder without further order of the Bankruptcy Court.

34.    Any and all objections, if any, to any Sale Transaction (but excluding any objection based on the specific identity of any Stalking Horse Bidder, the form or substance of any Stalking Horse APA, the specific identity of the Successful Bidder or the Backup Bidder, or the form or substance of the Successful Bid or the Backup Bid) must be filed no later than **September 1, 2020 at 4:00 p.m. (prevailing Central Time)** (the "**Sale Objection Deadline**").  Any and all such objections must be served on the Objection Recipients and counsel to any Successful Bidder(s), if known on the Sale Objection Deadline.  All replies to such objections must be filed by **September 8, 2020 at 12:00 p.m.** (prevailing Central Time) (the "**Reply Deadline**").

35.    Any party failing to timely file an objection to any Sale Transaction will be forever barred from objecting and will be deemed to have consented to any Sale Transaction, including the transfer of the Debtors' right, title and interest in, to, and under the Debtors' Acquired Assets free and clear of any and all liens, claims, encumbrances and other interests in accordance with a definitive agreement for any Sale Transaction.

36.    Promptly following the Auction, the Debtors shall serve the Post-Auction Notice. The Debtors propose that any objections regarding the adequate assurance of future performance of the Successful Bidder or the Backup Bidder (other than the Stalking Horse Bidder) may be raised at the Sale Hearing.

**VII.    Other Provisions**

37.    Notwithstanding anything herein or in the Bidding Procedures to the contrary, the Debtors shall not be permitted to modify the consultation rights of the Consultation Parties or the Bid Consultation Parties in the Bidding Procedures absent further order of this Court or the consent of any affected Consultation or Bid Consultation Parties.

38.    Oneida's rights and priority in connection with any security interests it held in any assets of the Debtors pre-petition are hereby preserved and retained by Oneida to the extent they

existed pre-petition and any such security interests shall attach to proceeds of such assets with the same priority, extent, validity, avoidability and enforceability. Nothing herein shall constitute a finding or ruling by this Court that any such security interests are valid, senior, enforceable, perfected or non-avoidable. Moreover, nothing shall prejudice the rights of any party in interest including, but not limited to, the Debtors and any Committee to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any such security interest.

39. The Debtors are authorized and empowered to take such action as may be necessary to implement and effect the terms and requirements established under this Bidding Procedures Order.

40. This Bidding Procedures Order shall be binding on and inure to the benefit of the Debtors, including any Chapter 7 or Chapter 11 trustee or other fiduciary appointed for the estates of the Debtors.

41. This Bidding Procedures Order shall constitute the findings of fact and conclusions of law and shall take immediate effect upon execution hereof.

42. To the extent this Bidding Procedures Order is inconsistent with any prior order or pleading with respect to the Motion in these cases, the terms of this Bidding Procedures Order shall govern.

43. To the extent any of the deadlines set forth in this Bidding Procedures Order do not comply with the Local Rules, such Local Rules are waived and the terms of this Bidding Procedures Order shall govern.

44. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014, or otherwise, this Court, for good cause shown, orders that the terms and conditions of this Bidding Procedures Order shall be immediately effective and enforceable upon its entry.

45.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Bidding Procedures Order, including, but not limited to, any matter, claim, or dispute arising from or relating to the Bidding Procedures, any Stalking Horse APA, and the implementation of this Bidding Procedures Order.

Dated this the 20th day of August, 2020.

/s/ Clifton R. Jessup, Jr.
Clifton R. Jessup, Jr.
United States Bankruptcy Judge

**Exhibit 1**

**Bidding Procedures**