**REMINGTON OUTDOOR COMPANY, INC.**
**BIDDING PROCEDURES[1]**

### Introduction

Remington Outdoor Company, Inc. and several of its subsidiaries (collectively, the "**Debtors**")[2] are debtors in possession in Chapter 11 cases (jointly administered under Case No. 20-81688-11) pending in the United States Bankruptcy Court for the Northern District of Alabama (the "**Bankruptcy Court**").

By the Sale Motion, the Debtors sought approval of, among other things, the procedures (the "**Bidding Procedures**") by which they will solicit and select the highest or otherwise best offer for the sale of all or substantially all of their assets (the "**Acquired Assets**") either through one sale to a Successful Bidder (as defined below) or multiple sales to multiple Successful Bidders.

The Debtors will consider, without limitation: (1) bids to acquire all of the Debtors' operating segments (the "**Whole Company**"), including all or substantially all of their assets (a "**Whole Company Bid**") or (2) separate bids to acquire (x) all or a portion of the Debtors' business segment relating to the design, manufacture and marketing of ammunition (the "**Ammunitions Business**"), including the production facilities owned or operated by the Debtors in Lonoke, Arkansas, and Mona, Utah, under the *Remington* and *Barnes Bullets* brands (an "**Ammunitions Business Bid**") and (y) all or a portion of the Debtors' business segment relating to the design, manufacture and marketing of shotguns, rifles, handguns and modular firearms and related components (the "**Firearms Business**") and all or substantially of the Debtors' remaining assets not subject to an Ammunitions Business Bid (a "**Firearms Business Bid**").

On [____], 2020, the Bankruptcy Court entered an order (the "**Bidding Procedures Order**"), which, among other things, approved the Bidding Procedures set forth below pursuant to which the Debtors will solicit bids for the purchase of substantially all or a portion of their Acquired Assets.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Debtors' *Motion for (I) an Order Establishing Bidding Procedures and Granting Related Relief and (II) an Order or Orders Approving the Sale of the Assets* (the "**Sale Motion**").

[2] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405). The Debtors' corporate headquarters is located at 100 Electronics Blvd SW, Huntsville, Alabama 35824.

## Key Dates

These Bidding Procedures provide interested parties with the opportunity to complete diligence, to submit competing bids for all or a portion of the Acquired Assets, and to participate in an auction to be conducted by the Debtors (the "**Auction**").

The key dates for the sale process are as follows:

| Deadline | Action |
|---|---|
| August 18, 2020 at 10:00 a.m. (prevailing Central Time) | Hearing to consider approval of the Bidding Procedures and entry of the Bidding Procedures Order |
| August 21, 2020 | Sale Notice Mailing Date |
| August 21, 2020 | Assumption and Assignment Service Date |
| September 1, 2020 at 4:00 p.m. (prevailing Central Time) | Sale Objection Deadline (defined in the Bidding Procedures Order) excluding any objection based on identity of Stalking Horse Bidders, Successful Bidder or Backup Bidder or the form or substance of the Stalking Horse Bid, Successful Bid or Backup Bid |
| September 4, 2020 at 5:00 p.m. (prevailing Central Time) | Bid Deadline |
| September 8, 2020 at 12:00 p.m. (prevailing Central Time) | Reply Deadline (defined in the Bidding Procedures Order) |
| September 8, 2020 by 4:00 p.m. (prevailing Central Time) or 14 days following service of the Supplemental Notice of Assumption and Assignment | Assumption and Assignment Objection Deadline (defined in the Bidding Procedures Order) excluding any objection related to adequate assurance of future performance of any Stalking Horse Bidder, Successful Bidder or Backup Bidder |
| September 17, 2020 at 10:00 a.m. (prevailing Central Time) | Auction |
| September 21, 2020 | Post-Auction Notice |
| September 23, 2020 at 10:00 a.m. (prevailing Central Time) | Sale Hearing |

## Stalking Horse APA

The Debtors will continue to solicit stalking horse bids for the Debtors' assets through the Bid Deadline. In the event that the Debtors designate a stalking horse bidder (a "**Stalking Horse Bidder**") and enter into an asset purchase agreement with the Stalking Horse Bidder (a "**Stalking Horse APA**") on or before the Bid Deadline, the Debtors will provide three (3) business days' notice of the designation of the Stalking Horse Bidder and an opportunity to object to the designation of such Stalking Horse Bidder and disclosure of any Bid Protections set forth in the Stalking Horse APA.

## Access to Debtors' Diligence Materials.

To receive access to due diligence materials and to participate in the bidding process, an interested party must submit to the Debtors (i) an executed confidentiality agreement in form and substance satisfactory to the Debtors (which, for the avoidance of doubt, may be substantially in the form attached hereto as Exhibit 1) or may be a confidentiality agreement already in existence between such party and the Debtors, (ii) evidence demonstrating the party's financial ability to consummate a sale transaction for the Acquired Assets (a "**Sale Transaction**") or, if such party has been formed for the purpose of entering into a Sale Transaction, evidence from such party's equity holder(s), sponsor(s) or other financial backer(s) ("**Bid Sponsor**"), demonstrating such Bid Sponsor's financial ability to consummate a Sale Transaction, and (iii) a statement that such party has a bona fide interest in purchasing all or some of the Acquired Assets.

A party who, in the Debtors' reasonable discretion, satisfies the requirements set forth in the immediately preceding sentence for receiving access to diligence materials shall be a "**Diligence Party**." As promptly as practicable after the Debtors determine that a party is a Diligence Party, the Debtors will deliver to the Diligence Party access to the Debtors' confidential electronic data room. The Debtors will afford any Diligence Party the time and opportunity to conduct reasonable due diligence before the Bid Deadline (as defined below). Notwithstanding the foregoing, the Debtors reserve the right to withhold any diligence materials that the Debtors determine are sensitive or otherwise not appropriate for disclosure to a Diligence Party who the Debtors determine is a competitor of the Debtors or is affiliated with any competitor of the Debtors. Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be a Diligence Party. The Debtors shall not exclude a party from diligence who has complied with subsections (i) and (ii) of the preceding paragraph, unless they have first consulted with the Consultation Parties (as defined below) regarding such determination.

All due diligence requests must be directed to Ducera Partners, Attn: Bradley Meyer (bmeyer@ducerapartners.com) and O'Melveny & Myers LLP, Attn: Logan Tiari (ltiari@omm.com).

Each Diligence Party and Qualified Bidder (as defined below) shall comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding such Bidder and its contemplated transaction. Failure by a Diligence Party to comply with requests for additional information and due diligence access may be a basis for the Debtors to determine, in consultation with the Consultation Parties, that such Bidder is not a

Qualified Bidder. Failure by a Qualified Bidder to comply with requests for additional information and due diligence access may be a basis for the Debtors to determine, in consultation with the Consultation Parties, that a Bid made by such Qualified Bidder is not a Qualified Bid. The Debtors reserve the right, in their discretion, in consultation with the Consultation Parties, to permit a Diligence Party or Qualified Bidder to remedy any such failure to comply.

