# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| REMINGTON OUTDOOR COMPANY, INC., *et al.*,[1] | Case No. 20-81688-CRJ11 |
| Debtors. | Jointly Administered |

## DEBTORS' RESPONSE TO SOTO PLAINTIFFS' MOTION
## TO CONDUCT RULE 2004 DISCOVERY [ECF 381]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405). The Debtors' corporate headquarters are located at 100 Electronics Boulevard SW, Huntsville, AL 35824.

44047977 v1

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ...................................................................................................... 3

ARGUMENT ........................................................................................................... 4

     I.      THE SOTO PLAINTIFFS MAY NOT USE BANKRUPTCY RULE 2004 TO AID
           THEIR STATE-COURT LITIGATION IN CONNECTICUT. ................................. 4

     II.     THE SOTO PLAINTIFFS HAVE OFFERED NO VALID REASON FOR A
           BANKRUPTCY RULE 2004 INVESTIGATION. ............................................. 6

     III.    BANKRUPTCY RULE 2004 IS NOT A BASIS FOR A MOTION TO REARGUE OR
           RECONSIDER. .......................................................................................... 12

CONCLUSION ...................................................................................................... 13

Case 20-81688-CRJ11    Doc 470    Filed 08/26/20    Entered 08/26/20 14:05:15    Desc
Main Document    Page 2 of 65

# TABLE OF AUTHORITIES

Page

**Federal Cases**

*Collins v. Polk,*
   115 F.R.D. 326 (M.D.La.1987) ............................................................. 4

*Freeman v. Seligson,*
   405 F.2d 1326 (D.C. Cir. 1968) ............................................................ 4

*In re 2435 Plainfield Ave., Inc.,*
   223 B.R. 440 (Bankr. D.N.J. 1998) ................................................... 4, 5

*In re AOG Entm't, Inc,*
   558 B.R. 98 (Bankr. S.D.N.Y. 2016) .................................................... 8

*In re Barkats*
   No. 14-00053, 2019 WL 1762680 (Bankr. D.D.C. Apr. 18, 2019) .......................... 8

*In re Buckner,*
   271 B.R. 213 (B.A.P. 10th Cir. 2001) ................................................. 10

*In re Countrywide Home Loans, Inc.,*
   384 B.R. 373 (W.D. Pa. 2008) ......................................................... 7, 8

*In re Dinubilo,*
   177 B.R. 932 (E.D. Cal. 1993) ........................................................ 4, 5

*In re Duratech Indus., Inc.,*
   241 B.R. 291 (Bankr. E.D.N.Y. 1999), aff'd, 241 B.R. 283 (E.D.N.Y. 1999) ........... 9

*In re Enron Corp.,*
   281 B.R. 836 844 (Bankr. S.D.N.Y. 2002) .......................................... 4, 5, 8

*In re Fin. Oversight & Mgmt. Bd. for P.R.,*
   295 F. Supp. 3d 66 (D.P.R. 2018) ..................................................... 4

*In re Fred Ayers Co., Inc.,*
   266 B.R. 557 (Bankr. M.D. Ga. 2001) ................................................. 10

*In re Gaime,*
   No. 8:18-BK-05198-RCT, 2018 WL 7199806 (Bankr. M.D. Fla. Dec. 18,
   2018), clarified on denial of reconsideration, No. 8:18-BK-05198-RCT, 2019
   WL 436749 (Bankr. M.D. Fla. Jan. 23, 2019) ........................................ 10

*In re Gross,*
   121 B.R. 587 (Bankr. D.S.D. 1990) .................................................... 8

44047977 v1

*In re Hammond*,
140 B.R. 197 (S.D. Ohio 1992) .............................................................. 6, 7

*In re Hampton Island Owners' Ass'n, Inc.*,
723 F. App'x 972 (11th Cir. 2018) ............................................................ 10

*In re Kleynerman*,
No. 18-26659-BEH, 2020 WL 2621179 (Bankr. E.D. Wis. May 25, 2020) ......... 8, 9

*In re Metiom, Inc.*,
318 B.R. 263 (S.D.N.Y. 2004) ............................................................ 10, 11

*In re MF Global Inc.*,
2013 WL 74580 (Bankr. S.D.N.Y. Jan. 8, 2013) ......................................... 7

*In re Millennium Lab Holdings II, LLC*,
562 B.R. 614 (Bankr. D. Del. 2016) ...................................................... 5, 10

*In re Orion Healthcorp, Inc.*,
596 B.R. 228 (Bankr. E.D.N.Y. 2019) ........................................................ 4

*In re Recoton Corp.*,
307 B.R. 751 (Bankr. S.D.N.Y. 2004) ....................................................... 11

*In re Snyder*,
52 F.3d 1067 (5th Cir. 1995) ............................................................... 4, 5

*In re Strecker*,
251 B.R. 878 (Bankr. D. Colo. 2000) ......................................................... 8

*In re SunEdison, Inc.*,
572 B.R. 482 (Bankr. S.D.N.Y. 2017) ...................................................... 4, 7

*In re Texaco Inc.*,
79 B.R. 551 (Bankr. S.D.N.Y. 1987) .......................................................... 7

*In re Thomases*,
32 B.R. 678 (Bankr. S.D.N.Y. 1983) .......................................................... 4

*In re Underwood*,
457 B.R. 635 (Bankr. S.D. Ohio 2011) .................................................. 10, 11

*In re Valley Forge Plaza Assocs.*,
109 B.R. 669 (Bankr. E.D.Pa. 1990) ....................................................... 5, 9

44047977 v1

Case 20-81688-CRJ11    Doc 470    Filed 08/26/20    Entered 08/26/20 14:05:15    Desc
Main Document      Page 4 of 65

*In re Wash. Mut. Inc.*,
408 B.R. 45 (Bankr. D. Del. 2009) ...................................................................... 4, 11

*In re Wilcher*,
56 B.R. 428 (Bankr. N.D. Ill. 1985) ...................................................................... 9

*In re Youk-See*,
450 B.R. 312 (Bankr. D. Mass 2011) ..................................................................... 8

*Jones v. S. Pan Servs.*,
No. 2:09-CV-1063-MEF, 2011 WL 2038628 (M.D. Ala. May 25, 2011), aff'd,
450 F. App'x 860 (11th Cir. 2012) ......................................................................... 12

*Kight v. IPD Printing & Distributing, Inc.*,
427 Fed.App'x. 753 (11th Cir. May 24, 2011) ...................................................... 12

*Longcrier v. HL-A Co.*,
595 F. Supp.2d 1218 (S.D. Ala. 2008) ................................................................... 12

*United States v. Marion*,
562 F.3d 1330 (11th Cir. 2009) .............................................................................. 12

*Walton v. Countrywide Home Loans, Inc.*,
2009 WL 1905035 (S.D.Fla. June 9, 2009) ........................................................... 10

44047977 v1

Case 20-81688-CRJ11    Doc 470    Filed 08/26/20    Entered 08/26/20 14:05:15    Desc
Main Document    Page 5 of 65

## PRELIMINARY STATEMENT

The Soto Plaintiffs' Rule 2004 Motion is really an effort to seek discovery in these jointly administered bankruptcy cases in support of their state-court litigation in Connecticut.[2] And this is their second attempt to get that discovery here. But this is not the time or place to pursue tort claims against any Debtor. To be clear, the Soto Plaintiffs assert a disputed, unsecured claim— albeit a tragic and well-publicized one—and the nature of their claim gives them no priority or right to misdirect the conduct of these bankruptcy cases. While Debtors have already agreed to produce voluntarily certain documents to the Soto Plaintiffs that are reasonably related to the sale process, the Rule 2004 Motion is defective and should be denied.

What are the factual grounds for this Rule 2004 Motion? Nothing other than suspicion. In the Soto Plaintiffs' own words, they "***suspect*** . . . that the Debtors' financial position has in fact been improving," notwithstanding Debtors' business judgment to the contrary, which is backed up by declarations from Debtors' financial adviser Collin Adams and investment banker Bradley Meyer.[3] The Soto Plaintiffs ignore these declarations that Debtors filed in support of their reply to the bidding procedures objections. Instead, without citing any evidence, the Soto Plaintiffs claim that "Debtors' debt is currently trading at or above par."[4] But Debtors are unaware of any trades in their secured debt to any parties outside of funds and accounts managed by the same entities that have been involved since the debt was first issued. This includes all three tranches— the Priority Term Loan, the FILO Term Loan, and the Exit Term Loan. And even if the Soto Plaintiffs' allegation were true, they would prove nothing. Similarly irrelevant is the allegation that Debtors brought this situation on "themselves" by not obtaining DIP financing—which

---

[2]   *Motion for Leave to Conduct Discovery Pursuant to Bankruptcy Rule 2004* ("Rule 2004 Motion") [ECF 381].
[3]   Soto Plaintiffs' Rule 2004 Motion at ¶ 20 (emphasis added).
[4]   Soto Plaintiffs' Rule 2004 Motion at ¶ 20.

Case 20-81688-CRJ11    Doc 470    Filed 08/26/20    Entered 08/26/20 14:05:15    Desc
Main Document      Page 6 of 65

amounts to saying that Debtors should have tried even harder to get a better deal that was unavailable, given their capital structure and state of their business.[5]  In any event, this Court approved Debtors' proposed Cash Collateral Order.  In granting that Order, the Court found as a fact that the financing was the best available alternative for the estates.[6]  The Soto Plaintiffs did not even object to the Cash Collateral Motion, which was amply supported by declarations from Debtors' investment banker and financial adviser.

Even weaker than the Soto Plaintiffs' basis for this motion is their main reason for seeking Rule 2004 discovery, which is to mount an attack on the bidding procedures for selling Debtors' assets, which they assert "is unnecessarily short and potentially designed to accomplish a quick sale, free and clear of notorious tort and wrongful death liabilities."[7]  But the Court already approved the bidding procedures and denied the Soto Plaintiffs' request to defer consideration of the motion and conduct discovery before ruling on that issue.  The Court should now deny this procedurally improper effort to re-litigate that decision.

Nor should the Soto Plaintiffs be permitted to use Rule 2004 to compel responses to their first set of discovery requests from August 11, 2020, which are identical to the proposed discovery requests that they served with their 2004 Motion.  Bankruptcy Rule 2004 is not a surrogate for a motion to compel.  Of course, there is nothing to compel here because almost all of the requests are irrelevant to the now-overruled objections to the bidding procedures and these Bankruptcy Cases generally as they attempt to support the Soto Plaintiffs' state-court claims.

---

[5]   Soto Plaintiffs' Rule 2004 Motion at ¶ 21.

[6]   *See Final Cash Collateral Order* [ECF 410], at 3–4, 20–21 (finding, among other things, that no credit was available on more favorable terms).

[7]   Soto Plaintiffs' Rule 2004 Motion at ¶ 18.

While Rule 2004 is broad, it does not support a roving investigation in aid of a case in another court for the vague, unfounded reasons that the Soto Plaintiffs offer.  The cases that the Soto Plaintiffs cite stand for generic propositions that have nothing to do with their proposed Rule 2004 discovery; and Debtors have located no case where a court permitted a non-debtor plaintiff in pending litigation the sort of Rule 2004 discovery the Soto Plaintiffs seek.

*      *      *

Despite having no obligation to do so, Debtors have agreed to produce certain non-privileged documents voluntarily concerning mentions of the Soto case in marketing Debtors' assets pre-petition.  Debtors are gathering those documents now and will make them available upon entry of an appropriate protective order.  Debtors have already shared a draft with the Soto Plaintiffs.  It is critically important that the only lawyers who may access Debtors' documents are not involved in the underlying Connecticut litigation (though the Soto Plaintiffs dispute that).

