UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| | § § | Case No. 20-81688-CRJ11 |
| REMINGTON OUTDOOR COMPANY, INC. *et al.*, | § § § | Jointly Administered |
| Debtors. | § § § § | |

**SANDY HOOK FAMILIES' REPORT TO COURT CONCERNING MOTION FOR LEAVE OF THE COURT TO CONDUCT DISCOVERY PURSUANT TO RULE 2004[1]**

1.  In advance of the August 27, 2020, hearing on their Rule 2004 motion [Docket No. 281], the Sandy Hook Families[2] respectfully provide this update to the Court on the current status of the discovery sought from the Debtors pursuant to their Rule 2004 motion. As a preliminary matter, the discovery sought by the Families directly targets the foundation, motive, and legitimacy of the Debtors' filing in an effort to learn whether the relief sought in this Court is warranted. Such discovery is irrelevant to the Sandy Hook Wrongful Death Action. That case concerns the marketing and sales practices of certain Debtors, and the time period in question is wholly distinct and focused on 2006 through 2012, when the shooting at Sandy Hook occurred. The financial status of the Debtors bears no relevance whatsoever to the state court case, and the Families agree that this Court is not the proper forum to conduct discovery on the merits of the state court claims.

---

[1] The Debtors' Response to the Families' Rule 2004 Motion was received after 2PM (CST) the day prior to the scheduled hearing on the Families Rule 2004 Motion, more than two days after the deadline for Debtors to file a response. Given this delay, this submission does not constitute a reply to the Debtors' Response, and the Families reserve their right to respond in greater detail either prior to or at the hearing.

[2] Capitalized terms that are not defined herein have the meanings given to them in the Sandy Hook Families' Rule 2004 Motion.

1

Nevertheless, in light of the concern expressed by the Court about the scope of the initial requests, the Families have undertaken substantial efforts to narrow their discovery requests.[3] The Debtors have not produced a single document responsive to the narrowed discovery requests that have been pending for over two weeks, even though objections to the sale are due in less than a week. The Families need discovery in order to have a full and fair opportunity to evaluate and, if necessary, challenge the sale, and since time is short, the Families require the Court's assistance in obtaining production.

2. Counsel for the Debtors and the Families have met and conferred three times since serving the discovery requests on August 11, and the Families have withdrawn (without being asked) twelve document requests and interrogatories, nearly half of their original requests. The Families have also agreed to modify certain requests to either consolidate or further limit the requested materials and have proposed reasonably tailored search terms and date ranges to aid in the efficient collection of responsive materials. The Families have further agreed that any documents produced in this matter will only be used in this matter.

3. Despite the Families' efforts to tailor their requests, Debtors have not produced any documents to the Families and have only agreed to produce communications with pre-petition lenders and bidding parties relating to the Families' Wrongful Death Action, as well as a list of potential bidders. The remaining requests at issue can be categorized as follows:

---

[3] The Families' original set of document requests are attached to the Rule 2004 Motion as Exhibit B.

a. Documents related to the financial condition of the Debtors in the immediate period prior to their filing of this bankruptcy, including valuation of assets, business, liabilities, debt, or equity securities (Requests 1, 2, and 10)[4];

b. Documents related to how tort liabilities like the Sandy Hook Wrongful Death Action may have factored into the decision to file for bankruptcy and why such liabilities were omitted from the schedule of unsecured creditors (Requests 4, 5, and 15);

c. Documents related to potentially available insurance proceeds that could be used to pay tort claim liabilities (Requests 16 and 17); and

d. Documents relating to any releases Debtors intend to request in connection with the chapter 11 cases and 363 sale (Request 18).

4. The Sandy Hook Families maintain that each of the above categories of information is relevant to their preparation of a sale objection that seeks to ensure that any sale does not unlawfully prejudice their claims, specifically confirming the following points. *First*, the Families seek discovery related to whether the Debtors will be administratively insolvent after the proposed sale closes, assuming it is approved, and therefore lack the resources to claims. To the extent that applicable insurance coverage is available to make tort claimants whole, the Families want to ensure that there are sufficient resources to defend and ensure liquidation of the claims. *Second*, there is currently only limited information available about the impact a sale may have on tort claims, limiting the Families' ability to ensure that the contemplated sale does not improperly release claims. *Third*, the Families need to confirm that a sale does not impact applicable insurance

---

[4] The Families have offered, as a compromise position on category (a), that they would be willing to accept materials related to the Debtors' financial condition that are produced to the Unsecured Creditors Committee. Debtors have not agreed to this offer and take the position that the Families are not entitled to these materials based on their status as an unsecured creditor.

coverage. *Lastly*, at the Sale Hearing, the Debtors will be required to carry their evidentiary burden to demonstrate that the proposed sale is proper under the facts and circumstances of these cases. The Families are entitled to discovery designed to test these factual assertions and confirm that this rushed sales process is in fact necessary under the facts and circumstances of these cases, and that the Debtors are not improperly using chapter 11 to selectively discharge tort liabilities while their businesses otherwise continue without interruption. For example, the Families still do not have any information about the Debtors' 2020 financial performance.

