# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| In re: <br><br> REMINGTON OUTDOOR COMPANY, INC., *et al.*,[1] <br><br> Debtors. | Chapter 11 <br><br> Case No. 20-81688-CRJ11 <br><br> Jointly Administered |

## DECLARATION OF RICHMOND ITALIA REGARDING THE QUALIFICATION OF PURCHASER ROUNDHILL GROUP, LLC. AS GOOD-FAITH PURCHASER PURSUANT TO 11 U.S.C. § 363(m) IN CONNECTION WITH THE SALE OF CERTAIN ASSETS

I, Richmond Italia, being duly sworn, declare and state as follows:

1. I am a business partner to Scott Soura, the Manager of Roundhill Group LLC, ("Roundhill" or the "Purchaser"). In this capacity, I am familiar with the day-to-day operations, business, and financial affairs of Roundhill. I am duly authorized by the Purchaser to submit this Declaration. I know each of the following facts to be true of my own personal knowledge and, if called as a witness, I could and would competently testify with respect thereto.

2. I submit this declaration in support of the *Debtor's Motion for the Entry of: (I) an Order Establishing Bidding Procedures and Granting Related Relief and (II) an Order or Orders Approving the Sale of the Debtors' Assets*. (Docket No. 29) (the "Motion"), filed by the above-referenced affiliated debtors and debtors-in-possession.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405). The Debtors' corporate headquarters are located at 100 Electronics Boulevard SW, Huntsville, AL 35824.

3. My business partner and I, on behalf of Roundhill, participated in an auction beginning on September 17, 2020, and continuing through September 24, in which the Debtor auctioned off certain assets (the "Auction"). As disclosed in the *Notice of Successful Bidders with Respect to Certain of the Debtors' Assets* (Docket No. 821), the Debtor accepted the Purchaser's bid as the highest offer for the subject assets. As such, the Purchaser is the proposed purchaser of certain of the Debtors' assets (the "Purchased Assets"), as such assets are further defined in Asset Purchase Agreement by and among the Roundhill and Debtor, dated September 26, 2020 (the "APA").

4. By way of background, I have had a long-standing business and personal relationship with my business partner, Scott Soura. On or about September 8, 2020, I was approached by the Debtor's Chief Executive Officer, Ken D'Arcy, regarding the progress of the sale process related to the Debtor's firearms division. I believe I was approached by Mr. D'Arcy due to my manufacturing business in the paintball gun market and apparently Mr. D'Arcy believed that there might be some synergy.

5. I have had a working relationship with Ken D'Arcy for approximately 20 years – starting when he was the CEO of Crossman Corporation (an airgun company), while I was the CEO a Procaps (a paintball company). During that time, Mr. D'Arcy and I had a joint venture where my company supplied paintball equipment and Crossman Corporation oversaw the sales and distribution to the mass-market sector of our industry (mass-market being defined as big box stores like Walmart and Target along with many more).

6. In 2019 Ken D'Arcy replaced me as CEO of GI Sportz. I am advised and believe that Mr. D'Arcy handed in his resignation after a short 9 month stent in order to accept a position

with Remington Arms. My only interaction with Mr. D'Arcy of late is that we both sit on the board of directors of GI Sportz.

7. On or about September 8, 2020, I contacted Mr. Soura to discuss the opportunity to participate in the Auction. During this time, I informed Mr. Soura of my opinion that not very many entities appeared to be interested in purchasing the Debtor's firearms-related assets. Shortly thereafter, Mr. Soura and I began performing due diligence in connection with Roundhill's prospective participation in the Auction.

8. Neither I nor the Purchaser is a creditor of the Debtors.

9. Neither I nor Roundhill, or any of Roundhill's affiliates, officers, directors, members, partners, principals, shareholders or any of their respective representatives, successors, or assigns is, or has ever been, an "insider" or "affiliate" of the Debtors, as those terms are defined in the United States Bankruptcy Code (the "Code"). Additionally, no common identity of incorporators, directors, or controlling stockholders exists, or has ever existed, between Roundhill and the Debtors. They are and have been at all times separate and distinct corporations.

10. Roundhill and the Debtors negotiated, proposed, and entered into the APA and Transaction Documents without collusion, in good faith, and from arms-length bargaining positions. In addition, both Roundhill and the Debtors were represented by competent legal counsel and other advisors throughout their post-petition negotiations. Roundhill complied, in all respects, with the provisions of the Bidding Procedures Order, including compliance with confidentiality obligations and restrictions under the Bidding Procedures Order and applicable non-disclosure and confidentiality agreements.

11. Roundhill is purchasing the Acquired Assets, in accordance with the APA, in good faith in accordance with the terms of the Bidding Procedures Order, and has otherwise acted in good faith in all respects in connection with these chapter 11 cases.

12. Neither Mr. Soura, myself nor the Purchaser have colluded with any bidder regarding the purchase of the Purchased Assets. Furthermore, Roundhill has not entered into any undisclosed agreements with the Debtors or any other party in connection with its acquisition of the Acquired Assets. All negotiations between Roundhill, the Debtors and their counsel concerning all sale related documents were hard fought, intensive, were conducted at arm's-length and in good faith

13. Roundhill has not engaged in any conduct that would cause or permit Roundhill's acquisition of the Acquired Assets pursuant to the Asset Purchase Agreement and the Transaction Documents to be avoided under Bankruptcy Code Section 363(n). Roundhill has not entered into an agreement with any other potential bidders that was not fully disclosed to the Debtors and its representatives/agents and has not acted in a collusive manner with any person.

14. Roundhill has not entered into the APA and Transaction Documents and is not consummating the Sale for the purpose of hindering, delaying, or defrauding present or future creditors of the Debtors. Rather, Roundhill will act in good faith to close the transactions contemplated by the APA and the Transaction Documents.

15. The sale does not amount to a consolidation, merger, or *de facto* merger of Roundhill and any of the Debtors. There is no substantial continuity between Roundhill and the Debtors, and there is no continuity of enterprise between the Debtors and Roundhill. Roundhill is not a mere continuation of the Debtors or the Debtors' estates, and Roundhill does not constitute a successor to the Debtors or the Debtors' estates.

16. To the best of my knowledge, Roundhill complied with all of the Court-approved bid and sale procedures in reaching agreement on the APA and the Sale Order (as defined in the Motion).

17. I believe that the consideration provided by the Purchaser under the APA is fair and reasonable, especially given the fulsome bid solicitation, negotiation process and the CBA liabilities the Purchaser is agreeing to take on.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 28th day of September, 2020, at Ft. Lauderdale, FL.

/s/ *Richmond Italia*
Richmond Italia