**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| REMINGTON OUTDOOR COMPANY, INC., *et al.*,[1] | Case No. 20-81688-CRJ11 |
| Debtors. | Jointly Administered |

## NOTICE OF FILING AMENDED PROPOSED SALE ORDERS

**COME NOW,** Remington Outdoor Company, Inc. and its affiliated debtors, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (the "**Debtors**"), by and through undersigned counsel, and submit the following proposed amended orders, in clean and redlined form separated by a slipsheet, related to a) *Debtors' Motion for (i) an Order Establishing Bidding Procedures and Granting Related Relief and (ii) an Order or Orders Approving the Sale of the Debtors' Assets* [Docket No. 29], and b) *Order Establishing Bidding Procedures Relating to the Sales of All or a Portion of the Debtors' Assets* [Docket No. 411]:

1. Redline and Clean of *Order Approving the Sale of the Debtors' Lonoke Ammunition Business and Certain of the Debtors' Intellectual Property Assets Free and Clear of All Claims, Liens, and Interests*, attached hereto as **Exhibit A**, regarding the sale to Vista Outdoor, Inc.;

2. Redline and Clean of *Order Approving the Sale of Certain of the Debtors' Assets Free and Clear of All Claims, Liens, and Interests*, attached hereto as **Exhibit B**, regarding the sale to Roundhill Group, LLC;

3. Redline and Clean of *Order Approving the Sale of Certain of the Debtors' Assets Free and Clear of All Claims, Liens, and Interests*, attached hereto as **Exhibit C**, regarding the sale to Sturm, Ruger & Company, Inc.; and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405). The Debtors' corporate headquarters are located at 100 Electronics Boulevard SW, Huntsville, AL 35824.

4.     Redline and Clean of *Order Approving the Sale of Certain of Debtors' Assets Free and Clear of All Claims, Liens, and Interests*, attached hereto as **Exhibit D**, regarding the sale to Sierra Bullets, L.L.C.

Respectfully submitted, this the 29th day of September, 2020.

/s/ Derek F. Meek
**BURR & FORMAN LLP**
Derek F. Meek
Hanna Lahr
420 20th Street North, Suite 3400
Birmingham, AL 35203
Telephone:     (205) 251-3000
Facsimile:     (205) 458-5100
Email:  dmeek@burr.com
            hlahr@burr.com

- and -

**O'MELVENY & MYERS LLP**
Stephen H. Warren (admitted *pro hac vice*)
Karen Rinehart (admitted *pro hac vice*)
400 South Hope Street
Los Angeles, CA  90071-2899
Telephone:     (213) 430-6000
Facsimile:     (213) 430-6407
Email: swarren@omm.com
            krinehart@omm.com

Jennifer Taylor (admitted *pro hac vice*)
Two Embarcadero Center 28th Floor
San Francisco, CA 94111-3823
Telephone: 415-984-8700
Email: jtaylor@omm.com

Nancy Mitchell (admitted *pro hac vice*)
Gary Svirsky (admitted *pro hac vice*)
Diana M. Perez (admitted *pro hac vice*)
Times Square Tower, 7 Times Square
New York, NY  10036
Telephone: 212-326-2000
Email: nmitchell@omm.com
            gsvirsky@omm.com
            dperez@omm.com

*Attorneys for the Debtors and Debtors in Possession*

**Exhibit A**

**Redline of Vista Outdoor, Inc. Order**

| | |
|---|---|
| In re: | Chapter 11 |
| REMINGTON OUTDOOR COMPANY, INC., *et al.*,[1] | Case No. 20-81688-CRJ11 |
| Debtors. | Jointly Administered |

**ORDER APPROVING THE SALE OF THE DEBTORS' LONOKE AMMUNITION
BUSINESS AND CERTAIN OF THE DEBTORS' INTELLECTUAL PROPERTY
ASSETS FREE AND CLEAR OF ALL CLAIMS, LIENS, AND INTERESTS**

This matter having come before the Court upon the motion (the "**Motion**")[2] by Remington

Outdoor Company, Inc., ("**Remington**" or the "**Company**"), and its affiliated debtors and debtors

in possession (collectively the "**Debtors**") in the above-captioned Chapter 11 cases seeking entry

of this order (this "**Sale Order**") (a) authorizing the sale of the Acquired Assets (as defined in the

Asset Purchase Agreement (as defined below)) free and clear of all Interests (as defined below),

pursuant to that certain Asset Purchase Agreement, dated as of September 26, 2020, attached

hereto as Exhibit A (the "**Asset Purchase Agreement**"), by and among the Debtors and Vista

Outdoor, Inc. (the "**Buyer**"), and all other transaction documents related thereto; (b) authorizing

the assumption and assignment of certain executory contracts and unexpired leases; and (c)

granting the related relief contemplated therein; and the Court having found that (i) the Court has

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405). The Debtors' corporate headquarters is located at 100 Electronics Blvd SW, Huntsville, Alabama 35824.

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Motion or the Asset Purchase Agreement, as applicable.

jurisdiction over this matter; (ii) venue is proper in this District; (iii) this is a core proceeding; (iv) the notice of the Motion and the Sale Hearing (as defined below) was sufficient under the circumstances; and (v) there is good cause to waive the stay of Bankruptcy Rule 6004(h); and based on the statements of counsel and the evidence presented in support of the relief requested by the Debtors in the Motion at a hearing before this Court on September 29 [and 30], 2020 (the "**Sale Hearing**"); and it appearing that no other notice need be given; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A. **Jurisdiction, Core Proceeding, Statutory Predicates, and Venue**. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *General Order of Reference* of the United States District Court for the Northern District of Alabama dated July 16, 1984 as amended July 17, 1984. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The predicates for the relief granted herein are Bankruptcy Code Sections 105, 363, and 365 and Bankruptcy Rules 2002, 6004, and 6006. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B. **Just Cause**. The legal and factual bases set forth in the Motion establish just cause for the relief granted herein. Entry of this Sale Order is in the best interests of the Debtors and their respective estates, creditors, and all other parties in interest.

C. **Notice**. The notice of the Motion, the Sale Hearing, the Asset Purchase Agreement, the transactions contemplated therein or in connection therewith and corresponding transactions documents (the "**Transactions**"), and the proposed entry of this Sale Order was adequate and sufficient under the circumstances of the Chapter 11 Cases, and such notice complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. A

2

US_ACTIVE-154466812.6

reasonable opportunity to object or be heard regarding the relief granted by this Sale Order has been afforded to those parties entitled to notice pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Accordingly, no further notice of the Motion, the Sale Hearing, or this Sale Order is necessary or required.

D.      The Publication Notice was published in the *New York Times* on August 24, 2020. Such Publication Notice was compliant with the Bidding Procedures Order, and was sufficient and proper notice to any other interested parties, including those whose identities are unknown to the Debtors.

E.      **Extensive Efforts by Debtors**. Since before the commencement of the Chapter 11 Cases, the Debtors worked with their counsel and financial advisors to implement a viable transaction that would allow them to maximize the value of the Acquired Assets. The Sale Transaction that is the subject of this Sale Order is the result of the Debtors' extensive efforts seeking to maximize recoveries to the Debtors' estates for the benefit of the Debtors' creditors.

F.      **Business Justification**. The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business justification for the Court to grant the relief requested in the Motion, including, without limitation, to (i) authorize the sale of the Acquired Assets free and clear of Interests other than Permitted Liens (as defined in the Asset Purchase Agreement) and Assumed Liabilities (as defined in the Asset Purchase Agreement); (ii) authorize the assumption and assignment of certain executory contracts and unexpired leases; and (iii) grant related relief as set forth herein. Such compelling and sound business justification, which was set forth in the Motion and on the record at the Sale Hearing, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

US_ACTIVE-154466812.6

G. **Bidding Procedures Order**. The Bidding Procedures Order [Docket No. 411] was entered by the Court on August 20, 2020, which, among other things (i) approved the Bidding Procedures; (ii) established the Assumption and Assignment Procedures; (iii) approved the form and manner of notice with respect to all procedures, protections, schedules, and agreements described in the Motion and attached thereto; and (iv) scheduled a date for the Auction and Sale Hearing. The Bidding Procedures provided a full, fair, and reasonable opportunity for any entity to make an offer to purchase the Acquired Assets.

H. **Auction; Successful Bidder**. The sale process was properly conducted by the Debtors in accordance with the Bidding Procedures Order and in a manner designed to result in the highest or otherwise best offer for the Acquired Assets. At the Auction, the Debtors agreed in a reasonable exercise of their business judgment, in consultation with their management, the Restructuring Committee, advisors and the Bid Consultation Parties, to enter into and consummate the Asset Purchase Agreement with the Buyer. At the conclusion of the Auction, the Buyer was determined to be the Successful Bidder.

I. **Asset Purchase Agreement**. The consummation of the Transactions contemplated by the Asset Purchase Agreement, the Motion, and this Sale Order is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and all of the applicable requirements of such sections and rules have been complied with in respect of such transactions.

J. **Sale Hearing**. The Sale Hearing occurred on September 29 [and 30], 2020 in accordance with the Bidding Procedures Order.

K. **Adequate Marketing; Highest or Otherwise Best Offer.** As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing, including the

US_ACTIVE-154466812.6

*Declaration of Ken D'Arcy in Support of Chapter 11 Petitions and First Day Pleadings of Remington Outdoor Company, Inc. and Its Affiliated Debtors and Debtors-Possession* [Docket No. 6 and the *Declaration of Bradley C. Meyer in Support of Debtors' Cash Collateral Motion and Bidding Procedures Motion* [Docket No. 355]; and (ii) the representations of counsel made on the record at the Bidding Procedures Hearing and the Sale Hearing, (a) the Debtors have adequately marketed the Acquired Assets and conducted a sale process in a non-collusive, fair and good faith manner in compliance with the Bidding Procedures Order; (b) the process set forth in the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any interested party to make the highest or otherwise best offer to purchase the Acquired Assets and assume the Assumed Liabilities; (c) the consideration provided by the Buyer in the Asset Purchase Agreement constitutes the highest or otherwise best offer to purchase the Acquired Assets and assume the Assumed Liabilities; (d) the consideration provided by the Buyer in the Asset Purchase Agreement provides fair and reasonable consideration for the Acquired Assets and the assumption of the Assumed Liabilities and constitutes reasonably equivalent value, fair value and reasonable market value under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, the District of Columbia, or other applicable law; (e) the Sale will provide a greater recovery for the Debtors' creditors with respect to the Acquired Assets than would be provided by any other practically available alternative; (f) taking into consideration all relevant factors and circumstances, and after taking account of the Bid Protections, no other entity has offered to purchase the Acquired Assets for greater economic value to the Debtors or their estates; and (g) the Debtors' determination that the Asset Purchase Agreement constitutes the highest or otherwise best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtors' business judgment.

US_ACTIVE-154466812.6

L.    **No Successor Liability.**  Neither the Buyer nor any of its affiliates, officers, directors, shareholders, members, partners, principals or any of their respective representatives, successors, or assigns is an "insider or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors, or stockholders existed or exists between the Buyer and the Debtors.  The transfer of the Acquired Assets to and the assumption of the Assumed Liabilities by the Buyer, except as otherwise set forth in the Asset Purchase Agreement, does not, and will not, subject the Buyer to any liability whatsoever, with respect to the operation of the Debtors' businesses prior to the closing of the Sale or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity including, without limitation, any laws affecting antitrust, successor, transferee, or vicarious liability.  Pursuant to the Asset Purchase Agreement, the Buyer is not purchasing all of the Debtors' assets in that the Buyer is not purchasing any of the Excluded Assets or assuming the Excluded Liabilities, and the Buyer is not holding itself out to the public as an *alter ego* or a continuation of the Debtors.  The Sale does not amount to a consolidation, merger, or *de facto* merger of the Buyer and the Debtors.  There is no substantial continuity between the Buyer and the Debtors, and there is no continuity of enterprise between the Debtors and the Buyer.  The Buyer is not a mere continuation of the Debtors or the Debtors' estates, and the Buyer does not constitute a successor to the Debtors or the Debtors' estates.  None of the Transactions, including, without limitation, the Sale or the assumption and assignment of the Assigned Contracts, is being undertaken for the purpose of escaping liability for any of the Debtors' debts or hindering, delaying, or defrauding creditors under the Bankruptcy Code or for any other purpose that would give rise to statutory or common law fraudulent conveyance or fraudulent transfer claims, whether under the Bankruptcy

Code or under the laws of the United States, any state, territory, possession thereof, the District of Columbia, or any other applicable jurisdiction with laws substantially similar to the foregoing.

M.     **Acquired Assets Property of the Estate.**  The Acquired Assets are property of the Debtors' estates and title thereto is vested in the Debtors' estates.

N.     **Sale in Best Interest/Fiduciary Duties**.  The Debtors have demonstrated a sufficient basis and compelling circumstances requiring them to enter into the Asset Purchase Agreement and sell the Acquired Assets and such actions are appropriate under the circumstances of these Chapter 11 Cases, are in the best interests of the Debtors, their estates and creditors, and other parties in interest, and represent a reasonable exercise of business judgment by the Debtors and the Restructuring Committee and their fulfillment of their fiduciary duties under applicable law.  Approval of the Asset Purchase Agreement, the Sale, and the Transactions at this time is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest. Unless the sale is concluded expeditiously, the recoveries of all of the Debtors' estates and constituencies are likely to be adversely affected.

O.     **Not a *Sub Rosa* Plan.**  The consummation of the Sale outside of a plan of reorganization pursuant to the Asset Purchase Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a plan of reorganization or liquidation for the Debtors.  The Asset Purchase Agreement, the Sale and the transactions contemplated therein and associated therewith do not constitute an impermissible *sub rosa* Chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford.

P.     **Arm's-Length Sale.**  The Asset Purchase Agreement, the Sale, and the Transactions were negotiated, proposed, and entered into by the Debtors and the Buyer without

US_ACTIVE-154466812.6

collusion, in good faith, and from arm's-length bargaining positions. Neither the Debtors, their insiders and affiliates, nor the Buyer have engaged in any conduct that would cause or permit the Asset Purchase Agreement, the Sale, or any part of the transactions thereby to be avoided under Bankruptcy Code Section 363(n).

Q. **Good Faith Buyer.** The Buyer is a good faith purchaser under Bankruptcy Code Section 363(m) and, as such, is entitled to all of the protections afforded thereby. Specifically: (i) the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Acquired Assets; (ii) the Buyer complied in all respects with the provisions of the Bidding Procedures Order; (iii) the Buyer agreed to subject its bid to the competitive bid procedures set forth in the Bidding Procedures Order; (iv) all payments to be made by the Buyer in connection with the Sale have been disclosed; (v) no common identity of directors, officers or controlling stockholders exists among the Buyer and the Debtors; (vi) the negotiations and execution of the Asset Purchase Agreement was at arm's-length and in good faith, and at all times each of the Buyer and the Debtors were represented by competent counsel of their choosing; (vii) the Buyer did not in any way induce or cause the Chapter 11 filing of the Debtors; and (viii) the Buyer has not acted in a collusive manner with any person. The Buyer will be acting in good faith within the meaning of Bankruptcy Code Section 363(m) in closing the transactions contemplated by the Asset Purchase Agreement.

R. **Corporate Authority.** Each Debtor (i) has full corporate power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby, and the Sale of the Acquired Assets has been duly and validly authorized by all necessary corporate actions of each of the Debtors; (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by the Asset Purchase Agreement; (iii) has taken all corporate action

8

US_ACTIVE-154466812.6

necessary to authorize and approve the Asset Purchase Agreement and the consummation by the Debtors of the transactions contemplated thereby; and (iv) needs no consents or approvals, other than those expressly provided for in the Asset Purchase Agreement, which may be waived in accordance with the terms therewith.

S. **Free and Clear Findings Required by the Buyer.** The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the Sale Transaction, thus adversely affecting the Debtors, their estates, and their creditors, if the Sale of the Acquired Assets to the Buyer and the assumption and assignment of Acquired Contracts, were not, pursuant to Bankruptcy Code Section 363(f), free and clear (except for Permitted Liens and Assumed Liabilities) of (i) all liens (statutory or otherwise), claims, mortgages, deeds of trust, pledges, charges, security interests, rights of first refusal, hypothecations, encumbrances, easements, servitudes, leases or subleases, rights-of-way, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of offset or recoupment, right of use or possession, licenses, indentures, instruments, conditional sale arrangements, (ii) all claims as defined in Bankruptcy Code Section 101(5), including all rights or causes of action (whether in law or in equity), proceedings, warranties, guarantees, indemnities, rights of recovery, setoff, recoupment, indemnity or contribution, obligations, demands, restrictions, indemnification claims, or liabilities relating to any act or omission of the Debtors or any other person prior to the Closing, consent rights, options, contract rights, covenants, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of the above-captioned cases, and whether imposed by agreement, understanding, law, equity or otherwise, and (iii) all debts, liabilities, obligations, contractual rights and claims and labor, employment and

9

US_ACTIVE-154466812.6

pension claims, in each case, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise (excluding Permitted Liens and Assumed Liabilities, (i), (ii), and (iii) collectively, the "**Interests**").  Except as expressly provided in the Asset Purchase Agreement, the Sale shall be free and clear of, and the Buyer shall not be responsible for, any Interests, including, without limitation, in respect of the following:  (i) any rights or Interests based on any successor or transferee liability, (ii) any Interests that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or termination of the Debtors' or the Buyer's interest in the Acquired Assets, or any similar rights; (iii) any labor or employment agreements; (iv) mortgages, deeds of trust, and security interests; (v) intercompany loans and receivables between the Debtors and any non-Debtor subsidiary; (vi) any pension, multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of ERISA), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability; (vii) any other employee, worker's compensation, occupational disease, or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**"), (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age

US_ACTIVE-154466812.6

Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Code and of any similar state law (collectively, "**COBRA**"), (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors, or (1) the WARN Act (29 U.S.C. §§2101 *et seq*.); (viii) any bulk sales or similar law; (ix) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (xii) any unexpired and executory contract or unexpired lease to which a Debtor is a party that is not an Assigned Contract that will be assumed and assigned pursuant to this Sale Order and the Asset Purchase Agreement; (xiii) any other Excluded Liabilities as provided in the Asset Purchase Agreement. A sale of the Acquired Assets other than one free and clear of all Interests would yield substantially less value for the Debtors' estates, with less certainty, than the Sale as contemplated. Therefore, the Sale contemplated by the Asset Purchase Agreement and approved herein free and clear of all Interests, except for Permitted Liens and Assumed Liabilities, is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

        T.     **Valid and Binding Transfer.** The transfer of the Acquired Assets to the Buyer will be a legal, valid, and effective transfer of the Acquired Assets and, except for the Permitted Liens and Assumed Liabilities, will vest the Buyer with all right, title, and interest of the Debtors to the Acquired Assets free and clear of all Interests and any liabilities of the Debtors.

        U.     **Satisfaction of Section 363(f) Standards.** The transfer of the Acquired Assets to the Buyer under the Asset Purchase Agreement shall be a legal, valid, and effective transfer of all

US_ACTIVE-154466812.6

the legal, equitable, and beneficial right, title and interest in and to the Acquired Assets free and clear of all Interests, other than the Assumed Liabilities and Permitted Liens. The Debtors may sell the Acquired Assets free and clear of all Interests, except for the Permitted Liens and the Assumed Liabilities, because, in each case, one or more of the standards set forth in Bankruptcy Code Section 363(f)(1) through (5) has been satisfied, with all such Liens and Interests to attach to the proceeds of the Sale Transaction to be received by the Debtors with the same validity, force, priority and effect that they had as against the Acquired Assets, and any claims and defenses the Debtors and their estates may possess with respect thereto. Those holders of Interests, and non-debtor parties to the Assigned Contracts who did not object, or who withdrew their objections, to the Motion are, without limitation, deemed to have consented pursuant to Bankruptcy Code Section 363(f)(2). In all cases, each such person with Interests in the Acquired Assets is enjoined from taking any action against the Buyer, the Buyer's affiliates, or any agent of the foregoing to recover any such Interest.

V. **Necessity of Order.** The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the Sale Transaction without all of the relief provided for in this Sale Order (including, but not limited to, that the transfer of the Acquired Assets to the Buyer be free and clear of all Interests (other than Permitted Liens and the Assumed Liabilities)). The consummation of the Sale Transaction pursuant to this Sale Order and the Asset Purchase Agreement is necessary for the Debtors to maximize the value of their estates for the benefit of all creditors and other parties in interest.

W. **Time of the Essence**. The sale of the Acquired Assets must be approved and consummated promptly in order to preserve the value of the Acquired Assets. Therefore, time is

12

US_ACTIVE-154466812.6

of the essence in consummating the Sale, and the Debtors and the Buyer intend to close the Sale as soon as reasonably practicable.

X.      **Assigned Contracts.**  The Debtors have demonstrated that it is their sound business judgment to sell, assume, and assign the "Assumed Contracts" and "Assumed Leases" (as such terms are defined in the Asset Purchase Agreement), including, without limitation, the unexpired leases and executory contracts designated on <u>Schedule 1.1(j)</u> of the Asset Purchase Agreement (collectively, the "**Assigned Contracts**" and, individually, an "**Assigned Contract**") to the Buyer in connection with the consummation of the Sale, and the assumption and assignment of the Assigned Contracts is in the best interests of the Debtors, their estates and creditors, and other parties in interest.  The Assigned Contracts being assigned to the Buyer are an integral part of the Acquired Assets being purchased by the Buyer, and, accordingly, such assumption and assignment of the Assigned Contracts and the liabilities associated therewith are reasonable and enhance the value of the Debtors' estates.  No section of any Assigned Contract that purports to prohibit, restrict, impose any penalty or fee on, or condition the use, consideration, or assignment of any such Assigned Contract in connection with the Transactions shall have any force or effect.

Y.      **Cure and Adequate Assurance.**  Through Buyer's commitment to pay the Buyer Cure Amount (or, in the case of the Backup Bidder (as defined below), the Cure Amount) related to the Assigned Contracts and upon the payment of the Buyer Cure Amount (or, in the case of the Backup Bidder, the Cure Amount) by the Buyer and the Seller Cure Amount, if any, pursuant to the terms of the Asset Purchase Agreement, the Debtors (solely in connection with closing of the Successful Bid and not in connection with the Backup Bid) and the Buyer, as applicable, have cured or otherwise have demonstrated their ability to cure any default with respect to any act or omission that occurred prior to the Closing (as defined in the Asset Purchase Agreement) under

US_ACTIVE-154466812.6

any of the Assigned Contracts, within the meaning of Bankruptcy Code Section 365(b)(l)(A). The proposed Cure Costs or any other cure amount reached by agreement after any objection by a counterparty to an Assigned Contract (an "**Assigned Contract Objection**") or otherwise are deemed the amounts necessary to "cure" all "defaults," each within the meaning of Bankruptcy Code Section 365(b), under such Assigned Contracts. The Buyer's promise to perform the obligations under the Assigned Contracts shall constitute adequate assurance of its future performance of and under the Assigned Contracts, within the meaning of Bankruptcy Code Sections 365(b)(l) and 365(f)(2). Subject to the Bidding Procedures Order, all counterparties to the Assigned Contracts who did not file an Assigned Contract Objection or an objection to the assumption and assignment of the Assigned Contracts prior to the Sale Hearing, are deemed to consent to the assumption by the Debtors of their respective Assigned Contract and the assignment thereof to the Buyer. The filed objections of all counterparties to the Assigned Contracts that were heard at the Sale Hearing (to the extent not withdrawn or adjourned), were considered by the Court, and are overruled on the merits with prejudice. The Court finds that, with respect to all such Assigned Contracts, the payment of the proposed Cure Costs by the Buyer or, solely in connection with Successful Bid and not in connection with the Backup Bid, the Seller, as applicable, in accordance with the terms of the Asset Purchase Agreement is appropriate and is deemed to fully satisfy the Debtors' obligations under Bankruptcy Code Section 365(b). Accordingly, and without limitation of the Buyer's rights under Sections 1.5(b) and 1.5(d) of the Asset Purchase Agreement (or Sections 1.5(a) and 1.5(d) of the Backup Bid Agreement (as defined below)), all of the requirements of Bankruptcy Code Section 365(b) have been satisfied for the assumption and the assignment by the Debtors to the Buyer of each of the Assigned Contracts. To the extent any Assigned Contract is not an executory contract within the meaning of Bankruptcy Code Section

US_ACTIVE-154466812.6

365, it shall be transferred to the Buyer in accordance with the terms of this Sale Order that are applicable to the Acquired Assets.  In addition, for the avoidance of doubt, to the extent the Backup Bidder becomes the Successful Bidder as set forth in this Sale Order, the provisions herein with respect to the Assigned Contracts shall apply likewise to the Backup Bidder as Buyer, in accordance with the terms of the Backup Bid Agreement.

Z.     **Unenforceability of Anti-Assignment Provisions.**    Any provisions in any Assigned Contract that restrict, limit, prohibit or condition the assumption, assignment, and sale of the Assigned Contracts or that allow the counterparty so such Assigned Contract to terminate, recapture, impose any penalty or fee, accelerate, increase any rate, condition on renewal or extension, or modify any term or condition upon the assignment of such Assigned Contract, should be deemed and found to be unenforceable anti-assignment provisions that are void and of no force and effect within the meaning of Bankruptcy Code Section 365(f).

AA.     **Objections are Overruled**.  All objections to the relief requested in the Motion that have not been withdrawn, waived, adjourned or settled as announced to the Court at the Sale Hearing or by stipulations filed with the Court are overruled except as otherwise set forth herein.

BB.     **Final Order**.  This Sale Order constitutes a final order within the meaning of 20 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order and expressly directs entry of judgment as set forth herein.

CC.     **Best Interest**.  Entry of this Sale Order is in the best interests of the Debtors, the Debtors' estates, their creditors, and other parties in interest.

DD.     **Findings and Conclusions**.  The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule

7052, made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are adopted as such. To the extent any conclusions of law are findings of fact, they are adopted as such.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

<u>General Provisions</u>

1.     The Motion is granted and the relief requested therein with respect to the Sale is granted and approved in its entirety, as set forth herein.

2.     Any objections to the entry of this Sale Order or to the relief granted herein or the relief requested in the Motion, including any objections to the proposed Cure Costs or the assumption and assignment of any Assigned Contracts, that have not been adjourned, withdrawn, waived, or settled, or not otherwise addressed or resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits with prejudice.

<u>Approval of the Sale of the Acquired Assets</u>

3.     The Debtors are authorized to enter into the Asset Purchase Agreement (and all ancillary documents) and all the terms and conditions thereof, and all of the Transactions contemplated therein are approved in all respects. The transfer of the Acquired Assets by the Debtors to the Buyer shall be a legal, valid and effective transfer of the Acquired Assets.

4.     Pursuant to Bankruptcy Code Section 363(b), the sale of the Acquired Assets to the Buyer free and clear of all Interests (other than the Permitted Liens and the Assumed Liabilities), and the transactions contemplated thereby is approved in all respects.

<u>Sale and Transfer of the Acquired Assets</u>

5.     Pursuant to Bankruptcy Code Sections 105, 363, and 365, the Debtors are authorized to (a) take any and all actions necessary or appropriate to perform their obligations under, and comply with the terms of, the Asset Purchase Agreement and consummate the Sale and

16

US_ACTIVE-154466812.6

the Transactions pursuant to, and in accordance with, the terms and conditions of the Asset Purchase Agreement and this Sale Order, including, without limitation (i) executing, acknowledging, and delivering such deeds, assignments, conveyances and other assurances, documents, and instruments of transfer and taking any action for purposes of assigning, transferring, granting, conveying, and conferring to the Buyer, or reducing to possession, any or all of the Acquired Assets and (ii) entering into the Ancillary Agreements, any transition services or operations support agreements with the Buyer and any other agreements related to implementing the Transactions and (b) take any and all further actions as may be necessary or appropriate to the performance of their obligations as contemplated by the Asset Purchase Agreement or this Sale Order. The Debtors are further authorized to pay, without further order of this Court, whether before, at, or after the Closing, any reasonable expenses or costs that are required to be paid to consummate the Transactions or perform their obligations under the Asset Purchase Agreement.

6.       Following the Closing, the Debtors or the Buyer and/or their respective designees are authorized to execute and file a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all obligations, liabilities, and Interests in the Acquired Assets of any kind or nature whatsoever (other than the Permitted Liens and Assumed Liabilities). Upon the Closing and the Debtors' receipt of the Purchase Price, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Debtors' interests in the Acquired Assets and a bill of sale transferring good and marketable title in the Acquired Assets to the Buyer free and clear of all Interests, except for the Permitted Liens and Assumed Liabilities. Each and every federal, state, and local governmental agency, quasi-agency, or department is

US_ACTIVE-154466812.6

hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions.

7.       Except for the Permitted Liens, Assumed Liabilities or as expressly provided in the Asset Purchase Agreement, pursuant to Bankruptcy Code Sections 105(a) and 363(f), upon the Closing and the Debtors' receipt of the Purchase Price, the Acquired Assets shall be transferred to the Buyer as required under the Asset Purchase Agreement, and such transfer shall be free and clear of all Interests of any person, including, without limitation, all such Interests specifically enumerated in this Sale Order, whether arising by agreement, by statute, or otherwise and whether occurring or arising before, on, or after the Petition Date, whether known or unknown, occurring, or arising prior to such transfer, with all such Interests to attach to the proceeds of the Sale ultimately attributable to the property against or in which the holder of an Interest claims or may claim an Interest, in the order of their priority, with the same validity, force, and effect which they now have, subject to any claims and defenses the Debtors may possess with respect thereto. Without limiting the generality of the foregoing, the Acquired Assets shall be transferred to the Buyer free and clear of the following: (i) satisfy and release of record, Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated June 15, 2018, and filed for record June 19, 2018, in/as Instrument No. 2018-05836 of the Records of Lonoke County, AR, executed by Remington Arms Company, LLC, in favor of Ankura Trust Company, LLC, securing the original principal amount of $55,000000; (ii) satisfy and release of record, Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated June 15, 2018, and filed for record June 19, 2020, in/as Instrument No. 2018-05387, of the records of Lonoke County, AR, executed by Remington Arms Company, LLC, in favor of Ankura Trust Company, LLC, securing the original principal amount of $100,000,000; (iii) satisfy and release of record, Mortgage,

US_ACTIVE-154466812.6

Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated April 18, 2019, and filed for record April 22, 2019, in/as Instrument No. 2019-03652, of the Records of Lonoke County, AR, executed by Remington Arms Company, LLC, in favor of Cantor Fitzgerald Securities, securing the original principal amount of $90,500,000; and (iv) satisfy and release of record, Lien Subordination Agreement by and between Remington Arms Company, LLC, Cantor Fitzgerald Securities, and Ankura Trust Company, LLC, dated February 21, 2020, and filed for record February 28, 2020, in/as Instrument No. 2020-02102, records of Lonoke County, Arkansas.

8.      The transfer of the Acquired Assets to the Buyer pursuant to the Asset Purchase Agreement constitutes a legal, valid, and effective transfer of the Acquired Assets and shall vest the Buyer with all right, title, and interest of the Debtors in and to the Acquired Assets free and clear of all Interests of any kind or nature whatsoever, except for the Permitted Liens and Assumed Liabilities, with all such Interests to attach to the proceeds of the Sale ultimately attributable to the property against or in which the holder of an Interest claims or may claim an Interest, in the order of their priority, with the same validity, force, and effect which they now have, subject to any claims and defenses the Debtors may possess with respect thereto.

9.      All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Acquired Assets to the Buyer in accordance with the Asset Purchase Agreement and this Sale Order; *provided* that the foregoing restriction shall not prevent any party from appealing this Sale Order in accordance with applicable law or opposing any appeal of this Sale Order, or from enforcing its rights under Bankruptcy Code Section 365 or relieve the Buyer of any Assumed Liability.

10.     Except as expressly permitted by the Asset Purchase Agreement or this Sale Order, all persons and entities, including, but not limited to, all debt security holders, equity security

US_ACTIVE-154466812.6

holders, governmental, tax, and regulatory authorities, lenders, trade creditors, dealers, employees, litigation claimants, contract counterparties and other creditors, holding liens, claims encumbrances, and other interests of any kind or nature whatsoever, including, without limitation, rights or claims based on any taxes or successor or transferee liability, against or in a Debtor or the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets or the operation of the Acquired Assets before the Closing, or the transactions contemplated by the Asset Purchase Agreement, including, without limitation, the Sale and the assumption and assignment of the Assigned Contracts, are forever barred, estopped, and permanently enjoined from asserting against the Buyer, its respective successors and assigns, its respective property and the Acquired Assets, such persons' or entities' liens, claims, encumbrances, or other Interests, including, without limitation, rights or claims based on any taxes or successor or transferee liability, *provided* that nothing herein shall impair or otherwise affect any right under Bankruptcy Code Section 365 of a lease or contract counterparty to an Assigned Contract under its respective Assigned Contract(s), or relieve the Buyer of any Assumed Liability.

11.     Upon the Closing, each of the Debtors' creditors and any other holder of an Interest is authorized and directed, without cost to the Debtors, to execute such documents and take all other actions as may be necessary to release its Interest in the Acquired Assets, if any, as such Interest may have been recorded or may otherwise exist.  If any person or entity that has filed financing statements or other documents or agreements evidencing an Interest in the Debtors or the Acquired Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of

US_ACTIVE-154466812.6

satisfaction, releases of all Interests, which the person or entity has with respect to the Debtors or the Acquired Assets or otherwise, then the Buyer and its designees are authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Debtors or the Acquired Assets and to file, register, or otherwise record a certified copy of this Sale Order, which shall constitute conclusive evidence of the release of all Interests of any kind or nature whatsoever in the Debtors or the Acquired Assets (other than the Permitted Liens and Assumed Liabilities).  Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement, including, without limitation, recordation of this Sale Order.

12.     Upon the Closing and the Debtors' receipt of the Purchase Price, all entities that are currently, or on the Closing may be, in possession of some or all of the Acquired Assets are hereby directed to surrender possession of the Acquired Assets to the Buyer, unless the Buyer otherwise agrees.

13.     This Sale Order is self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Sale Order.

14.     To the maximum extent permitted by applicable non-bankruptcy law, (a) the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval (collectively, the "**Permits**") of the Debtors with respect to and included in the Acquired Assets, and (b) all Permits that are included in the Acquired Assets are deemed to have been, and hereby are directed to be, transferred to the Buyer as of the Closing Date.  Nothing in this Sale Order, and nothing in the foregoing sentence, authorizes the transfer or

assignment of any governmental Permit or the discontinuation of any obligation thereunder without compliance with all applicable legal requirements and approvals under police or regulatory law. To the extent any Permit cannot be transferred to the Buyer in accordance with this paragraph, the Buyer, with such assistance from the Debtors as is required under the Asset Purchase Agreement, will work promptly and diligently to apply for and secure all necessary government approvals for the transfer or new issuance of the Permit(s) to the Buyer, and the Debtors shall maintain the Permits to the extent required under and subject to the terms of the Asset Purchase Agreement. For the avoidance of doubt, while nothing in this Sale Order or the Asset Purchase Agreement releases, nullifies, limits, waives, precludes, or enjoins the enforcement of any police or regulatory authority of a governmental unit, Buyer shall be entitled to operate under each state Permit currently held by or on behalf of the Debtors in relation to the Acquired Assets until such time as each such Permit is transferred to the Buyer and/or an equivalent Permit is issued to the Buyer.

15.     To the extent provided by Bankruptcy Code Section 525, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Acquired Assets sold, transferred, or conveyed to the Buyer on account of the filing or pendency of these Chapter 11 Cases or the consummation of the transactions contemplated by the Asset Purchase Agreement and this Sale Order.

**Implementation of the Sale**

16.     On Closing, the Buyer shall (a) pay the Purchase Price to the Debtors; (b) pay the Cure Costs as more fully described in paragraph 30 of this Sale Order and the Asset Purchase Agreement; (c) assume the Assumed Liabilities; and (d) perform any other obligations required to be performed by Buyer on the Closing. Each and every federal, state, and local governmental

US_ACTIVE-154466812.6

agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement, including, without limitation, recordation of this Sale Order.

17.     Within three (3) business days of the Debtors' receipt of the Net Sale Proceeds (as defined in the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection, (III) Modifying Automatic Stay, and (IV) Granting Related Relief* [Docket No. 410] (as it may be modified from time to time, the "**Cash Collateral Order**")) from the sale of the Acquired Assets, the Debtors shall pay the Net Sale Proceeds of the Acquired Assets to the Priority Term Loan Agent, for the account of the Priority Term Loan Secured Creditors, to the extent required under and in accordance with the terms of the Cash Collateral Order or such other order of the Court.  Upon the Priority Term Loan Agent's timely receipt of such payment, (a) the Priority Term Loan Obligations shall be paid and satisfied to the extent of the payment and (b) all liens and security interests against the Acquired Assets securing the Priority Term Loan Obligations shall be automatically released and discharged without further action by any person.  Upon the payment in full in cash of the Priority Term Loan Obligations and the occurrence of the Challenge Period Termination Date (as defined in the Cash Collateral Order), (w) the Debtors shall have no further indebtedness, liabilities or obligations owing under the Priority Term Loan Credit Agreement or the other "Financing Agreements" (as defined in the Priority Term Loan Agreement, the "**Priority Term Loan Documents**"), (x) other than any provisions thereof that survive pursuant to the terms thereof, the Priority Term Loan Credit Agreement and all other Priority Term Loan Documents (including, without limitation, any mortgages, guaranties and security agreements) and all of the Debtors' obligations thereunder shall terminate and be of no further force and effect, (y) all liens and security interests against the

US_ACTIVE-154466812.6

property and assets of the Debtors securing the Priority Term Loan Obligations shall be automatically fully released and discharged without further action by any person, and (z) each deposit account control agreement in respect of or other sweeps or blocks of any Debtor's deposit accounts or lockboxes in favor of any of the Priority Term Loan Secured Parties shall terminate.

18.     The Debtors shall pay the Net Sale Proceeds from the sale of the Acquired Assets to the FILO Agent, for the account of the FILO Term Loan Secured Creditors, to the extent required under and in accordance with the terms of the Cash Collateral Order or such other order of the Court.  For the avoidance of doubt, any further payment to the FILO Agent shall be subject to orders previously entered by this Court and any further orders of this Court or provided under the Debtors' Chapter 11 plan.

19.     All parties in interest in these Chapter 11 Cases expressly reserve their rights with respect to any allocation of the Purchase Price or value among the purchased Acquired Assets, and any allocation of the Purchase Price or value among the purchased Acquired Assets as determined by the Buyer shall not be determinative or binding on any party in interest in these Chapter 11 Cases except as ordered by the Court after notice and a hearing.

**<u>No Successor Liability</u>**

20.     Other than as expressly set forth in the Asset Purchase Agreement, the Buyer shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any Interests, including under any theory of successor or transferee liability, *de facto* merger or continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated, including without limitation, with respect to any of the following: (i) any foreign, federal, state, or local revenue law, pension law, ERISA, COBRA, tax law, labor law, employment law, the WARN Act, antitrust law,

US_ACTIVE-154466812.6

Case 20-81688-CRJ11    Doc 875    Filed 09/29/20    Entered 09/29/20 08:11:36    Desc
Main Document    Page 27 of 326

CERCLA, and any other environmental, health and safety laws, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules or regulations); (ii) under any products liability law, rule, regulation, or doctrine with respect to the Debtors' liability under such law, rule, regulation, or doctrine, or under any product warranty liability law or doctrine; (iii) under any unfair trade practices law, rule, regulation or doctrine with respect to the Debtors' liability under such law, rule, regulation or doctrine, or under any unfair trade practices liability law or doctrine; (iv) any employment or labor agreements, consulting agreements, severance arrangements, change-in-control agreements, or other similar agreement to which the Debtors are a party; (v) any welfare, compensation, or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of the Debtors; (vi) the cessation of the Debtors' operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation, or other employee benefit plans, agreements, practices and programs, obligations that might otherwise arise from or pursuant to (a) ERISA, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967, (g) the Americans with Disabilities Act of 1990, or (h) COBRA; (vii) any liabilities, debts, or obligations of or required to be paid by the Debtors for any taxes of any kind for any period; (viii) any environmental liabilities, debts, claims fines, penalties, or obligations arising from conditions, facts or circumstances first existing or occurring on or prior to the Closing (including, without limitation, the presence of or exposure to chemical, hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis and at any time, including, without limitation, any liabilities, debts, claims, fines, penalties or obligations arising under CERCLA, or any other environmental, health, and safety laws; (viii) any

US_ACTIVE-154466812.6

liabilities, debts, claims, fines, penalties, or obligations of or required to be paid by the Debtors for any taxes of any kind for any period; (ix) any liabilities, debts, claims, fines, penalties, or obligations of or required to be paid by the Debtors under any labor, employment, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules, or regulations); (x) any bulk sale law; and (xi) any litigation. The Buyer shall have no liability or obligation under the WARN Act simply by virtue of its purchase of assets from the Debtors.

21.     The Buyer has given substantial consideration under the Asset Purchase Agreement, which consideration shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Buyer and which shall be deemed to have been given in favor of the Buyer by all holders of Interests and liabilities (except for Permitted Liens and the Assumed Liabilities) in or against the Debtors, or the Acquired Assets. Without limiting the Buyer's obligation to pay and satisfy the Assumed Liabilities, upon consummation of the Sale, the Buyer shall not be deemed to (a) be the successor to the Debtors or their estates, (b) have, *de facto* or otherwise, merged with or into the Debtors, or (c) be a mere continuation, alter ego or substantial continuation of the Debtors under any theory of law or equity as a result of any action taken in connection with the Asset Purchase Agreement or any of the transactions or documents ancillary thereto or contemplated thereby or in connection with the acquisition of the Acquired Assets.

22.     Effective upon the Closing, except with respect to Assumed Liabilities and Permitted Liens, all persons and entities are forever prohibited and enjoined from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against the Buyer or its assets (including the Acquired Assets) with respect to any (a) Claim or Lien or (b) successor or transferee liability, including,

US_ACTIVE-154466812.6

without limitation, the following actions with respect to clauses (a) and (b): (i) commencing or continuing any action or other proceeding pending or threatened; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or Claim; (iv) asserting any setoff, right of subrogation, or recoupment of any kind; (v) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof; or (vi) revoking, terminating, or failing or refusing to renew any License, permit, or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with such assets.

**Good Faith**

23.     The transactions contemplated by the Asset Purchase Agreement are undertaken by the Buyer without collusion and in good faith, as that term is used in Bankruptcy Code Section 363(m), and, accordingly, the reversal or modification on appeal of the authorization provided in this Sale Order to consummate the Sale and the Transactions shall not affect the validity of the transactions (including the assumption and assignment of any of the Assigned Contracts). The Buyer is a purchaser in good faith of the Acquired Assets and is entitled to all the protections afforded by Bankruptcy Code Section 363(m).

24.     As a good faith purchaser of the Acquired Assets, the Buyer has not entered into an agreement with any other potential bidders at the Auction (other than its agreement with the Firearms Buyer as was fully disclosed to all participants at the Auction), and has not colluded with any of the other bidders, potential bidders or any other parties interested in the Acquired Assets, and, therefore, neither the Debtors nor any successor in interest to the Debtors' estates shall be

US_ACTIVE-154466812.6

entitled to bring an action against the Buyer, and the Sale may not be avoided pursuant to Section 363(n) of the Bankruptcy Code.

25.     The consideration provided by the Buyer for the Acquired Assets under the Asset Purchase Agreement constitutes reasonably equivalent value, fair value, reasonable market value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.  The Sale may not be avoided under Bankruptcy Code Section 363(n).  The Asset Purchase Agreement was not entered into, and the Sale is not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtors under the Bankruptcy Code or for any other purpose that would give rise to statutory or common law fraudulent conveyance or fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable jurisdiction with laws substantially similar to the foregoing.  Neither the Debtors nor the Buyer have entered into the Asset Purchase Agreement or any agreement contemplated thereby or are consummating the Sale with any fraudulent or otherwise improper purpose, including, without limitation, to evade any pension liabilities.  No other person or entity or group of persons or entities has offered to purchase the Acquired Assets for an amount that would provide greater value to the Debtors and their estates than the value provided by the Buyer.  The Court's approval of the Motion and the Asset Purchase Agreement are in the best interests of the Debtors, the Debtors' estates, their creditors, and all other parties in interest.

26.     The Buyer is not an "insider" as that term is defined in Section 101(31) of the Bankruptcy Code.

**Assumption and Assignment of Assigned Contracts; Assumed Liabilities**

US_ACTIVE-154466812.6

27.     Pursuant to Bankruptcy Code Sections 105(a), 363, and 365, the Bidding Procedures Order, and subject to and conditioned upon the Closing of the Sale, the Debtors' sale, assumption and assignment to the Buyer of the Assigned Contracts is approved, and the requirements of Bankruptcy Code Section 365(b)(1) with respect thereto are deemed satisfied.

28.     The Debtors are authorized in accordance with Bankruptcy Code Sections 105(a) and 365 to (i) assume and assign to the Buyer, effective as of the Closing and at such other times as may be specified in accordance with the terms and conditions of the Asset Purchase Agreement, as provided by, and in accordance with, the Bidding Procedures Order and the Asset Purchase Agreement, the Assigned Contracts free and clear of all Interests of any kind or nature whatsoever, other than the Permitted Liens and Assumed Liabilities, and (ii) execute and deliver to the Buyer such documents or other instruments as the Buyer reasonably deems necessary to assign and transfer the Assigned Contracts to the Buyer.

29.     The Assigned Contracts shall be transferred and assigned to, pursuant to the Bidding Procedures Order and the Asset Purchase Agreement, and thereafter remain in full force and effect for the benefit of, the Buyer, notwithstanding any provision in any such Assigned Contract (including, but not limited to, those of the type described in Bankruptcy Code Sections 365(b)(2), (e)(1), and (f)) that prohibits, restricts, or conditions such assignment or transfer. The Debtors shall be relieved from any further liability with respect to the Assigned Contracts after such assumption and assignment to the Buyer. The Debtors may assign each Assigned Contract in accordance with Bankruptcy Code Sections 363 and 365, and any provisions in any Assigned Contracts that prohibit or condition the assignment of such Assigned Contracts or terminate, recapture, impose any penalty, condition, renewal, or extension, or modify any term or condition upon the assignment of such Assigned Contracts, constitute unenforceable anti-assignment

29

provisions which are void and of no force and effect. All other requirements and conditions under Bankruptcy Code Sections 363 and 365 for the assumption by the Debtors and assignment to the Buyer of each Assigned Contract have been satisfied.

30. All defaults and all other obligations or liabilities under any Assigned Contract occurring, arising, or accruing prior to the date of the assignment or transfer to the Buyer shall be deemed cured or satisfied upon payment by the Buyer and/or the Debtors (in each case in accordance with Section 1.5 of the Asset Purchase Agreement) of the proposed Cure Cost, as set forth in the Notice of Assumption and Assignment, any Supplemental Notice of Assumption and Assignment, or any other cure amount reached by agreement after an Assigned Contract Objection or otherwise, and, without limiting the foregoing, no effect shall be given to any default of the type set forth in Bankruptcy Code Section 365(b)(2), or the type of default concerning an unexpired lease of real property described in Bankruptcy Code Section 365(b)(1) whether or not such Assigned Contract is an executory contract within the meaning of Bankruptcy Code Section 365.

31. Each non-Debtor counterparty to the Assigned Contracts shall be forever barred, estopped, and permanently enjoined from (a) asserting against the Debtors, the Buyer, or their respective property (including the Acquired Assets) any fee, acceleration, default, breach, Claim (including any counterclaim, defense, or setoff capable of being asserted against the Debtors), pecuniary loss, or condition to assignment existing, arising, or accruing as of the Closing Date, or arising by reason of the Closing, including any breach related to or arising out of any change-in-control provision in such Assigned Contracts, or any purported written or oral modification to the Assigned Contracts, and (b) asserting against the Buyer (or its property, including the Acquired Assets) any Claim or Lien, counterclaim, breach, condition or setoff asserted or capable of being

US_ACTIVE-154466812.6

asserted against the Debtors existing as of the Closing Date or arising by reason of the Closing except for the Assumed Liabilities and Permitted Liens.

32.     The Cure Costs amounts listed on the Notice of Assumption and Assignment, any Supplemental Notice of Assumption and Assignment, or any other cure amount reached by agreement after an Assigned Contract Objection or otherwise, reflect the sole amounts necessary under Bankruptcy Code Section 365(b) to cure all monetary defaults under the Assigned Contracts, and no other amounts are or shall be due to the non-debtor parties in connection with the assumption by the Debtors and assignment to the Buyer of the Assigned Contracts. Notwithstanding anything to the contrary herein, if the Cure Costs for an Assigned Contract is determined to be greater than the proposed Cure Costs asserted in the Notice of Assumption and Assignment or Supplemental Notice of Assumption and Assignment, the Buyer may decide, in its discretion, not to assume that Assigned Contract. Notwithstanding anything to the contrary herein, in each case in accordance with Bidding Procedures Order and the terms and conditions of the Asset Purchase Agreement, the Buyer may decide (i) not to assume one or more unexpired leases and executory contracts designated on Schedule 1.1(h) of the Asset Purchase Agreement (or Schedule 1.1(g) of the Backup Bid Agreement), and (ii) to supplement Schedule 1.1(h) of the Asset Purchase Agreement (or Schedule 1.1(g) of the Backup Bid Agreement) by including any previously omitted unexpired lease or executory contract.

33.     The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Buyer's rights to enforce every term and condition of the Assigned Contracts.

US_ACTIVE-154466812.6

34.     Notwithstanding anything in the Asset Purchase Agreement or this Sale Order to the contrary and for the avoidance of doubt, the Acquired Assets shall not include any of the Excluded Assets as set forth in Section 1.2 of the Asset Purchase Agreement.

35.     The Buyer shall be responsible for the satisfaction of the Assumed Liabilities under the Asset Purchase Agreement, including without limitation the Buyer Cure Amount (or in the case of the Backup Bid Agreement, the Cure Amount) arising under the Assigned Contracts. Except as provided in the Asset Purchase Agreement or this Sale Order, after the Closing, the Debtors and their estates shall have no further liability or obligations with respect to any Assumed Liability, including those arising under the Assigned Contracts, and all holders of such claims are forever barred and estopped from asserting any claims under any Assumed Liability (including those arising under the Assigned Contracts) against the Debtors, their successors or assigns, and their estates.

**Backup Bidder**

36.     SIG Sauer, Inc. (the "**Backup Bidder**") is hereby approved as the "Backup Bidder" under the Bidding Procedures Order, and pursuant to Bankruptcy Code Sections 105, 363, and 365, the Asset Purchase Agreement attached hereto as Exhibit B (the "**Backup Bid Agreement**") submitted by the Backup Bidder, the sale of the Acquired Assets (as defined in the Backup Bid Agreement), and consummation of the Sale to the Backup Bidder are hereby approved as the Backup Bid under the Bidding Procedures Order. The Backup Bid on the terms set forth in the Backup Bid Agreement is hereby approved and authorized as a Backup Bid and shall remain open as a Backup Bid pursuant to the terms of the Bidding Procedures Order and the bid terms submitted at the Auction. In the event that the Successful Bidder cannot or refuses to consummate the Sale because of a breach or failure on the part of the Successful Bidder, the Backup Bidder will be

US_ACTIVE-154466812.6

deemed the new Successful Bidder and the Debtors shall be authorized, but not directed, to close, and take all actions necessary to close, with the Backup Bidder on the Backup Bid Agreement without further order of the Court, and in such case, all findings and other provisions of this Sale Order shall apply to the Backup Bidder and the Backup Bid Agreement to the same extent they do with respect to the Buyer and the Asset Purchase Agreement.

**Other Provisions**

37.    Nothing in this Sale Order or in the Asset Purchase Agreement entered into pursuant to this Sale Order releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory authority of a governmental unit.

38.    This Sale Order and the Asset Purchase Agreement shall be binding in all respects upon all known and unknown creditors of, and holders of equity security interests in, any Debtor, including any holders of Interests, all counterparties to the Assigned Contracts, all counterparties to contracts that are not assumed or assigned, all successors and assigns of the Buyer, each Debtor and their affiliates and subsidiaries, the Acquired Assets, and any trustees appointed in the Chapter 11 Cases or upon a conversion to cases under Chapter 7 of the Bankruptcy Code, and this Sale Order shall not be subject to amendment or modification and the Asset Purchase Agreement shall not be subject to rejection.  Nothing contained in any Chapter 11 plan confirmed in any Debtor's bankruptcy case, any order confirming any such Chapter 11 plan, or any other order in the Chapter 11 Cases shall alter, conflict with, or derogate from, the provisions of the Asset Purchase Agreement or this Sale Order.

39.    To the extent applicable, the automatic stay pursuant to Section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtors to the extent necessary, without further order of the Court (a) to allow the Buyer to give the Debtors any notice provided for in the

Asset Purchase Agreement, and (b) to allow the Buyer to take any and all actions permitted by the Asset Purchase Agreement.

40.　　No bulk sales law or similar law shall apply in any way to the transactions contemplated by the Sale, the Asset Purchase Agreement, the Motion, and this Sale Order.

41.　　This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Asset Purchase Agreement, all amendments thereto, and any waivers and consents thereunder, including, but not limited to, retaining jurisdiction to (i) enforce the terms of the Asset Purchase Agreement; (ii) compel delivery of the Acquired Assets to the Buyer; (iii) interpret, implement, and enforce the provisions of this Sale Order; (iii) protect the Buyer, any of the Buyer's affiliates, or any agent of the foregoing, against any Interests against the Debtors or the Acquired Assets of any kind or nature whatsoever, except for the Permitted Liens and Assumed Liabilities, and (iv) enter any order under Bankruptcy Code Sections 363 and 365.

42.　　No brokers were involved in consummation of the Sale, and no brokers' commissions are due to any person in connection with the Sale; *provided, however*, that this provision does not impact any transaction or other fees due to investment bankers or financial advisors employed (a) by the Debtors, including, but not limited to Ducera Partners LLC, or certain of their creditors for which the Debtors may be obligated to pay in accordance with an engagement letter with such professional(s), or (b) by the Buyers.

43.　　To the extent there is any inconsistency between the terms of this Sale Order and the terms of the Asset Purchase Agreement (including all ancillary documents executed in connection therewith), the terms of this Sale Order shall govern.

34

44.     The failure to specifically include any particular provision of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement be authorized and approved in its entirety.

45.     The Asset Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, *provided* that the Debtors shall provide the Bid Consultation Parties with three (3) business days' notice thereof and *provided* further that any such modification, amendment, or supplement does not, based on the Debtors' judgment, have a material adverse effect on the Debtors' estates.

46.     Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Sale Order shall not be stayed for fourteen (14) days after its entry and shall be effective immediately upon entry, and the Debtors and the Buyer are authorized to close the transaction immediately upon entry of this Sale Order. Time is of the essence in closing the transactions referenced herein, and the Debtors and the Buyer intend to close the transactions as soon as practicable. This Sale Order is a final, appealable order and the period in which an appeal must be filed shall commence upon the entry of this Sale Order.

47.     The provisions of the Asset Purchase Agreement and this Sale Order may be specifically enforced in accordance with the Asset Purchase Agreement notwithstanding the appointment of any Chapter 7 or Chapter 11 trustee after the Closing.

48.     Headings utilized in this Sale Order are for convenience of reference only, and do not constitute a part of this Sale Order for any other purpose.

35

US_ACTIVE-154466812.6

49. All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

50. The provisions of this Sale Order are non-severable and mutually dependent.

51. All issues raised by Oracle America, Inc. ("**Oracle**") in *Oracle's Limited Objection and Reservation of Rights Regarding (a) Debtors' Motion for (a) an Order Establishing Bidding Procedures and Granting Related Relief and (ii) an Order or Orders Approving the Sale of the Debtors' Assets; and (b) Notice of Executory Contracts and Unexpired Leases that May Be Assumed and Assigned in Connection with the Sale of the Debtors' Assets and the Proposed Cure Cost with Respect Thereto* (the "**Oracle Objection**") [Docket No. 529] are expressly reserved. The Oracle Objection may be set for hearing on an expedited basis upon the request of Oracle and/or the Debtors.

52. Nothing in the Asset Purchase Agreement or in this Order shall have the effect of transferring, impairing, reducing or otherwise limiting any of the Debtors' rights in any insurance policies covering Excluded Liabilities or the proceeds of such polices. For the avoidance of doubt, the Debtors reserve control over the privilege concerning any retained documents and nothing in this Order relieves the Debtors of any document retention obligations.

53. Notwithstanding anything to the contrary in this Order or the Asset Purchase Agreement, the Debtors do not purport to assume or assign to Buyer the license agreement dated as of January 23, 2008 between Magpul Industries Corp ("**Magpul**") and the Debtors, and nothing in this order limits or otherwise modifies, to the extent such license exists, any express or implied license granted by the Debtors to Magpul in connection with Magpul's production of accessories for Debtors' firearm products or any rights or defenses of the Debtors in connection therewith,

including any right of revocation and any right to assign the Debtors' rights in connection therewith to the Buyer.

Dated: _____, 2020

_____
UNITED STATES BANKRUPTCY JUDGE

US_ACTIVE-154466812.6

**Exhibit A**

**Asset Purchase Agreement**

US_ACTIVE-154466812.6

**Exhibit B**

**Backup Bid Agreement**

| Summary report:<br>**Litera® Change-Pro for Word 10.9.0.460 Document comparison done on<br>9/28/2020 6:14:09 PM** | |
|---|---|
| **Style name:** OMM Standard | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** dm://OMM_US/79063084/6 | |
| **Modified DMS:** dm://OMM_US/79063084/7 | |
| **Changes:** | |
| Add | 8 |
| Delete | 0 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 8 |

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

In re:

REMINGTON OUTDOOR COMPANY,
INC., *et al.*, [1]

Debtors.

Chapter 11

Case No. 20-81688-CRJ11

Jointly Administered

## ORDER APPROVING THE SALE OF THE DEBTORS' LONOKE AMMUNITION BUSINESS AND CERTAIN OF THE DEBTORS' INTELLECTUAL PROPERTY ASSETS FREE AND CLEAR OF ALL CLAIMS, LIENS, AND INTERESTS

This matter having come before the Court upon the motion (the "**Motion**")[2] by Remington Outdoor Company, Inc., ("**Remington**" or the "**Company**"), and its affiliated debtors and debtors in possession (collectively the "**Debtors**") in the above-captioned Chapter 11 cases seeking entry of this order (this "**Sale Order**") (a) authorizing the sale of the Acquired Assets (as defined in the Asset Purchase Agreement (as defined below)) free and clear of all Interests (as defined below), pursuant to that certain Asset Purchase Agreement, dated as of September 26, 2020, attached hereto as <u>Exhibit A</u> (the "**Asset Purchase Agreement**"), by and among the Debtors and Vista Outdoor, Inc. (the "**Buyer**"), and all other transaction documents related thereto; (b) authorizing the assumption and assignment of certain executory contracts and unexpired leases; and (c) granting the related relief contemplated therein; and the Court having found that (i) the Court has

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405).  The Debtors' corporate headquarters is located at 100 Electronics Blvd SW, Huntsville, Alabama 35824.

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Motion or the Asset Purchase Agreement, as applicable.

jurisdiction over this matter; (ii) venue is proper in this District; (iii) this is a core proceeding; (iv) the notice of the Motion and the Sale Hearing (as defined below) was sufficient under the circumstances; and (v) there is good cause to waive the stay of Bankruptcy Rule 6004(h); and based on the statements of counsel and the evidence presented in support of the relief requested by the Debtors in the Motion at a hearing before this Court on September 29 [and 30], 2020 (the "**Sale Hearing**"); and it appearing that no other notice need be given; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      **Jurisdiction, Core Proceeding, Statutory Predicates, and Venue**.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *General Order of Reference* of the United States District Court for the Northern District of Alabama dated July 16, 1984 as amended July 17, 1984.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The predicates for the relief granted herein are Bankruptcy Code Sections 105, 363, and 365 and Bankruptcy Rules 2002, 6004, and 6006.  Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      **Just Cause**.  The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Sale Order is in the best interests of the Debtors and their respective estates, creditors, and all other parties in interest.

C.      **Notice**.  The notice of the Motion, the Sale Hearing, the Asset Purchase Agreement, the transactions contemplated therein or in connection therewith and corresponding transactions documents (the "**Transactions**"), and the proposed entry of this Sale Order was adequate and sufficient under the circumstances of the Chapter 11 Cases, and such notice complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  A

reasonable opportunity to object or be heard regarding the relief granted by this Sale Order has been afforded to those parties entitled to notice pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Accordingly, no further notice of the Motion, the Sale Hearing, or this Sale Order is necessary or required.

       D.      The Publication Notice was published in the *New York Times* on August 24, 2020. Such Publication Notice was compliant with the Bidding Procedures Order, and was sufficient and proper notice to any other interested parties, including those whose identities are unknown to the Debtors.

       E.      **Extensive Efforts by Debtors**. Since before the commencement of the Chapter 11 Cases, the Debtors worked with their counsel and financial advisors to implement a viable transaction that would allow them to maximize the value of the Acquired Assets. The Sale Transaction that is the subject of this Sale Order is the result of the Debtors' extensive efforts seeking to maximize recoveries to the Debtors' estates for the benefit of the Debtors' creditors.

       F.      **Business Justification**. The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business justification for the Court to grant the relief requested in the Motion, including, without limitation, to (i) authorize the sale of the Acquired Assets free and clear of Interests other than Permitted Liens (as defined in the Asset Purchase Agreement) and Assumed Liabilities (as defined in the Asset Purchase Agreement); (ii) authorize the assumption and assignment of certain executory contracts and unexpired leases; and (iii) grant related relief as set forth herein. Such compelling and sound business justification, which was set forth in the Motion and on the record at the Sale Hearing, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

3

US_ACTIVE-154466812.6

G.     **Bidding Procedures Order**.  The Bidding Procedures Order [Docket No. 411] was entered by the Court on August 20, 2020, which, among other things (i) approved the Bidding Procedures; (ii) established the Assumption and Assignment Procedures; (iii) approved the form and manner of notice with respect to all procedures, protections, schedules, and agreements described in the Motion and attached thereto; and (iv) scheduled a date for the Auction and Sale Hearing.  The Bidding Procedures provided a full, fair, and reasonable opportunity for any entity to make an offer to purchase the Acquired Assets.

H.     **Auction; Successful Bidder**.  The sale process was properly conducted by the Debtors in accordance with the Bidding Procedures Order and in a manner designed to result in the highest or otherwise best offer for the Acquired Assets.  At the Auction, the Debtors agreed in a reasonable exercise of their business judgment, in consultation with their management, the Restructuring Committee, advisors and the Bid Consultation Parties, to enter into and consummate the Asset Purchase Agreement with the Buyer.  At the conclusion of the Auction, the Buyer was determined to be the Successful Bidder.

I.     **Asset Purchase Agreement**.  The consummation of the Transactions contemplated by the Asset Purchase Agreement, the Motion, and this Sale Order is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and all of the applicable requirements of such sections and rules have been complied with in respect of such transactions.

J.     **Sale Hearing**.  The Sale Hearing occurred on September 29 [and 30], 2020 in accordance with the Bidding Procedures Order.

K.     **Adequate Marketing; Highest or Otherwise Best Offer.**  As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing, including the

4

US_ACTIVE-154466812.6

*Declaration of Ken D'Arcy in Support of Chapter 11 Petitions and First Day Pleadings of Remington Outdoor Company, Inc. and Its Affiliated Debtors and Debtors-Possession* [Docket No. 6 and the *Declaration of Bradley C. Meyer in Support of Debtors' Cash Collateral Motion and Bidding Procedures Motion* [Docket No. 355]; and (ii) the representations of counsel made on the record at the Bidding Procedures Hearing and the Sale Hearing, (a) the Debtors have adequately marketed the Acquired Assets and conducted a sale process in a non-collusive, fair and good faith manner in compliance with the Bidding Procedures Order; (b) the process set forth in the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any interested party to make the highest or otherwise best offer to purchase the Acquired Assets and assume the Assumed Liabilities; (c) the consideration provided by the Buyer in the Asset Purchase Agreement constitutes the highest or otherwise best offer to purchase the Acquired Assets and assume the Assumed Liabilities; (d) the consideration provided by the Buyer in the Asset Purchase Agreement provides fair and reasonable consideration for the Acquired Assets and the assumption of the Assumed Liabilities and constitutes reasonably equivalent value, fair value and reasonable market value under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, the District of Columbia, or other applicable law; (e) the Sale will provide a greater recovery for the Debtors' creditors with respect to the Acquired Assets than would be provided by any other practically available alternative; (f) taking into consideration all relevant factors and circumstances, and after taking account of the Bid Protections, no other entity has offered to purchase the Acquired Assets for greater economic value to the Debtors or their estates; and (g) the Debtors' determination that the Asset Purchase Agreement constitutes the highest or otherwise best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtors' business judgment.

US_ACTIVE-154466812.6

L.     **No Successor Liability.**  Neither the Buyer nor any of its affiliates, officers, directors, shareholders, members, partners, principals or any of their respective representatives, successors, or assigns is an "insider or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors, or stockholders existed or exists between the Buyer and the Debtors.  The transfer of the Acquired Assets to and the assumption of the Assumed Liabilities by the Buyer, except as otherwise set forth in the Asset Purchase Agreement, does not, and will not, subject the Buyer to any liability whatsoever, with respect to the operation of the Debtors' businesses prior to the closing of the Sale or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity including, without limitation, any laws affecting antitrust, successor, transferee, or vicarious liability.  Pursuant to the Asset Purchase Agreement, the Buyer is not purchasing all of the Debtors' assets in that the Buyer is not purchasing any of the Excluded Assets or assuming the Excluded Liabilities, and the Buyer is not holding itself out to the public as an *alter ego* or a continuation of the Debtors.  The Sale does not amount to a consolidation, merger, or *de facto* merger of the Buyer and the Debtors.  There is no substantial continuity between the Buyer and the Debtors, and there is no continuity of enterprise between the Debtors and the Buyer.  The Buyer is not a mere continuation of the Debtors or the Debtors' estates, and the Buyer does not constitute a successor to the Debtors or the Debtors' estates.  None of the Transactions, including, without limitation, the Sale or the assumption and assignment of the Assigned Contracts, is being undertaken for the purpose of escaping liability for any of the Debtors' debts or hindering, delaying, or defrauding creditors under the Bankruptcy Code or for any other purpose that would give rise to statutory or common law fraudulent conveyance or fraudulent transfer claims, whether under the Bankruptcy

US_ACTIVE-154466812.6

Code or under the laws of the United States, any state, territory, possession thereof, the District of Columbia, or any other applicable jurisdiction with laws substantially similar to the foregoing.

M.      **Acquired Assets Property of the Estate.**  The Acquired Assets are property of the Debtors' estates and title thereto is vested in the Debtors' estates.

N.      **Sale in Best Interest/Fiduciary Duties**.  The Debtors have demonstrated a sufficient basis and compelling circumstances requiring them to enter into the Asset Purchase Agreement and sell the Acquired Assets and such actions are appropriate under the circumstances of these Chapter 11 Cases, are in the best interests of the Debtors, their estates and creditors, and other parties in interest, and represent a reasonable exercise of business judgment by the Debtors and the Restructuring Committee and their fulfillment of their fiduciary duties under applicable law.  Approval of the Asset Purchase Agreement, the Sale, and the Transactions at this time is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest. Unless the sale is concluded expeditiously, the recoveries of all of the Debtors' estates and constituencies are likely to be adversely affected.

O.      **Not a *Sub Rosa* Plan.**  The consummation of the Sale outside of a plan of reorganization pursuant to the Asset Purchase Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a plan of reorganization or liquidation for the Debtors.  The Asset Purchase Agreement, the Sale and the transactions contemplated therein and associated therewith do not constitute an impermissible *sub rosa* Chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford.

P.      **Arm's-Length Sale.**  The Asset Purchase Agreement, the Sale, and the Transactions were negotiated, proposed, and entered into by the Debtors and the Buyer without

US_ACTIVE-154466812.6

collusion, in good faith, and from arm's-length bargaining positions. Neither the Debtors, their insiders and affiliates, nor the Buyer have engaged in any conduct that would cause or permit the Asset Purchase Agreement, the Sale, or any part of the transactions thereby to be avoided under Bankruptcy Code Section 363(n).

Q.     **Good Faith Buyer.** The Buyer is a good faith purchaser under Bankruptcy Code Section 363(m) and, as such, is entitled to all of the protections afforded thereby. Specifically: (i) the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Acquired Assets; (ii) the Buyer complied in all respects with the provisions of the Bidding Procedures Order; (iii) the Buyer agreed to subject its bid to the competitive bid procedures set forth in the Bidding Procedures Order; (iv) all payments to be made by the Buyer in connection with the Sale have been disclosed; (v) no common identity of directors, officers or controlling stockholders exists among the Buyer and the Debtors; (vi) the negotiations and execution of the Asset Purchase Agreement was at arm's-length and in good faith, and at all times each of the Buyer and the Debtors were represented by competent counsel of their choosing; (vii) the Buyer did not in any way induce or cause the Chapter 11 filing of the Debtors; and (viii) the Buyer has not acted in a collusive manner with any person. The Buyer will be acting in good faith within the meaning of Bankruptcy Code Section 363(m) in closing the transactions contemplated by the Asset Purchase Agreement.

R.     **Corporate Authority.** Each Debtor (i) has full corporate power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby, and the Sale of the Acquired Assets has been duly and validly authorized by all necessary corporate actions of each of the Debtors; (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by the Asset Purchase Agreement; (iii) has taken all corporate action

8

US_ACTIVE-154466812.6

necessary to authorize and approve the Asset Purchase Agreement and the consummation by the Debtors of the transactions contemplated thereby; and (iv) needs no consents or approvals, other than those expressly provided for in the Asset Purchase Agreement, which may be waived in accordance with the terms therewith.

S.     **Free and Clear Findings Required by the Buyer.**  The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the Sale Transaction, thus adversely affecting the Debtors, their estates, and their creditors, if the Sale of the Acquired Assets to the Buyer and the assumption and assignment of Acquired Contracts, were not, pursuant to Bankruptcy Code Section 363(f), free and clear (except for Permitted Liens and Assumed Liabilities) of (i) all liens (statutory or otherwise), claims, mortgages, deeds of trust, pledges, charges, security interests, rights of first refusal, hypothecations, encumbrances, easements, servitudes, leases or subleases, rights-of-way, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of offset or recoupment, right of use or possession, licenses, indentures, instruments, conditional sale arrangements, (ii) all claims as defined in Bankruptcy Code Section 101(5), including all rights or causes of action (whether in law or in equity), proceedings, warranties, guarantees, indemnities, rights of recovery, setoff, recoupment, indemnity or contribution, obligations, demands, restrictions, indemnification claims, or liabilities relating to any act or omission of the Debtors or any other person prior to the Closing, consent rights, options, contract rights, covenants, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of the above-captioned cases, and whether imposed by agreement, understanding, law, equity or otherwise, and (iii) all debts, liabilities, obligations, contractual rights and claims and labor, employment and

9

pension claims, in each case, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise (excluding Permitted Liens and Assumed Liabilities, (i), (ii), and (iii) collectively, the "**Interests**").  Except as expressly provided in the Asset Purchase Agreement, the Sale shall be free and clear of, and the Buyer shall not be responsible for, any Interests, including, without limitation, in respect of the following:  (i) any rights or Interests based on any successor or transferee liability, (ii) any Interests that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or termination of the Debtors' or the Buyer's interest in the Acquired Assets, or any similar rights; (iii) any labor or employment agreements; (iv) mortgages, deeds of trust, and security interests; (v) intercompany loans and receivables between the Debtors and any non-Debtor subsidiary; (vi) any pension, multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of ERISA), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability; (vii) any other employee, worker's compensation, occupational disease, or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**"), (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age

US_ACTIVE-154466812.6

Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Code and of any similar state law (collectively, "**COBRA**"), (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors, or (1) the WARN Act (29 U.S.C. §§2101 *et seq*.); (viii) any bulk sales or similar law; (ix) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (xii) any unexpired and executory contract or unexpired lease to which a Debtor is a party that is not an Assigned Contract that will be assumed and assigned pursuant to this Sale Order and the Asset Purchase Agreement; (xiii) any other Excluded Liabilities as provided in the Asset Purchase Agreement. A sale of the Acquired Assets other than one free and clear of all Interests would yield substantially less value for the Debtors' estates, with less certainty, than the Sale as contemplated. Therefore, the Sale contemplated by the Asset Purchase Agreement and approved herein free and clear of all Interests, except for Permitted Liens and Assumed Liabilities, is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

T.     **Valid and Binding Transfer.**  The transfer of the Acquired Assets to the Buyer will be a legal, valid, and effective transfer of the Acquired Assets and, except for the Permitted Liens and Assumed Liabilities, will vest the Buyer with all right, title, and interest of the Debtors to the Acquired Assets free and clear of all Interests and any liabilities of the Debtors.

U.     **Satisfaction of Section 363(f) Standards.**  The transfer of the Acquired Assets to the Buyer under the Asset Purchase Agreement shall be a legal, valid, and effective transfer of all

11

US_ACTIVE-154466812.6

the legal, equitable, and beneficial right, title and interest in and to the Acquired Assets free and clear of all Interests, other than the Assumed Liabilities and Permitted Liens. The Debtors may sell the Acquired Assets free and clear of all Interests, except for the Permitted Liens and the Assumed Liabilities, because, in each case, one or more of the standards set forth in Bankruptcy Code Section 363(f)(1) through (5) has been satisfied, with all such Liens and Interests to attach to the proceeds of the Sale Transaction to be received by the Debtors with the same validity, force, priority and effect that they had as against the Acquired Assets, and any claims and defenses the Debtors and their estates may possess with respect thereto. Those holders of Interests, and non-debtor parties to the Assigned Contracts who did not object, or who withdrew their objections, to the Motion are, without limitation, deemed to have consented pursuant to Bankruptcy Code Section 363(f)(2). In all cases, each such person with Interests in the Acquired Assets is enjoined from taking any action against the Buyer, the Buyer's affiliates, or any agent of the foregoing to recover any such Interest.

V. **Necessity of Order.** The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the Sale Transaction without all of the relief provided for in this Sale Order (including, but not limited to, that the transfer of the Acquired Assets to the Buyer be free and clear of all Interests (other than Permitted Liens and the Assumed Liabilities)). The consummation of the Sale Transaction pursuant to this Sale Order and the Asset Purchase Agreement is necessary for the Debtors to maximize the value of their estates for the benefit of all creditors and other parties in interest.

W. **Time of the Essence**. The sale of the Acquired Assets must be approved and consummated promptly in order to preserve the value of the Acquired Assets. Therefore, time is

US_ACTIVE-154466812.6

of the essence in consummating the Sale, and the Debtors and the Buyer intend to close the Sale as soon as reasonably practicable.

X. **Assigned Contracts.** The Debtors have demonstrated that it is their sound business judgment to sell, assume, and assign the "Assumed Contracts" and "Assumed Leases" (as such terms are defined in the Asset Purchase Agreement), including, without limitation, the unexpired leases and executory contracts designated on <u>Schedule 1.1(j)</u> of the Asset Purchase Agreement (collectively, the "**Assigned Contracts**" and, individually, an "**Assigned Contract**") to the Buyer in connection with the consummation of the Sale, and the assumption and assignment of the Assigned Contracts is in the best interests of the Debtors, their estates and creditors, and other parties in interest. The Assigned Contracts being assigned to the Buyer are an integral part of the Acquired Assets being purchased by the Buyer, and, accordingly, such assumption and assignment of the Assigned Contracts and the liabilities associated therewith are reasonable and enhance the value of the Debtors' estates. No section of any Assigned Contract that purports to prohibit, restrict, impose any penalty or fee on, or condition the use, consideration, or assignment of any such Assigned Contract in connection with the Transactions shall have any force or effect.

Y. **Cure and Adequate Assurance.** Through Buyer's commitment to pay the Buyer Cure Amount (or, in the case of the Backup Bidder (as defined below), the Cure Amount) related to the Assigned Contracts and upon the payment of the Buyer Cure Amount (or, in the case of the Backup Bidder, the Cure Amount) by the Buyer and the Seller Cure Amount, if any, pursuant to the terms of the Asset Purchase Agreement, the Debtors (solely in connection with closing of the Successful Bid and not in connection with the Backup Bid) and the Buyer, as applicable, have cured or otherwise have demonstrated their ability to cure any default with respect to any act or omission that occurred prior to the Closing (as defined in the Asset Purchase Agreement) under

13

US_ACTIVE-154466812.6

any of the Assigned Contracts, within the meaning of Bankruptcy Code Section 365(b)(l)(A). The proposed Cure Costs or any other cure amount reached by agreement after any objection by a counterparty to an Assigned Contract (an "**Assigned Contract Objection**") or otherwise are deemed the amounts necessary to "cure" all "defaults," each within the meaning of Bankruptcy Code Section 365(b), under such Assigned Contracts. The Buyer's promise to perform the obligations under the Assigned Contracts shall constitute adequate assurance of its future performance of and under the Assigned Contracts, within the meaning of Bankruptcy Code Sections 365(b)(l) and 365(f)(2). Subject to the Bidding Procedures Order, all counterparties to the Assigned Contracts who did not file an Assigned Contract Objection or an objection to the assumption and assignment of the Assigned Contracts prior to the Sale Hearing, are deemed to consent to the assumption by the Debtors of their respective Assigned Contract and the assignment thereof to the Buyer. The filed objections of all counterparties to the Assigned Contracts that were heard at the Sale Hearing (to the extent not withdrawn or adjourned), were considered by the Court, and are overruled on the merits with prejudice. The Court finds that, with respect to all such Assigned Contracts, the payment of the proposed Cure Costs by the Buyer or, solely in connection with Successful Bid and not in connection with the Backup Bid, the Seller, as applicable, in accordance with the terms of the Asset Purchase Agreement is appropriate and is deemed to fully satisfy the Debtors' obligations under Bankruptcy Code Section 365(b). Accordingly, and without limitation of the Buyer's rights under Sections 1.5(b) and 1.5(d) of the Asset Purchase Agreement (or Sections 1.5(a) and 1.5(d) of the Backup Bid Agreement (as defined below)), all of the requirements of Bankruptcy Code Section 365(b) have been satisfied for the assumption and the assignment by the Debtors to the Buyer of each of the Assigned Contracts. To the extent any Assigned Contract is not an executory contract within the meaning of Bankruptcy Code Section

US_ACTIVE-154466812.6

365, it shall be transferred to the Buyer in accordance with the terms of this Sale Order that are applicable to the Acquired Assets. In addition, for the avoidance of doubt, to the extent the Backup Bidder becomes the Successful Bidder as set forth in this Sale Order, the provisions herein with respect to the Assigned Contracts shall apply likewise to the Backup Bidder as Buyer, in accordance with the terms of the Backup Bid Agreement.

Z. **Unenforceability of Anti-Assignment Provisions.** Any provisions in any Assigned Contract that restrict, limit, prohibit or condition the assumption, assignment, and sale of the Assigned Contracts or that allow the counterparty so such Assigned Contract to terminate, recapture, impose any penalty or fee, accelerate, increase any rate, condition on renewal or extension, or modify any term or condition upon the assignment of such Assigned Contract, should be deemed and found to be unenforceable anti-assignment provisions that are void and of no force and effect within the meaning of Bankruptcy Code Section 365(f).

AA. **Objections are Overruled**. All objections to the relief requested in the Motion that have not been withdrawn, waived, adjourned or settled as announced to the Court at the Sale Hearing or by stipulations filed with the Court are overruled except as otherwise set forth herein.

BB. **Final Order**. This Sale Order constitutes a final order within the meaning of 20 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order and expressly directs entry of judgment as set forth herein.

CC. **Best Interest**. Entry of this Sale Order is in the best interests of the Debtors, the Debtors' estates, their creditors, and other parties in interest.

DD. **Findings and Conclusions**. The findings of fact and conclusions of law herein constitute the Court's findings of fact conclusions of law for the purposes of Bankruptcy Rule

US_ACTIVE-154466812.6

7052, made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are adopted as such. To the extent any conclusions of law are findings of fact, they are adopted as such.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

<u>General Provisions</u>

1.      The Motion is granted and the relief requested therein with respect to the Sale is granted and approved in its entirety, as set forth herein.

2.      Any objections to the entry of this Sale Order or to the relief granted herein or the relief requested in the Motion, including any objections to the proposed Cure Costs or the assumption and assignment of any Assigned Contracts, that have not been adjourned, withdrawn, waived, or settled, or not otherwise addressed or resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits with prejudice.

<u>Approval of the Sale of the Acquired Assets</u>

3.      The Debtors are authorized to enter into the Asset Purchase Agreement (and all ancillary documents) and all the terms and conditions thereof, and all of the Transactions contemplated therein are approved in all respects. The transfer of the Acquired Assets by the Debtors to the Buyer shall be a legal, valid and effective transfer of the Acquired Assets.

4.      Pursuant to Bankruptcy Code Section 363(b), the sale of the Acquired Assets to the Buyer free and clear of all Interests (other than the Permitted Liens and the Assumed Liabilities), and the transactions contemplated thereby is approved in all respects.

<u>Sale and Transfer of the Acquired Assets</u>

5.      Pursuant to Bankruptcy Code Sections 105, 363, and 365, the Debtors are authorized to (a) take any and all actions necessary or appropriate to perform their obligations under, and comply with the terms of, the Asset Purchase Agreement and consummate the Sale and

16

the Transactions pursuant to, and in accordance with, the terms and conditions of the Asset Purchase Agreement and this Sale Order, including, without limitation (i) executing, acknowledging, and delivering such deeds, assignments, conveyances and other assurances, documents, and instruments of transfer and taking any action for purposes of assigning, transferring, granting, conveying, and conferring to the Buyer, or reducing to possession, any or all of the Acquired Assets and (ii) entering into the Ancillary Agreements, any transition services or operations support agreements with the Buyer and any other agreements related to implementing the Transactions and (b) take any and all further actions as may be necessary or appropriate to the performance of their obligations as contemplated by the Asset Purchase Agreement or this Sale Order. The Debtors are further authorized to pay, without further order of this Court, whether before, at, or after the Closing, any reasonable expenses or costs that are required to be paid to consummate the Transactions or perform their obligations under the Asset Purchase Agreement.

6. Following the Closing, the Debtors or the Buyer and/or their respective designees are authorized to execute and file a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all obligations, liabilities, and Interests in the Acquired Assets of any kind or nature whatsoever (other than the Permitted Liens and Assumed Liabilities). Upon the Closing and the Debtors' receipt of the Purchase Price, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Debtors' interests in the Acquired Assets and a bill of sale transferring good and marketable title in the Acquired Assets to the Buyer free and clear of all Interests, except for the Permitted Liens and Assumed Liabilities. Each and every federal, state, and local governmental agency, quasi-agency, or department is

hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions.

7.       Except for the Permitted Liens, Assumed Liabilities or as expressly provided in the Asset Purchase Agreement, pursuant to Bankruptcy Code Sections 105(a) and 363(f), upon the Closing and the Debtors' receipt of the Purchase Price, the Acquired Assets shall be transferred to the Buyer as required under the Asset Purchase Agreement, and such transfer shall be free and clear of all Interests of any person, including, without limitation, all such Interests specifically enumerated in this Sale Order, whether arising by agreement, by statute, or otherwise and whether occurring or arising before, on, or after the Petition Date, whether known or unknown, occurring, or arising prior to such transfer, with all such Interests to attach to the proceeds of the Sale ultimately attributable to the property against or in which the holder of an Interest claims or may claim an Interest, in the order of their priority, with the same validity, force, and effect which they now have, subject to any claims and defenses the Debtors may possess with respect thereto. Without limiting the generality of the foregoing, the Acquired Assets shall be transferred to the Buyer free and clear of the following: (i) satisfy and release of record, Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated June 15, 2018, and filed for record June 19, 2018, in/as Instrument No. 2018-05836 of the Records of Lonoke County, AR, executed by Remington Arms Company, LLC, in favor of Ankura Trust Company, LLC, securing the original principal amount of $55,000000; (ii) satisfy and release of record, Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated June 15, 2018, and filed for record June 19, 2020, in/as Instrument No. 2018-05387, of the records of Lonoke County, AR, executed by Remington Arms Company, LLC, in favor of Ankura Trust Company, LLC, securing the original principal amount of $100,000,000; (iii) satisfy and release of record, Mortgage,

US_ACTIVE-154466812.6

Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated April 18, 2019, and filed for record April 22, 2019, in/as Instrument No. 2019-03652, of the Records of Lonoke County, AR, executed by Remington Arms Company, LLC, in favor of Cantor Fitzgerald Securities, securing the original principal amount of $90,500,000; and (iv) satisfy and release of record, Lien Subordination Agreement by and between Remington Arms Company, LLC, Cantor Fitzgerald Securities, and Ankura Trust Company, LLC, dated February 21, 2020, and filed for record February 28, 2020, in/as Instrument No. 2020-02102, records of Lonoke County, Arkansas.

8.     The transfer of the Acquired Assets to the Buyer pursuant to the Asset Purchase Agreement constitutes a legal, valid, and effective transfer of the Acquired Assets and shall vest the Buyer with all right, title, and interest of the Debtors in and to the Acquired Assets free and clear of all Interests of any kind or nature whatsoever, except for the Permitted Liens and Assumed Liabilities, with all such Interests to attach to the proceeds of the Sale ultimately attributable to the property against or in which the holder of an Interest claims or may claim an Interest, in the order of their priority, with the same validity, force, and effect which they now have, subject to any claims and defenses the Debtors may possess with respect thereto.

9.     All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Acquired Assets to the Buyer in accordance with the Asset Purchase Agreement and this Sale Order; *provided* that the foregoing restriction shall not prevent any party from appealing this Sale Order in accordance with applicable law or opposing any appeal of this Sale Order, or from enforcing its rights under Bankruptcy Code Section 365 or relieve the Buyer of any Assumed Liability.

10.     Except as expressly permitted by the Asset Purchase Agreement or this Sale Order, all persons and entities, including, but not limited to, all debt security holders, equity security

US_ACTIVE-154466812.6

holders, governmental, tax, and regulatory authorities, lenders, trade creditors, dealers, employees, litigation claimants, contract counterparties and other creditors, holding liens, claims encumbrances, and other interests of any kind or nature whatsoever, including, without limitation, rights or claims based on any taxes or successor or transferee liability, against or in a Debtor or the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets or the operation of the Acquired Assets before the Closing, or the transactions contemplated by the Asset Purchase Agreement, including, without limitation, the Sale and the assumption and assignment of the Assigned Contracts, are forever barred, estopped, and permanently enjoined from asserting against the Buyer, its respective successors and assigns, its respective property and the Acquired Assets, such persons' or entities' liens, claims, encumbrances, or other Interests, including, without limitation, rights or claims based on any taxes or successor or transferee liability, *provided* that nothing herein shall impair or otherwise affect any right under Bankruptcy Code Section 365 of a lease or contract counterparty to an Assigned Contract under its respective Assigned Contract(s), or relieve the Buyer of any Assumed Liability.

11.    Upon the Closing, each of the Debtors' creditors and any other holder of an Interest is authorized and directed, without cost to the Debtors, to execute such documents and take all other actions as may be necessary to release its Interest in the Acquired Assets, if any, as such Interest may have been recorded or may otherwise exist.  If any person or entity that has filed financing statements or other documents or agreements evidencing an Interest in the Debtors or the Acquired Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of

satisfaction, releases of all Interests, which the person or entity has with respect to the Debtors or the Acquired Assets or otherwise, then the Buyer and its designees are authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Debtors or the Acquired Assets and to file, register, or otherwise record a certified copy of this Sale Order, which shall constitute conclusive evidence of the release of all Interests of any kind or nature whatsoever in the Debtors or the Acquired Assets (other than the Permitted Liens and Assumed Liabilities). Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement, including, without limitation, recordation of this Sale Order.

12. Upon the Closing and the Debtors' receipt of the Purchase Price, all entities that are currently, or on the Closing may be, in possession of some or all of the Acquired Assets are hereby directed to surrender possession of the Acquired Assets to the Buyer, unless the Buyer otherwise agrees.

13. This Sale Order is self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Sale Order.

14. To the maximum extent permitted by applicable non-bankruptcy law, (a) the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval (collectively, the "**Permits**") of the Debtors with respect to and included in the Acquired Assets, and (b) all Permits that are included in the Acquired Assets are deemed to have been, and hereby are directed to be, transferred to the Buyer as of the Closing Date. Nothing in this Sale Order, and nothing in the foregoing sentence, authorizes the transfer or

US_ACTIVE-154466812.6

assignment of any governmental Permit or the discontinuation of any obligation thereunder without compliance with all applicable legal requirements and approvals under police or regulatory law.  To the extent any Permit cannot be transferred to the Buyer in accordance with this paragraph, the Buyer, with such assistance from the Debtors as is required under the Asset Purchase Agreement, will work promptly and diligently to apply for and secure all necessary government approvals for the transfer or new issuance of the Permit(s) to the Buyer, and the Debtors shall maintain the Permits to the extent required under and subject to the terms of the Asset Purchase Agreement.  For the avoidance of doubt, while nothing in this Sale Order or the Asset Purchase Agreement releases, nullifies, limits, waives, precludes, or enjoins the enforcement of any police or regulatory authority of a governmental unit, Buyer shall be entitled to operate under each state Permit currently held by or on behalf of the Debtors in relation to the Acquired Assets until such time as each such Permit is transferred to the Buyer and/or an equivalent Permit is issued to the Buyer.

15.    To the extent provided by Bankruptcy Code Section 525, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Acquired Assets sold, transferred, or conveyed to the Buyer on account of the filing or pendency of these Chapter 11 Cases or the consummation of the transactions contemplated by the Asset Purchase Agreement and this Sale Order.

**Implementation of the Sale**

16.    On Closing, the Buyer shall (a) pay the Purchase Price to the Debtors; (b) pay the Cure Costs as more fully described in paragraph 30 of this Sale Order and the Asset Purchase Agreement; (c) assume the Assumed Liabilities; and (d) perform any other obligations required to be performed by Buyer on the Closing.  Each and every federal, state, and local governmental

agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement, including, without limitation, recordation of this Sale Order.

17. Within three (3) business days of the Debtors' receipt of the Net Sale Proceeds (as defined in the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection, (III) Modifying Automatic Stay, and (IV) Granting Related Relief* [Docket No. 410] (as it may be modified from time to time, the "**Cash Collateral Order**")) from the sale of the Acquired Assets, the Debtors shall pay the Net Sale Proceeds of the Acquired Assets to the Priority Term Loan Agent, for the account of the Priority Term Loan Secured Creditors, to the extent required under and in accordance with the terms of the Cash Collateral Order or such other order of the Court. Upon the Priority Term Loan Agent's timely receipt of such payment, (a) the Priority Term Loan Obligations shall be paid and satisfied to the extent of the payment and (b) all liens and security interests against the Acquired Assets securing the Priority Term Loan Obligations shall be automatically released and discharged without further action by any person. Upon the payment in full in cash of the Priority Term Loan Obligations and the occurrence of the Challenge Period Termination Date (as defined in the Cash Collateral Order), (w) the Debtors shall have no further indebtedness, liabilities or obligations owing under the Priority Term Loan Credit Agreement or the other "Financing Agreements" (as defined in the Priority Term Loan Agreement, the "**Priority Term Loan Documents**"), (x) other than any provisions thereof that survive pursuant to the terms thereof, the Priority Term Loan Credit Agreement and all other Priority Term Loan Documents (including, without limitation, any mortgages, guaranties and security agreements) and all of the Debtors' obligations thereunder shall terminate and be of no further force and effect, (y) all liens and security interests against the

US_ACTIVE-154466812.6

property and assets of the Debtors securing the Priority Term Loan Obligations shall be automatically fully released and discharged without further action by any person, and (z) each deposit account control agreement in respect of or other sweeps or blocks of any Debtor's deposit accounts or lockboxes in favor of any of the Priority Term Loan Secured Parties shall terminate.

18.     The Debtors shall pay the Net Sale Proceeds from the sale of the Acquired Assets to the FILO Agent, for the account of the FILO Term Loan Secured Creditors, to the extent required under and in accordance with the terms of the Cash Collateral Order or such other order of the Court.  For the avoidance of doubt, any further payment to the FILO Agent shall be subject to orders previously entered by this Court and any further orders of this Court or provided under the Debtors' Chapter 11 plan.

19.     All parties in interest in these Chapter 11 Cases expressly reserve their rights with respect to any allocation of the Purchase Price or value among the purchased Acquired Assets, and any allocation of the Purchase Price or value among the purchased Acquired Assets as determined by the Buyer shall not be determinative or binding on any party in interest in these Chapter 11 Cases except as ordered by the Court after notice and a hearing.

**No Successor Liability**

20.     Other than as expressly set forth in the Asset Purchase Agreement, the Buyer shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any Interests, including under any theory of successor or transferee liability, *de facto* merger or continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated, including without limitation, with respect to any of the following: (i) any foreign, federal, state, or local revenue law, pension law, ERISA, COBRA, tax law, labor law, employment law, the WARN Act, antitrust law,

US_ACTIVE-154466812.6

CERCLA, and any other environmental, health and safety laws, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules or regulations); (ii) under any products liability law, rule, regulation, or doctrine with respect to the Debtors' liability under such law, rule, regulation, or doctrine, or under any product warranty liability law or doctrine; (iii) under any unfair trade practices law, rule, regulation or doctrine with respect to the Debtors' liability under such law, rule, regulation or doctrine, or under any unfair trade practices liability law or doctrine; (iv) any employment or labor agreements, consulting agreements, severance arrangements, change-in-control agreements, or other similar agreement to which the Debtors are a party; (v) any welfare, compensation, or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of the Debtors; (vi) the cessation of the Debtors' operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation, or other employee benefit plans, agreements, practices and programs, obligations that might otherwise arise from or pursuant to (a) ERISA, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967, (g) the Americans with Disabilities Act of 1990, or (h) COBRA; (vii) any liabilities, debts, or obligations of or required to be paid by the Debtors for any taxes of any kind for any period; (viii) any environmental liabilities, debts, claims fines, penalties, or obligations arising from conditions, facts or circumstances first existing or occurring on or prior to the Closing (including, without limitation, the presence of or exposure to chemical, hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis and at any time, including, without limitation, any liabilities, debts, claims, fines, penalties or obligations arising under CERCLA, or any other environmental, health, and safety laws; (viii) any

25

US_ACTIVE-154466812.6

liabilities, debts, claims, fines, penalties, or obligations of or required to be paid by the Debtors for any taxes of any kind for any period; (ix) any liabilities, debts, claims, fines, penalties, or obligations of or required to be paid by the Debtors under any labor, employment, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules, or regulations); (x) any bulk sale law; and (xi) any litigation. The Buyer shall have no liability or obligation under the WARN Act simply by virtue of its purchase of assets from the Debtors.

21.    The Buyer has given substantial consideration under the Asset Purchase Agreement, which consideration shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Buyer and which shall be deemed to have been given in favor of the Buyer by all holders of Interests and liabilities (except for Permitted Liens and the Assumed Liabilities) in or against the Debtors, or the Acquired Assets. Without limiting the Buyer's obligation to pay and satisfy the Assumed Liabilities, upon consummation of the Sale, the Buyer shall not be deemed to (a) be the successor to the Debtors or their estates, (b) have, *de facto* or otherwise, merged with or into the Debtors, or (c) be a mere continuation, alter ego or substantial continuation of the Debtors under any theory of law or equity as a result of any action taken in connection with the Asset Purchase Agreement or any of the transactions or documents ancillary thereto or contemplated thereby or in connection with the acquisition of the Acquired Assets.

22.    Effective upon the Closing, except with respect to Assumed Liabilities and Permitted Liens, all persons and entities are forever prohibited and enjoined from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against the Buyer or its assets (including the Acquired Assets) with respect to any (a) Claim or Lien or (b) successor or transferee liability, including,

US_ACTIVE-154466812.6

without limitation, the following actions with respect to clauses (a) and (b): (i) commencing or continuing any action or other proceeding pending or threatened; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or Claim; (iv) asserting any setoff, right of subrogation, or recoupment of any kind; (v) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof; or (vi) revoking, terminating, or failing or refusing to renew any License, permit, or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with such assets.

**Good Faith**

23.     The transactions contemplated by the Asset Purchase Agreement are undertaken by the Buyer without collusion and in good faith, as that term is used in Bankruptcy Code Section 363(m), and, accordingly, the reversal or modification on appeal of the authorization provided in this Sale Order to consummate the Sale and the Transactions shall not affect the validity of the transactions (including the assumption and assignment of any of the Assigned Contracts). The Buyer is a purchaser in good faith of the Acquired Assets and is entitled to all the protections afforded by Bankruptcy Code Section 363(m).

24.     As a good faith purchaser of the Acquired Assets, the Buyer has not entered into an agreement with any other potential bidders at the Auction (other than its agreement with the Firearms Buyer as was fully disclosed to all participants at the Auction), and has not colluded with any of the other bidders, potential bidders or any other parties interested in the Acquired Assets, and, therefore, neither the Debtors nor any successor in interest to the Debtors' estates shall be

US_ACTIVE-154466812.6

entitled to bring an action against the Buyer, and the Sale may not be avoided pursuant to Section 363(n) of the Bankruptcy Code.

25.     The consideration provided by the Buyer for the Acquired Assets under the Asset Purchase Agreement constitutes reasonably equivalent value, fair value, reasonable market value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.  The Sale may not be avoided under Bankruptcy Code Section 363(n).  The Asset Purchase Agreement was not entered into, and the Sale is not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtors under the Bankruptcy Code or for any other purpose that would give rise to statutory or common law fraudulent conveyance or fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable jurisdiction with laws substantially similar to the foregoing.  Neither the Debtors nor the Buyer have entered into the Asset Purchase Agreement or any agreement contemplated thereby or are consummating the Sale with any fraudulent or otherwise improper purpose, including, without limitation, to evade any pension liabilities.  No other person or entity or group of persons or entities has offered to purchase the Acquired Assets for an amount that would provide greater value to the Debtors and their estates than the value provided by the Buyer.  The Court's approval of the Motion and the Asset Purchase Agreement are in the best interests of the Debtors, the Debtors' estates, their creditors, and all other parties in interest.

26.     The Buyer is not an "insider" as that term is defined in Section 101(31) of the Bankruptcy Code.

**Assumption and Assignment of Assigned Contracts; Assumed Liabilities**

US_ACTIVE-154466812.6

27.     Pursuant to Bankruptcy Code Sections 105(a), 363, and 365, the Bidding Procedures Order, and subject to and conditioned upon the Closing of the Sale, the Debtors' sale, assumption and assignment to the Buyer of the Assigned Contracts is approved, and the requirements of Bankruptcy Code Section 365(b)(1) with respect thereto are deemed satisfied.

28.     The Debtors are authorized in accordance with Bankruptcy Code Sections 105(a) and 365 to (i) assume and assign to the Buyer, effective as of the Closing and at such other times as may be specified in accordance with the terms and conditions of the Asset Purchase Agreement, as provided by, and in accordance with, the Bidding Procedures Order and the Asset Purchase Agreement, the Assigned Contracts free and clear of all Interests of any kind or nature whatsoever, other than the Permitted Liens and Assumed Liabilities, and (ii) execute and deliver to the Buyer such documents or other instruments as the Buyer reasonably deems necessary to assign and transfer the Assigned Contracts to the Buyer.

29.     The Assigned Contracts shall be transferred and assigned to, pursuant to the Bidding Procedures Order and the Asset Purchase Agreement, and thereafter remain in full force and effect for the benefit of, the Buyer, notwithstanding any provision in any such Assigned Contract (including, but not limited to, those of the type described in Bankruptcy Code Sections 365(b)(2), (e)(1), and (f)) that prohibits, restricts, or conditions such assignment or transfer. The Debtors shall be relieved from any further liability with respect to the Assigned Contracts after such assumption and assignment to the Buyer. The Debtors may assign each Assigned Contract in accordance with Bankruptcy Code Sections 363 and 365, and any provisions in any Assigned Contracts that prohibit or condition the assignment of such Assigned Contracts or terminate, recapture, impose any penalty, condition, renewal, or extension, or modify any term or condition upon the assignment of such Assigned Contracts, constitute unenforceable anti-assignment

29

provisions which are void and of no force and effect. All other requirements and conditions under Bankruptcy Code Sections 363 and 365 for the assumption by the Debtors and assignment to the Buyer of each Assigned Contract have been satisfied.

30. All defaults and all other obligations or liabilities under any Assigned Contract occurring, arising, or accruing prior to the date of the assignment or transfer to the Buyer shall be deemed cured or satisfied upon payment by the Buyer and/or the Debtors (in each case in accordance with Section 1.5 of the Asset Purchase Agreement) of the proposed Cure Cost, as set forth in the Notice of Assumption and Assignment, any Supplemental Notice of Assumption and Assignment, or any other cure amount reached by agreement after an Assigned Contract Objection or otherwise, and, without limiting the foregoing, no effect shall be given to any default of the type set forth in Bankruptcy Code Section 365(b)(2), or the type of default concerning an unexpired lease of real property described in Bankruptcy Code Section 365(b)(1) whether or not such Assigned Contract is an executory contract within the meaning of Bankruptcy Code Section 365.

31. Each non-Debtor counterparty to the Assigned Contracts shall be forever barred, estopped, and permanently enjoined from (a) asserting against the Debtors, the Buyer, or their respective property (including the Acquired Assets) any fee, acceleration, default, breach, Claim (including any counterclaim, defense, or setoff capable of being asserted against the Debtors), pecuniary loss, or condition to assignment existing, arising, or accruing as of the Closing Date, or arising by reason of the Closing, including any breach related to or arising out of any change-in-control provision in such Assigned Contracts, or any purported written or oral modification to the Assigned Contracts, and (b) asserting against the Buyer (or its property, including the Acquired Assets) any Claim or Lien, counterclaim, breach, condition or setoff asserted or capable of being

US_ACTIVE-154466812.6

asserted against the Debtors existing as of the Closing Date or arising by reason of the Closing except for the Assumed Liabilities and Permitted Liens.

32.     The Cure Costs amounts listed on the Notice of Assumption and Assignment, any Supplemental Notice of Assumption and Assignment, or any other cure amount reached by agreement after an Assigned Contract Objection or otherwise, reflect the sole amounts necessary under Bankruptcy Code Section 365(b) to cure all monetary defaults under the Assigned Contracts, and no other amounts are or shall be due to the non-debtor parties in connection with the assumption by the Debtors and assignment to the Buyer of the Assigned Contracts. Notwithstanding anything to the contrary herein, if the Cure Costs for an Assigned Contract is determined to be greater than the proposed Cure Costs asserted in the Notice of Assumption and Assignment or Supplemental Notice of Assumption and Assignment, the Buyer may decide, in its discretion, not to assume that Assigned Contract.  Notwithstanding anything to the contrary herein, in each case in accordance with Bidding Procedures Order and the terms and conditions of the Asset Purchase Agreement, the Buyer may decide (i) not to assume one or more unexpired leases and executory contracts designated on Schedule 1.1(h) of the Asset Purchase Agreement (or Schedule 1.1(g) of the Backup Bid Agreement), and (ii) to supplement Schedule 1.1(h) of the Asset Purchase Agreement (or Schedule 1.1(g) of the Backup Bid Agreement) by including any previously omitted unexpired lease or executory contract.

33.     The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Buyer's rights to enforce every term and condition of the Assigned Contracts.

US_ACTIVE-154466812.6

34. Notwithstanding anything in the Asset Purchase Agreement or this Sale Order to the contrary and for the avoidance of doubt, the Acquired Assets shall not include any of the Excluded Assets as set forth in Section 1.2 of the Asset Purchase Agreement.

35. The Buyer shall be responsible for the satisfaction of the Assumed Liabilities under the Asset Purchase Agreement, including without limitation the Buyer Cure Amount (or in the case of the Backup Bid Agreement, the Cure Amount) arising under the Assigned Contracts. Except as provided in the Asset Purchase Agreement or this Sale Order, after the Closing, the Debtors and their estates shall have no further liability or obligations with respect to any Assumed Liability, including those arising under the Assigned Contracts, and all holders of such claims are forever barred and estopped from asserting any claims under any Assumed Liability (including those arising under the Assigned Contracts) against the Debtors, their successors or assigns, and their estates.

**Backup Bidder**

36. SIG Sauer, Inc. (the "**Backup Bidder**") is hereby approved as the "Backup Bidder" under the Bidding Procedures Order, and pursuant to Bankruptcy Code Sections 105, 363, and 365, the Asset Purchase Agreement attached hereto as Exhibit B (the "**Backup Bid Agreement**") submitted by the Backup Bidder, the sale of the Acquired Assets (as defined in the Backup Bid Agreement), and consummation of the Sale to the Backup Bidder are hereby approved as the Backup Bid under the Bidding Procedures Order. The Backup Bid on the terms set forth in the Backup Bid Agreement is hereby approved and authorized as a Backup Bid and shall remain open as a Backup Bid pursuant to the terms of the Bidding Procedures Order and the bid terms submitted at the Auction. In the event that the Successful Bidder cannot or refuses to consummate the Sale because of a breach or failure on the part of the Successful Bidder, the Backup Bidder will be

US_ACTIVE-154466812.6

deemed the new Successful Bidder and the Debtors shall be authorized, but not directed, to close, and take all actions necessary to close, with the Backup Bidder on the Backup Bid Agreement without further order of the Court, and in such case, all findings and other provisions of this Sale Order shall apply to the Backup Bidder and the Backup Bid Agreement to the same extent they do with respect to the Buyer and the Asset Purchase Agreement.

**Other Provisions**

37.     Nothing in this Sale Order or in the Asset Purchase Agreement entered into pursuant to this Sale Order releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory authority of a governmental unit.

38.     This Sale Order and the Asset Purchase Agreement shall be binding in all respects upon all known and unknown creditors of, and holders of equity security interests in, any Debtor, including any holders of Interests, all counterparties to the Assigned Contracts, all counterparties to contracts that are not assumed or assigned, all successors and assigns of the Buyer, each Debtor and their affiliates and subsidiaries, the Acquired Assets, and any trustees appointed in the Chapter 11 Cases or upon a conversion to cases under Chapter 7 of the Bankruptcy Code, and this Sale Order shall not be subject to amendment or modification and the Asset Purchase Agreement shall not be subject to rejection.  Nothing contained in any Chapter 11 plan confirmed in any Debtor's bankruptcy case, any order confirming any such Chapter 11 plan, or any other order in the Chapter 11 Cases shall alter, conflict with, or derogate from, the provisions of the Asset Purchase Agreement or this Sale Order.

39.     To the extent applicable, the automatic stay pursuant to Section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtors to the extent necessary, without further order of the Court (a) to allow the Buyer to give the Debtors any notice provided for in the

33

US_ACTIVE-154466812.6

Asset Purchase Agreement, and (b) to allow the Buyer to take any and all actions permitted by the Asset Purchase Agreement.

40.     No bulk sales law or similar law shall apply in any way to the transactions contemplated by the Sale, the Asset Purchase Agreement, the Motion, and this Sale Order.

41.     This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Asset Purchase Agreement, all amendments thereto, and any waivers and consents thereunder, including, but not limited to, retaining jurisdiction to (i) enforce the terms of the Asset Purchase Agreement; (ii) compel delivery of the Acquired Assets to the Buyer; (iii) interpret, implement, and enforce the provisions of this Sale Order; (iii) protect the Buyer, any of the Buyer's affiliates, or any agent of the foregoing, against any Interests against the Debtors or the Acquired Assets of any kind or nature whatsoever, except for the Permitted Liens and Assumed Liabilities, and (iv) enter any order under Bankruptcy Code Sections 363 and 365.

42.     No brokers were involved in consummation of the Sale, and no brokers' commissions are due to any person in connection with the Sale; *provided, however*, that this provision does not impact any transaction or other fees due to investment bankers or financial advisors employed (a) by the Debtors, including, but not limited to Ducera Partners LLC, or certain of their creditors for which the Debtors may be obligated to pay in accordance with an engagement letter with such professional(s), or (b) by the Buyers.

43.     To the extent there is any inconsistency between the terms of this Sale Order and the terms of the Asset Purchase Agreement (including all ancillary documents executed in connection therewith), the terms of this Sale Order shall govern.

US_ACTIVE-154466812.6

44.     The failure to specifically include any particular provision of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement be authorized and approved in its entirety.

45.     The Asset Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, *provided* that the Debtors shall provide the Bid Consultation Parties with three (3) business days' notice thereof and *provided* further that any such modification, amendment, or supplement does not, based on the Debtors' judgment, have a material adverse effect on the Debtors' estates.

46.     Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Sale Order shall not be stayed for fourteen (14) days after its entry and shall be effective immediately upon entry, and the Debtors and the Buyer are authorized to close the transaction immediately upon entry of this Sale Order. Time is of the essence in closing the transactions referenced herein, and the Debtors and the Buyer intend to close the transactions as soon as practicable. This Sale Order is a final, appealable order and the period in which an appeal must be filed shall commence upon the entry of this Sale Order.

47.     The provisions of the Asset Purchase Agreement and this Sale Order may be specifically enforced in accordance with the Asset Purchase Agreement notwithstanding the appointment of any Chapter 7 or Chapter 11 trustee after the Closing.

48.     Headings utilized in this Sale Order are for convenience of reference only, and do not constitute a part of this Sale Order for any other purpose.

US_ACTIVE-154466812.6

49.    All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

50.    The provisions of this Sale Order are non-severable and mutually dependent.

51.    All issues raised by Oracle America, Inc. ("**Oracle**") in *Oracle's Limited Objection and Reservation of Rights Regarding (a) Debtors' Motion for (a) an Order Establishing Bidding Procedures and Granting Related Relief and (ii) an Order or Orders Approving the Sale of the Debtors' Assets; and (b) Notice of Executory Contracts and Unexpired Leases that May Be Assumed and Assigned in Connection with the Sale of the Debtors' Assets and the Proposed Cure Cost with Respect Thereto* (the "**Oracle Objection**") [Docket No. 529] are expressly reserved.  The Oracle Objection may be set for hearing on an expedited basis upon the request of Oracle and/or the Debtors.

52.    Nothing in the Asset Purchase Agreement or in this Order shall have the effect of transferring, impairing, reducing or otherwise limiting any of the Debtors' rights in any insurance policies covering Excluded Liabilities or the proceeds of such polices.  For the avoidance of doubt, the Debtors reserve control over the privilege concerning any retained documents and nothing in this Order relieves the Debtors of any document retention obligations.

53.    Notwithstanding anything to the contrary in this Order or the Asset Purchase Agreement, the Debtors do not purport to assume or assign to Buyer the license agreement dated as of January 23, 2008 between Magpul Industries Corp ("**Magpul**") and the Debtors, and nothing in this order limits or otherwise modifies, to the extent such license exists, any express or implied license granted by the Debtors to Magpul in connection with Magpul's production of accessories for Debtors' firearm products or any rights or defenses of the Debtors in connection therewith,

36

US_ACTIVE-154466812.6

including any right of revocation and any right to assign the Debtors' rights in connection therewith

to the Buyer.


Dated: _____, 2020

_____
UNITED STATES BANKRUPTCY JUDGE

US_ACTIVE-154466812.6

Case 20-81688-CRJ11    Doc 875    Filed 09/29/20    Entered 09/29/20 08:11:36    Desc
Main Document      Page 81 of 326

**Exhibit A**

**Asset Purchase Agreement**

## Exhibit B

**Backup Bid Agreement**

US_ACTIVE-154466812.6

**Exhibit B**

**Redline of Roundhill Group, LLC Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| REMINGTON OUTDOOR COMPANY, INC., *et al.*, [1] | Case No. 20-81688-CRJ11 |
| Debtors. | Jointly Administered |

## ORDER APPROVING THE SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL CLAIMS, LIENS, AND INTERESTS

This matter having come before the Court upon the motion (the "**Motion**")[2] by Remington Outdoor Company, Inc., ("**Remington**" or the "**Company**"), and its affiliated debtors and debtors in possession (collectively the "**Debtors**") in the above-captioned Chapter 11 cases seeking entry of this order (this "**Sale Order**") (a) authorizing the sale of the Acquired Assets (as defined in the Asset Purchase Agreement (as defined below)) free and clear of all Interests (as defined below), pursuant to that certain Asset Purchase Agreement, dated as of September 26, 2020, attached hereto as <u>Exhibit A</u> (the "**Asset Purchase Agreement**"), by and among the Debtors and Roundhill Group, LLC (the "**Buyer**"), and all other transaction documents related thereto; (b) authorizing the assumption and assignment of certain executory contracts and unexpired leases; and (c) granting the related relief contemplated therein; and the Court having found that (i) the Court has

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405). The Debtors' corporate headquarters is located at 100 Electronics Blvd SW, Huntsville, Alabama 35824.

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Motion or the Asset Purchase Agreement, as applicable.

jurisdiction over this matter; (ii) venue is proper in this District; (iii) this is a core proceeding; (iv) the notice of the Motion and the Sale Hearing (as defined below) was sufficient under the circumstances; and (v) there is good cause to waive the stay of Bankruptcy Rule 6004(h); and based on the statements of counsel and the evidence presented in support of the relief requested by the Debtors in the Motion at a hearing before this Court on September 29 [and 30], 2020 (the "**Sale Hearing**"); and it appearing that no other notice need be given; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.    **Jurisdiction, Core Proceeding, Statutory Predicates, and Venue**. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *General Order of Reference* of the United States District Court for the Northern District of Alabama dated July 16, 1984 as amended July 17, 1984. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The predicates for the relief granted herein are Bankruptcy Code Sections 105, 363, and 365 and Bankruptcy Rules 2002, 6004, and 6006. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    **Just Cause**. The legal and factual bases set forth in the Motion establish just cause for the relief granted herein. Entry of this Sale Order is in the best interests of the Debtors and their respective estates, creditors, and all other parties in interest.

C.    **Notice**. The notice of the Motion, the Sale Hearing, the Asset Purchase Agreement, the transactions contemplated therein or in connection therewith and corresponding transactions documents (the "**Transactions**"), and the proposed entry of this Sale Order was proper, timely, adequate, sufficient and appropriate under the circumstances of the Chapter 11 Cases, and such notice complied with all applicable requirements of the Bidding Procedures, Bankruptcy Code, the

Bankruptcy Rules, and the Local Rules. A reasonable opportunity to object or be heard regarding the relief granted by this Sale Order has been afforded to all interested persons and entities pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Accordingly, no other or further notice of the Motion, the Sale Hearing, or this Sale Order is necessary or required.

D. The Publication Notice was published in the *New York Times* on August 24, 2020. Such Publication Notice was compliant with the Bidding Procedures Order, and was sufficient and proper notice to any other interested parties, including those whose identities are unknown to the Debtors.

E. **Extensive Efforts by Debtors**. Since before the commencement of the Chapter 11 Cases, the Debtors worked with their counsel and financial advisors to implement a viable transaction that would allow them to maximize the value of the Acquired Assets. The Sale Transaction that is the subject of this Sale Order is the result of the Debtors' extensive efforts seeking to maximize recoveries to the Debtors' estates for the benefit of the Debtors' creditors.

F. **Business Justification**. The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business justification for the Court to grant the relief requested in the Motion, including, without limitation, to (i) authorize the sale of the Acquired Assets free and clear of Interests other than Permitted Liens (as defined in the Asset Purchase Agreement) and Assumed Liabilities (as defined in the Asset Purchase Agreement); (ii) authorize the assumption and assignment of certain executory contracts and unexpired leases; and (iii) grant related relief as set forth herein. Such compelling and sound business justification, which was set forth in the Motion and on the record at the Sale Hearing, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

44232268 v1

G.    **Bidding Procedures Order**.  The Bidding Procedures Order [Docket No. 411] was entered by the Court on August 20, 2020, which, among other things (i) approved the Bidding Procedures; (ii) established the Assumption and Assignment Procedures; (iii) approved the form and manner of notice with respect to all procedures, protections, schedules, and agreements described in the Motion and attached thereto; and (iv) scheduled a date for the Auction and Sale Hearing.  The Bidding Procedures provided a full, substantively and procedurally fair, and reasonable opportunity for any entity to make an offer to purchase the Acquired Assets.

H.    **Auction; Successful Bidder**.  The sale process was properly conducted by the Debtors in accordance with the Bidding Procedures Order and in a manner designed to result in the highest or otherwise best offer for the Acquired Assets.  At the Auction, the Debtors agreed in a reasonable exercise of their business judgment, in consultation with their management, the Restructuring Committee, advisors and the Bid Consultation Parties, to enter into and consummate Asset Purchase Agreement with the Buyer.  At the conclusion of the Auction, the Buyer was determined to be the Successful Bidder for the Acquired Assets.

I.    **Asset Purchase Agreement**.  The consummation of the Transactions contemplated by the Asset Purchase Agreement, the Motion, and this Sale Order is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and all of the applicable requirements of such sections and rules have been complied with in respect of such transactions.

J.    **Sale Hearing**.  The Sale Hearing occurred on September 29 [and 30], 2020 in accordance with the Bidding Procedures Order.

K.    **Adequate Marketing; Highest or Otherwise Best Offer.**  As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing, including the

*Declaration of Ken D'Arcy in Support of Chapter 11 Petitions and First Day Pleadings of Remington Outdoor Company, Inc. and Its Affiliated Debtors and Debtors-Possession* [Docket No. 6 and the *Declaration of Bradley C. Meyer in Support of Debtors' Cash Collateral Motion and Bidding Procedures Motion* [Docket No. 355]; and (ii) the representations of counsel made on the record at the Bidding Procedures Hearing and the Sale Hearing, (a) the Debtors have adequately marketed the Acquired Assets and conducted a sale process in a non-collusive, fair and good faith manner in compliance with the Bidding Procedures Order; (b) the process set forth in the Bidding Procedures Order afforded a full, substantively and procedurally fair and reasonable opportunity for any interested party to make the highest or otherwise best offer to purchase the Acquired Assets and assume the Assumed Liabilities; (c) the consideration provided by the Buyer in the Asset Purchase Agreement constitutes the highest or otherwise best offer to purchase the Acquired Assets and assume the Assumed Liabilities; (d) the consideration provided by the Buyer in the Asset Purchase Agreement provides fair and reasonable consideration for the Acquired Assets and the assumption of the Assumed Liabilities and constitutes reasonably equivalent value, fair value and reasonable market value under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, the District of Columbia, or other applicable law; (e) the Sale will provide a greater recovery for the Debtors' creditors with respect to the Acquired Assets than would be provided by any other practically available alternative; (f) taking into consideration all relevant factors and circumstances, and after taking account of the Bid Protections, no other entity has offered to purchase the Acquired Assets for greater economic value to the Debtors or their estates; (g) unless the sale of the Acquired Assets is concluded expeditiously as provided for in the Sale Motion and the Asset Purchase Agreement, the Debtors' stakeholders recoveries will likely be diminished; and (h) the Debtors' determination that the consideration

provided by the Buyer under the Asset Purchase Agreement constitutes the highest or otherwise best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtors' business judgment.

L.     **No Successor Liability.**     Neither the Buyer nor any of its affiliates, officers, directors, shareholders, members, partners, principals or any of their respective representatives, successors, or assigns is an "insider or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors, or stockholders existed or exists between the Buyer and the Debtors. The transfer of the Acquired Assets to and the assumption of the Assumed Liabilities by the Buyer, except as otherwise expressly set forth in the Asset Purchase Agreement, does not, and will not, subject the Buyer to any liability whatsoever, with respect to the operation of the Debtors' businesses prior to the closing of the Sale or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity including, without limitation, any laws affecting antitrust, successor, transferee, or vicarious liability. Pursuant to the Asset Purchase Agreement, the Buyer is not purchasing all of the Debtors' assets in that the Buyer is not purchasing any of the Excluded Assets or assuming the Excluded Liabilities, and the Buyer is not holding itself out to the public as an *alter ego* or a continuation of the Debtors (including through any veil piercing theory). Except as expressly provided in the Asset Purchase Agreement, neither the Buyer nor any of its affiliates are assuming any obligation or liability of any Debtor and/or any Debtor's estate. The Sale does not amount to a consolidation, merger, or *de facto* merger of the Buyer and the Debtors. There is no substantial continuity between the Buyer and the Debtors, and there is no continuity of enterprise between the Debtors and the Buyer. The Buyer is not, and will not be following consummation of the Sale, a mere

6

continuation of the Debtors or the Debtors' estates, and the Buyer does not and will not constitute a successor to the Debtors or the Debtors' estates.  None of the Transactions, including, without limitation, the Sale or the assumption and assignment of the Assigned Contracts, is being undertaken for the purpose of escaping liability for any of the Debtors' debts or other liabilities or hindering, delaying, or defrauding creditors under the Bankruptcy Code or for any other purpose that would give rise to statutory or common law fraudulent conveyance or fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, the District of Columbia, or any other applicable jurisdiction with laws substantially similar to the foregoing.

M.      **Acquired Assets Property of the Estate.**  The Acquired Assets are property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541 of the Bankruptcy Code.

N.      **Sale in Best Interest/Fiduciary Duties**.   The Debtors have demonstrated a sufficient basis and compelling circumstances requiring them to enter into the Asset Purchase Agreement and sell the Acquired Assets and such actions are appropriate under the circumstances of these Chapter 11 Cases, are in the best interests of the Debtors, their estates and creditors, and other parties in interest, and represent a reasonable exercise of business judgment by the Debtors and the Restructuring Committee and their fulfillment of their fiduciary duties under applicable law.  Approval of the Asset Purchase Agreement, the Sale, and the Transactions at this time is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest. Unless the sale is concluded expeditiously, the recoveries of all of the Debtors estates and constituencies are likely to be adversely affected.

7

O. **Not a *Sub Rosa* Plan.**  The consummation of the Sale outside of a plan of reorganization pursuant to the Asset Purchase Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a plan of reorganization or liquidation for the Debtors.  The Asset Purchase Agreement, the Sale, this Sale Order and the transactions contemplated therein and herein and associated therewith and herewith do not constitute an impermissible *sub rosa* Chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford.  The Sale, this Sale Order and the Asset Purchase Agreement do not otherwise circumvent the Chapter 11 safeguards, including those set forth in sections 1125 and 1129 of the Bankruptcy Code.

P. **Arm's-Length Sale.**  The Asset Purchase Agreement, the Sale, and the Transactions were negotiated, proposed, and entered into by the Debtors and the Buyer without collusion, in good faith, and from arm's-length bargaining positions.  Neither the Debtors, their insiders and affiliates, nor the Buyer or any of its Affiliates have engaged in any conduct that would cause or permit the Asset Purchase Agreement, the Sale, or any part of the transactions thereby to be avoided under Bankruptcy Code Section 363(n).

Q. **Good Faith Buyer.**  The Buyer is a good faith purchaser under Bankruptcy Code Section 363(m) and, as such, is entitled to all of the protections afforded thereby.  Specifically: (i) the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Acquired Assets; (ii) the Buyer complied in all respects with the provisions of the Bidding Procedures Order; (iii) the Buyer agreed to subject its bid to the competitive bid procedures set forth in the Bidding Procedures Order; (iv) all payments to be made by the Buyer in connection with the Sale have been disclosed; (v) no common identity of directors, officers or controlling stockholders exists among the Buyer and the Debtors; (vi) the negotiations and

44232268.v1

execution of the Asset Purchase Agreement were at arm's-length and in good faith, and at all times each of the Buyer and the Debtors were represented by competent counsel of their choosing; (vii) the Buyer did not in any way induce or cause the Chapter 11 filing of the Debtors; and (viii) the Buyer has not acted in a collusive manner with any person. The Buyer will be acting in good faith within the meaning of Bankruptcy Code Section 363(m) in closing the transactions contemplated by the Asset Purchase Agreement.

R.   **Corporate Authority.**  Each Debtor (i) has full corporate power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby, and the Sale of the Acquired Assets has been duly and validly authorized by all necessary corporate actions of each of the Debtors; (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by the Asset Purchase Agreement; (iii) has taken all corporate action necessary to authorize and approve the Asset Purchase Agreement and the consummation by the Debtors of the transactions contemplated thereby; and (iv) needs no consents or approvals, other than those expressly provided for in the Asset Purchase Agreement, which may be waived in accordance with the terms therewith.

S.   **Free and Clear Findings Required by the Buyer.**  The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the Sale Transaction, thus adversely affecting the Debtors, their estates, and their creditors, if the Sale of the Acquired Assets to the Buyer and the assumption and assignment of Acquired Contracts, were not, pursuant to Bankruptcy Code Section 363(f), free and clear (except for Permitted Liens and Assumed Liabilities) of (i) all pre-petition and post-petition liens of any kind whatsoever (statutory, consensual or non-consensual or otherwise), claims, mortgages, deeds of trust, pledges, charges, security interests, rights of first refusal, preferences, priorities, judgments, hypothecations,

9

encumbrances, easements, servitudes, leases or subleases, rights-of-way, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of offset or recoupment, right of use or possession, licenses, indentures, instruments, conditional sale arrangements, (ii) all claims as defined in Bankruptcy Code Section 101(5), including all rights or causes of action (whether in law or in equity), counterclaims, cross-claims, proceedings, warranties, guarantees, indemnities, rights of recovery, setoff, recoupment, indemnity or contribution, obligations, demands, restrictions, indemnification claims, or liabilities relating to any act or omission of the Debtors or any other person prior to the Closing, consent rights, options, proxy, contract rights, covenants, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), whether accruing or arising any time prior to the Closing Date, and whether imposed by agreement, understanding, law, equity or otherwise, and (iii) all debts, liabilities (including without limitation product, environmental, tax, reclamation, pension, *alter ego*), obligations, contractual rights and claims and labor, employment and pension claims, decrees of any court or foreign or domestic governmental authority, in each case, whether known or unknown, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or un-matured, material or non-material, disputed or undisputed, whether accruing or arising any time prior to the Closing Date, and whether imposed by agreement, understanding, law, equity or otherwise (excluding Permitted Liens and Assumed Liabilities, (i), (ii), and (iii) collectively, the "**Interests**"). Except as expressly provided in the Asset Purchase Agreement, the Sale shall be free and clear of, and the Buyer shall not be responsible for, any Interests, including, without limitation, in respect of the following: (i) any

rights or Interests based on any successor, substantial continuation or transferee liability, (ii) any Interests that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or termination of the Debtors' or the Buyer's interest in the Acquired Assets, or any similar rights; (iii) any labor or employment agreements; (iv) mortgages, deeds of trust, and security interests; (v) intercompany loans and receivables between the Debtors and any non-Debtor subsidiary; (vi) any pension, multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of ERISA), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability; (vii) any other employee, worker's compensation, occupational disease, or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**"), (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Code and of any similar state law (collectively, "**COBRA**"), (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors, or (1) the WARN Act (29 U.S.C. §§2101 *et seq*.); (viii) any bulk sales or similar law; (ix) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (xii)

11

any unexpired and executory contract or unexpired lease to which a Debtor is a party that is not an Assigned Contract that will be assumed and assigned pursuant to this Sale Order and the Asset Purchase Agreement; (xiii) any other Excluded Liabilities as provided in the Asset Purchase Agreement. A sale of the Acquired Assets other than one free and clear of all Interests would yield substantially less value for the Debtors' estates, with less certainty, than the Sale as contemplated. Therefore, the Sale contemplated by the Asset Purchase Agreement and approved herein free and clear of all Interests, except for Permitted Liens and Assumed Liabilities, is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

T.      **Valid and Binding Transfer.** The transfer of the Acquired Assets to the Buyer will be a legal, valid, and effective transfer of the Acquired Assets and, except for the Permitted Liens and Assumed Liabilities, will vest the Buyer with all right, title, and interest of the Debtors to the Acquired Assets free and clear of all Interests and any liabilities of the Debtors.

U.      **Satisfaction of Section 363(f) Standards.** The transfer of the Acquired Assets to the Buyer under the Asset Purchase Agreement shall be a legal, valid, and effective transfer of all the legal, equitable, and beneficial right, title and interest in and to the Acquired Assets free and clear of all Interests, other than the Assumed Liabilities and Permitted Liens. The Debtors may sell the Acquired Assets free and clear of all Interests, except for the Permitted Liens and the Assumed Liabilities, because, in each case, one or more of the standards set forth in Bankruptcy Code Section 363(f)(1) through (5) has been satisfied, with all such Liens and Interests to attach to the proceeds of the Sale Transaction to be received by the Debtors with the same validity, force, priority and effect that they had as against the Acquired Assets, and any claims and defenses the Debtors and their estates may possess with respect thereto. Those holders of Interests, and non-debtor parties to the Assigned Contracts who did not object, or who withdrew their objections, to

12

the Motion are, without limitation, deemed to have consented pursuant to Bankruptcy Code Section 363(f)(2). In all cases, each such person with Interests in the Acquired Assets is enjoined from taking any action against the Buyer, the Buyer's affiliates, or any agent of the foregoing to recover any such Interest.

V.      **Necessity of Order.**  The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the Sale Transaction without all of the relief provided for in this Sale Order (including, but not limited to, that the transfer of the Acquired Assets to the Buyer be free and clear of all Interests (other than Permitted Liens and the Assumed Liabilities)). The consummation of the Sale Transaction pursuant to this Sale Order and the Asset Purchase Agreement is necessary for the Debtors to maximize the value of their estates for the benefit of all creditors and other parties in interest.

W.      **Time of the Essence**.  The sale of the Acquired Assets must be approved and consummated promptly in order to preserve the value of the Acquired Assets. There is no credible basis for concluding that a delay in the sale of the Acquired Assets would result in a higher or better offer for the Acquired Assets than the offer reflected in the Asset Purchase Agreement. Therefore, time is of the essence in consummating the Sale, and the Debtors and the Buyer intend to close the Sale as soon as reasonably practicable.

X.      **Assigned Contracts.**  The Debtors have demonstrated that it is their sound business judgment to sell, assume, and assign the "Assumed Contracts" and "Assumed Leases" (as such terms are defined in the Asset Purchase Agreement), including, without limitation, the unexpired leases and executory contracts designated on Schedule 1.1(j) of the Asset Purchase Agreement or the Huntsman Backup Bid Agreement (but not the Century Arms Backup Bid Agreement) (collectively, the "**Assigned Contracts**" and, individually, an "**Assigned Contract**") to the Buyer

13

in connection with the consummation of the Sale, and the assumption and assignment of the Assigned Contracts is in the best interests of the Debtors, their estates and creditors, and other parties in interest. The Assigned Contracts being assigned to the Buyer are an integral part of the Acquired Assets being purchased by the Buyer, and, accordingly, such assumption and assignment of the Assigned Contracts and the liabilities associated therewith are reasonable and enhance the value of the Debtors' estates. No section of any Assigned Contract that purports to prohibit, restrict, impose any penalty or fee on, or condition the use, consideration, or assignment of any such Assigned Contract in connection with the Transactions shall have any force or effect.

Y.    **Cure and Adequate Assurance.**  Through Buyer's commitment to pay all Cure Costs related to the Assigned Contracts, if any, and upon the payment of the Cure Costs by the Buyer pursuant to the terms of the Asset Purchase Agreement, the Buyer has cured or otherwise has demonstrated its ability to cure any default with respect to any act or omission that occurred prior to the Closing (as defined in the Asset Purchase Agreement) under any of the Assigned Contracts, within the meaning of Bankruptcy Code Section 365(b)(l)(A). The proposed Cure Costs or any other cure amount reached by agreement after any objection by a counterparty to an Assigned Contract (an "**Assigned Contract Objection**") or otherwise are deemed the amounts necessary to "cure" all "defaults," each within the meaning of Bankruptcy Code Section 365(b), under such Assigned Contracts.  The Buyer's promise to perform the obligations under the Assigned Contracts shall constitute adequate assurance of its future performance of and under the Assigned Contracts, within the meaning of Bankruptcy Code Sections 365(b)(l) and 365(f)(2).  All counterparties to the Assigned Contracts who did not file an Assigned Contract Objection or an objection to the assumption and assignment of the Assigned Contracts prior to the Sale Hearing, are deemed to consent to the assumption by the Debtors of their respective Assigned Contract and

14

the assignment thereof to the Buyer.  The filed objections of all counterparties to the Assigned Contracts that were heard at the Sale Hearing (to the extent not withdrawn or adjourned), were considered by the Court, and are overruled on the merits with prejudice.  The Court finds that, with respect to all such Assigned Contracts, the payment of the proposed Cure Costs by the Buyer in accordance with the terms of the Asset Purchase Agreement is appropriate and is deemed to fully satisfy the Debtors' obligations under Bankruptcy Code Section 365(b).  Accordingly, and without limitation of the Buyer's right under Section 1.5(d) of the Asset Purchase Agreement (or Section 1.5(e) in the case of the Huntsman Backup Bid Agreement (as defined below)), all of the requirements of Bankruptcy Code Section 365(b) have been satisfied for the assumption and the assignment by the Debtors to the Buyer of each of the Assigned Contracts.  To the extent any Assigned Contract is not an executory contract within the meaning of Bankruptcy Code Section 365, it shall be transferred to the Buyer in accordance with the terms of this Sale Order that are applicable to the Acquired Assets.

Z.      **Unenforceability of Anti-Assignment Provisions.**   Any provisions in any Assigned Contract that restrict, limit, prohibit or condition the assumption, assignment, and sale of the Assigned Contracts or that allow the counterparty so such Assigned Contract to terminate, recapture, impose any penalty or fee, accelerate, increase any rate, condition on renewal or extension, or modify any term or condition upon the assignment of such Assigned Contract, should be deemed and found to be unenforceable anti-assignment provisions that are void and of no force and effect within the meaning of Bankruptcy Code Section 365(f).

AA.     **Objections are Overruled**.  All objections to the relief requested in the Motion that have not been withdrawn, waived, adjourned or settled as announced to the Court at the Sale Hearing or by stipulations filed with the Court are overruled except as otherwise set forth herein.

BB. **Final Order**. This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order and expressly directs entry of judgment as set forth herein.

CC. **Best Interest**. Entry of this Sale Order is in the best interests of the Debtors, the Debtors' estates, their creditors, and other parties in interest.

DD. **Findings and Conclusions**. The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are adopted as such. To the extent any conclusions of law are findings of fact, they are adopted as such.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

**General Provisions**

1.     The Motion is granted and the relief requested therein with respect to the Sale is granted and approved in its entirety, as set forth herein.

2.     Any objections to the entry of this Sale Order or to the relief granted herein or the relief requested in the Motion, including any objections to the proposed Cure Costs or the assumption and assignment of any Assigned Contracts, that have not been adjourned, withdrawn, waived, or settled, or not otherwise addressed or resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits with prejudice.

**Approval of the Sale of the Acquired Assets**

3.     The Debtors are authorized to enter into the Asset Purchase Agreement (and all schedules and exhibits thereto and all ancillary documents) and all the terms and conditions thereof, and all of the Transactions contemplated therein are approved in all respects. The transfer

of the Acquired Assets by the Debtors to the Buyer shall be a legal, valid and effective transfer of the Acquired Assets.

4.      Pursuant to Bankruptcy Code Section 363(b), the sale of the Acquired Assets to the Buyer free and clear of all Interests (other than the Permitted Liens and the Assumed Liabilities), and the transactions contemplated thereby is approved in all respects.

**Sale and Transfer of the Acquired Assets**

5.      Pursuant to Bankruptcy Code Sections 105, 363, and 365, the Debtors are authorized to (a) take any and all actions necessary or appropriate to perform their obligations under, and comply with the terms of, the Asset Purchase Agreement and consummate the Sale and the Transactions pursuant to, and in accordance with, the terms and conditions of the Asset Purchase Agreement and this Sale Order, including, without limitation (i) executing, acknowledging, and delivering such deeds, assignments, conveyances and other assurances, documents, and instruments of transfer and taking any action for purposes of assigning, transferring, granting, conveying, and conferring to the Buyer, or reducing to possession, any or all of the Acquired Assets and (ii) entering into the Ancillary Agreements, any transition services or operations support agreements with the Buyer and any other agreements related to implementing the Transactions and (b) take any and all further actions as may be necessary or appropriate to the performance of their obligations as contemplated by the Asset Purchase Agreement or this Sale Order.  The Debtors are further authorized to pay, without further order of this Court, whether before, at, or after the Closing, any reasonable expenses or costs that are required to be paid to consummate the Transactions or perform their obligations under the Asset Purchase Agreement.

6.      Following the Closing, the Debtors or the Buyer and/or their respective designees are authorized to execute and file a certified copy of this Sale Order, which, once filed, registered

or otherwise recorded, shall constitute conclusive evidence of the release of all obligations, liabilities, and Interests in the Acquired Assets of any kind or nature whatsoever (other than the Permitted Liens and Assumed Liabilities). Upon the Closing and the Debtors' receipt of the Purchase Price, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Debtors' interests in the Acquired Assets and a bill of sale transferring good and marketable title in the Acquired Assets to the Buyer free and clear of all Interests, except for the Permitted Liens and Assumed Liabilities. Each and every federal, state, and local governmental agency, quasi-agency, or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions.

7.      Except for the Permitted Liens, Assumed Liabilities or as expressly provided in the Asset Purchase Agreement, pursuant to Bankruptcy Code Sections 105(a) and 363(f), upon the Closing and the Debtors' receipt of the Purchase Price, the Acquired Assets shall be transferred to the Buyer as required under the Asset Purchase Agreement, and such transfer shall be free and clear of all Interests of any person, including, without limitation, all such Interests specifically enumerated in this Sale Order, whether arising by agreement, by statute, or otherwise and whether occurring or arising before, on, or after the Petition Date, whether known or unknown, occurring, or arising prior to such transfer, with all such Interests to attach to the proceeds of the Sale ultimately attributable to the property against or in which the holder of an Interest claims or may claim an Interest, in the order of their priority, with the same validity, force, and effect which they now have, subject to any claims and defenses the Debtors may possess with respect thereto. Without limiting the generality of the foregoing, the Acquired Assets shall be transferred to the Buyer free and clear of the following: (i) satisfy and release of record, Mortgage, Assignment of

Leases and Rents, Security Agreement and Fixture Filing, dated June 15, 2018, and filed for record June 21, 2018, in/as Instrument No. RP2018-2856 of the Records of Herkimer County, New York, executed by Remington Arms Company, LLC, in favor of Ankura Trust Company, LLC, securing the original principal amount of $55,000000; (ii) satisfy and release of record, Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated June 15, 2018, and filed for record June 21, 2020, in/as Instrument No. RP2018-2857, of the records of Herkimer County, New York, executed by Remington Arms Company, LLC, in favor of Ankura Trust Company, LLC, securing the original principal amount of $100,000,000; (iii) satisfy and release of record, Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated April 18, 2019, and filed for record April 22, 2019, in/as Instrument No. RP2019-[____], of the Records of Herkimer County, New York, executed by Remington Arms Company, LLC, in favor of Cantor Fitzgerald Securities, securing the original principal amount of $90,500,000; and (iv) satisfy and release of record, Lien Subordination Agreement by and between Remington Arms Company, LLC, Cantor Fitzgerald Securities, and Ankrura Trust Company, LLC, dated February 21, 2020, and filed for record February 28, 2020, in/as Instrument No. RP2020-[____], records of Herkimer County, New York.

8.    The transfer of the Acquired Assets to the Buyer pursuant to the Asset Purchase Agreement constitutes a legal, valid, and effective transfer of the Acquired Assets and shall vest the Buyer with all right, title, and interest of the Debtors in and to the Acquired Assets free and clear of all Interests of any kind or nature whatsoever, except for the Permitted Liens and Assumed Liabilities, with all such Interests to attach to the proceeds of the Sale ultimately attributable to the property against or in which the holder of an Interest claims or may claim an Interest, in the order

19

of their priority, with the same validity, force, and effect which they now have, subject to any claims and defenses the Debtors may possess with respect thereto.

9.      All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Acquired Assets to the Buyer in accordance with the Asset Purchase Agreement and this Sale Order; *provided* that the foregoing restriction shall not prevent any party from appealing this Sale Order in accordance with applicable law or opposing any appeal of this Sale Order, or from enforcing its rights under Bankruptcy Code Section 365 or relieve the Buyer of any Assumed Liability.

10.      Except as expressly permitted by the Asset Purchase Agreement or this Sale Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, dealers, employees, litigation claimants, contract counterparties and other creditors, holding liens, claims encumbrances, and other interests of any kind or nature whatsoever, including, without limitation, rights or claims based on any taxes or successor or transferee liability, against or in a Debtor or the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets or the operation of the Acquired Assets before the Closing, or the transactions contemplated by the Asset Purchase Agreement, including, without limitation, the Sale and the assumption and assignment of the Assigned Contracts, are forever barred, estopped, and permanently enjoined from asserting against the Buyer, its respective successors and assigns, its respective property and the Acquired Assets, such persons' or entities' liens, claims, encumbrances, or other Interests, including, without limitation, rights or claims based on any taxes or successor or transferee liability, *provided* that nothing herein shall impair or

20

otherwise affect any right under Bankruptcy Code Section 365 of a lease or contract counterparty to an Assigned Contract under its respective Assigned Contract(s), or relieve the Buyer of any Assumed Liability.

11.    Upon the Closing, each of the Debtors' creditors and any other holder of an Interest is authorized and directed, without cost to the Debtors, to execute such documents and take all other actions as may be necessary to release its Interest in the Acquired Assets, if any, as such Interest may have been recorded or may otherwise exist.  If any person or entity that has filed financing statements or other documents or agreements evidencing an Interest in the Debtors or the Acquired Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Interests, which the person or entity has with respect to the Debtors or the Acquired Assets or otherwise, then the Buyer and its designees are authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Debtors or the Acquired Assets and to file, register, or otherwise record a certified copy of this Sale Order, which shall constitute conclusive evidence of the release of all Interests of any kind or nature whatsoever in the Debtors or the Acquired Assets (other than the Permitted Liens and Assumed Liabilities).  Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement, including, without limitation, recordation of this Sale Order.

12.    Upon the Closing and the Debtors' receipt of the Purchase Price, all entities that are currently, or on the Closing may be, in possession of some or all of the Acquired Assets are

21

hereby directed to surrender possession of the Acquired Assets to the Buyer, unless the Buyer otherwise agrees.

13.     This Sale Order is self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Sale Order. However, the Debtors and the Buyer, and each of their respective officers, employees, and agents, are hereby authorized and empowered to take all actions and to execute and deliver any and all documents and instruments that either the Debtors or the Buyer deem necessary, desirable or appropriate to implement and effectuate the terms of the Asset Purchase Agreement and this Sale Order.

14.     To the maximum extent permitted by applicable non-bankruptcy law, (a) the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval (collectively, the "**Permits**") of the Debtors with respect to and included in the Acquired Assets, and (b) all Permits that are included in the Acquired Assets are deemed to have been, and hereby are directed to be, transferred to the Buyer as of the Closing Date. Nothing in this Sale Order, and nothing in the foregoing sentence, authorizes the transfer or assignment of any governmental Permit or the discontinuation of any obligation thereunder without compliance with all applicable legal requirements and approvals under police or regulatory law. To the extent any Permit cannot be transferred to the Buyer in accordance with this paragraph, the Buyer, with such assistance from the Debtors as is required under the Asset Purchase Agreement, will work promptly and diligently to apply for and secure all necessary government approvals for the transfer or new issuance of the Permit(s) to the Buyer, and the Debtors shall maintain the Permits to the extent required under and subject to the terms of the Asset Purchase Agreement. For the avoidance of doubt, while nothing in this Sale Order or the Asset Purchase

44232268 v1

Agreement releases, nullifies, limits, waives, precludes, or enjoins the enforcement of any police or regulatory authority of a governmental unit, Buyer shall be entitled to operate under each state Permit currently held by or on behalf of the Debtors in relation to the Acquired Assets until such time as each such Permit is transferred to the Buyer and/or an equivalent Permit is issued to the Buyer.

15.     To the extent provided by Bankruptcy Code Section 525, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Acquired Assets sold, transferred, or conveyed to the Buyer on account of the filing or pendency of these Chapter 11 Cases or the consummation of the transactions contemplated by the Asset Purchase Agreement and this Sale Order.

**Implementation of the Sale**

16.     Upon Closing, the Buyer shall (a) pay the Purchase Price to the Debtors; (b) pay the Cure Amounts as more fully described in paragraph 30 of this Sale Order and the Asset Purchase Agreement; (c) assume the Assumed Liabilities; and (d) perform any other obligations required to be performed by Buyer on the Closing.  Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement, including, without limitation, recordation of this Sale Order.

17.     Within three (3) business days of the Debtors' receipt of the Net Sale Proceeds (as defined in the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection, (III) Modifying Automatic Stay, and (IV) Granting Related Relief* [Docket No. 410] (as it may be amended from time to time, the "**Cash Collateral Order**")) from the sale of the Acquired Assets, the Debtors shall pay the

Net Sale Proceeds of the Acquired Assets to the Priority Term Loan Agent, for the account of the Priority Term Loan Secured Creditors, to the extent required under and in accordance with the terms of the Cash Collateral Order or such other order of the Court. Upon the Priority Term Loan Agent's timely receipt of such payment, (a) the Priority Term Loan Obligations shall be paid and satisfied to the extent of the payment and (b) all liens and security interests against the Acquired Assets securing the Priority Term Loan Obligations shall be automatically released and discharged without further action by any person. Upon the payment in full in cash of the Priority Term Loan Obligations and the occurrence of the Challenge Period Termination Date (as defined in the Cash Collateral Order), (w) the Debtors shall have no further indebtedness, liabilities or obligations owing under the Priority Term Loan Credit Agreement or the other "Financing Agreements" (as defined in the Priority Term Loan Agreement, the "**Priority Term Loan Documents**"), (x) other than any provisions thereof that survive pursuant to the terms thereof, the Priority Term Loan Credit Agreement and all other Priority Term Loan Documents (including, without limitation, any mortgages, guaranties and security agreements) and all of the Debtors' obligations thereunder shall terminate and be of no further force and effect, (y) all liens and security interests against the property and assets of the Debtors securing the Priority Term Loan Obligations shall be automatically fully released and discharged without further action by any person, and (z) each deposit account control agreement in respect of or other sweeps or blocks of any Debtor's deposit accounts or lockboxes in favor of any of the Priority Term Loan Secured Parties shall terminate.

18.    The Debtors shall pay the Net Sale Proceeds from the sale of the Acquired Assets to the FILO Agent, for the account of the FILO Term Loan Secured Creditors, to the extent required under and in accordance with the terms of the Cash Collateral Order or such other order of the Court. For the avoidance of doubt, any further payment to the FILO Agent shall be subject

to orders previously entered by this Court and any further orders of this Court or provided under the Debtors' Chapter 11 plan.

19.     All parties in interest in these Chapter 11 Cases expressly reserve their rights with respect to any allocation of the Purchase Price or value among the purchased Acquired Assets, and any allocation of the Purchase Price or value among the purchased Acquired Assets as determined by the Buyer shall not be determinative or binding on any party in interest in these Chapter 11 Cases except as ordered by the Court after notice and a hearing.

**No Successor Liability**

20.     Other than as expressly set forth in the Asset Purchase Agreement, the Buyer and its Affiliates shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any Interests, including under any theory of successor or transferee liability, *de facto* merger or continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated, including without limitation, with respect to any of the following: (i) any foreign, federal, state, or local revenue law, pension law, ERISA, COBRA, tax law, labor law, employment law, the WARN Act, antitrust law, CERCLA, and any other environmental, health and safety laws, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules or regulations); (ii) under any products liability law, rule, regulation, or doctrine with respect to the Debtors' liability under such law, rule, regulation, or doctrine, or under any product warranty liability law or doctrine; (iii) under any unfair trade practices law, rule, regulation or doctrine with respect to the Debtors' liability under such law, rule, regulation or doctrine, or under any unfair trade practices liability law or doctrine; (iv) any employment or labor agreements, consulting agreements, severance arrangements, change-in-control agreements, or other similar agreement to

25

which the Debtors are a party; (v) any welfare, compensation, or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of the Debtors; (vi) the cessation of the Debtors' operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation, or other employee benefit plans, agreements, practices and programs, obligations that might otherwise arise from or pursuant to (a) ERISA, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967, (g) the Americans with Disabilities Act of 1990, or (h) COBRA; (vii) any liabilities, debts, or obligations of or required to be paid by the Debtors for any taxes of any kind for any period; (viii) any environmental liabilities, debts, claims fines, penalties, or obligations arising from conditions, facts or circumstances first existing or occurring on or prior to the Closing (including, without limitation, the presence of or exposure to chemical, hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis and at any time, including, without limitation, any liabilities, debts, claims, fines, penalties or obligations arising under CERCLA, or any other environmental, health, and safety laws; (viii) any liabilities, debts, claims, fines, penalties, or obligations of or required to be paid by the Debtors for any taxes of any kind for any period; (ix) any liabilities, debts, claims, fines, penalties, or obligations of or required to be paid by the Debtors under any labor, employment, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules, or regulations); (x) any bulk sale law; and (xi) any litigation.  The Buyer shall have no liability or obligation under the WARN Act simply by virtue of its purchase of assets from the Debtors.

21.     The Buyer has given substantial consideration under the Asset Purchase Agreement, which consideration shall constitute valid and valuable consideration for the releases

of any potential claims of successor liability of the Buyer and which shall be deemed to have been given in favor of the Buyer by all holders of Interests and liabilities (except with respect to Permitted Liens and the Assumed Liabilities) in or against the Debtors, or the Acquired Assets. Without limiting the Buyer's obligation to pay and satisfy the Assumed Liabilities, upon consummation of the Sale, the Buyer shall not be deemed to (a) be the successor to the Debtors or their estates, (b) have, *de facto* or otherwise, merged with or into the Debtors, or (c) be a mere continuation, *alter ego* or substantial continuation of the Debtors under any theory of law or equity (including veil piercing) as a result of any action taken in connection with the Asset Purchase Agreement or any of the transactions or documents ancillary thereto or contemplated thereby or in connection with the acquisition of the Acquired Assets.

22.     Effective upon the Closing, except with respect to Assumed Liabilities and Permitted Liens, all persons and entities are forever prohibited and enjoined from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against the Buyer, its Affiliates or its assets (including the Acquired Assets) with respect to any (a) Claim or Lien or (b) successor or transferee liability, including, without limitation, the following actions with respect to clauses (a) and (b): (i) commencing or continuing any action or other proceeding pending or threatened; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or Claim; (iv) asserting any setoff, right of subrogation, or recoupment of any kind; (v) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof; or (vi) revoking,

44232268 v1

terminating, or failing or refusing to renew any License, permit, or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with such assets.

**<u>Good Faith</u>**

23.     The transactions contemplated by the Asset Purchase Agreement are undertaken by the Buyer without collusion and in good faith, as that term is used in Bankruptcy Code Section 363(m), and, accordingly, the reversal or modification on appeal of the authorization provided in this Sale Order to consummate the Sale and the Transactions shall not affect the validity of the transactions (including the assumption and assignment of any of the Assigned Contracts).  The Buyer is a purchaser in good faith of the Acquired Assets and is entitled to all the protections afforded by Bankruptcy Code Section 363(m).

24.     As a good faith purchaser of the Acquired Assets, the Buyer has not entered into an agreement with any other potential bidders at the Auction, and has not colluded with any of the other bidders, potential bidders or any other parties interested in the Acquired Assets, and, therefore, neither the Debtors nor any successor in interest to the Debtors' estates shall be entitled to bring an action against the Buyer, and the Sale may not be avoided pursuant to Section 363(n) of the Bankruptcy Code.

25.     The consideration provided by the Buyer for the Acquired Assets under the Asset Purchase Agreement constitutes reasonably equivalent value, fair value, reasonable market value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.  The Sale may not be avoided under Bankruptcy Code Section 363(n).  The Asset Purchase Agreement was not entered into, and the Sale is not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtors under the Bankruptcy Code or for any other purpose that would give rise to statutory

28

or common law fraudulent conveyance or fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable jurisdiction with laws substantially similar to the foregoing. Neither the Debtors nor the Buyer have entered into the Asset Purchase Agreement or any agreement contemplated thereby or are consummating the Sale with any fraudulent or otherwise improper purpose, including, without limitation, to evade any pension liabilities. No other person or entity or group of persons or entities has offered to purchase the Acquired Assets for an amount that would provide greater value to the Debtors and their estates than the value provided by the Buyer. The Court's approval of the Motion and the Asset Purchase Agreement are in the best interests of the Debtors, the Debtors' estates, their creditors, and all other parties in interest.

26. Neither the Buyer nor any of its Affiliates is an "insider" as that term is defined in Section 101(31) of the Bankruptcy Code.

**Assumption and Assignment of Assigned Contracts; Assumed Liabilities**

27. Pursuant to Bankruptcy Code Sections 105(a), 363, and 365 and subject to and conditioned upon the Closing of the Sale, the Debtors' sale, assumption and assignment to the Buyer of the Assigned Contracts is approved, and the requirements of Bankruptcy Code Section 365(b)(1) with respect thereto are deemed satisfied.

28. The Debtors are authorized in accordance with Bankruptcy Code Sections 105(a) and 365 to (i) assume and assign to the Buyer, effective as of the Closing, as provided by, and in accordance with, the Bidding Procedures Order and the Asset Purchase Agreement, the Assigned Contracts free and clear of all Interests of any kind or nature whatsoever, other than the Permitted Liens and Assumed Liabilities, and (ii) execute and deliver to the Buyer such documents or other

instruments as the Buyer reasonably deems necessary to assign and transfer the Assigned Contracts to the Buyer.

29. The Assigned Contracts shall be transferred and assigned to, pursuant to the Bidding Procedures Order and the Asset Purchase Agreement, and thereafter remain in full force and effect for the benefit of, the Buyer, notwithstanding any provision in any such Assigned Contract (including, but not limited to, those of the type described in Bankruptcy Code Sections 365(b)(2), (e)(1), and (f)) that prohibits, restricts, requires the express consent or conditions such assignment or transfer. The Debtors shall be relieved from any further liability with respect to the Assigned Contracts after such assumption and assignment to the Buyer. The Debtors may assign each Assigned Contract in accordance with Bankruptcy Code Sections 363 and 365, and any provisions in any Assigned Contracts that prohibit or condition the assignment of such Assigned Contracts or terminate, recapture, require express consent, impose any penalty, condition, renewal, or extension, or modify any term or condition upon the assignment of such Assigned Contracts, constitute unenforceable anti-assignment provisions which are void and of no force and effect. All other requirements and conditions under Bankruptcy Code Sections 363 and 365 for the assumption by the Debtors and assignment to the Buyer of each Assigned Contract have been satisfied.

30. All defaults and all other obligations or liabilities under any Assigned Contract occurring, arising, or accruing prior to the date of the assignment or transfer to the Buyer shall be deemed cured or satisfied upon payment by the Buyer (in accordance with Section 1.5 of the Asset Purchase Agreement of the Huntsman Backup Bid Agreement but not the Century Arms Backup Bid Agreement) of the proposed Cure Cost, as set forth in the Notice of Assumption and Assignment, any Supplemental Notice of Assumption and Assignment, or any other cure amount

reached by agreement after an Assigned Contract Objection or otherwise, and, without limiting the foregoing, no effect shall be given to any default of the type set forth in Bankruptcy Code Section 365(b)(2), or the type of default concerning an unexpired lease of real property described in Bankruptcy Code Section 365(b)(1) whether or not such Assigned Contract is an executory contract within the meaning of Bankruptcy Code Section 365.

31.    Each non-Debtor counterparty to the Assigned Contracts shall be forever barred, estopped, and permanently enjoined from (a) asserting against the Debtors, the Buyer, or their respective property (including the Acquired Assets) any fee, acceleration, default, breach, Claim (including any counterclaim, defense, or setoff capable of being asserted against the Debtors), pecuniary loss, or condition to assignment existing, arising, or accruing as of the Closing Date, or arising by reason of the Closing, including any breach related to or arising out of any change-in-control provision in such Assigned Contracts, or any purported written or oral modification to the Assigned Contracts, and (b) asserting against the Buyer (or its property, including the Acquired Assets) any Claim or Lien, counterclaim, breach, condition or setoff asserted or capable of being asserted against the Debtors existing as of the Closing Date or arising by reason of the Closing except for the Assumed Liabilities and Permitted Liens.

32.    The Cure Costs amounts listed on the Notice of Assumption and Assignment, any Supplemental Notice of Assumption and Assignment or any other cure amount reached by agreement after an Assigned Contract Objection or otherwise, reflect the sole amounts necessary under Bankruptcy Code Section 365(b) to cure all monetary defaults under the Assigned Contracts, and no other amounts are or shall be due to the non-debtor parties in connection with the assumption by the Debtors and assignment to the Buyer of the Assigned Contracts. Notwithstanding anything to the contrary herein, if the Cure Costs for an Assigned Contract is

determined to be greater than the proposed Cure Costs asserted in the Notice of Assumption and Assignment or Supplemental Notice of Assumption and Assignment, the Buyer may decide, in its discretion, not to assume that Assigned Contract. Notwithstanding anything to the contrary herein, in each case in accordance with Bidding Procedures Order and the terms and conditions of the Asset Purchase Agreement, the Buyer may decide not to assume one or more unexpired leases and executory contracts designated on Schedule 1.1(i) of the Asset Purchase Agreement (or Schedule 1.5(a) of the Huntsman Backup Bid Agreement).

33.     The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Buyer's rights to enforce every term and condition of the Assigned Contracts.

34.     Notwithstanding anything in the Asset Purchase Agreement or this Sale Order to the contrary and for the avoidance of doubt, the Acquired Assets shall not include any of the Excluded Assets as set forth in Section 1.2 of the Asset Purchase Agreement.

35.     The Buyer shall be responsible for the satisfaction of the Assumed Liabilities under the Asset Purchase Agreement, including without limitation those arising under the Assigned Contracts. Except as provided in the Asset Purchase Agreement or this Sale Order, after the Closing, the Debtors and their estates shall have no further liability or obligations with respect to any Assumed Liability, including those arising under the Assigned Contracts, and all holders of such claims are forever barred and estopped from asserting any claims under any Assumed Liability (including those arising under the Assigned Contracts) against the Debtors, their successors or assigns, and their estates.

**Backup Bidder**

44232268 v1
Case 20-81688-CRJ11    Doc 875    Filed 09/29/20    Entered 09/29/20 08:11:36    Desc
Main Document    Page 116 of 326

36.     Huntsman Holdings, LLC (the "**Huntsman Backup Bidder**") is hereby approved as a Backup Bidder and pursuant to Bankruptcy Code Sections 105, 363, and 365, the Asset Purchase Agreement attached hereto as Exhibit B (the "**Huntsman Backup Bid Agreement**") submitted by the Huntsman Backup Bidder, the sale of the Acquired Assets (as defined in the Huntsman Backup Bid Agreement and consummation of the Sale to the Huntsman Backup Bidder are hereby approved as a Backup Bid. Century Arms, Inc. (the "**Century Arms Backup Bidder**" and collectively with the Huntsman Backup Bidder, the "**Backup Bidder**") is hereby approved as a Backup Bidder and pursuant to Bankruptcy Code Sections 105, 363, and 365, the Asset Purchase Agreement attached hereto as Exhibit C (the "**Century Arm Backup Bid Agreement**" and collectively with the Huntsman Backup Bid Agreement, the "**Backup Bid Agreement**") submitted by the Century Arms Backup Bidder, the sale of the Acquired Assets (as defined in the Century Arms Backup Bid Agreement and consummation of the Sale to the Century Arms Backup Bidder are hereby approved as a Backup Bid. The Backup Bid pursuant to the terms set forth in the Backup Bid Agreement is hereby approved and authorized as a Backup Bid and shall remain open as a Backup Bid pursuant to the terms of the Bidding Procedures Order and the bid terms submitted at the Auction. In the event that the Successful Bidder cannot or refuses to consummate the Sale because of a breach or failure on the part of the Successful Bidder, the Backup Bidder will be deemed the new Successful Bidder and the Debtors shall be authorized, but not directed, to close, and take all actions necessary to close, with the Backup Bidder on the Backup Bid without further order of the Court, and in such case the findings and other provisions of this Sale Order shall apply to the applicable Backup Bidder and the applicable Backup Bid Agreement to the same extent they do with respect to the Buyer and the Asset Purchase Agreement.

**Other Provisions**

37.     Nothing in this Sale Order or in the Asset Purchase Agreement entered into pursuant to this Sale Order releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory authority of a governmental unit.

38.     This Sale Order and the Asset Purchase Agreement shall be binding in all respects upon all persons, entities, and known and unknown creditors of, and holders of equity security interests in, any Debtor, including any holders of Interests, all counterparties to the Assigned Contracts, all counterparties to contracts that are not assumed or assigned, all successors and assigns of the Buyer, each Debtor and their affiliates and subsidiaries, the Acquired Assets, and any trustees appointed in the Chapter 11 Cases or upon a conversion to cases under Chapter 7 of the Bankruptcy Code, and this Sale Order shall not be subject to amendment or modification and the Asset Purchase Agreement shall not be subject to rejection.  Nothing contained in any Chapter 11 plan confirmed in any Debtor's bankruptcy case, any order confirming any such Chapter 11 plan, or any other order in the Chapter 11 Cases shall alter, conflict with, or derogate from, the provisions of the Asset Purchase Agreement or this Sale Order.

39.     To the extent applicable, the automatic stay pursuant to Section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtors to the extent necessary, without further order of the Court (a) to allow the Buyer to give the Debtors any notice provided for in the Asset Purchase Agreement, and (b) to allow the Buyer to take any and all actions permitted by the Asset Purchase Agreement.

40.     No bulk sales law or similar law shall apply in any way to the transactions contemplated by the Sale, the Asset Purchase Agreement, the Motion, and this Sale Order.

44232268 v1

41.     This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Asset Purchase Agreement, all amendments thereto, and any waivers and consents thereunder, including, but not limited to, retaining jurisdiction to (i) enforce the terms of the Asset Purchase Agreement; (ii) compel delivery of the Acquired Assets to the Buyer; (iii) interpret, implement, and enforce the provisions of this Sale Order; (iii) protect the Buyer, any of the Buyer's Affiliates, or any agent of the foregoing, against any Interests against the Debtors or the Acquired Assets of any kind or nature whatsoever, except for the Permitted Liens and Assumed Liabilities, and (iv) enter any order under Bankruptcy Code Sections 363 and 365.

42.     No brokers were involved in consummation of the Sale, and no brokers' commissions are due to any person in connection with the Sale; *provided, however*, that this provision does not impact any transaction or other fees due to investment bankers or financial advisors employed (a) by the Debtors, including, but not limited to Ducera Partners LLC, or certain of their creditors for which the Debtors may be obligated to pay in accordance with an engagement letter with such professional(s), or (b) by the Buyer, including, but not limited to, in the case of the Backup Bidder, Moelis & Company LLC.

43.     To the extent there is any inconsistency between the terms of this Sale Order and the terms of the Asset Purchase Agreement (including all ancillary documents executed in connection therewith), the terms of this Sale Order shall govern.

44.     The failure to specifically include any particular provision of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement be authorized and approved in its entirety.

45.     The Asset Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, *provided* that the Debtors shall provide the Bid Consultation Parties with three (3) business days' notice thereof and *provided* further that any such modification, amendment, or supplement does not, based on the Debtors' judgment, have a material adverse effect on the Debtors' estates.

46.     Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Sale Order shall not be stayed for fourteen (14) days after its entry and shall be effective immediately upon entry, and the Debtors and the Buyer are authorized to close the transaction immediately upon entry of this Sale Order.  Time is of the essence in closing the transactions referenced herein, and the Debtors and the Buyer intend to close the transactions as soon as practicable.  This Sale Order is a final, appealable order and the period in which an appeal must be filed shall commence upon the entry of this Sale Order.

47.     The provisions of the Asset Purchase Agreement and this Sale Order may be specifically enforced in accordance with the Asset Purchase Agreement notwithstanding the appointment of any Chapter 7 or Chapter 11 trustee after the Closing.

48.     Headings utilized in this Sale Order are for convenience of reference only, and do not constitute a part of this Sale Order for any other purpose.

49.     All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

50.     The provisions of this Sale Order are non-severable and mutually dependent.

51.     All issues raised by Oracle America, Inc. ("**Oracle**") in *Oracle's Limited Objection and Reservation of Rights Regarding (a) Debtors' Motion for (a) an Order Establishing Bidding*

44232268 v1

*Procedures and Granting Related Relief and (ii) an Order or Orders Approving the Sale of the Debtors' Assets; and (b) Notice of Executory Contracts and Unexpired Leases that May Be Assumed and Assigned in Connection with the Sale of the Debtors' Assets and the Proposed Cure Cost with Respect Thereto* (the "Oracle Objection") [Docket No. 529] are expressly reserved. The Oracle Objection may be set for hearing on an expedited basis upon the request of Oracle and/or the Debtors.

52.     Nothing in the Asset Purchase Agreement or in this Order shall have the effect of transferring, impairing, reducing or otherwise limiting any of the Debtors' rights in any insurance policies covering Excluded Liabilities or the proceeds of such polices. For the avoidance of doubt, the Debtors reserve control over the privilege concerning any retained documents and nothing in this Order relieves the Debtors of any document retention obligations.

53.     To the extent any molds and tooling manufactured by Oneida Molded Plastics, LLC ("**Oneida**") are included in the Acquired Assets (the "**Acquired Mold Product**"), any lien of Oneida on the Acquired Mold Product will be released and shall attach to the proceeds thereof with the same priority, extent, validity, avoidability and enforceability as Oneida's lien, if any, on the Acquired Mold Product. Nothing herein shall constitute a finding or ruling by this Court or an admission by the Debtors that any such liens are valid, senior, enforceable, perfected or non-avoidable. Moreover, nothing shall prejudice the rights of any party in interest including, but not limited to, the Debtors and any Committee to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any such lien.

54.     Notwithstanding anything to the contrary in this Order or the Asset Purchase Agreement, the Debtors do not purport to assume or assign to Buyer the license agreement dated as of January 23, 2008 between Magpul Industries Corp ("**Magpul**") and the Debtors, and nothing

37

in this order limits or otherwise modifies, to the extent such license exists, any express or implied license granted by the Debtors to Magpul in connection with Magpul's production of accessories for Debtors' firearm products or any rights or defenses of the Debtors in connection therewith, including any right of revocation and any right to assign the Debtors' rights in connection therewith to the Buyer.

Dated: _____, 2020

_____
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit A</u>**

**Asset Purchase Agreement**

## Exhibit B

### Huntsman Backup Bid Agreement

US_ACTIVE-154466812.6

*[Different first page link-to-previous setting changed from off in original to on in modified.].*

**<u>Exhibit C</u>**

**<u>Century Arms Backup Bid Agreement</u>**

*[Different first page link-to-previous setting changed from off in original to on in modified.].*

| Summary report: |||
|---|---|---|
| **Litera® Change-Pro for Word 10.9.0.460 Document comparison done on 9/28/2020 6:12:35 PM** |||
| **Style name:** OMM Standard |||
| **Intelligent Table Comparison:** Active |||
| **Original DMS:** dm://OMM_US/79063153/5 |||
| **Modified DMS:** dm://OMM_US/79063153/6 |||
| **Changes:** |||
| Add | 11 | |
| Delete | 7 | |
| Move From | 0 | |
| Move To | 0 | |
| Table Insert | 0 | |
| Table Delete | 0 | |
| Table moves to | 0 | |
| Table moves from | 0 | |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 | |
| Embedded Excel | 0 | |
| Format changes | 0 | |
| **Total Changes:** | 18 | |

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

In re:

REMINGTON OUTDOOR COMPANY,
INC., *et al.*, [1]

                    Debtors.

Chapter 11

Case No. 20-81688-CRJ11

Jointly Administered

## ORDER APPROVING THE SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL CLAIMS, LIENS, AND INTERESTS

This matter having come before the Court upon the motion (the "**Motion**")[2] by Remington Outdoor Company, Inc., ("**Remington**" or the "**Company**"), and its affiliated debtors and debtors in possession (collectively the "**Debtors**") in the above-captioned Chapter 11 cases seeking entry of this order (this "**Sale Order**") (a) authorizing the sale of the Acquired Assets (as defined in the Asset Purchase Agreement (as defined below)) free and clear of all Interests (as defined below), pursuant to that certain Asset Purchase Agreement, dated as of September 26, 2020, attached hereto as <u>Exhibit A</u> (the "**Asset Purchase Agreement**"), by and among the Debtors and Roundhill Group, LLC (the "**Buyer**"), and all other transaction documents related thereto; (b) authorizing the assumption and assignment of certain executory contracts and unexpired leases; and (c) granting the related relief contemplated therein; and the Court having found that (i) the Court has

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405).  The Debtors' corporate headquarters is located at 100 Electronics Blvd SW, Huntsville, Alabama 35824.

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Motion or the Asset Purchase Agreement, as applicable.

jurisdiction over this matter; (ii) venue is proper in this District; (iii) this is a core proceeding; (iv) the notice of the Motion and the Sale Hearing (as defined below) was sufficient under the circumstances; and (v) there is good cause to waive the stay of Bankruptcy Rule 6004(h); and based on the statements of counsel and the evidence presented in support of the relief requested by the Debtors in the Motion at a hearing before this Court on September 29 [and 30], 2020 (the "**Sale Hearing**"); and it appearing that no other notice need be given; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A. **Jurisdiction, Core Proceeding, Statutory Predicates, and Venue**. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *General Order of Reference* of the United States District Court for the Northern District of Alabama dated July 16, 1984 as amended July 17, 1984. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The predicates for the relief granted herein are Bankruptcy Code Sections 105, 363, and 365 and Bankruptcy Rules 2002, 6004, and 6006. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B. **Just Cause**. The legal and factual bases set forth in the Motion establish just cause for the relief granted herein. Entry of this Sale Order is in the best interests of the Debtors and their respective estates, creditors, and all other parties in interest.

C. **Notice**. The notice of the Motion, the Sale Hearing, the Asset Purchase Agreement, the transactions contemplated therein or in connection therewith and corresponding transactions documents (the "**Transactions**"), and the proposed entry of this Sale Order was proper, timely, adequate, sufficient and appropriate under the circumstances of the Chapter 11 Cases, and such notice complied with all applicable requirements of the Bidding Procedures, Bankruptcy Code, the

Bankruptcy Rules, and the Local Rules. A reasonable opportunity to object or be heard regarding the relief granted by this Sale Order has been afforded to all interested persons and entities pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Accordingly, no other or further notice of the Motion, the Sale Hearing, or this Sale Order is necessary or required.

D.     The Publication Notice was published in the *New York Times* on August 24, 2020. Such Publication Notice was compliant with the Bidding Procedures Order, and was sufficient and proper notice to any other interested parties, including those whose identities are unknown to the Debtors.

E.     **Extensive Efforts by Debtors**. Since before the commencement of the Chapter 11 Cases, the Debtors worked with their counsel and financial advisors to implement a viable transaction that would allow them to maximize the value of the Acquired Assets. The Sale Transaction that is the subject of this Sale Order is the result of the Debtors' extensive efforts seeking to maximize recoveries to the Debtors' estates for the benefit of the Debtors' creditors.

F.     **Business Justification**. The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business justification for the Court to grant the relief requested in the Motion, including, without limitation, to (i) authorize the sale of the Acquired Assets free and clear of Interests other than Permitted Liens (as defined in the Asset Purchase Agreement) and Assumed Liabilities (as defined in the Asset Purchase Agreement); (ii) authorize the assumption and assignment of certain executory contracts and unexpired leases; and (iii) grant related relief as set forth herein. Such compelling and sound business justification, which was set forth in the Motion and on the record at the Sale Hearing, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

G.     **Bidding Procedures Order**.  The Bidding Procedures Order [Docket No. 411] was entered by the Court on August 20, 2020, which, among other things (i) approved the Bidding Procedures; (ii) established the Assumption and Assignment Procedures; (iii) approved the form and manner of notice with respect to all procedures, protections, schedules, and agreements described in the Motion and attached thereto; and (iv) scheduled a date for the Auction and Sale Hearing.  The Bidding Procedures provided a full, substantively and procedurally fair, and reasonable opportunity for any entity to make an offer to purchase the Acquired Assets.

H.     **Auction; Successful Bidder**.  The sale process was properly conducted by the Debtors in accordance with the Bidding Procedures Order and in a manner designed to result in the highest or otherwise best offer for the Acquired Assets.  At the Auction, the Debtors agreed in a reasonable exercise of their business judgment, in consultation with their management, the Restructuring Committee, advisors and the Bid Consultation Parties, to enter into and consummate Asset Purchase Agreement with the Buyer.  At the conclusion of the Auction, the Buyer was determined to be the Successful Bidder for the Acquired Assets.

I.     **Asset Purchase Agreement**.  The consummation of the Transactions contemplated by the Asset Purchase Agreement, the Motion, and this Sale Order is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and all of the applicable requirements of such sections and rules have been complied with in respect of such transactions.

J.     **Sale Hearing**.  The Sale Hearing occurred on September 29 [and 30], 2020 in accordance with the Bidding Procedures Order.

K.     **Adequate Marketing; Highest or Otherwise Best Offer.**  As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing, including the

*Declaration of Ken D'Arcy in Support of Chapter 11 Petitions and First Day Pleadings of Remington Outdoor Company, Inc. and Its Affiliated Debtors and Debtors-Possession* [Docket No. 6 and the *Declaration of Bradley C. Meyer in Support of Debtors' Cash Collateral Motion and Bidding Procedures Motion* [Docket No. 355]; and (ii) the representations of counsel made on the record at the Bidding Procedures Hearing and the Sale Hearing, (a) the Debtors have adequately marketed the Acquired Assets and conducted a sale process in a non-collusive, fair and good faith manner in compliance with the Bidding Procedures Order; (b) the process set forth in the Bidding Procedures Order afforded a full, substantively and procedurally fair and reasonable opportunity for any interested party to make the highest or otherwise best offer to purchase the Acquired Assets and assume the Assumed Liabilities; (c) the consideration provided by the Buyer in the Asset Purchase Agreement constitutes the highest or otherwise best offer to purchase the Acquired Assets and assume the Assumed Liabilities; (d) the consideration provided by the Buyer in the Asset Purchase Agreement provides fair and reasonable consideration for the Acquired Assets and the assumption of the Assumed Liabilities and constitutes reasonably equivalent value, fair value and reasonable market value under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, the District of Columbia, or other applicable law; (e) the Sale will provide a greater recovery for the Debtors' creditors with respect to the Acquired Assets than would be provided by any other practically available alternative; (f) taking into consideration all relevant factors and circumstances, and after taking account of the Bid Protections, no other entity has offered to purchase the Acquired Assets for greater economic value to the Debtors or their estates; (g) unless the sale of the Acquired Assets is concluded expeditiously as provided for in the Sale Motion and the Asset Purchase Agreement, the Debtors' stakeholders recoveries will likely be diminished; and (h) the Debtors' determination that the consideration

5

provided by the Buyer under the Asset Purchase Agreement constitutes the highest or otherwise best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtors' business judgment.

L.     **No Successor Liability.**     Neither the Buyer nor any of its affiliates, officers, directors, shareholders, members, partners, principals or any of their respective representatives, successors, or assigns is an "insider or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors, or stockholders existed or exists between the Buyer and the Debtors.   The transfer of the Acquired Assets to and the assumption of the Assumed Liabilities by the Buyer, except as otherwise expressly set forth in the Asset Purchase Agreement, does not, and will not, subject the Buyer to any liability whatsoever, with respect to the operation of the Debtors' businesses prior to the closing of the Sale or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity including, without limitation, any laws affecting antitrust, successor, transferee, or vicarious liability.  Pursuant to the Asset Purchase Agreement, the Buyer is not purchasing all of the Debtors' assets in that the Buyer is not purchasing any of the Excluded Assets or assuming the Excluded Liabilities, and the Buyer is not holding itself out to the public as an *alter ego* or a continuation of the Debtors (including through any veil piercing theory).   Except as expressly provided in the Asset Purchase Agreement, neither the Buyer nor any of its affiliates are assuming any obligation or liability of any Debtor and/or any Debtor's estate.  The Sale does not amount to a consolidation, merger, or *de facto* merger of the Buyer and the Debtors.   There is no substantial continuity between the Buyer and the Debtors, and there is no continuity of enterprise between the Debtors and the Buyer.  The Buyer is not, and will not be following consummation of the Sale, a mere

continuation of the Debtors or the Debtors' estates, and the Buyer does not and will not constitute a successor to the Debtors or the Debtors' estates. None of the Transactions, including, without limitation, the Sale or the assumption and assignment of the Assigned Contracts, is being undertaken for the purpose of escaping liability for any of the Debtors' debts or other liabilities or hindering, delaying, or defrauding creditors under the Bankruptcy Code or for any other purpose that would give rise to statutory or common law fraudulent conveyance or fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, the District of Columbia, or any other applicable jurisdiction with laws substantially similar to the foregoing.

M. **Acquired Assets Property of the Estate.** The Acquired Assets are property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541 of the Bankruptcy Code.

N. **Sale in Best Interest/Fiduciary Duties**. The Debtors have demonstrated a sufficient basis and compelling circumstances requiring them to enter into the Asset Purchase Agreement and sell the Acquired Assets and such actions are appropriate under the circumstances of these Chapter 11 Cases, are in the best interests of the Debtors, their estates and creditors, and other parties in interest, and represent a reasonable exercise of business judgment by the Debtors and the Restructuring Committee and their fulfillment of their fiduciary duties under applicable law. Approval of the Asset Purchase Agreement, the Sale, and the Transactions at this time is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest. Unless the sale is concluded expeditiously, the recoveries of all of the Debtors estates and constituencies are likely to be adversely affected.

7

O. **Not a *Sub Rosa* Plan.** The consummation of the Sale outside of a plan of reorganization pursuant to the Asset Purchase Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a plan of reorganization or liquidation for the Debtors. The Asset Purchase Agreement, the Sale, this Sale Order and the transactions contemplated therein and herein and associated therewith and herewith do not constitute an impermissible *sub rosa* Chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford. The Sale, this Sale Order and the Asset Purchase Agreement do not otherwise circumvent the Chapter 11 safeguards, including those set forth in sections 1125 and 1129 of the Bankruptcy Code.

P. **Arm's-Length Sale.** The Asset Purchase Agreement, the Sale, and the Transactions were negotiated, proposed, and entered into by the Debtors and the Buyer without collusion, in good faith, and from arm's-length bargaining positions. Neither the Debtors, their insiders and affiliates, nor the Buyer or any of its Affiliates have engaged in any conduct that would cause or permit the Asset Purchase Agreement, the Sale, or any part of the transactions thereby to be avoided under Bankruptcy Code Section 363(n).

Q. **Good Faith Buyer.** The Buyer is a good faith purchaser under Bankruptcy Code Section 363(m) and, as such, is entitled to all of the protections afforded thereby. Specifically: (i) the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Acquired Assets; (ii) the Buyer complied in all respects with the provisions of the Bidding Procedures Order; (iii) the Buyer agreed to subject its bid to the competitive bid procedures set forth in the Bidding Procedures Order; (iv) all payments to be made by the Buyer in connection with the Sale have been disclosed; (v) no common identity of directors, officers or controlling stockholders exists among the Buyer and the Debtors; (vi) the negotiations and

8

execution of the Asset Purchase Agreement were at arm's-length and in good faith, and at all times each of the Buyer and the Debtors were represented by competent counsel of their choosing; (vii) the Buyer did not in any way induce or cause the Chapter 11 filing of the Debtors; and (viii) the Buyer has not acted in a collusive manner with any person. The Buyer will be acting in good faith within the meaning of Bankruptcy Code Section 363(m) in closing the transactions contemplated by the Asset Purchase Agreement.

R. **Corporate Authority.** Each Debtor (i) has full corporate power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby, and the Sale of the Acquired Assets has been duly and validly authorized by all necessary corporate actions of each of the Debtors; (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by the Asset Purchase Agreement; (iii) has taken all corporate action necessary to authorize and approve the Asset Purchase Agreement and the consummation by the Debtors of the transactions contemplated thereby; and (iv) needs no consents or approvals, other than those expressly provided for in the Asset Purchase Agreement, which may be waived in accordance with the terms therewith.

S. **Free and Clear Findings Required by the Buyer.** The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the Sale Transaction, thus adversely affecting the Debtors, their estates, and their creditors, if the Sale of the Acquired Assets to the Buyer and the assumption and assignment of Acquired Contracts, were not, pursuant to Bankruptcy Code Section 363(f), free and clear (except for Permitted Liens and Assumed Liabilities) of (i) all pre-petition and post-petition liens of any kind whatsoever (statutory, consensual or non-consensual or otherwise), claims, mortgages, deeds of trust, pledges, charges, security interests, rights of first refusal, preferences, priorities, judgments, hypothecations,

encumbrances, easements, servitudes, leases or subleases, rights-of-way, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of offset or recoupment, right of use or possession, licenses, indentures, instruments, conditional sale arrangements, (ii) all claims as defined in Bankruptcy Code Section 101(5), including all rights or causes of action (whether in law or in equity), counterclaims, cross-claims, proceedings, warranties, guarantees, indemnities, rights of recovery, setoff, recoupment, indemnity or contribution, obligations, demands, restrictions, indemnification claims, or liabilities relating to any act or omission of the Debtors or any other person prior to the Closing, consent rights, options, proxy, contract rights, covenants, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), whether accruing or arising any time prior to the Closing Date, and whether imposed by agreement, understanding, law, equity or otherwise, and (iii) all debts, liabilities (including without limitation product, environmental, tax, reclamation, pension, *alter ego*), obligations, contractual rights and claims and labor, employment and pension claims, decrees of any court or foreign or domestic governmental authority, in each case, whether known or unknown, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or un-matured, material or non-material, disputed or undisputed, whether accruing or arising any time prior to the Closing Date, and whether imposed by agreement, understanding, law, equity or otherwise (excluding Permitted Liens and Assumed Liabilities, (i), (ii), and (iii) collectively, the "**Interests**"). Except as expressly provided in the Asset Purchase Agreement, the Sale shall be free and clear of, and the Buyer shall not be responsible for, any Interests, including, without limitation, in respect of the following: (i) any

10

rights or Interests based on any successor, substantial continuation or transferee liability, (ii) any Interests that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or termination of the Debtors' or the Buyer's interest in the Acquired Assets, or any similar rights; (iii) any labor or employment agreements; (iv) mortgages, deeds of trust, and security interests; (v) intercompany loans and receivables between the Debtors and any non-Debtor subsidiary; (vi) any pension, multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of ERISA), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability; (vii) any other employee, worker's compensation, occupational disease, or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**"), (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Code and of any similar state law (collectively, "**COBRA**"), (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors, or (1) the WARN Act (29 U.S.C. §§2101 *et seq.*); (viii) any bulk sales or similar law; (ix) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (xii)

any unexpired and executory contract or unexpired lease to which a Debtor is a party that is not an Assigned Contract that will be assumed and assigned pursuant to this Sale Order and the Asset Purchase Agreement; (xiii) any other Excluded Liabilities as provided in the Asset Purchase Agreement. A sale of the Acquired Assets other than one free and clear of all Interests would yield substantially less value for the Debtors' estates, with less certainty, than the Sale as contemplated. Therefore, the Sale contemplated by the Asset Purchase Agreement and approved herein free and clear of all Interests, except for Permitted Liens and Assumed Liabilities, is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

T.     **Valid and Binding Transfer.** The transfer of the Acquired Assets to the Buyer will be a legal, valid, and effective transfer of the Acquired Assets and, except for the Permitted Liens and Assumed Liabilities, will vest the Buyer with all right, title, and interest of the Debtors to the Acquired Assets free and clear of all Interests and any liabilities of the Debtors.

U.     **Satisfaction of Section 363(f) Standards.** The transfer of the Acquired Assets to the Buyer under the Asset Purchase Agreement shall be a legal, valid, and effective transfer of all the legal, equitable, and beneficial right, title and interest in and to the Acquired Assets free and clear of all Interests, other than the Assumed Liabilities and Permitted Liens. The Debtors may sell the Acquired Assets free and clear of all Interests, except for the Permitted Liens and the Assumed Liabilities, because, in each case, one or more of the standards set forth in Bankruptcy Code Section 363(f)(1) through (5) has been satisfied, with all such Liens and Interests to attach to the proceeds of the Sale Transaction to be received by the Debtors with the same validity, force, priority and effect that they had as against the Acquired Assets, and any claims and defenses the Debtors and their estates may possess with respect thereto. Those holders of Interests, and non-debtor parties to the Assigned Contracts who did not object, or who withdrew their objections, to

the Motion are, without limitation, deemed to have consented pursuant to Bankruptcy Code Section 363(f)(2). In all cases, each such person with Interests in the Acquired Assets is enjoined from taking any action against the Buyer, the Buyer's affiliates, or any agent of the foregoing to recover any such Interest.

V.    **Necessity of Order.**  The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the Sale Transaction without all of the relief provided for in this Sale Order (including, but not limited to, that the transfer of the Acquired Assets to the Buyer be free and clear of all Interests (other than Permitted Liens and the Assumed Liabilities)). The consummation of the Sale Transaction pursuant to this Sale Order and the Asset Purchase Agreement is necessary for the Debtors to maximize the value of their estates for the benefit of all creditors and other parties in interest.

W.    **Time of the Essence**.  The sale of the Acquired Assets must be approved and consummated promptly in order to preserve the value of the Acquired Assets. There is no credible basis for concluding that a delay in the sale of the Acquired Assets would result in a higher or better offer for the Acquired Assets than the offer reflected in the Asset Purchase Agreement. Therefore, time is of the essence in consummating the Sale, and the Debtors and the Buyer intend to close the Sale as soon as reasonably practicable.

X.    **Assigned Contracts.**  The Debtors have demonstrated that it is their sound business judgment to sell, assume, and assign the "Assumed Contracts" and "Assumed Leases" (as such terms are defined in the Asset Purchase Agreement), including, without limitation, the unexpired leases and executory contracts designated on <u>Schedule 1.1(j)</u> of the Asset Purchase Agreement or the Huntsman Backup Bid Agreement (but not the Century Arms Backup Bid Agreement) (collectively, the "**Assigned Contracts**" and, individually, an "**Assigned Contract**") to the Buyer

13

in connection with the consummation of the Sale, and the assumption and assignment of the Assigned Contracts is in the best interests of the Debtors, their estates and creditors, and other parties in interest. The Assigned Contracts being assigned to the Buyer are an integral part of the Acquired Assets being purchased by the Buyer, and, accordingly, such assumption and assignment of the Assigned Contracts and the liabilities associated therewith are reasonable and enhance the value of the Debtors' estates. No section of any Assigned Contract that purports to prohibit, restrict, impose any penalty or fee on, or condition the use, consideration, or assignment of any such Assigned Contract in connection with the Transactions shall have any force or effect.

Y. **Cure and Adequate Assurance.** Through Buyer's commitment to pay all Cure Costs related to the Assigned Contracts, if any, and upon the payment of the Cure Costs by the Buyer pursuant to the terms of the Asset Purchase Agreement, the Buyer has cured or otherwise has demonstrated its ability to cure any default with respect to any act or omission that occurred prior to the Closing (as defined in the Asset Purchase Agreement) under any of the Assigned Contracts, within the meaning of Bankruptcy Code Section 365(b)(l)(A). The proposed Cure Costs or any other cure amount reached by agreement after any objection by a counterparty to an Assigned Contract (an "**Assigned Contract Objection**") or otherwise are deemed the amounts necessary to "cure" all "defaults," each within the meaning of Bankruptcy Code Section 365(b), under such Assigned Contracts. The Buyer's promise to perform the obligations under the Assigned Contracts shall constitute adequate assurance of its future performance of and under the Assigned Contracts, within the meaning of Bankruptcy Code Sections 365(b)(l) and 365(f)(2). All counterparties to the Assigned Contracts who did not file an Assigned Contract Objection or an objection to the assumption and assignment of the Assigned Contracts prior to the Sale Hearing, are deemed to consent to the assumption by the Debtors of their respective Assigned Contract and

the assignment thereof to the Buyer. The filed objections of all counterparties to the Assigned Contracts that were heard at the Sale Hearing (to the extent not withdrawn or adjourned), were considered by the Court, and are overruled on the merits with prejudice. The Court finds that, with respect to all such Assigned Contracts, the payment of the proposed Cure Costs by the Buyer in accordance with the terms of the Asset Purchase Agreement is appropriate and is deemed to fully satisfy the Debtors' obligations under Bankruptcy Code Section 365(b). Accordingly, and without limitation of the Buyer's right under Section 1.5(d) of the Asset Purchase Agreement (or Section 1.5(e) in the case of the Huntsman Backup Bid Agreement (as defined below)), all of the requirements of Bankruptcy Code Section 365(b) have been satisfied for the assumption and the assignment by the Debtors to the Buyer of each of the Assigned Contracts. To the extent any Assigned Contract is not an executory contract within the meaning of Bankruptcy Code Section 365, it shall be transferred to the Buyer in accordance with the terms of this Sale Order that are applicable to the Acquired Assets.

Z.   **Unenforceability of Anti-Assignment Provisions.** Any provisions in any Assigned Contract that restrict, limit, prohibit or condition the assumption, assignment, and sale of the Assigned Contracts or that allow the counterparty so such Assigned Contract to terminate, recapture, impose any penalty or fee, accelerate, increase any rate, condition on renewal or extension, or modify any term or condition upon the assignment of such Assigned Contract, should be deemed and found to be unenforceable anti-assignment provisions that are void and of no force and effect within the meaning of Bankruptcy Code Section 365(f).

AA.   **Objections are Overruled**. All objections to the relief requested in the Motion that have not been withdrawn, waived, adjourned or settled as announced to the Court at the Sale Hearing or by stipulations filed with the Court are overruled except as otherwise set forth herein.

15

BB. **Final Order**. This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order and expressly directs entry of judgment as set forth herein.

CC. **Best Interest**. Entry of this Sale Order is in the best interests of the Debtors, the Debtors' estates, their creditors, and other parties in interest.

DD. **Findings and Conclusions**. The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are adopted as such. To the extent any conclusions of law are findings of fact, they are adopted as such.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

<u>General Provisions</u>

1. The Motion is granted and the relief requested therein with respect to the Sale is granted and approved in its entirety, as set forth herein.

2. Any objections to the entry of this Sale Order or to the relief granted herein or the relief requested in the Motion, including any objections to the proposed Cure Costs or the assumption and assignment of any Assigned Contracts, that have not been adjourned, withdrawn, waived, or settled, or not otherwise addressed or resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits with prejudice.

<u>Approval of the Sale of the Acquired Assets</u>

3. The Debtors are authorized to enter into the Asset Purchase Agreement (and all schedules and exhibits thereto and all ancillary documents) and all the terms and conditions thereof, and all of the Transactions contemplated therein are approved in all respects. The transfer

Case 20-81688-CRJ11    Doc 875    Filed 09/29/20    Entered 09/29/20 08:11:36    Desc
Main Document    Page 143 of 326

of the Acquired Assets by the Debtors to the Buyer shall be a legal, valid and effective transfer of the Acquired Assets.

4.     Pursuant to Bankruptcy Code Section 363(b), the sale of the Acquired Assets to the Buyer free and clear of all Interests (other than the Permitted Liens and the Assumed Liabilities), and the transactions contemplated thereby is approved in all respects.

**Sale and Transfer of the Acquired Assets**

5.     Pursuant to Bankruptcy Code Sections 105, 363, and 365, the Debtors are authorized to (a) take any and all actions necessary or appropriate to perform their obligations under, and comply with the terms of, the Asset Purchase Agreement and consummate the Sale and the Transactions pursuant to, and in accordance with, the terms and conditions of the Asset Purchase Agreement and this Sale Order, including, without limitation (i) executing, acknowledging, and delivering such deeds, assignments, conveyances and other assurances, documents, and instruments of transfer and taking any action for purposes of assigning, transferring, granting, conveying, and conferring to the Buyer, or reducing to possession, any or all of the Acquired Assets and (ii) entering into the Ancillary Agreements, any transition services or operations support agreements with the Buyer and any other agreements related to implementing the Transactions and (b) take any and all further actions as may be necessary or appropriate to the performance of their obligations as contemplated by the Asset Purchase Agreement or this Sale Order.  The Debtors are further authorized to pay, without further order of this Court, whether before, at, or after the Closing, any reasonable expenses or costs that are required to be paid to consummate the Transactions or perform their obligations under the Asset Purchase Agreement.

6.     Following the Closing, the Debtors or the Buyer and/or their respective designees are authorized to execute and file a certified copy of this Sale Order, which, once filed, registered

or otherwise recorded, shall constitute conclusive evidence of the release of all obligations, liabilities, and Interests in the Acquired Assets of any kind or nature whatsoever (other than the Permitted Liens and Assumed Liabilities). Upon the Closing and the Debtors' receipt of the Purchase Price, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Debtors' interests in the Acquired Assets and a bill of sale transferring good and marketable title in the Acquired Assets to the Buyer free and clear of all Interests, except for the Permitted Liens and Assumed Liabilities. Each and every federal, state, and local governmental agency, quasi-agency, or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions.

7.      Except for the Permitted Liens, Assumed Liabilities or as expressly provided in the Asset Purchase Agreement, pursuant to Bankruptcy Code Sections 105(a) and 363(f), upon the Closing and the Debtors' receipt of the Purchase Price, the Acquired Assets shall be transferred to the Buyer as required under the Asset Purchase Agreement, and such transfer shall be free and clear of all Interests of any person, including, without limitation, all such Interests specifically enumerated in this Sale Order, whether arising by agreement, by statute, or otherwise and whether occurring or arising before, on, or after the Petition Date, whether known or unknown, occurring, or arising prior to such transfer, with all such Interests to attach to the proceeds of the Sale ultimately attributable to the property against or in which the holder of an Interest claims or may claim an Interest, in the order of their priority, with the same validity, force, and effect which they now have, subject to any claims and defenses the Debtors may possess with respect thereto. Without limiting the generality of the foregoing, the Acquired Assets shall be transferred to the Buyer free and clear of the following: (i) satisfy and release of record, Mortgage, Assignment of

18

Leases and Rents, Security Agreement and Fixture Filing, dated June 15, 2018, and filed for record June 21, 2018, in/as Instrument No. RP2018-2856 of the Records of Herkimer County, New York, executed by Remington Arms Company, LLC, in favor of Ankura Trust Company, LLC, securing the original principal amount of $55,000000; (ii) satisfy and release of record, Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated June 15, 2018, and filed for record June 21, 2020, in/as Instrument No. RP2018-2857, of the records of Herkimer County, New York, executed by Remington Arms Company, LLC, in favor of Ankura Trust Company, LLC, securing the original principal amount of $100,000,000; (iii) satisfy and release of record, Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated April 18, 2019, and filed for record April 22, 2019, in/as Instrument No. RP2019-[___], of the Records of Herkimer County, New York, executed by Remington Arms Company, LLC, in favor of Cantor Fitzgerald Securities, securing the original principal amount of $90,500,000; and (iv) satisfy and release of record, Lien Subordination Agreement by and between Remington Arms Company, LLC, Cantor Fitzgerald Securities, and Ankrura Trust Company, LLC, dated February 21, 2020, and filed for record February 28, 2020, in/as Instrument No. RP2020-[___], records of Herkimer County, New York.

8.    The transfer of the Acquired Assets to the Buyer pursuant to the Asset Purchase Agreement constitutes a legal, valid, and effective transfer of the Acquired Assets and shall vest the Buyer with all right, title, and interest of the Debtors in and to the Acquired Assets free and clear of all Interests of any kind or nature whatsoever, except for the Permitted Liens and Assumed Liabilities, with all such Interests to attach to the proceeds of the Sale ultimately attributable to the property against or in which the holder of an Interest claims or may claim an Interest, in the order

of their priority, with the same validity, force, and effect which they now have, subject to any claims and defenses the Debtors may possess with respect thereto.

9. All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Acquired Assets to the Buyer in accordance with the Asset Purchase Agreement and this Sale Order; *provided* that the foregoing restriction shall not prevent any party from appealing this Sale Order in accordance with applicable law or opposing any appeal of this Sale Order, or from enforcing its rights under Bankruptcy Code Section 365 or relieve the Buyer of any Assumed Liability.

10. Except as expressly permitted by the Asset Purchase Agreement or this Sale Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, dealers, employees, litigation claimants, contract counterparties and other creditors, holding liens, claims encumbrances, and other interests of any kind or nature whatsoever, including, without limitation, rights or claims based on any taxes or successor or transferee liability, against or in a Debtor or the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets or the operation of the Acquired Assets before the Closing, or the transactions contemplated by the Asset Purchase Agreement, including, without limitation, the Sale and the assumption and assignment of the Assigned Contracts, are forever barred, estopped, and permanently enjoined from asserting against the Buyer, its respective successors and assigns, its respective property and the Acquired Assets, such persons' or entities' liens, claims, encumbrances, or other Interests, including, without limitation, rights or claims based on any taxes or successor or transferee liability, *provided* that nothing herein shall impair or

otherwise affect any right under Bankruptcy Code Section 365 of a lease or contract counterparty to an Assigned Contract under its respective Assigned Contract(s), or relieve the Buyer of any Assumed Liability.

11.    Upon the Closing, each of the Debtors' creditors and any other holder of an Interest is authorized and directed, without cost to the Debtors, to execute such documents and take all other actions as may be necessary to release its Interest in the Acquired Assets, if any, as such Interest may have been recorded or may otherwise exist.  If any person or entity that has filed financing statements or other documents or agreements evidencing an Interest in the Debtors or the Acquired Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Interests, which the person or entity has with respect to the Debtors or the Acquired Assets or otherwise, then the Buyer and its designees are authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Debtors or the Acquired Assets and to file, register, or otherwise record a certified copy of this Sale Order, which shall constitute conclusive evidence of the release of all Interests of any kind or nature whatsoever in the Debtors or the Acquired Assets (other than the Permitted Liens and Assumed Liabilities).  Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement, including, without limitation, recordation of this Sale Order.

12.    Upon the Closing and the Debtors' receipt of the Purchase Price, all entities that are currently, or on the Closing may be, in possession of some or all of the Acquired Assets are

hereby directed to surrender possession of the Acquired Assets to the Buyer, unless the Buyer otherwise agrees.

13.     This Sale Order is self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Sale Order. However, the Debtors and the Buyer, and each of their respective officers, employees, and agents, are hereby authorized and empowered to take all actions and to execute and deliver any and all documents and instruments that either the Debtors or the Buyer deem necessary, desirable or appropriate to implement and effectuate the terms of the Asset Purchase Agreement and this Sale Order.

14.     To the maximum extent permitted by applicable non-bankruptcy law, (a) the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval (collectively, the "**Permits**") of the Debtors with respect to and included in the Acquired Assets, and (b) all Permits that are included in the Acquired Assets are deemed to have been, and hereby are directed to be, transferred to the Buyer as of the Closing Date. Nothing in this Sale Order, and nothing in the foregoing sentence, authorizes the transfer or assignment of any governmental Permit or the discontinuation of any obligation thereunder without compliance with all applicable legal requirements and approvals under police or regulatory law. To the extent any Permit cannot be transferred to the Buyer in accordance with this paragraph, the Buyer, with such assistance from the Debtors as is required under the Asset Purchase Agreement, will work promptly and diligently to apply for and secure all necessary government approvals for the transfer or new issuance of the Permit(s) to the Buyer, and the Debtors shall maintain the Permits to the extent required under and subject to the terms of the Asset Purchase Agreement. For the avoidance of doubt, while nothing in this Sale Order or the Asset Purchase

Agreement releases, nullifies, limits, waives, precludes, or enjoins the enforcement of any police or regulatory authority of a governmental unit, Buyer shall be entitled to operate under each state Permit currently held by or on behalf of the Debtors in relation to the Acquired Assets until such time as each such Permit is transferred to the Buyer and/or an equivalent Permit is issued to the Buyer.

15.    To the extent provided by Bankruptcy Code Section 525, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Acquired Assets sold, transferred, or conveyed to the Buyer on account of the filing or pendency of these Chapter 11 Cases or the consummation of the transactions contemplated by the Asset Purchase Agreement and this Sale Order.

**Implementation of the Sale**

16.    Upon Closing, the Buyer shall (a) pay the Purchase Price to the Debtors; (b) pay the Cure Amounts as more fully described in paragraph 30 of this Sale Order and the Asset Purchase Agreement; (c) assume the Assumed Liabilities; and (d) perform any other obligations required to be performed by Buyer on the Closing.  Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement, including, without limitation, recordation of this Sale Order.

17.    Within three (3) business days of the Debtors' receipt of the Net Sale Proceeds (as defined in the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection, (III) Modifying Automatic Stay, and (IV) Granting Related Relief* [Docket No. 410] (as it may be amended from time to time, the "**Cash Collateral Order**")) from the sale of the Acquired Assets, the Debtors shall pay the

Net Sale Proceeds of the Acquired Assets to the Priority Term Loan Agent, for the account of the Priority Term Loan Secured Creditors, to the extent required under and in accordance with the terms of the Cash Collateral Order or such other order of the Court. Upon the Priority Term Loan Agent's timely receipt of such payment, (a) the Priority Term Loan Obligations shall be paid and satisfied to the extent of the payment and (b) all liens and security interests against the Acquired Assets securing the Priority Term Loan Obligations shall be automatically released and discharged without further action by any person. Upon the payment in full in cash of the Priority Term Loan Obligations and the occurrence of the Challenge Period Termination Date (as defined in the Cash Collateral Order), (w) the Debtors shall have no further indebtedness, liabilities or obligations owing under the Priority Term Loan Credit Agreement or the other "Financing Agreements" (as defined in the Priority Term Loan Agreement, the "**Priority Term Loan Documents**"), (x) other than any provisions thereof that survive pursuant to the terms thereof, the Priority Term Loan Credit Agreement and all other Priority Term Loan Documents (including, without limitation, any mortgages, guaranties and security agreements) and all of the Debtors' obligations thereunder shall terminate and be of no further force and effect, (y) all liens and security interests against the property and assets of the Debtors securing the Priority Term Loan Obligations shall be automatically fully released and discharged without further action by any person, and (z) each deposit account control agreement in respect of or other sweeps or blocks of any Debtor's deposit accounts or lockboxes in favor of any of the Priority Term Loan Secured Parties shall terminate.

18.     The Debtors shall pay the Net Sale Proceeds from the sale of the Acquired Assets to the FILO Agent, for the account of the FILO Term Loan Secured Creditors, to the extent required under and in accordance with the terms of the Cash Collateral Order or such other order of the Court. For the avoidance of doubt, any further payment to the FILO Agent shall be subject

to orders previously entered by this Court and any further orders of this Court or provided under the Debtors' Chapter 11 plan.

19.    All parties in interest in these Chapter 11 Cases expressly reserve their rights with respect to any allocation of the Purchase Price or value among the purchased Acquired Assets, and any allocation of the Purchase Price or value among the purchased Acquired Assets as determined by the Buyer shall not be determinative or binding on any party in interest in these Chapter 11 Cases except as ordered by the Court after notice and a hearing.

**No Successor Liability**

20.    Other than as expressly set forth in the Asset Purchase Agreement, the Buyer and its Affiliates shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any Interests, including under any theory of successor or transferee liability, *de facto* merger or continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated, including without limitation, with respect to any of the following: (i) any foreign, federal, state, or local revenue law, pension law, ERISA, COBRA, tax law, labor law, employment law, the WARN Act, antitrust law, CERCLA, and any other environmental, health and safety laws, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules or regulations); (ii) under any products liability law, rule, regulation, or doctrine with respect to the Debtors' liability under such law, rule, regulation, or doctrine, or under any product warranty liability law or doctrine; (iii) under any unfair trade practices law, rule, regulation or doctrine with respect to the Debtors' liability under such law, rule, regulation or doctrine, or under any unfair trade practices liability law or doctrine; (iv) any employment or labor agreements, consulting agreements, severance arrangements, change-in-control agreements, or other similar agreement to

25

which the Debtors are a party; (v) any welfare, compensation, or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of the Debtors; (vi) the cessation of the Debtors' operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation, or other employee benefit plans, agreements, practices and programs, obligations that might otherwise arise from or pursuant to (a) ERISA, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967, (g) the Americans with Disabilities Act of 1990, or (h) COBRA; (vii) any liabilities, debts, or obligations of or required to be paid by the Debtors for any taxes of any kind for any period; (viii) any environmental liabilities, debts, claims fines, penalties, or obligations arising from conditions, facts or circumstances first existing or occurring on or prior to the Closing (including, without limitation, the presence of or exposure to chemical, hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis and at any time, including, without limitation, any liabilities, debts, claims, fines, penalties or obligations arising under CERCLA, or any other environmental, health, and safety laws; (viii) any liabilities, debts, claims, fines, penalties, or obligations of or required to be paid by the Debtors for any taxes of any kind for any period; (ix) any liabilities, debts, claims, fines, penalties, or obligations of or required to be paid by the Debtors under any labor, employment, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules, or regulations); (x) any bulk sale law; and (xi) any litigation. The Buyer shall have no liability or obligation under the WARN Act simply by virtue of its purchase of assets from the Debtors.

21. The Buyer has given substantial consideration under the Asset Purchase Agreement, which consideration shall constitute valid and valuable consideration for the releases

of any potential claims of successor liability of the Buyer and which shall be deemed to have been given in favor of the Buyer by all holders of Interests and liabilities (except with respect to Permitted Liens and the Assumed Liabilities) in or against the Debtors, or the Acquired Assets. Without limiting the Buyer's obligation to pay and satisfy the Assumed Liabilities, upon consummation of the Sale, the Buyer shall not be deemed to (a) be the successor to the Debtors or their estates, (b) have, *de facto* or otherwise, merged with or into the Debtors, or (c) be a mere continuation, *alter ego* or substantial continuation of the Debtors under any theory of law or equity (including veil piercing) as a result of any action taken in connection with the Asset Purchase Agreement or any of the transactions or documents ancillary thereto or contemplated thereby or in connection with the acquisition of the Acquired Assets.

22.     Effective upon the Closing, except with respect to Assumed Liabilities and Permitted Liens, all persons and entities are forever prohibited and enjoined from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against the Buyer, its Affiliates or its assets (including the Acquired Assets) with respect to any (a) Claim or Lien or (b) successor or transferee liability, including, without limitation, the following actions with respect to clauses (a) and (b): (i) commencing or continuing any action or other proceeding pending or threatened; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or Claim; (iv) asserting any setoff, right of subrogation, or recoupment of any kind; (v) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof; or (vi) revoking,

terminating, or failing or refusing to renew any License, permit, or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with such assets.

**<u>Good Faith</u>**

23.     The transactions contemplated by the Asset Purchase Agreement are undertaken by the Buyer without collusion and in good faith, as that term is used in Bankruptcy Code Section 363(m), and, accordingly, the reversal or modification on appeal of the authorization provided in this Sale Order to consummate the Sale and the Transactions shall not affect the validity of the transactions (including the assumption and assignment of any of the Assigned Contracts). The Buyer is a purchaser in good faith of the Acquired Assets and is entitled to all the protections afforded by Bankruptcy Code Section 363(m).

24.     As a good faith purchaser of the Acquired Assets, the Buyer has not entered into an agreement with any other potential bidders at the Auction, and has not colluded with any of the other bidders, potential bidders or any other parties interested in the Acquired Assets, and, therefore, neither the Debtors nor any successor in interest to the Debtors' estates shall be entitled to bring an action against the Buyer, and the Sale may not be avoided pursuant to Section 363(n) of the Bankruptcy Code.

25.     The consideration provided by the Buyer for the Acquired Assets under the Asset Purchase Agreement constitutes reasonably equivalent value, fair value, reasonable market value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia. The Sale may not be avoided under Bankruptcy Code Section 363(n). The Asset Purchase Agreement was not entered into, and the Sale is not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtors under the Bankruptcy Code or for any other purpose that would give rise to statutory

or common law fraudulent conveyance or fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable jurisdiction with laws substantially similar to the foregoing. Neither the Debtors nor the Buyer have entered into the Asset Purchase Agreement or any agreement contemplated thereby or are consummating the Sale with any fraudulent or otherwise improper purpose, including, without limitation, to evade any pension liabilities. No other person or entity or group of persons or entities has offered to purchase the Acquired Assets for an amount that would provide greater value to the Debtors and their estates than the value provided by the Buyer. The Court's approval of the Motion and the Asset Purchase Agreement are in the best interests of the Debtors, the Debtors' estates, their creditors, and all other parties in interest.

26. Neither the Buyer nor any of its Affiliates is an "insider" as that term is defined in Section 101(31) of the Bankruptcy Code.

**Assumption and Assignment of Assigned Contracts; Assumed Liabilities**

27. Pursuant to Bankruptcy Code Sections 105(a), 363, and 365 and subject to and conditioned upon the Closing of the Sale, the Debtors' sale, assumption and assignment to the Buyer of the Assigned Contracts is approved, and the requirements of Bankruptcy Code Section 365(b)(1) with respect thereto are deemed satisfied.

28. The Debtors are authorized in accordance with Bankruptcy Code Sections 105(a) and 365 to (i) assume and assign to the Buyer, effective as of the Closing, as provided by, and in accordance with, the Bidding Procedures Order and the Asset Purchase Agreement, the Assigned Contracts free and clear of all Interests of any kind or nature whatsoever, other than the Permitted Liens and Assumed Liabilities, and (ii) execute and deliver to the Buyer such documents or other

instruments as the Buyer reasonably deems necessary to assign and transfer the Assigned Contracts to the Buyer.

29.     The Assigned Contracts shall be transferred and assigned to, pursuant to the Bidding Procedures Order and the Asset Purchase Agreement, and thereafter remain in full force and effect for the benefit of, the Buyer, notwithstanding any provision in any such Assigned Contract (including, but not limited to, those of the type described in Bankruptcy Code Sections 365(b)(2), (e)(1), and (f)) that prohibits, restricts, requires the express consent or conditions such assignment or transfer.  The Debtors shall be relieved from any further liability with respect to the Assigned Contracts after such assumption and assignment to the Buyer.  The Debtors may assign each Assigned Contract in accordance with Bankruptcy Code Sections 363 and 365, and any provisions in any Assigned Contracts that prohibit or condition the assignment of such Assigned Contracts or terminate, recapture, require express consent, impose any penalty, condition, renewal, or extension, or modify any term or condition upon the assignment of such Assigned Contracts, constitute unenforceable anti-assignment provisions which are void and of no force and effect.  All other requirements and conditions under Bankruptcy Code Sections 363 and 365 for the assumption by the Debtors and assignment to the Buyer of each Assigned Contract have been satisfied.

30.     All defaults and all other obligations or liabilities under any Assigned Contract occurring, arising, or accruing prior to the date of the assignment or transfer to the Buyer shall be deemed cured or satisfied upon payment by the Buyer (in accordance with Section 1.5 of the Asset Purchase Agreement of the Huntsman Backup Bid Agreement but not the Century Arms Backup Bid Agreement) of the proposed Cure Cost, as set forth in the Notice of Assumption and Assignment, any Supplemental Notice of Assumption and Assignment, or any other cure amount

reached by agreement after an Assigned Contract Objection or otherwise, and, without limiting the foregoing, no effect shall be given to any default of the type set forth in Bankruptcy Code Section 365(b)(2), or the type of default concerning an unexpired lease of real property described in Bankruptcy Code Section 365(b)(1) whether or not such Assigned Contract is an executory contract within the meaning of Bankruptcy Code Section 365.

31.     Each non-Debtor counterparty to the Assigned Contracts shall be forever barred, estopped, and permanently enjoined from (a) asserting against the Debtors, the Buyer, or their respective property (including the Acquired Assets) any fee, acceleration, default, breach, Claim (including any counterclaim, defense, or setoff capable of being asserted against the Debtors), pecuniary loss, or condition to assignment existing, arising, or accruing as of the Closing Date, or arising by reason of the Closing, including any breach related to or arising out of any change-in-control provision in such Assigned Contracts, or any purported written or oral modification to the Assigned Contracts, and (b) asserting against the Buyer (or its property, including the Acquired Assets) any Claim or Lien, counterclaim, breach, condition or setoff asserted or capable of being asserted against the Debtors existing as of the Closing Date or arising by reason of the Closing except for the Assumed Liabilities and Permitted Liens.

32.     The Cure Costs amounts listed on the Notice of Assumption and Assignment, any Supplemental Notice of Assumption and Assignment or any other cure amount reached by agreement after an Assigned Contract Objection or otherwise, reflect the sole amounts necessary under Bankruptcy Code Section 365(b) to cure all monetary defaults under the Assigned Contracts, and no other amounts are or shall be due to the non-debtor parties in connection with the assumption by the Debtors and assignment to the Buyer of the Assigned Contracts. Notwithstanding anything to the contrary herein, if the Cure Costs for an Assigned Contract is

31

determined to be greater than the proposed Cure Costs asserted in the Notice of Assumption and Assignment or Supplemental Notice of Assumption and Assignment, the Buyer may decide, in its discretion, not to assume that Assigned Contract. Notwithstanding anything to the contrary herein, in each case in accordance with Bidding Procedures Order and the terms and conditions of the Asset Purchase Agreement, the Buyer may decide not to assume one or more unexpired leases and executory contracts designated on Schedule 1.1(i) of the Asset Purchase Agreement (or Schedule 1.5(a) of the Huntsman Backup Bid Agreement).

33. The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Buyer's rights to enforce every term and condition of the Assigned Contracts.

34. Notwithstanding anything in the Asset Purchase Agreement or this Sale Order to the contrary and for the avoidance of doubt, the Acquired Assets shall not include any of the Excluded Assets as set forth in Section 1.2 of the Asset Purchase Agreement.

35. The Buyer shall be responsible for the satisfaction of the Assumed Liabilities under the Asset Purchase Agreement, including without limitation those arising under the Assigned Contracts. Except as provided in the Asset Purchase Agreement or this Sale Order, after the Closing, the Debtors and their estates shall have no further liability or obligations with respect to any Assumed Liability, including those arising under the Assigned Contracts, and all holders of such claims are forever barred and estopped from asserting any claims under any Assumed Liability (including those arising under the Assigned Contracts) against the Debtors, their successors or assigns, and their estates.

**Backup Bidder**

32

36.     Huntsman Holdings, LLC (the "**Huntsman Backup Bidder**") is hereby approved as a Backup Bidder and pursuant to Bankruptcy Code Sections 105, 363, and 365, the Asset Purchase Agreement attached hereto as Exhibit B (the "**Huntsman Backup Bid Agreement**") submitted by the Huntsman Backup Bidder, the sale of the Acquired Assets (as defined in the Huntsman Backup Bid Agreement and consummation of the Sale to the Huntsman Backup Bidder are hereby approved as a Backup Bid.  Century Arms, Inc. (the "**Century Arms Backup Bidder**" and collectively with the Huntsman Backup Bidder, the "**Backup Bidder**") is hereby approved as a Backup Bidder and pursuant to Bankruptcy Code Sections 105, 363, and 365, the Asset Purchase Agreement attached hereto as Exhibit C (the "**Century Arm Backup Bid Agreement**" and collectively with the Huntsman Backup Bid Agreement, the "**Backup Bid Agreement**") submitted by the Century Arms Backup Bidder, the sale of the Acquired Assets (as defined in the Century Arms Backup Bid Agreement and consummation of the Sale to the Century Arms Backup Bidder are hereby approved as a Backup Bid.  The Backup Bid pursuant to the terms set forth in the Backup Bid Agreement is hereby approved and authorized as a Backup Bid and shall remain open as a Backup Bid pursuant to the terms of the Bidding Procedures Order and the bid terms submitted at the Auction.  In the event that the Successful Bidder cannot or refuses to consummate the Sale because of a breach or failure on the part of the Successful Bidder, the Backup Bidder will be deemed the new Successful Bidder and the Debtors shall be authorized, but not directed, to close, and take all actions necessary to close, with the Backup Bidder on the Backup Bid without further order of the Court, and in such case the findings and other provisions of this Sale Order shall apply to the applicable Backup Bidder and the applicable Backup Bid Agreement to the same extent they do with respect to the Buyer and the Asset Purchase Agreement.

**Other Provisions**

37.     Nothing in this Sale Order or in the Asset Purchase Agreement entered into pursuant to this Sale Order releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory authority of a governmental unit.

38.     This Sale Order and the Asset Purchase Agreement shall be binding in all respects upon all persons, entities, and known and unknown creditors of, and holders of equity security interests in, any Debtor, including any holders of Interests, all counterparties to the Assigned Contracts, all counterparties to contracts that are not assumed or assigned, all successors and assigns of the Buyer, each Debtor and their affiliates and subsidiaries, the Acquired Assets, and any trustees appointed in the Chapter 11 Cases or upon a conversion to cases under Chapter 7 of the Bankruptcy Code, and this Sale Order shall not be subject to amendment or modification and the Asset Purchase Agreement shall not be subject to rejection.  Nothing contained in any Chapter 11 plan confirmed in any Debtor's bankruptcy case, any order confirming any such Chapter 11 plan, or any other order in the Chapter 11 Cases shall alter, conflict with, or derogate from, the provisions of the Asset Purchase Agreement or this Sale Order.

39.     To the extent applicable, the automatic stay pursuant to Section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtors to the extent necessary, without further order of the Court (a) to allow the Buyer to give the Debtors any notice provided for in the Asset Purchase Agreement, and (b) to allow the Buyer to take any and all actions permitted by the Asset Purchase Agreement.

40.     No bulk sales law or similar law shall apply in any way to the transactions contemplated by the Sale, the Asset Purchase Agreement, the Motion, and this Sale Order.

34

41.     This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Asset Purchase Agreement, all amendments thereto, and any waivers and consents thereunder, including, but not limited to, retaining jurisdiction to (i) enforce the terms of the Asset Purchase Agreement; (ii) compel delivery of the Acquired Assets to the Buyer; (iii) interpret, implement, and enforce the provisions of this Sale Order; (iii) protect the Buyer, any of the Buyer's Affiliates, or any agent of the foregoing, against any Interests against the Debtors or the Acquired Assets of any kind or nature whatsoever, except for the Permitted Liens and Assumed Liabilities, and (iv) enter any order under Bankruptcy Code Sections 363 and 365.

42.     No brokers were involved in consummation of the Sale, and no brokers' commissions are due to any person in connection with the Sale; *provided, however*, that this provision does not impact any transaction or other fees due to investment bankers or financial advisors employed (a) by the Debtors, including, but not limited to Ducera Partners LLC, or certain of their creditors for which the Debtors may be obligated to pay in accordance with an engagement letter with such professional(s), or (b) by the Buyer, including, but not limited to, in the case of the Backup Bidder, Moelis & Company LLC.

43.     To the extent there is any inconsistency between the terms of this Sale Order and the terms of the Asset Purchase Agreement (including all ancillary documents executed in connection therewith), the terms of this Sale Order shall govern.

44.     The failure to specifically include any particular provision of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement be authorized and approved in its entirety.

45.    The Asset Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, *provided* that the Debtors shall provide the Bid Consultation Parties with three (3) business days' notice thereof and *provided* further that any such modification, amendment, or supplement does not, based on the Debtors' judgment, have a material adverse effect on the Debtors' estates.

46.    Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Sale Order shall not be stayed for fourteen (14) days after its entry and shall be effective immediately upon entry, and the Debtors and the Buyer are authorized to close the transaction immediately upon entry of this Sale Order.  Time is of the essence in closing the transactions referenced herein, and the Debtors and the Buyer intend to close the transactions as soon as practicable.  This Sale Order is a final, appealable order and the period in which an appeal must be filed shall commence upon the entry of this Sale Order.

47.    The provisions of the Asset Purchase Agreement and this Sale Order may be specifically enforced in accordance with the Asset Purchase Agreement notwithstanding the appointment of any Chapter 7 or Chapter 11 trustee after the Closing.

48.    Headings utilized in this Sale Order are for convenience of reference only, and do not constitute a part of this Sale Order for any other purpose.

49.    All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

50.    The provisions of this Sale Order are non-severable and mutually dependent.

51.    All issues raised by Oracle America, Inc. ("**Oracle**") in *Oracle's Limited Objection and Reservation of Rights Regarding (a) Debtors' Motion for (a) an Order Establishing Bidding*

36

*Procedures and Granting Related Relief and (ii) an Order or Orders Approving the Sale of the Debtors' Assets; and (b) Notice of Executory Contracts and Unexpired Leases that May Be Assumed and Assigned in Connection with the Sale of the Debtors' Assets and the Proposed Cure Cost with Respect Thereto* (the "Oracle Objection") [Docket No. 529] are expressly reserved. The Oracle Objection may be set for hearing on an expedited basis upon the request of Oracle and/or the Debtors.

52.     Nothing in the Asset Purchase Agreement or in this Order shall have the effect of transferring, impairing, reducing or otherwise limiting any of the Debtors' rights in any insurance policies covering Excluded Liabilities or the proceeds of such polices. For the avoidance of doubt, the Debtors reserve control over the privilege concerning any retained documents and nothing in this Order relieves the Debtors of any document retention obligations.

53.     To the extent any molds and tooling manufactured by Oneida Molded Plastics, LLC ("**Oneida**") are included in the Acquired Assets (the "**Acquired Mold Product**"), any lien of Oneida on the Acquired Mold Product will be released and shall attach to the proceeds thereof with the same priority, extent, validity, avoidability and enforceability as Oneida's lien, if any, on the Acquired Mold Product. Nothing herein shall constitute a finding or ruling by this Court  or an admission by the Debtors that any such liens are valid, senior, enforceable, perfected or non-avoidable. Moreover, nothing shall prejudice the rights of any party in interest including, but not limited to, the Debtors and any Committee to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any such lien.

54.     Notwithstanding anything to the contrary in this Order or the Asset Purchase Agreement, the Debtors do not purport to assume or assign to Buyer the license agreement dated as of January 23, 2008 between Magpul Industries Corp ("**Magpul**") and the Debtors, and nothing

in this order limits or otherwise modifies, to the extent such license exists, any express or implied license granted by the Debtors to Magpul in connection with Magpul's production of accessories for Debtors' firearm products or any rights or defenses of the Debtors in connection therewith, including any right of revocation and any right to assign the Debtors' rights in connection therewith to the Buyer.

Dated: _____, 2020

_____
UNITED STATES BANKRUPTCY JUDGE

# Exhibit A

## Asset Purchase Agreement

**Exhibit B**

**Huntsman Backup Bid Agreement**

US_ACTIVE-154466812.6

**<u>Exhibit C</u>**

**Century Arms Backup Bid Agreement**

**<u>Exhibit C</u>**

**Redline of Sturm, Ruger & Company, Inc. Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| In re:<br><br>REMINGTON OUTDOOR COMPANY, INC., *et al.*, [1]<br><br><br>Debtors. | Chapter 11<br><br>Case No. 20-81688-CRJ11<br><br>Jointly Administered |

## ORDER APPROVING THE SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL CLAIMS, LIENS, AND INTERESTS

This matter having come before the Court upon the motion (the "**Motion**")[2] by Remington

Outdoor Company, Inc., ("**Remington**" or the "**Company**"), and its affiliated debtors and debtors

in possession (collectively the "**Debtors**") in the above-captioned Chapter 11 cases seeking entry

of an order pursuant to §§ 105(a), 363, and 365 of title 11 of the United States Code (the

"Bankruptcy Code"), Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy

Procedure, (this "**Sale Order**") (a) authorizing the sale of the Acquired Assets (as defined in the

Asset Purchase Agreement (as defined below)) free and clear of all Interests (as defined below),

pursuant to that certain Asset Purchase Agreement dated September 26, 2020, attached hereto as

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405).  The Debtors' corporate headquarters is located at 100 Electronics Blvd SW, Huntsville, Alabama 35824.

[2]  Capitalized terms used but not otherwise defined herein have the meanings given to them in the Motion or the Asset Purchase Agreement, as applicable.

Exhibit A (the "**Asset Purchase Agreement**" or "**APA**"), by and among the Debtors and Sturm, Ruger & Company., Inc. (the "**Buyer**"), and all other transaction documents related thereto; (b) authorizing the assumption and assignment of certain executory contracts and unexpired leases, if any; and (c) granting the related relief contemplated therein; and the Court having considered the evidence in support of the relief sought in the Motion; the objections to Debtors' Motion; and responses and any replies thereto and all of the statements, arguments and representations of the parties made at the Sale Hearing; and the entire record of these cases; and having found that (i) the Court has jurisdiction over this matter; (ii) venue is proper in this District; (iii) this is a core proceeding; (iv) the notice of the Motion and the Sale Hearing (as defined below) was sufficient under the circumstances; and (v) there is good cause to waive the stay of Bankruptcy Rule 6004(h); and based further on the statements of counsel and all of the evidence presented in support of the relief requested by the Debtors in the Motion at a hearing before this Court on September 29 [and 30], 2020 (the "**Sale Hearing**"); and it appearing that proper notice having been given and no other notice need be given; and the Court, having determined that the relief sought in the Motion is in the best interests of the Debtors, and their estates, and that the legal and factual bases set forth in the Motion and presented at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      **Jurisdiction, Core Proceeding, Statutory Predicates, and Venue.** This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *General Order of Reference* of the United States District Court for the Northern District of Alabama dated July 16, 1984 as amended July 17, 1984. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The predicates for the relief granted herein are Bankruptcy Code Sections 105, 363,

2

and 365 and Bankruptcy Rules 2002, 6004, and 6006.  Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    **Just Cause.**  The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Sale Order is in the best interests of the Debtors and their respective estates, creditors, and all other parties in interest.

C.    **Notice.**  The notice of the Motion, the Sale Hearing, the Asset Purchase Agreement, the transactions contemplated therein or in connection therewith and corresponding transactions documents (the "**Transactions**"), and the proposed entry of this Sale Order was adequate and sufficient under the circumstances of the Chapter 11 Cases, and such notice complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  A reasonable opportunity to object or be heard regarding the relief granted by this Sale Order has been afforded to those parties entitled to notice pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  Accordingly, no further notice of the Motion, the Sale Hearing, or this Sale Order is necessary or required.

D.    The Publication Notice was published in the *New York Times* on August 24, 2020. Such Publication Notice was compliant with the Bidding Procedures Order, and was sufficient and proper notice to any other interested parties, including those whose identities are unknown to the Debtors.

E.    **Extensive Efforts by Debtors.**  Since before the commencement of the Chapter 11 Cases, the Debtors worked with their counsel and financial advisors to implement a viable transaction that would allow them to maximize the value of the Acquired Assets.  In addition, since the filing of the case the Debtors have worked with the financial advisors of the Committee to identify and solicit bids from any additional potential bidders identified by the Committee's

3

financial advisors. The transaction that is the subject of this Sale Order is the result of the Debtors' extensive efforts seeking to maximize recoveries to the Debtors' estates for the benefit of the Debtors' creditors.

F.    **Business Justification.** The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business justification for the Court to grant the relief requested in the Motion, including, without limitation, to (i) authorize the sale of the Acquired Assets free and clear of Interests other than Permitted Liens (as defined in the Asset Purchase Agreement) and Assumed Liabilities (as defined in the Asset Purchase Agreement); (ii) authorize the assumption and assignment of certain executory contracts and unexpired leases; and (iii) grant related relief as set forth herein. Such compelling and sound business justification, which was set forth in the Motion and on the record at the Sale Hearing, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

G.    **Bidding Procedures Order.** The Bidding Procedures Order [Docket No. 411] was entered by the Court on August 20, 2020, which, among other things (i) approved the Bidding Procedures; (ii) established the Assumption and Assignment Procedures; (iii) approved the form and manner of notice with respect to all procedures, protections, schedules, and agreements described in the Motion and attached thereto; and (iv) scheduled a date for the Auction and Sale Hearing. The Bidding Procedures provided a full, fair, and reasonable opportunity for any entity to make an offer to purchase the Acquired Assets.

H.    **Auction Successful Bidder.** The sale process was properly conducted by the Debtors in accordance with the Bidding Procedures Order and in a manner designed to result in

4

the highest or otherwise best offer for the Acquired Assets. At the Auction, commencing on September 17, 2020 at 10:00 AM (Central Time) and concluding on September [___], 2020 at [  ], the Debtors agreed in a reasonable exercise of their business judgment, in consultation with their management, the Restructuring Committee, advisors and the Bid Consultation Parties, to enter into and consummate Asset Purchase Agreement with the Buyer. At the conclusion of the Auction, the Buyer was determined to be the Successful Bidder.

      **I.**      **Asset Purchase Agreement.** The consummation of the Transactions contemplated by the Asset Purchase Agreement, the Motion, and this Sale Order is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and all of the applicable requirements of such sections and rules have been complied with in respect of such transactions.

      **J.**      **Sale Hearing.** The Sale Hearing occurred on September 29 [and 30], 2020 in accordance with the Bidding Procedures Order.

      **K.**      **Adequate Marketing; Highest or Otherwise Best Offer.** As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing, including the Declaration of Ken D'Arcy in Support of Chapter 11 Petitions and First Day Pleadings of Remington Outdoor Company, Inc. and its affiliated debtors and debtors-possession [Docket No. 6] and the Declaration of Bradley C. Meyer in Support of Debtors' Cash Collateral Motion and Bidding Procedures Motion [Docket No. 355]; and (ii) the representations of counsel made on the record at the Bidding Procedures Hearing and the Sale Hearing, (a) the Debtors have adequately marketed the Acquired Assets and conducted a sale process in a non-collusive, fair and good faith manner in compliance with the Bidding Procedures Order; (b) the process set forth in the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any interested party to make

5

the highest or otherwise best offer to purchase the Acquired Assets and assume the Assumed Liabilities; (c) the consideration provided by the Buyer in the Asset Purchase Agreement constitutes the highest or otherwise best offer to purchase the Acquired Assets and assume the Assumed Liabilities; (d) the consideration provided by the Buyer in the Asset Purchase Agreement provides fair and reasonable consideration for the Acquired Assets and the assumption of the Assumed Liabilities and constitutes reasonably equivalent value, fair value and reasonable market value under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, the District of Columbia, or other applicable law; (e) the Sale will provide a greater recovery for the Debtors' creditors with respect to the Acquired Assets than would be provided by any other practically available alternative; (f) taking into consideration all relevant factors and circumstances, and after taking account of the Bid Protections, no other entity has offered to purchase the Acquired Assets for greater economic value to the Debtors or their estates; and (g) the Debtors' determination that the Asset Purchase Agreement constitutes the highest or otherwise best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtors' business judgment.

L. **No Successor Liability.** Neither the Buyer nor any of its affiliates, officers, directors, shareholders, members, partners, principals or any of their respective representatives, successors, or assigns is an "insider or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors, or stockholders existed or exists between the Buyer and the Debtors. The transfer of the Acquired Assets to and the assumption of the Assumed Liabilities by the Buyer, except as otherwise set forth in the Asset Purchase Agreement, does not, and will not, subject the Buyer to any liability whatsoever, with respect to the operation of the Debtors' businesses prior to the closing of the Sale or by reason of

6

such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity including, without limitation, any laws affecting antitrust, successor, transferee, or vicarious liability.  Pursuant to the Asset Purchase Agreement, the Buyer is not purchasing all of the Debtors' assets in that the Buyer is not purchasing any of the Excluded Assets or assuming the Excluded Liabilities, and the Buyer is not holding itself out to the public as an *alter ego* or a continuation of the Debtors.  The Buyer does not have any dominion or control over the Debtors and the Sale does not amount to a consolidation, merger, or *de facto* merger of the Buyer and the Debtors.  There is no substantial continuity between the Buyer and the Debtors, and there is no continuity of enterprise between the Debtors and the Buyer.  The Buyer is not a mere continuation of the Debtors or the Debtors' estates, and the Buyer does not constitute a successor to the Debtors or the Debtors' estates under any theory at law or in equity.  None of the Transactions, including, without limitation, the Sale or the assumption and assignment of the Assigned Contracts, is being undertaken for the purpose of escaping liability for any of the Debtors' debts or hindering, delaying, or defrauding creditors under the Bankruptcy Code or for any other purpose that would give rise to statutory or common law fraudulent conveyance or fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, the District of Columbia, or any other applicable jurisdiction with laws substantially similar to the foregoing.

   **M.**     **Acquired Assets Property of the Estate.**  The Acquired Assets are property of the Debtors' estates and title thereto is vested in the Debtors' estates.

   **N.**     **Sale in Best Interest/Fiduciary Duties.**  The Debtors have demonstrated a sufficient basis and compelling circumstances requiring them to enter into the Asset Purchase

Agreement and sell the Acquired Assets and such actions are appropriate under the circumstances of these Chapter 11 Cases, are in the best interests of the Debtors, their estates and creditors, and other parties in interest, and represent a reasonable exercise of business judgment by the Debtors and the Restructuring Committee and their fulfillment of their fiduciary duties under applicable law. Approval of the Asset Purchase Agreement, the Sale, and the Transactions at this time is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest. Unless the sale is concluded expeditiously, the recoveries of all of the Debtors estates and constituencies are likely to be adversely affected.

O.     **Not a *Sub Rosa* Plan.**  The consummation of the Sale outside of a plan of reorganization pursuant to the Asset Purchase Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a plan of reorganization or liquidation for the Debtors.  The Asset Purchase Agreement, the Sale and the transactions contemplated therein and associated therewith do not constitute an impermissible *sub rosa* Chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford.

P.     **Arm's-Length Sale.**   The Asset Purchase Agreement, the Sale, and the Transactions were negotiated, proposed, and entered into by the Debtors and the Buyer without collusion, in good faith, and from arm's-length bargaining positions.  Neither the Debtors, their insiders and affiliates, nor the Buyer have engaged in any conduct that would cause or permit the Asset Purchase Agreement, the Sale, or any part of the transactions thereby to be avoided under Bankruptcy Code Section 363(n).  Neither the Buyer nor any of its affiliates or representatives is an "insider" of the Debtors, as that term is defined in § 101(31). The terms and conditions of the Asset Purchase Agreement and any related  transaction documents, including, without limitation,

8

the consideration provided in respect thereof, are fair and reasonable, and are not avoidable and shall not be avoided, and no damages may be assessed against the Buyer or any other party as set forth in § 363(n). The consideration provided by the Buyer is fair, adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable laws of the United States or any of its jurisdictions or subdivisions, including the State of Alabama.

Q. **Good Faith Buyer.** The Buyer is a good faith purchaser under Bankruptcy Code Section 363(m) and, as such, is entitled to all of the protections afforded thereby. Specifically: (i) the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Acquired Assets; (ii) the Buyer complied in all respects with the provisions of the Bidding Procedures Order; (iii) the Buyer agreed to subject its bid to the competitive bid procedures set forth in the Bidding Procedures Order; (iv) all payments to be made by the Buyer in connection with the Sale have been disclosed; (v) no common identity of directors, officers or controlling stockholders exists among the Buyer and the Debtors; (vi) the negotiations and execution of the Asset Purchase Agreement was at arm's-length and in good faith, and at all times each of the Buyer and the Debtors were represented by competent counsel of their choosing; (vii) the Buyer did not in any way induce or cause the Chapter 11 filing of the Debtors; and (viii) the Buyer has not acted in a collusive manner with any person. The Buyer will be acting in good faith within the meaning of Bankruptcy Code Section 363(m) in closing the transactions contemplated by the Asset Purchase Agreement. The Asset Purchase Agreement was not entered into, and the Transaction being consummated pursuant to and in accordance with the Asset Purchase Agreement is not being consummated, for the purpose of hindering, delaying or defrauding creditors of the Debtors. The Buyer is therefore entitled to all of the benefits and protections provided to good-

9

faith purchasers under Bankruptcy Code Section 363(m). Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transaction shall not affect the validity of the Transaction, any terms or conditions of the Transaction or the Buyer's status as "good faith" purchaser under Bankruptcy Code Section 363(m).

R.      **Corporate Authority.**  Each Debtor (i) has full corporate power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby, and the Sale of the Acquired Assets has been duly and validly authorized by all necessary corporate actions of each of the Debtors; (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by the Asset Purchase Agreement; (iii) has taken all corporate action necessary to authorize and approve the Asset Purchase Agreement and the consummation by the Debtors of the transactions contemplated thereby; and (iv) needs no consents or approvals, other than those expressly provided for in the Asset Purchase Agreement, which may be waived in accordance with the terms therewith.

S.      **Free and Clear Findings Required by the Buyer.**  (1) In accordance with Bankruptcy Code Section 363(b) and 363(f), the consummation of the Sale pursuant to the Asset Purchase Agreement and any related transaction documents for the purchase of the assets as provided therein (the "**Acquired Assets**") shall be a legal, valid, and effective transfer and sale of the Acquired Assets and shall vest in the Buyer, through the consummation of the Sale at closing with all of the Debtors' right, title, and interest in and to the Acquired Assets, free and clear of Liens (as defined below), Claims (as defined below) and Interests (defined below) (Claims and Interests collectively referred to as ("**Encumbrances**")). The Debtors have demonstrated that one or more of the standards set forth in Bankruptcy Code Section 363(f)(1)-(5) have been satisfied. Those holders of Liens or Encumbrances who did not object, or who withdrew their objections, to

10

the sale or the Motion are deemed to have consented pursuant to Bankruptcy Code Section 363(f)(2). Those holders of Liens or Encumbrances who did object fall within one or more of the other subsections of Bankruptcy Code Section 363(f). All holders of the Liens or Encumbrances in the Acquired Assets are adequately protected by having their respective Liens or Encumbrances attach to the Debtors' interests in the proceeds of the sale of the Acquired Assets under the Asset Purchase Agreement.  (2) The Court further finds that the Buyer would not have entered into the Asset Purchase Agreement and would not consummate the Sale Transaction, thus adversely affecting the Debtors, their estates, and their creditors, if the Sale of the Acquired Assets to the Buyer and the assumption and assignment of Assigned Contracts, were not, pursuant to Bankruptcy Code Section 363(f), free and clear (except for Permitted Liens and Assumed Liabilities, if any) of (i) all liens (statutory or otherwise), claims, mortgages, deeds of trust, pledges, charges, security interests, rights of first refusal, hypothecations, encumbrances, easements, servitudes, leases or subleases, rights-of-way, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of offset or recoupment, right of use or possession, licenses, indentures, instruments, conditional sale arrangements (collectively "**Liens**"), (ii) all claims as defined in Bankruptcy Code Section 101(5), including all rights or causes of action (whether in law or in equity), proceedings, warranties, guarantees, indemnities, rights of recovery, setoff, recoupment, indemnity or contribution, obligations, demands, restrictions, indemnification claims, or liabilities relating to any act or omission of the Debtors or any other person prior to the Closing, consent rights, options, contract rights, covenants, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of the above-captioned cases, and whether imposed by

11

agreement, understanding, law, equity or otherwise, (collectively "**Claims**"),  and (iii) all rights and entitlements of any nature including, without limitation, security interests, assignments of Liens or Claims, licenses, leases, contract rights, indentures, instruments, licenses, options, escheatment, abandoned property, unclaimed property, covenants, conditions, zoning, planning and any other restrictions, easements, encroachments, Permits or other interests in property or limitations on the use of real property or irregularities in title, rights of first refusal, rights to injunctive or other legal or equitable relief, any attributes of ownership, rights or restrictions of any kind and nature, whenever incurred, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, matured or unmatured, legal or equitable (excluding Permitted Liens and Assumed Liabilities)( collectively, the "**Interests**"). (3)  Except as expressly provided in the Asset Purchase Agreement, the Sale shall be free and clear of all Liens,   and Encumbrances, and the Buyer shall not be responsible for, any Liens or Encumbrances, including, without limitation, in respect of the following:  (i) any Liens or Encumbrances based on any successor or transferee liability, (ii) any Liens or Encumbrances that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or termination of the Debtors' or the Buyer's interest in the Acquired Assets, or any similar rights; (iii) any labor or employment agreements; (iv) mortgages, deeds of trust, and security interests; (v) intercompany loans and receivables between the Debtors and any non-Debtor subsidiary; (vi) any pension, multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of ERISA), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability; (vii) any other employee, worker's compensation, occupational disease, or unemployment or temporary disability

12

related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**"), (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Code and of any similar state law (collectively, "**COBRA**"), (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors, or (1) the WARN Act (29 U.S.C. §§2101 *et seq*.); (viii) any bulk sales or similar law; (ix) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (xii) any unexpired and executory contract or unexpired lease to which a Debtor is a party that is not an Assigned Contract that will be assumed and assigned pursuant to this Sale Order and the Asset Purchase Agreement; (xiii) any other Excluded Liabilities as provided in the Asset Purchase Agreement.  A sale of the Acquired Assets other than one free and clear of all Liens and Encumbrances would yield substantially less value for the Debtors' estates, with less certainty, than the Sale as contemplated.  Therefore, the Sale contemplated by the Asset Purchase Agreement and approved herein free and clear of all Interests, except for Permitted Liens and Assumed Liabilities, is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

        T.      **Valid and Binding Transfer.**  The transfer of the Acquired Assets to the Buyer will be a legal, valid, and effective transfer of the Acquired Assets and, except for any Permitted

Case 20-81688-CRJ11    Doc 875    Filed 09/29/20    Entered 09/29/20 08:11:36    Desc
Main Document      Page 182 of 326

Liens and Assumed Liabilities, will vest the Buyer with all right, title, and interest of the Debtors to the Acquired Assets free and clear of all Interests and any liabilities of the Debtors.

U.    **Satisfaction of Section 363(f) Standards.**  The transfer of the Acquired Assets to the Buyer under the Asset Purchase Agreement shall be a legal, valid, and effective transfer of all the legal, equitable, and beneficial right, title and interest in and to the Acquired Assets free and clear of all Liens and Encumbrances, other than the Assumed Liabilities and Permitted Liens.  The Debtors may sell the Acquired Assets free and clear of all Liens and Encumbrances, except for any  Permitted Liens and the Assumed Liabilities, because, in each case, one or more of the standards set forth in Bankruptcy Code Section 363(f)(1) through (5) has been satisfied, with all such Liens and Encumbrances  to attach to the proceeds of the Sale Transaction to be received by the Debtors with the same validity, force, priority and effect that they had as against the Acquired Assets, and any claims and defenses the Debtors and their estates may possess with respect thereto. Those holders of Interests, and non-debtor parties to the Assigned Contracts who did not object, or who withdrew their objections, to the Motion are, without limitation, deemed to have consented pursuant to Bankruptcy Code Section 363(f)(2).  In all cases, each such person with Liens or Encumbrances in the Acquired Assets is enjoined from taking any action against the Buyer, the Buyer's affiliates, or any agent of the foregoing to recover any such Interest.

V.    **Necessity of Order.**  The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the Sale Transaction without all of the relief provided for in this Sale Order (including, but not limited to, that the transfer of the Acquired Assets to the Buyer be free and clear of all Liens and Encumbrances (other than Permitted Liens and the Assumed Liabilities)).  The consummation of the Sale Transaction pursuant to this Sale Order and

14

the Asset Purchase Agreement is necessary for the Debtors to maximize the value of their estates for the benefit of all creditors and other parties in interest.

W. **Time of the Essence.** The sale of the Acquired Assets must be approved and consummated promptly in order to preserve the value of the Acquired Assets. Therefore, time is of the essence in consummating the Sale, and the Debtors and the Buyer intend to close the Sale as soon as reasonably practicable.

X. **Assigned Contracts.** The Debtors have demonstrated that it is their sound business judgment to sell, assume, and assign the "**Assigned Contracts**" (as such terms are defined in the Asset Purchase Agreement), including, without limitation, the unexpired leases and executory contracts designated on Schedule 1.1(e) of the Asset Purchase Agreement (collectively, the "**Assigned Contracts**" and, individually, an "**Assigned Contract**") to the Buyer in connection with the consummation of the Sale, and the assumption and assignment of the Assigned Contracts is in the best interests of the Debtors, their estates and creditors, and other parties in interest. The Assigned Contracts being assigned to the Buyer are an integral part of the Acquired Assets being purchased by the Buyer, and, accordingly, such assumption and assignment of the Assigned Contracts and the liabilities associated therewith are reasonable and enhance the value of the Debtors' estates. No section of any Assigned Contract that purports to prohibit, restrict, impose any penalty or fee on, or condition the use, consideration, or assignment of any such Assigned Contract in connection with the Transactions shall have any force or effect.

Y. **Cure and Adequate Assurance.** Through the Buyer's commitment to pay all Cure Costs related to the Assigned Contracts, if any, and upon the payment of Cure Costs by the Buyer pursuant to the terms of the Asset Purchase Agreement, the Debtors and the Buyer, as applicable, have cured or otherwise have demonstrated their ability to cure any default with respect to any act

15

or omission that occurred prior to the Closing (as defined in the Asset Purchase Agreement) under any of the Assigned Contracts, within the meaning of Bankruptcy Code Section 365(b)(l)(A). The proposed Cure Costs or any other cure amount reached by agreement after any objection by a counterparty to an Assigned Contract (an "**Assigned Contract Objection**") are deemed the amounts necessary to "cure" all "defaults," each within the meaning of Bankruptcy Code Section 365(b), under such Assigned Contracts. The Buyer's promise to perform the future obligations under the Assigned Contracts, if any, shall constitute adequate assurance of its future performance of and under the Assigned Contracts, within the meaning of Bankruptcy Code Sections 365(b)(l) and 365(f)(2). All counterparties to the Assigned Contracts who did not file an Assigned Contract Objection or an objection to the assumption and assignment of the Assigned Contracts prior to the Sale Hearing, are deemed to consent to the assumption by the Debtors of their respective Assigned Contract and the assignment thereof to the Buyer. The filed objections of all counterparties to the Assigned Contracts that were heard at the Sale Hearing (to the extent not withdrawn or adjourned), were considered by the Court, and are overruled on the merits with prejudice. The Court finds that, with respect to all such Assigned Contracts, the payment of the proposed Cure Costs by the Buyer in accordance with the terms of the Asset Purchase Agreement is appropriate and is deemed to fully satisfy the Debtors' obligations under Bankruptcy Code Section 365(b). Accordingly, all of the requirements of Bankruptcy Code Section 365(b) have been satisfied for the assumption by the Debtors and the assignment to the Buyer of each of the Assigned Contracts. To the extent any Assigned Contract is not an executory contract within the meaning of Bankruptcy Code Section 365, it shall be transferred to the Buyer in accordance with the terms of this Sale Order that are applicable to the Acquired Assets.

16

**Z.** **Unenforceability of Anti-Assignment Provisions.** Any provisions in any Assigned Contract that restrict, limit, prohibit or condition the assumption, assignment, and sale of the Assigned Contracts or that allow the counterparty so such Assigned Contract to terminate, recapture, impose any penalty or fee, accelerate, increase any rate, condition on renewal or extension, or modify any term or condition upon the assignment of such Assigned Contract, should be deemed and found to be unenforceable anti-assignment provisions that are void and of no force and effect within the meaning of Bankruptcy Code Section 365(f).

**AA.** **Objections are Overruled.** All objections to the relief requested in the Motion that have not been withdrawn, waived, adjourned or settled as announced to the Court at the Sale Hearing or by stipulations filed with the Court are overruled except as otherwise set forth herein.

**BB.** **Final Order.** This Sale Order constitutes a final order within the meaning of 20 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order and expressly directs entry of judgment as set forth herein.

**CC.** **Best Interest.** Entry of this Sale Order is in the best interests of the Debtors, the Debtors' estates, their creditors, and other parties in interest.

**DD.** **Findings and Conclusions.** The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are adopted as such. To the extent any conclusions of law are findings of fact, they are adopted as such.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

**General Provisions**

1.      The Motion is granted and the relief requested therein with respect to the Sale is granted and approved in its entirety, as set forth herein.

2.      Any objections to the entry of this Sale Order or to the relief granted herein or the relief requested in the Motion, including any objections to the proposed Cure Costs or the assumption and assignment of any Assigned Contracts, that have not been adjourned, withdrawn, waived, or settled, or not otherwise addressed or resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits with prejudice.

**Approval of the Sale of the Acquired Assets**

3.      The Debtors are authorized to enter into the Asset Purchase Agreement (and all ancillary documents) and all the terms and conditions thereof, and all of the Transactions contemplated therein are approved in all respects.  The transfer of the Acquired Assets by the Debtors to the Buyer shall be a legal, valid and effective transfer of the Acquired Assets.

4.      Pursuant to Bankruptcy Code Section 363(b), the sale of the Acquired Assets to the Buyer free and clear of all Liens and Encumbrances (other than the Permitted Liens and the Assumed Liabilities), and the transactions contemplated thereby is approved in all respects.

**Sale and Transfer of the Acquired Assets**

5.      Pursuant to Bankruptcy Code Sections 105, 363, and 365, the Debtors are authorized to (a) take any and all actions necessary or appropriate to perform their obligations under, and comply with the terms of, the Asset Purchase Agreement and consummate the Sale and the Transactions pursuant to, and in accordance with, the terms and conditions of the Asset Purchase Agreement and this Sale Order, including, without limitation (i) executing, acknowledging, and delivering such deeds, assignments, conveyances and other assurances, documents, and instruments of transfer and taking any action for purposes of assigning, transferring, granting, conveying, and conferring to the Buyer, or reducing to possession, any or

18

all of the Acquired Assets and (ii) entering into any transition services or operations support agreements with the Buyer and any other agreements related to implementing the Transactions and (b) take any and all further actions as may be necessary or appropriate to the performance of their obligations as contemplated by the Asset Purchase Agreement or this Sale Order. The Debtors are further authorized to pay, without further order of this Court, whether before, at, or after the Closing, any reasonable expenses or costs that are required to be paid to consummate the Transactions or perform their obligations under the Asset Purchase Agreement.

6. Following the Closing, the Debtors or the Buyer and/or their respective designees are authorized to execute and file a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all obligations, liabilities, Liens and Encumbrances in the Acquired Assets of any kind or nature whatsoever (other than the Permitted Liens and Assumed Liabilities). Upon the Closing and the Debtors' receipt of the Purchase Price, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Debtors' interests in the Acquired Assets and a bill of sale transferring good and marketable title in the Acquired Assets to the Buyer free and clear of all Liens and Encumbrances, except for the Permitted Liens and Assumed Liabilities. Each and every federal, state, and local governmental agency, quasi-agency, or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions. A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the appropriate recorder to cancel any Encumbrances of record.

7. Except for the Permitted Liens, Assumed Liabilities or as expressly provided in the Asset Purchase Agreement, pursuant to Bankruptcy Code Sections 105(a) and 363(f), upon the

19

Closing and the Debtors' receipt of the Purchase Price, the Acquired Assets shall be transferred to the Buyer as required under the Asset Purchase Agreement, and such transfer shall be free and clear of all Liens and Encumbrances of any person, including, without limitation, all such Interests specifically enumerated in this Sale Order, whether arising by agreement, by statute, or otherwise and whether occurring or arising before, on, or after the Petition Date, whether known or unknown, occurring, or arising prior to such transfer, with all such Interests to attach to the proceeds of the Sale ultimately attributable to the property against or in which the holder of an Interest claims or may claim an Interest, in the order of their priority, with the same validity, force, and effect which they now have, subject to any claims and defenses the Debtors may possess with respect thereto.

8.    The transfer of the Acquired Assets to the Buyer pursuant to the Asset Purchase Agreement constitutes a legal, valid, and effective transfer of the Acquired Assets and shall vest the Buyer with all right, title, and interest of the Debtors in and to the Acquired Assets free and clear of all Liens and Encumbrances of any kind or nature whatsoever relating to same, except for the Permitted Liens and Assumed Liabilities, with all such Liens and Encumbrances to attach to the proceeds of the Sale ultimately attributable to the property against or in which the holder of a Lien or Encumbrance claims or may claim, in the order of their priority, with the same validity, force, and effect which they now have, subject to any claims and defenses the Debtors may possess with respect thereto.

9.    Any person or entity that is currently, or on the Closing Date may be, in possession of some or all of the Acquired Assets is hereby directed to surrender possession of such Acquired Assets either to (a) the Debtors before the Closing or (b) to the Buyer or its designees upon the Closing, and to cooperate with the Debtors and the Buyer in the Debtors' and the Buyer's fulfillment of their obligations hereunder and pursuant to the APA. All persons and entities are

20

prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Acquired Assets to the Buyer in accordance with the Asset Purchase Agreement and this Sale Order; *provided* that the foregoing restriction shall not prevent any party from appealing this Sale Order in accordance with applicable law or opposing any appeal of this Sale Order, or from enforcing its rights under Bankruptcy Code Section 365 or relieve the Buyer of any Assumed Liability.

10.     Except as expressly permitted by the Asset Purchase Agreement or this Sale Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, dealers, employees, litigation claimants, contract counterparties and other creditors, holding Liens, Encumbrances, and other interests of any kind or nature whatsoever, including, without limitation, rights or claims based on any taxes or successor or transferee liability, against or in a Debtor or the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets or the operation of the Acquired Assets before the Closing, or the transactions contemplated by the Asset Purchase Agreement, including, without limitation, the Sale and the assumption and assignment of the Assigned Contracts, are forever barred, estopped, and permanently enjoined from asserting against the Buyer, its respective successors and assigns, its respective property and the Acquired Assets, such persons' or entities' liens, claims, encumbrances, or other Interests, including, without limitation, rights or claims based on any taxes or successor or transferee liability, *provided* that nothing herein shall impair or otherwise affect any right under Bankruptcy Code Section 365 of a lease or contract counterparty

21

to an Assigned Contract under its respective Assigned Contract(s), or relieve the Buyer of any Assumed Liability.

11.      Upon the Closing, each of the Debtors' creditors and any other holder of a Lien or Encumbrance is authorized and directed, without cost to the Debtors, to execute such documents and take all other actions as may be necessary to release its interest in the Acquired Assets, if any, as such Lien or Encumbrance may have been recorded or may otherwise exist.  If any person or entity that has filed financing statements or other documents or agreements evidencing a Lien or Encumbrance in the Debtors or the Acquired Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Interests, which the person or entity has with respect to the Debtors or the Acquired Assets or otherwise, then the Buyer and its designees are authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Debtors or the Acquired Assets and to file, register, or otherwise record a certified copy of this Sale Order, which shall constitute conclusive evidence of the release of all Liens and Encumbrances  of any kind or nature whatsoever in the Debtors or the Acquired Assets (other than the Permitted Liens and Assumed Liabilities).  Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement, including, without limitation, recordation of this Sale Order.

12.      Upon the Closing and the Debtors' receipt of the Purchase Price, all entities that are currently, or on the Closing may be, in possession of some or all of the Acquired Assets are

22

hereby directed to surrender possession of the Acquired Assets to the Buyer, unless the Buyer otherwise agrees.

13.     This Sale Order is self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Sale Order.

14.     To the maximum extent permitted by applicable non-bankruptcy law, (a) the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval (collectively, the "**Permits**") of the Debtors with respect to and included in the Acquired Assets, and (b) all Permits that are included in the Acquired Assets are deemed to have been, and hereby are directed to be, transferred to the Buyer as of the Closing Date.  Nothing in this Sale Order, and nothing in the foregoing sentence, authorizes the transfer or assignment of any governmental Permit or the discontinuation of any obligation thereunder without compliance with all applicable legal requirements and approvals under police or regulatory law.  To the extent any Permit cannot be transferred to the Buyer in accordance with this paragraph, the Buyer, with such assistance from the Debtors as is required under the Asset Purchase Agreement, will work promptly and diligently to apply for and secure all necessary government approvals for the transfer or new issuance of the Permit(s) to the Buyer, and the Debtors shall maintain the Permits to the extent required under and subject to the terms of the Asset Purchase Agreement.  For the avoidance of doubt, while nothing in this Sale Order or the Asset Purchase Agreement releases, nullifies, limits, waives, precludes, or enjoins the enforcement of any police or regulatory authority of a governmental unit, Buyer shall be entitled to operate under each state Permit currently held by or on behalf of the Debtors in relation to the Acquired Assets until such

23

time as each such Permit is transferred to the Buyer and/or an equivalent Permit is issued to the Buyer.

15. To the extent provided by Bankruptcy Code Section 525, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Acquired Assets sold, transferred, or conveyed to the Buyer on account of the filing or pendency of these Chapter 11 Cases or the consummation of the transactions contemplated by the Asset Purchase Agreement and this Sale Order.

16. Buyer shall have no obligation to provide to any third party copies of any records transferred to Buyer in connection with the Asset Purchase Agreement or to respond to discovery requests for such records in connection with any pending litigation against the Debtors.

**Implementation of the Sale**

17. On Closing, the Buyer shall (a) pay the Purchase Price to the Debtors; (b) pay the Cure Amounts as more fully described in paragraph 31 of this Sale Order; (c) assume the Assumed Liabilities; and (d) perform any other obligations required to be performed by Buyer on the Closing. Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement, including, without limitation, recordation of this Sale Order.

18. Within three (3) business days of the Debtors' receipt of the Net Sale Proceeds (as defined in the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection, (III) Modifying Automatic Stay, and (IV) Granting Related Relief* [Docket No. 410] (as it may be modified from time to time, the "**Cash Collateral Order**")) from the sale of the Acquired Assets, the Debtors shall pay the Net Sale Proceeds of the Acquired Assets to the Priority Term Loan Agent, for the account of the

Priority Term Loan Secured Creditors, to the extent required under and in accordance with the terms of the Cash Collateral Order or such other order of the Court.  Upon the Priority Term Loan Agent's timely receipt of such payment, (a) the Priority Term Loan Obligations shall be paid and satisfied to the extent of the payment and (b) all liens and security interests against the Acquired Assets securing the Priority Term Loan Obligations shall be automatically released and discharged without further action by any person.  Upon the payment in full in cash of the Priority Term Loan Obligations and the occurrence of the Challenge Period Termination Date (as defined in the Cash Collateral Order), (w) the Debtors shall have no further indebtedness, liabilities or obligations owing under the Priority Term Loan Credit Agreement or the other "Financing Agreements" (as defined in the Priority Term Loan Agreement, the "**Priority Term Loan Documents**"), (x) other than any provisions thereof that survive pursuant to the terms thereof, the Priority Term Loan Credit Agreement and all other Priority Term Loan Documents (including, without limitation, any mortgages, guaranties and security agreements) and all of the Debtors' obligations thereunder shall terminate and be of no further force and effect, (y) all liens and security interests against the property and assets of the Debtors securing the Priority Term Loan Obligations shall be automatically fully released and discharged without further action by any person, and (z) each deposit account control agreement in respect of or other sweeps or blocks of any Debtor's deposit accounts or lockboxes in favor of any of the Priority Term Loan Secured Parties shall terminate.

19.     The Debtors shall pay the Net Sale Proceeds from the Acquired Assets to the FILO Agent, for the account of the FILO Term Loan Secured Creditors, to the extent required under and in accordance with the terms of the Cash Collateral Order or such other order of the Court.  For the avoidance of doubt, any further payment to the FILO Agent shall be subject to orders

Case 20-81688-CRJ11     Doc 875     Filed 09/29/20     Entered 09/29/20 08:11:36     Desc
Main Document     Page 194 of 326

previously entered by this Court and any further orders of this Court or provided under the Debtors' Chapter 11 plan.

20.     All parties in interest in these Chapter 11 Cases expressly reserve their rights with respect to any allocation of the Purchase Price or value among the Acquired Assets, and any allocation of the Purchase Price or value among the Acquired Assets as determined by the Buyer shall not be determinative or binding on any party in interest in these Chapter 11 Cases except as ordered by the Court after notice and a hearing.

**No Successor Liability**

21.     Other than as expressly set forth in the Asset Purchase Agreement, the Buyer shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any Interests, including under any theory of successor or transferee liability, *de facto* merger or continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated, including without limitation, with respect to any of the following: (i) any foreign, federal, state, or local revenue law, pension law, ERISA, COBRA, tax law, labor law, employment law, the WARN Act, antitrust law, CERCLA, and any other environmental, health and safety laws, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules or regulations); (ii) under any products liability law, rule, regulation, or doctrine with respect to the Debtors' liability under such law, rule, regulation, or doctrine, or under any product warranty liability law or doctrine; (iii) under any unfair trade practices law, rule, regulation or doctrine with respect to the Debtors' liability under such law, rule, regulation or doctrine, or under any unfair trade practices liability law or doctrine; (iv) any employment or labor agreements, consulting agreements, severance arrangements, change-in-control agreements, or other similar agreement to which the Debtors are a party; (v) any welfare, compensation, or other employee benefit plans, agreements,

26

practices, and programs, including, without limitation, any pension plan of the Debtors; (vi) the cessation of the Debtors' operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation, or other employee benefit plans, agreements, practices and programs, obligations that might otherwise arise from or pursuant to (a) ERISA, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967, (g) the Americans with Disabilities Act of 1990, or (h) COBRA; (vii) any liabilities, debts, or obligations of or required to be paid by the Debtors for any taxes of any kind for any period; (viii) any environmental liabilities, debts, claims fines, penalties, or obligations arising from conditions, facts or circumstances first existing or occurring on or prior to the Closing (including, without limitation, the presence of or exposure to chemical, hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis and at any time, including, without limitation, any liabilities, debts, claims, fines, penalties or obligations arising under CERCLA, or any other environmental, health, and safety laws; (viii) any liabilities, debts, claims, fines, penalties, or obligations of or required to be paid by the Debtors for any taxes of any kind for any period; (ix) any liabilities, debts, claims, fines, penalties, or obligations of or required to be paid by the Debtors under any labor, employment, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules, or regulations); (x) any bulk sale law; and (xi) any litigation. The Buyer shall have no liability or obligation under the WARN Act simply by virtue of its purchase of assets from the Debtors.

22.     The Buyer has given substantial consideration under the Asset Purchase Agreement, which consideration shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Buyer and which shall be deemed to have been

Case 20-81688-CRJ11    Doc 875    Filed 09/29/20    Entered 09/29/20 08:11:36    Desc
Main Document    Page 196 of 326

given in favor of the Buyer by all holders of Interests and liabilities (except for Permitted Liens and the Assumed Liabilities) in or against the Debtors, or the Acquired Assets. Without limiting the Buyer's obligation to pay and satisfy any Assumed Liabilities, upon consummation of the Sale, the Buyer shall not be deemed to (a) be the successor to the Debtors or their estates, (b) have, *de facto* or otherwise, merged with or into the Debtors, or (c) be a mere continuation, alter ego or substantial continuation of the Debtors under any theory of law or equity as a result of any action taken in connection with the Asset Purchase Agreement or any of the transactions or documents ancillary thereto or contemplated thereby or in connection with the acquisition of the Acquired Assets.

23.     Effective upon the Closing, except with respect to Assumed Liabilities and any Permitted Liens, all persons and entities are forever prohibited and enjoined from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against the Buyer or its assets (including the Acquired Assets) with respect to any (a) Lien or Encumbrance (b) successor or transferee liability, including, without limitation, the following actions with respect to clauses (a) and (b): (i) commencing or continuing any action or other proceeding pending or threatened; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or Encumbrance; (iv) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof; or (v) revoking, terminating, or failing or refusing to renew any License, permit, or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with such assets.

**Good Faith**

24.     The transactions contemplated by the Asset Purchase Agreement are undertaken by the Buyer without collusion and in good faith, as that term is used in Bankruptcy Code Section 363(m), and, accordingly, the reversal or modification on appeal of the authorization provided in this Sale Order to consummate the Sale and the Transactions shall not affect the validity of the transactions (including the assumption and assignment of any of the Assigned Contracts). The Buyer is a purchaser in good faith of the Acquired Assets and is entitled to all the protections afforded by Bankruptcy Code Section 363(m).

25.     As a good faith purchaser of the Acquired Assets, the Buyer has not entered into an agreement with any other potential bidders at the Auction, and has not colluded with any of the other bidders, potential bidders or any other parties interested in the Acquired Assets, and, therefore, neither the Debtors nor any successor in interest to the Debtors' estates shall be entitled to bring an action against the Buyer, and the Sale may not be avoided pursuant to Bankruptcy Code Section 363(n).

26.     The consideration provided by the Buyer for the Acquired Assets under the Asset Purchase Agreement constitutes reasonably equivalent value, fair value, reasonable market value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.  The Sale may not be avoided under Bankruptcy Code Section 363(n).  The Asset Purchase Agreement was not entered into, and the Sale is not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtors under the Bankruptcy Code or for any other purpose that would give rise to statutory or common law fraudulent conveyance or fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable jurisdiction with laws substantially similar to the

29

foregoing. Neither the Debtors nor the Buyer have entered into the Asset Purchase Agreement or any agreement contemplated thereby or are consummating the Sale with any fraudulent or otherwise improper purpose, including, without limitation, to evade any pension liabilities. No other person or entity or group of persons or entities has offered to purchase the Acquired Assets for an amount that would provide greater value to the Debtors and their estates than the value provided by the Buyer. The Court's approval of the Motion and the Asset Purchase Agreement are in the best interests of the Debtors, the Debtors' estates, their creditors, and all other parties in interest.

27.    The Buyer is not an "insider" as that term is defined in Section 101(31) of the Bankruptcy Code.

**Assumption and Assignment of Assigned Contracts; Assumed Liabilities**

28.    Pursuant to Bankruptcy Code Sections 105(a), 363, and 365 and subject to and conditioned upon the Closing of the Sale, the Debtors' sale, assumption and assignment to the Buyer of the Assigned Contracts is approved, and the requirements of Bankruptcy Code Section 365(b)(1) with respect thereto are deemed satisfied.

29.    The Debtors are authorized in accordance with Bankruptcy Code Sections 105(a) and 365 to (i) assume and assign to the Buyer, effective as of the Closing, as provided by, and in accordance with, the Bidding Procedures Order and the Asset Purchase Agreement, the Assigned Contracts free and clear of all Interests of any kind or nature whatsoever, other than the Permitted Liens and Assumed Liabilities if any, and (ii) execute and deliver to the Buyer such documents or other instruments as the Buyer reasonably deems necessary to assign and transfer the Assigned Contracts to the Buyer.

30.    The Assigned Contracts shall be transferred and assigned to, pursuant to the Bidding Procedures Order and the Asset Purchase Agreement, and thereafter remain in full force

and effect for the benefit of, the Buyer, notwithstanding any provision in any such Assigned Contract (including, but not limited to, those of the type described in Bankruptcy Code Sections 365(b)(2), (e)(1), and (f)) that prohibits, restricts, or conditions such assignment or transfer. The Debtors shall be relieved from any further liability with respect to the Assigned Contracts after such assumption and assignment to the Buyer. The Debtors may assign each Assigned Contract in accordance with Bankruptcy Code Sections 363 and 365, and any provisions in any Assigned Contracts that prohibit or condition the assignment of such Assigned Contracts or terminate, recapture, impose any penalty, condition, renewal, or extension, or modify any term or condition upon the assignment of such Assigned Contracts, constitute unenforceable anti-assignment provisions which are void and of no force and effect. All other requirements and conditions under Bankruptcy Code Sections 363 and 365 for the assumption by the Debtors and assignment to the Buyer of each Assigned Contract have been satisfied.

31.     All defaults and all other obligations or liabilities under any Assigned Contract occurring, arising, or accruing prior to the date of the assignment or transfer to the Buyer shall be deemed cured or satisfied upon payment by the Buyer (in accordance with Section 1.5 of the Asset Purchase Agreement) of the proposed Cure Cost, as set forth in the Notice of Assumption and Assignment, or any other cure amount reached by agreement after an Assigned Contract Objection or otherwise, and, without limiting the foregoing, no effect shall be given to any default of the type set forth in Bankruptcy Code Section 365(b)(2), or the type of default concerning an unexpired lease of real property described in Bankruptcy Code Section 365(b)(1) whether or not such Assigned Contract is an executory contract within the meaning of Bankruptcy Code Section 365.

32.     Each non-Debtor counterparty to the Assigned Contracts shall be forever barred, estopped, and permanently enjoined from (a) asserting against the Debtors, the Buyer, or their

31

respective property (including the Acquired Assets) any fee, acceleration, default, breach, Claim (including any counterclaim, defense, or setoff capable of being asserted against the Debtors), pecuniary loss, or condition to assignment existing, arising, or accruing as of the Closing Date, or arising by reason of the Closing, including any breach related to or arising out of any change-in-control provision in such Assigned Contracts, or any purported written or oral modification to the Assigned Contracts, and (b) asserting against the Buyer (or its property, including the Acquired Assets) any Claim or Lien, counterclaim, breach, condition or setoff asserted or capable of being asserted against the Debtors existing as of the Closing Date or arising by reason of the Closing except for the Assumed Liabilities and Permitted Liens.

33.     The Cure Costs amounts listed on the Notice of Assumption and Assignment, or any other cure amount reached by agreement after an Assigned Contract Objection or otherwise, reflect the sole amounts necessary under Bankruptcy Code Section 365(b) to cure all monetary defaults under the Assigned Contracts, and no other amounts are or shall be due to the non-debtor parties in connection with the assumption by the Debtors and assignment to the Buyer of the Assigned Contracts.  Notwithstanding anything to the contrary herein, if the Cure Costs for an Assigned Contract is determined to be greater than the proposed Cure Costs asserted in the Notice of Assumption and Assignment or Supplemental Notice of Assumption and Assignment, the Buyer may decide, in its discretion, not to assume that Assigned Contract.

34.     The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Buyer's rights to enforce every term and condition of the Assigned Contracts.

32

35.     Notwithstanding anything in the Asset Purchase Agreement or this Sale Order to the contrary and for the avoidance of doubt, the Acquired Assets shall not include any of the Excluded Assets as set forth in Section 1.2 of the Asset Purchase Agreement.

36.     The Buyer shall be responsible for the satisfaction of the Assumed Liabilities under the Asset Purchase Agreement, including without limitation the Cure Costs, if any.  Except as provided in the Asset Purchase Agreement or this Sale Order, after the Closing, the Debtors and their estates shall have no further liability or obligations with respect to any Assumed Liability, including those arising under the Assigned Contracts, if any, and all holders of such claims are forever barred and estopped from asserting any claims under any Assumed Liability (including those arising under the Assigned Contracts) against the Buyer, the Debtors, their successors or assigns, and their estates.

**<u>Backup Bidder</u>**

37.     Long Range Acquisition LLC is hereby approved as the Backup Bidder and pursuant to Bankruptcy Code Sections 105, 363, and 365, the Asset Purchase Agreement attached hereto as Exhibit B (the "**Backup Bid Agreement**") submitted by Long Range Acquisition LLC (the "**Backup Bidder**"), the sale of the Acquired Assets and consummation of the Sale to the Backup Bidder are hereby approved as the Backup Bid.  The Backup Bid pursuant to the terms set forth in the Backup Bid Agreement, is hereby approved and authorized as a Backup Bid and shall remain open as a Backup Bid pursuant to the terms of the Bidding Procedures Order and the bid terms submitted at the Auction.  In the event that the Successful Bidder cannot or refuses to consummate the Sale because of a breach or failure on the part of the Successful Bidder, the Backup Bidder will be deemed the new Successful Bidder and the Debtors shall be authorized, but not directed, to close, and take all actions necessary to close, with the Backup Bidder on the Backup Bid without further order of the Court, and in such case the findings and other provisions of this

33

Sale Order, to the extent consistent with the terms of the Backup Bid, shall apply to the Backup Bidder and the Backup Bid Agreement to the same extent they do with respect to the Buyer and the Asset Purchase Agreement.

**Other Provisions**

38.     Nothing in this Sale Order or in the Asset Purchase Agreement entered into pursuant to this Sale Order releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory authority of a governmental unit.

39.     This Sale Order and the Asset Purchase Agreement shall be binding in all respects upon all known and unknown creditors of, and holders of equity security interests in, any Debtor, including any holders of Liens and Encumbrances, all counterparties to the Assigned Contracts, all counterparties to contracts that are not assumed or assigned, all successors and assigns of the Buyer, each Debtor and their affiliates and subsidiaries, the Acquired Assets, and any trustees appointed in the Chapter 11 Cases or upon a conversion to cases under Chapter 7 of the Bankruptcy Code, and this Sale Order shall not be subject to amendment or modification and the Asset Purchase Agreement shall not be subject to rejection.  Nothing contained in any Chapter 11 plan confirmed in any Debtor's bankruptcy case, any order confirming any such Chapter 11 plan, or any other order in the Chapter 11 Cases shall alter, conflict with, or derogate from, the provisions of the Asset Purchase Agreement or this Sale Order.

40.     To the extent applicable, the automatic stay pursuant to Section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtors to the extent necessary, without further order of the Court (a) to allow the Buyer to give the Debtors any notice provided for in the Asset Purchase Agreement, and (b) to allow the Buyer to take any and all actions permitted by the Asset Purchase Agreement.

34

41. No bulk sales law or similar law shall apply in any way to the transactions contemplated by the Sale, the Asset Purchase Agreement, the Motion, and this Sale Order.

42. This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Asset Purchase Agreement, all amendments thereto, and any waivers and consents thereunder, including, but not limited to, retaining jurisdiction to (i) enforce the terms of the Asset Purchase Agreement; (ii) compel delivery of the Acquired Assets to the Buyer; (iii) interpret, implement, and enforce the provisions of this Sale Order; (iii) protect the Buyer, any of the Buyer's affiliates, or any agent of the foregoing, against any Interests against the Debtors or the Acquired Assets of any kind or nature whatsoever, except for the Permitted Liens and Assumed Liabilities, and (iv) enter any order under Bankruptcy Code Sections 363 and 365.

43. No brokers for the Buyer were involved in consummation of the Sale, and no brokers' commissions are due to any person in connection with the Sale; *provided, however*, that this provision does not impact any transaction or other fees due to investment bankers or financial advisors employed (a) by the Debtors, including, but not limited to Ducera Partners LLC, or certain of their creditors for which the Debtors may be obligated to pay in accordance with an engagement letter with such professional(s), or (b) by the Buyer.

44. To the extent there is any inconsistency between the express terms of this Sale Order and the terms of the Asset Purchase Agreement (including all ancillary documents executed in connection therewith), the express terms of this Sale Order shall govern.

45. The failure to specifically include any particular provision of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it

35

being the intent of the Court that the Asset Purchase Agreement be authorized and approved in its entirety.

46.　　The Asset Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, *provided* that the Debtors shall provide the Bid Consultation Parties with three (3) business days' notice thereof and *provided* further that any such modification, amendment, or supplement does not, based on the Debtors' judgment, have a material adverse effect on the Debtors' estates.

47.　　Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Sale Order shall not be stayed for fourteen (14) days after its entry and shall be effective immediately upon entry, and the Debtors and the Buyer are authorized to immediately close the transaction in accordance with the terms of the Asset Purchase Agreement upon entry of this Sale Order. Time is of the essence in closing the transactions referenced herein, and the Debtors and the Buyer intend to close the transactions as soon as practicable. This Sale Order is a final, appealable order and the period in which an appeal must be filed shall commence upon the entry of this Sale Order.

48.　　The provisions of the Asset Purchase Agreement and this Sale Order may be specifically enforced in accordance with the Asset Purchase Agreement notwithstanding the appointment of any Chapter 7 or Chapter 11 trustee after the Closing.

49.　　Headings utilized in this Sale Order are for convenience of reference only, and do not constitute a part of this Sale Order for any other purpose.

50.　　All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

51.　　The provisions of this Sale Order are non-severable and mutually dependent.

36

52. All issues raised by Oracle America, Inc. ("**Oracle**") in *Oracle's Limited Objection and Reservation of Rights Regarding (a) Debtors' Motion for (a) an Order Establishing Bidding Procedures and Granting Related Relief and (ii) an Order or Orders Approving the Sale of the Debtors' Assets; and (b) Notice of Executory Contracts and Unexpired Leases that May Be Assumed and Assigned in Connection with the Sale of the Debtors' Assets and the Proposed Cure Cost with Respect Thereto* (the "Oracle Objection") [Docket No. 529] are expressly reserved. The Oracle Objection may be set for hearing on an expedited basis upon the request of Oracle and/or the Debtors.

53. Nothing in the Asset Purchase Agreement or in this Order shall have the effect of transferring, impairing, reducing or otherwise limiting any of the Debtors' rights in any insurance policies covering Excluded Liabilities or the proceeds of such polices. For the avoidance of doubt, the Debtors reserve control over the privilege concerning any retained documents and nothing in this Order relieves the Debtors of any document retention obligations.

Dated: _____, 2020

_____

UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT A**

**Asset Purchase Agreement**

**EXHIBIT B**

**Backup Bid Agreement**

| Summary report: Litera® Change-Pro for Word 10.9.0.460 Document comparison done on 9/28/2020 6:21:01 PM | |
|---|---|
| **Style name:** OMM Standard | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** dm://OMM_US/79052983/4 | |
| **Modified DMS:** dm://OMM_US/79052983/5 | |
| **Changes:** | |
| Add | 2 |
| Delete | 0 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 2 |

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| REMINGTON OUTDOOR COMPANY, INC., *et al.*, [1] | Case No. 20-81688-CRJ11 |
| | Jointly Administered |
| Debtors. | |

## ORDER APPROVING THE SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL CLAIMS, LIENS, AND INTERESTS

This matter having come before the Court upon the motion (the "**Motion**")[2] by Remington Outdoor Company, Inc., ("**Remington**" or the "**Company**"), and its affiliated debtors and debtors in possession (collectively the "**Debtors**") in the above-captioned Chapter 11 cases seeking entry of an order pursuant to §§ 105(a), 363, and 365 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure, (this "**Sale Order**") (a) authorizing the sale of the Acquired Assets (as defined in the Asset Purchase Agreement (as defined below)) free and clear of all Interests (as defined below), pursuant to that certain Asset Purchase Agreement dated September 26, 2020, attached hereto as

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405). The Debtors' corporate headquarters is located at 100 Electronics Blvd SW, Huntsville, Alabama 35824.

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Motion or the Asset Purchase Agreement, as applicable.

Exhibit A (the "**Asset Purchase Agreement**" or "**APA**"), by and among the Debtors and Sturm, Ruger & Company., Inc.  (the "**Buyer**"), and all other transaction documents related thereto; (b) authorizing the assumption and assignment of certain executory contracts and unexpired leases, if any; and (c) granting the related relief contemplated therein; and the Court having considered the evidence in support of the relief sought in the Motion; the objections to Debtors' Motion; and responses and any replies thereto and all of the statements, arguments and representations of the parties made at the Sale Hearing; and the entire record of these cases; and having found that (i) the Court has jurisdiction over this matter; (ii) venue is proper in this District; (iii) this is a core proceeding; (iv) the notice of the Motion and the Sale Hearing (as defined below) was sufficient under the circumstances; and (v) there is good cause to waive the stay of Bankruptcy Rule 6004(h); and based further on the statements of counsel and all of  the evidence presented in support of the relief requested by the Debtors in the Motion at a hearing before this Court on September 29 [and 30], 2020 (the "**Sale Hearing**"); and  it appearing that proper notice having been given and no other notice need be given; and the Court, having determined that the relief sought in the Motion is in the best interests of the Debtors, and their estates, and that the legal and factual bases set forth in the Motion and presented at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.     **Jurisdiction, Core Proceeding, Statutory Predicates, and Venue.**  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *General Order of Reference* of the United States District Court for the Northern District of Alabama dated July 16, 1984 as amended July 17, 1984.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The predicates for the relief granted herein are Bankruptcy Code Sections 105, 363,

2

and 365 and Bankruptcy Rules 2002, 6004, and 6006.  Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

       **B.**    **Just Cause.**  The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Sale Order is in the best interests of the Debtors and their respective estates, creditors, and all other parties in interest.

       **C.**    **Notice.**  The notice of the Motion, the Sale Hearing, the Asset Purchase Agreement, the transactions contemplated therein or in connection therewith and corresponding transactions documents (the "**Transactions**"), and the proposed entry of this Sale Order was adequate and sufficient under the circumstances of the Chapter 11 Cases, and such notice complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  A reasonable opportunity to object or be heard regarding the relief granted by this Sale Order has been afforded to those parties entitled to notice pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  Accordingly, no further notice of the Motion, the Sale Hearing, or this Sale Order is necessary or required.

       **D.**    The Publication Notice was published in the *New York Times* on August 24, 2020. Such Publication Notice was compliant with the Bidding Procedures Order, and was sufficient and proper notice to any other interested parties, including those whose identities are unknown to the Debtors.

       **E.**    **Extensive Efforts by Debtors.**  Since before the commencement of the Chapter 11 Cases, the Debtors worked with their counsel and financial advisors to implement a viable transaction that would allow them to maximize the value of the Acquired Assets.  In addition, since the filing of the case the Debtors have worked with the financial advisors of the Committee to identify and solicit bids from any additional potential bidders identified by the Committee's

3

financial advisors. The transaction that is the subject of this Sale Order is the result of the Debtors' extensive efforts seeking to maximize recoveries to the Debtors' estates for the benefit of the Debtors' creditors.

**F.      Business Justification.** The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business justification for the Court to grant the relief requested in the Motion, including, without limitation, to (i) authorize the sale of the Acquired Assets free and clear of Interests other than Permitted Liens (as defined in the Asset Purchase Agreement) and Assumed Liabilities (as defined in the Asset Purchase Agreement); (ii) authorize the assumption and assignment of certain executory contracts and unexpired leases; and (iii) grant related relief as set forth herein. Such compelling and sound business justification, which was set forth in the Motion and on the record at the Sale Hearing, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

**G.      Bidding Procedures Order.** The Bidding Procedures Order [Docket No. 411] was entered by the Court on August 20, 2020, which, among other things (i) approved the Bidding Procedures; (ii) established the Assumption and Assignment Procedures; (iii) approved the form and manner of notice with respect to all procedures, protections, schedules, and agreements described in the Motion and attached thereto; and (iv) scheduled a date for the Auction and Sale Hearing. The Bidding Procedures provided a full, fair, and reasonable opportunity for any entity to make an offer to purchase the Acquired Assets.

**H.      Auction Successful Bidder.** The sale process was properly conducted by the Debtors in accordance with the Bidding Procedures Order and in a manner designed to result in

4

the highest or otherwise best offer for the Acquired Assets. At the Auction, commencing on September 17, 2020 at 10:00 AM (Central Time) and concluding on September [__], 2020 at [  ], the Debtors agreed in a reasonable exercise of their business judgment, in consultation with their management, the Restructuring Committee, advisors and the Bid Consultation Parties, to enter into and consummate Asset Purchase Agreement with the Buyer. At the conclusion of the Auction, the Buyer was determined to be the Successful Bidder.

      **I.**      **Asset Purchase Agreement.** The consummation of the Transactions contemplated by the Asset Purchase Agreement, the Motion, and this Sale Order is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and all of the applicable requirements of such sections and rules have been complied with in respect of such transactions.

      **J.**      **Sale Hearing.** The Sale Hearing occurred on September 29 [and 30], 2020 in accordance with the Bidding Procedures Order.

      **K.**      **Adequate Marketing; Highest or Otherwise Best Offer.** As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing, including the Declaration of Ken D'Arcy in Support of Chapter 11 Petitions and First Day Pleadings of Remington Outdoor Company, Inc. and its affiliated debtors and debtors-possession [Docket No. 6] and the Declaration of Bradley C. Meyer in Support of Debtors' Cash Collateral Motion and Bidding Procedures Motion [Docket No. 355]; and (ii) the representations of counsel made on the record at the Bidding Procedures Hearing and the Sale Hearing, (a) the Debtors have adequately marketed the Acquired Assets and conducted a sale process in a non-collusive, fair and good faith manner in compliance with the Bidding Procedures Order; (b) the process set forth in the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any interested party to make

the highest or otherwise best offer to purchase the Acquired Assets and assume the Assumed Liabilities; (c) the consideration provided by the Buyer in the Asset Purchase Agreement constitutes the highest or otherwise best offer to purchase the Acquired Assets and assume the Assumed Liabilities; (d) the consideration provided by the Buyer in the Asset Purchase Agreement provides fair and reasonable consideration for the Acquired Assets and the assumption of the Assumed Liabilities and constitutes reasonably equivalent value, fair value and reasonable market value under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, the District of Columbia, or other applicable law; (e) the Sale will provide a greater recovery for the Debtors' creditors with respect to the Acquired Assets than would be provided by any other practically available alternative; (f) taking into consideration all relevant factors and circumstances, and after taking account of the Bid Protections, no other entity has offered to purchase the Acquired Assets for greater economic value to the Debtors or their estates; and (g) the Debtors' determination that the Asset Purchase Agreement constitutes the highest or otherwise best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtors' business judgment.

L.     **No Successor Liability.**  Neither the Buyer nor any of its affiliates, officers, directors, shareholders, members, partners, principals or any of their respective representatives, successors, or assigns is an "insider or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors, or stockholders existed or exists between the Buyer and the Debtors.  The transfer of the Acquired Assets to and the assumption of the Assumed Liabilities by the Buyer, except as otherwise set forth in the Asset Purchase Agreement, does not, and will not, subject the Buyer to any liability whatsoever, with respect to the operation of the Debtors' businesses prior to the closing of the Sale or by reason of

6

such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity including, without limitation, any laws affecting antitrust, successor, transferee, or vicarious liability. Pursuant to the Asset Purchase Agreement, the Buyer is not purchasing all of the Debtors' assets in that the Buyer is not purchasing any of the Excluded Assets or assuming the Excluded Liabilities, and the Buyer is not holding itself out to the public as an *alter ego* or a continuation of the Debtors. The Buyer does not have any dominion or control over the Debtors and the Sale does not amount to a consolidation, merger, or *de facto* merger of the Buyer and the Debtors. There is no substantial continuity between the Buyer and the Debtors, and there is no continuity of enterprise between the Debtors and the Buyer. The Buyer is not a mere continuation of the Debtors or the Debtors' estates, and the Buyer does not constitute a successor to the Debtors or the Debtors' estates under any theory at law or in equity. None of the Transactions, including, without limitation, the Sale or the assumption and assignment of the Assigned Contracts, is being undertaken for the purpose of escaping liability for any of the Debtors' debts or hindering, delaying, or defrauding creditors under the Bankruptcy Code or for any other purpose that would give rise to statutory or common law fraudulent conveyance or fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, the District of Columbia, or any other applicable jurisdiction with laws substantially similar to the foregoing.

      **M.**    **Acquired Assets Property of the Estate.** The Acquired Assets are property of the Debtors' estates and title thereto is vested in the Debtors' estates.

      **N.**    **Sale in Best Interest/Fiduciary Duties.** The Debtors have demonstrated a sufficient basis and compelling circumstances requiring them to enter into the Asset Purchase

Agreement and sell the Acquired Assets and such actions are appropriate under the circumstances of these Chapter 11 Cases, are in the best interests of the Debtors, their estates and creditors, and other parties in interest, and represent a reasonable exercise of business judgment by the Debtors and the Restructuring Committee and their fulfillment of their fiduciary duties under applicable law. Approval of the Asset Purchase Agreement, the Sale, and the Transactions at this time is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest. Unless the sale is concluded expeditiously, the recoveries of all of the Debtors estates and constituencies are likely to be adversely affected.

O.     **Not a *Sub Rosa* Plan.**  The consummation of the Sale outside of a plan of reorganization pursuant to the Asset Purchase Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a plan of reorganization or liquidation for the Debtors.  The Asset Purchase Agreement, the Sale and the transactions contemplated therein and associated therewith do not constitute an impermissible *sub rosa* Chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford.

P.     **Arm's-Length Sale.**    The Asset Purchase Agreement, the Sale, and the Transactions were negotiated, proposed, and entered into by the Debtors and the Buyer without collusion, in good faith, and from arm's-length bargaining positions.  Neither the Debtors, their insiders and affiliates, nor the Buyer have engaged in any conduct that would cause or permit the Asset Purchase Agreement, the Sale, or any part of the transactions thereby to be avoided under Bankruptcy Code Section 363(n).  Neither the Buyer nor any of its affiliates or representatives is an "insider" of the Debtors, as that term is defined in § 101(31). The terms and conditions of the Asset Purchase Agreement and any related  transaction documents, including, without limitation,

8

the consideration provided in respect thereof, are fair and reasonable, and are not avoidable and shall not be avoided, and no damages may be assessed against the Buyer or any other party as set forth in § 363(n). The consideration provided by the Buyer is fair, adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable laws of the United States or any of its jurisdictions or subdivisions, including the State of Alabama.

Q.     **Good Faith Buyer.** The Buyer is a good faith purchaser under Bankruptcy Code Section 363(m) and, as such, is entitled to all of the protections afforded thereby. Specifically: (i) the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Acquired Assets; (ii) the Buyer complied in all respects with the provisions of the Bidding Procedures Order; (iii) the Buyer agreed to subject its bid to the competitive bid procedures set forth in the Bidding Procedures Order; (iv) all payments to be made by the Buyer in connection with the Sale have been disclosed; (v) no common identity of directors, officers or controlling stockholders exists among the Buyer and the Debtors; (vi) the negotiations and execution of the Asset Purchase Agreement was at arm's-length and in good faith, and at all times each of the Buyer and the Debtors were represented by competent counsel of their choosing; (vii) the Buyer did not in any way induce or cause the Chapter 11 filing of the Debtors; and (viii) the Buyer has not acted in a collusive manner with any person. The Buyer will be acting in good faith within the meaning of Bankruptcy Code Section 363(m) in closing the transactions contemplated by the Asset Purchase Agreement. The Asset Purchase Agreement was not entered into, and the Transaction being consummated pursuant to and in accordance with the Asset Purchase Agreement is not being consummated, for the purpose of hindering, delaying or defrauding creditors of the Debtors. The Buyer is therefore entitled to all of the benefits and protections provided to good-

9

faith purchasers under Bankruptcy Code Section 363(m). Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transaction shall not affect the validity of the Transaction, any terms or conditions of the Transaction or the Buyer's status as "good faith" purchaser under Bankruptcy Code Section 363(m).

**R.** **Corporate Authority.** Each Debtor (i) has full corporate power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby, and the Sale of the Acquired Assets has been duly and validly authorized by all necessary corporate actions of each of the Debtors; (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by the Asset Purchase Agreement; (iii) has taken all corporate action necessary to authorize and approve the Asset Purchase Agreement and the consummation by the Debtors of the transactions contemplated thereby; and (iv) needs no consents or approvals, other than those expressly provided for in the Asset Purchase Agreement, which may be waived in accordance with the terms therewith.

**S.** **Free and Clear Findings Required by the Buyer.** (1) In accordance with Bankruptcy Code Section 363(b) and 363(f), the consummation of the Sale pursuant to the Asset Purchase Agreement and any related transaction documents for the purchase of the assets as provided therein (the "**Acquired Assets"**) shall be a legal, valid, and effective transfer and sale of the Acquired Assets and shall vest in the Buyer, through the consummation of the Sale at closing with all of the Debtors' right, title, and interest in and to the Acquired Assets, free and clear of Liens (as defined below), Claims (as defined below) and Interests (defined below) (Claims and Interests collectively referred to as ("**Encumbrances**")). The Debtors have demonstrated that one or more of the standards set forth in Bankruptcy Code Section 363(f)(1)-(5) have been satisfied. Those holders of Liens or Encumbrances who did not object, or who withdrew their objections, to

10

the sale or the Motion are deemed to have consented pursuant to Bankruptcy Code Section 363(f)(2). Those holders of Liens or Encumbrances who did object fall within one or more of the other subsections of Bankruptcy Code Section 363(f). All holders of the Liens or Encumbrances in the Acquired Assets are adequately protected by having their respective Liens or Encumbrances attach to the Debtors' interests in the proceeds of the sale of the Acquired Assets under the Asset Purchase Agreement.  (2) The Court further finds that the Buyer would not have entered into the Asset Purchase Agreement and would not consummate the Sale Transaction, thus adversely affecting the Debtors, their estates, and their creditors, if the Sale of the Acquired Assets to the Buyer and the assumption and assignment of Assigned Contracts, were not, pursuant to Bankruptcy Code Section 363(f), free and clear (except for Permitted Liens and Assumed Liabilities, if any) of (i) all liens (statutory or otherwise), claims, mortgages, deeds of trust, pledges, charges, security interests, rights of first refusal, hypothecations, encumbrances, easements, servitudes, leases or subleases, rights-of-way, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of offset or recoupment, right of use or possession, licenses, indentures, instruments, conditional sale arrangements (collectively "**Liens**"), (ii) all claims as defined in Bankruptcy Code Section 101(5), including all rights or causes of action (whether in law or in equity), proceedings, warranties, guarantees, indemnities, rights of recovery, setoff, recoupment, indemnity or contribution, obligations, demands, restrictions, indemnification claims, or liabilities relating to any act or omission of the Debtors or any other person prior to the Closing, consent rights, options, contract rights, covenants, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of the above-captioned cases, and whether imposed by

11

agreement, understanding, law, equity or otherwise, (collectively "**Claims**"), and (iii) all rights and entitlements of any nature including, without limitation, security interests, assignments of Liens or Claims, licenses, leases, contract rights, indentures, instruments, licenses, options, escheatment, abandoned property, unclaimed property, covenants, conditions, zoning, planning and any other restrictions, easements, encroachments, Permits or other interests in property or limitations on the use of real property or irregularities in title, rights of first refusal, rights to injunctive or other legal or equitable relief, any attributes of ownership, rights or restrictions of any kind and nature, whenever incurred, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, matured or unmatured, legal or equitable (excluding Permitted Liens and Assumed Liabilities)( collectively, the "**Interests**"). (3) Except as expressly provided in the Asset Purchase Agreement, the Sale shall be free and clear of all Liens, and Encumbrances, and the Buyer shall not be responsible for, any Liens or Encumbrances, including, without limitation, in respect of the following: (i) any Liens or Encumbrances based on any successor or transferee liability, (ii) any Liens or Encumbrances that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or termination of the Debtors' or the Buyer's interest in the Acquired Assets, or any similar rights; (iii) any labor or employment agreements; (iv) mortgages, deeds of trust, and security interests; (v) intercompany loans and receivables between the Debtors and any non-Debtor subsidiary; (vi) any pension, multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of ERISA), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability; (vii) any other employee, worker's compensation, occupational disease, or unemployment or temporary disability

12

related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**"), (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Code and of any similar state law (collectively, "**COBRA**"), (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors, or (1) the WARN Act (29 U.S.C. §§2101 *et seq*.); (viii) any bulk sales or similar law; (ix) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (xii) any unexpired and executory contract or unexpired lease to which a Debtor is a party that is not an Assigned Contract that will be assumed and assigned pursuant to this Sale Order and the Asset Purchase Agreement; (xiii) any other Excluded Liabilities as provided in the Asset Purchase Agreement. A sale of the Acquired Assets other than one free and clear of all Liens and Encumbrances would yield substantially less value for the Debtors' estates, with less certainty, than the Sale as contemplated. Therefore, the Sale contemplated by the Asset Purchase Agreement and approved herein free and clear of all Interests, except for Permitted Liens and Assumed Liabilities, is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

        **T.**      **Valid and Binding Transfer.** The transfer of the Acquired Assets to the Buyer will be a legal, valid, and effective transfer of the Acquired Assets and, except for any Permitted

13

Liens and Assumed Liabilities, will vest the Buyer with all right, title, and interest of the Debtors to the Acquired Assets free and clear of all Interests and any liabilities of the Debtors.

U. **Satisfaction of Section 363(f) Standards.** The transfer of the Acquired Assets to the Buyer under the Asset Purchase Agreement shall be a legal, valid, and effective transfer of all the legal, equitable, and beneficial right, title and interest in and to the Acquired Assets free and clear of all Liens and Encumbrances, other than the Assumed Liabilities and Permitted Liens. The Debtors may sell the Acquired Assets free and clear of all Liens and Encumbrances, except for any Permitted Liens and the Assumed Liabilities, because, in each case, one or more of the standards set forth in Bankruptcy Code Section 363(f)(1) through (5) has been satisfied, with all such Liens and Encumbrances to attach to the proceeds of the Sale Transaction to be received by the Debtors with the same validity, force, priority and effect that they had as against the Acquired Assets, and any claims and defenses the Debtors and their estates may possess with respect thereto. Those holders of Interests, and non-debtor parties to the Assigned Contracts who did not object, or who withdrew their objections, to the Motion are, without limitation, deemed to have consented pursuant to Bankruptcy Code Section 363(f)(2). In all cases, each such person with Liens or Encumbrances in the Acquired Assets is enjoined from taking any action against the Buyer, the Buyer's affiliates, or any agent of the foregoing to recover any such Interest.

V. **Necessity of Order.** The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the Sale Transaction without all of the relief provided for in this Sale Order (including, but not limited to, that the transfer of the Acquired Assets to the Buyer be free and clear of all Liens and Encumbrances (other than Permitted Liens and the Assumed Liabilities)). The consummation of the Sale Transaction pursuant to this Sale Order and

14

the Asset Purchase Agreement is necessary for the Debtors to maximize the value of their estates for the benefit of all creditors and other parties in interest.

**W.** **Time of the Essence.** The sale of the Acquired Assets must be approved and consummated promptly in order to preserve the value of the Acquired Assets. Therefore, time is of the essence in consummating the Sale, and the Debtors and the Buyer intend to close the Sale as soon as reasonably practicable.

**X.** **Assigned Contracts.** The Debtors have demonstrated that it is their sound business judgment to sell, assume, and assign the "**Assigned Contracts**" (as such terms are defined in the Asset Purchase Agreement), including, without limitation, the unexpired leases and executory contracts designated on <u>Schedule 1.1(e)</u> of the Asset Purchase Agreement (collectively, the "**Assigned Contracts**" and, individually, an "**Assigned Contract**") to the Buyer in connection with the consummation of the Sale, and the assumption and assignment of the Assigned Contracts is in the best interests of the Debtors, their estates and creditors, and other parties in interest. The Assigned Contracts being assigned to the Buyer are an integral part of the Acquired Assets being purchased by the Buyer, and, accordingly, such assumption and assignment of the Assigned Contracts and the liabilities associated therewith are reasonable and enhance the value of the Debtors' estates. No section of any Assigned Contract that purports to prohibit, restrict, impose any penalty or fee on, or condition the use, consideration, or assignment of any such Assigned Contract in connection with the Transactions shall have any force or effect.

**Y.** **Cure and Adequate Assurance.** Through the Buyer's commitment to pay all Cure Costs related to the Assigned Contracts, if any, and upon the payment of Cure Costs by the Buyer pursuant to the terms of the Asset Purchase Agreement, the Debtors and the Buyer, as applicable, have cured or otherwise have demonstrated their ability to cure any default with respect to any act

15

or omission that occurred prior to the Closing (as defined in the Asset Purchase Agreement) under any of the Assigned Contracts, within the meaning of Bankruptcy Code Section 365(b)(l)(A). The proposed Cure Costs or any other cure amount reached by agreement after any objection by a counterparty to an Assigned Contract (an "**Assigned Contract Objection**") are deemed the amounts necessary to "cure" all "defaults," each within the meaning of Bankruptcy Code Section 365(b), under such Assigned Contracts. The Buyer's promise to perform the future obligations under the Assigned Contracts, if any, shall constitute adequate assurance of its future performance of and under the Assigned Contracts, within the meaning of Bankruptcy Code Sections 365(b)(l) and 365(f)(2). All counterparties to the Assigned Contracts who did not file an Assigned Contract Objection or an objection to the assumption and assignment of the Assigned Contracts prior to the Sale Hearing, are deemed to consent to the assumption by the Debtors of their respective Assigned Contract and the assignment thereof to the Buyer. The filed objections of all counterparties to the Assigned Contracts that were heard at the Sale Hearing (to the extent not withdrawn or adjourned), were considered by the Court, and are overruled on the merits with prejudice. The Court finds that, with respect to all such Assigned Contracts, the payment of the proposed Cure Costs by the Buyer in accordance with the terms of the Asset Purchase Agreement is appropriate and is deemed to fully satisfy the Debtors' obligations under Bankruptcy Code Section 365(b). Accordingly, all of the requirements of Bankruptcy Code Section 365(b) have been satisfied for the assumption by the Debtors and the assignment to the Buyer of each of the Assigned Contracts. To the extent any Assigned Contract is not an executory contract within the meaning of Bankruptcy Code Section

365, it shall be transferred to the Buyer in accordance with the terms of this Sale Order that are applicable to the Acquired Assets.

Z.     **Unenforceability of Anti-Assignment Provisions.**   Any provisions in any Assigned Contract that restrict, limit, prohibit or condition the assumption, assignment, and sale of the Assigned Contracts or that allow the counterparty so such Assigned Contract to terminate, recapture, impose any penalty or fee, accelerate, increase any rate, condition on renewal or extension, or modify any term or condition upon the assignment of such Assigned Contract, should be deemed and found to be unenforceable anti-assignment provisions that are void and of no force and effect within the meaning of Bankruptcy Code Section 365(f).

AA.     **Objections are Overruled.**   All objections to the relief requested in the Motion that have not been withdrawn, waived, adjourned or settled as announced to the Court at the Sale Hearing or by stipulations filed with the Court are overruled except as otherwise set forth herein.

BB.     **Final Order.**   This Sale Order constitutes a final order within the meaning of 20 U.S.C. § 158(a).   Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order and expressly directs entry of judgment as set forth herein.

CC.     **Best Interest.**   Entry of this Sale Order is in the best interests of the Debtors, the Debtors' estates, their creditors, and other parties in interest.

DD.     **Findings and Conclusions.**   The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014.   To the extent any findings of facts are

17

conclusions of law, they are adopted as such.  To the extent any conclusions of law are findings of fact, they are adopted as such.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

<u>**General Provisions**</u>

1.     The Motion is granted and the relief requested therein with respect to the Sale is granted and approved in its entirety, as set forth herein.

2.     Any objections to the entry of this Sale Order or to the relief granted herein or the relief requested in the Motion, including any objections to the proposed Cure Costs or the assumption and assignment of any Assigned Contracts, that have not been adjourned, withdrawn, waived, or settled, or not otherwise addressed or resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits with prejudice.

<u>**Approval of the Sale of the Acquired Assets**</u>

3.     The Debtors are authorized to enter into the Asset Purchase Agreement (and all ancillary documents) and all the terms and conditions thereof, and all of the Transactions contemplated therein are approved in all respects.  The transfer of the Acquired Assets by the Debtors to the Buyer shall be a legal, valid and effective transfer of the Acquired Assets.

4.     Pursuant to Bankruptcy Code Section 363(b), the sale of the Acquired Assets to the Buyer free and clear of all Liens and Encumbrances (other than the Permitted Liens and the Assumed Liabilities), and the transactions contemplated thereby is approved in all respects.

<u>**Sale and Transfer of the Acquired Assets**</u>

5.     Pursuant to Bankruptcy Code Sections 105, 363, and 365, the Debtors are authorized to (a) take any and all actions necessary or appropriate to perform their obligations under, and comply with the terms of, the Asset Purchase Agreement and consummate the Sale and the Transactions pursuant to, and in accordance with, the terms and conditions of the Asset

18

Purchase Agreement and this Sale Order, including, without limitation (i) executing, acknowledging, and delivering such deeds, assignments, conveyances and other assurances, documents, and instruments of transfer and taking any action for purposes of assigning, transferring, granting, conveying, and conferring to the Buyer, or reducing to possession, any or all of the Acquired Assets and (ii) entering into any transition services or operations support agreements with the Buyer and any other agreements related to implementing the Transactions and (b) take any and all further actions as may be necessary or appropriate to the performance of their obligations as contemplated by the Asset Purchase Agreement or this Sale Order. The Debtors are further authorized to pay, without further order of this Court, whether before, at, or after the Closing, any reasonable expenses or costs that are required to be paid to consummate the Transactions or perform their obligations under the Asset Purchase Agreement.

6.      Following the Closing, the Debtors or the Buyer and/or their respective designees are authorized to execute and file a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all obligations, liabilities, Liens and Encumbrances in the Acquired Assets of any kind or nature whatsoever (other than the Permitted Liens and Assumed Liabilities). Upon the Closing and the Debtors' receipt of the Purchase Price, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Debtors' interests in the Acquired Assets and a bill of sale transferring good and marketable title in the Acquired Assets to the Buyer free and clear of all Liens and Encumbrances, except for the Permitted Liens and Assumed Liabilities. Each and every federal, state, and local governmental agency, quasi-agency, or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions. A certified copy of this Sale Order

Case 20-81688-CRJ11    Doc 875    Filed 09/29/20    Entered 09/29/20 08:11:36    Desc
Main Document    Page 229 of 326

may be filed with the appropriate clerk and/or recorded with the appropriate recorder to cancel any Encumbrances of record.

7.     Except for the Permitted Liens, Assumed Liabilities or as expressly provided in the Asset Purchase Agreement, pursuant to Bankruptcy Code Sections 105(a) and 363(f), upon the Closing and the Debtors' receipt of the Purchase Price, the Acquired Assets shall be transferred to the Buyer as required under the Asset Purchase Agreement, and such transfer shall be free and clear of all Liens and Encumbrances of any person, including, without limitation, all such Interests specifically enumerated in this Sale Order, whether arising by agreement, by statute, or otherwise and whether occurring or arising before, on, or after the Petition Date, whether known or unknown, occurring, or arising prior to such transfer, with all such Interests to attach to the proceeds of the Sale ultimately attributable to the property against or in which the holder of an Interest claims or may claim an Interest, in the order of their priority, with the same validity, force, and effect which they now have, subject to any claims and defenses the Debtors may possess with respect thereto.

8.     The transfer of the Acquired Assets to the Buyer pursuant to the Asset Purchase Agreement constitutes a legal, valid, and effective transfer of the Acquired Assets and shall vest the Buyer with all right, title, and interest of the Debtors in and to the Acquired Assets free and clear of all Liens and Encumbrances of any kind or nature whatsoever relating to same, except for the Permitted Liens and Assumed Liabilities, with all such Liens and Encumbrances to attach to the proceeds of the Sale ultimately attributable to the property against or in which the holder of a Lien or Encumbrance claims or may claim, in the order of their priority, with the same validity, force, and effect which they now have, subject to any claims and defenses the Debtors may possess with respect thereto.

Case 20-81688-CRJ11    Doc 875    Filed 09/29/20    Entered 09/29/20 08:11:36    Desc
Main Document    Page 230 of 326

9.     Any person or entity that is currently, or on the Closing Date may be, in possession of some or all of the Acquired Assets is hereby directed to surrender possession of such Acquired Assets either to (a) the Debtors before the Closing or (b) to the Buyer or its designees upon the Closing, and to cooperate with the Debtors and the Buyer in the Debtors' and the Buyer's fulfillment of their obligations hereunder and pursuant to the APA.  All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Acquired Assets to the Buyer in accordance with the Asset Purchase Agreement and this Sale Order; *provided* that the foregoing restriction shall not prevent any party from appealing this Sale Order in accordance with applicable law or opposing any appeal of this Sale Order, or from enforcing its rights under Bankruptcy Code Section 365 or relieve the Buyer of any Assumed Liability.

10.     Except as expressly permitted by the Asset Purchase Agreement or this Sale Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, dealers, employees, litigation claimants, contract counterparties and other creditors, holding Liens, Encumbrances, and other interests of any kind or nature whatsoever, including, without limitation, rights or claims based on any taxes or successor or transferee liability, against or in a Debtor or the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets or the operation of the Acquired Assets before the Closing, or the transactions contemplated by the Asset Purchase Agreement, including, without limitation, the Sale and the assumption and assignment of the Assigned Contracts, are forever barred, estopped, and permanently enjoined from asserting against the Buyer, its respective

successors and assigns, its respective property and the Acquired Assets, such persons' or entities' liens, claims, encumbrances, or other Interests, including, without limitation, rights or claims based on any taxes or successor or transferee liability, *provided* that nothing herein shall impair or otherwise affect any right under Bankruptcy Code Section 365 of a lease or contract counterparty to an Assigned Contract under its respective Assigned Contract(s), or relieve the Buyer of any Assumed Liability.

11.     Upon the Closing, each of the Debtors' creditors and any other holder of a Lien or Encumbrance is authorized and directed, without cost to the Debtors, to execute such documents and take all other actions as may be necessary to release its interest in the Acquired Assets, if any, as such Lien or Encumbrance may have been recorded or may otherwise exist.  If any person or entity that has filed financing statements or other documents or agreements evidencing a Lien or Encumbrance in the Debtors or the Acquired Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Interests, which the person or entity has with respect to the Debtors or the Acquired Assets or otherwise, then the Buyer and its designees are authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Debtors or the Acquired Assets and to file, register, or otherwise record a certified copy of this Sale Order, which shall constitute conclusive evidence of the release of all Liens and Encumbrances  of any kind or nature whatsoever in the Debtors or the Acquired Assets (other than the Permitted Liens and Assumed Liabilities).  Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all  documents  and  instruments  necessary  and  appropriate  to  consummate  the  transactions

22

contemplated by the Asset Purchase Agreement, including, without limitation, recordation of this Sale Order.

12.     Upon the Closing and the Debtors' receipt of the Purchase Price, all entities that are currently, or on the Closing may be, in possession of some or all of the Acquired Assets are hereby directed to surrender possession of the Acquired Assets to the Buyer, unless the Buyer otherwise agrees.

13.     This Sale Order is self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Sale Order.

14.     To the maximum extent permitted by applicable non-bankruptcy law, (a) the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval (collectively, the "**Permits**") of the Debtors with respect to and included in the Acquired Assets, and (b) all Permits that are included in the Acquired Assets are deemed to have been, and hereby are directed to be, transferred to the Buyer as of the Closing Date.  Nothing in this Sale Order, and nothing in the foregoing sentence, authorizes the transfer or assignment of any governmental Permit or the discontinuation of any obligation thereunder without compliance with all applicable legal requirements and approvals under police or regulatory law.  To the extent any Permit cannot be transferred to the Buyer in accordance with this paragraph, the Buyer, with such assistance from the Debtors as is required under the Asset Purchase Agreement, will work promptly and diligently to apply for and secure all necessary government approvals for the transfer or new issuance of the Permit(s) to the Buyer, and the Debtors shall maintain the Permits to the extent required under and subject to the terms of the Asset Purchase Agreement.  For the avoidance of doubt, while nothing in this Sale Order or the Asset Purchase

23

Agreement releases, nullifies, limits, waives, precludes, or enjoins the enforcement of any police or regulatory authority of a governmental unit, Buyer shall be entitled to operate under each state Permit currently held by or on behalf of the Debtors in relation to the Acquired Assets until such time as each such Permit is transferred to the Buyer and/or an equivalent Permit is issued to the Buyer.

15.     To the extent provided by Bankruptcy Code Section 525, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Acquired Assets sold, transferred, or conveyed to the Buyer on account of the filing or pendency of these Chapter 11 Cases or the consummation of the transactions contemplated by the Asset Purchase Agreement and this Sale Order.

16.     Buyer shall have no obligation to provide to any third party copies of any records transferred to Buyer in connection with the Asset Purchase Agreement or to respond to discovery requests for such records in connection with any pending litigation against the Debtors.

**Implementation of the Sale**

17.     On Closing, the Buyer shall (a) pay the Purchase Price to the Debtors; (b) pay the Cure Amounts as more fully described in paragraph 31 of this Sale Order; (c) assume the Assumed Liabilities; and (d) perform any other obligations required to be performed by Buyer on the Closing.  Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement, including, without limitation, recordation of this Sale Order.

18.     Within three (3) business days of the Debtors' receipt of the Net Sale Proceeds (as defined in the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection, (III) Modifying Automatic*

24

*Stay, and (IV) Granting Related Relief* [Docket No. 410] (as it may be modified from time to time, the "**Cash Collateral Order**")) from the sale of the Acquired Assets, the Debtors shall pay the Net Sale Proceeds of the Acquired Assets to the Priority Term Loan Agent, for the account of the Priority Term Loan Secured Creditors, to the extent required under and in accordance with the terms of the Cash Collateral Order or such other order of the Court. Upon the Priority Term Loan Agent's timely receipt of such payment, (a) the Priority Term Loan Obligations shall be paid and satisfied to the extent of the payment and (b) all liens and security interests against the Acquired Assets securing the Priority Term Loan Obligations shall be automatically released and discharged without further action by any person. Upon the payment in full in cash of the Priority Term Loan Obligations and the occurrence of the Challenge Period Termination Date (as defined in the Cash Collateral Order), (w) the Debtors shall have no further indebtedness, liabilities or obligations owing under the Priority Term Loan Credit Agreement or the other "Financing Agreements" (as defined in the Priority Term Loan Agreement, the "**Priority Term Loan Documents**"), (x) other than any provisions thereof that survive pursuant to the terms thereof, the Priority Term Loan Credit Agreement and all other Priority Term Loan Documents (including, without limitation, any mortgages, guaranties and security agreements) and all of the Debtors' obligations thereunder shall terminate and be of no further force and effect, (y) all liens and security interests against the property and assets of the Debtors securing the Priority Term Loan Obligations shall be automatically fully released and discharged without further action by any person, and (z) each deposit account control agreement in respect of or other sweeps or blocks of any Debtor's deposit accounts or lockboxes in favor of any of the Priority Term Loan Secured Parties shall terminate.

19.     The Debtors shall pay the Net Sale Proceeds from the Acquired Assets to the FILO Agent, for the account of the FILO Term Loan Secured Creditors, to the extent required under and

Case 20-81688-CRJ11    Doc 875    Filed 09/29/20    Entered 09/29/20 08:11:36    Desc
Main Document    Page 235 of 326

in accordance with the terms of the Cash Collateral Order or such other order of the Court. For the avoidance of doubt, any further payment to the FILO Agent shall be subject to orders previously entered by this Court and any further orders of this Court or provided under the Debtors' Chapter 11 plan.

20.     All parties in interest in these Chapter 11 Cases expressly reserve their rights with respect to any allocation of the Purchase Price or value among the Acquired Assets, and any allocation of the Purchase Price or value among the Acquired Assets as determined by the Buyer shall not be determinative or binding on any party in interest in these Chapter 11 Cases except as ordered by the Court after notice and a hearing.

**No Successor Liability**

21.     Other than as expressly set forth in the Asset Purchase Agreement, the Buyer shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any Interests, including under any theory of successor or transferee liability, *de facto* merger or continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated, including without limitation, with respect to any of the following: (i) any foreign, federal, state, or local revenue law, pension law, ERISA, COBRA, tax law, labor law, employment law, the WARN Act, antitrust law, CERCLA, and any other environmental, health and safety laws, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules or regulations); (ii) under any products liability law, rule, regulation, or doctrine with respect to the Debtors' liability under such law, rule, regulation, or doctrine, or under any product warranty liability law or doctrine; (iii) under any unfair trade practices law, rule, regulation or doctrine with respect to the Debtors' liability under such law, rule, regulation or doctrine, or under any unfair trade practices liability law or doctrine; (iv) any employment or labor agreements, consulting agreements,

26

severance arrangements, change-in-control agreements, or other similar agreement to which the Debtors are a party; (v) any welfare, compensation, or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of the Debtors; (vi) the cessation of the Debtors' operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation, or other employee benefit plans, agreements, practices and programs, obligations that might otherwise arise from or pursuant to (a) ERISA, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967, (g) the Americans with Disabilities Act of 1990, or (h) COBRA; (vii) any liabilities, debts, or obligations of or required to be paid by the Debtors for any taxes of any kind for any period; (viii) any environmental liabilities, debts, claims fines, penalties, or obligations arising from conditions, facts or circumstances first existing or occurring on or prior to the Closing (including, without limitation, the presence of or exposure to chemical, hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis and at any time, including, without limitation, any liabilities, debts, claims, fines, penalties or obligations arising under CERCLA, or any other environmental, health, and safety laws; (viii) any liabilities, debts, claims, fines, penalties, or obligations of or required to be paid by the Debtors for any taxes of any kind for any period; (ix) any liabilities, debts, claims, fines, penalties, or obligations of or required to be paid by the Debtors under any labor, employment, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules, or regulations); (x) any bulk sale law; and (xi) any litigation. The Buyer shall have no liability or obligation under the WARN Act simply by virtue of its purchase of assets from the Debtors.

22.     The Buyer has given substantial consideration under the Asset Purchase Agreement, which consideration shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Buyer and which shall be deemed to have been given in favor of the Buyer by all holders of Interests and liabilities (except for Permitted Liens and the Assumed Liabilities) in or against the Debtors, or the Acquired Assets.  Without limiting the Buyer's obligation to pay and satisfy any Assumed Liabilities, upon consummation of the Sale, the Buyer shall not be deemed to (a) be the successor to the Debtors or their estates, (b) have, *de facto* or otherwise, merged with or into the Debtors, or (c) be a mere continuation, alter ego or substantial continuation of the Debtors under any theory of law or equity as a result of any action taken in connection with the Asset Purchase Agreement or any of the transactions or documents ancillary thereto or contemplated thereby or in connection with the acquisition of the Acquired Assets.

23.     Effective upon the Closing, except with respect to Assumed Liabilities and any Permitted Liens, all persons and entities are forever prohibited and enjoined from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against the Buyer or its assets (including the Acquired Assets) with respect to any (a) Lien or Encumbrance (b) successor or transferee liability, including, without limitation, the following actions with respect to clauses (a) and (b): (i) commencing or continuing any action or other proceeding pending or threatened; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or Encumbrance; (iv) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect

28

hereof; or (v) revoking, terminating, or failing or refusing to renew any License, permit, or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with such assets.

**Good Faith**

24.     The transactions contemplated by the Asset Purchase Agreement are undertaken by the Buyer without collusion and in good faith, as that term is used in Bankruptcy Code Section 363(m), and, accordingly, the reversal or modification on appeal of the authorization provided in this Sale Order to consummate the Sale and the Transactions shall not affect the validity of the transactions (including the assumption and assignment of any of the Assigned Contracts). The Buyer is a purchaser in good faith of the Acquired Assets and is entitled to all the protections afforded by Bankruptcy Code Section 363(m).

25.     As a good faith purchaser of the Acquired Assets, the Buyer has not entered into an agreement with any other potential bidders at the Auction, and has not colluded with any of the other bidders, potential bidders or any other parties interested in the Acquired Assets, and, therefore, neither the Debtors nor any successor in interest to the Debtors' estates shall be entitled to bring an action against the Buyer, and the Sale may not be avoided pursuant to Bankruptcy Code Section 363(n).

26.     The consideration provided by the Buyer for the Acquired Assets under the Asset Purchase Agreement constitutes reasonably equivalent value, fair value, reasonable market value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.  The Sale may not be avoided under Bankruptcy Code Section 363(n).  The Asset Purchase Agreement was not entered into, and the Sale is not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtors under the Bankruptcy Code or for any other purpose that would give rise to statutory

29

or common law fraudulent conveyance or fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable jurisdiction with laws substantially similar to the foregoing. Neither the Debtors nor the Buyer have entered into the Asset Purchase Agreement or any agreement contemplated thereby or are consummating the Sale with any fraudulent or otherwise improper purpose, including, without limitation, to evade any pension liabilities. No other person or entity or group of persons or entities has offered to purchase the Acquired Assets for an amount that would provide greater value to the Debtors and their estates than the value provided by the Buyer. The Court's approval of the Motion and the Asset Purchase Agreement are in the best interests of the Debtors, the Debtors' estates, their creditors, and all other parties in interest.

27. The Buyer is not an "insider" as that term is defined in Section 101(31) of the Bankruptcy Code.

**Assumption and Assignment of Assigned Contracts; Assumed Liabilities**

28. Pursuant to Bankruptcy Code Sections 105(a), 363, and 365 and subject to and conditioned upon the Closing of the Sale, the Debtors' sale, assumption and assignment to the Buyer of the Assigned Contracts is approved, and the requirements of Bankruptcy Code Section 365(b)(1) with respect thereto are deemed satisfied.

29. The Debtors are authorized in accordance with Bankruptcy Code Sections 105(a) and 365 to (i) assume and assign to the Buyer, effective as of the Closing, as provided by, and in accordance with, the Bidding Procedures Order and the Asset Purchase Agreement, the Assigned Contracts free and clear of all Interests of any kind or nature whatsoever, other than the Permitted Liens and Assumed Liabilities if any, and (ii) execute and deliver to the Buyer such documents or

30

other instruments as the Buyer reasonably deems necessary to assign and transfer the Assigned Contracts to the Buyer.

30.     The Assigned Contracts shall be transferred and assigned to, pursuant to the Bidding Procedures Order and the Asset Purchase Agreement, and thereafter remain in full force and effect for the benefit of, the Buyer, notwithstanding any provision in any such Assigned Contract (including, but not limited to, those of the type described in Bankruptcy Code Sections 365(b)(2), (e)(1), and (f)) that prohibits, restricts, or conditions such assignment or transfer.  The Debtors shall be relieved from any further liability with respect to the Assigned Contracts after such assumption and assignment to the Buyer.  The Debtors may assign each Assigned Contract in accordance with Bankruptcy Code Sections 363 and 365, and any provisions in any Assigned Contracts that prohibit or condition the assignment of such Assigned Contracts or terminate, recapture, impose any penalty, condition, renewal, or extension, or modify any term or condition upon the assignment of such Assigned Contracts, constitute unenforceable anti-assignment provisions which are void and of no force and effect.  All other requirements and conditions under Bankruptcy Code Sections 363 and 365 for the assumption by the Debtors and assignment to the Buyer of each Assigned Contract have been satisfied.

31.     All defaults and all other obligations or liabilities under any Assigned Contract occurring, arising, or accruing prior to the date of the assignment or transfer to the Buyer shall be deemed cured or satisfied upon payment by the Buyer (in accordance with Section 1.5 of the Asset Purchase Agreement) of the proposed Cure Cost, as set forth in the Notice of Assumption and Assignment, or any other cure amount reached by agreement after an Assigned Contract Objection or otherwise, and, without limiting the foregoing, no effect shall be given to any default of the type set forth in Bankruptcy Code Section 365(b)(2), or the type of default concerning an unexpired

31

lease of real property described in Bankruptcy Code Section 365(b)(1) whether or not such Assigned Contract is an executory contract within the meaning of Bankruptcy Code Section 365.

32.     Each non-Debtor counterparty to the Assigned Contracts shall be forever barred, estopped, and permanently enjoined from (a) asserting against the Debtors, the Buyer, or their respective property (including the Acquired Assets) any fee, acceleration, default, breach, Claim (including any counterclaim, defense, or setoff capable of being asserted against the Debtors), pecuniary loss, or condition to assignment existing, arising, or accruing as of the Closing Date, or arising by reason of the Closing, including any breach related to or arising out of any change-in-control provision in such Assigned Contracts, or any purported written or oral modification to the Assigned Contracts, and (b) asserting against the Buyer (or its property, including the Acquired Assets) any Claim or Lien, counterclaim, breach, condition or setoff asserted or capable of being asserted against the Debtors existing as of the Closing Date or arising by reason of the Closing except for the Assumed Liabilities and Permitted Liens.

33.     The Cure Costs amounts listed on the Notice of Assumption and Assignment, or any other cure amount reached by agreement after an Assigned Contract Objection or otherwise, reflect the sole amounts necessary under Bankruptcy Code Section 365(b) to cure all monetary defaults under the Assigned Contracts, and no other amounts are or shall be due to the non-debtor parties in connection with the assumption by the Debtors and assignment to the Buyer of the Assigned Contracts.  Notwithstanding anything to the contrary herein, if the Cure Costs for an Assigned Contract is determined to be greater than the proposed Cure Costs asserted in the Notice of Assumption and Assignment or Supplemental Notice of Assumption and Assignment, the Buyer may decide, in its discretion, not to assume that Assigned Contract.

Case 20-81688-CRJ11    Doc 875    Filed 09/29/20    Entered 09/29/20 08:11:36    Desc
Main Document    Page 242 of 326

34.     The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Buyer's rights to enforce every term and condition of the Assigned Contracts.

35.     Notwithstanding anything in the Asset Purchase Agreement or this Sale Order to the contrary and for the avoidance of doubt, the Acquired Assets shall not include any of the Excluded Assets as set forth in Section 1.2 of the Asset Purchase Agreement.

36.     The Buyer shall be responsible for the satisfaction of the Assumed Liabilities under the Asset Purchase Agreement, including without limitation the Cure Costs, if any.  Except as provided in the Asset Purchase Agreement or this Sale Order, after the Closing, the Debtors and their estates shall have no further liability or obligations with respect to any Assumed Liability, including those arising under the Assigned Contracts, if any, and all holders of such claims are forever barred and estopped from asserting any claims under any Assumed Liability (including those arising under the Assigned Contracts) against the Buyer, the Debtors, their successors or assigns, and their estates.

**Backup Bidder**

37.     Long Range Acquisition LLC is hereby approved as the Backup Bidder and pursuant to Bankruptcy Code Sections 105, 363, and 365, the Asset Purchase Agreement attached hereto as Exhibit B (the "**Backup Bid Agreement**") submitted by Long Range Acquisition LLC (the "**Backup Bidder**"), the sale of the Acquired Assets and consummation of the Sale to the Backup Bidder are hereby approved as the Backup Bid.  The Backup Bid pursuant to the terms set forth in the Backup Bid Agreement, is hereby approved and authorized as a Backup Bid and shall remain open as a Backup Bid pursuant to the terms of the Bidding Procedures Order and the bid terms submitted at the Auction.  In the event that the Successful Bidder cannot or refuses to consummate the Sale because of a breach or failure on the part of the Successful Bidder, the

33

Backup Bidder will be deemed the new Successful Bidder and the Debtors shall be authorized, but not directed, to close, and take all actions necessary to close, with the Backup Bidder on the Backup Bid without further order of the Court, and in such case the findings and other provisions of this Sale Order, to the extent consistent with the terms of the Backup Bid, shall apply to the Backup Bidder and the Backup Bid Agreement to the same extent they do with respect to the Buyer and the Asset Purchase Agreement.

**Other Provisions**

38.     Nothing in this Sale Order or in the Asset Purchase Agreement entered into pursuant to this Sale Order releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory authority of a governmental unit.

39.     This Sale Order and the Asset Purchase Agreement shall be binding in all respects upon all known and unknown creditors of, and holders of equity security interests in, any Debtor, including any holders of Liens and Encumbrances, all counterparties to the Assigned Contracts, all counterparties to contracts that are not assumed or assigned, all successors and assigns of the Buyer, each Debtor and their affiliates and subsidiaries, the Acquired Assets, and any trustees appointed in the Chapter 11 Cases or upon a conversion to cases under Chapter 7 of the Bankruptcy Code, and this Sale Order shall not be subject to amendment or modification and the Asset Purchase Agreement shall not be subject to rejection.  Nothing contained in any Chapter 11 plan confirmed in any Debtor's bankruptcy case, any order confirming any such Chapter 11 plan, or any other order in the Chapter 11 Cases shall alter, conflict with, or derogate from, the provisions of the Asset Purchase Agreement or this Sale Order.

40.     To the extent applicable, the automatic stay pursuant to Section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtors to the extent necessary, without further order of the Court (a) to allow the Buyer to give the Debtors any notice provided for in the

34

Asset Purchase Agreement, and (b) to allow the Buyer to take any and all actions permitted by the Asset Purchase Agreement.

41.     No bulk sales law or similar law shall apply in any way to the transactions contemplated by the Sale, the Asset Purchase Agreement, the Motion, and this Sale Order.

42.     This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Asset Purchase Agreement, all amendments thereto, and any waivers and consents thereunder, including, but not limited to, retaining jurisdiction to (i) enforce the terms of the Asset Purchase Agreement; (ii) compel delivery of the Acquired Assets to the Buyer; (iii) interpret, implement, and enforce the provisions of this Sale Order; (iii) protect the Buyer, any of the Buyer's affiliates, or any agent of the foregoing, against any Interests against the Debtors or the Acquired Assets of any kind or nature whatsoever, except for the Permitted Liens and Assumed Liabilities, and (iv) enter any order under Bankruptcy Code Sections 363 and 365.

43.     No brokers for the Buyer were involved in consummation of the Sale, and no brokers' commissions are due to any person in connection with the Sale; *provided, however*, that this provision does not impact any transaction or other fees due to investment bankers or financial advisors employed (a) by the Debtors, including, but not limited to Ducera Partners LLC, or certain of their creditors for which the Debtors may be obligated to pay in accordance with an engagement letter with such professional(s), or (b) by the Buyer.

44.     To the extent there is any inconsistency between the express terms of this Sale Order and the terms of the Asset Purchase Agreement (including all ancillary documents executed in connection therewith), the express terms of this Sale Order shall govern.

45.     The failure to specifically include any particular provision of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement be authorized and approved in its entirety.

46.     The Asset Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, *provided* that the Debtors shall provide the Bid Consultation Parties with three (3) business days' notice thereof and *provided* further that any such modification, amendment, or supplement does not, based on the Debtors' judgment, have a material adverse effect on the Debtors' estates.

47.     Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Sale Order shall not be stayed for fourteen (14) days after its entry and shall be effective immediately upon entry, and the Debtors and the Buyer are authorized to immediately close the transaction in accordance with the terms of the Asset Purchase Agreement upon entry of this Sale Order. Time is of the essence in closing the transactions referenced herein, and the Debtors and the Buyer intend to close the transactions as soon as practicable. This Sale Order is a final, appealable order and the period in which an appeal must be filed shall commence upon the entry of this Sale Order.

48.     The provisions of the Asset Purchase Agreement and this Sale Order may be specifically enforced in accordance with the Asset Purchase Agreement notwithstanding the appointment of any Chapter 7 or Chapter 11 trustee after the Closing.

49.     Headings utilized in this Sale Order are for convenience of reference only, and do not constitute a part of this Sale Order for any other purpose.

36

50.     All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

51.     The provisions of this Sale Order are non-severable and mutually dependent.

52.     All issues raised by Oracle America, Inc. ("**Oracle**") in *Oracle's Limited Objection and Reservation of Rights Regarding (a) Debtors' Motion for (a) an Order Establishing Bidding Procedures and Granting Related Relief and (ii) an Order or Orders Approving the Sale of the Debtors' Assets; and (b) Notice of Executory Contracts and Unexpired Leases that May Be Assumed and Assigned in Connection with the Sale of the Debtors' Assets and the Proposed Cure Cost with Respect Thereto* (the "Oracle Objection") [Docket No. 529] are expressly reserved.  The Oracle Objection may be set for hearing on an expedited basis upon the request of Oracle and/or the Debtors.

53.     Nothing in the Asset Purchase Agreement or in this Order shall have the effect of transferring, impairing, reducing or otherwise limiting any of the Debtors' rights in any insurance policies covering Excluded Liabilities or the proceeds of such polices.  For the avoidance of doubt, the Debtors reserve control over the privilege concerning any retained documents and nothing in this Order relieves the Debtors of any document retention obligations.

Dated: _____, 2020

_____

UNITED STATES BANKRUPTCY JUDGE

37

**EXHIBIT A**

**Asset Purchase Agreement**

**EXHIBIT B**

**Backup Bid Agreement**

**Exhibit D**

**Redline of Sierra Bullets, L.L.C. Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | |
|---|---|
| In re:<br><br>REMINGTON OUTDOOR COMPANY, INC., *et al.*, [1]<br><br><div align="center">Debtors.</div> | Chapter 11<br><br>Case No. 20-81688-CRJ11<br><br>Jointly Administered |

## ORDER APPROVING THE SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL CLAIMS, LIENS, AND INTERESTS

This matter having come before the Court upon the motion (the "**Motion**")[2] by Remington Outdoor Company, Inc., ("**Remington**" or the "**Company**"), and its affiliated debtors and debtors in possession (collectively the "**Debtors**") in the above-captioned Chapter 11 cases seeking entry of this order (this "**Sale Order**") (a) authorizing the sale of the Acquired Assets (as defined in the Asset Purchase Agreement (as defined below)) free and clear of all Interests (as defined below), pursuant to that certain Asset Purchase Agreement, dated as of September 26, 2020, attached hereto as <u>Exhibit A</u> (the "**Asset Purchase Agreement**"), by and among the Debtors and Sierra Bullets, L.L.C. (the "**Buyer**"), and all other transaction documents related thereto; (b) authorizing the assumption and assignment of certain executory contracts and unexpired leases; and (c) granting the related relief contemplated therein; and the Court having found that (i) the Court has

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405). The Debtors' corporate headquarters is located at 100 Electronics Blvd SW, Huntsville, Alabama 35824.

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Motion or the Asset Purchase Agreement, as applicable.

jurisdiction over this matter; (ii) venue is proper in this District; (iii) this is a core proceeding; (iv) the notice of the Motion and the Sale Hearing (as defined below) was sufficient under the circumstances; and (v) there is good cause to waive the stay of Bankruptcy Rule 6004(h); and based on the statements of counsel and the evidence presented in support of the relief requested by the Debtors in the Motion at a hearing before this Court on September 29 [and 30], 2020 (the "**Sale Hearing**"); and it appearing that no other notice need be given; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.     **Jurisdiction, Core Proceeding, Statutory Predicates, and Venue**.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *General Order of Reference* of the United States District Court for the Northern District of Alabama dated July 16, 1984 as amended July 17, 1984.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The predicates for the relief granted herein are Bankruptcy Code Sections 105, 363, and 365 and Bankruptcy Rules 2002, 6004, and 6006.  Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     **Just Cause**.  The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Sale Order is in the best interests of the Debtors and their respective estates, creditors, and all other parties in interest.

C.     **Notice**.  The notice of the Motion, the Sale Hearing, the Asset Purchase Agreement, the transactions contemplated therein or in connection therewith and corresponding transactions documents (the "**Transactions**"), and the proposed entry of this Sale Order was adequate and sufficient under the circumstances of the Chapter 11 Cases, and such notice complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  A

reasonable opportunity to object or be heard regarding the relief granted by this Sale Order has been afforded to those parties entitled to notice pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  Accordingly, no further notice of the Motion, the Sale Hearing, or this Sale Order is necessary or required.

D.     The Publication Notice was published in the *New York Times* on August 24, 2020. Such Publication Notice was compliant with the Bidding Procedures Order, and was sufficient and proper notice to any other interested parties, including those whose identities are unknown to the Debtors.

E.     **Extensive Efforts by Debtors**.  Since before the commencement of the Chapter 11 Cases, the Debtors worked with their counsel and financial advisors to implement a viable transaction that would allow them to maximize the value of the Acquired Assets.  The Sale Transaction that is the subject of this Sale Order is the result of the Debtors' extensive efforts seeking to maximize recoveries to the Debtors' estates for the benefit of the Debtors' creditors.

F.     **Business Justification**.  The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business justification for the Court to grant the relief requested in the Motion, including, without limitation, to (i) authorize the sale of the Acquired Assets free and clear of Interests other than Permitted Liens (as defined in the Asset Purchase Agreement) and Assumed Liabilities (as defined in the Asset Purchase Agreement); (ii) authorize the assumption and assignment of certain executory contracts and unexpired leases; and (iii) grant related relief as set forth herein.  Such compelling and sound business justification, which was set forth in the Motion and on the record at the Sale Hearing, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

3

G. **Bidding Procedures Order**. The Bidding Procedures Order [Docket No. 411] was entered by the Court on August 20, 2020, which, among other things (i) approved the Bidding Procedures; (ii) established the Assumption and Assignment Procedures; (iii) approved the form and manner of notice with respect to all procedures, protections, schedules, and agreements described in the Motion and attached thereto; and (iv) scheduled a date for the Auction and Sale Hearing. The Bidding Procedures provided a full, fair, and reasonable opportunity for any entity to make an offer to purchase the Acquired Assets.

H. **Auction; Successful Bidder**. The sale process was properly conducted by the Debtors in accordance with the Bidding Procedures Order and in a manner designed to result in the highest or otherwise best offer for the Acquired Assets. At the Auction, the Debtors agreed in a reasonable exercise of their business judgment, in consultation with their management, the Restructuring Committee, advisors and the Bid Consultation Parties, to enter into and consummate Asset Purchase Agreement with the Buyer. At the conclusion of the Auction, the Buyer was determined to be the Successful Bidder.

I. **Asset Purchase Agreement**. The consummation of the Transactions contemplated by the Asset Purchase Agreement, the Motion, and this Sale Order is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and all of the applicable requirements of such sections and rules have been complied with in respect of such transactions.

J. **Sale Hearing**. The Sale Hearing occurred on September 29 [and 30], 2020 in accordance with the Bidding Procedures Order.

K. **Adequate Marketing; Highest or Otherwise Best Offer.** As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing, including the

*Declaration of Ken D'Arcy in Support of Chapter 11 Petitions and First Day Pleadings of Remington Outdoor Company, Inc. and Its Affiliated Debtors and Debtors-Possession* [Docket No. 6 and the *Declaration of Bradley C. Meyer in Support of Debtors' Cash Collateral Motion and Bidding Procedures Motion* [Docket No. 355]; and (ii) the representations of counsel made on the record at the Bidding Procedures Hearing and the Sale Hearing, (a) the Debtors have adequately marketed the Acquired Assets and conducted a sale process in a non-collusive, fair and good faith manner in compliance with the Bidding Procedures Order; (b) the process set forth in the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any interested party to make the highest or otherwise best offer to purchase the Acquired Assets and assume the Assumed Liabilities; (c) the consideration provided by the Buyer in the Asset Purchase Agreement constitutes the highest or otherwise best offer to purchase the Acquired Assets and assume the Assumed Liabilities; (d) the consideration provided by the Buyer in the Asset Purchase Agreement provides fair and reasonable consideration for the Acquired Assets and the assumption of the Assumed Liabilities and constitutes reasonably equivalent value, fair value and reasonable market value under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, the District of Columbia, or other applicable law; (e) the Sale will provide a greater recovery for the Debtors' creditors with respect to the Acquired Assets than would be provided by any other practically available alternative; (f) taking into consideration all relevant factors and circumstances, and after taking account of the Bid Protections, no other entity has offered to purchase the Acquired Assets for greater economic value to the Debtors or their estates; and (g) the Debtors' determination that the Asset Purchase Agreement constitutes the highest or otherwise best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtors' business judgment.

L.      **No Successor Liability.**  Neither the Buyer nor any of its affiliates, officers, directors, shareholders, members, partners, principals or any of their respective representatives, successors, or assigns is an "insider or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors, or stockholders existed or exists between the Buyer and the Debtors.  The transfer of the Acquired Assets to and the assumption of the Assumed Liabilities by the Buyer, except as otherwise set forth in the Asset Purchase Agreement, does not, and will not, subject the Buyer to any liability whatsoever, with respect to the operation of the Debtors' businesses prior to the closing of the Sale or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity including, without limitation, any laws affecting antitrust, successor, transferee, or vicarious liability.  Pursuant to the Asset Purchase Agreement, the Buyer is not purchasing all of the Debtors' assets in that the Buyer is not purchasing any of the Excluded Assets or assuming the Excluded Liabilities, and the Buyer is not holding itself out to the public as an *alter ego* or a continuation of the Debtors.  The Sale does not amount to a consolidation, merger, or *de facto* merger of the Buyer and the Debtors.  There is no substantial continuity between the Buyer and the Debtors, and there is no continuity of enterprise between the Debtors and the Buyer.  The Buyer is not a mere continuation of the Debtors or the Debtors' estates, and the Buyer does not constitute a successor to the Debtors or the Debtors' estates.  None of the Transactions, including, without limitation, the Sale or the assumption and assignment of the Assigned Contracts, is being undertaken for the purpose of escaping liability for any of the Debtors' debts or hindering, delaying, or defrauding creditors under the Bankruptcy Code or for any other purpose that would give rise to statutory or common law fraudulent conveyance or fraudulent transfer claims, whether under the Bankruptcy

44232270.v1

Code or under the laws of the United States, any state, territory, possession thereof, the District of Columbia, or any other applicable jurisdiction with laws substantially similar to the foregoing.

M. **Acquired Assets Property of the Estate.** The Acquired Assets are property of the Debtors' estates and title thereto is vested in the Debtors' estates.

N. **Sale in Best Interest/Fiduciary Duties**. The Debtors have demonstrated a sufficient basis and compelling circumstances requiring them to enter into the Asset Purchase Agreement and sell the Acquired Assets and such actions are appropriate under the circumstances of these Chapter 11 Cases, are in the best interests of the Debtors, their estates and creditors, and other parties in interest, and represent a reasonable exercise of business judgment by the Debtors and the Restructuring Committee and their fulfillment of their fiduciary duties under applicable law. Approval of the Asset Purchase Agreement, the Sale, and the Transactions at this time is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest. Unless the sale is concluded expeditiously, the recoveries of all of the Debtors' estates and constituencies are likely to be adversely affected.

O. **Not a *Sub Rosa* Plan.** The consummation of the Sale outside of a plan of reorganization pursuant to the Asset Purchase Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a plan of reorganization or liquidation for the Debtors. The Asset Purchase Agreement, the Sale and the transactions contemplated therein and associated therewith do not constitute an impermissible *sub rosa* Chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford.

P. **Arm's-Length Sale.** The Asset Purchase Agreement, the Sale, and the Transactions were negotiated, proposed, and entered into by the Debtors and the Buyer without

collusion, in good faith, and from arm's-length bargaining positions. Neither the Debtors, their insiders and affiliates, nor the Buyer have engaged in any conduct that would cause or permit the Asset Purchase Agreement, the Sale, or any part of the transactions thereby to be avoided under Bankruptcy Code Section 363(n).

Q. **Good Faith Buyer.** The Buyer is a good faith purchaser under Bankruptcy Code Section 363(m) and, as such, is entitled to all of the protections afforded thereby. Specifically: (i) the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Acquired Assets; (ii) the Buyer complied in all respects with the provisions of the Bidding Procedures Order; (iii) the Buyer agreed to subject its bid to the competitive bid procedures set forth in the Bidding Procedures Order; (iv) all payments to be made by the Buyer in connection with the Sale have been disclosed; (v) no common identity of directors, officers or controlling stockholders exists among the Buyer and the Debtors; (vi) the negotiations and execution of the Asset Purchase Agreement was at arm's-length and in good faith, and at all times each of the Buyer and the Debtors were represented by competent counsel of their choosing; (vii) the Buyer did not in any way induce or cause the Chapter 11 filing of the Debtors; and (viii) the Buyer has not acted in a collusive manner with any person. The Buyer will be acting in good faith within the meaning of Bankruptcy Code Section 363(m) in closing the transactions contemplated by the Asset Purchase Agreement.

R. **Corporate Authority.** Each Debtor (i) has full corporate power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby, and the Sale of the Acquired Assets has been duly and validly authorized by all necessary corporate actions of each of the Debtors; (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by the Asset Purchase Agreement; (iii) has taken all corporate action

44232270 v1

necessary to authorize and approve the Asset Purchase Agreement and the consummation by the Debtors of the transactions contemplated thereby; and (iv) needs no consents or approvals, other than those expressly provided for in the Asset Purchase Agreement, which may be waived in accordance with the terms therewith.

S. **Free and Clear Findings Required by the Buyer.** The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the Sale Transaction, thus adversely affecting the Debtors, their estates, and their creditors, if the Sale of the Acquired Assets to the Buyer and the assumption and assignment of Acquired Contracts, were not, pursuant to Bankruptcy Code Section 363(f), free and clear (except for Permitted Liens and Assumed Liabilities) of (i) all liens (statutory or otherwise), claims, mortgages, deeds of trust, pledges, charges, security interests, rights of first refusal, hypothecations, encumbrances, easements, servitudes, leases or subleases, rights-of-way, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of offset or recoupment, right of use or possession, licenses, indentures, instruments, conditional sale arrangements, (ii) all claims as defined in Bankruptcy Code Section 101(5), including all rights or causes of action (whether in law or in equity), proceedings, warranties, guarantees, indemnities, rights of recovery, setoff, recoupment, indemnity or contribution, obligations, demands, restrictions, indemnification claims, or liabilities relating to any act or omission of the Debtors or any other person prior to the Closing, consent rights, options, contract rights, covenants, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of the above-captioned cases, and whether imposed by agreement, understanding, law, equity or otherwise, and (iii) all debts, liabilities, obligations, contractual rights and claims and labor, employment and

44232270 v1

pension claims, in each case, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or un-matured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise (excluding Permitted Liens and Assumed Liabilities, (i), (ii), and (iii) collectively, the "**Interests**").  Except as expressly provided in the Asset Purchase Agreement, the Sale shall be free and clear of, and the Buyer shall not be responsible for, any Interests, including, without limitation, in respect of the following:  (i) any rights or Interests based on any successor or transferee liability, (ii) any Interests that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or termination of the Debtors' or the Buyer's interest in the Acquired Assets, or any similar rights; (iii) any labor or employment agreements; (iv) mortgages, deeds of trust, and security interests; (v) intercompany loans and receivables between the Debtors and any non-Debtor subsidiary; (vi) any pension, multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of ERISA), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability; (vii) any other employee, worker's compensation, occupational disease, or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**"), (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age

Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Code and of any similar state law (collectively, "**COBRA**"), (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors, or (1) the WARN Act (29 U.S.C. §§2101 *et seq*.); (viii) any bulk sales or similar law; (ix) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (xii) any unexpired and executory contract or unexpired lease to which a Debtor is a party that is not an Assigned Contract that will be assumed and assigned pursuant to this Sale Order and the Asset Purchase Agreement; (xiii) any other Excluded Liabilities as provided in the Asset Purchase Agreement. A sale of the Acquired Assets other than one free and clear of all Interests would yield substantially less value for the Debtors' estates, with less certainty, than the Sale as contemplated. Therefore, the Sale contemplated by the Asset Purchase Agreement and approved herein free and clear of all Interests, except for Permitted Liens and Assumed Liabilities, is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

       T.     **Valid and Binding Transfer.** The transfer of the Acquired Assets to the Buyer will be a legal, valid, and effective transfer of the Acquired Assets and, except for the Permitted Liens and Assumed Liabilities, will vest the Buyer with all right, title, and interest of the Debtors to the Acquired Assets free and clear of all Interests and any liabilities of the Debtors.

       U.     **Satisfaction of Section 363(f) Standards.** The transfer of the Acquired Assets to the Buyer under the Asset Purchase Agreement shall be a legal, valid, and effective transfer of all

11

the legal, equitable, and beneficial right, title and interest in and to the Acquired Assets free and clear of all Interests, other than the Assumed Liabilities and Permitted Liens. The Debtors may sell the Acquired Assets free and clear of all Interests, except for the Permitted Liens and the Assumed Liabilities, because, in each case, one or more of the standards set forth in Bankruptcy Code Section 363(f)(1) through (5) has been satisfied, with all such Liens and Interests to attach to the proceeds of the Sale Transaction to be received by the Debtors with the same validity, force, priority and effect that they had as against the Acquired Assets, and any claims and defenses the Debtors and their estates may possess with respect thereto. Those holders of Interests, and non-debtor parties to the Assigned Contracts who did not object, or who withdrew their objections, to the Motion are, without limitation, deemed to have consented pursuant to Bankruptcy Code Section 363(f)(2). In all cases, each such person with Interests in the Acquired Assets is enjoined from taking any action against the Buyer, the Buyer's affiliates, or any agent of the foregoing to recover any such Interest.

V. **Necessity of Order.** The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the Sale Transaction without all of the relief provided for in this Sale Order (including, but not limited to, that the transfer of the Acquired Assets to the Buyer be free and clear of all Interests (other than Permitted Liens and the Assumed Liabilities)). The consummation of the Sale Transaction pursuant to this Sale Order and the Asset Purchase Agreement is necessary for the Debtors to maximize the value of their estates for the benefit of all creditors and other parties in interest.

W. **Time of the Essence**. The sale of the Acquired Assets must be approved and consummated promptly in order to preserve the value of the Acquired Assets. Therefore, time is

44232270 v1

of the essence in consummating the Sale, and the Debtors and the Buyer intend to close the Sale as soon as reasonably practicable.

X.    **Assigned Contracts.**  The Debtors have demonstrated that it is their sound business judgment to sell, assume, and assign the "Assumed Contracts" and "Assumed Leases" (as such terms are defined in the Asset Purchase Agreement), including, without limitation, the unexpired leases and executory contracts designated on Schedule 1.1(j) of the Asset Purchase Agreement (or in the case of the Backup Bid, Schedule 1.1(h) of the Backup Bid Agreement (as defined below)) (collectively, the "**Assigned Contracts**" and, individually, an "**Assigned Contract**") to the Buyer in connection with the consummation of the Sale, and the assumption and assignment of the Assigned Contracts is in the best interests of the Debtors, their estates and creditors, and other parties in interest.  The Assigned Contracts being assigned to the Buyer are an integral part of the Acquired Assets being purchased by the Buyer, and, accordingly, such assumption and assignment of the Assigned Contracts and the liabilities associated therewith are reasonable and enhance the value of the Debtors' estates.  No section of any Assigned Contract that purports to prohibit, restrict, impose any penalty or fee on, or condition the use, consideration, or assignment of any such Assigned Contract in connection with the Transactions shall have any force or effect.

Y.    **Cure and Adequate Assurance.**  Through Buyer's commitment to pay the Buyer's Cure Amount related to the Assigned Contracts and upon the payment of the Buyer's Cure Amount by the Buyer and the Seller's Cure Amount, if any, pursuant to the terms of the Asset Purchase Agreement, the Debtors and the Buyer, as applicable, have cured or otherwise have demonstrated their ability to cure any default with respect to any act or omission that occurred prior to the Closing (as defined in the Asset Purchase Agreement) under any of the Assigned Contracts, within the meaning of Bankruptcy Code Section 365(b)(l)(A).  The proposed Cure Costs or any other cure

13

amount reached by agreement after any objection by a counterparty to an Assigned Contract (an "**Assigned Contract Objection**") or otherwise are deemed the amounts necessary to "cure" all "defaults," each within the meaning of Bankruptcy Code Section 365(b), under such Assigned Contracts. The Buyer's promise to perform the obligations under the Assigned Contracts shall constitute adequate assurance of its future performance of and under the Assigned Contracts, within the meaning of Bankruptcy Code Sections 365(b)(l) and 365(f)(2). Subject to the Bidding Procedures Order, all counterparties to the Assigned Contracts who did not file an Assigned Contract Objection or an objection to the assumption and assignment of the Assigned Contracts prior to the Sale Hearing, are deemed to consent to the assumption by the Debtors of their respective Assigned Contract and the assignment thereof to the Buyer. The filed objections of all counterparties to the Assigned Contracts that were heard at the Sale Hearing (to the extent not withdrawn or adjourned), were considered by the Court, and are overruled on the merits with prejudice. The Court finds that, with respect to all such Assigned Contracts, the payment of the proposed Cure Costs by the Buyer or the Seller, as applicable, in accordance with the terms of the Asset Purchase Agreement is appropriate and is deemed to fully satisfy the Debtors' obligations under Bankruptcy Code Section 365(b). Accordingly, and without limitation of the Buyer's right under Sections 1.5(a) of the Asset Purchase Agreement, all of the requirements of Bankruptcy Code Section 365(b) have been satisfied for the assumption and the assignment by the Debtors to the Buyer of each of the Assigned Contracts. To the extent any Assigned Contract is not an executory contract within the meaning of Bankruptcy Code Section 365, it shall be transferred to the Buyer in accordance with the terms of this Sale Order that are applicable to the Acquired Assets.

Z. **Unenforceability of Anti-Assignment Provisions.** Any provisions in any Assigned Contract that restrict, limit, prohibit or condition the assumption, assignment, and sale of the Assigned Contracts or that allow the counterparty so such Assigned Contract to terminate, recapture, impose any penalty or fee, accelerate, increase any rate, condition on renewal or extension, or modify any term or condition upon the assignment of such Assigned Contract, should be deemed and found to be unenforceable anti-assignment provisions that are void and of no force and effect within the meaning of Bankruptcy Code Section 365(f).

AA. **Objections are Overruled.** All objections to the relief requested in the Motion that have not been withdrawn, waived, adjourned or settled as announced to the Court at the Sale Hearing or by stipulations filed with the Court are overruled except as otherwise set forth herein.

BB. **Final Order**. This Sale Order constitutes a final order within the meaning of 20 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order and expressly directs entry of judgment as set forth herein.

CC. **Best Interest**. Entry of this Sale Order is in the best interests of the Debtors, the Debtors' estates, their creditors, and other parties in interest.

DD. **Findings and Conclusions**. The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are adopted as such. To the extent any conclusions of law are findings of fact, they are adopted as such.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

**<u>General Provisions</u>**

15

44232270 v1
Case 20-81688-CRJ11 Doc 875 Filed 09/29/20 Entered 09/29/20 08:11:36 Desc
Main Document Page 265 of 326

1.      The Motion is granted and the relief requested therein with respect to the Sale is granted and approved in its entirety, as set forth herein.

2.      Any objections to the entry of this Sale Order or to the relief granted herein or the relief requested in the Motion, including any objections to the proposed Cure Costs or the assumption and assignment of any Assigned Contracts, that have not been adjourned, withdrawn, waived, or settled, or not otherwise addressed or resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits with prejudice.

**Approval of the Sale of the Acquired Assets**

3.      The Debtors are authorized to enter into the Asset Purchase Agreement (and all ancillary documents) and all the terms and conditions thereof, and all of the Transactions contemplated therein are approved in all respects.  The transfer of the Acquired Assets by the Debtors to the Buyer shall be a legal, valid and effective transfer of the Acquired Assets.

4.      Pursuant to Bankruptcy Code Section 363(b), the sale of the Acquired Assets to the Buyer free and clear of all Interests (other than the Permitted Liens and the Assumed Liabilities), and the transactions contemplated thereby is approved in all respects.

**Sale and Transfer of the Acquired Assets**

5.      Pursuant to Bankruptcy Code Sections 105, 363, and 365, the Debtors are authorized to (a) take any and all actions necessary or appropriate to perform their obligations under, and comply with the terms of, the Asset Purchase Agreement and consummate the Sale and the Transactions pursuant to, and in accordance with, the terms and conditions of the Asset Purchase Agreement and this Sale Order, including, without limitation (i) executing, acknowledging, and delivering such deeds, assignments, conveyances and other assurances, documents, and instruments of transfer and taking any action for purposes of assigning, transferring, granting, conveying, and conferring to the Buyer, or reducing to possession, any or

16

44232270 v1

all of the Acquired Assets and (ii) entering into the Ancillary Agreements, any transition services or operations support agreements with the Buyer and any other agreements related to implementing the Transactions and (b) take any and all further actions as may be necessary or appropriate to the performance of their obligations as contemplated by the Asset Purchase Agreement or this Sale Order. The Debtors are further authorized to pay, without further order of this Court, whether before, at, or after the Closing, any reasonable expenses or costs that are required to be paid to consummate the Transactions or perform their obligations under the Asset Purchase Agreement.

6.    Following the Closing, the Debtors or the Buyer and/or their respective designees are authorized to execute and file a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all obligations, liabilities, and Interests in the Acquired Assets of any kind or nature whatsoever (other than the Permitted Liens and Assumed Liabilities). Upon the Closing and the Debtors' receipt of the Purchase Price, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Debtors' interests in the Acquired Assets and a bill of sale transferring good and marketable title in the Acquired Assets to the Buyer free and clear of all Interests, except for the Permitted Liens and Assumed Liabilities. Each and every federal, state, and local governmental agency, quasi-agency, or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions.

7.    Except for the Permitted Liens, Assumed Liabilities or as expressly provided in the Asset Purchase Agreement, pursuant to Bankruptcy Code Sections 105(a) and 363(f), upon the Closing and the Debtors' receipt of the Purchase Price, the Acquired Assets shall be transferred to the Buyer as required under the Asset Purchase Agreement, and such transfer shall be free and

44232270.v1

clear of all Interests of any person, including, without limitation, all such Interests specifically enumerated in this Sale Order, whether arising by agreement, by statute, or otherwise and whether occurring or arising before, on, or after the Petition Date, whether known or unknown, occurring, or arising prior to such transfer, with all such Interests to attach to the proceeds of the Sale ultimately attributable to the property against or in which the holder of an Interest claims or may claim an Interest, in the order of their priority, with the same validity, force, and effect which they now have, subject to any claims and defenses the Debtors may possess with respect thereto.

8.      The transfer of the Acquired Assets to the Buyer pursuant to the Asset Purchase Agreement constitutes a legal, valid, and effective transfer of the Acquired Assets and shall vest the Buyer with all right, title, and interest of the Debtors in and to the Acquired Assets free and clear of all Interests of any kind or nature whatsoever, except for the Permitted Liens and Assumed Liabilities, with all such Interests to attach to the proceeds of the Sale ultimately attributable to the property against or in which the holder of an Interest claims or may claim an Interest, in the order of their priority, with the same validity, force, and effect which they now have, subject to any claims and defenses the Debtors may possess with respect thereto.

9.      All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Acquired Assets to the Buyer in accordance with the Asset Purchase Agreement and this Sale Order; *provided* that the foregoing restriction shall not prevent any party from appealing this Sale Order in accordance with applicable law or opposing any appeal of this Sale Order, or from enforcing its rights under Bankruptcy Code Section 365 or relieve the Buyer of any Assumed Liability.

10.      Except as expressly permitted by the Asset Purchase Agreement or this Sale Order, all persons and entities, including, but not limited to, all debt security holders, equity security

44232270 v1

holders, governmental, tax, and regulatory authorities, lenders, trade creditors, dealers, employees, litigation claimants, contract counterparties and other creditors, holding liens, claims encumbrances, and other interests of any kind or nature whatsoever, including, without limitation, rights or claims based on any taxes or successor or transferee liability, against or in a Debtor or the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets or the operation of the Acquired Assets before the Closing, or the transactions contemplated by the Asset Purchase Agreement, including, without limitation, the Sale and the assumption and assignment of the Assigned Contracts, are forever barred, estopped, and permanently enjoined from asserting against the Buyer, its respective successors and assigns, its respective property and the Acquired Assets, such persons' or entities' liens, claims, encumbrances, or other Interests, including, without limitation, rights or claims based on any taxes or successor or transferee liability, *provided* that nothing herein shall impair or otherwise affect any right under Bankruptcy Code Section 365 of a lease or contract counterparty to an Assigned Contract under its respective Assigned Contract(s), or relieve the Buyer of any Assumed Liability.

11.    Upon the Closing, each of the Debtors' creditors and any other holder of an Interest is authorized and directed, without cost to the Debtors, to execute such documents and take all other actions as may be necessary to release its Interest in the Acquired Assets, if any, as such Interest may have been recorded or may otherwise exist. If any person or entity that has filed financing statements or other documents or agreements evidencing an Interest in the Debtors or the Acquired Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of

19

44232270 v1
Case 20-81688-CRJ11    Doc 875    Filed 09/29/20    Entered 09/29/20 08:11:36    Desc
Main Document    Page 269 of 326

satisfaction, releases of all Interests, which the person or entity has with respect to the Debtors or the Acquired Assets or otherwise, then the Buyer and its designees are authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Debtors or the Acquired Assets and to file, register, or otherwise record a certified copy of this Sale Order, which shall constitute conclusive evidence of the release of all Interests of any kind or nature whatsoever in the Debtors or the Acquired Assets (other than the Permitted Liens and Assumed Liabilities). Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement, including, without limitation, recordation of this Sale Order.

12. Upon the Closing and the Debtors' receipt of the Purchase Price, all entities that are currently, or on the Closing may be, in possession of some or all of the Acquired Assets are hereby directed to surrender possession of the Acquired Assets to the Buyer, unless the Buyer otherwise agrees.

13. This Sale Order is self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Sale Order.

14. To the maximum extent permitted by applicable non-bankruptcy law, (a) the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval (collectively, the "**Permits**") of the Debtors with respect to and included in the Acquired Assets, and (b) all Permits that are included in the Acquired Assets are deemed to have been, and hereby are directed to be, transferred to the Buyer as of the Closing Date. Nothing in this Sale Order, and nothing in the foregoing sentence, authorizes the transfer or

44232270 v1

assignment of any governmental Permit or the discontinuation of any obligation thereunder without compliance with all applicable legal requirements and approvals under police or regulatory law. To the extent any Permit cannot be transferred to the Buyer in accordance with this paragraph, the Buyer, with such assistance from the Debtors as is required under the Asset Purchase Agreement, will work promptly and diligently to apply for and secure all necessary government approvals for the transfer or new issuance of the Permit(s) to the Buyer, and the Debtors shall maintain the Permits to the extent required under and subject to the terms of the Asset Purchase Agreement. For the avoidance of doubt, while nothing in this Sale Order or the Asset Purchase Agreement releases, nullifies, limits, waives, precludes, or enjoins the enforcement of any police or regulatory authority of a governmental unit, Buyer shall be entitled to operate under each state Permit currently held by or on behalf of the Debtors in relation to the Acquired Assets until such time as each such Permit is transferred to the Buyer and/or an equivalent Permit is issued to the Buyer.

15.     To the extent provided by Bankruptcy Code Section 525, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Acquired Assets sold, transferred, or conveyed to the Buyer on account of the filing or pendency of these Chapter 11 Cases or the consummation of the transactions contemplated by the Asset Purchase Agreement and this Sale Order.

**Implementation of the Sale**

16.     On Closing, the Buyer shall (a) pay the Purchase Price to the Debtors; (b) pay the Cure Costs as more fully described in paragraph 30 of this Sale Order and the Asset Purchase Agreement; (c) assume the Assumed Liabilities; and (d) perform any other obligations required to be performed by Buyer on the Closing. Each and every federal, state, and local governmental

21

44232270.v1

Case 20-81688-CRJ11    Doc 875    Filed 09/29/20    Entered 09/29/20 08:11:36    Desc
Main Document    Page 271 of 326

agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement, including, without limitation, recordation of this Sale Order.

17.     Within three (3) business days of the Debtors' receipt of the Net Sale Proceeds (as defined in the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection, (III) Modifying Automatic Stay, and (IV) Granting Related Relief* [Docket No. 410] (as it may be modified from time to time, the "**Cash Collateral Order**")) from the sale of the Acquired Assets, the Debtors shall pay the Net Sale Proceeds of the Acquired Assets to the Priority Term Loan Agent, for the account of the Priority Term Loan Secured Creditors, to the extent required under and in accordance with the terms of the Cash Collateral Order or such other order of the Court.  Upon the Priority Term Loan Agent's timely receipt of such payment, (a) the Priority Term Loan Obligations shall be paid and satisfied to the extent of the payment and (b) all liens and security interests against the Acquired Assets securing the Priority Term Loan Obligations shall be automatically released and discharged without further action by any person.  Upon the payment in full in cash of the Priority Term Loan Obligations and the occurrence of the Challenge Period Termination Date (as defined in the Cash Collateral Order), (w) the Debtors shall have no further indebtedness, liabilities or obligations owing under the Priority Term Loan Credit Agreement or the other "Financing Agreements" (as defined in the Priority Term Loan Agreement, the "**Priority Term Loan Documents**"), (x) other than any provisions thereof that survive pursuant to the terms thereof, the Priority Term Loan Credit Agreement and all other Priority Term Loan Documents (including, without limitation, any mortgages, guaranties and security agreements) and all of the Debtors' obligations thereunder shall terminate and be of no further force and effect, (y) all liens and security interests against the

property and assets of the Debtors securing the Priority Term Loan Obligations shall be automatically fully released and discharged without further action by any person, and (z) each deposit account control agreement in respect of or other sweeps or blocks of any Debtor's deposit accounts or lockboxes in favor of any of the Priority Term Loan Secured Parties shall terminate.

18.     The Debtors shall pay the Net Sale Proceeds from the sale of the Acquired Assets to the FILO Agent, for the account of the FILO Term Loan Secured Creditors, to the extent required under and in accordance with the terms of the Cash Collateral Order or such other order of the Court.  For the avoidance of doubt, any further payment to the FILO Agent shall be subject to orders previously entered by this Court and any further orders of this Court or provided under the Debtors' Chapter 11 plan.

19.     All parties in interest in these Chapter 11 Cases expressly reserve their rights with respect to any allocation of the Purchase Price or value among the purchased Acquired Assets, and any allocation of the Purchase Price or value among the purchased Acquired Assets as determined by the Buyer shall not be determinative or binding on any party in interest in these Chapter 11 Cases except as ordered by the Court after notice and a hearing.

## No Successor Liability

20.     Other than as expressly set forth in the Asset Purchase Agreement, the Buyer shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any Interests, including under any theory of successor or transferee liability, *de facto* merger or continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated, including without limitation, with respect to any of the following: (i) any foreign, federal, state, or local revenue law, pension law, ERISA, COBRA, tax law, labor law, employment law, the WARN Act, antitrust law,

CERCLA, and any other environmental, health and safety laws, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules or regulations); (ii) under any products liability law, rule, regulation, or doctrine with respect to the Debtors' liability under such law, rule, regulation, or doctrine, or under any product warranty liability law or doctrine; (iii) under any unfair trade practices law, rule, regulation or doctrine with respect to the Debtors' liability under such law, rule, regulation or doctrine, or under any unfair trade practices liability law or doctrine; (iv) any employment or labor agreements, consulting agreements, severance arrangements, change-in-control agreements, or other similar agreement to which the Debtors are a party; (v) any welfare, compensation, or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of the Debtors; (vi) the cessation of the Debtors' operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation, or other employee benefit plans, agreements, practices and programs, obligations that might otherwise arise from or pursuant to (a) ERISA, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967, (g) the Americans with Disabilities Act of 1990, or (h) COBRA; (vii) any liabilities, debts, or obligations of or required to be paid by the Debtors for any taxes of any kind for any period; (viii) any environmental liabilities, debts, claims fines, penalties, or obligations arising from conditions, facts or circumstances first existing or occurring on or prior to the Closing (including, without limitation, the presence of or exposure to chemical, hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis and at any time, including, without limitation, any liabilities, debts, claims, fines, penalties or obligations arising under CERCLA, or any other environmental, health, and safety laws; (viii) any

24

liabilities, debts, claims, fines, penalties, or obligations of or required to be paid by the Debtors for any taxes of any kind for any period; (ix) any liabilities, debts, claims, fines, penalties, or obligations of or required to be paid by the Debtors under any labor, employment, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules, or regulations); (x) any bulk sale law; and (xi) any litigation. The Buyer shall have no liability or obligation under the WARN Act simply by virtue of its purchase of assets from the Debtors.

21.     The Buyer has given substantial consideration under the Asset Purchase Agreement, which consideration shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Buyer and which shall be deemed to have been given in favor of the Buyer by all holders of Interests and liabilities (except for Permitted Liens and the Assumed Liabilities) in or against the Debtors, or the Acquired Assets. Without limiting the Buyer's obligation to pay and satisfy the Assumed Liabilities, upon consummation of the Sale, the Buyer shall not be deemed to (a) be the successor to the Debtors or their estates, (b) have, *de facto* or otherwise, merged with or into the Debtors, or (c) be a mere continuation, alter ego or substantial continuation of the Debtors under any theory of law or equity as a result of any action taken in connection with the Asset Purchase Agreement or any of the transactions or documents ancillary thereto or contemplated thereby or in connection with the acquisition of the Acquired Assets.

22.     Effective upon the Closing, except with respect to Assumed Liabilities and Permitted Liens, all persons and entities are forever prohibited and enjoined from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against the Buyer or its assets (including the Acquired Assets) with respect to any (a) Claim or Lien or (b) successor or transferee liability, including,

44232270.v1

without limitation, the following actions with respect to clauses (a) and (b): (i) commencing or continuing any action or other proceeding pending or threatened; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or Claim; (iv) asserting any setoff, right of subrogation, or recoupment of any kind; (v) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof; or (vi) revoking, terminating, or failing or refusing to renew any License, permit, or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with such assets.

**Good Faith**

23.     The transactions contemplated by the Asset Purchase Agreement are undertaken by the Buyer without collusion and in good faith, as that term is used in Bankruptcy Code Section 363(m), and, accordingly, the reversal or modification on appeal of the authorization provided in this Sale Order to consummate the Sale and the Transactions shall not affect the validity of the transactions (including the assumption and assignment of any of the Assigned Contracts). The Buyer is a purchaser in good faith of the Acquired Assets and is entitled to all the protections afforded by Bankruptcy Code Section 363(m).

24.     As a good faith purchaser of the Acquired Assets, the Buyer has not entered into an agreement with any other potential bidders at the Auction, and has not colluded with any of the other bidders, potential bidders or any other parties interested in the Acquired Assets, and, therefore, neither the Debtors nor any successor in interest to the Debtors' estates shall be entitled to bring an action against the Buyer, and the Sale may not be avoided pursuant to Section 363(n) of the Bankruptcy Code.

25.     The consideration provided by the Buyer for the Acquired Assets under the Asset Purchase Agreement constitutes reasonably equivalent value, fair value, reasonable market value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.  The Sale may not be avoided under Bankruptcy Code Section 363(n).  The Asset Purchase Agreement was not entered into, and the Sale is not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtors under the Bankruptcy Code or for any other purpose that would give rise to statutory or common law fraudulent conveyance or fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable jurisdiction with laws substantially similar to the foregoing.  Neither the Debtors nor the Buyer have entered into the Asset Purchase Agreement or any agreement contemplated thereby or are consummating the Sale with any fraudulent or otherwise improper purpose, including, without limitation, to evade any pension liabilities.  No other person or entity or group of persons or entities has offered to purchase the Acquired Assets for an amount that would provide greater value to the Debtors and their estates than the value provided by the Buyer.  The Court's approval of the Motion and the Asset Purchase Agreement are in the best interests of the Debtors, the Debtors' estates, their creditors, and all other parties in interest.

26.     The Buyer is not an "insider" as that term is defined in Section 101(31) of the Bankruptcy Code.

**Assumption and Assignment of Assigned Contracts; Assumed Liabilities**

27.     Pursuant to Bankruptcy Code Sections 105(a), 363, and 365, the Bidding Procedures Order, and subject to and conditioned upon the Closing of the Sale, the Debtors' sale,

44232270 v1

assumption and assignment to the Buyer of the Assigned Contracts is approved, and the requirements of Bankruptcy Code Section 365(b)(1) with respect thereto are deemed satisfied.

28.     The Debtors are authorized in accordance with Bankruptcy Code Sections 105(a) and 365 to (i) assume and assign to the Buyer, effective as of the Closing and at such other times as may be specified in accordance with the terms and conditions of the Asset Purchase Agreement, as provided by, and in accordance with, the Bidding Procedures Order and the Asset Purchase Agreement, the Assigned Contracts free and clear of all Interests of any kind or nature whatsoever, other than the Permitted Liens and Assumed Liabilities, and (ii) execute and deliver to the Buyer such documents or other instruments as the Buyer reasonably deems necessary to assign and transfer the Assigned Contracts to the Buyer.

29.     The Assigned Contracts shall be transferred and assigned to, pursuant to the Bidding Procedures Order and the Asset Purchase Agreement, and thereafter remain in full force and effect for the benefit of, the Buyer, notwithstanding any provision in any such Assigned Contract (including, but not limited to, those of the type described in Bankruptcy Code Sections 365(b)(2), (e)(1), and (f)) that prohibits, restricts, or conditions such assignment or transfer.  The Debtors shall be relieved from any further liability with respect to the Assigned Contracts after such assumption and assignment to the Buyer.  The Debtors may assign each Assigned Contract in accordance with Bankruptcy Code Sections 363 and 365, and any provisions in any Assigned Contracts that prohibit or condition the assignment of such Assigned Contracts or terminate, recapture, impose any penalty, condition, renewal, or extension, or modify any term or condition upon the assignment of such Assigned Contracts, constitute unenforceable anti-assignment provisions which are void and of no force and effect.  All other requirements and conditions under

44232270.v1
Case 20-81688-CRJ11    Doc 875    Filed 09/29/20    Entered 09/29/20 08:11:36    Desc
Main Document    Page 278 of 326

Bankruptcy Code Sections 363 and 365 for the assumption by the Debtors and assignment to the Buyer of each Assigned Contract have been satisfied.

30.     All defaults and all other obligations or liabilities under any Assigned Contract occurring, arising, or accruing prior to the date of the assignment or transfer to the Buyer shall be deemed cured or satisfied upon payment by the Buyer and/or the Debtors (in each case in accordance with Section 1.5 of the Asset Purchase Agreement) of the proposed Cure Cost, as set forth in the Notice of Assumption and Assignment, any Supplemental Notice of Assumption and Assignment, or any other cure amount reached by agreement after an Assigned Contract Objection or otherwise, and, without limiting the foregoing, no effect shall be given to any default of the type set forth in Bankruptcy Code Section 365(b)(2), or the type of default concerning an unexpired lease of real property described in Bankruptcy Code Section 365(b)(1) whether or not such Assigned Contract is an executory contract within the meaning of Bankruptcy Code Section 365.

31.     Each non-Debtor counterparty to the Assigned Contracts shall be forever barred, estopped, and permanently enjoined from (a) asserting against the Debtors, the Buyer, or their respective property (including the Acquired Assets) any fee, acceleration, default, breach, Claim (including any counterclaim, defense, or setoff capable of being asserted against the Debtors), pecuniary loss, or condition to assignment existing, arising, or accruing as of the Closing Date, or arising by reason of the Closing, including any breach related to or arising out of any change-in-control provision in such Assigned Contracts, or any purported written or oral modification to the Assigned Contracts, and (b) asserting against the Buyer (or its property, including the Acquired Assets) any Claim or Lien, counterclaim, breach, condition or setoff asserted or capable of being asserted against the Debtors existing as of the Closing Date or arising by reason of the Closing except for the Assumed Liabilities and Permitted Liens.

32.     The Cure Costs amounts listed on the Notice of Assumption and Assignment, any Supplemental Notice of Assumption and Assignment, or any other cure amount reached by agreement after an Assigned Contract Objection or otherwise, reflect the sole amounts necessary under Bankruptcy Code Section 365(b) to cure all monetary defaults under the Assigned Contracts, and no other amounts are or shall be due to the non-debtor parties in connection with the assumption by the Debtors and assignment to the Buyer of the Assigned Contracts. Notwithstanding anything to the contrary herein, if the Cure Costs for an Assigned Contract is determined to be greater than the proposed Cure Costs asserted in the Notice of Assumption and Assignment or Supplemental Notice of Assumption and Assignment, the Buyer may decide, in its discretion, not to assume that Assigned Contract.  Notwithstanding anything to the contrary herein, in each case in accordance with Bidding Procedures Order and the terms and conditions of the Asset Purchase Agreement, the Buyer may decide (i) not to assume one or more unexpired leases and executory contracts designated on Schedule 1.1(i) of the Asset Purchase Agreement (or in the case of the Backup Bid, Schedule 1.1(h) of the Backup Bid Agreement), and (ii) to supplement Schedule 1.1(i) of the Asset Purchase Agreement (or in the case of the Backup Bid, Schedule 1.1(h) of the Backup Bid Agreement) by including any previously omitted unexpired lease or executory contract.

33.     The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Buyer's rights to enforce every term and condition of the Assigned Contracts.

34.     Notwithstanding anything in the Asset Purchase Agreement or this Sale Order to the contrary and for the avoidance of doubt, the Acquired Assets shall not include any of the Excluded Assets as set forth in Section 1.2 of the Asset Purchase Agreement.

44232270 v1

35.     The Buyer shall be responsible for the satisfaction of the Assumed Liabilities under the Asset Purchase Agreement, including without limitation the Buyer's Cure Amount arising under the Assigned Contracts.  Except as provided in the Asset Purchase Agreement or this Sale Order, after the Closing, the Debtors and their estates shall have no further liability or obligations with respect to any Assumed Liability, including those arising under the Assigned Contracts, and all holders of such claims are forever barred and estopped from asserting any claims under any Assumed Liability (including those arising under the Assigned Contracts) against the Debtors, their successors or assigns, and their estates.

**Backup Bidder**

36.     Barnes Acquisition LLC is hereby approved as the Backup Bidder and pursuant to Bankruptcy Code Sections 105, 363, and 365, the Asset Purchase Agreement attached hereto as Exhibit B (the "**Backup Bid Agreement**") submitted by Barnes Acquisition LLC (the "**Backup Bidder**"), the sale of the Acquired Assets and consummation of the Sale to the Backup Bidder are hereby approved as the Backup Bid.  The Backup Bid on the terms set forth in the Backup Bid Agreement is hereby approved and authorized as a Backup Bid and shall remain open as a Backup Bid pursuant to the terms of the Bidding Procedures Order and the bid terms submitted at the Auction.  In the event that the Successful Bidder cannot or refuses to consummate the Sale because of a breach or failure on the part of the Successful Bidder, the Backup Bidder will be deemed the new Successful Bidder and the Debtors shall be authorized, but not directed, to close, and take all actions necessary to close, with the Backup Bidder on the Backup Bid without further order of the Court, and in such case the findings and other provisions of this Sale Order shall apply to the Backup Bidder and the Backup Bid Agreement to the same extent they do with respect to the Buyer and the Asset Purchase Agreement.

44232270 v1

**Other Provisions**

37.     Nothing in this Sale Order or in the Asset Purchase Agreement entered into pursuant to this Sale Order releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory authority of a governmental unit.

38.     This Sale Order and the Asset Purchase Agreement shall be binding in all respects upon all known and unknown creditors of, and holders of equity security interests in, any Debtor, including any holders of Interests, all counterparties to the Assigned Contracts, all counterparties to contracts that are not assumed or assigned, all successors and assigns of the Buyer, each Debtor and their affiliates and subsidiaries, the Acquired Assets, and any trustees appointed in the Chapter 11 Cases or upon a conversion to cases under Chapter 7 of the Bankruptcy Code, and this Sale Order shall not be subject to amendment or modification and the Asset Purchase Agreement shall not be subject to rejection.  Nothing contained in any Chapter 11 plan confirmed in any Debtor's bankruptcy case, any order confirming any such Chapter 11 plan, or any other order in the Chapter 11 Cases shall alter, conflict with, or derogate from, the provisions of the Asset Purchase Agreement or this Sale Order.

39.     To the extent applicable, the automatic stay pursuant to Section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtors to the extent necessary, without further order of the Court (a) to allow the Buyer to give the Debtors any notice provided for in the Asset Purchase Agreement, and (b) to allow the Buyer to take any and all actions permitted by the Asset Purchase Agreement.

40.     No bulk sales law or similar law shall apply in any way to the transactions contemplated by the Sale, the Asset Purchase Agreement, the Motion, and this Sale Order.

44232270 v1

41. This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Asset Purchase Agreement, all amendments thereto, and any waivers and consents thereunder, including, but not limited to, retaining jurisdiction to (i) enforce the terms of the Asset Purchase Agreement; (ii) compel delivery of the Acquired Assets to the Buyer; (iii) interpret, implement, and enforce the provisions of this Sale Order; (iii) protect the Buyer, any of the Buyer's affiliates, or any agent of the foregoing, against any Interests against the Debtors or the Acquired Assets of any kind or nature whatsoever, except for the Permitted Liens and Assumed Liabilities, and (iv) enter any order under Bankruptcy Code Sections 363 and 365.

42. No brokers were involved in consummation of the Sale, and no brokers' commissions are due to any person in connection with the Sale; *provided, however*, that this provision does not impact any transaction or other fees due to investment bankers or financial advisors employed (a) by the Debtors, including, but not limited to Ducera Partners LLC, or certain of their creditors for which the Debtors may be obligated to pay in accordance with an engagement letter with such professional(s), or (b) by the Buyers.

43. To the extent there is any inconsistency between the terms of this Sale Order and the terms of the Asset Purchase Agreement (including all ancillary documents executed in connection therewith), the terms of this Sale Order shall govern.

44. The failure to specifically include any particular provision of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement be authorized and approved in its entirety.

33

45. The Asset Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, *provided* that the Debtors shall provide the Bid Consultation Parties with three (3) business days' notice thereof and *provided* further that any such modification, amendment, or supplement does not, based on the Debtors' judgment, have a material adverse effect on the Debtors' estates.

46. Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Sale Order shall not be stayed for fourteen (14) days after its entry and shall be effective immediately upon entry, and the Debtors and the Buyer are authorized to close the transaction immediately upon entry of this Sale Order. Time is of the essence in closing the transactions referenced herein, and the Debtors and the Buyer intend to close the transactions as soon as practicable. This Sale Order is a final, appealable order and the period in which an appeal must be filed shall commence upon the entry of this Sale Order.

47. The provisions of the Asset Purchase Agreement and this Sale Order may be specifically enforced in accordance with the Asset Purchase Agreement notwithstanding the appointment of any Chapter 7 or Chapter 11 trustee after the Closing.

48. Headings utilized in this Sale Order are for convenience of reference only, and do not constitute a part of this Sale Order for any other purpose.

49. All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

50. The provisions of this Sale Order are non-severable and mutually dependent.

51. All issues raised by Oracle America, Inc. ("**Oracle**") in *Oracle's Limited Objection and Reservation of Rights Regarding (a) Debtors' Motion for (a) an Order Establishing Bidding*

34

44232270.v1

*Procedures and Granting Related Relief and (ii) an Order or Orders Approving the Sale of the Debtors' Assets; and (b) Notice of Executory Contracts and Unexpired Leases that May Be Assumed and Assigned in Connection with the Sale of the Debtors' Assets and the Proposed Cure Cost with Respect Thereto* (the "**Oracle Objection**") [Docket No. 529] are expressly reserved.  The Oracle Objection may be set for hearing on an expedited basis upon the request of Oracle and/or the Debtors.

52.     Nothing in the Asset Purchase Agreement or in this Order shall have the effect of transferring, impairing, reducing or otherwise limiting any of the Debtors' rights in any insurance policies covering Excluded Liabilities or the proceeds of such polices.  For the avoidance of doubt, the Debtors reserve control over the privilege concerning any retained documents and nothing in this Order relieves the Debtors of any document retention obligations.

Dated: _____, 2020

_____
UNITED STATES BANKRUPTCY JUDGE

**Exhibit A**

**Asset Purchase Agreement**

**Exhibit B**

**Backup Bid Agreement**

| Summary report: | |
|---|---|
| **Litera® Change-Pro for Word 10.9.0.460 Document comparison done on 9/28/2020 6:17:07 PM** | |
| **Style name:** OMM Standard | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** dm://OMM_US/79046774/6 | |
| **Modified DMS:** dm://OMM_US/79046774/7 | |
| **Changes:** | |
| Add | 6 |
| Delete | 4 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 10 |

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| REMINGTON OUTDOOR COMPANY, INC., *et al.*, [1] | Case No. 20-81688-CRJ11 |
| Debtors. | Jointly Administered |

## ORDER APPROVING THE SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL CLAIMS, LIENS, AND INTERESTS

This matter having come before the Court upon the motion (the "**Motion**")[2] by Remington Outdoor Company, Inc., ("**Remington**" or the "**Company**"), and its affiliated debtors and debtors in possession (collectively the "**Debtors**") in the above-captioned Chapter 11 cases seeking entry of this order (this "**Sale Order**") (a) authorizing the sale of the Acquired Assets (as defined in the Asset Purchase Agreement (as defined below)) free and clear of all Interests (as defined below), pursuant to that certain Asset Purchase Agreement, dated as of September 26, 2020, attached hereto as <u>Exhibit A</u> (the "**Asset Purchase Agreement**"), by and among the Debtors and Sierra Bullets, L.L.C. (the "**Buyer**"), and all other transaction documents related thereto; (b) authorizing the assumption and assignment of certain executory contracts and unexpired leases; and (c) granting the related relief contemplated therein; and the Court having found that (i) the Court has

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405). The Debtors' corporate headquarters is located at 100 Electronics Blvd SW, Huntsville, Alabama 35824.

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Motion or the Asset Purchase Agreement, as applicable.

jurisdiction over this matter; (ii) venue is proper in this District; (iii) this is a core proceeding; (iv) the notice of the Motion and the Sale Hearing (as defined below) was sufficient under the circumstances; and (v) there is good cause to waive the stay of Bankruptcy Rule 6004(h); and based on the statements of counsel and the evidence presented in support of the relief requested by the Debtors in the Motion at a hearing before this Court on September 29 [and 30], 2020 (the "**Sale Hearing**"); and it appearing that no other notice need be given; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.    **Jurisdiction, Core Proceeding, Statutory Predicates, and Venue**.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *General Order of Reference* of the United States District Court for the Northern District of Alabama dated July 16, 1984 as amended July 17, 1984.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The predicates for the relief granted herein are Bankruptcy Code Sections 105, 363, and 365 and Bankruptcy Rules 2002, 6004, and 6006.  Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    **Just Cause**.  The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Sale Order is in the best interests of the Debtors and their respective estates, creditors, and all other parties in interest.

C.    **Notice**.  The notice of the Motion, the Sale Hearing, the Asset Purchase Agreement, the transactions contemplated therein or in connection therewith and corresponding transactions documents (the "**Transactions**"), and the proposed entry of this Sale Order was adequate and sufficient under the circumstances of the Chapter 11 Cases, and such notice complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  A

2

reasonable opportunity to object or be heard regarding the relief granted by this Sale Order has been afforded to those parties entitled to notice pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Accordingly, no further notice of the Motion, the Sale Hearing, or this Sale Order is necessary or required.

D. The Publication Notice was published in the *New York Times* on August 24, 2020. Such Publication Notice was compliant with the Bidding Procedures Order, and was sufficient and proper notice to any other interested parties, including those whose identities are unknown to the Debtors.

E. **Extensive Efforts by Debtors**. Since before the commencement of the Chapter 11 Cases, the Debtors worked with their counsel and financial advisors to implement a viable transaction that would allow them to maximize the value of the Acquired Assets. The Sale Transaction that is the subject of this Sale Order is the result of the Debtors' extensive efforts seeking to maximize recoveries to the Debtors' estates for the benefit of the Debtors' creditors.

F. **Business Justification**. The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business justification for the Court to grant the relief requested in the Motion, including, without limitation, to (i) authorize the sale of the Acquired Assets free and clear of Interests other than Permitted Liens (as defined in the Asset Purchase Agreement) and Assumed Liabilities (as defined in the Asset Purchase Agreement); (ii) authorize the assumption and assignment of certain executory contracts and unexpired leases; and (iii) grant related relief as set forth herein. Such compelling and sound business justification, which was set forth in the Motion and on the record at the Sale Hearing, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

G. **Bidding Procedures Order**. The Bidding Procedures Order [Docket No. 411] was entered by the Court on August 20, 2020, which, among other things (i) approved the Bidding Procedures; (ii) established the Assumption and Assignment Procedures; (iii) approved the form and manner of notice with respect to all procedures, protections, schedules, and agreements described in the Motion and attached thereto; and (iv) scheduled a date for the Auction and Sale Hearing. The Bidding Procedures provided a full, fair, and reasonable opportunity for any entity to make an offer to purchase the Acquired Assets.

H. **Auction; Successful Bidder**. The sale process was properly conducted by the Debtors in accordance with the Bidding Procedures Order and in a manner designed to result in the highest or otherwise best offer for the Acquired Assets. At the Auction, the Debtors agreed in a reasonable exercise of their business judgment, in consultation with their management, the Restructuring Committee, advisors and the Bid Consultation Parties, to enter into and consummate Asset Purchase Agreement with the Buyer. At the conclusion of the Auction, the Buyer was determined to be the Successful Bidder.

I. **Asset Purchase Agreement**. The consummation of the Transactions contemplated by the Asset Purchase Agreement, the Motion, and this Sale Order is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and all of the applicable requirements of such sections and rules have been complied with in respect of such transactions.

J. **Sale Hearing**. The Sale Hearing occurred on September 29 [and 30], 2020 in accordance with the Bidding Procedures Order.

K. **Adequate Marketing; Highest or Otherwise Best Offer.** As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing, including the

*Declaration of Ken D'Arcy in Support of Chapter 11 Petitions and First Day Pleadings of Remington Outdoor Company, Inc. and Its Affiliated Debtors and Debtors-Possession* [Docket No. 6 and the *Declaration of Bradley C. Meyer in Support of Debtors' Cash Collateral Motion and Bidding Procedures Motion* [Docket No. 355]; and (ii) the representations of counsel made on the record at the Bidding Procedures Hearing and the Sale Hearing, (a) the Debtors have adequately marketed the Acquired Assets and conducted a sale process in a non-collusive, fair and good faith manner in compliance with the Bidding Procedures Order; (b) the process set forth in the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any interested party to make the highest or otherwise best offer to purchase the Acquired Assets and assume the Assumed Liabilities; (c) the consideration provided by the Buyer in the Asset Purchase Agreement constitutes the highest or otherwise best offer to purchase the Acquired Assets and assume the Assumed Liabilities; (d) the consideration provided by the Buyer in the Asset Purchase Agreement provides fair and reasonable consideration for the Acquired Assets and the assumption of the Assumed Liabilities and constitutes reasonably equivalent value, fair value and reasonable market value under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, the District of Columbia, or other applicable law; (e) the Sale will provide a greater recovery for the Debtors' creditors with respect to the Acquired Assets than would be provided by any other practically available alternative; (f) taking into consideration all relevant factors and circumstances, and after taking account of the Bid Protections, no other entity has offered to purchase the Acquired Assets for greater economic value to the Debtors or their estates; and (g) the Debtors' determination that the Asset Purchase Agreement constitutes the highest or otherwise best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtors' business judgment.

5

L.    **No Successor Liability.**  Neither the Buyer nor any of its affiliates, officers, directors, shareholders, members, partners, principals or any of their respective representatives, successors, or assigns is an "insider or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors, or stockholders existed or exists between the Buyer and the Debtors.  The transfer of the Acquired Assets to and the assumption of the Assumed Liabilities by the Buyer, except as otherwise set forth in the Asset Purchase Agreement, does not, and will not, subject the Buyer to any liability whatsoever, with respect to the operation of the Debtors' businesses prior to the closing of the Sale or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity including, without limitation, any laws affecting antitrust, successor, transferee, or vicarious liability.  Pursuant to the Asset Purchase Agreement, the Buyer is not purchasing all of the Debtors' assets in that the Buyer is not purchasing any of the Excluded Assets or assuming the Excluded Liabilities, and the Buyer is not holding itself out to the public as an *alter ego* or a continuation of the Debtors.  The Sale does not amount to a consolidation, merger, or *de facto* merger of the Buyer and the Debtors.  There is no substantial continuity between the Buyer and the Debtors, and there is no continuity of enterprise between the Debtors and the Buyer.  The Buyer is not a mere continuation of the Debtors or the Debtors' estates, and the Buyer does not constitute a successor to the Debtors or the Debtors' estates.  None of the Transactions, including, without limitation, the Sale or the assumption and assignment of the Assigned Contracts, is being undertaken for the purpose of escaping liability for any of the Debtors' debts or hindering, delaying, or defrauding creditors under the Bankruptcy Code or for any other purpose that would give rise to statutory or common law fraudulent conveyance or fraudulent transfer claims, whether under the Bankruptcy

Code or under the laws of the United States, any state, territory, possession thereof, the District of Columbia, or any other applicable jurisdiction with laws substantially similar to the foregoing.

M. **Acquired Assets Property of the Estate.** The Acquired Assets are property of the Debtors' estates and title thereto is vested in the Debtors' estates.

N. **Sale in Best Interest/Fiduciary Duties**. The Debtors have demonstrated a sufficient basis and compelling circumstances requiring them to enter into the Asset Purchase Agreement and sell the Acquired Assets and such actions are appropriate under the circumstances of these Chapter 11 Cases, are in the best interests of the Debtors, their estates and creditors, and other parties in interest, and represent a reasonable exercise of business judgment by the Debtors and the Restructuring Committee and their fulfillment of their fiduciary duties under applicable law. Approval of the Asset Purchase Agreement, the Sale, and the Transactions at this time is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest. Unless the sale is concluded expeditiously, the recoveries of all of the Debtors' estates and constituencies are likely to be adversely affected.

O. **Not a *Sub Rosa* Plan.** The consummation of the Sale outside of a plan of reorganization pursuant to the Asset Purchase Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a plan of reorganization or liquidation for the Debtors. The Asset Purchase Agreement, the Sale and the transactions contemplated therein and associated therewith do not constitute an impermissible *sub rosa* Chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford.

P. **Arm's-Length Sale.** The Asset Purchase Agreement, the Sale, and the Transactions were negotiated, proposed, and entered into by the Debtors and the Buyer without

collusion, in good faith, and from arm's-length bargaining positions. Neither the Debtors, their insiders and affiliates, nor the Buyer have engaged in any conduct that would cause or permit the Asset Purchase Agreement, the Sale, or any part of the transactions thereby to be avoided under Bankruptcy Code Section 363(n).

Q.      **Good Faith Buyer.**  The Buyer is a good faith purchaser under Bankruptcy Code Section 363(m) and, as such, is entitled to all of the protections afforded thereby.  Specifically: (i) the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Acquired Assets; (ii) the Buyer complied in all respects with the provisions of the Bidding Procedures Order; (iii) the Buyer agreed to subject its bid to the competitive bid procedures set forth in the Bidding Procedures Order; (iv) all payments to be made by the Buyer in connection with the Sale have been disclosed; (v) no common identity of directors, officers or controlling stockholders exists among the Buyer and the Debtors; (vi) the negotiations and execution of the Asset Purchase Agreement was at arm's-length and in good faith, and at all times each of the Buyer and the Debtors were represented by competent counsel of their choosing; (vii) the Buyer did not in any way induce or cause the Chapter 11 filing of the Debtors; and (viii) the Buyer has not acted in a collusive manner with any person.  The Buyer will be acting in good faith within the meaning of Bankruptcy Code Section 363(m) in closing the transactions contemplated by the Asset Purchase Agreement.

R.      **Corporate Authority.**  Each Debtor (i) has full corporate power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby, and the Sale of the Acquired Assets has been duly and validly authorized by all necessary corporate actions of each of the Debtors; (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by the Asset Purchase Agreement; (iii) has taken all corporate action

necessary to authorize and approve the Asset Purchase Agreement and the consummation by the Debtors of the transactions contemplated thereby; and (iv) needs no consents or approvals, other than those expressly provided for in the Asset Purchase Agreement, which may be waived in accordance with the terms therewith.

S.    **Free and Clear Findings Required by the Buyer.** The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the Sale Transaction, thus adversely affecting the Debtors, their estates, and their creditors, if the Sale of the Acquired Assets to the Buyer and the assumption and assignment of Acquired Contracts, were not, pursuant to Bankruptcy Code Section 363(f), free and clear (except for Permitted Liens and Assumed Liabilities) of (i) all liens (statutory or otherwise), claims, mortgages, deeds of trust, pledges, charges, security interests, rights of first refusal, hypothecations, encumbrances, easements, servitudes, leases or subleases, rights-of-way, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of offset or recoupment, right of use or possession, licenses, indentures, instruments, conditional sale arrangements, (ii) all claims as defined in Bankruptcy Code Section 101(5), including all rights or causes of action (whether in law or in equity), proceedings, warranties, guarantees, indemnities, rights of recovery, setoff, recoupment, indemnity or contribution, obligations, demands, restrictions, indemnification claims, or liabilities relating to any act or omission of the Debtors or any other person prior to the Closing, consent rights, options, contract rights, covenants, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of the above-captioned cases, and whether imposed by agreement, understanding, law, equity or otherwise, and (iii) all debts, liabilities, obligations, contractual rights and claims and labor, employment and

9

pension claims, in each case, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or un-matured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise (excluding Permitted Liens and Assumed Liabilities, (i), (ii), and (iii) collectively, the "**Interests**"). Except as expressly provided in the Asset Purchase Agreement, the Sale shall be free and clear of, and the Buyer shall not be responsible for, any Interests, including, without limitation, in respect of the following: (i) any rights or Interests based on any successor or transferee liability, (ii) any Interests that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or termination of the Debtors' or the Buyer's interest in the Acquired Assets, or any similar rights; (iii) any labor or employment agreements; (iv) mortgages, deeds of trust, and security interests; (v) intercompany loans and receivables between the Debtors and any non-Debtor subsidiary; (vi) any pension, multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of ERISA), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability; (vii) any other employee, worker's compensation, occupational disease, or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**"), (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age

10

Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Code and of any similar state law (collectively, "**COBRA**"), (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors, or (1) the WARN Act (29 U.S.C. §§2101 *et seq*.); (viii) any bulk sales or similar law; (ix) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (xii) any unexpired and executory contract or unexpired lease to which a Debtor is a party that is not an Assigned Contract that will be assumed and assigned pursuant to this Sale Order and the Asset Purchase Agreement; (xiii) any other Excluded Liabilities as provided in the Asset Purchase Agreement. A sale of the Acquired Assets other than one free and clear of all Interests would yield substantially less value for the Debtors' estates, with less certainty, than the Sale as contemplated. Therefore, the Sale contemplated by the Asset Purchase Agreement and approved herein free and clear of all Interests, except for Permitted Liens and Assumed Liabilities, is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

T. **Valid and Binding Transfer.** The transfer of the Acquired Assets to the Buyer will be a legal, valid, and effective transfer of the Acquired Assets and, except for the Permitted Liens and Assumed Liabilities, will vest the Buyer with all right, title, and interest of the Debtors to the Acquired Assets free and clear of all Interests and any liabilities of the Debtors.

U. **Satisfaction of Section 363(f) Standards.** The transfer of the Acquired Assets to the Buyer under the Asset Purchase Agreement shall be a legal, valid, and effective transfer of all

the legal, equitable, and beneficial right, title and interest in and to the Acquired Assets free and clear of all Interests, other than the Assumed Liabilities and Permitted Liens.  The Debtors may sell the Acquired Assets free and clear of all Interests, except for the Permitted Liens and the Assumed Liabilities, because, in each case, one or more of the standards set forth in Bankruptcy Code Section 363(f)(1) through (5) has been satisfied, with all such Liens and Interests to attach to the proceeds of the Sale Transaction to be received by the Debtors with the same validity, force, priority and effect that they had as against the Acquired Assets, and any claims and defenses the Debtors and their estates may possess with respect thereto.  Those holders of Interests, and non-debtor parties to the Assigned Contracts who did not object, or who withdrew their objections, to the Motion are, without limitation, deemed to have consented pursuant to Bankruptcy Code Section 363(f)(2).  In all cases, each such person with Interests in the Acquired Assets is enjoined from taking any action against the Buyer, the Buyer's affiliates, or any agent of the foregoing to recover any such Interest.

V.      **Necessity of Order.**  The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the Sale Transaction without all of the relief provided for in this Sale Order (including, but not limited to, that the transfer of the Acquired Assets to the Buyer be free and clear of all Interests (other than Permitted Liens and the Assumed Liabilities)).  The consummation of the Sale Transaction pursuant to this Sale Order and the Asset Purchase Agreement is necessary for the Debtors to maximize the value of their estates for the benefit of all creditors and other parties in interest.

W.      **Time of the Essence**.  The sale of the Acquired Assets must be approved and consummated promptly in order to preserve the value of the Acquired Assets.  Therefore, time is

of the essence in consummating the Sale, and the Debtors and the Buyer intend to close the Sale as soon as reasonably practicable.

X.      **Assigned Contracts.**  The Debtors have demonstrated that it is their sound business judgment to sell, assume, and assign the "Assumed Contracts" and "Assumed Leases" (as such terms are defined in the Asset Purchase Agreement), including, without limitation, the unexpired leases and executory contracts designated on Schedule 1.1(j) of the Asset Purchase Agreement (or in the case of the Backup Bid, Schedule 1.1(h) of the Backup Bid Agreement (as defined below)) (collectively, the "**Assigned Contracts**" and, individually, an "**Assigned Contract**") to the Buyer in connection with the consummation of the Sale, and the assumption and assignment of the Assigned Contracts is in the best interests of the Debtors, their estates and creditors, and other parties in interest.  The Assigned Contracts being assigned to the Buyer are an integral part of the Acquired Assets being purchased by the Buyer, and, accordingly, such assumption and assignment of the Assigned Contracts and the liabilities associated therewith are reasonable and enhance the value of the Debtors' estates.  No section of any Assigned Contract that purports to prohibit, restrict, impose any penalty or fee on, or condition the use, consideration, or assignment of any such Assigned Contract in connection with the Transactions shall have any force or effect.

Y.      **Cure and Adequate Assurance.**  Through Buyer's commitment to pay the Buyer's Cure Amount related to the Assigned Contracts and upon the payment of the Buyer's Cure Amount by the Buyer and the Seller's Cure Amount, if any, pursuant to the terms of the Asset Purchase Agreement, the Debtors and the Buyer, as applicable, have cured or otherwise have demonstrated their ability to cure any default with respect to any act or omission that occurred prior to the Closing (as defined in the Asset Purchase Agreement) under any of the Assigned Contracts, within the meaning of Bankruptcy Code Section 365(b)(l)(A).  The proposed Cure Costs or any other cure

13

amount reached by agreement after any objection by a counterparty to an Assigned Contract (an "**Assigned Contract Objection**") or otherwise are deemed the amounts necessary to "cure" all "defaults," each within the meaning of Bankruptcy Code Section 365(b), under such Assigned Contracts. The Buyer's promise to perform the obligations under the Assigned Contracts shall constitute adequate assurance of its future performance of and under the Assigned Contracts, within the meaning of Bankruptcy Code Sections 365(b)(l) and 365(f)(2). Subject to the Bidding Procedures Order, all counterparties to the Assigned Contracts who did not file an Assigned Contract Objection or an objection to the assumption and assignment of the Assigned Contracts prior to the Sale Hearing, are deemed to consent to the assumption by the Debtors of their respective Assigned Contract and the assignment thereof to the Buyer. The filed objections of all counterparties to the Assigned Contracts that were heard at the Sale Hearing (to the extent not withdrawn or adjourned), were considered by the Court, and are overruled on the merits with prejudice. The Court finds that, with respect to all such Assigned Contracts, the payment of the proposed Cure Costs by the Buyer or the Seller, as applicable, in accordance with the terms of the Asset Purchase Agreement is appropriate and is deemed to fully satisfy the Debtors' obligations under Bankruptcy Code Section 365(b). Accordingly, and without limitation of the Buyer's right under Sections 1.5(a) of the Asset Purchase Agreement, all of the requirements of Bankruptcy Code Section 365(b) have been satisfied for the assumption and the assignment by the Debtors to the Buyer of each of the Assigned Contracts. To the extent any Assigned Contract is not an executory contract within the meaning of Bankruptcy Code Section 365, it shall be transferred to the Buyer in accordance with the terms of this Sale Order that are applicable to the Acquired Assets.

Z.     **Unenforceability of Anti-Assignment Provisions.**     Any provisions in any Assigned Contract that restrict, limit, prohibit or condition the assumption, assignment, and sale of the Assigned Contracts or that allow the counterparty so such Assigned Contract to terminate, recapture, impose any penalty or fee, accelerate, increase any rate, condition on renewal or extension, or modify any term or condition upon the assignment of such Assigned Contract, should be deemed and found to be unenforceable anti-assignment provisions that are void and of no force and effect within the meaning of Bankruptcy Code Section 365(f).

AA.     **Objections are Overruled**.  All objections to the relief requested in the Motion that have not been withdrawn, waived, adjourned or settled as announced to the Court at the Sale Hearing or by stipulations filed with the Court are overruled except as otherwise set forth herein.

BB.     **Final Order**.  This Sale Order constitutes a final order within the meaning of 20 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order and expressly directs entry of judgment as set forth herein.

CC.     **Best Interest**.  Entry of this Sale Order is in the best interests of the Debtors, the Debtors' estates, their creditors, and other parties in interest.

DD.     **Findings and Conclusions**.  The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014.  To the extent any findings of facts are conclusions of law, they are adopted as such.  To the extent any conclusions of law are findings of fact, they are adopted as such.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

**<u>General Provisions</u>**

1.     The Motion is granted and the relief requested therein with respect to the Sale is granted and approved in its entirety, as set forth herein.

2.     Any objections to the entry of this Sale Order or to the relief granted herein or the relief requested in the Motion, including any objections to the proposed Cure Costs or the assumption and assignment of any Assigned Contracts, that have not been adjourned, withdrawn, waived, or settled, or not otherwise addressed or resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits with prejudice.

**Approval of the Sale of the Acquired Assets**

3.     The Debtors are authorized to enter into the Asset Purchase Agreement (and all ancillary documents) and all the terms and conditions thereof, and all of the Transactions contemplated therein are approved in all respects.  The transfer of the Acquired Assets by the Debtors to the Buyer shall be a legal, valid and effective transfer of the Acquired Assets.

4.     Pursuant to Bankruptcy Code Section 363(b), the sale of the Acquired Assets to the Buyer free and clear of all Interests (other than the Permitted Liens and the Assumed Liabilities), and the transactions contemplated thereby is approved in all respects.

**Sale and Transfer of the Acquired Assets**

5.     Pursuant to Bankruptcy Code Sections 105, 363, and 365, the Debtors are authorized to (a) take any and all actions necessary or appropriate to perform their obligations under, and comply with the terms of, the Asset Purchase Agreement and consummate the Sale and the Transactions pursuant to, and in accordance with, the terms and conditions of the Asset Purchase Agreement and this Sale Order, including, without limitation (i) executing, acknowledging, and delivering such deeds, assignments, conveyances and other assurances, documents, and instruments of transfer and taking any action for purposes of assigning, transferring, granting, conveying, and conferring to the Buyer, or reducing to possession, any or

all of the Acquired Assets and (ii) entering into the Ancillary Agreements, any transition services or operations support agreements with the Buyer and any other agreements related to implementing the Transactions and (b) take any and all further actions as may be necessary or appropriate to the performance of their obligations as contemplated by the Asset Purchase Agreement or this Sale Order. The Debtors are further authorized to pay, without further order of this Court, whether before, at, or after the Closing, any reasonable expenses or costs that are required to be paid to consummate the Transactions or perform their obligations under the Asset Purchase Agreement.

6.     Following the Closing, the Debtors or the Buyer and/or their respective designees are authorized to execute and file a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all obligations, liabilities, and Interests in the Acquired Assets of any kind or nature whatsoever (other than the Permitted Liens and Assumed Liabilities). Upon the Closing and the Debtors' receipt of the Purchase Price, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Debtors' interests in the Acquired Assets and a bill of sale transferring good and marketable title in the Acquired Assets to the Buyer free and clear of all Interests, except for the Permitted Liens and Assumed Liabilities. Each and every federal, state, and local governmental agency, quasi-agency, or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions.

7.     Except for the Permitted Liens, Assumed Liabilities or as expressly provided in the Asset Purchase Agreement, pursuant to Bankruptcy Code Sections 105(a) and 363(f), upon the Closing and the Debtors' receipt of the Purchase Price, the Acquired Assets shall be transferred to the Buyer as required under the Asset Purchase Agreement, and such transfer shall be free and

clear of all Interests of any person, including, without limitation, all such Interests specifically enumerated in this Sale Order, whether arising by agreement, by statute, or otherwise and whether occurring or arising before, on, or after the Petition Date, whether known or unknown, occurring, or arising prior to such transfer, with all such Interests to attach to the proceeds of the Sale ultimately attributable to the property against or in which the holder of an Interest claims or may claim an Interest, in the order of their priority, with the same validity, force, and effect which they now have, subject to any claims and defenses the Debtors may possess with respect thereto.

8.     The transfer of the Acquired Assets to the Buyer pursuant to the Asset Purchase Agreement constitutes a legal, valid, and effective transfer of the Acquired Assets and shall vest the Buyer with all right, title, and interest of the Debtors in and to the Acquired Assets free and clear of all Interests of any kind or nature whatsoever, except for the Permitted Liens and Assumed Liabilities, with all such Interests to attach to the proceeds of the Sale ultimately attributable to the property against or in which the holder of an Interest claims or may claim an Interest, in the order of their priority, with the same validity, force, and effect which they now have, subject to any claims and defenses the Debtors may possess with respect thereto.

9.     All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Acquired Assets to the Buyer in accordance with the Asset Purchase Agreement and this Sale Order; *provided* that the foregoing restriction shall not prevent any party from appealing this Sale Order in accordance with applicable law or opposing any appeal of this Sale Order, or from enforcing its rights under Bankruptcy Code Section 365 or relieve the Buyer of any Assumed Liability.

10.     Except as expressly permitted by the Asset Purchase Agreement or this Sale Order, all persons and entities, including, but not limited to, all debt security holders, equity security

holders, governmental, tax, and regulatory authorities, lenders, trade creditors, dealers, employees, litigation claimants, contract counterparties and other creditors, holding liens, claims encumbrances, and other interests of any kind or nature whatsoever, including, without limitation, rights or claims based on any taxes or successor or transferee liability, against or in a Debtor or the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets or the operation of the Acquired Assets before the Closing, or the transactions contemplated by the Asset Purchase Agreement, including, without limitation, the Sale and the assumption and assignment of the Assigned Contracts, are forever barred, estopped, and permanently enjoined from asserting against the Buyer, its respective successors and assigns, its respective property and the Acquired Assets, such persons' or entities' liens, claims, encumbrances, or other Interests, including, without limitation, rights or claims based on any taxes or successor or transferee liability, *provided* that nothing herein shall impair or otherwise affect any right under Bankruptcy Code Section 365 of a lease or contract counterparty to an Assigned Contract under its respective Assigned Contract(s), or relieve the Buyer of any Assumed Liability.

11. Upon the Closing, each of the Debtors' creditors and any other holder of an Interest is authorized and directed, without cost to the Debtors, to execute such documents and take all other actions as may be necessary to release its Interest in the Acquired Assets, if any, as such Interest may have been recorded or may otherwise exist. If any person or entity that has filed financing statements or other documents or agreements evidencing an Interest in the Debtors or the Acquired Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of

satisfaction, releases of all Interests, which the person or entity has with respect to the Debtors or the Acquired Assets or otherwise, then the Buyer and its designees are authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Debtors or the Acquired Assets and to file, register, or otherwise record a certified copy of this Sale Order, which shall constitute conclusive evidence of the release of all Interests of any kind or nature whatsoever in the Debtors or the Acquired Assets (other than the Permitted Liens and Assumed Liabilities). Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement, including, without limitation, recordation of this Sale Order.

12. Upon the Closing and the Debtors' receipt of the Purchase Price, all entities that are currently, or on the Closing may be, in possession of some or all of the Acquired Assets are hereby directed to surrender possession of the Acquired Assets to the Buyer, unless the Buyer otherwise agrees.

13. This Sale Order is self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Sale Order.

14. To the maximum extent permitted by applicable non-bankruptcy law, (a) the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval (collectively, the "**Permits**") of the Debtors with respect to and included in the Acquired Assets, and (b) all Permits that are included in the Acquired Assets are deemed to have been, and hereby are directed to be, transferred to the Buyer as of the Closing Date. Nothing in this Sale Order, and nothing in the foregoing sentence, authorizes the transfer or

20

assignment of any governmental Permit or the discontinuation of any obligation thereunder without compliance with all applicable legal requirements and approvals under police or regulatory law. To the extent any Permit cannot be transferred to the Buyer in accordance with this paragraph, the Buyer, with such assistance from the Debtors as is required under the Asset Purchase Agreement, will work promptly and diligently to apply for and secure all necessary government approvals for the transfer or new issuance of the Permit(s) to the Buyer, and the Debtors shall maintain the Permits to the extent required under and subject to the terms of the Asset Purchase Agreement. For the avoidance of doubt, while nothing in this Sale Order or the Asset Purchase Agreement releases, nullifies, limits, waives, precludes, or enjoins the enforcement of any police or regulatory authority of a governmental unit, Buyer shall be entitled to operate under each state Permit currently held by or on behalf of the Debtors in relation to the Acquired Assets until such time as each such Permit is transferred to the Buyer and/or an equivalent Permit is issued to the Buyer.

15. To the extent provided by Bankruptcy Code Section 525, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Acquired Assets sold, transferred, or conveyed to the Buyer on account of the filing or pendency of these Chapter 11 Cases or the consummation of the transactions contemplated by the Asset Purchase Agreement and this Sale Order.

**Implementation of the Sale**

16. On Closing, the Buyer shall (a) pay the Purchase Price to the Debtors; (b) pay the Cure Costs as more fully described in paragraph 30 of this Sale Order and the Asset Purchase Agreement; (c) assume the Assumed Liabilities; and (d) perform any other obligations required to be performed by Buyer on the Closing. Each and every federal, state, and local governmental

21

agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement, including, without limitation, recordation of this Sale Order.

17. Within three (3) business days of the Debtors' receipt of the Net Sale Proceeds (as defined in the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection, (III) Modifying Automatic Stay, and (IV) Granting Related Relief* [Docket No. 410] (as it may be modified from time to time, the "**Cash Collateral Order**")) from the sale of the Acquired Assets, the Debtors shall pay the Net Sale Proceeds of the Acquired Assets to the Priority Term Loan Agent, for the account of the Priority Term Loan Secured Creditors, to the extent required under and in accordance with the terms of the Cash Collateral Order or such other order of the Court. Upon the Priority Term Loan Agent's timely receipt of such payment, (a) the Priority Term Loan Obligations shall be paid and satisfied to the extent of the payment and (b) all liens and security interests against the Acquired Assets securing the Priority Term Loan Obligations shall be automatically released and discharged without further action by any person. Upon the payment in full in cash of the Priority Term Loan Obligations and the occurrence of the Challenge Period Termination Date (as defined in the Cash Collateral Order), (w) the Debtors shall have no further indebtedness, liabilities or obligations owing under the Priority Term Loan Credit Agreement or the other "Financing Agreements" (as defined in the Priority Term Loan Agreement, the "**Priority Term Loan Documents**"), (x) other than any provisions thereof that survive pursuant to the terms thereof, the Priority Term Loan Credit Agreement and all other Priority Term Loan Documents (including, without limitation, any mortgages, guaranties and security agreements) and all of the Debtors' obligations thereunder shall terminate and be of no further force and effect, (y) all liens and security interests against the

property and assets of the Debtors securing the Priority Term Loan Obligations shall be automatically fully released and discharged without further action by any person, and (z) each deposit account control agreement in respect of or other sweeps or blocks of any Debtor's deposit accounts or lockboxes in favor of any of the Priority Term Loan Secured Parties shall terminate.

18.     The Debtors shall pay the Net Sale Proceeds from the sale of the Acquired Assets to the FILO Agent, for the account of the FILO Term Loan Secured Creditors, to the extent required under and in accordance with the terms of the Cash Collateral Order or such other order of the Court. For the avoidance of doubt, any further payment to the FILO Agent shall be subject to orders previously entered by this Court and any further orders of this Court or provided under the Debtors' Chapter 11 plan.

19.     All parties in interest in these Chapter 11 Cases expressly reserve their rights with respect to any allocation of the Purchase Price or value among the purchased Acquired Assets, and any allocation of the Purchase Price or value among the purchased Acquired Assets as determined by the Buyer shall not be determinative or binding on any party in interest in these Chapter 11 Cases except as ordered by the Court after notice and a hearing.

**<u>No Successor Liability</u>**

20.     Other than as expressly set forth in the Asset Purchase Agreement, the Buyer shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any Interests, including under any theory of successor or transferee liability, *de facto* merger or continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated, including without limitation, with respect to any of the following: (i) any foreign, federal, state, or local revenue law, pension law, ERISA, COBRA, tax law, labor law, employment law, the WARN Act, antitrust law,

CERCLA, and any other environmental, health and safety laws, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules or regulations); (ii) under any products liability law, rule, regulation, or doctrine with respect to the Debtors' liability under such law, rule, regulation, or doctrine, or under any product warranty liability law or doctrine; (iii) under any unfair trade practices law, rule, regulation or doctrine with respect to the Debtors' liability under such law, rule, regulation or doctrine, or under any unfair trade practices liability law or doctrine; (iv) any employment or labor agreements, consulting agreements, severance arrangements, change-in-control agreements, or other similar agreement to which the Debtors are a party; (v) any welfare, compensation, or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of the Debtors; (vi) the cessation of the Debtors' operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation, or other employee benefit plans, agreements, practices and programs, obligations that might otherwise arise from or pursuant to (a) ERISA, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967, (g) the Americans with Disabilities Act of 1990, or (h) COBRA; (vii) any liabilities, debts, or obligations of or required to be paid by the Debtors for any taxes of any kind for any period; (viii) any environmental liabilities, debts, claims fines, penalties, or obligations arising from conditions, facts or circumstances first existing or occurring on or prior to the Closing (including, without limitation, the presence of or exposure to chemical, hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis and at any time, including, without limitation, any liabilities, debts, claims, fines, penalties or obligations arising under CERCLA, or any other environmental, health, and safety laws; (viii) any

liabilities, debts, claims, fines, penalties, or obligations of or required to be paid by the Debtors for any taxes of any kind for any period; (ix) any liabilities, debts, claims, fines, penalties, or obligations of or required to be paid by the Debtors under any labor, employment, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules, or regulations); (x) any bulk sale law; and (xi) any litigation. The Buyer shall have no liability or obligation under the WARN Act simply by virtue of its purchase of assets from the Debtors.

21.      The Buyer has given substantial consideration under the Asset Purchase Agreement, which consideration shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Buyer and which shall be deemed to have been given in favor of the Buyer by all holders of Interests and liabilities (except for Permitted Liens and the Assumed Liabilities) in or against the Debtors, or the Acquired Assets. Without limiting the Buyer's obligation to pay and satisfy the Assumed Liabilities, upon consummation of the Sale, the Buyer shall not be deemed to (a) be the successor to the Debtors or their estates, (b) have, *de facto* or otherwise, merged with or into the Debtors, or (c) be a mere continuation, alter ego or substantial continuation of the Debtors under any theory of law or equity as a result of any action taken in connection with the Asset Purchase Agreement or any of the transactions or documents ancillary thereto or contemplated thereby or in connection with the acquisition of the Acquired Assets.

22.      Effective upon the Closing, except with respect to Assumed Liabilities and Permitted Liens, all persons and entities are forever prohibited and enjoined from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against the Buyer or its assets (including the Acquired Assets) with respect to any (a) Claim or Lien or (b) successor or transferee liability, including,

Case 20-81688-CRJ11    Doc 875    Filed 09/29/20    Entered 09/29/20 08:11:36    Desc
Main Document    Page 314 of 326

without limitation, the following actions with respect to clauses (a) and (b): (i) commencing or continuing any action or other proceeding pending or threatened; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or Claim; (iv) asserting any setoff, right of subrogation, or recoupment of any kind; (v) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof; or (vi) revoking, terminating, or failing or refusing to renew any License, permit, or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with such assets.

**Good Faith**

23.     The transactions contemplated by the Asset Purchase Agreement are undertaken by the Buyer without collusion and in good faith, as that term is used in Bankruptcy Code Section 363(m), and, accordingly, the reversal or modification on appeal of the authorization provided in this Sale Order to consummate the Sale and the Transactions shall not affect the validity of the transactions (including the assumption and assignment of any of the Assigned Contracts). The Buyer is a purchaser in good faith of the Acquired Assets and is entitled to all the protections afforded by Bankruptcy Code Section 363(m).

24.     As a good faith purchaser of the Acquired Assets, the Buyer has not entered into an agreement with any other potential bidders at the Auction, and has not colluded with any of the other bidders, potential bidders or any other parties interested in the Acquired Assets, and, therefore, neither the Debtors nor any successor in interest to the Debtors' estates shall be entitled to bring an action against the Buyer, and the Sale may not be avoided pursuant to Section 363(n) of the Bankruptcy Code.

25.     The consideration provided by the Buyer for the Acquired Assets under the Asset Purchase Agreement constitutes reasonably equivalent value, fair value, reasonable market value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.  The Sale may not be avoided under Bankruptcy Code Section 363(n).  The Asset Purchase Agreement was not entered into, and the Sale is not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtors under the Bankruptcy Code or for any other purpose that would give rise to statutory or common law fraudulent conveyance or fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable jurisdiction with laws substantially similar to the foregoing.  Neither the Debtors nor the Buyer have entered into the Asset Purchase Agreement or any agreement contemplated thereby or are consummating the Sale with any fraudulent or otherwise improper purpose, including, without limitation, to evade any pension liabilities.  No other person or entity or group of persons or entities has offered to purchase the Acquired Assets for an amount that would provide greater value to the Debtors and their estates than the value provided by the Buyer.  The Court's approval of the Motion and the Asset Purchase Agreement are in the best interests of the Debtors, the Debtors' estates, their creditors, and all other parties in interest.

26.     The Buyer is not an "insider" as that term is defined in Section 101(31) of the Bankruptcy Code.

**Assumption and Assignment of Assigned Contracts; Assumed Liabilities**

27.     Pursuant to Bankruptcy Code Sections 105(a), 363, and 365, the Bidding Procedures Order, and subject to and conditioned upon the Closing of the Sale, the Debtors' sale,

Case 20-81688-CRJ11    Doc 875    Filed 09/29/20    Entered 09/29/20 08:11:36    Desc
Main Document    Page 316 of 326

assumption and assignment to the Buyer of the Assigned Contracts is approved, and the requirements of Bankruptcy Code Section 365(b)(1) with respect thereto are deemed satisfied.

28. The Debtors are authorized in accordance with Bankruptcy Code Sections 105(a) and 365 to (i) assume and assign to the Buyer, effective as of the Closing and at such other times as may be specified in accordance with the terms and conditions of the Asset Purchase Agreement, as provided by, and in accordance with, the Bidding Procedures Order and the Asset Purchase Agreement, the Assigned Contracts free and clear of all Interests of any kind or nature whatsoever, other than the Permitted Liens and Assumed Liabilities, and (ii) execute and deliver to the Buyer such documents or other instruments as the Buyer reasonably deems necessary to assign and transfer the Assigned Contracts to the Buyer.

29. The Assigned Contracts shall be transferred and assigned to, pursuant to the Bidding Procedures Order and the Asset Purchase Agreement, and thereafter remain in full force and effect for the benefit of, the Buyer, notwithstanding any provision in any such Assigned Contract (including, but not limited to, those of the type described in Bankruptcy Code Sections 365(b)(2), (e)(1), and (f)) that prohibits, restricts, or conditions such assignment or transfer. The Debtors shall be relieved from any further liability with respect to the Assigned Contracts after such assumption and assignment to the Buyer. The Debtors may assign each Assigned Contract in accordance with Bankruptcy Code Sections 363 and 365, and any provisions in any Assigned Contracts that prohibit or condition the assignment of such Assigned Contracts or terminate, recapture, impose any penalty, condition, renewal, or extension, or modify any term or condition upon the assignment of such Assigned Contracts, constitute unenforceable anti-assignment provisions which are void and of no force and effect. All other requirements and conditions under

Bankruptcy Code Sections 363 and 365 for the assumption by the Debtors and assignment to the Buyer of each Assigned Contract have been satisfied.

30.     All defaults and all other obligations or liabilities under any Assigned Contract occurring, arising, or accruing prior to the date of the assignment or transfer to the Buyer shall be deemed cured or satisfied upon payment by the Buyer and/or the Debtors (in each case in accordance with Section 1.5 of the Asset Purchase Agreement) of the proposed Cure Cost, as set forth in the Notice of Assumption and Assignment, any Supplemental Notice of Assumption and Assignment, or any other cure amount reached by agreement after an Assigned Contract Objection or otherwise, and, without limiting the foregoing, no effect shall be given to any default of the type set forth in Bankruptcy Code Section 365(b)(2), or the type of default concerning an unexpired lease of real property described in Bankruptcy Code Section 365(b)(1) whether or not such Assigned Contract is an executory contract within the meaning of Bankruptcy Code Section 365.

31.     Each non-Debtor counterparty to the Assigned Contracts shall be forever barred, estopped, and permanently enjoined from (a) asserting against the Debtors, the Buyer, or their respective property (including the Acquired Assets) any fee, acceleration, default, breach, Claim (including any counterclaim, defense, or setoff capable of being asserted against the Debtors), pecuniary loss, or condition to assignment existing, arising, or accruing as of the Closing Date, or arising by reason of the Closing, including any breach related to or arising out of any change-in-control provision in such Assigned Contracts, or any purported written or oral modification to the Assigned Contracts, and (b) asserting against the Buyer (or its property, including the Acquired Assets) any Claim or Lien, counterclaim, breach, condition or setoff asserted or capable of being asserted against the Debtors existing as of the Closing Date or arising by reason of the Closing except for the Assumed Liabilities and Permitted Liens.

Case 20-81688-CRJ11    Doc 875    Filed 09/29/20    Entered 09/29/20 08:11:36    Desc
Main Document    Page 318 of 326

32.     The Cure Costs amounts listed on the Notice of Assumption and Assignment, any Supplemental Notice of Assumption and Assignment, or any other cure amount reached by agreement after an Assigned Contract Objection or otherwise, reflect the sole amounts necessary under Bankruptcy Code Section 365(b) to cure all monetary defaults under the Assigned Contracts, and no other amounts are or shall be due to the non-debtor parties in connection with the assumption by the Debtors and assignment to the Buyer of the Assigned Contracts. Notwithstanding anything to the contrary herein, if the Cure Costs for an Assigned Contract is determined to be greater than the proposed Cure Costs asserted in the Notice of Assumption and Assignment or Supplemental Notice of Assumption and Assignment, the Buyer may decide, in its discretion, not to assume that Assigned Contract. Notwithstanding anything to the contrary herein, in each case in accordance with Bidding Procedures Order and the terms and conditions of the Asset Purchase Agreement, the Buyer may decide (i) not to assume one or more unexpired leases and executory contracts designated on Schedule 1.1(i) of the Asset Purchase Agreement (or in the case of the Backup Bid, Schedule 1.1(h) of the Backup Bid Agreement), and (ii) to supplement Schedule 1.1(i) of the Asset Purchase Agreement (or in the case of the Backup Bid, Schedule 1.1(h) of the Backup Bid Agreement) by including any previously omitted unexpired lease or executory contract.

33.     The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Buyer's rights to enforce every term and condition of the Assigned Contracts.

34.     Notwithstanding anything in the Asset Purchase Agreement or this Sale Order to the contrary and for the avoidance of doubt, the Acquired Assets shall not include any of the Excluded Assets as set forth in Section 1.2 of the Asset Purchase Agreement.

35.     The Buyer shall be responsible for the satisfaction of the Assumed Liabilities under the Asset Purchase Agreement, including without limitation the Buyer's Cure Amount arising under the Assigned Contracts.  Except as provided in the Asset Purchase Agreement or this Sale Order, after the Closing, the Debtors and their estates shall have no further liability or obligations with respect to any Assumed Liability, including those arising under the Assigned Contracts, and all holders of such claims are forever barred and estopped from asserting any claims under any Assumed Liability (including those arising under the Assigned Contracts) against the Debtors, their successors or assigns, and their estates.

**Backup Bidder**

36.     Barnes Acquisition LLC is hereby approved as the Backup Bidder and pursuant to Bankruptcy Code Sections 105, 363, and 365, the Asset Purchase Agreement attached hereto as Exhibit B (the "**Backup Bid Agreement**") submitted by Barnes Acquisition LLC (the "**Backup Bidder**"), the sale of the Acquired Assets and consummation of the Sale to the Backup Bidder are hereby approved as the Backup Bid.  The Backup Bid on the terms set forth in the Backup Bid Agreement is hereby approved and authorized as a Backup Bid and shall remain open as a Backup Bid pursuant to the terms of the Bidding Procedures Order and the bid terms submitted at the Auction.  In the event that the Successful Bidder cannot or refuses to consummate the Sale because of a breach or failure on the part of the Successful Bidder, the Backup Bidder will be deemed the new Successful Bidder and the Debtors shall be authorized, but not directed, to close, and take all actions necessary to close, with the Backup Bidder on the Backup Bid without further order of the Court, and in such case the findings and other provisions of this Sale Order shall apply to the Backup Bidder and the Backup Bid Agreement to the same extent they do with respect to the Buyer and the Asset Purchase Agreement.

31

**Other Provisions**

37.     Nothing in this Sale Order or in the Asset Purchase Agreement entered into pursuant to this Sale Order releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory authority of a governmental unit.

38.     This Sale Order and the Asset Purchase Agreement shall be binding in all respects upon all known and unknown creditors of, and holders of equity security interests in, any Debtor, including any holders of Interests, all counterparties to the Assigned Contracts, all counterparties to contracts that are not assumed or assigned, all successors and assigns of the Buyer, each Debtor and their affiliates and subsidiaries, the Acquired Assets, and any trustees appointed in the Chapter 11 Cases or upon a conversion to cases under Chapter 7 of the Bankruptcy Code, and this Sale Order shall not be subject to amendment or modification and the Asset Purchase Agreement shall not be subject to rejection.  Nothing contained in any Chapter 11 plan confirmed in any Debtor's bankruptcy case, any order confirming any such Chapter 11 plan, or any other order in the Chapter 11 Cases shall alter, conflict with, or derogate from, the provisions of the Asset Purchase Agreement or this Sale Order.

39.     To the extent applicable, the automatic stay pursuant to Section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtors to the extent necessary, without further order of the Court (a) to allow the Buyer to give the Debtors any notice provided for in the Asset Purchase Agreement, and (b) to allow the Buyer to take any and all actions permitted by the Asset Purchase Agreement.

40.     No bulk sales law or similar law shall apply in any way to the transactions contemplated by the Sale, the Asset Purchase Agreement, the Motion, and this Sale Order.

41.     This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Asset Purchase Agreement, all amendments thereto, and any waivers and consents thereunder, including, but not limited to, retaining jurisdiction to (i) enforce the terms of the Asset Purchase Agreement; (ii) compel delivery of the Acquired Assets to the Buyer; (iii) interpret, implement, and enforce the provisions of this Sale Order; (iii) protect the Buyer, any of the Buyer's affiliates, or any agent of the foregoing, against any Interests against the Debtors or the Acquired Assets of any kind or nature whatsoever, except for the Permitted Liens and Assumed Liabilities, and (iv) enter any order under Bankruptcy Code Sections 363 and 365.

42.     No brokers were involved in consummation of the Sale, and no brokers' commissions are due to any person in connection with the Sale; *provided, however*, that this provision does not impact any transaction or other fees due to investment bankers or financial advisors employed (a) by the Debtors, including, but not limited to Ducera Partners LLC, or certain of their creditors for which the Debtors may be obligated to pay in accordance with an engagement letter with such professional(s), or (b) by the Buyers.

43.     To the extent there is any inconsistency between the terms of this Sale Order and the terms of the Asset Purchase Agreement (including all ancillary documents executed in connection therewith), the terms of this Sale Order shall govern.

44.     The failure to specifically include any particular provision of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement be authorized and approved in its entirety.

45.     The Asset Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, *provided* that the Debtors shall provide the Bid Consultation Parties with three (3) business days' notice thereof and *provided* further that any such modification, amendment, or supplement does not, based on the Debtors' judgment, have a material adverse effect on the Debtors' estates.

46.     Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Sale Order shall not be stayed for fourteen (14) days after its entry and shall be effective immediately upon entry, and the Debtors and the Buyer are authorized to close the transaction immediately upon entry of this Sale Order.  Time is of the essence in closing the transactions referenced herein, and the Debtors and the Buyer intend to close the transactions as soon as practicable.  This Sale Order is a final, appealable order and the period in which an appeal must be filed shall commence upon the entry of this Sale Order.

47.     The provisions of the Asset Purchase Agreement and this Sale Order may be specifically enforced in accordance with the Asset Purchase Agreement notwithstanding the appointment of any Chapter 7 or Chapter 11 trustee after the Closing.

48.     Headings utilized in this Sale Order are for convenience of reference only, and do not constitute a part of this Sale Order for any other purpose.

49.     All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

50.     The provisions of this Sale Order are non-severable and mutually dependent.

51.     All issues raised by Oracle America, Inc. ("**Oracle**") in *Oracle's Limited Objection and Reservation of Rights Regarding (a) Debtors' Motion for (a) an Order Establishing Bidding*

Case 20-81688-CRJ11    Doc 875    Filed 09/29/20    Entered 09/29/20 08:11:36    Desc
Main Document    Page 323 of 326

*Procedures and Granting Related Relief and (ii) an Order or Orders Approving the Sale of the Debtors' Assets; and (b) Notice of Executory Contracts and Unexpired Leases that May Be Assumed and Assigned in Connection with the Sale of the Debtors' Assets and the Proposed Cure Cost with Respect Thereto* (the "**Oracle Objection**") [Docket No. 529] are expressly reserved. The Oracle Objection may be set for hearing on an expedited basis upon the request of Oracle and/or the Debtors.

52.    Nothing in the Asset Purchase Agreement or in this Order shall have the effect of transferring, impairing, reducing or otherwise limiting any of the Debtors' rights in any insurance policies covering Excluded Liabilities or the proceeds of such polices. For the avoidance of doubt, the Debtors reserve control over the privilege concerning any retained documents and nothing in this Order relieves the Debtors of any document retention obligations.

Dated: _____, 2020

_____
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit A</u>**

**Asset Purchase Agreement**

**Exhibit B**

**Backup Bid Agreement**