## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| | § | Case No. 20-81688-CRJ11 |
| REMINGTON OUTDOOR COMPANY, INC. *et al.*,[1] | § § § | Jointly Administered |
| | § | |
| Debtors. | § § § | |

## MOTION OF THE SANDY HOOK FAMILIES FOR TEMPORARY
## ALLOWANCE OF THEIR CLAIMS
## FOR VOTING PURPOSES ONLY

Donna L. Soto, Ian and Nicole Hockley, David C. Wheeler, Mary A. D'Avino, Mark and

Jacqueline Barden, William D. Sherlach, Neil and Scarlett Lewis, Leonard Pozner and Gilles J.

Rousseau (the "Sandy Hook Families" or the "Families"), by and through their undersigned

counsel, hereby move for entry of an order (the "Proposed Order"), substantially in the form

attached hereto as Exhibit A, pursuant to sections 105(a) and 502(c) of Title 11 of the United States

Code (the "Bankruptcy Code"), Rule 3018 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), and paragraph 6 of the *Order (I) Conditionally Approving the*

*Disclosure Statement, (II) Establishing Solicitation, Voting, and Tabulation Procedures, (III)*

*Scheduling a Combined Hearing, (IV) Requesting Shortened Notice for the Combined Hearing,*

*and (V) Establishing Notice and Objection Procedures for Final Approval of Disclosure Statement*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405) (collectively, the "Debtors"). The Debtors' corporate headquarters is located at 100 Electronics Blvd SW, Huntsville, Alabama 35824.

*and Confirmation of Plan, and (VI) Granting Related Relief* [Docket No. 1408] (the "Solicitation Procedures Order"), temporarily allowing the Sandy Hook Families' timely filed proofs of claim in amounts that more fairly reflect the appropriate value of these ten claims for purposes of voting on the Debtors' revised *Joint Chapter 11 Plan of the Debtors, the Official Committee of Unsecured Creditors, and Exit Term Loan Lenders* [Attached as Ex. B to Docket No. 1405] (the "Plan").[2] In support of the Motion, the Sandy Hook Families respectfully state as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105 and 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018.

2.      The Sandy Hook Families consent to entry of a final order by this Court solely with respect to this Motion. For the avoidance of doubt, the Sandy Hook Families do not consent to the jurisdiction of this Court over any of their claims relating to the Sandy Hook Wrongful Death Action (as defined herein).

## BACKGROUND

**A.      The Chapter 11 Cases.**

3.      On July 27, 2020 (the "Petition Date"), the Debtors commenced these Chapter 11 Cases in the United States Bankruptcy Court for the Northern District of Alabama. The Chapter 11 Cases are being jointly administered for procedural purposes pursuant to

---

[2]    Capitalized terms used but not defined herein have the meaning ascribed to them in the Plan.

2

Bankruptcy Rule 1015(b). The Debtors are continuing to manage their financial affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On October 26, 2020, this Court entered the *Order (A) Establishing Bar Dates and Procedures for Filing Proofs of Claim, Including Section 503(B)(9) Claims; (B) Approving the Form and Manner of Notice Thereof; and (C) Granting Related Relief* [Docket No. 1039] (the "Bar Date Order"). Pursuant to the Bar Date Order, this Court established December 10, 2020, at 5:00 P.M. (Central Time) as the deadline by which all holders of claims, subject to exceptions for claims asserted by governmental units, must file proofs of claim. The Bar Date Order states that "[a]ll Claimants asserting a Claim against more than one Debtor must file a separate Proof of Claim with respect to each such Debtor and identify on each Proof of Claim the particular Debtor against which such Claim is asserted." (Bar Date Order ¶ 11.)

5. On December 9, 2020, under compulsion of the Bar Date Order, the Sandy Hook Families filed twenty proofs of claim representing ten claims against each of Debtor Remington Outdoor Company, Inc. and Debtor Remington Arms Company (the "Proofs of Claim").[3] The Proofs of Claims comprise the claims asserted in the Sandy Hook Wrongful Death Action (as defined herein).

6. On February 2, 2021, this Court entered the Solicitation Procedures Order. Among other things, the Solicitation Procedures Order provides that Tort Claims "will be temporarily allowed solely for voting purposes in the amount of $1, irrespective of how such Claim may or may not be set forth in the Schedules and/or on a Proof of Claim." (Solicitation Procedures

---

[3] The Proofs of Claim were filed by Donna L. Soto, Ian and Nicole Hockley, David C. Wheeler, Mary A. D'Avino, Mark and Jacqueline Barden, William D. Sherlach, Neil Heslin and Scarlett Lewis, Leonard Pozner, and Gilles J. Rousseau.

