IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| REMINGTON OUTDOOR COMPANY, INC., *et al.*,[1] | Case No. 20-81688-CRJ11 |
| Debtors. | Jointly Administered |

**DEBTORS' OBJECTION IN RESPONSE TO IRONSHORE SPECIALTY INSURANCE COMPANY'S MOTION TO CONTINUE THE CONFIRMATION HEARING TO ACCOMMODATE MEDIATION OF OBJECTIONS TO CONFIRMATION OF THE JOINT CHAPTER 11 PLAN OF THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND THE EXIT TERM LOAN LENDERS**

Remington Outdoor Company, Inc. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby object to (this "Objection") *Ironshore Specialty Insurance Company's Motion to Continue the Confirmation Hearing to Accommodate Mediation of Objections to Confirmation of the Joint Chapter 11 Plan of the Debtors, the Official Committee of Unsecured Creditors and the Exit Term Loan Lenders* [Dkt. No. 1572] (the "Motion to Continue") filed by Ironshore Specialty Insurance Company ("Ironshore"). In support of this objection, the Debtors respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405). The Debtors' corporate headquarters are located at 100 Electronics Boulevard SW, Huntsville, AL 35824.

## OBJECTION

Ironshore's Motion to Continue is entirely without merit. The motion is an obvious stalling tactic designed to prevent the Plan[2] from moving forward to confirmation pursuant to a schedule set by the Court. The main disputes between the Tort Claimants and Ironshore can be resolved post-confirmation, and the Plan reserves all parties' rights (and the Court's discretion) concerning both claims adjudication and insurance coverage. Deferring the plan process jeopardizes the Debtors' ability to confirm a plan and risks conversion, which would negatively impact all of the Debtors' stakeholders that otherwise benefit from the plan. For these reasons and those that follow, the Motion to Continue should be denied.

First, this Court is the proper judge of the plan confirmation standards, not a mediator or a non-creditor insurer. This Court has exclusive jurisdiction and expertise to apply the Bankruptcy Code standards for confirmation. To seek some other party to make those determinations outside the purview of this Court is simply unacceptable.

Second, none of the pending Ironshore objections are colorable, much less fatal to the Plan process. Ironshore's main objection is that the stays and injunctions remain in effect concerning the Debtors' property including the GL Insurance Assets. Ironshore wants to be able to immediately start insurance coverage litigation in a forum other than this Court. Under the Plan (just as is the case now), it must seek leave of this Court to do so. That is hardly a basis to stop the plan process.

---

[2] Capitalized terms not otherwise defined herein shall have the meanings afforded to them in the Motion, the Plan, or the Disclosure Statement. References to the Plan and Disclosure Statement refer to the solicitation versions of the same, filed at Docket No. 1476.

Third, the Plan includes a process for resolution of the disputes among the insurers and the Tort Claimants post-confirmation. The main disputes concerning the Tort Claims in Class 7 will be the adjudication of the Allowed Amount of the Tort Claims and the resulting rights to GL Insurance Assets. The Plan is scrupulously fair in preserving the rights of both the Tort Claimants and the insurers concerning those future events. Under the Plan, this Court will decide the venue and process for adjudicating the Claims. It retains jurisdiction over the GL Insurance Assets, to either hear related disputes or decide that they should be tried elsewhere. The Tort Claimants are allowed to seek authority to pursue Estate Causes of Action related to the GL Insurance Assets, and the insurers are free to oppose that. The Plan preserves both sides' rights on all of these issues. Ironshore and the Soto Plaintiffs will be free to conduct mediation should they so choose concerning any or all of these issues after confirmation. Indeed, if Ironshore's newfound desire to mediate disputes is indeed genuine, the Debtors would encourage mediation after confirmation. But there is no reason to defer confirmation until that takes place.

Fourth, continuing the Confirmation Hearing will prejudice the Debtors and create an unreasonable risk of conversion of the Debtors' cases. The Debtors have continued to have access to the Exit Term Loan Lenders' cash collateral because they have made measured progress in the case. The Debtors' need to use cash collateral is on-going and critical in order to enable the Debtors to maintain their estates. Without the Exit Term Loan Lenders' cash collateral, the Debtors will lack sufficient available working capital to maintain their properties in the ordinary course of business for more than a limited period, and to fund the costs of administering these cases. Stopping the plan process for mediation risks terminating the case and forfeiting the value available to creditors under the plan.

3

Fifth, the record does not support any implication that Ironshore and the Class 7 Tort Claimants could not have entered into mediation prior to the eve of the Confirmation Hearing. In fact, the Soto Plaintiffs previously requested negotiations with Ironshore, which request was communicated to Ironshore. Ironshore did not pursue those discussions. At any point, these parties could have entered into mediation to resolve their disagreements over venue or the process for resolving insurance disputes.

Finally, Ironshore threatens that it will appeal any confirmation order. If it believes that it has a good faith basis to do so, then it is free to appeal. The Plan Proponents will address any such appeal at the appropriate time. However, such threats do not justify stopping the Confirmation Hearing. If they did, no plan could ever be confirmed.

## CONCLUSION

**WHEREFORE**, for the reasons set forth herein, the Debtors respectfully request that the Court deny Ironshore's Motion to Continue, and grant such other and further relief as this Court deems just and proper.

Respectfully submitted, this the 4th day of March, 2021.

*/s/ Derek F. Meek*
**BURR & FORMAN LLP**
Derek F. Meek
Hanna Lahr
James P. Roberts
420 20th Street North, Suite 3400
Birmingham, AL 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
Email: dmeek@burr.com
hlahr@burr.com
jroberts@burr.com

- and -

**O'MELVENY & MYERS LLP**

Stephen H. Warren (admitted *pro hac vice*)
Karen Rinehart (admitted *pro hac vice*)
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
Email: swarren@omm.com
krinehart@omm.com

*Attorneys for the Debtors and Debtors in Possession*