# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Case No.: 20-81688-CRJ11 |
| REMINGTON OUTDOOR ) | |
| COMPANY, INC., *et al.*,[1] ) | Chapter 11 |
| ) | |
| ) | Jointly Administered |
| Debtors. ) | |
| ) | |

## IRONSHORE SPECIALTY INSURANCE COMPANY'S OBJECTIONS TO, AND SUGGESTED CHANGES TO, REVISED PROPOSED CONFIRMATION ORDER

Ironshore Specialty Insurance Company ("Ironshore") hereby submits objections to the form of the revised Proposed Confirmation Order filed by Debtors at Dkt. No. 1635 (the "Revised Proposed Order"). Ironshore also sets forth below certain proposed revisions to newly-added provisions of the Revised Proposed Order.

Ironshore understands that its objections to confirmation of the Plan were overruled by the Court during the March 9 session of the Combined Hearing. In setting forth the below objections, and suggested changes, to the Revised Proposed Order, Ironshore is not attempting to re-argue any of its objections that the Court has already overruled. Rather, the objections and comments set forth below are limited to certain respects in which the Revised Proposed Order is not fully compliant with what Ironshore understands were the Court's rulings on March 9. As noted during the March 9 hearing, these points could not have been included in

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405) (collectively, the "Debtors").

the confirmation objections timely filed by Ironshore on March 1, because the new provisions of the Revised Proposed Order were added to reflect colloquy between counsel and the Court on March 9 and 10, as well as negotiations that apparently have taken place between Debtors and the Sandy Hook Plaintiffs following the March 8 session of the Combined Hearing.

The cover pleading filed by Debtors at Dkt. No. 1635 states, at page 1, that "Debtors have provided the revised version of the Proposed Confirmation Order to counsel for Ironshore Specialty Insurance Company for review." Debtors' counsel sent Ironshore's counsel the Revised Proposed Order, along with a redline, at 1:44 p.m. CST on March 10. Debtors filed the Revised Proposed Order at 3:30 p.m. CST, less than two hours later. When Debtors' e-mail arrived, Ironshore's lead counsel was presenting at a board meeting of a charitable foundation. As soon as that meeting ended, Ironshore's counsel began preparing an e-mail with the same comments that are set forth below, which was sent to Debtors' counsel at 4:41 p.m. CST on March 10. It was only after that e-mail was sent that Ironshore's counsel found out that the Revised Proposed Order had already been filed.

### Objections to the form of the Revised Proposed Order

Ironshore objects to the form of the Revised Proposed Order, on the grounds stated below, unless the following changes and modifications are made.

1. During the March 9 hearing, the Court acknowledged that any provision granting it "exclusive jurisdiction" would have to be subject to 28 U.S.C. § 157(d), which allows (and, in some cases, requires) the district court to withdraw the reference of any matter from the bankruptcy court. Thus, ¶ 72 of the Revised Proposed Order should modified to state:

> 72. Pursuant to sections 105(c) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall, subject to the right of any person to move to withdraw the reference, retain exclusive jurisdiction over all matters arising

out of, and related to, the Plan, this Confirmation Order, and the Chapter 11 Cases, to the fullest extent permitted by law, as set forth in Article XI of the Plan, including, without limitation, any disputes related to any self-insured retentions concerning the GL Insurance Assets.

