# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| REMINGTON OUTDOOR COMPANY, INC., *et al.*,[1] | Case No. 20-81688-CRJ11 |
| | Joltly Administered |
| Debtors. | |

## DEBTORS' RESPONSE TO IRONSHORE SPECIALTY INSURANCE COMPANY'S OBJECTION TO THE FORM OF THE REVISED PROPOSED CONFIRMATION ORDER

Remington Outdoor Company, Inc. and its affiliated debtors, as debtors and debtors in possession ("Debtors"), submit this brief in response to Ironshore Specialty Insurance Company's ("Ironshore") objection to the form of the revised Proposed Confirmation Order (Docket 1637). A number of the comments that Ironshore proposes are acceptable to Debtors and the Sandy Hook Families and will be incorporated in the Confirmation Order. While earlier in the day, Debtors filed a Revised Proposed Order (Docket 1635) that was acceptable to the Sandy Hook Families, Debtors did not have time to solicit Ironshore's comments. But Debtors intended to continue speaking with Ironshore after the filing. Unfortunately, the shortness of time did not allow Debtors—or

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405). The Debtors' corporate headquarters are located at 100 Electronics Boulevard SW, Huntsville, AL 35824.

other parties—to fully exhaust the meet-and-confer process, and Debtors apologize for burdening the Court with an additional filing.[2]

In any event, Ironshore's revisions to paragraphs 72, 93, and 94 (in part), 96 (in part), and 98 are acceptable to Debtors. On paragraph 98, Ironshore's first proposed option discussed in paragraph 5 of its response (adding the word "settlement") is acceptable. The Debtors are informed and believe that the Sandy Hook Families also consent to these revisions. As a result, this portion of Ironshore's request should be unobjectionable. But two of Ironshore's proposals requires clarification.

***First***, Ironshore inserts several "reservation of rights" provisos in paragraph 94.[3] Debtors would accept this proposed addition if it simply means that by paying to defend a claim, Ironshore is not conceding that it has a continuing obligation to do so or is otherwise bound to make liability indemnification payments if a judgment is rendered in favor of the applicable Tort Claimant. But if Ironshore intends to rely on this language to impose obligations on the Debtors or the Estates through its reservation to seek

---

[2] As noted in their cover pleading, Debtors used the time available to negotiate a form of Confirmation Order acceptable to the Plan Proponents and the Sandy Hook Families. They provided the draft to Ironshore's counsel for review and filed the proposal shortly thereafter to allow the Court and all parties to assess the proposal. The Debtors had a teleconference with Ironshore's counsel in advance of filing the revised order and were unaware of his personal commitment referenced in Ironshore's most recent pleading. The filing of the proposed Confirmation Order modifications that had been accepted by the Sandy Hook Families was not intended to cut off other comments.

[3] Debtors agree that Paragraph 94 as previously proposed should be modified to make clear that Debtors are not seeking in any way to limit Ironshore's (or any other insurer's) ability to defend. Insurers do not need the Plan Administrator's permission to defend the Tort Claims. Rather, Debtors only seek to clarify that the ROC Liquidation Estates are not going to spend their own limited funds to assist insurers in that effort without compensation. Debtors thus propose that Paragraph 94 be modified as follows to address Ironshore's concern: the phrase "take over the defense" should be deleted, which would make unnecessary Ironshore's proposed proviso that the Plan Administrator may not reject an insurers effort to take over the defense. The third sentence of Paragraph 94 would then read, "Nothing in the Plan or this Confirmation Order requires the Debtors, the ROC Liquidation Estates, the Creditor Trust, the Tort Claims Sub-Trust or the Plan Administrator to incur any fees, costs or expenses concerning the defense relating to Tort Actions absent written agreement by the applicable insurer to

(continued)

repayment of defense costs that it chooses to advance (in the event that Ironshore prevails in any coverage litigation), then this language is unacceptable. A clarification here could resolve whether this clause can be added to the Confirmation Order.

