UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| REMINGTON OUTDOOR COMPANY, INC., *et al.*,[1] | ) Case No. 20-81688-CJR |
| | ) |
| | ) Adv. Case No. _____ |
| *Debtors.* | ) |
| | ) |
| WILMA BLANTON, INDIVIDUALLY AND AS GUARDIAN OF LARRY BLANTON; RONALD BLANTON; and JUSTIN WILLIAMS, | ) |
| *Plaintiffs,* | ) |
| v. | ) |
| NATIONAL FIRE & MARINE INSURANCE COMPANY and IRONSHORE SPECIALTY INSURANCE COMPANY, | ) |
| *Defendants,* | ) |
| AND | ) |
| REMINGTON ARMS COMPANY, LLC and REMINGTON OUTDOOR COMPANY, INC. | ) |
| *Nominal Defendants.* | ) |

---

[1] The debtors in these chapter 11 cases (the "Debtors"), along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405). The Debtors' corporate headquarters are located at 100 Electronics Boulevard SW, Huntsville, AL 35824.

# COMPLAINT FOR DECLARATORY JUDGMENT

Come Plaintiffs, Wilma Blanton, individually and in her capacity as guardian of Larry Blanton, Ronald Blanton and Justin Williams (collectively, the "Plaintiffs"), all of whom are plaintiffs in the civil action currently pending in the United States District Court for the Eastern District of Kentucky, Pikeville Division (7:20-cv-00071-REW-EBA) (the "Civil Action"), and for their Complaint for a Declaratory Judgment pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 declaring that Defendant National Fire & Marine Insurance Company ("NFMIC") and Defendant Ironshore Specialty Insurance Company ("ISIC") are legally responsible for insuring Remington Arms Company, LLC and Remington Outdoor Company, Inc. (Debtors and Nominal Defendants herein and Defendants in the Civil Action) (the "Remington Defendants") under the NFMIC and/or ISIC Policies (as defined hereinbelow) with respect to Plaintiffs' claims asserted in the Civil Action, or, otherwise stated, the NFMIC and/or ISIC are not relieved of their obligations to insure risks and pay claims and damages under the NFMIC and/or ISIC Policies by reason of the Remington Defendants' inability to satisfy Self Insured Retentions ("SIRs") specified therein, or otherwise by reason of the Remington Defendants' bankruptcy or insolvency.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This adversary proceeding (the "Adversary Proceeding") arises in, and is related to, the Remington Defendants' bankruptcy cases, which was commenced through the filing of a voluntary petitions for relief under Chapter 11 of the Bankruptcy Code by Remington Defendants on July 27, 2020 in this Court (the "Bankruptcy Cases").

2

Case 20-81688-CRJ11    Doc 2181    Filed 11/04/21    Entered 11/04/21 15:15:32    Desc
Main Document    Page 2 of 20

4. This adversary proceeding is commenced pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure. Declaratory relief is appropriate pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 ("(a) In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.").

5. Pursuant to an order entered by this Court in the underlying bankruptcy cases, this Court has exclusive jurisdiction over this adversary proceeding. *See Finding of Fact, Conclusions of Law, and Order Confirming the Joint Chapter 11 Plan of the Debtors, the Official Committee of Unsecured Creditors, and Exit Term Loan Lenders* (the "Confirmation Order") [Docket No. 1658].

6. To the extent this action is deemed to not be a core proceeding, Plaintiff consents to the entry of a final order by this Court.

## INTRODUCTION

7. Until the incident that gave rise to this case, Larry Blanton, now 69 years old, was an avid hunter and experienced marksman having shot rifles and guns since he was five years old. Throughout his life, he has owned, and he continues to own, numerous rifles made by Remington and other gun manufacturers.

8. On February 17, 2019, Larry Blanton purchased a Remington 770 bolt-action rifle at the Walmart near his home in Salyersville, Magoffin County, Kentucky. He intended to use the rifle to shoot coyotes that had been invading his land, on which he lived with his wife, Wilma Blanton, his son, Ronald Blanton, his daughter, Suzie Williams, and grandson, Justin Williams.

