**<u>Exhibit 1</u>**

**Madison Property Bidding Procedures**

47110659 v1

## MADISON PROPERTY BIDDING PROCEDURES[1]

### Introduction

Remington Arms Company, LLC ("**Remington**") and several of its subsidiaries (collectively, the "**Debtors**")[2] are debtors in possession in Chapter 11 cases (jointly administered under Case No. 20-81688-11) pending in the United States Bankruptcy Court for the Northern District of Alabama, Northern Division (the "**Bankruptcy Court**").

By the Sale Motion, the Plan Administrator sought approval to, among other things, solicit and select the highest or otherwise best offer for the sale of (i) all those certain parcels or tracts of land located in Rockingham County, North Carolina, more particularly described in the Purchase and Sale Agreement entered into by and between the Plan Administrator and LDJ Global Strategies, LLC, dated January 28, 2022 (the "**Stalking Horse PSA**") (the "Land");[3] (ii) all improvements, buildings, structures, parking areas (if any), mechanical systems and fixtures located on the Land (collectively, the "Improvements"); and (iii) all rights, privileges, easements, hereditaments, and appurtenances pertaining to the foregoing, including all right, title, and interest of Remington Arms Company, LLC, if any, in adjacent streets, roads, alleys, and rights-of-way, all rights of view, light and air, mineral and subsurface rights, development rights, zoning rights, water rights, sewer and drainage rights, utility reservations or capacities, rights of ingress and egress, roadways, parking areas, roadbeds, alleyways and reversions or other appurtenances used in connection with the beneficial use and ownership of the Land (collectively, the "**Appurtenances**", and together with the Land and the Improvements, the "**Madison Property**"), pursuant to the *Order Approving Plan Administrator's Second Motion for Leave to Conduct Sale of Non-Residential Real Estate (Madison, NC) in Accordance with Existing Findings of Fact, Conclusions of Law, and Order Modifying and Confirming the Joint Chapter 11 Plan of the Debtors, the Official Committee of Unsecured Creditors, and Exit Term Loan Lenders* (the "**Madison Property Bidding Procedures Order**") [Dkt. No. ●].

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Plan Administrator's Motion for Leave to Conduct Second Sale of Non-Residential Real Estate in Accordance with Findings of Fact, Conclusions of Law, and Order Modifying and Confirming the Joint Chapter 11 Plan of the Debtors, the Official Committee of Unsecured Creditors, and Exit Term Loan Lenders* (the "**Sale Motion**") or the Order granting same (the "**Madison Property Bidding Procedures Order**"), as applicable.

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405).

[3] The Stalking Horse PSA is attached as Exhibit 1 to the *Plan Administrator's Notice of Stalking Horse Related to Pending Motion for Leave to Conduct Sale of Non-Residential Real Estate in Accordance with Existing Findings of Fact, Conclusions of Law, and Order Modifying and Confirming the Joint Chapter 11 Plan of the Debtors, the Official Committee of Unsecured Creditors, and Exit Term Loan Lenders* [Dkt. No. 2386] (the "**Notice of Stalking Horse**").

The Plan Administrator will consider, without limitation, bids to acquire the Madison Property (the "**Real Property Bid**").

On [●], 2021, the Bankruptcy Court entered the Madison Property Bidding Procedures Order, which, among other things, approved the Madison Property Bidding Procedures set forth below pursuant to which the Plan Administrator will solicit bids for the purchase of the Madison Property.

## Key Dates

These Madison Property Bidding Procedures provide interested parties with the opportunity to complete diligence, to submit competing bids for the Madison Property, and to participate in an auction to be conducted by the Plan Administrator (the "**Auction**").

The key dates for the sale process are as follows:

| DEADLINE | ACTION |
|---|---|
| March 29, 2022 at 10:00AM CST | Hearing to consider approval of the Madison Property Bidding Procedures, and entry of the Madison Property Bidding Procedures Order |
| March 30, 2022 | Sale Notice Mailing Date |
| April 6, 2022 at 4:00PM CST | Sale & Stalking Horse Objection Deadline |
| April 13, 2022 at 4:00PM CST | Sale & Stalking Horse Objection Response Deadline |
| April 19, 2022 at 4:00PM CST | Bid Deadline |
| April 21, 2022 at 10:00AM CST | Auction |
| April 22, 2022 | Post-Auction Notice Filing Date |
| April 26, 2022 at 4:00PM CST | Successful Bidder Objection Deadline |
| April 28, 2022 at 4:00PM CST | Successful Bidder Objection Response Deadline |
| May 2, 2022 at 10:00AM CST | Sale Hearing |

## Stalking Horse PSA

The Plan Administrator has designated LDJ Global Strategies, LLC as the Stalking Horse Bidder for the Madison Property and has entered into the Stalking Horse PSA, which remains subject in all respects to approval by the Bankruptcy Court. The Stalking Horse PSA establishes

the minimum Qualified Bid at the Auction with respect to the Madison Property and remains subject to higher or otherwise better offers at the Auction.

The Stalking Horse PSA (i) limits the break-up fee in favor of the Stalking Horse Bidder in the amount of Twenty Six Thousand Two Hundred Fifty and No/100 Dollars ($26,250.00) (the "**Break-Up Fee**"); and (ii) sets the initial overbid protection (individually, the "**Minimum Overbid Increment**", and together with the Break-Up Fee, the "**Bid Protections**") in the amount of $30,000.00. In the event that the Plan Administrator determines that the Bid Protections must differ from the amounts set forth herein, the Court shall hold a hearing on the approval of any such different Bid Protections on an expedited basis, upon the request of the Plan Administrator.

Any and all objections, if any, to, either (i) the Plan Administrator's selection of LDJ Global Strategies, LLC as the Stalking Horse Bidder, (ii) the Plan Administrator's entry into the Stalking Horse PSA, or (iii) the approval of the Bid Protections, must be filed on or before **April 6, 2022 at 4:00PM CST** (the "**Stalking Horse Objection Deadline**"). Any and all such objections, if any, must be served on: (i) counsel for the Plan Administrator, Burr & Forman LLP, Attn: Derek Meek (dmeek@burr.com), Jeffrey T. Baker (jbaker@burr.com), Hanna Lahr (hlahr@burr.com), and James P. Roberts (jroberts@burr.com), Akin Gump Strauss Hauer & Feld LLP, Attn: Sarah Schultz (sschultz@akingump.com); (ii) the Bankruptcy Administrator, 400 Well Street, Decatur, Alabama 35602, Attn: Richard Blythe (richard_blythe@alnba.uscourts.gov); (iii) counsel for the Stalking Horse Bidder, Fox Rothschild LLP, Attn: E. Garrett Walker (gwalker@foxrothschild.com), and William E. Burton III (wburton@foxrothschild.com); (iv) counsel to Ankura Trust Company, LLC, as Exit Term Loan Agent under the Debtors' prepetition Exit Term Loan Agreement, 450 Lexington Ave., New York, NY 10017, Attn: Donald Bernstein (donald.bernstein@davispolk.com); and (v) counsel to certain Exit Term Loan Lenders, including Franklin Advisers, Inc. and the Franklin Managed Entities, Pillsbury Winthrop Shaw Pittman LLP, Four Embarcadero Center, 22nd Floor, San Francisco, CA 94111-5998, Attn: Joshua D. Morse (joshua.morse@pillsburylaw.com).

