# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Case No.: 20-81688-CRJ11 |
| REMINGTON OUTDOOR ) | |
| COMPANY, INC., *et al.*,[1] ) | Chapter 11 |
| ) | |
| ) | Jointly Administered |
| Debtors. ) | |
| ) | |

## IRONSHORE'S MOTION FOR APPROVAL OF
## SETTLEMENT PAYMENT TO THE SANDY HOOK FAMILIES

Ironshore Specialty Insurance Company ("Ironshore") hereby moves, pursuant to the Confirmation Order in this case,[2] for entry of an order, substantially in the form attached hereto as Exhibit 1, approving a settlement payment to the Sandy Hook Families[3] by the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405) (collectively, the "Debtors").

[2] *Findings of Fact, Conclusions of Law, and Order Modifying and Confirming the Joint Chapter 11 Plan of the Debtors, the Official Committee of Unsecured Creditors, and Exit Term Lenders*, Dkt. No. 1658 (the "Confirmation Order").

[3] "Sandy Hook Families" means, collectively, the following, who are all of the plaintiffs in the *Soto* Action (as defined below): Donna L. Soto, as Administratrix of the Estate of Victoria Leigh Soto; Ian and Nicole Hockley, as Co-Administrators of the Estate of Dylan Christopher Jack Hockley; David C. Wheeler, Administrator of the Estate of Benjamin A. Wheeler; Mary A. D'Avino, as Administratrix of the Estate of Rachel Marie D'Avino a/k/a Rachel M. D'Avino; Mark and Jacqueline Barden, as Co-Administrators of the Estate of Daniel G. Barden; William D. Sherlach, as Executor of the Estate of Mary Joy Sherlach, and William D. Sherlach, individually; Neil Heslin and Scarlett Lewis, as Co-Administrators of the Estate of Jesse McCord Lewis; Veronique de la Rosa and Leonard Pozner, as Co-Administrators of the Estate of Noah Samuel Pozner; and Gilles J. Rousseau, as Administrator of the Estate of Lauren G. Rousseau.

Insurers.[4]  All of the Sandy Hook Families, all of the Insurers, and the Plan Administrator consent to the granting of this Motion.[5]

In support of this Motion, Ironshore respectfully represents as follows:

### The Plan and Confirmation Order

1. On January 25, 2021, the Debtors filed the Plan.  Article III.B.7 of the Plan provides that "each holder of an Allowed Tort Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for each Allowed Tort Claim, a beneficial interest in the Tort Claim Sub-Trust [ ] reflecting a right to receive such holder's respective share of the proceeds of the GL Insurance Assets providing coverage applicable to such Tort Claim as may be determined pursuant to the terms and conditions of the Plan."

2. On March 12, 2021, the Bankruptcy Court entered the Confirmation Order, which confirmed the Plan.  To effectuate the treatment provided to holders of Allowed Tort Claims under the Plan, Paragraph 93 of the Confirmation Order provides that each holder of a Class 7 Tort Claim under the Plan "shall have the right to be automatically granted, without any further action by the Bankruptcy Court, relief from the automatic stay and any plan injunction arising under the Plan or this Confirmation Order solely to proceed with litigating the cause(s) of action giving rise to such Class 7 Tort Claim (each, a 'Tort Action') and obtaining a judgment thereon" by filing a "Stay Relief Notice."  Under the Confirmation Order, should the holder of a Tort Claim file a Stay Relief Notice to liquidate their applicable Tort Claims in order

---

[4] "Insurers" means, collectively, Ironshore, James River Insurance Company, ACE Property and Casualty Insurance Company, and North American Capacity Insurance Company.

[5] All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the *Joint Chapter 11 Plan of the Debtors, the Official Committee of Unsecured Creditors, and Exit Term Loan Lenders* [Dkt. No. 1658-1] (the "Plan"), which was confirmed by the Confirmation Order.

to pursue their beneficial interest in the Tort Claim Sub-Trust, the automatic stay under Bankruptcy Code § 362 and/or the injunctions provided under the Plan would be deemed lifted as to that claimant 45 days after the Stay Relief Notice was filed with the Bankruptcy Court.

