IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| In re:<br><br>**REMINGTON OUTDOOR COMPANY, INC.**, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-81688-CRJ11 |

## ROUNDHILL GROUP LLC'S MOTION TO ENFORCE AND COMPEL COMPLIANCE WITH ORDERS APPROVING STRUM, RUGER & COMPANY, INC'S ASSET PURCHASE AGREEMENT AND ROUNDHILL GROUP, LLC'S ASSET PURCHASE AGREEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF SCOTT SOURA AND KEN D'ARCY IN SUPPORT

Roundhill Group LLC ("Roundhill"), purchaser of certain estate assets and interested party in the bankruptcy of Remington Outdoor Company, Inc., *et al*. (collectively, "Debtors"), brings this Motion to Enforce and Compel Compliance with Orders Approving Strum, Ruger & Company, Inc's ("Ruger") Asset Purchase Agreement and Roundhill Group, LLC's Asset Purchase Agreement ("Motion") and represents as follows:

### INTRODUCTION

1. It was Roundhill's sincere hope that filing this Motion would be unnecessary and that the parties could resolve their issues without Court intervention. However, and despite

---

[1] Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405).

Roundhill's good faith efforts, Roundhill and Ruger have hit an impasse in their negotiations of the Ruger License[2] required to be provided under both the Roundhill APA and the Ruger APA. Being left with no other option, Roundhill requests that this Court enter an order enforcing and compelling compliance with the orders approving the Ruger APA and the Roundhill APA (collectively, the "Orders").[3] For the reasons stated below, Roundhill requests that Ruger be immediately compelled to execute the Ruger License.[4]

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. The Motion arises in, and is related to, Debtors' bankruptcy cases, which were commenced through the filing of voluntary petitions for relief under Chapter 11 of the Bankruptcy Code by Debtors on July 27, 2020 in the Northern District of Alabama.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1409.

## RELEVANT FACTS AND PROCEDURAL HISTORY

4. Prior to Debtors' bankruptcy filing on July 27, 2020 ("Petition Date"), Debtors' patents and licenses utilized to operate the Remington-branded firearms business were held by an affiliate entity named Remington Licensing Corporation ("RLC"). Declaration of Ken D'Arcy (the "D'Arcy Decl.") ¶ 3. RLC in turn would license its patents, or sublicense its licenses, to its affiliates for the manufacturing and sale of Remington-branded firearms and related products. *Id*. Remington's business was structed this way for numerous reasons, including: (a) it made for much more efficient compliance and administration of the company's significant intellectual property;

---

[2] All capitalized terms not otherwise defined in this Introduction shall have the meaning ascribed to same below.

[3] A copy of the order approving the Ruger APA and the order approving the Roundhill APA are attached to the Request for Judicial Notice as RJN Exhibit 4 and RJN Exhibit 5 respectively.

[4] A draft of the Ruger License requested by Roundhill is affixed to this Motion as Exhibit 1.

(b) allowed manufacturing divisions to focus on manufacturing and not intellectual property; and (c) allowed the company to properly allocate uses and costs of intellectual property across business units and brands. *Id*.

5. Shortly after Petition Date, and on July 28, 2020, Debtors filed a first day motion for: (I) an order establishing bidding procedures and granting related relief and (II) an order or order approving the sale of Debtors' assets (the "Sale Motion")[Docket No. 29]. An order approving the bidding procedures in the Sale Motion was entered on August 20, 2020.

6. Pursuant to the Sale Motion, a multi-day auction, spanning September 17, 2020 through September 24, 2020 (the "Auction"), was conducted by Debtors to sell all property of the estate, including but not limited to those assets associated with the Remington firearms business. D'Arcy Decl. ¶ 4; Declaration of Scott Soura ("Soura Decl.") ¶ 3.

