# PATENT LICENSE AGREEMENT

**THIS PATENT LICENSE AGREEMENT** (this "Agreement"), dated as of December __, 2020, (the "Effective Date"), is entered into by and between Sturm, Ruger & Company, Inc. ("Licensor"), and REM TML Holdings, LLC ("Licensee") (each, a "Party" and collectively, the "Parties"), a common-control affiliate of Roundhill Group, LLC ("Buyer").

## RECITALS

**WHEREAS**, Licensor has entered into an asset purchase agreement ("Licensor APA") with Remington Outdoor Company, Inc. and certain of its subsidiaries (together, the "Company"), pursuant to which Licensor has acquired certain assets of the Company, including the Licensed Patents (as defined below);

**WHEREAS**, the Company has entered into a separate asset purchase agreement ("Buyer APA" and together with the Licensor APA, the "APAs") with Buyer pursuant to which Buyer has acquired certain assets of the Company primarily relating to the Non-Marlin Business (as defined below);

**WHEREAS**, Buyer desires Licensee to obtain a license to use the Licensed Patents in connection with the Non-Marlin Business, Licensor has agreed pursuant to the terms and conditions contained herein.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

DEFINITIONS

Capitalized terms used but not defined in this list herein shall have the meaning given them in the body of this Agreement.

"Licensed Patents" means U.S. Patent No. 10,254,063 and U.S. Patent No. 10,718,584, including all reissues, divisionals, renewals, extensions, substitutions, re-examinations, continuations, continuations-in-part, and foreign counterparts thereof.

"Non-Marlin Business" shall have the meaning provided to the term "Business" in the Buyer APA.

"Non-Marlin Products" means all non-ammunition goods and services within the Non-Marlin Business.

1. LICENSE GRANT

A. Patent License. Effective upon execution of this Agreement by both Parties, Licensor hereby grants to Licensee a non-exclusive, perpetual, non-transferable (except as set forth in Section 4.K.), non-sublicensable (except as set forth in Section 4.K.), worldwide, royalty-free, fully-paid up license under the Licensed Patents to make, have made, use, sell, offer for sale, or import Non-Marlin Products that utilize or otherwise exploit the Licensed Patents.

Case 20-81688-CRJ11    Doc 2408-3    Filed 02/18/22    Entered 02/18/22 12:40:44    Desc
Exhibit 1 and RJN 1: Ruger APA    Page 1 of 6

B.      Reservation of Rights. With the exception of the license specifically granted in Section 1.A. to the Licensed Patents, no license or rights beyond the scope set forth herein or any other intellectual property or other proprietary right of Licensor is granted by this Agreement. Neither the license in Section 1.A. nor any other provision of this Agreement shall restrict (or is intended to restrict) the right of Licensor to use or license the use of the Licensed Patents to any other entity in connection with any goods or services.

C.      Marking. Licensee shall mark, or cause to be marked, in a manner that conforms with 35 U.S.C. § 287, every unit of product manufactured by or on behalf of Licensee pursuant to the Licensed Patents that is made, used, offered for sale, sold, or imported in or to the United States after the Effective Date with the patent numbers of the Licensed Patents, or with an address of a posting on the Internet, accessible to the public without charge for accessing the address, that associates the product with the numbers of the Licensed Patents.

2.      LICENSOR BANKRUPTCY

A.      Licensor acknowledges that Licensee's rights hereunder are preserved notwithstanding any putative rejection thereof under Section 365 of the Bankruptcy Code. In the event of any repudiation, disclaimer, rejection, proposed repudiation, proposed disclaimer or proposed rejection of this Agreement by Licensor in any bankruptcy proceeding or liquidation whether compulsory or voluntary or compounds with its creditors or takes or suffers any similar action in consequence ("Bankruptcy Event"), Licensee shall have the right to retain and fully exercise all of its rights hereunder. Licensee retains all other rights that may be asserted under the foregoing authority and any other applicable law to the greatest extent permitted thereby. Without limiting the generality of the foregoing, no putative rejection of this Agreement or other Bankruptcy Event shall terminate or rescind any right granted to the Licensee.