## Indications of Interest

The Debtors reserve the right, in consultation with the Consultation Parties, to require Diligence Parties to submit written indications of interest specifying, among other things, the Acquired Assets proposed to be acquired, the amount and type of consideration to be offered, and any other material terms to be included in a Bid by such party. A Diligence Party that fails to comply with any such request by the Debtors, in the Debtors' discretion and in consultation with the Consultation Parties, may not be provided further diligence access or be permitted to participate further in the auction process. The Debtors also reserve the right to exclude any Diligence Party (prior to its submission of a Qualified Bid) from continuing in the auction process if the Debtors determine, in consultation with the Consultation Parties, that the consideration proposed to be paid by such Diligence Party is insufficient.

## Auction Qualification Process

To be eligible to participate in the Auction, each offer, solicitation, or proposal (each, a "**Bid**"), and each party submitting such a Bid (each, a "**Bidder**") must satisfy each of the conditions set forth below, as determined by the Debtors. A Bid will not be considered qualified for the Auction if such Bid does not satisfy each of the following conditions (provided, that the Debtors, in consultation with the Bid Consultation Parties may waive or modify the application of such conditions to any Bid):

(a) <u>Good Faith Deposit</u>: Each Bid for all or a portion of the Acquired Assets must be accompanied by a deposit (a "**Good Faith Deposit**") submitted by wire transfer of immediately available funds to an account identified by the Debtors. Each Good Faith Deposit must equal (1) in the case of a Bid for all or a portion of the Acquired Assets, the amount of 10% of the cash consideration offered in such Bid or (2) such other amount as the Debtors determine, in consultation with the Bid Consultation Parties (as defined below); *provided*, *however*, that any Prepetition Secured Creditor submitting a Bid primarily composed of a credit bid pursuant to Section 363(k) of the Bankruptcy Code shall not be required to submit a Good Faith Deposit for the portion of the Bid consisting of a credit bid.

(b) <u>Assets</u>: Each Bid must clearly state which of the Acquired Assets the Qualified Bidder is agreeing to purchase and assume, including whether the Bid is a Firearms Bid, an Ammunitions Bid, a Whole Company Bid, or other Bid.

(c) <u>Assumption of Liabilities</u>: Each Bid must clearly state which liabilities and obligations of the Debtors the Qualified Bidder is agreeing to assume.

(d) <u>Bids for Portions of the Assets</u>: A Bid may offer to purchase (i) the Ammunitions Business, (ii) the Firearms Business, (iii) the Whole Company or (iv) a portion of

4

the foregoing. The Debtors may, in consultation with the Bid Consultation Parties, waive or modify the application of the Qualified Bid conditions in respect of Bids.

(e) <u>Purchase Price</u>: Each Bid must clearly set forth the purchase price to be paid for the Acquired Assets proposed to be acquired including and identifying separately any cash and non-cash components. Any Whole Company Bid must clearly set forth the portion of the purchase price applicable to each of the Firearms Business and the Ammunitions Business.

(f) <u>Same or Better Terms</u>: In the event the Debtors enter into a Stalking Horse APA, each Bid for any Acquired Assets (alone or combined with Bids for other Acquired Assets) must be on terms that, in the Debtors' business judgment, in consultation with the Bid Consultation Parties, are the same or better than the terms of the Stalking Horse APA applicable to the assets that are the subject of such Bid after taking account of the Bid Protections.

(g) <u>Executed Agreement</u>: Each Bid must be based on the form asset purchase agreement (the "**Form APA**") which may be obtained from Ducera Partners, Attn: Bradley Meyer (bmeyer@ducerapartners.com) and must include executed transaction documents, signed by an authorized representative of such Bidder, pursuant to which the Bidder proposes to effectuate a Sale Transaction (the "**Modified Purchase Agreement**"). A Bid shall also include a copy of the Modified Purchase Agreement marked against the Form APA to show all changes requested by the Bidder (including those related to purchase price). Each such Modified Purchase Agreement must provide for payment in cash at closing of the Expense Reimbursement and Break-Up Fee to any Stalking Horse Bidder that entered into a Stalking Horse APA applicable to the assets that are the subject of such Bid.

(h) <u>Designation of Assigned Contracts and Leases, Payment of Cure Amounts</u>: A Bid must identify any and all executory contracts and unexpired leases of the Debtors that the Bidder wishes to have assumed and assigned to it at closing and provide for the payment of all cure amounts payable with respect to such contracts and leases under the Bankruptcy Code.

(i) <u>Transition Services Agreement</u>: A Bid that is not a Whole Company Bid must indicate its intentions with respect to entering into a transition services agreement with any Successful Bidder for the remainder of the Debtors' assets not subject to such Bid.

(j) <u>Corporate Authority</u>: A Bid must include written evidence reasonably acceptable to the Debtors demonstrating appropriate corporate authorization to consummate the proposed Sale Transaction, *provided* that, if the Bidder is an entity specially formed for the purpose of effectuating the Sale Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the Sale Transaction by the Bid Sponsor(s) of such Bidder.

(k) <u>Disclosure of Identity of Bidder</u>: A Bid must fully disclose the identity of each entity that will be bidding for or purchasing the Acquired Assets or otherwise participating in connection with such Bid (including any Bid Sponsor(s) if the Bidder is an entity specifically formed for the purpose of effectuating the Sale Transaction), and the complete terms of any such participation, including any binding agreements, arrangements, or understandings concerning a collaborative or joint bid or any other combination concerning the proposed Bid.

(l) <u>Proof of Financial Ability to Perform</u>: A Bid must include written evidence that the Debtors reasonably conclude, in consultation with their advisors and the Bid Consultation Parties, demonstrates that the Bidder has the necessary financial ability to (i) close the Sale Transaction and (ii) provide adequate assurance of future performance under all contracts to be assumed and assigned in such Sale Transaction. Such information must include, *inter alia*, the following:

  (1) contact names and numbers for verification of financing sources;

  (2) evidence of the Bidder's internal resources and proof of debt funding commitments from a recognized financial institution and, if applicable, equity commitments in an aggregate amount equal to the cash portion of such Bid (including, if applicable, the Bidder's payment of cure amounts) or the posting of an irrevocable letter of credit from a recognized banking institution issued in favor of the Debtors in such amount, in each case, as are needed to close the Sale Transaction;

  (3) if the Bidder is an entity specifically formed for the purpose of effectuating the Sale Transaction, a written commitment from such entity's Bid Sponsor(s) to be responsible for such entity's obligations in connection with the bidding process;

  (4) the Bidder's current financial statements (audited if they exist) or other similar financial information reasonably acceptable to the Debtors;

  (5) a description of the Bidder's pro forma capital structure; and

  (6) any such other form of financial disclosure or credit-quality support information or enhancement reasonably requested by the Debtors, in consultation with the Bid Consultation Parties, demonstrating that such Bidder has the ability to close the Sale Transaction.