## BACKGROUND

On August 11, 2020, the Soto Plaintiffs served 28 informal document requests and 4 interrogatories.  The very next day, Debtors invited them to a meet-and-confer call, where counsel stated that the requests were almost entirely irrelevant.  But in an effort to compromise, counsel offered to consider providing documents in response to four of the requests.  The Soto Plaintiffs' counsel requested written responses to the informal requests, which Debtors served on August 18.[8]

On August 17, the Soto Plaintiffs served their Rule 2004 Motion with 28 proposed document requests and 4 interrogatories, which are identical to the requests they informally propounded on August 11.  At a meet-and-confer on August 21, 2020, the Soto Plaintiffs purported

---

[8]   *See* Declaration of Hanna Lahr at Exhibit A.

44047977 v1

to withdraw certain document request though they have not amended the proposed discovery they would like this Court to approve.

## ARGUMENT

## I. THE SOTO PLAINTIFFS MAY NOT USE BANKRUPTCY RULE 2004 TO AID THEIR STATE-COURT LITIGATION IN CONNECTICUT.

While Bankruptcy Rule 2004 is broad, "if the debtor challenges the right of the examiner to conduct a Rule 2004 examination, then the examiner has the burden of establishing that good cause exists for taking the examination."[9] A key limitation on Rule 2004 discovery is using it to obtain discovery for another case.[10] As case after case holds, Rule 2004 is a pre-litigation device, and it is impermissible when, as here, another case or adversary proceeding is already pending.[11] "Rule 2004 was not intended to provide private litigants . . . with a strategic advantage in fishing

---

[9] *Freeman v. Seligson,* 405 F.2d 1326, 1336 (D.C. Cir. 1968) (where related adversary proceedings are pending, "the examiner has the burden of establishing that 'good cause' exists for the taking of the examination."); *In re Fin. Oversight & Mgmt. Bd. for P.R.,* 295 F. Supp. 3d 66, 73 (D.P.R. 2018) (internal quotation marks omitted).

[10] *In re SunEdison, Inc.,* 572 B.R. 482, 490 (Bankr. S.D.N.Y. 2017); *In re Enron Corp.,* 281 B.R. 836, 842, 844 (Bankr. S.D.N.Y. 2002) (movants failed to "allege[], much less substantiate[]" the need for Rule 2004 discovery where they were parties to an adversary proceeding and the relief sought was "nothing more than a pretext for discovery" in the adversary proceeding); *In re Wash. Mut. Inc.,* 408 B.R. 45, 51 (Bankr. D. Del. 2009) ("the relevant inquiry is whether the Rule 2004 examination would lead to discovery of evidence related to the pending proceeding or whether the requested examination sought to discover evidence unrelated to the pending proceeding.").

[11] *In re Orion Healthcorp, Inc.,* 596 B.R. 228, 236 (Bankr. E.D.N.Y. 2019) (denying Rule 2004 discovery because "party requesting the Rule 2004 examination could benefit their pending litigation outside of a bankruptcy court against the proposed Rule 2004 examinee"); *In re Snyder,* 52 F.3d 1067, *2 (5th Cir. 1995) ("[U]se of Rule 2004 discovery to circumvent discovery limitations . . . is an abuse of Rule 2004."); *In re Thomases,* 32 B.R. 678, 679–80 (Bankr. S.D.N.Y. 1983) (Given the fact that the same discovery may be had before the New Jersey courts in pending litigation, the court denied Rule 205(a) [former Rule 2004] discovery; *see also In re Dinubilo,* 177 B.R. 932, 940 (E.D. Cal. 1993); *Enron Corp.,* 281 B.R. at 840–41 (denying motion for discovery under Rule 2004 because of the "well recognized rule that once an adversary proceeding or contested matter is commenced, discovery should be pursued under the Federal Rules of Civil Procedure and not Rule 2004."); *In re 2435 Plainfield Ave., Inc.,* 223 B.R. 440, 455 (Bankr. D.N.J. 1998) (denying discovery under Rule 2004 in a pending adversary proceeding because "[t]he majority of courts that have addressed this issue have prohibited a Rule 2004 exam of parties involved in or affected by an adversary proceeding while it is pending" (collecting cases)); *see also Collins v. Polk,* 115 F.R.D. 326, 328–29 (M.D.La.1987) (granting motion to impound all depositions taken pursuant to Rule 2004 and strongly condemning practice where plaintiff in district court action had filed suit but did not serve the pleadings, including an amended complaint, on Rule 2004 examinee/defendants until after having participated in bankruptcy trustee's Rule 2004 examinations).

for potential private litigation."[12]  The pending-proceeding rule prevents litigants from using Rule 2004 tactically to get around procedural safeguards governing another action.[13]  "Many courts have expressed distaste for efforts of parties to utilize 2004 examinations to circumvent the restrictions of the [Federal Rules of Civil Procedure] in the context of adversary proceedings or contested matters."[14]

Here, the Soto Plaintiffs' Rule 2004 discovery runs afoul of the pending-proceeding rule because the document requests and interrogatories go directly to the Connecticut case.  In fact, the Soto Plaintiffs' lead lawyer in the Connecticut case conceded that his motivation is to get information that supports underlying claims, to which he believes Debtors have precluded access in the underlying case.  The proposed document requests reflect this.

Specifically, how or whether the Soto case factored into Debtors' decision to file for bankruptcy (Requests 2–5) or sell their assets, apart from being privileged, could reveal to the Soto Plaintiffs how much risk their adversary attaches to the Connecticut litigation.  Communications about the Soto case (for instance, Requests 3, 6, 7 and 9) could be used to elicit both risk assessment and supposed admissions about the potential liability.  Any plaintiff would love to know how the defendant views its potential exposure.  That would surely be a leg up in making monetary demands.

---

[12]  *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 629 (Bankr. D. Del. 2016); *In re Snyder*, 52 F.3d 1067, *2 (5th Cir. 1995) ("[U]se of Rule 2004 discovery to circumvent discovery limitations . . . is an abuse of Rule 2004."); *see also In re Dinubilo*, 177 B.R. 932, 940 (E.D. Cal. 1993); *Enron Corp.*, 281 B.R. at 840-41 (denying motion for discovery under Rule 2004 because of the "well recognized rule that once an adversary proceeding or contested matter is commenced, discovery should be pursued under the Federal Rules of Civil Procedure and not Rule 2004."); *In re 2435 Plainfield Ave., Inc.*, 223 B.R. 440, 455 (Bankr. D.N.J. 1998) (denying discovery under Rule 2004 in a pending adversary proceeding because "[t]he majority of courts that have addressed this issue have prohibited a Rule 2004 exam of parties involved in or affected by an adversary proceeding while it is pending" (collecting cases)).

[13]  *See Enron Corp.*, 281 B.R. at 842 (Rule 2004 discovery cannot be used as a "back door through which [movants] could avoid using the Federal Rules of Civil Procedure.").

[14]  *Enron Corp.*, 281 B.R. at 841 (quoting *In re Valley Forge Plaza Assocs.*, 109 B.R. 669, 675 (Bankr. E.D.Pa. 1990)).

Similarly, requests seeking information about Debtors' insurance could be used to learn who is paying to defend Debtors in the Connecticut action (Requests 16, 17). The request for insurance discovery is particularly puzzling since the Soto Plaintiffs' counsel stated that they already have Debtors' insurance policies. To the extent the Soto Plaintiffs wish to know who is paying to defend Debtors in the Connecticut action, these requests are plainly improper.

The Soto Plaintiffs thus fail to carry their burden on this Rule 2004 Motion. They have not established good cause by demonstrating that the discovery they seek is reasonably necessary to protect their legitimate interests in the bankruptcy cases.[15] They have also not identified any bankruptcy interest that the UCC is not protecting. And leaving aside that the pending Connecticut case underlies many of the proposed Rule 2004 requests, the Court has already rejected the Soto Plaintiffs' only articulated reason for the Rule 2004 Motion—slowing down the bidding procedures timeline.

The Soto Plaintiffs attempt to distinguish—in a footnote—the pending-proceeding rule by arguing that the *Soto* litigation is stayed. But that is true in almost all cases because Section 362 mandates it. So the fact of the statutory automatic stay is simply irrelevant.

## II. THE SOTO PLAINTIFFS HAVE OFFERED NO VALID REASON FOR A BANKRUPTCY RULE 2004 INVESTIGATION.

Apart from the inappropriate nature of the requests, the Soto Plaintiffs have offered no reason for a Rule 2004 investigation. They rely only on their "susp[icion]. . . that the Debtors' financial position has in fact been improving."[16] As supposed backup for that suspicion, the Soto Plaintiffs assert that "Debtors' debt is currently trading at or above par."[17] To start, they cite no

---

[15] *In re Hammond*, 140 B.R. 197 (S.D. Ohio 1992) (To establish good cause for Rule 2004 discovery, movant must demonstrate a reasonable need to protect legitimate interests.).

[16] Soto Plaintiffs' Rule 2004 Motion at ¶ 20.

[17] Soto Plaintiffs' Rule 2004 Motion at ¶ 20.

factual support, though previously, when they made the same claim in opposing the bidding procedures motion, the Soto Plaintiffs relied on inadmissible hearsay (a Bloomberg terminal screenshot).[18] Leaving that aside, the Soto Plaintiffs misunderstand what their proffered inadmissible hearsay shows. The "BVAL" price is a Bloomberg-generated estimate. The screenshot shows no executed trades. In fact, as far as Debtors know, the original parties still hold the three tranches of debt or manage the holders of that debt (in some cases through various affiliates and funds).

In any event, even if the Soto Plaintiffs' allegation were true, that would prove nothing about the need to file for bankruptcy or the business judgment to do that. In contrast, Debtors' investment banker and financial adviser have testified that Debtors have engaged in a long process to sell assets to maximize value and have just enough cash to last through the Court-approved schedule. The Soto Plaintiffs do not mention either these declarations or the unrebutted finding that this Court made in the Final Cash Collateral Order.[19] Nor have the Soto Plaintiffs offered any contradictory facts.

Rule 2004 does not authorize investigations based on rank speculation about an ill-defined wrong. As one court put it, Rule 2004 discovery "should not be so broad as to be more disruptive and costly to the debtor than beneficial to the creditor."[20] A court must "balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination."[21] Vague suspicions and speculation do not provide grounds for a 2004

---

[18]  Tazewell Shepard IV Declaration [ECF 244] of August 7, 2020, Exhibit D.

[19]  *See supra* n. 8, *Final Cash Collateral Order* [ECF 410] at 3–4, 20–21.

[20]  *In re Texaco Inc.*, 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987); *In re MF Global Inc.*, 2013 WL 74580, at * 1 (Bankr. S.D.N.Y. Jan. 8, 2013); *see also In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 393 (W.D. Pa. 2008) (applying a "sliding scale" manner or balancing test to determine whether a line of inquiry is appropriate under Rule 2004); *In re Hammond*, 140 B.R. 197, 201 (S.D. Ohio 1992) (holding the court must balance the movant's interests against the debtor's interest in avoiding the cost and burden of disclosure).