5. The materials requested in the categories above are essential for the Families to properly evaluate the proposed sale and to present any objection at the Sale Hearing. The requests described above directly relate to understanding what assets may be available after the sale and how a sale may impact the rights of tort and wrongful death claimants. To understand whether there was a good faith basis for the Debtors to commence these chapter 11 cases at all, a gating issue that should be addressed at the outset of these proceedings, the Families are entitled to discovery relating to whether there is any evidence that these chapter 11 cases were filed for an improper purpose, and if so, whether there was any intent to avoid specific liabilities for impermissible reasons (category (b)). With respect to category (c), the Families are concerned that a quick sale will leave no funding to allow for tort claims to be liquidated and/or proceed against applicable coverage, amounting to a substantial windfall to insurers and potentially leaving millions in collectable funds on the table.

6. The Debtors take the position that they are unwilling to produce these documents because the Families have not yet filed an objection to the sale. The Debtors further assert that any objection to the sale is premature, as the identity of the winning bidder and the terms of the sale will only be known at a later date. The Families readily concede that these specific data points

4

will be unknown as of September 1, the deadline for sale objections. However, in accordance with the expedited timeline for the sale—a timeline advocated by the Debtors—it is necessary for the Families to file a sale objection before this information is known in order to adequately protect their rights. Given the limited time available for the Families to ensure that a sale does not prejudice their rights as creditors, the Families have repeatedly emphasized how important it is that relevant materials be produced as soon as possible.

7. In addition to substantially modifying their original requests and agreeing to stipulate that any discovery produced in this proceeding cannot be used in any other proceeding, the Families have affirmed to the Debtors that they (i) are not seeking any materials related to the merits of their state court claims and (ii) do not expect to receive any documents relating to strategic evaluation of the merits of their claims in the state court action. Nonetheless, the Debtors now insist that only certain of the Families' bankruptcy counsel in this matter be allowed to review any documents produced by the Debtors and that the Families' long-standing counsel in Connecticut, as well as any financial adviser, not be given access to the documents despite the fact that the Families' Connecticut counsel has filed notices of appearance in this matter. Given the scope of agreed-upon discovery, its inapplicability to the merits of the underlying action, and the Families' agreement that any materials produced in this action cannot be used in any other proceeding, the Debtors have no right to interfere with the Families' choice of counsel. *In re Jet 1 Ctr., Inc*. 310 B.R. 649, 654 (Bankr. M.D. Fla. 2004) ("The party's choice of counsel is entitled to substantial deference.").

5

Dated: August 26, 2020
       Huntsville, Alabama

                            Respectfully submitted,

                       By: <u>Tazewell T. Shepard IV</u>
                          Tazewell T. Shepard III
                          Tazewell T. Shepard IV
                          State Bar No. 24004246
                          **SPARKMAN, SHEPARD & MORRIS, P.C.**
                          P.O. Box 19045
                          Huntsville, AL 35804
                          Tel: (256) 512-9924
                          ty@ssmattorneys.com

                          **KOSKOFF KOSKOFF & BIEDER**
                          Joshua Koskoff (admitted *pro hac vice*)
                          Alinor Sterling (admitted *pro hac vice*)
                          David Bernard (admitted *pro hac vice*)
                          Jeffrey Wisner (admitted *pro hac vice*)
                          350 Fairfield Avenue
                          Bridgeport, CT 06604
                          Tel: (203) 336-4421
                          jkoskoff@koskoff.com

                          - and -

                          **SELENDY & GAY PLLC**
                          Faith Gay (admitted *pro hac vice*)
                          1290 Avenue of the Americas,
                          New York, NY 10104
                          Tel. (212) 390-9000
                          fgay@selendygay.com

                          *Counsel for the Sandy Hook Families*

**CERTIFICATE OF SERVICE**

        This is to certify that I have this the 26th day of August, 2020 served the foregoing pleading upon the Debtor's 40 largest unsecured creditors, all counsel of record requesting notice, all other persons requesting notice, and the Office of the Bankruptcy Administrator by electronic service through the Court's CM/ECF system and/or by placing a copy of same in the United States Mail, postage pre-paid.

                                                /s/ Tazewell T. Shepard IV
                                                Tazewell T. Shepard IV