Order ¶ 15(e).)  Similarly, the Plan provides that "each holder of an unliquidated Tort Claim shall be deemed to hold a Claim equal to $1."  (Plan at 26.)

7.      The Solicitation Procedures Order further provides:

> If a Claim has been estimated or otherwise allowed for voting purposes by order of the Court, such Claim will be temporarily allowed in the amount so estimated or allowed by the Court for voting purposes only, subject to the other Tabulation Procedures.

(Solicitation Procedures Order ¶ 15(c).)

8.      The Solicitation Procedures Order establishes February 15, 2021, at 4:00 P.M. (Central Time) as the deadline by which all holders of claims must file a motion seeking to have a claim temporarily allowed for voting purposes pursuant to Rule 3018 of the Bankruptcy Rules.  (*Id.* ¶ 9.)  Under the Solicitation Procedures Order, objections to Rule 3018 motions must be filed by February 24, 2021 at 4:00 P.M. (Central Time).  (*Id.* ¶ 9.)

**B.      The Sandy Hook Families' Claims**

9.      The Sandy Hook Families assert nine wrongful death claims and one loss of consortium claim against the Debtors.  The nine plaintiffs are as follows:  Donna L. Soto, mother of Sandy Hook teacher Vicki Soto and administratrix of her estate; Ian and Nicole Hockley, parents of six-year-old Dylan and co-administrators of his estate; David C. Wheeler, father of six-year-old Benjamin and administrator of his estate; Mary A. D'Avino, mother of behavioral therapist Rachel D'Avino and administratrix of her estate; Mark and Jacqueline Barden, parents of seven-year-old Daniel and co-administrators of his estate; William D. Sherlach, husband to school psychologist Mary Sherlach and executor of her estate; Neil Heslin and Scarlett Lewis, parents of six-year-old Jesse and co-administrators of his estate; Leonard Pozner, father of six-year-old Noah and administrator of his estate; and Gilles J. Rousseau, father of substitute teacher Lauren Rousseau and administrator of her estate.  William D. Sherlach also brings suit in his individual capacity,

4

asserting a loss of consortium claim. These claims were brought on December 13, 2014, in Connecticut state court (the "Sandy Hook Wrongful Death Action").

10. On May 19, 2020, the Sandy Hook Families filed the revised second amended complaint (the "Complaint") in the Sandy Hook Wrongful Death Action. A copy of the Complaint is attached to the Sandy Hook Families' Proofs of Claim. The Complaint asserts that certain of the Debtors violated the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110 *et seq.*, in connection with the marketing and promotion of their AR-15 assault-style rifles and that the Debtors' conduct was a substantial factor resulting in the injuries, suffering, and death of the Sandy Hook Families' loved ones. These claims have already been reviewed and allowed to proceed to discovery and trial by the highest courts in the country. *See Soto* v. *Bushmaster Firearms Int'l, LLC*, 202 A.3d 262, 273 (Conn. 2019), *cert. denied sub nom. Remington Arms Co., LLC* v. *Soto*, 140 S. Ct. 513 (2019).

11. As of the Petition Date, the Debtors were, and currently remain, liable to each of the Sandy Hook Families in a damages amount, including punitive damages, not yet determined, plus interest, costs and attorneys' fees as may be allowed (the "Claims"). Damages in wrongful death cases under Connecticut law recompense *ante mortem* pain and suffering, lost enjoyment of life and lost earnings capacity, and damages for death itself. *See* Conn. Standard Jury Instr. 3.4-7, Damages – Wrongful Death (rev. Jan. 1, 2008). Because the plaintiffs assert violations of CUTPA, they are also entitled to punitive damages and attorneys' fees and costs. *See* Conn. Gen. Stat. Ann. § 42-110g (a), (d); Compl. ¶¶ 50, 52–53, Prayer for Relief A-D.

Case 20-81688-CRJ11    Doc 1464    Filed 02/15/21    Entered 02/15/21 14:29:06    Desc
Main Document    Page 5 of 11

12.     Connecticut is in the minority of states that view wrongful death damages from the point of view of the decedent and not the survivors.[4]  For example, the analysis of Victoria Soto's claim would be "what did she go through in the moments before she died and what did she lose in losing her life?"  Wrongful death damages in Connecticut compensate for this *ante mortem* pain and suffering, the loss of the enjoyment of life and lost earnings capacity, and damages for death itself.  Connecticut juries regularly value death damages in excess of ten million dollars[5] under far less disturbing circumstances.  The jury will be asked to compensate Victoria for her earning capacity for life.  They will compensate this extraordinary person and hero for the loss of her enjoyment of life over her 54-year life expectancy, and they will have to confront the painful reality of her last moments on earth staring down the barrel of a Bushmaster XM15-E2S that was manufactured by the Debtors, and which they marketed to the Sandy Hook shooter as a weapon of war, likely having watched at least four of her first graders slaughtered. The jury will undertake this analysis for each of the nine plaintiffs in this case, including five children. There may never be a case put to a jury that is more compelling on damages.  The value of each wrongful death