2. Paragraph 93 of the Revised Proposed Order should be revised as follows, for the reasons stated below:

93. Following the entry of this Confirmation Order and subject to the procedures set forth in this Confirmation Order, each holder of a Class 7 Tort Claim shall have the right to be automatically granted, without any further action by the Bankruptcy Court, relief from the automatic stay and any plan injunction arising under the Plan or this Confirmation Order solely to proceed with litigating the cause(s) of action giving rise to such Class 7 Tort Claim (each, a "Tort Action") and obtaining a judgment thereon (whether by default or otherwise), and, if necessary to facilitate such holder's treatment under Class 7, to commence, continue, and/or pursue litigation nominally against the Debtors (or the Plan Administrator, the ROC Liquidation Estates, or the Tort Claim Sub-Trust); provided, however, that any recovery on account of such Class 7 Tort Claim may only be made from the GL Insurance Assets and/or, in the event of a successful claim against the applicable carriers/insurers for their bad faith refusal to defend or to settle within policy limits, from the assets of such carriers/insurers, and in no event shall such relief from stay and any plan injunction include any act to enforce any judgment against any other asset of the Estates, or the Plan Administrator, the ROC Liquidation Estates, the Creditor Trust, the Plan Proponents, or the Representatives of any of the foregoing (except, in each case, any procedural actions to the extent necessary to enforce coverage under the GL Insurance Assets) (the "Stay Relief Scope"). Solely for administrative convenience, each holder of a Class 7 Tort Claim making such an election (an "Electing Tort Claimant") shall provide written notice of their determination to obtain such relief from stay by filing with the Bankruptcy Court on the docket in the Chapter 11 Cases a notice in the form attached hereto as Exhibit C (the "Stay Relief Notice"). Each Stay Relief Notice shall be served (a) prior to the Effective Date, on the Debtors and their counsel and (b) after the Effective Date, on the Plan Administrator and his counsel. Each Electing Tort Claimant shall hereby be automatically, without any further action by the Bankruptcy Court, granted relief from the automatic stay solely as to the Stay Relief Scope effective the later of (i) the date that is forty-five (45) days after the date the Stay Relief Notice is <ins>filed with the Bankruptcy Court on the docket in the Chapter 11 Cases</ins> <del>served in accordance with the immediately preceding sentence</del> and (ii) seven (7) days after the Effective Date (such later date, the "Stay Relief Effective Date"). No Stay Relief Notice shall become effective, and no answer, other responsive pleading, or response to discovery in any proceeding shall be due<ins>,</ins> prior to the Stay Relief Effective Date.

Because insurers such as Ironshore will not be served with the Stay Relief Notices, they will not know when the stay is lifted as a to particular Class 7 Tort Claim if the 45 day-period were to run from the date of service of the Stay Relief Notice on Debtors or the Plan Administrator. Likewise, the courts in which Class 7 Tort Claims would be proceeding would not know on what date the stay was deemed to have been lifted. These issues can be solved, without any burden on claimants, the Debtors, or the Plan Administrator, and without delaying the date by which the stay lift becomes effective, by having the 45-day period run from the date the Stay Relief Notices are filed on the docket of the Chapter 11 cases.

3. Paragraph 94 of the Revised Proposed Order should be revised as follows, for the reasons stated below:

> 94. Each such insurer shall have until the Stay Relief Effective Date to take over the defense of any Tort Action *(which may be subject to reservation of rights)* and pay the cost of defense of any such proceeding that may be continued or commenced by the Electing Tort Claimant. The entry of this Confirmation Order and notice of each Stay Relief Notice shall be served by the Debtors or the Plan Administrator, as applicable, by overnight mail on each of the liability insurers at their addresses set forth on Exhibit D hereto. Nothing in the Plan or this Confirmation Order requires the Debtors, the ROC Liquidation Estates, the Creditor Trust, the Tort Claim Sub-Trust, or the Plan Administrator to incur any fees, costs, or expenses concerning the defense relating to the Tort Actions absent written agreement by the applicable insurer to take over the defense ~~coverage~~ and pay such fees, costs, and expenses in form and substance acceptable to the Plan Administrator in his sole discretion; *provided*, that the Plan Administrator may not find an insurers' written agreement to take over the defense to be unacceptable on the basis that it contains a reservation of rights. In the absence of timely assumption of defense as provided above, neither the Debtors nor the Plan Administrator shall answer or otherwise respond, and shall not have or be deemed under any circumstances to have any obligation to answer or respond, on behalf of the Debtors, the ROC Liquidation Estates, or the Tort Claim Sub-Trust to the continuation or commencement of such Tort Action and shall instead be authorized to allow a default judgment to be entered in such Tort Action against the Debtors, the ROC Liquidation Estates, and/or the Tort Claim Sub-Trust, as applicable. None of the Debtors, the ROC Liquidation Estates, the Tort Claim Sub-Trust, or the Plan Administrator and their respective Representatives shall have any authority or obligations of any kind to proceed otherwise or have any liability for not responding to the commencement or continuation of any Tort Action, or the entry

> of any default judgment against the Debtors, the ROC Liquidation Estates, or the Tort Claim Sub-Trust other than such liability of the Debtors as nominal defendants through entry of a default judgment (e.g., entry of a default judgment against the Debtors) as may be ordered by the court with jurisdiction over such Tort Action against the Debtors as a result of the Debtors' failure to answer or respond or to participate in discovery in such proceeding, which liability shall solely constitute an Allowed Class 7 Tort Claim under the Plan and not, for the avoidance of doubt, a liability of the Plan Administrator. Under no circumstances can monetary damages be sought from the assets of the Debtors' Estates, the ROC Liquidation Estates, the Plan Administrator, the Creditor Trust, or the Tort Claim Sub-Trust other than the GL Insurance Assets.