*Second*, Ironshore similarly suggests adding to paragraph 98 that the "Estates shall be bound by declarations issued in any such litigation they elect to not participate in." To the extent that language means that the Estates may not seek further claims against Ironshore after a judgment is rendered in a coverage actions, that is unobjectionable. But if the intent is that Ironshore may use that litigation to seek to impose payment obligations or damages claims against the Estates, that language cannot be part of the Confirmation Order. The Debtors seek clarification from Ironshore that its proposal is not intended to be a backdoor effort to circumvent the terms of the Plan and the Confirmation Order (and the bankruptcy process) to impose such liability on the ROC Liquidation Estates.

*Finally*, Ironshore's additions to the end of paragraph 96 are inconsistent with how Debtors understood the Court's guidance on March, 9, 2021. Debtors heard the Court to say that it would exercise exclusive jurisdiction over the SIR dispute and that no parties other than the Tort Claimants would be granted relief from stay. Debtors also heard the Court preserve insurers' existing contractual rights under the policies to commence coverage litigation, but understood that right to be subject to the foregoing. Debtors do not believe that Ironshore's new language gives effect to the Court's prior rulings. The Debtors are advised that the Sandy Hook Families share this interpretation

---

pay such fees, costs and expenses in form and substance acceptable to the Plan Administrator in his sole discretion."

3

OMM_US:79722973.2

Case 20-81688-CRJ11   Doc 1641   Filed 03/11/21   Entered 03/11/21 06:46:25   Desc
Main Document    Page 3 of 5

and have additional substantive concerns about Ironshore's proposed modifications to Paragraph 96.[4] Rather, Debtors propose modifying the end of paragraph 96 as set forth below, with which they believe the Sandy Hook Families agree:

> 96. On the Effective Date, (a) each holder of a Class 7 Tort Claim is hereby granted authority to commence, in its own name and in the name of the Debtors, the ROC Liquidation Estates, and/or the Tort Claim Sub-Trust, and (b) each provider of GL Insurance Assets is granted authority to commence, in each case, litigation in the Bankruptcy Court regarding the applicability of any self-insured retentions ("SIRs") under any GL Insurance Assets applicable to any Class 7 Tort Claim. The Plan Administrator shall not be obligated to participate in any such litigation or any other coverage-related litigation and neither the Plan Administrator nor its Representatives shall have any liability for any failure to participate in such litigation. Notwithstanding anything in the Plan to the contrary, the Bankruptcy Court shall have the exclusive jurisdiction to determine any disputes related to the applicability of the SIRs and non-exclusive jurisdiction to determine other coverage disputes. Any existing right of **insurers, including** Ironshore **Specialty** Insurance Company ("Ironshore"), to seek to withdraw the reference with respect to such litigation **filed** in the Bankruptcy Court is hereby preserved. **Any existing right of insurers, including Ironshore, provided under their policies to commence litigation regarding the applicability of any SIRs or to determine other coverage disputes is hereby preserved, subject to the terms of this Confirmation Order concerning exclusivity of jurisdiction over the SIRs and the stays and injunctions provided herein.**

Debtors that submit this language is consistent with the comments the Court made on the record. If Debtors are mistaken, they will of course be guided by the Court.

---

[4] Given the timing of the filings, the Debtors are informed and believe that the Sandy Hook Families intend to present their concerns orally at the March 11, 2021 hearing.

4

OMM_US:79722973.2

Case 20-81688-CRJ11    Doc 1641    Filed 03/11/21    Entered 03/11/21 06:46:25    Desc
Main Document    Page 4 of 5

Dated: March 11, 2021

        */s/ Derek F. Meek*
        **BURR & FORMAN LLP**
        Derek F. Meek
        Hanna Lahr
        James P. Roberts
        420 20th Street North, Suite 3400
        Birmingham, AL 35203
        Telephone:    (205) 251-3000
        Facsimile:    (205) 458-5100
        Email: dmeek@burr.com
                hlahr@burr.com
                jroberts@burr.com

        - and -

        **O'MELVENY & MYERS LLP**
        Stephen H. Warren (admitted *pro hac vice*)
        Karen Rinehart (admitted *pro hac vice*)
        400 South Hope Street
        Los Angeles, CA 90071-2899
        Telephone:    (213) 430-6000
        Facsimile:    (213) 430-6407
        Email: swarren@omm.com
                krinehart@omm.com

        *Attorneys for the Debtors and Debtors in Possession*