9. On February 17, 2019, Justin Williams fired the Remington 770 without incident.

10. On February 18, 2019, Larry Blanton placed the Remington 770 into a Caldwell vice in order to sight the weapon.

11. On February 18, 2019, Larry Blanton fired the Remington 770 once, without incident.

12. Having missed the target on his first shot, on February 18, 2019, Larry Blanton loaded a second round into the Remington 770 while it was still within the Caldwell vice. Rather than lock the bolt down to fire the rifle, Larry Blanton opened the bolt and placed the Remington 770 into what is known as "hunter's safe" so that he could adjust the position of the Remington 770.

13. As Larry Blanton sat behind the Remington 770, the Remington 770 discharged by itself, with the bolt fully open and without the trigger being pulled.

14. Even though the bolt was open, because of a defect in design and manufacture, the firing pin of the Remington 770 moved forward until it engaged the primer of the Winchester .243 caliber round, causing the round to fire while in the chamber of the Remington 770 propelling the entire bolt backwards off of the weapon and into Larry Blanton's chest.

15. The impact into Larry Blanton's chest was so violent that it shore off the bolt handle from the bolt upon impact.

16. Ronald Blanton, Larry Blanton's son, and Justin Williams, Larry Blanton's grandson, were with Larry Blanton at the time he was impaled by the bolt of the Remington 770.

17. Larry Blanton was catastrophically injured and will likely never fully recover. Indeed, Larry Blanton suffered multiple strokes during his post-incident emergent surgical care and, by reason of his devastating injuries, spends 24 hours a day inside a nursing home facility isolated from those who love him due to the ongoing Covid-19 global pandemic.

18. The parties have engaged in extensive pre-litigation discovery prior to the filing of this Complaint including, but not limited to, joint inspection and testing of the subject Remington 770.

**THE PARTIES**

19. Plaintiff Wilma Blanton is the wife of Larry Blanton. Wilma Blanton was appointed Guardian of Larry Blanton by the Magoffin County District Court on March 25, 2019. A true and correct copy of the Order appointing Wilma Blanton as Guardian of Larry Blanton is attached hereto and made a part hereof as **Exhibit 1**.

20. Wilma Blanton and Larry Blanton are individuals residing in Magoffin County, Kentucky, with an address of 234 Blanton Branch Road, Salyersville, KY 41465.

21. Plaintiff Ronald Blanton is the son of Larry Blanton and an individual residing in Magoffin County, Kentucky, with an address of 50 Blanton Branch Road, Salyersville, KY.

22. Plaintiff Justin Williams is the grandson of Larry Blanton and an individual residing in Magoffin County, Kentucky, with an address of 236 Blanton Branch Road, Salyersville, KY.

23. The Remington Defendants are the debtors in the Bankruptcy Cases and are named as nominal defendants in this Adversary Proceeding as they are the insureds under the insurance policies at issue. As nominal parties, the Remington Defendants' substantive rights will not be affected by any judgment(s) entered in connection with this Adversary Proceeding.

24. The Remington Defendants are Delaware corporations with their headquarters and principal places of business in Madison, North Carolina.

25. At all times relevant to the Civil Action, the Remington Defendants conducted business in the Commonwealth of Kentucky. Specifically, the Remington Defendants were

engaged in interstate commerce, including commerce within the Commonwealth of Kentucky, in the advertisement, marketing, distribution, and sale of the Remington Model 770 rifles.

26. Defendant National Fire & Marine Insurance Company ("NFMIC"), is a Nebraska corporation, with its principal office located in Omaha, Nebraska. Its registered agent is Raj R. Mehta, 1314 Douglas Street, Suite 1400, Omaha, NE 68102. NFMIC is an insurance company registered with the State of Kentucky, which issued a Commercial General Liability insurance policy and Commercial Umbrella Liability Occurrence insurance policy to the Remington Defendants (respectively, Policy Nos. 42-GLO-303121-03 and 42-UMC-100385-05) (hereinafter, the "NFMIC Policies"), the policy periods of both of which are December 1, 2018 to December 1, 2019, and the geographic scope of both of which is unlimited as it relates to the risks insured thereunder.[2]