Pursuant to the Madison Property Bidding Procedures Order, any party failing to timely file an objection to the Plan Administrator's designation of LDJ Global Strategies, LLC as the Stalking Horse Bidder or the Plan Administrator's entry into the Stalking Horse PSA, or the approval of the Bid Protections, will be forever barred from objecting and will be deemed to have consented to the foregoing.

### Access to Plan Administrator's Diligence Materials.

To receive access to due diligence materials and to participate in the bidding process, an interested party must submit to the Plan Administrator (i) an executed confidentiality agreement in form and substance satisfactory to the Plan Administrator (which, for the avoidance of doubt, may be substantially in the form attached hereto as Exhibit 1-A) or may be a confidentiality agreement already in existence between such party and the Plan Administrator, (ii) evidence demonstrating the party's financial ability to consummate the sale transaction for the Madison Property (the "**Sale Transaction**") or, if such party has been formed for the purpose of entering into the Sale Transaction, evidence from such party's equity holder(s), sponsor(s) or other financial backer(s) ("**Bid Sponsor**"), demonstrating such Bid Sponsor's financial ability to

consummate the Sale Transaction, and (iii) a statement that such party has a bona fide interest in purchasing the Madison Property.

A party who, in the Plan Administrator's reasonable discretion, satisfies the requirements set forth in the immediately preceding sentence for receiving access to diligence materials shall be a "**Diligence Party**." As promptly as practicable after the Plan Administrator determines that a party is a Diligence Party, the Plan Administrator will deliver to the Diligence Party access to the Plan Administrator's confidential electronic data room. The Plan Administrator will afford any Diligence Party the time and opportunity to conduct reasonable due diligence before the Bid Deadline (as defined below). Notwithstanding the foregoing, the Plan Administrator reserves the right to withhold any diligence materials that the Plan Administrator determines are sensitive or otherwise not appropriate for disclosure to a Diligence Party. Neither the Plan Administrator, nor its representatives, shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be a Diligence Party. The Plan Administrator shall not exclude a party from diligence who has complied with subsections (i) and (ii) of the preceding paragraph, unless they have first consulted with the Consultation Parties (as defined below) regarding such determination.

All due diligence requests must be directed to (i) B. Riley Real Estate, LLC, Attn: Michael Jerbich (mjerbich@brileyfin.com), and (ii) Burr & Forman, LLP, Attn: Jeffrey T. Baker (jbaker@burr.com).

Each Diligence Party and Qualified Bidder (as defined below) shall comply with all reasonable requests for additional information and due diligence access by the Plan Administrator or its advisors regarding such Bidder and its contemplated transaction. Failure by a Diligence Party to comply with requests for additional information and due diligence access may be a basis for the Plan Administrator to determine, in consultation with the Consultation Parties, that such bidder is not a Qualified Bidder. Failure by a Qualified Bidder to comply with requests for additional information and due diligence access may be a basis for the Plan Administrator to determine, in consultation with the Consultation Parties, that a bid made by such Qualified Bidder is not a Qualified Bid. The Plan Administrator reserves the right, in its discretion, in consultation with the Consultation Parties, to permit a Diligence Party or Qualified Bidder to remedy any such failure to comply.

### Auction Qualification Process

To be eligible to participate in the Auction, each offer, solicitation, or proposal (each, a "**Bid**"), and each party submitting such a Bid (each, a "**Bidder**") must satisfy each of the conditions set forth below, as determined by the Plan Administrator. A Bid will not be considered qualified for the Auction if such Bid does not satisfy each of the following conditions (provided, that the Plan Administrator, in consultation with the Bid Consultation Parties may waive or modify the application of such conditions to any Bid):

(a)    Good Faith Deposit: Each Bid for the Madison Property must be accompanied by a deposit (a "**Good Faith Deposit**") submitted by wire transfer of immediately available funds to an account identified by the Plan Administrator. Each Good Faith Deposit must equal (1) the amount of 2.5% of the cash consideration offered

in any Real Property Bid, or (2) such other amount as the Plan Administrator determines, in consultation with the Bid Consultation Parties (as defined below); *provided*, *however*, that any Prepetition Secured Creditor submitting a Bid primarily composed of a credit bid pursuant to Section 363(k) of the Bankruptcy Code shall not be required to submit a Good Faith Deposit for the portion of the Bid consisting of a credit bid.

Following the close of the Auction, if any, the Successful Bidder (defined below) shall, within one (1) business day of the Plan Administrator's filing of the Post-Auction Notice announcing such Bidder as the Successful Bidder, deliver the additional sum of 2.5% of the cash consideration of the Successful Bid (defined below) to Chicago Title Insurance Company, 245 E. Friendly Ave., Suite 101, Greensboro, NC 27401, Attn: Patricia G. Murdock (pat.murdock@ctt.com) (the "**Title Company**").

If the Backup Bid (defined below) becomes the Successful Bid, for any reason, the Backup Bidder (defined below) shall, within one (1) business day of the Plan Administrator's filing of a notice announcing the Backup Bidder as the Successful Bidder, deliver the additional sum of 2.5% of the cash consideration of the Successful Bid (defined below) to the Title Company.

(b)     Assets:  Each Real Property Bid must clearly state that the Bidder intends to purchase the Madison Property.

(c)     Purchase Price:  Each Bid must clearly set forth the purchase price to be paid for the Madison Property including and identifying separately any cash and non-cash components.

(d)     Same or Better Terms:  Subject to the Bankruptcy Court's approval of LDJ Global Strategies, LLC as the Stalking Horse Bidder, as well as the Stalking Horse PSA, each Bid for the Madison Property must be on terms that, in the Plan Administrator's business judgment, in consultation with the Bid Consultation Parties, are the same or better than the terms of the Stalking Horse PSA after taking the Bid Protections into account.

(e)     Executed Agreement:  Each Bid must be based on the form purchase and sale agreement (the "**Form PSA**") which may be obtained from Burr & Forman LLP, Attn: Jeffrey T. Baker (jbaker@burr.com) and must include executed transaction documents, signed by an authorized representative of such Bidder, pursuant to which the Bidder proposes to effectuate the Sale Transaction (the "**Modified Purchase and Sale Agreement**").  A Bid shall also include a copy of the Modified Purchase and Sale Agreement marked against the Form PSA to show all changes requested by the Bidder (including those related to purchase price).