3. Paragraph 98 of the Confirmation Order requires that any settlement payment exceeding $2 million by one or more of Debtors' insurers to the holder of a Tort Claim "remains subject to notice and a hearing in the Bankruptcy Court to allow the Bankruptcy Court to consider the impact of the payment on the Debtors' remaining GL Insurance Assets and other Tort Claims . . . covered by the same policies." In pertinent part, paragraph 98 provides:

> Any settlement payment from the GL Insurance Assets to any holder of a Tort Claim (other than Tort Convenience Class Claims) in excess of two million dollars ($2,000,000) remains subject to notice and a hearing in the Bankruptcy Court to allow the Bankruptcy Court to consider the impact of the payment on the Debtors' remaining GL Insurance Assets and other Tort Claims (other than Tort Convenience Class Claims) covered by the same policies. Subject to the immediately preceding sentence, liability indemnity payments from GL Insurance Assets will be paid directly by insurers to the applicable Tort Claimant, not to the Plan Administrator or the ROC Liquidation Estates.

4. Pursuant to the Settlement Agreement, the Insurers are obligated to pay the Sandy Hook Families the Settlement Amount (as defined below), which exceeds $2 million. As such, payment of the Settlement Amount is subject to approval by this Court pursuant to Paragraph 98 of the Confirmation Order.

**The *Soto* Action and the Settlement Agreement**

5. The Sandy Hook Families comprise all of the plaintiffs in a lawsuit titled *Soto, et al., v. Bushmaster Firearms Int'l, LLC, et al.*, No. UWY-CV15-6050025-S (Connecticut Superior Court, Judicial District of Waterbury at Waterbury) (the "*Soto* Action"). Among the

- 3 -

Remington Defendants,[6] who are all of the defendants in the *Soto* Action, Remington Outdoor Company, Inc. and Remington Arms Company, LLC were Debtors in the above-captioned Chapter 11 case. The other Remington Defendants had been, at various times, merged into one or more of the Debtors.

6. The Sandy Hook Families all filed Stay Relief Notices with the Bankruptcy Court on March 16, 2021. In accordance with the Plan and Paragraph 93 of the Confirmation Order, the Plan injunction was lifted as to the *Soto* Action, effective April 30, 2021, for the limited purpose of permitting the Sandy Hook Families to liquidate their Tort Claims and to effectuate the treatment provided to Class 7 Tort Claim(s) under the Plan, which, for the avoidance of doubt, is a beneficial interest in the Tort Claim Sub-Trust reflecting a right to receive their respective share of the proceeds of the GL Insurance Assets providing coverage applicable to such Tort Claims.

7. On February 14, 2022, the Sandy Hook Families, the Insurers, and the Plan Administrator entered into a Settlement Agreement that resolves, among other things, the *Soto* Action and any future disputes concerning the existence and scope of each Insurer's obligations, including any obligation to provide insurance coverage, with respect to the claims asserted in the *Soto* Action, on the terms set forth in this Agreement. The settlement between the Insurers and the Sandy Hook Families has the following relevant terms:[7]

---

[6] "Remington Defendants" means, collectively, the following, who are all of the defendants in the *Soto* Action: Bushmaster Firearms; Bushmaster Firearms, Inc.; Bushmaster Firearms International, LLC; Remington Arms Company, LLC; Bushmaster Holdings, LLC; Freedom Group, Inc.; and Remington Outdoor Company, Inc.