7. On September 24, 2020, the Auction concluded based on the then-existing Roundhill APA and Ruger APA. Soura Decl. ¶ 4. During the next two days, the Roundhill APA was cleaned up and put into final form. *Id*. During this two-day period, and despite Ruger proclaiming it was only bidding on and purchasing assets associated with the Marlin business, it was discovered that Ruger included two Remington patents (*i.e.* the Patents). *Id*. There was no indication that what Ruger included on its schedules were in fact patents exclusively associated with the Remington firearms business. *Id*. At the request of the estate, and to facilitate the estate's closing schedule, Roundhill and Ruger reached a compromise whereby each would effectively share the patents – structured with ownership of the patents resting with Ruger, while concurrently providing Roundhill with a perpetual, worldwide, royalty free license. *Id*.

8. On September 26, 2020, the Roundhill APA was signed with the explicit understanding that Ruger and Roundhill would cooperate in good faith. Soura Decl. ¶ 5. Such an

express understanding was necessary due to the complexity of the transaction, time being of the essence and the fact that the Ruger License had not been drafted as of September 26, 2020. *Id*. In fact, Section 1.7 of the Ruger APA provides that Ruger "shall cooperate in good faith with Seller, whether before or after Closing Date, to ensure all assets are allocated between the parties in order to reflect the intent of Buyer hereunder and any such other purchasers of Seller's assets pursuant to the Other Agreements."

9. Pursuant to the amended sale order [Docket No. 983] associated with the Roundhill APA (the "Amended Sale Order") entered on October 13, 2020, Roundhill purchased the Acquired Assets (as defined in the Roundhill APA) for $13,000,000.00. Soura Decl. ¶ 6. A true and correct copy of the Amended Sale Order, including the Roundhill APA, is attached as RJN Exhibit 2. Roundhill timely and fully paid the $13,000,000.00 purchase price under the Roundhill APA, and has timely and completely satisfied all other obligations under the Roundhill APA. *Id*.

10. The Acquired Assets include, but are not limited to, "all (i) registered and unregistered Intellectual Property owned and primarily used by Seller in connection with the ownership, operation and/or management of the Business, other than Excluded Assets, and any and all corresponding rights that, now or hereafter, may be secured throughout the world (collectively, the "Acquired Intellectual Property"), and (ii) to the extent transferable under applicable Law, all agreements under which Intellectual Property is licensed to Seller and used primarily in connection with the ownership, operation and/or management of the Business, other than the Trademark License Agreement (collectively, the "Assumed Inbound IP Licenses")." RJN Exhibit 2; Soura Decl. ¶ 8.

11. Under the heading "PURCHASE AND SALE OF THE ACQUIRED ASSETS[,]" Section 1.8 of the Roundhill APA provides that Roundhill "shall receive a nonexclusive, perpetual,

worldwide, royalty-free license to use Patents Nos. 10,254,063 and 10,718,584" (the "Ruger License"). Exhibit 2; Soura Decl. ¶ 9. Similarly, Section 1.7 of the Ruger APA provides, in relevant part, that "Buyer agrees to enter into a non-exclusive, perpetual, worldwide, royalty-free license in favor of the buyer or buyers of the Non-Marlin Business to use Patents Nos. 10,254,063 and 10,718,584 in the Non-Marlin Business." RJN Exhibit 1; Soura Decl. ¶ 9.

12. Pursuant to the Ruger APA, Ruger acquired assets associated with Debtors' Marlin firearms business.

13. Patents Nos. 10,254,063 and 10,718,584 (the "Patents") that were to be covered by the Ruger License are patents related to detachable magazines designed to feed rounds of ammunition into a firearm. Soura Decl. ¶ 10; D'Arcy Decl. ¶ 6. As of the Petition Date, Debtors' Marlin firearms business did not manufacture or sell or firearms that could have utilized the Patents. *Id*.

14. On January 1, 2021, Debtors filed their joint chapter 11 plan [Docket No. 1370] (as amended, the "Plan"). Soura Decl. ¶ 11; D'Arcy Decl. ¶ 7.

15. On March 5, 2021, Roundhill filed a complaint against Debtors initiating adversary case number 21-80033-CRJ (the "Adversary Proceeding"), which included a claim for relief against Debtors for their failure to provide the Ruger License pursuant to the terms of the Roundhill APA. Soura Decl. ¶ 12.