B.      In the event of a Bankruptcy Event, Licensee further reserves all rights to assert that Section 365(n) of the Bankruptcy Code or similar laws of another jurisdiction, shall be implicated. The Parties intend that the Licensed Patents shall constitute and have the protections afforded "intellectual property" as the term is defined in 11 U.S.C. Section 101(35A) of the United States Code or similar laws of another jurisdiction. All of the rights granted to Licensee under this Agreement shall be deemed to exist immediately before the occurrence of any Bankruptcy Event in which Licensor is a debtor. The Parties wish for the protections of Section 365(n) of the Bankruptcy Code to apply fully if Licensor commences or has commenced against it a bankruptcy case under the Bankruptcy Code and for the protections of similar laws in other jurisdictions to apply in a Bankruptcy Event of Licensor or its property. Licensor acknowledges that the rights and licenses granted to Licensee pursuant to this Agreement shall not be affected by the rejection or repudiation of this Agreement. Licensor waives all rights to object to the application of Section 365(n) of the Bankruptcy Code or similar laws of another jurisdiction or any request for relief pursuant to Section 365(n) or similar laws of another jurisdiction by or on behalf of Licensee.

3.      TERM

This Agreement will begin on the Effective Date and will continue until the date of last expiration of the last valid claim of the Licensed Patents (the "Term").

4. MISCELLANEOUS

   A. <u>Independent Entities</u>. The Parties are independent and distinct entities. This Agreement will not be construed as constituting any joint venture, partnership, affiliate, employment, franchise or principal/agent relationship, nor will either Party under any circumstances do or permit any act that will be regarded as such.

   B. <u>Severability</u>. The declaration of any provision of this Agreement as invalid or not enforceable will not affect the remaining terms. The failure by either Party to enforce any provision of this Agreement will not affect that Party's right to enforce the same or any other provision of this Agreement.

   C. <u>Governing Law; Venue; Compliance With Laws</u>. This Agreement is to be construed according to the laws of the State of New York without giving effect to any choice of law or conflict of law provision or rule that would cause the application of the law any other jurisdiction. The Parties hereby mutually consent to the non-exclusive jurisdiction of the state or federal courts located in the Borough of Manhattan, City of New York. Licensee hereby agrees that it will comply with all applicable laws and regulations in connection with its exercise of the License granted herein and in connection with the manufacture, sale, distribution, export or marketing of products incorporating the Licensed Patents.

   D. <u>LIMITATION OF LIABILITY; EQUITABLE RELIEF</u>. IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR SPECIAL, CONSEQUENTIAL, INCIDENTAL, PUNITIVE OR INDIRECT DAMAGES ARISING OUT OF THIS AGREEMENT, WHETHER UNDER THEORY OF CONTRACT, TORT (INCLUDING NEGLIGENCE), PRODUCT LIABILITY OR OTHERWISE, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. LICENSEE ACKNOWLEDGES AND AGREES THAT THE LICENSED PATENTS CONSTITUTE VALUABLE ASSETS OF LICENSOR AND THAT ANY ACT OF LICENSEE WHICH MAY CONSTITUTE AN INFRINGEMENT OF THE RIGHTS OF LICENSOR WITH RESPECT TO THE LICENSED PATENTS, OR ANY BREACH OF THIS AGREEMENT, MAY RESULT IN LOSS OR DAMAGE WHICH CANNOT BE ADEQUATELY COMPENSATED BY MONEY DAMAGES. IN THE EVENT OF ANY BREACH OF THIS AGREEMENT BY LICENSEE, LICENSOR SHALL BE ENTITLED TO DECLARATORY OR INJUNCTIVE RELIEF WITHOUT OBLIGATION OF POSTING BOND IN ADDITION TO ANY AND ALL OTHER REMEDIES, AT LAW OR IN EQUITY.

   E. <u>LIMIT ON WARRANTY</u>. EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, NEITHER LICENSEE NOR LICENSOR MAKES ANY REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS, IMPLIED, STATUTORY OR OTHERWISE, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR NON-INFRINGEMENT. WITHOUT IN ANY WAY LIMITING THE AFOREMENTIONED, NOTHING IN THIS AGREEMENT SHALL BE CONSTRUED AS A WARRANTY, GUARANTEE, OR REPRESENTATION BY LICENSOR AS TO THE OWNERSHIP OR VALIDITY OF THE LICENSED PATENTS.

F.  <u>Force Majeure</u>. Neither Party will be liable for any failure to perform under this Agreement in accordance with its terms if failure arises out of causes beyond the control of the Parties. Such causes may include, but are not limited to, acts of God or the public enemy, acts of civil or military authority, fires, floods, earthquakes, water disasters, strikes, sabotage, insurrection, epidemic, pandemic, nuclear incident, unavailability of energy or communications sources, materials or equipment not caused by the Parties, riots, war or priorities resulting from the foregoing.