(m) <u>Regulatory and Third Party Approvals</u>: A Bid must set forth each regulatory and third-party approval required for the Bidder to consummate the Sale Transaction, if any, and the time period within which the Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty (30) days following execution and delivery of the Modified Purchase Agreement, those actions the Bidder will take to ensure receipt of such approval(s) as promptly as possible); *provided, however*, that the timing and likelihood of receiving any such

regulatory and third-party approvals will be a consideration in determining the highest or otherwise best Bid.

(n) <u>Contingencies</u>: Each Bid may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence.

(o) <u>Irrevocable</u>: Each Bid must expressly provide that (1) the Bidder is prepared to consummate the transaction set forth in the Modified Purchase Agreement promptly following entry of the Sale Order and satisfaction of the closing conditions (if any) set forth in the Modified Purchase Agreement, and (2) the offer reflected in such Bid shall remain open and irrevocable until the conclusion of the Auction, *provided* that if such Bid is accepted as the Successful Bid or the Backup Bid (each as defined herein), such Bid shall continue to remain open and irrevocable as provided under "Closing the Auction; Successful Bidder" and "Backup Bidder" below.

(p) <u>Time Frame for Closing</u>: A Bid must be reasonably likely (based on available financing, antitrust or other regulatory issues) to be consummated within an acceptable timeframe.

(q) <u>Acknowledgment</u>: Each Bid must include an acknowledgment and representation by an authorized person of the Bidder that the Bidder: (i) has had an opportunity to conduct any and all required due diligence regarding the Acquired Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Acquired Assets in making its Bid; (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Acquired Assets or the completeness of any information provided in connection therewith or with the Auction, except as expressly stated in the Modified Purchase Agreement; (iv) has authorization and approval necessary to close on the delivered Modified Purchase Agreement; (v) has irrevocable financing commitment or cash on hand to consummate the proposed sale and pay the purchase price in cash; (vi) is not entitled to any expense reimbursement, break-up fee, or similar type of payment in connection with its Bid; (vii) has not and will not engage in any collusion with respect to any Bids, the Auction or the Sale; (viii) agrees to abide by the terms of the Bidding Procedures; and (ix) after the conclusion of the Auction, if any, will not submit a Bid or seek to reopen the Auction.

(r) <u>Ilion Facility</u>: Any Bid that includes the Firearms Business must indicate whether the Bidder intends to acquire the Ilion plant. If a Bid includes the Ilion plant it should state whether the Bidder will assume the collective bargaining agreement applicable to that facility and if so, any conditions to such assumption or other requirements related to the collective bargaining agreement. If a Bid includes acquisition of the Ilion plant but does not provide for the assumption of the collective bargaining agreement, the Bid should indicate the reduction in the

purchase price if the Ilion plant is excluded and an agreement to close notwithstanding such exclusion subject to the aforementioned reduction.

(s)    <u>Bid Deadline</u>:  Each Bid must be received by each of the following parties, in writing, on or before **September 4, 2020 at 5:00 p.m. (prevailing Central Time)** or such earlier date as may be designated by the Debtors in consultation with the Consultation Parties (the "**Bid Deadline**"):  (i) counsel for the Debtors, O'Melveny & Myers LLP, Attn: Steve Warren (swarren@omm.com) and Jennifer Taylor (jtaylor@omm.com); (ii) co-counsel for the Debtors, Burr & Forman LLP, Attn: Derek Meek (dmeek@burr.com) and Hanna Lahr (hlahr@burr.com); (iii) counsel for the Restructuring Committee, Akin Gump Strauss Hauer & Feld LLP, Attn: Sarah Schultz (sschultz@akingump.com) and Chance Hiner (chiner@akingump.com); and (iv) advisors for the Debtors, Ducera Partners, Attn: Bradley Meyer (bmeyer@ducerapartners.com).  Promptly upon receipt, the Debtors shall provide all Bids to the Bid Consultation Parties.

A Bid received from a Bidder on or before the Bid Deadline that meets the requirements set forth above for the applicable Acquired Assets shall constitute a "**Qualified Bid**" for such Acquired Assets, and such Bidder shall constitute a "**Qualified Bidder**" for such Acquired Assets. Any Stalking Horse APA will be deemed a Qualified Bid for all purposes, and any Stalking Horse Bidder will be deemed to be a Qualified Bidder.

Notwithstanding anything else contained herein, the Prepetition Secured Creditors and the Huntsville Note holder shall have the right, subject in all respects to the Bankruptcy Code and other applicable law and the satisfaction in cash or assumption of claims secured by senior liens, to credit bid all or any portion of their allowed secured claims at the Auction pursuant to Section 363(k) of the Bankruptcy Code or other applicable law, in accordance with the applicable terms of the Prepetition Credit Documents or Huntsville Note, as applicable, and any such credit bid shall be deemed a Qualified Bid, subject to the Intercreditor Agreement (as defined in the D'Arcy Declaration) and the rights of the Committee as set forth in paragraph 9 of the Bidding Procedures Order.

## Stalking Horse Bid

Recognizing a Stalking Horse Bidder's expenditure of time, energy and resources in connection with the proposed Sale Transaction set forth in any Stalking Horse APA, and the benefit that those efforts provided to all interested parties, if, among other circumstances set forth in the Stalking Horse APA, the Stalking Horse Bidder is not the Successful Bidder, the Debtors may seek authority to pay to such Stalking Horse Bidder a Break-Up Fee and Expense Reimbursement (collectively, the "**Bid Protections**"), which will be governed by the provisions of the Stalking Horse APA, if any, and the Bidding Procedures Order.  The Debtors will not provide Bid Protections to a Stalking Horse Bidder if such Stalking Horse Bidder's Bid is composed of a credit bid pursuant to Section 363(k) of the Bankruptcy Code.

Other than as provided by order of the Bankruptcy Court prior to entry of the Bidding Procedures Order, no party submitting a Bid shall be entitled to a break-up fee or expense

reimbursement except for the Bid Protections for the Stalking Horse Bidder that are approved by the Bankruptcy Court. Any substantial contribution claims by any Bidder are deemed waived.