[21]  *In re SunEdison, Inc.*, 572 B.R. at 489–90.

examination.[22]  "Inquiries that seek far-reaching information . . . will require a correspondingly higher showing of good cause because they are inherently more intrusive and present a greater potential for abuse."[23]

The *Enron* case is particularly instructive here, where the court addressed similar facts and denied securities-class-action plaintiffs' request for 2004 discovery against the debtor because that discovery involved the class action rather that the bankruptcy.[24]  There was no way in *Enron* to prevent the 2004 discovery from revealing information helpful to the securities class action, and while plaintiffs there similarly wanted to understand how the bankruptcy might impact their claims, the court held that the bankruptcy examiner and committee efforts "fully address any reasonable concern one may have that all efforts will be undertaken to obtain maximum value for the assets of this estate."[25]

Similarly, in *Kleynerman*, the bankruptcy court reviewed speculative allegations when denying a 2004 discovery motion, rejecting the creditor's assertion that "if debtor has nothing to hide, there shouldn't be an issue" which "impermissibly turn[ed] the standard, and the burden, on

---

[22]  *In re Kleynerman*, No. 18-26659-BEH, 2020 WL 2621179, at *5 (Bankr. E.D. Wis. May 25, 2020) (denying Rule 2004 examination based on speculation and a declaration that "merely supposes a parade of horribles."); *In re Gross*, 121 B.R. 587, 593 (Bankr. D.S.D. 1990) ("the Court shall not permit a vague suspicion to be the basis to launch a fishing expedition in hopes of locating fraudulent actions to revoke or modify a confirmed plan or to deny debt discharge more than two years after confirmation."); *In re AOG Entm't, Inc*, 558 B.R. 98, 110 (Bankr. S.D.N.Y. 2016) ("Given the speculative nature of the claim . . . countervailing considerations of cost and delay weigh against granting the Rule 2004 Motion."); *In re Barkats*, No. 14-00053, 2019 WL 1762680, at *1 (Bankr. D.D.C. Apr. 18, 2019) (denying Rule 2004 examination and relying on trustee's exercise of business judgment where declarations in support of Rule 2004 examinations were speculative).

[23]  *In re Youk-See*, 450 B.R. 312, 320 (Bankr. D. Mass 2011); *In re Kleynerman*, No. 18-26659-BEH, 2020 WL 2621179, at *4 (Bankr. E.D. Wis. May 25, 2020); *In re Countrywide Home Loans, Inc*., 384 B.R. 373, 393 (Bankr. W.D. Pa. 2008); *see In re Strecker*, 251 B.R. 878, 882-883 (Bankr. D. Colo. 2000) ("Examination under Rule 2004 should not be used to annoy, embarrass or oppress the debtor.").

[24]  *Enron Corp*., 281 B.R. at 842.

[25]  *Enron Corp*., 281 B.R. at 844.

its head."[26]  There, movants speculated that "it appears that Red Flag likely may have known" an

important disputed fact.[27]  In *Kleynerman*, the "far-reaching nature of the requests," which sought

documents from not only Debtors, but from other corporate entities, and went back four years,

justified "a higher showing of good cause."[28]  The Soto Plaintiffs likewise speculate that the

proposed sale timeline is designed to accomplish a quick sale, which they then cite to assert that

they need to investigate "whether these cases have been commenced for a legitimate reorganization

purpose."[29]  The Soto Plaintiffs also seek documents going back to 2017 before Debtors' first

bankruptcy.

The Soto Plaintiffs' cases simply articulate that Rule 2004 is broad, but they do not address

facts that are close to those here.  They cite to *In re Valley Forge* for the proposition that Rule

2004 discovery "is even broader than under the Federal Rules," but that is precisely why courts

deny Rule 2004 examinations when there is pending litigation.  Indeed, the *Valley Forge* court

only allowed debtors to seek 2004 discovery "subject to the limitations of F.R.Civ.P. 26(b)(4)"

because the pending-proceeding rule barred broad Rule 2004 examination.[30]  The court held that

once an adversary proceeding is under way, discovery sought in furtherance of litigation is subject

to the F. R. Civ. P. rather than the broader bounds of R2004."[31]

The Soto Plaintiffs' other cases offer no better support.  In several of the cases they cite the

courts ***denied*** 2004 motions.[32]  In those cases where courts ordered 2004 discovery, it was the U.S.

---

[26] *In re Kleynerman*, No. 18-26659-BEH, 2020 WL 2621179, at *2 (Bankr. E.D. Wis. May 25, 2020) (movant's declaration supposed a parade of horribles, ("it appears that Red Flag likely may have known;" "it would have been seemingly difficult ... to fulfill,")); *In re Wilcher*, 56 B.R. 428 (Bankr. N.D. Ill. 1985).

[27] *Id.* at *4.

[28] *Kleynerman*, No. 18-26659-BEH, 2020 WL 2621179, at *4.

[29] Motion at ¶ 19.

[30] *In re Valley Forge Plaza Assocs.*, 109 B.R. 669, 675 (Bankr. E.D. Pa. 1990).

[31] *Id.* at 674.

[32] *In re Duratech Indus., Inc.*, 241 B.R. 291 (Bankr. E.D.N.Y. 1999), aff'd, 241 B.R. 283 (E.D.N.Y. 1999) (denying 2004 discovery by competitor of debtors); *In re Gaime*, No. 8:18-BK-05198-RCT, 2018 WL 7199806, at *4

Trustee or the UCC—and not the plaintiff in a pending proceeding—that sought 2004 discovery based on solid evidence of wrongdoing.[33] The Soto Plaintiffs do not cite a single case where a court allowed a non-debtor pending-proceeding plaintiff to conduct 2004 discovery.

The Soto Plaintiffs' cases are distinguishable for other reasons. In *Millennium Holding*, the U.S. Trustee sought 2004 discovery of debtors' borrowing $1.8 billion from their equity-holders shortly before the bankruptcy.[34] While that fact alone would raise eyebrows, at the same time the U.S. Department of Justice sued debtors for False Claims Act violations, which debtors kept secret for months.[35] Moreover, two other federal agencies had been investigating debtors.[36] Nothing even close exists here.

In *Underwood*, the U.S. Trustee sought 2004 discovery based on concrete evidence that a mortgage lender filed an unfounded foreclosure action that violated a confirmed plan and discharge order.[37] As the bankruptcy court noted, "the UST is a unique entity within the context of a bankruptcy case charged with the statutory authority to raise issues on behalf of the public interest as the Congressionally appointed 'watchdog' of the bankruptcy system."[38] And even there, the court limited the inquest to two discovery requests, while the Soto Plaintiffs propose to serve 28

---

(Bankr. M.D. Fla. Dec. 18, 2018), clarified on denial of reconsideration, No. 8:18-BK-05198-RCT, 2019 WL 436749 (Bankr. M.D. Fla. Jan. 23, 2019) (granting motion for protective order and denying 2004 discovery).

[33] *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614 (Bankr. D. Del. 2016); *In re Underwood*, 457 B.R. 635, 641–42 (Bankr. S.D. Ohio 2011); *In re Metiom, Inc.*, 318 B.R. 263 (S.D.N.Y. 2004); *In re Buckner*, 271 B.R. 213 (B.A.P. 10th Cir. 2001) (U.S. Trustee granted 2004 discovery into pro se debtors' tax returns after IRS lawsuit and settlement). *In re Hampton Island Owners' Ass'n, Inc.*, 723 F. App'x 972, 973 (11th Cir. 2018) is an unpublished *per curiam* decision affirming a sanctions order related to 2004 discovery and *In re Fred Ayers Co., Inc.*, 266 B.R. 557, 558 (Bankr. M.D. Ga. 2001) involved jurisdictional issues related to a 2004 discovery subpoena issued by debtors, neither of which provide any rationale for the order granting 2004 discovery.

[34] *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 618 (Bankr. D. Del. 2016).

[35] *In re Millennium Lab Holdings II, LLC*, 543 B.R. 703, 705 (Bankr. D. Del. 2016).

[36] *Id.*

[37] *In re Underwood*, 457 B.R. 635, 641–42 (Bankr. S.D. Ohio 2011).

[38] *Id.* (citing *Walton v. Countrywide Home Loans, Inc.*, 2009 WL 1905035, at *2 (S.D.Fla. June 9, 2009) (citing the House Report to the Bankruptcy Act of 1986 noting that USTs were "given important oversight and watchdog responsibilities to ensure honesty and fairness in the administration of bankruptcy cases....").

requests, and 4 interrogatories.[39]  In *Metiom*, the court allowed the U.S. Trustee's 2004 discovery of a corporation that conceded it had appropriated debtors' assets.[40]  There is simply no resemblance between the Soto Plaintiffs' speculation and the U.S. Trustee's investigation in these several cases.

In *Recoton Corp.*, the court permitted the creditors committee to conduct 2004 discovery of debtors' former officers for fraud based on actual evidence.[41]  The court noted that "[t]he Committee is expressly authorized to investigate the acts, conduct, assets, liabilities and financial condition of the Debtors under § 1103 of the Bankruptcy Code."[42] If allowed to conduct their own investigation, the Soto Plaintiffs will waste estate resources, usurping or duplicating the role of both the UCC and the Bankruptcy Administrator.

In *Washington Mutual*, the backdrop was the 2008 mortgage crisis, during which the Federal Deposit Insurance Corporation placed Washington Mutual in receivership in a historically large bank failure.[43]  JPMorgan purchased substantially all of Washington Mutual's assets, forcing it into bankruptcy.[44]  The bankruptcy court permitted ***debtors'*** 2004 examination of JPMorgan, notwithstanding pending proceedings between the parties because (i) the 2004 examination was directed at maximizing estate value by investigating pre-collapse conduct while the pending proceedings involved post-collapse events, and (ii) the 2004 discovery was directed at different debtor assets.[45]  This is night-and-day from the facts here.

---

[39]   *In re Underwood*, 457 B.R. 635, 645 (Bankr. S.D. Ohio 2011).

[40]   *In re Metiom, Inc.*, 318 B.R. 263, 268 (S.D.N.Y. 2004).

[41]   *In re Recoton Corp.*, 307 B.R. 751, 755–56 (Bankr. S.D.N.Y. 2004).

[42]   *Id.*

[43]   *In re Washington Mut., Inc.*, 408 B.R. 45, 47 (Bankr. D. Del. 2009).

[44]   *Id.*, at 47.

[45]   *In re Washington Mut.*, 408 B.R. at 52.

### III. BANKRUPTCY RULE 2004 IS NOT A BASIS FOR A MOTION TO REARGUE OR RECONSIDER.

The Soto Plaintiffs' motion is also procedurally improper. Though the Soto Plaintiffs are unclear about what exactly they wish to investigate using Rule 2004, they claim that they need discovery to mount a challenge to the bidding procedures timeline. This is how they put it in their brief:

> [T]he discovery the Sandy Hook Families seek is necessary to substantiate their arguments why the ***Debtors' proposed sale timeline is unnecessarily short*** and potentially designed to accomplish a quick sale, free and clear of notorious tort and wrongful death liabilities, without any legitimate opportunity for scrutiny by a third party or other estate fiduciary.[46]

Having already denied the Soto Plaintiffs' request to reject the timeline in the bidding procedures, the Court should not reverse its decision.

The Soto Plaintiffs offer absolutely no reason for the Court to overrule itself. Nor have they properly moved to reconsider that decision under Bankruptcy Rule 9023.[47] Absent new evidence, a change in the law, or manifest errors of law or fact, the Soto Plaintiffs are barred from re-litigating the bidding procedures.[48] Here, the Soto Plaintiffs merely reassert the same arguments and allegations that this Court already rejected.

---

[46] Soto Plaintiffs' Rule 2004 Motion at ¶ 18 (emphasis added).

[47] *See Kight v. IPD Printing & Distributing, Inc.*, 427 Fed.App'x. 753, 755 (11th Cir. May 24, 2011) (motion for reconsideration properly denied where movant "merely attempted to relitigate old matters and presented evidence that could have been raised prior to the entry of judgment," analyzing F.R.C.P. 59, equivalent to Rule 9023 in Bankruptcy Court); *Jones v. S. Pan Servs.*, No. 2:09-CV-1063-MEF, 2011 WL 2038628, at *2 (M.D. Ala. May 25, 2011), aff'd, 450 F. App'x 860 (11th Cir. 2012) (denying motion for reconsideration by party "attempting to get a second bite at the apple.").