---

[4]     *See, e.g.*, *Floyd* v. *Fruit Indus., Inc.*, 136 A.2d 918, 923–24 (Conn. 1957) ("Under our [wrongful death] statute . . . the cause of action 'which the executor or administrator is permitted to pursue is not one which springs from the death [as is the case under wrongful death statutes based on Lord Campbell's Act, 9 & 10 Vict. c. 93]. It is one which comes to the representative by survival. *The right of recovery for the death is as for one of the consequences of the wrong inflicted upon the decedent. . . . [T]he cause of action . . . is a continuance of that which the decedent could have asserted had he lived . . . .*'") (citations omitted) (emphasis supplied); Lori A. Nicholson, *Hedonic Damages in Wrongful Death and Survival Actions: The Impact of Alzheimer's Disease*, 2 ELDER L.J. 249, 254-55 & n.48 (1994) (minority of jurisdictions allow for damages to be measured in terms of the loss to the decedent's estate).

[5]     *See, e.g.*, Plaintiff's Verdict Form, *Iannantuoni* v. *Florio*, CV11-6024700-S (Conn. Super. Apr. 22, 2016) ($12,032,500);  *Carlson v. Waterbury Hosp.*, FBT-CV-95-0321321-S ($11,000,000 award).

6

claim likely exceeds $25 million; collectively, the nine death damages claims total in excess of $225 million in death damages alone.[6]

13.     Death damages are the only the starting point of the damages analysis. Violation of the Connecticut Unfair Trade Practices Act also entitles the plaintiffs to punitive damages. *Hinchliffe* v. *Am. Motors Corp.*, 184 Conn. 607, 617 (1981); *see also* CONN. GEN. STAT. § 42-110g.  The Connecticut Supreme Court has upheld CUTPA punitive damages awards in amounts three times the amount of compensatory damages, *Ulbrich* v. *Groth*, 310 Conn. 375, 445 (2013), and a greater multiplier is possible as the statute puts no cap on punitive damages. Depending on the punitive damages multiplier, the full value of these claims approaches or exceeds one billion dollars.

## RELIEF REQUESTED

14.     By this Motion, the Sandy Hook Families are not asking this Court to determine the ultimate validity or allowance of the Sandy Hook Families' Claims for any purposes other than voting under the Plan.  The Sandy Hook Families file this Motion to request that the Court temporarily value their Claims at an amount higher than the nominal amount (*i.e.*, $1.00 each) provided for in the Plan and that their Claims are therefore properly valued and counted for purposes of voting on the Plan.  This limited relief is appropriate to ensure that the record accurately reflects the relative value of their claims and that they have a meaningful voice in the Plan voting and confirmation process, while simultaneously preserving all rights of the Debtors, the Sandy Hook Families, and any other party in interest with respect to the Sandy Hook Wrongful Death Action.

---

[6]     In addition, the value of the loss of consortium claim likely exceeds $10 million.

## ARGUMENT

### A.     Applicable Law

15.     Section 502(c) of the Bankruptcy Code provides that a bankruptcy court shall "estimate[] for purpose of allowance under this section—(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case." Although section 502(c) refers to estimation for "purpose of allowance," it is now beyond peradventure that a bankruptcy court may estimate (and temporarily allow) a claim for voting purposes only. *See, e.g.*, *In re Cantu*, No. 08–70260, 2009 WL 1374261, at *1 (S.D. Tex. May 15, 2009); *In re Farley, Inc.*, 146 B.R. 748, 753 (Bankr. N.D. Ill. 1992). This statutory right is completed and reinforced by Bankruptcy Rule 3018, which expressly allows for estimation of claims for voting purposes by providing that "[n]otwithstanding objection to a claim or interest, the court . . . may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." Fed. R. Bankr. P. 3018(a). The principal purpose of Bankruptcy Rule 3018 is to "give[] discretion to the court to permit an unallowed claim to vote." *In re Gardinier, Inc.*, 55 B.R. 601, 604 (M.D. Fla. 1985). Additionally, Bankruptcy Rule 3018 prevents "possible abuse by plan proponents who might ensure acceptance of a plan by filing last minute objections to claims of dissenting creditors." *Armstrong* v. *Rushton* (*In re Armstrong*), 292 B.R. 676, 686 (10th Cir. B.A.P. 2003).