The first and last changes are necessary to make clear that the right of an insurer to defend a lawsuit subject to reservation of rights is not being overridden by the Revised Proposed Order. Such an override would be completely inconsistent with the Plan's "insurance neutrality" language, because insurers have the right to defend lawsuits subject to reservation of rights, and any override of that right cannot be justified as something that does not materially or adversely impact Ironshore. The second change merely aligns the language with the language in the first line of the paragraph, and is necessary to avoid any implication that the Plan Administrator can reject an insurer's offer to assume the defense of a suit while reserving rights as to indemnification.

4. Paragraph 96 of the Revised Proposed Order should be revised as follows, for the reasons stated below:

> 96. On the Effective Date, <ins>(a)</ins> each holder of a Class 7 Tort Claim is hereby granted authority to commence, in its own name and in the name of the Debtors, the ROC Liquidation Estates, and/or the Tort Claim Sub-Trust, <ins>and (b) each provider of GL Insurance assets is likewise granted authority to commence,</ins> litigation in the Bankruptcy Court regarding the applicability of any self-insured retentions ("SIRs") under any GL Insurance Assets applicable <ins>any</ins> <del>to such holder's</del> Class 7 Tort Claim. The Plan Administrator shall not be obligated to participate in any such litigation or any other coverage-related litigation and neither the Plan Administrator nor its Representatives shall have any liability for any failure to participate in such litigation<ins>, but the Plan Administrator and the ROC Liquidation Estates shall be bound by declarations issued in any such litigation they elect to not participate in</ins>. Notwithstanding anything in the Plan to the contrary, the Bankruptcy

> Court shall have the exclusive jurisdiction to determine any disputes related to the applicability of the SIRs and non-exclusive jurisdiction to determine other coverage disputes. Any existing right of Ironshore Specialty Insurance Company ("Ironshore") to commence litigation regarding the applicability of any SIRs or to determine other coverage disputes, or to seek to withdraw the reference with respect to such litigation in the Bankruptcy Court is hereby preserved, and Ironshore is not required to obtain relief from the automatic stay or any injunctions in the Plan or this Order before commencing any such litigation.

During the March 9 session of the Combined Hearing, the Court acknowledged that Ironshore could commence declaratory judgment litigation regarding coverage issues and defenses and that Ironshore did not require lift-stay relief to commence such litigation to the extent Ironshore had the right to bring such litigation under its policies, which it indisputably has.[2] It is necessary for Ironshore to be able to commence litigation regarding all disputed coverage issues, including the applicability of SIRs, so that Ironshore can obtain an adjudication, including any necessary declarations, of its contractual rights and obligations, and can know how much, if anything, it must pay with respect to a particular Tort Claim. Ironshore understood the Court to have agreed with this principle during the March 9 hearing. It would not be consistent with the Plan's "insurance neutrality" provision, as construed by the Court on March 9, to preclude Ironshore from having and exercising these rights.

If the Plan Administrator chooses to not participate in any coverage litigation brought by claimants or insurers, he should nevertheless be bound by any declarations issued by

---

[2] *See, e.g.*, Ironshore Policy No. 001223701 (Dkt. No. 1548-2 at p. 84 of 375), stating: "Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's [*i.e.*, Ironshore's] rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the law; of the United States or of any state in the United States"). Policy No. 001223701 and all of the other Ironshore policies attached as exhibits to the Declaration of Elana Bell (Dkt. No. 1548-1) were admitted into evidence during the March 8 session of the Combined Hearing.

this Court or any other court concerning the parties' respective rights and obligations under the Debtors' policies.

The proposed changes also correct Ironshore's corporate name.

5. Paragraph 98 of the Revised Proposed Order should be revised as follows, for the reasons stated below:

> 98. Any settlement payment from the GL Insurance Assets to any holder of a Tort Claim (other than Tort Convenience Class Claims) in excess of two million dollars ($2,000,000) remains subject to notice and a hearing in the Bankruptcy Court to allow the Bankruptcy Court to consider the impact of the payment on the Debtors' remaining GL Insurance Assets and other Tort Claims (other than Tort Convenience Class Claims) covered by the same policies. Subject to the immediately preceding sentence, liability indemnity payments from GL Insurance Assets will be paid directly by insurers to the applicable Tort Claimant, not to the Plan Administrator or the ROC Liquidation Estates. The Plan Administrator and ROC Liquidation Estates reserve the right to recover all defense related fees, costs, and expenses other than from such liability indemnity payments.