27. Plaintiffs' claims herein against NFMIC arise from NFMIC's transacting business in Kentucky and contracting to insure a risk located within Kentucky—i.e., the risk of damage, including but not limited to bodily injury, caused by the Remington Defendants' gun products, including but not limited to Remington Model 770 rifles. NFMIC is thus subject to the jurisdiction of this Court under KRS 454.210(1) & (7) ("A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's: 1. [t]ransacting any business in this Commonwealth; [or] 7. [c]ontracting to insure any person, property, or risk located within this Commonwealth at the time of contracting[.]").

28. Defendant Ironshore Specialty Insurance Company ("ISIC") is an Arizona corporation, with its principal office located in Scottsdale, Arizona. Its registered agent is S. David Childers, Kutak Rock LLP, 8601 N. Scottsdale Rd. #300, Scottsdale, Arizona 85253. ISIC is an

---

[2] Copies of the NFMIC Policies are attached, respectively, as **Exhibit 2** and **Exhibit 3**.

insurance company registered with the State of Kentucky, which issued an excess insurance policy to the Remington Defendants (Policy No. 000833909) (hereinafter "the ISIC Policy"), the policy period of which is December 1, 2018 to December 31, 2019, and the geographic scope of which is unlimited as it relates to the risks insured thereunder.[3]

29. Plaintiffs' claims against ISIC arise from ISIC's transacting business in Kentucky and contracting to insure a risk located within Kentucky—i.e., the risk of damage, including but not limited to bodily injury, caused by the Remington Defendants' gun products, including but not limited to Remington Model 770 rifles. ISIC is thus subject to the jurisdiction of this Court under KRS 454.210(1) & (7) ("A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's: 1. [t]ransacting any business in this Commonwealth; [or] 7. [c]ontracting to insure any person, property, or risk located within this Commonwealth at the time of contracting[.]").

## THE INJURY TO LARRY BLANTON

30. As a result of the Remington 770's defect, Larry Blanton was impaled in his right chest by the bolt of the Remington 770 causing severe injuries to his sternum and vascular system.

31. As a result of the Remington 770's defect, Larry Blanton underwent a right thoracotomy tube placement, a sternotomy closure, and a chest wall reconstruction. Further, Larry Blanton underwent numerous procedures to repair his arteries which were severed and/or otherwise damaged by the impalement of the Remington 770 bolt, including an open repair of his thoracic subclavian artery, stent graft procedure of the subclavian axillary arteries, thrombectomy of the subclavian artery, axillary artery, brachial artery, ulnar artery, and radial artery, and a ligation of his thoracic thyrocervical trunk vein.

---

[3] A copy of the ISIC Policy is attached as **Exhibit 4**. A copy of "Endorsement # 14" to the ISIC Policy is attached separately as **Exhibit 5**.

32. As a result of the Remington 770's defect, Larry Blanton suffered a severe anterior circulation ("AC") stroke, anemia, an acute kidney injury, acute respiratory failure, rib fractures and lung deconditioning.

33. As a result of the Remington 770's defect, Larry Blanton required placement of a tracheostomy, a PEG tube and central line.

34. As a result of the Remington 770's defect, Larry Blanton suffered from a left anterior cerebral artery ("ACA") infarct, bilateral cerebellar infarcts, right hemiparesis, and spasticity.

35. As a result of the Remington 770's defect, Larry Blanton is immobile, incommunicative, and suffers from severe cognitive and physical impairments.

36. As a result of the Remington 770's defect, Larry Blanton is severely and permanently disabled, and has suffered and will continue to suffer extreme and severe physical and emotional distress and pain and suffering.

37. As a result of the Remington 770's defect, and Larry Blanton's injuries caused thereby, Larry Blanton has been confined to Salyersville Nursing and Rehabilitation Center in isolation (away from his family and friends) since March 10, 2020 due to the Covid-19 global pandemic.

38. The injuries described in this Complaint are a direct and proximate result of the joint and several acts or omissions of the Remington Defendants as set forth herein, singularly or in combination.