(f)     Corporate Authority:  A Bid must include written evidence reasonably acceptable to the Plan Administrator demonstrating appropriate corporate authorization to consummate the proposed Sale Transaction, *provided* that, if the Bidder is an entity

specially formed for the purpose of effectuating the Sale Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Plan Administrator of the approval of the Sale Transaction by the Bid Sponsor(s) of such Bidder.

(g)     Disclosure of Identity of Bidder:  A Bid must fully disclose the identity of each entity that will be bidding for or purchasing the Madison Property or otherwise participating in connection with such Bid (including any Bid Sponsor(s) if the Bidder is an entity specifically formed for the purpose of effectuating the Sale Transaction), and the complete terms of any such participation, including any binding agreements, arrangements, or understandings concerning a collaborative or joint bid or any other combination concerning the proposed Bid.

(h)     Proof of Financial Ability to Perform:  A Bid must include written evidence that the Plan Administrator reasonably concludes, in consultation with its advisors and the Bid Consultation Parties, that the Bidder has the necessary financial ability to close the Sale Transaction.  Such information must include, *inter alia*, the following:

    (1)     contact names and numbers for verification of financing sources;

    (2)     evidence of the Bidder's internal resources and proof of debt funding commitments from a recognized financial institution and, if applicable, equity commitments in an aggregate amount equal to the cash portion of such Bid or the posting of an irrevocable letter of credit from a recognized banking institution issued in favor of the Plan Administrator in such amount, in each case, as is needed to close the Sale Transaction;

    (3)     if the Bidder is an entity specifically formed for the purpose of effectuating the Sale Transaction, a written commitment from such entity's Bid Sponsor(s) to be responsible for such entity's obligations in connection with the bidding process;

    (4)     the Bidder's current financial statements (audited if they exist) or other similar financial information reasonably acceptable to the Plan Administrator;

    (5)     a description of the Bidder's pro forma capital structure; and

    (6)     any such other form of financial disclosure or credit-quality support information or enhancement reasonably requested by the Plan Administrator, in consultation with the Bid Consultation Parties, demonstrating that such Bidder has the ability to close the Sale Transaction.

(i)     Regulatory and Third Party Approvals:  A Bid must set forth each regulatory and third-party approval required for the Bidder to consummate the Sale Transaction, if any, and the time period within which the Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such

regulatory or third-party approval is expected to take more than thirty (30) days following execution and delivery of the Modified Purchase and Sale Agreement, those actions the Bidder will take to ensure receipt of such approval(s) as promptly as possible); *provided, however*, that the timing and likelihood of receiving any such regulatory and third-party approvals will be a consideration in determining the highest or otherwise best Bid.

(j)     <u>Contingencies</u>:  Each Bid may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence.

(k)     <u>Irrevocable</u>:  Each Bid must expressly provide that (1) the Bidder is prepared to consummate the transaction set forth in the Modified Purchase and Sale Agreement promptly following entry of the Sale Order and satisfaction of the closing conditions (if any) set forth in the Modified Purchase and Sale Agreement, and (2) the offer reflected in such Bid shall remain open and irrevocable until the conclusion of the Auction, *provided* that if such Bid is accepted as the Successful Bid or the Backup Bid (each as defined herein), such Bid shall continue to remain open and irrevocable as provided under "Closing the Auction; Successful Bidder" and "Backup Bidder" below.

(l)     <u>Time Frame for Closing</u>:  The Successful Bidder must close escrow on the purchase of the Madison Property within fifteen (15) days of entry of the order confirming the Sale.

(m)     <u>Acknowledgment</u>: Each Bid must include an acknowledgment and representation by an authorized person of the Bidder that the Bidder: (i) has had an opportunity to conduct any and all required due diligence regarding the Madison Property prior to making its offer; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Madison Property in making its Bid; (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Madison Property or the completeness of any information provided in connection therewith or with the Auction, except as expressly stated in the Modified Purchase and Sale Agreement; (iv) has authorization and approval necessary to close on the delivered Modified Purchase and Sale Agreement; (v) has an irrevocable financing commitment or cash on hand to consummate the proposed sale and pay the purchase price in cash; (vi) is not entitled to any break-up fee, or similar type of payment in connection with its Bid; (vii) has not and will not engage in any collusion with respect to any Bids, the Auction or the Sale; (viii) agrees to abide by the terms of the Madison Property Bidding Procedures; and (ix) after the conclusion of the Auction, if any, will not submit a Bid or seek to reopen the Auction.

(n)     <u>Bid Deadline</u>:  Each Bid must be received by each of the following parties, in writing, on or before **April 19, 2022 at 4:00PM CST** or such earlier date as may be designated by the Plan Administrator in consultation with the Consultation Parties (the "**Bid Deadline**"):  (i) counsel for the Plan Administrator, Burr &

Forman LLP, Attn: Derek Meek (dmeek@burr.com), Jeffrey T. Baker (jbaker@burr.com), Hanna Lahr (hlahr@burr.com), and James P. Roberts (jroberts@burr.com), Akin Gump Strauss Hauer & Feld LLP, Attn: Sarah Schultz (sschultz@akingump.com); and (ii) Real Estate Broker for the Plan Administrator, B. Riley Real Estate, LLC, Attn: Michael Jerbich (mjerbich@brileyfin.com). The Plan Administrator shall provide all Bids to the Bid Consultation Parties no later than twenty-four (24) hours prior to the Auction.

A Bid received from a Bidder on or before the Bid Deadline that meets the requirements set forth above for the Madison Property shall constitute a "**Qualified Bid**", and such Bidder shall constitute a "**Qualified Bidder**". The Stalking Horse PSA, subject to Bankruptcy Court approval, is deemed a Qualified Bid for all purposes, and the Stalking Horse Bidder is deemed to be a Qualified Bidder.

Notwithstanding anything else contained herein, the Prepetition Secured Creditors shall have the right, subject in all respects to the Bankruptcy Code and other applicable law and the satisfaction in cash or assumption of claims secured by senior liens, to credit bid all or any portion of their allowed secured claims at the Auction pursuant to Section 363(k) of the Bankruptcy Code or other applicable law, in accordance with the applicable terms of the Prepetition Credit Documents, and any such credit bid shall be deemed a Qualified Bid, subject to any and all applicable documents, including, but not limited to the Intercreditor Agreement, as well as the rights of any interested party as set forth in paragraph 9 of the Madison Property Bidding Procedures Order.

### Stalking Horse Bid

Recognizing the Stalking Horse Bidder's expenditure of time, energy and resources in connection with the proposed Sale Transaction set forth in the Stalking Horse PSA, and the benefit that those efforts provide to all interested parties, if, among other circumstances set forth in the Stalking Horse PSA, the Stalking Horse Bidder is not the Successful Bidder, the Plan Administrator will seek authority to pay the Stalking Horse Bidder the Break-Up Fee, which will be governed by the provisions of the Stalking Horse PSA and the Madison Property Bidding Procedures Order.