[7] The description of the settlement set forth herein is not intended to, and shall not be deemed to, amend, modify, or waive any of the terms or conditions of the Settlement Agreement, which shall control in all respects with respect to its terms. The Settlement Agreement is, by its

a. Each of the Insurers shall pay its full, remaining available limits of liability under each of the Policies (as defined herein), totaling either $73.0 million or $73.5 million, to the Sandy Hook Families, depending on whether James River becomes obligated to pay $500,000 to Ms. Precious Seguin (such amounts, the "Settlement Amount"). James River shall reserve $500,000, which shall be paid (i) to Ms. Seguin, if the Fifth Circuit affirms a lower court's grant of summary judgment in her favor against Remington Arms Co., or (ii) to the Sandy Hook Families, if the Fifth Circuit reverses the district court's summary judgment in favor of Ms. Seguin. Ironshore and James River shall not make any deduction on account of the SIRs in their policies, and none of the Insurers are declining to pay based on Debtors' failure to satisfy the SIRs in any of the Policies. Each Insurer's payment obligation under the Agreement shall be several and not joint.

b. The allocation of the Settlement Amount among the Sandy Hook Families has been decided by the Sandy Hook Families with the advice of their counsel. None of the Insurers or the Remington Defendants shall have, or had, any responsibility for, or any right of consent in connection with, such allocation.

c. The Insurers' payment of the Settlement Amount is subject to this Court's approval pursuant to Paragraph 98 of the Confirmation Order. In the event the Court does not approve this Motion, then each Party may, after a 21-day meet-and-confer period, elect to terminate the Settlement Agreement.

d. The Parties to the Settlement Agreement have requested a stay of all litigation activity in the *Soto* Action and have between themselves agreed to a standstill to accommodate efforts to obtain this Court's approval of the Insurers' payment of the Settlement Amount.

e. Upon receipt of the Settlement Amount, and subject to the conditions set forth in the Settlement Agreement, the Sandy Hook Families shall dismiss the pending Connecticut Superior Court action, with prejudice, against the Remington Defendants.

f. With respect to the Insurers, the settlement reflected in the Settlement Agreement is a compromise of disputed claims, and not a concession by any of the Insurers that coverage exists for the claims asserted in the *Soto* Action and/or released in the Settlement Agreement.

### The Remington Defendants' insurance

8. The Insurers issued liability insurance policies to one or more of the Remington Defendants and/or their predecessors, covering the period December 1, 2012 to December 1, 2013, which includes the time when the shooting at Sandy Hook Elementary

---

terms, confidential, and thus is not being filed on the public record. However, Ironshore will provide a copy of the Settlement Agreement to the Court *in camera*, if requested by the Court.

School took place. All of the Remington Defendants claim to be insureds under the Insurers' 2012-2013 policies.

9. The liability insurance coverage issued by the Insurers (collectively, the "Policies") can be summarized as follows:[8]

    a. Ironshore issued a first-layer general liability policy providing limits of $1 million per-occurrence / $3 million aggregate, subject to a $1 million per-occurrence self-insured retention ("SIR") and an additional $1 million per-occurrence / $1 million aggregate Corridor Retention.

    b. James River issued a second-layer excess policy providing limits of $10 million, per-occurrence and aggregate, subject to a $1 million per-occurrence SIR.

    c. Ironshore issued a third-layer excess policy providing limits of $25 million, per-occurrence and aggregate, subject to a $25,000 per-occurrence SIR.

    d. ACE P&C issued a fourth-layer excess policy providing limits of $25 million, per-occurrence and aggregate. The ACE P&C policy does not have an SIR.

    e. NAC issued a fifth-layer excess policy providing limits of $15 million, per-occurrence and aggregate. The North American policy does not have an SIR.[9]

10. The total stated limits of these five Policies, for the occurrence resulting from the Sandy Hook Shooting, is $76 million. However, pre-petition, James River paid $2.5 million on account of a different claim against one or more of the Remington Defendants,

---

[8] *See, e.g.*, The Official Committee of Unsecured Creditors' Status Report Concerning Insurance Issues (Dkt. No. 1007) (the "UCC Report") at p. 8 of 14. The description of the policies set forth herein is not intended to, and shall not be deemed to, amend, modify, or waive any of the terms or conditions of the policies, which shall control in all respects with respect to their terms.