16. Prior to initiating the Adversary Proceeding, Roundhill and Ruger participated in numerous rounds of negotiation regarding the terms and scope of the Ruger License – including circulation of multiple iterations of draft license agreements. Soura Decl. ¶ 13. Unfortunately, the parties hit an impasse in their negotiations on December 9, 2020 primarily due to Ruger's refusal to permit Roundhill the right to sublicense the Ruger License to its own affiliates (an

"Intracompany Sublicense"). *Id*. In particular, on or about December 9, 2020, Ruger provided a "take it or leave it" draft (the "December 9th Draft") of the Ruger License naming REM TML Holdings, LLC ("Holdings") as the licensee. *Id*. Notwithstanding Roundhill informing Ruger that Holdings will not manufacture, sell, or brand any product utilizing the Ruger License, and that an affiliate would be the manufacturer and seller of the products utilizing the Ruger license, the December 9th Draft prohibited Holdings from sublicensing same to any affiliate of Holdings. *Id*. Effectively, the December 9th Draft was illusory and provided Roundhill with no usable license at all. *Id*.

17. On March 12, 2021, the Court entered the order confirming the Plan [Docket No. 1658]. D'Arcy Decl. ¶ 8; Soura Decl. ¶ 14.

18. On or about March 30, 2021, Debtors and Roundhill entered into a stipulation to resolve the Adversary Action (the "Stipulated Resolution"), which was approved by the Court that same day [Adv. Docket No. 37]. RJN Exhibit 3; Soura Decl. ¶ 15. Paragraph 10 of the Stipulated Resolution provides: "[t]he Debtors hereby assign to Roundhill (without representation or warranty) their rights under the APA to enforce Ruger's cooperation with respect to the Patent License, which, accordingly, allows Roundhill to pursue these rights directly with Ruger." *Id*. Therefore, Roundhill has standing to bring the Motion under both the Roundhill APA and the Stipulated Resolution.

19. During the Auction, representatives for Roundhill had numerous correspondence with representatives for most, if not all, interested or prospective buyers for non-Remington firearms assets – including representatives of Ruger. Soura Decl. ¶ 16. During Roundhill's discussions with Ruger, Roundhill was led to believe that it would obtain the Ruger License allowing Roundhill to operate the Remington firearms business in the same manner as Debtors did

prior to the Petition Date. *Id*. In particular, representatives for Ruger stated to Roundhill that Ruger and Roundhill would share the full and equal use of patents and suggested this licensing structure as the easiest way to accomplish this objective. *Id*.

20.   Roundhill did not want to close until all issues with the Ruger License were resolved, but representatives of the estate pushed very hard to close and asked that Roundhill accommodate their schedule. Soura Decl. ¶ 17. On October 12, 2020, Chris Killoy, CEO of Ruger and Chris Metz, CEO of Vista had a call and agreed that Roundhill would have full use of the Patents and that counsel for the parties could work out the details over the coming week. *Id*. Roundhill accommodated the estate's desires to close quickly based on these promises. *Id*.

21.   In the approximately five and a half (5.5) months since the Stipulated Resolution, Roundhill has attempted to rekindle negotiations with Ruger to no avail. Soura Decl. ¶ 18; D'Arcy Decl. ¶ 9. Further, and again to no avail, Roundhill has analyzed numerous business structures in an attempt to make the December 9th Draft work with its business model. *Id*. As of the filing of this Motion, Ruger has not provided the Ruger License to Roundhill. *Id*. Being left with no alternative, Roundhill brings the instant Motion seeking this Court to enforce and compel compliance with the Orders. *Id*.

## AUTHORITIES IN SUPPORT OF ENFORCEMENT OF THE ORDERS

22.   The order approving the Ruger APA and the order approving the Roundhill APA specifically reserve jurisdiction, and provides in relevant part[5]:

> This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Asset Purchase Agreement, all amendments thereto, and any waivers and consents thereunder, including, but not limited to, retaining jurisdiction to (i) enforce the terms of the Asset Purchase Agreement; (ii) compel delivery of the Acquired Assets to the Buyer; (iii) interpret, implement, and enforce the provisions of this Sale Order; (iii)

---
[5] See Ruger APA order ¶ 42 and Roundhill APA order ¶ 41.