G.  <u>Delivery</u>.  A written notice by either Party to the other will be deemed delivered: (i) when personally delivered; (ii) on the second calendar day after: (1) deposit with an overnight international courier, or (2) deposit with any other registered or certified mail carrier, return receipt requested; or (iii) when confirmed if by facsimile transmission, in each of the foregoing cases, to the other Party at its address given in <u>Section 4.H</u>, or at the address specified by the other Party, provided notice of change of address is given pursuant to the terms of this Section 4.G.

H.  <u>Notices</u>. Notices under this Agreement are to be addressed as follows:

If to Licensor:

> Sturm, Ruger & Company, Inc.
> 1 Lacey Place
> Southport, Connecticut 06890
> Attention: Christopher J. Killoy
> Email: ckilloy@ruger.com

With a copy to each of (which copy alone shall not constitute notice):

> Sturm, Ruger & Company, Inc.
> 1 Lacey Place
> Southport, Connecticut 06890
> Attention: Kevin B. Reid, Sr., Esq.
> Email: kreid@rugerlegal.com

> and

> Dentons US LLP
> 1221 Avenue of the Americas
> New York, NY 10020-1089
> Attention:  Claude D. Montgomery, Esq.
> E-mail: claude.montgomery@dentons.com

If to Licensee:

> REM TML Holdings, LLC
> 888 SE 3 Avenue, Suite 500

Fort Lauderdale, FL 33316
Attention: Scott Soura
Email: soura@roundhillgroup.com

With a copy to (which copy alone shall not constitute notice):

Shulman Bastian Friedman & Bui, LLP
100 Spectrum Center Drive, Suite 600
Irvine, California 92618
Attention: James C. Bastian, Jr., Esq.
Email: jbastian@shulmanbastian.com

  I. <u>Execution</u>.  This Agreement may be executed by facsimile or PDF (electronic mail) copies in counterparts, each of which will be deemed an original and all of which together will constitute one and the same Agreement. Notwithstanding the foregoing, the Parties will deliver original execution copies of this Agreement to one another as soon as practicable following execution thereof.

  J. <u>Merger; Amendments</u>. This Agreement constitutes the entire understanding of the Parties with respect to the subject matter hereof, and will supersede any and all prior communications, negotiations, correspondence, course of dealings and other agreements between the Parties regarding such subject matter. This Agreement may only be amended or modified in a writing signed by both Parties. The terms and conditions of this Agreement will prevail notwithstanding any conflict with the terms and conditions of any purchase order, acknowledgment or other instrument submitted by Licensee.

  K. <u>Assignment</u>. Licensee may not assign this Agreement or transfer any of its rights or obligations under this Agreement to any party; provided, that Licensee may make a one-time transfer of this Agreement to an entity which acquires all or substantially all the assets and business of Licensee, in which case Licensee shall provide written notice, pursuant to the terms of Section 4.G. within thirty (30) days of such transfer. Notwithstanding the aforementioned, Licensee shall have the right to assign, sublicense, transfer, sell, or pledge its rights hereunder without any required notice or consent to: (i) any corporation, partnership, limited liability company, joint-stock company or trust that is wholly-owned by, controls, is controlled by, or is under common control with Licensee or Buyer; or (ii) to a third-party as part of a sale of substantially all of Licensee's business or Affiliate's business.  Nothing in this Agreement, express or implied, is intended to confer upon any person or entity other than Licensee or Licensor any rights or remedies under or by reason of the existence of this Agreement and Licensor reserves all rights granted to it under 11 U.S.C. Section 363 of the United States Code to object to any subsequent transfer of this License not subject to express consent of Licensor.

[SIGNATURE PAGE FOLLOWS]

Page **5** of **6**

Case 20-81688-CRJ11    Doc 2408-3    Filed 02/18/22    Entered 02/18/22 12:40:44    Desc
Exhibit 1 and RJN 1: Ruger APA    Page 5 of 6

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed as of the as of the date first above written.

**LICENSOR**:

STURM, RUGER & COMPANY, INC.

_____
Name:
Date:

**BUYER**:

ROUNDHILL GROUP, LLC

_____
Name:
Date:

**LICENSEE:**

REM TML Holdings, LLC

_____
Name:
Date:

SIGNATURE PAGE TO PATENT LICENSE AGREEMENT