**Highest or Otherwise Best Bid**

Whenever these Bidding Procedures refer to the highest or otherwise best Qualified Bid, such determination shall take into account any factors the Debtors, in consultation with the Bid Consultation Parties, reasonably deem relevant to the value of the Qualified Bid to the estates and may include, but are not limited to, the following (i) the amount and nature of the consideration, including any Assumed Liabilities (as defined in the Modified Purchase Agreement); (ii) the number, type and nature of any changes to the Form APA requested by each Qualified Bidder; (iii) the extent to which such modifications are likely to delay closing of the sale of the Acquired Assets and the cost to the Debtors of such modifications or delay; (iv) the likelihood of the Qualified Bidder being able to close the proposed transaction (including obtaining any required regulatory approvals) and the timing thereof; and (v) the net benefit to the Debtors' estates (collectively, the "**Bid Assessment Criteria**"). To the extent that a Qualified Bid includes an offer for the Ilion plant, the Debtors reserve the right to consider whether it provides for the assumption of the collective bargaining agreement applicable to that facility and if it does not to reduce the value of or reject the Bid. For the avoidance doubt, in evaluating Bids, the Debtors may take into consideration any benefit to the Debtors' bankruptcy estates from any assumption of liabilities to the Debtors, including any liabilities under the Pension Plan, the assumption of the sponsorship of all, any, or a portion of the Pension Plan.

**Auction**

If two (2) or more Qualified Bids for the same Acquired Assets are received by the Bid Deadline, the Debtors will conduct the Auction to determine the highest or otherwise best Qualified Bid. Only Qualified Bidders may participate in the Auction.

If no Qualified Bid for the Acquired Assets is received by the Bid Deadline (other than that of any Stalking Horse Bidder), the Debtors, in consultation with the Consultation Parties, may cancel the Auction and seek approval of the transaction contemplated by the Stalking Horse APA, if any.

**Procedures for Auction**

The Auction shall take place on **September 17, 2020 at 10:00 a.m.** (prevailing Central Time) virtually via video-conferencing technology, or such other place and time as the Debtors shall notify all Qualified Bidders and the Consultation Parties. The Auction shall be conducted according to the following procedures:

Only the Debtors, the Consultation Parties, any Stalking Horse Bidder, any other Qualified Bidders, and/or other party as the Debtors may determine to include in their discretion, in each case along with their representatives and advisors, shall be entitled to attend the Auction (such attendance to be in person via video-conference) and only Qualified Bidders will be entitled to make any Overbids (as defined below) at the Auction.

*The Debtors Shall Conduct the Auction.*

9

The Debtors and their advisors shall direct and preside over the Auction, which shall be transcribed or recorded. Other than as expressly set forth herein, the Debtors (in consultation with the Consultation Parties or, to the extent provided herein, the Bid Consultation Parties) may conduct the Auction in the manner they determine will result in the highest or otherwise best offer for any of the Acquired Assets. The Debtors shall use their best efforts to, at least 24 hours prior to commencement of the Auction, provide the Consultation Parties and each Qualified Bidder participating in the Auction with a complete and correct copy of the proposed purchase agreement (either the Stalking Horse APA, if any, or the Modified Purchase Agreement) associated with the Qualified Bid deemed by the Debtors to be the highest or otherwise best Bid for the Acquired Assets (such highest or otherwise best Qualified Bid, the "**Auction Baseline Bid**"). At the start of the Auction, the Debtors shall describe the material terms of the Auction Baseline Bid and each Qualified Bidder participating in the Auction must confirm that (a) it has not engaged in any collusion with respect to the bidding or sale of any of the Acquired Assets described herein, (b) it has reviewed, understands, and accepts the Bidding Procedures, (c) it has consented to the core jurisdiction of the Bankruptcy Court (as described more fully below), and (d) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder.

*Terms of Overbids.*

An "**Overbid**" is any Bid made at the Auction, in accordance with the requirements set forth herein, subsequent to the Debtors' announcement of the respective Auction Baseline Bid. To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

(a)  Minimum Overbid Increments: The initial Overbid, if any, shall provide for total consideration to the Debtors with a value that exceeds the value of the consideration under the Auction Baseline Bid by an incremental amount that is not less than the sum of (x) $500,000 (the "**Minimum Overbid Increment**") plus (y) the aggregate amount of any Bid Protections, if any, without duplication, under any Stalking Horse APA applicable to the assets that are the subject of the Overbid, and each successive Overbid shall exceed the then-existing Overbid by an incremental amount that is not less than the Minimum Overbid Increment. In considering the value of any Overbid, the Debtors shall take into account the effect of the Bid Protections. In the event a Stalking Horse Bidder is designated prior to the Bid Deadline, if such Stalking Horse Bidder bids at the Auction, it will be entitled to "credit" in the amount of the applicable Bid Protections to be counted towards its Bid such that the cash and/or non-cash consideration proposed by it plus the applicable Bid Protection "credit" must exceed the then-existing Overbid by an incremental amount that is not less than the Minimum Overbid Increment. The Debtors reserve the right, in consultation with the Bid Consultation Parties, to announce reductions or increases in the Minimum Overbid Increment at any time during the Auction. Additional consideration in excess of the amount set forth in the respective Auction Baseline Bid may include (i) cash and/or non-cash consideration, *provided*, *however*, that the value for such non-cash consideration shall be determined by the Debtors in their reasonable business judgment in consultation with the Bid Consultation Parties (considering factors that include the proposed terms thereof and the creditworthiness of the Bidder) and the Debtors

reserve the right to adjust the value of or reject any such non-cash consideration, *provided further* that the Bid Consultation Parties reserve the right to object to the Debtors' determination and such dispute may be resolved by the Court at the Sale Hearing, and (ii) in the case of a Bid by the Prepetition Secured Creditors or the Huntsville Note holder, a credit bid of up to the full amount of the such secured creditors' allowed secured claim, subject to the Bankruptcy Code and other applicable law and the satisfaction in cash or assumption of claims secured by senior liens, *provided* that such Bid otherwise complies with the requirements set forth herein and subject to the rights of the Committee as set forth in paragraph 9 of the Bidding Procedures Order.

(b) <u>Remaining Terms Are the Same as for Qualified Bids</u>:  Except as modified herein, an Overbid at the Auction must comply with the conditions for a Qualified Bid set forth above, *provided, however*, that the Bid Deadline shall not apply.  Any Overbid must include, in addition to the amount and the form of consideration of the Overbid, a description of all changes requested by the Bidder to the Stalking Horse APA, if any, or Modified Purchase Agreement, as the case may be, in connection therewith.  For the avoidance of doubt, any Overbid shall be irrevocable and shall remain open and binding on the Bidder in accordance with these Bidding Procedures and the conditions for a Qualified Bid.

At the Debtors' discretion, to the extent not previously provided (which shall be determined by the Debtors in consultation with the Bid Consultation Parties), a Bidder submitting an Overbid at the Auction must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors), as the Debtors, in their reasonable business judgment in consultation with the Bid Consultation Parties, may request, demonstrating such Bidder's ability to consummate the Sale Transaction proposed by such Overbid.

*Announcement and Consideration of Overbids.*

(a) <u>Announcement of Overbids</u>:  A Bidder submitting an Overbid at the Auction shall announce at the Auction the material terms of such Overbid, including the total amount and type of consideration offered in such Overbid.