[48] *See United States v. Marion*, 562 F.3d 1330, 1335 (11th Cir. 2009) ("The only grounds for granting a [Rule 59] motion are newly-discovered evidence or manifest errors of law or fact.") (citation and internal marks omitted); *Longcrier v. HL-A Co.*, 595 F. Supp.2d 1218, 1247 (S.D. Ala. 2008) (motions to reconsider are permissible "only when one of the following has occurred: an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice.") (citations and internal punctuation omitted).

**CONCLUSION**

For all of the above reasons, the Court should deny the Motion for discovery under

Bankruptcy Rule 2004.

Dated: August 26, 2020
       Birmingham, Alabama

                */s/ Derek F. Meek*
                **BURR & FORMAN LLP**
                Derek F. Meek
                Hanna Lahr
                420 North 20th Street, Suite 3400
                Birmingham, Alabama 35203
                Telephone:  (205) 251-3000
                Facsimile:   (205) 458-5100
                Email: dmeek@burr.com
                      hlahr@burr.com

                - and -

                **O'MELVENY & MYERS LLP**
                Stephen H. Warren (admitted *pro hac vice*)
                Karen Rinehart (admitted *pro hac vice*)
                400 South Hope Street, 18th Floor
                Los Angeles, CA  90071-2899
                Telephone: (213) 430-6000
                Facsimile:   (213) 430-6407
                Email: swarren@omm.com
                      krinehart@omm.com

                Nancy Mitchell (admitted *pro hac vice*)
                Gary Svirsky (admitted *pro hac vice*)
                Times Square Tower
                7 Times Square
                New York, New York 10036
                (212) 326-2000
                Email:     gsvirsky@omm.com
                      nmitchell@omm.com

                *Attorneys for the Debtors and Debtors in Possession*

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| In re:<br><br>REMINGTON OUTDOOR COMPANY, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-81688-CRJ11<br><br>Jointly Administered |

**DECLARATION OF HANNA LAHR IN SUPPORT OF**
**DEBTORS' RESPONSE TO SOTO PLAINTIFFS' MOTION**
**TO CONDUCT RULE 2004 DISCOVERY [ECF 381]**

I, Hanna Lahr, make this declaration pursuant to 28 U.S.C. § 1746 and state as follows:

1.     I am an attorney with the law firm of Burr & Forman LLP.  I am licensed to practice law in the State of Alabama, and I am admitted to practice before the United States District Court for the Northern District of Alabama.  I make this declaration in support of *Debtors' Response to Soto Plaintiffs' Motion to Conduct Rule 2004 Discovery [ECF 381]* (the "**Response**")[2].  I am competent to testify to the matters stated herein.

2.     On August 18, 2020, I served via email *Debtors' Responses and Objections to the Sandy Hook Families' First Set of Requests for Production of Documents in Connection with their Objection to Debtors' Motion for (i) an Order Establishing Bidding Procedures and Granting Related Relief and (ii) an Order or Orders Approving the Sale of the Debtors' Assets [ECF No.*

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405).  The Debtors' corporate headquarters are located at 100 Electronics Boulevard SW, Huntsville, AL 35824.

[2]  All capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Response.

44043703 v1

*29]* ("**Debtors' Discovery Responses**") on counsel to the Soto Plaintiffs.  A copy of the email and Debtors' Discovery Responses is attached hereto as **Exhibit 1**.  A copy of Debtors' Discovery Responses was also sent to counsel for the Soto Plaintiffs via U.S. First Class Mail.

3.  On August 18, 2020, I served via email *Debtors' Amended Responses and Objections to the Sandy Hook Families' First Set of Requests for Production of Documents in Connection with their Objection to Debtors' Motion for (i) an Order Establishing Bidding Procedures and Granting Related Relief and (ii) an Order or Orders Approving the Sale of the Debtors' Assets [ECF No. 29]* ("**Debtors' Amended Discovery Responses**") on counsel to the Soto Plaintiffs.  A copy of the email and Debtors' Amended Discovery Responses is attached hereto as **Exhibit 2**.  A copy of Debtors' Amended Discovery Responses was also sent to counsel for the Soto Plaintiffs via U.S. First Class Mail.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 26, 2020.

By: /s/ Hanna Lahr
     Hanna Lahr

# EXHIBIT 1

**Lahr, Hanna**

| | |
|---|---|
| **From:** | Lahr, Hanna |
| **Sent:** | Tuesday, August 18, 2020 9:34 AM |
| **To:** | 'taze@ssmattorneys.com'; 'ty@ssmattorneys.com'; 'jkoskoff@koskoff.com'; 'asterling@koskoff.com'; 'dbernard@koskoff.com'; 'jwisner@koskoff.com'; 'fgay@selendygay.com' |
| **Cc:** | Meek, Derek; 'Svirsky, Gary'; Rinehart, Karen; Warren, Steve; Taylor, Jennifer |
| **Subject:** | In re Remington Outdoor Company, Inc., et al.; Case No. 20-81688-CRJ11; Discovery Responses and Objections |
| **Attachments:** | Debtors' Discovery Responses and Objections.pdf |

Attached please find *Debtors' Responses and Objections to the Sandy Hook Families' First Set of Requests for Production of Documents in Connection with their Objection to Debtors' Motion for (i) an Order Establishing Bidding Procedures and Granting Related Relief and (ii) an Order or Orders Approving the Sale of the Debtors' Assets [ECF No. 29]*.

Thanks,

Hanna

1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| REMINGTON OUTDOOR COMPANY, INC., *et al.*,[1] | Case No. 20-81688-CRJ11 |
| Debtors. | Jointly Administered |

**DEBTORS' RESPONSES AND OBJECTIONS TO THE SANDY HOOK FAMILIES'
FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS IN
CONNECTION WITH THEIR OBJECTION TO DEBTORS' MOTION
FOR (I) AN ORDER ESTABLISHING BIDDING PROCEDURES
AND GRANTING RELATED RELIEF AND (II) AN ORDER OR ORDERS
APPROVING THE SALE OF THE DEBTORS' ASSETS [ECF NO. 29]**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, made applicable to this

contested matter by Rules 7034 and 9014(c) of the Federal Rules of Bankruptcy Procedure, the

above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through

their undersigned attorneys, hereby submit the following responses and objections (the

"Responses") to the Discovery Requests submitted to Debtors on behalf of Donna L. Soto, Ian

and Nicole Hockley, David C. Wheeler, Mary A. D'Avino, Mark and Jacqueline Barden,

William D. Sherlach, Neil Heslin and Scarlett Lewis, Leonard Pozner, and Gilles J. Rousseau

(the "Soto Plaintiffs" or "Soto Action") on August 11, 2020 in relation to the Soto Plaintiffs'

Objection to *Debtors' Motion for (i) an Order Establishing Bidding Procedures and Granting*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405). The Debtors' corporate headquarters is located at 100 Electronics Boulevard SW, Huntsville, AL 35824.

43997295 v1

*Related Relief and (ii) an Order or Orders Approving the Sale of the Debtors' Assets* [ECF No. 29] (the "Motion").

## PRELIMINARY STATEMENT

The Debtors assert the below Responses to the Requests. The Responses are based on information available to the Debtors at this time and are given without prejudice to the Debtors' rights to add, modify, or otherwise change or amend their responses in any way at any time in light of additional facts revealed through subsequent discovery and investigation, and to produce further information or documents as may become known to them. The Debtors specifically reserve the right to utilize subsequently discovered documents or evidence.

These Responses do not in any way waive any objections by the Debtors, in this or in any subsequent proceeding, on any grounds, including objections to competency, relevancy, materiality, privilege, or admissibility. In addition, any objection or lack of objection to the Requests may not be deemed or construed as an admission that responsive documents exist or do not exist, or that the Debtors have or do not have possession, custody, or control of such documents. Any statement that responsive documents will be produced does not imply that any responsive documents exist, but only that non-privileged, responsive documents will be produced if they exist and are within the possession, custody, or control of the Debtors.

## GENERAL OBJECTIONS

The Debtors assert the following general objections, which shall apply to each of the Requests, and which are incorporated into each of the Debtors' individual Responses below.

1.      The Debtors object to each Request on the ground that the Requests are irrelevant to the procedural issues to be heard on August 18, 2020 (or on whatever additional days the hearing may be continued) related to the Debtors' Motion setting bidding procedures for a future sale of as-yet-unknown assets of the Debtors to an as-yet-unknown buyer. The Debtors thus

43997295 v1

object to each Request on the ground that it seeks documents and information unrelated to the issues to be adjudicated in connection with the Motion.

2.      The Debtors object to each Request to the extent a protective order has not been entered and the Soto Plaintiffs have not become parties to a protective order.  The Debtors reserve the right to condition the production of any such confidential information upon entry of an appropriate protective order.

3.      The Debtors also object to the Requests because they were served 4 days after the Soto Plaintiffs objected to the Motion, which they knew was on an expedited schedule.

4.      The Debtors object to each Request to the extent it purports to expand, modify, or impose any duty beyond those actually imposed by the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, or the applicable Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Northern District of Alabama, Northern Division.

5.      The Debtors object to each Request to the extent that the Request calls for the Debtors to search for and produce documents or information not in the Debtors' possession, custody, or control within the meaning of Rule 34 of the Federal Rules of Civil Procedure.

6.      The Debtors object to each Request to the extent that the Request calls for the Debtors to search for and produce documents or information that the Soto Plaintiffs already have in their possession, custody, or control, are more readily available to the Soto Plaintiffs, or are obtainable from another source that is publicly available, more convenient, less burdensome, or less expensive than production by the Debtors.

43997295 v1

7.      The Debtors object to each Request to the extent that the Request seeks electronically-stored information from sources not reasonably accessible and the production of which would cause undue burden or cost.

8.      The Debtors object to each Request to the extent that the Request seeks documents and information that are not proportional to the Motion, considering the importance of the issues at stake in this contested matter, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

9.      The Debtors object to each Request to the extent that the Request is vague, ambiguous, unintelligible, or otherwise unclear about the precise documents or information sought.

10.     The Debtors object to each Request to the extent that it is harassing and oppressive insofar as the documents and things requested would impose a burden or expense on the Debtors that outweighs its likely benefit, and considering the importance of the specific discovery sought in resolving the issues in connection with this contested matter.

11.     The Debtors object to each Request to the extent that it calls for information, documents, or materials that are covered by the work product doctrine, or are protected from disclosure by the attorney-client privilege or any other applicable privilege or immunity. Inadvertent identification or disclosure of such information, documents, or materials shall not constitute waiver of any privilege with respect to the subject matter thereof or the information contained herein. The Debtors reserve the right to demand return of any inadvertently

4

produced documents, without prejudice to any claim of privilege, in the event any such document is produced.

12.     The Debtors object to each Request to the extent that the Request seeks confidential, proprietary, commercial, or other business information, invades the right to privacy of parties to this action or third parties, and/or is subject to any confidentiality obligation owed to any other entity.

13.     The Debtors object to each Request to the extent that it assumes disputed facts or legal conclusions.  Any response or objection to the Requests shall not be deemed an admission of any assumed facts or legal conclusions.

14.     The Debtors object to each Request to the extent that the Request purports to require production of "all documents" under circumstances in which production of a subset of "all documents" would be sufficient to show the pertinent information.