16.     Bankruptcy courts have wide discretion to use whatever estimation methodology is best suited to the particular circumstances of the case, so long as such procedure is consistent with the fundamental policy of chapter 11. *In re Adelphia Bus. Solutions, Inc.*, 341 B.R. 415, 422 (Bankr. S.D.N.Y. 2003). Accordingly, bankruptcy courts are not limited to nominal amounts when estimating a claim pursuant to Bankruptcy Rule 3018 for voting purposes, and any

calculation "should ensure that the voting power is commensurate with the creditor's economic interests in the case." *In re Quigley Co.*, 346 B.R. 647, 654 (Bankr. S.D.N.Y. 2006).

> **B.     The Sandy Hook Families' Claims Should Be Temporarily Allowed in the Amount of $25,000,000 Each For Voting Purposes**

17.     The Sandy Hook Families recognize that the valuations here are solely for purposes of voting, and that attributing full value including punitive damages to their claims is unnecessary for those purposes. Therefore, to provide the Sandy Hook Families with an appropriately meaningful voice in the voting and confirmation process, while also recognizing that attributing full value to their claims is not necessary for these purposes, each of the nine wrongful death Claims filed by the Sandy Hook Families should be temporarily allowed in the amount of $25,000,000 for voting purposes. The tenth Claim, for loss of consortium, should be temporarily allowed in the amount of $10,000,000 for voting purposes.

18.     Temporarily valuing these Claims in the amounts set forth above will be sufficient to ensure the Families have an appropriately meaningful voice in the voting and confirmation process and is reasonable because the value of these Claims greatly exceeds this amount.

19.     The Debtors' proposed amount for each Tort Claim for voting purposes arbitrarily assigns $1 for each Tort Claim. This system does not give the Sandy Hook Families' Claims the weight and magnitude that they deserve. These Claims represent unprecedented death damages values with a punitive damages multiplier.

20.     Accurately estimating each Tort Claim would likely require the Court to engage in a protracted, contentious, and complex estimation process. The Sandy Hook Families do not believe such a process is necessary or appropriate at this juncture, particularly given the delay such a process would cause. Accordingly, without prejudice to the availability to seek a

9

different amount at trial, the Sandy Hook Families propose allowing each of their wrongful death Claims in the amount of $25,000,000 for voting purposes. This amount will ensure that the Sandy Hook Families' votes will be given due weight and properly counted for numerosity purposes in the Plan solicitation process.

## RESERVATION OF RIGHTS

21.     The Sandy Hook Families hereby reserve all rights, including, but not limited to: (i) objecting to confirmation of the Plan on any grounds; (ii) amending, modifying, or supplementing this Motion or the Objection Response in any manner; (iii) asserting any and all other claims of whatever kind or nature that the Sandy Hook Families have, or may have, against the Debtors that come to its attention or that arise after the filing of this Proof of Claim, including, without limitation, assertions of claims for interest, fees, charges, attorneys' fees and expenses accrued before or after the Petition Date.

22.     For the avoidance of doubt, the Sandy Hook Families bring this Motion solely for the purpose of temporarily allowing their claims under Rule 3018 for purposes of voting on the Plan; and nothing herein, nor any opposition, ruling, or settlement of this Motion, shall have any effect whatsoever on the underlying merits of the Sandy Hook Families' Claims in this or any other court.

## CONCLUSION

The Sandy Hook Families respectfully request that the Court enter the Proposed Order temporarily allowing each of their wrongful death Claims in the amount of $25,000,000 for voting purposes only and granting such other and further relief as the Court deems just and proper.

Case 20-81688-CRJ11    Doc 1464    Filed 02/15/21    Entered 02/15/21 14:29:06    Desc
Main Document    Page 10 of 11

Dated: Huntsville, Alabama
      February 15, 2021


Respectfully submitted,

By: */s/ Tazewell T. Shepard IV*
Tazewell T. Shepard III
Tazewell T. Shepard IV
State Bar No. 24004246
**SPARKMAN, SHEPARD & MORRIS, P.C.**
P.O. Box 19045
Huntsville, AL 35804
Tel: (256) 512-9924

**KOSKOFF KOSKOFF & BIEDER**
Joshua Koskoff (admitted *pro hac vice*)
Alinor Sterling (admitted *pro hac vice*)
Jeffrey Wisner (admitted *pro hac vice*)
350 Fairfield Avenue
Bridgeport, CT 06604
Tel: (203) 336-4421
jkoskoff@koskoff.com

*Counsel for the Sandy Hook Families*

Faith Gay (admitted *pro hac vice*)
**SELENDY & GAY PLLC**
1290 Avenue of the Americas,
New York, NY 10104
Tel. (212) 390-9000
Fax: (212) 390-9399
fgay@selendygay.com

*Counsel for the Sandy Hook Families*