This proposed change is necessary to ensure that where a court has entered a judgment in a tort claim that requires an insurer to pay more than $2 million, the insurer may pay such judgment without first obtaining bankruptcy court approval. Otherwise, the insurers risk uncompensated liability to payment of post-judgment interest. If the change is not made, then the Revised Proposed Order is not compliant with the Plan's "insurance neutrality" language.

An alternative would be to revise the lift-stay language in paragraph 93 of the Revised Proposed Order to make clear that the stay is not being lifted, now, to allow a tort claimant to be paid more than $2 million from an insurer in connection with any judgment that must be reviewed by the Court under paragraph 98. Instead, the claimant holding the judgment would need to obtain an order from this Court lifting the stay to permit payment of such a judgment. This would not unduly burden claimants given that paragraph 98 requires notice and

- 7 -

Case 20-81688-CRJ11    Doc 1637    Filed 03/10/21    Entered 03/10/21 20:35:45    Desc
Main Document    Page 7 of 9

a hearing in this Court before any such payment can be made. Thus, the first sentence of paragraph 93 could be amended as follows:

> 93. Following the entry of this Confirmation Order and subject to the procedures set forth in this Confirmation Order, each holder of a Class 7 Tort Claim shall have the right to be automatically granted, without any further action by the Bankruptcy Court, relief from the automatic stay and any plan injunction arising under the Plan or this Confirmation Order solely to proceed with litigating the cause(s) of action giving rise to such Class 7 Tort Claim (each, a "Tort Action") and obtaining a judgment thereon (whether by default or otherwise), and, if necessary to facilitate such holder's treatment under Class 7, to commence, continue, and/or pursue litigation nominally against the Debtors (or the Plan Administrator, the ROC Liquidation Estates, or the Tort Claim Sub-Trust); provided, however, that any recovery on account of such Class 7 Tort Claim may only be made from the GL Insurance Assets and/or, in the event of a successful claim against the applicable carriers/insurers for their bad faith refusal to defend or to settle within policy limits, from the assets of such carriers/insurers, and in no event shall such relief from stay and any plan injunction include any act to enforce any judgment against any other asset of the Estates, or the Plan Administrator, the ROC Liquidation Estates, the Creditor Trust, the Plan Proponents, or the Representatives of any of the foregoing (except, in each case, any procedural actions to the extent necessary to enforce coverage under the GL Insurance Assets) (the "Stay Relief Scope"); and provided further, however, that this Confirmation Order does not provide relief from the automatic stay to permit payment from the GL Insurance Assets to any holder of a Tort Claim (other than Tort Convenience Class Claims) of any judgment in excess of two million dollars ($2,000,000).

## Reservation of Rights

Ironshore reserves its right to make additional objections and comments regarding the Revised Proposed Order during the March 11 hearing. Ironshore also reserves all of its rights to appeal from entry of any order confirming the Plan.

## Conclusion

WHEREFORE, for the reasons stated above, Ironshore objects to the form of the Revised Proposed Order and requests that, before the Court enters the Revised Proposed Order, it make all of the changes discussed above.

[signatures on next page]

DATED: March 10, 2021                          Respectfully submitted,

                                                    By: /s/ *Kevin D. Heard*
Kevin D. Heard
Angela S. Ary
HEARD, ARY & DAURO, LLC
303 Williams Avenue
Park Plaza, Suite 921
Huntsville, Alabama  35801
Phone:  (256) 715-5184
Email: kheard@heardlaw.com
        aary@heardlaw.com

Mark D. Plevin  (admitted *pro hac vice*)
CROWELL & MORING LLP
Three Embarcadero Center, 26th Floor
San Francisco, California  94111
Phone:  (415) 986-2800
Email:  mplevin@crowell.com

Tacie H. Yoon  (admitted *pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C.  20004
Phone:  (202) 624-2500
Email:  tyoon@crowell.com

*Attorneys for Ironshore Specialty Insurance Company*

### CERTIFICATE OF SERVICE

      I certify that I have, on this the 10th day of March, 2021 served the foregoing pleading upon the Debtors' 40 largest unsecured creditors, all counsel of record requesting notice, all other persons requesting notice, and the Office of the Bankruptcy Administrator by electronic service through the Court's CM/ECF system and/or by placing a copy of same in the United States Mail, postage pre-paid.

                                                       /s/ *Kevin D. Heard*
                                                       Kevin D. Heard

60163223