## **THE REMINGTON MODEL 770**

39. Since 2001, the Remington Defendants have designed, manufactured, and marketed the Remington Model 770 containing latent defects as described herein.

40. In designing the Remington 770, the Remington Defendants abandoned proven safe designs in favor of a design more economical to manufacture, resulting in a product that is defective and unreasonably dangerous.

41. Specifically, the Remington Defendants have foregone the use of wrought steel in the design and manufacture of the Remington 770 firing pin head. Instead, the Remington 770 is designed and manufactured with materials defective in strength and durability, resulting in a firing pin head that cannot withstand the forces generated in the operation of the rifle. The firing pin head of the Remington 770 is also diminished in size in comparison to firing pin heads of other Remington models.

42. Further, in designing and manufacturing the Remington 770, the Remington Defendants, jointly and severally, abandoned the bladed firing pin design of previous models. Instead, the Remington 770 is designed and manufactured with a three-piece firing pin unit with two threaded connections, which is weaker and not capable of handling severe tensile distress. The firing pin of the Remington 770 design also lacks mechanisms for blocking the firing pin in the event of a failure.

43. The altered and weaker design of the firing pin head resulted in a defective and unreasonably dangerous firearm reasonably foreseeable to cause injury or death.

44. The latent defects of the Remington 770 described herein led to the breaking of the firing pin head of Larry Blanton's Remington 770 that occurred when Larry Blanton opened the bolt. The breaking of the firing pin head permitted the firing pin to extend forward and engage the primer on the cartridge. The ignition of the cartridge caused the bolt to propel backwards and into the chest of Larry Blanton, thereby causing his severe and debilitating injuries.

9

Case 20-81688-CRJ11    Doc 2181    Filed 11/04/21    Entered 11/04/21 15:15:32    Desc
Main Document    Page 9 of 20

## THE REMINGTON DEFENDANTS' KNOWLEDGE OF THE DANGEROUS DEFECTS IN THE REMINGTON MODEL 770

45. The Remington Defendants knew or should have known of the dangerous defective design of the Remington 770 when they made the decision to forego the use of wrought steel in the design and manufacture of the firing pin head.

46. The Remington Defendants knew or should have known of the dangerous defective design of the Remington 770 when they made the decision to utilize a firing pin head in the design of the Remington 770 that was a diminished in size in comparison to the firing pin heads of other Remington models.

47. The Remington Defendants knew or should have known that designing and manufacturing the Remington 770 firing pin head with materials defective in strength and durability would result in a weaker firing pin head that cannot withstand the forces generated in the operation of the rifle.

48. The Remington Defendants knew or should have known of the dangerous defective design of the Remington 770 as the Remington Defendants utilized a three-piece firing pin unit with two threaded connections, which is not designed to handle or capable of handling severe tensile distress.

49. The Remington Defendants knew or should have known of the dangerous defective design of the Remington 770 as the Remington Defendants, in designing the Remington 770, abandoned provisions that would prevent the rifle from firing with the bolt open. Such provisions are known to the Remington Defendants as they were used in the design and manufacture of the Remington Defendants' other, more expensive, rifle models.

50. Upon information and belief, the Remington Defendants were "on notice" of the dangerous defective design of the Remington 770 given complaints it has received directly from

10

customers, and the fact that the Remington Defendants have had to replace and/or repair bolts and/or firing pins of customers' Remington 770 rifles that were damaged as a result of the latent defects described herein.

### PLAINTIFFS' CLAIMS AGAINST THE REMINGTON DEFENDANTS IN THE CIVIL ACTION

51. Plaintiffs asserted numerous claims in the Civil Action against the Remington Defendants including (1) Strict Liability – Manufacturing Defects; (2) Strict Liability – Design Defect; (3) Negligence – Manufacturing; (4) Negligence – Design Defects; (5) Strict Liability – Defective Warnings; (6) Negligence – Warnings; (7) Breach of Implied Warranty of Merchantability; (8) Breach of Express Warranty; (9) Breach of Implied Warranty – Fitness for a Particular Purpose; (10) Common Law Fraud and Violation of Kentucky Consumer Protection Act; (11) Loss of Consortium; (12) Negligent Infliction of Emotional Distress; as well as claims for punitive damages. A copy of Plaintiffs' First Amended Complaint filed in the Civil Action (Dkt. #32) is attached as **Exhibit 6**.