No party submitting a Bid shall be entitled to a break-up fee or any expense reimbursement except for the Bid Protections for the Stalking Horse Bidder that are approved by the Bankruptcy Court. Any substantial contribution claims by any Bidder are deemed waived.

### Highest or Otherwise Best Bid

Whenever these Madison Property Bidding Procedures refer to the highest or otherwise best Qualified Bid, such determination shall take into account any factors the Plan Administrator, in consultation with the Bid Consultation Parties, reasonably deems relevant to the value of the Qualified Bid to the estates and may include, but are not limited to: (i) the amount and nature of the consideration; (ii) the number, type, and nature of any changes to the Form PSA requested by such Qualified Bidder; (iii) the extent to which such modifications are likely to delay closing of the sale of the Madison Property and the cost to the Plan Administrator of such modifications or

delay; (iv) the likelihood of the Qualified Bidder being able to close the proposed transaction (including obtaining any required regulatory approvals) and the timing thereof; and (v) the net benefit to the Debtors' estates (collectively, the "**Bid Assessment Criteria**").

## Auction

If two (2) or more Qualified Bids for the Madison Property are received by the Bid Deadline, the Plan Administrator will conduct the Auction to determine the highest or otherwise best Qualified Bid. Only Qualified Bidders may participate in the Auction.

If no Qualified Bid for the Madison Property is received by the Bid Deadline (other than that of the Stalking Horse Bidder), the Plan Administrator, in consultation with the Consultation Parties, may, without further Order of the Bankruptcy Court, either cancel the Auction and seek approval of the transaction contemplated by the Stalking Horse PSA or extend the Bid Deadline and continue the Auction until a later date.

## Procedures for Auction

The Auction shall take place on **April 21, 2022 at 10:00AM CST** virtually via video-conferencing technology, or such other place and time as the Plan Administrator shall notify all Qualified Bidders and the Consultation Parties. The Auction shall be conducted according to the following procedures:

Only the Plan Administrator, the Consultation Parties, Stalking Horse Bidder, any other Qualified Bidders, and/or other party as the Plan Administrator may determine to include in its discretion, in each case along with its representatives and advisors, shall be entitled to attend the Auction (such attendance to be in person via video-conference) and only Qualified Bidders will be entitled to make any Overbids (as defined below) at the Auction.

*The Plan Administrator Shall Conduct the Auction.*

The Plan Administrator, together with or through its advisors, shall direct and preside over the Auction, which shall be transcribed. Other than as expressly set forth herein, the Plan Administrator (in consultation with the Consultation Parties or, to the extent provided herein, the Bid Consultation Parties) may conduct the Auction in the manner it determines will result in the highest or otherwise best offer for the Madison Property. The Plan Administrator shall use its best efforts to, at least twenty-four (24) hours prior to commencement of the Auction, provide each Qualified Bidder participating in the Auction with a complete and correct copy of the proposed purchase agreement (either the Stalking Horse PSA or the Modified Purchase and Sale Agreement) associated with the Qualified Bid deemed by the Plan Administrator to be the highest or otherwise best bid for the Madison Property (such highest or otherwise best Qualified Bid, the "**Auction Baseline Bid**"). At the start of the Auction, the Plan Administrator shall describe the material terms of the Auction Baseline Bid and each Qualified Bidder participating in the Auction must confirm that (a) it has not engaged in any collusion with respect to the bidding or sale of the Madison Property described herein, (b) it has reviewed, understands, and accepts the Madison Property Bidding Procedures, (c) it has consented to the core jurisdiction of the Bankruptcy Court

(as described more fully below), and (d) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder.

*Terms of Overbids.*

An "**Overbid**" is any bid made at the Auction, in accordance with the requirements set forth herein, subsequent to the Plan Administrator's announcement of the respective Auction Baseline Bid. To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

(a) <u>Minimum Overbid Increments</u>: The initial Overbid, if any, shall provide for total consideration to the Plan Administrator with a value that exceeds the value of the consideration under the Auction Baseline Bid by an incremental amount that is not less than the sum of (x) $30,000, plus (y) the aggregate amount of any other Bid Protections, without duplication, under the Stalking Horse PSA, and each successive Overbid shall exceed the then-existing Overbid by an incremental amount that is not less than the Minimum Overbid Increment. In considering the value of any Overbid, the Plan Administrator shall take into account the effect of the Bid Protections. If the Stalking Horse Bidder bids at the Auction, it will be entitled to "credit" in the amount of the applicable Bid Protections to be counted towards its Bid such that the cash and/or non-cash consideration proposed by it plus the applicable Bid Protection "credit" must exceed the then-existing Overbid by an incremental amount that is not less than the Minimum Overbid Increment. The Plan Administrator reserves the right, in consultation with the Bid Consultation Parties, to announce reductions or increases in the Minimum Overbid Increment at any time during the Auction. Additional consideration in excess of the amount set forth in the respective Auction Baseline Bid may include (i) cash and/or non-cash consideration, *provided*, *however*, that the value for such non-cash consideration shall be determined by the Plan Administrator in its reasonable business judgment in consultation with the Bid Consultation Parties (considering factors that include the proposed terms thereof and the creditworthiness of the Bidder) and the Plan Administrator reserves the right to adjust the value of or reject any such non-cash consideration, *provided further* that the Bid Consultation Parties reserve the right to object to the Plan Administrator's determination and such dispute may be resolved by the Court at the Sale Hearing, and (ii) in the case of a Bid by the Prepetition Secured Creditors, a credit bid of up to the full amount of such secured creditors' allowed secured claim, subject to the Bankruptcy Code and other applicable law and the satisfaction in cash or assumption of claims secured by senior liens, *provided* that such Bid otherwise complies with the requirements set forth herein and subject to the rights of any interested party as set forth in paragraph 9 of the Madison Property Bidding Procedures Order.

(b) <u>Remaining Terms Are the Same as for Qualified Bids</u>: Except as modified herein, an Overbid at the Auction must comply with the conditions for a Qualified Bid set forth above, *provided, however*, that the Bid Deadline shall not apply. Any Overbid must include, in addition to the amount and the form of consideration of the Overbid, a description of all changes requested by the Bidder to the Stalking Horse

PSA or Modified Purchase and Sale Agreement, as the case may be, in connection therewith. For the avoidance of doubt, any Overbid shall be irrevocable and shall remain open and binding on the Bidder in accordance with these Madison Property Bidding Procedures and the conditions for a Qualified Bid.

At the Plan Administrator's discretion, to the extent not previously provided, a Bidder submitting an Overbid at the Auction must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Plan Administrator), as the Plan Administrator, in its reasonable business judgment in consultation with the Bid Consultation Parties, may request, demonstrating such Bidder's ability to consummate the Sale Transaction proposed by such Overbid.