[9] There is a sixth layer of coverage, only effective for claims occurring between May 23, 2013 to December 1, 2013, consisting of a $25 million excess policy provided by Westchester Surplus Lines Insurance that does not include an SIR. *Id.* Because this policy did not go into effect until after the Sandy Hook Shooting, it does not provide any coverage for the Sandy Hook Families' claims against the Remington Defendants.

reducing the potentially available limits to $73.5 million.[10]

12. The UCC Report states that, "[a]according to the Debtors' records," the Policies are "potentially applicable to claims asserted by: (1) the Sandy Hook Families (Soto, et al.); (2) Joann Harris and Benjamin Harris; and (3) Precious Seguin."[11] Ironshore understands that the Insurers are aware of no other claims against any of the Debtors that could be even potentially covered under the Policies.

12. Pre-petition, Remington Arms Company, LLC ("Remington Arms"), the sole defendant in the *Harris* case, obtained summary judgment against the claims asserted by Mr. and Mrs. Harris. After the automatic bankruptcy stay was lifted as to the Harrises' claims following entry of the Confirmation Order, the U.S. Court of Appeals for the Tenth Circuit affirmed the district court's grant of summary judgment in favor of Remington Arms.[12] The summary judgment is now final, further review not having been sought. Thus, the Harrises could not have a viable claim against the Policies.

13. Ms. Seguin entered into a pre-petition agreement with Remington Arms, Ironshore, and James River which provided that, if she obtained summary judgment against them, Remington Arms would pay her $1 million, Ironshore would pay her $1 million, and James River would pay her $500,000.[13] Ms. Seguin obtained summary judgment against

---

[10] Ironshore paid $1 million on account of that same claim, which eroded the $3 million aggregate limit of the Ironshore first-layer policy by $1 million. The Ironshore first-layer policy has $2 million remaining in its aggregate limit.

[11] UCC Report at 8 of 14.

[12] *See Harris v. Remington Arms Co., LLC*, 997 F.3d 1107 (10th Cir. 2021).

[13] *See* Claim 6-1 Part 3, page 8 of 15.

Remington Arms,[14] and Remington Arms, as permitted under the pre-petition agreement, appealed to the U.S. Court of Appeals for the Fifth Circuit.[15] The appeal was briefed and argued to the Fifth Circuit. On January 6, 2022, the Fifth Circuit issued an opinion in which it certified the issue of law decided by the district judge to the Louisiana Supreme Court.[16]

14. If Remington Arms is successful on appeal, then under the pre-petition agreement, Ms. Seguin would be obligated to dismiss her district court action, with prejudice, and she would not be entitled to any payment from Remington, Ironshore, or James River.[17] However, if Remington Arms is not successful on appeal, then Ironshore would be obligated to pay her $1 million and James River would be obligated to pay her $500,000.

15. Because the "occurrence" involving Ms. Seguin's claim and the "occurrence" involving the Sandy Hook Families' claims are separate occurrences, and because there is $2 million in aggregate limits remaining under the Ironshore first-layer 2012-2013 policy after the payment of other claims pre-petition, Ironshore could pay $1 million to Ms. Seguin without impacting the limits available under that policy to pay $1 million to the Sandy Hook Families.

16. However, James River, which has $7.5 million remaining in aggregate limits, cannot pay that full amount in connection with a settlement with the Sandy Hook Families and also pay $500,000 to Ms. Seguin. If James River were to pay Ms. Seguin $500,000, it could pay the Sandy Hook Families only $7.0 million. Payment of $7.5 million by James

---

[14] *See* Claim 6-1, Part 2.

[15] *See Seguin v. Remington Arms Co., LLC*, Case No. 17-30499 (5th Cir.).