> protect the Buyer, any of the Buyer's affiliates, or any agent of the foregoing, against any Interests against the Debtors or the Acquired Assets of any kind or nature whatsoever, except for the Permitted Liens and Assumed Liabilities, and (iv) enter any order under Bankruptcy Code Sections 363 and 365.

23. In addition to the authority and jurisdiction this Court reserved within the Orders, it cannot be reasonably disputed that a court may properly interpret its own orders. See *Cave v. Singletary*, 84 F.3d 1350, 1354-1355 (11th Cir. 1996)("The district court's interpretation of its own order is properly accorded deference on appeal when its interpretation is reasonable." citing *Commercial Union Ins. Co. v. Sepco Corp.*, 918 F.2d 920, 921 (11th Cir. 1990) (citing *Alabama Nursing Home Ass'n v. Harris*, 617 F.2d 385, 388 (5th Cir. 1980)). See also *Matter of Chicago, Rock Island and Pacific R.R. Co*., 865 F.2d 807, 810-11 (7th Cir. 1988)('We shall not reverse a district court's interpretation of its own order unless the record clearly shows an abuse of discretion. The district court is in the best position to interpret its own orders.') (citations and internal quotation marks omitted); *Anderson v. Stephens*, 875 F.2d 76, 80 n. 8 (4th Cir. 1989)(appellate court must afford 'the inherent deference due a district court when it construes its own order'); *Michigan v. Allen Park*, 954 F.2d 1201, 1213 (6th Cir. 1992)('An appellate court should accord deference to a district court's construction of its own earlier orders, if that construction is reasonable.')." (emphasis added).

24. Furthermore, the fact that the Plan was confirmed does not somehow divest this Court of jurisdiction or otherwise unwind this Court's reservation of authority and jurisdiction pursuant to the Orders. See *In re Friedman's, Inc*., 2006 Bankr. LEXIS 5125, *4, 2006 WL 6902023 ("Despite the fact that disputes have now arisen with regard to these matters post-confirmation, this Court retains jurisdiction to enforce and interpret its own pre-confirmation orders. See *In re Millenium Seacarriers, Inc*., 419 F.3d 83, 97 (2d Cir. 2005); *In re Petrie Retail, Inc*., 304 F.3d 223, 230 (2d Cir. 2002)").

## ARGUMENT AND REQUESTED RELIEF

25. Roundhill's agreement to allow Ruger to obtain ownership of the Patents was predicated upon Ruger's representations that Roundhill would be provided a meaningful license to utilize same. To be clear, the Patents have absolutely nothing to do with the Marlin firearms business and would have been included as Acquired Assets under the Roundhill APA but for Roundhill's good faith desire to move all parties towards closing under their respective asset purchase agreements. Fast forward to today, Ruger has remained steadfast in its refusal to provide Roundhill with a Ruger License that can be meaningfully utilized in Roundhill's business operations.

26. Paragraph 3 of the order approving the Roundhill APA (the "Roundhill Order") and the order approving the Ruger APA (the "Ruger Order") provide that "[t]he Debtors are authorized to enter into the Asset Purchase Agreement (and all schedules and exhibits thereto and all ancillary documents) and all the terms and conditions thereof, and all of the Transactions contemplated therein are approved in all respects. The transfer of the Acquired Assets by the Debtors to the Buyer shall be a legal, valid and effective transfer of the Acquired Assets." Further, Paragraph 13 of the Roundhill Order provides: "However, the Debtors and the Buyer, and each of their respective officers, employees, and agents, are hereby authorized and empowered to take all actions and to execute and deliver any and all documents and instruments that either the Debtors or the Buyer deem necessary, desirable or appropriate to implement and effectuate the terms of the Asset Purchase Agreement and this Sale Order." One such action to be taken, and document to be executed, is the Ruger License.