(b) <u>Consideration of Overbids</u>:  The Debtors reserve the right, in their reasonable business judgment in consultation with the Consultation Parties, to make one or more continuances of the Auction to, among other things:  facilitate discussions between the Debtors and individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; and give Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment in consultation with the Bid Consultation Parties, may require, that the Qualified Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed Sale Transaction at the prevailing Overbid amount; *provided* that, to the extent the Debtors determine to request that any Qualified

Bidder increase the amount of their Good Faith Deposit, the Debtors first shall consult with the Bid Consultation Parties before making such request.

*Additional Procedures.*

The Debtors (in consultation with the Bid Consultation Parties), in the exercise of their fiduciary duties for the purpose of maximizing value for their estates from the sale process, may modify the Bidding Procedures and implement additional procedural rules for conducting the Auction. Specifically, among other things, the Debtors, in consultation with the Bid Consultation Parties, may determine to select more than one Successful Bid and more than one Successful Bidder (and/or more than one Backup Bid and more than one Backup Bidder, in which event such Backup Bids may provide for groupings of Acquired Assets that are different from the groupings of Acquired Assets reflected in the Successful Bid(s)) for separate portions of the Acquired Assets.

*Consent to Jurisdiction as Condition to Bidding.*

All Qualified Bidders shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court to enter an order or orders, which shall be binding in all respects, in any way related to the Debtors, their Chapter 11 cases, the Bidding Procedures, the applicable purchase agreement, the Auction, or the construction and enforcement of documents relating to any Sale Transaction and waived any right to a jury trial in connection with any disputes relating to the Debtors, their Chapter 11 cases, the Bidding Procedures, the applicable purchase agreement, the Auction, or the construction and enforcement of documents relating to any Sale Transaction.

*Sale Is As Is/Where Is.*

Any of the Acquired Assets sold pursuant to the Bidding Procedures shall be sold free and clear of all liens claims and encumbrances as permitted by Section 363(f) of the Bankruptcy Code other than any Permitted Liens and Assumed Liabilities and conveyed at Closing in their then-present condition, "**AS IS, WHERE IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED**", except to the extent set forth in the definitive agreement for the Successful Bid, if applicable.

*Closing the Auction; Successful Bidder.*

The Auction shall continue until there is only one (1) Qualified Bid for all or a portion of the Acquired Assets that the Debtors determine in their reasonable business judgment, in consultation with the Bid Consultation Parties, is the highest or otherwise best Qualified Bid with respect to the assets to which it pertains, as applicable, at the Auction. Thereafter, the Debtors shall select such Qualified Bid, in consultation with the Bid Consultation Parties, as the overall highest or otherwise best Qualified Bid (such Bid(s), the "**Successful Bid(s)**," and the Bidder submitting such Successful Bid(s), the "**Successful Bidder(s)**"). In making this decision, the Debtors shall consider the Bid Assessment Criteria.

The Auction shall close when the Successful Bidder(s) submits fully executed sale and transaction documents memorializing the terms of the Successful Bid(s).

Promptly following the Debtors' selection of the Successful Bid(s) and the conclusion of the Auction, the Debtors shall announce the Successful Bid(s) and Successful Bidder(s) and shall file with the Bankruptcy Court notice of the Successful Bid(s) and Successful Bidder(s).

The Successful Bidder(s) shall be required to keep the Successful Bid(s) open and irrevocable until the closing of the transactions contemplated thereby. The sale and transaction documents approved by the Bankruptcy Court pursuant to the Sale Order shall be irrevocable and enforceable against the Successful Bidder.

*Backup Bidder.*

Notwithstanding anything in the Bidding Procedures to the contrary, the Qualified Bid for the Acquired Assets that the Debtors determine in their reasonable business judgment, in consultation with the Bid Consultation Parties, is the next highest or otherwise best Qualified Bid(s) with respect to such Acquired Assets, as applicable, at the Auction after the Successful Bid(s), will be designated as the "**Backup Bid(s)**" and the Bidder submitting such Backup Bid(s), the "**Backup Bidder(s)**." The Backup Bidder shall be required to keep the Backup Bid open and irrevocable until the earlier of 5:00 p.m. (prevailing Central Time) on the date that is sixty (60) days after the date of entry of the Sale Order (the "**Outside Backup Date**") or the closing of the transaction with the Successful Bidder.

Following entry of the Sale Order, if the Successful Bidder(s) fails to consummate the Successful Bid(s), the Debtors may, in consultation with the Bid Consultation Parties, designate the applicable Backup Bid to be the new Successful Bid and the Backup Bidder to be the new Successful Bidder, and the Debtors will be authorized, but not required, to consummate the transaction with the Backup Bidder without further order of the Bankruptcy Court. In such case of a breach or failure to perform on the part of the Successful Bidder, the defaulting Successful Bidder's deposit shall be forfeited to the Debtors. The Debtors specifically reserve the right to seek all available damages, including specific performance, from any defaulting Successful Bidder (including any Backup Bidder designated as a Successful Bidder) in accordance with the terms of the Bidding Procedures.

## Return of Good Faith Deposits

The Good Faith Deposits of all Qualified Bidders shall be held in one or more accounts by the Debtors, but shall not become property of the Debtors' estates; *provided*, *however*, that the Good Faith Deposit of any Successful Bidder (including any Backup Bidder that becomes a Successful Bidder) may be forfeited to the Debtors or credited towards the purchase price set forth in the Successful Bid, in either case as provided in these Bidding Procedures. The Good Faith Deposit of any Qualified Bidder that is neither the Successful Bidder nor the Backup Bidder shall be returned to such Qualified Bidder not later than seven (7) days after the Sale Hearing. The Good Faith Deposit of the Backup Bidder, if any, shall be returned to the Backup Bidder not later than three (3) business days after (i) the closing of the transaction with the Successful Bidder for the Acquired Assets bid upon by the Backup Bidder and (ii) the Outside Backup Date; *provided*, *however*, that if the Backup Bid becomes the Successful Bid as provided herein, any subsequent breach or failure to perform by the Backup Bidder may result in the forfeit of the Good Faith Deposit of the Backup Bidder to the Debtors. Upon the return of the Good Faith Deposits, their

respective owners shall receive any and all interest that may have accrued thereon. If the Successful Bidder consummates the Successful Bid, its Good Faith Deposit shall be credited towards the purchase price set forth in the Successful Bid. The provisions of the Stalking Horse APA, if any, shall control the terms of the deposit advanced by the Stalking Horse Bidder.