15.     In making these Responses and objections to the Requests, the Debtors do not waive or intend to waive, but rather preserve and intend to preserve:

   a.     all objections as to competence, relevance, materiality, and admissibility into evidence of any of the Debtors' objections, responses, information or documents provided in response to the Requests, or the subject matter thereof;

   b.     all rights to object on any ground to the use in this or any other subsequent proceeding of any of the Debtors' objections, responses, information, or documents provided in response to the Requests, or the subject matter thereof; and

   c.     all rights to object on any ground to any request for further responses to the Requests or any other requests for documents, or to other discovery requests involving or related to the subject matter of the Requests.

16.     The Debtors object to each Request to the extent that the Request purports to require the Debtors to produce responsive documents before August 18, 2020—less than one week after the Requests were served.

43997295 v1

17.     The Debtors reserve the right to redact portions of documents that are non-responsive or include information protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable discovery privilege or protection.

18.     The Debtors object to the requests because the Soto Plaintiffs did not define any vague terms that need definition.

### RESPONSES AND OBJECTIONS TO DOCUMENT REQUESTS

**REQUEST NO. 1:**  Documents sufficient to show your financial performance and projections covering the years 2017 – 2020 inclusive (include both actual results and projections).

The Debtors object to this Request on the ground that it seeks documents and information unrelated to the issues to be adjudicated in connection with the Motion.  The information sought by this Request is irrelevant to the Motion through which the Debtors plan to set a timetable and procedures for a future sale of as-yet-unknown assets of the Debtors to an as-yet-unknown buyer. The Debtors also object to the time period of the Request to the extent the Request seeks valuation information from before the Debtors emerged in 2018 from a previous bankruptcy proceeding, making this Request overly broad and unduly burdensome.

The Debtors further object to this Request on the ground that the terms and phrases "financial performance," "projections," "actual results and projections," "Documents," and "show" are overbroad, vague, and ambiguous.  As a result, this Request is overly broad and unduly burdensome.

The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' previous bankruptcy proceeding or otherwise.

6

**REQUEST NO. 2:**  Documents reflecting any valuation of your assets, business or liabilities, including the Sandy Hook Wrongful Death Action, from 2017 to the present.

The Debtors incorporate their Response to Request No. 1.  The Debtors also object to the time period of the Request to the extent the Request seeks valuation information from before the Debtors emerged in 2018 from a previous bankruptcy proceeding, thus making this Request overly broad and unduly burdensome.  The Debtors further object to this Request on the ground that the terms and phrases "valuation," "assets," "business," "liabilities," "Documents," "Sandy Hook Wrongful Death Action," and "reflecting" are overbroad, vague, ambiguous. As a result of these ambiguities, this Request is overly broad and unduly burdensome.

The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' previous bankruptcy proceeding or otherwise.

**REQUEST NO. 3:**  Documents reflecting communications with pre-petition lenders relating to the Sandy Hook Wrongful Death Action, and your decision to pursue chapter 11 and/or sale of substantially all of Remington's going concern business.

The Debtors incorporate their Response to Request No. 1.  The Debtors object to the Request on the ground that it seeks documents and information unrelated to the issues to be adjudicated in connection with the Motion.  The Debtors also object to the time period of the Request to the extent the Request seeks information from before the Debtors emerged in 2018 from a previous bankruptcy proceeding.  The Debtors object to the extent this Request seeks documents from an undefined time period.

The Debtors object to this Request on the ground that the terms and phrases "communications," "pre-petition lenders," "relating," "decision," "Documents," "substantially all," "Sandy Hook Wrongful Death Action," and "going concern business" are overbroad, vague, and ambiguous, and thus unduly burdensome.

7

The Debtors object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise. The Debtors also object to the extent this Request seeks confidential documents or information related to the sale process, production of which would prejudice ongoing asset sale negotiations.

Subject to and without waiving any of the General and Specific Objections, the Debtors will produce responsive, non-privileged communications with pre-petition lenders relating to the Sandy Hook Wrongful Death Action to the extent any exist. Any document production will be made only after the entry of an appropriate confidentiality order.

**REQUEST NO. 4:** Documents relating to the role of the Sandy Hook Wrongful Death Action, and the denial of your petition for certiorari, in your decision to "explore strategic alternatives" in December 2019 as described in the D'Arcy Decl. ¶¶ 47–48.

The Debtors incorporate their Response to Request No. 1. The Debtors object to this Request on the ground that the term and phrase "Documents" and "Sandy Hook Wrongful Death Action" are overbroad, vague, and ambiguous, and thus unduly burdensome. The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

**REQUEST NO. 5:** Documents concerning the role of the Sandy Hook Wrongful Death Action in the decision to commence your chapter 11 cases and/or pursue an asset sale under section 363 of the Bankruptcy Code.

The Debtors incorporate their Response to Request No. 1. The Debtors object to this Request on the ground that the term and phrase "Documents" and "Sandy Hook Wrongful Death Action" are overbroad, vague, and ambiguous, and thus unduly burdensome. The Debtors also object to this Request to the extent that it calls for the production of information and documents

8

protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

**REQUEST NO. 6:** Documents or communications shared with Ducera regarding the Sandy Hook Wrongful Death Action.

The Debtors incorporate their Response to Request No. 1. The Debtors object to this Request on the ground that the terms "Ducera," "Documents," "Sandy Hook Wrongful Death Action," and "communications" are overbroad, vague, and ambiguous. The Debtors further object to the extent this Request seeks confidential documents or information related to the sale process, production of which would prejudice ongoing asset sale negotiations.

**REQUEST NO. 7:** Documents concerning the pre-petition marketing of your assets and negotiations over a potential sale of those assets, and any communications with any party in connection therewith regarding the Sandy Hook Wrongful Death Action.

The Debtors incorporate their Response to Request No. 1. The Debtors further object to this Request on the ground that the terms and phrases "pre-petition marketing," "assets," "negotiations," "potential sale," "Sandy Hook Wrongful Death Action," "Documents," and "communications" are overbroad, vague, and ambiguous. The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise. The Debtors further object to the extent this Request seeks confidential documents or information related to the sale process, production of which would prejudice ongoing asset sale negotiations

Subject to and without waiving any of the General and Specific Objections, the Debtors will provide responsive, non-privileged documents, to the extent any exist, concerning communications about the Soto Action sent in pre-petition efforts to market and sell the

9

Debtors' assets. Any document production will be made only after the entry of an appropriate confidentiality order.

**REQUEST NO. 8:** Documents sufficient to show indications of interest or bids you have received, and any confidentiality or non-disclosure agreements you have entered into, in connection with the proposed sale of your assets either pre- or post-petition.

The Debtors incorporate their Response to Request No. 1. The Debtors further object to this Request on the ground that the terms and phrases "indications of interest," "bids," and "Documents" are overbroad, vague, and ambiguous. The Debtors also object to the extent this Request seeks confidential documents or information related to the sale process, production of which would prejudice ongoing asset sale negotiations. And the Debtors object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

Subject to and without waiving any of the General and Specific Objections, the Debtors will provide a list of parties contacted pre- and post-petition as well as those that entered into confidentiality or non-disclosure agreements. Any document production will be made only after the entry of an appropriate confidentiality order.

**REQUEST NO. 9:** Communications with potential buyers regarding the Sandy Hook Wrongful Death Action.

The Debtors incorporate their Response to Request No. 1. The Debtors further object to this Request on the ground that the phrases "potential buyers," "Sandy Hook Wrongful Death Action," and "communications" are overbroad, vague, and ambiguous. The Debtors also object to the extent this Request seeks confidential documents or information related to the sale process, production of which would prejudice ongoing asset sale negotiations. And the Debtors also object to this Request to the extent that it calls for the production of information and documents

43997295 v1

protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

Subject to and without waiving any of the General and Specific Objections, the Debtors will provide responsive, non-privileged documents, to the extent any exist, concerning communications with potential buyers regarding the Soto Action. Any document production will be made only after the entry of an appropriate confidentiality order.

**REQUEST NO. 10:** Communications with the Navajo Nation regarding its 2018 and 2020 offers to buy your assets.

The Debtors incorporate their Response to Request No. 1. This Request is also irrelevant to the extent it seeks information related to the prior bankruptcy. The Debtors further object to this Request on the ground that the term and phrase "Navajo Nation" and "communications" are overbroad, vague, and ambiguous. The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

**REQUEST NO. 11:** Documents sufficient to show your valuation of any debt or equity securities associated with the Debtors.

The Debtors incorporate their Response to Request No. 1. The Debtors further object to this Request on the ground that the terms and phrases "valuation," "debt or equity securities," "Documents," and "associated" are overbroad, vague, and ambiguous. The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

**REQUEST NO. 12:** Documents relating to the refinancing of any loan facilities, the issuance of any promissory notes and other debt securities, or any other restructuring of your capital

43997295 v1

structure following your 2018 Bankruptcy, and any liens or collateral arrangements entered into or modified following your 2018 Bankruptcy.

The Debtors incorporate their Response to Request No. 1. The Debtors further object to this Request on the ground that the terms and phrases "loan facilities," "issuance of promissory notes or other debt securities," "restructuring of your capital structure," "liens or collateral arrangements," "Documents," and "modified" are overbroad, vague, and ambiguous. The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

**REQUEST NO. 13:** Documents and communications relating to any intercompany or affiliate transactions, dividends or other payments to shareholders, or asset transfers since May 2018.

The Debtors incorporate their Response to Request No. 1. The Debtors further object to this Request on the ground that the terms and phrases "intercompany or affiliate transactions," "asset transfers," "communications," and "Documents" are overbroad, vague, and ambiguous. The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

**REQUEST NO. 14:** Documents relating to your ability to obtain debtor-in-possession financing, your decision to seek to finance the bankruptcy cases with cash collateral instead of pursuing debtor-in-possession financing, and any communications with your prepetition lenders regarding the schedule for the chapter 11 cases and asset sales.

The Debtors incorporate their Response to Request No. 1. The Debtors further object to this Request on the ground that the terms and phrases "finance or financing," "communications," "prepetition lenders," "asset sales," "ability," "schedule," and "Documents" are overbroad,

43997295 v1

vague, and ambiguous.  The Debtors further object to the extent this Request seeks confidential documents or information related to the sale process, production of which would prejudice ongoing asset sale negotiations.  The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

**REQUEST NO. 15:**  Documents relating to your decision to omit the claims of the Sandy Hook Families from your list of top 40 unsecured creditors.

The Debtors incorporate their Response to Request No. 1.  The Debtors further object to this Request on the ground that the terms and phrases "omit" "decision," "claims," and "Documents" are overbroad, vague, and ambiguous.  The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

**REQUEST NO. 16:**  Documents relating to any insurance policies applicable to the Sandy Hook Wrongful Death Action, including any policies under which you have provided notice of claims, and all communications with insurance companies regarding any notice of claims.

The Debtors incorporate their Response to Request No. 1.  The Debtors further object to this Request on the ground that the terms and phrases "applicable," "notice of claims," "Sandy Hook Wrongful Death Action," "Documents," and "communications" are overbroad, vague, and ambiguous.  The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

43997295 v1

**REQUEST NO. 17:** Documents sufficient to show the total fees and expenses you have incurred defending the Sandy Hook Wrongful Death Action, how much has been reimbursed by insurance, and whether such amounts are inside or outside coverage limits.

The Debtors incorporate their Response to Request No. 1. The Debtors further object to this Request on the ground that the terms and phrases "total fees and expenses," "reimbursed," "inside or outside coverage limits," "Sandy Hook Wrongful Death Action," and "Documents" are overbroad, vague, and ambiguous. The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

**REQUEST NO. 18:** Documents relating to any releases you intend to request in connection with your chapter 11 cases or 363 sale.

The Debtors incorporate their Response to Request No. 1. The Debtors object to this Request on the ground that the term "Documents" is overbroad, vague, and ambiguous, and thus unduly burdensome. The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

**REQUEST NO. 19:** All materials provided to or considered by your Board of Directors concerning the subject matter of any of the foregoing requests.