### COUNT I
### DECLARATORY JUDGMENT AS TO NFMIC

52. Plaintiffs hereby adopt, reiterate and incorporate by reference all allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

53. As stated above, on July 27, 2020, the Remington Defendants initiated Chapter 11 bankruptcy proceedings in this Court. The Remington Defendants' bankruptcy action remains pending, active, and ongoing.

54. NFMIC has expressed, both to Plaintiffs directly and as a matter of record in the Bankruptcy Case, that it has no obligation to insure risks or pay claims or damages under the NFMIC Policies because the Remington Defendants have not satisfied the $1,000,000.00 and

$10,000.00 SIRs specified therein[4]—which the Remington Defendants are financially unable to satisfy because of the very debts and liabilities forming the basis of their Chapter 11 bankruptcy petition. *See* Official Committee of Unsecured Creditors' Status Report Concerning Insurance Issues, attached as **Exhibit 7**, stating:

> 9. <u>Self-Insured Retentions</u>
>
> The Debtors have asserted that the per occurrence self-insured retention and self-insured corridor retention (the "<u>SIRs</u>") under one or more of the liability insurance policies for the year the Sandy Hook related claims arose have been satisfied through indemnity and/or defense cost payments. However, the primary liability insurer [i.e., NFMIC] has taken the position that the SIRs for that year are satisfied only through indemnity payments. The SIRs for other policy years remains under review."

*Id.* at p. 4, ¶ 9; *see also* Chart of Payments on behalf of the Remington Defendants' Insurers (including both NFMIC and ISIC), attached as **Exhibit 8** (reflecting no insurance payments at all for the operative policy period of December 1, 2018 to 2019).

55. If, as NFMIC has asserted directly to Plaintiffs and as a matter of record in the Bankruptcy Case, NFMIC has no obligation to insure risks or pay claims or damages under the NFMIC Policies because the Remington Defendants have not satisfied the $1,000,000.00 and $10,000.00 SIRs specified therein, Plaintiffs have no realistic or meaningful hope of recovering anything to compensate them for the grievous injuries inflicted upon them by reason of the subject failure of the Remington 770 rifle.

56. NFMIC has used and is using its legal position regarding the SIRs specified in the NFMIC Policies to refuse to negotiate fairly with Plaintiffs to settle Plaintiffs' claims against the Remington Defendants. First, NFMIC advanced the position that NFMIC could not even

---

[4] The subject NFMIC Commercial General Liability insurance policy contains a $1,000,000 self-insured retention. The subject NFMIC Commercial Umbrella Liability Occurrence insurance policy contains a $10,000,000 self-insured retention.

12

communicate with Plaintiffs regarding settlement of their claims against the Remington Defendants because the SIRs specified in the NFMIC Policies were not satisfied. Then, most recently, NFMIC advanced the position that it could communicate with Plaintiffs regarding settlement of their claims against the Remington Defendants, but could only offer up to $25,000.00 to Plaintiffs—a position that directly contradicts NFMIC's stated position that it has no obligation to insure risks or pay claims under the NFMIC Policies unless and until the SIRs specified therein have been satisfied. NFMIC's inconsistent positions are further illustrated by the fact that, upon information and belief, NFMIC is furnishing counsel to the Remington Defendants to defend against Plaintiffs' claims in this action.

57. NFMIC's stated legal position regarding the SIRs specified in the NFMIC Policies have put Plaintiffs in an impossible situation and predicament: unless that operative legal issue—i.e., whether NFMIC is relieved of any obligations under the NFMIC Policies by reason of the Remington Defendants' inability to satisfy the SIRs specified therein—is adjudicated, Plaintiffs will be forced to expend great sums of money to prosecute their claims against the Remington Defendants without any reasonable assurance that, if successful in their claims, Plaintiffs will recover any sum whatsoever, much less an amount sufficient to compensate them for the grievous injuries inflicted upon them by reason of the failure of the Remington 770 rifle.