*Announcement and Consideration of Overbids.*

(a) <u>Announcement of Overbids</u>: A Bidder submitting an Overbid at the Auction shall announce at the Auction the material terms of such Overbid, including the total amount and type of consideration offered in such Overbid.

(b) <u>Consideration of Overbids</u>: The Plan Administrator reserves the right, in its reasonable business judgment in consultation with the Consultation Parties, to make one or more continuances of the Auction to, among other things: facilitate discussions between the Plan Administrator and individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; and give Qualified Bidders the opportunity to provide the Plan Administrator with such additional evidence as the Plan Administrator, in its reasonable business judgment in consultation with the Bid Consultation Parties, may require, that the Qualified Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed Sale Transaction at the prevailing Overbid amount; *provided* that, to the extent the Plan Administrator determines to request that any Qualified Bidder increase the amount of their Good Faith Deposit, the Plan Administrator first shall consult with the Bid Consultation Parties before making such request.

*Additional Procedures.*

The Plan Administrator (in consultation with the Bid Consultation Parties), in the exercise of its fiduciary duties for the purpose of maximizing value for the Debtors' estates from the sale process, may modify the Madison Property Bidding Procedures and implement additional procedural rules for conducting the Auction without further Order of the Bankruptcy Court.

*Consent to Jurisdiction as Condition to Bidding.*

All Qualified Bidders shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court to enter an order or orders, which shall be binding in all respects, in any way related to the Plan Administrator, the Debtors, the Chapter 11 Cases, the Madison Property Bidding Procedures, the applicable purchase and sale agreement, the Auction, or the construction and

enforcement of documents relating to the Sale Transaction and waived any right to a jury trial in connection with any disputes relating to the foregoing.

*Sale Is As Is/Where Is.*

The Madison Property shall be sold free and clear of all liens claims and encumbrances as permitted by Section 363(f) of the Bankruptcy Code other than any Permitted Liens and Assumed Liabilities and conveyed at Closing in its then-present condition, "**AS IS, WHERE IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED**", except to the extent set forth in the definitive agreement for the Successful Bid, if applicable.

*Closing the Auction; Successful Bidder.*

The Auction shall continue until there is only one (1) Qualified Bid for the Madison Property that the Plan Administrator determines in its reasonable business judgment, in consultation with the Bid Consultation Parties, is the highest or otherwise best Qualified Bid, as applicable, at the Auction. Thereafter, the Plan Administrator shall select such Qualified Bid, in consultation with the Bid Consultation Parties, as the overall highest or otherwise best Qualified Bid (such Bid, the "**Successful Bid**," and the Bidder submitting such Successful Bid, the "**Successful Bidder**"). In making this decision, the Plan Administrator shall consider the Bid Assessment Criteria.

The Auction shall close when the Successful Bidder submits fully executed sale and transaction documents memorializing the terms of the Successful Bid.

Promptly following the Plan Administrator's selection of the Successful Bid and the conclusion of the Auction, the Plan Administrator shall announce the Successful Bid and Successful Bidder and shall file with the Bankruptcy Court notice of the Successful Bid and Successful Bidder.

The Successful Bidder shall be required to keep the Successful Bid open and irrevocable until the closing of the transactions contemplated thereby. The sale and transaction documents approved by the Bankruptcy Court pursuant to the Sale Order shall be irrevocable and enforceable against the Successful Bidder.

*Backup Bidder.*

Notwithstanding anything in the Bidding Procedures to the contrary, the Qualified Bid for the Madison Property that the Plan Administrator determines in its reasonable business judgment, in consultation with the Bid Consultation Parties, is the next highest or otherwise best Qualified Bid with respect to the Madison Property, as applicable, at the Auction after the Successful Bid, will be designated as the "**Backup Bid**" and the Bidder submitting such Backup Bid, the "**Backup Bidder**." The Backup Bidder shall be required to keep the Backup Bid open and irrevocable until the earlier of 5:00PM (prevailing Central Time) on the date that is sixty (60) days after the date of entry of the Sale Order (the "**Outside Backup Date**") or the closing of the transaction with the Successful Bidder.

Following entry of the Sale Order, if the Successful Bidder fails to consummate the Successful Bid, the Plan Administrator may, in consultation with the Bid Consultation Parties, designate the applicable Backup Bid to be the new Successful Bid and the Backup Bidder to be the new Successful Bidder, and the Plan Administrator will be authorized, but not required, to consummate the transaction with the Backup Bidder without further order of the Bankruptcy Court. In such case of a breach or failure to perform on the part of the Successful Bidder, the defaulting Successful Bidder's deposit shall be forfeited to the Plan Administrator. The Plan Administrator specifically reserves the right to seek all available damages, including specific performance, from any defaulting Successful Bidder (including any Backup Bidder designated as a Successful Bidder) in accordance with the terms of the Madison Property Bidding Procedures.

## Return of Good Faith Deposits

The Good Faith Deposits of any Successful Bidder, whether made to the Plan Administrator or the Title Company, shall, absent a breach of the Modified Purchase and Sale Agreement submitted by such Successful Bidder, be credited towards the purchase price set forth in the Successful Bid.

The Good Faith Deposit of the Backup Bidder, if any, shall be returned to the Backup Bidder not later than three (3) business days after (i) the closing of the transaction with the Successful Bidder for the Madison Property bid upon by the Backup Bidder and (ii) the Outside Backup Date; *provided*, *however*, that if the Backup Bid becomes the Successful Bid as provided herein, any subsequent breach or failure to perform by the Backup Bidder may result in the forfeiture of the Good Faith Deposit of the Backup Bidder to the Plan Administrator.

The Good Faith Deposit of any Qualified Bidder that is neither the Successful Bidder, nor the Backup Bidder, shall be returned to such Qualified Bidder not later than seven (7) days after the Sale Hearing. Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that may have accrued thereon. The provisions of the Stalking Horse PSA shall control the terms of the deposit advanced by the Stalking Horse Bidder.

The Good Faith Deposits of all Qualified Bidders shall not become property of the Debtors' estates; *provided*, *however*, that the Good Faith Deposits of any Successful Bidder (including any Backup Bidder that becomes a Successful Bidder) may be forfeited to the Plan Administrator in the instance of a breach of the Modified Purchase and Sale Agreement or credited towards the purchase price set forth in the Successful Bid, in either case as provided in these Madison Property Bidding Procedures.