[16] *See* Doc. No. 00516157336, *Seguin v. Remington Arms Co., LLC*, Case No. 17-30499 (5th Cir. Jan. 6, 2022). The Louisiana Supreme Court has docketed the case as No. 2022-CQ-37.

[17] *See* Claim 6-1 Part 3, page 9 of 15.

River, whether entirely to the Sandy Hook Families or $7.0 million to the Sandy Hook Families and $500,000 to Ms. Seguin, would exhaust the James River 2012-2013 policy.

### Venue; core proceeding; predicates for relief

17. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

18. The predicates for the relief granted herein are Paragraphs 98 and 138 of the Confirmation Order. In addition, Ironshore requests that the any order granting this motion be effective immediately, without being stayed pursuant to Bankruptcy Rule 6004(h) or otherwise.

### Request for relief

19. By this Motion, Ironshore seeks to (a) comply with the requirements of Paragraph 98 of the Confirmation Order by giving notice of the Settlement Agreement with the Sandy Hook Families and the payments required thereunder to the Court, Ms. Seguin, Mr. and Mrs. Harris, and other parties in interest, and (b) confirm that, pursuant to the Settlement Agreement, James River may reserve $500,000 to pay Ms. Seguin if the Fifth Circuit affirms the summary judgment in her favor, or, if the Fifth Circuit reverses such decision, may make an additional payment to the Sandy Hook Families without seeking further relief from the Court.

### Argument

**I. Payment of the Settlement Amount should be approved pursuant to paragraph 98 of the Confirmation Order**

20. The Court should approve the payment of the Settlement Amount pursuant to Paragraph 98 of the Confirmation Order because the payment of the Settlement Amount would have no impact on the Debtors' remaining GL Insurance Assets or other Tort Claims covered by the same Policies.

21. Apart from the Sandy Hook Families, the only other claimants against the Policies are (a) Mr. and Mrs. Harris and (b) Ms. Seguin.

22. The Tenth Circuit affirmed summary judgment against Mr. and Mrs. Harris, and they did not timely seek review of that affirmance. Thus, Mr. and Mrs. Harris do not have a cognizable interest in the Policies or their proceeds.

23. Under her pre-petition agreement with Remington Arms, Ironshore, and James River, Ms. Seguin will be entitled to payment of $1 million from Ironshore and $500,000 from James River if her judgment against Remington Arms is affirmed on appeal. As explained above, Ironshore has sufficient aggregate limits available in its first-layer policy to pay a full per-occurrence limit to Ms. Seguin and another full per-occurrence limit to the Sandy Hook Families. James River and the Sandy Hook Families have agreed that James River may reserve $500,000 to pay Ms. Seguin, should the Fifth Circuit affirm the judgment in her favor. If Ms. Seguin's judgment is reversed by the Fifth Circuit, then James River would promptly pay the $500,000 reserved for Ms. Seguin to the Sandy Hook Families, in accordance with the Settlement Agreement, without any need for a further order from the Court.

24. Ironshore submits that payment of the Settlement Amount should be approved by the Court. All available policy limits under the Policies would be paid to the Sandy Hook Families in settlement, minus the $500,000 that would be reserved by James River to pay Ms. Seguin, the only other person known to have a potentially viable claim against the Policies. If Ms. Seguin's judgment is affirmed, then she would receive the full amount Ironshore and James River contracted to pay her. This is fair and equitable to Ms. Seguin, particularly considering she cannot recover anything from Debtors' non-insurance assets on account of Remington Arms' pre-petition promise to pay her $1 million if she obtained a judgment. It is

also fair and equitable to the Sandy Hook Families, who are receiving the full remaining limits of liability under the Policies, including the $500,000 reserved by James River to Ms. Seguin if the Fifth Circuit reverses her judgment.

26. Accordingly, Ironshore requests that the Court approve the payment of the Settlement Amount to the Sandy Hook Families.