27. Section 1.8 of the Roundhill APA provides that Roundhill "shall receive a nonexclusive, perpetual, worldwide, royalty-free license to use Patents Nos. 10,254,063 and

10,718,584." Similarly, Section 1.7 of the Ruger APA provides, in relevant part, that "Buyer agrees to enter into a non-exclusive, perpetual, worldwide, royalty-free license in favor of the buyer or buyers of the Non-Marlin Business to use Patents Nos. 10,254,063 and 10,718,584 in the Non-Marlin Business." Furthermore, Paragraph 9 of the order approving the Roundhill Order provides "[a]ll persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Acquired Assets to the Buyer in accordance with the Asset Purchase Agreement and this Sale Order." By virtue of the Stipulated Resolution, Roundhill may seek Court enforcement of not only Section 1.8 of the Roundhill APA, but also Paragraph 9 of the Roundhill Order. By virtue of Ruger's refusal to provide the Ruger License, it cannot be reasonably disputed that Ruger has failed to comply with Section 1.8 of the Roundhill APA and has violated Paragraph 9 of the Roundhill Order.

28.     Importantly, Paragraph 47 of the Roundhill Order, and Paragraph 48 of the Ruger Order, provide in relevant part: "The provisions of the Asset Purchase Agreement and this Sale Order may be specifically enforced in accordance with the Asset Purchase Agreement notwithstanding the appointment of any Chapter 7 or Chapter 11 trustee after the Closing." Reciprocally, Section 11.10 of the Orders provide: "<u>Specific Performance</u>. The provisions of this Agreement are uniquely related to Seller's…desire to consummate the transactions contemplated by this Agreement, and such transactions represent a unique business opportunity at a unique time for the Seller...As a result, irreparable damage would occur to Seller…in the event that any of the obligations…under this Agreement were not performed in accordance with their specific terms…specific performance and any and all other equitable relief to prevent or restrain breaches or threatened breaches of this Agreement [shall be permitted]." By and through the Motion,

Roundhill seeks enforcement of the Orders and requests this Court to compel Ruger to provide the Ruger License.

29. Pursuant to Section 1.1 of the Roundhill APA, Roundhill acquired all "assets, Interest and rights of Seller as of the Closing Date, of any kind or nature, real or personal, tangible or intangible, that in each case primarily relate to the ownership, operation and management of the [Remington firearms] Business." Therefore, the spirit and text of the Ruger APA and the Roundhill APA supports that Roundhill, as successful purchasers of Debtors' Remington firearms-related assets, would be able to carry on business in a manner similar to that of Debtors' prepetition. Roundhill submits that the draft Ruger License concurrently submitted as Exhibit 1 does just that. When this draft is compared to the redline draft denoting the few changes made to the December 9th Draft, it cannot be reasonably disputed that Roundhill's requests are infinitely reasonable and comport with the spirit and text of the Ruger APA and the Roundhill APA. Roundhill merely requests that it be provided the right to an Intracompany Sublicense – it has no intention or desire to sublicense the Ruger License to competitors of Ruger or any entity outside of an affiliate. Soura Decl. ¶ 19.

## CONCLUSION

**WHEREFORE** For all the foregoing reasons, Roundhill respectfully requests that the Court grant the Motion and issue and order: (1) enforcing and compelling performance under the Ruger APA and Roundhill APA; (2) enforcing and compelling compliance with the Orders; and (3) compelling Ruger's execution of the Ruger License affixed to this Motion as <u>Exhibit 1</u>.

DATED: February 18, 2022

By: _____/s/ Brian R. Walding_____
Brian R. Walding
E. Bryan Nichols
WALDING, LLC
2227 First Avenue South
Suite 100
Birmingham, Alabama 352233

_____/s/ Ryan D. O'Dea_____
James C. Bastian, Jr.
Ryan D. O'Dea
SHULMAN BASTIAN FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, California 92618

*Attorneys for Roundhill Group, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties registered to receive such service.

_____/s/ Brian R. Walding_____