## The Consultation Parties

The Debtors shall consult with (i) the Committee, (ii) the lenders and agents under the Debtors' prepetition Priority Term Loan Credit Agreement, FILO Term Loan Agreement and Exit Term Loan Agreement; and (iii) solely with respect to any Bid that includes the facility securing the Huntsville Note, the City of Huntsville, Alabama (collectively, the "**Consultation Parties**" and each, a "**Consultation Party**") as explicitly provided for in these Bidding Procedures; *provided*, *however*, that, in certain circumstances as set forth in these Bidding Procedures, the Debtors shall consult only with the Bid Consultation Parties (as defined below). The "**Bid Consultation Parties**" shall be all Consultation Parties (and their respective counsel and advisors, if any) other than any Consultation Party (and its counsel and advisors, if any) that submits a Bid or has a Bid submitted on its behalf for so long as such Bid remains open. For the avoidance of doubt, the Debtors' obligation to consult with the Consultation Parties may, in the Debtors' discretion, be met by (i) consultation solely with the respective counsel and advisors, if any, to each of the Consultation Parties, as set forth in "Auction Qualification Process – Bid Deadline" above (collectively, the "**Consultation Party Counsel and Advisors**"); or (ii) consultation with each of the Consultation Parties and their Consultation Party Counsel and Advisors at the same time or in separate communications.

## Reservation of Rights of the Debtors

Except as otherwise provided in these Bidding Procedures or the Bidding Procedures Order, the Debtors further reserve the right, in their reasonable business judgment in consultation with the Consultation Parties or, to the extent provided herein, the Bid Consultation Parties to: (i) determine which Bidders are Qualified Bidders; (ii) determine which Bids are Qualified Bids; (iii) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (iv) reject, at any time prior to the closing of the Auction or, if no Auction is held, at any time prior to entry of the Sale Order, any Bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of these Bidding Procedures, the requirements of the Bankruptcy Code, or (c) contrary to the best interests of the Debtors and their estates; (v) waive terms and conditions set forth herein with respect to all potential bidders; (vi) impose additional terms and conditions; (vii) extend the deadlines set forth herein; (viii) continue or cancel the Auction and/or Sale Hearing in open court, or by filing a notice on the docket of the Debtors' Chapter 11 cases, without further notice; (ix) include any other party as a Consultation Party and attendee at the Auction; and (x) modify the Bidding Procedures and implement additional procedural rules for conducting the Auction so long as such rules are not inconsistent in any material respect with the Bankruptcy Code, the Bidding Procedures Order, or any other order of the Court.

## Exhibit 1

### Confidentiality Agreement

# CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT

This Confidentiality and Non-Disclosure Agreement (this "Agreement") is dated [__], 2020, by and among Remington Outdoor Company, Inc., a Delaware corporation ("ROC"), each of the subsidiaries of ROC set forth on the signature pages to this Agreement (together with ROC, the "Debtors" and each a "Debtor"), debtors and debtors in possession in the voluntary petition for relief under Chapter 11 of Title 11, United States Code, 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Alabama (the "Bankruptcy Court"), jointly administered under Case No. 20-81688 (the "Bankruptcy Cases"), and [_____] (the "Potential Purchaser"). The Debtors and the Potential Purchaser are each sometimes individually referred to herein as a "Party" and collectively referred to herein as the "Parties".

**WHEREAS**, the Debtors commenced the Bankruptcy Cases on July 27, 2020;

**WHEREAS**, the Debtors are negotiating with interested parties regarding possible sale(s) of the Debtors' estates to maximize value for their estates to be conducted in a manner consistent with the bidding procedures (the "Bidding Procedures") approved by the Bankruptcy Court pursuant to that certain Order Establishing Bidding Procedures Relating to the Sales of All or a Portion of the Debtors' Assets; capitalized terms used herein without definition have the meanings given to them in the Bidding Procedures;

**WHEREAS**, the Potential Purchaser is potentially interested in purchasing certain of the assets of the Debtors' estates (the "Transaction");

**WHEREAS**, the Potential Purchaser and the Debtors desire to discuss matters concerning the Transaction; and

**WHEREAS**, during the course of these discussions, it may be necessary for the Debtors to disclose to the Potential Purchaser certain Confidential Information (as defined below) which is proprietary and highly confidential, the disclosure of will result in substantial and irreparable harm to the Debtors, which harm may be extremely difficult to quantify.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements contained herein, including the disclosure of Confidential Information, and intended to be legally bound hereby, the Parties agree as follows:

In connection with the Potential Purchaser's consideration of Transaction, the Potential Purchaser has requested nonpublic, confidential and/or proprietary information concerning the Debtors. As a condition to the Potential Purchaser being furnished with such information, the Potential Purchaser (i) agrees to treat any information concerning the Debtors that is furnished by or on behalf of the Debtors to the Potential Purchaser or its directors, officers, partners, employees, affiliates, subcontractors, attorneys, consultants, accountants, auditors, advisors, agents, financing sources, or other representatives (collectively, the "Representatives"), on or after the date hereof and regardless of the manner in which it is furnished (whether disclosed orally or disclosed or accessed in written, electronic or other form or media, and whether or not marked, designated, or otherwise identified as "confidential"), including, without limitation, business and strategic plans, analyses, compilations, forecasts, financial projections, studies, contracts, licenses, other business

arrangements, or other documents or records prepared by the Potential Purchaser, any of its Representatives to the extent that such analyses, compilations, studies, documents or records contain or otherwise reflect or are generated from such information (hereinafter collectively referred to as the "Confidential Information"), in accordance with the provisions of this Agreement and (ii) hereby acknowledge the confidential and proprietary nature of the Confidential Information.

The term "Confidential Information" also includes any terms, conditions or other facts with respect to the Transaction and the status thereof; but does not include information that (a) was or becomes generally available to the public other than as a result of a disclosure by the Potential Purchaser or its Representatives in breach of this Agreement, (b) was or becomes available to the Potential Purchaser or its Representatives on a non-confidential basis from a source other than the Debtors or its representatives, provided that such source is not known to the Potential Purchaser or its Representatives to be bound by a confidentiality agreement with the Debtors or otherwise prohibited from transmitting the information to the Potential Purchaser or its Representatives by a contractual, legal or fiduciary obligation, (c) was within the Potential Purchaser's possession or the possession of its Representatives prior to its being furnished to the Potential Purchaser or its Representatives by or on behalf of the Debtors; provided that the source of such information was not known to the Potential Purchaser or its Representatives to be bound by a confidentiality agreement with any Debtor or otherwise prohibited from transmitting the information to the Potential Purchaser or its Representatives by a contractual, legal or fiduciary obligation owed to the Debtors, or (d) was independently developed by the Purchaser or its Representatives without reference to the Confidential Information or information from a source known to the Potential Purchaser or its Representatives to be bound by a confidentiality agreement with any Debtor or otherwise prohibited from transmitting the information to the Potential Purchaser or its Representatives by a contractual, legal or fiduciary obligation owed to the Debtors. Any combination of Confidential Information shall not be deemed to be within the foregoing exceptions because individual features of the Confidential Information are in the public domain.