The Debtors incorporate their Response to Request No. 1. The Debtors further object to this Request on the ground that the term and phrase "subject matter" and "materials" are overbroad, vague, and ambiguous. The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

14

**REQUEST NO. 20:** All materials provided to or considered by your Board of Directors concerning the decision to create a special restructuring committee.

The Debtors incorporate their Response to Request No. 1. The Debtors further object to this Request on the ground that the terms and phrases "materials," "provided to," "considered," "special restructuring committee," and "concerning" are overbroad, vague, and ambiguous. The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

**REQUEST NO. 21:** All documents relied upon in the bid procedures motion, the D'Arcy declaration, or that you will use or rely upon at the bid procedures hearing, including:

a. Documents supporting the representation in ¶ 43 of the D'Arcy Declaration that you experienced an inability to purchase raw materials and its impact on your financial performance.

b. Documents relating to the "analysis of strategic priorities, various cost-cutting measures, and financing alternatives" referenced in ¶ 42 of the D'Arcy Declaration.

c. The non-binding indications of intents with proposed investment terms referenced in ¶ 48 of the D'Arcy Declaration.

d. Documents relating to the negotiations referenced in ¶ 49 of the D'Arcy Declaration.

e. Documents evidencing bids or other indications of interest referenced in ¶ 52 of the D'Arcy Declaration.

f. Documents concerning any inquiries into alternatives available for financing and solicitations of proposals for debtor in possession financing from other financial institutions referenced in ¶ 57 of the D'Arcy Declaration.

g. Documents relating to negotiations with your secured lenders to reduce the collateral base floor, including but not limited to those negotiations referenced in ¶ 44 of the D'Arcy Declaration.

The Debtors incorporate their Response to Request No. 1. The Debtors object to this Request on the ground that the terms and phrases "documents," "raw materials," "impact," "financial performance," "non-binding indications," "intents," "proposed investment terms," "indications of interest," "financial institutions," "alternatives available for financing,"

"solicitations of proposals," "negotiations," and "reduce the collateral base floor" are overbroad, vague, and ambiguous, and thus unduly burdensome. Subject to and without waiving any of the General and Specific Objections, the Debtors will provide responsive, non-privileged documents if they intend to rely on them at any evidentiary hearing to decide the Motion.

**REQUEST NO. 22:** Documents supporting the representation in ¶ 43 of the D'Arcy Declaration that you experienced an inability to purchase raw materials and its impact on your financial performance.

The Debtors incorporate their Response to Request No. 1. The Debtors further object to this Request on the ground that the terms and phrases "raw materials," "impact," "financial performance," and "Documents" are overbroad, vague, and ambiguous.

**REQUEST NO. 23:** Documents relating to the "analysis of strategic priorities, various cost-cutting measures, and financing alternatives" referenced in ¶ 42 of the D'Arcy Declaration.

The Debtors incorporate their Response to Request No. 1. The Debtors object to this Request on the ground that the term "Documents" is overbroad, vague, and ambiguous, and thus unduly burdensome. The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

**REQUEST NO. 24:** The non-binding indications of intents with proposed investment terms referenced in ¶ 48 of the D'Arcy Declaration.

The Debtors incorporate their Response to Request No. 1. The Debtors further object to this Request on the ground that the terms and phrases "non-binding indications," "intents," and "proposed investment terms" are overbroad, vague, and ambiguous. The Debtors further object to the extent this Request seeks confidential documents or information related to the sale process, production of which would prejudice ongoing asset sale negotiations. The Debtors also object to this Request to the extent that it calls for the production of information and documents protected

16

by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

Subject to and without waiving any of the General and Specific Objections, the Debtors refer to the documents they will provide in response to Request 8.

**REQUEST NO. 25:**  Documents relating to the negotiations referenced in ¶ 49 of the D'Arcy Declaration.

The Debtors incorporate their Response to Request No. 1.  The Debtors object to this Request on the ground that the term "Documents" is overbroad, vague, and ambiguous, and thus unduly burdensome. The Debtors further object to the extent this Request seeks confidential documents or information related to the sale process, production of which would prejudice ongoing asset sale negotiations. The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

Subject to and without waiving any of the General and Specific Objections, the Debtors refer to the documents they will provide in response to Request 8.

**REQUEST NO. 26:**  Documents evidencing bids or other indications of interest referenced in ¶ 52 of the D'Arcy Declaration.

The Debtors incorporate their Response to Request No. 1.  The Debtors further object to this Request on the ground that the phrases "indications of interest" and "Documents" are overbroad, vague, and ambiguous.  The Debtors further object to the extent this Request seeks confidential documents or information related to the sale process, production of which would prejudice ongoing asset sale negotiations.  The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client

43997295 v1

privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

Subject to and without waiving any of the General and Specific Objections, the Debtors refer to the documents they will provide in response to Request 8.

**REQUEST NO. 27:** Documents concerning any inquiries into alternatives available for financing and solicitations of proposals for debtor in possession financing from other financial institutions referenced in ¶ 57 of the D'Arcy Declaration.

The Debtors incorporate their Response to Request No. 1. The Debtors further object to this Request on the ground that the terms and phrases "financial institutions," "alternatives available for financing," "Documents," and "solicitations of proposals" are overbroad, vague, and ambiguous. The Debtors further object to the extent this Request seeks confidential documents or information related to the sale process, production of which would prejudice ongoing asset sale negotiations. The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

**REQUEST NO. 28:** Documents relating to negotiations with your secured lenders to reduce the collateral base floor, including but not limited to those negotiations referenced in ¶ 44 of the D'Arcy Declaration.

The Debtors incorporate their Response to Request No. 1. The Debtors further object to this Request on the ground that the terms and phrases "negotiations," "Documents," and "reduce the collateral base floor" are overbroad, vague, and ambiguous. The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

43997295 v1

Dated: August 18, 2020

/s/ Derek F. Meek
**BURR & FORMAN LLP**
Derek F. Meek
Hanna Lahr
420 North 20th Street, Suite 3400
Birmingham, Alabama 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
Email: dmeek@burr.com
          hlahr@burr.com

- and -

**O'MELVENY & MYERS LLP**
Stephen H. Warren (admitted *pro hac vice*)
Karen Rinehart (admitted *pro hac vice*)
400 South Hope Street, 18th Floor
Los Angeles, CA 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
Email: swarren@omm.com
          krinehart@omm.com

Jennifer Taylor (admitted *pro hac vice*)
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: (415) 984-8700
Facsimile: (415) 984-8701
Email:    jtaylor@omm.com

Gary Svirsky (admitted *pro hac vice*)
Times Square Tower
7 Times Square
New York, New York 10036
(212) 326-2000
Email:    gsvirsky@omm.com

*Attorneys for the Debtors and Debtors in Possession*

43997295 v1

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document by U.S. First Class Mail and email on this the 18th day of August, 2020:

| | |
|---|---|
| Tazewell T. Shepard III | Joshua Koskoff |
| Tazewell T. Shepard IV | Alinor Sterling |
| SPARKMAN, SHEPARD & MORRIS, P.C. | David Bernard |
| P.O. Box 19045 | Jeffrey Wisner |
| Huntsville, AL 35804 | KOSKOFF KOSKOFF & BIEDER |
| taze@ssmattorneys.com | 350 Fairfield Avenue |
| ty@ssmattorneys.com | Bridgeport, CT 06604 |
| | jkoskoff@koskoff.com |
| | asterling@koskoff.com |
| | dbernard@koskoff.com |
| | jwisner@koskoff.com |

Faith Gay
SELENDY & GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
fgay@selendygay.com

_/s/ Derek F. Meek_
OF COUNSEL

43997295 v1

# EXHIBIT 2

**Lahr, Hanna**

| | |
|---|---|
| **From:** | Lahr, Hanna |
| **Sent:** | Tuesday, August 18, 2020 4:35 PM |
| **To:** | 'taze@ssmattorneys.com'; 'ty@ssmattorneys.com'; 'jkoskoff@koskoff.com'; 'asterling@koskoff.com'; 'dbernard@koskoff.com'; 'jwisner@koskoff.com'; 'fgay@selendygay.com' |
| **Cc:** | Meek, Derek; Svirsky, Gary; Rinehart, Karen; Warren, Steve; Taylor, Jennifer; 'Panchok-Berry, Janine' |
| **Subject:** | In re Remington Outdoor Company, Inc., et al.; Case No. 20-81688-CRJ11; Amended Discovery Responses and Objections |
| **Attachments:** | Debtors' Amended Discovery Responses and Objections.pdf |

Attached please find *Debtors' Amended Responses and Objections to the Sandy Hook Families' First Set of Requests for Production of Documents in Connection with their Objection to Debtors' Motion for (i) an Order Establishing Bidding Procedures and Granting Related Relief and (ii) an Order or Orders Approving the Sale of the Debtors' Assets [ECF No. 29].*

Thanks,

Hanna

1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| REMINGTON OUTDOOR COMPANY, INC., *et al.*,[1] | Case No. 20-81688-CRJ11 |
| Debtors. | Jointly Administered |

**DEBTORS' AMENDED RESPONSES AND OBJECTIONS TO THE SANDY HOOK
FAMILIES' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS IN
CONNECTION WITH THEIR OBJECTION TO DEBTORS' MOTION
FOR (I) AN ORDER ESTABLISHING BIDDING PROCEDURES
AND GRANTING RELATED RELIEF AND (II) AN ORDER OR ORDERS
APPROVING THE SALE OF THE DEBTORS' ASSETS [ECF NO. 29]**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, made applicable to this

contested matter by Rules 7034 and 9014(c) of the Federal Rules of Bankruptcy Procedure, the

above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through

their undersigned attorneys, hereby submit the following responses and objections (the

"Responses") to the Discovery Requests submitted to Debtors on behalf of Donna L. Soto, Ian

and Nicole Hockley, David C. Wheeler, Mary A. D'Avino, Mark and Jacqueline Barden,

William D. Sherlach, Neil Heslin and Scarlett Lewis, Leonard Pozner, and Gilles J. Rousseau

(the "Soto Plaintiffs" or "Soto Action") on August 11, 2020 in relation to the Soto Plaintiffs'

Objection to *Debtors' Motion for (i) an Order Establishing Bidding Procedures and Granting*

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, as applicable, are:  Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899);
FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510);
TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution
Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors
Holdco, LLC (7744); and Outdoor Services, LLC (2405). The Debtors' corporate headquarters is located at 100
Electronics Boulevard SW, Huntsville, AL 35824.

44002067 v1

*Related Relief and (ii) an Order or Orders Approving the Sale of the Debtors' Assets* [ECF No. 29] (the "Motion").

## PRELIMINARY STATEMENT

The Debtors assert the below Responses to the Requests. The Responses are based on information available to the Debtors at this time and are given without prejudice to the Debtors' rights to add, modify, or otherwise change or amend their responses in any way at any time in light of additional facts revealed through subsequent discovery and investigation, and to produce further information or documents as may become known to them. The Debtors specifically reserve the right to utilize subsequently discovered documents or evidence.

These Responses do not in any way waive any objections by the Debtors, in this or in any subsequent proceeding, on any grounds, including objections to competency, relevancy, materiality, privilege, or admissibility. In addition, any objection or lack of objection to the Requests may not be deemed or construed as an admission that responsive documents exist or do not exist, or that the Debtors have or do not have possession, custody, or control of such documents. Any statement that responsive documents will be produced does not imply that any responsive documents exist, but only that non-privileged, responsive documents will be produced if they exist and are within the possession, custody, or control of the Debtors.