58. NFMIC's stated position that it has no obligation to insure risks or pay claims or damages under the NFMIC Policies because the Remington Defendants have not satisfied the SIRs specified therein violates public policy and is otherwise incorrect. Where, as here, the insureds (i.e., the Remington Defendants) are financially unable to satisfy a self-insured retention by reason of bankruptcy, the insurer is not relieved of its obligations to insure risks or otherwise pay claims or damages under the operative insurance policy. *See*, e.g., *Sturgill v. Beach at Mason Limited*

13

*Partnership*, 2015 WL 6163787, *2 (S.D. Ohio Oct. 20, 2015) ("[T]he great weight of authority holds, under policy language similar to that contained in the Steadfast policy, that the insured's failure to pay a SIR [self-insured retention] does *not* relieve the insurer of its contractual duties under the policy.") (emphasis in original) (collecting cases).

59. NFMIC's stated position that it has no obligation to insure risks or pay claims or damages under the NFMIC Policies is also untenable because it contradicts the very terms of the NFMIC Policies. For example, the NFMIC Commercial General Liability policy states:

> **3. Bankruptcy**
>
> Your bankruptcy, insolvency, or inability to pay will not relieve us from the payment of loss covered by this policy[.]

*See* NFMIC Commercial General Liability policy, **Exhibit 2**, at p. 19. Similarly, the NFMIC Commercial Umbrella Liability Occurrence policy states:

> **3. Bankruptcy or Insolvency**
>
> Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay any of your underlying insurers will not relieve us from the payment of damages covered by this policy. But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down, replace or assume any obligation under "scheduled underlying insurance".

*See* NFMIC Commercial Umbrella Liability Occurrence policy, **Exhibit 3**, at p. 21.

60. There exists a live, present and immediate, substantial, justiciable controversy between NFMIC and Plaintiffs regarding the existence and extent of NFMIC's legal obligations under the NFMIC Policies—i.e., whether NFMIC is, as NFMIC asserts to Plaintiffs, relieved of any obligation to insure risks or pay claims or damages under the NFMIC Policies by reason of the Remington Defendants' inability to satisfy the SIRs specified therein.

61. Accordingly, Plaintiffs respectfully request and seek a judgment pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 declaring that NFMIC is legally responsible for insuring the

14

Remington Defendants under the NFMIC Policies with respect to Plaintiffs' claims, or, otherwise stated, that NFMIC is not relieved of its obligations to insure risks and pay claims and damages under the NFMIC Policies by reason of the Remington Defendants' inability to satisfy the SIRs specified therein, or otherwise by reason of the Remington Defendants' bankruptcy or insolvency.

## COUNT II
## DECLARATORY JUDGMENT AS TO ISIC

62. Plaintiffs hereby adopt, reiterate and incorporate by reference all allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

63. As stated above, on July 27, 2020, the Remington Defendants initiated Chapter 11 bankruptcy proceedings in this Court. The Remington Defendants' bankruptcy action remains pending, active, and ongoing.

64. ISIC has expressed, both to Plaintiffs directly and as a matter of record in the Bankruptcy Case, that it has no obligation to insure risks or pay claims or damages under the ISIC Policy because the Remington Defendants have not satisfied the $1,000,000.00 and $10,000.00 SIRs specified in the NFMIC Policies[5]—which the Remington Defendants are financially unable to satisfy because of the very debts and liabilities forming the basis of their Chapter 11 bankruptcy petition.

65. If, as ISIC has asserted to Plaintiffs directly and as a matter of record in the Bankruptcy Case, it has no obligation to insure risks or pay claims or damages under the ISIC Policy because the Remington Defendants have not satisfied the $1,000,000.00 and $10,000.00

---

[5] *See* **Exhibit 7**, p. 4, ¶ 9 ("Self-Insured Retentions. The Debtors have asserted that the per occurrence self-insured retention and self-insured corridor retention (the "SIRs") under one or more of the liability insurance policies for the year the Sandy Hook related claims arose have been satisfied through indemnity and/or defense cost payments. However, the primary liability insurer [i.e., NFMIC] has taken the position that the SIRs for that year are satisfied only through indemnity payments. The SIRs for other policy years remains under review."); *see also* **Exhibit 8**, Chart of Payments on behalf of the Remington Defendants' Insurers (including both NFMIC and ISIC), reflecting no insurance payments at all for the operative policy period of December 1, 2018 to 2019.