## The Consultation Parties

The Plan Administrator shall consult with lenders and agents under the Exit Term Loan Agreement, including Franklin Advisers, Inc., Franklin Managed Entities, together with the remaining Prepetition Secured Creditors, which parties shall be collectively referred to as the "**Consultation Parties**" and each, a "**Consultation Party**"; *provided*, *however*, that, in certain circumstances as set forth in these Madison Property Bidding Procedures, the Plan Administrator shall consult only with the Bid Consultation Parties (as defined below). The "**Bid Consultation Parties**" shall be all Consultation Parties other than any Consultation Party that submits a Bid or

has a Bid submitted on its behalf for so long as such Bid remains open. For the avoidance of doubt, the Plan Administrator's obligation to consult with a Consultation Party or a Bid Consultation Party, as applicable, shall be discharged through consultation solely with respective counsel to any Consultation Party or Bid Consultation Party; *provided, however*, that where a Consultation Party or Bid Consultation Party, is represented by an agent, the Plan Administrator's obligation to consult shall be discharged through consultation solely with counsel for any such party.

## Reservation of Rights of the Plan Administrator

Except as otherwise provided in these Madison Property Bidding Procedures or the Madison Property Bidding Procedures Order, the Plan Administrator further reserves the right, in its reasonable business judgment in consultation with the Consultation Parties or, to the extent provided herein, the Bid Consultation Parties to: (i) determine which bidders are Qualified Bidders; (ii) determine which Bids are Qualified Bids; (iii) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (iv) reject, at any time prior to the closing of the Auction or, if no Auction is held, at any time prior to entry of the Sale Order, any Bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of these Madison Property Bidding Procedures, the requirements of the Bankruptcy Code, or (c) contrary to the best interests of the Plan Administrator, the Debtors, and the Debtors' estates; (v) waive terms and conditions set forth herein with respect to all potential bidders; (vi) impose additional terms and conditions; (vii) extend the deadlines set forth herein; (viii) continue or cancel the Auction and/or Sale Hearing in open court, or by filing a notice on the docket of the Debtors' Chapter 11 cases, without further notice or Bankruptcy Court Order; (ix) include any other party as a Consultation Party and attendee at the Auction; and (x) modify the Madison Property Bidding Procedures and implement additional procedural rules for conducting the Auction so long as such rules are not inconsistent in any material respect with the Bankruptcy Code, the Madison Property Bidding Procedures Order, or any other order of the Court.

**<u>Exhibit 1-A</u>**

**Confidentiality Agreement**

## CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT

This Confidentiality and Non-Disclosure Agreement (this "**Agreement**") is dated [●], by and among Gene Davis, as Plan Administrator for Remington Outdoor Company, Inc. (the "**Plan Administrator**"), and its affiliated debtors and debtors-in-possession (collectively, the "**Debtors**") in the chapter 11 cases (the "**Chapter 11 Cases**") proceeding under Chapter 11 of Title 11, United States Code, 11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy Code**") before the United States Bankruptcy Court for the Northern District of Alabama (the "**Bankruptcy Court**"), jointly administered under Case No. 20-81688 (the "**Bankruptcy Cases**"), and [●] (the "**Potential Purchaser**"). The Plan Administrator and the Potential Purchaser are each sometimes individually referred to herein as a "Party" and collectively referred to herein as the "Parties".

**WHEREAS**, the Debtors commenced the Bankruptcy Cases on July 27, 2020;

**WHEREAS**, the Plan Administrator is negotiating with interested parties regarding the possible sale of that certain real property located at 870 Remington Drive, Madison, North Carolina 27025, together with all Land, Improvements, and Appurtenance, related thereto (the "**Madison Property**") to maximize value for the Debtors' estates to be conducted in a manner consistent with the Madison Property Bidding Procedures (the "**Madison Property Bidding Procedures**"), which were approved by the Bankruptcy Court pursuant to that certain *Order Granting Plan Administrator's Motion for Leave to Conduct Second Sale of Non-Residential Real Estate in Accordance with Existing Findings of Fact, Conclusions of Law, and Order Modifying and Confirming the Joint Chapter 11 Plan of the Debtors, the Official Committee of Unsecured Creditors, and Exit Term Loan Lenders* [Dkt. No. ●];[4]

**WHEREAS**, the Potential Purchaser is potentially interested in purchasing the Madison Property (the "**Sale Transaction**");

**WHEREAS**, the Potential Purchaser and the Plan Administrator desire to discuss matters concerning the Sale Transaction; and

**WHEREAS**, during the course of these discussions, it may be necessary for the Plan Administrator to disclose to the Potential Purchaser certain Confidential Information (as defined below) which is proprietary and highly confidential, the disclosure of which will result in substantial and irreparable harm to the Debtors or Plan Administrator, as applicable, which harm may be extremely difficult to quantify.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements contained herein, including the disclosure of Confidential Information, and intending to be legally bound hereby, the Parties agree as follows:

In connection with the Potential Purchaser's consideration of the Sale Transaction, the Potential Purchaser has requested nonpublic, confidential and/or proprietary information concerning the Madison Property. As a condition to the Potential Purchaser being furnished with such information, the Potential Purchaser (i) agrees to treat any information concerning the Madison

---

[4]  Capitalized terms used herein without definition have the meanings given to them in the Madison Property Bidding Procedures.

Property that is furnished by or on behalf of the Plan Administrator to the Potential Purchaser or its directors, officers, partners, employees, affiliates, subcontractors, attorneys, consultants, accountants, auditors, advisors, agents, financing sources, or any other representatives (collectively, the "**Representatives**"), on or after the date hereof and regardless of the manner in which it is furnished (whether disclosed orally or disclosed or accessed in written, electronic or other form or media, and whether or not marked, designated, or otherwise identified as "confidential"), including, without limitation, business and strategic plans, analyses, compilations, forecasts, financial projections, studies, contracts, licenses, other business arrangements, or other documents or records prepared by the Potential Purchaser, any of its Representatives to the extent that such analyses, compilations, studies, documents or records contain or otherwise reflect or are generated from such information (hereinafter collectively referred to as the "**Confidential Information**"), in accordance with the provisions of this Agreement and (ii) hereby acknowledge the confidential and proprietary nature of the Confidential Information.

The term "Confidential Information" also includes any terms, conditions or other facts with respect to the Sale Transaction and the status thereof; but does not include information that (a) was or becomes generally available to the public other than as a result of a disclosure by the Potential Purchaser or its Representatives in breach of this Agreement, (b) was or becomes available to the Potential Purchaser or its Representatives on a non-confidential basis from a source other than the Plan Administrator or its representatives, provided that such source is not known to the Potential Purchaser or its Representatives to be bound by a confidentiality agreement with the Plan Administrator or otherwise prohibited from transmitting the information to the Potential Purchaser or its Representatives by a contractual, legal or fiduciary obligation, (c) was within the Potential Purchaser's possession or the possession of its Representatives prior to its being furnished to the Potential Purchaser or its Representatives by or on behalf of the Plan Administrator; provided that the source of such information was not known to the Potential Purchaser or its Representatives to be bound by a confidentiality agreement with the Plan Administrator or otherwise prohibited from transmitting the information to the Potential Purchaser or its Representatives by a contractual, legal or fiduciary obligation owed to the Plan Administrator, or (d) was independently developed by the Purchaser or its Representatives without reference to the Confidential Information or information from a source known to the Potential Purchaser or its Representatives to be bound by a confidentiality agreement with the Plan Administrator or otherwise prohibited from transmitting the information to the Potential Purchaser or its Representatives by a contractual, legal or fiduciary obligation owed to the Plan Administrator. Any combination of Confidential Information shall not be deemed to be within the foregoing exceptions because individual features of the Confidential Information are in the public domain.