26. Ironshore represents that the other Insurers consent to and support the relief sought in this Motion, and agree that the payment of the Settlement Amount to the Sandy Hook Families, pursuant to the terms and conditions of the Settlement Agreement, should be approved. Ironshore also represents that the Plan Administrator, a party to the Settlement Agreement, also consents to and supports the relief sought in this Motion.

WHEREFORE, for the reasons stated above, Ironshore respectfully requests that the Court approve the payment of the Settlement Amount to the Sandy Hook Families. A proposed form of order, agreeable to the Sandy Hook Families, the Remington Defendants, the Insurers, and the Plan Administrator, is attached as Exhibit 1 hereto.

DATED: February 15, 2022　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　By: /s/ Kevin D. Heard
　　　　　　　　　　　　　　　　　　Kevin D. Heard
　　　　　　　　　　　　　　　　　　Angela S. Ary
　　　　　　　　　　　　　　　　　　HEARD, ARY & DAURO, LLC
　　　　　　　　　　　　　　　　　　303 Williams Avenue
　　　　　　　　　　　　　　　　　　Park Plaza, Suite 921
　　　　　　　　　　　　　　　　　　Huntsville, Alabama 35801
　　　　　　　　　　　　　　　　　　Phone: (256) 715-5184
　　　　　　　　　　　　　　　　　　Email: kheard@heardlaw.com
　　　　　　　　　　　　　　　　　　　　　　aary@heardlaw.com

- and -

Mark D. Plevin  (admitted *pro hac vice*)
CROWELL & MORING LLP
Three Embarcadero Center, 26th Floor
San Francisco, California  94111
Phone:  (415) 986-2800
Email:  mplevin@crowell.com

Tacie H. Yoon  (admitted *pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C.  20004
Phone:  (202) 624-2500
Email:  tyoon@crowell.com

Attorneys for Ironshore Specialty Insurance Company

64998185

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of February, 2022 served the foregoing

**IRONSHORE'S MOTION FOR APPROVAL OF
SETTLEMENT PAYMENT TO THE SANDY HOOK FAMILIES**

on the parties listed below and on the attached matrix by depositing the same in the United States Mail, postage prepaid and properly addressed, via electronic mail at the e-mail addresses below, unless the party being served is a registered participant in the CM/ECF System for the United States Bankruptcy Court for the Northern District of Alabama, service has been made by a "Notice of Electronic Filing" pursuant to FRBP 9036 in accordance with subparagraph II.B.4. of the Court's Administrative Procedures as indicated below:

*Served via CM/ECF:*

All persons and entities registered with CM/ECF to receive notices in this case.

*Served via U.S. mail:*

1. All persons or entities on the attached matrix;

2. Matthew Cahill and Rita Hulett, Baker Donelson Bearman Caldwell & Berkowitz PC, 420 20th Street North, Suite 1600, Birmingham, Alabama 35203; Jan M. Hayden, Baker Donelson Bearman Caldwell & Berkowitz PC, 201 St. Charles Avenue, Suite 3600, New Orleans, Louisiana 70170; Gordon Gouveia, Fox Rothschild LLP, 321 N. Clark Street, Suite 1600, Chicago, Illinois 60654; Michael A. Sweet, 325 California Street, Suite 2200, San Francisco, California 94104-2670; and Robert F. Elgidely, One Biscayne Tower, 2 South Biscayne Boulevard, Suite 2750, Miami, Florida 33131, counsel for The Official Committee of Unsecured Creditors;

3. Glenn J. Shrader, Jr., Shrader Firm, 11212 N. May Avenue, Suite 405, Oklahoma City, Oklahoma 73120 and Michael M. Blue, Blue Law, 900 N.E. 63rd Street, Oklahoma City, Oklahoma 73105, counsel to Mr. and Mrs. Harris;