2

1.     **Restrictions on Disclosure and Use**. The Potential Purchaser hereby agrees that the Confidential Information will be used solely for the purpose of evaluating the Transaction and not used for any other purpose, and that such Confidential Information will be kept confidential by the Potential Purchaser and, except as otherwise provided in this Agreement, will not be disclosed to any person other than its Representatives who need to know such information for the purpose of evaluating, negotiating and/or participating in discussions with the Debtors relating to the Transaction (it being understood that, prior to any such disclosure, such Representatives shall have been informed by the Potential Purchaser of the confidential and proprietary nature of the Confidential Information, advised of this Agreement, instructed to comply with the provisions hereof and instructed that they are under a duty of confidentiality to the Debtors with respect to the Confidential Information). The Potential Purchaser agrees to undertake reasonable precautions, at its sole expense, to safeguard and protect the Confidential Information. The Potential Purchaser agrees that, to the extent its Representatives do not enter into a separate confidentiality agreement with the Debtors, the Potential Purchaser shall be liable for any disclosure or use of the Confidential Information by its Representatives inconsistent with the provisions of this Agreement, provided that the Potential Purchaser shall not be responsible for any such breach by any such third-party Representative who has signed a joinder to this Agreement or a separate undertaking to abide by the terms of this Agreement.

In the event that the Potential Purchaser or any of its Representatives are requested or required by law, rule, regulation or legal or regulatory process (including, but not limited to, by oral questions, interrogatories, requests for information or documents, subpoena, civil investigative demand, court order, deposition, administrative proceeding, inspection, audit, any formal or informal investigation by any government or governmental agency or authority or other legal, governmental, self-regulatory or regulatory process or other process) to disclose any Confidential Information, it is agreed that the Potential Purchaser will, or will cause its Representatives to (to the extent permitted by law, regulation, rule, or legal or regulatory process), provide the Debtors with prompt written notice as soon as practicable (including by electronic mail) of any such request or requirement (including by mail, if practicable) so that the Debtors may seek (at the Debtors' sole cost and expense) a protective order or other remedy as the Debtors deem appropriate, and the Potential Purchaser will, and will direct its Representatives to, reasonably consult and cooperate with the Debtors in seeking any such remedy (at the Debtors' sole expense). If, in the absence of a protective order or other remedy or the receipt of a waiver, the Potential Purchaser reasonably determines, upon the written opinion of its counsel (a copy of which shall be provided to the Debtors), that the Potential Purchaser is compelled to disclose Confidential Information, the Potential Purchaser may disclose that portion of the Confidential Information that such counsel advises that the Potential Purchaser is compelled to disclose. Notwithstanding anything to the contrary herein, without prior notice to the Debtors, the Potential Purchaser and its Representatives may disclose Confidential Information to governmental bodies with regulatory oversight over the Potential Purchaser in connection with a routine examination of the Potential Purchaser by such governmental bodies if such audit or request is not specifically related to the Debtors, the Confidential Information or the Transaction.

Except in accordance with the preceding paragraph, the Potential Purchaser and its Representatives may not disclose Confidential Information in the course of any litigation, arbitration, court proceeding or other legal action involving the Debtors; provided that nothing in this Agreement shall prevent or limit its right to seek or obtain any information from the Debtors through subpoena,

3

formal discovery or other process, even if such materials were previously disclosed or released to the Potential Purchaser or its Representatives as Confidential Information, or prevent or limit any right of the Debtors to object to any such subpoena, formal discovery or other process.

2.    **No Warranty**. The Potential Purchaser agrees that it is responsible for its own due diligence relating to the Transaction. The Potential Purchaser understands and acknowledges that any and all information contained in the Confidential Information is being provided without any representation or warranty, express or implied, as to the accuracy or completeness of the Confidential Information, on the part of the Debtors or their Representatives. The Debtors acknowledge and agree that nothing in this Agreement creates or is intended to create any fiduciary obligation or duty by the Potential Purchaser to, or any fiduciary relationship between, the Debtors and the Potential Purchaser or any other party. The Potential Purchaser agrees that neither the Debtors nor its representatives shall have any liability to the Potential Purchaser or any of its Representatives by virtue of this Agreement.

3.    **Ownership and Return of Confidential Information**. All Confidential Information disclosed by the Debtors shall be and shall remain the property of the Debtors. The Debtors may, in their sole discretion, elect at any time to terminate access by the Potential Purchaser to the Confidential Information. In the event that the Debtors, in their sole discretion, request in writing (including by electronic mail) at any time, the Potential Purchaser shall, promptly following notification or request from the Debtors, return or destroy, at the Debtors' option, all Confidential Information in its possession or in the possession of its Representatives. Notwithstanding the foregoing, the Potential Purchaser and its Representatives shall be entitled to keep one archival copy of Confidential Information (whether physical or electronic) in its or their records if required to comply with legal, professional, compliance and regulatory standards or requirements, or such archival copies were created as a result of automatic electronic back-up procedures. Any Confidential Information that is not returned or destroyed shall remain subject to the confidentiality obligations set forth in this Agreement. Upon a Debtor's written request, the Potential Purchaser will confirm in writing its compliance with the terms of this Section 3.

4.    **No Obligation**. The Potential Purchaser agrees that unless and until a definitive agreement regarding a Transaction between one or more of the Debtors and the Potential Purchaser has been duly executed, neither the Debtors nor the Potential Purchaser will be under any legal obligation of any kind whatsoever with respect to such a transaction by virtue of this Agreement except for the matters specifically agreed to in this Agreement.

The Potential Purchaser acknowledges receipt of the Bidding Procedures. Except as otherwise provided in any Stalking Horse APA, these Bidding Procedures or the Bidding Procedures Order, the Debtors further reserve the right, in their reasonable business judgment in consultation with the Consultation Parties or, to the extent provided in the Bidding Procedures, the Bid Consultation Parties to: (i) determine which bidders are Qualified Bidders; (ii) determine which Bids are Qualified Bids; (iii) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (iv) reject, at any time prior to the closing of the Auction or, if no Auction is held, at any time prior to entry of the Sale Order, any Bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of these Bidding Procedures or the requirements of the Bankruptcy Code, or (c) contrary to the best interests of the Debtors and their estates; (v) waive terms and conditions set forth in the Bidding Procedures with

4

respect to all potential bidders; (vi) impose additional terms and conditions; (vii) extend the deadlines set forth in the Bidding Procedures; (viii) continue or cancel the Auction and/or Sale Hearing in open court, or by filing a notice on the docket of the Debtors' Chapter 11 cases, without further notice; (ix) include any other party as a Consultation Party and attendee at the Auction; and (x) modify the Bidding Procedures and implement additional procedural rules for conducting the Auction so long as such rules are not inconsistent in any material respect with the Bankruptcy Code, the Bidding Procedures Order, or any other order of the Court.

**5.** **Compliance with Laws**. The Potential Purchaser acknowledges that it is aware that provisions of the United States federal securities laws and other applicable securities laws may restrict any person who has material nonpublic information about a company or any of its affiliates from purchasing or selling securities of such company or any of its affiliates, or from communicating such information to any other person under circumstances in which it is reasonably foreseeable that such person is reasonably likely to purchase or sell such securities. The Potential Purchaser acknowledges and agrees that it understands such laws as they relate to the Debtors' securities and the Confidential Information.