## GENERAL OBJECTIONS

The Debtors assert the following general objections, which shall apply to each of the Requests, and which are incorporated into each of the Debtors' individual Responses below.

1. The Debtors object to each Request on the ground that the Requests are irrelevant to the procedural issues to be heard on August 18, 2020 (or on whatever additional days the hearing may be continued) related to the Debtors' Motion setting bidding procedures for a future sale of as-yet-unknown assets of the Debtors to an as-yet-unknown buyer. The Debtors thus

44002067 v1

object to each Request on the ground that it seeks documents and information unrelated to the issues to be adjudicated in connection with the Motion.

2.      The Debtors object to each Request to the extent a protective order has not been entered and the Soto Plaintiffs have not become parties to a protective order. The Debtors reserve the right to condition the production of any such confidential information upon entry of an appropriate protective order.

3.      The Debtors also object to the Requests because they were served 4 days after the Soto Plaintiffs objected to the Motion, which they knew was on an expedited schedule.

4.      The Debtors object to each Request to the extent it purports to expand, modify, or impose any duty beyond those actually imposed by the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, or the applicable Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Northern District of Alabama, Northern Division.

5.      The Debtors object to each Request to the extent that the Request calls for the Debtors to search for and produce documents or information not in the Debtors' possession, custody, or control within the meaning of Rule 34 of the Federal Rules of Civil Procedure.

6.      The Debtors object to each Request to the extent that the Request calls for the Debtors to search for and produce documents or information that the Soto Plaintiffs already have in their possession, custody, or control, are more readily available to the Soto Plaintiffs, or are obtainable from another source that is publicly available, more convenient, less burdensome, or less expensive than production by the Debtors.

44002067 v1

7.      The Debtors object to each Request to the extent that the Request seeks electronically-stored information from sources not reasonably accessible and the production of which would cause undue burden or cost.

8.      The Debtors object to each Request to the extent that the Request seeks documents and information that are not proportional to the Motion, considering the importance of the issues at stake in this contested matter, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

9.      The Debtors object to each Request to the extent that the Request is vague, ambiguous, unintelligible, or otherwise unclear about the precise documents or information sought.

10.      The Debtors object to each Request to the extent that it is harassing and oppressive insofar as the documents and things requested would impose a burden or expense on the Debtors that outweighs its likely benefit, and considering the importance of the specific discovery sought in resolving the issues in connection with this contested matter.

11.      The Debtors object to each Request to the extent that it calls for information, documents, or materials that are covered by the work product doctrine, or are protected from disclosure by the attorney-client privilege or any other applicable privilege or immunity. Inadvertent identification or disclosure of such information, documents, or materials shall not constitute waiver of any privilege with respect to the subject matter thereof or the information contained herein.  The Debtors reserve the right to demand return of any inadvertently produced

4

documents, without prejudice to any claim of privilege, in the event any such document is produced.

12.     The Debtors object to each Request to the extent that the Request seeks confidential, proprietary, commercial, or other business information, invades the right to privacy of parties to this action or third parties, and/or is subject to any confidentiality obligation owed to any other entity.

13.     The Debtors object to each Request to the extent that it assumes disputed facts or legal conclusions.  Any response or objection to the Requests shall not be deemed an admission of any assumed facts or legal conclusions.

14.     The Debtors object to each Request to the extent that the Request purports to require production of "all documents" under circumstances in which production of a subset of "all documents" would be sufficient to show the pertinent information.

15.     In making these Responses and objections to the Requests, the Debtors do not waive or intend to waive, but rather preserve and intend to preserve:

      a.     all objections as to competence, relevance, materiality, and admissibility into evidence of any of the Debtors' objections, responses, information or documents provided in response to the Requests, or the subject matter thereof;

      b.     all rights to object on any ground to the use in this or any other subsequent proceeding of any of the Debtors' objections, responses, information, or documents provided in response to the Requests, or the subject matter thereof; and

      c.     all rights to object on any ground to any request for further responses to the Requests or any other requests for documents, or to other discovery requests involving or related to the subject matter of the Requests.

16.     The Debtors object to each Request to the extent that the Request purports to require the Debtors to produce responsive documents before August 18, 2020—less than one week after the Requests were served.

44002067 v1

17.     The Debtors reserve the right to redact portions of documents that are non-responsive or include information protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable discovery privilege or protection.

18.     The Debtors object to the requests because the Soto Plaintiffs did not define any vague terms that need definition.

## RESPONSES AND OBJECTIONS TO DOCUMENT REQUESTS

**REQUEST NO. 1:**  Documents sufficient to show your financial performance and projections covering the years 2017 – 2020 inclusive (include both actual results and projections).

The Debtors object to this Request on the ground that it seeks documents and information unrelated to the issues to be adjudicated in connection with the Motion.  The information sought by this Request is irrelevant to the Motion through which the Debtors plan to set a timetable and procedures for a future sale of as-yet-unknown assets of the Debtors to an as-yet-unknown buyer. The Debtors also object to the time period of the Request to the extent the Request seeks valuation information from before the Debtors emerged in 2018 from a previous bankruptcy proceeding, making this Request overly broad and unduly burdensome.

The Debtors further object to this Request on the ground that the terms and phrases "financial performance," "projections," "actual results and projections," "Documents," and "show" are overbroad, vague, and ambiguous.  As a result, this Request is overly broad and unduly burdensome.

The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' previous bankruptcy proceeding or otherwise.

6

**REQUEST NO. 2:**  Documents reflecting any valuation of your assets, business or liabilities, including the Sandy Hook Wrongful Death Action, from 2017 to the present.

The Debtors incorporate their Response to Request No. 1.  The Debtors also object to the time period of the Request to the extent the Request seeks valuation information from before the Debtors emerged in 2018 from a previous bankruptcy proceeding, thus making this Request overly broad and unduly burdensome.  The Debtors further object to this Request on the ground that the terms and phrases "valuation," "assets," "business," "liabilities," "Documents," "Sandy Hook Wrongful Death Action," and "reflecting" are overbroad, vague, ambiguous. As a result of these ambiguities, this Request is overly broad and unduly burdensome.

The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' previous bankruptcy proceeding or otherwise.

**REQUEST NO. 3:**  Documents reflecting communications with pre-petition lenders relating to the Sandy Hook Wrongful Death Action, and your decision to pursue chapter 11 and/or sale of substantially all of Remington's going concern business.

The Debtors incorporate their Response to Request No. 1.  The Debtors object to the Request on the ground that it seeks documents and information unrelated to the issues to be adjudicated in connection with the Motion.  The Debtors also object to the time period of the Request to the extent the Request seeks information from before the Debtors emerged in 2018 from a previous bankruptcy proceeding.  The Debtors object to the extent this Request seeks documents from an undefined time period.

The Debtors object to this Request on the ground that the terms and phrases "communications," "pre-petition lenders," "relating," "decision," "Documents," "substantially all," "Sandy Hook Wrongful Death Action," and "going concern business" are overbroad, vague, and ambiguous, and thus unduly burdensome.

7

The Debtors object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise. The Debtors also object to the extent this Request seeks confidential documents or information related to the sale process, production of which would prejudice ongoing asset sale negotiations.

Subject to and without waiving any of the General and Specific Objections, the Debtors will produce responsive, non-privileged communications with pre-petition lenders relating to the Sandy Hook Wrongful Death Action to the extent any exist. Any document production will be made only after the entry of an appropriate confidentiality order.

**REQUEST NO. 4:** Documents relating to the role of the Sandy Hook Wrongful Death Action, and the denial of your petition for certiorari, in your decision to "explore strategic alternatives" in December 2019 as described in the D'Arcy Decl. ¶¶ 47–48.

The Debtors incorporate their Response to Request No. 1. The Debtors object to this Request on the ground that the term and phrase "Documents" and "Sandy Hook Wrongful Death Action" are overbroad, vague, and ambiguous, and thus unduly burdensome. The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

**REQUEST NO. 5:** Documents concerning the role of the Sandy Hook Wrongful Death Action in the decision to commence your chapter 11 cases and/or pursue an asset sale under section 363 of the Bankruptcy Code.

The Debtors incorporate their Response to Request No. 1. The Debtors object to this Request on the ground that the term and phrase "Documents" and "Sandy Hook Wrongful Death Action" are overbroad, vague, and ambiguous, and thus unduly burdensome. The Debtors also object to this Request to the extent that it calls for the production of information and documents

8

protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

**REQUEST NO. 6:** Documents or communications shared with Ducera regarding the Sandy Hook Wrongful Death Action.

The Debtors incorporate their Response to Request No. 1. The Debtors object to this Request on the ground that the terms "Ducera," "Documents," "Sandy Hook Wrongful Death Action," and "communications" are overbroad, vague, and ambiguous. The Debtors further object to the extent this Request seeks confidential documents or information related to the sale process, production of which would prejudice ongoing asset sale negotiations.

**REQUEST NO. 7:** Documents concerning the pre-petition marketing of your assets and negotiations over a potential sale of those assets, and any communications with any party in connection therewith regarding the Sandy Hook Wrongful Death Action.

The Debtors incorporate their Response to Request No. 1. The Debtors further object to this Request on the ground that the terms and phrases "pre-petition marketing," "assets," "negotiations," "potential sale," "Sandy Hook Wrongful Death Action," "Documents," and "communications" are overbroad, vague, and ambiguous. The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise. The Debtors further object to the extent this Request seeks confidential documents or information related to the sale process, production of which would prejudice ongoing asset sale negotiations

Subject to and without waiving any of the General and Specific Objections, the Debtors will provide responsive, non-privileged documents, to the extent any exist, concerning communications about the Soto Action sent in pre-petition efforts to market and sell the

9

Debtors' assets.  Any document production will be made only after the entry of an appropriate confidentiality order.

**REQUEST NO. 8:**  Documents sufficient to show indications of interest or bids you have received, and any confidentiality or non-disclosure agreements you have entered into, in connection with the proposed sale of your assets either pre- or post-petition.

The Debtors incorporate their Response to Request No. 1.  The Debtors further object to this Request on the ground that the terms and phrases "indications of interest," "bids," and "Documents" are overbroad, vague, and ambiguous.  The Debtors also object to the extent this Request seeks confidential documents or information related to the sale process, production of which would prejudice ongoing asset sale negotiations.  And the Debtors object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

Subject to and without waiving any of the General and Specific Objections, the Debtors will provide a list of parties contacted pre- and post-petition as well as those that entered into confidentiality or non-disclosure agreements.  Any document production will be made only after the entry of an appropriate confidentiality order.

**REQUEST NO. 9:**  Communications with potential buyers regarding the Sandy Hook Wrongful Death Action.

The Debtors incorporate their Response to Request No. 1.  The Debtors further object to this Request on the ground that the phrases "potential buyers," "Sandy Hook Wrongful Death Action," and "communications" are overbroad, vague, and ambiguous.  The Debtors also object to the extent this Request seeks confidential documents or information related to the sale process, production of which would prejudice ongoing asset sale negotiations.  And the Debtors also object to this Request to the extent that it calls for the production of information and documents

44002067 v1

protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

Subject to and without waiving any of the General and Specific Objections, the Debtors will provide responsive, non-privileged documents, to the extent any exist, concerning communications with potential buyers regarding the Soto Action. Any document production will be made only after the entry of an appropriate confidentiality order.

**REQUEST NO. 10:** Communications with the Navajo Nation regarding its 2018 and 2020 offers to buy your assets.

The Debtors incorporate their Response to Request No. 1. This Request is also irrelevant to the extent it seeks information related to the prior bankruptcy. The Debtors further object to this Request on the ground that the term and phrase "Navajo Nation" and "communications" are overbroad, vague, and ambiguous. The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

**REQUEST NO. 11:** Documents sufficient to show your valuation of any debt or equity securities associated with the Debtors.