15

SIRs specified in the NFMIC Policies, Plaintiffs have no realistic or meaningful hope of recovering anything to compensate them for the grievous injuries inflicted upon them by reason of the subject failure of the Remington 770 rifle.

66. ISIC's stated legal position regarding the SIRs specified in the NFMIC Policies have put Plaintiffs in an impossible situation and predicament: unless that operative legal issue— i.e., whether ISIC is relieved of any obligations under the ISIC Policy by reason of the Remington Defendants' inability to satisfy the SIRs specified in the NFMIC Policies—is adjudicated, Plaintiffs will be forced to expend great sums of money to prosecute their claims against the Remington Defendants without any reasonable assurance that, if successful in their claims, Plaintiffs will recover any sum whatsoever, much less an amount sufficient to compensate them for the grievous injuries inflicted upon them by reason of the failure of the Remington 770 rifle.

67. ISIC's stated position that it has no obligation to insure risks or pay claims or damages under the ISIC Policy because the Remington Defendants have not satisfied the SIRs specified in the NFMIC Policies violates public policy and is otherwise incorrect. Where, as here, the insureds (i.e., the Remington Defendants) are financially unable to satisfy a self-insured retention by reason of bankruptcy, the insurer is not relieved of its obligations to insure risks or otherwise pay claims or damages under the operative insurance policy. *See*, e.g., *Sturgill v. Beach at Mason Limited Partnership*, 2015 WL 6163787, *2 (S.D. Ohio Oct. 20, 2015) ("[T]he great weight of authority holds, under policy language similar to that contained in the Steadfast policy, that the insured's failure to pay a SIR [self-insured retention] does *not* relieve the insurer of its contractual duties under the policy.") (emphasis in original) (collecting cases).

68. ISIC's stated position that it has no obligation to insure risks or pay claims or damages under the ISIC Policy is also untenable because it contradicts the very terms of the ISIC Policy. For example, the ISIC Policy states:

> **D. Maintenance of Underlying Insurance**
>
> While this policy is in effect, the Insured agrees to maintain the Underlying Policies in full force and effect. The insured's failure, or the failure of others, to comply with this Condition D. [w]ill not invalidate this Policy, but in the event of such failure, the Insurer will only be liable to the same extent as if there had been compliance. In the event of the bankruptcy, insolvency, inability or unwillingness of any underlying insurer to pay claims covered by Underlying Policies we will be liable only to the same extent we would have been liable had the insurer fully paid such claims. Further, when the Insured itself pays amounts covered by Underlying Policies in an effort to reduce or exhaust the applicable limits of liability of any such Underlying Policies, we will consider such payment to reduce or exhaust the applicable limits of liability of the Underlying Policies only where such payment is made by the Insured with our prior knowledge and written consent.

*See* ISIC Policy, **Exhibit 4**, at p. 22.

69. There exists a live, present and immediate, substantial, justiciable controversy between ISIC and Plaintiffs regarding the existence and extent of ISIC's legal obligations under the ISIC Policy—i.e., whether ISIC is, as ISIC has asserted as a matter of record in the Remington Defendants' Bankruptcy Action, relieved of any obligation to insure risks or pay claims or damages under the ISIC Policy by reason of the Remington Defendants' inability to satisfy the SIRs specified in the NFMIC Policies.

70. Accordingly, Plaintiffs respectfully request and seek a judgment pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 declaring that ISIC is legally responsible for insuring the Remington Defendants under the ISIC Policy with respect to Plaintiffs' claims, or, otherwise stated, that ISIC is not relieved of its obligation to insure risks and pay claims and damages under the ISIC Policy by reason of the Remington Defendants' inability to satisfy the SIRs specified in

17

the NFMIC Policies, or otherwise by reason of the Remington Defendants' bankruptcy or insolvency.