1. **Restrictions on Disclosure and Use.** The Potential Purchaser hereby agrees that the Confidential Information will be used solely for the purpose of evaluating the Sale Transaction and not used for any other purpose, and that such Confidential Information will be kept confidential by the Potential Purchaser and, except as otherwise provided in this Agreement, will not be disclosed to any person other than its Representatives who need to know such information for the purpose of evaluating, negotiating and/or participating in discussions with the Plan Administrator relating to the Sale Transaction (it being understood that, prior to any such disclosure, such Representatives shall have been informed by the Potential Purchaser of the confidential and proprietary nature of the Confidential Information, advised of this Agreement, instructed to comply with the provisions hereof and instructed that they are under a duty of confidentiality to

the Plan Administrator with respect to the Confidential Information). The Potential Purchaser agrees to undertake reasonable precautions, at its sole expense, to safeguard and protect the Confidential Information. The Potential Purchaser agrees that, to the extent its Representatives do not enter into a separate confidentiality agreement with the Plan Administrator, the Potential Purchaser shall be liable for any disclosure or use of the Confidential Information by its Representatives inconsistent with the provisions of this Agreement, provided that the Potential Purchaser shall not be responsible for any such breach by any such third-party Representative who has signed a joinder to this Agreement or a separate undertaking to abide by the terms of this Agreement.

In the event that the Potential Purchaser or any of its Representatives are requested or required by law, rule, regulation or legal or regulatory process (including, but not limited to, by oral questions, interrogatories, requests for information or documents, subpoena, civil investigative demand, court order, deposition, administrative proceeding, inspection, audit, any formal or informal investigation by any government or governmental agency or authority or other legal, governmental, self-regulatory or regulatory process or other process) to disclose any Confidential Information, it is agreed that the Potential Purchaser will, or will cause its Representatives to (to the extent permitted by law, regulation, rule, or legal or regulatory process), provide the Plan Administrator with prompt written notice as soon as practicable (including by electronic mail) of any such request or requirement (including by mail, if practicable) so that the Plan Administrator may seek (at the Plan Administrator sole cost and expense) a protective order or other remedy as the Plan Administrator deems appropriate, and the Potential Purchaser will, and will direct its Representatives to, reasonably consult and cooperate with the Plan Administrator in seeking any such remedy (at the Plan Administrator sole expense). If, in the absence of a protective order or other remedy or the receipt of a waiver, the Potential Purchaser reasonably determines, upon the written opinion of its counsel (a copy of which shall be provided to the Plan Administrator), that the Potential Purchaser is compelled to disclose Confidential Information, the Potential Purchaser may disclose that portion of the Confidential Information that such counsel advises that the Potential Purchaser is compelled to disclose. Notwithstanding anything to the contrary herein, without prior notice to the Plan Administrator, the Potential Purchaser and its Representatives may disclose Confidential Information to governmental bodies with regulatory oversight over the Potential Purchaser in connection with a routine examination of the Potential Purchaser by such governmental bodies if such audit or request is not specifically related to the Plan Administrator, the Confidential Information or the Sale Transaction.

Except in accordance with the preceding paragraph, the Potential Purchaser and its Representatives may not disclose Confidential Information in the course of any litigation, arbitration, court proceeding or other legal action involving the Plan Administrator; provided that nothing in this Agreement shall prevent or limit its right to seek or obtain any information from the Plan Administrator through subpoena, formal discovery or other process, even if such materials were previously disclosed or released to the Potential Purchaser or its Representatives as Confidential Information, or prevent or limit any right of the Plan Administrator to object to any such subpoena, formal discovery or other process.

2. **No Warranty**. The Potential Purchaser agrees that it is responsible for its own due diligence relating to the Sale Transaction. The Potential Purchaser understands and acknowledges that any and all information contained in the Confidential Information is being provided without

any representation or warranty, express or implied, as to the accuracy or completeness of the Confidential Information, on the part of the Plan Administrator or its Representatives. The Plan Administrator acknowledges and agrees that nothing in this Agreement creates or is intended to create any fiduciary obligation or duty by the Potential Purchaser to, or any fiduciary relationship between, the Plan Administrator and the Potential Purchaser or any other party. The Potential Purchaser agrees that neither the Plan Administrator nor its representatives shall have any liability to the Potential Purchaser or any of its Representatives by virtue of this Agreement.

3. **Ownership and Return of Confidential Information**. All Confidential Information disclosed by the Plan Administrator shall be and shall remain the property of the Plan Administrator. The Plan Administrator may, in its sole discretion, elect at any time to terminate access by the Potential Purchaser to the Confidential Information. In the event that the Plan Administrator, in its sole discretion, requests in writing (including by electronic mail) at any time, the Potential Purchaser shall, promptly following notification or request from the Plan Administrator, return or destroy, at the Plan Administrator's option, all Confidential Information in its possession or in the possession of its Representatives. Notwithstanding the foregoing, the Potential Purchaser and its Representatives shall be entitled to keep one archival copy of Confidential Information (whether physical or electronic) in its or their records if required to comply with legal, professional, compliance and regulatory standards or requirements, or such archival copies were created as a result of automatic electronic back-up procedures. Any Confidential Information that is not returned or destroyed shall remain subject to the confidentiality obligations set forth in this Agreement. Upon the Plan Administrator's written request, the Potential Purchaser will confirm in writing its compliance with the terms of this Section 3.

4. **No Obligation**. The Potential Purchaser agrees that unless and until a definitive agreement regarding the Sale Transaction between the Plan Administrator and the Potential Purchaser has been duly executed, neither the Plan Administrator nor the Potential Purchaser will be under any legal obligation of any kind whatsoever with respect to such a transaction by virtue of this Agreement except for the matters specifically agreed to in this Agreement.