4. Timothy W. Monsees, Monsees Mayer, P.C., 4717 Grand Avenue, Suite 820, Kansas City, Missouri 64112-6411, Jordan L. Chaikin, Chaikin Law Firm PLLC 2338 Immokalee Road, Suite 170, Naples, FL 34110-1445, and Elizabeth S. Lynch, Lynch Sharp & Associates, LLC, 9229 Ward Parkway, Suite 370, Kansas City, Missouri 64114, counsel for Ms. Seguin;

5. John J. McGivney and Kara A. Loridas, Rubin and Rudman LLP, 53 State Street, Boston, Massachusetts 02109; Mark D. Plevin, Crowell & Moring LLP, Three Embarcadero Center, 26th Floor, San Francisco, California 94111 and Laura A. Foggan, Crowell & Moring LLP, 1001 Pennsylvania Avenue, N.W., Washington, DC 20004; Michael J. Dugan, Litchfield Cavo, 82 Hopmeadow Street, Suite 210, Simsbury, Connecticut 06089; and Adam Fleischer,

BatesCarey LLP, 191 N. Wacker Drive, Suite 2400, Chicago, Illinois 60606, counsel to each of the Insurers;

6. Sarah Link Schultz, Akin Gump Strauss Hauer & Feld LLP, 2300 North Field Street, Suite 1800, Dallas, Texas 75201-2481 and Derek Meek, Burr & Forman LLP, 420 North 20th Street, Suite 3400, Birmingham, Alabama 35203, counsel to the Plan Administrator;

7. Lawrence Voit and Alexandra K. Garrett, Silver, Voit & Garrett, 4317-A Midmost Dr., Mobile, Alabama 36609 and Tobey M. Daluz and Chantelle D. McClamb, Ballard Spahr LLP, 919 Market Street, 11th Floor, Wilmington, Delaware 19801, counsel for E. I. du Pont de Nemours and Company and Sporting Goods Properties, Inc.;

8. Joshua Koskoff and Alinor Sterling, Koskoff Koskoff & Bieder, P.C., 350 Fairfield Avenue, Bridgeport, Connecticut 06604, counsel for the Sandy Hook Families; and

9. The Office of the Bankruptcy Administrator.

**Served via e-mail:**

Matthew Cahill  mcahill@bakerdonelson.com

Rita Hulett  rhullett@bakerdonelson.com

Jan M. Hayden  jhayden@bakerdonelson.com

Gordon Gouveia  ggouveia@foxrothschild.com

Michael A. Sweet  msweet@foxrothschild.com

Robert F. Elgidely  relgidely@foxrothschild.com

Glenn J. Shrader, Jr.  jack@shraderfirm.com

Michael M. Blue  bluelaw@cox.net

Timothy W. Monsees  tmonsees@monseesmayer.com

Jordan L. Chaikin  jordan@chaikinlawfirm.com

Elizabeth S. Lynch  lynch@lynchsharp.com

John J. McGivney  JMcGivney@rubinrudman.com

Kara A. Loridas  KLoridas@rubinrudman.com

Mark D. Plevin  mplevin@crowell.com

Laura A. Foggan  LFoggan@crowell.com

Michael J. Dugan  Dugan@litchfieldcavo.com

Adam Fleischer  AFleischer@batescarey.com

Sarah Link Schultz  sschultz@AkinGump.com

Derek Meek  dmeek@burr.com

Lawrence Voit  lvoit@silvervoit.com

Alexandra K. Garrett  agarrett@silvervoit.com

Tobey M. Daluz  daluzt@ballardsparhr.com

Chantelle D. McClamb  mcclambc@ballardspahr.com

David Christian  dchristian@dca.law

Joshua Koskoff  jkoskoff@koskoff.com

Alinor Sterling  asterling@koskoff.com

Richard M Blythe  Richard_Blythe@alnba.uscourts.gov, courtmaildec@alnba.uscourts.gov

                                                  /s/ *Kevin D. Heard*
                                                  Kevin D. Heard