**6.** **Remedies**. The Potential Purchaser acknowledges and agrees that due to the unique nature of the Confidential Information, any breach of this Agreement may cause irreparable harm to the Debtors for which damages may not be an adequate remedy and that the Debtors shall be entitled to seek specific performance and injunctive or other equitable relief as a remedy for any such breach, and the Potential Purchaser further agrees to waive any requirement for the securing or posting of any bond in connection with such remedy; provided that nothing in this Agreement shall waive or prohibit any party hereto from seeking or enforcing any other remedies available in law or equity in the event of a breach or threatened breach of this Agreement. Such remedy shall not be deemed to be the exclusive remedy for breach of this Agreement but shall be in addition to all other remedies available at law or equity to the Debtors.

**7.** **Waiver**. No failure or delay in exercising any right, power or privilege hereunder will operate as a waiver thereof, nor will any single or partial exercise thereof preclude any exercise of any right, power or privilege hereunder.

**8.** **Governing Law; Jurisdiction; Waiver of Trial by Jury**. This Agreement, and all controversies arising from or relating to performance under this Agreement, shall be governed by and construed in accordance with the laws of the State of Delaware, regardless of the laws that might otherwise govern under applicable principles of conflicts of law thereof. The Potential Purchaser agrees to submit to the jurisdiction of the Bankruptcy Court to resolve any dispute relating to this Agreement and waive any right to move to dismiss or transfer any such action brought in any such court on the basis of any objection to personal jurisdiction or venue. **ANY RIGHTS TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM, ACTION OR PROCEEDING, DIRECTLY OR INDIRECTLY, ARISING OUT OF, OR RELATING TO, THIS AGREEMENT ARE WAIVED BY EACH PARTY.**

**9.** **Complete Agreement; Amendment; Assignment.** This Agreement is a complete statement of all of the agreements between the parties hereto with respect to its subject matter and supersedes all previous agreements, discussions, negotiations and understandings between them concerning its subject matter. No modification of this Agreement or waiver of the terms and

5

conditions hereof will be binding unless approved in writing by each of the parties or otherwise in accordance with the terms of this Agreement. It is understood that the terms of access contained in any data room or website provided or arranged by the Debtors or on the Debtors' behalf shall be superseded by the understandings and agreements contained in this Agreement. Neither party shall assign this Agreement without the prior written consent of the other party, and any assignment without such prior written consent shall be void, provided that notwithstanding anything to the contrary in this Agreement, the Debtors may assign this Agreement to the Successful Bidder(s) and/or cause them to become a party to this Agreement without such prior written consent upon the consummation of an acquisition pursuant to the Bidding Procedures and such Successful Bidder(s) will be entitled to all of the same rights afforded to the Debtors under this Agreement.

**10.**     **Term**. This Agreement may be terminated upon ten (10) days' prior written notice to the other party; provided that such notice, if delivered to the Debtors, must be delivered to a director or executive officer of the Debtors (and, if assigned or if the Successful Bidder(s) are made party to the Agreement in accordance with <u>Section 9</u>, a director or executive officer of the Successful Bidder(s)). The Potential Purchaser's obligations hereunder shall remain in effect and shall survive the termination or expiration of this Agreement for a period of twenty-four (24) months following the termination of this Agreement, unless otherwise agreed to in writing by the Debtors.

**11.**     **Non-Solicitation**. For a period of twenty-four (24) months following the date hereof, the Potential Purchaser will not, and the Potential Purchaser will not permit its subsidiaries, parents and other affiliates to, directly or indirectly, (A) solicit for employment or employ any (i) officer, director or senior-level employee of the Debtors or (ii) other employee that the Potential Purchaser or its Representatives had substantive contact with during, or who became known to the Potential Purchaser in connection with, its evaluation of any Confidential Information, except that the Potential Purchaser shall not be precluded from (x) hiring any such employee who has been terminated by the Debtors for at least one-hundred and twenty (120) days prior to commencement of employment discussions between the Potential Purchaser and such employee, (y) employing or contacting any such person who contacts the Potential Purchaser or its agents on his or her own initiative without any otherwise prohibited solicitation, or (z) employing or contacting any person as a result of general solicitations or the use of recruiting firms not specifically directed at either the Debtors or its respective employees or (B) use the Confidential Information to induce or attempt to induce any vendor, customer, contractor, supplier or agent of the Debtors to cease or reduce their association with the Debtors. The Potential Purchaser agrees not to initiate, contact or otherwise engage in any communications with any employee, customer, contractor, supplier or agent of the Debtors regarding the Transaction without the prior written consent of the Debtors.

**12.**     **Expenses**. The Potential Purchaser acknowledges that it will be solely responsible for, and bear all of, its expenses and costs, including without limitation, expenses of legal counsel, accountants, other representatives and advisors, incurred at any time in connection with evaluating the Confidential Information and the Transaction.

Case 20-81688-CRJ11    Doc 411-1    Filed 08/20/20    Entered 08/20/20 11:36:31    Desc
Exhibit    Page 21 of 24

**13.** <u>**Miscellaneous.**</u> This Agreement may be executed by facsimile, email and in two or more counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement. The words "execution," "signed," "signature," "delivery," and words of like import in or relating to this Agreement or any document to be signed in connection with this Agreement are deemed to include electronic signatures, deliveries or the keeping of records in electronic form, each of which shall be of the same legal effect, validity or enforceability as a manually executed signature, physical delivery thereof or the use of a paper-based recordkeeping system, as the case may be, and the parties hereto consent to conduct the transactions contemplated hereunder by electronic means.

<em>(Signature page follows)</em>

Case 20-81688-CRJ11    Doc 411-1    Filed 08/20/20    Entered 08/20/20 11:36:31    Desc
Exhibit    Page 22 of 24

IN WITNESS WHEREOF, the undersigned have executed and delivered this Confidentiality and Non-Disclosure Agreement as of the date first above written.

**REMINGTON OUTDOOR COMPANY, INC.**

**FGI OPERATING COMPANY, LLC**

**FGI HOLDING COMPANY, LLC**

**BARNES BULLETS, LLC**

**REMINGTON ARMS COMPANY, LLC**

**RA BRANDS, L.L.C.**

**OUTDOOR SERVICES, LLC**

**FGI FINANCE INC.**

**HUNTSVILLE HOLDINGS LLC**

**TMRI, INC.**

**REMINGTON ARMS DISTRIBUTION COMPANY, LLC**

**32E PRODUCTIONS, LLC**

**GREAT OUTDOORS HOLDCO, LLC**

By: _____

_____
Name: Chuck Rink
Title:   Chief Operating Officer

[_____],
as Potential Purchaser

By: _____

Name: _____

Title: _____