The Debtors incorporate their Response to Request No. 1. The Debtors further object to this Request on the ground that the terms and phrases "valuation," "debt or equity securities," "Documents," and "associated" are overbroad, vague, and ambiguous. The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

**REQUEST NO. 12:** Documents relating to the refinancing of any loan facilities, the issuance of any promissory notes and other debt securities, or any other restructuring of your capital

11

structure following your 2018 Bankruptcy, and any liens or collateral arrangements entered into or modified following your 2018 Bankruptcy.

The Debtors incorporate their Response to Request No. 1. The Debtors further object to this Request on the ground that the terms and phrases "loan facilities," "issuance of promissory notes or other debt securities," "restructuring of your capital structure," "liens or collateral arrangements," "Documents," and "modified" are overbroad, vague, and ambiguous. The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

**REQUEST NO. 13:** Documents and communications relating to any intercompany or affiliate transactions, dividends or other payments to shareholders, or asset transfers since May 2018.

The Debtors incorporate their Response to Request No. 1. The Debtors further object to this Request on the ground that the terms and phrases "intercompany or affiliate transactions," "asset transfers," "communications," and "Documents" are overbroad, vague, and ambiguous. The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

**REQUEST NO. 14:** Documents relating to your ability to obtain debtor-in-possession financing, your decision to seek to finance the bankruptcy cases with cash collateral instead of pursuing debtor-in-possession financing, and any communications with your prepetition lenders regarding the schedule for the chapter 11 cases and asset sales.

The Debtors incorporate their Response to Request No. 1. The Debtors further object to this Request on the ground that the terms and phrases "finance or financing," "communications," "prepetition lenders," "asset sales," "ability," "schedule," and "Documents" are overbroad,

44002067 v1

vague, and ambiguous. The Debtors further object to the extent this Request seeks confidential documents or information related to the sale process, production of which would prejudice ongoing asset sale negotiations. The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

**REQUEST NO. 15:** Documents relating to your decision to omit the claims of the Sandy Hook Families from your list of top 40 unsecured creditors.

The Debtors incorporate their Response to Request No. 1. The Debtors further object to this Request on the ground that the terms and phrases "omit" "decision," "claims," and "Documents" are overbroad, vague, and ambiguous. The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

**REQUEST NO. 16:** Documents relating to any insurance policies applicable to the Sandy Hook Wrongful Death Action, including any policies under which you have provided notice of claims, and all communications with insurance companies regarding any notice of claims.

The Debtors incorporate their Response to Request No. 1. The Debtors further object to this Request on the ground that the terms and phrases "applicable," "notice of claims," "Sandy Hook Wrongful Death Action," "Documents," and "communications" are overbroad, vague, and ambiguous. The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

13

**REQUEST NO. 17:** Documents sufficient to show the total fees and expenses you have incurred defending the Sandy Hook Wrongful Death Action, how much has been reimbursed by insurance, and whether such amounts are inside or outside coverage limits.

The Debtors incorporate their Response to Request No. 1. The Debtors further object to this Request on the ground that the terms and phrases "total fees and expenses," "reimbursed," "inside or outside coverage limits," "Sandy Hook Wrongful Death Action," and "Documents" are overbroad, vague, and ambiguous. The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

**REQUEST NO. 18:** Documents relating to any releases you intend to request in connection with your chapter 11 cases or 363 sale.

The Debtors incorporate their Response to Request No. 1. The Debtors object to this Request on the ground that the term "Documents" is overbroad, vague, and ambiguous, and thus unduly burdensome. The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

**REQUEST NO. 19:** All materials provided to or considered by your Board of Directors concerning the subject matter of any of the foregoing requests.

The Debtors incorporate their Response to Request No. 1. The Debtors further object to this Request on the ground that the term and phrase "subject matter" and "materials" are overbroad, vague, and ambiguous. The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

14

**REQUEST NO. 20:** All materials provided to or considered by your Board of Directors concerning the decision to create a special restructuring committee.

The Debtors incorporate their Response to Request No. 1. The Debtors further object to this Request on the ground that the terms and phrases "materials," "provided to," "considered," "special restructuring committee," and "concerning" are overbroad, vague, and ambiguous. The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

**REQUEST NO. 21:** All documents relied upon in the bid procedures motion, the D'Arcy declaration, or that you will use or rely upon at the bid procedures hearing, including:

   a.   Documents supporting the representation in ¶ 43 of the D'Arcy Declaration that you experienced an inability to purchase raw materials and its impact on your financial performance.

   b.   Documents relating to the "analysis of strategic priorities, various cost-cutting measures, and financing alternatives" referenced in ¶ 42 of the D'Arcy Declaration.

   c.   The non-binding indications of intents with proposed investment terms referenced in ¶ 48 of the D'Arcy Declaration.

   d.   Documents relating to the negotiations referenced in ¶ 49 of the D'Arcy Declaration.

   e.   Documents evidencing bids or other indications of interest referenced in ¶ 52 of the D'Arcy Declaration.

   f.   Documents concerning any inquiries into alternatives available for financing and solicitations of proposals for debtor in possession financing from other financial institutions referenced in ¶ 57 of the D'Arcy Declaration.

   g.   Documents relating to negotiations with your secured lenders to reduce the collateral base floor, including but not limited to those negotiations referenced in ¶ 44 of the D'Arcy Declaration.

The Debtors incorporate their Response to Request No. 1. The Debtors object to this Request on the ground that the terms and phrases "documents," "raw materials," "impact," "financial performance," "non-binding indications," "intents," "proposed investment terms," "indications of interest," "financial institutions," "alternatives available for financing,"

"solicitations of proposals," "negotiations," and "reduce the collateral base floor" are overbroad, vague, and ambiguous, and thus unduly burdensome. Subject to and without waiving any of the General and Specific Objections, the Debtors will provide responsive, non-privileged documents if they intend to rely on them at any evidentiary hearing to decide the Motion.

**REQUEST NO. 21(a):** Documents supporting the representation in ¶ 43 of the D'Arcy Declaration that you experienced an inability to purchase raw materials and its impact on your financial performance.

The Debtors incorporate their Response to Request No. 1. The Debtors further object to this Request on the ground that the terms and phrases "raw materials," "impact," "financial performance," and "Documents" are overbroad, vague, and ambiguous.

**REQUEST NO. 21(b):** Documents relating to the "analysis of strategic priorities, various cost-cutting measures, and financing alternatives" referenced in ¶ 42 of the D'Arcy Declaration.

The Debtors incorporate their Response to Request No. 1. The Debtors object to this Request on the ground that the term "Documents" is overbroad, vague, and ambiguous, and thus unduly burdensome. The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

**REQUEST NO. 21(c):** The non-binding indications of intents with proposed investment terms referenced in ¶ 48 of the D'Arcy Declaration.

The Debtors incorporate their Response to Request No. 1. The Debtors further object to this Request on the ground that the terms and phrases "non-binding indications," "intents," and "proposed investment terms" are overbroad, vague, and ambiguous. The Debtors further object to the extent this Request seeks confidential documents or information related to the sale process, production of which would prejudice ongoing asset sale negotiations. The Debtors also object to this Request to the extent that it calls for the production of information and documents protected

44002067 v1

by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

Subject to and without waiving any of the General and Specific Objections, the Debtors refer to the documents they will provide in response to Request 8.

**REQUEST NO. 21(d):** Documents relating to the negotiations referenced in ¶ 49 of the D'Arcy Declaration.

The Debtors incorporate their Response to Request No. 1. The Debtors object to this Request on the ground that the term "Documents" is overbroad, vague, and ambiguous, and thus unduly burdensome. The Debtors further object to the extent this Request seeks confidential documents or information related to the sale process, production of which would prejudice ongoing asset sale negotiations. The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

Subject to and without waiving any of the General and Specific Objections, the Debtors refer to the documents they will provide in response to Request 8.

**REQUEST NO. 21(e):** Documents evidencing bids or other indications of interest referenced in ¶ 52 of the D'Arcy Declaration.

The Debtors incorporate their Response to Request No. 1. The Debtors further object to this Request on the ground that the phrases "indications of interest" and "Documents" are overbroad, vague, and ambiguous. The Debtors further object to the extent this Request seeks confidential documents or information related to the sale process, production of which would prejudice ongoing asset sale negotiations. The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client

44002067 v1

privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

Subject to and without waiving any of the General and Specific Objections, the Debtors refer to the documents they will provide in response to Request 8.

**REQUEST NO. 21(f):** Documents concerning any inquiries into alternatives available for financing and solicitations of proposals for debtor in possession financing from other financial institutions referenced in ¶ 57 of the D'Arcy Declaration.

The Debtors incorporate their Response to Request No. 1. The Debtors further object to this Request on the ground that the terms and phrases "financial institutions," "alternatives available for financing," "Documents," and "solicitations of proposals" are overbroad, vague, and ambiguous. The Debtors further object to the extent this Request seeks confidential documents or information related to the sale process, production of which would prejudice ongoing asset sale negotiations. The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

**REQUEST NO. 21(g):** Documents relating to negotiations with your secured lenders to reduce the collateral base floor, including but not limited to those negotiations referenced in ¶ 44 of the D'Arcy Declaration.

The Debtors incorporate their Response to Request No. 1. The Debtors further object to this Request on the ground that the terms and phrases "negotiations," "Documents," and "reduce the collateral base floor" are overbroad, vague, and ambiguous. The Debtors also object to this Request to the extent that it calls for the production of information and documents protected by the attorney-client privilege and/or work product doctrine whether related to the Debtors' pre-petition communications, previous bankruptcy proceeding, or otherwise.

44002067 v1

Dated: August 18, 2020

/s/ Derek F. Meek
**BURR & FORMAN LLP**
Derek F. Meek
Hanna Lahr
420 North 20th Street, Suite 3400
Birmingham, Alabama 35203
Telephone:  (205) 251-3000
Facsimile:   (205) 458-5100
Email: dmeek@burr.com
      hlahr@burr.com

- and -

**O'MELVENY & MYERS LLP**
Stephen H. Warren (admitted *pro hac vice*)
Karen Rinehart (admitted *pro hac vice*)
400 South Hope Street, 18th Floor
Los Angeles, CA  90071-2899
Telephone: (213) 430-6000
Facsimile:   (213) 430-6407
Email: swarren@omm.com
      krinehart@omm.com

Jennifer Taylor (admitted *pro hac vice*)
Two Embarcadero Center, 28th Floor
San Francisco, CA  94111
Telephone: (415) 984-8700
Facsimile:   (415) 984-8701
Email:     jtaylor@omm.com

Gary Svirsky (admitted *pro hac vice*)
Times Square Tower
7 Times Square
New York, New York 10036
(212) 326-2000
Email:     gsvirsky@omm.com

*Attorneys for the Debtors and Debtors in Possession*

44002067 v1

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document by U.S. First Class Mail and email on this the 18th day of August, 2020:

Tazewell T. Shepard III
Tazewell T. Shepard IV
SPARKMAN, SHEPARD & MORRIS, P.C.
P.O. Box 19045
Huntsville, AL 35804
taze@ssmattorneys.com
ty@ssmattorneys.com

Joshua Koskoff
Alinor Sterling
David Bernard
Jeffrey Wisner
KOSKOFF KOSKOFF & BIEDER
350 Fairfield Avenue
Bridgeport, CT 06604
jkoskoff@koskoff.com
asterling@koskoff.com
dbernard@koskoff.com
jwisner@koskoff.com

Faith Gay
SELENDY & GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
fgay@selendygay.com

*/s/ Derek F. Meek*
OF COUNSEL

44002067 v1