**WHEREFORE**, Plaintiffs, Wilma Blanton, individually and in her capacity as Guardian of Larry Blanton, Ronald Blanton, and Justin Williams, demand as follows:[6]

1. A declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 against National Fire & Marine Insurance Company, declaring that National Fire & Marine Insurance Company is not relieved of its obligations to insure risks and pay claims and damages under the Commercial General Liability and Commercial Umbrella Liability Occurrence insurance policies it issued to Defendants, Remington Arms Company, LLC and Remington Outdoor Company, Inc. by reason of Defendants, Remington Arms Company, LLC and Remington Outdoor Company, Inc.'s, inability to satisfy the self-insured retentions specified therein, or otherwise by reason of Defendants, Remington Arms Company, LLC and Remington Outdoor Company, Inc.'s, bankruptcy or insolvency; and

2. A declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 against Ironshore Specialty Insurance Company, declaring that Ironshore Specialty Insurance Company is not relieved of its obligations to insure risks and pay claims and damages under the excess insurance policy it issued to Defendants, Remington Arms Company, LLC and Remington Outdoor Company, Inc. by reason of Defendants, Remington Arms Company, LLC and Remington Outdoor Company, Inc.'s, inability to satisfy the self-insured retentions specified in

---

[6] Plaintiffs seek relief against the Remington Defendants in accordance with the terms of the *Joint Chapter 11 Plan of the Debtors, the Official Committee of Unsecured Creditors, and Exit Term Loan Lenders* (as modified by the Confirmation Order, the "Plan") filed in this Court, wherein the Remington Defendants filed their bankruptcy petition. Plan, Section V.F (". . . the Plan Administrator and the holders of Tort Claims . . . retain any rights they may have to . . . seek leave of the Bankruptcy Court to pursue such litigation in another forum . . ."); *see also Notice of Election to Obtain Relief from Stay* [Docket No. 1835, Bankruptcy Case No. 20-81688-CRJ11]. On March 12, 2021, this Court entered the Confirmation Order, confirming the Plan. Accordingly, Plaintiffs are seeking judgment against the Remington Defendants pursuant to and consistent with the terms of the Plan and Confirmation Order in order to collect any judgment from any and all applicable insurance coverage provided by NFMIC and/or ISIC.

18

the Commercial General Liability and Commercial Umbrella Liability Occurrence insurance policies issued to them by National Fire & Marine Insurance Company, or otherwise by reason of Defendants, Remington Arms Company, LLC and Remington Outdoor Company, Inc.'s, bankruptcy or insolvency.

    This, the 4th day of November, 2021.

Respectfully submitted,

/s/ *Masten Childers, III*

Masten Childers, III (*admitted pro hac vice*)
Todd P. Greer
  (*Motion for pro hac vice forthcoming*)
**WHITEFORD, TAYLOR & PRESTON, L.L.P.**
161 North Eagle Creek Drive, Suite 210
Lexington, KY 40509
Tel: (859) 687-6700
Email: mchilders@wtplaw.com
      tgreer@wtplaw.com

AND

Christopher A. Jones (*admitted pro hac vice*)
**WHITEFORD, TAYLOR & PRESTON L.L.P.**
3190 Fairview Park Drive, Suite 800
Falls Church, VA 22042
Telephone: (703) 280-9263
Email: cajones@wtplaw.com

AND

C. Allen Foster, Esq.
  *(Motion for pro hac vice forthcoming)*
Erik D. Bolog, Esq.
  *(Motion for pro hac vice forthcoming)*
**WHITEFORD, TAYLOR & PRESTON L.L.P.**
1800 M Street, N.W., Suite 450N
Washington, DC 20036
Email: cafoster@wtplaw.com
      ebolog@wtplaw.com

*Counsel to Wilma Blanton, in her capacity as guardian for Larry Blanton, Wilma Blanton, individually, Justin Williams, and Ronald Blanton*