The Potential Purchaser acknowledges receipt of the Madison Property Bidding Procedures. Except as otherwise provided in the Stalking Horse PSA, the Madison Property Bidding Procedures or the Madison Property Bidding Procedures Order, the Plan Administrator further reserves the right, in its reasonable business judgment in consultation with the Consultation Parties or, to the extent provided in the Madison Property Bidding Procedures, the Bid Consultation Parties to: (i) determine which bidders are Qualified Bidders; (ii) determine which Bids are Qualified Bids; (iii) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (iv) reject, at any time prior to the closing of the Auction or, if no Auction is held, at any time prior to entry of the Sale Order, any Bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of these Madison Property Bidding Procedures or the requirements of the Bankruptcy Code, or (c) contrary to the best interests of the Debtors and their estates; (v) waive terms and conditions set forth in the Madison Property Bidding Procedures with respect to all potential bidders; (vi) impose additional terms and conditions; (vii) extend the deadlines set forth in the Madison Property Bidding Procedures; (viii) continue or cancel the Auction and/or Sale Hearing in open court, or by filing a notice on the docket of the Chapter 11 cases, without further notice; (ix) include any other party as a Consultation Party and attendee at the Auction; and (x)

modify the Madison Property Bidding Procedures and implement additional procedural rules for conducting the Auction so long as such rules are not inconsistent in any material respect with the Bankruptcy Code, the Madison Property Bidding Procedures Order, or any other order of the Court.

5. **Compliance with Laws**. The Potential Purchaser acknowledges that it is aware that provisions of the United States federal securities laws and other applicable securities laws may restrict any person who has material nonpublic information about a company or any of its affiliates from purchasing or selling securities of such company or any of its affiliates, or from communicating such information to any other person under circumstances in which it is reasonably foreseeable that such person is reasonably likely to purchase or sell such securities. The Potential Purchaser acknowledges and agrees that it understands such laws as they relate to the Debtors' securities and the Confidential Information.

6. **Remedies**. The Potential Purchaser acknowledges and agrees that due to the unique nature of the Confidential Information, any breach of this Agreement may cause irreparable harm to the Debtors or Plan Administrator, as applicable, for which damages may not be an adequate remedy and that the Plan Administrator shall be entitled to seek specific performance and injunctive or other equitable relief as a remedy for any such breach, and the Potential Purchaser further agrees to waive any requirement for the securing or posting of any bond in connection with such remedy; provided that nothing in this Agreement shall waive or prohibit any party hereto from seeking or enforcing any other remedies available in law or equity in the event of a breach or threatened breach of this Agreement. Such remedy shall not be deemed to be the exclusive remedy for breach of this Agreement but shall be in addition to all other remedies available at law or equity to the Plan Administrator.

7. **Waiver**. No failure or delay in exercising any right, power or privilege hereunder will operate as a waiver thereof, nor will any single or partial exercise thereof preclude any exercise of any right, power or privilege hereunder.

8. **Governing Law; Jurisdiction; Waiver of Trial by Jury**. This Agreement, and all controversies arising from or relating to performance under this Agreement, shall be governed by and construed in accordance with the laws of the State of Delaware, regardless of the laws that might otherwise govern under applicable principles of conflicts of law thereof. The Potential Purchaser agrees to submit to the jurisdiction of the Bankruptcy Court to resolve any dispute relating to this Agreement and waive any right to move to dismiss or transfer any such action brought in any such court on the basis of any objection to personal jurisdiction or venue. **ANY RIGHTS TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM, ACTION OR PROCEEDING, DIRECTLY OR INDIRECTLY, ARISING OUT OF, OR RELATING TO, THIS AGREEMENT ARE WAIVED BY EACH PARTY.**

9. **Complete Agreement; Amendment; Assignment.** This Agreement is a complete statement of all of the agreements between the parties hereto with respect to its subject matter and supersedes all previous agreements, discussions, negotiations and understandings between them concerning its subject matter. No modification of this Agreement or waiver of the terms and conditions hereof will be binding unless approved in writing by each of the parties or otherwise in accordance with the terms of this Agreement. It is understood that the terms of access contained in

any data room or website provided or arranged by the Plan Administrator or on the Plan Administrator's behalf shall be superseded by the understandings and agreements contained in this Agreement. Neither party shall assign this Agreement without the prior written consent of the other party, and any assignment without such prior written consent shall be void, provided that notwithstanding anything to the contrary in this Agreement, the Plan Administrator may assign this Agreement to the Successful Bidder and/or cause them to become a party to this Agreement without such prior written consent upon the consummation of an acquisition pursuant to the Madison Property Bidding Procedures and such Successful Bidder will be entitled to all of the same rights afforded to the Plan Administrator under this Agreement.

10. **Term**. This Agreement may be terminated upon ten (10) days' prior written notice to the other party; provided that such notice, if delivered to the Plan Administrator, must be delivered to Counsel for the Plan Administrator, Burr & Forman LLP, Attn: Derek F. Meek (dmeek@burr.com), Akin Gump Strauss Hauer & Feld LLP, Attn: Sarah L. Schultz (sschultz@akingump.com) (and, if assigned with the consent of the Plan Administrator or if the Successful Bidder is made party to the Agreement in accordance with Section 9, a director or executive officer of the Successful Bidder). The Potential Purchaser's obligations hereunder shall remain in effect and shall survive the termination or expiration of this Agreement for a period of twenty-four (24) months following the termination of this Agreement, unless otherwise agreed to in writing by the Plan Administrator.

11. **Expenses**. The Potential Purchaser acknowledges that it will be solely responsible for, and bear all of, its expenses and costs, including without limitation, expenses of legal counsel, accountants, other representatives and advisors, incurred at any time in connection with evaluating the Confidential Information and the Sale Transaction.

12. **Miscellaneous.** This Agreement may be executed by facsimile, email and in two or more counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement. The words "execution," "signed," "signature," "delivery," and words of like import in or relating to this Agreement or any document to be signed in connection with this Agreement are deemed to include electronic signatures, deliveries or the keeping of records in electronic form, each of which shall be of the same legal effect, validity or enforceability as a manually executed signature, physical delivery thereof or the use of a paper-based recordkeeping system, as the case may be, and the parties hereto consent to conduct the transactions contemplated hereunder by electronic means.

*(Signature page follows)*

IN WITNESS WHEREOF, the undersigned have executed and delivered this Confidentiality and Non-Disclosure Agreement as of the date first above written.

**GENE DAVIS, CHAPTER 11 PLAN ADMINISTRATOR FOR REMINGTON OUTDOOR COMPANY, INC., FGI OPERATING COMPANY, LLC, FGI HOLDING COMPANY, LLC, BARNES BULLETS, LLC, REMINGTON ARMS COMPANY, LLC, RA BRANDS, L.L.C., OUTDOOR SERVICES, LLC, FGI FINANCE INC., HUNTSVILLE HOLDINGS LLC, TMRI, INC., REMINGTON ARMS DISTRIBUTION COMPANY, LLC, 32E PRODUCTIONS, LLC, GREAT OUTDOORS HOLDCO, LLC**

By:

Name: Gene Davis

Title: Plan Administrator

_____

[_____],

as Potential Purchaser

By: _____

Name:_____

Title: _____