## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| In re:<br><br>REMINGTON OUTDOOR COMPANY, INC., *et al.*, [1]<br><br><br><br>Debtors. | Chapter 11<br><br>Case No. 20-81688-CRJ11<br><br>Jointly Administered |

## ORDER APPROVING THE SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL CLAIMS, LIENS, AND INTERESTS

This matter having come before the Court upon the motion (the "**Motion**")[2] by Remington

Outdoor Company, Inc., ("**Remington**" or the "**Company**"), and its affiliated debtors and debtors

in possession (collectively the "**Debtors**") in the above-captioned Chapter 11 cases seeking entry

of an order pursuant to §§ 105(a), 363, and 365 of title 11 of the United States Code (the

"Bankruptcy Code"), Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy

Procedure, (this "**Sale Order**") (a) authorizing the sale of the Acquired Assets (as defined in the

Asset Purchase Agreement (as defined below)) free and clear of all Interests (as defined below),

pursuant to that certain Asset Purchase Agreement dated September 26, 2020, attached hereto as

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405). The Debtors' corporate headquarters is located at 100 Electronics Blvd SW, Huntsville, Alabama 35824.

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Motion or the Asset Purchase Agreement, as applicable.

44250617 v1

09/30/2020 1:14 PM

Exhibit A (the "**Asset Purchase Agreement**" or "**APA**"), by and among the Debtors and Sturm, Ruger & Company., Inc. (the "**Buyer**"), and all other transaction documents related thereto; (b) authorizing the assumption and assignment of certain executory contracts and unexpired leases, if any; and (c) granting the related relief contemplated therein; and the Court having considered the evidence in support of the relief sought in the Motion; the objections to Debtors' Motion; and responses and any replies thereto and all of the statements, arguments and representations of the parties made at the Sale Hearing; and the entire record of these cases; and having found that (i) the Court has jurisdiction over this matter; (ii) venue is proper in this District; (iii) this is a core proceeding; (iv) the notice of the Motion and the Sale Hearing (as defined below) was sufficient under the circumstances; and (v) there is good cause to waive the stay of Bankruptcy Rule 6004(h); and based further on the statements of counsel and all of the evidence presented in support of the relief requested by the Debtors in the Motion at a hearing before this Court on September 29, 2020 (the "**Sale Hearing**"); and it appearing that proper notice having been given and no other notice need be given; and the Court, having determined that the relief sought in the Motion is in the best interests of the Debtors, and their estates, and that the legal and factual bases set forth in the Motion and presented at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

   A.   **Jurisdiction, Core Proceeding, Statutory Predicates, and Venue.**  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *General Order of Reference* of the United States District Court for the Northern District of Alabama dated July 16, 1984 as amended July 17, 1984.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The predicates for the relief granted herein are Bankruptcy Code Sections 105, 363,

and 365 and Bankruptcy Rules 2002, 6004, and 6006.  Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

      **B.**      **Just Cause.**  The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Sale Order is in the best interests of the Debtors and their respective estates, creditors, and all other parties in interest.

      **C.**      **Notice.**  The notice of the Motion, the Sale Hearing, the Asset Purchase Agreement, the transactions contemplated therein or in connection therewith and corresponding transactions documents (the "**Transactions**"), and the proposed entry of this Sale Order was adequate and sufficient under the circumstances of the Chapter 11 Cases, and such notice complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  A reasonable opportunity to object or be heard regarding the relief granted by this Sale Order has been afforded to those parties entitled to notice pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  Accordingly, no further notice of the Motion, the Sale Hearing, or this Sale Order is necessary or required.

      **D.**      The Publication Notice was published in the *New York Times* on August 24, 2020.  Such Publication Notice was compliant with the Bidding Procedures Order, and was sufficient and proper notice to any other interested parties, including those whose identities are unknown to the Debtors.

      **E.**      **Extensive Efforts by Debtors.**  Since before the commencement of the Chapter 11 Cases, the Debtors worked with their counsel and financial advisors to implement a viable transaction that would allow them to maximize the value of the Acquired Assets.  In addition, since the filing of the case the Debtors have worked with the financial advisors of the Committee to identify and solicit bids from any additional potential bidders identified by the Committee's

financial advisors. The transaction that is the subject of this Sale Order is the result of the Debtors' extensive efforts seeking to maximize recoveries to the Debtors' estates for the benefit of the Debtors' creditors.

F. **Business Justification.** The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business justification for the Court to grant the relief requested in the Motion, including, without limitation, to (i) authorize the sale of the Acquired Assets free and clear of Interests other than Permitted Liens (as defined in the Asset Purchase Agreement) and Assumed Liabilities (as defined in the Asset Purchase Agreement); (ii) authorize the assumption and assignment of certain executory contracts and unexpired leases; and (iii) grant related relief as set forth herein. Such compelling and sound business justification, which was set forth in the Motion and on the record at the Sale Hearing, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

G. **Bidding Procedures Order.** The Bidding Procedures Order [Docket No. 411] was entered by the Court on August 20, 2020, which, among other things (i) approved the Bidding Procedures; (ii) established the Assumption and Assignment Procedures; (iii) approved the form and manner of notice with respect to all procedures, protections, schedules, and agreements described in the Motion and attached thereto; and (iv) scheduled a date for the Auction and Sale Hearing. The Bidding Procedures provided a full, fair, and reasonable opportunity for any entity to make an offer to purchase the Acquired Assets.

H. **Auction Successful Bidder.** The sale process was properly conducted by the Debtors in accordance with the Bidding Procedures Order and in a manner designed to result in

the highest or otherwise best offer for the Acquired Assets. At the Auction, commencing on September 17, 2020 at 10:00 AM (Central Time) and concluding on September 24, 2020 at 4:16 PM (Central Time), the Debtors agreed in a reasonable exercise of their business judgment, in consultation with their management, the Restructuring Committee, advisors and the Bid Consultation Parties, to enter into and consummate Asset Purchase Agreement with the Buyer. At the conclusion of the Auction, the Buyer was determined to be the Successful Bidder.

I. **Asset Purchase Agreement.** The consummation of the Transactions contemplated by the Asset Purchase Agreement, the Motion, and this Sale Order is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and all of the applicable requirements of such sections and rules have been complied with in respect of such transactions.

J. **Sale Hearing.** The Sale Hearing occurred on September 29, 2020 in accordance with the Bidding Procedures Order.

K. **Adequate Marketing; Highest or Otherwise Best Offer.** As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing, including the Declaration of Ken D'Arcy in Support of Chapter 11 Petitions and First Day Pleadings of Remington Outdoor Company, Inc. and its affiliated debtors and debtors-possession [Docket No. 6] and the Declaration of Bradley C. Meyer in Support of Debtors' Cash Collateral Motion and Bidding Procedures Motion [Docket No. 355]; and (ii) the representations of counsel made on the record at the Bidding Procedures Hearing and the Sale Hearing, (a) the Debtors have adequately marketed the Acquired Assets and conducted a sale process in a non-collusive, fair and good faith manner in compliance with the Bidding Procedures Order; (b) the process set forth in the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any interested party to make

the highest or otherwise best offer to purchase the Acquired Assets and assume the Assumed Liabilities; (c) the consideration provided by the Buyer in the Asset Purchase Agreement constitutes the highest or otherwise best offer to purchase the Acquired Assets and assume the Assumed Liabilities; (d) the consideration provided by the Buyer in the Asset Purchase Agreement provides fair and reasonable consideration for the Acquired Assets and the assumption of the Assumed Liabilities and constitutes reasonably equivalent value, fair value and reasonable market value under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, the District of Columbia, or other applicable law; (e) the Sale will provide a greater recovery for the Debtors' creditors with respect to the Acquired Assets than would be provided by any other practically available alternative; (f) taking into consideration all relevant factors and circumstances, and after taking account of the Bid Protections, no other entity has offered to purchase the Acquired Assets for greater economic value to the Debtors or their estates; and (g) the Debtors' determination that the Asset Purchase Agreement constitutes the highest or otherwise best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtors' business judgment.

      **L.**     **No Successor Liability.** Neither the Buyer nor any of its affiliates, officers, directors, shareholders, members, partners, principals or any of their respective representatives, successors, or assigns is an "insider or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors, or stockholders existed or exists between the Buyer and the Debtors. The transfer of the Acquired Assets to and the assumption of the Assumed Liabilities by the Buyer, except as otherwise set forth in the Asset Purchase Agreement, does not, and will not, subject the Buyer to any liability whatsoever, with respect to the operation of the Debtors' businesses prior to the closing of the Sale or by reason of

such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity including, without limitation, any laws affecting antitrust, successor, transferee, or vicarious liability. Pursuant to the Asset Purchase Agreement, the Buyer is not purchasing all of the Debtors' assets in that the Buyer is not purchasing any of the Excluded Assets or assuming the Excluded Liabilities, and the Buyer is not holding itself out to the public as an *alter ego* or a continuation of the Debtors. The Buyer does not have any dominion or control over the Debtors and the Sale does not amount to a consolidation, merger, or *de facto* merger of the Buyer and the Debtors. There is no substantial continuity between the Buyer and the Debtors, and there is no continuity of enterprise between the Debtors and the Buyer. The Buyer is not a mere continuation of the Debtors or the Debtors' estates, and the Buyer does not constitute a successor to the Debtors or the Debtors' estates under any theory at law or in equity. None of the Transactions, including, without limitation, the Sale or the assumption and assignment of the Assigned Contracts, is being undertaken for the purpose of escaping liability for any of the Debtors' debts or hindering, delaying, or defrauding creditors under the Bankruptcy Code or for any other purpose that would give rise to statutory or common law fraudulent conveyance or fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, the District of Columbia, or any other applicable jurisdiction with laws substantially similar to the foregoing.

**M. Acquired Assets Property of the Estate.** The Acquired Assets are property of the Debtors' estates and title thereto is vested in the Debtors' estates.

**N. Sale in Best Interest/Fiduciary Duties.** The Debtors have demonstrated a sufficient basis and compelling circumstances requiring them to enter into the Asset Purchase

Agreement and sell the Acquired Assets and such actions are appropriate under the circumstances of these Chapter 11 Cases, are in the best interests of the Debtors, their estates and creditors, and other parties in interest, and represent a reasonable exercise of business judgment by the Debtors and the Restructuring Committee and their fulfillment of their fiduciary duties under applicable law. Approval of the Asset Purchase Agreement, the Sale, and the Transactions at this time is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest. Unless the sale is concluded expeditiously, the recoveries of all of the Debtors estates and constituencies are likely to be adversely affected.

O. **Not a *Sub Rosa* Plan.** The consummation of the Sale outside of a plan of reorganization pursuant to the Asset Purchase Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a plan of reorganization or liquidation for the Debtors. The Asset Purchase Agreement, the Sale and the transactions contemplated therein and associated therewith do not constitute an impermissible *sub rosa* Chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford.

P. **Arm's-Length Sale.** The Asset Purchase Agreement, the Sale, and the Transactions were negotiated, proposed, and entered into by the Debtors and the Buyer without collusion, in good faith, and from arm's-length bargaining positions. Neither the Debtors, their insiders and affiliates, nor the Buyer have engaged in any conduct that would cause or permit the Asset Purchase Agreement, the Sale, or any part of the transactions thereby to be avoided under Bankruptcy Code Section 363(n). Neither the Buyer nor any of its affiliates or representatives is an "insider" of the Debtors, as that term is defined in § 101(31). The terms and conditions of the Asset Purchase Agreement and any related transaction documents, including, without limitation,

the consideration provided in respect thereof, are fair and reasonable, and are not avoidable and shall not be avoided, and no damages may be assessed against the Buyer or any other party as set forth in § 363(n). The consideration provided by the Buyer is fair, adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable laws of the United States or any of its jurisdictions or subdivisions, including the State of Alabama.

Q.    **Good Faith Buyer.**  The Buyer is a good faith purchaser under Bankruptcy Code Section 363(m) and, as such, is entitled to all of the protections afforded thereby.  Specifically: (i) the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Acquired Assets; (ii) the Buyer complied in all respects with the provisions of the Bidding Procedures Order; (iii) the Buyer agreed to subject its bid to the competitive bid procedures set forth in the Bidding Procedures Order; (iv) all payments to be made by the Buyer in connection with the Sale have been disclosed; (v) no common identity of directors, officers or controlling stockholders exists among the Buyer and the Debtors; (vi) the negotiations and execution of the Asset Purchase Agreement was at arm's-length and in good faith, and at all times each of the Buyer and the Debtors were represented by competent counsel of their choosing; (vii) the Buyer did not in any way induce or cause the Chapter 11 filing of the Debtors; and (viii) the Buyer has not acted in a collusive manner with any person.  The Buyer will be acting in good faith within the meaning of Bankruptcy Code Section 363(m) in closing the transactions contemplated by the Asset Purchase Agreement.  The Asset Purchase Agreement was not entered into, and the Transaction being consummated pursuant to and in accordance with the Asset Purchase Agreement is not being consummated, for the purpose of hindering, delaying or defrauding creditors of the Debtors. The Buyer is therefore entitled to all of the benefits and protections provided to good-

faith purchasers under Bankruptcy Code Section 363(m). Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transaction shall not affect the validity of the Transaction, any terms or conditions of the Transaction or the Buyer's status as "good faith" purchaser under Bankruptcy Code Section 363(m).

R. **Corporate Authority.** Each Debtor (i) has full corporate power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby, and the Sale of the Acquired Assets has been duly and validly authorized by all necessary corporate actions of each of the Debtors; (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by the Asset Purchase Agreement; (iii) has taken all corporate action necessary to authorize and approve the Asset Purchase Agreement and the consummation by the Debtors of the transactions contemplated thereby; and (iv) needs no consents or approvals, other than those expressly provided for in the Asset Purchase Agreement, which may be waived in accordance with the terms therewith.

S. **Free and Clear Findings Required by the Buyer.** (1) In accordance with Bankruptcy Code Section 363(b) and 363(f), the consummation of the Sale pursuant to the Asset Purchase Agreement and any related transaction documents for the purchase of the assets as provided therein (the "**Acquired Assets"**) shall be a legal, valid, and effective transfer and sale of the Acquired Assets and shall vest in the Buyer, through the consummation of the Sale at closing with all of the Debtors' right, title, and interest in and to the Acquired Assets, free and clear of Liens (as defined below), Claims (as defined below) and Interests (defined below) (Claims and Interests collectively referred to as ("**Encumbrances"**)). The Debtors have demonstrated that one or more of the standards set forth in Bankruptcy Code Section 363(f)(1)-(5) have been satisfied. Those holders of Liens or Encumbrances who did not object, or who withdrew their objections, to

the sale or the Motion are deemed to have consented pursuant to Bankruptcy Code Section 363(f)(2). Those holders of Liens or Encumbrances who did object fall within one or more of the other subsections of Bankruptcy Code Section 363(f). All holders of the Liens or Encumbrances in the Acquired Assets are adequately protected by having their respective Liens or Encumbrances attach to the Debtors' interests in the proceeds of the sale of the Acquired Assets under the Asset Purchase Agreement.  (2) The Court further finds that the Buyer would not have entered into the Asset Purchase Agreement and would not consummate the Sale Transaction, thus adversely affecting the Debtors, their estates, and their creditors, if the Sale of the Acquired Assets to the Buyer and the assumption and assignment of Assigned Contracts, were not, pursuant to Bankruptcy Code Section 363(f), free and clear (except for Permitted Liens and Assumed Liabilities, if any) of (i) all liens (statutory or otherwise), claims, mortgages, deeds of trust, pledges, charges, security interests, rights of first refusal, hypothecations, encumbrances, easements, servitudes, leases or subleases, rights-of-way, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of offset or recoupment, right of use or possession, licenses, indentures, instruments, conditional sale arrangements (collectively "**Liens**"), (ii) all claims as defined in Bankruptcy Code Section 101(5), including all rights or causes of action (whether in law or in equity), proceedings, warranties, guarantees, indemnities, rights of recovery, setoff, recoupment, indemnity or contribution, obligations, demands, restrictions, indemnification claims, or liabilities relating to any act or omission of the Debtors or any other person prior to the Closing, consent rights, options, contract rights, covenants, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of the above-captioned cases, and whether imposed by

agreement, understanding, law, equity or otherwise, (collectively "**Claims**"), and (iii) all rights and entitlements of any nature including, without limitation, security interests, assignments of Liens or Claims, licenses, leases, contract rights, indentures, instruments, licenses, options, escheatment, abandoned property, unclaimed property, covenants, conditions, zoning, planning and any other restrictions, easements, encroachments, Permits or other interests in property or limitations on the use of real property or irregularities in title, rights of first refusal, rights to injunctive or other legal or equitable relief, any attributes of ownership, rights or restrictions of any kind and nature, whenever incurred, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, matured or unmatured, legal or equitable (excluding Permitted Liens and Assumed Liabilities)( collectively, the "**Interests**"). (3) Except as expressly provided in the Asset Purchase Agreement, the Sale shall be free and clear of all Liens, and Encumbrances, and the Buyer shall not be responsible for, any Liens or Encumbrances, including, without limitation, in respect of the following: (i) any Liens or Encumbrances based on any successor or transferee liability, (ii) any Liens or Encumbrances that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or termination of the Debtors' or the Buyer's interest in the Acquired Assets, or any similar rights; (iii) any labor or employment agreements; (iv) mortgages, deeds of trust, and security interests; (v) intercompany loans and receivables between the Debtors and any non-Debtor subsidiary; (vi) any pension, multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of ERISA), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability; (vii) any other employee, worker's compensation, occupational disease, or unemployment or temporary disability

related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**"), (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Code and of any similar state law (collectively, "**COBRA**"), (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors, or (1) the WARN Act (29 U.S.C. §§2101 *et seq.*); (viii) any bulk sales or similar law; (ix) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (xii) any unexpired and executory contract or unexpired lease to which a Debtor is a party that is not an Assigned Contract that will be assumed and assigned pursuant to this Sale Order and the Asset Purchase Agreement; (xiii) any other Excluded Liabilities as provided in the Asset Purchase Agreement. A sale of the Acquired Assets other than one free and clear of all Liens and Encumbrances would yield substantially less value for the Debtors' estates, with less certainty, than the Sale as contemplated. Therefore, the Sale contemplated by the Asset Purchase Agreement and approved herein free and clear of all Interests, except for Permitted Liens and Assumed Liabilities, is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

T. **Valid and Binding Transfer.** The transfer of the Acquired Assets to the Buyer will be a legal, valid, and effective transfer of the Acquired Assets and, except for any Permitted

Liens and Assumed Liabilities, will vest the Buyer with all right, title, and interest of the Debtors to the Acquired Assets free and clear of all Interests and any liabilities of the Debtors.

U. **Satisfaction of Section 363(f) Standards.**  The transfer of the Acquired Assets to the Buyer under the Asset Purchase Agreement shall be a legal, valid, and effective transfer of all the legal, equitable, and beneficial right, title and interest in and to the Acquired Assets free and clear of all Liens and Encumbrances, other than the Assumed Liabilities and Permitted Liens.  The Debtors may sell the Acquired Assets free and clear of all Liens and Encumbrances, except for any  Permitted Liens and the Assumed Liabilities, because, in each case, one or more of the standards set forth in Bankruptcy Code Section 363(f)(1) through (5) has been satisfied, with all such Liens and Encumbrances  to attach to the proceeds of the Sale Transaction to be received by the Debtors with the same validity, force, priority and effect that they had as against the Acquired Assets, and any claims and defenses the Debtors and their estates may possess with respect thereto. Those holders of Interests, and non-debtor parties to the Assigned Contracts who did not object, or who withdrew their objections, to the Motion are, without limitation, deemed to have consented pursuant to Bankruptcy Code Section 363(f)(2).  In all cases, each such person with Liens or Encumbrances in the Acquired Assets is enjoined from taking any action against the Buyer, the Buyer's affiliates, or any agent of the foregoing to recover any such Interest.

V. **Necessity of Order.**  The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the Sale Transaction without all of the relief provided for in this Sale Order (including, but not limited to, that the transfer of the Acquired Assets to the Buyer be free and clear of all Liens and Encumbrances (other than Permitted Liens and the Assumed Liabilities)).  The consummation of the Sale Transaction pursuant to this Sale Order and

the Asset Purchase Agreement is necessary for the Debtors to maximize the value of their estates for the benefit of all creditors and other parties in interest.

W.     **Time of the Essence.**  The sale of the Acquired Assets must be approved and consummated promptly in order to preserve the value of the Acquired Assets.  Therefore, time is of the essence in consummating the Sale, and the Debtors and the Buyer intend to close the Sale as soon as reasonably practicable.

X.     **Assigned Contracts.**  The Debtors have demonstrated that it is their sound business judgment to sell, assume, and assign the "**Assigned Contracts**" (as such terms are defined in the Asset Purchase Agreement), including, without limitation, the unexpired leases and executory contracts designated on <u>Schedule 1.1(e)</u> of the Asset Purchase Agreement (collectively, the "**Assigned Contracts**" and, individually, an "**Assigned Contract**") to the Buyer in connection with the consummation of the Sale, and the assumption and assignment of the Assigned Contracts is in the best interests of the Debtors, their estates and creditors, and other parties in interest.  The Assigned Contracts being assigned to the Buyer are an integral part of the Acquired Assets being purchased by the Buyer, and, accordingly, such assumption and assignment of the Assigned Contracts and the liabilities associated therewith are reasonable and enhance the value of the Debtors' estates.  No section of any Assigned Contract that purports to prohibit, restrict, impose any penalty or fee on, or condition the use, consideration, or assignment of any such Assigned Contract in connection with the Transactions shall have any force or effect.

Y.     **Cure and Adequate Assurance.**  Through the Buyer's commitment to pay all Cure Costs related to the Assigned Contracts, if any, and upon the payment of Cure Costs by the Buyer pursuant to the terms of the Asset Purchase Agreement, the Debtors and the Buyer, as applicable, have cured or otherwise have demonstrated their ability to cure any default with respect to any act

or omission that occurred prior to the Closing (as defined in the Asset Purchase Agreement) under any of the Assigned Contracts, within the meaning of Bankruptcy Code Section 365(b)(l)(A). The proposed Cure Costs or any other cure amount reached by agreement after any objection by a counterparty to an Assigned Contract (an "**Assigned Contract Objection**") are deemed the amounts necessary to "cure" all "defaults," each within the meaning of Bankruptcy Code Section 365(b), under such Assigned Contracts. The Buyer's promise to perform the future obligations under the Assigned Contracts, if any, shall constitute adequate assurance of its future performance of and under the Assigned Contracts, within the meaning of Bankruptcy Code Sections 365(b)(l) and 365(f)(2). All counterparties to the Assigned Contracts who did not file an Assigned Contract Objection or an objection to the assumption and assignment of the Assigned Contracts prior to the Sale Hearing, are deemed to consent to the assumption by the Debtors of their respective Assigned Contract and the assignment thereof to the Buyer. The filed objections of all counterparties to the Assigned Contracts that were heard at the Sale Hearing (to the extent not withdrawn or adjourned), were considered by the Court, and are overruled on the merits with prejudice. The Court finds that, with respect to all such Assigned Contracts, the payment of the proposed Cure Costs by the Buyer in accordance with the terms of the Asset Purchase Agreement is appropriate and is deemed to fully satisfy the Debtors' obligations under Bankruptcy Code Section 365(b). Accordingly, all of the requirements of Bankruptcy Code Section 365(b) have been satisfied for the assumption by the Debtors and the assignment to the Buyer of each of the Assigned Contracts. To the extent any Assigned Contract is not an executory contract within the meaning of Bankruptcy Code Section

365, it shall be transferred to the Buyer in accordance with the terms of this Sale Order that are applicable to the Acquired Assets.

Z.     **Unenforceability of Anti-Assignment Provisions.**    Any provisions in any Assigned Contract that restrict, limit, prohibit or condition the assumption, assignment, and sale of the Assigned Contracts or that allow the counterparty so such Assigned Contract to terminate, recapture, impose any penalty or fee, accelerate, increase any rate, condition on renewal or extension, or modify any term or condition upon the assignment of such Assigned Contract, should be deemed and found to be unenforceable anti-assignment provisions that are void and of no force and effect within the meaning of Bankruptcy Code Section 365(f).

AA.     **Objections are Overruled.**    All objections to the relief requested in the Motion that have not been withdrawn, waived, adjourned or settled as announced to the Court at the Sale Hearing or by stipulations filed with the Court are overruled except as otherwise set forth herein.

BB.     **Final Order.**    This Sale Order constitutes a final order within the meaning of 20 U.S.C. § 158(a).    Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order and expressly directs entry of judgment as set forth herein.

CC.     **Best Interest.**    Entry of this Sale Order is in the best interests of the Debtors, the Debtors' estates, their creditors, and other parties in interest.

DD.     **Findings and Conclusions.**    The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014.    To the extent any findings of facts are

conclusions of law, they are adopted as such.  To the extent any conclusions of law are findings of fact, they are adopted as such.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

**General Provisions**

1.      The Motion is **APPROVED** and the relief requested therein with respect to the Sale is granted and approved in its entirety, as set forth herein.

2.      Any objections to the entry of this Sale Order or to the relief granted herein or the relief requested in the Motion, including any objections to the proposed Cure Costs or the assumption and assignment of any Assigned Contracts, that have not been adjourned, withdrawn, waived, or settled, or not otherwise addressed or resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits with prejudice.

**Approval of the Sale of the Acquired Assets**

3.      The Debtors are authorized to enter into the Asset Purchase Agreement (and all ancillary documents) and all the terms and conditions thereof, and all of the Transactions contemplated therein are approved in all respects.  The transfer of the Acquired Assets by the Debtors to the Buyer shall be a legal, valid and effective transfer of the Acquired Assets.

4.      Pursuant to Bankruptcy Code Section 363(b), the sale of the Acquired Assets to the Buyer free and clear of all Liens and Encumbrances (other than the Permitted Liens and the Assumed Liabilities), and the transactions contemplated thereby is approved in all respects.

**Sale and Transfer of the Acquired Assets**

5.      Pursuant to Bankruptcy Code Sections 105, 363, and 365, the Debtors are authorized to (a) take any and all actions necessary or appropriate to perform their obligations under, and comply with the terms of, the Asset Purchase Agreement and consummate the Sale and the Transactions pursuant to, and in accordance with, the terms and conditions of the Asset

Purchase Agreement and this Sale Order, including, without limitation (i) executing, acknowledging, and delivering such deeds, assignments, conveyances and other assurances, documents, and instruments of transfer and taking any action for purposes of assigning, transferring, granting, conveying, and conferring to the Buyer, or reducing to possession, any or all of the Acquired Assets and (ii) entering into any transition services or operations support agreements with the Buyer and any other agreements related to implementing the Transactions and (b) take any and all further actions as may be necessary or appropriate to the performance of their obligations as contemplated by the Asset Purchase Agreement or this Sale Order. The Debtors are further authorized to pay, without further order of this Court, whether before, at, or after the Closing, any reasonable expenses or costs that are required to be paid to consummate the Transactions or perform their obligations under the Asset Purchase Agreement.

6.     Following the Closing, the Debtors or the Buyer and/or their respective designees are authorized to execute and file a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all obligations, liabilities, Liens and Encumbrances in the Acquired Assets of any kind or nature whatsoever (other than the Permitted Liens and Assumed Liabilities). Upon the Closing and the Debtors' receipt of the Purchase Price, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Debtors' interests in the Acquired Assets and a bill of sale transferring good and marketable title in the Acquired Assets to the Buyer free and clear of all Liens and Encumbrances, except for the Permitted Liens and Assumed Liabilities. Each and every federal, state, and local governmental agency, quasi-agency, or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions. A certified copy of this Sale Order

may be filed with the appropriate clerk and/or recorded with the appropriate recorder to cancel any Encumbrances of record.

7. Except for the Permitted Liens, Assumed Liabilities or as expressly provided in the Asset Purchase Agreement, pursuant to Bankruptcy Code Sections 105(a) and 363(f), upon the Closing and the Debtors' receipt of the Purchase Price, the Acquired Assets shall be transferred to the Buyer as required under the Asset Purchase Agreement, and such transfer shall be free and clear of all Liens and Encumbrances of any person, including, without limitation, all such Interests specifically enumerated in this Sale Order, whether arising by agreement, by statute, or otherwise and whether occurring or arising before, on, or after the Petition Date, whether known or unknown, occurring, or arising prior to such transfer, with all such Interests to attach to the proceeds of the Sale ultimately attributable to the property against or in which the holder of an Interest claims or may claim an Interest, in the order of their priority, with the same validity, force, and effect which they now have, subject to any claims and defenses the Debtors may possess with respect thereto.

8. The transfer of the Acquired Assets to the Buyer pursuant to the Asset Purchase Agreement constitutes a legal, valid, and effective transfer of the Acquired Assets and shall vest the Buyer with all right, title, and interest of the Debtors in and to the Acquired Assets free and clear of all Liens and Encumbrances of any kind or nature whatsoever relating to same, except for the Permitted Liens and Assumed Liabilities, with all such Liens and Encumbrances to attach to the proceeds of the Sale ultimately attributable to the property against or in which the holder of a Lien or Encumbrance claims or may claim, in the order of their priority, with the same validity, force, and effect which they now have, subject to any claims and defenses the Debtors may possess with respect thereto.

9.      Any person or entity that is currently, or on the Closing Date may be, in possession of some or all of the Acquired Assets is hereby directed to surrender possession of such Acquired Assets either to (a) the Debtors before the Closing or (b) to the Buyer or its designees upon the Closing, and to cooperate with the Debtors and the Buyer in the Debtors' and the Buyer's fulfillment of their obligations hereunder and pursuant to the APA.  All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Acquired Assets to the Buyer in accordance with the Asset Purchase Agreement and this Sale Order; *provided* that the foregoing restriction shall not prevent any party from appealing this Sale Order in accordance with applicable law or opposing any appeal of this Sale Order, or from enforcing its rights under Bankruptcy Code Section 365 or relieve the Buyer of any Assumed Liability.

10.      Except as expressly permitted by the Asset Purchase Agreement or this Sale Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, dealers, employees, litigation claimants, contract counterparties and other creditors, holding Liens, Encumbrances, and other interests of any kind or nature whatsoever, including, without limitation, rights or claims based on any taxes or successor or transferee liability, against or in a Debtor or the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets or the operation of the Acquired Assets before the Closing, or the transactions contemplated by the Asset Purchase Agreement, including, without limitation, the Sale and the assumption and assignment of the Assigned Contracts, are forever barred, estopped, and permanently enjoined from asserting against the Buyer, its respective

successors and assigns, its respective property and the Acquired Assets, such persons' or entities' liens, claims, encumbrances, or other Interests, including, without limitation, rights or claims based on any taxes or successor or transferee liability, *provided* that nothing herein shall impair or otherwise affect any right under Bankruptcy Code Section 365 of a lease or contract counterparty to an Assigned Contract under its respective Assigned Contract(s), or relieve the Buyer of any Assumed Liability.

11.    Upon the Closing, each of the Debtors' creditors and any other holder of a Lien or Encumbrance is authorized and directed, without cost to the Debtors, to execute such documents and take all other actions as may be necessary to release its interest in the Acquired Assets, if any, as such Lien or Encumbrance may have been recorded or may otherwise exist.  If any person or entity that has filed financing statements or other documents or agreements evidencing a Lien or Encumbrance in the Debtors or the Acquired Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Interests, which the person or entity has with respect to the Debtors or the Acquired Assets or otherwise, then the Buyer and its designees are authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Debtors or the Acquired Assets and to file, register, or otherwise record a certified copy of this Sale Order, which shall constitute conclusive evidence of the release of all Liens and Encumbrances  of any kind or nature whatsoever in the Debtors or the Acquired Assets (other than the Permitted Liens and Assumed Liabilities).  Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions

contemplated by the Asset Purchase Agreement, including, without limitation, recordation of this Sale Order.

12.     Upon the Closing and the Debtors' receipt of the Purchase Price, all entities that are currently, or on the Closing may be, in possession of some or all of the Acquired Assets are hereby directed to surrender possession of the Acquired Assets to the Buyer, unless the Buyer otherwise agrees.

13.     This Sale Order is self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Sale Order.

14.     To the maximum extent permitted by applicable non-bankruptcy law, (a) the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval (collectively, the "**Permits**") of the Debtors with respect to and included in the Acquired Assets, and (b) all Permits that are included in the Acquired Assets are deemed to have been, and hereby are directed to be, transferred to the Buyer as of the Closing Date. Nothing in this Sale Order, and nothing in the foregoing sentence, authorizes the transfer or assignment of any governmental Permit or the discontinuation of any obligation thereunder without compliance with all applicable legal requirements and approvals under police or regulatory law. To the extent any Permit cannot be transferred to the Buyer in accordance with this paragraph, the Buyer, with such assistance from the Debtors as is required under the Asset Purchase Agreement, will work promptly and diligently to apply for and secure all necessary government approvals for the transfer or new issuance of the Permit(s) to the Buyer, and the Debtors shall maintain the Permits to the extent required under and subject to the terms of the Asset Purchase Agreement. For the avoidance of doubt, while nothing in this Sale Order or the Asset Purchase

Agreement releases, nullifies, limits, waives, precludes, or enjoins the enforcement of any police or regulatory authority of a governmental unit, Buyer shall be entitled to operate under each state Permit currently held by or on behalf of the Debtors in relation to the Acquired Assets until such time as each such Permit is transferred to the Buyer and/or an equivalent Permit is issued to the Buyer.

15. To the extent provided by Bankruptcy Code Section 525, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Acquired Assets sold, transferred, or conveyed to the Buyer on account of the filing or pendency of these Chapter 11 Cases or the consummation of the transactions contemplated by the Asset Purchase Agreement and this Sale Order.

16. Buyer shall have no obligation to provide to any third party copies of any records transferred to Buyer in connection with the Asset Purchase Agreement or to respond to discovery requests for such records in connection with any pending litigation against the Debtors.

**Implementation of the Sale**

17. On Closing, the Buyer shall (a) pay the Purchase Price to the Debtors; (b) pay the Cure Amounts as more fully described in paragraph 31 of this Sale Order; (c) assume the Assumed Liabilities; and (d) perform any other obligations required to be performed by Buyer on the Closing. Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement, including, without limitation, recordation of this Sale Order.

18. Within three (3) business days of the Debtors' receipt of the Net Sale Proceeds (as defined in the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection, (III) Modifying Automatic*

*Stay, and (IV) Granting Related Relief* [Docket No. 410] (as it may be modified from time to time, the "**Cash Collateral Order**")) from the sale of the Acquired Assets, the Debtors shall pay the Net Sale Proceeds of the Acquired Assets to the Priority Term Loan Agent, for the account of the Priority Term Loan Secured Creditors, to the extent required under and in accordance with the terms of the Cash Collateral Order or such other order of the Court. Upon the Priority Term Loan Agent's timely receipt of such payment, (a) the Priority Term Loan Obligations shall be paid and satisfied to the extent of the payment and (b) all liens and security interests against the Acquired Assets securing the Priority Term Loan Obligations shall be automatically released and discharged without further action by any person. Upon the payment in full in cash of the Priority Term Loan Obligations and the occurrence of the Challenge Period Termination Date (as defined in the Cash Collateral Order), (w) the Debtors shall have no further indebtedness, liabilities or obligations owing under the Priority Term Loan Credit Agreement or the other "Financing Agreements" (as defined in the Priority Term Loan Agreement, the "**Priority Term Loan Documents**"), (x) other than any provisions thereof that survive pursuant to the terms thereof, the Priority Term Loan Credit Agreement and all other Priority Term Loan Documents (including, without limitation, any mortgages, guaranties and security agreements) and all of the Debtors' obligations thereunder shall terminate and be of no further force and effect, (y) all liens and security interests against the property and assets of the Debtors securing the Priority Term Loan Obligations shall be automatically fully released and discharged without further action by any person, and (z) each deposit account control agreement in respect of or other sweeps or blocks of any Debtor's deposit accounts or lockboxes in favor of any of the Priority Term Loan Secured Parties shall terminate.

19.     The Debtors shall pay the Net Sale Proceeds from the Acquired Assets to the FILO Agent, for the account of the FILO Term Loan Secured Creditors, to the extent required under and

in accordance with the terms of the Cash Collateral Order or such other order of the Court. For the avoidance of doubt, any further payment to the FILO Agent shall be subject to orders previously entered by this Court and any further orders of this Court or provided under the Debtors' Chapter 11 plan.

20. All parties in interest in these Chapter 11 Cases expressly reserve their rights with respect to any allocation of the Purchase Price or value among the Acquired Assets, and any allocation of the Purchase Price or value among the Acquired Assets as determined by the Buyer shall not be determinative or binding on any party in interest in these Chapter 11 Cases except as ordered by the Court after notice and a hearing.

**No Successor Liability**

21. Other than as expressly set forth in the Asset Purchase Agreement, the Buyer shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any Interests, including under any theory of successor or transferee liability, *de facto* merger or continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated, including without limitation, with respect to any of the following: (i) any foreign, federal, state, or local revenue law, pension law, ERISA, COBRA, tax law, labor law, employment law, the WARN Act, antitrust law, CERCLA, and any other environmental, health and safety laws, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules or regulations); (ii) under any products liability law, rule, regulation, or doctrine with respect to the Debtors' liability under such law, rule, regulation, or doctrine, or under any product warranty liability law or doctrine; (iii) under any unfair trade practices law, rule, regulation or doctrine with respect to the Debtors' liability under such law, rule, regulation or doctrine, or under any unfair trade practices liability law or doctrine; (iv) any employment or labor agreements, consulting agreements,

severance arrangements, change-in-control agreements, or other similar agreement to which the Debtors are a party; (v) any welfare, compensation, or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of the Debtors; (vi) the cessation of the Debtors' operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation, or other employee benefit plans, agreements, practices and programs, obligations that might otherwise arise from or pursuant to (a) ERISA, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967, (g) the Americans with Disabilities Act of 1990, or (h) COBRA; (vii) any liabilities, debts, or obligations of or required to be paid by the Debtors for any taxes of any kind for any period; (viii) any environmental liabilities, debts, claims fines, penalties, or obligations arising from conditions, facts or circumstances first existing or occurring on or prior to the Closing (including, without limitation, the presence of or exposure to chemical, hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis and at any time, including, without limitation, any liabilities, debts, claims, fines, penalties or obligations arising under CERCLA, or any other environmental, health, and safety laws; (viii) any liabilities, debts, claims, fines, penalties, or obligations of or required to be paid by the Debtors for any taxes of any kind for any period; (ix) any liabilities, debts, claims, fines, penalties, or obligations of or required to be paid by the Debtors under any labor, employment, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules, or regulations); (x) any bulk sale law; and (xi) any litigation. The Buyer shall have no liability or obligation under the WARN Act simply by virtue of its purchase of assets from the Debtors.

22. The Buyer has given substantial consideration under the Asset Purchase Agreement, which consideration shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Buyer and which shall be deemed to have been given in favor of the Buyer by all holders of Interests and liabilities (except for Permitted Liens and the Assumed Liabilities) in or against the Debtors, or the Acquired Assets. Without limiting the Buyer's obligation to pay and satisfy any Assumed Liabilities, upon consummation of the Sale, the Buyer shall not be deemed to (a) be the successor to the Debtors or their estates, (b) have, *de facto* or otherwise, merged with or into the Debtors, or (c) be a mere continuation, alter ego or substantial continuation of the Debtors under any theory of law or equity as a result of any action taken in connection with the Asset Purchase Agreement or any of the transactions or documents ancillary thereto or contemplated thereby or in connection with the acquisition of the Acquired Assets.

23. Effective upon the Closing, except with respect to Assumed Liabilities and any Permitted Liens, all persons and entities are forever prohibited and enjoined from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against the Buyer or its assets (including the Acquired Assets) with respect to any (a) Lien or Encumbrance (b) successor or transferee liability, including, without limitation, the following actions with respect to clauses (a) and (b): (i) commencing or continuing any action or other proceeding pending or threatened; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or Encumbrance; (iv) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect

hereof; or (v) revoking, terminating, or failing or refusing to renew any License, permit, or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with such assets.

**Good Faith**

24.     The transactions contemplated by the Asset Purchase Agreement are undertaken by the Buyer without collusion and in good faith, as that term is used in Bankruptcy Code Section 363(m), and, accordingly, the reversal or modification on appeal of the authorization provided in this Sale Order to consummate the Sale and the Transactions shall not affect the validity of the transactions (including the assumption and assignment of any of the Assigned Contracts). The Buyer is a purchaser in good faith of the Acquired Assets and is entitled to all the protections afforded by Bankruptcy Code Section 363(m).

25.     As a good faith purchaser of the Acquired Assets, the Buyer has not entered into an agreement with any other potential bidders at the Auction, and has not colluded with any of the other bidders, potential bidders or any other parties interested in the Acquired Assets, and, therefore, neither the Debtors nor any successor in interest to the Debtors' estates shall be entitled to bring an action against the Buyer, and the Sale may not be avoided pursuant to Bankruptcy Code Section 363(n).

26.     The consideration provided by the Buyer for the Acquired Assets under the Asset Purchase Agreement constitutes reasonably equivalent value, fair value, reasonable market value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.  The Sale may not be avoided under Bankruptcy Code Section 363(n).  The Asset Purchase Agreement was not entered into, and the Sale is not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtors under the Bankruptcy Code or for any other purpose that would give rise to statutory

or common law fraudulent conveyance or fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable jurisdiction with laws substantially similar to the foregoing. Neither the Debtors nor the Buyer have entered into the Asset Purchase Agreement or any agreement contemplated thereby or are consummating the Sale with any fraudulent or otherwise improper purpose, including, without limitation, to evade any pension liabilities. No other person or entity or group of persons or entities has offered to purchase the Acquired Assets for an amount that would provide greater value to the Debtors and their estates than the value provided by the Buyer. The Court's approval of the Motion and the Asset Purchase Agreement are in the best interests of the Debtors, the Debtors' estates, their creditors, and all other parties in interest.

27.     The Buyer is not an "insider" as that term is defined in Section 101(31) of the Bankruptcy Code.

**Assumption and Assignment of Assigned Contracts; Assumed Liabilities**

28.     Pursuant to Bankruptcy Code Sections 105(a), 363, and 365 and subject to and conditioned upon the Closing of the Sale, the Debtors' sale, assumption and assignment to the Buyer of the Assigned Contracts is approved, and the requirements of Bankruptcy Code Section 365(b)(1) with respect thereto are deemed satisfied.

29.     The Debtors are authorized in accordance with Bankruptcy Code Sections 105(a) and 365 to (i) assume and assign to the Buyer, effective as of the Closing, as provided by, and in accordance with, the Bidding Procedures Order and the Asset Purchase Agreement, the Assigned Contracts free and clear of all Interests of any kind or nature whatsoever, other than the Permitted Liens and Assumed Liabilities if any, and (ii) execute and deliver to the Buyer such documents or

other instruments as the Buyer reasonably deems necessary to assign and transfer the Assigned Contracts to the Buyer.

30. The Assigned Contracts shall be transferred and assigned to, pursuant to the Bidding Procedures Order and the Asset Purchase Agreement, and thereafter remain in full force and effect for the benefit of, the Buyer, notwithstanding any provision in any such Assigned Contract (including, but not limited to, those of the type described in Bankruptcy Code Sections 365(b)(2), (e)(1), and (f)) that prohibits, restricts, or conditions such assignment or transfer. The Debtors shall be relieved from any further liability with respect to the Assigned Contracts after such assumption and assignment to the Buyer. The Debtors may assign each Assigned Contract in accordance with Bankruptcy Code Sections 363 and 365, and any provisions in any Assigned Contracts that prohibit or condition the assignment of such Assigned Contracts or terminate, recapture, impose any penalty, condition, renewal, or extension, or modify any term or condition upon the assignment of such Assigned Contracts, constitute unenforceable anti-assignment provisions which are void and of no force and effect. All other requirements and conditions under Bankruptcy Code Sections 363 and 365 for the assumption by the Debtors and assignment to the Buyer of each Assigned Contract have been satisfied.

31. All defaults and all other obligations or liabilities under any Assigned Contract occurring, arising, or accruing prior to the date of the assignment or transfer to the Buyer shall be deemed cured or satisfied upon payment by the Buyer (in accordance with Section 1.5 of the Asset Purchase Agreement) of the proposed Cure Cost, as set forth in the Notice of Assumption and Assignment, or any other cure amount reached by agreement after an Assigned Contract Objection or otherwise, and, without limiting the foregoing, no effect shall be given to any default of the type set forth in Bankruptcy Code Section 365(b)(2), or the type of default concerning an unexpired

lease of real property described in Bankruptcy Code Section 365(b)(1) whether or not such Assigned Contract is an executory contract within the meaning of Bankruptcy Code Section 365.

32. Each non-Debtor counterparty to the Assigned Contracts shall be forever barred, estopped, and permanently enjoined from (a) asserting against the Debtors, the Buyer, or their respective property (including the Acquired Assets) any fee, acceleration, default, breach, Claim (including any counterclaim, defense, or setoff capable of being asserted against the Debtors), pecuniary loss, or condition to assignment existing, arising, or accruing as of the Closing Date, or arising by reason of the Closing, including any breach related to or arising out of any change-in-control provision in such Assigned Contracts, or any purported written or oral modification to the Assigned Contracts, and (b) asserting against the Buyer (or its property, including the Acquired Assets) any Claim or Lien, counterclaim, breach, condition or setoff asserted or capable of being asserted against the Debtors existing as of the Closing Date or arising by reason of the Closing except for the Assumed Liabilities and Permitted Liens.

33. The Cure Costs amounts listed on the Notice of Assumption and Assignment, or any other cure amount reached by agreement after an Assigned Contract Objection or otherwise, reflect the sole amounts necessary under Bankruptcy Code Section 365(b) to cure all monetary defaults under the Assigned Contracts, and no other amounts are or shall be due to the non-debtor parties in connection with the assumption by the Debtors and assignment to the Buyer of the Assigned Contracts. Notwithstanding anything to the contrary herein, if the Cure Costs for an Assigned Contract is determined to be greater than the proposed Cure Costs asserted in the Notice of Assumption and Assignment or Supplemental Notice of Assumption and Assignment, the Buyer may decide, in its discretion, not to assume that Assigned Contract.

34.     The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Buyer's rights to enforce every term and condition of the Assigned Contracts.

35.     Notwithstanding anything in the Asset Purchase Agreement or this Sale Order to the contrary and for the avoidance of doubt, the Acquired Assets shall not include any of the Excluded Assets as set forth in Section 1.2 of the Asset Purchase Agreement.

36.     The Buyer shall be responsible for the satisfaction of the Assumed Liabilities under the Asset Purchase Agreement, including without limitation the Cure Costs, if any.  Except as provided in the Asset Purchase Agreement or this Sale Order, after the Closing, the Debtors and their estates shall have no further liability or obligations with respect to any Assumed Liability, including those arising under the Assigned Contracts, if any, and all holders of such claims are forever barred and estopped from asserting any claims under any Assumed Liability (including those arising under the Assigned Contracts) against the Buyer, the Debtors, their successors or assigns, and their estates.

**Backup Bidder**

37.     Long Range Acquisition LLC is hereby approved as the Backup Bidder and pursuant to Bankruptcy Code Sections 105, 363, and 365, the Asset Purchase Agreement attached hereto as Exhibit B (the "**Backup Bid Agreement**") submitted by Long Range Acquisition LLC (the "**Backup Bidder**"), the sale of the Acquired Assets and consummation of the Sale to the Backup Bidder are hereby approved as the Backup Bid.  The Backup Bid pursuant to the terms set forth in the Backup Bid Agreement, is hereby approved and authorized as a Backup Bid and shall remain open as a Backup Bid pursuant to the terms of the Bidding Procedures Order and the bid terms submitted at the Auction.  In the event that the Successful Bidder cannot or refuses to consummate the Sale because of a breach or failure on the part of the Successful Bidder, the

Backup Bidder will be deemed the new Successful Bidder and the Debtors shall be authorized, but not directed, to close, and take all actions necessary to close, with the Backup Bidder on the Backup Bid without further order of the Court, and in such case the findings and other provisions of this Sale Order, to the extent consistent with the terms of the Backup Bid, shall apply to the Backup Bidder and the Backup Bid Agreement to the same extent they do with respect to the Buyer and the Asset Purchase Agreement.

**<u>Other Provisions</u>**

38.  Nothing in this Sale Order or in the Asset Purchase Agreement entered into pursuant to this Sale Order releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory authority of a governmental unit.

39.  This Sale Order and the Asset Purchase Agreement shall be binding in all respects upon all known and unknown creditors of, and holders of equity security interests in, any Debtor, including any holders of Liens and Encumbrances, all counterparties to the Assigned Contracts, all counterparties to contracts that are not assumed or assigned, all successors and assigns of the Buyer, each Debtor and their affiliates and subsidiaries, the Acquired Assets, and any trustees appointed in the Chapter 11 Cases or upon a conversion to cases under Chapter 7 of the Bankruptcy Code, and this Sale Order shall not be subject to amendment or modification and the Asset Purchase Agreement shall not be subject to rejection.  Nothing contained in any Chapter 11 plan confirmed in any Debtor's bankruptcy case, any order confirming any such Chapter 11 plan, or any other order in the Chapter 11 Cases shall alter, conflict with, or derogate from, the provisions of the Asset Purchase Agreement or this Sale Order.

40.  To the extent applicable, the automatic stay pursuant to Section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtors to the extent necessary, without further order of the Court (a) to allow the Buyer to give the Debtors any notice provided for in the

Asset Purchase Agreement, and (b) to allow the Buyer to take any and all actions permitted by the Asset Purchase Agreement.

41.     No bulk sales law or similar law shall apply in any way to the transactions contemplated by the Sale, the Asset Purchase Agreement, the Motion, and this Sale Order.

42.     This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Asset Purchase Agreement, all amendments thereto, and any waivers and consents thereunder, including, but not limited to, retaining jurisdiction to (i) enforce the terms of the Asset Purchase Agreement; (ii) compel delivery of the Acquired Assets to the Buyer; (iii) interpret, implement, and enforce the provisions of this Sale Order; (iii) protect the Buyer, any of the Buyer's affiliates, or any agent of the foregoing, against any Interests against the Debtors or the Acquired Assets of any kind or nature whatsoever, except for the Permitted Liens and Assumed Liabilities, and (iv) enter any order under Bankruptcy Code Sections 363 and 365.

43.     No brokers for the Buyer were involved in consummation of the Sale, and no brokers' commissions are due to any person in connection with the Sale; *provided, however*, that this provision does not impact any transaction or other fees due to investment bankers or financial advisors employed (a) by the Debtors, including, but not limited to Ducera Partners LLC, or certain of their creditors for which the Debtors may be obligated to pay in accordance with an engagement letter with such professional(s), or (b) by the Buyer.

44.     To the extent there is any inconsistency between the express terms of this Sale Order and the terms of the Asset Purchase Agreement (including all ancillary documents executed in connection therewith), the express terms of this Sale Order shall govern.

45.     The failure to specifically include any particular provision of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement be authorized and approved in its entirety.

46.     The Asset Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, *provided* that the Debtors shall provide the Bid Consultation Parties with three (3) business days' notice thereof and *provided* further that any such modification, amendment, or supplement does not, based on the Debtors' judgment, have a material adverse effect on the Debtors' estates.

47.     Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Sale Order shall not be stayed for fourteen (14) days after its entry and shall be effective immediately upon entry, and the Debtors and the Buyer are authorized to immediately close the transaction in accordance with the terms of the Asset Purchase Agreement upon entry of this Sale Order. Time is of the essence in closing the transactions referenced herein, and the Debtors and the Buyer intend to close the transactions as soon as practicable. This Sale Order is a final, appealable order and the period in which an appeal must be filed shall commence upon the entry of this Sale Order.

48.     The provisions of the Asset Purchase Agreement and this Sale Order may be specifically enforced in accordance with the Asset Purchase Agreement notwithstanding the appointment of any Chapter 7 or Chapter 11 trustee after the Closing.

49.     Headings utilized in this Sale Order are for convenience of reference only, and do not constitute a part of this Sale Order for any other purpose.

50.     All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

51.     The provisions of this Sale Order are non-severable and mutually dependent.

52.     All issues raised by Oracle America, Inc. ("**Oracle**") in *Oracle's Limited Objection and Reservation of Rights Regarding (a) Debtors' Motion for (a) an Order Establishing Bidding Procedures and Granting Related Relief and (ii) an Order or Orders Approving the Sale of the Debtors' Assets; and (b) Notice of Executory Contracts and Unexpired Leases that May Be Assumed and Assigned in Connection with the Sale of the Debtors' Assets and the Proposed Cure Cost with Respect Thereto* (the "Oracle Objection") [Docket No. 529] are expressly reserved. The Oracle Objection may be set for hearing on an expedited basis upon the request of Oracle and/or the Debtors.

53.     Nothing in the Asset Purchase Agreement or in this Order shall have the effect of transferring, impairing, reducing or otherwise limiting any of the Debtors' rights in any insurance policies covering Excluded Liabilities or the proceeds of such polices. For the avoidance of doubt, the Debtors reserve control over the privilege concerning any retained documents and nothing in this Order relieves the Debtors of any document retention obligations.

Dated this the 30th day of September, 2020.

/s/ Clifton R. Jessup, Jr.
Clifton R. Jessup, Jr.
United States Bankruptcy Judge

**EXHIBIT A**

**Asset Purchase Agreement**

# EXHIBIT B

# Backup Bid Agreement

44250617 v1

09/30/2020 1:14 PM

ASSET PURCHASE AGREEMENT

by and among

STURM, RUGER & COMPANY, INC.

as Buyer,

and

REMINGTON OUTDOOR COMPANY, INC.

and

EACH OF THE SUBSIDIARIES OF REMINGTON OUTDOOR COMPANY, INC.,

as Seller

SET FORTH ON THE SIGNATURE PAGES HERETO

Dated as of September 26, 2020

# TABLE OF CONTENTS

Page

ARTICLE 1. PURCHASE AND SALE OF THE ACQUIRED ASSETS .................................. 6

Section 1.1     Transfer of Acquired Assets ..................................... 6
Section 1.2     Excluded Assets .................................................... 7
Section 1.3     No Assumption of Liabilities .................................. 9
Section 1.4     Designation of Leases and Contracts for Assumption by Seller and Assignment to Buyer; Cure Amount .......................................... 11
Section 1.5     Non-Assignment of Acquired Assets ......................... 11
Section 1.6     Further Conveyances and Assumptions ...................... 12

ARTICLE 2. CONSIDERATION ............................................................ 13

Section 2.1     Consideration ...................................................... 13
Section 2.2     Good Faith Deposit .............................................. 13

ARTICLE 3. CLOSING AND DELIVERIES ............................................. 13

Section 3.1     Closing ............................................................... 13
Section 3.2     Seller's Deliveries ............................................... 14
Section 3.3     Buyer's Deliveries ............................................... 15

ARTICLE 4. REPRESENTATIONS AND WARRANTIES ........................ 15

Section 4.1     Representations and Warranties of Seller ................. 15
Section 4.2     Representations and Warranties of Buyer ................. 17
Section 4.3     Warranties Exclusive; Schedules ............................ 19
Section 4.4     Survival of Representations and Warranties ............. 19

ARTICLE 5. COVENANTS OF THE PARTIES ....................................... 19

Section 5.1     Covenants of Seller ............................................. 19
Section 5.2     Covenants of Buyer ............................................. 20

ARTICLE 6. ADDITIONAL AGREEMENTS ........................................ 21

Section 6.1     Bankruptcy Matters ............................................. 21
Section 6.2     Further Assurances ............................................. 22
Section 6.3     Reserved ........................................................... 22
Section 6.4     Reserved ........................................................... 22
Section 6.5     Transitional License ............................................ 22
Section 6.6     Access Covenant ................................................ 23
Section 6.7     Indemnification for Use of Real Property ................ 23
Section 6.8     Removal of Assets ............................................... 23
Section 6.9     Certain Records .................................................. 24

ARTICLE 7. EMPLOYEES AND WARN .............................................. 24

Section 7.1     Transferred Employees ......................................... 24
Section 7.2     WARN Act .......................................................... 24
Section 7.3     Third-Party Beneficiary ........................................ 24

ARTICLE 8. TAXES ......................................................................... 25

Section 8.1     Taxes Related to Purchase of Assets ....................... 25

Section 8.2     Cooperation on Tax Matters ............................................................. 25
Section 8.3     Allocation of Purchase Price........................................................... 27

ARTICLE 9. CONDITIONS PRECEDENT TO PERFORMANCE BY PARTIES ................. 27

Section 9.1     Conditions Precedent to Performance by Seller ............................... 27
Section 9.2     Conditions Precedent to Performance by Buyer............................... 28

ARTICLE 10. TERMINATION ............................................................................... 28

Section 10.1    Conditions of Termination ............................................................. 28
Section 10.2    Effect of Termination; Remedies.................................................... 30

ARTICLE 11. MISCELLANEOUS ........................................................................... 30

Section 11.1    Successors and Assigns................................................................. 30
Section 11.2    Governing Law; Jurisdiction.......................................................... 31
Section 11.3    WAIVER OF JURY TRIAL ......................................................... 31
Section 11.4    Expenses .................................................................................... 31
Section 11.5    Broker's and Finder's Fees ........................................................... 31
Section 11.6    Severability ................................................................................ 31
Section 11.7    Notices ...................................................................................... 32
Section 11.8    Amendments; Waivers.................................................................. 33
Section 11.9    Time of Essence .......................................................................... 33
Section 11.10   Specific Performance .................................................................. 33
Section 11.11   Public Announcements ................................................................ 33
Section 11.12   Entire Agreement ....................................................................... 34
Section 11.13   Parties in Interest........................................................................ 34
Section 11.14   Bulk Sales Laws......................................................................... 34
Section 11.15   Construction............................................................................... 34
Section 11.16   Counterparts and Facsimile.......................................................... 34

ARTICLE 12. DEFINITIONS ................................................................................. 35

Section 12.1    Certain Terms Defined.................................................................. 35
Section 12.2    All Terms Cross-Referenced.......................................................... 43

### SCHEDULES

Schedule 1.1(b)   -   Owned FF&E
Schedule 1.1(c)   -   Leased FF&E
Schedule 1.1(e)   -   Assigned Business Contracts
Schedule 1.1(h)   -   Inventory
Schedule 1.4(a)   -   Estimated Cure Amount
Schedule 4.1(f)   -   Compliance with Law
Schedule 4.1(g)   -   Contracts
Schedule 4.1(h)   -   Material Permits
Schedule 11.5     -   Brokers and Finders
Schedule 12.1(a)  -   Intellectual Property

**EXHIBIT**

Exhibit 1          -     Bidding Procedures Order

4

# ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "<u>Agreement</u>"), dated as of September 26, 2020 (the "<u>Effective Date</u>"), is entered into by and among Remington Outdoor Company, Inc., a Delaware corporation and debtor-in-possession ("<u>ROC</u>"), each of the subsidiaries of ROC set forth on the signature pages to this Agreement (collectively with ROC, "<u>Seller</u>"), and Sturm, Ruger & Company, Inc. ("<u>Buyer</u>"), or a Buyer Acquisition Vehicle as assignee in accordance with <u>Section 11.1</u>. Capitalized terms used in this Agreement are defined or cross-referenced in <u>Article 12</u>.

## *RECITALS*

A.     Seller is engaged in the design, development, testing, manufacture, marketing, sale and distribution of Marlin brand products (including discontinued products and those yet to be launched) using the Marlin name (the "<u>Products</u>" and the design, development, testing, manufacture, marketing and sale of the Products is collectively referred to herein as the "<u>Business</u>"), and owns various assets related to the Business. On July 27, 2020 (the "<u>Petition Date</u>"), each of the entities comprising Seller filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code, 11 U.S.C. §§ 101, *et seq.* (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Northern District of Alabama (the "<u>Bankruptcy Court</u>") administratively consolidated under Case No. 20-81688-CJR11 (the "<u>Bankruptcy Case</u>").

B.     On the Petition Date, Seller filed a Motion for (I) an Order Establishing Bidding Procedures and Granting Related Relief and (II) an Order or Orders Approving the Sale of the Debtors' Assets (the "<u>Bidding Procedures Motion</u>") pursuant to which Seller sought, and the Bankruptcy Court approved, the Bidding Procedures Order attached hereto as <u>Exhibit 1</u> (the "<u>Bidding Procedures Order</u>").

C.     Buyer desires to purchase the Acquired Assets free and clear of Liens, Claims and Interests, but not assume any Claims of Seller, and Seller desires to sell, convey, assign and transfer to Buyer, the Acquired Assets, all in the manner and subject to the terms and conditions set forth in this Agreement and in accordance with Sections 105, 363 and 365 and other applicable provisions of the Bankruptcy Code.

D.     Buyer, in exchange for the transfer to Buyer of the Acquired Assets, desires to provide certain consideration (as set forth below) to Seller.

E.     The Acquired Assets are assets of Seller, which are to be purchased by Buyer pursuant to a final, non-appealable order of the Bankruptcy Court, whose terms are acceptable to Buyer in its sole and absolute discretion, approving such sale pursuant to Sections 105, 363 and 365 of the Bankruptcy Code with a finding of good faith on the part of Buyer (the "<u>Sale Order</u>"), which Sale Order will include the authorization for the assumption by Seller and assignment to Buyer of certain executory contracts and unexpired leases and liabilities thereunder under Section 365 of the Bankruptcy Code, all in the manner and subject to the terms and conditions set forth in this Agreement and the Sale Order and in accordance with the applicable provisions of the Bankruptcy Code. The consummation of the transactions set forth in this Agreement is subject, among other things, to the entry of the Sale Order as a final Order.

5

*STATEMENT OF AGREEMENT*

NOW, THEREFORE, in consideration of the foregoing and their respective representations, warranties, covenants and agreements herein contained, and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer agree as follows:

ARTICLE 1. PURCHASE AND SALE OF THE ACQUIRED ASSETS.

Section 1.1    Transfer of Acquired Assets.  At the Closing, upon and subject to the terms and conditions set forth in this Agreement, Seller shall sell to Buyer, and Buyer shall acquire from Seller, all of Seller's legal and equitable rights, title and interest in and to the Acquired Assets free and clear of all Liens, Claims and Interests.  For all purposes under this Agreement, the term "Acquired Assets" shall not include any Excluded Assets, and shall mean the following properties, assets, Interests and rights of Seller:

(a)    [*Reserved*];

(b)    all of Seller's (i) woodworking equipment located at the Lexington Property, that is necessary for the production of all the Products in the volumes and as currently produced by Seller, a schedule of which shall be delivered by Seller to Buyer prior to the Closing, (ii) equipment, machinery, furniture, fixtures and improvements, woodworking equipment, engraving equipment, molds, forms, tooling and spare parts and any other tangible personal property (including without limitation consumables located at the premises of the Business) that is in any of the foregoing cases listed in this cause (ii) used for the ownership, operation or management of the Business, in each of the foregoing cases to the extent listed on Schedule 1.1(b), and (iii) molds, forms, tooling and spare parts which are not located at Seller's Huntsville, Alabama or Ilion, New York facilities that are necessary for the production of all the Products in the volumes and as currently produced by Seller, a schedule of which shall be delivered by Seller to Buyer prior to the Closing (the foregoing clauses (i), (ii) and (iii) being collectively the "Owned FF&E") (wherever such Owned FF&E is located, whether at any Owned Real Property, any Leased Real Property or any third party location (including vendors or supplier locations)), in each case other than real property and that Owned FF&E specifically identified by Buyer for abandonment, and (iii) to the extent assignable, rights to any warranties and licenses received from manufacturers and sellers of the Owned FF&E;

(c)    all of Seller's (i) equipment, machinery, furniture, fixtures and improvements, woodworking equipment, engraving equipment, engraving equipment, roll marking equipment, box label printers, scanners, molds, forms, tooling and spare parts, and any other tangible personal property that is in any of the foregoing cases used for the ownership, operation or management of the Business, that are in each case leased pursuant to any Contract listed in Schedule 1.1(c), in each case other than real property and those items specifically identified by Buyer for lease rejection or abandonment (the "Assigned FF&E Leases" and the equipment, machinery, furniture, fixtures and improvements, tooling and spare parts so leased, the "Leased FF&E") (wherever such Leased FF&E is located, whether at any Owned Real Property, any Leased Real Property or any third party location (including vendors or supplier

6

locations)), (ii) rights under the Assigned FF&E Leases, and (iii) to the extent assignable, rights to any warranties and licenses received from manufacturers and lessors of the Leased FF&E;

(d)      all proceeds and recoveries from policies (but not, for the avoidance of doubt, any Insurance Policies themselves) to the extent such proceeds and recoveries are received in respect of any Acquired Assets regardless of when the related loss occurred (the rights described in this Section 1.1(d) being collectively the "Acquired Policy Rights");

(e)      all Contracts set forth on Schedule 1.1(e) (collectively, the "Assigned Business Contracts" and, together with the Assigned FF&E Leases, the "Assigned Contracts");

(f)      all (i) Intellectual Property owned or used by Seller primarily in connection with the ownership, operation and/or management of the Business and any and all corresponding rights that, now or hereafter, may be secured throughout the world, (ii) Intellectual Property licensed to Seller primarily in connection with the ownership, operation and/or management of the Business and (iii) Seller's documents and records related to Seller's actions and communications regarding the protection and enforcement of such Intellectual Property (the "Acquired Intellectual Property"); provided, that for the avoidance of doubt, the Acquired Intellectual Property includes all Intellectual Property set forth on Schedule 12.1(a);

(g)      [Reserved];

(h)      all right, title and interest in and to all inventory, parts, supplies and finished goods related to the Products or within the scope of the operations of the Business, including, without limitation, those located on the Owned Real Property and the Leased Real Property or (to the extent within the scope of the operations of the Business) in the possession of any third-party bailees (collectively, the "Inventory"), including, without limitation, the Inventory listed on Schedule 1.1(h);

(i)      Claims held by Seller that relate to Acquired Assets;

(j)      copies of (i) all preventative maintenance schedules and maintenance documents and records, (ii) all documents related to litigation involving the Products or the Business during the last ten (10) years (including any documents which may otherwise be subject to the attorney-client, attorney work product or any other privilege), (iii) the Historic Firearms Books and Records of Seller, and (iv) all documents, records and correspondence related to protection and enforcement of the Acquired Intellectual Property; and

(k)      All rights to or claims for refunds, overpayments or rebates of all Taxes related to the Business or Acquired Assets other than refunds described in Section 1.2(g);

(l)      all other tangible or intangible assets owned, controlled or used by Seller and necessary for the ownership, operation and/or management by Buyer of the Business.

Section 1.2    Excluded Assets.  Notwithstanding any provision to the contrary in Section 1.1, the Acquired Assets shall specifically exclude the following properties, Contracts, Leases, and other assets, interests and rights of Seller (all such items not being acquired by Buyer being referred to in this Agreement as the "Excluded Assets"):

7

(a)     all Owned Real Property;

(b)     all Leases pursuant to which Seller has the right to possess, use, lease or occupy (or grant others the right to possess, use, lease or occupy) any Leased Real Property, together with all security and other deposits related thereto and prepaid rent associated therewith;

(c)     all rights of every nature and description under or arising out of (including rights to refunds or adjustments relating to, and proceeds and recoveries from): (i) all insurance policies of Seller other than the Acquired Policy Rights (including, for the avoidance of doubt, those covering Liabilities and Claims against Seller and its affiliates relating to the Employee Liabilities); and (ii) all Employee Benefit Plans (the foregoing clauses (i) and (ii) collectively, the "Excluded Insurance Policies");

(d)     any asset that is not owned or leased by Seller or not used or held for use in connection with the ownership, operation and management of the Business;

(e)     any minute books, stock ledgers, corporate seals and stock certificates of Seller, and other books and records of Seller, including those that Seller is required by Law to retain and all Tax Returns, financial statements and corporate or other entity filings, provided that Seller shall provide Buyer with reasonable access to the same following the Closing to the extent relating to the Acquired Assets and when reasonably requested by Buyer;

(f)     all (i) prepaid premiums in respect of all Excluded Insurance Policies, (ii) retainers, prepayments or on-account cash paid to Seller's professionals and advisors, including any carve-out under any DIP Facility or cash collateral arrangements (whether retained in the Bankruptcy Case or otherwise), and (iii) other deposits, prepaid charges and expenses paid by Seller to the extent such deposits, charges, or expenses are in connection with or relating to any Excluded Asset;

(g)     except as provided in Section 8.2(d)(v), all rights to or claims for refunds, overpayments or rebates of Excluded Taxes, including any refunds, overpayments or rebates of Excluded Taxes for any Straddle Period, other than, in any of the foregoing cases, any such refunds, overpayments or rebates that are attributable to Taxes actually paid or otherwise borne by Buyer;

(h)     all shares of capital stock (and any other equity interests or rights convertible into equity interests) issued by any Seller entity;

(i)     all Documents exclusively relating to any Excluded Asset;

(j)     all Documents relating to any Employees who do not become Transferred Employees;

(k)     all Employee Benefit Plans and all assets of, and Contracts relating to or associated with, such plans;

(l)     all Cash and all accounts or notes receivable held by Seller, and any security, claim, remedy or other right related to any of the foregoing;

8

(m)     all Claims of Seller relating to the Excluded Assets;

(n)     any rights of Seller under this Agreement or any Ancillary Agreement to which Seller is a party, including without limitation any rights relating to the Purchase Price;

(o)     original Historic Firearms Books and Records of Seller, except to the extent Buyer requires copies of such records as provided in Section 1.1(j);

(p)     all original Documents of Seller held by Seller or Seller's counsel relating to (i) any litigation against Seller or (ii) the Employee Liabilities, though Buyer requires copies of documents related to litigation involving the Products or the Business during the last ten (10) years as provided in Section 1.1(j);

(q)     the D&O Insurance, and all proceeds thereof;

(r)     all Software other than Software included within the definition of Intellectual Property or that is required to run the Business;

(s)     the Remington Name;

(t)     all leased equipment, machinery, molds, forms, tooling and fixtures that is not subject to an Assigned FF&E Lease, that is subject to a lease specifically identified by Buyer for rejection or abandonment or which does not relate to the Products;

(u)     all rights of recovery, rights of set-off, rights of indemnity, contribution or recoupment, warranties, guarantees, rights, remedies, counter-claims, cross-claims and defenses related to any Excluded Liability;

(v)     any Products not marked or manufactured in compliance with applicable ATF rules, regulations and laws, unless Seller, at its own expense, brings such Products into compliance prior to Closing;

(w)     any properties, Leases, or other assets, interests and rights of Seller that do not relate to the ownership, operation or management of the Business;

(x)     any Contracts other than such Contracts that Buyer elects to assume pursuant to Section 1.1(e);

(y)     all Permits;

(z)     all Avoidance Actions; and

(aa)     Claims held by Seller against any party that are covered by, relate to or are based upon any Excluded Insurance Policy or the D&O Insurance.

Section 1.3     No Assumption of Liabilities.     Buyer shall not assume any Liabilities, obligations or other Claims of Seller, its Affiliates or any of their respective Related Persons, including, without limitation, any of the following Liabilities (all items in this Section

9

1.3 being, collectively, the "Excluded Liabilities"), and Seller shall retain such Excluded Liabilities:

       (a)     all Liabilities under or relating to the Excluded Assets;

       (b)     all Liabilities of Seller under or relating to the Priority Term Loan, the FILO Facility, the Exit Term Loan or the Intercompany Note;

       (c)     all Liabilities of Seller under any Customer Orders, the Purchase Orders (including Liabilities in respect of customer deposits, security deposits and prepaid items), or Seller's consumer rebate program(s);

       (d)     all Liabilities for Excluded Taxes;

       (e)     all Liabilities under the CBA, or any other agreement or arrangement with any employee collective bargaining representative, whether or not formally recognized by Seller;

       (f)     all Liabilities under any Employee Benefit Plans, including the Pension Plan;

       (g)     all Employee Liabilities;

       (h)     all Liabilities arising out of, or relating to the ownership or use of the Business and/or the Acquired Assets prior to the Closing;

       (i)     all Liabilities of Seller arising under or incurred in connection with the negotiation, preparation, execution and performance of this Agreement, the Ancillary Agreements to which Seller is a party and the transactions contemplated hereby and thereby, including, without limitation, fees and expenses of counsel, accountants, consultants, advisers and others;

       (j)     all City of Huntsville Project Development Liabilities;

       (k)     all Liabilities arising from and in connection with grants of restricted common unit/share awards and stock options by Seller;

       (l)     all Liabilities of Seller under this Agreement, or under any Ancillary Agreement to which Seller is a party;

       (m)     all Liabilities under any Excluded Contracts and Leases;

       (n)     all State of Alabama Project Development Liabilities;

       (o)     the Retained Litigation;

       (p)     all Liabilities arising out of or relating to applicable Environmental Laws and other Laws, including in connection with any contamination, clean-up or remediation associated therewith, including those required for, identified in connection with, or resulting from the movement or removal (other than actions by Buyer or its agents in violation of

10

applicable Environmental Laws and other Laws) of the Acquired Assets from any Owned Real Property or Leased Real Property;

(q)     all Liabilities arising out of or relating to any product or service warranty or any product or service liability, whether in respect of the Products, the Business or otherwise; and

(r)     the D&O Insurance (including the cost thereof and any deductibles or retentions associated therewith) and all Liabilities and obligations to indemnify and hold harmless any Seller D&Os or employees.

Section 1.4     Designation of Leases and Contracts for Assumption by Seller and Assignment to Buyer; Cure Amount.

(a)     At such time as is specified in the Sale Order, pursuant to Section 365 of the Bankruptcy Code, Seller shall assume and assign to Buyer, and Buyer shall take assignment from Seller of, the Assigned FF&E Leases and the Assigned Contracts.  The amounts necessary, pursuant to Section 365 of the Bankruptcy Code, to cure any and all defaults and to pay all actual or pecuniary losses that have resulted from any such defaults under any Assigned FF&E Lease or Assigned Contract (such aggregate amount, the "Cure Amount") shall be paid by Buyer, in each case as and when finally determined by the Bankruptcy Court pursuant to the procedures set forth in the Sale Order and this Agreement.  Schedule 1.4(a) contains Seller's estimate as of the Effective Date of the Cure Amount.  Buyer may, in its sole discretion, amend Schedule 1.1(c) and/or Schedule 1.1(e) to add or remove any Contracts or Leases from such Schedules at any time prior to the date of a final hearing to approve the sale of the Acquired Assets (the "Sale Hearing"), upon written notice to Seller, and the definitions of Acquired Assets, Excluded Assets and Excluded Liabilities shall be updated to correspond to such changes.

(b)     Seller shall timely serve the motion seeking entry of the Sale Order to all parties to Assigned FF&E Leases and Assigned Contracts and, subject to Section 1.5, Seller shall cause the Assigned  Leases and Assigned Contracts to be assumed by Seller and assigned to Buyer pursuant to Section 365 of the Bankruptcy Code, and Seller shall comply with all requirements under Section 365 of the Bankruptcy Code necessary to assign and delegate to Buyer all of Seller's rights and obligations under the Assigned FF&E Leases and Assigned Contracts, and Buyer shall pay all Cure Amounts with respect to the Assigned FF&E Leases and Assigned Contracts prior to assignment to Buyer.

Section 1.5     Non-Assignment of Acquired Assets.     Notwithstanding any provision of this Agreement to the contrary, this Agreement shall not constitute an agreement to assign or transfer and shall not effect the assignment or transfer of any Acquired Asset if (a) an attempted assignment thereof, without the approval, authorization or consent of, or granting or issuance of any license or permit by, any party thereto other than Seller (each such action, a "Necessary Consent"), would constitute a breach thereof (after giving effect to any waiver by the applicable counterparty, or any elimination of such approval, authorization or consent requirement by operation of the Sale Order) or in any way adversely affect the rights or obligations of Buyer thereunder and such Necessary Consent is not obtained and (b) the Bankruptcy Court shall not have entered a final Order prior to Closing providing that such

11

Necessary Consent is not required because the transfer thereof shall be deemed by the Bankruptcy Court to be (x) effective and (y) not a breach thereof, notwithstanding the failure to obtain such Necessary Consent. In such event, Seller and Buyer will use their commercially reasonable efforts, other than as to Non-Debtor Affiliates for whom Seller shall use best efforts, to obtain the Necessary Consents with respect to any such Acquired Asset or any claim or right or any benefit arising thereunder for the assignment thereof to Buyer as Buyer may reasonably request; provided, however, that for parties other than Non Debtor Affiliates, Seller shall not be obligated to pay any consideration therefor to any third-party from whom consent or approval is requested or to initiate any litigation or legal proceedings to obtain any such consent or approval; provided, further, that if all Necessary Consents are not obtained despite Seller's commercially reasonable efforts to obtain such Necessary Consents, Buyer shall remain obligated to close the transactions contemplated by this Agreement upon the satisfaction of the conditions set forth in Section 9.2(b).

Section 1.6    Further Conveyances and Assumptions.

(a)    Seller shall deliver to Buyer at the Closing, or in a reasonably timely manner thereafter, such Employee Records as are reasonably necessary for Buyer to transition the Transferred Employees into Buyer's records, as well as all other Documents included in the Acquired Assets.

(b)    At the Closing, and from time to time thereafter, Seller and Buyer shall, and Seller and Buyer shall cause their respective Affiliates to, execute, acknowledge and deliver all such further actions, as may be reasonably necessary or appropriate to sell, transfer, convey, assign and deliver fully to Buyer and its respective successors or permitted assigns, all of the properties, rights, titles, interests, estates, remedies, powers and privileges intended to be conveyed to Buyer under this Agreement, and to otherwise make effective or evidence the transactions contemplated by this Agreement.

Section 1.7    Conflicts with Other Bidders.    In the event of any conflict regarding the Acquired Assets between this Agreement and agreements governing other sales of the Seller's assets in the Bankruptcy Case (the "Other Agreements") defined herein or therein, Buyer shall cooperate in good faith with Seller, whether before or after the Closing Date, to ensure all assets are allocated between the parties in order to reflect the intent of Buyer hereunder and any such other purchasers of Seller's assets pursuant to the Other Agreements. Without limitation to the foregoing, Buyer agrees to enter into a non-exclusive, perpetual, worldwide, royalty-free license in favor of the buyer or buyers of the Non-Marlin Business to use Patents Nos. 10,254,063 and 10,718,584 in the Non-Marlin Business. "Non-Marlin Business" shall have the meaning provided to the term "Business" as set forth in the Asset Purchase Agreement between Seller and the Roundhill Group, LLC executed as of the date hereof or if the transactions contemplated by such Asset Purchase Agreement are not consummated, shall mean the design, development, testing, manufacture, marketing, sale and distribution of firearms and related components not using the Marlin name.

## ARTICLE 2. CONSIDERATION

Section 2.1　Consideration.　The aggregate consideration for the sale and transfer to Buyer of the Acquired Assets (the "Purchase Price") shall be an amount equal to Thirty Million United States Dollars (US$30,000,000) (the "Gross Closing Cash Payment"), to be adjusted pursuant to Section 2.2(b), and paid and delivered in accordance with Section 3.3(a).

Section 2.2　Good Faith Deposit.

(a)　Concurrently with the execution and delivery of this Agreement, notwithstanding anything to the contrary in this Agreement, Buyer shall pay to Seller the amount of Three Million United States Dollars (US$3,000,000) by wire transfer of immediately-available funds (the "Good Faith Deposit"). The Good Faith Deposit shall not be subject to any Lien, attachment, trustee process or any other judicial process of any creditor of either of Seller or Buyer and shall be deposited in a segregated deposit account of Seller and held in trust to be administered solely in accordance with the terms of this Agreement and the Bidding Procedures Order. Upon the Closing, the Good Faith Deposit shall be an Excluded Asset and shall not be subject to any restrictions under this Agreement.

(b)　If the Closing occurs, the Gross Closing Cash Payment shall be reduced by the amount of the Good Faith Deposit (such resulting amount, the "Net Closing Cash Payment"), to be paid and delivered in accordance with Section 3.3(a).

(c)　If this Agreement is terminated pursuant to Section 10.1, the Good Faith Deposit shall be repaid to Buyer or retained by Seller in the amounts and at the times set forth in Section 10.2(a) through Section 10.2(c).

(d)　Buyer (or Affiliate thereof) shall be entitled to deduct and withhold, and Buyer (or Affiliate thereof) shall deduct and withhold, any amounts that it is required to deduct and withhold pursuant to any provision of applicable Tax Law in connection with any payments required to be made by Buyer (or Affiliate thereof) pursuant to the terms of this Agreement. To the extent that amounts are so withheld by Buyer (or Affiliate thereof), such withheld amounts shall be treated for all purposes of this Agreement as having been paid to the Person otherwise entitled to receive such payments pursuant to this Agreement.

## ARTICLE 3. CLOSING AND DELIVERIES

Section 3.1　Closing.　Subject to the terms and conditions set forth herein, the consummation of the transactions contemplated by this Agreement (the "Closing") shall take place remotely by the electronic exchange of documents and signatures, or such other place as may be agreed upon, at 7:00 a.m., local Pacific Time, on the fifth (5th) Business Day following the satisfaction or, to the extent permitted by this Agreement, waiver of each of the conditions set forth in Article 9 of this Agreement (other than those conditions that, by their nature, are to be satisfied at the Closing, but subject to the satisfaction, or waiver to the extent permitted by this Agreement, of such conditions), or such other date as may be agreed to by Seller and Buyer, which date shall not be earlier than the first day following the Sale Order becoming final and not subject to appeal (the "Closing Date").

13

Section 3.2    Seller's Deliveries.  At the Closing, Seller shall deliver or cause to be delivered to Buyer:

(a)    all of the Acquired Assets, together with one or more duly executed bills of sale, warranty deeds, endorsed certificates of title and other evidence of transfer and instruments of conveyance appropriate for the applicable Acquired Assets, each as reasonably requested by Buyer and otherwise in form and substance customary for transactions of this nature and reasonably acceptable to Buyer and Seller;

(b)    one or more duly executed assignment agreements for the Assigned Contracts, in form and substance customary for transactions of this nature and reasonably acceptable to Buyer and Seller (each, an "Assignment Agreement");

(c)    one or more duly executed assignment agreements for the Assigned FF&E Leases, in form and substance customary for transactions of this nature and reasonably acceptable to Buyer and Seller (each, an "Assignment of Lease");

(d)    one or more duly executed assignments of (i) the trademark and patent registrations and applications included in the Acquired Intellectual Property registered in the name of Seller, in a form suitable for recording in the U.S. Patent and Trademark Office (and equivalent offices in jurisdictions outside the United States), (ii) the Internet domain name registrations and applications included in the Acquired Intellectual Property registered in the name of Seller, in a form suitable for filing with all applicable domain name registries (and Seller shall have completed any and all online procedures with all applicable domain name registries and provided Buyer with all login and account information to allow Buyer to take over ownership and management of such Internet domain name registrations and applications), (iii) the social media accounts included in the Acquired Intellectual Property (and Seller shall have completed any and all online procedures with all applicable social media outlets and provided Buyer with all login and account information to allow Buyer to take over ownership and management of such social media accounts), and (iv) general assignments of all other Acquired Intellectual Property, in each case in form and substance customary for transactions of this nature and reasonably acceptable to Buyer and Seller (each, an "Acquired Intellectual Property Assignment");

(e)    copies of all approved ATF-required forms necessary to transfer firearms regulated by the National Firearms Act to Buyer;

(f)    the officer's certificate required to be delivered pursuant to Section 9.2(a) and Section 9.2(b);

(g)    a certified copy of the Sale Order;

(h)    with respect to each entity comprising Seller, a certificate in compliance with Treasury Regulation Section 1.1445-2, certifying that the transactions contemplated hereby are exempt from withholding under Section 1445 of the Code.

Section 3.3    <u>Buyer's Deliveries</u>. At the Closing, Buyer shall deliver or cause to be delivered to Seller:

(a)    cash in an amount equal to the Net Closing Cash Payment, by wire transfer of immediately available funds to the U.S. bank account or accounts of Seller identified by Seller in writing reasonably in advance of the Closing;

(b)    one or more duly executed Assignment Agreements;

(c)    one or more duly executed Assignments of Leases;

(d)    one or more duly executed Acquired Intellectual Property Assignments; and

(e)    the officer's certificate required to be delivered pursuant to <u>Section 9.1(a)</u> and <u>Section 9.1(b)</u>.

## ARTICLE 4. <u>REPRESENTATIONS AND WARRANTIES</u>

Section 4.1    <u>Representations and Warranties of Seller</u>. Seller represents and warrants to Buyer as follows:

(a)    <u>Corporate Organization</u>. Each entity comprising Seller is duly formed or incorporated and validly existing and in good standing under the laws of its respective state of domicile. Subject to any necessary authority from the Bankruptcy Court, each entity comprising Seller has the requisite corporate or limited liability company power and authority to conduct the Business as now being conducted and to carry out its obligations under this Agreement. Seller is duly qualified to do business and is in good standing in every jurisdiction in which the character of the properties owned or leased by it or the nature of the business(es) conducted by it makes such qualification necessary.

(b)    <u>Authorization and Validity</u>. Each entity comprising Seller has the corporate or limited liability company power and authority necessary to enter into this Agreement and each Ancillary Agreement and, subject to the Bankruptcy Court's entry of the Sale Order, to carry out its obligations hereunder and thereunder. The execution and delivery of this Agreement has been duly authorized by all necessary corporate or limited liability company action by the boards of directors or managers of Seller, and no other corporate or limited liability company proceedings are necessary for the performance by Seller of its obligations under this Agreement or the consummation by Seller of the transactions contemplated by this Agreement. This Agreement has been duly and validly executed and delivered by Seller and, subject to the Bankruptcy Court's entry of the Sale Order and assuming due authorization, execution and delivery by Buyer, is a valid and binding obligation of Seller enforceable against Seller in accordance with its terms.

(c)    <u>No Conflict or Violation</u>. Neither the execution and delivery by Seller of this Agreement or any of the Ancillary Agreements to which Seller is a party, nor (subject to the Bankruptcy Court's entry of the Sale Order) the consummation of the transactions contemplated by this Agreement or the Ancillary Agreements, nor compliance by Seller with any of the

15

provisions hereof or thereof, will (x) conflict with or result in any breach of any provision of the respective certificates of incorporation or formation of Seller or the respective by-laws or operating agreements of Seller, (y) violate any provision of law, regulation, rule or other legal requirement of any Government ("Law") or any order, judgment or decree of any court or Government ("Order") applicable to Seller or any of its properties or assets, except, in either of the foregoing cases (x) and (y), for any conflict or violation as would not reasonably be expected to cause a Material Adverse Effect.

(d)     Government Persons.  Seller is not required to submit any notice, report or other filing with, and no consent, approval or authorization is required by, any Government Person in connection with the execution, delivery, consummation or performance of this Agreement or the consummation of the transactions contemplated hereby.

(e)     Title and Ownership.  Seller has good title to, or right by license, lease or other agreement to use, the Acquired Assets. Subject to the entry of the Sale Order, at the Closing, Seller will have the right to transfer the Acquired Assets to Buyer free and clear of all Liens, other than Permitted Liens.  The Acquired Assets represent all of the assets used by Seller in the conduct of the Business.

(f)     Compliance with Law.  Except as set forth on Schedule 4.1(f), (i) Seller has operated the Business in material compliance with all applicable Laws, and (ii) except as may result from the Bankruptcy Case, Seller has not received written notice of any violation of any applicable Laws, nor is Seller in default with respect to any Order applicable to the Acquired Assets.

(g)     Contracts and Leases.  As of the Effective Date, other than as set forth on Schedule 4.1(g) or in motions or other pleadings or similar items filed with the Bankruptcy Court, neither Seller nor, to Seller's Knowledge, any other party to any of the Assigned Contracts or Assigned FF&E Leases has commenced any action against any of the parties to such Assigned Contracts or Assigned FF&E Leases or given or received any written notice of any default or violation under any Assigned Contract or Assigned FF&E Lease that was not withdrawn or dismissed, except only for those defaults that will be cured in accordance with the Sale Order (or that need not be cured under the Bankruptcy Code to permit the assumption and assignment of the Assigned Contracts and Assigned FF&E Leases free and clear of such defaults).  Assuming due authorization, execution, delivery and performance by the other parties thereto, each of the Assigned Contracts and Assigned FF&E Leases is, or will be at the Closing, valid, binding and in full force and effect against Seller, except as otherwise set forth on Schedule 4.1(g).

(h)     Permits.  Schedule 4.1(h) sets forth a complete and correct list of all material Permits currently held by Seller in connection with the Business ("Material Permits"), and all Material Permits at the current locations of the Business are, except as would not cause a Material Adverse Effect, in full force and effect.

(i)     Intellectual Property.  Schedule 12.1(a) sets forth a complete and correct list of all registrations and applications of the trademarks, patents and domain names owned and primarily used by Seller in connection with the Business.  The patents set forth on Schedule

16

12.1(a) include all the patents currently used for the manufacture of the Products currently produced by the Seller.

(j)　Condition of Acquired Assets.　The Owned FF&E and Leased FF&E included in the Acquired Assets in the aggregate is in good condition and working order, normal wear and tear excepted and are free from deferred maintenance, and each individual item which would cost in excess of $5,000 to replace is in good condition and working order, normal wear and tear excepted and is free from deferred maintenance.

(k)　Trademarks.　Schedule 12.1(a) includes a complete and correct list of all unregistered trademarks and service marks owned and primarily used by Seller in the Business.

(l)　Seller Not a Foreign Person.　Seller is not a "foreign person" within the meaning of Section 1445 or 1446 of the Code.

(m)　Necessary FF&E.　The Owned FF&E and the Leased FF&E include the equipment, machinery, furniture, fixtures and improvements, woodworking equipment, engraving equipment, molds, forms, tooling and spare parts and any other tangible personal property (including without limitation consumables located at the premises of the Business) that is necessary for the production of all the Products as currently produced by the Seller.

Section 4.2　Representations and Warranties of Buyer.　Buyer represents and warrants to Seller as follows:

(a)　Corporate Organization.　Buyer is a corporation duly incorporated, validly existing and in good standing under the Laws of the State of Delaware.　Buyer has the requisite corporate power and authority to own its properties and assets and to conduct its business as now conducted and to carry out its obligations under this Agreement and each of the Ancillary Agreements to which Buyer is a party.

(b)　Qualification to do Business.　Buyer is duly qualified to do business and is in good standing in every jurisdiction in which the character of the properties owned or leased by it or the nature of the business(es) conducted by it makes such qualification necessary.

(c)　Authorization and Validity.　Buyer has the requisite corporate power and authority necessary to enter into this Agreement and each of the Ancillary Agreements to which Buyer is a party, and to carry out its obligations hereunder and thereunder.　The execution and delivery of this Agreement and those Ancillary Agreements to which Buyer is a party have been duly authorized by all necessary corporate action by the board of directors (or equivalent), and no other corporate proceedings are necessary for the performance by Buyer of its obligations under this Agreement and each of the Ancillary Agreements to which Buyer is a party, or the consummation by Buyer of the transactions contemplated hereby or thereby.　This Agreement and each of the Ancillary Agreements to which Buyer is a party have been duly and validly executed and delivered by it and are valid and binding obligations of Buyer enforceable against it in accordance with their respective terms.

(d)　No Conflict or Violation.　Neither the execution and delivery by Buyer of this Agreement or any of the Ancillary Agreements to which Buyer is a party, nor the

consummation of the transactions contemplated hereby or thereby, nor compliance by Buyer with any of the provisions hereof or thereof, will (i) conflict with or result in any breach of any provision of the certificate of incorporation or by-laws (or equivalent documents) of Buyer, (ii) violate any provision of Law, or any Order applicable to Buyer or any of its properties or assets, or (iii) automatically result in a modification, violation or breach of, or constitute (with or without notice or lapse of time or both) a default (or give rise to any right, including but not limited to, any right of termination, amendment, cancellation or acceleration) under, any of the terms, conditions or provisions of any contract, indenture, note, bond, lease, license or other agreement to which Buyer is a party or by which it is bound or to which any of its properties or assets is subject.

(e) <u>Consents and Approvals</u>. The execution, delivery and performance of this Agreement and the Ancillary Agreements to which Buyer is a party do not and will not require the consent or approval of, or filing with, any Government or any other Person, other than (i) as may be required to be obtained by Buyer after the Closing in order to own or operate any of the Acquired Assets; (ii) for entry of the Sale Order by the Bankruptcy Court; or (iii) for such consents, approvals and filings, of which the failure to obtain or make would not, individually or in the aggregate, have a material adverse effect on the ability of Buyer to consummate the transactions contemplated by this Agreement or by the Ancillary Agreements to which Buyer is a party.

(f) <u>Adequate Assurances Regarding Assigned Contracts and Assigned FF&E Leases</u>. Buyer is and will be capable of satisfying the conditions contained in Sections 365(b)(1)(C) and 365(f) of the Bankruptcy Code with respect to the Assigned Contracts and Assigned FF&E Leases.

(g) <u>Financial Capability</u>. Buyer and any Buyer Acquisition Vehicle currently has, or at Closing will have available, funds necessary to consummate the transactions contemplated by this Agreement, including the acquisition of the Acquired Assets, and the payment therefor to Seller of the Purchase Price, and to perform its obligations under this Agreement and the Ancillary Agreements to which Buyer is a party on the terms and subject to the conditions contemplated hereby and thereby

(h) <u>Investigation by Buyer</u>. Buyer has conducted its own independent review and analysis of the Business, the Acquired Assets, operations, technology, assets, liabilities, financial condition and prospects of the Business as formerly carried on by Seller and acknowledges that Seller has provided Buyer with reasonable access to the personnel, properties, premises and records of the Business for this purpose. Buyer has conducted its own independent review of all Orders of, and all motions, pleadings, and other submissions to, the Bankruptcy Court in connection with the Bankruptcy Case. In entering into this Agreement, Buyer has relied solely upon its own investigation and analysis, and Buyer (i) acknowledges that neither Seller nor any of its Affiliates or Related Persons makes or has made any representation or warranty, either express or implied, as to the accuracy or completeness of any of the information provided or made available to Buyer or its Affiliates or Related Persons, except for the representations and warranties contained in <u>Section 4.1</u> (which are subject to the limitations and restrictions contained in this Agreement); and (ii) agrees, to the fullest extent permitted by Law, that none of Seller, its Affiliates or any of their respective Related Persons shall have any liability or

18

Case 20-11161-BLS-CRJ11   Doc 2406-16   Filed 09/08/22   Entered 09/08/22 13:49:54   Desc
Exhibit RJN 4: Order Approving Sale of APG   Page 57 of 249

responsibility whatsoever to Buyer or its Affiliates or Related Persons on any basis (including, without limitation, in contract or tort, under federal or state securities Laws or otherwise, but excluding misrepresentation or concealment arising from actual fraud of Seller) based upon any information provided or made available, or statements made, to Buyer or its Affiliates or Related Persons (or any omissions therefrom), including, without limitation, in respect of the specific representations and warranties of Seller set forth in this Agreement, except, with regard to Seller, for the representations and warranties contained in Section 4.1 and, with respect to such representations and warranties, subject to the limitations and restrictions contained in this Agreement.

Section 4.3    Warranties Exclusive; Schedules.

(a)    The representations and warranties contained in Article 4 are the only representations or warranties given by the parties to this Agreement and all other express or implied warranties are disclaimed.  Without limiting the foregoing, the Acquired Assets are otherwise conveyed "AS IS, WHERE IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED", except to the extent set forth in this Agreement.

(b)    Should any Exhibit or Schedule not be completed and attached to this Agreement as of the Effective Date, Seller and Buyer will promptly negotiate in good faith any such Exhibit or Schedule, which Exhibit or Schedule must be acceptable to each of Seller and Buyer in their reasonable discretion prior to being attached hereto.

(c)    The disclosure of any matter or item in any schedule hereto shall not be deemed to constitute an acknowledgement that any such matter is required to be disclosed or is material or that such matter would result in a Material Adverse Effect.

Section 4.4    Survival of Representations and Warranties.    None of the representations or warranties of Buyer or Seller set forth in this Agreement or any Ancillary Agreement to which Buyer or Seller is a party or in any certificate delivered pursuant to Section 9.1(a), Section 9.1(b), Section 9.2(a) or Section 9.2(b) shall survive the Closing (and, for the avoidance of doubt, all covenants set forth in this Agreement or any Ancillary Agreement to which Buyer or Seller is a party shall survive in accordance with their respective terms).

ARTICLE 5. COVENANTS OF THE PARTIES

Section 5.1    Covenants of Seller.  Seller covenants as follows:

(a)    Commercially Reasonable Efforts.  Between the Effective Date and the Closing Date, Seller shall use commercially reasonable efforts to (except as may be disclosed to Buyer) (i) obtain all necessary consents, waivers, authorizations and approvals of all Governments, and of all other Persons, required to be obtained by Seller in connection with the execution, delivery and performance by it of this Agreement and the Ancillary Agreements to which Seller is a party, (ii) take, or cause to be taken, all actions, and to do, or cause to be done, all things necessary or proper, consistent with applicable Law, to consummate and make effective in an expeditious manner the transactions contemplated by this Agreement and the

19

Ancillary Agreements, and (iii) maintain the Acquired Assets substantially in accordance with Seller's current practices and procedures (as adjusted for the effects of any COVID Restrictions).

(b)     Access to Properties and Documents; Confidentiality.  Seller shall afford to Buyer, and to the accountants, counsel and representatives of Buyer, reasonable access (subject to any COVID Restrictions) during normal business hours throughout the period from the Effective Date until the Closing Date (or the earlier termination of this Agreement pursuant to Article 10) to all Documents of Seller relating to the Acquired Assets.  Upon reasonable prior notice, Seller shall also afford Buyer reasonable access, taking into account any COVID Restrictions and Seller's resources and other commitments, during normal business hours, to all Acquired Assets, and to Seller's executive officers, accountants, counsel, employees and other representatives, throughout the period prior to the Closing Date (or the earlier termination of this Agreement pursuant to Article 10).  Seller shall afford to Buyer and Buyer's representatives access to the Business to observe, assess, or otherwise review Seller's operation of the Business. The rights of access contained in this Section 5.1(b) are granted subject to, and on, the following terms and conditions:  (i) any such investigation shall be conducted in a reasonable manner; (ii) all information provided to Buyer or its agents or representatives by or on behalf of Seller or its agents or representatives (whether pursuant to this Section 5.1(b) or otherwise) will be governed and protected by the Confidentiality Agreement, dated as of June 30, 2020 by and between Buyer and ROC (the "Confidentiality Agreement") and the Clean Team Agreement, dated as of August 7, 2020 by and between Buyer and ROC; and (iii) such rights of access shall not affect or modify the conditions set forth in Article 9 or the obligations set forth in Section 6.5 in any way.

(c)     Operation of the Business.  Except as otherwise contemplated or permitted by this Agreement or the Ancillary Agreements, would not constitute a Material Adverse Effect, or with the prior consent of Buyer (such consent not to be unreasonably withheld, conditioned or delayed), or in connection with any Order relating to the Bankruptcy Case, between the Effective Date and the Closing Date, Seller shall (i) use best efforts to safeguard and maintain the Acquired Assets in their condition as of the Effective Date (except for ordinary wear and tear) and prevent any destruction thereof or material damage thereto between the Effective Date and the Closing Date, (ii) not enter into, materially amend or terminate any Assigned Contract or Assigned FF&E Lease outside of the ordinary course of business where such amendment or termination would have a material and adverse effect on the value of the Acquired Assets taken as a whole and (iii) notify Buyer of any notices relating to or proposed changes affecting Seller's insurance policies covering any of the Acquired Assets.  Notwithstanding the foregoing, nothing in this Agreement shall restrict Seller from rejecting any Contract or Lease that is not an Assigned Contract or Assigned FF&E Lease.

Section 5.2     Covenants of Buyer.  Buyer covenants as follows:

(a)     Commercially Reasonable Efforts.  Buyer shall use all commercially reasonable efforts to (i) obtain all consents and approvals of all Governments, and all other Persons, required to be obtained by Buyer to effect the transactions contemplated by this Agreement and the Ancillary Agreements, and (ii) take, or cause to be taken, all action, and to do, or cause to be done, all things necessary or proper, consistent with applicable Law, to consummate and make effective in an expeditious manner the transactions contemplated by this Agreement and the Ancillary Agreements.

(b)  Adequate Assurances Regarding Assigned Contracts and Assigned FF&E Leases.  With respect to each Assigned Contract and Assigned FF&E Lease, Buyer shall undertake reasonable efforts to provide adequate assurance of the future performance of such Assigned Contract or Assigned FF&E Lease by Buyer; provided that, for clarity the failure to provide adequate assurance shall not be a breach of this Section 5.2(b) if Buyer has undertaken reasonable efforts to provide such assurance.  Buyer agrees that it will promptly take all actions as are reasonably requested by Seller to assist in obtaining the Bankruptcy Court's entry of the Sale Order, including, without limitation, furnishing affidavits, financial information or other documents or information for filing with the Bankruptcy Court and making Buyer's employees and representatives available to testify before the Bankruptcy Court.

(c)  Cure of Default.  Buyer shall, without any adjustment to the Purchase Price, as of the Closing or, in respect of any Assigned Contracts or Assigned FF&E Leases for which the Bankruptcy Court does not enter an Order fixing the Cure Amount until after the Closing, then immediately following the entry of such Order, cure any and all defaults under the Assigned Contracts and Assigned FF&E Leases, including paying the applicable Buyer's Cure Amount, which defaults are required to be cured under the Bankruptcy Code, so that such Assigned Contracts and Assigned FF&E Leases may be assumed by Seller and assigned to Buyer in accordance with the provisions of Section 365 of the Bankruptcy Code.

(d)  Performance under Assigned Contracts and Assigned FF&E Leases. Buyer shall (i) from and after the Closing Date, assume all obligations and liabilities of Seller under the Assigned Contracts and Assigned FF&E Leases, (ii) from and after the Closing Date, take all actions necessary to satisfy its obligations and liabilities under the terms and conditions of each of the Assigned Contracts and Assigned FF&E Leases, and (iii) indemnify, defend and hold harmless Seller, Seller's Affiliates, and all of their respective Related Persons from and against any damages, losses, costs, expenses and other liabilities arising out of a breach of this Section 5.2(d) or any of Buyer's other covenants contained in this Agreement or any Ancillary Agreements to which Buyer is a party.

(e)  Released Claims.  Effective as of the Closing Date, Buyer, on behalf of itself and its Affiliates and each of their respective employees, directors, officers, shareholders, and advisors, hereby covenants and agrees that it shall not (i) assert any Claims that constitute Acquired Assets to the extent such Claims have been, or are at any time thereafter, released by or on behalf of Seller or any other Person pursuant to the Plan, an Order of the Bankruptcy Court, or otherwise or (ii) pursue, prosecute or assert any rights related to any Claims against employees, officers, directors, counsel and other advisors of Seller, including by way of offset or recoupment.

ARTICLE 6. ADDITIONAL AGREEMENTS

Section 6.1  Bankruptcy Matters.

(a)  Backup Bidder.  In the event that Buyer is designated as the "Backup Bidder" in accordance with and as defined in the Bidding Procedures Order, Buyer agrees that it will keep the Backup Bid (as defined in the Bidding Procedures Order) open and irrevocable until the earlier of (i) 5:00 p.m. (prevailing Central Time) on the date that is sixty (60) days after

21

the date of entry of the Bankruptcy Court's Order approving the Alternative Transaction and (ii) the closing date of the Alternative Transaction. Notwithstanding anything to the contrary in this Agreement, Seller may also identify and enter into agreements respecting (x) a "back-up" bid relating to an Alternative Transaction, and/or (y) a liquidation sale of all or a portion of the Inventory and the other assets of Seller, in either case to become effective in the event Buyer does not perform in accordance with the terms of this Agreement.

(b) <u>Notice to Holders of Liens, Claims and Interests</u>. Seller has provided notice of the Sale to all holders of Liens, Claims and Interests in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules for the Bankruptcy Court and any other applicable Order of the Bankruptcy Court.

(c) <u>Entry of Sale Order</u>. Seller has filed or will file with the Bankruptcy Court one or more motions which, collectively, seek the entry of the Sale Order. The Sale Order provides that, without limitation and notwithstanding anything to the contrary in this Agreement (including any Assigned Contract), Buyer is not liable for, and is taking the Acquired Assets free of, any Excluded Liability. Seller and Buyer shall use reasonable best efforts to cooperate, assist and consult with each other to secure the entry of the Sale Order, and to consummate the transactions contemplated by this Agreement, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of providing necessary assurances of performance by Buyer under this Agreement. In the event that any Orders of the Bankruptcy Court relating to this Agreement shall be appealed by any Person (or a petition for certiorari or motion for reconsideration, amendment, clarification, modification, vacation, stay, rehearing or reargument shall be filed with respect to any such Order), Seller and Buyer will cooperate in determining and pursuing the response to any such appeal, petition or motion and Seller and Buyer shall use their commercially reasonable efforts to obtain an expedited resolution of any such appeal, petition or motion. For purposes of this <u>Section 6.1(c)</u> only, commercially reasonable efforts shall without limitation require each party to this Agreement to pay its costs and expenses reasonably required in connection with preparing and seeking entry of the Sale Order by the Bankruptcy Court and resolution of any appeal therefrom; provided the cost and expenses of the resolution of any appeal therefrom shall be the sole responsibility of Seller.

Section 6.2 <u>Further Assurances</u>. At the request and the sole expense of the requesting party, either party shall, at any time after the Closing Date, execute and deliver such documents as the other party or its counsel may reasonably request to effectuate the purposes of this Agreement.

Section 6.3 <u>Reserved</u>.

Section 6.4 <u>Reserved</u>.

Section 6.5 <u>Transitional License</u>. Effective upon the Closing, for a period not to exceed one hundred eighty (180) calendar days, Buyer shall grant Seller a non-exclusive, royalty-free, non-transferrable, non-extendable right and license to use the "Marlin" name and the trademarks and service marks included in the Acquired Assets, solely in connection with the wind-down and liquidation of Seller's estate and the conclusion of the Bankruptcy Case,

including for purposes of administering a plan of liquidation of the Excluded Assets, reconciling claims and making distributions.

Section 6.6    <u>Access Covenant</u>.  Upon reasonable request from Seller, during reasonable hours, and subject to the terms of the Confidentiality Agreement, Buyer will, for a period of two (2) years following the Closing Date, provide to Seller, and the accountants, counsel and representatives of Seller, including any administrator of the Plan or Seller's estate, such access to any pre-closing books and records relating to the Business in Buyer's possession as is reasonably necessary to permit Seller to monetize any Excluded Assets and otherwise liquidate its estate after the Closing and confirmation of the Plan and to conclude the Bankruptcy Case, including the administration of the Plan, reconciliation and litigation of claims and making of distributions contemplated under the Plan, or otherwise. Such access will include (a) reasonable access to Buyer's personnel, information technology systems and books and records and (b) the use of office space for individuals and office support of appropriate secretaries or clerks for employees of Seller engaged in such wind-down and liquidation process. Buyer will reasonably cooperate with Seller in the provision of such services, provided that Seller will reimburse Buyer for reasonable out-of-pocket costs and expenses incurred by Buyer in connection with providing such services (which for the avoidance of doubt will not include salaries paid to Buyer's consultants or employees or Buyer's overhead but may include temporary service workers (at customary and reasonable hourly costs) if needed based upon the reasonable time demands of the regular work of Buyer's employees and the reasonable time demands of Seller's employees engaged in the liquidation).

Section 6.7    <u>Indemnification for Use of Real Property</u>.  Buyer shall indemnify, defend and hold harmless (i) Seller, (ii) the lessors of any Leased Real Property, and (iii) Seller's and such lessors' respective Affiliates and Related Persons from and against all claims, demands, causes of action, losses, damages, liabilities, costs and expenses (including, without limitation, attorneys' fees and disbursements) suffered or incurred by such Seller, Affiliate or Related Persons in connection with (A) Buyer's or Buyer's agents' or representatives' entry upon the Owned Real Property or the Leased Real Property in connection with their exercise of the right of access pursuant to <u>Section 6.6</u>, and (B) any and all other activities undertaken by Buyer or Buyer's agents or representatives with respect to any such Owned Real Property or Leased Real Property in connection with their exercise of the right of access pursuant to <u>Section 6.6</u>.

Section 6.8    <u>Removal of Assets</u>.  At Closing, Seller will have caused all of the Acquired Assets to be located at the Owned Real Property or the Leased Real Property.  At Closing, all Owned FF&E and Leased FF&E that is included in the Acquired Assets will have been disconnected by Seller from physical connection with Seller's property and all surfaces of said Owned FF&E and Leased FF&E will have been cleaned as to be free from any chemical residue, waste material, Hazardous Substances, pollution or petroleum products or by-products ("<u>Prohibited Material</u>"); <u>provided</u> <u>however</u>, that, in the event that Seller continues to operate the Business between the Effective Date and the Closing, Seller will provide Buyer with the opportunity (following reasonable advance written notice) and right to have one or more observers designated by Buyer present at the time of any and all disconnections and cleanings of the Acquired Assets.  At Closing, Seller will provide to Buyer a certification by an independent environmental engineering firm previously approved by Buyer that the Owned FF&E and Leased FF&E that is included in the Acquired Assets is free from contact with the property of Seller and

is not in contact with any Prohibited Material. Buyer or its agents will remove the Acquired Assets on or after the Closing from Seller's facilities. Seller will reasonably cooperate with Buyer and its agents in such removal efforts and will provide Buyer and its agents with such access to Seller's facilities (including the right to enter such facilities) as is necessary for Buyer or its agents to remove the Acquired Assets. Seller will deliver to Buyer prior to Closing an irrevocable license (rent and cost free) to access the facilities at which the Acquired Assets are located, including the Owned Real Property and Leased Real Property, for a period not to exceed one hundred eighty (180) days after the Closing Date to remove the Acquired Assets, and Seller will cause any purchaser of any such Owned Real Property and assignee of such Leased Real Property to agree to be bound by such license prior to such sale or assignment.

Section 6.9    Certain Records.    Seller shall be solely responsible for the retention (including all costs, expenses, Liabilities and Claims arising from or relating to such retention) of written or electronic copies of all records provided to Buyer and shall be solely responsible for providing such records to third parties in connection with any court order or permitted discovery relating to any Retained Litigation.

ARTICLE 7. EMPLOYEES AND WARN

Section 7.1    Transferred Employees.    Buyer shall have the right, but not the obligation, at or after the Closing, to make offers of employment to and hire any employee of Seller determined by Buyer to be a key employee with respect to the Products. Seller shall reasonably cooperate and assist Buyer in identifying and making offers of employment to any such individuals, and in transitioning any such individuals hired by Buyer. If the Closing occurs, any such Employees who accept any such offer no later than five (5) days after the Closing Date are referred to in this Agreement as the "Transferred Employees". Buyer does not and will not, however, assume any Employee Liabilities or other Claims associated with any Transferred Employees, including any union-related collective bargaining agreement or any Benefit Plan.

Section 7.2    WARN Act.    Seller shall be responsible for, and shall perform and pay for, all Liabilities for provision of notice or payment in lieu of notice or any applicable penalties under the Worker Adjustment and Retraining Notification Act (the "WARN Act") or any similar state or local law arising on account of Buyer's acquisition of the Acquired Assets or termination of any employees, including any Transferred Employees (collectively, "WARN Liabilities").

Section 7.3    Third-Party Beneficiary.    No provision of this Article 7 shall (a) create any third-party beneficiary or other rights in any current or former employee (including any beneficiary or dependent thereof) of Seller, Buyer or any other Person, (b) constitute or create, or be deemed to constitute or create, an employment agreement or employee benefit plan, (c) constitute or be deemed to constitute an amendment to any employee benefit plan sponsored or maintained by Seller or Buyer, or (d) alter or change the employment at-will status of any Employees.

24

Case 20-81688-CRJ11    Doc 2406-16    Filed 09/30/22    Entered 09/30/22 13:40:54    Desc
Exhibit RJN 4: Order Approving Page 63 of 249

## ARTICLE 8. TAXES.

Section 8.1    Taxes Related to Purchase of Assets.  All recording and filing fees and all federal, state and local sales, transfer, excise, value-added or other similar Taxes, including, without limitation, all state and local Taxes in connection with the transfer of the Acquired Assets, but excluding all income taxes and other fees based upon gain realized by Seller as a result of the sale of the Acquired Assets (collectively, "Transaction Taxes"), that may be imposed by reason of the sale, transfer, assignment and delivery of the Acquired Assets, and which are not exempt under Section 1146(c) of the Bankruptcy Code, shall be paid by Buyer. Buyer and Seller agree to cooperate to determine the amount of Transaction Taxes payable in connection with the transactions contemplated under this Agreement, and Seller agrees to assist Buyer reasonably in the preparation and filing of any and all required returns for or with respect to such Transaction Taxes with any and all appropriate taxing authorities.

Section 8.2    Cooperation on Tax Matters.

(a)    Buyer and Seller agree to furnish or cause to be furnished to each other, as promptly as practicable, such information and assistance relating to the Acquired Assets as is reasonably necessary for the preparation and filing of any Tax Return, claim for refund or other required or optional filings relating to Tax matters, for the preparation for and proof of facts during any Tax audit, for the preparation for any Tax protest, for the prosecution or defense of any suit or other proceeding relating to Tax matters and for the answer to any governmental or regulatory inquiry relating to Tax matters.

(b)    Buyer agrees to retain possession, at its own expense, of all accounting, business, financial and Tax records and information (i) relating to the Acquired Assets that are in existence on the Closing Date and transferred to Buyer hereunder and (ii) coming into existence after the Closing Date that relate to the Acquired Assets before the Closing Date, for a period of at least six (6) years from the Closing Date, and will give Seller notice and an opportunity to retain any such records in the event that Buyer determines to destroy or dispose of them after such period. In addition, from and after the Closing Date, Buyer agrees that it will provide access to Seller and its attorneys, accountants and other representatives (after reasonable notice and during normal business hours and without charge) to those portions of books, records, documents and other information that relate solely to the Acquired Assets and time periods on or prior to Closing as Seller may reasonably deem necessary to (x) properly prepare for, file, prove, answer, prosecute and/or defend any such Tax Return, claim, filing, tax audit, tax protest, suit, proceeding or answer or (y) administer or complete any cases under Chapter 11 of the Bankruptcy Code of Seller. Such access shall include, without limitation, access to any computerized information retrieval systems relating to the Acquired Assets as they existed on or before the Closing, unless such access cannot be limited to the appropriate information, in which case, Buyer may, at its reasonable discretion, retrieve electronic data compilations of the appropriate information.  Notwithstanding anything else in this Agreement to the contrary, Seller shall not have any right of access, review or inspection with respect to Buyer's combined, consolidated or unitary Tax Returns.

(c)    If Seller receives any refund, overpayment or rebate of Taxes (including any refund, interest, overpayment or rebate relating to any Straddle Period) that is attributable to

Taxes paid by Buyer or any Affiliate thereof or otherwise borne by Buyer or any Affiliate thereof, it shall promptly, and in no case later than ten (10) Business Days after receipt thereof, pay such refund, overpayment or rebate over to Buyer net of any reasonable out-of-pocket cost or expense incurred in connection with such refund, overpayment or rebate.

(d)

(i)     Seller, at Seller's sole cost and expense, shall prepare and file, or cause to be prepared and filed, (A) all Tax Returns for any taxable period ending on or prior to the Closing Date, (B) any Tax Returns for Excises Taxes with respect to firearms, guns and other items subject to Excise Taxes ("Excise Tax Property") for Excise Property sold or otherwise disposed of on or prior to the Closing Date and (iii) Tax Returns with respect to a Straddle Period not required to be filed by Buyer pursuant to Section 8.2(d)(ii) ("Seller Straddle Period Return"), in each case relating to the Acquired Assets or Business. In the case of a Seller Straddle Period Return, Seller shall furnish, no later than ten (10) days prior to the anticipated filing date of the applicable Seller Straddle Period Return, for Buyer's review and comment, and Seller shall accept any reasonable comments made by Buyer. Buyer shall pay to Seller the portion of Taxes shown as due (if any) on any Seller Straddle Period Return, solely to the extent such Taxes relate to the Acquired Assets and are not Excluded Taxes, that are allocable to the portion of the Straddle Period beginning on the day following the Closing Date (if any). Any such payments shall be made prior to the anticipated filing date,.

(ii)     Buyer shall prepare and file, or cause to be prepared and filed (with Seller's reasonable cooperation) all Tax Returns relating solely to the Acquired Assets for a Straddle Period solely to the extent that the Buyer is required to file such Tax Returns pursuant to applicable Law ("Buyer Straddle Period Returns"). Buyer shall furnish any Buyer Straddle Period Return, no later than ten (10) days prior to the anticipated filing date of the applicable Straddle Period Tax Return, for Seller's review and comment, and Buyer shall consider in good faith comments made by Seller. Seller shall pay to Buyer the portion of Taxes shown as due on the Straddle Period Tax Return that are allocable to the portion of the Straddle Period ending on or prior to the Closing Date. Any such payments shall be made prior to the anticipated filing date. Notwithstanding the foregoing, Seller shall not have any right to review or comment with respect to any Straddle Period Tax Return to the extent that such Tax Return is a combined, consolidated or unitary Tax Return of Buyer.

(iii)     Buyer and Seller shall reasonably cooperate in the preparation of any Tax Return described in this Section 8.2(d).

(iv)     Buyer shall be permitted to offset any Taxes for which Seller is responsible pursuant to this Agreement by any refunds payable to Seller or an Affiliate thereunder pursuant to Section 1.2(g).

(e)     Buyer and Seller will cooperate and Buyer shall use commercially reasonable efforts to cause the Buyer or any Buyer Acquisition Vehicle to be registered with the Alcohol and Tobacco Tax and Trade Bureau as a "manufacturer" for purposes of the Firearms Ammunition and Excise Tax on or before the Closing Date.

Section 8.3    Allocation of Purchase Price.  Promptly (and in any event within sixty (60) days) following the Closing Date, Buyer shall deliver a schedule to Seller allocating the Purchase Price among the Acquired Assets (the "Allocation"). Seller and Buyer will cooperate to resolve any disputes regarding the Allocation and to file with the Internal Revenue Service their respective Forms 8594 as provided for in Section 1060 of the Code on a basis consistent with the Allocation, and the Allocation shall be reflected on any Tax Returns required to be filed as a result of the transactions contemplated by this Agreement.

## ARTICLE 9. CONDITIONS PRECEDENT TO PERFORMANCE BY PARTIES.

Section 9.1    Conditions Precedent to Performance by Seller.  The obligation of Seller to consummate the transactions contemplated by this Agreement is subject to the fulfillment, at or before the Closing Date, of the following conditions, any one or more of which (other than the conditions contained in Section 9.1(c)) may be waived by Seller in its sole discretion:

(a)    Representations and Warranties of Buyer.   All representations and warranties made by Buyer in Section 4.2 shall be accurate in all material respects on and as of the Closing Date as if again made by Buyer on and as of such date, except for (i) those representations and warranties that speak solely as of a specific date and that were true and correct as of such date, and (ii) inaccuracies that do not result in a material adverse effect on Buyer's ability to perform its obligations hereunder, and Seller shall have received a certificate, dated as of the Closing Date and signed by a duly authorized officer of Buyer, solely in such capacity on behalf of Buyer, to that effect.

(b)    Performance of the Obligations of Buyer.  Buyer shall have performed in all material respects all obligations required under this Agreement to be performed by it on or before the Closing Date (except with respect to the obligation to pay the Good Faith Deposit and the Purchase Price in accordance with the terms of this Agreement, which obligations shall be performed in all respects), and Seller shall have received a certificate, dated as of the Closing Date and signed by a duly authorized officer of Buyer, solely in such capacity on behalf of Buyer, to that effect.

(c)    Consents and Approvals.  The Bankruptcy Court shall have entered the Sale Order, and no Order staying, modifying, or amending the Sale Order shall be in effect on the Closing Date.

(d)    No Violation of Orders.  No preliminary or permanent injunction or other Order that declares this Agreement invalid or unenforceable in any respect or which prevents the consummation of the transactions contemplated by this Agreement shall be in effect.

(e)    Cure of Defaults.  At or prior to the Closing, any and all defaults under the Assigned Contracts and Assigned FF&E Leases that are required to be cured under the Bankruptcy Code shall have been cured, so that such Assigned Contracts and Assigned FF&E Leases may be assumed by Seller and assigned to Buyer in accordance with the provisions of Section 365 of the Bankruptcy Code.

(f)     Buyer's Deliveries.  Buyer shall have delivered to Seller all of the items set forth in Section 3.3.

Section 9.2     Conditions Precedent to Performance by Buyer.  The obligations of Buyer to consummate the transactions contemplated by this Agreement are subject to the fulfillment, at or before the Closing Date, of the following conditions, any one or more of which (other than the conditions contained in Section 9.2(c)) may be waived by Buyer in its sole discretion:

(a)     Representations and Warranties of Seller.   All representations and warranties made by Seller in Section 4.1 shall be accurate in all material respects on and as of the Closing Date as if again made by Seller on and as of such date, except for (i) those representations and warranties that speak solely as of a specific date and that were true and correct as of such date, and (ii) inaccuracies that do not result in a Material Adverse Effect, and Buyer shall have received a certificate, dated as of the Closing Date and signed by a duly authorized officer of Seller, solely in such capacity on behalf of Seller, to that effect.

(b)     Performance of the Obligations of Seller.  Seller shall have performed all obligations required under this Agreement to be performed by it on or before the Closing Date, other than failures of performance (i) that do not result in a Material Adverse Effect or (ii) under those obligations of Seller set forth in Section 6.2(d), and Buyer shall have received a certificate, dated as of the Closing Date and signed by a duly authorized officer of Seller, solely in such capacity on behalf of Seller, to that effect.

(c)     Consents and Approvals.  The Bankruptcy Court shall have entered the Sale Order, and no Order staying, modifying, reversing or amending the Sale Order shall be in effect on the Closing Date.

(d)     No Violation of Orders.  No preliminary or permanent injunction or other Order that declares this Agreement invalid in any respect or prevents the consummation of the transactions contemplated by this Agreement shall be in effect.

(e)     Seller's Deliveries.  Seller shall have delivered to Buyer all of the items set forth in Section 3.2.

ARTICLE 10. TERMINATION.

Section 10.1     Conditions of Termination.  This Agreement may be terminated at any time before the Closing:

(a)     By mutual written consent of Seller and Buyer;

(b)     By Seller, by notice to Buyer, on or after the date that is one hundred twenty (120) calendar days after the Petition Date (the "Warranty Termination Date"), if the condition contained in Section 9.1(a) has not been satisfied or waived; provided, however, that Seller shall not have the right to terminate this Agreement under this Section 10.1(b) if Seller is then in material breach of this Agreement;

28

(c)     By Seller, by notice to Buyer, if Seller has previously provided Buyer with written notice of Buyer's failure to perform any material covenant of Buyer contained in this Agreement and Buyer has failed on or before 11:59 PM (Central Time) on the fifth (5th) Business Day after such notice to perform such covenant; provided, however, that Seller shall not have the right to terminate this Agreement under this Section 10.1(c) if Seller is then in material breach of this Agreement;

(d)     By Seller, by notice to Buyer, on or after the date that is one hundred twenty (120) calendar days after the Petition Date (the "Approval Termination Date"), if any condition contained in Section 9.1(c) or Section 9.1(d) has not been satisfied or waived; provided, however, that Seller shall not have the right to terminate this Agreement under this Section 10.1(d) if Seller is then in material breach of this Agreement;

(e)     By Buyer, by notice to Seller, on or after the Warranty Termination Date, if the condition contained in Section 9.2(a) has not been satisfied or waived; provided, however, that Buyer shall not have the right to terminate this Agreement under this Section 10.1(e) if Buyer is then in material breach of this Agreement;

(f)     By Buyer, by notice to Seller, if Buyer has previously provided Seller with written notice of a failure to perform any material covenant of Seller contained in this Agreement and Seller has failed on or before 11:59 PM (Central Time) on the fifth (5th) Business Day after such notice to perform such covenant; provided, however, that Buyer shall not have the right to terminate this Agreement under this Section 10.1(f) if Buyer is then in material breach of this Agreement;

(g)     By Buyer, by notice to Seller, after the Approval Termination Date, if any condition contained in Section 9.2(c), Section 9.2(d) or Section 9.2(i) has not been satisfied or waived; provided, however, that Buyer shall not have the right to terminate this Agreement under this Section 10.1(g) if Buyer is then in material breach of this Agreement;

(h)     By Buyer, by notice to Seller, or by Seller, by notice to Buyer, if the Bankruptcy Court enters an Order dismissing or converting the Bankruptcy Case into a case under Chapter 7 of the Bankruptcy Code, appointing a trustee in the Bankruptcy Case, or appointing an examiner with enlarged power related to the operation of the Business (beyond those set forth in Section 1106(a)(3) or (4) of the Bankruptcy Code) under Section 1106(b) of the Bankruptcy Code, or the occurrence of any of the foregoing;

(i)     By Seller, five (5) Business Days after notice to Buyer, if the Bankruptcy Court has not entered the Sale Order by the date that is sixty (60) calendar days after the Petition Date; and

(j)     Automatically, upon the earlier of (i) Seller consummating an Alternative Transaction, and (ii) sixty (60) days following the date upon which the Bankruptcy Court issues a Final Order approving an Alternative Transaction.

29

Section 10.2    Effect of Termination; Remedies.

(a)    In the event of termination pursuant to Section 10.1, this Agreement shall become null and void and have no effect (other than Article 10, Article 11, and Article 12, which shall survive termination), with no liability on the part of Seller or Buyer, or their respective Affiliates or Related Persons, with respect to this Agreement, except for (i) the liability of a party for its own expenses pursuant to Section 11.4, (ii) the obligation of Buyer under Section 6.1(a), (iii) obligations under the Confidentiality Agreement and (iv) any liability provided for in Section 10.2(b) through Section 10.2(d), inclusive.

(b)    If this Agreement is terminated pursuant to Section 10.1(a), Section 10.1(d), Section 10.1(e), Section 10.1(f), Section 10.1(g), Section 10.1(h), Section 10.1(i), or Section 10.1(j), then the Good Faith Deposit shall, within three (3) Business Days, be returned by Seller to Buyer.

(c)    If this Agreement is terminated pursuant to Section 10.1(b) or Section 10.1(c), then Seller may, at its sole election (i) within three (3) Business Days, retain the Good Faith Deposit as liquidated damages (the "Break Fee") or (ii) without limitation to Seller's remedies under clause (i) of this Section 10.2(c) require Buyer to specifically perform under the terms of this Agreement and each of the Ancillary Agreements to which Buyer is a party.

(d)    Notwithstanding anything to the contrary herein, but without limitation to the right to enforce covenants as set forth in Article 6 if the Closing does not occur, Seller's entitlement to the Break Fee (to the extent provided for in this Agreement) will constitute liquidated damages (and not a penalty) and, if Seller retains such amount, then notwithstanding anything to the contrary contained herein, such Break Fee shall be the sole and exclusive remedy available to Seller and any other Person against Buyer, its Subsidiaries, and any of their respective Affiliates in connection with this Agreement and the transactions contemplated hereby (including as a result of the failure to consummate the Closing or for a breach or failure to perform hereunder or otherwise) and none of Buyer, its Subsidiaries or any of their respective Affiliates shall have any further liability relating to or arising out of this Agreement or the transactions contemplated hereby.  Each Party acknowledges that the agreements contained in this Section 10.2 are an integral part of the transactions contemplated by this Agreement, without which such Party would not have entered into this Agreement.  Nothing in this Section 10.2 shall limit or restrict a Party's rights (i) under Section 11.10 or (ii) in the event the Closing occurs, any rights of a Party arising from or relating to the breach of this Agreement by another Party (including Buyer's rights under Section 6.3, Section 6.4 and Section 6.6).

ARTICLE 11. MISCELLANEOUS.

Section 11.1    Successors and Assigns.  Prior to the Closing, neither Buyer nor Seller shall assign this Agreement or any rights or obligations hereunder without the prior written consent of the other, and any such attempted assignment without such prior written consent shall be void and of no force and effect; provided that if Buyer wishes, upon prior written notice to Seller, to assign its rights, obligations and liabilities hereunder no later than ten (10) days prior to the Closing Date to a Buyer Acquisition Vehicle, such prior written consent of Seller shall not

30

unreasonably be withheld.  This Agreement shall inure to the benefit of and shall be binding upon the successors and permitted assigns of the parties to this Agreement.

Section 11.2  Governing Law; Jurisdiction.  This Agreement shall be construed, performed and enforced in accordance with, and governed by, the Laws of the State of New York (without giving effect to the principles of conflicts of Laws thereof), except to the extent that the Laws of such State are superseded by the Bankruptcy Code.  For so long as Seller is subject to the jurisdiction of the Bankruptcy Court, the parties to this Agreement irrevocably elect as the sole judicial forum for the adjudication of any matters arising under or in connection with the Agreement, and consent to the exclusive jurisdiction of, the Bankruptcy Court.  After Seller is no longer subject to the jurisdiction of the Bankruptcy Court, the parties to this Agreement irrevocably elect as the sole judicial forum for the adjudication of any matters arising under or in connection with this Agreement, and consent to the jurisdiction of, any state or federal court having competent jurisdiction over the Southern District of New York.

Section 11.3  WAIVER OF JURY TRIAL.  EACH PARTY TO THIS AGREEMENT IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT.  EACH PARTY TO THIS AGREEMENT CERTIFIES AND ACKNOWLEDGES THAT (A) NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE SUCH WAIVER, (B) IT UNDERSTANDS AND HAS CONSIDERED THE IMPLICATIONS OF SUCH WAIVER, (C) IT MAKES SUCH WAIVER VOLUNTARILY, AND (D) IT HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 11.3.

Section 11.4  Expenses.  Except as expressly otherwise provided herein, each of the parties to this Agreement shall pay its own expenses in connection with this Agreement and the transactions contemplated by this Agreement, including, without limitation, any legal and accounting fees, whether or not the transactions contemplated by this Agreement are consummated.

Section 11.5  Broker's and Finder's Fees.  Each of the parties to this Agreement represents and warrants that it has dealt with no broker or finder in connection with any of the transactions contemplated by this Agreement other than as set forth on Schedule 11.5, whose fees and expenses shall, as between the parties to this Agreement, be the responsibility of the party indicated on Schedule 11.5, and no other broker or other Person is entitled to any commission or broker's or finder's fee in connection with any of the transactions contemplated by this Agreement or the Ancillary Agreements.

Section 11.6  Severability.  In the event that any part of this Agreement is declared by any court or other judicial or administrative body to be null, void or unenforceable, said provision shall survive to the extent it is not so declared, and all of the other provisions of this Agreement shall remain in full force and effect only if, after excluding the portion deemed to

31

be unenforceable, the remaining terms shall provide for the consummation of the transactions contemplated by this Agreement in substantially the same manner as originally set forth at the later of the date this Agreement was executed or last amended.

Section 11.7    Notices.

(a)    All notices, requests, demands and other communications under this Agreement shall be in writing and shall be deemed to have been duly given: (i) on the date of service, if served personally on the party to whom notice is to be given; (ii) when transmitted via electronic mail to the applicable electronic mail address set forth below if confirmation of receipt is obtained promptly after completion of transmission; (iii) on the day after delivery to Federal Express or similar overnight courier or the Express Mail service maintained by the United States Postal Service; or (iv) on the fifth (5th) day after mailing, if mailed to the party to whom notice is to be given, by first class mail, registered or certified, postage prepaid and properly addressed, to the party as follows:

If to Seller:

Remington Outdoor Company, Inc.
100 Electronics Blvd., SW
Huntsville, Alabama 35824
Attention: Ken D'Arcy
Email: ken.darcy@remington.com

With a copy in either case to (which copy alone shall not constitute notice):

O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, California  90071
Attention: John Paul Motley, Esq., and Stephen H. Warren, Esq.
Phone: (213) 430-6100 and (213) 430-7875, respectively
Email: jpmotley@omm.com and swarren@omm.com, respectively

If to Buyer:

Sturm, Ruger & Company, Inc.
1 Lacey Place
Southport, Connecticut  06890
Attention: Christopher J. Killoy
Email: ckilloy@ruger.com

With a copy to (which copy alone shall not constitute notice):

Sturm, Ruger & Company, Inc.
1 Lacey Place
Southport, Connecticut  06890

32

Case 20-81688-CRJ11   Doc 2406-16   Filed 09/30/22   Entered 09/30/22 13:49:54   Desc
Exhibit RJN 4: Order Approving Ruger APG   Page 71 of 249

Attention: Kevin B. Reid, Sr., Esq.
Email: kreid@rugerlegal.com

and

Dentons US LLP
1221 Avenue of the Americas
New York, NY 10020-1089
Attention: Claude D. Montgomery, Esq.
E-mail: claude.montgomery@dentons.com

(b)     Any party may change its address for the purpose of this Section 11.7 by giving the other party written notice of its new address in the manner set forth above.

Section 11.8     Amendments; Waivers.   This Agreement may be amended or modified, and any of the terms, covenants, representations, warranties or conditions hereof may be waived, only by a written instrument executed by the parties to this Agreement, or in the case of a waiver, by the party waiving compliance.  Any waiver by any party of any condition, or of the breach of any provision, term, covenant, representation or warranty contained in this Agreement, in any one or more instances, shall not be deemed to be or construed as a furthering or continuing waiver of any such condition, or of the breach of any other provision, term, covenant, representation or warranty of this Agreement.

Section 11.9     Time of Essence.   Time is of the essence in the performance of each and every term of this Agreement.

Section 11.10   Specific Performance.    The provisions of this Agreement are uniquely related to Seller's and Buyer's desire to consummate the transactions contemplated by this Agreement, and such transactions represent a unique business opportunity at a unique time for Seller and Buyer.  As a result, irreparable damage may occur to Seller and/or Buyer in the event that any of the obligations of the other party under this Agreement were not performed in accordance with their specific terms.  Although liquidated or other monetary damages may be available for the breach of covenants and undertakings contained in this Agreement, monetary damages may be difficult to ascertain and may be an inadequate remedy therefor.  Accordingly, if Buyer or Seller breaches any provision of this Agreement, then without limitation to the non-breaching party's rights under clause (i) of Section 10.2 or Buyer's rights under Section 6.3 and Section 6.4, the non-breaching party shall be entitled to seek an injunction or injunctions, specific performance and any and all other equitable relief to prevent or restrain breaches of this Agreement.

Section 11.11   Public Announcements.  Promptly after the execution and delivery of this Agreement by both Buyer and Seller and approval by the Bankruptcy Court, the parties shall make a joint press release in form and substance reasonably satisfactory to both of them regarding the transactions contemplated herein.  Thereafter, prior to the Closing, no party shall make any press release or public announcement concerning the transactions contemplated by this Agreement without the prior written consent of the other party (such consent not to be

33

unreasonably withheld, conditioned or delayed) unless a press release or public announcement is required by Law, as is the case for Buyer as a publicly traded company, or Order of the Bankruptcy Court. If any such announcement or other disclosure is required by Law or Order of the Bankruptcy Court, the disclosing party agrees, if permitted by Law or Order of the Bankruptcy Court, to give the nondisclosing party prior notice of, and an opportunity to comment on, the proposed disclosure. Notwithstanding anything to the contrary in this Section 11.11, Seller (a) shall file this Agreement with the Bankruptcy Court in connection with obtaining the Sale Order and (b) may disclose this Agreement to its equityholders and lenders to the extent required by the provisions of any of Seller's bylaws, credit agreements and other pre-existing contractual obligations.

Section 11.12 Entire Agreement. This Agreement (including the Ancillary Agreements referenced herein), the Sale Order and the Confidentiality Agreement contain the entire understanding between the parties to this Agreement with respect to the transactions contemplated by this Agreement and supersede and replace all prior and contemporaneous agreements and understandings, oral or written, with regard to such transactions. All schedules to this Agreement and any documents and instruments delivered pursuant to any provision of this Agreement are expressly made a part of this Agreement as fully as though completely set forth in this Agreement.

Section 11.13 Parties in Interest. Nothing in this Agreement is intended to or shall confer any rights or remedies under or by reason of this Agreement on any Persons other than Seller and Buyer and their respective successors and permitted assigns. Nothing in this Agreement is intended to or shall relieve or discharge the obligations or liability of any third Persons to Seller or Buyer. This Agreement is not intended to nor shall give any third Persons any right of subrogation or action over or against Seller or Buyer.

Section 11.14 Bulk Sales Laws. Buyer waives compliance by Seller, and Seller waives compliance by Buyer, with the provisions of the "bulk sales", "bulk transfer" or similar laws of any state, other than any Laws which would exempt any of the transactions contemplated by this Agreement from any Tax liability which would be imposed but for such compliance.

Section 11.15 Construction. The article and section headings in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement. The parties to this Agreement have jointly participated in the negotiation and drafting of this Agreement. In the event of an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties hereto and no presumptions or burdens of proof shall arise favoring any party by virtue of the authorship of any of the provisions of this Agreement. Each defined term used in this Agreement has a comparable meaning when used in its plural or singular form. As used in this Agreement, the word "including" and its derivatives means "without limitation" and its derivatives, the word "or" is not exclusive and the words "herein," "hereof," "hereby," "hereto" and "hereunder" refer to this Agreement as a whole.

Section 11.16 Counterparts and Facsimiles. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute the same instrument. Executed signature pages to this Agreement may be delivered by electronic

mail and such electronic copies will be deemed as sufficient as if actual signature pages had been delivered.

ARTICLE 12. <u>DEFINITIONS</u>.

Section 12.1 <u>Certain Terms Defined</u>. As used in this Agreement, the following terms have the following meanings:

"<u>Affiliate</u>" means, with respect to any Person, any Person directly or indirectly controlling, controlled by or under direct or indirect common control with such other Person.

"<u>Alternative Transaction</u>" means Seller consummating any transaction or series of transactions, whether a going concern sale, liquidation or otherwise, that involves a sale of all or substantially all of the Business or the Acquired Assets by Seller to a purchaser or purchasers other than Buyer.

"<u>Ancillary Agreements</u>" means, collectively, the Assignment and Assumption Agreements, Assignment and Assumption of Leases, Acquired Intellectual Property Assignments, warranty deeds, and other certificates, affidavits and releases delivered pursuant to <u>Article 3</u>.

"<u>ATF</u>" means the United States Bureau of Alcohol, Tobacco, Firearms and Explosives.

"<u>Avoidance Actions</u>" means any and all claims and remedies of Seller under Sections 510 and 542 through 553 of the Bankruptcy Code or under similar state laws including, without limitation, fraudulent conveyance claims, and all other causes of action of a trustee and debtor-in-possession under the Bankruptcy Code.

"<u>Business Day</u>" means any day other than Saturday, Sunday and any day that is a legal holiday or a day on which banking institutions in New York, New York are authorized by Law or other governmental action to close.

"<u>Buyer Acquisition Vehicle</u>" means a Creditworthy entity that is wholly-owned and controlled by Buyer.

"<u>Cash</u>" means all cash and cash equivalents held by Seller, including all petty cash, register cash, undeposited checks, cash in transit and marketable securities, in each case as of immediately prior to the Closing (and including without limitation (i) the Good Faith Deposit, (ii) the Net Closing Cash Payment, (iii) any fee reserves or escrows established by Seller, and (iv) any cash in the Dominion Account (as defined in the Priority Term Loan)).

"<u>CBA</u>" means that certain Collective Bargaining Agreement between Remington Arms Company, LLC and International Union, United Mine Workers of America (2016-2022), as amended or otherwise modified from time to time.

"<u>City of Huntsville Project Development Liabilities</u>" means all Liabilities arising under (i) that certain Project Development Agreement dated as of February 27, 2014, by and among the City of Huntsville, Alabama, Madison County, Alabama, The Industrial Development Board of

35

the City of Huntsville, and Seller, as amended or otherwise modified from time to time, (ii) that certain note issued by Seller to the City of Huntsville on February 27, 2014 in the original principal amount of $12,500,000 and (iii) that certain Mortgage and Security Agreement dated as of February 27, 2014, by Seller in favor of the City of Huntsville.

"Claims" encompasses the definition in Bankruptcy Code §101(5) and under this Agreement also includes any and all liabilities, obligations, rights, credits, defenses, allowances, rebates, choses in action, rights of recovery, set-off, causes of action, civil or criminal, any contributions received from or owed to charitable or other organizations, assertions of legal or moral responsibility, in each case known or unknown, pending or threatened, at law or in equity, direct or derivative, liquidated or unliquidated, matured or unmatured, disputed or undisputed, choate or inchoate, judgments, demands, rights of first refusal or offer, recoupment, rights of recovery, reimbursement, contribution, indemnity, exoneration, rights under products liability, alter ego, environmental, intellectual property (including any infringement thereof), tort, contract and any other legal or equitable basis of liability, charges of any kind or nature, debts arising in any way in connection with any agreements, acts or failures to act, and all pending, threatened, asserted or unasserted actions against Seller or any of its Affiliates, or any of their respective current or former officers, employees, agents or independent contractors, any of their assets or properties, the Business, or any of their operations or activities arising out of or relating to any matter, occurrence, action, omission or circumstance, and includes any Claims against Buyer under doctrines of successor liability or any other ground or theory (which Claim may also be an Interest or Lien).

"Code" means the Internal Revenue Code of 1986, as amended.

"Contract" means any contract, indenture, note, bond, lease, license, premium finance arrangement, purchase order, sales order, Internet domain name account or agreement, social media account or agreement or other agreement to which Seller is a party; provided that Contracts do not include any Lease or any employment or similar Contracts.

"COVID Restrictions" means any quarantine, "shelter in place", "stay at home", workforce reduction, social distancing, shut down, closure, sequester or any other applicable Law, order, directive, guideline or recommendation by any Government of competent jurisdiction instituted in response to the COVID-19 virus.

"Creditworthy" means sufficiently capitalized, to the reasonable satisfaction of Seller upon provision to Seller of substantiating documentary evidence, to be able to pay the Purchase Price.

"Damages" means any and all Claims, obligations, actions, suits, proceedings, hearings, investigations, charges, complaints, claims, demands, injunctions, judgments, orders, decrees, rulings, damages (including, without limitation, lost income, revenues and profits, multiples of earnings, diminution in value, consequential damages, indirect damages, incidental damages, special damages, exemplary damages and punitive damages), dues, penalties, fines, costs, amounts paid in settlement, Taxes, Liens, Encumbrances, losses, expenses, and fees, including court costs and reasonable attorneys' fees and expenses.

36

"D&O Insurance" means the policy in effect as of the Effective Date that provides for insurance from liability for current and former directors and officers of Seller, including insurance from Liabilities with respect to all claims (including, under "tail" insurance coverage, those claims brought within six (6) years from the Closing Date) arising out of or relating to events which occurred on or prior to the Closing Date (including in connection with the transactions contemplated by this Agreement).

"DIP Facility" means any debtor-in-possession financing advanced to Seller in the Bankruptcy Case.

"Documents" means all files, documents, instruments, papers, books, reports, records, tapes, microfilms, photographs, letters, budgets, forecasts, ledgers, journals, title policies, surveys, customer lists, regulatory filings, operating data and plans, technical documentation (design specifications, functional requirements, operating instructions, logic manuals, flow charts, etc.), user documentation (installation guides, user manuals, training materials, release notes, working papers, etc.), marketing documentation (sales brochures, flyers, pamphlets, web pages, etc.), and other similar materials, in each case whether or not in electronic form.

"Employee Benefit Plans" means (a) all "employee benefit plans," as defined in Section 3(3) of ERISA, (b) all employment, consulting or other individual compensation agreements, and (c) all bonus or other incentive (performance or retention), equity or equity-based compensation, deferred compensation, severance pay, sick leave, vacation pay, salary continuation, disability, hospitalization, medical, life insurance, scholarship programs or other plans, contracts, policies or arrangements that provide for compensation for employee benefits as to which Seller has any obligation or Liability, contingent or otherwise.

"Employee Liabilities" means all Liabilities of Seller to or with respect to all Employees whenever arising and Liabilities of the type specified in Section 1114 of the Bankruptcy Code owing to retired employees of Seller, including, for the avoidance of doubt, under the CBA.

"Employee Records" means all employment and benefit records (in whatever form maintained) in the possession of Seller or its agents and pertaining to any Transferred Employee, or any spouse, dependent or other beneficiary of any such Transferred Employee.

"Employees" means all individuals, as of the date of this Agreement, who are employed by Seller within the scope of the Business (including Employees who are absent due to COVID Restrictions or vacation, family leave, short-term disability, COVID 19-related furloughs or absences or other approved leave of absence) including those employed in connection with the ownership, operation and management of the Business.

"Encumbrance" means any claims, interests, rights of setoff, recoupment, netting and deductions, rights of first offer, first refusal and any other similar contractual property, legal or equitable rights, and any successor or successor-in-interest liability under any theory.

"Environmental Laws" means all applicable federal, state and local statutes, ordinances, rules, Orders, regulations and other provisions having the force of law, all judicial and administrative Orders and determinations, and all common law concerning pollution or protection of human health and the environment, including, without limitation, all those relating

to the presence, use, production, generation, handling, transportation, treatment, storage, disposal, distribution, labeling, testing, processing, discharge, release, threatened release, control or cleanup of any hazardous materials, including petroleum and petroleum byproducts.

"ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

"Excise Taxes" means all Taxes imposed under Section 4181 of the Code and Chapter 53 of the Code, including but not limited to Sections 5801, 5811 and 5821 of the Code, and any and all similar Taxes.

"Excluded Taxes" means (i) any Liability or obligation for Taxes of the Seller or any Affiliate thereof; (ii) any and all Taxes for any Pre-Closing Tax Period relating to the Acquired Assets; (iii) any and all Taxes relating to the Excluded Assets; (iv) the Pre-Closing Date Share of all Taxes relating to the Acquired Assets with respect to any Straddle Period and (v) any Excise Taxes related to the Acquired Assets with respect to Excise Tax Property sold or otherwise disposed of on or prior to the Closing Date or otherwise incurred prior to the Closing.

"Exit Term Loan" means that certain Term Loan Agreement, dated as of May 15, 2018 (as amended by that certain Amendment No. 1, dated as of April 18, 2019, that certain Amendment No. 2, dated as of May 1, 2019, that certain Amendment No. 3, dated as of August 15, 2019, that certain Amendment No. 4, dated as of February 21, 2020, and that certain Amendment No. 5, dated as of March 27, 2020, and as it may be further amended, supplemented or otherwise modified from time to time), by and among FGI Operating Company, LLC, the guarantors party thereto from time to time, Ankura Trust Company, LLC, as administrative agent and collateral agent and the lenders party thereto.

"FILO Facility" means that certain First Lien Last-Out Term Loan Agreement, dated as of May 15, 2018 (as amended by that certain Amendment No. 1, dated as of April 18, 2019, that certain Amendment No. 2, dated as of May 1, 2019, that certain Amendment No. 3, dated as of August 15, 2019, that certain Amendment No. 4, dated as of October 11, 2019, that certain Amendment No. 5 dated as of February 21, 2020, and that certain Amendment No. 6, dated as of March 27, 2020, and as it may be further amended, supplemented or otherwise modified from time to time), by and among FGI Operating Company, LLC, the guarantors party thereto from time to time, Ankura Trust Company, LLC, as administrative agent and collateral agent and the lenders party thereto.

"Final Order" means an Order, ruling or judgment of any court of competent jurisdiction that has not been reversed, stayed, modified or amended, and as to which no appeal, petition for certiorari, motion or petition for rehearing or reargument is pending, and the deadline for any such filing has expired.

"GCA" means Gun Control Act of 1968 (Chapter 44 of Title 18, United States Code § 921 et seq).

"Government" means any agency, division, subdivision, audit group, procuring office or governmental or regulatory authority in any event or any adjudicatory body thereof, of the United States, or any state, county or municipality thereof, including the employees or agents thereof.

"Historic Firearms Books and Records" means all historic books and records relating to the sale of firearms included in the Acquired Assets, including all records required to be kept pursuant to parts 447, 478, and, 479 of title 27, Code of Federal Regulations.

"Intellectual Property" means (1) all intellectual property (whether or not registered and whether developed or under development) which arises from or relates to the Business arising from or in respect of the following: (a) all patents and applications therefore (filed or unfiled), including continuations, divisionals, continuations-in-part, or reissues of patent applications and patents issuing thereon; (b) all trademarks, service marks, trade names, service names, brand names, all trade dress rights, logos, Internet domain names, social media accounts and corporate names and general intangibles of a like nature, together with the goodwill associated with any of the foregoing, and all applications, registrations and renewals thereof; (c) copyrights and registrations and applications therefore and works of authorship, and mask work rights; (d) all Software and programming necessary to manufacture the Products and/or operate and maintain the Owned FF&E and/or the Leased FF&E; (e) confidential information, know-how, trade secrets, inventions and designs and design packages for the Products (drawings, files, schematics and other design elements); and (f) without limiting the foregoing, the specific model names and numbers and intellectual property set forth on Schedule 12.1(a), and (2) all claims or causes of action arising out of or related to past, present or future infringement or misappropriation of Seller's rights or interests in intellectual property that is not an Excluded Asset and any related remedies, including, without limitation, the right to sue for past, present or future infringement, misappropriation, or violation of rights related to the Intellectual Property and collect damages therefor.

"Intercompany Note" means that certain Amended and Restated Promissory Note issued on April 18, 2019, for the principal amount of $100,000,000, by Remington Arms Company, LLC in favor of FGI Holding Company, LLC.

"Interests" means all rights and entitlements of any nature including, without limitation, security interests, assignments of Liens or Claims, licenses, leases, contract rights, indentures, instruments, licenses, options, escheatment, abandoned property, unclaimed property, covenants, conditions, zoning, planning and any other restrictions, easements, encroachments, Permits or other interests in property or limitations on the use of real property or irregularities in title, rights of first refusal, rights to injunctive or other legal or equitable relief, any attributes of ownership, rights or restrictions of any kind and nature, whenever incurred, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, matured or unmatured, legal or equitable (which Interests may also be Liens or Claims).

"Knowledge" or any other similar term or knowledge qualification means, with respect to (i) Seller, the actual knowledge, together with the knowledge such individual would be expected to obtain after reasonable investigation, of either of Ken D'Arcy (President and Chief Executive Officer of ROC), Mark Little (Vice President and Chief Financial Officer of ROC), as of the date the applicable representation or warranty is made or deemed made under this Agreement and (ii) Buyer, the actual conscious knowledge, together with the knowledge such individual would be expected to obtain after reasonable investigation, of Christopher J. Killoy, President and Chief Executive Officer and Thomas A. Dineen, Senior Vice President, Treasurer, and Chief Financial Officer, as of the date the applicable representation or warranty is made or deemed made under

this Agreement.

"Leased Real Property" means all leasehold or subleasehold estates and other rights of Seller to possess, use or occupy (or to grant others the right to possess, use or occupy) any land, buildings, structures, improvements, fixtures or other interest in real property, in each of the foregoing cases, to the extent possessed, used or occupied in connection with the Business.

"Leases" means all leases, subleases, licenses and other agreements, including all amendments, extensions, renewals, and other agreements with respect thereto, pursuant to which Seller has the right to possess, use, lease or occupy (or to grant others the right to possess, use or occupy) any personal property asset.

"Lexington Property" means the Remington Arms Company property located at 1 Murphy Road, Building 3, Lexington, MO 64067.

"Liabilities" includes any and all liabilities, obligations, Claims against, in each case known or unknown, pending or threatened, at law or in equity, direct or derivative, liquidated or unliquidated, matured or unmatured, disputed or undisputed, choate or inchoate, absolute, accrued, judgments, demands, rights of first refusal or offer, recoupment, rights of recovery, reimbursement, contribution, indemnity, exoneration, rights under products liability, alter ego, environmental, intellectual property (including any infringement thereof), tort, contract and any other legal or equitable basis of liability, charges of any kind or nature, debts arising in any way in connection with any agreements, acts or failures to act, and all pending, threatened, asserted or unasserted actions against Seller or any of its Affiliates, or any of their respective current or former officers, employees, agents or independent contractors, any of their assets or properties, the Business, or any of their operations or activities arising out of or relating to any matter, occurrence, action, omission or circumstance, and includes any Claims against Buyer under doctrines of successor liability or any other ground or theory (which Claim may also be an Interest or Lien).

"Lien" means any mortgage, pledge, security interest, encumbrance, lien (statutory or other lien including, but not limited to warehouseman's and mechanics' liens), restriction on use or conditional sale agreement.

"Material Adverse Effect" means a state of facts, event, change or effect on the value of the Acquired Assets or the Business that results in a material and adverse effect on the value of the Acquired Assets or the Business taken as a whole, but excludes any state of facts, event, change or effect caused by events, changes or developments relating to (A) changes resulting from, or from any motion, application, pleading or Order filed relating to, the Bankruptcy Case; (B) any action of Seller taken pursuant to, or any failure of Seller to take any action prohibited by, any Order of the Bankruptcy Court, this Agreement or any of the Ancillary Agreements to which Seller is a party; (C) the public disclosure of this Agreement or any of the Ancillary Agreements or any of the transactions contemplated hereby or thereby, (D) changes, after the Effective Date, in United States generally accepted accounting principles, (E) changes in general United States economic, monetary or financial conditions, including changes in prevailing interest rates, credit availability, and the credit markets generally, as well as changes in the commercial real estate markets in the geographic regions in which Seller operates the Business,

40

Case 20-81688-CR1 Doc 9013-6 Filed 09/30/22 Entered 09/30/22 11:49:04 Desc
Exhibit RJN 4: Order Approving Page 79 of 249

(F) changes in the firearms, ammunition or sporting goods industries in general, (G) any acts of God, natural disasters, terrorism, armed hostilities, sabotage, war (whether or not declared) or (H) any occurrence, outbreak, escalation or worsening of, or furloughs or Government actions (including any COVID Restrictions) instituted in response to, any epidemic, pandemic or other disease; provided, further, that in the cases of clauses (D), (E), (F), (G) and (H) above, such change, event or circumstance shall be taken into account to the extent it has a disproportionate adverse impact on the Business, Acquired Assets or financial condition of Seller, taken as a whole, compared to other companies operating in the industries in which Seller operates.

"National Firearms Act" means the National Firearms Act of 1934, as amended, 26 U.S.C. § 5801 et seq.

"Non-Debtor Affiliate" means any person or entity that is an affiliate within the meaning of the Section 101(2) that is not a debtor whose case has been administratively consolidated with the Bankruptcy Case.

"Owned Real Property" means all land and all buildings, structures, fixtures and other improvements located thereon, and all easements, rights of way, servitudes, tenements, hereditaments, appurtenances, privileges and other rights thereto, owned by Seller.

"Pension Plan" means Remington Arms Company, LLC Pension and Retirement Plan, (f/k/a Remington Arms Company, Inc. Pension and Retirement Plan), as amended from time to time, whereby the Marlin Firearms Co. Employees' Pension Plan (a/k/a Marlin Firearms Company Employees Pension Plan), as amended from time to time, was merged into the Remington Arms Company, LLC Pension and Retirement Plan.

"Permits" means any means all licenses, permits, certificates, clearance, registration, consents and other authorizations and approvals from any Government.

"Permitted Liens" mean: (a) Liens and Interests consisting of (i) current Taxes and assessments not yet due and payable, or Liens for Taxes that are being contested in good faith by appropriate legal proceedings and for which appropriate reserves under GAAP have been established in the Balance Sheets, (ii) all easements, rights-of-way, servitudes, covenants, conditions, restrictions, obligations and other similar matters of record affecting title to real property, (iii) statutory, common law or contractual liens of landlords, and (iv) the applicable zoning and use regulations or other Laws of any Government, in each case, that do not materially affect the current use of the underlying asset and are not violated in any material respect by the operation of the Business as currently conducted thereon; (b) any imperfection of title with respect to any asset that does not materially interfere with the present occupancy, use or marketability of such asset and the continuation of the present occupancy or use of such asset; (c) such covenants, conditions, restrictions, easements, encroachments or encumbrances that are not created pursuant to mortgages or other financing or security documents, or any other state of facts, that do not materially interfere with the present occupancy or use of an asset; (d) all terms, conditions and restrictions under any applicable Permits; and (e) the rights under the Acquired Intellectual Property granted under (1) that certain Trademark License Agreement, by and between RA Brands and Crossman Corporation, a Delaware corporation, dated as of January 18, 2016, as amended by Amendment #1 to Trademark License Agreement, dated as of June 4, 2019

and as amended, supplemented and modified from time to time, (2) that certain Trademark License Agreement, by and between RA Brands and Gator Cases Inc., a Florida corporation, dated as of November 5, 2019, as amended by Amendment #1 to Trademark License Agreement, dated as of August 19, 2020 and as amended, supplemented and modified from time to time, and (3) that certain Exclusive Trademark License Agreement, by and between RA Brands and Buck Knives, Inc., a Nevada corporation, dated as of January 18, 2017, as amended, supplemented and modified from time to time.

"Person" means any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or Government.

"Plan" means a Joint Chapter 11 Plan filed by Seller with the Bankruptcy Court.

"Pre-Closing Date Share" means (a) with respect to any income Tax liability for a Straddle Period, the amount that would be due for the portion of the tax period beginning on the first day of such Straddle Period and ending on the Closing Date, based on an interim closing of the books as of the close of business on the Closing Date, and (b) with respect to any other Tax liability for a Straddle Period, the total amount due for the entire Straddle Period, multiplied by (x) the number of days in such Straddle Period on or before the Closing Date divided by (y) the total number of days in such Straddle Period.

"Pre-Closing Tax Period" means any Tax period (or portion thereof) ending on or before the Closing Date.

"Priority Term Loan" means that certain Loan and Security Agreement, dated as of April 18, 2019 (as amended by that certain Amendment No. 1, dated May 1, 2019, that certain Amendment No. 2, dated June 24, 2019, that certain Amendment No. 3, dated August 15, 2019, that certain Amendment No. 4, dated October 11, 2019, that certain Amendment No. 5, dated February 21, 2020, and that certain Amendment No. 6, dated March 27, 2020, and as it may be further amended, supplemented or otherwise modified from time to time), by and among FGI Operating Company, LLC, the guarantors party thereto, Cantor Fitzgerald Securities, as administrative agent and initial collateral agent, and the lenders party thereto.

"Related Person" means, with respect to any Person, all past, present and future directors, officers, members, managers, stockholders, employees, controlling persons, agents, professionals, attorneys, accountants, investment bankers or representatives of any such Person.

"Remington Name" means "Remington," either alone or in combination with other words, graphics or designs, including all rights in said term as a trade name, trade mark, corporate name, service mark and domain name, including any confusingly similar variation, derivative or transaction thereof.

"Retained Litigation" means all litigation and Claims arising or related to events prior to the Closing.

"Seller D&Os" means the current or former directors and officers insured under the D&O Insurance.

Case 20-81688-CRJ11 Doc 2406-16 Filed 09/08/22 Entered 09/08/22 13:49:54 Desc
Exhibit RJN 4: Order Approving Page 82 of 169 Page 81 of 249

"Software" means any and all (a) computer programs, including any and all software implementations of algorithms, models and methodologies, whether in source code or object code, (b) databases and compilations, including any and all data and collections of data, whether machine readable or otherwise, (c) descriptions, flow-charts and other work product used to design, plan, organize and develop any of the foregoing, (d) screens, user interfaces, report formats, firmware, development tools, templates, menus, buttons and icons, and (e) all Documents related to any of the foregoing.

"State of Alabama Project Development Liabilities" means all Liabilities under that certain Project Agreement dated as of February 17, 2014, by and between the State of Alabama and ROC, as amended or otherwise modified from time to time.

"Straddle Period" means any taxable period that includes but does not end on the Closing Date.

"Subsidiary(ies)" means, when used with respect to any specified Person, any other Person (a) of which the specified Person or any Subsidiary thereof is a general partner, (b) of which the specified Person or a Subsidiary thereof own at least a majority of the securities or other interests having by their terms ordinary voting power to elect a majority of the board of directors or others performing similar functions for such other Person of which owns the specified person or a Subsidiary thereof, or (c) that is directly or indirectly controlled by the specified Person or any Subsidiary thereof.

"Tax Return" means any report, return, information return, filing or other information, including any schedules, exhibits or attachments thereto, and any amendments to any of the foregoing required to be filed or maintained in connection with the calculation, determination, assessment or collection of any Taxes (including estimated Taxes).

"Taxes" means (a) all taxes, however denominated, including any interest, penalties or additions to tax that may become payable in respect thereof, imposed by any Government, which taxes shall include all income taxes, payroll and employee withholding, unemployment insurance, social security (or similar), sales and use, Excise Taxes (whether or not deferred), franchise, gross receipts, occupation, real and personal property, stamp, transfer, worker's compensation, customs duties, registration, documentary, value added, alternative or add-on minimum, estimated, environmental (including taxes under Section 59A of the Code as in effect for Tax years beginning prior to January 1, 2018) and (b) any liability for items described in clause (a) of this definition under Treasury Regulation Section 1.1502-6 (or any corresponding or similar provision of state, local, or non-U.S. law), by contract, as a transferee or successor, payments under any Tax allocation, sharing, or similar agreement (whether oral or written), or otherwise, in each case, whether disputed or not; and "Tax" shall mean any one of them.

Section 12.2    All Terms Cross-Referenced.    Each of the following terms is defined in the Section set forth opposite such term:

| **Term** | **Section** |
| --- | --- |
| Acquired Assets | Section 1.1 |
| Acquired Intellectual Property | Section 1.1(f) |

Acquired Intellectual Property Assignment............................................................Section 3.2(d)
Acquired Policy Rights .................................................................................................Section 1.1(d)
Affiliate ....................................................................................................................... Section 12.1
Agreement....................................................................................................................*Preamble*
Allocation..................................................................................................................... Section 8.3
Alternative Transaction ............................................................................................... Section 12.1
Ancillary Agreements .................................................................................................. Section 12.1
Approval Termination Date ..........................................................................................Section 10.1(d)
Assignment Agreement..................................................................................................Section 3.2(b)
Assignment of Lease .....................................................................................................Section 3.2(c)
Assigned Business Contracts ........................................................................................Section 1.1(e)
Assigned Contracts .......................................................................................................Section 1.1(e)
Assigned FF&E Leases .................................................................................................Section 1.1(c)
ATF...............................................................................................................................  Section 12.1
Avoidance Actions ....................................................................................................... Section 12.1
Bankruptcy Case .......................................................................................................... *Recitals*
Bankruptcy Code .......................................................................................................... *Recitals*
Bankruptcy Court.......................................................................................................... *Recitals*
Bidding Procedures Motion .......................................................................................... *Recitals*
Bidding Procedures Order............................................................................................. *Recitals*
Break Fee .....................................................................................................................Section 10.2(c)
Business ....................................................................................................................... *Recitals*
Business Day ................................................................................................................. Section 12.1
Buyer............................................................................................................................. Preamble
Buyer Acquisition Vehicle............................................................................................. Section 12.1
Buyer Straddle Period Return .......................................................................................Section 8.2(d)
Cash............................................................................................................................... Section 12.1
CBA .............................................................................................................................. Section 12.1
City of Huntsville Project Development Liabilities........................................................ Section 12.1
Claims ........................................................................................................................... Section 12.1
Closing .......................................................................................................................... Section 3.1
Closing Date .................................................................................................................. Section 3.1
Code .............................................................................................................................. Section 12.1
Confidentiality Agreement.............................................................................................Section 5.1(b)
Contract......................................................................................................................... Section 12.1
COVID Restrictions....................................................................................................... Section 12.1
Creditworthy ................................................................................................................. Section 12.1
Cure Amount..................................................................................................................Section 1.4(a)
D&O Insurance ............................................................................................................. Section 12.1
Damages ....................................................................................................................... Section 12.1
DIP Facility .................................................................................................................. Section 12.1
Documents .................................................................................................................... Section 12.1
Effective Date ...............................................................................................................*Preamble*
Employee Benefit Plans................................................................................................. Section 12.1
Employee Liabilities ..................................................................................................... Section 12.1
Employee Records ........................................................................................................ Section 12.1

44

Employees ................................................................................................... Section 12.1
Encumbrance ............................................................................................... Section 12.1
Environmental Laws .................................................................................... Section 12.1
ERISA ........................................................................................................ Section 12.1
Excise Tax Property ................................................................................. Section 8.2(d)
Excise Taxes ............................................................................................... Section 12.1
Excluded Assets ........................................................................................... Section 1.2
Excluded Insurance Policies ...................................................................... Section 1.2(c)
Excluded Liabilities ...................................................................................... Section 1.3
Excluded Taxes ........................................................................................... Section 12.1
Exit Term Loan ........................................................................................... Section 12.1
FILO Facility .............................................................................................. Section 12.1
Final Order ................................................................................................. Section 12.1
GCA ........................................................................................................... Section 12.1
Good Faith Deposit .................................................................................. Section 2.2(a)
Government ................................................................................................. Section 12.1
Gross Closing Cash Payment .................................................................... Section 2.1(a)
Historic Firearms Books and Records ......................................................... Section 12.1
Intellectual Property ..................................................................................... Section 12.1
Intercompany Note ....................................................................................... Section 12.1
Interests ....................................................................................................... Section 12.1
Inventory ................................................................................................... Section 1.1(h)
Knowledge ................................................................................................... Section 12.1
Law .......................................................................................................... Section 4.1(c)
Leased FF&E ............................................................................................ Section 1.1(c)
Leased Real Property ................................................................................... Section 12.1
Leases ......................................................................................................... Section 12.1
Liabilities ..................................................................................................... Section 12.1
Lien ............................................................................................................. Section 12.1
Material Adverse Effect ............................................................................... Section 12.1
Material Permits ........................................................................................ Section 4.1(h)
National Firearms Act ................................................................................. Section 12.1
Necessary Consent ...................................................................................... Section 1.5
Net Closing Cash Payment ....................................................................... Section 2.2(b)
Non-Debtor Affiliate .................................................................................... Section 12.1
Order ........................................................................................................ Section 4.1(c)
Other Agreements ........................................................................................ Section 1.7
Owned FF&E ............................................................................................ Section 1.1(b)
Owned Real Property ................................................................................... Section 12.1
Pension Plan ................................................................................................ Section 12.1
Permits ........................................................................................................ Section 12.1
Person ......................................................................................................... Section 12.1
Petition Date ..................................................................................................... *Recitals*
Plan ............................................................................................................ Section 12.1
Pre-Closing Date Share ............................................................................... Section 12.1
Pre-Closing Tax Period ............................................................................... Section 12.1

Priority Term Loan ................................................................................ Section 12.1
Products................................................................................................... *Recitals*
Prohibited Material ............................................................................... Section 6.8
Purchase Price ....................................................................................... Section 2.1
Related Person ....................................................................................... Section 12.1
Remington Name ................................................................................... Section 12.1
Retained Litigation................................................................................ Section 12.1
ROC ......................................................................................................... Preamble
Sale Hearing...................................................................................... Section 1.4(a)
Sale Order ............................................................................................... *Recitals*
Seller ....................................................................................................... Preamble
Seller D&Os............................................................................................ Section 12.1
Seller Straddle Period Return ............................................................Section 8.2(d)
Seller's Knowledge ............................................................................... Section 12.1
Software .................................................................................................. Section 12.1
Specified Relied Upon Documents ..................................................... Section 12.1
State of Alabama Project Development Liabilities.............................. Section 12.1
Straddle Period....................................................................................... Section 12.1
Subsidiary(ies) ....................................................................................... Section 12.1
Tax Return .............................................................................................. Section 12.1
Taxes........................................................................................................ Section 12.1
Transaction Taxes .................................................................................. Section 8.1
Transferred Employees ......................................................................... Section 7.1
WARN Act .............................................................................................. Section 7.2
WARN Liabilities ................................................................................... Section 7.2
Warranty Termination Date ..............................................................Section 10.1(b)

*[Signatures are on the following pages.]*

Case 20-81688-CRJ11    Doc 2406-16    Filed 09/30/22    Entered 09/30/22 13:49:54    Desc
Exhibit RJN 4: Order Approving Sale of PES    Page 85 of 249

IN WITNESS WHEREOF, the parties to this Agreement have caused this Agreement to be executed by their respective officers thereunto duly authorized as of the date first above written.

**BUYER**

STURM, RUGER & COMPANY, INC.

By: _____

Name: Christopher J. Killoy

Title: President & CEO

US_Active\115379137\V-8

**ROC**

REMINGTON OUTDOOR COMPANY, INC.

By: _____
    Name:
    Title:

**SUBSIDIARIES OF ROC**

FGI OPERATING COMPANY, LLC

By: _____
    Name:
    Title:

FGI HOLDING COMPANY, LLC

By: _____
    Name:
    Title:

BARNES BULLETS, LLC

By: _____
    Name:
    Title:

REMINGTON ARMS COMPANY, LLC

By: _____
    Name:
    Title:

RA BRANDS, L.L.C.

By: _____
    Name:
    Title:

OUTDOOR SERVICES, LLC

By: _____
    Name:
    Title:

S-2

Case 20-81688-CRJ11 Doc 2406-16 Filed 09/30/22 Entered 09/30/22 13:49:54 Desc
Exhibit RJN 4: Order Approving Rule 9019 Page 87 of 249

FGI FINANCE INC.

By: _____
    Name:
    Title:

HUNTSVILLE HOLDINGS LLC

By: _____
    Name:
    Title:

TMRI, INC.

By: _____
    Name:
    Title:

REMINGTON ARMS DISTRIBUTION
COMPANY, LLC

By: _____
    Name:
    Title:

32E PRODUCTIONS, LLC

By: _____
    Name:
    Title:

GREAT OUTDOORS HOLDCO, LLC

By: _____
    Name:
    Title:

S-3

Case 20-81688-CR1 11 Doc 2906-16 Filed 09/30/22 Entered 09/30/22 13:49:54 Desc
Exhibit RJN 4: Order Approving Rule 9019 Page 88 of 249

**DISCLOSURE SCHEDULES**

**to**

**ASSET PURCHASE AGREEMENT**

**by and among**

**STURM, RUGER & COMPANY, INC.**

**and**

**REMINGTON OUTDOOR COMPANY, INC.**

**and**

**EACH OF THE SUBSIDIARIES OF REMINGTON OUTDOOR COMPANY,**

**INC. Dated as of September 26, 2020**

These Disclosure Schedules (these "Schedules" and each a "Schedule") are furnished pursuant to the Asset Purchase Agreement (the "Agreement"), dated as of September 26, 2020, by and among Remington Outdoor Company, Inc., a Delaware corporation and debtor-in-possession ("ROC"), each of the subsidiaries of ROC set forth on the signature pages to the Agreement (collectively with ROC, "Seller"), and Sturm, Ruger & Company, Inc. ("Buyer"). All capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Agreement, unless the context otherwise requires.

These Schedules are hereby incorporated in and made a part of the Agreement as if set forth in full therein and are an integral part of the Agreement. The information contained in these Schedules is disclosed solely for purposes of the Agreement, and no information contained herein shall be deemed to be an admission by any party to the Agreement to any third party of any matter whatsoever (including any violation of law or breach of contract). These Schedules and the information and disclosures contained herein are intended only to qualify and limit the representations, warranties or covenants of the Seller contained in the Agreement and shall not be deemed to expand in any way the scope or effect of any of such representations, warranties or covenants. In disclosing the information in these Schedules, Seller does not waive any attorney-client privilege associated with such information or any protection afforded by the work-product doctrine with respect to any of the matters disclosed or discussed herein. The disclosures in these Schedules are to be taken as relating to the representations and warranties as a whole, notwithstanding the fact that these Schedules are arranged by sections corresponding to the sections in the Agreement, or that a particular section of the Agreement makes reference to a specific section of the Schedules, and notwithstanding that a particular representation and warranty may not make a reference to the Schedules. Disclosure of an item on one Schedule shall be deemed disclosure on all other Schedules to which the applicability of the disclosure of such item is reasonably apparent on its face from such disclosure.

Neither the specification of any dollar amount in any representation or warranty nor the disclosure of a document or information in these Schedules is intended, or shall be construed or offered in any dispute between the parties to the Agreement as evidence of, the materiality of such dollar amount, document or information, nor does it establish any standard of materiality upon which to judge the inclusion or omission of any similar documents or information in such Schedule or any other Schedule. The headings and descriptions of the disclosures herein are for convenience of reference only and are not intended and do not alter the meaning of any provision of the Agreement or these Schedules.

**Schedule 1.1(b)**
**Owned FF&E**

See Marlin FF&E - Fixed Assets on following pages.

**Marlin FF&E - Fixed Assets**

**Marlin FF&E - Fixed Assets**

| Product Family | Location | Asset | Asset description |
|---|---|---|---|
| Marlin | Huntsville | 3016244 | W0821-W0827 - Blk Oxide & Passivate Fnshing Lines |
| Marlin | Huntsville | 3016598 | W1386- Upton Salt Bath |
| Marlin | Huntsville | 3016297 | Polisher, Fanuc M710/50 Robot SARF 240626 |
| Marlin | Huntsville | 3016173 | W0793 - Talon Barrel Contour/Chamber N2X2500/1000 |
| Marlin | Huntsville | 3016174 | W0794 - Talon Barrel Contour/Chamber NLX2500/700 |
| Marlin | Huntsville | 3015395 | W1829 - DMG Mori N2X2500/1000 |
| Marlin | Huntsville | 3016520 | W1397 Powder Coat Modular Room |
| Marlin | Huntsville | 3016244 | Black Oxide Phase II |
| Marlin | Huntsville | 3017165 | W1601 - Robotic Polish Cell Conversion |
| Marlin | Huntsville | 3016466 | VERTICAL CNC ROBODRILL XT RECV 292318 |
| Marlin | Huntsville | 3016631 | W1442-Sarf Barrel Press |
| Marlin | Huntsville | 3016244 | Black Oxide PII Cont/Tank Install |
| Marlin | Huntsville | 3017043 | W1534 - XT Rifle Assembly |
| Marlin | Huntsville | 3016234 | W0837 - Bridgeport GX300 Vert Mill SN GXPB3G0001 |
| Marlin | Huntsville | 3016235 | W0838 - Bridgeport GX300 Vert Mill SN GXPB3G0007 |
| Marlin | Huntsville | 3016236 | W0839 - Bridgeport GX300 Vert Mill  SN: GXPB3G0004 |
| Marlin | Huntsville | 3016237 | W0842 - Bridgeport GX300 Vert Mill SN: GXPB3H0022 |
| Marlin | Huntsville | 3016239 | W0856 - Bridgeport GX300 Vert Mill SN: GXPB3H0024 |
| Marlin | Huntsville | 3015397 | W1828 - DMG Mori NLX2500MC/700 |
| Marlin | Huntsville | 3016598 | W1386-Upton Salt Bath Trench System |
| Marlin | Huntsville | 3016553 | Striker Assembly Station |
| Marlin | Huntsville | 3016519 | W1396-Parts Washer (Aluminum-Small Parts) |
| Marlin | Huntsville | 3016244 | Black Oxide PII Misc |
| Marlin | Huntsville | 3016553 | Head Space Machine |
| Marlin | Huntsville | 3016971 | 414507 Receiver Die Cast Tool |
| Marlin | Huntsville | 3017042 | XT Error Proof Assy Line Material |
| Marlin | Huntsville | 3017146 | W3102-XT Pack Line Trigger Pull |
| Marlin | Huntsville | 3016292 | CMM MACHINE - XT EXPANSION 292318 |
| Marlin | Huntsville | 3016553 | Bolt Assembly Station |
| Marlin | Huntsville | 3016672 | 80/20 Material Talon |
| Marlin | Huntsville | 3017044 | W1461 - XT Assy Line Trigger Pull |
| Marlin | Huntsville | 3016629 | W1444-SARF/XT 860 Servo Dual Pos CMT Marker |
| Marlin | Huntsville | 3016630 | W1443-SARF/XT 860 Servo Dual Pos CMT Marker |
| Marlin | Huntsville | 3016244 | Black Oxide PII 6000 Gallon Tank |
| Marlin | Huntsville | 3016667 | W1450 -SARF Line PAC Control |
| Marlin | Huntsville | 3016549 | W0802 - Vibetech Tumbler |
| Marlin | Huntsville | 3016244 | Black Oxide Phase II |
| Marlin | Huntsville | 3016290 | W3115 -SARF RECEIVER HAAS VERTICAL CENTER 292287 |

4

| | | | |
|---|---|---|---|
| Marlin | Huntsville | 3017200 | W3125 Shooting Jack |
| Marlin | Huntsville | 3017201 | W3126 Shooting Jack |
| Marlin | Huntsville | 3016471 | W0855 1017 XT BOLT MACHINING (front & rear) |
| Marlin | Huntsville | 3016237 | WO 842 1017 XT BOLT MACHINING (front & rear) |
| Marlin | Huntsville | 3016234 | W0837 1017 XT BOLT MACHINING (front & rear) |
| Marlin | Huntsville | 3016235 | W0838 1017 XT BOLT MACHINING (front & rear) |
| Marlin | Huntsville | 3016236 | W0839 1017 XT BOLT MACHINING (front & rear) |
| Marlin | Huntsville | 3016239 | W0856 1017 XT BOLT MACHINING (front & rear) |
| Marlin | Huntsville | 3016243 | W1423 - Dust Collector for Robot Barrel Polisher |
| Marlin | Huntsville | 3017046 | W    - Torque Arm and Gold RBU |
| Marlin | Huntsville | 3016461 | W1583 - XT BARREL PRESS 292311 |
| Marlin | Huntsville | 3016970 | 414507 Receiver Cast Trim Die |
| Marlin | Huntsville | 3016598 | W1386- Upton Salt Bath |
| Marlin | Huntsville | 3016669 | W1436 -16061403 SARF Rilfle Trigger Pull St |
| Marlin | Huntsville | 3017147 | W3103 XT Trigger Assembly |
| Marlin | Huntsville | 3016244 | Black Oxide/Passivate Load/Unload Carts (24) |
| Marlin | Huntsville | 3016520 | W1397 Powder Coat Modular Room |
| Marlin | Huntsville | 3016244 | Black Oxide Phase II Refurb West Containment |
| Marlin | Huntsville | 3016855 | W1468-770 Line Torque System |
| Marlin | Huntsville | 3016856 | W1469-770 Line Torque System |
| Marlin | Huntsville | 3016244 | Black Oxide Misc PII |
| Marlin | Huntsville | 3016667 | W1450 -Sarf Line PAC Final 20% |
| Marlin | Huntsville | 3016901 | XT Inner Mag Tube |
| Marlin | Huntsville | 3016201 | Safety Fence and gates Barrel Lines |
| Marlin | Huntsville | 3016473 | TORQUE WRENCH SARF Front/Rear Takedown 292325 |
| Marlin | Huntsville | 3016819 | XT Trigger Release G4751200-011 ID 260-10 |
| Marlin | Huntsville | 3016263 | BARREL SPINDLE LINERS XT LINE 292296 |
| Marlin | Huntsville | 3016476 | DC TORQUE TOOL XT FIRE CONTROL TO RECEIVER 292330 |
| Marlin | Huntsville | 3016477 | DC TORQUE TOOL XT SWIVEL STUD, 292330 |
| Marlin | Huntsville | 3016269 | DC TORQUE TOOL SARF TRIGR GUARD, SWVEL STUD 292330 |
| Marlin | Huntsville | 3016262 | VISION SYSTEM XT BARREL ASSEMBLY 292303 |
| Marlin | Huntsville | 3017045 | W1535 - XT Assy Line Cameras |
| Marlin | Huntsville | 3016462 | W1583 - ADD'L  spend XT BARREL PRESS 292311 |
| Marlin | Huntsville | 3016273 | DC TORQUE TOOL SARF FRONT SIGHT 292330 |
| Marlin | Huntsville | 3016481 | DC TORQUE TOOL XT EJECTOR, PEEP SCREWS 292330 |
| Marlin | Huntsville | 3016362 | W1355-Rofin Laser Programming and Support |
| Marlin | Huntsville | 3016631 | W1442-Sarf Barrel Press |
| Marlin | Huntsville | 3017044 | W1461-XT Assembly Line Trigger Pull final 10% |
| Marlin | Huntsville | 3016669 | W1436 - 16061403 SARF Rifle Trigger Pull 15% |
| Marlin | Huntsville | 3015624 | W1957 - Cognex Scanner 1A1442PB207179 |
| Marlin | Huntsville | 3016244 | Electrical work and Racks Black Oxide |
| Marlin | Huntsville | 3016244 | Black Oxide Electrical Work |
| Marlin | Huntsville | 3016256 | EXTRACTOR PRESS XT ASSEMBLY 292318 |

5

US_Active\115569040\V-2

Case 2:20-bk-11161-CB Doc 406-16 Filed 09/30/22 Entered 09/30/22 12:49:54 Desc
Exhibit RJN 4: Order Approving Page 93 of 249

| | | | |
|---|---|---|---|
| Marlin | Huntsville | 3016291 | ADD'L SARF RECEIVER HAAS VERTICAL CENTER 292287 |
| Marlin | Huntsville | 3016462 | W1583 - ADD'L spend XT BARREL PRESS 292311 |
| Marlin | Huntsville | 3016630 | W1443-SARF/XT 860 Servo Dual Pos CMT Marker tax |
| Marlin | Huntsville | 3016962 | W 1532 - Paint Booth Vacuum |
| Marlin | Huntsville | 4002264 | CMM Programming, XT Front & Rear Bolt 292323 |
| Marlin | Huntsville | 3016598 | Upton Salt Bath Water Lift Stations |
| Marlin | Illion | 3017236 | Palmary OCD2025 Extomax Grinder - 251085 |
| Marlin | Illion | 3016900 | Marlin Bbl Turn Lathe - 251004 |
| Marlin | Illion | 3015273 | DuraVert 5100 w Flange Contact - 250924 |
| Marlin | Illion | 3017059 | 69964 p 30 6 Station Finger Lever Fix 251007 |
| Marlin | Illion | 3015557 | Rofin Laser - 250970 |
| Marlin | Illion | 3014435 | Technidrill bbl reaming machine - 250900 |
| Marlin | Illion | 3016902 | Marlin Octagone Bbl Mod - 251005 |
| Marlin | Illion | 3015556 | Rofin Laser |
| Marlin | Illion | 3017071 | CMM SF-454 - 250999 |
| Marlin | Illion | 3014416 | Duravertical 5080 - 250935 |
| Marlin | Illion | 3014417 | Duravertical 5080 - 250935 |
| Marlin | Illion | 3017069 | Marlin 336 95 Rec Tooling - OP 90 Fixt - 250999 |
| Marlin | Illion | 3014072 | Mori Seki VMC - M4 - 250871 |
| Marlin | Illion | 3014411 | 5100 DURA-VERT VMC PER MAC11829-R1 - 250903 |
| Marlin | Illion | 3014408 | 5100 DURA-VERT VMC PER MAC11829-R1 - 250903 |
| Marlin | Illion | 3014409 | 5100 DURA-VERT VMC PER MAC11829-R1 - 250903 |
| Marlin | Illion | 3014410 | 5100 DURA-VERT VMC PER MAC11829-R1 - 250903 |
| Marlin | Illion | 3017192 | MORI SEIKI MILLING MACHINE #8 - 250998 |
| Marlin | Illion | 3017191 | MORI SEIKI MILLING MACHINE #9 - 250998 |
| Marlin | Illion | 3015558 | DMG MORI 5080 - 250958 |
| Marlin | Illion | 3014105 | Fadel 4020 VMC - 250875 |
| Marlin | Illion | 3015559 | DMG MORI 5080 - 250958 |
| Marlin | Illion | 3015560 | DMG MORI 5080 - 250958 |
| Marlin | Illion | 3017034 | M & E |
| Marlin | Illion | 3014413 | 5080 DURA-VERT VMC PER MAC11828-R2 - 250904 |
| Marlin | Illion | 3014406 | 5080 DURA-VERT VMC PER MAC11828-R2 - 250902 |
| Marlin | Illion | 3014407 | 5080 DURA-VERT VMC PER MAC11828-R2 - 250902 |
| Marlin | Illion | 3013451 | Wisconsin - Marlin |
| Marlin | Illion | 3014078 | Mori Seki 635 - 250879 |
| Marlin | Illion | 3014079 | Mori Seki 635 - 250879 |
| Marlin | Illion | 3014107 | Mori Seki DuraVertical 1035eco - 250880 |
| Marlin | Illion | 3014108 | Mori Seki DuraVertical 1035eco - 250880 |
| Marlin | Illion | 3014109 | Mori Seki DuraVertical 1035eco - 250880 |
| Marlin | Illion | 3014110 | Mori Seki DuraVertical 1035eco - 250880 |
| Marlin | Illion | 3017226 | UNIVERSAL LASER Model 6, 15OD - 251094 |
| Marlin | Illion | 3014247 | 5080 DURA-VERT VMC PER MAC11828-R2 - 250903 |
| Marlin | Illion | 3012017 | Barnes Reamer Upgrade - 251091 - 43125 |

6

| | | | |
|---|---|---|---|
| Marlin | Illion | 3012875 | CNC CHECKERING MACHINE - MFC #085-011 |
| Marlin | Illion | 3014088 | Mori Seki 1035 - 250877 |
| Marlin | Illion | 3014080 | Mori Seki - 250885 |
| Marlin | Illion | 3014084 | Mori Seki Dura Verticle 635 - 250878 |
| Marlin | Illion | 3014085 | Mori Seki Dura Verticle 635 - 250878 |
| Marlin | Illion | 3016067 | Bbl Line Fixture - 250986 |
| Marlin | Illion | 3014142 | Finger Lever Fixture - 250875 |
| Marlin | Illion | 3017225 | Rosler Rotary Vibrator RI 400S - 251076 |
| Marlin | Illion | 3017225 | Rosler Rotary Vibrator RI 400S - 251076 |
| Marlin | Illion | 3017225 | Rosler Rotary Vibrator RI 400S - 251076 |
| Marlin | Illion | 3017225 | Rosler Rotary Vibrator RI 400S - 251076 |
| Marlin | Illion | 3015276 | Cmm Model SP454 - 250966 |
| Marlin | Illion | 3015253 | Rotary Table - 250903 |
| Marlin | Illion | 3017070 | TGP Fixture Q14-026-E1 - 250999 |
| Marlin | Illion | 3010992 | Goff Blaster - 250638 |
| Marlin | Illion | 3015259 | CHB-12 notcher - 250903 |
| Marlin | Illion | 3015277 | CMM Model SP545 - 250966 |
| Marlin | Illion | 3014408 | 5100 DURA-VERT VMC PER MAC11829-R1 - 250903 |
| Marlin | Illion | 3014409 | 5100 DURA-VERT VMC PER MAC11829-R1 - 250903 |
| Marlin | Illion | 3014410 | 5100 DURA-VERT VMC PER MAC11829-R1 - 250903 |
| Marlin | Illion | 3014411 | 5100 DURA-VERT VMC PER MAC11829-R1 - 250903 |
| Marlin | Illion | 3015254 | Ball Lock Subplate - 250903 |
| Marlin | Illion | 3012822 | PW 6 Spindle Reamer rebuild/conversion MFC#015-004 |
| Marlin | Illion | 3012812 | CNC Turning Center W/High Pressure Pump  NH105-076 |
| Marlin | Illion | 3017058 | D-69919 1894 Big Loop OP10 251007 |
| Marlin | Illion | 3017033 | M & E |
| Marlin | Illion | 3013668 | DETECHSOL Lathe - 250828 |
| Marlin | Illion | 3012868 | Micro Lase Series Marking System |
| Marlin | Illion | 3017242 | Marlin Dark Series Big Loop Lever F410163 - 251101 |
| Marlin | Illion | 3015918 | Op 50 Fixture for Marlin - 250981 |
| Marlin | Illion | 3012809 | PW 6 SPINDLE REAMER REBUILD - NH 015-003 |
| Marlin | Illion | 3013230 | S MInimill - 250808 |
| Marlin | Illion | 3014403 | Detroit 15 ton 66"stroke Dual Ram Broach |
| Marlin | Illion | 3016434 | In Process Inspection Laser - 250979 |
| Marlin | Illion | 3015256 | 39A Fixtures - 250903 |
| Marlin | Illion | 3012829 | REBUILD P&W DEEP HOLD DRILL - NH 010-022 |
| Marlin | Illion | 3017068 | 444 Marlin Carrier Fixture - 250994 |
| Marlin | Illion | 3015919 | Op 4 Fixture for Marlin - 250981 |
| Marlin | Illion | 3012871 | FANUC ROBODRILL ECO CNC - NH 105-083 |
| Marlin | Illion | 3015564 | MAKE OPT10 TGP FIXTURE - 250958 |
| Marlin | Illion | 3012821 | Wisconsin Drill/Tap Head rebuild - MFC #008-004 |
| Marlin | Illion | 3017064 | VH-8 Index Fourth axis rotary - 251007 |
| Marlin | Illion | 3012830 | FANUC ROBODRILL ECO CNC CTR - NH105-086 |

7

US_Active\115569040\V-2

Case 20-81688-CRJ11   Doc 3406-16   Filed 09/30/22   Entered 09/30/22 13:49:54   Desc
Exhibit RJN 4: Order Approving Reuse of APA   Page 95 of 249

| Marlin | Illion | 3012827 | Rebuild P&W Deep Hole Drill - NH 010-014 |
| Marlin | Illion | 3013254 | Used Okuma Crown Marlin - 250820 |
| Marlin | Illion | 3015561 | MAKE OPT30 TGP FIXTURE - 250958 |
| Marlin | Illion | 3016432 | Marlin 1894 Carrier Fixture - 250991 |
| Marlin | Illion | 3017060 | Rotary Table - 251007 |
| Marlin | Illion | 3014414 | Equator - 250904 |
| Marlin | Illion | 3012872 | HWACHEON CUTEX 160 CNC TURNING CENTER |
| Marlin | Illion | 3015252 | Tag Fixture - 250903 |
| Marlin | Illion | 3013238 | Used Brown & Sharp - 250813 |
| Marlin | Illion | 3015008 | Modular Plate Kit - 250885 |
| Marlin | Illion | 3014528 | DORT 26 - 250914 |
| Marlin | Illion | 3016061 | Rec toolong OP 50 39A - 250903 |
| Marlin | Illion | 3016056 | 406175 Upper Clamp |
| Marlin | Illion | 3015257 | Sliding Balistic Glass Door - 250903 |
| Marlin | Illion | 3015920 | Gauge D-68545 Marlin - 250958 |
| Marlin | Illion | 3017067 | Start Up tooling for 1894 Big Loop - 251007 |
| Marlin | Illion | 3015562 | MAKE OPT20 TGP FIXTURE - 250958 |
| Marlin | Illion | 3015264 | Mori Seiki Rotary - 250904 |
| Marlin | Illion | 3017238 | Laser Engraving - Gunstock Checkering |
| Marlin | Illion | 3016055 | 5601740 SC 39A Bolt Tool - 250903 |
| Marlin | Illion | 3014106 | DDRT-260 10" Rotary Table - 250880 |
| Marlin | Illion | 3016433 | 444 Marlin Carrier Fixture - 250994 |
| Marlin | Illion | 3012766 | INDUCTION HEAT TREAT MACHINE - NH119-015 |
| Marlin | Illion | 3016062 | Rec toolong OP 10 39A - 250903 |
| Marlin | Illion | 3016063 | Rec toolong OP 20 39A - 250903 |
| Marlin | Illion | 3016064 | Rec toolong OP 30 39A - 250903 |
| Marlin | Illion | 3016065 | Rec toolong OP 40 39A - 250903 |
| Marlin | Illion | 3017035 | OTHER - INCLUDE W/M&E |
| Marlin | Illion | 3012831 | CARBO LATHE - NH 041-013 |
| Marlin | Illion | 3012815 | FANUC Robodrill 'ECO' - NH105074 |
| Marlin | Illion | 3012873 | FADAL 4020 - MFC #105-064 |
| Marlin | Illion | 3012771 | OKAMOTO GRINDING MACHINE - NH027-042 |
| Marlin | Illion | 3012869 | 2D Data Laser Reader |
| Marlin | Illion | 3017041 | Lug Welder - 250779 |
| Marlin | Illion | 3012824 | Rebuild B&S #12 - NH021-088 |
| Marlin | Illion | 3012773 | FADAL 2216FX - NH105-066 |
| Marlin | Illion | 3014406 | 5080 DURA-VERT VMC PER MAC11828-R2 - 250902 |
| Marlin | Illion | 3014407 | 5080 DURA-VERT VMC PER MAC11828-R2 - 250902 |
| Marlin | Illion | 3010947 | Auto-Densimeter - 250624 |
| Marlin | Illion | 3013663 | Marlin Fadel Fixturing - 250824 |
| Marlin | Illion | 3012813 | FANUC Robomate CNC Vertical Machining NH105-071 |
| Marlin | Illion | 3017237 | Laser Engraving - Gunstock Checkering |
| Marlin | Illion | 3017063 | 69965-16 op20 336 Locator |

8

US_Active\115569040\V-2

Case 20-81688-CRJ11   Doc 3406-16   Filed 09/30/22   Entered 09/30/22 13:49:54   Desc
Exhibit RJN 4: Order Approving Rule 9019   Page 96 of 249

| | | | |
|---|---|---|---|
| Marlin | Illion | 3017066 | 70904-16 P14-026 op60 locator - 251007 |
| Marlin | Illion | 3012811 | Rebuild B&S 12 Plain Milling Machine-MFC #021-105 |
| Marlin | Illion | 3017116 | Tool for Marlin Rec Line - 250903 |
| Marlin | Illion | 3017062 | 69964-45 op30 clamp arm - 251007 |
| Marlin | Illion | 3014405 | Indexable Chamber Mill - 250880 |
| Marlin | Illion | 3015260 | Marlin Bbl Fixture - 250903 |
| Marlin | Illion | 3017065 | 4119200 84 CAB 3HP Dust Coll - 251007 |
| Marlin | Illion | 3016057 | 5614607 Rgh Bot Proof LH 39A - 250903 |
| Marlin | Illion | 3016068 | Install 5100 Duravert VMC - 250903 |
| Marlin | Illion | 3015272 | Gage for E-67937 - 250904 |
| Marlin | Illion | 3012769 | ROBODRILL MATE CNC MACHINE - NH105-044 |
| Marlin | Illion | 3017061 | 69964-34 op 30 F407261 Locator - 251007 |
| Marlin | Illion | 3015263 | Chip Blaster - 250903 |
| Marlin | Illion | 3005455 | DEHOFF 4 SPDLE GUN DRILL MCHE 41216 66-1 123244 |
| Marlin | Illion | 3012775 | REBUILD P&W D/H DRIL - NH 010-017 |
| Marlin | Illion | 3012816 | FANUC Robodrill 'ECO' - NH105-077 |
| Marlin | Illion | 3016432 | Marlin 1894 Carrier Fixture - 250991 |
| Marlin | Illion | 3002175 | MONORAIL SYSTEM 38846 |
| Marlin | Illion | 3001506 | MICROCARB FURNACE 30076 82-1 |
| Marlin | Illion | 3012721 | SURFACE GRINDER - HAND FEED - NH027-027 |
| Marlin | Illion | 3012722 | MODERN AUTO C-O MACH - NH 075-011 |
| Marlin | Illion | 3012723 | HARIG AUTO GRINDER - NH 027-029 |
| Marlin | Illion | 3012724 | FIXED CTR TAPPING HD - NH 116-041 |
| Marlin | Illion | 3012726 | 4 SPINDLE DRILL HD - NH 116-025 |
| Marlin | Illion | 3012727 | FRONT&END LOGIC CTRL - NH021-069 |
| Marlin | Illion | 3012728 | FRONT&END LOGIC CTRL - NH021-106 |
| Marlin | Illion | 3012729 | MATSUURA MILLING - NH105-033 |
| Marlin | Illion | 3012730 | 2HA-12 HARPERIZER - NH069-032 |
| Marlin | Illion | 3012731 | BBL/REC ASSEMBLY MAC - NH082-038 |
| Marlin | Illion | 3012732 | LEBLOND MILLING MACH - NH105-034 |
| Marlin | Illion | 3012733 | DECKAL TOOL & GRINDR - NH028-039 |
| Marlin | Illion | 3012736 | CHERKERING MACHINE - NH085-006 |
| Marlin | Illion | 3012739 | 1000 ORBITING RIVETR - NH116-074 |
| Marlin | Illion | 3012740 | CHECKERING MACHINE - NH085-008 |
| Marlin | Illion | 3012741 | VERT KNEE CNC MILL M - NH105-043 |
| Marlin | Illion | 3012742 | JOHNFORD MACHINING CTR #1 TWIN SPIND 105-045 |
| Marlin | Illion | 3012743 | B&S #12 MILLING MACH - NH021-135 |
| Marlin | Illion | 3012744 | MAGNAFLUX DEMAGNITZR - NH 054-004 |
| Marlin | Illion | 3012745 | NICHOLS MILLING MACH - NH019-124 |
| Marlin | Illion | 3012746 | SHUTTLE MACH - NH008-028 |
| Marlin | Illion | 3012747 | WISCONSIN SHUTTLE REBUILD - F-47802 008-028 |
| Marlin | Illion | 3012748 | NOBLEWEST MARK MACH - NH 043-025 |
| Marlin | Illion | 3012749 | NOBLEWEST MARK MACH - NH 043-021 |

US_Active\115569040\V-2

| | | | |
|---|---|---|---|
| Marlin | Illion | 3012750 | WISCONSIN 3SPIN VERT REAMER - NH 116-044 |
| Marlin | Illion | 3012751 | DAEWOO ACE V35 - NH105-053 |
| Marlin | Illion | 3012752 | MATSUURA MACHINING CENTER- 81011633 NH105023 |
| Marlin | Illion | 3012759 | MATSUURA MC-710V-DC - NH 105-030 |
| Marlin | Illion | 3012761 | ROTARY TABLE W/ELECT - NH105-061 |
| Marlin | Illion | 3012762 | CYL PWR DOVETAIL - NH008-004 |
| Marlin | Illion | 3012764 | FADAL MACHINING - NH105-061 |
| Marlin | Illion | 3012765 | KINGSBURY WISCONSIN - NH 008-004 |
| Marlin | Illion | 3012767 | ABSOLENT MIST COLLECTOR - NH094-042 |
| Marlin | Illion | 3012768 | INDUCTION HEAT TREAT MACHINE - NH 119-015 |
| Marlin | Illion | 3012772 | LAPOINTE BROACH UPGRADE - NH 035-003 |
| Marlin | Illion | 3012779 | J&L OPTICAL COMPARTR - NH 083-001 |
| Marlin | Illion | 3012782 | CIN HYDRO BROACH MAC - NH035-011 |
| Marlin | Illion | 3012783 | B&S MILLING MACHINE - NH021-133 |
| Marlin | Illion | 3012784 | PWR SUPPLY & HEAT XC - NH119-019 |
| Marlin | Illion | 3012788 | BRIDGEPORT VERTICAL MILLING MACHINE  - NH 018-002 |
| Marlin | Illion | 3012791 | HYRLIC SURFACE GRINR - NH027-033 |
| Marlin | Illion | 3012792 | HORIZONTAL BROACH - NH038-010 |
| Marlin | Illion | 3012793 | 3HP B&S 7#12 MILLER - NH021-080 |
| Marlin | Illion | 3012795 | CAMTROL - NH 041-017 |
| Marlin | Illion | 3012796 | B&S#12 PLAIN MILLER - NH021-099 |
| Marlin | Illion | 3012797 | COLONIAL BROACH - NH037-016 |
| Marlin | Illion | 3012800 | REBUILD BALL SCREWDR - NH 010-018 |
| Marlin | Illion | 3012802 | LAPOINTE VERTICAL BROACH KNEE REBUILT  035-002 |
| Marlin | Illion | 3012803 | USED CIN RISE & FALL MILL MACHINE - NH023-004 |
| Marlin | Illion | 3012810 | WISCONSIN DRILL HEAD REBUILD - NH 008-004 |
| Marlin | Illion | 3012814 | Torit VS1200 - Dust Collector |
| Marlin | Illion | 3012823 | TORIT VS1200 |
| Marlin | Illion | 3012825 | REBUILD WISCONSIN HEAD - TU-475-245 - NH008-004 |
| Marlin | Illion | 3012849 | LEBLOND REGAL LATHE - NH039054 |
| Marlin | Illion | 3012850 | 42"BPT MILL MACH - NH 018-019 |
| Marlin | Illion | 3012853 | CINN CONTOUR GRINDER - NH028-002 |
| Marlin | Illion | 3012854 | CINN CONTOUR GRINDER - NH028-003 |
| Marlin | Illion | 3012855 | JACKMILL T&C GRINDER - NH 028-038 |
| Marlin | Illion | 3012856 | KGS200 SURFCE GRINDR - NH027-030 |
| Marlin | Illion | 3012857 | DECKAL TOOL & GRINDR - NH028-040 |
| Marlin | Illion | 3012858 | MATSURA 500V W/CRT - NH105-039 |
| Marlin | Illion | 3012859 | MATSURA 500V W/CRT - NH105-040 |
| Marlin | Illion | 3012861 | ELEC CONTRL C/O MACH - NH075-005 |
| Marlin | Illion | 3012862 | RETROFIT ROUTER #5 - EKSTROM NH 067-001 |
| Marlin | Illion | 3012863 | RETROFIT #5 ROUTER |
| Marlin | Illion | 3012864 | RICHARDSON COPYLATHE - NH 062-008 |
| Marlin | Illion | 3012865 | REBUILT MODERN C/O MACHINE - NH075-005 |

10

| Marlin | Illion | 3012866 | FANUC Robodrill 'ECO' - NH 105077 |
| Marlin | Illion | 3012867 | B&S #12 FRONT AND REAR CONTROL STATION |
| Marlin | Illion | 3012874 | MATSUURA MC760V-DC - NH 105-001 |
| Marlin | Illion | 3013669 | A2-5 chuck adapter - 250828 |
| Marlin | Illion | 3014142 | Finger Lever Fixture - 250875 |
| Marlin | Illion | 3014404 | 1013714 Collet 7/16th - 250880 |
| Marlin | Illion | 3014412 | A2237 Tool Changer - 250903 |
| Marlin | Illion | 3015255 | Retention Knob for Mori Seiki - 250903 |
| Marlin | Illion | 3015261 | Bolt Fixture - 250903 |
| Marlin | Illion | 3015262 | Drill Unit - 250903 |
| Marlin | Illion | 3015266 | Ball Lock Assembly - 250904 |
| Marlin | Illion | 3015267 | Upper Design - 409748 - 250904 |
| Marlin | Illion | 3015268 | Base Gage for B-69737 & B-52705 |
| Marlin | Illion | 3015269 | Base Gage for D-67942 - 250904 |
| Marlin | Illion | 3015270 | Base Gage for D-67965 - 250904 |
| Marlin | Illion | 3015271 | Gage for E-67921 - 250904 |
| Marlin | Illion | 3016058 | Drill Fixture for 39A - 250903 |
| Marlin | Illion | 3016059 | Bolt Fixture 39A - 250903 |
| Marlin | Illion | 3016060 | Lathe Locators 39A - 250903 |
| Marlin | Illion | 3016066 | Program Equator OP 10 39A - 250903 |
| Marlin | Illion | 4001826 | 2D Data Laser Reader Software |
| Marlin | Illion | 4001827 | DataMan 7500 Software |
| Marlin | Illion | 4001828 | DATAMAN 7500 SOFTWARD |
| Marlin | Illion | 5000106 | CROWN TRUCK 32849 |
| Marlin | Huntsville | | M00127 Barrel Blanking: Mollart Drill |
| Marlin | Huntsville | | W0791 Barrel Blanking: Unisig Reamer |
| Marlin | Huntsville | | W0792 Barrel Blanking: Unisig Rifler |
| Marlin | Huntsville | | W1394 Barrel Blanking: Cell 4 Automation |
| Marlin | Huntsville | | W1560 M001348 T&C: Bridgeport Mill |
| Marlin | Huntsville | | M001370 T&C : OKUMA Mill |
| Marlin | Huntsville | | W1432 Ajax Tocco SARF Heat Induction |
| Marlin | Huntsville | | W1565 SARF RCVR Robodrill |
| Marlin | Huntsville | | W1539 SARF RCVR Robodrill |
| Marlin | Huntsville | | 4116M698 Vibetech Tumbler SARF RCVR |
| Marlin | Huntsville | | W0855 Bridgeport Mill M001374 |
| Marlin | Huntsville | | XT Bolt Shear Test |
| Marlin | Huntsville | | XT Bolt Torque Station |
| Marlin | Huntsville | | XT Bolt Handle Bend Station |
| Marlin | Huntsville | | SARF Inner Mag Tube Assembly |
| Marlin | Huntsville | | XT/SARF Striker Knob Paint and Bake |
| Marlin | Huntsville | | W1566 XT RCVR OP10 OKUMA |
| Marlin | Huntsville | | W1533 XT RCVR Ohio Broach |
| Marlin | Huntsville | | W2845 XT RCVR Op30-1 Leadwell |

11

US_Active\115569040\V-2

Case 20-81688-CRJ11 Doc 2406-16 Filed 09/30/22 Entered 09/30/22 13:49:54 Desc
Exhibit RJN 4: Order Approving Purchase of P69   Page 99 of 249

| | | |
|---|---|---|
| Marlin | Huntsville | W2846 XT RCVR OP40 Leadwell |
| Marlin | Huntsville | W3115 XT RCVR OP40A HAAS Ream/Flex hone |
| Marlin | Huntsville | W1562 XT ASSY Bolt Rofin Laser |

12

US_Active\115569040\V-2

## Marlin Tooling

**Marlin FF&E Tooling**

| Plant | Material | Desc | Qty |
|---|---|---|---|
| ILN | 312265 | SPINDLE SLEEVES - 80 GRIT 8 1/2 x 10 5/8 | 200 |
| ILN | 312894 | OIL, CUTTING, ECOCUT 100GD | 2 |
| ILN | 312957 | SOCK  SLEEVE 8  X 7-15/32 P/N 5029  (2" | 10 |
| ILN | 312958 | PUMP SLEEVE 9" X 13-3/4 " 900DZ 120 GRIT | 44 |
| ILN | 312959 | VONNEGUT LOADINGS 4X19-3/8 1/4SLASH 150G | 48 |
| ILN | 312960 | PUMP SLEEVE 8" X 7.4687" 900DZ 150J | 200 |
| ILN | 312961 | VONNEGUT BRUSHES 4" WHITE SH-65 | 480 |
| ILN | 312962 | ACTIVATOR, AEROSOL C A GLUE 12 oz #5012 | 4 |
| ILN | 312963 | FILTER, AIR SPRAY BOOTH  PP-020-020-030 | 9 |
| ILN | 312964 | FILTER, CONE PAPER MEDIUM 6502-78229 | 6 |
| ILN | 312965 | LINER, BINKS POT 10 GAL (12PK)  868-7766 | 2 |
| ILN | 312966 | CUP, MEASURING 2.5 QT S-W | 3 |
| ILN | 312967 | SEALER, PRE-CAT LACQUER 30 SHEEN 3-3030 | 15 |
| ILN | 312968 | TOPCOAT, C.A.B. CLEAR 20 SHEEN 3-2020 | 11 |
| ILN | 312969 | MARKER,FELT PERFECT BROWN S-W 1-2249 | 6 |
| ILN | 312971 | MARKER,FELT LIGHT NATURAL BROWN OAK | 1 |
| ILN | 312973 | STAIN, SWD DYE S61XXN10700-4323 | 6 |
| ILN | 312974 | SPONGE,3M ULTRAFINE SANDING, 03346582 | 250 |
| ILN | 312983 | GLUE, C A 2oz THICK SHER-WILLIAMS 9-3002 | 1 |
| ILN | 312984 | GLUE,C A 2oz MEDIUM SHER-WILLIAMS 9-2002 | 3 |
| ILN | 312985 | GLUE, C A 2oz THIN SHER-WILLIAMS  9-1002 | 2 |
| ILN | 312986 | NEEDLE, SPRAY GUN SP-300S-14-K | 2 |
| ILN | 312987 | Oil, Ecocut 484 TC | 2 |
| ILN | 312990 | SEALER, VARNISH VALGUARD CONV # AUS5800 | 205 |
| ILN | 312994 | VONNEGUT LOADINGS 4X19-3/8 1/4SLASH 220G | 6 |
| ILN | 312997 | PUMP SLEEVE 9" X 13-3/4 "RB346MJ 100GRIT | 209 |
| ILN | 312998 | PUMP SLEEVE 9" X 13-3/4 "RB346MJ 180GRIT | 44 |
| ILN | 312999 | PUMP SLEEVE 9" X 7-15/32"RB346MJ 120GRIT | 38 |
| ILN | 313000 | PUMP SLEEVE 9" X 7-15/32"RB346MJ 180GRIT | 40 |
| ILN | 313034 | TAPE, MASKING BLUE PAINTERS 2" X 60 YDS | 6 |
| ILN | 313035 | BELT,ABRASIVE HERMES 2-1/2 X 132 80 GRIT | 76 |
| ILN | 313036 | BELT,ABRASIVE HERMES 3X132 CN466XFLEX120 | 91 |
| ILN | 313037 | BELT, ABRASIVE NORAX 3 X 132 U254 30X | 174 |
| ILN | 313038 | BELT, ABRASIVE NORAX 3 X 132 U254 80X | 208 |
| ILN | 313042 | WHEEL, TAMPICO P/N 90210  BRUSH TRIM | 96 |
| ILN | 313044 | BELT, ABRASIVE 6x168 600G  RB515X HERMES | 49 |
| ILN | 313045 | PUMP SLEEVE 9" X 7-15/32"RB346MJ 100GRIT | 43 |
| ILN | 313084 | BELT, ABRASIVE 4x132 320G  RB515X HERMES | 100 |
| ILN | 313105 | COMPOUND, CUTTING LEAROK 418 2 x 4"x 15" | 1 |

13

| | | | |
|---|---|---|---|
| ILN | 313144 | STIKIT DISC 12", 900 DZ P120J, 72383540 | 245 |
| ILN | 313149 | BELT, ABRASIVE 4x132 100G RB346MJ HERMES | 202 |
| ILN | 313154 | BELT, ABRASIVE 4x168 600G RB515X HERMES | 60 |
| ILN | 313155 | PLATE,ARBOR 4.25 DIA TO 1.25 HOLE#75342 | 6 |
| ILN | 313157 | DISC, ABRASIVE 12" DIA 80 GRIT #90843251 | 6 |
| ILN | 313158 | PAD, BUE-12" ROUND FELT #407222 | 1 |
| ILN | 313174 | MEDIA, 46 GRIT ALUMINUM OXIDE G201046 | 30 |
| ILN | 313199 | BELT, ABRASIVE 5X178 120G CERAMIC CR454Z | 22 |
| ILN | 313200 | MEDIA,TRIANGULAR 20 DEGREE VC1-1/8 10550 | 30 |
| ILN | 313206 | COMPOUND,180GR DIVINE RED LION, 3# TUBE | 9 |
| ILN | 313403 | BUFF, OSBORN 12"X3"X1.25A P HR AY120913 | 23 |
| ILN | 313404 | BUFF, OSBORN 12"X5"X1-1/4 SAY12BR2-J | 25 |
| ILN | 314094 | LACQUER STICK,GOLD 517-100-003AB | 3 |
| ILN | 314210 | COMPOUND,COLOR P/N JALC3568 2x2x9 | 80 |
| ILN | 314211 | COMPOUND,COLOR P/N JALC3776 2x2x9 | 23 |
| ILN | 314283 | PAINT, SPRAY,FLAT BLACK #789793 | 4 |
| ILN | 314407 | WHEEL, GRINDING,23A54-L5VBE 24X5-1/4X1/2 | 1 |
| ILN | 314425 | WHEEL, CUT-OFF ,DREMEL#426 3W842 | 50 |
| ILN | 314558 | WHEEL, GRINDING 66253306699 14"x1/2x5 | 3 |
| ILN | 314563 | PELLETS,CLEANING .45 CAL #929-105-450AB | 6 |
| ILN | 314564 | PELLETS,CLEANING .30 CAL #929-105-300AB | 3 |
| ILN | 314565 | PELLETS,CLEANING .357 CAL #929-105-357AB | 4 |
| ILN | 314566 | PELLETS,CLEANING .22 CAL #929-105-022AB | 1 |
| ILN | 314567 | PELLETS,CLEANING .338 CAL #929-105-338AB | 4 |
| ILN | 315015 | GLOVE, a3 Cut Resis, Size Sm 51611820 | 120 |
| ILN | 315017 | GLOVE, A3 Cut Resis, Size LG 51611796 | 36 |
| ILN | 315040 | TAG, BLUE U-LINE S-2410BLU | 2 |
| ILN | 315041 | TAG, GREEN U-LINE S-2410G | 3 |
| ILN | 315128 | SEGMENT,GRINDING#P370767 11-5/16x2-1/8x6 | 43 |
| ILN | 315129 | BELT, ABRASIVE 4x132 320G RB346MJ HERMES | 160 |
| ILN | 315135 | SLEEVE, CANVAS 3 X 9 P/N 5039 | 14 |
| ILN | 315136 | BLADDER, RUBBER 3 X 9 P/N 3900 | 16 |
| ILN | 315170 | BAG, POLY U-LINE S-1004 6x12 2 MIL | 2,000.00 |
| ILN | 315184 | STAPLE, U-LINE S-22480 | 1 |
| ILN | 315244 | BUFF, DISC ,12"DIA 20 PLY 555-FIF-168 | 90 |
| ILN | 315246 | STAIN, MARLIN DR50GA VALSPAR | 48 |
| ILN | 315249 | GUN BLUE,BROWNELLS #082-440-002WB-44/40 | 5 |
| ILN | 315271 | ROLL, MASKING .75" x 1.5" 3M 1280 | 24 |
| ILN | 315327 | TAG,U-LINE S-6042PW-10 INC HAWKS-6401770 | 9,000.00 |
| ILN | 315364 | GREASE,HIGH PERF. SHELL GADUS S2 V220 00 | 2 |
| ILN | 315479 | PAD, HI FLEX SCUFFING 4-1/2x5-1/2 180G | 1 |
| ILN | 315535 | BELT, ABRASIVE 4 x 168 220G CORK HERMES | 411 |
| ILN | 315693 | ROLL, ANTI RUST PAPER U-LINE #S-12819 | 1 |

14

US_Active\115569040\V-2

Case 20-31688-CFR11 Doc 2906-16 Filed 09/30/22 Entered 09/30/22 12:49:54 Desc
Exhibit RJN 4: Order App Avoid Page 102 of 249 Page 102 of 249

| ILN | 315704 | WHEEL, BADOR 9/16DX 2"W 3/16 SHANK | 4 |
|-----|--------|-----------------------------------|---|
| ILN | 315705 | WHEEL, BADOR 1-1/2"DX 2"W 70DUR SMOOTH | 3 |
| ILN | 315706 | WHEEL, BADOR 1"DX 2"W 70DUR SMOOTH | 1 |
| ILN | 315707 | WHEEL, BADOR 3/4"DX 2"W 70DUR SMOOTH | 6 |
| ILN | 316767 | HANDLE, DEBURRING NOGA PV1000 #73454837 | 4 |
| ILN | 317309 | 3/4"-8MM MILLING SLEEVE | 4 |
| ILN | 317477 | 1 1/2" OPEN END WRENCH | 2 |
| ILN | 317526 | COLLET, REDUCER, 1.25 TO 1, P/N 1093536 | 2 |
| ILN | 317530 | BELT,ALUM.OXIDE 280 GRIT 4x168 RB525 | 345 |
| ILN | 317540 | BELT, POLISHING, 2X132, 180 GRIT JA 165 | 50 |
| ILN | 317542 | BELT, POLISHING, 4X132, 400 GRIT CORK | 100 |
| ILN | 317543 | SET SCREW, DOUBLE, M6X1, STCM11 | 9 |
| ILN | 317583 | UN 1814, POTASSIUM HYDROXIDE, SOLUTION | 5 |
| ILN | 317596 | BELT, POLISHING, 4"X168", 240 GRIT | 189 |
| ILN | 317607 | CHUCK JAWS, 22 CAL, B-4381 | 4 |
| ILN | 317623 | BELT, ABRASIVE, 4"X36", 240 GRIT AL OXID | 20 |
| ILN | 317643 | CHUCK, HYDRAULIC, 8MM, CV40BHCSLT08M669 | 1 |
| ILN | 317671 | BADER WHEEL, 5/8" X 2", 3/16" SHANK | 6 |
| ILN | 317673 | BELT, JFLEX POLISHING, 600 GRIT | 610 |
| ILN | 317674 | BELT, POLISHING, KK772J COMPACT GRAIN | 162 |
| ILN | 317677 | AMLOK-PNEU. ROD CLAMP, ADV-100250MXO | 1 |
| ILN | 317703 | BIT, SLOTTED SCREWDRIVER, BROWNELLS | 11 |
| ILN | 317994 | COOLANT, FUCHS ECO COOL 715 (TOTE) | 1 |
| ILN | 317995 | MATS FOR HANGING BULLET TRAP | 1 |
| ILN | 318043 | END CAPS, VINYL, 1.5" DIA. | 2,500.00 |
| ILN | 318064 | 471 TAPE, 3/4" WIDE, WHITE, MSC 06269799 | 18 |
| ILN | 318065 | 471 TAPE, 1/2" WIDE, RED | 120 |
| ILN | 318073 | WISURA 2315LC/F, 55 GAL. DRUM | 8 |
| ILN | 318113 | POUCH, FOAM, 1/8 X 8 X 16 | 3,000.00 |
| ILN | 318176 | SHIM STOCK, PLASTIC, .01", BROWN SHEET | 1 |
| ILN | 318177 | SHIM STOCK, PLASTIC, .015" , PINK SHEET | 2 |
| ILN | 319752 | PLUNGER, SPRING, CL-30-SPS-1 | 7 |
| ILN | 319793 | ABRASIVE, 3M, 405U SAND PAPER - MARLIN | 9 |
| ILN | 319895 | COMPOUND, ZF-113, 55 GALLON | 4 |
| ILN | 320105 | TAPE, MASKING HI-TEMP, 2", MSC 06270458 | 12 |
| ILN | 320193 | MEDIA, POLISH RCP 9.5/9.5S-V15 TRIANGLE | 700 |
| ILN | 320253 | SLEEVE, 3M, 9 X 10 5/8, 80 GRIT | 450 |
| ILN | 320254 | SLEEVE, 3M, 9 X 10 5/8, P150 GRIT | 50 |
| ILN | 320258 | BELT, ABRASIVE 320 GRIT, 2X168, KK772J | 100 |
| ILN | 320337 | Locator, 336 D-68494-28 | 1 |
| ILN | 320480 | .433/11mm, S.C. Brush, 320 grit | 47 |
| ILN | 320481 | .472/12mm, S.C. Brush, 320 grit | 28 |
| ILN | 320482 | .500/12.7mm, S.C. Brush, 320 grit | 24 |

15

| | | | |
|---|---|---|---|
| ILN | 320483 | .394/10mm, S.C. Brush, 320 grit | 29 |
| ILN | 320554 | 038" Screw Driver Bit, Ball Lock | 40 |
| ILN | 320563 | .026" Screw Driver Bit, Ball Lock | 30 |
| ILN | 320692 | Step Motor Single Shaft 100-0013-00-A | 2 |
| ILN | 320753 | Rail X Axis 32" 700-0381-00D | 1 |
| ILN | 405099 | 06 BEARING, NEEDLE B-912-OH  obs | 8 |
| ILN | 423015 | LENS KIT 145-0021-00-C 2.5"UNIVER. LASER | 1 |
| ILN | 423293 | BELT, TIMING 140XL037 | 4 |
| ILN | 423303 | ASSEMBLY,GUN GUYSON#100043 MOD#400BRONZE | 2 |
| ILN | 423304 | NOZZLE, GUYSON#100011 1/4"BORON CARBIDE | 3 |
| ILN | 423305 | ASSEMBLY,GUN GUYSON#100003 MOD#900BRONZE | 2 |
| ILN | 423306 | NOZZLE, GUYSON#100015 1/2"BORON CARBIDE | 1 |
| ILN | 423354 | CYLINDER, ENERPAC  RW-50 | 3 |
| ILN | 423364 | BUSHING, ARBOR TAPERED BROWN-SHARPE | 3 |
| ILN | 423424 | LOCKOUT, ELECTRICAL PLUG, MSC 04604781 | 1 |
| ILN | 423443 | MOTOR, X-AXIS DRIVE SCHMIDT P/N 010604 | 1 |
| ILN | 423444 | MOTOR, Y-AXIS DRIVE SCHMIDT P/N 010603 | 1 |
| ILN | 423445 | SPRING ASS'Y ,BODY  SCHMIDT P/N 010082 | 5 |
| ILN | 423446 | O-RING, BODY ASS'Y  SCHMIDT P/N 010083 | 10 |
| ILN | 423447 | PIN,MARKING FOR SHORT STYLUS P/N09003701 | 3 |
| ILN | 423448 | STYLUS ASS'Y,SHORT W/LONG PINP/N09003007 | 2 |
| ILN | 423453 | AIR JET, 7/64" GUYSON#100139 | 5 |
| ILN | 423548 | FILTER, CHIP BLASTER #3015-10 | 11 |
| ILN | 423553 | WHEEL, CONTACT 70 DURO FORK 9/16" x 2" | 12 |
| ILN | 423555 | FILTER BAG SET McMASTER-CARR #2168K43 | 1 |
| ILN | 423844 | NUT,ARBOR BRASS, 1"-8LH | 3 |
| ILN | 423846 | NUT,ARBOR BRASS, 1"-14 RH | 5 |
| ILN | 423847 | NUT,ARBOR BRASS, 1"-14 LH | 2 |
| ILN | 423974 | CYLINDER, HYDRAULIC ENERPAC SLSD-51 | 2 |
| ILN | 423993 | CLIP, ENERPAC CYLINDER PA1157049 | 10 |
| ILN | 424165 | LOCATOR PIN, MARLIN OP30 | 9 |
| ILN | 424433 | CHUCK, HYDRAULIC, CV40BHCSL050669 | 4 |
| ILN | 424434 | COLLET, REDUCER, 3/4" TO 16MM | 3 |
| ILN | 424435 | FAIRLANE TOOL STEEL SERRATED GRIPPER | 14 |
| ILN | 424436 | WORK SUPPORT, ENERPAC WFM71 .38" STROKE | 2 |
| ILN | 424442 | FIXTURE, OP10, 1894 FINGER LEVER | 2 |
| ILN | 424454 | OCTAGON BARREL JAWS | 9 |
| ILN | 424463 | FIXTURE, OP10, 1894 TEXAS FINGER LEVER | 4 |
| ILN | 424464 | PIN, LOCATING, 336/1895/1894 OP20 | 4 |
| ILN | 424465 | PIN, LOCATING, 336/1895/1894 OP30 | 4 |
| ILN | 424585 | MIST LUBE SPRAY COOLANT - KLINGELHOFER | 2 |
| ILN | 424660 | TAILSTOCK CENTER, LATHE, 102715071-A18 | 2 |
| ILN | 424661 | TAILSTOCK CENTER, LATHE, 102715071-A11 | 1 |

16

| | | | |
|---|---|---|---|
| ILN | 424662 | TAILSTOCK CENTER, LATHE, 102715071-A12 | 2 |
| ILN | 424663 | TAILSTOCK CENTER, LATHE, 102715071-A13 | 1 |
| ILN | 424664 | TAILSTOCK CENTER, LATHE, 102715071-A14 | 2 |
| ILN | 424665 | TAILSTOCK CENTER, LATHE, 102715071-A15 | 2 |
| ILN | 424667 | TAILSTOCK CENTER, LATHE, 102715071-A17 | 2 |
| ILN | 424714 | LINE, HYDRAULIC SLIM 3/4"  KENN 75669 | 5 |
| ILN | 426597 | TIMING BELT, CAM-5 WOOD LASER, 264-3M-15 | 4 |
| ILN | 426598 | TIMING BELT, CAM-5 WOOD LASER, 339-3M-15 | 4 |
| ILN | 426599 | TIMING BELT, CAM-5 WOOD LASER, 300-3M-15 | 4 |
| ILN | 426600 | TIMING BELT, CAM-5 WOOD LASER, 228-3M-15 | 4 |
| ILN | 426601 | TIMING BELT, UNIVERSAL, Y, 21-1405 | 2 |
| ILN | 426623 | TIMING BELT, CAM-5 WOOD LASER,2388-3M-15 | 10 |
| ILN | 426624 | TIMING BELT, UNIVERSAL, Z LONG, 21-1210 | 4 |
| ILN | 426625 | TIMING BELT, UNIVERSAL, X, 21-1404 | 5 |
| ILN | 426626 | TIMING BELT, UNIVERSAL, Z SHORT, 21-1110 | 4 |
| ILN | 426628 | BELT, DRIVE, X AXIS, GT3-460-5MGT-25 | 4 |
| ILN | 426629 | BELT, DRIVE, Y AXIS, GT3-525-5MGT-25 | 2 |
| ILN | 426630 | BELT, DRIVE, Z AXIS, GT3-525-5MGT-25 | 2 |
| ILN | 427116 | Velcro - Wood Laser Fixtures | 2 |
| ILN | 427117 | Pressure Cylinder Top Lid PLS Series | 4 |
| ILN | 427118 | Flex Ribbon Cable - Wood Laser | 3 |
| ILN | 427119 | Key Pad - Wood Laser - X Series | 4 |
| ILN | 427120 | Screw - Wood Laser - Lens Cover | 6 |
| ILN | 427124 | Pressure Cylinder Top Lid X2-660 Series | 2 |
| ILN | 427126 | Lexan Door Window - Series X Wood Laser | 1 |
| ILN | 427128 | LCD Display Board - Wiod Laser- X Series | 4 |
| ILN | 427143 | Beam Window - Wood Laser | 4 |
| ILN | 427144 | Glass Door Window - Series P Wood Laser | 1 |
| ILN | 427145 | Removable Drill Bushing #SF328.2900 "L" | 2 |
| ILN | 427146 | Lower Flex Board - Wood Laser | 3 |
| ILN | 427147 | Upper Flex Board - Wood Laser | 4 |
| ILN | 427247 | Wood Laser Y Axis Wheel | 8 |
| ILN | 427263 | GRIPPER, PNEUMATIC PHD-GRS33-1-63X32-CU | 3 |
| ILN | 427393 | CLAMP, ARM C-68501-36, OP 50 | 1 |
| ILN | 427464 | Spray Gun Tool Kit BIN-K-5052 | 5 |
| ILN | 427465 | Spray Gun Baffle BIN-AS-17-100-K OBS 120 | 5 |
| ILN | 700109 | ARBOR,MILLING,STYLE B SCULLY JONES 36162 | 1 |
| ILN | 700133 | BIT, SCREWDRIVER, APEX 493-BX | 14 |
| ILN | 700134 | BIT, SCREWDRIVER,PHILLIPS APEX  552-X | 11 |
| ILN | 700236 | CHUCK, COLLET, UNIVERSAL AF80350 300KS | 2 |
| ILN | 700642 | DRILL, STR SHANK-JOBBERS LENGTH #N | 2 |
| ILN | 700675 | DRILL, COMBINATION,PLAIN TYPE 8 | 3 |
| ILN | 700757 | ENDMILL, 4 FLUTE-S E.-R.H. 9/16" | 10 |

17

US_Active\115569040\V-2

Case 20-81169-CR11   Doc 2906-16   Filed 09/30/22   Entered 09/30/22 13:49:54   Desc
Exhibit RJN 4: Order Approving Purchase of Assets   Page 105 of 249

| ILN | 703471 | BLADE, WORK REST B-83724 | 2 |
| ILN | 703552 | DRILL, STR SHANK,TAPER LENGTH 'F' | 5 |
| ILN | 709613 | COLLET, KENNAMETAL  32ER0750   3/4" | 3 |
| ILN | 709616 | COLLET, BB14 25ER0500   1/2" | 10 |
| ILN | 710355 | HOLDER, TOOL KENNAMETAL KGMSR1650N | 2 |
| ILN | 714708 | DRILL, GARR #41 CARBIDE EDP#56240 | 22 |
| ILN | 715160 | button, Bore C-4683-00,  Complete w/Rod | 7 |
| ILN | 715174 | DRILL, STEP REF#32110  A-9249 | 52 |
| ILN | 715195 | Tool, Form Barrel A-6256-00 | 8 |
| ILN | 715205 | REAMER, BORE A-8900-00 | 24 |
| ILN | 715222 | Reamer, Bore finish A-8896-00 | 17 |
| ILN | 715225 | Drill, Deep Hole B-7460-00 | 36 |
| ILN | 715226 | 06 Drill, Chamber Rough B-7469-00 OBS | 12 |
| ILN | 715232 | BROACH, HORIZONTAL C-2025 DET #1 | 3 |
| ILN | 715234 | ENDMILL,A-8229-00 | 2 |
| ILN | 715235 | Reamer, Carbide Bore A-9255-00 | 20 |
| ILN | 715236 | 06 Reamer, Bore A-9329-00 | 19 |
| ILN | 715241 | ENDMILL,  A-5826 HSS, 336 RECEIVER | 7 |
| ILN | 715242 | BUSHING,  B-3435  RECEIVER 336  D. HOLE | 7 |
| ILN | 715243 | BUSHING,  B-4462  336 DEEP HOLE DRILL | 6 |
| ILN | 715244 | 06 Carrier, Milling CTR. B-2392-00 SET/8 | 2 |
| ILN | 715247 | 06 C'sink, Chamber B-3120-00 OBS | 6 |
| ILN | 715248 | Reamer, Chamber Rough B-3121-00 | 15 |
| ILN | 715251 | 06 C'BORE,W/PILOT B-3119-011895.45-70  OBS | 2 |
| ILN | 715256 | Drill, Deep Hole B-4038-00 | 49 |
| ILN | 715257 | Cutter B-4048-00 | 5 |
| ILN | 715258 | Drill, Deep Hole B-4090-02 | 32 |
| ILN | 715266 | Tool, Form Blank,  Barrel B-4266 | 20 |
| ILN | 715269 | ZZ C'sink, Chamber B-4458-00 | 7 |
| ILN | 715271 | 06 Form Tool, Barrel, Modern B-4611-00  OBS | 3 |
| ILN | 715273 | Drill, Deep Hole, Barrel B-5265-00 | 35 |
| ILN | 715274 | 06 TOOL CUT OFF B-4546  OBS | 2 |
| ILN | 715277 | DRILL, SUBLAND B-7162  RECEIVER 450 | 11 |
| ILN | 715282 | Tool, Form B-5517-00 | 5 |
| ILN | 715283 | 06 HOLDER, TAP D-1297  OBS | 3 |
| ILN | 715285 | 06 ENDMILL, Ball B-6599-00 OBS | 3 |
| ILN | 715286 | Reamer, Bore B-6715-00 | 15 |
| ILN | 715288 | Reamer, Bore B-6716-00 | 21 |
| ILN | 715290 | Reamer, Bore B-6718-00 | 15 |
| ILN | 715295 | Drill, Deep Hole B-6938-1 | 24 |
| ILN | 715297 | 06 Reamer, Chamber, Finish B-6949-00 OBS | 8 |
| ILN | 715298 | 06 Reamer, Finish B-6950-00 OBS | 1 |
| ILN | 715300 | Tool, Form Circular B-6975-00 | 7 |

18

| ILN | 715301 | Drill, Deep Hole B-7150-00 | 13 |
| ILN | 715302 | Reamer, Bore B-7153-00 | 10 |
| ILN | 715303 | 06 Reamer, Chamber Rough B-7156-00 OBS | 6 |
| ILN | 715307 | DRILL, STEP MARLIN A-8276 | 3 |
| ILN | 715308 | CUTTER, CHECKERING  MARLIN  B-6534 | 32 |
| ILN | 715313 | 06 BROACH, VERTICAL  C-2209-00, SET OF 3 | 3 |
| ILN | 715314 | 06 BROACH, VERTICAL C-2210-00 SET OF 2  OBS | 2 |
| ILN | 715315 | 06 BROACH, INSERT C-2816-00  SET OF 3  OBS | 2 |
| ILN | 715318 | Tool, Crowning C-3195-24 | 2 |
| ILN | 715319 | Button, Rifling, No coating C-3669-00 | 6 |
| ILN | 715320 | Reamer, Chamber Rough C-4516-00 | 16 |
| ILN | 715326 | ZZ Reamer, Chamber Rough C-4860-00   OBS | 12 |
| ILN | 715329 | BROACH, BORE  45 CAL. D-2889-01 | 3 |
| ILN | 715330 | BROACH, RIFLING  45 CAL.  D-2889-02 | 4 |
| ILN | 715331 | BROACH, D-3000-01 | 8 |
| ILN | 715332 | BROACH, D-3000-02 | 7 |
| ILN | 715333 | Broach, Bore, Rifling D-3001-01 | 15 |
| ILN | 715334 | Broach, Groove, Rifling D-3001-02 | 23 |
| ILN | 715335 | BROACH,  GROOVE D-3002-02 | 8 |
| ILN | 715336 | Broach, Bore, Rifling D-3081-01 | 8 |
| ILN | 715337 | Broach, Groove, Rifling D-3081-02 | 6 |
| ILN | 715338 | 06 Broach, Bore, Rifling D-3090-01 | 7 |
| ILN | 715339 | 06 Broach, Groove, Rifling D-3090-02 | 9 |
| ILN | 715340 | Broach, Bore D-3381 | 7 |
| ILN | 715341 | Broach, Rifling D-3382 | 9 |
| ILN | 715362 | Insert, TNMG432M5, VALENITE | 30 |
| ILN | 715364 | Endmill, Ball 4fltd 9/64" | 24 |
| ILN | 715366 | Insert, Carbide TPMA 32NGR 0463 612 | 57 |
| ILN | 715375 | Insert, Iscar DGR4803C-4D 328 | 60 |
| ILN | 715376 | Blade, Iscar DGAMM-38-4 | 14 |
| ILN | 715395 | 06 Tool, Shave,  A-068-00, RECEIVER 39A | 6 |
| ILN | 715396 | 06 ENDMILL, Receiver 39 A-0087-00 | 6 |
| ILN | 715413 | Plug, Breech Gallery NoGo A-0925-01 | 10 |
| ILN | 715414 | Plug, Breech Assembly Go A-0925-02 | 15 |
| ILN | 715415 | Plug, Breech Assembly No-Go A-0925-03 | 3 |
| ILN | 715416 | 06 Router, Forearms A-1138-00   OBS | 36 |
| ILN | 715417 | Cutter, Finger Lever 39 A-1140-00 | 4 |
| ILN | 715418 | 06 Cutter,T-Slot, Receiver 36 A-1202-00 OBS | 59 |
| ILN | 715421 | Plug, Breech, Assem Max 35 Rem A-2220-00 | 8 |
| ILN | 715422 | 06 Drill, Subland, Receiver 39 A-3671 | 26 |
| ILN | 715424 | Plug, Breech  44 Gallery No-Go A-4340-01 | 8 |
| ILN | 715425 | Plug, Breech 44 Assembly Go A-4340-02 | 2 |
| ILN | 715426 | Plug, Breech 44 Assembly No Go A-4340-03 | 2 |

19

US_Active\115569040\V-2

Case 20-81166-CR-1  Doc 2906-16  Filed 09/08/22  Entered 09/08/22 12:40:54  Desc
Exhibit RJN 4: Order Approving Purchase of Assets  Page 68 of 169  Page 107 of 249

| | | | |
|---|---|---|---|
| ILN | 715431 | Plug, Breech  45/70 Assem Go A-5619-01 | 11 |
| ILN | 715432 | Plug, Breech 45/70 Assem No-Go A-5619-02 | 9 |
| ILN | 715433 | Chamfer Tool, Chamber 95 A-5625-00 | 19 |
| ILN | 715434 | 06 Center, Live, Barrel 39 A-6022-04 | 12 |
| ILN | 715435 | 06 Center,  Live, .654 Dia. A-6022-05 | 12 |
| ILN | 715436 | 06 Center,  Live, .667 Dia. A-6022-06 | 12 |
| ILN | 715437 | 06 Center, Live, .813 Dia A-6022-13 | 12 |
| ILN | 715438 | Cutter, Cut Off A-6086-00 | 12 |
| ILN | 715440 | ZZ PILOT, C'SINK 38/55 B-6869 DET#3 | 15 |
| ILN | 715441 | Cutter, T-Slot, Receiver 95 A-6278-00 | 14 |
| ILN | 715446 | Reamer, Receiver 94 A-6512-00 | 5 |
| ILN | 715448 | Plug, Breech, 357 Assembly Go A-6557-02 | 3 |
| ILN | 715449 | Plug, Breech, 357 Assem No-Go A-6557-03 | 10 |
| ILN | 715450 | Cutter, Roughing A-7208, 336, 94,444 | 8 |
| ILN | 715455 | 06 Pilot, .349 Dia., 35 Cal. A-7650-02 | 12 |
| ILN | 715458 | 06 Pilot, .451 Dia., 45-70 Cal. A-7650-05 | 12 |
| ILN | 715461 | 06 Pilot, 338 Marlin A-7650-20 | 12 |
| ILN | 715462 | 06 Stamp, Proof, JM A-7847-00 HI-POW. BBLS | 6 |
| ILN | 715464 | Plug, Breech, 45 Colt Ass NoGo A-7981-02 | 3 |
| ILN | 715468 | ZZ PILOT, C'SINK 338 MX B-6869 DET#6 | 15 |
| ILN | 715469 | Mill, Thread, Rec 450 & 308 A-8996-00 | 8 |
| ILN | 715470 | ENDMILL, Receiver 450 A-8997-00 | 6 |
| ILN | 715471 | Reamer, Bore 30/30 A-9012-00 | 34 |
| ILN | 715472 | 06 DRILL,C'Sink, Barrel 30/30 A-9072 **OBS* | 12 |
| ILN | 715473 | Cutter Set A-9073-00 | 12 |
| ILN | 715474 | Reamer, Special, 450 A-9123-00 | 16 |
| ILN | 715475 | 06 Reamer, Bore, Carbide 444 A-9254-00  OBS | 12 |
| ILN | 715480 | 06 Cutter w/flat 39 Receiver B-5775 | 4 |
| ILN | 715481 | Cutter, T Slot, 36 Hammer B-5866-00 | 101 |
| ILN | 715482 | Drill & Holder B-5868-00 | 56 |
| ILN | 715483 | Reamer, Mag Hole, Deburr, .560 A-9278-03 | 6 |
| ILN | 715486 | Plug, Breach, No Go Assy, 410 A-9340-02 | 4 |
| ILN | 715487 | 06 CutterFormLoadingSpring338 A-9349  OBS | 9 |
| ILN | 715488 | ENDMILL, Receiver 94 A-9419-00 OBS | 12 |
| ILN | 715489 | 06 Cutter, Miller, RecTang 39 B-0004-00 | 3 |
| ILN | 715490 | 06 Cutter, Gang, Bold 39 B-0009-00 | 3 |
| ILN | 715494 | DRILL, COMB and C'BORE B-3376 | 45 |
| ILN | 715496 | 06 DRILL GUIDE, BARREL B-3527-01  OBS | 11 |
| ILN | 715497 | Tap, 336 Receiver B-3473 | 48 |
| ILN | 715498 | 06 Drill Guide, 357 B-3527-02  OBS | 4 |
| ILN | 715499 | Drill Guide, 45/70 B-3527-04 | 4 |
| ILN | 715500 | Drill Guide, 44 B-3527-05 | 12 |
| ILN | 715501 | Drill Guide, 32/20 B-3527-12 | 8 |

| | | | |
|---|---|---|---:|
| ILN | 715503 | 06 Drill Guide, 30  B-3527-21   OBS | 8 |
| ILN | 715504 | 06 Drill Guide, 38/55  B-3527-22 | 6 |
| ILN | 715505 | 06 Drill Guide, 444 B-3527-23 | 6 |
| ILN | 715506 | 06 Drill Guide, 338 B-3527-25 | 8 |
| ILN | 715507 | 06 Drill,DeepHole,Bolt20' 36B-3608-00 OBS | 43 |
| ILN | 715508 | DRILL, SUBLAND B-4236  1895 RECEIVER | 19 |
| ILN | 715510 | Drill, Deep Hole 44 Mag .412 B-4090-01 | 14 |
| ILN | 715511 | Bushing, Driven, 336 Barrel B-4131-A | 10 |
| ILN | 715512 | Drill, Subland, Receiver 357 B-4371-00 | 6 |
| ILN | 715513 | CUTTER, CONVEX  B-1058-01 SETS OF 2 | 2 |
| ILN | 715515 | ROLL, MARKING  B-7005  MARLIN BBL | 4 |
| ILN | 715516 | REAMER, Carbon Steel, Receiver B-4525-00 | 36 |
| ILN | 715518 | Tool Bit, 336 Breech Bolt B-4616-00 | 48 |
| ILN | 715521 | Barrel Tap, 39 Receiver B-4633 | 13 |
| ILN | 715525 | Drill,Chamber25/32,33630-30B-4866-00 OBS | 12 |
| ILN | 715529 | 06 Button, Rifling, 32-20 B-5489-01 | 4 |
| ILN | 715532 | REAMER, BREECH BOLT M336/94 A-766 | 28 |
| ILN | 715543 | ROLL, MARKING B-7117 MARLIN BBL | 3 |
| ILN | 715544 | 06 CENTER,TAIL STOCK  B-6383-06 | 3 |
| ILN | 715546 | Safety, 9 1/4 Lg. 45 Colt B-6420-02 | 28 |
| ILN | 715547 | Safety, 357 Magnum B-6751-00 | 6 |
| ILN | 715548 | Safety,  9 1/4 Lg, 357 Mag B-6752-00 | 13 |
| ILN | 715549 | Safety, Broach, 30-30 B-6877-00 | 40 |
| ILN | 715550 | Drill, Deep Hole, 38-55, 48 LG B-6880-00 | 8 |
| ILN | 715551 | Safety, Broach, 444 B-6884-00 | 8 |
| ILN | 715552 | ARBOR, B-4238  1895 RECEIVER | 2 |
| ILN | 715554 | 06 Reamer,ChamberSemiFin450B-6953-00  OBS | 2 |
| ILN | 715555 | 06 Bushing, Drive 39 Barrel B-6962-02 | 6 |
| ILN | 715556 | Bushing, Driving 36, 94 Barrel B-6962-03 | 5 |
| ILN | 715557 | 06 Bushing Drive 1.031,1895B-6962-05 OBS | 6 |
| ILN | 715558 | Bushing, Drive - 450 Caliber B-6985-00 | 6 |
| ILN | 715560 | Reamer, Chamber,Semi Fin 30-30 B-7006-00 | 14 |
| ILN | 715562 | Drill,Deep Hole 45-70Cal 52 lg B-7020-00 | 23 |
| ILN | 715563 | Reamer, Chamber, Finish, 35 B-7021-00 | 6 |
| ILN | 715565 | Reamer, Chamber, Rough, 35 B-7023-00 | 4 |
| ILN | 715566 | 06 Reamer, Bore 45/70 B-7326-00  OBS | 12 |
| ILN | 715567 | Pull Rod, Broach, 357 Caliber C-4425-00 | 16 |
| ILN | 715569 | Pull Rod, Broach,30-30 Caliber C-4520-00 | 4 |
| ILN | 715570 | Pull Rod, Broach, 44 Caliber C-4525-00 | 17 |
| ILN | 715571 | Button,Rifling,30-30 4140 Ma'l C-4584-00 | 31 |
| ILN | 715572 | Button, Rifling, 35, Coated C-4601-00 | 12 |
| ILN | 715573 | 06 ENDMILL, Ball SGS36546CARB 3/4 X 1/2 X4 | 5 |
| ILN | 715579 | 06 SAW,CIRCULAR BCT 200 x 2.0 x 32T x 120SC | 12 |

21

US_Active\115569040\V-2

Case 20-81688-CRJ11   Doc 2906-16   Filed 09/30/22   Entered 09/30/22 13:49:54   Desc
Exhibit RJN 4: Order Approving Sale  Page 70 of 249   Page 109 of 249

| | | | |
|---|---|---|---|
| ILN | 715581 | Bushing, Drive B-3838-1 | 2 |
| ILN | 715582 | Bushing, Drive B-3838-4 | 4 |
| ILN | 715587 | Endmill, Carbide 4fltd 9/64"x 3/16 SH CC | 3 |
| ILN | 715588 | Bushing, Drive B-3838-3 | 3 |
| ILN | 715590 | Jaw, Chuck B-4382-A,Sell in sets of 2 | 5 |
| ILN | 715593 | TAP, B-3968   336 RECEIVER MARLIN 30/30 | 18 |
| ILN | 715594 | 06 Adapter A-1013 OBS | 3 |
| ILN | 715595 | Cutter A-1453 | 40 |
| ILN | 715597 | Cutter, Rad.  A-2274,  FORM RELIEF SET/2 | 12 |
| ILN | 715598 | Finger, Driving A-5788 | 6 |
| ILN | 715599 | Cutter A-2926 DOUBLE ANGLE, BR. BOLT 336 | 6 |
| ILN | 715606 | Drill w/ Extention A-6406 | 32 |
| ILN | 715616 | Cutter A-9284, BREECH BOLT 1895 | 9 |
| ILN | 715621 | Die, Thread Chasing B-2307 | 7 |
| ILN | 715624 | Bushing, Drive B-3838-2 | 3 |
| ILN | 715625 | Center, Tailstock B-4514 | 3 |
| ILN | 715630 | Holder, Tool B-4619 | 1 |
| ILN | 715632 | Drill, 8.1 mm B-4864  OBS | 12 |
| ILN | 715636 | Wheel, Borozon B-5626 | 4 |
| ILN | 715640 | Drill , HAND DEBURRING TOOL B-6999-2 | 1 |
| ILN | 715642 | Drill, Precision Twist 3.2 mm #78513199 | 24 |
| ILN | 715644 | Saw, Cut Off A-7043 | 11 |
| ILN | 715649 | Breech Bolt, Milling Cutter C-2501 | 6 |
| ILN | 715652 | Stamp, Roll B-7139 | 3 |
| ILN | 715657 | 06 Plate, Former B-2518 | 3 |
| ILN | 715658 | 06 Bushing, Rear B-5838-03  OBS | 3 |
| ILN | 715659 | 06 Bushing, Rear B-5838-08  OBS | 3 |
| ILN | 715662 | ENDMILL, 1/4 Carbide A-8099 | 6 |
| ILN | 715665 | DRILL, Necking A-6407 | 23 |
| ILN | 715666 | 06 Holder A-820  OBS | 3 |
| ILN | 715668 | 06 ENDMILL, A-8496  OBS | 10 |
| ILN | 715674 | ARBOR, B-4239  336 RECEIVER | 2 |
| ILN | 715678 | 06 REAMER, CHAMBER SEMI-FIN 30-06 C-4778 | 13 |
| ILN | 715679 | 06 REAMER, CHAMBER FINISH 30-06 C-4779 | 13 |
| ILN | 715735 | DRILL, STEP MARLIN A-8276  (SK) (R) | 13 |
| ILN | 715736 | DRILL,  MARLIN A-7702 | 12 |
| ILN | 715738 | 06 BROACH INSERT  C-2053-2 | 1 |
| ILN | 715739 | 06 BROACH INSERT  SPACER C-2053-3 OBS | 4 |
| ILN | 715740 | 06 BROACH INSERT  C-2053-4 | 1 |
| ILN | 715741 | 06 BROACH INSERT  C-2053-5 | 1 |
| ILN | 715742 | 06 BROACH INSERT  C-2053-6 | 5 |
| ILN | 715744 | BROACH INSERT LEFT SIDE  C-3517-1 | 3 |
| ILN | 715745 | BROACH INSERT LEFT SIDE  C-3517-2 | 1 |

Case 20-81688-CR-1   Doc 3406-16   Filed 09/30/22   Entered 09/30/22 13:49:54   Desc
Exhibit RJN 4: Order Approving Buyer of A269   Page 110 of 249

| | | | |
|---|---|---|---|
| ILN | 715746 | BROACH INSERT LEFT SIDE  C-3517-3 | 2 |
| ILN | 715747 | BROACH INSERT LEFT SIDE  C-3517-4 | 3 |
| ILN | 715748 | BROACH INSERT LEFT SIDE  C-3517-5 | 3 |
| ILN | 715749 | BROACH INSERT LEFT SIDE  C-3517-6 | 2 |
| ILN | 715750 | BROACH INSERT LEFT SIDE  C-3517-7 | 3 |
| ILN | 715751 | BROACH INSERT LEFT SIDE  C-3517-8 | 6 |
| ILN | 715752 | BROACH INSERT LEFT SIDE  C-3517-9 | 1 |
| ILN | 715753 | BROACH INSERT LEFT SIDE  C-3517-10 | 2 |
| ILN | 715754 | BROACH INSERT RIGHT SIDE  C-3531-1 | 3 |
| ILN | 715755 | BROACH INSERT RIGHT SIDE  C-3531-2 | 2 |
| ILN | 715756 | BROACH INSERT RIGHT SIDE  C-3531-3 | 3 |
| ILN | 715757 | BROACH INSERT RIGHT SIDE  C-3531-4 | 3 |
| ILN | 715758 | BROACH INSERT RIGHT SIDE  C-3531-5 | 3 |
| ILN | 715759 | BROACH INSERT RIGHT SIDE  C-3531-6 | 3 |
| ILN | 715763 | CUTTER, B-6507-00  336 RECEIVER | 4 |
| ILN | 715770 | CUTTER, A-9135  RECEIVER 1895 | 20 |
| ILN | 715773 | 06 BROACH INSERT  C-2053-7 | 1 |
| ILN | 715774 | BROACH INSERT  SPACER C-2053-8 | 3 |
| ILN | 715775 | BROACH INSERT  SPACER C-2053-9 | 2 |
| ILN | 715776 | 06 BROACH INSERT  C-2053-10 | 1 |
| ILN | 715777 | BROACH INSERT  SPACER C-2053-11 | 2 |
| ILN | 715778 | 06 BROACH INSERT  C-2053-12 | 1 |
| ILN | 715779 | BROACH INSERT  SPACER C-2053-13 | 2 |
| ILN | 715780 | 06 BROACH INSERT  C-2053-14 | 1 |
| ILN | 715781 | 06 BROACH INSERT  C-2053-15 | 1 |
| ILN | 715782 | 06 BROACH INSERT  C-2053-17 | 2 |
| ILN | 715783 | 06 BROACH INSERT  C-2053-18 | 1 |
| ILN | 715784 | BROACH INSERT  SPACER C-2053-19 | 2 |
| ILN | 715785 | 06 BROACH INSERT  C-2053-20 | 1 |
| ILN | 715786 | BROACH INSERT  SPACER C-2053-21 | 2 |
| ILN | 715787 | 06 BROACH INSERT  C-2053-22 | 1 |
| ILN | 715788 | 06 BROACH INSERT  C-2053-23 | 1 |
| ILN | 715789 | 06 BROACH INSERT  C-2053-24 | 1 |
| ILN | 715790 | 06 BROACH INSERT  C-2053-25 | 2 |
| ILN | 715791 | 06 BROACH INSERT  C-2053-26 | 2 |
| ILN | 715792 | 06 BROACH INSERT  C-2053-27 | 2 |
| ILN | 715795 | BROACH INSERT  C-2054-1 | 1 |
| ILN | 715796 | BROACH INSERT  C-2054-2 | 1 |
| ILN | 715797 | BROACH INSERT  C-2054-3 | 1 |
| ILN | 715798 | BROACH INSERT  C-2054-4 | 1 |
| ILN | 715799 | BROACH INSERT  C-2054-5 | 1 |
| ILN | 715800 | BROACH INSERT  C-2054-6 | 1 |
| ILN | 715801 | BROACH INSERT  C-2054-7 | 1 |

23

US_Active\115569040\V-2

Case 2:20-bk-06666-BKM  Doc 2906-16  Filed 09/30/22  Entered 09/30/22 12:49:54  Desc
Exhibit RJN 4: Order Approving Page 72 of 169  Page 111 of 249

| | | | |
|---|---|---|---|
| ILN | 715806 | CUTTER, A-0243  T-SLOT  336 RECEIVER | 15 |
| ILN | 715807 | 06 CUTTER, A-253 T-SLOT 336 RECEIVER OBS | 56 |
| ILN | 715808 | CUTTER, SAW B-0293          336 RECEIVER | 96 |
| ILN | 715814 | Drill,  A-7537 | 60 |
| ILN | 715815 | DRILL, COMB. & C'BORE  B-3380 | 20 |
| ILN | 715816 | 06 DRILL, STEP  B-7074 | 15 |
| ILN | 715817 | Cutter, Finish A-6807, M/336, 444,36t | 12 |
| ILN | 715818 | Cutter,  A-982,   M/36,44, 444,36t | 14 |
| ILN | 715819 | Cutter,  A-983,  M/36T | 20 |
| ILN | 715820 | BROACH ,  C-3533-1, TRIGGER GRD PLATE | 6 |
| ILN | 715821 | BROACH ,  C-3533-2, TRGR GUARD PLATE | 11 |
| ILN | 715824 | PUNCH,  A-1773 | 11 |
| ILN | 715827 | Cutter, Slot   A-6735 | 14 |
| ILN | 715833 | DRILL, STEP A-4712 | 28 |
| ILN | 715834 | DRILL, STEP A-6516 | 3 |
| ILN | 715835 | REAMER, DEBURRING A-6598 | 9 |
| ILN | 715836 | REAMER,  A-6711 | 4 |
| ILN | 715837 | CUTTER,GANG C-2510 | 11 |
| ILN | 715838 | CUTTER,GANG C-2513 | 3 |
| ILN | 715844 | REAMER, MARLIN 1895/450  B-6968 | 5 |
| ILN | 715845 | Tool, Shave A-6217 | 20 |
| ILN | 715846 | Tool, Shave A-1487 | 70 |
| ILN | 715848 | Tool, Shave A-1144 | 26 |
| ILN | 715849 | Tool, Shave B-5807 | 12 |
| ILN | 715850 | TAP, SPECIAL A-7008 | 11 |
| ILN | 715851 | TAP,SPECIAL B-3477 USED IN MARLIN | 26 |
| ILN | 715852 | 06 TAP, SPECIAL B-3474 | 173 |
| ILN | 715857 | INSERT, KENNAMETAL LNEU1245R08 KC725 | 20 |
| ILN | 715858 | CUTTER, SLOT KENNAMETAL KS255BLNE1245 | 1 |
| ILN | 715860 | 06 INSERT,SANDVIK N331.1A-054508H-PL4240 | 50 |
| ILN | 715862 | DRILL, COMB. & C'BORE  B-4723 | 17 |
| ILN | 715865 | Endmill, A-6303 | 14 |
| ILN | 715866 | Reamer, Cutter  A-1784 | 3 |
| ILN | 715867 | DRILL, SGS 68278 SERIES 101 4.5MM | 20 |
| ILN | 715868 | ENDMILL, SGS 30823 TIALN COAT 13/64 | 1 |
| ILN | 715870 | DRILL,  STD 1.95MM | 18 |
| ILN | 715871 | REAMER, .2120 CHUCKING 4FL | 11 |
| ILN | 715872 | TAP, .210-32 BOTTOM | 21 |
| ILN | 715873 | TAP, .210-28  NOR 4-FLUTED | 5 |
| ILN | 715874 | Saw,  A-5617 | 10 |
| ILN | 715875 | CUTTER SET B-6176-01 | 1 |
| ILN | 715876 | CUTTER, MILLING  B-2856, SETS OF TWO | 5 |
| ILN | 715877 | 06 DOG,  B-2047   OBS | 3 |

24

| ILN | 715883 | DRILL, COMB. & C'BORE  B-3381 | 23 |
| ILN | 715884 | CUTTER,  C-1858 | 2 |
| ILN | 715885 | CUTTER, ROUGH  A-8697--SETS OF TWO | 17 |
| ILN | 715887 | CUTTER, INSERTED MILLING B-6722 | 7 |
| ILN | 715889 | 06 Tool, Shave A-5738 | 6 |
| ILN | 715890 | CUTTER  A-510 | 2 |
| ILN | 715891 | BROACH  C-3530 DETAILS 1 AND 2 | 6 |
| ILN | 715895 | CUTTER,GANG C-4136 FORM RELIEF | 10 |
| ILN | 715898 | DRILL, GUHRING   2.9 MM Gurhring 305 | 10 |
| ILN | 715917 | Reamer, Bore B-6554 | 30 |
| ILN | 715918 | Insert, Carbide TPMA 54NGR 0463 612 | 11 |
| ILN | 715919 | DRILL, STEP A-6460 | 19 |
| ILN | 715920 | DRILL, SUBLAND B-4200  M/1895 | 23 |
| ILN | 715921 | 06 CUTTER SET B-6176-02   OBS | 3 |
| ILN | 715925 | CUTTER, ENDMILL  B-5863 CORNER ROUND | 8 |
| ILN | 715927 | CUTTER, GANG C-2099 LOAD SPRING 336 | 9 |
| ILN | 715929 | CUTTER, FORM  A-6472   MILL 336, 94 | 6 |
| ILN | 715934 | CUTTER, SET C-2260 FIN. MILL BOTTOM 1894 | 6 |
| ILN | 715943 | DRILL, 3.2mm TITEX  #A1549 TFP COATING | 23 |
| ILN | 715946 | CUTTER , FORM RELIEF, D-62550 | 1 |
| ILN | 715949 | 06  H8ACH,C-2025-2,DOVETAILDETAIL 2ONLY OBS | 3 |
| ILN | 715951 | BROACH INSERT  SPACER C-2053-16 | 2 |
| ILN | 715954 | ENDMILL, RANI INDEX. TXD90-0750F | 2 |
| ILN | 715955 | INSERT, WIDIA RAN- ADHT 090308-RP354 | 120 |
| ILN | 715967 | CUTTER, DOVETAIL SOLID CARBIDE A-6305 | 7 |
| ILN | 715968 | 54deg endmill CUTTER, B-6883 | 12 |
| ILN | 715977 | CUTTER,  B-793 | 5 |
| ILN | 715978 | CUTTER,  MILLING B-4749 | 8 |
| ILN | 715980 | SAW, SLITTING A-9388 | 2 |
| ILN | 715981 | 06 CUTTER,  B-080  OBS | 3 |
| ILN | 716002 | COLLET, PARLEC DA300-0078 | 4 |
| ILN | 716003 | CUTTER,GANG MILL ASS'Y C-2277 | 3 |
| ILN | 716004 | CUTTER,  A-8653 | 3 |
| ILN | 716008 | 06 CUTTER,  A-7119 | 5 |
| ILN | 716010 | CUTTER,GANG MILL ASS'Y C-2280 | 3 |
| ILN | 716011 | CUTTER,GANG MILL ASS'Y C-2303 | 3 |
| ILN | 716015 | CUTTER,  MILLING  B-2321 | 5 |
| ILN | 716016 | CUTTER,  SIDE MILLING A-6706 | 3 |
| ILN | 716017 | CUTTER,  A-8652 | 3 |
| ILN | 716018 | CUTTER,  MILLING  B-5532 | 8 |
| ILN | 716021 | DRILL, #50  CARBIDE GARR# 89181-1205H | 23 |
| ILN | 716022 | ROD/TUBE, REAMER 30-30 C-2288 DET#6 | 33 |
| ILN | 716024 | CUTTER, ANGLE  B-2513 | 6 |

25

US_Active\115569040\V-2

Case 20-81663-CR1111   Doc 2906-16   Filed 09/30/22   Entered 09/30/22 13:49:54   Desc
Exhibit RJN 4: Order Approving Page 74 of 169   Page 113 of 249

| | | | |
|---|---|---|---|
| ILN | 716025 | CUTTER, RAD.  A-4807 | 6 |
| ILN | 716026 | 06 CUTTER,  A-1086  OBS | 3 |
| ILN | 716030 | CUTTER,  A-5135 | 6 |
| ILN | 716031 | 06 CUTTER,GANG  C-4886 | 3 |
| ILN | 716032 | DRILL, SPECIAL STEP A-4379 | 30 |
| ILN | 716033 | REAMER,SPECIAL & C'SINK A-4380 | 20 |
| ILN | 716035 | DRILL, JOBBERS 5.25 mm MSC#01076512 | 9 |
| ILN | 716040 | CENTER, DEAD ROYAL PART# 64692411 | 10 |
| ILN | 716041 | 06 DRIVER, FACE PT#4210 CARBOLATHE  OBS | 3 |
| ILN | 716043 | COLLET, KENNAMETAL 25ER0125  1/8" | 5 |
| ILN | 716046 | CHUCK,COLLET KENNAMETAL CV40BER25250 | 3 |
| ILN | 716047 | TAP, BOTTOMING,4 FLUTE 3B HSG 13/16-20 | 20 |
| ILN | 716048 | BUTTON  & ROD, ASSEMBLY C-4605 30/30 | 49 |
| ILN | 716075 | ROLL, MARKING  B-5641 | 2 |
| ILN | 716076 | ROLL, MARKING M/336C B-4648 | 2 |
| ILN | 716078 | BROACH,  M/336   C-3848 DET#1,#2,#3 | 4 |
| ILN | 716079 | BROACH,  M/336   C-3040 DET#1,2,3,4,5 | 7 |
| ILN | 716080 | BROACH,  INSERT   C-2345 DET#1,#2 | 2 |
| ILN | 716089 | ASSEMBLY,  BUTTON  COMPLETE 22 C-3666-A | 6 |
| ILN | 716091 | 06 REAMER, PULL  A-3285 | 30 |
| ILN | 716092 | Drill, Deep Hole B-3830-1 | 24 |
| ILN | 716115 | STAMP, ID SSTL M/336  A-9054 | 2 |
| ILN | 716119 | DRILL, COMB and C'BORE B-3381 | 23 |
| ILN | 716120 | CUTTER, STAG TOOTH 6"x.750"x1-1/4"24T | 25 |
| ILN | 716122 | CUTTER, STAG TOOTH 5"x.750"x1-1/4"24T | 6 |
| ILN | 716123 | BROACH INSERT  C-2927 DET# 1 THRU 6 | 3 |
| ILN | 716125 | BROACH,  M/336   D-1583 DET#1,2,3,4,6 | 1 |
| ILN | 716128 | BROACH INSERT  C-4279 DET# 1 THRU 5 | 3 |
| ILN | 716129 | 06 INSERT ISCARAPK1003PDTR-RM IC328OBS | 80 |
| ILN | 716133 | ENDMILL, GARR VRX 1/2"  A-61144 | 17 |
| ILN | 716153 | INSERT, KENNAMETAL LNEU1245R08SGP KC725M | 124 |
| ILN | 716154 | INSERT, KENN SPCT3125PPEL8LD2 KC725M | 25 |
| ILN | 716155 | INSERT, KENN SPCT3125PPER8LD2 KC725M | 60 |
| ILN | 716163 | INSERT, KENNAMETAL EP1008 EHD  KC725M | 90 |
| ILN | 716164 | INSERT, KENNAMETAL KDMB0312M0ERGC KC515M | 38 |
| ILN | 716167 | ENDMILL,KENNAMETAL M1D075E1003W075L110 | 1 |
| ILN | 716169 | 06 CUTTER, SLOT KENN KSSS400BSP10N551-630 | 2 |
| ILN | 716170 | CUTTER, SLOT MILLING KENN KS44BLNE1240 | 2 |
| ILN | 716193 | COLLET, SANDVIK  003670 A393.09-C12-1250 | 2 |
| ILN | 716195 | CUTTER, STAGGARD TOOTH 4"x.500"x1" 18T | 6 |
| ILN | 716196 | ENDMILL 1" DIA CARBIDE--6 FL  GARR 51377 | 4 |
| ILN | 716197 | 06 DRILL, SUBLAND B-4522  1894 RECEIVER | 13 |
| ILN | 716198 | 06 REAMER, STEP  B-4375  1894 RECEIVER | 8 |

26

| ILN | 716200 | BUSHING, DRILL  SF-16-10 .128 ID | 6 |
| --- | --- | --- | --- |
| ILN | 716202 | ENDMILL,GARR  PART#62535 VRX 1/2" SQ END | 2 |
| ILN | 716203 | 06 Pilot, .218 Dia., 39A BBL A-7650-7  OBS | 3 |
| ILN | 716205 | DRILL, CENTER #2 x 4  (71044242) | 14 |
| ILN | 716206 | DRILL, SGS EDP#57189 5/16" | 17 |
| ILN | 716207 | 06 CUTTER,  B-009 OBS | 2 |
| ILN | 716213 | REAMER, #33(.113) | 19 |
| ILN | 716214 | Reamer, B-7367 | 4 |
| ILN | 716215 | 06 Cutter, Tee  A-7063 (12 sets of 2) | 12 |
| ILN | 716220 | 06 TOOL, SHAVE  A-5059 | 40 |
| ILN | 716221 | 06 HOLDER, SHAVE TOOL  B-2475   OBS | 2 |
| ILN | 716222 | TOOL, SHAVE  A-7057 REV 9 | 472 |
| ILN | 716223 | TOOL, SHAVE  A-5082 | 40 |
| ILN | 716224 | REAMER, SPECIAL B-7368 | 8 |
| ILN | 716227 | REAMER, A-9036 | 22 |
| ILN | 716229 | HOLDER, TAP Z LOCK P/N708-3949-168 ZAGAR | 2 |
| ILN | 716235 | CUTTER, B-4780 | 9 |
| ILN | 716237 | 06 CUTTER, B-4786 | 10 |
| ILN | 716239 | 06 CUTTER,  A-6381 | 10 |
| ILN | 716251 | TOOLHOLDER, KENNAMETAL  NSR163D | 2 |
| ILN | 716252 | INSERT, THREADING NG3044R KC5025 | 35 |
| ILN | 716253 | 06 DRILL, SUBLAND A-7334 | 10 |
| ILN | 716254 | 06 CUTTER, C-3448 | 10 |
| ILN | 716257 | CUTTER,  C-3451 (SET OF 5) | 4 |
| ILN | 716258 | 06 CUTTER,  KEYSEAT A-7900 | 10 |
| ILN | 716259 | ZZ DRILL, CENTER A-7073  OBS | 11 |
| ILN | 716267 | DRILL,& C'SINK A-4381 | 5 |
| ILN | 716268 | REAMER, A-4382 | 9 |
| ILN | 716269 | CUTTER, C-2431 | 2 |
| ILN | 716270 | CUTTER, B-014 | 3 |
| ILN | 716271 | 06 CUTTER,  B-4949 OBS | 7 |
| ILN | 716272 | CUTTER, B-5947 | 8 |
| ILN | 716273 | INSERT, THREADING NG3M100RK  KC5025 | 45 |
| ILN | 716274 | DRILL, A-6963 | 10 |
| ILN | 716278 | DRILL, STEP  B-6504 | 5 |
| ILN | 716280 | BUR, CARBIDE,1/8" DOUBLE CUT  8175A27 | 6 |
| ILN | 716281 | COLLET, KENNAMETAL  16ER060M  6 MM | 6 |
| ILN | 716283 | CUTTER, A-1310 | 8 |
| ILN | 716284 | C'BORE,  A-059 | 8 |
| ILN | 716288 | 06 CUTTER, A-072 | 10 |
| ILN | 716291 | 06 CUTTER, GANG B-4199 | 2 |
| ILN | 716292 | 06ILL, CENTER A-4320  OBS | 3 |
| ILN | 716303 | 06 CUTTER, A-105  OBS | 3 |

US_Active\115569040\V-2

| | | | |
|---|---|---|---|
| ILN | 716304 | CUTTER, FORMED ROUGHING B-5772 | 9 |
| ILN | 716305 | 06 CUTTER, FORMED FINISH B-5773 | 6 |
| ILN | 716314 | 06 ASSEMBLY, BORE REAMER MARLIN C-62006-A | 34 |
| ILN | 716315 | ASSEMBLY, BORE REAMER MARLIN C-62006-B | 102 |
| ILN | 716316 | 06 ASSEMBLY, BORE REAMER MARLIN C-62006-C | 7 |
| ILN | 716317 | ASSEMBLY, BORE REAMER MARLIN C-62006-D | 30 |
| ILN | 716318 | 06 ASSEMBLY, BORE REAMER MARLIN**OBS** | 1 |
| ILN | 716319 | 06 ASSEMBLY, BORE REAMER MARLIN**OBS** | 14 |
| ILN | 716320 | 06 ASSEMBLY, BORE REAMER MARLIN C-62006-G | 12 |
| ILN | 716321 | 06 ASSEMBLY, BORE REAMER MARLIN C-62006-H | 12 |
| ILN | 716322 | ASSEMBLY, BORE REAMER MARLIN C-62006-J | 26 |
| ILN | 716323 | 06 ASSEMBLY, BORE REAMER MARLIN C-62006-K | 12 |
| ILN | 716324 | ASSEMBLY, BORE REAMER MARLIN C-62006-L | 10 |
| ILN | 716325 | ASSEMBLY, BORE REAMER MARLIN C-62006-M | 6 |
| ILN | 716326 | 06 ASSEMBLY, BORE REAMER MARLIN C-62006-N | 12 |
| ILN | 716334 | 06 COLLET, UNIVERSAL ACURA-FLEX AF-130 | 1 |
| ILN | 716335 | CHUCK, COLLET, UNIVERSAL AF80349 300KS | 1 |
| ILN | 716336 | ADAPTER,ENDMILL 1/2  AF80343 300KS | 1 |
| ILN | 716337 | 06 COLLET, 5/64 UNIVER RA-FLEX AF-1 OBS | 5 |
| ILN | 716338 | COLLET, 25/64 UNIVERSAL ACURA-FLEX AF-75 | 4 |
| ILN | 716340 | LOCATOR, ROBOT-MARLIN C-4632 DET#4(41) | 2 |
| ILN | 716343 | 06 REAMER,CHAMBER 30-30  JGS#3638-CPF | 11 |
| ILN | 716345 | 06 ASSEMBLY, BORE REAMER MARLIN C-62006-Q | 3 |
| ILN | 716346 | ENDMILL,  A-3181 | 12 |
| ILN | 716347 | DRILL, 3/32  TITEX  #A1249XPL | 20 |
| ILN | 716349 | BUSHING, REAMER .6788 SF-64-28 A-62110 | 9 |
| ILN | 716358 | BUSHING, DRILL .595 ID x 1.25 OD  4140 | 40 |
| ILN | 716359 | BUSHING, DRILL .788 ID x 1.25 OD  4140 | 40 |
| ILN | 716360 | HOLDING FIXTURE ROBOT-MARLIN E-682 DET#4 | 8 |
| ILN | 716361 | HOLDING FIXTURE ROBOT-MARLIN E-682 DET#5 | 12 |
| ILN | 716364 | 06 Drill,  B-7478           OBS | 12 |
| ILN | 716367 | 06 CHUCK, SCULLY JONES  #09570 | 4 |
| ILN | 716372 | 06 REAMER, CHUCKING HSS STR FLUTE .2355 | 6 |
| ILN | 716373 | COLLET #A3000  23/32  MODERN MACHINE | 3 |
| ILN | 716376 | COLLET, PAR ER25-0437 | 1 |
| ILN | 716377 | DRILL, 3/32  TITEX  #A1249TFL-3/32IN | 24 |
| ILN | 716383 | REAMER, 3/16 (.1875) GARR #95579 | 3 |
| ILN | 716384 | REAMER,  .1895 STR SHANK A-7893 | 1 |
| ILN | 716385 | 06 CUTTER, FORM  C-4791 | 2 |
| ILN | 716388 | CUTTER SET B-7169 | 4 |
| ILN | 716390 | Drill, Step, 39 Receiver A-9401 | 12 |
| ILN | 716391 | ENDMILL, 3/8" x 3" x3/8 SHANK STD 4FLUTE | 3 |
| ILN | 716392 | Guide, Drill B-3804 | 6 |

28

US_Active\115569040\V-2

Case 20-81669-CR-11  Doc 2406-16  Filed 09/30/22  Entered 09/30/22 13:49:54  Desc
Exhibit RJN 4: Order Approving Purchase of Assets  Page 116 of 249

| | | | |
|---|---|---|---|
| ILN | 716403 | ENDMILL, 1/8" CARBIDE DE SGS#31001 | 6 |
| ILN | 716413 | COLLET, PAR-ER16-0125  1/8" | 1 |
| ILN | 716415 | 06 ENDMILL,  A-6154   OBS | 8 |
| ILN | 716417 | 06 CUTTER, STAG TOOTH COATED 5"x1/2"x1-1/4 | 6 |
| ILN | 716418 | HOLDER, TOOL KENNAMETAL MSRNR124B | 4 |
| ILN | 716420 | COLLET, AF-138  3/4" | 1 |
| ILN | 716422 | 06 CUTTER, INSERTED MILLING B-6709 | 6 |
| ILN | 716423 | REAMER STD .0768 DIA | 12 |
| ILN | 716427 | LOCATOR, CHUCK B-7390 DET#2 | 2 |
| ILN | 716433 | ENDMILL, DE 5/8"x5/8"-1-3/8" FL LGTH M42 | 11 |
| ILN | 716434 | COLLET, PAR ER20-0437 | 8 |
| ILN | 716435 | SCREW, INSERT KENNAMETAL MS-2205 PKG | 14 |
| ILN | 716436 | 06 Jaw, Chuck #HUR-KT6P 3 PCS PER SET | 2 |
| ILN | 716437 | REAMER, .115 CARBIDE MSC#82111501 | 7 |
| ILN | 716438 | ENDMILL, 1/4" 4FL LH MSC#71775167 | 2 |
| ILN | 716440 | DRILL, CORE LIVE PILOT JGS#11563-HDS-LP | 9 |
| ILN | 716446 | DRILL, CORE LIVE PILOT  JGS#11570-HDS-LP | 12 |
| ILN | 716447 | DRILL, CORE LIVE PILOT  JGS#11558-HDS-LP | 4 |
| ILN | 716449 | REAMER,FINISH CARBIDE  JGS#11051-B-SB-CF | 5 |
| ILN | 716455 | REAMER,FINISH CARBIDE  JGS#10876-C-SB-CF | 12 |
| ILN | 716456 | REAMER,FINISH CARBIDE  JGS#10979-C-SB-CF | 3 |
| ILN | 716457 | 06 MILL,TUBE END CHAMFERING9/16 OD TUBE OBS | 2 |
| ILN | 716458 | MILL, TUBE END CHAMFERING .750 OD TUBE | 2 |
| ILN | 716459 | 06 MILL,TUBE END CHAMFERING .875 ODTUBE OBS | 2 |
| ILN | 716460 | CUTTER  SET A-9188 (SET OF 2) | 4 |
| ILN | 716461 | Drill, Flat Bottom A-7923 | 24 |
| ILN | 716462 | C'sink B-4831 | 2 |
| ILN | 716463 | DRILL, SPECIAL  A-5975 | 4 |
| ILN | 716464 | 06 SAWS, SLITTING W/SIDE TEETH B-7146 | 2 |
| ILN | 716473 | 06 DIE,THREAD M/39A BBL  B-2308 OBS | 2 |
| ILN | 716474 | ENDMILL,   A-7567 (12 sets of 2) | 36 |
| ILN | 716477 | 06 POINT,  MADISON DRIVE #4399-151-00002 | 3 |
| ILN | 716483 | 06 CUTTER, C-4320 OBS | 2 |
| ILN | 716485 | BUSHING,DRILL .790"IDx1.375"ODx1.750L SF | 4 |
| ILN | 716486 | 06 JAW, CNC LATHE PT#KT8MH   OBS | 3 |
| ILN | 716487 | INSERT, SPEB-1511CB X20 | 70 |
| ILN | 716488 | SCREW, INSERT 164-T | 20 |
| ILN | 716489 | CUTTER, T-SLOT RH 1" DIA K-TOOL | 5 |
| ILN | 716490 | COLLET, ER16-0255 PARLEC | 3 |
| ILN | 716491 | 06 COLLET,ACURA FLEX SERIES 38 RDF-044 3/8" | 3 |
| ILN | 716493 | BUSHING,DRILL 17/64 IDx1/2"x1" (R) | 4 |
| ILN | 716494 | 06 COLLET, KENNAMETAL 300DA0188 | 3 |
| ILN | 716495 | DRILL, JOBBERS 17/64  #31115A55 | 6 |

29

US_Active\115569040\V-2

Case 20-31168-CRL Doc 3106-16   Filed 09/30/22   Entered 09/30/22 13:49:54   Desc
Exhibit RJN 4: Order App Moving Page 78 of 169   Page 117 of 249

| ILN | 716499 | ENDMILL, 7/16"x1/2" SH,DE,HSS TiCN COAT | 3 |
|-----|--------|------------------------------------------|---|
| ILN | 716517 | CUTTER, STAGERED TOOTH  A-5128 | 7 |
| ILN | 716518 | 06 CUTTER, C-1424 | 3 |
| ILN | 716521 | 06 ENDMILL, A-6344 OBS | 24 |
| ILN | 716522 | ENDMILL, SE,HSS 1/4"CENTER CUT TiCN COAT | 10 |
| ILN | 716523 | NUT RUNNER B-4255 | 5 |
| ILN | 716525 | 06 BUSHING, DRILL #33(.113)  SF-20-12 | 3 |
| ILN | 716526 | BUSHING, DRILL 1/8(.125)  SF-16-12 | 2 |
| ILN | 716527 | BUSHING, DRILL #28(.1405)  SF-20-8 | 7 |
| ILN | 716528 | BUSHING, DRILL .162  SF-20-12 | 1 |
| ILN | 716529 | BUSHING, DRILL #14(.182)  P-20-8 | 1 |
| ILN | 716530 | 06 BUSHING, DRILL .2115  SF-24-12  OBS | 3 |
| ILN | 716531 | BUSHING, DRILL 5/16 I.D. (.3125)SF-48-12 | 2 |
| ILN | 716532 | 06 BUSHING, DRILL .5709  SF-64-34 OBS | 4 |
| ILN | 716533 | BUSHING, DRILL .6632  SF-64-28 | 4 |
| ILN | 716534 | 06 BUSHING, DRILL .6406(41/64)  SF-56-24 | 2 |
| ILN | 716535 | BUSHING, DRILL .6582(21/32)  SF-64-34 | 1 |
| ILN | 716536 | BUSHING, DRILL .6875(11/16)  SF-64-34 | 2 |
| ILN | 716544 | DRILL, STR SHANK-JOBBERS LENGTH 1.6MM | 12 |
| ILN | 716545 | Cutter, T ,  A-5090 | 17 |
| ILN | 716546 | 06 CUTTER, DOVETAIL A-7286 | 6 |
| ILN | 716548 | C'SINK,   A-8308 | 14 |
| ILN | 716549 | TAP, .210-28 GH3 STR FLUTE #5077751 | 37 |
| ILN | 716551 | 06 INSERT,ALORIS GTN-3 GRAINGER#2RKK6OBS | 6 |
| ILN | 716552 | TAP, PLUG 4-40 2FL PENTA BLUE SPPT | 14 |
| ILN | 716553 | SPOTFACE, A-7003 | 10 |
| ILN | 716555 | GUIDE, DRILL C-100 INTERNATIONAL. | 14 |
| ILN | 716556 | GUIDE, DRILL B-200 INTERNATIONAL. | 10 |
| ILN | 716557 | TAP, PLUG ,.194-36 GH2 | 12 |
| ILN | 716558 | ENDMILL, GARR  PART#62567 VRX  1/2"x4"L | 2 |
| ILN | 716560 | CENTER, TAILSTOCK  MARLIN C-62428-A | 3 |
| ILN | 716561 | CENTER, TAILSTOCK  MARLIN C-62428-B | 6 |
| ILN | 716562 | CENTER, TAILSTOCK  MARLIN C-62428-C | 5 |
| ILN | 716563 | POINT, CENTER FOR FACE DRIVER PT# 88354 | 8 |
| ILN | 716564 | Drill Guide, 45 COLT B-3527-13 | 5 |
| ILN | 716565 | BUSHING, DRILL 7/32 (.2188)  SF-32-12 | 1 |
| ILN | 716568 | COLLAR, C-41763-B  DET. 8-3 | 1 |
| ILN | 716569 | COLLAR, C-41763-C  DET. 9-3 | 2 |
| ILN | 716570 | BUSHING, DRILL  SF-20-8 .1592 ID | 3 |
| ILN | 716573 | CENTER, TAILSTOCK  MARLIN C-62428-D | 3 |
| ILN | 716574 | CENTER, TAILSTOCK  MARLIN C-62428-E | 2 |
| ILN | 716575 | CENTER, TAILSTOCK  MARLIN C-62428-F | 4 |
| ILN | 716577 | KNOB, RETENTION TOOLHOLDER BT-40 | 1 |

US_Active\115569040\V-2

| ILN | 716605 | DRILL, SPOT 1/4" 90 DEGREE GARR #91020 | 3 |
|-----|--------|----------------------------------------|---|
| ILN | 716614 | COLLET, KENNAMETAL 16ER0188 #1729817 | 10 |
| ILN | 716620 | Broach, Insert C-2056-DET 5 | 7 |
| ILN | 716623 | COLLET 5C ROUND  .6875 ID  (11/16) | 8 |
| ILN | 716624 | ASSEMBLY, BORE REAMER MARLIN C-62006-R | 20 |
| ILN | 716628 | SCREW. SPECIAL 5/8-11 x 3.5 A-62559 | 28 |
| ILN | 716629 | COLLET, ERICKSON  ER20-0125  1/8" | 2 |
| ILN | 716630 | TAP, 5-40 PM HSS-E SPRL PT PLUG TIN COAT | 17 |
| ILN | 716631 | ENDMILL, GARR 5/8" .045CR EDP#80400 | 13 |
| ILN | 716632 | SCREW, INSERT KENNAMETAL MS1281 | 20 |
| ILN | 716642 | ROLL DIE,  MARK INSCRIPTION  B-7123 | 2 |
| ILN | 716643 | ROLL,MARKING INSCRIPTION   B-7535 | 1 |
| ILN | 716645 | DRILL, MORSE 3.2 mm TL COBALT PARABOLIC | 32 |
| ILN | 716646 | BUSHING, DRILL  SF-20-12  .1065 ID | 7 |
| ILN | 716647 | BUSHING, DRILL  UN-SF-16-.4050 2.9MM ID | 8 |
| ILN | 716650 | ANVIL(BRASS PLATE) B-63054 | 19 |
| ILN | 716651 | CUTTER, SLOTTING KENNAMETAL #2518820R3 | 6 |
| ILN | 716652 | ROLL DIE,  MARK INSCRIPTION  B-7364 | 3 |
| ILN | 716653 | ROLL DIE,  MARK INSCRIPTION  B-7527 | 2 |
| ILN | 716664 | BROACH,  BORE D-3002-01 | 4 |
| ILN | 716665 | DRILL,TAP ,CARBIDE #16 (.177)GARR #89411 | 10 |
| ILN | 716666 | ENDMILL, GARR P/N 13137 | 19 |
| ILN | 716667 | DRILL,SPOT,3/8x 90 DEGREE GARR #91030 | 17 |
| ILN | 716668 | DRILL,CARBIDE #47 (.0785) GARR #89201 | 11 |
| ILN | 716669 | 06 DRILL,CARBIDE #33(.1130) GARR #89291OBS | 2 |
| ILN | 716673 | COLLET, ER 116 4mm-5mm REGOFIX 1116.05000 | 5 |
| ILN | 716674 | COLLET, ER 20 1mm-2mm REGOFIX 1120.02000 | 2 |
| ILN | 716675 | COLLET, ER 20 2mm-3mm REGOFIX 1120.03000 | 2 |
| ILN | 716676 | COLLET, ER 20 4mm-5mm REGOFIX 1120.05000 | 2 |
| ILN | 716679 | ENDMILL, BALL,CARBIDE 4F XG-402-12BNFL | 20 |
| ILN | 716680 | ENDMILL, FLAT,CARBIDE 4F ST-400-12FL | 21 |
| ILN | 716682 | ROLL DIE, MARK INSCRIPTION  B-6763 | 2 |
| ILN | 716683 | ROLL DIE, MARK INSCRIPTION  B-6774 | 4 |
| ILN | 716684 | ROLL DIE, MARK INSCRIPTION  B-6831 | 3 |
| ILN | 716685 | ROLL DIE, MARK INSCRIPTION  B-6957 | 2 |
| ILN | 716686 | ROLL DIE, MARK INSCRIPTION  B-7534 | 1 |
| ILN | 716687 | REAMER, .108 HSS STR FL MA FORD#27210800 | 10 |
| ILN | 716712 | COLLET, ER 32  .250  REGOFIX 1132.06500 | 2 |
| ILN | 716714 | HOLDER,COLLET ER 32  REGOFIX 2638.13253 | 2 |
| ILN | 716715 | 06 DRILL, 16.5MM TITEX  #A6489DPP-16.5 SHO | 81 |
| ILN | 716716 | REAMER, HANNIBAL COOLANT THROUGH#429678 | 13 |
| ILN | 716717 | COLLET, ER 32 9/16"  SEALED #032-036-ICS | 3 |
| ILN | 716718 | COLLET, ER 32 18mm  SEALED #032-720CS | 2 |

31

US_Active\115569040\V-2

Case 20-81166-CR-1  Doc 29016-16  Filed 09/30/22  Entered 09/30/22 13:49:54  Desc
Exhibit RJN 4: Order Approving Page 80 of 169  Page 119 of 249

| | | | |
|---|---|---|---|
| ILN | 716720 | COLLET, KENNAMETAL 25ER0188 | 9 |
| ILN | 716721 | ROLL DIE, MARK INSCRIPTION B-7363 | 2 |
| ILN | 716723 | NUT, ER 32 REGOFIX 343220000 | 3 |
| ILN | 716724 | DISK,COLLET SEALING ER32 #3932.00650 | 4 |
| ILN | 716736 | CUTTER, SAW B-2778 336 SEAR | 2 |
| ILN | 716739 | COLLET, ADJ LYNDEX NIKKEN NK 3/4-1/2DPTH | 4 |
| ILN | 716753 | ROLL DIE, MARK INSCRIPTION B-7458 | 3 |
| ILN | 716754 | DRIVER, FACE LH LATHE 88085 MSC08623290 | 12 |
| ILN | 716756 | CENTER, LIVE A-667838I11 .6190 DIA | 3 |
| ILN | 716757 | CENTER, LIVE A-667838I11 .6290 DIA | 2 |
| ILN | 716758 | CENTER, LIVE A-667838I11 .6370 DIA | 2 |
| ILN | 716759 | CENTER, LIVE A-667838I11 .6430 DIA | 1 |
| ILN | 716761 | CENTER, LIVE A-667838I11 .7060 DIA | 2 |
| ILN | 716762 | CENTER, LIVE A-667838I11 .7280 DIA | 1 |
| ILN | 716763 | ENDMILL, BALL NOSE KDMB0312R551A031ST | 6 |
| ILN | 716764 | ENDMILL, BALL NOSE KDMB0750R630A075SN | 1 |
| ILN | 716767 | 06 REAMER, GARR-TL #95543 CARBIDE 0.1780 | 20 |
| ILN | 716768 | 06 DRILL, GARR-TL #89400 11/64 (.1719) | 15 |
| ILN | 716769 | ROLL DIE, MARK INSCRIPTION B-7459 | 3 |
| ILN | 716770 | DOG, TIMING C-63377-A | 6 |
| ILN | 716771 | DOG, TIMING C-63377-B | 16 |
| ILN | 716772 | DOG, TIMING C-63377-C | 24 |
| ILN | 716773 | CENTER, LIVE A-667838I11 .7660 DIA | 1 |
| ILN | 716846 | COLLET, ER25 (.375"ID) 25375 AO-1001 | 2 |
| ILN | 716847 | ROLL DIE, MARK INSCRIPTION B-6887 | 4 |
| ILN | 716848 | DRILL BIT,1/4" BRAD POINT (R) | 17 |
| ILN | 716851 | ROLL DIE, MARK INSCRIPTION B-7009 | 2 |
| ILN | 716852 | ROLL DIE, MARK INSC B-7317 **OBS** | 4 |
| ILN | 716867 | CUTTER, DOVETAIL KENNAMETAL #2461334-A | 57 |
| ILN | 716871 | 06 Tool, Crowning C-3195-17 | 2 |
| ILN | 716872 | CUTTER, HELICAL FORM TOOL A-63588 | 23 |
| ILN | 716873 | ROLL DIE, MARK INSCRIPTION B-7318 | 2 |
| ILN | 716874 | ROLL DIE, MARK INSCRIPTION B-7492 | 1 |
| ILN | 716875 | ROLL DIE, MARK INSCRIPTION B-7526 | 2 |
| ILN | 716876 | 06 ROLL DIE, MARK INSCRIPTION B-7563 | 2 |
| ILN | 716879 | COLLET, ER25 15/64" 025-240-SP | 4 |
| ILN | 716881 | COLLET, ER25 3/16" | 2 |
| ILN | 716882 | COLLET, ER25 5/16" | 5 |
| ILN | 716883 | COLLET, ER25 5/32" | 5 |
| ILN | 716884 | COLLET, ER25 7/32" | 5 |
| ILN | 716885 | COLLET, ER25 9/64" | 6 |
| ILN | 716886 | COLLET, ER25 11/64" | 2 |
| ILN | 716887 | CENTER, TAILSTOCK MARLIN C-62428-G | 7 |

US_Active\115569040\V-2

| | | | |
|---|---|---|---|
| ILN | 716888 | CENTER, TAILSTOCK  MARLIN C-62428-H | 2 |
| ILN | 716889 | CENTER, TAILSTOCK  MARLIN C-62428-J | 2 |
| ILN | 716890 | TAP, BOTTOMING,4 FL  H-2  8-36 MORSE | 24 |
| ILN | 716893 | WASHER, SPHERICAL MSC#82429325 | 28 |
| ILN | 716894 | DRIVER, FACE LH 88084 ROHM  MSC#08623282 | 8 |
| ILN | 716897 | GAGE, HEADSPACE 308 ME "GO" C-63387-A | 13 |
| ILN | 716898 | GAGE, HEADSPACE 308 ME "NO GO" C-63387-B | 13 |
| ILN | 716899 | GAGE, HEADSPACE 338 ME "GO" C-63538-A | 14 |
| ILN | 716900 | GAGE, HEADSPACE 338 ME "NO GO" C-63538-B | 11 |
| ILN | 716901 | HOLDER, TOOL CAT40 5/16" #CV40ZEM031138 | 4 |
| ILN | 716902 | HOLDER, TOOL  CAT40 1/2" #CV40ZE M050175 | 2 |
| ILN | 716903 | 06 HEAD,SPRING TAPPING CAT40 #GM81-110050B | 1 |
| ILN | 716904 | CLAMP, TOOL  #GM68-499540 | 2 |
| ILN | 716905 | 06 COLLET, SPRING TAP ADAPTER #GM81-11800B | 1 |
| ILN | 716906 | BIT,MARLIN 336, BROWNELLS#080-087-011AB | 8 |
| ILN | 716910 | BROACH ASSEMBLY SET D-2069 DET#2,3,4,5,6 | 3 |
| ILN | 716936 | DRILL, GARR #28 CARBIDE EDP#77331 | 12 |
| ILN | 716937 | DRILL, GARR #29 CARBIDE EDP#89321 | 10 |
| ILN | 716938 | STYLUS ASSEMBLY,SCHMIDT DOT PEEN 10076 | 3 |
| ILN | 716939 | PIN ASSEMBLY,SCHMIDT DOT PEEN 010085 | 1 |
| ILN | 716943 | HOLDER, TOOL KENNAMETAL BT40EM1000374 | 1 |
| ILN | 716946 | Endmill, 1/2" 4FL CC Carbide RH   A-8810 | 22 |
| ILN | 716952 | BLOCK, VEE ONE  EACH  E-671-57 A&B | 6 |
| ILN | 716954 | 06 MANDREL,THREADED M/336TGP B4819 OBS | 25 |
| ILN | 716958 | HOLDER, TOOL KENNAMETAL BT40EM050255 | 1 |
| ILN | 716960 | BLADE, KENNAMETAL A4M50R2S12B020025 | 3 |
| ILN | 716961 | INSERT,  KENNAMETAL A4R0200M2SP00GMP | 30 |
| ILN | 716966 | TIP, NYLON PUNCH,BROWNELLS#080-475-001AB | 3 |
| ILN | 716967 | PODS, TOOL CHEVALIER P/N 2601-08083000 | 20 |
| ILN | 717015 | HOLDER,THREADMILL KENN TM25D067L110Z2 | 2 |
| ILN | 717016 | HOLDER,THREADMILL H&C TOOL SR0570H14 | 8 |
| ILN | 717017 | DRILL, CARBIDE KENNAMETAL B976A04500 | 21 |
| ILN | 717018 | INSERT, THREAD KENN TN25N20UN KC610M | 5 |
| ILN | 717033 | HOLDER, TOOL KENNAMETAL BT40BSM2C100177 | 1 |
| ILN | 717041 | SCREW, INSERT KENNAMETAL MS1282 | 20 |
| ILN | 717042 | CHUCK, DRILL, SCULLY-JONES 09149 .125"#0 | 11 |
| ILN | 717043 | DRILL, STEP  5132694 | 6 |
| ILN | 717044 | DRILL, STEP  5128720 | 4 |
| ILN | 717045 | DRILL, STEP  5188721 | 36 |
| ILN | 717046 | DRILL, STEP  5048499 | 28 |
| ILN | 717047 | DRILL, STEP  5127081 | 19 |
| ILN | 717048 | DRILL, STEP  5048498 | 12 |
| ILN | 717050 | INSERT,THREADING B-64217 14I12SP 027/898 | 227 |

33

US_Active\115569040\V-2

Case 2:20-cr-00111-CFR  Doc 2906-16  Filed 09/30/22  Entered 09/30/22 13:49:54  Desc
Exhibit RJN 4: Order Approving Page 62 of 169  Page 121 of 249

| ILN | 717054 | DRILL, 1/8 TITEX #A1166-1/8" | 8 |
| ILN | 717073 | PLUG, HEADING MIN GO 35 REM A-2219-A | 10 |
| ILN | 717074 | PLUG, HEADING INSP MAX 35 REM A-2219-B | 10 |
| ILN | 717076 | REAMER, 5/8"x 2-1/4 FL 9/16 SHANK #22234 | 5 |
| ILN | 717077 | HOLDER, TOOL KENNAMETAL BT40EM075255 | 1 |
| ILN | 717078 | 06 HOLDER, TOOL KENNAMETAL BT40EM125250 | 1 |
| ILN | 717079 | HOLDER, TOOL KENNAMETAL BT40BER16060M | 3 |
| ILN | 717095 | COLLAR, C-41763-D DET. 10-3 | 1 |
| ILN | 717098 | 06 BUSHING, DRILL SF-32-8 .3070 ID | 3 |
| ILN | 717140 | ASSEMBLY, BUTTON COMPLETE 22 C-3666-B | 9 |
| ILN | 717141 | ASSEMBLY, BUTTON COMPLETE 22 C-3666-C | 6 |
| ILN | 717170 | CLAMP, FIXTURE D-62780 DET#5/3 | 4 |
| ILN | 717171 | CLAMP, FIXTURE D-62780 DET#16/3 | 3 |
| ILN | 717172 | CLAMP, FIXTURE D-62780 DET#17/3 | 2 |
| ILN | 717174 | ROLL DIE, MARK INSCRIPTION B-7501 | 3 |
| ILN | 717178 | HONE,RIFLE .357 BROWNELLS #080-608-238AB | 2 |
| ILN | 717179 | HONE,RIFLE .44 BROWNELLS #080-608-244AB | 1 |
| ILN | 717180 | HONE,RIFLE .45 BROWNELLS #080-608-245AB | 1 |
| ILN | 717181 | 06 REAMER, ROUGH CHAMBER 45/70 KENNAMETAL | 17 |
| ILN | 717182 | REAMER, FINISH CHAMBER 45/70 KENNAMETAL | 46 |
| ILN | 717183 | CLAMP, FIXTURE D-62780 DET#9/5 | 2 |
| ILN | 717184 | CLAMP, FIXTURE D-62780 DET#11/5 | 4 |
| ILN | 717185 | CLAMP, FIXTURE D-62780 DET#14/5 | 3 |
| ILN | 717189 | GAGE,HEADSPACE 338 "INSP MAX" C-63538-C | 10 |
| ILN | 717190 | GAGE,HEADSPACE 308 "INSP MAX" C-63387-C | 5 |
| ILN | 717191 | MILL, PROFILE KENNAMETAL #2846250-R01 | 3 |
| ILN | 717192 | INSERT, KENNAMETAL SDEB26152 KCPK30 | 97 |
| ILN | 717206 | ENDMILL, HARVI HPHV312S4050CH KCPM15 | 49 |
| ILN | 717207 | ENDMILL, HARVI HPHV750S4088CH KCPM15 | 20 |
| ILN | 717208 | DRILL,FLAT BOTTOM B707A03175FBG KC7315 | 23 |
| ILN | 717210 | DRILL,STARTER KENNAMETAL 4054506 KC7315 | 14 |
| ILN | 717211 | DRILL,DEEP.257 KENN MM5506332 KCPK20 | 15 |
| ILN | 717213 | FIXTURE,TIGHTENING TF30 TAPER KENNAMETAL | 1 |
| ILN | 717214 | FIXTURE,TIGHTENING TF40 TAPER KENNAMETAL | 1 |
| ILN | 717217 | ENDMILL,BALL KENNAMETAL UEBD0312J2A 5/16 | 8 |
| ILN | 717223 | COLLET, 16C 11/16" (MSC #79786935) | 8 |
| ILN | 717224 | KNOB, RETENTION C40-1500-MORI | 3 |
| ILN | 717225 | ENDMILL,FINISH.3125 ROBBJACK STR-430-10A | 59 |
| ILN | 717226 | ENDMILL,ROUGH .3125 ROBBJACK STR-401-10A | 33 |
| ILN | 717227 | DRILL, CENTER #4 GARR #58060 .3125 DIA | 3 |
| ILN | 717228 | HOLDER,CHAMFER INSERT KENNAMETAL#1023676 | 3 |
| ILN | 717229 | HOLDER, 1.500"CAT KENNAMETAL #1025986 | 3 |
| ILN | 717230 | WRENCH, ALLEN T HANDLE 5/32" #71-360-714 | 7 |

34

US_Active\115569040\V-2

Case 20-81688-CRJ11   Doc 2906-16   Filed 09/30/22   Entered 09/30/22 13:49:54   Desc
Exhibit RJN 4: Order Approving Bid Procedures   Page 122 of 249

| ILN | 717231 | WRENCH, ALLEN T HANDLE 9/64" #71-360-713 | 9 |
|-----|--------|-----------------------------------------|---|
| ILN | 717232 | COLLET, 16C 23/32"  (MSC #79786950) | 2 |
| ILN | 717235 | DRILL, MORSE 1/8 (.125) 135 DEG SPLIT PT | 12 |
| ILN | 717236 | MILL, 2" INDEXABLE  KENNAMETAL #2479510 | 5 |
| ILN | 717237 | CHUCK, CAT40 MILL 1" KENNAMETAL#3100359 | 5 |
| ILN | 717238 | INSERT,KENNAMETAL EP1408EHDKCP30 3033731 | 35 |
| ILN | 717243 | BIT, HEX 7/32"    5570A18 | 3 |
| ILN | 717253 | PIN, STEP DIAMOND D-62780 DET#26/5 | 12 |
| ILN | 717254 | CHUCK, HYD CAT40 6MM KENNAMETAL#1605145 | 4 |
| ILN | 717255 | CHUCK, HYD CAT40 12MM KENNAMETAL#2079279 | 2 |
| ILN | 717256 | SLEEVE,REDUCTION 12MM/7MM KENN #3026644 | 4 |
| ILN | 717257 | SLEEVE,REDUCTION 12MM/8MM  KENN #3026645 | 5 |
| ILN | 717273 | COLLET,ER25 1/4"(.250)KENNAMETAL#1729857 | 4 |
| ILN | 717276 | REAMER,FINISH CHAMBER KENNAMETAL#5496887 | 88 |
| ILN | 717277 | ENDMILL, KENNAMETAL 3/4" #5393782 KCPM15 | 22 |
| ILN | 717278 | SLEEVE,MILLING CHUCK 3/8"  KENN #3101075 | 5 |
| ILN | 717279 | SLEEVE,MILLING CHUCK 1/2"  KENN #3101077 | 6 |
| ILN | 717280 | CHUCK,CAT40 MILL 3/4" KENN, (SEE-717595) | 3 |
| ILN | 717283 | ENDMILL, CARB KENN UCDE1000J5BS, 4048705 | 26 |
| ILN | 717284 | ENDMILL, 1/4" 7 DEG KENNAMETAL #5373126 | 33 |
| ILN | 717285 | ENDMILL, HARVI HPHV188S4031L #4047704 | 42 |
| ILN | 717286 | ENDMILL, HARVI HPHV375S4088 #4047755 | 31 |
| ILN | 717298 | ENDMILL, 5/32 KENN 4BN0156IR056A KC633M | 48 |
| ILN | 717299 | CUTTER,T-SLOTKENN#5390664 KCPM15 B-5496 | 13 |
| ILN | 717300 | REAMER, ROUGH CHAMBER 30-30 KENN#5496886 | 89 |
| ILN | 717301 | REAMER,FINISH CHAMBER 30-30 KENN#5496885 | 103 |
| ILN | 717304 | ENDMILL,KENNAMETAL HEC156S356R10 KC635M | 5 |
| ILN | 717343 | ENDMILL, CARBIDE 7/32 KENNAMETAL#1115695 | 4 |
| ILN | 717344 | ENDMILL, CARB 9/64 2SE0140IR056A KC633M | 4 |
| ILN | 717345 | REAMER, .1270 CARBIDE  GARR #95348 | 93 |
| ILN | 717353 | REAMER, .1075 HSS STR FL 3.5" OAL | 5 |
| ILN | 717363 | ENDMILL, GARR  VRX   A-66201 | 6 |
| ILN | 717385 | ENDMILL, RADIUS KENNAMETAL 5397535 | 85 |
| ILN | 717386 | CUTTER, RADIUS KENNAMETAL 5394269 KCPM15 | 17 |
| ILN | 717390 | DRILL,SC KENNAMETAL 5424172 at .127 dia | 26 |
| ILN | 717394 | ENDMILL, SHORT CUT UEDE0156J3AS KC643M | 55 |
| ILN | 717395 | ENDMILL,SHORT CUT UCDE219J5BS KC643M | 15 |
| ILN | 717404 | MILL, SHELL RODEKA,KENNAMETAL #4178126 | 2 |
| ILN | 717405 | INSERT,KENNAMETAL RNGJ1204M0SGD#4146586 | 158 |
| ILN | 717406 | MILL, 1" INDEXABLE  KENNAMETAL #2479507 | 4 |
| ILN | 717407 | INSERT, KENNAMETAL  EP1416EHD #3033954 | 42 |
| ILN | 717423 | HEAD, DRIVE GUN DRILL B-4087 | 7 |
| ILN | 717424 | DRILL,CARBIDE  KENNAMETAL #5395727 2.2mm | 94 |

35

US_Active\115569040\V-2

Case 20-31166-CRJ11   Doc 2406-16   Filed 09/30/22   Entered 09/30/22 13:49:54   Desc
Exhibit RJN 4: Order App Proving Reader App 4   Page 124 of 169   Page 123 of 249

| | | | |
|---|---|---|---:|
| ILN | 717425 | CUTTER, SLOT KENN KSSS400ASP10N625 | 1 |
| ILN | 717426 | INSERT, KENNAMETAL SPET31251PPEL8GB2 | 20 |
| ILN | 717427 | INSERT, KENNAMETAL SPET31251PPER8GB2 | 200 |
| ILN | 717430 | ZC MILL, 22 DEGREE KENNAMETAL #60035104 | 3 |
| ILN | 717432 | CUTTER,FORM 3".641R KENNAMETAL #60096122 | 19 |
| ILN | 717434 | ENDMILL,BALLNOSE.562 KENN #MM5824551 | 9 |
| ILN | 717435 | ENDMILL,BALLNOSE 1/2 KENNAMETAL#1257709 | 3 |
| ILN | 717436 | CUTTER, RADIUS KENNA 5426990 (B-65000) | 27 |
| ILN | 717437 | CUTTER, RADIUS KENNAMETAL #5426908-R01 | 43 |
| ILN | 717438 | CUTTER RADIUS KENN#5426909-R01 C-65305-A | 21 |
| ILN | 717441 | ROLL, MARKING M/336C LIMITED C-66594 | 1 |
| ILN | 717444 | CUTTER, T KENNAMETAL MM5362660 | 25 |
| ILN | 717445 | CUTTER, T KENNAMETAL MM5363328 A-243 | 8 |
| ILN | 717446 | HOLDER, ENDMILL 1.25"KENNAMETAL#1013426 | 1 |
| ILN | 717447 | DRILL, BUGLE KENNAMETAL #5407725 B-5868 | 30 |
| ILN | 717449 | SLEEVE,HYD TOOL 7/8" CAT40 KENN #3101096 | 4 |
| ILN | 717455 | MILL, SHELL,KENNAMETAL #2267643 | 4 |
| ILN | 717456 | INSERT, KENNAMETAL EP1864EHD #3379064 | 200 |
| ILN | 717460 | CUTTER, FORM .641R KENNAMETAL #5474522 | 14 |
| ILN | 717461 | DRILL, 5.616mm 8XD KENNAMETAL #4149636 | 38 |
| ILN | 717462 | HOLDER,TOOL KENN MM6712630 | 5 |
| ILN | 717463 | ENDMILL,1" W/ C RAD KENNAMETAL 4048662 | 36 |
| ILN | 717467 | DRILL, 3.2 mm KENNAMETAL #4150636 | 50 |
| ILN | 717468 | DRILL, 2.383 mm KENNAMETAL #4149153 | 69 |
| ILN | 717469 | ENDMILL, .257 DIA KENNAMETAL DWG#5427564 | 57 |
| ILN | 717470 | BAR, BORING MICRO KENNAMETAL #1270952 | 2 |
| ILN | 717471 | 06 SCREW, HARDWARE KENNAMETAL #1260087 | 10 |
| ILN | 717472 | INSERT,CDHH120605L KENNAMETAL #1937516 | 52 |
| ILN | 717473 | INSERT CDHB120601 KENNAMETAL #4050607 | 55 |
| ILN | 717474 | CHUCK,CAT40 MILL1.25" KENNAMETAL#3100362 | 5 |
| ILN | 717476 | COLLET, KENNAMETAL 100TG1000 (1014105) | 2 |
| ILN | 717477 | ADAPTER,SLOTTING 1.25"KENNAMETAL#1015362 | 3 |
| ILN | 717483 | ENDMILL,BALLNOSE.156 KENNAMETAL#2890952 | 131 |
| ILN | 717484 | 06 COLLET, 1/4" ID 1-1/4 OD #GLO-8612C-1/4 | 1 |
| ILN | 717487 | CUTTER,T SPECIAL KENNAMETAL DWG#60097282 | 6 |
| ILN | 717493 | COLLET, KENNAMETAL 75HC0562 #1093269 | 8 |
| ILN | 717495 | ENDMILL,ROUGHING .625 KENNAMETAL 4048697 | 11 |
| ILN | 717533 | ENDMILL, SC .258 DIA KENNAMETAL#5413286 | 26 |
| ILN | 717534 | INSERT, KENNAMETAL NG3156RK KC5010 | 20 |
| ILN | 717535 | HOLDER,T.N. KENNAMETAL NSR123B #1097586 | 1 |
| ILN | 717536 | COLLET, KENNAMETAL 16ER0312 #1729819 | 2 |
| ILN | 717537 | CHUCK,COLLET KENNAMETAL CV40BER16250 | 1 |
| ILN | 717538 | COLLET, KENNAMETAL 16ER0156 #1949905 | 2 |

36

US_Active\115569040\V-2

Case 20-81666-CR-11 Doc 2906-16 Filed 09/30/22 Entered 09/30/22 12:49:54 Desc
Exhibit RJN 4: Order Approving Page 85 of 249  Page 124 of 249

| ILN | 717539 | COLLET, KENNAMETAL 16ER0125 #1729816 | 4 |
|-----|--------|--------------------------------------------|----|
| ILN | 717541 | REAMER,FINISH CHAMBER 44MAG KENN#5485621 | 36 |
| ILN | 717543 | REAMER,FINISH CHAMBER 357 KENN#5485618 | 9 |
| ILN | 717545 | CENTER, LIVE 4MT QUAD BEARING #ROP-10664 | 2 |
| ILN | 717546 | CENTER, LIVE 4MT VERSA TURN #ROP-10834 | 2 |
| ILN | 717568 | SLEEVE,HYD CHUCK KENNAMETAL #75HC0188 | 5 |
| ILN | 717569 | 06 SLEEVE,HYD CHUCK KENNAMETAL #75HC040M | 4 |
| ILN | 717572 | SLEEVE,HYD CHUCK KENNAMETAL #75HC060M | 1 |
| ILN | 717580 | MILL, CHAMFER KENNAMETAL #5488471 KCPM15 | 16 |
| ILN | 717588 | SLEEVE, MILLING CHUCK KENN #75SMC0250 | 5 |
| ILN | 717590 | MILL, SHELL,KENN #M1D200E1405S075L157 | 1 |
| ILN | 717593 | TOOL, CHAMFER(NIAGARA) EDP 76601 4FSE90 | 1 |
| ILN | 717599 | HOLDER, TOOL BT30 ER25 #483-425 (2SQ) | 4 |
| ILN | 717600 | PULLSTUD, ROBODRILL PS585 45#07801 (2SQ) | 2 |
| ILN | 717603 | KNOB,RETENTION NV000253607A(GX510 CAT40) | 19 |
| ILN | 717614 | ENDMILL, .200" DIA KENNAMETAL #5488471 | 15 |
| ILN | 717615 | Plug,Breech45/70 Gallery No-Go A-5619-03 | 3 |
| ILN | 717617 | CUTTER, T-SLOT KENNAMETAL#5491502 KCPM15 | 20 |
| ILN | 717618 | ENDMILL,BALLNOSE.125 KENNAMETAL#5824506 | 39 |
| ILN | 717620 | HOLDER,TOOL V-FLANGE KENN #CV40SA125400 | 2 |
| ILN | 717623 | ROLL, MARKING INSCRIPTION B-4641 | 2 |
| ILN | 717624 | ROLL DIE, MARK INSCRIPTION B-6781 | 3 |
| ILN | 717625 | ROLL, MARKING INSCRIPTION B-6995 | 1 |
| ILN | 717626 | ROLL DIE, MARK INSCRIPTION B-7292 | 3 |
| ILN | 717627 | ROLL DIE, MARK INSCRIPTION B-6888 | 1 |
| ILN | 717629 | ROLL DIE, MARK INSCRIPTION B-7096 | 3 |
| ILN | 717630 | 06 ROLL DIE, MARK INSCRIPTION B-7547 OBS | 1 |
| ILN | 717631 | 06 ROLL DIE, MARK INSCRIPTION B-7572 OBS | 2 |
| ILN | 717632 | SANDING SLAVE,M/60 TRIGGER GUARD C-3434 | 7 |
| ILN | 717633 | SANDING SLAVE,M/900 MAG BOX C-3688 | 9 |
| ILN | 717634 | SANDING SLAVE,M/900 TRIGGER GUARD B-5413 | 3 |
| ILN | 717635 | REAMER, STEP KENNAMETAL #5496822 | 18 |
| ILN | 717638 | HOLDER, KENNAMETAL CV40BER32275 #1261619 | 1 |
| ILN | 717639 | 06 DRILL,FLAT BTM B707A09525FBG #3505140 | 50 |
| ILN | 717641 | BIT,HEX SOCKET 7/32" 1/4 SQ DR #54075A48 | 7 |
| ILN | 717643 | HOLDER,TOOL CAT40 -.437-4 PRECISION COMP | 4 |
| ILN | 717644 | ENDMILL,BALLNOSE KENNAMETAL BNEC500S4200 | 115 |
| ILN | 717646 | HOLDER, HYD KENN MM6805779 | 4 |
| ILN | 717647 | COLLET, KENNAMETAL 20HCM0250 #1093567 | 5 |
| ILN | 717665 | SLEEVE, KENNAMETAL 75SMC0625 #3101079 | 4 |
| ILN | 717666 | HOLDER,CV40BTGF050250 KENNAMETAL#2987290 | 4 |
| ILN | 717667 | Router Bit, MAR FE FADAL, A-1138 (R) | 13 |
| ILN | 717668 | ENDMILL,1/2" W/C RAD KENNAMETAL 5491429 | 287 |

37

US_Active\115569040\V-2

Case 2:20-cr-00111-CFR-11   Doc 2906-16   Filed 09/30/22   Entered 09/30/22 13:49:54   Desc
Exhibit RJN 4: Order Approving Page 86 of 249   Page 125 of 249

| | | | |
|---|---|---|---|
| ILN | 717669 | INSERT, KENNAMETAL EP1004EHD  KCPK30 | 45 |
| ILN | 717670 | MILL, KENNAMETAL #M1D100E1003W075L125 | 2 |
| ILN | 717671 | ENDMILL,5/8" W/C RAD  KENNAMETAL 5434381 | 18 |
| ILN | 717673 | HOLDER,Kennametal CV40BHC14M400 #6793965 | 2 |
| ILN | 717679 | SLEEVE,HYD CHUCK KENNAMETAL #12HC0812 | 3 |
| ILN | 717681 | CUTTER, T KENNAMETAL#5147281 KC633M | 4 |
| ILN | 717689 | COLLET, KENNAMETAL 16ERTC8 #1026400 | 2 |
| ILN | 717690 | COLLET, KENNAMETAL 25ERTC12 #1026444 | 5 |
| ILN | 717691 | COLLET, KENNAMETAL 16ER035M #1108458 | 2 |
| ILN | 717692 | EXTENSION, COLLET SANDVIK ER16 (#5HNG9) | 5 |
| ILN | 717696 | COLLET,#8TAP KENNAMETAL 25ERTC8 10126432 | 2 |
| ILN | 717698 | COLLET, STEEL #A3000  1-1/32  25 DEGREE | 2 |
| ILN | 717699 | 06 COLLET, STEEL #A3000  13/16  25 DEGREE | 2 |
| ILN | 717700 | COLLET, STEEL #A3000  15/16  25 DEGREE | 1 |
| ILN | 717707 | ROUGHER, KENN HPRST500S4125 #3331486 | 8 |
| ILN | 717718 | 06 ENDMILL, .200" DIA  KENNAMETAL #5540252 | 2 |
| ILN | 717719 | 25deg non polited countersink #5540253 | 8 |
| ILN | 717720 | 30deg Non polited countersink #5540254 | 25 |
| ILN | 717721 | 38deg. non polited countersink #5540255 | 8 |
| ILN | 717722 | 45deg. non piolited countersink #5540256 | 6 |
| ILN | 717725 | DRILL,SC KENNAMETAL B042A01600CPG(1.6MM) | 20 |
| ILN | 717733 | ENDMILL, KENNAMETAL HPHV KCPM15 #5532805 | 44 |
| ILN | 717734 | ENDMILL, KENNAMETAL HPHV KCPM15 #5532806 | 18 |
| ILN | 717735 | ENDMILL,KENNAMETALHPHVKCPM15#5532807 | 12 |
| ILN | 717737 | DRILL,KENNAMETAL B041A06500CPG KC7325 | 23 |
| ILN | 717749 | ENDMILL, KENNAMETAL SPATZM  #5539613 | 25 |
| ILN | 717750 | 06 WRENCH, ISCAR EDG-33A  MSC #52706660 | 1 |
| ILN | 717752 | COLLET, KENNAMETAL 25ER020M 2mm #1125486 | 3 |
| ILN | 717755 | BUSHING, DRIVE  B-7057 | 18 |
| ILN | 717770 | BUSHING, DRILL PRESS FIT .1556 P-20-8U | 4 |
| ILN | 717772 | PUNCH, RIVET MARLIN A-6712 | 4 |
| ILN | 717783 | ENDMILL,KENNAMETAL HPHV375S4150 #4071892 | 21 |
| ILN | 717796 | ADAPTER,ENDMILL KENNAMETAL CV40EM050262 | 5 |
| ILN | 717805 | DRILL,SC KENNAMETAL4150216 B041A05400CPG | 13 |
| ILN | 717806 | DRILL,SC KENNAMETAL4150202 B041A04500CPG | 10 |
| ILN | 717807 | DRILL,SC KENNAMETAL4150665 B042A04852CPG | 38 |
| ILN | 717808 | DRILL,SC KENN MM4151811 B042A02870CPG | 10 |
| ILN | 717809 | DRILL,SC KENNAMETAL4149632 B053A05410CPG | 20 |
| ILN | 717814 | CUTTER, T KENNAMETAL#5544238 5/8 SPECIAL | 8 |
| ILN | 717819 | ENDMILL,HARVI KENN HPHV625S4213 #4067265 | 14 |
| ILN | 717820 | DRILL,SC KENNAMETAL 5553541 .0738 KC7325 | 71 |
| ILN | 717821 | CUTTER, T KENNAMETAL#5501487 KCPM15 | 48 |
| ILN | 717830 | DRILL, STEP KENNAMETAL #5552190 KC7315 | 51 |

38

| ILN | 717831 | DRILL, STEP KENNAMETAL #5554796 KCPK15 | 70 |
|-----|--------|----------------------------------------|-----|
| ILN | 717839 | ENDMILL, KENNAMETAL SPATZM  #5550308 | 13 |
| ILN | 717863 | COLLET, KENNAMETAL 25ER0625  #1729902 | 2 |
| ILN | 717864 | COLLET, KENNAMETAL 25ER0562  #1950131 | 2 |
| ILN | 717868 | KNOB, RETENTION MORI SEIKI POM40CFMG | 7 |
| ILN | 717875 | ENDMILL, HPHV625S4075 KENNAMETAL 4067236 | 44 |
| ILN | 717876 | SLEEVE, KENNAMETAL 75SMC0563 #3101078 | 6 |
| ILN | 717877 | DRILL,ROUGHKENNAMETAL B256A13500#2229364 | 15 |
| ILN | 717878 | DRILL,ROUGHKENNAMETAL B256A11000#2229365 | 20 |
| ILN | 717880 | DRILL,STEP KENNAMETAL 2003988153#5426091 | 11 |
| ILN | 717881 | HOLDER, KENNAMETAL CV40TG075275 #1025799 | 4 |
| ILN | 717882 | COLLET, (2X)KENNAMETAL 75TG160M #1014629 | 3 |
| ILN | 717883 | DRILL,STEP KENNAMETAL 2003988135#5427334 | 16 |
| ILN | 717884 | HOLDER, KENNAMETAL CV40EM075375 #1025944 | 2 |
| ILN | 717885 | ENDMILL,HPRST625S6125 KENNAMETAL 3331489 | 9 |
| ILN | 717886 | DRILL, KENNAMETAL B225A07938HP#4112642 | 37 |
| ILN | 717887 | HOLDER, KENNAMETAL MM6790855 | 5 |
| ILN | 717888 | ENDMILL, KENNAMETAL 4071919 | 17 |
| ILN | 717889 | DRILL, KENNAMETAL B225A04500HP#4112597 | 76 |
| ILN | 717890 | HOLDER, KENNAMETAL CV40BTG500300#4135683 | 3 |
| ILN | 717891 | COLLET, KENNAMETAL 50TG060M #1105133 | 2 |
| ILN | 717892 | COLLET,TAP KENNAMETAL 50TGST12 #1017016 | 2 |
| ILN | 717893 | DRILL, KENNAMETAL B269A06500HP#4169261 | 17 |
| ILN | 717904 | ENDMILL, ROUGH 1/2" KENNAMETAL #5563673 | 70 |
| ILN | 717905 | ADAPTER, ENDMILL 5/8 KENN CV40ZEM062175 | 3 |
| ILN | 717913 | HOLDER,TOOL KENN CV40SMC075138 #3641492 | 1 |
| ILN | 717914 | SCREW, TORX PLUS KENNAMETAL MS2167 | 10 |
| ILN | 717915 | MILL, BODY RODEKA,KENNAMETAL #4178124 | 2 |
| ILN | 717917 | ENDMILL, HARVI HPHV188S4031 #4047702 | 8 |
| ILN | 717918 | COLLET, KENNAMETAL 75SMC0188 #3101073 | 3 |
| ILN | 717919 | DRILL,SC KENNAMETAL4150184 B041A03500CPG | 14 |
| ILN | 717920 | DRILL,SC KENNAMETAL#4112640 B225A07800HP | 31 |
| ILN | 717921 | HOLDER, KENNAMETAL MM6805775 | 4 |
| ILN | 717922 | DRILL,STEP KENNAMETAL 112768482J3VH | 30 |
| ILN | 717924 | COUNTERBORE, 30-30 KENNAMETAL #5566637 | 3 |
| ILN | 717925 | COUNTERBORE, 308 KENNAMETAL #5565604 | 118 |
| ILN | 717926 | COUNTERBORE, .357 KENNAMETAL #5565021 | 62 |
| ILN | 717927 | COUNTERBORE, .410 KENNAMETAL #5565020 | 59 |
| ILN | 717928 | ZC COUNTERBORE, .44mag    KENNAMETAL #556 | 24 |
| ILN | 717929 | COUNTERBORE, 45-70 KENNAMETAL #5564989 | 7 |
| ILN | 717930 | COUNTERBORE, 35REM KENNAMETAL #5565023 | 54 |
| ILN | 717931 | COUNTERBORE, 39A KENNAMETAL #5565549 | 78 |
| ILN | 717932 | 06 COUNTERBORE, 45LTD KENNAMETAL #5565024 | 56 |

39

US_Active\115569040\V-2

Case 20-81669-CR-11   Doc 2906-16   Filed 09/30/22   Entered 09/30/22 13:40:54   Desc
Exhibit RJN 4: Order Approving Buyer's App   Page 88 of 249   Page 127 of 249

| | | | |
|---|---|---|---|
| ILN | 717933 | COUNTERBORE, .338 KENNAMETAL #5565022 | 68 |
| ILN | 717944 | ENDMILL, .205" DIA  KENNAMETAL #5378393 | 2 |
| ILN | 717949 | PUNCH, RIVETING MARLIN A-8071 | 4 |
| ILN | 717951 | 06 COLLET,3/4"KENNAMETAL75TG07501014030 OBS | 3 |
| | | 06 TOOL,CHAMFER KENN KSEM0625R1SS075F45 | |
| ILN | 717952 | OBS | 4 |
| ILN | 717953 | 06 ENDMILL,KENNAMETALMDRHEC500S4100    OBS | 30 |
| ILN | 717954 | ENDMILL, HPHV500S4100 KENNAMETAL 4071908 | 15 |
| ILN | 717956 | BUSHING,C STYLE TOOL HOLDER #GLO-8613C | 3 |
| ILN | 717957 | ROLL MARK M/1895CB BARREL, B-67960 | 3 |
| ILN | 717964 | COLLET/SLEEVE,#3026451 KENN 12MHC040M | 2 |
| ILN | 717965 | COLLET/SLEEVE,#3101074 KENNAMETAL | 5 |
| ILN | 717966 | ENDMILL, KENNAMETAL #4047693 / KCPM15 | 3 |
| ILN | 717967 | COLLET/SLEEVE,#1013834 KENNAMETAL | 4 |
| ILN | 717968 | 06 ENDMILL, KENN. #4047746 / KCPM15 (5/16) | 64 |
| ILN | 717969 | ENDMILL, KENM. #4067306 / KCPM15 ( 1") | 27 |
| ILN | 717970 | DRILL, .138 KENNAMETAL #2985272 KC7315 | 7 |
| ILN | 717971 | HOLDER, KEN. MM5631955 | 3 |
| ILN | 717972 | TAP, 8-32 KENNAMETAL# 4117167 KP6525 | 16 |
| ILN | 717973 | HOLDER, KENNAMETAL#1901046  CV40BER16500 | 5 |
| ILN | 717974 | T-CUTTER,(LOADING SPRING SLOT 5427250 | 14 |
| ILN | 717975 | ENDMILL, KENAMETAL #4071884  KCPM15 | 12 |
| ILN | 717976 | DRILL,STEP  (TANG) KENAMETAL #5425635 | 47 |
| ILN | 717978 | COLLET, KENAMETAL # 1092708 | 3 |
| ILN | 717979 | ENDMILL, (CART.SLOT)KEN.#4047754 | 36 |
| ILN | 717980 | CUTTER,DOVETAIL KENNAMETAL #5493734 | 9 |
| ILN | 717981 | ENDMILL, KENNAMETAL #5424861(BOLT STOP) | 10 |
| ILN | 717982 | CUTTER-T, .090 KENNAMETAL #5426833 | 19 |
| ILN | 717983 | CUTTER-T, .625 KENNAMETAL # 5424978 | 10 |
| ILN | 717984 | ENDMILL,KENNAMETAL4048717 UCDE 5/16 5 FL | 4 |
| ILN | 717985 | CUTTER-T, DOUB.45 CHAMF.KEN.# 5544422 | 11 |
| ILN | 717986 | ENDMILL,HARVI KENNAMETAL #4047725 KCOM15 | 13 |
| ILN | 717987 | MILL,DOVETAIL KEN.#5543908 (CUSTOM) | 54 |
| ILN | 717989 | 06 INSERT,SCREW-ON,END MILL KEN.#1023679 | 50 |
| ILN | 717990 | 06 DRILL,SC KEN.#4151118 (3XD COOLANT) | 50 |
| ILN | 717992 | DRILL, STEP KEN.#5543744 (CUSTOM) | 38 |
| ILN | 718010 | COLLET, 40ER0875 KENNA.#1950206 | 4 |
| ILN | 718011 | COLLET, CV40BER40300 KENNA.#2249704 | 3 |
| ILN | 718012 | COLLET, 32ER0562 KENNA.#1950155 9/16 | 3 |
| ILN | 718013 | COLLET, 40ER1000 KENNA.#1729940 | 4 |
| ILN | 718014 | COLLET, 40ER0750 KENNAMETAL #1729939 | 4 |
| ILN | 718024 | DRILL,CORE 45 COLT KEN.#5576922 | 31 |
| ILN | 718025 | DRILL,CORE 45-70 KEN.#5576899 | 169 |

40

| | | | |
|---|---|---|---:|
| ILN | 718026 | DRILL,CORE 35 REM KEN.#5576920 | 57 |
| ILN | 718027 | DRILL,CORE 30-30 KEN.#5576921 | 86 |
| ILN | 718028 | DRILL,CORE 357 MAG KEN.#5576925 | 3 |
| ILN | 718029 | DRILL,CORE 308 MAG KEN.#5576923 | 74 |
| ILN | 718030 | DRILL,CORE 444 MARLIN  KEN.#5576928 | 65 |
| ILN | 718031 | DRILL,CORE .338 KEN.#5580728 DWG60192213 | 68 |
| ILN | 718032 | DRILL,CORE .410 CAL  KEN.#5576924 | 73 |
| ILN | 718033 | REAMER,CHAMBER,FINISH .410 KEN.#5576926 | 43 |
| ILN | 718034 | 06 REAMER,CHAMBER,ROUGH .410 KEN.#5576929 | 32 |
| ILN | 718035 | DRILL,B042A07938CPG (.3125) KEN.#4150710 | 11 |
| ILN | 718043 | DRILL, KENN KSEM0634R10SS075#1729875 | 4 |
| ILN | 718044 | BLADE, DRILLKENN KSEM1600PCM#2646081 OBS | 99 |
| ILN | 718045 | BLADE, DRILL KENN KSEM1650HPGM #2499757 | 300 |
| ILN | 718050 | HOLDER, ENDMILL CAT40 KENN-TL#5583911 | 5 |
| ILN | 718051 | SLEEVE, HYD KENNAMETAL #12HC0688#1093530 | 7 |
| ILN | 718058 | ADAPTER,ENDMILL KENNAMETAL CV40EM075575 | 2 |
| ILN | 718059 | HOLDER, KENNAMETAL#2249703  CV40BER25600 | 3 |
| ILN | 718060 | COLLET CLOSER, LEXAIR 16C  #65204 | 1 |
| ILN | 718064 | COLLET, KENNAMETAL 20HCM0375 #1093569 | 3 |
| ILN | 718070 | ROLL DIE, MARK INSCRIPTION   B-5406 | 4 |
| ILN | 718073 | DRILL,CORE 44 MAG KENNAMETAL#5586202 OBS | 25 |
| ILN | 718083 | ROLL DIE, MARK INSCRIPTION   B-6775 | 3 |
| ILN | 718093 | DRILL,SC KENNAMETAL 5590913 .679 KCPK15 | 258 |
| ILN | 718094 | ENDMILL, SC FORM .354 KENNAMETAL#5601573 | 86 |
| ILN | 718102 | MILL, DRILL 45 DEGREE GARR #58267 | 12 |
| ILN | 718104 | WRENCH, ROUND KENNAMETAL TG50 #1273814 | 3 |
| ILN | 718105 | WRENCH, ROUND KENNAMETAL TG75 #119229 | 2 |
| ILN | 718106 | WRENCH, ROUND KENNAMETAL TG100 #1192230 | 2 |
| ILN | 718107 | WRENCH, 30MM A/F KENN TG50 184 #1284014 | 3 |
| ILN | 718108 | WRENCH, OPEN END KENNAMETAL TG75 #102605 | 3 |
| ILN | 718109 | WRENCH, OPEN END KENNAMETAL TG100#102607 | 1 |
| ILN | 718110 | WRENCH, INSERT KENNAMETAL NG6 #1124601 | 2 |
| ILN | 718111 | REAMER, ROUGH CHAMBER 35REM KENN#5487254 | 51 |
| ILN | 718112 | REAMER,FINISH CHAMBER 35REM KENN#5486664 | 25 |
| ILN | 718113 | RING,DRIVE KENNAMETAL KAP2251254#1247663 | 2 |
| ILN | 718115 | SLOTTER, KENNAMETAL KVNS05118OD#1247742 | 2 |
| ILN | 718122 | TAP,13/16-20 W/WELDON KENNAMETAL#5608226 | 49 |
| ILN | 718123 | REAMER, ROUGH CHAMBER 308 KENN#5487368 | 39 |
| ILN | 718124 | REAMER,FINISH CHAMBER 308 KENN#5487370 | 35 |
| ILN | 718125 | REAMER, ROUGH CHAMBER 338 KENN#5487376 | 36 |
| ILN | 718126 | REAMER,FINISH CHAMBER 338 KENN#5487378 | 36 |
| ILN | 718127 | REAMER, ROUGH CHAMBER 444 KENN#5487360 | 29 |
| ILN | 718128 | REAMER,FINISH CHAMBER 444 KENN#5487362 | 13 |

41

US_Active\115569040\V-2

Case 20-81688-CRJ11   Doc 2908-16   Filed 09/30/22   Entered 09/30/22 13:49:54   Desc
Exhibit RJN 4: Order Approving Reorg Plan   Page 90 of 169   Page 129 of 249

| | | | |
|---|---|---|---:|
| ILN | 718130 | REAMER,FINISH CHAMBER 45COLTKENN#5487364 | 7 |
| ILN | 718131 | REAMER, CHAMBER 39A KENNAMETAL#5486668 | 68 |
| ILN | 718132 | REAMER, ROUGH CHAMBER 32H&R KENN#5487372 | 24 |
| ILN | 718133 | REAMER,FINISH CHAMBER 32H&R KENN#5487374 | 18 |
| ILN | 718135 | ENDMILL,KENNAMETAL HPHV500S4063 #4071900 | 11 |
| ILN | 718136 | DRILL,SC KENNAMETAL#4111743 B221A04090HP | 28 |
| ILN | 718140 | MASKING, MARLIN RECEIVER (J.J.SHORT) | 171 |
| ILN | 718141 | TOOL, CUSTOM FORM KENNAMETAL#5533987 | 89 |
| ILN | 718142 | Bushing, Driven, 336 Barrel B-4131-B | 20 |
| ILN | 718146 | CUTTER, T-SLOT KENNAMETAL#5597621 | 25 |
| ILN | 718147 | CUTTER, SADDLE KENNAMETAL#5593509 | 49 |
| ILN | 718150 | CUTTER,T LH SC KENNAMETAL#5506590 KCPM15 | 25 |
| ILN | 718151 | TOOL,FORM SC KENNAMETAL#5474612 KCPM15 | 80 |
| ILN | 718152 | DRILL, STEP KENNAMETAL #5557085 KCPK15 | 9 |
| ILN | 718154 | ENDMILL, 8MM KENNAMETAL #1722853 | 25 |
| ILN | 718155 | CUTTER ,CHAMFER KENNAMETAL #1023610 | 2 |
| ILN | 718156 | INSERT, KENNAMETAL TPMT110204LF #1845219 | 25 |
| ILN | 718157 | TAP,8-32 KENNAMETAL# T820NC#08-32RH3-XL6 | 42 |
| ILN | 718451 | TOOL, CROWNING 30-30 KENNAMETAL#5632923 | 34 |
| ILN | 718452 | TOOL, CROWNING 45-70 KENNAMETAL#5632924 | 34 |
| ILN | 718459 | ASSEMBLY, REPLACEMENT HEAD Q13-050-RP1 | 4 |
| ILN | 718460 | COLLET,TAP ER25 #10 KENNAMETAL#25ERTCT10 | 4 |
| ILN | 718461 | MILL, SHELL,KENNAMETAL#5302956 | 3 |
| ILN | 718462 | INSERT,KENNAMETAL#5172843 RPPT43SGE | 70 |
| ILN | 718493 | TOOL, CROWNING 44MAG KENNAMETAL#5632925 | 34 |
| ILN | 718494 | TOOL, CROWNING .357 KENNAMETAL#5632926 | 35 |
| ILN | 718563 | QSTAP 6-48NS 3FL KENNAMETAL#2004323005 | 101 |
| ILN | 718564 | CUTTER, T KENNAMETAL#5640819 | 25 |
| ILN | 718566 | DRILL,SC KENNAMETAL4150226 B041A06000CPG | 50 |
| ILN | 718573 | INSERT,KENNAMETAL NR3062RKKC5010#4175959 | 10 |
| ILN | 718577 | COLLET, KENNAMETAL 100TGCHP180M | 5 |
| ILN | 718623 | TOOL,FORM SC KENNAMETAL#5583667 KCPM15 | 14 |
| ILN | 718633 | STUD, K20 ZERO POINT 303149 | 11 |
| ILN | 718634 | STUD, K20 TIMING 303156 | 17 |
| ILN | 718635 | SCREW, ZPS K20 ENGAGEMENT 303222 | 6 |
| ILN | 718653 | BUSHING, SLOTTED LOCATOR CL-4-SLLB | 4 |
| ILN | 718654 | BUSHING, LINER CARR-LANE L-28-6 | 4 |
| ILN | 718667 | COLLET, KENNAMETAL 50TG080M 8MM | 2 |
| ILN | 718668 | SLEEVE,HYD CHUCK KENNAMETAL #75HC030M | 2 |
| ILN | 718669 | BODY, DRILL KENNAMETAL KSEM1125R7SS125 | 1 |
| ILN | 718705 | ROLL, MARKING MARLIN 410 B-7149 | 3 |
| ILN | 718706 | ROLL, MARKING MARLIN 410XLR B-7487 | 4 |
| ILN | 718708 | MILL, CHAMFER KENN#1023681 KIPR046SD2660 | 2 |

42

US_Active\115569040\V-2

Case 20-81688-CR1111    Doc 2906-16    Filed 09/30/22    Entered 09/30/22 13:49:54    Desc
Exhibit RJN 4: Order Approving Page 94 of 269  Page 130 of 249

| | | | |
|---|---|---|---|
| ILN | 718709 | INSERT, KENNAMETAL SDEB26151 #2210029 | 25 |
| ILN | 718710 | HOLDER,INSERT KENN#3742558 M1D125E1005W* | 3 |
| ILN | 718716 | DRILL,CORE ST PILOT 32 H&R KEN.#5613470 | 15 |
| ILN | 718718 | MILL,SHELL,KENN 1024994 KSSISR200SD430F3 | 2 |
| ILN | 718719 | INSERT, KENN#2458914 SDET434SNGB2 .063R | 40 |
| ILN | 718720 | SCREW,TORX .2109-28x.283 410165 408723 | 6,141.00 |
| ILN | 718775 | ENDMILL,BALL KENN UEBD0125J3A #4169662 | 2 |
| ILN | 718776 | CENTER,DEAD3MTW/CARBIDE TIP #93534 71034 | 3 |
| ILN | 718815 | PLUG, HEAD SPACEING "NO GO" A-4428-1G | 2 |
| ILN | 718816 | PLUG, HEAD SPACEING "GO" A-4428-2A | 4 |
| ILN | 718817 | PLUG, HEAD SPACEING "NO GO" A-4428-3A | 4 |
| ILN | 718821 | CHUCK, HYD MM6805773 | 4 |
| ILN | 718822 | HOLDER,CV40 .750 DIA FASTENAL SKU3376621 | 3 |
| ILN | 718843 | HOLDER, CAT40 1.25D ERICKSON SKU1261617 | 4 |
| ILN | 718855 | DUMMY ROUNDS, MARLIN 308 (GLENCO) | 2 |
| ILN | 719480 | BUSHING, MARLIN GUNDRILL,39A, C-68696-A | 7 |
| ILN | 719481 | BUSHING, MARLIN GUNDRILL,32-20,C-68696-C | 8 |
| ILN | 719488 | BUSHING, MARLIN GUNDRILL, 444, C-68696-H | 4 |
| ILN | 719489 | BUSHING, MARLIN GUNDRILL, 410, C-68696-F | 4 |
| ILN | 719510 | BARREL BROACH SAFETY, B-6420-3 | 2 |
| ILN | 719559 | BROACH HEAD PULL JAWS | 4 |
| ILN | 719568 | TOOL, CARBIDE, 1/4" DIA. 6077949 | 155 |
| ILN | 719569 | 1894 COWBOY 44 MAG ROLL MARK | 3 |
| ILN | 719584 | 1/2 5F CONCAVE .75RAD W/WELDON | 42 |
| ILN | 719586 | BROACH RIFLE PULL HEAD JAWS D-3004-1 | 8 |
| ILN | 719587 | ENDMILL,.625" .750" LOCZ4 | 200 |
| ILN | 719588 | HARVI EM 5/16 X 5/16 X 1/2 X 2 4047737 | 5 |
| ILN | 719589 | ENDMILL, SC FORM CUTTER | 12 |
| ILN | 719605 | ENDMILL,FORM,5FL | 6 |
| ILN | 719607 | ENDMILL,FORM,5FL,RH | 4 |
| ILN | 719613 | NIAGARA CUSTOM POWER MILL C-2464 | 1 |
| ILN | 719659 | DRILL, B042A03200CPG KC7325, P/N4150636 | 60 |
| ILN | 719670 | TAP, .210-28 2B RHS/RHC, 3FL 6128084 | 94 |
| ILN | 719688 | CENTER, #3MT (10832) 01028356 B-77573 | 2 |
| ILN | 719689 | CENTER, LIVE, #4MT QUAD-BEARING (10664) | 2 |
| ILN | 719690 | DRILL, .1339" SC, B053A03400CPG KC7325 | 58 |
| ILN | 719691 | DRILL, .1614" SC, B053A04100CPG KC7325 | 21 |
| ILN | 719695 | 06 DROP PLUG, 45 COLT, C-69823-C | 3 |
| ILN | 719696 | DROP PLUG, 308 MARLIN EXPRESS, C-69823-L | 2 |
| ILN | 719697 | DROP PLUG, 357 MAG., C-69823-E | 2 |
| ILN | 719698 | DROP PLUG, 45-70 GOVT., C-69823-A | 1 |
| ILN | 719699 | DROP PLUG, 338 MARLIN EXPRESS, C-69823-H | 2 |
| ILN | 719700 | DROP PLUG, 410, C-69823-B | 2 |

43

US_Active\115569040\V-2

Case 20-81166-CR-11   Doc 2906-16   Filed 09/30/22   Entered 09/30/22 13:49:54   Desc
Exhibit RJN 4: Order Approving Page 92 of 169   Page 131 of 249

| | | | |
|---|---|---|---|
| ILN | 719701 | DROP PLUG, 444 MARLIN, C-69823-G | 2 |
| ILN | 719702 | DROP PLUG, 30-30 WIN, C-69823-K | 2 |
| ILN | 719703 | DROP PLUG, 35 REM, C-69823-J | 2 |
| ILN | 719704 | DROP PLUG, 22, C-69823-M | 2 |
| ILN | 719705 | DROP PLUG, 32-20 WIN, C-69823-F | 2 |
| ILN | 719706 | DROP PLUG, 44 MAG, C-69823-D | 2 |
| ILN | 719707 | ROLLMARK, 1895 GSBL, 45-70 GOVT. | 4 |
| ILN | 719708 | CUTTER, CONVEX, SETS OF 2, B-1058-3 | 4 |
| ILN | 719713 | STAMP, B-69857-A | 1 |
| ILN | 719714 | STAMP, B-69857-B | 2 |
| ILN | 719715 | STAMP, B-69857-C | 2 |
| ILN | 719718 | COLLET, REDUCER, .500 TO .375 1606049 | 5 |
| ILN | 719719 | COLLET, REDUCER, .750 TO .500 1093268 | 6 |
| ILN | 719720 | ENDMILL, .500 DIA, CSENDMILL-6182171 | 54 |
| ILN | 719721 | REDUCER, 20MM/16MM, 20MHC160M | 5 |
| ILN | 719723 | DRILL, 2.4MM/.0945.5XD SC 4149154 | 20 |
| ILN | 719724 | COUNTERBORE, PILOTED, .17WSM 6167923 | 3 |
| ILN | 719725 | REAMER, FINISH, .17WSM SC CHMBR 6167356 | 7 |
| ILN | 719727 | REAMER, ROUGH, .17WSM SC CHMBR 6167924 | 7 |
| ILN | 719730 | ENDMILL, 8MMX19MM HARVI, UCDE0800A5ARA | 39 |
| ILN | 719731 | ENDMILL, FORM, 4FL, 60658219,6193227 | 24 |
| ILN | 719734 | STAMP, PROOF, (REP) FOR OCTAGON BBL | 3 |
| ILN | 719740 | REAMER, BORE, MARLIN 357, C-69842-E | 20 |
| ILN | 719741 | REAMER, BORE, MARLIN 410, C-69842-J | 14 |
| ILN | 719742 | REAMER, BORE, MARLIN 45 COLT, C-69842-N | 6 |
| ILN | 719743 | REAMER, BORE, MARLIN 35 CAL, C-69842-F | 6 |
| ILN | 719744 | REAMER, BORE, MARLIN 444, C-69842-M | 9 |
| ILN | 719745 | REAMER, BORE, MARLIN 45-70, C-69842-P | 48 |
| ILN | 719746 | REAMER, BORE, MARLIN 30-30SS, C-69842-Q | 2 |
| ILN | 719747 | REAMER, BORE, MARLIN 22, C-69842-A | 15 |
| ILN | 719748 | REAMER, BORE, MARLIN 338, C-69842-D | 15 |
| ILN | 719749 | REAMER, BORE, MARLIN 308 WIN, C-69842-R | 11 |
| ILN | 719750 | REAMER, BORE, MARLIN 32 MAG, C-69842-C | 16 |
| ILN | 719756 | LOCATOR, SQUARE THREAD BLADE, 28787TC-01 | 1 |
| ILN | 719757 | ENDMILL, 11.5MM DIA X .500 SHANK | 27 |
| ILN | 719758 | COLLET, REDUCER, 1.25 TO .875 12HC0875 | 4 |
| ILN | 719759 | ENDMILL, .500, CSENDMILL-6201028 KCPM15 | 46 |
| ILN | 719765 | 308MX BUT-END LOCATOR BLADE | 2 |
| ILN | 719766 | WORK SUPPORT, VEKTEK 10-0715-06 | 3 |
| ILN | 719767 | DRILL, 4.062MM SC, KC7325 6220343 | 10 |
| ILN | 719803 | GAUGE PLUG,1894-45 COLT,  NO-GO HEADING | 8 |
| ILN | 719804 | GAUGE PLUG,1894-45 COLT, GO HEADING | 7 |
| ILN | 719808 | SLEEVE, REDUCER, .75 TO .25 | 2 |

44

| ILN | 719809 | TAP, #8-40 UNS-2B RH 3FL, SEMI BOTTOMING | 80 |
| ILN | 719833 | ENDMILL, 8MM 4FL HARVI P/N4046269 | 11 |
| ILN | 719834 | ENDMILL, .500, SCENDMILL-6234830 | 28 |
| ILN | 719835 | CHUCK, HYDRAULIC, CV40 HC INCH, 1605101 | 4 |
| ILN | 719900 | SHAVE TOOL, C-70052 | 43 |
| ILN | 719923 | HARVI ENDMILL, .375X.375X.5X.2 4047752 | 42 |
| ILN | 719924 | HARVI ENDMILL, .219" DIA. 6282697 | 3 |
| ILN | 719926 | TAP, 8-32, KENNAMETAL | 36 |
| ILN | 719933 | ENDMILL, 5F FORM, 1X1/4X1.144X4.1/2 | 2 |
| ILN | 719935 | REDUCER COLLET, 1-1/4 TO 1/2, 12HC0500 | 1 |
| ILN | 719936 | REDUCER COLLET, 1/14 TO 5/8, 12HC0625 | 1 |
| ILN | 719938 | PIN RETRACT BAR | 2 |
| ILN | 719939 | RETRACT BALL | 2 |
| ILN | 719946 | TOOL HOLDER, KENNAMETAL TOP NOTCH | 2 |
| ILN | 719966 | FORM TAP, #6-48, 2B HSS RH UNCTD 6MM SHK | 95 |
| ILN | 719968 | ROLLMARK, 45 COLT, OCTAGON BBL | 2 |
| ILN | 719969 | ROLLMARK, 357 MAG, OCTAGON BBL | 1 |
| ILN | 719970 | ROLLMARK, 44 REM MAG, OCTAGON BBL | 1 |
| ILN | 719973 | ROLLMARK, 45 COLT, ROUND BBL | 1 |
| ILN | 719974 | DRILL, 3.6MM SC, B053A03600CPG | 35 |
| ILN | 719988 | SADDLE GRIPPER, .44 MAG | 5 |
| ILN | 719989 | SADDLE GRIPPER, .357 | 4 |
| ILN | 719991 | ENDMILL, 3/16", GARR SERIES 246 MA 51117 | 20 |
| ILN | 719992 | ENDMILL, 1", 5F, SC FORM, .656 R 6308377 | 106 |
| ILN | 719995 | ENDMILL, 16MM, CSENDMILL-6326909 KCPM15 | 4 |
| ILN | 719996 | ENDMILL, 16MM, CSENDMILL-6326910 KCPM15 | 25 |
| ILN | 719997 | OP10 PISTOL GRIP FINGER LEVER FIXTURE | 4 |
| ILN | 719998 | DRILL, .2126, WITH BACK CHAMFER, KC7315 | 16 |
| ILN | 720000 | FIXTURE, MAG TUBE ASSY. GUIDE | 28 |
| ILN | 720001 | FIXTURE, OP10, 1895 FINGER LEVER | 4 |
| ILN | 720005 | REAMER SHANK, MARLIN 45-70, C-54532-K | 14 |
| ILN | 720008 | ENDMILL, HARVI, 16MMX32MM 4046393 | 1 |
| ILN | 720011 | T-SLOT CUTTER, .360 | 1 |
| ILN | 720012 | REAMER, BUTTON BORE, CARBON, MARLIN 336 | 33 |
| ILN | 720023 | REAMER, BUTTON BORE, STAINLESS, 336 MARL | 28 |
| ILN | 720024 | REAMER, SHANK, 35 REM, 357 MAG, MAR.336 | 20 |
| ILN | 720025 | REAMER SHANK, MARLIN 22 CAL C-54532-G | 20 |
| ILN | 720027 | REAMER, SHANK, 30-30, 338, MARLIN 336 | 40 |
| ILN | 720028 | DRILL, .254 SC KU, 6.452MM KC7325 | 30 |
| ILN | 720053 | DRILL GUIDE, MARLIN 45LC, B-3527-9 | 8 |
| ILN | 720054 | ENDMILL, 3/4", 4FL GP BN, 5824554 | 2 |
| ILN | 720063 | BUTTON, MARLIN 30-30, PLCC7870 | 6 |
| ILN | 720064 | BUTTON, MARLIN 30-30, PLCC7868 | 9 |

45

| ILN | 720065 | BUTTON, MARLIN 30-30, PLCC7869 | 13 |
|-----|--------|--------------------------------|----|
| ILN | 720068 | ENDMILL, 3/4" 4FL GP BN, P/N: 5824554 | 40 |
| ILN | 720077 | ENDMILL, KENNAMETAL 5824403 | 28 |
| ILN | 720078 | ENDMILL, KENNAMETAL 6086340 | 12 |
| ILN | 720098 | GODRILL, .213 (5.41MM) B041A05410CPG | 8 |
| ILN | 720105 | TAP, .157-40 | 129 |
| ILN | 720106 | ENDMILL, 1/2", 4FLT BALL 5824535 | 3 |
| ILN | 720123 | ROLLMARK, 336 TDL, B-71566 | 2 |
| ILN | 720131 | ROLLMARK, 1894 SBL - 44 REM MAG, B-71556 | 5 |
| ILN | 720149 | DRILL, SPECIAL STEP, MARLIN A-70303 | 23 |
| ILN | 720178 | HOLDER, BIT, KENNAMETAL | 1 |
| ILN | 720283 | REAMER, C-69842-B MARLIN 30-30 CARBON BO | 3 |
| ILN | 720371 | BURR, 10mm CYLINDER RUBBER ROTARY TOOL | 10 |
| ILN | 720473 | BURR, 10mm BULLET RUBBER ROTARY TOOL | 15 |
| ILN | 720490 | Jaw Bottom, Carrier 1894 fixture det. 23 | 1 |
| ILN | 720491 | Locator Pin, Carrier fixture, det 26 | 1 |
| ILN | 720492 | Locator, Carrier fixture, det 24 | 1 |
| ILN | 722937 | CLAMP ARM, D-70904-20 | 1 |
| ILN | 723128 | CLAMP ARM, C-68501-38, OP 50 | 1 |
| ILN | 723129 | CLAMP ARM, C-68501-26, OP 50 | 1 |
| ILN | 723131 | Belt, Abrasive 6 x 186, 400 grit | 130 |
| ILN | 723133 | Jaw Top, Carrier 1894 fixture det. 22 | 1 |
| ILN | 723134 | Gripper, opposing end, carrier444 det 29 | 1 |
| ILN | 723135 | Gripper, opposing sadd carrier357 det 33 | 2 |
| ILN | 723148 | CLAMP ARM, D-70904-19 | 1 |
| ILN | 723149 | CLAMP, ROEMHELD COMPACT 1802-101 | 1 |
| ILN | 723150 | LOCATOR, D-70904-16  OP60 | 1 |
| ILN | 723208 | DRILL, STEP, .215, GUHRING 7/32 B-77500 | 24 |
| ILN | 723213 | Belt, Abrasive 6 x 186, 220 grit 276804 | 100 |
| ILN | 723217 | JAW, TOP, 4.875, CARRIER FIXTURE DET 16 | 1 |
| ILN | 723218 | JAW, BOTTOM, 4.875, CARRIER FIXTU DET 17 | 1 |
| ILN | 723219 | JAW, TOP, 444, CARRIER FIXTURE DET 18 | 1 |
| ILN | 723220 | JAW, BOTTOM, 444, CARRIER FIXTURE DET 19 | 1 |
| ILN | 723221 | JAW, TOP, .357, CARRIER FIXTURE DET 20 | 1 |
| ILN | 723222 | JAW, BOTTOM, .357, CARRIER FIXTU DET 21 | 1 |
| ILN | 723323 | PLUG, HOLDING SPIN POLISH, C-55644-T | 2 |
| ILN | 723326 | Reamer, Finish Chamber, 44 Rem Mag | 27 |
| ILN | 723435 | REAMER,.079/.0792 CARBIDE, 3MM SHANK 3/4 | 5 |
| ILN | 723459 | TORQUE SCREW DRIVER, 20 TO 100 IN. OZ. | 2 |
| ILN | 723483 | Torque Screw Driver - 3 to 15 in-lb | 3 |
| ILN | 723514 | ENDMILL, BALL .500d x 300 x 3/16, RE SHK | 5 |
| ILN | 723523 | CHUCK, HYDRAULIC EXPANSION 12 BTB | 1 |
| ILN | 723524 | CHUCK, HYDRAULIC 1/2 BT40 | 1 |

46

Case 2:20-cr-00111-CR Doc 2906-16 Filed 09/30/22 Entered 09/30/22 11:49:54 Desc
Exhibit RJN 4: Order Approving Page 95 of 169  Page 134 of 249

| ILN | 723526 | CLAMP, LH VEKTEK 15-0605-00-L DA SWING | 1 |
| ILN | 723546 | ENDMILL 5/16 .015CR GORILLA MILL | 51 |
| ILN | 723547 | ENDMILL 5/8" .030CR GORILLA MILL | 41 |
| ILN | 723563 | CLAMP, ROEMHELD COMPACT 1803-101 | 1 |
| ILN | 723564 | EFFECTOR, 1894 BREECH BOLT D-67172-19 | 8 |
| ILN | 723565 | EFFECTOR, 1894 BREECH BOLT D-67172-09 | 8 |
| ILN | 723566 | CLAMP, D-68493-26  No Inspection | 2 |
| ILN | 723567 | ENDMILL, 5/16" DIA. 4 FLUTE .015 RADIUS | 78 |
| ILN | 723583 | Removable Drill Bushing #SF328.2130 #3 | 4 |
| ILN | 723590 | TOOLHOLDER, BT30HCT20100M, BT30 | 2 |
| ILN | 723591 | SLEEVE, 20HCM0312 20MM-5/16 | 2 |
| ILN | 723603 | 14MM, DRILL SC 5XD KC7325 KENNA 4150787 | 59 |
| ILN | 723606 | TAP, 8-40 UNS H2 2FLT PLUG (REGAL) | 24 |
| ILN | 723624 | TAP, 6-48 FORM 2B 4L HSS 6MM SHK TIN | 31 |
| ILN | 723683 | DRILL, 2.235MM/.088 6637326 STEP | 34 |
| ILN | 723684 | ENDMILL 1" 6FLT MKTGBA NYS TOOL | 23 |
| ILN | 723685 | SLEEVE, HYRAULIC 1.25-18MM 12HC180M | 4 |
| ILN | 723686 | REAMER, BORE, MARLIN 45-70 SS, C-69842-U | 10 |
| ILN | 723703 | COUNTERBORE, .444 KENNAMETAL 6710224 | 7 |
| ILN | 723723 | FIXTURE, D-73754 LEVER HOLDING | 2 |
| ILN | 723724 | PUNCH, BRASS DRIFT 1/4" | 12 |
| ILN | 723763 | CUTTER, 45 DEGREE CROWN | 1 |
| ILN | 723764 | T-HANDLE, FOR CROWN CUTTER | 1 |
| ILN | 723783 | ENDMILL, KENNA, 1/8" UEDEO125J3AS | 24 |
| ILN | 723784 | CLAMP, ARM C-69965-23, REV B, P16-023 | 1 |
| ILN | 723798 | Harvi 1 TE H1TE4RA0500X200HAR030 | 11 |
| ILN | 723813 | PULL HEAD JAWS FOR BROACH, D-3004-4 | 4 |
| ILN | 723823 | COUNTERBORE, PILOTED 0.4478 BREACH CHAMF | 5 |
| ILN | 723824 | LOCATING PIN, C-69965-18 P16-023 | 3 |
| ILN | 723825 | LOCATOR, C-69965-16 P16-023 336 | 1 |
| ILN | 723833 | CLAMP, ARM BASE C-69964-44 REV B P16-023 | 2 |
| ILN | 723834 | CLAMP, ARM C-69964-46 P16-023 | 2 |
| ILN | 723835 | 68493-46 CL-1 SRB MODIFICATION | 4 |
| ILN | 723923 | ENDMILL, H1TE4RA0250L075HAR015 6676370 K | 1 |
| ILN | 723933 | ROLL MARK, B-71859 MOD 1894CST CAL .357 | 2 |
| ILN | 723953 | TAP, KENNAMETAL MM 6746304 SPCL HSS-E-PM | 11 |
| ILN | 723954 | REAMER, KENNAMETAL MM6746131 .410 CHOKE | 8 |
| ILN | 724041 | Step Drill, A-77557 | 16 |
| ILN | A717044 | REGRIND, DRILL, STEP, B-64144 | 2 |
| ILN | A717046 | REGRIND, DRILL, STEP, B-64203 5048499 | 30 |
| ILN | A717277 | REGRIND, EMILL, 3/4" KENNA 5373782 | 22 |
| ILN | A717463 | 717463 (REGRIND) ENDMILL 4048662 | 15 |
| ILN | A717976 | 717976 ( REGRIND ) MARLIN 5425635 KC7425 | 3 |

47

US_Active\115569040\V-2

Case 20-81666-CR-1 Doc 29-16 Filed 09/30/22 Entered 09/30/22 13:49:54 Desc
Exhibit RJN 4: Order App Moving Reorgs 96 of 169  Page 135 of 249

| | | | |
|---|---|---|---|
| ILN | A719339 | REGRIND, FORM, CARB, .235 RAD, 5554793 | 5 |
| ILN | A719587 | 719587 (REGRIND ) ENDMILL,.625" 6087490 | 3 |
| ILN | A719996 | 719996 (REGRIND) ENDMILL | 25 |
| ILN | A720054 | 720054 ( REGRIND ) ENDMILL, 3/4", 4FL GP | 14 |
| ILN | A720078 | 720078 (REGRIND) ENDMILL 6086340 | 17 |
| ILN | A720243 | 720243 (REGRIND) DRILL  B966A11500 | 5 |
| ILN | A723684 | 723684 (REGRIND)ENDMILL 1" 6FLT MKTGBA | 3 |

US_Active\115569040\V-2

**Schedule 1.1(c)**
**Leased FF&E**

None.

## Schedule 1.1(e)
## Assigned Business Contracts

None.

US_Active\115569040\V-2

## Schedule 1.1(h)
## Inventory


## Marlin Products Inventory

| Product Family | Plant | Part | Desc | QTY* |
|---|---|---|---|---|
| Marlin | ARM | F406229 | TUBE, MAGAZINE  CARBON | 32 |
| Marlin | ARM | F406266 | PIN, FIRING BLANK | 10 |
| Marlin | ARM | F406272 | FOREARM TIP NO STUD 39A | 39 |
| Marlin | ARM | F406439 | SPRING, EXTRACTOR, 1894 | 51 |
| Marlin | ARM | F406445 | BULLSEYE | 464 |
| Marlin | ARM | F406467 | BUTTPLATE | 81 |
| Marlin | ARM | F406471 | CAP, PISTOL GRIP | 72 |
| Marlin | ARM | F406484 | PIN, TGP LATCH (SS) | 38 |
| Marlin | ARM | F406487 | SIGHT, DOVETAIL FIBER OPTIC | 100 |
| Marlin | ARM | F406488 | PIN, CARRIER ROCKER | 176 |
| Marlin | ARM | F406489 | SPRING, CARRIER ROCKER | 5,810 |
| Marlin | ARM | F406490 | PIN, TRIGGER | 44 |
| Marlin | ARM | F406491 | PIN, TGP LATCH | 422 |
| Marlin | ARM | F406492 | EXTRACTOR, BLANK | 100 |
| Marlin | ARM | F406493 | BALL, SAFETY | 243 |
| Marlin | ARM | F406494 | PIN, REAR FIRING | 116 |
| Marlin | ARM | F406498 | SPRING, EJECTOR | 114 |
| Marlin | ARM | F406499 | SPRING, FIRING PIN | 150 |
| Marlin | ARM | F406500 | SPRING, MAG TUBE FOLLOWER | 165 |
| Marlin | ARM | F406501 | PIN, HAMMER STRUT | 226 |
| Marlin | ARM | F406504 | FOLLOWER, MAGAZINE TUBE | 97 |
| Marlin | ARM | F406507 | FOLLOWER, MAG TUBE | 18 |
| Marlin | ARM | F406508 | FOLLOWER, MAGAZINE TUBE | 47 |
| Marlin | ARM | F406509 | SPRING, MAGAZINE TUBE FOLLOWER | 123 |
| Marlin | ARM | F406510 | SPRING, TRIGGER SAFETY | 113 |
| Marlin | ARM | F406511 | SPRING, FINGER LEVER PLUNGER | 138 |
| Marlin | ARM | F406512 | SPRING, MAGAZINE TUBE | 21 |
| Marlin | ARM | F406513 | SCREW, SAFETY | 37 |
| Marlin | ARM | F406514 | SPACER, WASHER | 296 |
| Marlin | ARM | F406515 | SPRING, SAFETY | 80 |
| Marlin | ARM | F406520 | TRIGGER SPRING 39A/1897 | 1,349 |
| Marlin | ARM | F406522 | TRIGGER PIN 39A/1897 | 379 |
| Marlin | ARM | F406526 | SAFETY PIN 39A/1897 | 150 |
| Marlin | ARM | F406529 | SIGHT, REAR (WILLIAMS) | 45 |
| Marlin | ARM | F406531 | SWIVEL, STUD ASSEMBLY | 32 |
| Marlin | ARM | F406533 | PAD, RIFLE | 27 |
| Marlin | ARM | F406534 | SIGHT, REAR 1894 COMP | 375 |

| Marlin | ARM | F406535 | SIGHT, FRONT | 40 |
|--------|-----|---------|--------------|-----|
| Marlin | ARM | F406536 | SIGHT, REAR AND ELEVATOR, HIGH | 48 |
| Marlin | ARM | F406537 | SPRING, MAG TUBE FOLLOWER | 4,537 |
| Marlin | ARM | F406538 | PIN, FRONT FIRING | 118 |
| Marlin | ARM | F406539 | FOLLOWER, MAGAZINE TUBE | 96 |
| Marlin | ARM | F406544 | PAD, BROWN RECOIL | 32 |
| Marlin | ARM | F406545 | PAD,BLK RECOIL 17VS,60SS/WT | 1 |
| Marlin | ARM | F406547 | SCREW, HAMMER SPUR | 4,374 |
| Marlin | ARM | F406548 | WRENCH, HEX | 10,019 |
| Marlin | ARM | F406549 | SCREW, PISTOL GRIP CAP | 195 |
| Marlin | ARM | F406550 | SPRING, HAMMER | 139 |
| Marlin | ARM | F406552 | PIN, FIRING PIN RETAINING | 51 |
| Marlin | ARM | F406553 | PIN, TRIGGER SPRING | 78 |
| Marlin | ARM | F406556 | PIN, EXTRACTOR | 89 |
| Marlin | ARM | F406571 | LOOP, #105 5 SECURITY | 25 |
| Marlin | ARM | F406724 | SCOPE, 3-9X32 | 9 |
| Marlin | ARM | F406934 | LEATHER SLING | 581 |
| Marlin | ARM | F406980 | MAG TUBE STUD SCREW PL | 5 |
| Marlin | ARM | F406985 | TGP SUPPORT SCREW PL | 114 |
| Marlin | ARM | F406987 | TGP SCREW PLATED PATCH | 131 |
| Marlin | ARM | F406988 | FRONT BAND SCREW PL | 46 |
| Marlin | ARM | F407003 | FRONT BAND SCREW COMPLETE | 384 |
| Marlin | ARM | F407004 | TGP SUPPORT SCREW | 310 |
| Marlin | ARM | F407007 | TGP SCREW, BLACK OXIDE, PATCH | 233 |
| Marlin | ARM | F407008 | 39A/1897 CARTRIDGE CUTOFF SCREW COMPLETE | 253 |
| Marlin | ARM | F407013 | SCREW TANG COMPLETE | 64 |
| Marlin | ARM | F407015 | 308 MX CARRIER | 55 |
| Marlin | ARM | F407016 | CARRIER COMPLETE | 2 |
| Marlin | ARM | F407019 | 44 CARRIER COMPLETE | 36 |
| Marlin | ARM | F407020 | 357 CARRIER COMPLETE | 55 |
| Marlin | ARM | F407042 | FINGER LEVER SCREW  COMPLETE | 164 |
| Marlin | ARM | F407043 | MAG TUBE STUD SCREW  COMPLETE | 180 |
| Marlin | ARM | F407059 | SCREW, HAMMER (PLATED) COMPLETE | 6 |
| Marlin | ARM | F407277 | TANG SCREW PLATED | 112 |
| Marlin | ARM | F407288 | HAMMER SCREW COMPLETE | 135 |
| Marlin | ARM | F407289 | FINGER LEVER SCREW - PLATED | 36 |
| Marlin | ARM | F407302 | CARRIER SCREW COMPLETE | 353 |
| Marlin | ARM | F407303 | CARRIER SCREW PLATED | 176 |
| Marlin | ARM | F407320 | MARLIN 336, 444, 1894 & 1895 MANUAL | 44 |
| Marlin | ARM | F408342 | BASE, ALUMINUM TOP MOUNT MODEL 336 + | 11 |
| Marlin | ARM | F410411 | SPRING, MARLIN, EXTRACTOR, 1894 | 7 |
| Marlin | ARM | F410460 | FULL-BUCKHORN, LONG BLADE, REAR SIGHTS | 23 |
| Marlin | ARM | F413621 | HOOD, MARLIN FRONT SIGHT | 41 |

US_Active\115569040\V-2

| Marlin | ARM | F415054 | WILLIAMS FRONT SIGHT BASE | 26 |
| Marlin | ARM | F415396 | MARLIN PACK BOX | 67 |
| Marlin | ARM | F416387 | MARLIN REAR BAND SCREW | 61 |
| Marlin | ARM | F416405 | MARLIN REAR BAND SCREW PLATED | 26 |
| Marlin | ARM | F416662 | MARLIN PACK BOX-SCOPE | 8 |
| Marlin | ARM | F416683 | 1895, CARRIER ASSB, MARLIN LEVER | 15 |
| Marlin | ARM | F416685 | 336 CARRIER ASSEMBLY | 6 |
| Marlin | ARM | F416733 | FRONT SIGHT 570H IVORY BEAD | 1 |
| Marlin | ARM | F416752 | SKINNER FRONT SIGHT | 9 |
| Marlin | ARM | F416753 | SKINNER FRONT SIGHT SCREW | 23 |
| Marlin | ARM | F416754 | SKINNER REAR PEEP SIGHT | 16 |
| Marlin | ARM | F416755 | SCREW, FILLISTER HEAD, 8-40x1/4" | 22 |
| Marlin | ARM | F416756 | SCREW, FILLISTER HEAD, 8-40x1/8" | 23 |
| Marlin | ARM | F416818 | SKINNER REAR PEEP SIGHT INSTR & TOOL PCK | 23 |
| Marlin | ARM | F416861 | THREAD PROTECTOR, LVRACT, 1/2-28 | 4 |
| Marlin | ARM | F416925 | APERTURE ASSB, REAR SIGHT, LEVER ACTION | 7 |
| Marlin | ARM | F416928 | SCREW, FILLISTER HEAD 6-48, LEVER ACTION | 15 |
| Marlin | ARM | F417082 | APERTURE ASSB, LVRACT, XS, .191 PEEP | 16 |
| Marlin | ARM | F417083 | APERTURE ASSB SCREW, LVRACT, XS, 8-40 | 17 |
| Marlin | ARM | F417087 | SCREW, LEVER ACTION, LOADING SPRING, BO | 59 |
| Marlin | ARM | F417088 | SCREW, LEVER ACTION, LOADING SPRING, EN | 102 |
| Marlin | ARM | F417090 | SCREW, FOREND TIP TENON, EN | 6 |
| Marlin | ARM | F418076 | FRONT SIGHT, LVRACT, XS-300 | 12 |
| Marlin | ARM | F418209 | 444, CARRIER ASSB, MARLIN LEVER | 7 |
| Marlin | ARM | F418310 | SCREW, TANG, BLACK OXIDE, TORX | 36 |
| Marlin | ARM | F418311 | SCREW, HAMMER, BLACK OXIDE, TORX | 40 |
| Marlin | ARM | F418312 | SCREW, CARRIER, BLACK OXIDE, TORX | 38 |
| Marlin | ARM | F418313 | SCREW, STUD, MAG TUBE, BLACK OXIDE, TORX | 38 |
| Marlin | ARM | F418314 | SCREW, FINGER LEVER, BLACK OXIDE, TORX | 32 |
| Marlin | ARM | F418315 | SCREW, LOADING SPRING, BLACK OXIDE, TORX | 32 |
| Marlin | ARM | F418316 | SCREW, TENON, FOREARM TIP, BLK OX, TORX | 140 |
| Marlin | ARM | F418317 | SCREW, TGP, BLACK OXIDE, TORX | 37 |
| Marlin | ARM | F418318 | SCREW, TGP SUPPORT, BLACK OXIDE, TORX | 38 |
| Marlin | ARM | F418588 | BLACK PARACORD SLING | 3 |
| Marlin | ARM | F419274 | PARACORD SLING, BLACK | 14 |
| Marlin | ARM | F419510 | LOCK, MARLIN | 16 |
| Marlin | ILN | F405376 | BLANK, STOCK CURLY MAPLE | 645 |
| Marlin | ILN | F405383 | BLANK, FOREARM CURLY MAPLE | 814 |
| Marlin | ILN | F405722 | BROWN LAMINATE PANEL 41x10x1.75 | 467 |
| Marlin | ILN | F406009 | FORGING, RECEIVER (SS) | 1,296 |
| Marlin | ILN | F406010 | FORGING, TGP (SS) | 1,669 |
| Marlin | ILN | F406012 | FORGING, FINGER LEVER (SS) | 2,503 |
| Marlin | ILN | F406017 | FORGING, TRIGGER GUARD PLATE | 1,621 |

53

US_Active\115569040\V-2

Case 20-81168-CR-1   Doc 2406-16   Filed 09/30/22   Entered 09/30/22 12:49:54   Desc
Exhibit RJN 4: Order Approving Page 1022 of 1469   Page 141 of 249

| | | | | |
|---|---|---|---|---:|
| Marlin | ILN | F406019 | FORGING, RECEIVER | 5,269 |
| Marlin | ILN | F406022 | BAR, 1 1/32 416SS | 20,194 |
| Marlin | ILN | F406026 | FORGING, FINGER LEVER (SS) TE | 1,304 |
| Marlin | ILN | F406028 | FORGING, FINGER LEVER | 2,735 |
| Marlin | ILN | F406042 | FORGING 336/95 BIG LOOP LEVER | 2,596 |
| Marlin | ILN | F406049 | BLANK, DL FOREARM | 458 |
| Marlin | ILN | F406055 | FORGING, BIG LOOP FINGER LEVER | 679 |
| Marlin | ILN | F406070 | BAR, .937 DIA A1S1 414OR Q&T | 40,069 |
| Marlin | ILN | F406082 | FORGING, FINGER LEVER TEXAS | 2,022 |
| Marlin | ILN | F406091 | BAR, 1 1/32 DIA. 4140 Q&T | 26,658 |
| Marlin | ILN | F406095 | LOADING SPRING, BLANK, 1895, 45-70 | 4,192 |
| Marlin | ILN | F406101 | LOADING SPRING, BLANK | 4,838 |
| Marlin | ILN | F406104 | BAR, .718 DIA  4140 | 25,099 |
| Marlin | ILN | F406111 | BAR, .937 DIA C-1137 | 3,824 |
| Marlin | ILN | F406148 | BAR, 13/16  DIA  AISI 1137 | 6,000 |
| Marlin | ILN | F406156 | T.G.P., MARLIN, FORGING, 1894 | 4,388 |
| Marlin | ILN | F406166 | T.G.P., MARLIN, FORGING, 1894, S.S. | 2,153 |
| Marlin | ILN | F406174 | FORGING, RECEIVER 94 | 3,639 |
| Marlin | ILN | F406176 | FORGING, FINGER LEVER 94 | 5,919 |
| Marlin | ILN | F406185 | BAR, .875 X .875 416SS | 6,210 |
| Marlin | ILN | F406194 | LOADING SPRING, BLANK, 1894 | 3,420 |
| Marlin | ILN | F406196 | BLANK, 1894DL BUTTSTOCK | 156 |
| Marlin | ILN | F406198 | FORGING, RECEIVER 94SS | 3,228 |
| Marlin | ILN | F406200 | BLANK, FOREARM BIRCH | 2,472 |
| Marlin | ILN | F406201 | BLANK, FOREARM WALNUT | 5,598 |
| Marlin | ILN | F406203 | BLANK, BUTTSTOCK WALNUT | 504 |
| Marlin | ILN | F406204 | BLANK, BUTTSTOCK WALNUT CB | 2,438 |
| Marlin | ILN | F406215 | BLANK, FOREARM TIP | 2,009 |
| Marlin | ILN | F406225 | PLUNGER, FINGER LEVER | 3,343 |
| Marlin | ILN | F406227 | BOLT, CAST LOCKING | 5,448 |
| Marlin | ILN | F406229 | TUBE, MAGAZINE  CARBON | 3,567 |
| Marlin | ILN | F406231 | STUD, MAG TUBE BLANK | 4,267 |
| Marlin | ILN | F406234 | EXTRUSION, SEAR | 206 |
| Marlin | ILN | F406242 | LEAF, REAR SIGHT FOLDING | 10,277 |
| Marlin | ILN | F406243 | EJECTOR, MIM, BLUED | 8,786 |
| Marlin | ILN | F406248 | CASTING, 336/94 HAMMER | 6,733 |
| Marlin | ILN | F406250 | SAFETY, PUSH BUTTON | 13,353 |
| Marlin | ILN | F406255 | EJECTOR, MIM, FOR PLATE | 3,364 |
| Marlin | ILN | F406257 | BAND, REAR | 4,667 |
| Marlin | ILN | F406260 | TIP, FOREARM | 1,411 |
| Marlin | ILN | F406269 | BASE, EJECTOR | 163 |
| Marlin | ILN | F406275 | LEAF, REAR SIGHT FOLDING | 1,047 |
| Marlin | ILN | F406291 | LEAF, REAR SIGHT FOLDING | 6,016 |

54

US_Active\115569040\V-2

Case 20-10161-CTR   Doc 290-16   Filed 09/30/22   Entered 09/30/22 13:49:54   Desc
Exhibit RJN 4: Order Approving Rule 363 AP469   Page 142 of 249

| | | | | |
|---|---|---|---|---:|
| Marlin | ILN | F406293 | EXTRACTOR, BLANK | 1,597 |
| Marlin | ILN | F406294 | TUBE, MAGAZINE CUTOFF (VENDOR) | 4,373 |
| Marlin | ILN | F406296 | STUD, MAG TUBE | 1,859 |
| Marlin | ILN | F406304 | TUBE, MAGAZINE | 284 |
| Marlin | ILN | F406308 | INSERT, FRONT SIGHT | 11,700 |
| Marlin | ILN | F406313 | BASE, REAR SIGHT | 4,955 |
| Marlin | ILN | F406315 | EXTRUSION, FOREARM TIP TENON | 1,447 |
| Marlin | ILN | F406320 | SPUR, HAMMER BLANK | 15,954 |
| Marlin | ILN | F406324 | BASE, FRONT RAMP SIGHT | 7,002 |
| Marlin | ILN | F406328 | BASE, FRONT SIGHT | 4,539 |
| Marlin | ILN | F406330 | BASE, FRONT SIGHT | 2,687 |
| Marlin | ILN | F406332 | INSERT, FRONT SIGHT | 308 |
| Marlin | ILN | F406347 | PLUG, MAG TUBE | 2,183 |
| Marlin | ILN | F406360 | PIN, FINGER LEVER PLUNGER | 56,134 |
| Marlin | ILN | F406362 | BLANK, MAZAGINE TUBE PLUG | 3,033 |
| Marlin | ILN | F406364 | BLANK, FRONT BAND | 3,104 |
| Marlin | ILN | F406370 | PLUG, MAGAZINE TUBE | 2,752 |
| Marlin | ILN | F406372 | PLUG, MAG TUBE | 2,627 |
| Marlin | ILN | F406381 | BASE, SWIVEL | 29,811 |
| Marlin | ILN | F406388 | BLOCK, TRIGGER SAFETY | 8,799 |
| Marlin | ILN | F406403 | CUTOFF, CARTRIDGE | 127 |
| Marlin | ILN | F406405 | SCREW, HAMMER | 2,185 |
| Marlin | ILN | F406407 | SCREW, FINGER LEVER | 623 |
| Marlin | ILN | F406411 | TUBE, MAGAZINE OUTSIDE | 59 |
| Marlin | ILN | F406419 | SPRING, CARTRIDGE GUIDE | 88 |
| Marlin | ILN | F406424 | PLUG, MAG TUBE | 2,733 |
| Marlin | ILN | F406428 | BAND, FRONT | 30 |
| Marlin | ILN | F406430 | SCREW, FRONT BAND | 6,231 |
| Marlin | ILN | F406434 | WASHER, ROCKER PLUNGER RET. | 719 |
| Marlin | ILN | F406436 | PLUG, MAGAZINE TUBE | 5,019 |
| Marlin | ILN | F406438 | PLUNGER, CARRIER ROCKER | 5,898 |
| Marlin | ILN | F406441 | HOOD, FRT RAMP SIGHT  512/9/4 | 17,554 |
| Marlin | ILN | F406445 | BULLSEYE | 78,360 |
| Marlin | ILN | F406449 | STRUT, HAMMER SPRING STAMP | 11,780 |
| Marlin | ILN | F406451 | PLATE, HAMMER SPRING ADJUSTIN | 51,113 |
| Marlin | ILN | F406453 | SCREW, FRT RAMP SIGHT | 26,892 |
| Marlin | ILN | F406461 | ELEVATOR, REAR SIGHT | 8,834 |
| Marlin | ILN | F406463 | HOOD, FRONT RAMP SIGHT | 34,969 |
| Marlin | ILN | F406466 | SCREW, TANG | 593 |
| Marlin | ILN | F406467 | BUTTPLATE | 5,986 |
| Marlin | ILN | F406469 | SCREW, SCOPE MT BASE DUM | 62,548 |
| Marlin | ILN | F406470 | SLIDE, REAR SIGHT BASE | 10,502 |
| Marlin | ILN | F406471 | CAP, PISTOL GRIP | 18,835 |

55

| Marlin | ILN | F406475 | SCREW, FRONT SIGHT BASE BLANK | 13,022 |
| Marlin | ILN | F406477 | SCREW, FRONT SIGHT BASE | 18,534 |
| Marlin | ILN | F406482 | INSERT, FRONT SIGHT | 7,189 |
| Marlin | ILN | F406484 | PIN, TGP LATCH (SS) | 21,248 |
| Marlin | ILN | F406486 | SPACER, WASHER | 1,214 |
| Marlin | ILN | F406490 | PIN, TRIGGER | 40,882 |
| Marlin | ILN | F406491 | PIN, TGP LATCH | 107,140 |
| Marlin | ILN | F406492 | EXTRACTOR, BLANK | 12,480 |
| Marlin | ILN | F406493 | BALL, SAFETY | 97,697 |
| Marlin | ILN | F406494 | PIN, REAR FIRING | 7,628 |
| Marlin | ILN | F406498 | SPRING, EJECTOR | 82,187 |
| Marlin | ILN | F406499 | SPRING, FIRING PIN | 43,980 |
| Marlin | ILN | F406500 | SPRING, MAG TUBE FOLLOWER | 5,957 |
| Marlin | ILN | F406501 | PIN, HAMMER STRUT | 20,814 |
| Marlin | ILN | F406504 | FOLLOWER, MAGAZINE TUBE | 5,420 |
| Marlin | ILN | F406506 | PIN, FRONT FIRING (RH) | 10,248 |
| Marlin | ILN | F406507 | FOLLOWER, MAG TUBE | 2,081 |
| Marlin | ILN | F406508 | FOLLOWER, MAGAZINE TUBE | 6,577 |
| Marlin | ILN | F406509 | SPRING, MAGAZINE TUBE FOLLOWER | 5,125 |
| Marlin | ILN | F406510 | SPRING, TRIGGER SAFETY | 27,125 |
| Marlin | ILN | F406511 | SPRING, FINGER LEVER PLUNGER | 44,679 |
| Marlin | ILN | F406512 | SPRING, MAGAZINE TUBE | 9,984 |
| Marlin | ILN | F406513 | SCREW, SAFETY | 12,810 |
| Marlin | ILN | F406514 | SPACER, WASHER | 29,594 |
| Marlin | ILN | F406515 | SPRING, SAFETY | 9,065 |
| Marlin | ILN | F406525 | RIVET, EJECTOR BASE | 56 |
| Marlin | ILN | F406532 | SHIM | 77,830 |
| Marlin | ILN | F406533 | PAD, RIFLE | 2,067 |
| Marlin | ILN | F406535 | SIGHT, FRONT | 1,111 |
| Marlin | ILN | F406536 | SIGHT, REAR AND ELEVATOR, HIGH | 851 |
| Marlin | ILN | F406537 | SPRING, MAG TUBE FOLLOWER | 3,470 |
| Marlin | ILN | F406538 | PIN, FRONT FIRING | 8,288 |
| Marlin | ILN | F406539 | FOLLOWER, MAGAZINE TUBE | 11,372 |
| Marlin | ILN | F406541 | SPRING, CARR RCKR PLUNGER | 1,635 |
| Marlin | ILN | F406544 | PAD, BROWN RECOIL | 2,361 |
| Marlin | ILN | F406545 | PAD,BLK RECOIL 17VS,60SS/WT | 1,819 |
| Marlin | ILN | F406547 | SCREW, HAMMER SPUR | 9,902 |
| Marlin | ILN | F406549 | SCREW, PISTOL GRIP CAP | 45,593 |
| Marlin | ILN | F406550 | SPRING, HAMMER | 18,964 |
| Marlin | ILN | F406552 | PIN, FIRING PIN RETAINING | 156,479 |
| Marlin | ILN | F406553 | PIN, TRIGGER SPRING | 80,773 |
| Marlin | ILN | F406554 | SWIVEL, BASE ASSEMBLY | 272 |
| Marlin | ILN | F406556 | PIN, EXTRACTOR | 16,685 |

56

| | | | | |
|---|---|---|---|---:|
| Marlin | ILN | F406571 | LOOP, #105 5 SECURITY | 62,566 |
| Marlin | ILN | F406573 | HAMMER SPUR ENVELOPE | 33,686 |
| Marlin | ILN | F406575 | MANUAL, 410 OWNERS | 2,584 |
| Marlin | ILN | F406577 | TAG, HANG (MARLIN/USA) | 33,708 |
| Marlin | ILN | F406579 | MARLIN BOX SUPPLIED WITH FOAM | 435 |
| Marlin | ILN | F406673 | HORNADY 444MAG 265GR LEVER REVOLUTION | 1,200 |
| Marlin | ILN | F406687 | AMMO, HORNADY 450 MARLIN PROOF 350GR | 249 |
| Marlin | ILN | F406688 | AMMO, HORNADY 450 MARLIN 350G | 1,260 |
| Marlin | ILN | F406692 | AMMO, F 45 COLT 225GR 45LCA | 780 |
| Marlin | ILN | F406697 | AMMO, W 45 COLT 250GR CB45C | 729 |
| Marlin | ILN | F406701 | AMMO, BLACK HILLS 38SP 158 GR | 5,604 |
| Marlin | ILN | F406705 | AMMO, X41RS5 WIN 410 SUPER SL | 25 |
| Marlin | ILN | F406708 | AMMO, HORNADY 308MX 160 GR | 1,294 |
| Marlin | ILN | F406709 | AMMO,HORNADY 308 MX PROOF | 1,940 |
| Marlin | ILN | F406710 | AMMO HORNADAY 338 MARLIN | 2,665 |
| Marlin | ILN | F406711 | AMMO, 338 MARLIN PROOF | 2,012 |
| Marlin | ILN | F406900 | MARLIN BOX & ENVELOPE LABELS | 60,991 |
| Marlin | ILN | F406955 | TUBE MAGAZINE 1895 CBA NO FINISH | 576 |
| Marlin | ILN | F406975 | TUBE MAGAZINE 1894 SBL NO FINISH | 1,230 |
| Marlin | ILN | F406980 | MAG TUBE STUD SCREW PL | 5,052 |
| Marlin | ILN | F406985 | TGP SUPPORT SCREW PL | 6,954 |
| Marlin | ILN | F406987 | TGP SCREW PLATED PATCH | 11,439 |
| Marlin | ILN | F406988 | FRONT BAND SCREW PL | 1,857 |
| Marlin | ILN | F407003 | FRONT BAND SCREW COMPLETE | 5,531 |
| Marlin | ILN | F407004 | TGP SUPPORT SCREW | 4,366 |
| Marlin | ILN | F407007 | TGP SCREW, BLACK OXIDE, PATCH | 7,558 |
| Marlin | ILN | F407013 | SCREW TANG COMPLETE | 3,837 |
| Marlin | ILN | F407042 | FINGER LEVER SCREW  COMPLETE | 7,434 |
| Marlin | ILN | F407043 | MAG TUBE STUD SCREW  COMPLETE | 9,887 |
| Marlin | ILN | F407059 | SCREW, HAMMER (PLATED) COMPLETE | 8,325 |
| Marlin | ILN | F407235 | BLANK, BUTTSTOCK WALNUT - C GRADE | 248 |
| Marlin | ILN | F407237 | BLANK, FOREARM WALNUT - C GRADE | 554 |
| Marlin | ILN | F407277 | TANG SCREW PLATED | 8,813 |
| Marlin | ILN | F407288 | HAMMER SCREW COMPLETE | 11,282 |
| Marlin | ILN | F407289 | FINGER LEVER SCREW - PLATED | 7,911 |
| Marlin | ILN | F407302 | CARRIER SCREW COMPLETE | 18,458 |
| Marlin | ILN | F407303 | CARRIER SCREW PLATED | 9,110 |
| Marlin | ILN | F407320 | MARLIN 336, 444, 1894 & 1895 MANUAL | 35,826 |
| Marlin | ILN | F407926 | TUBE, MAGAZINE 38 SPECIAL | 921 |
| Marlin | ILN | F407985 | MARLIN MAGAZINE TUBE  336 BL | 1,631 |
| Marlin | ILN | F407986 | MARLIN MAGAZINE TUBE 336 XLR | 608 |
| Marlin | ILN | F408028 | TUBE, 450 MAGAZINE 120 | 3,088 |
| Marlin | ILN | F409949 | SS MAGAZINE TUBE CUT TO LENGTH | 1,994 |

57

US_Active\115569040\V-2

Case 2:20-cr-00111-CFR-JLL   Doc 29058-16   Filed 09/08/22   Entered 09/08/22 13:49:54   Desc
Exhibit RJN 4: Order Approving Page 106 of 469   Page 145 of 249

| | | | | |
|---|---|---|---|---|
| Marlin | ILN | F409961 | BAR STOCK 7/8" X 7/8" 4140 (BREECH BOLT) | 12,181 |
| Marlin | ILN | F409962 | BAR STOCK 1" X 1" 4140 (CARRIER) | 18,849 |
| Marlin | ILN | F410161 | 1894 Big Loop Lever, Forging | 2,966 |
| Marlin | ILN | F410163 | 1894 BIG LOOP LEVER FORGING CRB | 25 |
| Marlin | ILN | F410411 | SPRING, MARLIN, EXTRACTOR, 1894 | 22,209 |
| Marlin | ILN | F414807 | REAR SIGHT SEMI-BUCKHORN, LONG BLADE LOW | 159 |
| Marlin | ILN | F415054 | WILLIAMS FRONT SIGHT BASE | 22 |
| Marlin | ILN | F415395 | MARLIN 5-PACK BOX | 483 |
| Marlin | ILN | F415396 | MARLIN PACK BOX | 591 |
| Marlin | ILN | F415486 | Tube, Magazine 1894 SBL No Finish | 1,854 |
| Marlin | ILN | F416010 | 1894 .357 S/A FOREARM TIP BLANK | 4,977 |
| Marlin | ILN | F416387 | MARLIN REAR BAND SCREW | 8,145 |
| Marlin | ILN | F416405 | MARLIN REAR BAND SCREW PLATED | 1,269 |
| Marlin | ILN | F416662 | MARLIN PACK BOX-SCOPE | 134 |
| Marlin | ILN | F416683 | 1895, CARRIER ASSB, MARLIN LEVER | 4,216 |
| Marlin | ILN | F416685 | 336 CARRIER ASSEMBLY | 4,066 |
| Marlin | ILN | F416733 | FRONT SIGHT 570H IVORY BEAD | 909 |
| Marlin | ILN | F416752 | SKINNER FRONT SIGHT | 404 |
| Marlin | ILN | F416753 | SKINNER FRONT SIGHT SCREW | 970 |
| Marlin | ILN | F416754 | SKINNER REAR PEEP SIGHT | 416 |
| Marlin | ILN | F416755 | SCREW, FILLISTER HEAD, 8-40x1/4" | 1,360 |
| Marlin | ILN | F416756 | SCREW, FILLISTER HEAD, 8-40x1/8" | 2,036 |
| Marlin | ILN | F416818 | SKINNER REAR PEEP SIGHT INSTR & TOOL PCK | 1,703 |
| Marlin | ILN | F416861 | THREAD PROTECTOR, LVRACT, 1/2-28 | 1,285 |
| Marlin | ILN | F416920 | 1895 SCOPE RAIL, LEVER ACTION | 3,500 |
| Marlin | ILN | F416921 | 1895 FRONT SIGHT, LEVER ACTION | 736 |
| Marlin | ILN | F416923 | 1894 SCOPE RAIL, LEVER ACTION | 1,109 |
| Marlin | ILN | F416925 | APERTURE ASSB, REAR SIGHT, LEVER ACTION | 7,350 |
| Marlin | ILN | F416926 | SCREW, FILLISTER HEAD 8-40, LEVER ACTION | 4,289 |
| Marlin | ILN | F416927 | SCREW, FLAT HEAD, 8-40, LEVER ACTION | 8,028 |
| Marlin | ILN | F416928 | SCREW, FILLISTER HEAD 6-48, LEVER ACTION | 7,541 |
| Marlin | ILN | F417082 | APERTURE ASSB, LVRACT, XS, .191 PEEP | 766 |
| Marlin | ILN | F417083 | APERTURE ASSB SCREW, LVRACT, XS, 8-40 | 788 |
| Marlin | ILN | F417087 | SCREW, LEVER ACTION, LOADING SPRING, BO | 10,289 |
| Marlin | ILN | F417088 | SCREW, LEVER ACTION, LOADING SPRING, EN | 6,797 |
| Marlin | ILN | F417089 | SCREW, FOREND TIP TENON, BO | 17,188 |
| Marlin | ILN | F417090 | SCREW, FOREND TIP TENON, EN | 4,365 |
| Marlin | ILN | F417329 | XS SIGHTS LEVER SCOUT SET SCREW | 3,628 |
| Marlin | ILN | F417330 | XS SIGHTS LEVER SCOUT MOUNTING PILLAR | 5,100 |
| Marlin | ILN | F417331 | XS SIGHTS LEVER SCOUT PILLAR NUT | 4,154 |
| Marlin | ILN | F417379 | BIRCH BLANK, 870 HDWD TAC14 STOCK | 445 |
| Marlin | ILN | F417987 | MARLIN 410 S/A CARRIER | 1,108 |
| Marlin | ILN | F418076 | FRONT SIGHT, LVRACT, XS-300 | 541 |

58

US_Active\115569040\V-2

Case 20-81688-CRJ11   Doc 2906-16   Filed 09/30/22   Entered 09/30/22 13:49:54   Desc
Exhibit RJN 4: Order Approving Ruger APA   Page 146 of 249

| | | | | |
|---|---|---|---|---:|
| Marlin | ILN | F418077 | MARLIN 1894 FRONT SIGHT, LEVER ACTION | 4,599 |
| Marlin | ILN | F418209 | 444, CARRIER ASSB, MARLIN LEVER | 1,813 |
| Marlin | ILN | F418310 | SCREW, TANG, BLACK OXIDE, TORX | 12,238 |
| Marlin | ILN | F418311 | SCREW, HAMMER, BLACK OXIDE, TORX | 7,861 |
| Marlin | ILN | F418312 | SCREW, CARRIER, BLACK OXIDE, TORX | 7,708 |
| Marlin | ILN | F418313 | SCREW, STUD, MAG TUBE, BLACK OXIDE, TORX | 7,123 |
| Marlin | ILN | F418314 | SCREW, FINGER LEVER, BLACK OXIDE, TORX | 7,597 |
| Marlin | ILN | F418315 | SCREW, LOADING SPRING, BLACK OXIDE, TORX | 8,215 |
| Marlin | ILN | F418316 | SCREW, TENON, FOREARM TIP, BLK OX, TORX | 14,382 |
| Marlin | ILN | F418317 | SCREW, TGP, BLACK OXIDE, TORX | 7,288 |
| Marlin | ILN | F418318 | SCREW, TGP SUPPORT, BLACK OXIDE, TORX | 8,267 |
| Marlin | ILN | F418649 | 336 SCOPE RAIL, LEVER ACTION | 877 |
| Marlin | ILN | F418737 | BLANK, STOCK CURLY MAPLE, 1894 | 150 |
| Marlin | ILN | F418891 | DOVETAIL SLOT BLANKS, BLUE, SKINNER | 388 |
| Marlin | ILN | F419030 | MARLIN RECOIL PAD, 30-35 SHORE | 1,800 |
| Marlin | ILN | F419129 | 444 MARLIN MAG TUBE BULGE CARBON, 150TH | 359 |
| Marlin | ILN | F419191 | DOVETAIL LADDER SIGHT, SKINNER, 38DRBN | 150 |
| Marlin | ILN | F419192 | MARLIN BOX FOR 150TH W/ SINGLE O/PACK | 486 |
| Marlin | ILN | F419193 | MARLIN GUN SOCK | 640 |
| Marlin | ILN | F419274 | PARACORD SLING, BLACK | 2,782 |
| Marlin | ILN | F419287 | 550 PARACORD ROLL | 407,202 |
| Marlin | ILN | F419478 | SIGHT, FRONT FIBER OPTIC, .343X.312 | 1,087 |
| Marlin | ILN | F419498 | PIN, FRONT FIRING, 410 | 1,255 |
| Marlin | ILN | F419510 | LOCK, MARLIN | 45,950 |
| Marlin | ILN | F419547 | PARACORD ROLL, BLACK/GRAY | 66,138 |
| Marlin | ILN | F419708 | SKINNER EXP REAR PEEP SIGHT, 95/336/444 | 257 |
| Marlin | ILN | F419751 | CHOKE TUBE BAG, MARLIN | 3,460 |
| Marlin | ILN | F419752 | LARGE BAG, WRENCH/TUBES | 1,730 |
| Marlin | OHL | F405423 | MARLIN XT INTERNATIONAL OWNERS MANUAL | 2,741 |
| Marlin | OHL | F406547 | SCREW, HAMMER SPUR | 600 |
| Marlin | OHL | F406548 | WRENCH, HEX | 976 |
| Marlin | ARM | F406000 | MARLIN 336C 30 CAL BBL 20" | 5 |
| Marlin | ARM | F406001 | 444 CAL BBL 22" | 6 |
| Marlin | ARM | F406002 | 1895 BBL CLASSIC 45-70 GOVT 22" | 7 |
| Marlin | ARM | F406004 | 336/A BARREL, 30/30 20" | 8 |
| Marlin | ARM | F406005 | 336 SS BARREL, 30 CAL - 20" | 10 |
| Marlin | ARM | F406006 | HAMMER (PLATED) | 11 |
| Marlin | ARM | F406011 | LEVER, FINGER (36SS) | 11 |
| Marlin | ARM | F406015 | BOLT, BREECH 1895-450/410 -PLATED | 15 |
| Marlin | ARM | F406024 | SCREW, FOREARM TIP TENON (PLT) | 27 |
| Marlin | ARM | F406025 | LEVER, FINGER (95GS), STAINLESS | 16 |
| Marlin | ARM | F406027 | PLUG, MAGAZINE TUBE (PLATED) | 102 |
| Marlin | ARM | F406029 | SCREW, MAG TUBE STUD (PLATED) | 61 |

59

US_Active\115569040\V-2

Case 20-81688-CR-11 Doc 2406-16 Filed 09/30/22 Entered 09/30/22 13:49:54 Desc
Exhibit RJN 4: Order Approving Page 168 of 469 Page 147 of 249

| | | | | |
|---|---|---|---|---:|
| Marlin | ARM | F406030 | 336/1895 STUD, MAG TUBE (PLATED) | 55 |
| Marlin | ARM | F406031 | 1895 GS BBL  45-70 GOVT 18.5" | 4 |
| Marlin | ARM | F406032 | 1895G  BBL 45-70 GOVT 18.5 | 1 |
| Marlin | ARM | F406034 | 1895MR BBL 410 22" | 5 |
| Marlin | ARM | F406036 | MARLIN 336 XLR BBL 35 CAL 24" | 1 |
| Marlin | ARM | F406039 | 1895 SBL BBL  45-70 GOVT 18.5" | 2 |
| Marlin | ARM | F406040 | LEVER, FINGER 1895GBL | 115 |
| Marlin | ARM | F406045 | TUBE, MAGAZINE 1895CB | 34 |
| Marlin | ARM | F406046 | FOREARM, 1894/308MX | 7 |
| Marlin | ARM | F406047 | TIP, FOREARM | 13 |
| Marlin | ARM | F406051 | MARLIN 35 REM BBL 20" | 15 |
| Marlin | ARM | F406053 | LEVER, FINGER 336 | 6 |
| Marlin | ARM | F406054 | LEVER, FINGER 1895SBL (SS) | 63 |
| Marlin | ARM | F406060 | FOREARM, 336W/30AW | 7 |
| Marlin | ARM | F406061 | LOADING SPRING, 1895M, 450, NI PLATE | 40 |
| Marlin | ARM | F406062 | HAMMER BO | 47 |
| Marlin | ARM | F406065 | BREECH BOLT 35 REM FLUTED | 22 |
| Marlin | ARM | F406069 | 444 XLR BBL 444 CAL 24" | 24 |
| Marlin | ARM | F406071 | 308 MXLR BBL 308 MARLIN EXP 24" | 14 |
| Marlin | ARM | F406076 | FOREARM 1895CB/1895CBA/1894CB | 27 |
| Marlin | ARM | F406077 | 308MX BBL 308 Marlin EXP 22" | 7 |
| Marlin | ARM | F406079 | M/336BL BARREL 30 CAL - 18" | 4 |
| Marlin | ARM | F406083 | MAGAZINE TUBE 338 MXLR | 9 |
| Marlin | ARM | F406085 | MAGAZINE TUBE 338MX | 3 |
| Marlin | ARM | F406090 | LOADING SPRING, 1895M, 450M, B.O. | 42 |
| Marlin | ARM | F406094 | LOADING SPRING, 1895, 45-70, B.O. | 25 |
| Marlin | ARM | F406098 | LOADING SPRING, 1895, 45-70, NI PLATE | 29 |
| Marlin | ARM | F406099 | LOADING SPRING, NI PLATE | 16 |
| Marlin | ARM | F406100 | LOADING SPRING, B.O. | 154 |
| Marlin | ARM | F406108 | LEVER, FINGER (95CB) | 8 |
| Marlin | ARM | F406109 | MAG TUBE STUD - BLUE 410/95/94/308/336 | 92 |
| Marlin | ARM | F406110 | LOADING SPRING, 338, B.O. | 80 |
| Marlin | ARM | F406112 | FOREARM 336/336SS | 19 |
| Marlin | ARM | F406113 | FOREARM, 336XLR/308XLR GREYLAM | 11 |
| Marlin | ARM | F406114 | FOREARM, 1895XLR/444XLR GREY LAM | 6 |
| Marlin | ARM | F406116 | BOLT, BREECH 35 CAL -PLATED | 99 |
| Marlin | ARM | F406117 | LOADING SPRING, 338, NI PLATE | 47 |
| Marlin | ARM | F406118 | 1895 XLR BBL 45-70 GOVT 24" | 7 |
| Marlin | ARM | F406119 | BARREL 1895 45/70 GOVT 18.5" BO | 8 |
| Marlin | ARM | F406120 | MAGAZINE TUBE 1895 CBA | 8 |
| Marlin | ARM | F406121 | FOREARM 95, 444 | 11 |
| Marlin | ARM | F406123 | MARLIN 336 XLR BBL 30 CAL 24" | 8 |
| Marlin | ARM | F406124 | BREECH BOLT 45-70 XLR FLUTED | 7 |

60

Case 2:20-cr-00111-CRL   Doc 24066-16   Filed 09/08/22   Entered 09/08/22 12:49:54   Desc
Exhibit RJN 4: Order Approving Rugon AP 469 Page 148 of 249

| | | | | |
|---|---|---|---|---:|
| Marlin | ARM | F406125 | 1895 SDG BBL 45-70 GOVT 16.25" | 15 |
| Marlin | ARM | F406126 | 1895GBL BBL 45-70 GOVT 18.5 | 22 |
| Marlin | ARM | F406131 | BOLT, BREECH 95 -PLATED | 16 |
| Marlin | ARM | F406133 | FOREARM 410 XLR BROWN LAMINATE | 6 |
| Marlin | ARM | F406138 | EJECTOR 39A/1897 | 121 |
| Marlin | ARM | F406151 | 1894C BBL 357 CAL 18.5" | 13 |
| Marlin | ARM | F406152 | 1894C BBL 44 REM MAG 20" | 3 |
| Marlin | ARM | F406153 | BARREL 1894 CB-357 MAG/38 SPL 24" BO | 8 |
| Marlin | ARM | F406154 | 1894 SS BREECH BOLT (44) | 43 |
| Marlin | ARM | F406155 | 1894H BBL 45LC 20" | 5 |
| Marlin | ARM | F406157 | BARREL 1894 44 MAG/44 SPL 20" BO | 17 |
| Marlin | ARM | F406158 | BARREL 1894 CB-357 MAG/38 SPL 20" BO | 4 |
| Marlin | ARM | F406159 | BARREL 1894 45 COLT -20" BO | 1 |
| Marlin | ARM | F406161 | BREECH BOLT 1894-32/20 | 17 |
| Marlin | ARM | F406162 | 1894 SS BBL 44 REM MAG 20" | 11 |
| Marlin | ARM | F406168 | 1894 SS BREECH BOLT(357) | 48 |
| Marlin | ARM | F406172 | 1894 BREECH BOLT BLANK-CARBON | 47 |
| Marlin | ARM | F406175 | LEVER, FINGER (1894) | 28 |
| Marlin | ARM | F406178 | LEVER, FINGER (1894SS) | 2 |
| Marlin | ARM | F406180 | BOLT, BREECH 45 | 3 |
| Marlin | ARM | F406181 | LOADING SPRING,1894,32-20,B.O. | 35 |
| Marlin | ARM | F406182 | 1894 CSS BBL 357 MAG 18.5" | 26 |
| Marlin | ARM | F406184 | 1894 BREECH BOLT (357) | 2 |
| Marlin | ARM | F406189 | 1894 BREECH BOLT 44 | 73 |
| Marlin | ARM | F406193 | LOADING SPRING, 1894, B.O. | 44 |
| Marlin | ARM | F406195 | FOREARM, 1894C-1894CSS 357 | 11 |
| Marlin | ARM | F406199 | LOADING SPRING, 1894, NI PLATE | 168 |
| Marlin | ARM | F406205 | EXTRACTOR, 30-30/35/308, NI PLATE | 24 |
| Marlin | ARM | F406206 | TUBE, MAGAZINE (336SS) | 6 |
| Marlin | ARM | F406209 | TUBE, MAG (1895-450) | 8 |
| Marlin | ARM | F406212 | TUBE, MAGAZINE (GS) 1895 (BULGE) | 10 |
| Marlin | ARM | F406213 | TUBE 444XLR MAGAZINE FINISHED | 1 |
| Marlin | ARM | F406214 | TUBE, MAGAZINE, 336C 30 | 34 |
| Marlin | ARM | F406217 | TUBE, 336XLR-30 MAGAZINE | 109 |
| Marlin | ARM | F406220 | TUBE, MAGAZINE, 308MX | 12 |
| Marlin | ARM | F406222 | SEAR 36/95 | 30 |
| Marlin | ARM | F406223 | ROCKER, CARRIER | 1 |
| Marlin | ARM | F406224 | PLUNGER, FINGER LEVER | 65 |
| Marlin | ARM | F406226 | BOLT, 336 LOCKING (CAST) | 56 |
| Marlin | ARM | F406228 | TUBE, MAGAZINE, 1895SBL (BULGE) | 12 |
| Marlin | ARM | F406232 | TIP, FOREARM | 8 |
| Marlin | ARM | F406240 | TUBE, MAGAZINE, 336BL | 9 |
| Marlin | ARM | F406241 | LEAF, FOLDING 336 | 543 |

61

US_Active\115569040\V-2

Case 20-81688-CRJ11 Doc 2908-16 Filed 09/30/22 Entered 09/30/22 12:49:54 Desc
Exhibit RJN 4: Order Approving Peugeot APA Page 149 of 249

| | | | | |
|---|---|---|---|---:|
| Marlin | ARM | F406244 | EXTRACTOR, 45-70/338, B.O. | 21 |
| Marlin | ARM | F406245 | EXTRACTOR, 410/450, NI PLATE | 95 |
| Marlin | ARM | F406246 | EXTRACTOR, B.O | 58 |
| Marlin | ARM | F406251 | PUSH BUTTON SAFETY ASSB | 15 |
| Marlin | ARM | F406253 | TUBE, MAGAZINE 444 FINISHED (BULGE) | 6 |
| Marlin | ARM | F406254 | EJECTOR, PLATED | 1 |
| Marlin | ARM | F406256 | EXTRACTOR, NI PLATE | 15 |
| Marlin | ARM | F406258 | TUBE, 1895M-XLR MAGAZINE | 18 |
| Marlin | ARM | F406259 | TUBE, MAGAZINE 1895 (BULGE) | 40 |
| Marlin | ARM | F406261 | TUBE, MAGAZINE 95GBL | 8 |
| Marlin | ARM | F406270 | PUSH BUTTON SAFETY 39A/1897 | 17 |
| Marlin | ARM | F406274 | LEAF, REAR FOLDING 39 | 89 |
| Marlin | ARM | F406276 | TRIGGER, GOLD | 43 |
| Marlin | ARM | F406283 | STUD, 357SS MAG TUBE - PLATED | 13 |
| Marlin | ARM | F406284 | TUBE, MAGAZINE 32/20 | 42 |
| Marlin | ARM | F406285 | TUBE, MAG 1894C- FOR PLATE | 18 |
| Marlin | ARM | F406289 | TIP, FOREARM | 12 |
| Marlin | ARM | F406290 | LEAF,REAR SIGHT FOLDING:XT & M60 | 39 |
| Marlin | ARM | F406292 | BOLT, 1894 LOCKING (CAST) | 8 |
| Marlin | ARM | F406295 | 357/444 STUD, MAGAZINE TUBE, BLACK OX | 20 |
| Marlin | ARM | F406297 | SCREW, MAG TUBE PLUG | 139 |
| Marlin | ARM | F406299 | TUBE, MAGAZINE 357C | 14 |
| Marlin | ARM | F406300 | EXTRACTOR, 1894 44 | 45 |
| Marlin | ARM | F406301 | TUBE, MAGAZINE 38 SPECIAL | 6 |
| Marlin | ARM | F406302 | TUBE, MAGAZINE 1894CB-20 | 4 |
| Marlin | ARM | F406303 | EXTRACTOR, 1894 SS 44 PLATED | 112 |
| Marlin | ARM | F406305 | TUBE, MAGAZINE 1894 | 11 |
| Marlin | ARM | F406307 | INSERT, FRONT SIGHT (TALL) | 126 |
| Marlin | ARM | F406311 | BASE FRONT RAMP SIGHT 336 | 45 |
| Marlin | ARM | F406314 | HAMMER SPUR-PLATED | 20 |
| Marlin | ARM | F406317 | FRONT SIGHT BASE (2 SCREW) | 99 |
| Marlin | ARM | F406319 | SPUR, HAMMER BLACK OXIDE | 59 |
| Marlin | ARM | F406321 | FOREARM TIP TENON 39A/1894 | 155 |
| Marlin | ARM | F406322 | SPUR, HAMMER  39 | 384 |
| Marlin | ARM | F406323 | TENON, FOREARM TIP OFFSET | 666 |
| Marlin | ARM | F406325 | TENON, FOREARM TIP | 51 |
| Marlin | ARM | F406326 | TENON FOREARM TIP (OFFSET) | 29 |
| Marlin | ARM | F406327 | BASE, FRONT SIGHT | 93 |
| Marlin | ARM | F406329 | BASE, FRONT SIGHT | 61 |
| Marlin | ARM | F406333 | SCREW, HAMMER -PLATED | 169 |
| Marlin | ARM | F406334 | SCREW, CARRIER -PLATED | 240 |
| Marlin | ARM | F406335 | SCREW, FINGER LEVER -PLATED | 55 |
| Marlin | ARM | F406336 | PLUG, MAG TUBE -PLATED | 10 |

US_Active\115569040\V-2

| | | | | |
|---|---|---|---|---:|
| Marlin | ARM | F406337 | SCREW, TGP SUPPORT -PLATED | 207 |
| Marlin | ARM | F406339 | SCREW, TGP -PLATED | 201 |
| Marlin | ARM | F406340 | BLOCK, TRIGGER SAFETY -PLATED | 341 |
| Marlin | ARM | F406341 | PIN, F.L. PLUNGER -PLATED | 106 |
| Marlin | ARM | F406342 | BAND, FRONT -PLATED | 33 |
| Marlin | ARM | F406343 | SCREW, FRONT BAND -PLATED | 52 |
| Marlin | ARM | F406345 | SCREW, MAG TUBE PLUG -PLATED | 773 |
| Marlin | ARM | F406346 | PLUG, MAG TUBE | 16 |
| Marlin | ARM | F406348 | PLUG, 336XLR MAG TUBE -PLATED | 19 |
| Marlin | ARM | F406351 | HAMMER SCREW | 26 |
| Marlin | ARM | F406352 | EXTRACTOR, B.O. | 132 |
| Marlin | ARM | F406353 | SCREW, CARRIER | 54 |
| Marlin | ARM | F406355 | SCREW, FINGER LEVER | 28 |
| Marlin | ARM | F406357 | SCREW, MAG TUBE STUD | 26 |
| Marlin | ARM | F406359 | PIN, FINGER LEVER PLUNGER | 15 |
| Marlin | ARM | F406361 | PLUG, MAGAZINE TUBE | 38 |
| Marlin | ARM | F406363 | BAND, FRONT, L/A, BO | 93 |
| Marlin | ARM | F406365 | EXTRACTOR, B.O. | 38 |
| Marlin | ARM | F406367 | SCREW, FRONT BAND | 4 |
| Marlin | ARM | F406369 | PLUG, MAGAZINE TUBE | 53 |
| Marlin | ARM | F406371 | PLUG, MAG TUBE | 55 |
| Marlin | ARM | F406374 | SCREW, TGP SUPPORT | 21 |
| Marlin | ARM | F406382 | TRIGGER NICKEL PLATED | 82 |
| Marlin | ARM | F406383 | SCREW, TRIGGER GUARD PLATE | 32 |
| Marlin | ARM | F406386 | TRIGGER GOLD PLATED | 9 |
| Marlin | ARM | F406387 | BLOCK, TRIGGER SAFETY | 34 |
| Marlin | ARM | F406391 | PLUG, 1895M-XLR MAG TUBE -PLATED | 12 |
| Marlin | ARM | F406392 | CARTRIDGE CUTOFF SCREW 39A/1897 | 20 |
| Marlin | ARM | F406394 | EJECTOR BASE SCREW 39A/1897 | 562 |
| Marlin | ARM | F406396 | 39 SCOPE MOUNT BASE SCREW | 2,490 |
| Marlin | ARM | F406398 | EJECTOR PIN 39A/1897 | 286 |
| Marlin | ARM | F406400 | FIRING PIN RETAINING STUD 39A/1897 | 58 |
| Marlin | ARM | F406402 | CARTRIDGE CUTOFF 39A/1897 | 27 |
| Marlin | ARM | F406404 | HAMMER SCREW 39A/1897 | 188 |
| Marlin | ARM | F406406 | FINGER LEVER SCREW 39/1897 | 547 |
| Marlin | ARM | F406408 | FINGER LEVER SPRING SCREW 39A/1897 | 829 |
| Marlin | ARM | F406410 | TUBE, MAGAZINE OUTSIDE | 5 |
| Marlin | ARM | F406412 | REBOUND STRUT | 117 |
| Marlin | ARM | F406414 | CARTRIDGE GUIDE SPRING SCREW | 4 |
| Marlin | ARM | F406416 | THUMB SCREW 39A/1897 | 6 |
| Marlin | ARM | F406418 | CARTRIDGE GUIDE 39A/1897 | 950 |
| Marlin | ARM | F406420 | CARRIER SCREW, 39A/1897 | 86 |
| Marlin | ARM | F406422 | STUD, SWIVEL -PLATED | 149 |

63

| Marlin | ARM | F406423 | PLUG, MAGAZINE TUBE | 13 |
|--------|-----|---------|---------------------|----|
| Marlin | ARM | F406425 | PLUG, MAG TUBE 1894C-SS PLATED | 35 |
| Marlin | ARM | F406426 | BAND, FRONT, .357 EN PLATED | 102 |
| Marlin | ARM | F406427 | BAND, FRONT, L/A, 357, BO | 27 |
| Marlin | ARM | F406429 | SCREW, FRONT BAND | 114 |
| Marlin | ARM | F406431 | SCREW, TANG (ALTERNATE) | 214 |
| Marlin | ARM | F406433 | SCREW FRONT BAND, 1894C-SS | 18 |
| Marlin | ARM | F406435 | PLUG, MAG TUBE | 13 |
| Marlin | ARM | F406440 | HOOD, FRONT SIGHT | 40 |
| Marlin | ARM | F406442 | SCREW, TANG (PLATED) | 26 |
| Marlin | ARM | F406443 | SCREW, SCOPE MT BASE (PLATED) | 126 |
| Marlin | ARM | F406448 | STRUT, HAMMER SPRING | 234 |
| Marlin | ARM | F406450 | PLATE, HAMMER SPRING ADJUSTING | 152 |
| Marlin | ARM | F406452 | SCREW, FRT RAMP SIGHT BASE | 147 |
| Marlin | ARM | F406460 | ELEVATOR, REAR SIGHT | 583 |
| Marlin | ARM | F406462 | HOOD, FRT RAMP SIGHT | 76 |
| Marlin | ARM | F406465 | SCREW, TANG | 223 |
| Marlin | ARM | F406468 | SCREW, SCOPE MT BASE DUMMY | 219 |
| Marlin | ARM | F406472 | SCREW, FRONT SIGHT BASE | 206 |
| Marlin | ARM | F406474 | SCREW, FRONT SIGHT BASE BLUE | 78 |
| Marlin | ARM | F406476 | SCREW, FRONT SIGHT BASE | 170 |
| Marlin | ARM | F406485 | PIN, REAR FIRING (PLATED) | 50 |
| Marlin | ARM | F406497 | FOLLOWER 444 & 444XLR | 24 |
| Marlin | ARM | F406505 | PIN, FRONT FIRING | 118 |
| Marlin | ARM | F406530 | XS SIGHT SYSTEM (LONG RAIL) 1895SBL | 13 |
| Marlin | ARM | F406584 | S/A FOREARM TIP W/SWIVEL 1895GS/STP PL | 17 |
| Marlin | ARM | F406585 | 336SS S/A, REAR BAND W/STUD (PLATED) | 20 |
| Marlin | ARM | F406587 | S/A, SS REC/TGP 95GS | 7 |
| Marlin | ARM | F406591 | S/A, REC/TGP 336 | 8 |
| Marlin | ARM | F406593 | KIT, SCOPE BASE SHIMS | 13 |
| Marlin | ARM | F406597 | S/A, REAR BAND | 15 |
| Marlin | ARM | F406598 | S/A REC/TGP 338MXLR | 2 |
| Marlin | ARM | F406599 | 95,450,444,336 TRIGGER GUARD PLATE | 20 |
| Marlin | ARM | F406601 | S/A, CARRIER 308MX | 3 |
| Marlin | ARM | F406603 | S/A, REC/TGP 308MX | 1 |
| Marlin | ARM | F406604 | S/A, REC/TGP 444 | 4 |
| Marlin | ARM | F406608 | S/A, FOREARM TIP SWIVEL BASE | 22 |
| Marlin | ARM | F406610 | S/A, RR SGHT. BASE W/LOW LEAF 336/1894 | 115 |
| Marlin | ARM | F406611 | S/A, REC/TGP 95 45-70 | 1 |
| Marlin | ARM | F406614 | S/A, REAR BAND SWIVEL STUD | 162 |
| Marlin | ARM | F406615 | S/A, REC/TGP 95CB 45-70 | 2 |
| Marlin | ARM | F406617 | S/A, FOREARM TIP SWIVEL | 12 |
| Marlin | ARM | F406618 | S/A, REC/TGP 1895XLR | 2 |

64

| Marlin | ARM | F406629 | S/A, RR SGHT. BASE W/HIGH LEAF 39/1895 | 99 |
| Marlin | ARM | F406631 | S/A, REC/TANG/BB 39A | 1 |
| Marlin | ARM | F406632 | S/A, MAG TUBE INSIDE | 10 |
| Marlin | ARM | F406634 | 39 CARRIER ASSEMBLY | 1 |
| Marlin | ARM | F406636 | S/A, REC/TGP/BB 94SS-44 | 12 |
| Marlin | ARM | F406644 | S/A, REC/TGP/BB 94CB44 | 3 |
| Marlin | ARM | F406645 | S/A, RR SGHT. BASE W/MED LEAF 982/1895G | 26 |
| Marlin | ARM | F406646 | T.G.P., MARLIN, ASSEMBLY, 1894 | 1 |
| Marlin | ARM | F406647 | S/A, REC/TGP/BB 94CB45 | 7 |
| Marlin | ARM | F406651 | S/A, REC/TGP/BB 94CB357 | 1 |
| Marlin | ARM | F406654 | S/A, REC/TGP/BB 94SS-357 | 10 |
| Marlin | ARM | F406655 | S/A, F.A.TIP SWIVEL BASE -PLATED | 10 |
| Marlin | ARM | F406658 | S/A, SIGHT BASE ONLY (BLUED) | 309 |
| Marlin | ARM | F406659 | S/A, HAMMER SPUR KIT | 136 |
| Marlin | ARM | F406660 | S/A, HAMMER SPUR KIT, PLATED | 26 |
| Marlin | ARM | F406763 | 1894 CSBL 357MAG 16.5" BBL | 6 |
| Marlin | ARM | F406765 | 1894 SBL 44 REM MAG 16.5" BBL | 6 |
| Marlin | ARM | F406771 | 1894 SBL  MAG TUBE | 19 |
| Marlin | ARM | F406773 | XS SIGHT SYSTEM (LONG RAIL) 1894 SBL | 3 |
| Marlin | ARM | F406854 | S/A, STK ASSB 336/1895/308/444 XLR'S | 25 |
| Marlin | ARM | F406855 | S/A  STOCK ASSB 336BL | 6 |
| Marlin | ARM | F406857 | S/A, BUTTSTOCK ASSB 336C,95,444,308,338 | 42 |
| Marlin | ARM | F406858 | S/A, BUTTSTOCK ASSB 1895G | 13 |
| Marlin | ARM | F406860 | S/A, BUTTSTOCK ASSB HARDWOOD, 336W/A | 4 |
| Marlin | ARM | F406861 | S/A  STOCK ASSB 410 XLR | 11 |
| Marlin | ARM | F406865 | S/A, BUTTSTOCK ASSB 1894 | 29 |
| Marlin | ARM | F406891 | TUBE 336Y MAGAZINE | 6 |
| Marlin | ARM | F406892 | FOREARM, 336Y HARDWOOD | 1 |
| Marlin | ARM | F406893 | BARREL, MODEL 336C 30-30 16.25" | 36 |
| Marlin | ARM | F406918 | S/A, REC/TGP/BB  94SBL | 6 |
| Marlin | ARM | F406919 | BUTTSTOCK ASSB HARDWOOD, 336Y | 5 |
| Marlin | ARM | F406923 | TUBE, 1895M-XLR MAGAZI NI-PLATED (BULGE) | 45 |
| Marlin | ARM | F406925 | SAFETY, PUSH BUTTON FINISHED | 15 |
| Marlin | ARM | F406931 | TRIGGER  GOLD PLATE | 420 |
| Marlin | ARM | F406942 | EJECTOR ASSB 336,1894,1895 | 51 |
| Marlin | ARM | F406943 | FINGER LEVER ASSB 336,1895 | 6 |
| Marlin | ARM | F407025 | EJECTOR ASSB PLATED 336,1894,1895 | 40 |
| Marlin | ARM | F407254 | 336Y FOREARM  EXPRESS | 2 |
| Marlin | ARM | F407255 | 336/94 336C SPS  MAG TUBE 19.265" | 16 |
| Marlin | ARM | F407258 | M/336W SPS - 30 Cal Barrel - 20" | 1 |
| Marlin | ARM | F407260 | M/336Y SPS - 30 Cal Barrel - 16.25" | 21 |
| Marlin | ARM | F407261 | LEVER, FINGER SPS 336 | 19 |
| Marlin | ARM | F407262 | SUB ASSM REC TGP 336 SPS | 2 |

US_Active\115569040\V-2

| Marlin | ARM | F407263 | BREECH BOLT 30-30 SPS | 31 |
| Marlin | ARM | F407264 | 36W STOCK EXPRESS | 11 |
| Marlin | ARM | F408216 | FRONT SIGHT INSERT FILED | 1 |
| Marlin | ARM | F408217 | FRONT SIGHT INSERT FILED | 314 |
| Marlin | ARM | F408821 | FOREARM, MARLIN LTD-ED B GRADE | 6 |
| Marlin | ARM | F408850 | BUTTSTOCK, MARLIN LTD-ED, ASSEMBLY | 4 |
| Marlin | ARM | F409859 | MARLIN REAR FIRING PIN BLACK | 4 |
| Marlin | ARM | F410162 | LEVER, FINGER (1894) BIG LOOP SS | 5 |
| Marlin | ARM | F410238 | M1894 - 44 MAG CARRIER ASSB | 99 |
| Marlin | ARM | F410239 | M1894 - 357 MAG CARRIER ASSB | 45 |
| Marlin | ARM | F410512 | BARREL 1895 45/70 GOVT 24" | 9 |
| Marlin | ARM | F410519 | S/A, BUTTSTOCK ASSB 1895 LTD | 10 |
| Marlin | ARM | F410529 | 1895SS BBL 45-70 GOVT 18.5 FNC | 7 |
| Marlin | ARM | F410533 | FOREARM, 1895XLR/444XLR GRN/BLK | 34 |
| Marlin | ARM | F410534 | S/A, STK ASSB 336/1895/308/444 GRN/BLK | 5 |
| Marlin | ARM | F410535 | FOREARM OCT BBL | 6 |
| Marlin | ARM | F410573 | BARREL 1895 ABL 18.5" 45-70 GOV'T | 16 |
| Marlin | ARM | F411022 | BARREL 1895 45/70 18.5" | 7 |
| Marlin | ARM | F411023 | BARREL, 1895CB 45/70 26 | 9 |
| Marlin | ARM | F411025 | BARREL 1894CB-357 20" OCT. | 12 |
| Marlin | ARM | F411026 | BARREL 1894CB-44 MAG 20" OC | 8 |
| Marlin | ARM | F411027 | BARREL 1894CB-45LC-20" | 7 |
| Marlin | ARM | F413483 | TIP, FOREARM 1895 LTD SW | 7 |
| Marlin | ARM | F415187 | 1894 S/A, STOCK ASSB LIMITED EDITION | 22 |
| Marlin | ARM | F415210 | FOREARM 1895CB/1895CBA/1894CB CHK C WAL. | 3 |
| Marlin | ARM | F415485 | 1894 SBL MAG TUBE SS 15.260" | 5 |
| Marlin | ARM | F416019 | 336/1895/444/308 STK ASSB GRN/BLCK HWOOD | 13 |
| Marlin | ARM | F416022 | FOREARM ASSB GRN/BLACK FINISH HARDWOOD | 37 |
| Marlin | ARM | F416159 | S/A, BUTTSTOCK ASSB 1894CB | 6 |
| Marlin | ARM | F416247 | 336 REC TGP ASSB ENGRAVED TE CPT BO | 2 |
| Marlin | ARM | F416558 | 336 S/A Buttstock Texan Deluxe Satin | 3 |
| Marlin | ARM | F416559 | 336 FOREARM TEXAN DELUXE SATIN | 3 |
| Marlin | ARM | F416674 | M/336WBL - 30 Cal BBL - 20" | 5 |
| Marlin | ARM | F416675 | FINGER LEVER 336 SPS BL | 5 |
| Marlin | ARM | F416748 | 1895TSBL 45-70 GOVT 16.5" BBL | 5 |
| Marlin | ARM | F416749 | FOREARM ASSB BLACK/BLACK FINISH HARDWOOD | 6 |
| Marlin | ARM | F416750 | 1895 TSBL MAG TUBE 15.446" | 5 |
| Marlin | ARM | F416757 | 336/1895/444/308 STK ASSB BLK/BLK HWOOD | 7 |
| Marlin | ARM | F416758 | 1895 SBL FINGER LEVER SATIN (SS) | 7 |
| Marlin | ARM | F416759 | 1895, SUB ASSB REC TGP SS SATIN | 10 |
| Marlin | ARM | F416760 | MARLIN REAR SIGHT BASE FILLER BLACK ASSB | 5 |
| Marlin | ARM | F416859 | 1894CST 357MAG/38SPL 16.5" SATIN TH BBL | 6 |
| Marlin | ARM | F417037 | S/A, REC/TGP/BB 94SS-357 SATIN | 4 |

66

| Marlin | ARM | F417041 | LEVER, FINGER (1894) BIG LOOP SS SATIN | 19 |
| Marlin | ARM | F417044 | FE ASSB 336 TIP STYLE BLACK/BLACK FINISH | 8 |
| Marlin | ARM | F417162 | BREECH BOLT 45-70 SPS | 9 |
| Marlin | ARM | F417171 | BIRDSHEAD PISTOL GRIP STOCK | 6 |
| Marlin | ARM | F417178 | EXTRACTOR,  1894 357 | 5 |
| Marlin | ARM | F417967 | S/A, BUTTSTOCK ASSB 336 CURLY MAPLE | 4 |
| Marlin | ARM | F417968 | 336 FOREARM,CURLY MAPLE,CK HIGH FINISH | 3 |
| Marlin | ARM | F418579 | M/336D TH BBL - 30 CAL - 16.25" | 7 |
| Marlin | ARM | F418581 | 336 DSMP SUB ASSB REC TGP | 12 |
| Marlin | ARM | F418586 | XS SIGHT SYSTEM, LEVER ACTION, 336 | 15 |
| Marlin | ARM | F418589 | M/1895D TH BBL - 45/70 GOVT - 16.25" | 8 |
| Marlin | ARM | F418590 | 1895 DSMP MAG TUBE 14.869" | 1 |
| Marlin | ARM | F418668 | 336/1895 DSMP WRAPPED FINGER LEVER | 18 |
| Marlin | ARM | F418725 | S/A, BUTTSTOCK ASSB CURLY MAPLE, HGH FIN | 10 |
| Marlin | ARM | F418726 | 1894 FOREARM CURLY MAPLE CK HIGH FINISH | 6 |
| Marlin | ARM | F418872 | 1895 FOREARM CURLY MAPLE CK HIGH FINISH | 3 |
| Marlin | ARM | F419261 | THREAD PROTECTOR 11/16-24, BLACK OXIDE | 8 |
| Marlin | ILN | F405023 | Loading Spring 336 SST & 444 XLR Plated | 928 |
| Marlin | ILN | F405026 | Loading Spring 1895GS & XLR PLATED | 1,171 |
| Marlin | ILN | F405027 | Loading Spring 1895 GS & XLR FOR PLATE | 500 |
| Marlin | ILN | F406000 | MARLIN 336C 30 CAL BBL 20" | 196 |
| Marlin | ILN | F406001 | 444 CAL BBL 22" | 143 |
| Marlin | ILN | F406002 | 1895 BBL CLASSIC 45-70 GOVT 22" | 90 |
| Marlin | ILN | F406005 | 336 SS BARREL, 30 CAL - 20" | 217 |
| Marlin | ILN | F406006 | HAMMER (PLATED) | 3,267 |
| Marlin | ILN | F406011 | LEVER, FINGER (36SS) | 194 |
| Marlin | ILN | F406014 | RECEIVER, 1895-450/410 | 1 |
| Marlin | ILN | F406023 | RECEIVER (SS)  95 FOR HEAT TREAT | 303 |
| Marlin | ILN | F406025 | LEVER, FINGER (95GS), STAINLESS | 49 |
| Marlin | ILN | F406027 | PLUG, MAGAZINE TUBE (PLATED) | 934 |
| Marlin | ILN | F406030 | 336/1895 STUD, MAG TUBE (PLATED) | 3,399 |
| Marlin | ILN | F406031 | 1895 GS BBL  45-70 GOVT 18.5" | 26 |
| Marlin | ILN | F406032 | 1895G  BBL 45-70 GOVT 18.5 | 49 |
| Marlin | ILN | F406034 | 1895MR BBL 410 22" | 96 |
| Marlin | ILN | F406039 | 1895 SBL BBL  45-70 GOVT 18.5" | 421 |
| Marlin | ILN | F406040 | LEVER, FINGER 1895GBL | 272 |
| Marlin | ILN | F406045 | TUBE, MAGAZINE 1895CB | 239 |
| Marlin | ILN | F406046 | FOREARM, 1894/308MX | 64 |
| Marlin | ILN | F406047 | TIP, FOREARM | 237 |
| Marlin | ILN | F406051 | MARLIN 35 REM BBL 20" | 71 |
| Marlin | ILN | F406053 | LEVER, FINGER 336 | 21 |
| Marlin | ILN | F406054 | LEVER, FINGER 1895SBL (SS) | 607 |
| Marlin | ILN | F406056 | LEVER, FINGER 336DL | 461 |

Case 20-81688-CR-JJ   Doc 2906-16   Filed 09/30/22   Entered 09/30/22 12:49:54   Desc
Exhibit RJN 4: Order Approving Ruger APA Page 155 of 249

| Marlin | ILN | F406060 | FOREARM, 336W/30AW | 269 |
| Marlin | ILN | F406062 | HAMMER BO | 4,252 |
| Marlin | ILN | F406064 | BREECH BOLT 30-30 XLR FLUTED | 3 |
| Marlin | ILN | F406076 | FOREARM 1895CB/1895CBA/1894CB | 447 |
| Marlin | ILN | F406079 | M/336BL BARREL 30 CAL - 18" | 41 |
| Marlin | ILN | F406090 | LOADING SPRING, 1895M, 450M, B.O. | 604 |
| Marlin | ILN | F406092 | FOREARM, 336BL BROWN LAM. W/CAP | 270 |
| Marlin | ILN | F406094 | LOADING SPRING, 1895, 45-70, B.O. | 1,667 |
| Marlin | ILN | F406098 | LOADING SPRING, 1895, 45-70, NI PLATE | 281 |
| Marlin | ILN | F406099 | LOADING SPRING, NI PLATE | 309 |
| Marlin | ILN | F406100 | LOADING SPRING, B.O. | 767 |
| Marlin | ILN | F406103 | 30-30 BREECH BOLT PLATED | 885 |
| Marlin | ILN | F406106 | RECEIVER 336 | 7 |
| Marlin | ILN | F406108 | LEVER, FINGER (95CB) | 389 |
| Marlin | ILN | F406109 | MAG TUBE STUD - BLUE 410/95/94/308/336 | 3,848 |
| Marlin | ILN | F406112 | FOREARM 336/336SS | 22 |
| Marlin | ILN | F406113 | FOREARM, 336XLR/308XLR GREYLAM | 532 |
| Marlin | ILN | F406114 | FOREARM, 1895XLR/444XLR GREY LAM | 785 |
| Marlin | ILN | F406115 | RECEIVER 444P | 117 |
| Marlin | ILN | F406116 | BOLT, BREECH 35 CAL -PLATED | 97 |
| Marlin | ILN | F406120 | MAGAZINE TUBE 1895 CBA | 79 |
| Marlin | ILN | F406121 | FOREARM 95, 444 | 896 |
| Marlin | ILN | F406123 | MARLIN 336 XLR BBL 30 CAL 24" | 19 |
| Marlin | ILN | F406124 | BREECH BOLT 45-70 XLR FLUTED | 34 |
| Marlin | ILN | F406126 | 1895GBL BBL 45-70 GOVT 18.5 | 153 |
| Marlin | ILN | F406128 | RECEIVER 95 45-70 | 134 |
| Marlin | ILN | F406131 | BOLT, BREECH 95 -PLATED | 15 |
| Marlin | ILN | F406133 | FOREARM 410 XLR BROWN LAMINATE | 183 |
| Marlin | ILN | F406151 | 1894C BBL 357 CAL 18.5" | 96 |
| Marlin | ILN | F406152 | 1894C BBL 44 REM MAG 20" | 54 |
| Marlin | ILN | F406155 | 1894H BBL 45LC 20" | 98 |
| Marlin | ILN | F406167 | RECEIVER, 357SS | 43 |
| Marlin | ILN | F406175 | LEVER, FINGER (1894) | 300 |
| Marlin | ILN | F406180 | BOLT, BREECH 45 | 22 |
| Marlin | ILN | F406183 | RECEIVER 357 | 201 |
| Marlin | ILN | F406184 | 1894 BREECH BOLT (357) | 5 |
| Marlin | ILN | F406187 | RECEIVER 94-44 | 19 |
| Marlin | ILN | F406188 | CARRIER 94-44 | 297 |
| Marlin | ILN | F406189 | 1894 BREECH BOLT 44 | 173 |
| Marlin | ILN | F406191 | CARRIER 94-357 | 359 |
| Marlin | ILN | F406193 | LOADING SPRING, 1894, B.O. | 2,012 |
| Marlin | ILN | F406195 | FOREARM, 1894C-1894CSS 357 | 18 |
| Marlin | ILN | F406199 | LOADING SPRING, 1894, NI PLATE | 2,255 |

68

Case 20-81688-CR-11    Doc 2906-16    Filed 09/08/22    Entered 09/08/22 13:49:54    Desc
Exhibit RJN 4: Order Approving Page 157 of 469 Page 156 of 249

| Marlin | ILN | F406205 | EXTRACTOR, 30-30/35/308, NI PLATE | 1,867 |
|--------|-----|---------|-----------------------------------|-------|
| Marlin | ILN | F406206 | TUBE, MAGAZINE (336SS) | 212 |
| Marlin | ILN | F406209 | TUBE, MAG (1895-450) | 550 |
| Marlin | ILN | F406212 | TUBE, MAGAZINE (GS) 1895 (BULGE) | 7 |
| Marlin | ILN | F406214 | TUBE, MAGAZINE, 336C 30 | 671 |
| Marlin | ILN | F406217 | TUBE, 336XLR-30 MAGAZINE | 22 |
| Marlin | ILN | F406222 | SEAR  36/95 | 5,790 |
| Marlin | ILN | F406224 | PLUNGER, FINGER LEVER | 9,538 |
| Marlin | ILN | F406226 | BOLT, 336 LOCKING (CAST) | 5,577 |
| Marlin | ILN | F406228 | TUBE, MAGAZINE, 1895SBL (BULGE) | 692 |
| Marlin | ILN | F406233 | TUBE, 1895SBL & STP, MAGAZINE | 1,284 |
| Marlin | ILN | F406236 | MAG TUBE 444 BULGE CARBON | 401 |
| Marlin | ILN | F406237 | TUBE, 1895 MAGAZINE | 810 |
| Marlin | ILN | F406238 | TUBE, 1895SS MAGAZINE | 655 |
| Marlin | ILN | F406239 | TUBE, 1895CB MAGAZINE | 669 |
| Marlin | ILN | F406240 | TUBE, MAGAZINE, 336BL | 79 |
| Marlin | ILN | F406241 | LEAF, FOLDING 336 | 1,391 |
| Marlin | ILN | F406244 | EXTRACTOR, 45-70/338, B.O. | 2,802 |
| Marlin | ILN | F406246 | EXTRACTOR, B.O | 696 |
| Marlin | ILN | F406251 | PUSH BUTTON SAFETY ASSB | 3,217 |
| Marlin | ILN | F406252 | TUBE, 450 MAGAZINE | 380 |
| Marlin | ILN | F406253 | TUBE, MAGAZINE  444 FINISHED (BULGE) | 146 |
| Marlin | ILN | F406254 | EJECTOR, PLATED | 3,993 |
| Marlin | ILN | F406256 | EXTRACTOR, NI PLATE | 145 |
| Marlin | ILN | F406259 | TUBE, MAGAZINE 1895 (BULGE) | 218 |
| Marlin | ILN | F406261 | TUBE, MAGAZINE 95GBL | 187 |
| Marlin | ILN | F406262 | TUBE, MAGAZINE 95GBL | 1,080 |
| Marlin | ILN | F406274 | LEAF, REAR FOLDING 39 | 661 |
| Marlin | ILN | F406283 | STUD, 357SS MAG TUBE - PLATED | 2,343 |
| Marlin | ILN | F406286 | SCREW, MAG TUBE 1894C-SS -PLATED | 4,131 |
| Marlin | ILN | F406289 | TIP, FOREARM | 158 |
| Marlin | ILN | F406290 | LEAF,REAR SIGHT FOLDING:XT & M60 | 4,065 |
| Marlin | ILN | F406292 | BOLT, 1894 LOCKING (CAST) | 3,951 |
| Marlin | ILN | F406295 | 357/444 STUD, MAGAZINE TUBE, BLACK OX | 1,130 |
| Marlin | ILN | F406297 | SCREW, MAG TUBE PLUG | 7,304 |
| Marlin | ILN | F406299 | TUBE, MAGAZINE 357C | 70 |
| Marlin | ILN | F406301 | TUBE, MAGAZINE 38 SPECIAL | 255 |
| Marlin | ILN | F406302 | TUBE, MAGAZINE 1894CB-20 | 118 |
| Marlin | ILN | F406307 | INSERT, FRONT SIGHT (TALL) | 2,081 |
| Marlin | ILN | F406311 | BASE FRONT RAMP SIGHT 336 | 524 |
| Marlin | ILN | F406312 | BASE, REAR SIGHT | 274 |
| Marlin | ILN | F406314 | HAMMER SPUR-PLATED | 3,237 |
| Marlin | ILN | F406316 | SPUR HAMMER FOR PLATE | 999 |

US_Active\115569040\V-2

| Marlin | ILN | F406317 | FRONT SIGHT BASE (2 SCREW) | 759 |
| Marlin | ILN | F406319 | SPUR, HAMMER BLACK OXIDE | 4,032 |
| Marlin | ILN | F406321 | FOREARM TIP TENON 39A/1894 | 2,893 |
| Marlin | ILN | F406323 | TENON, FOREARM TIP OFFSET | 961 |
| Marlin | ILN | F406325 | TENON, FOREARM TIP | 6,396 |
| Marlin | ILN | F406326 | TENON FOREARM TIP (OFFSET) | 2,414 |
| Marlin | ILN | F406327 | BASE, FRONT SIGHT | 655 |
| Marlin | ILN | F406329 | BASE, FRONT SIGHT | 1,117 |
| Marlin | ILN | F406331 | INSERT, FRONT SIGHT (SHORT) | 2,500 |
| Marlin | ILN | F406336 | PLUG, MAG TUBE -PLATED | 1,999 |
| Marlin | ILN | F406340 | BLOCK, TRIGGER SAFETY -PLATED | 6,050 |
| Marlin | ILN | F406341 | PIN, F.L. PLUNGER -PLATED | 7,191 |
| Marlin | ILN | F406342 | BAND, FRONT -PLATED | 1,193 |
| Marlin | ILN | F406346 | PLUG, MAG TUBE | 572 |
| Marlin | ILN | F406348 | PLUG, 336XLR MAG TUBE -PLATED | 1,966 |
| Marlin | ILN | F406352 | EXTRACTOR, B.O. | 769 |
| Marlin | ILN | F406359 | PIN, FINGER LEVER PLUNGER | 6,681 |
| Marlin | ILN | F406361 | PLUG, MAGAZINE TUBE | 1,161 |
| Marlin | ILN | F406363 | BAND, FRONT, L/A, BO | 123 |
| Marlin | ILN | F406365 | EXTRACTOR, B.O. | 1,353 |
| Marlin | ILN | F406369 | PLUG, MAGAZINE TUBE | 2,918 |
| Marlin | ILN | F406371 | PLUG, MAG TUBE | 935 |
| Marlin | ILN | F406382 | TRIGGER NICKEL PLATED | 1,329 |
| Marlin | ILN | F406386 | TRIGGER GOLD PLATED | 415 |
| Marlin | ILN | F406387 | BLOCK, TRIGGER SAFETY | 7,473 |
| Marlin | ILN | F406422 | STUD, SWIVEL -PLATED | 4,828 |
| Marlin | ILN | F406423 | PLUG, MAGAZINE TUBE | 1,528 |
| Marlin | ILN | F406427 | BAND, FRONT, L/A, 357, BO | 887 |
| Marlin | ILN | F406429 | SCREW, FRONT BAND | 4,952 |
| Marlin | ILN | F406435 | PLUG, MAG TUBE | 1,344 |
| Marlin | ILN | F406437 | PLUNGER, CARRIER ROCKER -PLATED | 8,780 |
| Marlin | ILN | F406440 | HOOD, FRONT SIGHT | 1 |
| Marlin | ILN | F406443 | SCREW, SCOPE MT BASE (PLATED) | 91,567 |
| Marlin | ILN | F406448 | STRUT, HAMMER SPRING | 9,840 |
| Marlin | ILN | F406450 | PLATE, HAMMER SPRING ADJUSTING | 9,254 |
| Marlin | ILN | F406452 | SCREW, FRT RAMP SIGHT BASE | 6,826 |
| Marlin | ILN | F406460 | ELEVATOR, REAR SIGHT | 4,903 |
| Marlin | ILN | F406462 | HOOD, FRT RAMP SIGHT | 4,373 |
| Marlin | ILN | F406468 | SCREW, SCOPE MT BASE DUMMY | 30,872 |
| Marlin | ILN | F406472 | SCREW, FRONT SIGHT BASE | 25,774 |
| Marlin | ILN | F406474 | SCREW, FRONT SIGHT BASE BLUE | 23,022 |
| Marlin | ILN | F406476 | SCREW, FRONT SIGHT BASE | 3,804 |
| Marlin | ILN | F406481 | INSERT, FRONT RAMP SIGHT | 2,959 |

70

US_Active\115569040\V-2

Case 20-81688-CR-1 Doc 2406-16 Filed 09/30/22 Entered 09/30/22 13:49:54 Desc
Exhibit RJN 4: Order Approving Ruger APA Page 158 of 249

| Marlin | ILN | F406485 | PIN, REAR FIRING (PLATED) | 7,048 |
| Marlin | ILN | F406497 | FOLLOWER 444 & 444XLR | 6,540 |
| Marlin | ILN | F406505 | PIN, FRONT FIRING | 5,262 |
| Marlin | ILN | F406582 | S/A, REC/TGP 36SS | 209 |
| Marlin | ILN | F406584 | S/A FOREARM TIP W/SWIVEL 1895GS/STP PL | 617 |
| Marlin | ILN | F406585 | 336SS S/A, REAR BAND W/STUD (PLATED) | 1,481 |
| Marlin | ILN | F406587 | S/A, SS REC/TGP 95GS | 49 |
| Marlin | ILN | F406588 | S/A TGP (SS) | 198 |
| Marlin | ILN | F406589 | S/A, REC/TGP 95MR 450/410 | 502 |
| Marlin | ILN | F406591 | S/A, REC/TGP 336 | 284 |
| Marlin | ILN | F406592 | S/A, BUTTSTOCK 336/1895/308/444 XLR'S | 2,762 |
| Marlin | ILN | F406594 | S/A STOCK 336BL | 921 |
| Marlin | ILN | F406599 | 95,450,444,336 TRIGGER GUARD PLATE | 701 |
| Marlin | ILN | F406602 | S/A, BUTTSTOCK 336C,95,444,308,338 | 3,670 |
| Marlin | ILN | F406604 | S/A, REC/TGP 444 | 131 |
| Marlin | ILN | F406607 | S/A, BUTTSTOCK 1895G | 624 |
| Marlin | ILN | F406608 | S/A, FOREARM TIP SWIVEL BASE | 884 |
| Marlin | ILN | F406611 | S/A, REC/TGP 95 45-70 | 466 |
| Marlin | ILN | F406614 | S/A, REAR BAND SWIVEL STUD | 1,554 |
| Marlin | ILN | F406615 | S/A, REC/TGP 95CB 45-70 | 400 |
| Marlin | ILN | F406616 | S/A, BUTTSTOCK HARDWOOD, 336W/A | 2,000 |
| Marlin | ILN | F406617 | S/A, FOREARM TIP SWIVEL | 616 |
| Marlin | ILN | F406618 | S/A, REC/TGP 1895XLR | 809 |
| Marlin | ILN | F406621 | S/A STOCK 410 XLR | 178 |
| Marlin | ILN | F406635 | S/A, BUTTSTOCK 1894 | 1,704 |
| Marlin | ILN | F406644 | S/A, REC/TGP/BB 94CB44 | 197 |
| Marlin | ILN | F406646 | T.G.P., MARLIN, ASSEMBLY, 1894 | 514 |
| Marlin | ILN | F406647 | S/A, REC/TGP/BB 94CB45 | 12 |
| Marlin | ILN | F406648 | BUTTSTOCK, LVRACT, TEXAS, NO CHKR, WALNT | 889 |
| Marlin | ILN | F406651 | S/A, REC/TGP/BB 94CB357 | 193 |
| Marlin | ILN | F406654 | S/A, REC/TGP/BB 94SS-357 | 209 |
| Marlin | ILN | F406655 | S/A, F.A.TIP SWIVEL BASE -PLATED | 1,019 |
| Marlin | ILN | F406658 | S/A, SIGHT BASE ONLY (BLUED) | 2,488 |
| Marlin | ILN | F406759 | BOLT, BREECH 94SS-44 after HT | 10 |
| Marlin | ILN | F406761 | BOLT, BREECH 94SS-357 after HT | 83 |
| Marlin | ILN | F406763 | 1894 CSBL 357MAG 16.5" BBL | 276 |
| Marlin | ILN | F406765 | 1894 SBL 44 REM MAG 16.5" BBL | 299 |
| Marlin | ILN | F406771 | 1894 SBL MAG TUBE | 323 |
| Marlin | ILN | F406795 | HAMMER FOR PLATE | 800 |
| Marlin | ILN | F406804 | BREECH BOLT 30-30 FOR PLATE | 299 |
| Marlin | ILN | F406807 | BREECH BOLT 45-70 FOR PLATE | 910 |
| Marlin | ILN | F406809 | SAFETY, PUSH BUTTON FOR PLATE | 2,989 |
| Marlin | ILN | F406812 | 1895 EXTRACTOR FOR PLATE | 1,000 |

71

| | | | | |
|---|---|---|---|--:|
| Marlin | ILN | F406842 | S/A, F.A.TIP SWIVEL BASE FOR PLATE | 254 |
| Marlin | ILN | F406854 | S/A, STK ASSB 336/1895/308/444 XLR'S | 1,406 |
| Marlin | ILN | F406855 | S/A  STOCK ASSB 336BL | 96 |
| Marlin | ILN | F406857 | S/A, BUTTSTOCK ASSB 336C,95,444,308,338 | 651 |
| Marlin | ILN | F406858 | S/A, BUTTSTOCK ASSB 1895G | 94 |
| Marlin | ILN | F406860 | S/A, BUTTSTOCK ASSB HARDWOOD, 336W/A | 77 |
| Marlin | ILN | F406861 | S/A  STOCK ASSB 410 XLR | 207 |
| Marlin | ILN | F406865 | S/A, BUTTSTOCK ASSB 1894 | 176 |
| Marlin | ILN | F406890 | S/A, BUTTSTOCK HARDWOOD, 336Y | 19 |
| Marlin | ILN | F406892 | FOREARM, 336Y HARDWOOD | 178 |
| Marlin | ILN | F406893 | BARREL, MODEL 336C 30-30 16.25" | 29 |
| Marlin | ILN | F406904 | RECEIVER, 44 1894SS @ HT | 15 |
| Marlin | ILN | F406913 | S/A REAR SIGHT BS/SLIDE PLATED | 493 |
| Marlin | ILN | F406918 | S/A, REC/TGP/BB  94SBL | 70 |
| Marlin | ILN | F406919 | BUTTSTOCK ASSB HARDWOOD, 336Y | 215 |
| Marlin | ILN | F406925 | SAFETY, PUSH BUTTON FINISHED | 2,734 |
| Marlin | ILN | F406927 | 1895 TEXAS  TRIGGER GUARD PLATE | 8 |
| Marlin | ILN | F406933 | FRONT SIGHT INSERT - BRASS BLACKENED | 4,082 |
| Marlin | ILN | F407255 | 336/94 336C SPS  MAG TUBE 19.265" | 677 |
| Marlin | ILN | F407257 | 336Y SPS MAG TUBE 15.565" | 210 |
| Marlin | ILN | F407258 | M/336W SPS - 30 Cal Barrel - 20" | 605 |
| Marlin | ILN | F407260 | M/336Y SPS - 30 Cal Barrel - 16.25" | 473 |
| Marlin | ILN | F407261 | LEVER, FINGER SPS 336 | 608 |
| Marlin | ILN | F407262 | SUB ASSM REC TGP 336 SPS | 149 |
| Marlin | ILN | F407263 | BREECH BOLT 30-30 SPS | 117 |
| Marlin | ILN | F408216 | FRONT SIGHT INSERT FILED | 1,642 |
| Marlin | ILN | F408217 | FRONT SIGHT INSERT FILED | 11,435 |
| Marlin | ILN | F409859 | MARLIN REAR FIRING PIN BLACK | 5,904 |
| Marlin | ILN | F410162 | LEVER, FINGER (1894) BIG LOOP SS | 474 |
| Marlin | ILN | F410164 | LEVER, FINGER (1894) BIG LOOP CRB | 50 |
| Marlin | ILN | F410238 | M1894 - 44 MAG CARRIER ASSB | 623 |
| Marlin | ILN | F410239 | M1894 - 357 MAG CARRIER ASSB | 843 |
| Marlin | ILN | F410597 | TUBE, MAGAZINE, 1895 LTD | 8 |
| Marlin | ILN | F410664 | M/1894 PISTOL GRIP TRIGGER GUARD PLATE | 1,696 |
| Marlin | ILN | F410665 | M/1894SS PISTOL GRIP TRIGGER GUARD PLATE | 99 |
| Marlin | ILN | F411022 | BARREL 1895 45/70 18.5" | 122 |
| Marlin | ILN | F411023 | BARREL, 1895CB 45/70 26 | 107 |
| Marlin | ILN | F411025 | BARREL 1894CB-357 20" OCT. | 120 |
| Marlin | ILN | F411026 | BARREL 1894CB-44 MAG 20" OC | 37 |
| Marlin | ILN | F411027 | BARREL 1894CB-45LC-20" | 44 |
| Marlin | ILN | F413482 | SUB ASSY REC TGP 1895 WWG  TO POLISH | 166 |
| Marlin | ILN | F413483 | TIP, FOREARM 1895 LTD SW | 158 |
| Marlin | ILN | F414313 | Forearm Tip 1895 LTD | 650 |

72

US_Active\115569040\V-2

Case 20-81688-CRJ11   Doc 2408-16   Filed 09/30/22   Entered 09/30/22 13:49:54   Desc
Exhibit RJN 4: Order Approving Page 021 of 469   Page 160 of 249

| | | | | |
|---|---|---|---|---:|
| Marlin | ILN | F414315 | 1895 LTD Forearm Tip - Vendor Machined | 191 |
| Marlin | ILN | F414316 | S/A FOREARM TIP - VENDOR MACHINED | 6 |
| Marlin | ILN | F414317 | FOREARM TIP-VENDOR MACHINED | 21 |
| Marlin | ILN | F415187 | 1894 S/A, STOCK ASSB LIMITED EDITION | 214 |
| Marlin | ILN | F415210 | FOREARM 1895CB/1895CBA/1894CB CHK C WAL. | 1 |
| Marlin | ILN | F415221 | BREECH BOLT 444 PLATED | 80 |
| Marlin | ILN | F415243 | Breech Bolt 444 | 74 |
| Marlin | ILN | F415473 | PLUG, MAGAZINE TUBE 1894, 357  NI PLATED | 652 |
| Marlin | ILN | F415485 | 1894 SBL MAG TUBE SS  15.260" | 271 |
| Marlin | ILN | F415647 | FOREARM, 1894/308MX (LEX) | 639 |
| Marlin | ILN | F415649 | FOREARM, 336W/30AW (LEX) | 2,625 |
| Marlin | ILN | F415650 | FOREARM 1895CB/1895CBA/1894CB (LEX) | 606 |
| Marlin | ILN | F415651 | FOREARM,  336BL BROWN LAM. W/CAP (LEX) | 565 |
| Marlin | ILN | F415652 | FOREARM 336/336SS (LEX) | 3,559 |
| Marlin | ILN | F415653 | FOREARM, 336XLR/308XLR GREYLAM (LEX) | 1,198 |
| Marlin | ILN | F415654 | FOREARM, 1895XLR/444XLR GREY LAM (LEX) | 1,878 |
| Marlin | ILN | F415655 | FOREARM 95, 444 (LEX) | 2,509 |
| Marlin | ILN | F415656 | FOREARM 410 XLR BROWN LAMINATE (LEX) | 1,221 |
| Marlin | ILN | F415661 | FOREARM, 1894C-1894CSS 357 (LEX) | 1,225 |
| Marlin | ILN | F415662 | FOREARM, 336Y HARDWOOD (LEX) | 307 |
| Marlin | ILN | F416011 | 1894 .357 S/A FOREARMTIP VENDOR MACHINED | 46 |
| Marlin | ILN | F416013 | 1894 .357 FOREARM TIP PLATED | 285 |
| Marlin | ILN | F416020 | 1895 S/A BUTTSTOCK ASSY NO CHECKERING | 5,166 |
| Marlin | ILN | F416021 | S/A BUTTSTOCK 336/1895/444/308 HARDWOOD | 6,642 |
| Marlin | ILN | F416023 | 1895XLR/444XLR FOREARM ASSY UNCKRD WOOD | 4,477 |
| Marlin | ILN | F416159 | S/A, BUTTSTOCK  ASSB 1894CB | 386 |
| Marlin | ILN | F416407 | 1895XLR/444XLR FOREARM (NO CHECKERING) | 2,734 |
| Marlin | ILN | F416537 | 1894 BREECH BOLT M 44 - SS TUMBLED | 143 |
| Marlin | ILN | F416538 | 1894 BREECH BOLT M 357 - SS TUMBLED | 27 |
| Marlin | ILN | F416555 | 336 REC TGP SUB ASSY POLISH ENGR TDL CPT | 232 |
| Marlin | ILN | F416558 | 336 S/A Buttstock Texan Deluxe Satin | 25 |
| Marlin | ILN | F416559 | 336 FOREARM TEXAN DELUXE SATIN | 134 |
| Marlin | ILN | F416560 | MARLIN 336 TDL 30 CAL BBL 20" | 31 |
| Marlin | ILN | F416598 | MARLIN, TEXAS DLX, STK ASSY, LEX. LEVEL | 174 |
| Marlin | ILN | F416674 | M/336WBL - 30 Cal BBL - 20" | 57 |
| Marlin | ILN | F416740 | 336BL MAG TUBE SPS | 32 |
| Marlin | ILN | F416748 | 1895TSBL 45-70 GOVT 16.5" BBL | 285 |
| Marlin | ILN | F416749 | FOREARM ASSB BLACK/BLACK FINISH HARDWOOD | 1,029 |
| Marlin | ILN | F416750 | 1895 TSBL MAG TUBE 15.446" | 356 |
| Marlin | ILN | F416757 | 336/1895/444/308 STK ASSB BLK/BLK HWOOD | 2,116 |
| Marlin | ILN | F416758 | 1895 SBL FINGER LEVER SATIN (SS) | 384 |
| Marlin | ILN | F416759 | 1895, SUB ASSB REC TGP SS SATIN | 299 |
| Marlin | ILN | F416760 | MARLIN REAR SIGHT BASE FILLER BLACK ASSB | 470 |

73

| | | | | |
|---|---|---|---|---:|
| Marlin | ILN | F416812 | BASE, REAR SIGHT FILLER | 537 |
| Marlin | ILN | F416859 | 1894CST 357MAG/38SPL 16.5" SATIN TH BBL | 173 |
| Marlin | ILN | F417036 | S/A, F.A.TIP .357 1894 SWIVEL BASE BO | 275 |
| Marlin | ILN | F417037 | S/A, REC/TGP/BB 94SS-357 SATIN | 316 |
| Marlin | ILN | F417038 | 1894 SBL Mag Tube SS  15.260" Satin | 278 |
| Marlin | ILN | F417041 | LEVER, FINGER (1894) BIG LOOP SS SATIN | 211 |
| Marlin | ILN | F417042 | FE ASSY, 336 TIP STYLE MARLIN (NO CHCKR) | 3,579 |
| Marlin | ILN | F417043 | FE ASSY, 336 TIP STYLE BLK/BLK- NO CHECK | 720 |
| Marlin | ILN | F417044 | FE ASSB 336 TIP STYLE BLACK/BLACK FINISH | 754 |
| Marlin | ILN | F417162 | BREECH BOLT 45-70 SPS | 736 |
| Marlin | ILN | F417171 | BIRDSHEAD PISTOL GRIP STOCK | 1,681 |
| Marlin | ILN | F417178 | EXTRACTOR,  1894 357 | 1,074 |
| Marlin | ILN | F417179 | EXTRACTOR,  1894 SS 357 FOR PLATE | 1,240 |
| Marlin | ILN | F417200 | EXTRACTOR, 1894 SS 357 PLATED | 993 |
| Marlin | ILN | F417413 | 357 OCTAGON FOREARM TIP | 162 |
| Marlin | ILN | F417817 | MARLIN 444 LOADING SPRING, B.O. | 1,138 |
| Marlin | ILN | F417967 | S/A, BUTTSTOCK ASSB 336 CURLY MAPLE | 207 |
| Marlin | ILN | F417968 | 336 FOREARM,CURLY MAPLE,CK HIGH FINISH | 75 |
| Marlin | ILN | F418231 | 336 CURLY MAPLE BUTTSTOCK, LEX. LEVEL | 613 |
| Marlin | ILN | F418579 | M/336D TH BBL - 30 CAL - 16.25" | 66 |
| Marlin | ILN | F418580 | 336 DSMP MAG TUBE 14.490" | 69 |
| Marlin | ILN | F418581 | 336 DSMP SUB ASSB REC TGP | 56 |
| Marlin | ILN | F418585 | 336 S/A, FOREARM TIP SWIVEL BASE DSMP | 112 |
| Marlin | ILN | F418589 | M/1895D TH BBL - 45/70 GOVT - 16.25" | 898 |
| Marlin | ILN | F418590 | 1895 DSMP MAG TUBE 14.869" | 1,340 |
| Marlin | ILN | F418591 | 1895 45/70 DSMP SUB ASSB REC TGP | 1,528 |
| Marlin | ILN | F418668 | 336/1895 DSMP WRAPPED FINGER LEVER | 1,171 |
| Marlin | ILN | F418669 | 1894 DSMP WRAPPED FINGER LEVER | 600 |
| Marlin | ILN | F418725 | S/A, BUTTSTOCK ASSB CURLY MAPLE, HGH FIN | 49 |
| Marlin | ILN | F418726 | 1894 FOREARM CURLY MAPLE CK HIGH FINISH | 326 |
| Marlin | ILN | F418744 | 1894 CURLY MAPLE BUTTSTOCK, LEX. LEVEL | 36 |
| Marlin | ILN | F418752 | DSMP, S/A BUTTSTOCK ASSY,NO CK, ILN SAND | 23 |
| Marlin | ILN | F418838 | 444/1895 S/A, F/A TIP SWIVEL BASE DSMP | 214 |
| Marlin | ILN | F418872 | 1895 FOREARM CURLY MAPLE CK HIGH FINISH | 241 |
| Marlin | ILN | F418873 | 1895 FOREARM W/CAP GREEN W/BLACK WEB | 517 |
| Marlin | ILN | F418883 | S/A, BUTTSTOCK ASSB, GRN W/ BLK WEBBING | 7 |
| Marlin | ILN | F419007 | FOREARM, MODEL 444 150TH SATIN C GRADE | 380 |
| Marlin | ILN | F419008 | 444 150TH BUTTSTOCK ASSB, S/A-LEX LEVEL | 239 |
| Marlin | ILN | F419010 | S/A, BUTTSTOCK ASSB, 444 150TH COMPLETE | 197 |
| Marlin | ILN | F419011 | M/444D TH BBL - 444 CAL - 16.25" | 277 |
| Marlin | ILN | F419012 | 444 DSMP SUB ASSY REC TGP | 110 |
| Marlin | ILN | F419013 | 444 DSMP MAG TUBE 14.495" | 381 |
| Marlin | ILN | F419027 | M/444 150TH 444 CAL OCTAROUND BBL 24" | 91 |

74

Case 2:20-cr-00111-CFR   Doc 2406-16   Filed 09/30/22   Entered 09/30/22 13:49:54   Desc
Exhibit RJN 4: Order Approving Page 163 of 469 Page 162 of 249

| Marlin | ILN | F419028 | EJECTOR, 410 | 222 |
| Marlin | ILN | F419031 | FINGER LEVER, MARLIN, 150TH ENGRAVED | 26 |
| Marlin | ILN | F419040 | M444 S/A REC/TGP 150TH ENGRAVED CPT | 168 |
| Marlin | ILN | F419042 | S/A, REC/TGP 444 150TH TO ENGRAVE | 225 |
| Marlin | ILN | F419046 | BREECH BOLT 444 SPS | 239 |
| Marlin | ILN | F419109 | M/1894D TH BBL - .357 CAL - 16.5" | 337 |
| Marlin | ILN | F419110 | 94MP357 DSMP SUB ASSY REC/TGP/BB | 80 |
| Marlin | ILN | F419112 | 1894 357 S/A, F/A TIP SWIVEL BASE DSMP | 415 |
| Marlin | ILN | F419113 | 357 DSMP MAG TUBE 15.260" | 475 |
| Marlin | ILN | F419130 | TUBE, MAGAZINE - 444 150TH 22.921" | 64 |
| Marlin | ILN | F419131 | FINGER LEVER, MARLIN, 150TH ENGRAVED BO | 345 |
| Marlin | ILN | F419132 | LEVER, FINGER  MARLIN 150TH TO ENGRAVE | 90 |
| Marlin | ILN | F419135 | 444 BREECH BOLT 150TH ENGRAVED PLATED | 214 |
| Marlin | ILN | F419231 | 44 DSMP MAG TUBE 15.260" | 225 |
| Marlin | ILN | F419261 | THREAD PROTECTOR 11/16-24, BLACK OXIDE | 1,962 |
| Marlin | ILN | F419262 | THREAD PROTECTOR 1/2-28, BLACK OXIDE | 901 |
| Marlin | ILN | F419263 | THREAD PROTECTOR .578-28, BLACK OXIDE | 544 |
| Marlin | ILN | F419351 | M/1894D TH BBL - 44 CAL - 16.5" | 293 |
| Marlin | ILN | F419411 | 1895CT 410 BARREL 22" | 59 |
| Marlin | ILN | F419430 | 336C COMPACT BUTTSTOCK ASSY, ILN | 53 |
| Marlin | ILN | F419431 | 336C COMPACT MAG TUBE 15.565" | 149 |
| Marlin | ILN | F419435 | REC/TGP ASSY, 1895CB, COLOR CASE | 3 |
| Marlin | ILN | F419437 | TIP ASSY, FOREARM, COLOR CASE | 28 |
| Marlin | ILN | F419439 | LEVER, FINGER 95CB COLOR CASE | 28 |
| Marlin | ILN | F419451 | BARREL, 1895 CB, 24" 45-70 GOV'T | 27 |
| Marlin | ILN | F419456 | M/1894C BBL - 357 CAL - 20" | 189 |
| Marlin | ILN | F419457 | S/A, REC/TGP/BB  1894C PG | 96 |
| Marlin | ILN | F419472 | 336 COMPACT FOREARM, BANDED, CKRD, ILN | 163 |
| Marlin | ILN | F419479 | 336 COMPACT FOREARM, LEX LEVEL | 1,431 |
| Marlin | ILN | F419480 | 336 S/A COMPACT BUTTSTOCK, LEX. LEVEL | 603 |
| Marlin | ILN | F419485 | MAG TUBE 19.095", 1894 357 TIP/BAND | 107 |
| Marlin | ILN | F419490 | S/A BUTTSTOCK ASSY, TEXAS C-GRADE, LEX | 28 |
| Marlin | ILN | F419494 | BREECH BOLT 410 FOR PLATE | 506 |
| Marlin | ILN | F419495 | 410 BREECH BOLT, 1895, PLATED | 109 |
| Marlin | ILN | F419512 | S/A BUTTSTOCK ASSY TEXAS NO CK C-GR CPT | 18 |
| Marlin | ILN | F419514 | 336 FOREARM BLACK W/GRAY FINISH, COMP. | 536 |
| Marlin | ILN | F419515 | M/336 SS TH BBL - 30 CAL, SATIN, 20" | 200 |
| Marlin | ILN | F419516 | S/A, STOCK ASSB, BLK W/GRAY FINISH, COMP | 782 |
| Marlin | ILN | F419517 | 336, SUB ASSB REC TGP SS SATIN | 218 |
| Marlin | ILN | F419524 | FINGER LEVER, 1895 SATIN W/ BLK/GRY WRAP | 147 |
| Marlin | ILN | F419525 | THD PROTECTOR, 5/8 24 - PLATED | 219 |
| Marlin | ILN | F419526 | S/A, REC/TGP/BB, 94MP44 | 162 |
| Marlin | ILN | F419533 | 410 FIRING PIN BLACK OXIDE | 797 |

75

US_Active\115569040\V-2

Case 2:20-cr-00114-CFB   Doc 296-16   Filed 09/30/22   Entered 09/30/22 12:49:54   Desc
Exhibit RJN 4: Order Approving Peugeot APA   Page 163 of 249

| Marlin | ILN | F419546 | MAG TUBE 18.486", 336SS, SATIN | 225 |
|---|---|---|---|---|
| Marlin | ILN | F419566 | FINGER LEVER, 336 SPS W/ BLACK WRAP | 85 |
| Marlin | ILN | F419567 | M/410D CT BARREL - 18.5" | 21 |
| Marlin | ILN | F419569 | 410 DSMP MAG TUBE 13.770" | 509 |
| Marlin | ILN | F419699 | THREAD PROTECTOR, 11/16-24,SMOOTH, SS | 288 |
| Marlin | ILN | F419700 | THREAD PROTECTOR,11/16-24,SMOOTH, BLK OX | 114 |
| Marlin | ILN | F419701 | M/1895TH BARREL - 45-70 GOVT - 19.12" | 33 |
| Marlin | ILN | F419702 | M/1895SS TH BARREL - 45-70 GOVT - 19.12" | 3 |
| Marlin | ILN | F419705 | 410 DSMP SUB ASSY REC TGP | 90 |
| Marlin | OHL | F406314 | HAMMER SPUR-PLATED | 994 |
| Marlin | OHL | F406913 | S/A REAR SIGHT BS/SLIDE PLATED | 3 |
| Marlin | ARM | 70400 | 1894 44REM MAG/44S&W 20" WALNUT-SG | 12 |
| Marlin | ARM | 70410 | 1894C 357MAG/38SPL 18.5" WALNUT-SG | 6 |
| Marlin | ARM | 70412 | 1894 DARK 357MAG/38SPL TH-B 16.5" | 7 |
| Marlin | ARM | 70432 | 1894SBL 44 R.MAG/44S&W 16.5" LAM-STSL | 3 |
| Marlin | ARM | 70433 | 1894CSBL 357 MAG 16.5" LAM-STSL | 3 |
| Marlin | ARM | 70438 | 1894SS 357MAG/38SPL TH-MZ 16.5" | 3 |
| Marlin | ARM | 70440 | 1894CB 357MAG/38SPL 20" WALNUT-SG | 3 |
| Marlin | ARM | 70442 | 1894CB 44MAG/44SPL 20" WALNUT-SG | 4 |
| Marlin | ARM | 70444 | 1894CB 45 COLT 20" WALNUT-SG | 8 |
| Marlin | ARM | 70445 | 1894-45LC 45 LONG COLT 20" WALNUT | 2 |
| Marlin | ARM | 70450 | 1895TSBL TRAPPER 45-70 GOVT 16.5" | 4 |
| Marlin | ARM | 70454 | 1895ABL 45-70 GOVT 18.5" GRY/BLK-LAM | 1 |
| Marlin | ARM | 70455 | 1895 DARK 45-70 GOVT TH-B 16.25" | 7 |
| Marlin | ARM | 70456 | 1895GBL 45-70 GOVT 18.5" BROWN-LAM PG | 3 |
| Marlin | ARM | 70460 | 1895 45-70 GOVT 22" WALNUT-PG | 6 |
| Marlin | ARM | 70462 | 1895G 45-70 GOVT 18.5" WALNUT-SG | 6 |
| Marlin | ARM | 70464 | 1895GS 45-70 GOVT 18.5" WALNUT-SG STSL | 3 |
| Marlin | ARM | 70467 | 1895  45-70 GOVT 24" WALNUT LTD-ED | 1 |
| Marlin | ARM | 70478 | 1895SBL 45-70 GOVT 18" LAM STSL | 6 |
| Marlin | ARM | 70480 | 1895CB 45-70 GOVT 26" WALNUT-SG | 1 |
| Marlin | ARM | 70491 | 308MXLR 308 MARLIN EXP 24" LAM-PG STSL | 5 |
| Marlin | ARM | 70493 | 338MXLR 338 MARLIN EXP 24" LAM STSL | 3 |
| Marlin | ARM | 70497 | 336 DARK 30-30 WIN TH-B 16.25" | 1 |
| Marlin | ARM | 70502 | 336BL 30-30 WIN 18-1/2" BROWM-LAM PG | 4 |
| Marlin | ARM | 70504 | 336C 30-30 WIN 20" WALNUT-PG | 2 |
| Marlin | ARM | 70506 | 336C 35 REM 20" WALNUT-PG | 2 |
| Marlin | ARM | 70518 | 336W 30-30 WIN 20" LAM.STOCK W/BIG LEVER | 1 |
| Marlin | ARM | 70519 | 336W 30-30 WIN 20" ODGREEN&BLACK WEBBING | 2 |
| Marlin | ARM | 70520 | 336W 30-30 WIN 20" HDWD-PG | 14 |
| Marlin | ARM | 70521 | 336W 30-30 WIN 20" HDWD-PG W/SCOPE | 4 |
| Marlin | ARM | 70530 | 336XLR 30-30 WIN 24" LAM-PG STSL | 1 |
| Marlin | ARM | 70534 | 336TDL TEXAN DELUXE 30-30 WIN 20" WALNUT | 2 |

US_Active\115569040\V-2

Case 20-81688-CR-1 Doc 2406-16 Filed 09/08/22 Entered 09/08/22 13:49:54 Desc
Exhibit RJN 4: Order Approving Purchase APA Page 164 of 249

| Marlin | ARM | 70540 | 444  444 MARLIN 22" WALNUT-PG | 21 |
|--------|-----|-------|-------------------------------|-----|
| Marlin | ARM | 70550 | 444 MARLIN 24" 150TH ANNIVERSARY | 4 |
| Marlin | ARM | 70600 | 39A  22S;L;LR 24" WALNUT-PG | 1 |
| Marlin | ILN | 70330 | 1895 410/22 (.410 BORE) | 6 |
| Marlin | ILN | 70400 | 1894 44REM MAG/44S&W 20" WALNUT-SG | 4 |
| Marlin | ILN | 70404 | 1894 DARK 44 REM MAG TH-B 16.5" | 99 |
| Marlin | ILN | 70407 | 1894C 357MAG/38SPL 20" C.MAPLE (TALO) | 1 |
| Marlin | ILN | 70410 | 1894C 357MAG/38SPL 18.5" WALNUT-SG | 1 |
| Marlin | ILN | 70412 | 1894 DARK 357MAG/38SPL TH-B 16.5" | 19 |
| Marlin | ILN | 70432 | 1894SBL 44 R.MAG/44S&W 16.5" LAM-STSL | 41 |
| Marlin | ILN | 70433 | 1894CSBL 357 MAG 16.5" LAM-STSL | 24 |
| Marlin | ILN | 70438 | 1894SS 357MAG/38SPL TH-MZ 16.5" | 5 |
| Marlin | ILN | 70440 | 1894CB 357MAG/38SPL 20" WALNUT-SG | 1 |
| Marlin | ILN | 70444 | 1894CB 45 COLT 20" WALNUT-SG | 5 |
| Marlin | ILN | 70455 | 1895 DARK 45-70 GOVT TH-B 16.25" | 1 |
| Marlin | ILN | 70460 | 1895 45-70 GOVT 22" WALNUT-PG | 4 |
| Marlin | ILN | 70464 | 1895GS 45-70 GOVT 18.5" WALNUT-SG STSL | 152 |
| Marlin | ILN | 70478 | 1895SBL 45-70 GOVT 18" LAM STSL | 44 |
| Marlin | ILN | 70485 | 1895GBL 45-70 GOVT TH-MZ 18.5" LAM PG | 2 |
| Marlin | ILN | 70487 | 1895SSBL 45-70 GOVT TH-MZ 18.5" LAM STSL | 2 |
| Marlin | ILN | 70497 | 336 DARK 30-30 WIN TH-B 16.25" | 258 |
| Marlin | ILN | 70502 | 336BL 30-30 WIN 18-1/2" BROWM-LAM PG | 74 |
| Marlin | ILN | 70504 | 336C 30-30 WIN 20" WALNUT-PG | 36 |
| Marlin | ILN | 70505 | 336C 30-30 WIN 20" WALNUT W/SCOPE | 25 |
| Marlin | ILN | 70520 | 336W 30-30 WIN 20" HDWD-PG | 3 |
| Marlin | ILN | 70524 | 336V 30-30 WIN COMPACT 16.25" HDWD-PG | 1 |
| Marlin | ILN | 70525 | 336C  30-30 WIN COMPACT 16.25" WALNUT | 3 |
| Marlin | ILN | 70534 | 336TDL TEXAN DELUXE 30-30 WIN 20" WALNUT | 1 |
| Marlin | ILN | 70540 | 444  444 MARLIN 22" WALNUT-PG | 2 |
| Marlin | ILN | 70543 | 444 DARK 444 MARLIN TH-B 16.25" | 3 |
| Marlin | ILN | 70550 | 444 MARLIN 24" 150TH ANNIVERSARY | 2 |
| Marlin | OHL | 70400 | 1894 44REM MAG/44S&W 20" WALNUT-SG | 42 |
| Marlin | OHL | 70404 | 1894 DARK 44 REM MAG TH-B 16.5" | 130 |
| Marlin | OHL | 70410 | 1894C 357MAG/38SPL 18.5" WALNUT-SG | 67 |
| Marlin | OHL | 70412 | 1894 DARK 357MAG/38SPL TH-B 16.5" | 125 |
| Marlin | OHL | 70432 | 1894SBL 44 R.MAG/44S&W 16.5" LAM-STSL | 36 |
| Marlin | OHL | 70433 | 1894CSBL 357 MAG 16.5" LAM-STSL | 97 |
| Marlin | OHL | 70438 | 1894SS 357MAG/38SPL TH-MZ 16.5" | 15 |
| Marlin | OHL | 70440 | 1894CB 357MAG/38SPL 20" WALNUT-SG | 28 |
| Marlin | OHL | 70444 | 1894CB 45 COLT 20" WALNUT-SG | 20 |
| Marlin | OHL | 70450 | 1895TSBL TRAPPER 45-70 GOVT 16.5" | 5 |
| Marlin | OHL | 70451 | 1895 410/22 ( .410 BORE ) CT | 3 |
| Marlin | OHL | 70455 | 1895 DARK 45-70 GOVT TH-B 16.25" | 1 |

77

US_Active\115569040\V-2

Case 2:20-cv-01066-CFR Doc 2406-16   Filed 09/30/22   Entered 09/30/22 12:49:54   Desc
Exhibit RJN 4: Order Approving Ruger APA Page 165 of 249

| | | | | |
|---|---|---|---|---:|
| Marlin | OHL | 70456 | 1895GBL 45-70 GOVT 18.5" BROWN-LAM PG | 15 |
| Marlin | OHL | 70460 | 1895 45-70 GOVT 22" WALNUT-PG | 272 |
| Marlin | OHL | 70462 | 1895G 45-70 GOVT 18.5" WALNUT-SG | 8 |
| Marlin | OHL | 70464 | 1895GS 45-70 GOVT 18.5" WALNUT-SG STSL | 55 |
| Marlin | OHL | 70478 | 1895SBL 45-70 GOVT 18" LAM STSL | 220 |
| Marlin | OHL | 70480 | 1895CB 45-70 GOVT 26" WALNUT-SG | 22 |
| Marlin | OHL | 70484 | 1895WWG 45-70 GOVT 18.5-NO STOCK or F/E | 3 |
| Marlin | OHL | 70485 | 1895GBL 45-70 GOVT TH-MZ 18.5" LAM PG | 134 |
| Marlin | OHL | 70487 | 1895SBL 45-70 GOVT TH-MZ 18.5" LAM STSL | 210 |
| Marlin | OHL | 70497 | 336 DARK 30-30 WIN TH-B 16.25" | 175 |
| Marlin | OHL | 70504 | 336C 30-30 WIN 20" WALNUT-PG | 5 |
| Marlin | OHL | 70505 | 336C 30-30 WIN 20" WALNUT W/SCOPE | 1 |
| Marlin | OHL | 70518 | 336W 30-30 WIN 20" LAM.STOCK W/BIG LEVER | 2 |
| Marlin | OHL | 70519 | 336W 30-30 WIN 20" ODGREEN&BLACK WEBBING | 14 |
| Marlin | OHL | 70520 | 336W 30-30 WIN 20" HDWD-PG | 35 |
| Marlin | OHL | 70525 | 336C  30-30 WIN COMPACT 16.25" WALNUT | 60 |
| Marlin | OHL | 70530 | 336XLR 30-30 WIN 24" LAM-PG STSL | 30 |
| Marlin | OHL | 70534 | 336TDL TEXAN DELUXE 30-30 WIN 20" WALNUT | 1 |
| Marlin | OHL | 70540 | 444  444 MARLIN 22" WALNUT-PG | 5 |
| Marlin | OHL | 70543 | 444 DARK 444 MARLIN TH-B 16.25" | 31 |
| Marlin | OHL | 70550 | 444 MARLIN 24" 150TH ANNIVERSARY | 3 |
| Marlin | HSV | 70330 | 1895 410/22 (.410 BORE) | 12 |
| Marlin | HSV | 70400 | 1894 44REM MAG/44S&W 20" WALNUT-SG | 2 |
| Marlin | HSV | 70404 | 1894 DARK 44 REM MAG TH-B 16.5" | 3 |
| Marlin | HSV | 70410 | 1894C 357MAG/38SPL 18.5" WALNUT-SG | 3 |
| Marlin | HSV | 70412 | 1894 DARK 357MAG/38SPL TH-B 16.5" | 17 |
| Marlin | HSV | 70433 | 1894CSBL 357 MAG 16.5" LAM-STSL | 1 |
| Marlin | HSV | 70438 | 1894SS 357MAG/38SPL TH-MZ 16.5" | 4 |
| Marlin | HSV | 70440 | 1894CB 357MAG/38SPL 20" WALNUT-SG | 2 |
| Marlin | HSV | 70450 | 1895TSBL TRAPPER 45-70 GOVT 16.5" | 1 |
| Marlin | HSV | 70451 | 1895 410/22 ( .410 BORE ) CT | 10 |
| Marlin | HSV | 70455 | 1895 DARK 45-70 GOVT TH-B 16.25" | 3 |
| Marlin | HSV | 70456 | 1895GBL 45-70 GOVT 18.5" BROWN-LAM PG | 1 |
| Marlin | HSV | 70460 | 1895 45-70 GOVT 22" WALNUT-PG | 1 |
| Marlin | HSV | 70462 | 1895G 45-70 GOVT 18.5" WALNUT-SG | 1 |
| Marlin | HSV | 70480 | 1895CB 45-70 GOVT 26" WALNUT-SG | 2 |
| Marlin | HSV | 70483 | 1895GSBL SS 45-70 GOVT 18.5" | 4 |
| Marlin | HSV | 70502 | 336BL 30-30 WIN 18-1/2" BROWM-LAM PG | 1 |
| Marlin | HSV | 70521 | 336W 30-30 WIN 20" HDWD-PG W/SCOPE | 1 |
| Marlin | HSV | 70522 | 336WTE TEXAS EDITION 30-30 WIN 20" HDWD | 4 |
| Marlin | HSV | 70525 | 336C  30-30 WIN COMPACT 16.25" WALNUT | 4 |
| Marlin | HSV | 70527 | 336C 30-30 WIN 20" CURLY MAPLE | 2 |
| Marlin | HSV | 70540 | 444  444 MARLIN 22" WALNUT-PG | 4 |

78

US_Active\115569040\V-2

| | | |
|---|---|---|
| Marlin | ILN | 1894 357 S/A, F/A TIP SWIVEL BASE DSMP |
| Marlin | ILN | 1894 44REM MAG/44S&W 20" WALNUT-SG |
| Marlin | ILN | 1894 BREECH BOLT (357) |
| Marlin | ILN | 1894 BREECH BOLT 44 |
| Marlin | ILN | 1894 CSBL 357MAG 16.5" BBL |
| Marlin | ILN | 1894 DARK 357MAG/38SPL TH-B 16.5" |
| Marlin | ILN | 1894 DARK 44 REM MAG TH-B 16.5" |
| Marlin | ILN | 1894 DSMP WRAPPED FINGER LEVER |
| Marlin | ILN | 1894 FOREARM CURLY MAPLE CK HIGH FINISH |
| Marlin | ILN | 1894 SBL MAG TUBE SS  15.260" |
| Marlin | ILN | 1894 SS  BREECH BOLT(357) |
| Marlin | ILN | 1894-45LC 45 LONG COLT 20" WALNUT |
| Marlin | ILN | 1894C 357MAG/38SPL 18.5" WALNUT-SG |
| Marlin | ILN | 1894C 357MAG/38SPL 20" C.MAPLE (TALO) |
| Marlin | ILN | 1894C BBL 357 CAL 18.5" |
| Marlin | ILN | 1894C BBL 44 REM MAG 20" |
| Marlin | ILN | 1894CB 357MAG/38SPL 20" WALNUT-SG |
| Marlin | ILN | 1894CB 44MAG/44SPL 20" WALNUT-SG |
| Marlin | ILN | 1894CSBL 357 MAG 16.5" LAM-STSL |
| Marlin | ILN | 1894CST 357MAG/38SPL 16.5" SATIN TH BBL |
| Marlin | ILN | 1894SBL 44 R.MAG/44S&W 16.5" LAM-STSL |
| Marlin | ILN | 1894SS 357MAG/38SPL TH-MZ 16.5" |
| Marlin | ILN | 1895 45/70 DSMP SUB ASSB REC TGP |
| Marlin | ILN | 1895 45-70 GOVT 22" WALNUT-PG |
| Marlin | ILN | 1895 BBL CLASSIC 45-70 GOVT 22" |
| Marlin | ILN | 1895 DARK 45-70 GOVT TH-B 16.25" |
| Marlin | ILN | 1895 DSMP MAG TUBE 14.869" |
| Marlin | ILN | 1895 EXTRACTOR FOR PLATE |
| Marlin | ILN | 1895 GS BBL  45-70 GOVT 18.5" |
| Marlin | ILN | 1895 S/A BUTTSTOCK ASSY NO CHECKERING |
| Marlin | ILN | 1895 SBL BBL  45-70 GOVT 18.5" |
| Marlin | ILN | 1895 SBL FINGER LEVER SATIN (SS) |
| Marlin | ILN | 1895 SS TEXAS TRIGGER GUARD PLATE |
| Marlin | ILN | 1895 TEXAS  TRIGGER GUARD PLATE |
| Marlin | ILN | 1895, SUB ASSB REC TGP SS SATIN |
| Marlin | ILN | 1895CB 45-70 GOVT 26" WALNUT-SG |
| Marlin | ILN | 1895CBA 45-70 GOVT 18.5" WALNUT-PG |
| Marlin | ILN | 1895CT 410 BARREL 22" |
| Marlin | ILN | 1895G  BBL 45-70 GOVT 18.5 |
| Marlin | ILN | 1895G 45-70 GOVT 18.5" WALNUT-SG |
| Marlin | ILN | 1895GBL 45-70 GOVT 18.5" BROWN-LAM PG |
| Marlin | ILN | 1895GBL 45-70 GOVT TH-MZ 18.5" LAM PG |
| Marlin | ILN | 1895GBL BBL 45-70 GOVT 18.5 |

79

Case 2:20-cv-01111-CCR  Doc 290-16  Filed 09/30/22  Entered 09/30/22 12:40:54  Desc
Exhibit RJN 4: Order Approving Ruger AP469  Page 167 of 249

| Marlin | ILN | 1895GS 45-70 GOVT 18.5" WALNUT-SG STSL |
|--------|-----|-----------------------------------------|
| Marlin | ILN | 1895MR BBL 410 22" |
| Marlin | ILN | 1895SBL 45-70 GOVT 18" LAM STSL |
| Marlin | ILN | 1895SBL 45-70 GOVT TH-MZ 18.5" LAM STSL |
| Marlin | ILN | 1895TSBL 45-70 GOVT 16.5" BBL |
| Marlin | ILN | 1895TSBL TRAPPER 45-70 GOVT 16.5" |
| Marlin | ILN | 1895XLR/444XLR FOREARM ASSY UNCKRD WOOD |
| Marlin | ILN | 336 COMPACT FOREARM, LEX LEVEL |
| Marlin | ILN | 336 CURLY MAPLE BUTTSTOCK, LEX. LEVEL |
| Marlin | ILN | 336 DARK 30-30 WIN TH-B 16.25" |
| Marlin | ILN | 336 DSMP MAG TUBE 14.490" |
| Marlin | ILN | 336 FOREARM BLACK W/GRAY FINISH, COMP. |
| Marlin | ILN | 336 FOREARM,CURLY MAPLE,CK HIGH FINISH |
| Marlin | ILN | 336 S/A Buttstock Texan Deluxe Satin |
| Marlin | ILN | 336 S/A, FOREARM TIP SWIVEL BASE DSMP |
| Marlin | ILN | 336 SS BARREL, 30 CAL - 20" |
| Marlin | ILN | 336, SUB ASSB REC TGP SS SATIN |
| Marlin | ILN | 336/1895 DSMP WRAPPED FINGER LEVER |
| Marlin | ILN | 336/94 336C SPS  MAG TUBE 19.265" |
| Marlin | ILN | 336BL 30-30 WIN 18-1/2" BROWM-LAM PG |
| Marlin | ILN | 336C  30-30 WIN COMPACT 16.25" WALNUT |
| Marlin | ILN | 336C 30-30 WIN 20" CURLY MAPLE |
| Marlin | ILN | 336C 30-30 WIN 20" WALNUT W/SCOPE |
| Marlin | ILN | 336C 30-30 WIN 20" WALNUT-PG |
| Marlin | ILN | 336C COMPACT BUTTSTOCK ASSY, ILN |
| Marlin | ILN | 336SS 30-30 WIN 20" BL PAINTED STOCK&F/E |
| Marlin | ILN | 336TDL TEXAN DELUXE 30-30 WIN 20" WALNUT |
| Marlin | ILN | 336W 30-30 WIN 20" HDWD-PG |
| Marlin | ILN | 336W 30-30 WIN 20" LAM.STOCK W/BIG LEVER |
| Marlin | ILN | 357 DSMP MAG TUBE 15.260" |
| Marlin | ILN | 410/35 REM DSMP WRAPPED FINGER LEVER |
| Marlin | ILN | 444  444 MARLIN 22" WALNUT-PG |
| Marlin | ILN | 444 150TH BUTTSTOCK ASSB, S/A-LEX LEVEL |
| Marlin | ILN | 444 CAL BBL 22" |
| Marlin | ILN | 444 DARK 444 MARLIN TH-B 16.25" |
| Marlin | ILN | 444 DSMP MAG TUBE 14.495" |
| Marlin | ILN | 444 DSMP SUB ASSY REC TGP |
| Marlin | ILN | 444/1895 S/A, F/A TIP SWIVEL BASE DSMP |
| Marlin | ILN | 94MP357 DSMP SUB ASSY REC/TGP/BB |
| Marlin | ILN | 95,450,444,336 TRIGGER GUARD PLATE |
| Marlin | ILN | BAND, FRONT, L/A, BO |
| Marlin | ILN | BARREL 1894CB-357 20" OCT. |
| Marlin | ILN | BARREL 1894CB-44 MAG 20" OC |

80

| | | | |
|---|---|---|---|
| Marlin | ILN | BARREL 1895 45/70 18.5" |
| Marlin | ILN | BARREL, 1895CB 45/70 26 |
| Marlin | ILN | BARREL, MODEL 336C 30-30 16.25" |
| Marlin | ILN | BASE FRONT RAMP SIGHT 336 |
| Marlin | ILN | BASE, FRONT SIGHT |
| Marlin | ILN | BASE, FRONT SIGHT 60SB/981TS FOR PLATE |
| Marlin | ILN | BIRDSHEAD PISTOL GRIP STOCK |
| Marlin | ILN | BLOCK, TRIGGER SAFETY FOR PLATE |
| Marlin | ILN | BOLT, 1894 LOCKING (CAST) |
| Marlin | ILN | BOLT, 336 LOCKING (CAST) |
| Marlin | ILN | BOLT, BREECH 45 |
| Marlin | ILN | BREECH BOLT 30-30 FOR PLATE |
| Marlin | ILN | BREECH BOLT 30-30 SPS |
| Marlin | ILN | BREECH BOLT 30-30 XLR FLUTED |
| Marlin | ILN | BREECH BOLT 35 REM FOR PLATE |
| Marlin | ILN | Breech Bolt 444 |
| Marlin | ILN | BREECH BOLT 444 SPS |
| Marlin | ILN | BREECH BOLT 45-70 FOR FNC |
| Marlin | ILN | BREECH BOLT 45-70 FOR PLATE |
| Marlin | ILN | BREECH BOLT 45-70 SPS |
| Marlin | ILN | BREECH BOLT 45-70 XLR FLUTED |
| Marlin | ILN | CARRIER 94-357 |
| Marlin | ILN | CARRIER 94-44 |
| Marlin | ILN | EJECTOR 39A/1897 |
| Marlin | ILN | EXTRACTOR, 1894 SS 357 FOR PLATE |
| Marlin | ILN | EXTRACTOR, 45-70/338, B.O. |
| Marlin | ILN | EXTRACTOR, B.O |
| Marlin | ILN | EXTRACTOR, B.O. |
| Marlin | ILN | FE ASSY, 336 TIP STYLE MARLIN (NO CHCKR) |
| Marlin | ILN | FOREARM 336/336SS (LEX) |
| Marlin | ILN | FOREARM 410 XLR BROWN LAMINATE |
| Marlin | ILN | FOREARM 95, 444 |
| Marlin | ILN | FOREARM 95, 444 (LEX) |
| Marlin | ILN | Forearm Tip 1895 LTD |
| Marlin | ILN | FOREARM TIP TENON 39A/1894 |
| Marlin | ILN | FOREARM, 1895XLR/444XLR GREY LAM |
| Marlin | ILN | FOREARM, 1895XLR/444XLR GREY LAM (LEX) |
| Marlin | ILN | FOREARM, 336W/30AW |
| Marlin | ILN | FOREARM, 336W/30AW (LEX) |
| Marlin | ILN | FOREARM, 336XLR/308XLR GREYLAM |
| Marlin | ILN | FOREARM, MODEL 444 150TH SATIN C GRADE |
| Marlin | ILN | HAMMER BO |
| Marlin | ILN | HAMMER FOR PLATE |

81

| | | |
|---|---|---|
| Marlin | ILN | LEAF, FOLDING 336 |
| Marlin | ILN | LEAF,REAR SIGHT FOLDING:XT & M60 |
| Marlin | ILN | LEVER, FINGER  MARLIN 150TH TO ENGRAVE |
| Marlin | ILN | LEVER, FINGER (1894) |
| Marlin | ILN | LEVER, FINGER (1894) BIG LOOP SS |
| Marlin | ILN | LEVER, FINGER (1894) BIG LOOP SS SATIN |
| Marlin | ILN | LEVER, FINGER (36SS) |
| Marlin | ILN | LEVER, FINGER (95CB) |
| Marlin | ILN | LEVER, FINGER (95GS), STAINLESS |
| Marlin | ILN | LEVER, FINGER 1895GBL |
| Marlin | ILN | LEVER, FINGER 1895SBL (SS) |
| Marlin | ILN | LEVER, FINGER 336 |
| Marlin | ILN | LEVER, FINGER 336DL |
| Marlin | ILN | LEVER, FINGER SPS 336 |
| Marlin | ILN | Loading Spring 1895 GS & XLR FOR PLATE |
| Marlin | ILN | LOADING SPRING, 1894, B.O. |
| Marlin | ILN | LOADING SPRING, 1895, 45-70, B.O. |
| Marlin | ILN | LOADING SPRING, 1895M, 450M, B.O. |
| Marlin | ILN | LOADING SPRING, B.O. |
| Marlin | ILN | LOADING SPRING, NI PLATE |
| Marlin | ILN | M/1894D TH BBL - .357 CAL - 16.5" |
| Marlin | ILN | M/1894D TH BBL - 44 CAL - 16.5" |
| Marlin | ILN | M/1894SS PISTOL GRIP TRIGGER GUARD PLATE |
| Marlin | ILN | M/1895D TH BBL - 45/70 GOVT - 16.25" |
| Marlin | ILN | M/1895SS TH BARREL - 45-70 GOVT - 19.12" |
| Marlin | ILN | M/1895TH BARREL - 45-70 GOVT - 19.12" |
| Marlin | ILN | M/336 SS TH BBL - 30 CAL, SATIN, 20" |
| Marlin | ILN | M/336BL BARREL 30 CAL - 18" |
| Marlin | ILN | M/336D TH BBL - 30 CAL - 16.25" |
| Marlin | ILN | M/336W SPS - 30 Cal Barrel - 20" |
| Marlin | ILN | M/336WBL - 30 Cal BBL - 20" |
| Marlin | ILN | M/410D CT BARREL - 18.5" |
| Marlin | ILN | M/444 150TH 444 CAL OCTAROUND BBL 24" |
| Marlin | ILN | M/444D TH BBL - 444 CAL - 16.25" |
| Marlin | ILN | M1894 - 357 MAG CARRIER ASSB |
| Marlin | ILN | M1894 - 44 MAG CARRIER ASSB |
| Marlin | ILN | M444 S/A REC/TGP 150TH ENGRAVED CPT |
| Marlin | ILN | MAG TUBE STUD - BLUE 410/95/94/308/336 |
| Marlin | ILN | MARLIN 336 TDL 30 CAL BBL 20" |
| Marlin | ILN | MARLIN 336 XLR BBL 30 CAL 24" |
| Marlin | ILN | MARLIN 336C 30 CAL BBL 20" |
| Marlin | ILN | MARLIN 35 REM BBL 20" |
| Marlin | ILN | MARLIN 444 LOADING SPRING, B.O. |

82

US_Active\115569040\V-2

Case 2:20-bk-16644-CB  Doc 2908-16  Filed 09/30/22  Entered 09/30/22 12:49:54  Desc
Exhibit RJN 4: Order Approving Peugeot AP469  Page 170 of 249

| | | | |
|---|---|---|---|
| Marlin | ILN | | PIN, FRONT FIRING |
| Marlin | ILN | | PLUG, MAGAZINE TUBE |
| Marlin | ILN | | PLUNGER, CARRIER ROCKER FOR PLATE |
| Marlin | ILN | | PLUNGER, FINGER LEVER |
| Marlin | ILN | | PUSH BUTTON SAFETY ASSB |
| Marlin | ILN | | RECEIVER  336 |
| Marlin | ILN | | RECEIVER  357 |
| Marlin | ILN | | RECEIVER  444P |
| Marlin | ILN | | RECEIVER  94-44 |
| Marlin | ILN | | RECEIVER  94SS-44 FOR HEAT TREAT |
| Marlin | ILN | | RECEIVER  95 45-70 |
| Marlin | ILN | | RECEIVER (SS)  95 FOR HEAT TREAT |
| Marlin | ILN | | RECEIVER (SS) 336 FOR HEAT TREAT |
| Marlin | ILN | | RECEIVER, 1895-450/410 |
| Marlin | ILN | | S/A  STOCK 410 XLR |
| Marlin | ILN | | S/A  STOCK ASSB 410 XLR |
| Marlin | ILN | | S/A BUTTSOTCK ASSY, TEXAS C-GRADE, LEX |
| Marlin | ILN | | S/A BUTTSTOCK 336/1895/444/308 HARDWOOD |
| Marlin | ILN | | S/A REAR SIGHT BS/SLIDE BEFORE PLATE |
| Marlin | ILN | | S/A TGP (SS) |
| Marlin | ILN | | S/A, BUTTSTOCK ASSB 1894CB |
| Marlin | ILN | | S/A, BUTTSTOCK 336/1895/308/444 XLR'S |
| Marlin | ILN | | S/A, BUTTSTOCK 336C,95,444,308,338 |
| Marlin | ILN | | S/A, BUTTSTOCK ASSB 1894 |
| Marlin | ILN | | S/A, BUTTSTOCK ASSB 1895G |
| Marlin | ILN | | S/A, BUTTSTOCK ASSB 336 CURLY MAPLE |
| Marlin | ILN | | S/A, BUTTSTOCK ASSB 336C,95,444,308,338 |
| Marlin | ILN | | S/A, BUTTSTOCK ASSB HARDWOOD, 336W/A |
| Marlin | ILN | | S/A, BUTTSTOCK ASSB, 444 150TH COMPLETE |
| Marlin | ILN | | S/A, BUTTSTOCK HARDWOOD, 336W/A |
| Marlin | ILN | | S/A, F.A.TIP SWIVEL BASE FOR PLATE |
| Marlin | ILN | | S/A, FOREARM TIP SWIVEL BASE |
| Marlin | ILN | | S/A, REAR BAND |
| Marlin | ILN | | S/A, REAR BAND SWIVEL STUD |
| Marlin | ILN | | S/A, REC/TGP  1895 POLISH FOR COLOR CASE |
| Marlin | ILN | | S/A, REC/TGP  336 |
| Marlin | ILN | | S/A, REC/TGP  444 |
| Marlin | ILN | | S/A, REC/TGP  444 150TH TO ENGRAVE |
| Marlin | ILN | | S/A, REC/TGP  95 45-70 |
| Marlin | ILN | | S/A, REC/TGP 1895XLR |
| Marlin | ILN | | S/A, REC/TGP 36SS |
| Marlin | ILN | | S/A, REC/TGP 95CB 45-70 |
| Marlin | ILN | | S/A, REC/TGP 95MR 450/410 |

83

US_Active\115569040\V-2

Case 20-81688-CRJ11    Doc 2906-16    Filed 09/30/22    Entered 09/30/22 13:49:54    Desc
Exhibit RJN 4: Order Approving Page 02 of 69   Page 171 of 249

| | | |
|---|---|---|
| Marlin | ILN | S/A, REC/TGP/BB 94CB357 |
| Marlin | ILN | S/A, REC/TGP/BB 94CB44 |
| Marlin | ILN | S/A, REC/TGP/BB 94CB45 |
| Marlin | ILN | S/A, REC/TGP/BB 94SBL |
| Marlin | ILN | S/A, REC/TGP/BB 94SS-357 |
| Marlin | ILN | S/A, REC/TGP/BB 94SS-357 SATIN |
| Marlin | ILN | S/A, REC/TGP/BB, 94MP44 |
| Marlin | ILN | S/A, SIGHT BASE ONLY (BLUED) |
| Marlin | ILN | S/A, SS REC/TGP 95GS |
| Marlin | ILN | S/A, STK ASSB 336/1895/308/444 XLR'S |
| Marlin | ILN | SAFETY, PUSH BUTTON FINISHED |
| Marlin | ILN | SAFETY, PUSH BUTTON FOR PLATE |
| Marlin | ILN | SEAR 36/95 |
| Marlin | ILN | SPUR HAMMER FOR PLATE |
| Marlin | ILN | SPUR, HAMMER BLACK OXIDE |
| Marlin | ILN | SS SPRING, LOADING 357/44 FOR PLATE |
| Marlin | ILN | STRUT, HAMMER SPRING |
| Marlin | ILN | SUB ASSM REC TGP 336 SPS |
| Marlin | ILN | SUB ASSY REC TGP 1895 WWG TO POLISH |
| Marlin | ILN | T.G.P., MARLIN, ASSEMBLY, 1894 |
| Marlin | ILN | TENON FOREARM TIP (OFFSET) |
| Marlin | ILN | TENON, FOREARM TIP |
| Marlin | ILN | TUBE, MAGAZINE - 444 150TH 22.921" |
| Marlin | ILN | TUBE, MAGAZINE 444 FINISHED (BULGE) |
| Marlin | ILN | TUBE, MAGAZINE (GS) 1895 (BULGE) |
| Marlin | ILN | TUBE, MAGAZINE 1895 (BULGE) |
| Marlin | ILN | TUBE, MAGAZINE 357C |
| Marlin | ILN | TUBE, MAGAZINE 38 SPECIAL |
| Marlin | ILN | TUBE, MAGAZINE OUTSIDE |
| Marlin | ILN | TUBE, MAGAZINE, 1895SBL (BULGE) |
| Marlin | ILN | TUBE, MAGAZINE, 336C 30 |

84

**Schedule 1.4(a)**
**Estimated Cure Amount**

1.  None.

85

US_Active\115569040\V-2

**Schedule 4.1(f)**
**Compliance with Law**

1. The Arkansas Department of Environmental Quality Consent Administrative Order No. LIS-15-051 (2015) (which, by its terms, incorporates by reference the Amended Consent Administrative Order 07-078-001 (2012), the Second Amended Consent Administrative Order 07-078-002 (2012), and the Third Amendment to Consent Administrative Order 07-078-003 (2013)), issued to Remington Arms Company, LLC, as further amended by Consent Administrative Order 15-051-001 (2017) and Consent Administrative Order 15-051-002 (2018).

2. Administrative Order on Consent, issued by the Missouri Department of Natural Resources to Remington Arms Company, LLC, No. 14-HW-E005 with regard to hazardous materials handling, storage and disposal.

3. Administrative Settlement, Agreement and Order on Consent for Remedial Investigation/Feasibility Study in the matter of Chemetco, Inc. Superfund Site, Hartford, Illinois, CERCLA Docket V-W-15-C-019 (2015).

4. Notice of Violation issued by the Arkansas Department of Environmental Quality on December 13, 2019, with regard to permitted effluent limitation violations.

5. In March 2020, the Company received a pre-litigation settlement offer from Trex Properties LLC concerning the Detrex Corporation facility located in Charlotte, NC. The offer names Para USA LLC (a Company subsidiary) is a potentially responsible party pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) for alleged transport or disposal of hazardous materials at the Detrex facility. The offer demanded a $12,000 payment to release all CERCLA, state and natural resource damage claims. Because the Company could not confirm that Para USA LLC actually deposited waste at the Trex facility, it did not accept the offer; however, the Company cannot rule out potential liability as a potentially responsible party.

6. Citation and Notification of Penalty regarding inspection number 1350744 issued by the U.S. Department of Labor, Occupational Safety and Health Administration, dated March 26, 2019 (Ilion, NY).

7. Citation and Notification of Penalty regarding inspection number 1353904 issued by the U.S. Department of Labor, Occupational Safety and Health Administration, dated March 26, 2019 (Ilion, NY).

8. Citation and Notification of Penalty regarding inspection number 314352477 issued by the U.S. Department of Labor, Occupational Safety and Health Administration, dated November 4, 2011 (Ilion, NY).

9. Citation and Notification of Penalty regarding inspection number 1130012 issued by the U.S. Department of Labor, Occupational Safety and Health Administration, dated June 8, 2016 (Lexington, MO).

10. Citation and Notification of Penalty regarding inspection number 315538082 issued by the U.S. Department of Labor, Occupational Safety and Health Administration, dated August 31, 2011 (Lexington, MO).

11. Notice of Alleged Safety or Health Hazards issued by the U.S. Department of Labor, Occupational Safety and Health Administration, regarding Complaint Number 850727 (Lexington, MO).

<u>**Schedule 4.1(g)**</u>
<u>**Contracts**</u>

1. None.

## Schedule 4.1(h)
## Material Permits

a. Environmental

| Site | Type of Permit | Permit/ID # | Regulator (Agency) | Name of Permittee |
|------|----------------|-------------|--------------------|--------------------|
| Huntsville, AL | National Pollutant Discharge Elimination System (NPDES) General Permit (Discharges: DSN001-1, DSN002-1, DSN008-1) | ALG120479 | Alabama Department of Environmental Management | Remington Outdoor Company |
| Huntsville, AL | State Indirect Discharge Permit | IU084500554 | Alabama Department of Environmental Management | Remington Outdoor Company |
| Ilion, NY | Air Permit | 6-2128-00019/00373 | New York State Department of Environmental Conservation | Remington Arms Co Inc |
| Ilion, NY | Chemical Bulk Storage Certificate | 6-000054 | New York State Department of Environmental Conservation | Remington Arms Co. Inc. |
| Ilion, NY | Hazardous Waste Reduction Plan | EPA ID: NYD002240638 | New York State Department of Environmental Conservation | Remington Arms Company, LLC |
| Ilion, NY | Discharge Permit | HCSD-002 | Herkimer County Sewer District | Remington Arms Company, LLC |
| Ilion, NY | SPDES Multi-Sector General Permit (MSGP) for Stormwater Discharges | Permit No. GP-0-17-004 SPDES ID: NYR00A796 | New York State Department of Environmental Conservation | (General Permit; no permittee identified) |
| Ilion, NY | Petroleum Bulk Storage Certificate | 6-120618 | New York State Department of Environmental Conservation | Remington Arms Company, Inc. |
| Ilion, NY | State Pollutant Discharge Elimination System (SPDES) Discharge Permit | DEC ID: 6-2128-00019/00193 SPDES No: NY0005282 | New York State Department of Environmental Conservation | Remington Arms Company, Inc. |
| Ilion, NY | SPDES | DEC ID: 6-2128-00041/00003 SPDES No: NY0245097 | New York State Department of Environmental Conservation | Remington Arms Company Inc |
| Ilion, NY | Water Withdrawal Permit | DEC #6-2128-00019/00377 | New York State Department of Environmental Conservation | Remington Arms Co Inc |
| Ilion, NY | Cooling Tower | Registration NYS#3378 | New York State Department of Environmental Conservation | Remington Arms |
| Lexington, MO | Air Pollution Control Program Basic Operating Permit | N/A | Missouri Department of Natural Resources (Air Pollution Control Program) | Remington Arms Company, Inc. |
| Lexington, MO | Construction Permit for Emission Source (four dry filter spray booths) | 0792-036 | Missouri Department of Natural Resources (Air Pollution Control Program) | S & K Industries, Inc. |

| Site | Type of Permit | Permit/ID # | Regulator (Agency) | Name of Permittee |
|---|---|---|---|---|
| Lexington, MO | Construction Permit for Emission Source (facility permit) | 0791-011 | Missouri Department of Natural Resources (Air Pollution Control Program) | S & K Industries, Inc. |
| Lexington, MO | Construction Permit for Emission Source (boiler and spray booths (4)) | 1089-006 | Missouri Department of Natural Resources (Air Pollution Control Program) | S & K Industries, Inc. |
| Lexington, MO | Construction Permit for Emission Source | 042012-009, as amended by 042012-009A | Missouri Department of Natural Resources (Air Pollution Control Program) | Remington Arms Co., Inc. |
| Lexington, MO | Construction Permit for Emission Source (cleaning oven) | Project Number 2010-01-024 | Missouri Department of Natural Resources (Air Pollution Control Program) | Remington Arms Co., Inc. |
| Lexington, MO | General State Operating Permit (Storm Water Permit for Building #1) | MOR22C032 | Missouri Department of Natural Resources (Missouri Clean Water Commission) | Remington Arms Company LLC |
| Lexington, MO | General State Operating Permit (Storm Water Permit for Building #3) | MOR22C027 | Missouri Department of Natural Resources (Missouri Clean Water Commission) | Remington Arms Company LLC |
| Lexington, MO | Haz Waste EPA ID-Bldg #3 | MOD981713175, MO(000618) | EPA and MODNR Hazwaste # | Remington Arms |
| Lexington, MO | Haz Waste EPA ID | MOD029936689, MO(000616) | EPA and MODNR Hazwaste # | Remington Arms |

b. Special Tax Stamps and Federal Firearms Licenses

| Site | Type of License/Permit | License/Permit # | Regulator (Agency) | Name of Permittee(s) |
|---|---|---|---|---|
| Huntsville, AL | Federal Firearms License | 1-63-089-01-3A-08007 | U.S. Dept. of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives | Remington Arms Co, LLC |
| Huntsville, AL | Federal Firearms License | 1-63-089-10-0E-05652 | U.S. Dept. of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives | Remington/Marlin/H&R 1871/BFI/DPMS/Bushmaster |
| Huntsville, AL | Federal Firearms License | 1-63-089-11-3E-05653 | U.S. Dept. of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives | Remington/Marlin/H&R 1871/BFI/DPMS/Bushmaster |
| Ilion, NY | Federal Firearms License | 6-16-043-10-0G-02475 | U.S. Dept. of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives | Remington/Marlin/H&R 1871/BFI/DPMS/Bushmaster |

| Site | Type of License/Permit | License/Permit # | Regulator (Agency) | Name of Permittee(s) |
|---|---|---|---|---|
| Southaven, MS | Federal Firearms License | 1-64-033-07-2G-04549 | U.S. Dept. of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives | Remington/Marlin/H&R 1871/BFI/DPMS/AAC |
| Sturgis, SD | Federal Firearms License | 3-46-093-07-3D-00877 | U.S. Dept. of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives | Remington/Marlin/Bushmaster/BFI/PA RA ORD/Dakota |
| Southaven, MS | Federal Firearms License | 1-64-033-01-0L-04862 | U.S. Dept. of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives | Remington Arms Distribution Company, LLC |
| Southaven, MS | Federal Firearms License | Pending application for Southaven Location | U.S. Dept. of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives | |

## Schedule 11.5
## Brokers and Finders

1. Ducera Partners, whose fees and expenses shall be the responsibility of Seller.

**Schedule 12.1(a)**
**Intellectual Property**

**PATENTS**

| Owner | Patent Number | Description |
|---|---|---|
| Remington Arms Company, LLC | 6,880,282 | LOCKABLE FIREARM SAFETY DEVICE |
| Remington Arms Company, LLC | 5,479,737 | FIREARM BARREL ASSEMBLY |
| Remington Arms Company, LLC | 5,487,232 | DETONATOR ASSEMBLY |
| Remington Arms Company, LLC | 5,606,825 | COCKING MECHANISM FOR A MUZZLE LOADING FIREARM |
| Remington Arms Company, LLC | RE37,968 | DETONATOR ASSEMBLY |
| RA Brands LLC | 6,519,888 | LOCKABLE FIREARM SAFETY |
| RA Brands LLC | 6,141,896 | LOCKABLE FIREARM SAFETY |
| RA Brands LLC | 6,173,518 | LOCKABLE FIREARM SAFETY |
| RA Brands LLC | 6,804,906 | LOCKABLE FIREARM SAFETY DEVICE |
| RA Brands LLC | 6,694,659 | LOCKABLE FIREARM SAFETY DEVICE |
| RA Brands LLC | 5,187,312 | TWO STAGE TRIGGER ASSEMBLY |
| RA Brands LLC | 10,254,063 | ROTARY MAGAZINE WITH BOLT HOLD OPEN ASSEMBLY |
| RA Brands LLC | 10,718,584 | ROTARY MAGAZINE WITH BOLT HOLD OPEN ASSEMBLY |

# REGISTERED TRADEMARKS

| Country | Trademark | Registration Number | Owner | Goods |
|---------|-----------|---------------------|-------|-------|
| Austria | MARLIN | 100274 | The Marlin Firearms Company | Firearms, in particular guns and shotguns, ammunition and floors, parts and accessories for aforesaid goods (not included in other classes) |
| Benelux | MARLIN | 381417 | Remington Arms Company, LLC | Firearms, especially rifles and shotguns; ammunition and projectiles; parts and accessories of all the aforementioned products |
| Canada | MARLIN | TMA494,892 | Remington Arms Company, LLC | Rifles and shotguns and ammunition therefor |
| Canada | MARLIN | TMDA32744 | Remington Arms Company, LLC | Rifles and shotguns and ammunition therefor |
| Colombia | MARLIN | 96066 | Remington Arms Company, LLC | Firearms; ammunition and shells; explosives; Fireworks |
| Denmark | MARLIN | VR198203886 | The Marlin Firearms Company | Firearms, especially rifles and shotgun, ammunition and projectiles, including shares and accessories for all the aforesaid goods (not included in other classes) |
| Finland | MARLIN | 88337 | The Marlin Firearms Company | Firearms, especially rifles and shotguns; projectiles and ammunition; parts and fittings of all aforementioned goods |
| France | MARLIN | 1202148 | The Marlin Firearms Company | Firearms, namely carbines and guns for hunting; ammunition and projectiles; parts and accessories for all these goods |

| Germany | MARLIN | 1046291 | The Marlin Firearms Company | Firearms, in particular long pipe weapons (guns) and shotguns, bolts blasting apparatus with explosive cartridges as well as parts of such weapons, rifle barrels, gun stocks, magazines and take off; ammunition and floors; explosives; fireworks |
|---|---|---|---|---|
| Greece | MARLIN | 71561 | The Marlin Firearms Company | Firearms, mainly rifles and shotguns, ammunition and projectiles, spare parts of all the above mentioned products |
| Guatemala | MARLIN | 36539 | The Marlin Firearms Company | Firearms, ammunition, projectiles, explosive substances, fireworks |
| Italy | MARLIN | 1482688 | The Marlin Firearms Company | Firearms, in particular and shotguns; ammunition and projectiles, and parts and accessories of all said goods |
| New Zealand | MARLIN | 141264 | The Marlin Firearms Company | Firearms, in particular rifles and shotguns, ammunition and projectiles; and parts and fittings in this class for all the aforesaid goods |
| Nicaragua | MARLIN | 10274 | The Marlin Firearms Company | Firearms |
| Norway | MARLIN | 116379 | The Marlin Firearms Company | Firearms, rifles and shotguns; ammunition and projectiles; their parts (not included in other classes); gun-cases, view mirror, purifiers, and trigger on guns |
| Panama | MARLIN | 186341 | Remington Arms Company, LLC | Shotguns, rifles, revolvers and their parts, firearms, equipment and projectiles |
| Paraguay | MARLIN | 480654 | The Marlin Firearms Company | Firearms; ammunition and projectiles; explosive substances; fireworks |

| | | | | |
|---|---|---|---|---|
| Peru | MARLIN | 268203 | RA Brands, L.L.C. | Firearms and parts thereof; ammunition |
| Portugal | MARLIN | 215412 | Remington Arms Company, LLC | Firearms such as rifles and shotguns, ammunition and projectiles, parts and accessories for the same |
| Spain | MARLIN | 1506915 | Remington Arms Company, LLC | Firearms, includinh shotguns, rifles, revolvers and parts of them all, and ammunition |
| Sweden | MARLIN | 182752 | The Marlin Firearms Company | Firearms, in particular rifles and shotgun; ammunition and projectiles; parts and accessories for aforesaid type of goods |
| Switzerland | MARLIN | 317594 | Remington Arms Company, LLC | Firearms, namely carbines and guns for hunting; ammunition and projectiles; their parts and accessories |
| United Kingdom | MARLIN | 649814 | The Marlin Firearms Company | Shotguns, rifles and revolvers, and parts included in Class 13, of all such goods; and ammunition |
| United States of America | MARLIN | 5,895,398 | RA Brands, L.L.C. | Firearms |
| United States of America | MARLIN | Appln. 88/376,548 (Allowed) | RA Brands, L.L.C. | Wheels and lug nuts for wheels for automobiles, ATV's (all terrain vehicles), and UTV's (utility terrain vehicles) |
| United States of America | MARLIN (Stylized) | 55,158 | Remington Arms Company, LLC | Shotguns, rifles, and parts thereof |
| United States of America | MARLIN (Stylized) | 1,181,042 | Remington Arms Company, LLC | Firearms and parts thereof |
| Colombia | MICRO-GROOVE | 96068 | Remington Arms Company, LLC | Firearms; ammunition and shells; explosives; Fireworks |
| Guatemala | MICRO-GROOVE | 36540 | The Marlin Firearms Company | Firearms, ammunition, projectiles, explosive substances, fireworks |
| Nicaragua | MICRO-GROOVE | 45308 | The Marlin Firearms Company | Firearms |

| | | | | |
|---|---|---|---|---|
| Panama | MICRO-GROOVE | 23488 | The Marlin Firearms Company | Guns, rifles, machine guns and boxes of ammunition, bullets, explosives, firearms, missiles and projectiles |
| United States of America | MICRO-GROOVE | 1,866,917 | Remington Arms Company, LLC | Rifles and barrels therefor |
| Canada | PRO-FIRE | TMA826,841 | Remington Arms Company, LLC | Triggers for firearms |
| European Union (Community) | PRO-FIRE | 9547101 | The Marlin Firearms Company | Gun lubricants and lubricants for bullets; gas for firearms; Triggers for firearms; firearms; ammunition for firearms; parts and fittings for firearms |
| Mexico | PRO-FIRE | 1260908 | The Marlin Firearms Company | Triggers for firearms |
| United States of America | PRO-FIRE | 3,893,997 | Remington Arms Company, LLC | Triggers for firearms |
| Canada | SOFT TECH | TMA877,048 | Remington Arms Company, LLC | Recoil pads for firearms sold as an integral component of firearms; recoil pads for firearms |
| European Union (Community) | SOFT TECH | 9547159 | The Marlin Firearms Company | Gun lubricants and lubricants for bullets; gas for firearms; Recoil pads for firearms; firearms; ammunition for firearms; parts and fittings for firearms |
| Mexico | SOFT TECH | 1201600 | The Marlin Firearms Company | Recoil pads for firearms |

## UNREGISTERED TRADEMARKS

(Including, but not limited to, all derivatives, variations thereof, and logos related thereto.)

| Mark | | | |
|---|---|---|---|
| Marlin Model 1897 | Marlin Model 55 | Marlin Model 27 | Marlin Model 26 |
| Marlin Model 39 | Marlin Model 80 | Marlin Model 28 | Marlin Model 25N |
| Marlin Model 39A | Marlin Model 512 | Marlin Model 31 | Marlin Model 21 |

| Marlin Model 25MG | Marlin Model 780 | Marlin Model 42 | Marlin Model 25M |
|---|---|---|---|
| Marlin Model 1881 | Marlin Model 925 | Marlin Model 43 | |
| Marlin Model 1893 | Marlin Model 882 | Marlin Model 44 | |
| Marlin Model 1894 | Marlin Model 982 | Marlin Model 49 | |
| Marlin Model 1895 | Marlin Model 2000 | Marlin Model 53 | |
| Marlin Model 36 | Marlin Model MR7 | Marlin Model 63 | |
| Marlin Model 336 | Marlin Model XT-17 | Marlin Model 120 | |
| Marlin Model 444 | Marlin Model XT-22 | Marlin Model 90 | |
| Marlin Model 60 | Marlin Model XL7 | Marlin Model 7000 | |
| Marlin Model 70 | Marlin Model XS7 | Marlin Model 20 | |
| Marlin Model 70PSS | Marlin Model No. 20 | Marlin Model 17 | |
| Marlin Model 70P | Marlin Model 1898 | Marlin Model 19 | |
| Marlin Model 795 | Marlin Model 16 | Marlin Model 24 | |

1. Long Live the Lever Gun
2. MARLIN CUSTOM
3. MARLIN CUSTOM SHOP
4. DARK SERIES
5. CAMP CARBINE
6. PAPOOSE
7. LEVERMATIC
8. COWBOY

**DOMAIN NAMES**

1. MarlinFirearms.com, and all credentials needed to administer and control such domain name, and any website code that is proprietary to Seller and unique to the website located at such domain name.

**SOCIAL MEDIA**

Access to and ownership of all main accounts, including credentials and, in the case of internet hosting, contact information for such hosting service, for all social media accounts related to the Marlin brand, including, but not limited to:

Facebook.com/MarlinFirearms

Instagram: @marlinfirearms_official and @marlinfirearmscompany

Twitter: @MarlinFirearms

YouTube.com/user/MarlinFirearms

Pinterest, if applicable

TicTok, if applicable


**COPYRIGHTED AND PRINT MATERIALS**

Source files and related artwork for all:

- Marlin Advertisements
- Marlin Digital Advertisements
- Marlin Catalogs
- Marlin Brochures
- Marlin Website and Advertisement Text and Copy

Contact information for outsourced suppliers related to, and source files for all:

- Marlin Firearms Packaging
- Marlin Accessory Packaging
- Marlin Instruction Manuals

Information regarding and, to the extent proprietarily owned, ownership of, all typeface and fonts used primarily in the Marlin Brand

**EXHIBIT 1**

(*See* attached form of Bidding Procedures Order)

S-1

Case 20-81688-CRJ11   Doc 3406-16   Filed 09/30/22   Entered 09/30/22 13:49:54   Desc
Exhibit RJN 4: Order Approving Bid Rules et APX   Page 187 of 249

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| REMINGTON OUTDOOR COMPANY, INC., *et al.*, [1] | Case No. 20-81688-11 |
| Debtors. | Joint Administration Requested |

## ORDER ESTABLISHING BIDDING PROCEDURES RELATING TO THE SALES OF ALL OR A PORTION OF THE DEBTORS' ASSETS

This matter having come before the Court upon the motion (the "**Motion**")[2] by Remington Outdoor Company, Inc., ("**Remington**" or the "**Company**"), and its affiliated debtors and debtors in possession (collectively the "**Debtors**") in the above-captioned Chapter 11 cases (collectively, the "**Chapter 11 Cases**"), seeking entry of this order (this "**Bidding Procedures Order**") (i) approving the proposed bidding procedures attached hereto as <u>Exhibit 1</u> (the "**Bidding Procedures**") by which the Debtors will solicit and select the highest or otherwise best offer for the sale of substantially all or a portion of their assets (the "**Acquired Assets**") through one or more sales of the Acquired Assets (each, a "**Sale Transaction**" or "**Sale**"); (ii) establishing procedures for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts (the "**Assumption and Assignment Procedures**");

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405). The Debtors' corporate headquarters is located at 100 Electronics Blvd SW, Huntsville, Alabama 35824.

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Motion or the Bidding Procedures, as applicable.

OMM_US:78645958.8

Case 20-81688-CRJ11   Doc 2406-16   Filed 09/30/22   Entered 09/30/22 13:40:54   Desc
Exhibit RJN 4: Order Approving Bid Pr   Page 188 of 249

(iii) approving the form and manner of notice with respect to certain procedures, protections, schedules, and agreements described herein and attached hereto, including the procedures for the Debtors' selection of one or more stalking horse bidders (each, a "**Stalking Horse Bidder**"), if any, and the provision of Bid Protections (as defined below) to such Stalking Horse Bidder, if necessary; (iv) scheduling (a) an auction (the "**Auction**") if the Debtors receive two (2) or more timely and acceptable Qualified Bids (as defined below), and (b) a final hearing (the "**Sale Hearing**") to approve one or more Sales of the Acquired Assets; and (v) granting related relief; and it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors, and other parties-in-interest; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that the Motion is a core proceeding pursuant to 28 U.S.C. § 157; and adequate notice of the Motion and opportunity for objection having been given, with no objections having been filed, or all objections having been resolved or overruled, as the case may be; and it appearing that no other notice need be given; and after due deliberation and sufficient cause therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *General Order of Reference* of the United States District Court for the Northern District of Alabama dated July 16, 1984, as amended on July 17, 1984.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The predicates for the relief granted herein are Sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.  Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Bidding Procedures Order is in the best interests of the Debtors and their respective estates, creditors, and all other parties in interest.

OMM_US:78645958.8

C.     The notice of the Motion, the Bidding Procedures Hearing, and the proposed entry of this Bidding Procedures Order was adequate and sufficient under the circumstances of the Chapter 11 Cases, and such notice complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  Accordingly, no further notice of the Motion, the Bidding Procedures Hearing, or this Bidding Procedures Order is necessary or required.

D.     The Debtors have demonstrated a compelling and sound business justification for the Court to grant the relief requested in the Motion, including, without limitation, to (i) approve the Bidding Procedures, including the procedures for selecting one or more Stalking Horse Bidders and the provision of the Bid Protections to be determined, (ii) establish the Assumption and Assignment Procedures, (iii) approve the form and manner of notice of all procedures, protections, schedules, and agreements described in the Motion and attached hereto, (iv) schedule a date for the (a) Auction and (b) Sale Hearing; and (v) grant related relief as set forth herein.  Such compelling and sound business justification, which was set forth in the Motion and on the record at the Bidding Procedures Hearing, including the *Declaration of Bradley C. Meyer in Support of Debtors' Cash Collateral Motion and Bidding Procedures Motion* (the "**Meyer Declaration**") and the *Declaration of Colin M. Adams in Support of Debtors' Cash Collateral Motion and Bidding Procedures Motion* (the "**Adams Declaration**") are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

E.     The Bidding Procedures, substantially in the form attached hereto as Exhibit 1 and incorporated herein by reference as if fully set forth in this Bidding Procedures Order, are fair, reasonable and appropriate and represent the best method for maximizing the value of the Debtors' estates.

OMM_US:78645958.8

F.      The Debtors are authorized to pay the break-up fee and expense reimbursement comprising the Bid Protections.  The Bid Protections, to the extent payable under any Stalking Horse APA, (a)(x) are actual and necessary costs and expenses of preserving the Debtors' estate within the meaning of Section 503(b) of the Bankruptcy Code, and (y) shall be treated as allowed administrative claims against the Debtors' estates pursuant to Sections 105(a) and 364(c)(1) of the Bankruptcy Code, are commensurate to the real and material benefits conferred upon the Debtors' estates by the Stalking Horse Bidders, and (c) are fair, reasonable and appropriate, including in light of the size and nature of the Sale Transaction, the necessity to announce a sale transaction for the Acquired Assets, and the efforts that have been and will be expended by the Stalking Horse Bidders.  The Bid Protections are a material inducement for, and condition of, each Stalking Horse Bidder's execution of the applicable Stalking Horse APA.  Unless it is assured that the Bid Protections will be available, the Stalking Horse Bidders are unwilling to remain obligated to consummate the Sale Transaction or otherwise be bound under its Stalking Horse APA (including the obligations to maintain its committed offer while such offer is subject to higher or better offers as contemplated by the Bidding Procedures).

G.      The Sale Notice and the Publication Notice, substantially in the forms attached hereto as <u>Exhibit 2</u> and <u>Exhibit 3</u>, respectively, and incorporated herein by reference as if fully set forth in this Bidding Procedures Order, are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the sale of Acquired Assets, including the sale of Acquired Assets free and clear of all liens, claims, and encumbrances, the Sale Transaction(s), the Bidding Procedures, the Auction and the Sale Hearing, and no other or further notice is required.

4

OMM_US:78645958.8

Case 20-81666-CRJ11    Doc 2406-16    Filed 09/08/22    Entered 09/08/22 13:49:54    Desc
Exhibit RJN 4: Order Approving Bid Proc & APA    Page 191 of 249

H.     The Post-Auction Notice, substantially in the form attached hereto as <u>Exhibit 4</u> and incorporated herein by reference as if fully set forth in this Bidding Procedures Order, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Successful Bidder(s), and no other or further notice is required.

I.     The Assumption and Assignment Notice, substantially in the form attached hereto as <u>Exhibit 5</u> and incorporated herein by reference as if fully set forth in this Bidding Procedures Order, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the potential assumption and assignment of the Designated Contracts in connection with the sale of the Acquired Assets and the related Cure Costs, and no other or further notice is required.

J.     The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014.  To the extent any findings of facts are conclusions of law, they are adopted as such.  To the extent any conclusions of law are findings of fact, they are adopted as such.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.     The Motion is granted as set forth herein.[3]

2.     All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the Bidding Procedures Hearing or by stipulation filed with the Court are overruled except as otherwise set forth herein.

---

[3] Notwithstanding anything to the contrary herein, the consummation of any Sale Transaction(s) is subject to entry of the Sale Order(s).

OMM_US:78645958.8

## I. The Timeline for the Sale

3. The Debtors are authorized to proceed with the Sale Transaction(s) in accordance with the Bidding Procedures and are authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures in accordance with the following timeline:

4. Deadline | **Action**

| Deadline | Action |
|---|---|
| August 18, 2020 at 10:00 a.m. (prevailing Central Time) | Hearing to consider approval of the Bidding Procedures and entry of the Bidding Procedures Order |
| August 21, 2020 | Sale Notice Mailing Date |
| August 21, 2020 | Assumption and Assignment Service Date |
| September 1, 2020 at 4:00 p.m. (prevailing Central Time) | Sale Objection Deadline (defined below) excluding any objection based on identity of Stalking Horse Bidders, Successful Bidder or Backup Bidder or the form or substance of the Stalking Horse Bid, Successful Bid or Backup Bid |
| September 4, 2020 at 5:00 p.m. (prevailing Central Time) | Bid Deadline |
| September 8, 2020 at 12:00 p.m. (prevailing Central Time) | Reply Deadline (defined below) |
| September 8, 2020 by 4:00 p.m. (prevailing Central Time) or 14 days following service of the Supplemental Notice of Assumption and Assignment | Assumption and Assignment Objection Deadline (defined below) excluding any objection related to adequate assurance of future performance of any Stalking Horse Bidder, Successful Bidder or Backup Bidder |
| September 17, 2020 at 10:00 a.m. (prevailing Central Time) | Auction |
| September 21, 2020 | Post-Auction Notice |
| September 23, 2020 at 10:00 a.m. (prevailing Central Time) | Sale Hearing |

OMM_US:78645958.8

5.     For the avoidance of doubt, the Debtors reserve the right, and are authorized to, modify the above timeline and the Bidding Procedures (the "**Modifications**") in accordance with the provisions of the Bidding Procedures; *provided, however*, that the Debtors shall consult with the Consultation Parties or, to the extent provided therein, the Bid Consultation Parties, with respect to any Modifications.  The Committee's right to request an extension of the above timeline for cause is expressly reserved.

## II.     The Bidding Procedures

6.     The Bidding Procedures are approved in their entirety.  The Debtors are authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures in accordance therewith.  The failure to specifically include or reference a particular provision of the Bidding Procedures in this Bidding Procedures Order shall not diminish or impair the effectiveness of such provision.

7.     The Debtors are authorized, in accordance with the Bidding Procedures, to require Diligence Parties to submit written indications of interest specifying, among other things, the Acquired Assets proposed to be acquired, the amount and type of consideration to be offered, and any other material terms to be included in a bid by such party.

8.     The process and requirements associated with submitting a Qualified Bid are approved as fair, reasonable, appropriate and designed to maximize recoveries for the benefit of the Debtors' estates, creditors, and other parties in interest.  As further described in the Bidding Procedures, the Bid Deadline shall be **September 4, 2020 at 5:00 p.m. (prevailing Central Time)**.  Any disputes or objections to the selection of Qualified Bid(s), Successful Bid(s), or Backup Bid(s) (all as defined in the Bidding Procedures) shall be resolved by this Court at the Sale Hearing as set forth herein.

OMM_US:78645958.8

9.      The Debtors are authorized to conduct the Auction in accordance with the Bidding Procedures.  The Auction shall take place on **September 17, 2020 at 10:00 a.m. (prevailing Central Time)** virtually via video conferencing technology, or at such other place and time as the Debtors shall notify all Qualified Bidders and the Consultation Parties.

10.     The Prepetition Secured Creditors shall have the right, subject in all respects to the Bankruptcy Code and other applicable law and the satisfaction in cash or assumption of claims secured by senior liens, to credit bid all or any portion of their allowed secured claims pursuant to Section 363(k) of the Bankruptcy Code or other applicable law, in accordance with the applicable provisions of the Prepetition Credit Documents and any such credit bid shall be deemed a Qualified Bid subject to the Intercreditor Agreement (as defined in the D'Arcy Declaration); *provided*, *however*, that nothing herein or in the Bidding Procedures shall affect or in any way limit the right or ability of any party in interest, including the Committee, to object to the Prepetition Secured Creditors' right to credit bid, including the nature, amount, or scope of such credit bid, subject to the (a) applicable provisions of the Court's *Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing Use Of Cash Collateral, (II) Granting Adequate Protection, (III) Modifying Automatic Stay, (IV) Granting Related Relief, and (V) Scheduling A Final Hearing* Docket No. 90, including paragraph 20 and the Challenge Period (as defined therein), as the same may be modified in accordance with its terms and (b) Sale Objection Deadline (as defined below).

### III.      Stalking Horse Bidder and Bid Protections

11.     In accordance with the Bidding Procedures, the Debtors may designate one or more Stalking Horse Bidders for the various segments of their business and may enter into an asset purchase agreement with each Stalking Horse Bidder (each, a "**Stalking Horse APA**"), subject to higher or otherwise better offers at the Auction, which establishes a minimum Qualified Bid at the Auction with respect to the assets that are the subject thereof.

OMM_US:78645958.8

12.     Absent further order of the Court, the Stalking Horse APA shall (i) limit the break-up fee in favor of the Stalking Horse Bidder in the amount of no more than 3.5% of the cash consideration proposed to be paid at closing by the Stalking Horse Bidder under the applicable Stalking Horse APA (the "**Break-Up Fee**"); (ii) limit any reimbursement for the Stalking Horse Bidder's and its attorneys', accountants', investment bankers' and representatives' documented fees and expenses actually and reasonably incurred in negotiating and documenting the Stalking Horse APA, and in preserving and protecting Stalking Horse Bidder's rights and interests as buyer and lender in connection with the Chapter 11 Cases to an amount not to exceed 1.0% of the cash consideration proposed to be paid by at closing the Stalking Horse Bidder under the applicable Stalking Horse APA (the "**Expense Reimbursement**"); and/or (iii) set the initial overbid protection (the "**Minimum Overbid Increment**" and, together with the Break-Up Fee and the Expense Reimbursement, the "**Bid Protections**") in amounts to be determined by the Debtors in accordance with the Bidding Procedures.  In the event that the Debtors determine that the Bid Protections must exceed the amounts set forth herein, the Court shall hold a hearing on the approval of any such greater Bid Protections on an expedited basis, upon the request of the Debtors.

13.     The Bid Protections, to the extent payable under the Stalking Horse APAs, shall (a) constitute an allowed administrative expense claim against the Debtors pursuant to Sections 105(a) and 364(c)(1) of the Bankruptcy Code.  Subject to the foregoing, the Bid Protections shall be paid (i) in cash from the proceeds of any approved Sale or (ii) credited against the purchase price if, after an Auction, the Stalking Horse Bid, as enhanced at the Auction, is the Successful Bid and the Sale contemplated by the Stalking Horse APA (as enhanced at the auction) is consummated.

14.     In the event that the Debtors select one or more parties to serve as a Stalking Horse Bidder, upon such selection, the Debtors shall provide, to all parties on the Rule 2002 List, all

OMM_US:78645958.8

parties expressing an interest in the Acquired Assets and all parties holding liens on such Acquired Assets, three (3) business days' notice and an opportunity to object to the determination of such Stalking Horse Bidder and disclosure of the Bid Protections set forth in the Stalking Horse APA, and absent objection, the Debtors selection of such Stalking Horse Bidder shall be deemed designated without further order of the Court. To the extent necessary, the Debtors' right to seek this Court's approval of one or more Stalking Horse Bidders, with notice and a hearing, is hereby preserved.

**IV.    Notice Procedures**

15.    The form of Sale Notice substantially in the form attached hereto as <u>Exhibit 2</u> is approved.

16.    Within seven (7) days after the entry of this Bidding Procedures Order or as soon as reasonably practicable thereafter, the Debtors shall serve the Sale Notice and this Bidding Procedures Order, including the Bidding Procedures by first-class mail, postage prepaid, or, for those parties who have consented to receive notice by the Electronic Case Files ("**ECF**") system, by ECF, upon (i) all entities reasonably known to have expressed an interest in a transaction with respect to all or part of the Acquired Assets within the past two years; (ii) any parties identified by AlixPartners as potential bidders; (iii) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon or with respect to any of the Acquired Assets; (iv) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief granted herein; (v) counsel for the Committee; (vi) counsel to Cantor Fitzgerald Securities, as Priority Term Loan Agent under the Debtors' prepetition Priority Term Loan Credit Agreement; (vii) counsel to Ankura Trust Company, LLC, as FILO Agent under the Debtors' prepetition FILO Term Loan Agreement, and as Exit Term Loan Agent under the Debtors' prepetition Exit Term Loan Agreement; (viii) counsel to FILO Lenders; (ix) counsel to

10

OMM_US:78645958.8

Case 20-81688-CRJ11   Doc 2906-16   Filed 09/30/22   Entered 09/30/22 13:40:54   Desc
Exhibit RJN 4: Order Approving Bid Proc as APA   Page 197 of 249

the Stalking Horse Bidder, if any; (x) counsel to Whitebox Advisors LLC; (xi) counsel for the Restructuring Committee; (xii) counsel to the Huntsville Note holder; (xiii) the Bankruptcy Administrator; (xiv) the Securities and Exchange Commission; (xv) the Internal Revenue Service; (xvi) counsel to the United Mine Workers of America; and (xvii) all known creditors of the Debtors, including their contract counterparties; *provided, however*, that to the extent email addresses are available, parties referenced in this paragraph 15 may be served by email.

17.     Service of the Sale Notice as described above shall be sufficient and proper notice of the Sale Transaction with respect to known interested parties.

18.     The Publication Notice, substantially in the form attached hereto as <u>Exhibit 3</u>, is approved. The Debtors are directed to publish the Sale Notice, as modified for publication, in the *New York Times*, on one occasion on the Mailing Date or as soon as reasonably practicable thereafter. In addition, the Debtors are authorized, but not directed, to (i) publish the Sale Notice in additional publications as the Debtors deem appropriate and (ii) cause the Sale Notice to be posted on their case information website at https://cases.primeclerk.com/RemingtonOutdoor.

19.     Service of the Publication Notice as described above shall be sufficient and proper notice of the Sale Transaction with respect to all unknown parties.

20.     The form of the Post-Auction Notice, substantially in the form attached hereto as <u>Exhibit 4</u> is approved. As soon as reasonably practicable after the conclusion of the Auction, the Debtors shall file on the docket, but not serve, the Post-Auction Notice identifying any Successful Bidder(s).

## V.     Assumption and Assignment Procedures

21.     The Assumption and Assignment Procedures, as detailed in the Motion and incorporated herein by reference as if fully set forth in this Bidding Procedures Order, are approved.

OMM_US:78645958.8

22. The Notice of Assumption and Assignment, substantially in the form attached hereto as Exhibit 5 is approved.

23. On or before **August 21, 2020** (any such date, the "**Assumption and Assignment Service Date**"), the Debtors shall file with the Court, and post on the Case Website at https://cases.primeclerk.com/RemingtonOutdoor, the Notice of Assumption and Assignment and Designated Contracts List. If no Cure Cost is listed on the Designated Contracts List, the Debtors believe that there is no Cure Cost, as of the date of such notice. On the Assumption and Assignment Service Date, the Debtors shall serve, via first-class mail, a customized version of the Notice of Assumption and Assignment that contains the DCL Instructions and Necessary Notice Information, but omits the Designated Contracts List, on all counterparties to the Designated Contracts. In addition, the Debtors shall serve, via first-class mail, a modified version of the Notice of Assumption and Assignment that contains the DCL Instructions and Necessary Notice Information, but omits the Designated Contracts List on all parties on the Rule 2002 Notice List. Service of such Notice of Assumption and Assignment as set forth herein shall be deemed proper, due, timely, good and sufficient notice of, among other things, the proposed assumption and assignment of the Designated Contracts and rights thereunder, the Cure Costs, and the procedures for objecting thereto, and no other or further notice is necessary.

24. Any objection by a counterparty to a Designated Contract (which does not, for the avoidance of doubt, include any objection regarding the adequate assurance of future performance of any Stalking Horse Bidder, Successful Bidder or the Backup Bidder) (a "**Designated Contract Objection**") must (i) be to the proposed assumption and assignment of the applicable Designated Contract or Cure Costs, if any; (ii) state, with specificity, the legal and factual basis thereof as well as what Cure Costs such objecting party believes are required, if any; and (iii) include appropriate

OMM_US:78645958.8

documentation in support thereof.  All Designated Contract Objections must be filed and served on (i) counsel for the Debtors, O'Melveny & Myers LLP, 400 South Hope Street, 18th Floor, Los Angeles, CA   90071, Attn:   Steve Warren (swarren@omm.com) and Jennifer Taylor (jtaylor@omm.com); (ii) co-counsel for the Debtors, Burr & Forman LLP, 420 North 20th Street, Suite 3400, Birmingham, Alabama 35203, Attn: Derek Meek (dmeek@burr.com) and Hanna Lahr (hlahr@burr.com); (iii) counsel for the Restructuring Committee, Akin Gump Strauss Hauer & Feld LLP, 2300 N. Field Street, Suite 1800, Dallas, TX 75201, Attn: Sarah Schultz (sschultz@akingump.com); (iv) counsel for the Committee, Fox Rothschild LLP, 345 California Street, Suite 2200, San Francisco, California 94104, Attn: Michael A. Sweet (msweet@foxrothschild.com) and Baker Donelson Bearman Caldwell & Berkowitz, P.C., 420 20th Street North, Birmingham, Alabama 35203, Attn: Matthew Cahill (mcahill@bakerdonelson.com) and Rita Hullett (rhullett@bakerdonelson.com); (v) the Bankruptcy Administrator, 400 Well Street, Decatur, Alabama 35602, Attn:  Richard Blythe (richard_blythe@alnba.uscourts.gov); (vi) counsel to the Stalking Horse Bidder, if any; (vii) counsel to the FILO Lenders, Pillsbury Winthrop Shaw Pittman LLP, Four Embarcadero Center, 22nd Floor, San Francisco, CA 94111-5998, Attn: Joshua D.   Morse   (joshua.morse@pillsburylaw.com)   and   Andrew   V.   Alfano (andrew.alfano@pillsburylaw.com); (viii) counsel to Whitebox Advisors LLC, Brown Rudnick LLP, One Financial Center, Boston, Massachusetts 02111, Attn: Andreas Andromalos (aandromalos@brownrudnick.com) and Tia C. Wallach (twallach@brownrudnick.com); (ix) all parties that have requested notice in the Chapter 11 Cases  (collectively (i)–(ix), the "**Objection Recipients**"); and (x) counsel to any Successful Bidder(s), if known on the Sale Objection Deadline no later than 4:00 p.m. (prevailing Central Time) fourteen (14) days following the

OMM_US:78645958.8

Assumption and Assignment Service Date (the "**Assumption and Assignment Objection Deadline**").

25.     If a Designated Contract Objection is not consensually resolved before the Sale Hearing, the amount to be paid or reserved with respect to such objection shall be determined at the Sale Hearing, such later hearing date that the Debtors determine in their discretion, or such other date determined by this Court.

26.     Any time after the Assumption and Assignment Service Date and before the closing of a Sale Transaction, the Debtors reserve the right, and are authorized but not directed, to (i) supplement the Designated Contracts List with previously omitted Designated Contracts in accordance with the definitive agreement for a Sale Transaction, (ii) remove a Designated Contract from the list of contracts that a Successful Bidder proposes be assumed and assigned to it in connection with a Sale Transaction, or (iii) modify the previously stated Cure Cost associated with any Designated Contract.

27.     In the event the Debtors exercise any of the rights listed above, the Debtors shall promptly serve the Supplemental Notice of Assumption and Assignment by electronic transmission, hand delivery, or overnight mail on the counterparty (and its attorney, if known) to each Designated Contract listed on the Supplemental Notice of Assumption and Assignment at the last known address available to the Debtors.  Each Supplemental Notice of Assumption and Assignment shall set forth (i) the name and address of the counterparty to the Designated Contract listed thereon; (ii) the proposed effective date of the assignment (subject to the right of the applicable Successful Bidder, if any, to withdraw such request for assumption and assignment of that Designated Contract prior to the closing of the applicable Sale Transaction); (iii) sufficient information to identify the Designated Contract; (iv) the Cure Costs, if any; and (v) proposed

14

OMM_US:78645958.8

Case 20-81688-CRJ11   Doc 906-16   Filed 09/08/22   Entered 09/08/22 13:49:54   Desc
Exhibit RJN 4: Order Approving Bid Proc & AP   Page 201 of 249

adequate assurance, if known on the Assumption and Assignment Service Date. The Debtors are authorized, but not directed, to modify the Supplemental Notice of Assumption and Assignment as necessary and appropriate to provide customized individual notice to each Designated Contract counterparty. In addition, the Debtors are authorized, but not directed, to supplement the Designated Contract List on the Case Website with any additional Designated Contracts as the Debtors deem appropriate in their discretion. Service of such Supplemental Notice of Assumption and Assignment as set forth herein shall be deemed proper, due, timely, good and sufficient notice of, among other things, the proposed assumption and assignment of the Designated Contracts and rights thereunder, the Cure Costs, and the procedures for objecting thereto, and no other or further notice is necessary.

28.     Any objection by a counterparty to a Designated Contract listed on a Supplemental Notice of Assumption and Assignment (which does not, for the avoidance of doubt, include any objection regarding the adequate assurance of future performance of any Stalking Horse Bidder, Successful Bidder or the Backup Bidder) (a "**Supplemental Designated Contract Objection**") must (i) be to the proposed assumption and assignment of the applicable Designated Contract or the proposed Cure Costs, if any; (ii) state, with specificity, the legal and factual basis thereof as well as what Cure Costs such objecting party believes are required, if any; (iii) include appropriate documentation in support of the objection; and (iv) be filed and served on the Objection Recipients no later than fourteen (14) days from the date of service of such Supplemental Notice of Assumption and Assignment.

29.     If a Supplemental Designated Contract Objection is not consensually resolved by the proposed effective date of assignment of the Designated Contract that is the subject of a Supplemental Designated Contract Objection, the Debtors shall seek an expedited hearing before

OMM_US:78645958.8

Case 20-81688-CRJ11   Doc 2406-16   Filed 09/30/22   Entered 09/30/22 13:49:54   Desc
Exhibit RJN 4: Order Approving Procedures AP   Page 202 of 249

the Court (a "**Supplemental Designated Contract Hearing**") to determine the Cure Costs, if any, and approve the assumption of the relevant Designated Contracts. If there is no such objection, then the Debtors shall obtain an order of this Court, including by filing a certification of no objection, (a "**Supplemental Designated Contract Order**") fixing the Cure Costs and approving the assumption of any Designated Contract listed on a Supplemental Notice of Assumption and Assignment.

30.     Absent the filing of a Designated Contract Objection or Supplemental Designated Contract Objection and a subsequent order of the Court establishing an alternative Cure Cost, the Cure Costs, if any, set forth in the Notice of Assumption and Assignment (or Supplemental Notice of Assumption and Assignment) shall be controlling, notwithstanding anything to the contrary in any Designated Contract or any other document, and the counterparty to the Designated Contract will be deemed to have consented to the assumption, assignment, and sale of the Designated Contract and the Cure Costs, if any, and will be forever barred from asserting any other claims related to such Designated Contract against the Debtors or the applicable Successful Bidder, or the property of any of them, except with respect to adequate assurance of future performance by such Successful Bidder. For the avoidance of doubt, any objections to the proposed form of adequate assurance of future performance of any Successful Bidder (other than a Stalking Horse Bidder) must be raised at the Sale Hearing or Supplemental Designated Contract Hearing, as applicable, and will be resolved at the hearing at which it is raised or, in the Debtors' discretion, adjourned to a later hearing.

31.     The inclusion of a Designated Contract on the Notice of Assumption and Assignment (or Supplemental Notice of Assumption and Assignment) will not (a) obligate the Debtors to assume any Designated Contract listed thereon nor the Successful Bidder(s) to take

OMM_US:78645958.8

assignment of such Designated Contract or (b) constitute any admission or agreement of the Debtors that such Designated Contract is an "executory" contract. Only those Designated Contracts that are included on a schedule of assumed and Acquired Contracts attached to the final purchase agreement with the Successful Bidder(s) (each, an "**Acquired Contract**") will be assumed and assigned to the Successful Bidder(s).

32.    Assignment by the Debtors to the Successful Bidder of a contract, lease or any other liability assumed under Section 365 of the Bankruptcy Code or otherwise relieves the Debtors and their estates from any such liability so assigned.

## VI.    The Sale Hearing

33.    A Sale Hearing to (i) approve a sale of a portion or substantially all of the Acquired Assets to the Successful Bidder(s) and (ii) authorize the assumption and assignment of certain executory contracts and unexpired leases shall be held on **September 23, 2020 at 10:00 a.m. (prevailing Central Time)**, and may be adjourned or rescheduled without notice, subject to paragraph 4 of this Bidding Procedures Order. At the Sale Hearing, the Debtors will seek Bankruptcy Court approval of the Successful Bid(s) and the Backup Bid(s) (if any). Unless the Bankruptcy Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on matters relating to the Sale Transaction(s) and there will be no further bidding at the Sale Hearing. In the event that the Successful Bidder(s) cannot or refuses to consummate the Sale(s) because of the breach or failure on the part of such Successful Bidder, the Debtors may, in accordance with the Bidding Procedures, designate the Backup Bid to be the new Successful Bid and the Backup Bidder to be the new Successful Bidder, and the Debtors shall be authorized, but not required, to consummate the applicable transaction with the Backup Bidder without further order of the Bankruptcy Court.

OMM_US:78645958.8

34.     Any and all objections, if any, to any Sale Transaction (but excluding any objection based on the specific identity of any Stalking Horse Bidder, the form or substance of any Stalking Horse APA, the specific identity of the Successful Bidder or the Backup Bidder, or the form or substance of the Successful Bid or the Backup Bid) must be filed no later than **September 1, 2020 at 4:00 p.m. (prevailing Central Time)** (the "**Sale Objection Deadline**").  Any and all such objections must be served on the Objection Recipients and counsel to any Successful Bidder(s), if known on the Sale Objection Deadline.  All replies to such objections must be filed by **September 8, 2020 at 12:00 p.m.** (prevailing Central Time) (the "**Reply Deadline**").

35.     Any party failing to timely file an objection to any Sale Transaction will be forever barred from objecting and will be deemed to have consented to any Sale Transaction, including the transfer of the Debtors' right, title and interest in, to, and under the Debtors' Acquired Assets free and clear of any and all liens, claims, encumbrances and other interests in accordance with a definitive agreement for any Sale Transaction.

36.     Promptly following the Auction, the Debtors shall serve the Post-Auction Notice. The Debtors propose that any objections regarding the adequate assurance of future performance of the Successful Bidder or the Backup Bidder (other than the Stalking Horse Bidder) may be raised at the Sale Hearing.

**VII.    Other Provisions**

37.     Notwithstanding anything herein or in the Bidding Procedures to the contrary, the Debtors shall not be permitted to modify the consultation rights of the Consultation Parties or the Bid Consultation Parties in the Bidding Procedures absent further order of this Court or the consent of any affected Consultation or Bid Consultation Parties.

38.     Oneida's rights and priority in connection with any security interests it held in any assets of the Debtors pre-petition are hereby preserved and retained by Oneida to the extent they

OMM_US:78645958.8

existed pre-petition and any such security interests shall attach to proceeds of such assets with the same priority, extent, validity, avoidability and enforceability. Nothing herein shall constitute a finding or ruling by this Court that any such security interests are valid, senior, enforceable, perfected or non-avoidable. Moreover, nothing shall prejudice the rights of any party in interest including, but not limited to, the Debtors and any Committee to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any such security interest.

39.     The Debtors are authorized and empowered to take such action as may be necessary to implement and effect the terms and requirements established under this Bidding Procedures Order.

40.     This Bidding Procedures Order shall be binding on and inure to the benefit of the Debtors, including any Chapter 7 or Chapter 11 trustee or other fiduciary appointed for the estates of the Debtors.

41.     This Bidding Procedures Order shall constitute the findings of fact and conclusions of law and shall take immediate effect upon execution hereof.

42.     To the extent this Bidding Procedures Order is inconsistent with any prior order or pleading with respect to the Motion in these cases, the terms of this Bidding Procedures Order shall govern.

43.     To the extent any of the deadlines set forth in this Bidding Procedures Order do not comply with the Local Rules, such Local Rules are waived and the terms of this Bidding Procedures Order shall govern.

44.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014, or otherwise, this Court, for good cause shown, orders that the terms and conditions of this Bidding Procedures Order shall be immediately effective and enforceable upon its entry.

OMM_US:78645958.8

45.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Bidding Procedures Order, including, but not limited to, any matter, claim, or dispute arising from or relating to the Bidding Procedures, any Stalking Horse APA, and the implementation of this Bidding Procedures Order.

Dated: _____, 2020

_____
UNITED STATES BANKRUPTCY JUDGE

OMM_US:78645958.8

**Exhibit 1**

**Bidding Procedures**

OMM_US:78645958.8

ASSET PURCHASE AGREEMENT

by and among

LONG RANGE ACQUISITION LLC as Buyer,

and

REMINGTON OUTDOOR COMPANY, INC.

and

EACH OF THE SUBSIDIARIES OF REMINGTON OUTDOOR COMPANY, INC.,

as Seller

SET FORTH ON THE SIGNATURE PAGES HERETO

Dated as of September 25, 2020

# TABLE OF CONTENTS

ARTICLE 1. PURCHASE AND SALE OF THE ACQUIRED ASSETS ................................. 5

    Section 1.1      Transfer of Acquired Assets .................................... 5
    Section 1.2      Excluded Assets .................................................... 6
    Section 1.3      Assumption of Liabilities ...................................... 8
    Section 1.4      Retention of Liabilities ......................................... 9
    Section 1.5      Non-Assignment of Acquired Assets.................... 10
    Section 1.6      Further Conveyances and Assumptions................. 10
    Section 1.7      Conflicts with Other Bidders

ARTICLE 2. CONSIDERATION ................................................................................. 10

    Section 2.1      Consideration ...................................................... 10
    Section 2.2      Good Faith Deposit .............................................. 11

ARTICLE 3. CLOSING AND DELIVERIES................................................................ 11

    Section 3.1      Closing ............................................................... 11
    Section 3.2      Seller's Deliveries ............................................... 11
    Section 3.3      Buyer's Deliveries .............................................. 12

ARTICLE 4. REPRESENTATIONS AND WARRANTIES ............................................. 13

    Section 4.1      Representations and Warranties of Seller ............ 13
    Section 4.2      Representations and Warranties of Buyer ............ 15
    Section 4.3      Warranties Exclusive; Schedules......................... 16
    Section 4.4      Survival of Representations and Warranties.......... 17

ARTICLE 5. COVENANTS OF THE PARTIES ........................................................... 17

    Section 5.1      Covenants of Seller............................................. 17
    Section 5.2      Covenants of Buyer............................................. 18

ARTICLE 6. ADDITIONAL AGREEMENTS .............................................................. 19

    Section 6.1      Bankruptcy Matters............................................ 19
    Section 6.2      Transition Arrangements ..................................... 20
    Section 6.3      Further Assurances.............................................. 21

ARTICLE 7. TAXES................................................................................................. 21

    Section 7.1      Taxes Related to Purchase of Assets .................... 21
    Section 7.2      Cooperation on Tax Matters ................................ 21
    Section 7.3      Allocation of Purchase Price ............................... 22

ARTICLE 8. CONDITIONS PRECEDENT TO PERFORMANCE BY PARTIES ................. 22

    Section 8.1      Conditions Precedent to Performance by Seller ................. 22
    Section 8.2      Conditions Precedent to Performance by Buyer ................. 23

ARTICLE 9. TERMINATION..................................................................................... 24

    Section 9.1      Conditions of Termination................................... 24
    Section 9.2      Effect of Termination; Remedies......................... 25

# TABLE OF CONTENTS
(continued)

Section 9.3        Intentionally Omitted              27

ARTICLE 10. MISCELLANEOUS ................................................................. 27

Section 10.1       Successors and Assigns.................................................. 27
Section 10.2       Governing Law; Jurisdiction............................................ 27
Section 10.3       WAIVER OF JURY TRIAL ............................................. 27
Section 10.4       Expenses ..................................................................... 27
Section 10.5       Broker's and Finder's Fees ............................................ 28
Section 10.6       Severability ................................................................. 28
Section 10.7       Notices ........................................................................ 28
Section 10.8       Amendments; Waivers.................................................. 29
Section 10.9       Time of Essence .......................................................... 29
Section 10.10      Public Announcements ................................................. 29
Section 10.11      Entire Agreement......................................................... 29
Section 10.12      Parties in Interest......................................................... 30
Section 10.13      Bulk Sales Laws.......................................................... 30
Section 10.14      Construction ................................................................ 30
Section 10.15      Counterparts and Facsimile.......................................... 30

ARTICLE 11. DEFINITIONS ..................................................................... 30

Section 11.1       Certain Terms Defined.................................................. 30
Section 11.2       All Terms Cross-Referenced.......................................... 37

## SCHEDULES

Schedule 1.1(j)      -     Intellectual Property
Schedule 1.2(x)      -     Excluded Assets
Schedule 1.4(l)      -     Excluded Liabilities
Schedule 1.5(a)      -     Cure Amounts
Schedule 4.1(g)      -     Compliance with Law
Schedule 4.1(i)      -     Material Permits
Schedule 11.1(a)     -     Business Name

## EXHIBIT

Exhibit 1            -     Bidding Procedures Order

# ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "<u>Agreement</u>"), dated as of September 25, 2020 (the "<u>Effective Date</u>"), is entered into by and among Remington Outdoor Company, Inc., a Delaware corporation and debtor-in-possession ("<u>ROC</u>"), each of the subsidiaries of ROC set forth on the signature pages to this Agreement (collectively with ROC, "<u>Seller</u>"), and Long Range Acquisition LLC ("<u>Buyer</u>"), or a Buyer Acquisition Vehicle as assignee in accordance with <u>Section 11.1</u>. Capitalized terms used in this Agreement are defined or cross-referenced in <u>Article 12</u>.

## *RECITALS*

A.    Seller is engaged in the manufacture and sale of semi-automatic, lever-action and bolt-action rifles under the brand Marlin Firearms Company (the "<u>Business</u>"), and owns various assets related to the Business. On July 27, 2020 (the "<u>Petition Date</u>"), Seller filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code, 11 U.S.C. §§ 101, *et seq.* (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Northern District of Alabama (the "<u>Bankruptcy Court</u>" and the case arising under such petition, the "<u>Bankruptcy Case</u>").

B.    On the Petition Date, Seller filed a Motion for (I) an Order Establishing Bidding Procedures and Granting Related Relief and (II) an Order or Orders Approving the Sale of the Debtors' Assets (the "<u>Bidding Procedures Motion</u>") pursuant to which Seller sought, and the Bankruptcy Court approved, the Bidding Procedures Order attached hereto as <u>Exhibit 1</u> (the "<u>Bidding Procedures Order</u>").

C.    Buyer desires to purchase the Acquired Assets free and clear of Liens, Claims and Interests (other than Permitted Liens), except for assumption of the Assumed Liabilities from Seller, and Seller desires to sell, convey, assign and transfer to Buyer, the Acquired Assets together with the Assumed Liabilities, all in the manner and subject to the terms and conditions set forth in this Agreement and in accordance with Sections 105, 363 and 365 and other applicable provisions of the Bankruptcy Code.

D.    Buyer, in exchange for the transfer to Buyer of the Acquired Assets, desires to provide certain consideration (as set forth below) to Seller.

E.    The Acquired Assets and Assumed Liabilities are assets and liabilities of Seller, which are to be purchased and assumed by Buyer pursuant to an order of the Bankruptcy Court approving such sale pursuant to Sections 105, 363 and 365 of the Bankruptcy Code (the "<u>Sale Order</u>"), which order will include the authorization for the assumption by Seller and assignment to Buyer of certain executory contracts and unexpired leases and liabilities thereunder under Section 365 of the Bankruptcy Code, all in the manner and subject to the terms and conditions set forth in this Agreement and the Sale Order and in accordance with the applicable provisions of the Bankruptcy Code. The consummation of the transactions set forth in this Agreement is subject, among other things, to the entry of the Sale Order.

## *STATEMENT OF AGREEMENT*

NOW, THEREFORE, in consideration of the foregoing and their respective representations, warranties, covenants and agreements herein contained, and other good and valuable

Case 20-81688-CRJ11  Doc 2906-25  Filed 09/30/22  Entered 09/30/22 12:40:54  Desc
Exhibit RJN 4: Order Approving Buyer of APA  Page 212 of 249

consideration the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer agree as follows:

## ARTICLE 1. <u>PURCHASE AND SALE OF THE ACQUIRED ASSETS</u>.

Section 1.1 <u>Transfer of Acquired Assets</u>.   At the Closing, upon and subject to  the terms and conditions set forth in this Agreement, Seller shall sell to Buyer, and Buyer shall acquire from Seller, all of Seller's right, title and interest in and to the Acquired Assets free and clear of all Liens, Claims and Interests (other than Permitted Liens and the Assumed Liabilities). For all purposes under this Agreement, the term "<u>Acquired Assets</u>" shall not include any Excluded Assets, and shall mean the following assets, Interests and rights of Seller existing as of the Closing Date:

(a)      all of Seller's owned (i) equipment, machinery, furniture, fixtures and improvements, tooling and spare parts and any other tangible personal property (including without limitation consumables) located at the premises of the Business that is in any of the foregoing cases primarily used for the ownership, operation or management of the Business (the "<u>Owned FF&E</u>"), and (ii) to the extent assignable, rights to any warranties and licenses received from manufacturers and sellers of the Owned FF&E;

(b)      all of Seller's (i) equipment, machinery, furniture, fixtures and improvements, tooling and spare parts primarily used for the ownership, operation or management of the Business, that are in each case leased pursuant to any Contract (the "<u>Assumed FF&E Leases</u>" and the equipment, machinery, furniture, fixtures and improvements, tooling and spare parts so leased, the "<u>Leased FF&E</u>"), (ii) rights under the Assumed FF&E Leases, and (iii) to the extent assignable, rights to any warranties and licenses received from manufacturers and lessors of the Leased FF&E;

(c)      all  proceeds and recoveries from, policies (but not, for the avoidance of doubt, any Insurance Policies themselves) to the extent attributable to any of the Acquired Assets only to the extent in respect of periods on or after the Effective Date) (the rights described in this <u>Section 1.1(c)</u> being collectively the "<u>Assumed Policy Rights</u>");

(d)      to the extent transferable under applicable Law, all Permits issued to Seller by any Government that are primarily used in connection with the ownership, operation and/or management of the Acquired Assets, and all pending applications therefor; all (i) Intellectual Property owned or used by Seller that primarily relate to the ownership, operation and/or management of the Business and any and all corresponding rights that, now or hereafter, may be secured throughout the world, and (ii) to the extent transferable under applicable Law, Intellectual Property licensed to Seller primarily in connection with the ownership, operation and/or management of the Business (this clause (ii), being the "Assumed IP Licenses", and clause (d) being collectively, the "<u>Acquired Intellectual Property</u>");

(e)      all goodwill and other intangible assets associated with the Acquired Intellectual Property or any of the Acquired Assets

(f)      Claims held by Seller that relate to Acquired Assets;

(g)      All other tangible or intangible assets of Seller primarily used in connection with the ownership, operation and/or management of the Business; and

5

Case 20-81688-CRJ11   Doc 2406-5   Filed 09/30/22   Entered 09/30/22 13:49:54   Desc
Exhibit RJN 4: Order Approving Sale of A4A   Page 213 of 249

(h)     to the extent permitted by applicable Law, all Documents that are primarily used in, or primarily held for use in, or that primarily relate to, the Acquired Assets; provided, that Buyer shall provide (i) Seller with reasonable access (during business hours with reasonable prior notice and subject to then-applicable COVID Restrictions) to the same following the Closing to the extent reasonably necessary to permit Seller to wind-down and liquidate its estate after the Closing and (ii) any other buyer of ROC's lines of business or assets pursuant to the auction contemplated by the Bidding Procedures Order (an "Other Buyer") reasonable access at such Other Buyer's sole cost and expense, including the ability to make copies (during business hours with reasonable prior notice and subject to then-applicable COVID Restrictions) to the extent reasonably related to the assets of ROC purchased by such Other Buyer; and provided, further, that as a condition to such access, Seller and each such Other Buyer shall each keep such information confidential in accordance with all contractual requirements and any applicable Laws (or in the case of any such Other Buyer, a confidentiality agreement reasonably acceptable to Buyer).

Section 1.2 Excluded Assets. Except as provided in Section 1.1, the Acquired Assets shall not include any right, title or interest of any Person other than Seller in any property or asset, or Seller's right, title and interest in, to and under properties and assets not used in connection with the ownership, operation and/or to management of the Business, and shall specifically exclude the following properties, Contracts, Leases, and other assets, interests and rights of Seller (all such items not being acquired by Buyer being referred to in this Agreement as the "Excluded Assets"):

(a)     all rights of every nature and description (other than Assumed Policy Rights) under or arising out of all insurance policies of Seller (the "Insurance Policies"), including without limitation (i) with respect to Claims arising prior to the Effective Date (ii) to the extent of coverage of any Excluded Liabilities, (iii) under those insurance policies covering any tort liabilities that are not Assumed Liabilities, and (iv) under the D&O Insurance;

(b)     any asset that is not owned or leased by Seller or not used or held for use in connection with the ownership, operation and management of the Business;

(c)     any minute books, stock ledgers, corporate seals and stock certificates of Seller, and other similar books and records that Seller is required by Law to retain and all Tax Returns, financial statements and corporate or other entity filings; provided that (i) Seller shall provide Buyer with reasonable access to the same following the Closing to the extent relating to the Acquired Assets and when reasonably requested by Buyer and (ii) Buyer shall be entitled upon reasonable request to be provided with copies of all such records, at its own expense, and provided, further, that Seller shall notify Buyer before disposing of any such records and upon Buyer's reasonable request shall transfer them to Buyer;

(d)     all (i) prepaid premiums in respect of all Insurance Policies, (ii) retainers, prepayments or on-account cash paid to Seller's professionals and advisors, including any carve-out under any DIP Facility or cash collateral arrangements (whether retained in the Bankruptcy Case or otherwise), and (iii) other deposits, prepaid charges and expenses paid by Seller to the extent in connection with or relating to any Excluded Asset;

(e)     all rights to or claims for refunds, overpayments or rebates of Pre-Closing

6

Taxes, including any refunds, overpayments or rebates of Pre-Closing Taxes for any Straddle Period, other than, in any of the foregoing cases, any such refunds, overpayments or rebates that are attributable to Taxes actually paid by Buyer;

(f)     all shares of capital stock (and any other equity interests or rights convertible into equity interests) issued by any Seller entity;

(g)     all Documents primarily relating to any Excluded Asset; provided, that Seller shall provide Buyer with reasonable access at Buyer's sole cost and expense, including the ability to make copies (during business hours with reasonable prior notice and subject to then-applicable COVID Restrictions) to the same to the extent reasonably related to the Acquired Assets;

(h)     all Documents primarily relating to any Employees who do not become Transferred Employees; provided that, to the extent permitted by applicable Law, Seller shall make copies of such Documents available to Buyer if reasonably related to addressing or defending any Employee claims against Buyer;

(i)     subject to Section 1.5, any asset that requires the consent of a third party to be transferred, assumed or assigned hereunder as to which, by the Closing Date (and after giving effect to the entry of the Sale Order and any other Order of the Bankruptcy Court eliminating any contractual right of third parties to withhold such consent), such consent to transfer, assumption or assignment has not been effected or excused (for clarity, all liabilities associated with each such asset are excluded from Assumed Liabilities pursuant to Section 1.4(a));

(j)     all Employee Benefit Plans and all assets of, and Contracts primarily relating to or associated with such plans;

(k)     all Cash and all accounts or notes receivable held by Seller, and any security, claim, remedy or other right related to any of the foregoing;

(l)     any rights of Seller under this Agreement or any Ancillary Agreement to which Seller is a party, including without limitation any rights relating to the Gross Closing Cash Payment;

(m)     copies of all Historic Firearms Books and Records of Seller; provided, that Seller shall provide Buyer with reasonable access at Buyer's sole cost and expense, including the ability to make copies (during business hours with reasonable prior notice and subject to then-applicable COVID Restrictions) to the same to the extent reasonably related to the Acquired Assets;

(n)     all Documents of Seller held by Seller or Seller's counsel relating to the Excluded Liabilities;

(o)     the D&O Insurance, and all proceeds thereof;

(p)     all rights of recovery, insurance, rights of set-off, rights of indemnity, contribution or recoupment, warranties, guarantees, rights, remedies, counter-claims, cross-claims and defenses related to any Excluded Asset or Excluded Liability;

7

(q)     all Leases pursuant to which Seller has the right to possess, use, lease or occupy (or grant others the right to possess, use, lease or occupy) any Leased Real Property, together with all security and other deposits related thereto, prepaid rent and appurtenances thereto and associated therewith;

(r)     all Owned Real Property of Seller;

(s)     all of Seller's cars, trucks and other motor vehicles, whether owned or leased, including all rights to the warranties and licenses received from manufacturers and sellers of the such motor vehicles;

(t)     all Employee Benefit Plans of Seller and all assets of, and Contracts relating to or associated with, such Employee Benefit Plans;

(u)     all sales orders or other commitments of Seller to purchase goods, services or products produced or sold by the Business;

(v)     all outstanding purchase orders or other commitments of Seller to suppliers of goods and services for materials, supplies;

(w)     all Avoidance Actions;

(x)     any properties, Contracts, Leases, or other assets, interests and rights of Seller that (i) do not relate to the ownership, operation or management of the Acquired Assets or are otherwise set forth on Schedule 1.2(x); and

(y)     Claims held by Seller against any party that are covered by, relate to or are based upon the D&O Insurance Policy or other insurance policy of Seller other than the Assumed Insurance Policies.

Section 1.3 Assumption of Liabilities. At the Closing, Buyer shall assume, and Buyer agrees to thereafter pay, perform and discharge when due, and indemnify, defend and hold harmless Seller, its Affiliates and all of their respective Related Persons from and against, the following liabilities (all items in this Section 1.3 being, collectively, the "Assumed Liabilities"):

(a)     liabilities and obligations for Transaction Taxes but only to the extent provided for in Section 7.1;

(b)     all liabilities and obligations (including under applicable Environmental Laws and other Laws) solely to the extent arising out of or relating to Buyer's ownership or operation of the Acquired Assets after the Closing; and

(c)     all liabilities and obligations for Post-Closing Taxes (including any relating to any Straddle Period).

Section 1.4 Retention of Liabilities. Buyer is assuming only the Assumed Liabilities and is not assuming any other liability or obligation of whatever nature, whether presently in existence or arising hereafter. All such other liabilities and obligations shall be retained by and remain liabilities and obligations of Seller (all such liabilities and obligations not being assumed being herein referred to as the "Excluded Liabilities"). The Excluded Liabilities include, without

8

limitation, the following liabilities and obligations:

(a)     all liabilities and obligations under or relating to the Excluded Assets;

(b)     all liabilities and obligations of Seller under or relating to the Priority Term Loan, the FILO Facility, the Exit Term Loan or the Intercompany Note;

(c)     all Employee Liabilities;

(d)     all liabilities and obligations for Pre-Closing Taxes;

(e)     all liabilities and obligations of Seller arising under or incurred in connection with the negotiation, preparation, execution and performance of this Agreement, the Ancillary Agreements to which Seller is a party and the transactions contemplated hereby and thereby, including, without limitation, fees and expenses of counsel, accountants, consultants, advisers and others;

(f)     all liabilities of, and Claims against, Seller arising from and in connection with grants of restricted common unit/share awards and stock options by Seller;

(g)     any liabilities and obligations of Seller under this Agreement, or under any Ancillary Agreement to which Seller is a party;

(h)     all liabilities relating to any properties, Contracts, Leases, or other assets, interests and rights of Seller that (i) do not relate to the ownership, operation or management of the Acquired Assets or (ii) are otherwise set forth on Schedule 1.2(x);

(i)     all State of Alabama Project Development Liabilities;

(j)     the Retained Litigation;

(k)     all other liabilities and obligations arising out of or relating to Seller's ownership, operation or management of the Business and the Acquired Assets on or prior to the Closing, including without limitation noncompliance with any applicable Laws; and

(l)     all liabilities set forth on Schedule 1.4(l).

1.5     <u>Assumed FF&E Leases and Assumed IP Licenses; Cure Amount</u>.

(a)     At such time as is specified in the Sale Order, pursuant to Section 365 of the Bankruptcy Code, Seller shall assume and assign to Buyer and Buyer shall assume from Seller, the Assumed FF&E Leases and Assumed IP Licenses. The amounts necessary, pursuant to Section 365 of the Bankruptcy Code, to cure any and all defaults and to pay all actual or pecuniary losses that have resulted from any such defaults under any Assumed FF&E Leases and Assumed IP Licenses, in each case as and when finally determined by the Bankruptcy Court pursuant to the procedures set forth in the Sale Order and this Agreement (such aggregate amount, the "<u>Cure Amount</u>") shall be paid by Buyer. <u>Schedule 1.5(a)</u> contains Seller's estimate as of the Effective Date of the Cure Amount. Subject to the prior written consent of Seller in Seller's sole discretion, Buyer may amend <u>Schedule 1.5(a)</u> to add any executory contracts of Seller at any time prior to the

9

date of a final hearing to approve the sale of the Acquired Assets (the "Sale Hearing"). Subject to the limitations set forth in Section 1.5(d) and upon written notice to Seller, Buyer may amend Schedule 1.2(x) to reject any executory contracts of Seller at any time prior to the date of the Sale Hearing; provided that the definition or interpretation of (i) "Acquired Assets" for the purposes of Section 1.3 only and (ii) "Assumed Liabilities" and "Excluded Liabilities" for any purposes under this Agreement, shall not reflect any such amendment without the prior written consent of Seller. For the avoidance of doubt and notwithstanding anything to the contrary in this Section 1.5(a), Seller shall have no liability under this Agreement in respect of any Cure Amounts relating to Assumed FF&E Leases and Assumed IP Licenses that are not specified by Buyer to Seller in writing as of the Effective Date.

(b)     Seller shall timely serve the motion seeking entry of the Sale Order to all parties to Assumed FF&E Leases and Assumed IP Licenses and, subject to Section 1.6 and the performance of Buyer's obligations in Section 5.2, Seller shall use commercially reasonable efforts to cause the Assumed FF&E Leases and Assumed IP Licenses to be assumed by Seller and assigned to Buyer pursuant to Section 365 of the Bankruptcy Code, and Seller shall comply with all requirements under Section 365 of the Bankruptcy Code necessary to assign and delegate to Buyer all of Seller's rights and obligations under the Assumed FF&E Leases and Assumed IP Licenses.

(c)     Notwithstanding any provision in this Agreement to the contrary, if for any reason Buyer fails to pay the Cure Amount in respect of any Assumed FF&E Leases and Assumed IP Licenses when due and payable pursuant to this Agreement, the Sale Order or any other Order of the Bankruptcy Court, (i) Seller may pay or otherwise satisfy such Cure Amount or any other liability or obligation under such Assumed Contract or Assumed Lease and shall be reimbursed by Buyer to make such payment within five (5) Business Days of notice of such payment, (ii) Buyer shall indemnify and hold harmless Seller in respect of such Cure Amount, liability or obligation as well as any expenses (including legal fees and expenses) incurred by the other party in defending any claim for payment of the Cure Amount or any other liability or obligation arising under such Contract or Lease asserted by the counterparty thereto and (iii) Seller or Buyer may reject, and nothing in this Agreement shall prohibit Seller or Buyer from rejecting, such Contract or Lease.

(d)     Notwithstanding any provision in this Agreement to the contrary, at any time prior to the Sale Hearing, Buyer may designate in writing to Seller any Contract or Lease as an Excluded Liability (and amend Schedule 1.2(x) for such purposes only), only if the rejection of such Contract or Lease would not give rise to a Claim in favor of the counterparty thereto having administrative priority or any other priority senior to a general unsecured Claim against the bankruptcy estate of Seller (the "Qualifying Excluded Contracts and Leases"). Seller may reject, and nothing in this Agreement shall prohibit Seller from rejecting, the Qualifying Excluded Contracts and Leases.

Section 1.5 Non-Assignment of Acquired Assets. Notwithstanding any provision of this Agreement to the contrary, this Agreement shall not constitute an agreement to assign or transfer and shall not effect the assignment or transfer of any Acquired Asset if (a) an attempted assignment thereof, without the approval, authorization or consent of, or granting or issuance of any license or permit by, any party thereto other than Seller (each such action, a "Necessary Consent"), would constitute a breach thereof (after giving effect to any waiver by the applicable counterparty, or any elimination of such approval, authorization or consent requirement by operation of the Sale Order) or in any way adversely affect the rights or obligations of Buyer thereunder and such Necessary Consent is not obtained and (b) the Bankruptcy Court shall not

10

have entered an Order providing that such Necessary Consent is not required because the transfer thereof shall be deemed by the Bankruptcy Court to be (x) effective and (y) not a breach thereof, notwithstanding the failure to obtain such Necessary Consent. In such event, Seller and Buyer will use their commercially reasonable efforts to obtain the Necessary Consents with respect to any such Acquired Asset or any claim or right or any benefit arising thereunder for the assignment thereof to Buyer as Buyer may reasonably request; provided, however, that neither Seller nor Buyer shall be obligated to pay any consideration therefor to any third party from whom consent or approval is requested or to initiate any litigation or legal proceedings to obtain any such consent or approval. If such Necessary Consent is not obtained, or if such Acquired Asset or an attempted assignment thereof would otherwise be ineffective or would adversely affect the rights of Seller thereunder so that Buyer would not in fact receive all such rights, Seller and Buyer will cooperate in a mutually agreeable arrangement, to the extent feasible and at no out-of-pocket expense to Seller or Buyer, under which Buyer would obtain the benefits and assume the obligations (to the extent otherwise constituting Assumed Liabilities hereunder) thereunder in accordance with this Agreement, including subcontracting, sublicensing or subleasing to Buyer, or under which Seller would enforce for the benefit of, and at the direction of, Buyer, with Buyer assuming Seller's obligations (to the extent otherwise constituting Assumed Liabilities hereunder), any and all rights of Seller thereunder.

Section 1.6 <u>Further Conveyances and Assumptions</u>. At the Closing, and from time to time thereafter, Seller and Buyer shall, and Seller and Buyer shall cause their respective Affiliates to, execute, acknowledge and deliver all such further actions, as may be reasonably necessary or appropriate to sell, transfer, convey, assign and deliver fully to Buyer and its respective successors or permitted assigns, all of the properties, rights, titles, interests, estates, remedies, powers and privileges intended to be conveyed to Buyer under this Agreement and to assure fully to Seller and its successors and permitted assigns, the assumption of the liabilities and obligations intended to be assumed by Buyer under this Agreement, and to otherwise make effective or evidence the transactions contemplated by this Agreement.

Section 1.7 <u>Conflicts with Other Bidders</u>. In the event of any conflict regarding the Acquired Assets or the Assumed Liabilities between this Agreement and agreements governing other sales of the Seller's assets in the Bankruptcy Case (the "<u>Other Agreements</u>"), Buyer shall cooperate in good faith with any other purchasers of Seller's assets pursuant to such Other Agreements, whether before or after the Closing Date, to ensure that all assets or liabilities are appropriately apportioned between Buyer and such other purchasers in order to reflect the intent of Buyer and such other purchasers hereunder and thereunder.

## ARTICLE 2. <u>CONSIDERATION</u>.

Section 2.1 <u>Consideration</u>. The aggregate consideration for the sale and transfer to Buyer of the Acquired Assets (the "<u>Purchase Price</u>") shall be:

(a) Twenty Million United States Dollars ($20,000,000) (the "<u>Gross Closing Cash Payment</u>"), to be adjusted pursuant to <u>Section 2.2(b)</u>, and paid and delivered in accordance with <u>Section 3.3(a)</u>; and

(b) assumption of the Assumed Liabilities. Section 2.2 <u>Good Faith Deposit</u>.

Section 2.2 <u>Good Faith Deposit</u>.

11

(a)     Concurrently or prior with the execution and delivery of this Agreement, notwithstanding anything to the contrary in this Agreement, Buyer shall pay to Seller the amount equal to Four Million United States Dollars ($4,000,000) by wire transfer of immediately available funds (the "Good Faith Deposit") The Good Faith Deposit shall not be subject to any Lien, attachment, trustee process or any other judicial process of any creditor of either of Seller or Buyer and shall be deposited in a segregated deposit account of Seller and held in trust to be administered solely in accordance with the terms of this Agreement and the Bidding Procedures Order. Upon the Closing, the Good Faith Deposit shall be an Excluded Asset and shall not be subject to any restrictions under this Agreement.

(b)     If the Closing occurs, the Gross Closing Cash Payment shall be reduced by the amount of the Good Faith Deposit (such resulting amount, the "Net Closing Cash Payment"), to be paid and delivered in accordance with Section 3.3(a).

(c)     If this Agreement is terminated pursuant to Section 9.1, the Good Faith Deposit shall be repaid to Buyer or retained by Seller in the amounts and at the times set forth in Section 9.2(a) through Section 9.2(c).

ARTICLE 3. CLOSING AND DELIVERIES

Section 3.1 Closing. Subject to the terms and conditions set forth herein, the consummation of the transactions contemplated by this Agreement (the "Closing") shall take place remotely by the electronic exchange of documents and signatures, or such other place as may be agreed upon, at 7:00 a.m., local Central Time, on the third (3rd) Business Day following the satisfaction or, to the extent permitted by this Agreement, waiver of each of the conditions set forth in Article 8 of this Agreement (other than those conditions that, by their nature, are to be satisfied at the Closing, but subject to the satisfaction, or waiver to the extent permitted by this Agreement, of such conditions), or such other date as may be agreed to by Seller and Buyer, which date shall not be earlier than the first day following the entry of the Sale Order by the Bankruptcy Court (the "Closing Date").

Section 3.2 Seller's Deliveries.  At the Closing, Seller shall deliver or cause to be delivered to Buyer:

(a)     all of the Acquired Assets, together with one or more duly executed bills of sale, endorsed certificates of title and other evidence of transfer of motor vehicles and instruments of conveyance appropriate for the applicable Acquired Assets, each as reasonably requested by Buyer and otherwise in form and substance customary for transactions of this nature and reasonably acceptable to Buyer and Seller;

(b)     one or more duly executed assignment and assumption agreements for the Assumed Liabilities, in form and substance customary for transactions of this nature and reasonably acceptable to Buyer and Seller (each, an "Assignment and Assumption Agreement");

(c)     duly executed, and notarized where indicated, assignments of (i) the trademark and patent registrations and applications included in the Acquired Intellectual Property registered in the name of Seller, in a form suitable for recording in the U.S. Patent and Trademark Office (and equivalent offices in jurisdictions outside the United States), (ii) the Internet domain

12

name registrations and applications included in the Acquired Intellectual Property registered in the name of Seller, in a form suitable for filing with all applicable domain name registries, together with all relevant authorization codes for the transfer of such domain name registrations and applications and confirmation that the same have been unlocked, and (iii) general assignments of all other Acquired Intellectual Property, in each case in form and substance customary for transactions of this nature and reasonably acceptable to Buyer and Seller (each, an "<u>Acquired Intellectual Property Assignment</u>");

(d)     the officer's certificate required to be delivered pursuant to <u>Section 8.2(a)</u> and <u>Section 8.2(b)</u>;

(e)     one or more affidavits executed by Seller, in the form prescribed under Treasury Regulation Section 1.1445-2(b), that Seller is not a foreign person within the meaning of Section 1445(f)(3) and/or Section 1446 of the Code;

(f)     a duly executed Limited Power of Attorney to enable Buyer to execute on Seller's behalf any further documents necessary to record the assignment to Buyer of Acquired Intellectual Property; and

(g)     such other documents, instruments and certificates as Buyer may reasonably request to transfer the Acquired Assets to Buyer in accordance with the terms and conditions hereof.

Section 3.3   <u>Buyer's Deliveries</u>.  At the Closing, Buyer shall deliver or cause to be delivered to Seller:

(a)     cash in an amount equal to the Net Closing Cash Payment, by wire transfer of immediately available funds to the account or accounts of Seller identified by Seller in writing reasonably in advance of the Closing;

(b)     one or more duly executed Assignment and Assumption Agreements;

(c)     the officer's certificate required to be delivered pursuant to <u>Section 8.1(a)</u> and <u>Section 8.1(b)</u>; and

(d)     such other documents, instruments and certificates as Seller may reasonably request to transfer, assign and delegate the Assumed Liabilities to Buyer in accordance with the terms and conditions hereof.

ARTICLE 4. <u>REPRESENTATIONS AND WARRANTIES</u>

Section 4.1   <u>Representations and Warranties of Seller</u>. Seller represents and warrants to Buyer as follows:

(a)     <u>Corporate Organization</u>. Each entity comprising Seller is duly formed or incorporated and validly existing and in good standing under the laws of its respective state of domicile. Subject to any necessary authority from the Bankruptcy Court, each entity comprising

13

Seller has the requisite corporate or limited liability company power and authority to conduct the Business as now being conducted and to carry out its obligations under this Agreement.

(b)      Qualification to do Business. Each entity comprising Seller is duly qualified to do business and is in good standing in every jurisdiction in which the character of the properties owned or leased by it or the nature of the business(es) conducted by it makes such qualification necessary.

(c)      Authorization and Validity. Each entity comprising Seller has the corporate or limited liability company power and authority necessary to enter into this Agreement and each Ancillary Agreement to which Seller is a party, subject to the Bankruptcy Court's entry of the Sale Order, to carry out its obligations hereunder and thereunder. The execution and delivery of this Agreement and each Ancillary Agreement has been duly authorized and at or before Closing the execution and delivery of the Ancillary Agreements to which Seller is a party will be duly authorized, by all necessary corporate or limited liability company action by the boards of directors or managers of Seller, and no other corporate or limited liability company proceedings are necessary for the performance by Seller of its obligations under this Agreement and each Ancillary Agreement or the consummation by Seller of the transactions contemplated by this Agreement and each Ancillary Agreement. This Agreement and each Ancillary Agreement has been duly and validly executed and delivered by Seller, and at Closing the Ancillary Agreement to which Seller is a party will be duly and validly executed and delivered by Seller, and, subject to the Bankruptcy Court's entry of the Sale Order and assuming due authorization, execution and delivery by Buyer, the Agreement is, and each of the Ancillary Agreements to which Seller is a party will be at Closing, a valid and binding obligation of Seller enforceable against Seller in accordance with its terms.

(d)      No Conflict or Violation. Neither the execution and delivery by Seller of this Agreement or any of the Ancillary Agreements to which Seller is a party, nor (subject to the Bankruptcy Court's entry of the Sale Order) the consummation of the transactions contemplated by this Agreement or the Ancillary Agreements to which Seller is a party, nor compliance by Seller with any of the provisions hereof or thereof, will (x) conflict with or result in any breach of any provision of the respective certificates of incorporation or formation of Seller or the respective by-laws or operating agreements of Seller, or (y) violate any provision of law, regulation, rule or other legal requirement of any Government ("Law") or any order, judgment or decree of any court or Government ("Order") applicable to Seller or any of its properties or assets except, in either of the foregoing cases (x) and (y), for any conflict or violation as would not reasonably be expected to cause a Material Adverse Effect.

(e)      Consents and Approvals. The execution, delivery and performance of this Agreement and the Ancillary Agreements to which Seller is a party do not and will not require the consent or approval of, or filing with, any Government or any other Person, other than (i) as may be required to be obtained by Seller after the Closing in order for Buyer to own or operate any of the Acquired Assets; (ii) the entry of the Sale Order by the Bankruptcy Court; or (iii) for such consents, approvals and filings, of which the failure to obtain or make would not, individually or in the aggregate, have a material adverse effect on the ability of Buyer to consummate the transactions contemplated by this Agreement or by the Ancillary Agreements to which Buyer is a party.

(f)      Title and Ownership. Seller has good title to, or right by license, lease or

Case 20-81688-CRJ11   Doc 2406-5   Filed 09/30/22   Entered 09/30/22 13:40:54   Desc
Exhibit RJN 4: Order Approving Sale of AP   Page 222 of 249

other agreement to use, the Acquired Assets. Subject to the entry of the Sale Order, at the Closing, Seller will have the right to transfer the Acquired Assets to Buyer free and clear of all Liens, other than Liens included in the Assumed Liabilities and Permitted Liens.

(g) <u>Compliance with Law</u>. Except as set forth on <u>Schedule 4.1(g)</u>, (i) Seller has operated the Business in material compliance with all applicable Laws, and (ii) except as may result from the Bankruptcy Case, Seller has not received written notice of any violation of any applicable Laws, nor is Seller in default with respect to any Order applicable to the Acquired Assets.

(h) <u>No Real Property or Partnership Interest</u>. The Acquired Assets do not include any Owned Real Property or Leased Real Property or any "United States real property interest" within the meaning of Section 1445 of the Code or any "partnership interest" within the meaning of Section 1446 of the Code.

(i) <u>Permits</u>. <u>Schedule 4.1(i)</u> sets forth a complete and correct list of all material Permits currently held by Seller in connection with the Business ("Material Permits"), and all Material Permits at the current locations of the Business are, except as would not cause a Material Adverse Effect, in full force and effect.

(j) <u>Intellectual Property</u>. <u>Schedule 1.1(j)</u> sets forth a complete and correct list of all registrations and applications of the trademarks, patents and domain names owned and primarily used by Seller in connection with the Business.

(k) <u>Business Name</u>. <u>Schedule 11.1(a)</u> sets forth a complete and correct list of all trademarks and service marks comprising the Business Name.

(l) <u>Seller Not a Foreign Person</u>. Seller is not a "foreign person" within the meaning of Section 1445 or 1446 of the Code.

(m) <u>No Equity or Similar Interests in Other Persons</u>. The Acquired Assets do not include any interests in any corporations, partnerships, joint ventures, or other similar entities.

(n) No share, equity interest or right that is excluded under <u>Section 1.2(f)</u> provides the holder thereof with a right to acquire or any lien on any of the Acquired Assets.

(o) The Acquired Assets represent all of the equipment, inventory, and Intellectual Property necessary to manufacture and sell semi-automatic, lever-action and bolt-action rifles under the brand Marlin Firearms Company as currently produced by the Sellers.

Section 4.2 <u>Representations and Warranties of Buyer</u>. Buyer represents and warrants to Seller as follows:

(a) <u>Corporate Organization</u>. Buyer is a limited liability company duly formed, validly existing and in good standing under the Laws of the jurisdiction of its formation. Buyer has the requisite limited liability company power and authority to own its properties and assets and to conduct its business as now conducted and to carry out its obligations under this Agreement and each of the Ancillary Agreements to which Buyer is a party.

15

(b)      <u>Qualification to do Business</u>. Buyer is duly qualified to do business as an entity and is in good standing in every jurisdiction in which the character of the properties owned or leased by it or the nature of the business(es) conducted by it makes such qualification necessary.

(c)      <u>Authorization and Validity</u>. Buyer has the requisite limited liability company power and authority necessary to enter into this Agreement and at Closing will have the requisite limited liability company power and authority necessary to enter into each of the Ancillary Agreements to which Buyer is a party, and to carry out its obligations hereunder and thereunder, subject to (i) the Bankruptcy Court's entry of the Sale Order, and (ii) the termination or expiration of the waiting period under the HSR Act (if applicable), to carry out its obligations hereunder and thereunder. . The execution and delivery of this Agreement and those Ancillary Agreements to which Buyer is a party have been duly authorized by all necessary limited liability company action by the board of managers, and no other limited liability company proceedings are necessary for the performance by Buyer of its obligations under this Agreement and each of the Ancillary Agreements to which Buyer is a party, or the consummation by Buyer of the transactions contemplated hereby or thereby. This Agreement and each of the Ancillary Agreements to which Buyer is a party have been duly and validly executed and delivered by Buyer, and at Closing each Ancillary Agreement will be duly and validly executed and delivered by Buyer, and, subject to the Bankruptcy Court's entry of the Sale Order and assuming due authorization, execution and delivery by Seller, the Agreement is, and each of the Ancillary Agreements will be at Closing are valid and binding obligations of Buyer enforceable against it in accordance with their respective terms.

(d)      <u>No Conflict or Violation</u>. Neither the execution and delivery by Buyer of this Agreement or any of the Ancillary Agreements to which Buyer is a party, nor (subject to (i) the Bankruptcy Court's entry of the Sale Order, and (ii) the termination or expiration of the waiting period under the HSR Act (if applicable)) the consummation of the transactions contemplated hereby or thereby, nor compliance by Buyer with any of the provisions hereof or thereof, will (i) conflict with or result in any breach of any provision of the certificate of formation of Buyer, (ii) violate any provision of Law or any Order applicable to Buyer or any of its properties or assets, or (iii) automatically result in a modification, violation or breach of, or constitute (with or without notice or lapse of time or both) a default (or give rise to any right, including but not limited to, any right of termination, amendment, cancellation or acceleration) under, any of the terms, conditions or provisions of any contract, indenture, note, bond, lease, license or other agreement to which Buyer is a party or by which it is bound or to which any of its properties or assets is subject, except as would not materially and adversely affect the ability of Buyer to consummate the transactions contemplated by this Agreement or any of the Ancillary Agreements..

(e)      <u>Consents and Approvals</u>. The execution, delivery and performance of this Agreement and the Ancillary Agreements to which Buyer is a party do not and will not require the consent or approval of, or filing with, any Government or any other Person, other than (i) as may be required to be obtained by Buyer after the Closing in order to own or operate any of the Acquired Assets; (ii) for entry of the Sale Order by the Bankruptcy Court; or (iii) for such consents, approvals and filings, of which the failure to obtain or make would not, individually or in the aggregate, have a material adverse effect on the ability of Buyer to consummate the transactions contemplated by this Agreement or by the Ancillary Agreements to which Buyer is a party.

(f)      <u>Financial Capability</u>. Buyer and any Buyer Acquisition Vehicle currently

16

has or at Closing will have available funds necessary to consummate the transactions contemplated by this Agreement, including the acquisition of the Acquired Assets and assumption of the Assumed Liabilities, and the payment therefor to Seller of the Gross Closing Cash Payment, and to perform its obligations under this Agreement and the Ancillary Agreements to which Buyer is a party on the terms and subject to the conditions contemplated hereby and thereby.

(g)     Investigation by Buyer. Buyer has conducted its own independent review and analysis of the Acquired Assets and acknowledges that Seller has provided Buyer with reasonable access to the personnel, properties, premises and records of the Business for this purpose. Buyer has conducted its own independent review of all Orders of, and all motions, pleadings, and other submissions to, the Bankruptcy Court in connection with the Bankruptcy Case. In entering into this Agreement, Buyer has relied solely upon its own investigation and analysis, and Buyer (i) acknowledges that neither Seller nor any of its Affiliates or Related Persons makes or has made any representation or warranty, either express or implied, as to the accuracy or completeness of any of the information provided or made available to Buyer or its Affiliates or Related Persons, except for the representations and warranties contained in Section 4.1 (which are subject to the limitations and restrictions contained in this Agreement); and (ii) agrees, to the fullest extent permitted by Law, that none of Seller, its Affiliates or any of their respective Related Persons shall have any liability or responsibility whatsoever to Buyer or its Affiliates or Related Persons on any basis (including, without limitation, in contract or tort, under federal or state securities Laws or otherwise, but excluding misrepresentation or concealment arising from actual fraud of Seller) based upon any information provided or made available, or statements made, to Buyer or its Affiliates or Related Persons (or any omissions therefrom), including, without limitation, in respect of the specific representations and warranties of Seller set forth in this Agreement, except, with regard to Seller, for the representations and warranties contained in Section 4.1 and, with respect to such representations and warranties, subject to the limitations and restrictions contained in this Agreement.

Section 4.3     Warranties Exclusive; Schedules.

(a)     The representations and warranties contained in Article 4 are the only representations or warranties given by the parties to this Agreement and all other express or implied warranties are disclaimed. Without limiting the foregoing, the Acquired Assets are otherwise conveyed "AS IS", "WHERE IS" and "WITH ALL FAULTS" and all warranties of merchantability or fitness for a particular purpose are disclaimed. WITHOUT LIMITING THE FOREGOING, SELLER AND SELLER'S AFFILIATES AND THEIR RESPECTIVE RELATED PERSONS HAVE MADE NO REPRESENTATION OR WARRANTY CONCERNING (A) ANY USE TO WHICH THE ACQUIRED ASSETS MAY BE PUT, (B) ANY FUTURE REVENUES, COSTS, EXPENDITURES, CASH FLOW, RESULTS OF OPERATIONS, FINANCIAL CONDITION OR PROSPECTS THAT MAY RESULT FROM THE OWNERSHIP, USE OR SALE OF THE ACQUIRED ASSETS OR THE ASSUMPTION OF THE ASSUMED LIABILITIES, (C) ANY OTHER INFORMATION OR DOCUMENTS MADE AVAILABLE TO BUYER OR ITS AFFILIATES OR RELATED PERSONS OR (D) THE CONDITION OF THE ACQUIRED ASSETS, INCLUDING WITHOUT LIMITATION, COMPLIANCE WITH ANY ENVIRONMENTAL LAWS OR OTHER LAWS. SELLER AND SELLER'S AFFILIATES AND RELATED PERSONS HAVE MADE NO REPRESENTATIONS OR WARRANTIES IN ANY OTHER AGREEMENT.

(b)     The disclosure of any matter or item in any schedule hereto shall not be

deemed to constitute an acknowledgement that any such matter is required to be disclosed or is material or that such matter would result in a Material Adverse Effect.

Section 4.4    Survival of Representations and Warranties. None of the representations or warranties of Buyer or Seller set forth in this Agreement or any Ancillary Agreement to which Buyer or Seller is a party or in any certificate delivered pursuant to Section 8.1(a), Section 8.1(b), Section 8.2(a) or Section 8.2(b), as applicable, shall survive the Closing (and, for the avoidance of doubt, all covenants set forth in this Agreement or any Ancillary Agreement shall survive in accordance with their respective terms).

## ARTICLE 5. COVENANTS OF THE PARTIES

Section 5.1    Covenants of Seller. Seller covenants as follows:

(a)    Commercially Reasonable Efforts. Between the Effective Date and the Closing Date, Seller shall use all commercially reasonable efforts to (except as may be disclosed to Buyer) (i) obtain all necessary consents, waivers, authorizations and approvals of all Governments, and of all other Persons, required to be obtained by Seller in connection with the execution, delivery and performance by it of this Agreement and the Ancillary Agreements to which Seller is a party, (ii) take, or cause to be taken, all actions, and to do, or cause to be done, all things necessary or proper, consistent with applicable Law, to consummate and make effective in an expeditious manner the transactions contemplated by this Agreement and the Ancillary Agreements, and (iii) maintain the Acquired Assets substantially in accordance with Seller's current practices and procedures (as adjusted for the effects of any COVID Restrictions).

(b)    Access to Properties and Documents; Confidentiality. Seller shall afford to Buyer, and to the accountants, counsel and representatives of Buyer, reasonable access (subject to any COVID Restrictions) during normal business hours throughout the period from the Effective Date until the Closing Date (or the earlier termination of this Agreement pursuant to Article 9) to all Documents of Seller relating to the Acquired Assets and the Assumed Liabilities. Upon reasonable prior notice, Seller shall also afford Buyer reasonable access taking into account any COVID Restrictions and Seller's resources and other commitments, during normal business hours, to all Acquired Assets, and to Seller's executive officers, accountants, counsel, employees and other representatives, throughout the period prior to the Closing Date (or the earlier termination of this Agreement pursuant to Article 9). The rights of access contained in this Section 5.1(b) are granted subject to, and on, the following terms and conditions: (i) any such investigation shall not include physical testing or sampling and will be conducted in a reasonable manner; (ii) all information provided to Buyer or its agents or representatives by or on behalf of Seller or its agents or representatives (whether pursuant to this Section 5.1(b) or otherwise) will be governed and protected by the Confidentiality Agreement, dated as of February 3, 2020 by and between Jefferson River Capital, LLC and ROC (the "Confidentiality Agreement"); and (iii) such rights of access shall not affect or modify the conditions set forth in Article 8 in any way.

(c)    Operation of the Business. Except (i) as otherwise contemplated or permitted by this Agreement or the Ancillary Agreements, (ii) with the prior consent of Buyer (such consent not to be unreasonably withheld, conditioned or delayed), or (iii) in connection with any Order relating to the Bankruptcy Case, between the Effective Date and the Closing Date, Seller shall use its commercially reasonable efforts to safeguard and maintain the Acquired Assets in their

18

condition as of the Effective Date (except for ordinary wear and tear) and prevent any destruction thereof or material damage thereto between the Effective Date and the Closing Date.

Section 5.2    Covenants of Buyer. Buyer covenants as follows:

(a)    Commercially Reasonable Efforts. Buyer shall use all commercially reasonable efforts to (except with Seller's prior written consent, in Seller's sole discretion) (i) obtain all consents and approvals of all Governments, and all other Persons, required to be obtained by Buyer to effect the transactions contemplated by this Agreement and the Ancillary Agreements, and (ii) take, or cause to be taken, all action, and to do, or cause to be done, all things necessary or proper, consistent with applicable Law, to consummate and make effective in an expeditious manner the transactions contemplated by this Agreement and the Ancillary Agreements.

(b)    Indemnification for Use of Real Property. Buyer shall indemnify, defend and hold harmless (i) Seller, (ii) the lessors of any Leased Real Property, and (iii) Seller's and such lessors' respective Affiliates and Related Persons from and against any and all claims, demands, causes of action, losses, damages, liabilities, costs and expenses (including, without limitation, attorneys' fees and disbursements) suffered or incurred by such Persons in connection with (A) Buyer's or Buyer's agents' or representatives' entry upon the Leased Real Property in connection with their exercise of the right of access pursuant to Section 5.1(b), and (B) any and all other activities undertaken by Buyer or Buyer's agents or representatives with respect to any such Leased Real Property.

(c)    Released Claims. Effective as of the Closing Date, Buyer, on behalf of itself and its Affiliates and each of their respective employees, directors, officers, shareholders, and advisors, hereby covenants and agrees that it shall not (i) assert any Claims that constitute Acquired Assets to the extent such Claims have been, or are at any time thereafter, released by or on behalf of Seller or any other Person pursuant to the Plan, an Order of the Bankruptcy Court, or otherwise or (ii) pursue, prosecute or assert any rights related to any Claims against employees, officers of directors of Seller, including by way of offset or recoupment.

ARTICLE 6. ADDITIONAL AGREEMENTS

Section 6.1    Bankruptcy Matters.

(a)    Backup Bidder. In the event that Buyer is designated as the "Backup Bidder" in accordance with and as defined in the Bidding Procedures Order, Buyer agrees that it will keep the Backup Bid (as defined in the Bidding Procedures Order) open and irrevocable until the earlier of 5:00 p.m. (prevailing Central Time) on the date that is sixty (60) days after the date of entry of the Bankruptcy Court's Order approving the Alternative Transaction and the closing date of the Alternative Transaction. Notwithstanding anything to the contrary in this Agreement, Seller may also identify and enter into agreements respecting (x) a "back-up" bid relating to an Alternative Transaction, and/or (y) a liquidation sale of all or a portion of the inventory and the other assets of Seller, in either case to become effective in the event Buyer does not perform in accordance with the terms of this Agreement.

(b)    Notice to Holders of Liens, Claims and Interests. Seller has provided notice of the Sale Order to all holders of Liens, Claims and Interests in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules for the Bankruptcy Court and

19

Case 20-81688-CRJ11   Doc 2406-5   Filed 09/08/22   Entered 09/08/22 12:49:54   Desc
Exhibit RJN 4: Order Approving Page 19 of 41   Page 227 of 249

any other applicable Order of the Bankruptcy Court.

(c) <u>Entry of Sale Order</u>. Seller has filed with the Bankruptcy Court one or more motions which, collectively, seek the entry of the Sale Order. The Sale Order provides that, without limitation and notwithstanding anything to the contrary in this Agreement, Buyer is not liable for, and is taking the Acquired Assets free of, any Excluded Liability. Seller and Buyer shall use reasonable best efforts to cooperate, assist and consult with each other to secure the entry of the Sale Order, and to consummate the transactions contemplated by this Agreement, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of providing necessary assurances of performance by Buyer under this Agreement. In the event that any Orders of the Bankruptcy Court relating to this Agreement shall be appealed by any Person (or a petition for certiorari or motion for reconsideration, amendment, clarification, modification, vacation, stay, rehearing or reargument shall be filed with respect to any such Order), Seller and Buyer will cooperate in determining and pursuing the response to any such appeal, petition or motion and Seller and Buyer shall use their commercially reasonable efforts to obtain an expedited resolution of any such appeal, petition or motion. For purposes of this <u>Section 6.1(c)</u> only, commercially reasonable efforts shall without limitation require each party to this Agreement to pay its costs and expenses reasonably required in connection with preparing and seeking entry of the Sale Order by the Bankruptcy Court and resolution of any appeal therefrom.

Section 6.2    <u>Transition Arrangements</u>.

(a) <u>Access Covenant</u>. Upon reasonable request from Seller, during reasonable hours, and subject to the terms of the Confidentiality Agreement, Buyer will following the Closing Date provide to Seller, and the accountants, counsel and representatives of Seller, including any administrator of the Plan or Seller's estate, such access to the pre-closing books and records relating to the Acquired Assets as is reasonably necessary to permit Seller to monetize any Excluded Assets and otherwise liquidate its estate after the Closing and confirmation of the Plan and to conclude the Bankruptcy Case, including the administration of the Plan, reconciliation and litigation of claims and making of distributions contemplated under the Plan or otherwise. Such access will include (a) reasonable access to Buyer's personnel, information technology systems and books and records and (b) the use of office space for individuals and office support of appropriate secretaries or clerks for employees of Seller engaged in such wind-down and liquidation process. Buyer will provide such services free of any charges, fees or rents, provided that Seller will reimburse Buyer for reasonable out-of-pocket costs and expenses incurred by Buyer in connection with providing such services (which for the avoidance of doubt will not include salaries paid to Buyer's consultants or employees or Buyer's overhead but may include temporary service workers (at customary and reasonable hourly costs) if needed based upon the reasonable time demands of the regular work of Buyer's employees and the reasonable time demands of Seller's employees engaged in the liquidation).

(b) <u>Transitional Regulatory Matters</u>. From the Effective Date until the Closing Date, Buyer and Seller shall each use reasonable best efforts to cooperate in the registration of Buyer as licensee, as of and conditional upon the Closing, under the ATF Licenses.

Section 6.3  <u>Further Assurances</u>.  At the request and the sole expense of the

requesting party, either party shall, at any time after the Closing Date, execute and deliver such documents as the other party or its counsel may reasonably request to effectuate the purposes of this Agreement.

## ARTICLE 7. <u>TAXES</u>.

Section 7.1 Taxes Related to Purchase of Assets. All recording and filing fees and all federal, state and local sales, transfer, excise, value-added or other similar Taxes, including, without limitation, all state and local Taxes in connection with the transfer of the Acquired Assets, but excluding all income taxes and other fees based upon gain realized by Seller as a result of the sale of the Acquired Assets (collectively, "<u>Transaction Taxes</u>"), that may be imposed by reason of the sale, transfer, assignment and delivery of the Acquired Assets, and which are not exempt under Section 1146(c) of the Bankruptcy Code, shall be paid by Buyer. Buyer and Seller agree to cooperate to determine the amount of Transaction Taxes payable in connection with the transactions contemplated under this Agreement, and Seller agrees to assist Buyer reasonably in the preparation and filing of any and all required returns for or with respect to such Transaction Taxes with any and all appropriate taxing authorities.

Section 7.2    <u>Cooperation on Tax Matters</u>.

(a)    Buyer and Seller agree to furnish or cause to be furnished to each other, as promptly as practicable, such information and assistance relating to the Acquired Assets and the Assumed Liabilities as is reasonably necessary for the preparation and filing of any Tax Return, claim for refund or other required or optional filings relating to Tax matters, for the preparation for and proof of facts during any Tax audit, for the preparation for any Tax protest, for the prosecution or defense of any suit or other proceeding relating to Tax matters and for the answer to any governmental or regulatory inquiry relating to Tax matters.

(b)    Buyer agrees to retain possession, at its own expense, of all accounting, business, financial and Tax records and information (i) relating to the Acquired Assets or the Assumed Liabilities that are in existence on the Closing Date and transferred to Buyer hereunder and (ii) coming into existence after the Closing Date that relate to the Acquired Assets or the Assumed Liabilities before the Closing Date until the earlier of (A) a period of six (6) years from the Closing Date, and (B) the wind-down and liquidation or other termination in bankruptcy of Seller's estate, and in either such case, Buyer will give Seller prior notice and an opportunity to retain any such records in the event that Buyer determines to destroy or dispose of them after such period. In addition, from and after the Closing Date, Buyer agrees that it will provide access to Seller and its attorneys, accountants and other representatives (after reasonable notice and during normal business hours and without charge) to the books, records, documents and other information relating to the Acquired Assets or the Assumed Liabilities as Seller may reasonably deem necessary to (x) properly prepare for, file, prove, answer, prosecute and/or defend any such Tax Return, claim, filing, tax audit, tax protest, suit, proceeding or answer or (y) administer or complete any cases under Chapter 11 of the Bankruptcy Code of Seller. Such access shall include, without limitation, access to any computerized information retrieval systems relating to the Acquired Assets or the Assumed Liabilities. Seller agrees to retain possession, at its own expense, of all accounting, business, financial and Tax records and information (i) relating to the Acquired Assets or the Assumed Liabilities that are in existence on the Closing Date to the extent not transferred to Buyer hereunder and (ii) coming into existence after the Closing Date that relate to the Acquired

21

Assets or the Assumed Liabilities after the Closing Date until the earlier of (A) a period of six (6) years from the Closing Date, and (B) the wind-down and liquidation or other termination in bankruptcy of Seller's estate, and in every such case, as relevant, Seller will give Buyer prior notice and an opportunity to retain any such records in the event of the wind-down and liquidation or other termination in bankruptcy of Seller's estate or other elimination of Seller as a separate entity or in the event that Seller determines to destroy or dispose of them after such period, and Seller shall exercise good faith efforts to make arrangements to have forwarded to Buyer any such records that come, or otherwise might come, into Seller's possession thereafter. In addition, from and after the Closing Date, Seller agrees that it will provide access to Buyer and its attorneys, accountants and other representatives (after reasonable notice and during normal business hours and without charge) to the books, records, documents and other information relating to the Acquired Assets or the Assumed Liabilities as Buyer may reasonably deem necessary to (x) properly prepare for, file, prove, answer, prosecute and/or defend any Tax Return, claim, filing, tax audit, tax protest, suit, proceeding or answer or (y) administer or complete any other proceeding where such may be relevant. Such access shall include, without limitation, access to any computerized information retrieval systems relating to the Acquired Assets or the Assumed Liabilities.

Section 7.3 <u>Allocation of Purchase Price</u>. Promptly (and in any event within sixty (60) days) following the Closing Date, Seller shall prepare and deliver a schedule to Buyer allocating the Purchase Price among the Acquired Assets (the "<u>Allocation</u>"). Seller and Buyer will reasonably cooperate in good faith to resolve any disputes regarding the Allocation and to file with the Internal Revenue Service their respective Forms 8594 as provided for in Section 1060 of the Code on a basis consistent with the Allocation, and the Allocation shall be reflected on any Tax Returns required to be filed as a result of the transactions contemplated by this Agreement.

Section 7.4 Buyer and Seller will cooperate and Buyer shall use commercially reasonable efforts to cause the Buyer or any Buyer Acquisition Vehicle to be registered with the Bureau of Alcohol, Tobacco, Firearms and Explosives as a "manufacturer" for purposes of the Firearms Ammunition and Excise Tax on or before the Closing Date

ARTICLE 8. <u>CONDITIONS PRECEDENT TO PERFORMANCE BY PARTIES</u>.

Section 8.1 <u>Conditions Precedent to Performance by Seller</u>. The obligation of Seller to consummate the transactions contemplated by this Agreement is subject to the fulfillment, at or before the Closing Date, of the following conditions, any one or more of which (other than the conditions contained in <u>Section 8.1(c)</u>) may be waived by Seller in its sole discretion:

(a)  <u>Representations and Warranties of Buyer</u>. All representations and warranties made by Buyer in <u>Section 4.2</u> shall be accurate in all material respects on and as of the Closing Date as if again made by Buyer on and as of such date, except for (i) those representations and warranties that speak solely as of a specific date and that were true and correct as of such date, and (ii) inaccuracies that do not result in a material adverse effect on Buyer's ability to perform its obligations hereunder, and Seller shall have received a certificate, dated as of the Closing Date and signed by a duly authorized officer of Buyer, solely in such capacity on behalf of Buyer, to that effect.

(b)  <u>Performance of the Obligations of Buyer</u>. Buyer shall have performed in all material respects all obligations required under this Agreement to be performed by it on or before

22

Case 20-81688-CRJ11   Doc 2406-5   Filed 09/30/22   Entered 09/30/22 13:40:54   Desc
Exhibit RJN 4: Order Approving Sale   Page 230 of 249

the Closing Date (except with respect to the obligation to pay the Good Faith Deposit and the Gross Closing Cash Payment in accordance with the terms of this Agreement, which obligations shall be performed in all respects), and Seller shall have received a certificate, dated as of the Closing Date and signed by a duly authorized officer of Buyer, solely in such capacity on behalf of Buyer, to that effect.

(c)     Consents and Approvals. The Bankruptcy Court shall have entered the Sale Order and no Order staying, modifying, or amending the Sale Order shall be in effect on the Closing Date.

(d)     No Violation of Orders. No preliminary or permanent injunction or other Order that declares this Agreement invalid or unenforceable in any respect or which prevents the consummation of the transactions contemplated by this Agreement shall be in effect.

(e)     Buyer's Deliveries. Buyer shall have delivered to Seller all of the items set forth in Section 3.3.

Section 8.2 Conditions Precedent to Performance by Buyer. The obligations of Buyer to consummate the transactions contemplated by this Agreement are subject to the fulfillment, at or before the Closing Date, of the following conditions, any one or more of which (other than the conditions contained in Section 8.2(c)) may be waived by Buyer in its sole discretion:

(a)     Representations and Warranties of Seller. All representations and warranties made by Seller in Section 4.1 shall be accurate in all material respects on and as of the Closing Date as if again made by Seller on and as of such date, except for (i) those representations and warranties that speak solely as of a specific date and that were true and correct as of such date, and (ii) inaccuracies that do not result in a Material Adverse Effect, and Buyer shall have received a certificate, dated as of the Closing Date and signed by a duly authorized officer of Seller, solely in such capacity on behalf of Seller, to that effect.

(b)     Performance of the Obligations of Seller. Seller shall have performed all obligations required under this Agreement to be performed by it on or before the Closing Date, other than failures of performance that do not result in a Material Adverse Effect, and Buyer shall have received a certificate, dated as of the Closing Date and signed by a duly authorized officer of Seller, solely in such capacity on behalf of Seller, to that effect.

(c)     Consents and Approvals. The Bankruptcy Court shall have entered the Sale Order, and no Order staying, modifying, or amending the Sale Order shall be in effect on the Closing Date.

(d)     No Violation of Orders. No preliminary or permanent injunction or other Order that declares this Agreement invalid or unenforceable in any respect or which prevents the consummation of the transactions contemplated by this Agreement shall be in effect.

(e)     Seller's Deliveries. Seller shall have delivered to Buyer all of the items set forth in Section 3.2.

## ARTICLE 9. TERMINATION.

Section 9.1 <u>Conditions of Termination</u>.  This Agreement may be terminated at any time before the Closing:

(a)    By mutual written consent of Seller and Buyer;

(b)    By Seller, by notice to Buyer, on or after the date that is 150 calendar days after the Petition Date (the "<u>Warranty Termination Date</u>"), if the condition contained in <u>Section 8.1(a)</u> has not been satisfied or waived; <u>provided</u>, <u>however</u>, that Seller shall not have the right to terminate this Agreement under this <u>Section 9.1(b)</u> if Seller is then in material breach of this Agreement;

(c)    By Seller, by notice to Buyer, if Seller has previously provided Buyer with written notice of Buyer's failure to perform any material covenant of Buyer contained in this Agreement and Buyer has failed within five (5) days after such notice to perform such covenant; <u>provided</u>, <u>however</u>, that Seller shall not have the right to terminate this Agreement under this <u>Section 9.1(c)</u> if Seller is then in material breach of this Agreement;

(d)    By Seller, by notice to Buyer, on or after the date that is 150 calendar days after the Petition Date (the "<u>Approval Termination Date</u>"), if any condition contained in <u>Section 8.1(c)</u> or <u>Section 8.1(d)</u> has not been satisfied or waived; <u>provided</u>, <u>however</u>, that Seller shall not have the right to terminate this Agreement under this <u>Section 9.1(d)</u> if Seller is then in material breach of this Agreement;

(e)    By Buyer, by notice to Seller, on or after the Warranty Termination Date, if the condition contained in <u>Section 8.2(a)</u> has not been satisfied or waived; <u>provided</u>, <u>however</u>, that Buyer shall not have the right to terminate this Agreement under this <u>Section 9.1(e)</u> if Buyer is then in material breach of this Agreement;

(f)    By Buyer, by notice to Seller, if (i) the condition contained in Section 8.2(e) has not been satisfied or waived, or (ii) Buyer has previously provided Seller with written notice of a failure to perform any material covenant of Seller contained in this Agreement and Seller has failed within five (5) days after such notice to perform such covenant; <u>provided</u>, <u>however</u>, that Buyer shall not have the right to terminate this Agreement under this <u>Section 9.1(f)</u> if Buyer is then in material breach of this Agreement;

(g)    By Buyer, by notice to Seller, after the Approval Termination Date, if any condition contained in <u>Section 8.2(c)</u> or <u>Section 8.2(d)</u> has not been satisfied or waived; <u>provided</u>, <u>however</u>, that Buyer shall not have the right to terminate this Agreement under this <u>Section 9.1(g)</u> if Buyer is then in material breach of this Agreement;

(h)    By Buyer, by notice to Seller, or by Seller, by notice to Buyer, if the Bankruptcy Court enters an Order dismissing or converting the Bankruptcy Case into a case under Chapter 7 of the Bankruptcy Code, appointing a trustee in the Bankruptcy Case, or appointing an examiner with enlarged power related to the operation of the Business (beyond those set forth in Section 1106(a)(3) or (4) of the Bankruptcy Code) under Section 1106(b) of the Bankruptcy Code, or the occurrence of any of the foregoing;

24

(i)     By Seller, five (5) Business Days after notice to Buyer, if the Bankruptcy Court has not entered the Sale Order by the date that is 60 calendar days after the Petition Date; and

(j)     Automatically, upon the earlier of (i) Seller consummating an Alternative Transaction, and (ii) sixty (60) days following the date upon which the Bankruptcy Court issues a Final Order approving an Alternative Transaction.

Section 9.2     Effect of Termination; Remedies.

(a)     In the event of termination pursuant to Section 9.1, this Agreement shall become null and void and have no effect (other than Article 9, ~~Article 10~~, and Article 11, which shall survive termination), with no liability on the part of Seller or Buyer, or their respective Affiliates or Related Persons, with respect to this Agreement, except for (i) the liability of a party for its own expenses pursuant to Section 10.4, (ii) the obligation of Buyer under Section 6.1(a), and (iii) any liability provided for in Section 9.2(b) through Section 9.2(d), inclusive;

(b)     If this Agreement is terminated pursuant to Section 9.1(a), Section 9.1(d), Section 9.1(e), Section 9.1(f), Section 9.1(g), Section 9.1(h), Section 9.1(i) or Section 9.1(j), then the Good Faith Deposit shall, within three (3) Business Days, be returned by Seller to Buyer.

(c)     If this Agreement is terminated pursuant to Section 9.1(b) or Section 9.1(c), then Seller may, at its sole election within three (3) Business Days, retain the Good Faith Deposit, as liquidated damages (the "Break Fee").

(d)     Notwithstanding anything to the contrary herein, but without limitation to the right to enforce covenants as set forth in Article 6 (if the Closing shall have occurred) (i) Seller's entitlement to the Liquidated Damages Fee (to the extent provided for in this Agreement) will constitute liquidated damages (and not a penalty) and, if Seller retains such amount, then notwithstanding anything to the contrary contained herein, such Liquidated Damages Fee shall be the sole and exclusive remedy available to Seller and any other Person against Buyer, its Subsidiaries, and any of their respective Affiliates in connection with this Agreement and the transactions contemplated hereby (including as a result of the failure to consummate the Closing or for a breach or failure to perform hereunder or otherwise) and none of Buyer, its Subsidiaries or any of their respective Affiliates shall have any further liability relating to or arising out of this Agreement or the transactions contemplated hereby, and (ii) Buyer's entitlement to the reimbursement of the Good Faith Deposit (to the extent provided for in this Agreement) shall be the sole and exclusive remedy (at law, in equity or otherwise) available to Buyer and any other Person against Seller, its Subsidiaries, and any of their respective Affiliates in connection with this Agreement and the transactions contemplated hereby (including as a result of the failure to consummate the Closing or for a breach or failure to perform hereunder or otherwise) and none of Seller, its Subsidiaries or any of their respective Affiliates shall have any further liability relating to or arising out of this Agreement or the transactions contemplated hereby. Each Party acknowledges that the agreements contained in this Section 9.2 are an integral part of the transactions contemplated by this Agreement, that without these agreements such Party would not have entered into this Agreement.

Case 20-81688-CRJ11    Doc 2906-5    Filed 09/30/22    Entered 09/30/22 13:40:54    Desc
Exhibit RJN 4: Order Approving Page 25 of 41    Page 233 of 249

Section 9.3    [Intentionally Omitted].

ARTICLE 10. <u>MISCELLANEOUS</u>.

Section 10.1 <u>Successors and Assigns</u>. Prior to the Closing, neither Buyer nor Seller shall assign this Agreement or any rights or obligations hereunder without the prior written consent of the other, and any such attempted assignment without such prior written consent shall be void and of no force and effect; <u>provided</u> that if Buyer wishes, upon prior written notice to Seller, to assign its rights, obligations and liabilities hereunder no later than ten (10) days prior to the Closing Date to a Buyer Acquisition Vehicle, such prior written consent of Seller shall not unreasonably be withheld. This Agreement shall inure to the benefit of and shall be binding upon the successors and permitted assigns of the parties to this Agreement.

Section 10.2 <u>Governing Law; Jurisdiction</u>. This Agreement shall be construed, performed and enforced in accordance with, and governed by, the Laws of the State of Delaware (without giving effect to the principles of conflicts of Laws thereof), except to the extent that the Laws of such State are superseded by the Bankruptcy Code. For so long as Seller is subject to the jurisdiction of the Bankruptcy Court, the parties to this Agreement irrevocably elect as the sole judicial forum for the adjudication of any matters arising under or in connection with the Agreement, and consent to the exclusive jurisdiction of, the Bankruptcy Court. After Seller is no longer subject to the jurisdiction of the Bankruptcy Court, the parties to this Agreement irrevocably elect as the sole judicial forum for the adjudication of any matters arising under or in connection with this Agreement, and consent to the jurisdiction of, any state or federal court having competent jurisdiction over the Northern District of Alabama.

Section 10.3 <u>WAIVER OF JURY TRIAL</u>. EACH PARTY TO THIS AGREEMENT IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT. EACH PARTY TO THIS AGREEMENT CERTIFIES AND ACKNOWLEDGES THAT (A) NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE SUCH WAIVER, (B) IT UNDERSTANDS AND HAS CONSIDERED THE IMPLICATIONS OF SUCH WAIVER, (C) IT MAKES SUCH WAIVER VOLUNTARILY, AND (D) IT HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS <u>SECTION 10.3</u>.

Section 10.4 <u>Expenses</u>.  Except as expressly otherwise provided herein, each of the parties to this Agreement shall pay its own expenses in connection with this Agreement and the transactions contemplated by this Agreement, including, without limitation, any legal and accounting fees, whether or not the transactions contemplated by this Agreement are consummated. Buyer shall pay the cost of any surveys (without limitation to the restriction in <u>Section 5.1(b)(i))</u>, title insurance policies and title reports ordered by Buyer.

Section 10.5 <u>Broker's and Finder's Fees</u>. Each of the parties to this Agreement

26

represents and warrants that it has dealt with no broker or finder in connection with any of the transactions contemplated by this Agreement, and, to such party's Knowledge, no broker or other Person is entitled to any commission or broker's or finder's fee in connection with any of the transactions contemplated by this Agreement or the Ancillary Agreements.

Section 10.6 <u>Severability</u>. In the event that any part of this Agreement is declared by any court or other judicial or administrative body to be null, void or unenforceable, said provision shall survive to the extent it is not so declared, and all of the other provisions of this Agreement shall remain in full force and effect only if, after excluding the portion deemed to be unenforceable, the remaining terms shall provide for the consummation of the transactions contemplated by this Agreement in substantially the same manner as originally set forth at the later of the date this Agreement was executed or last amended.

Section 10.7    <u>Notices</u>.

(a)    All notices, requests, demands and other communications under this Agreement shall be in writing and shall be deemed to have been duly given: (i) on the date of service, if served personally on the party to whom notice is to be given; (ii) when transmitted via electronic mail to the applicable electronic mail address set forth below if confirmation of receipt is obtained promptly after completion of transmission; (iii) on the day after delivery to Federal Express or similar overnight courier or the Express Mail service maintained by the United States Postal Service; or (iv) on the fifth (5th) day after mailing, if mailed to the party to whom notice is to be given, by first class mail, registered or certified, postage prepaid and properly addressed, to the party as follows:

If to Seller:

Remington Outdoor Company, Inc.
100 Electronics Blvd., SW
Huntsville, Alabama 35824
Attention: Ken D'Arcy
Email: ken.darcy@remington.com

With a copy in either case to (which copy alone shall not constitute notice):

O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, California 90071
Attention: John Paul Motley, Esq. and Stephen H. Warren, Esq.
Phone: (213) 430-6100 and (213) 430-7875, respectively
Email: jpmotley@omm.com and swarren@omm.com, respectively

If to Buyer:

Long Range Acquisition LLC
100 Springdale Road

Westfield, MA 01085
Attention: Michael Somma, Secretary

27

Email: msomma@jrivercapital.com

With a copy to (which copy alone shall not constitute notice):

Sterlington, PLLC
228 Park Avenue
New York, New York 10003
Attention: Christopher Harrison, Esq.
Email: ch@sterlington.net

(b)     Any party may change its address for the purpose of this <u>Section 10.7</u> by giving the other party written notice of its new address in the manner set forth above.

Section 10.8 <u>Amendments; Waivers</u>. This Agreement may be amended or modified, and any of the terms, covenants, representations, warranties or conditions hereof may be waived, only by a written instrument executed by the parties to this Agreement, or in the case of a waiver, by the party waiving compliance.  Any waiver by any party of any condition, or of the breach of any provision, term, covenant, representation or warranty contained in this Agreement, in any one or more instances, shall not be deemed to be or construed as a furthering or continuing waiver of any such condition, or of the breach of any other provision, term, covenant, representation or warranty of this Agreement.

Section 10.9 <u>Time of Essence</u>. Time is of the essence in the performance of each and every term of this Agreement.

Section 10.10 <u>Public Announcements</u>. Promptly after the execution and delivery of this Agreement, the parties shall make a joint press release in form and substance reasonably satisfactory to both of them regarding the transactions contemplated herein. Thereafter, no party shall make any press release or public announcement concerning the transactions contemplated by this Agreement without the prior written consent of the other party (such consent not to be unreasonably withheld, conditioned or delayed) unless a press release or public announcement is required by Law or Order of the Bankruptcy Court. If any such announcement or other disclosure is required by Law or Order of the Bankruptcy Court, the disclosing party agrees to give the nondisclosing party prior notice of, and an opportunity to comment on, the proposed disclosure. Notwithstanding anything to the contrary in this <u>Section 10.10</u>, Seller (a) shall file this Agreement with the Bankruptcy Court in connection with obtaining the Sale Order and (b) may disclose this Agreement to its equityholders and lenders to the extent required by the provisions of any of Seller's bylaws, credit agreements and other pre-existing contractual obligations.

Section 10.11 <u>Entire Agreement</u>. This Agreement (including the Ancillary Agreements referenced herein), the Sale Order and the Confidentiality Agreement contain the entire understanding between the parties to this Agreement with respect to the transactions contemplated by this Agreement and supersede and replace all prior and contemporaneous agreements and understandings, oral or written, with regard to such transactions. All schedules to this Agreement and any documents and instruments delivered pursuant to any provision of this Agreement are expressly made a part of this Agreement as fully as though completely set forth in this Agreement.

28

Section 10.12 <u>Parties in Interest</u>. Nothing in this Agreement is intended to or shall confer any rights or remedies under or by reason of this Agreement on any Persons other than Seller and Buyer and their respective successors and permitted assigns; provided that, an Other Buyer shall have the right to access certain records in accordance with <u>Section 1.1(f)</u>. Nothing in this Agreement is intended to or shall relieve or discharge the obligations or liability of any third Persons to Seller or Buyer. This Agreement is not intended to nor shall give any third Persons any right of subrogation or action over or against Seller or Buyer.

Section 10.13 <u>Bulk Sales Laws</u>. Buyer waives compliance by Seller and Seller waives compliance by Buyer, with the provisions of the "bulk sales", "bulk transfer" or similar laws of any state other than any Laws which would exempt any of the transactions contemplated by this Agreement from any Tax liability which would be imposed but for such compliance.

Section 10.14 <u>Construction</u>. The article and section headings in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement. The parties to this Agreement have jointly participated in the negotiation and drafting of this Agreement. In the event of an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties hereto and no presumptions or burdens of proof shall arise favoring any party by virtue of the authorship of any of the provisions of this Agreement. Each defined term used in this Agreement has a comparable meaning when used in its plural or singular form. As used in this Agreement, the word "including" and its derivatives means "without limitation" and its derivatives, the word "or" is not exclusive and the words "herein," "hereof," "hereby," "hereto" and "hereunder" refer to this Agreement as a whole.

Section 10.15 <u>Counterparts and Facsimiles</u>. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute the same instrument. Executed signature pages to this Agreement may be delivered by electronic mail and such electronic copies will be deemed as sufficient as if actual signature pages had been delivered.

## ARTICLE 11. <u>DEFINITIONS</u>.

Section 11.1 <u>Certain Terms Defined</u>. As used in this Agreement, the following terms have the following meanings:

"<u>Affiliate</u>" means, with respect to any Person, any Person directly or indirectly controlling, controlled by or under direct or indirect common control with such other Person.

"<u>Alternative Transaction</u>" means Seller consummating one or more transaction or series of transactions, whether a going concern sale, liquidation or otherwise, that involves a sale of all or substantially all of the Business or the Acquired Assets by Seller to a purchaser or purchasers other than Buyer.

"<u>Ancillary Agreements</u>" means, collectively, the Assignment and Assumption Agreements (if any), Assignment and Assumption of Leases (if any), Acquired Intellectual Property Assignments, quitclaim deeds, and other certificates, affidavits and releases delivered pursuant to Article 3.

"<u>Antitrust Law</u>" means the Sherman Act, as amended, the Clayton Act, as amended, the HSR Act, the Federal Trade Commission Act, as amended, and all other Laws and Orders, that are

Case 20-81688-CR-11   Doc 2908-26   Filed 09/30/22   Entered 09/30/22 12:40:54   Desc
Exhibit RJN 4: Order Approving Page 29 of 41   Page 237 of 249

designed or intended to prohibit, restrict or regulate actions having the purpose or effect of monopolization or restraint of trade or lessening of competition through merger or acquisition.

"ATF" means the United States Bureau of Alcohol, Tobacco, Firearms and Explosives.

"ATF Licenses" means all of those licenses issued by ATF as provided by the GCA and the GCA's implementing regulations that are necessary for Buyer to conduct the Business as currently conducted.

"Avoidance Actions" means any and all causes of action, claims and remedies of Seller under Sections 510 and 542 through 553 of the Bankruptcy Code, or under similar state laws including, without limitation, fraudulent conveyance claims, and all other causes of action of a trustee and debtor-in-possession under the Bankruptcy Code.

"Business Day" means any day other than Saturday, Sunday and any day that is a legal holiday or a day on which banking institutions in New York, New York are authorized by Law or other governmental action to close.

"Business Name" means "Marlin Firearms," either alone or in combination with other words, graphics or designs, including all rights in said term as a trade name, trade mark, corporate name, service mark and domain name, including without limitation those set forth on Schedule 11.1(a), and any confusingly similar variation, derivative or transaction thereof.

"Buyer Acquisition Vehicle" means a Creditworthy entity that is wholly-owned and controlled by Savage Arms, Inc.

"Cash" means all cash and cash equivalents held by Seller, including all petty cash, register cash, undeposited checks, cash in transit and marketable securities, in each case as of immediately prior to the Closing (and including without limitation (i) the Good Faith Deposit, (ii) the Net Closing Cash Payment, (iii) any fee reserves or escrows established by Seller, and (iv) any cash in the Dominion Account (as defined in the Priority Term Loan)).

"Claims" encompasses the definition in Bankruptcy Code §101(5) and under this Agreement also includes any and all liabilities, rights, credits, defenses, allowances, rebates, choses in action, rights of recovery, set-off, causes of action, civil or criminal, any contributions received from or owed to charitable or other organizations, assertions of legal or moral responsibility, in each case known or unknown, pending or threatened, at law or in equity, direct or derivative, liquidated or unliquidated, matured or unmatured, disputed or undisputed, choate or inchoate, judgments, demands, rights of first refusal or offer, recoupment, rights of recovery, reimbursement, contribution, indemnity, exoneration, rights under products liability, alter ego, environmental, intellectual property (including any infringement thereof), tort, contract and any other legal or equitable basis of liability, charges of any kind or nature, debts arising in any way in connection with any agreements, acts or failures to act, and all pending, threatened, asserted or unasserted actions against Seller or any of its Affiliates, or any of their respective current or former officers, employees, agents or independent contractors, any of their assets or properties, the Business, or any of their operations or activities arising out of or relating to any matter, occurrence, action, omission or circumstance, and includes any Claims against Buyer under doctrines of successor liability or any other ground or theory (which Claim may also be an Interest or Lien).

30

"Code" means the Internal Revenue Code of 1986, as amended.

"Contract" means any contract, indenture, note, bond, lease, license, premium finance arrangement, purchase order, sales order or other agreement to which Seller is a party; provided that Contracts do not include any Lease or any employment or similar Contracts.

"COVID Restrictions" means quarantine, "shelter in place", "stay at home", workforce reduction, social distancing, shut down, closure, sequester or any other applicable Law, order, directive, guideline or recommendation by any Government of competent jurisdiction.

"Creditworthy" means sufficiently capitalized, to the reasonable satisfaction of Seller upon provision to Seller of substantiating documentary evidence, to be able to pay the Gross Closing Cash Payment.

"D&O Insurance" means the policies in effect as of the Effective Date that provides for insurance from liability for current and former directors and officers of Seller, including insurance from liabilities with respect to all claims (including, under "tail" insurance coverage, those claims brought within six (6) years from the Closing Date) arising out of or relating to events which occurred on or prior to the Closing Date (including in connection with the transactions contemplated by this Agreement).

"DIP Facility" means any debtor-in-possession financing advanced to Seller in the Bankruptcy Case.

"Documents" means all files, documents, instruments, papers, books, reports, records, tapes, microfilms, photographs, letters, budgets, forecasts, ledgers, journals, title policies, surveys, customer lists, regulatory filings, operating data and plans, technical documentation (design specifications, functional requirements, operating instructions, logic manuals, flow charts, etc.), user documentation (installation guides, user manuals, training materials, release notes, working papers, etc.), marketing documentation (sales brochures, flyers, pamphlets, web pages, etc.), and other similar materials, in each case whether or not in electronic form.

"Employee Benefit Plans" means (a) all "employee benefit plans," as defined in Section 3(3) of ERISA, (b) all employment, consulting or other individual compensation agreements, and (c) all bonus or other incentive, equity or equity-based compensation, deferred compensation, severance pay, sick leave, vacation pay, salary continuation, disability, hospitalization, medical, life insurance, scholarship programs or other plans, contracts, policies or arrangements that provide for compensation for employee benefits as to which Seller has any obligation or liability, contingent or otherwise.

"Employee Liabilities" means all liabilities of Seller to or with respect to all Employees whenever arising and liabilities of the type specified in Section 1114 of the Bankruptcy Code owing to retired employees of Seller

"Employees" means all individuals, as of the date of this Agreement, who are employed by Seller (including Employees who are absent due to then-applicable COVID Restrictions or vacation, family leave, short-term disability, COVID 19-related furloughs or absences or other approved leave of absence) in connection with the ownership, operation and management of the Business.

31

"Environmental Laws" means all applicable federal, state and local statutes, ordinances, rules, Orders, regulations and other provisions having the force of law, all judicial and administrative Orders and determinations, and all common law concerning pollution or protection of human health (as pertains to exposure to hazardous substances) and the environment, including, without limitation, all those relating to the presence, use, production, generation, handling, transportation, treatment, storage, disposal, distribution, labeling, testing, processing, discharge, release, threatened release, control or cleanup of any hazardous materials.

"ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

"Exit Term Loan" means that certain Term Loan Agreement, dated as of May 15, 2018 (as amended by that certain Amendment No. 1, dated as of April 18, 2019, that certain Amendment No. 2, dated as of May 1, 2019, that certain Amendment No. 3, dated as of August 15, 2019, that certain Amendment No. 4, dated as of February 21, 2020, and that certain Amendment No. 5, dated as of March 27, 2020, and as it may be further amended, supplemented or otherwise modified from time to time), by and among FGI Operating Company, LLC, the guarantors party thereto from time to time, Ankura Trust Company, LLC, as administrative agent and collateral agent and the lenders party thereto.

"FILO Facility" means that certain First Lien Last-Out Term Loan Agreement, dated as of May 15, 2018 (as amended by that certain Amendment No. 1, dated as of April 18, 2019, that certain Amendment No. 2, dated as of May 1, 2019, that certain Amendment No. 3, dated as of August 15, 2019, that certain Amendment No. 4, dated as of October 11, 2019, that certain Amendment No. 5 dated as of February 21, 2020, and that certain Amendment No. 6, dated as of March 27, 2020, and as it may be further amended, supplemented or otherwise modified from time to time), by and among FGI Operating Company, LLC, the guarantors party thereto from time to time, Ankura Trust Company, LLC, as administrative agent and collateral agent and the lenders party thereto.

"Final Order" means an Order, ruling or judgment of any court of competent jurisdiction that has not been reversed, stayed, modified or amended, and as to which no appeal, petition for certiorari, motion or petition for rehearing or reargument is pending, and the deadline for any such filing has expired.

"GCA" means Gun Control Act of 1968 (Chapter 44 of Title 18, United States Code § 921 et seq).

"Government" means any agency, division, subdivision, audit group, procuring office or governmental or regulatory authority in any event or any adjudicatory body thereof, of the United States, or any state, county or municipality thereof, including the employees or agents thereof.

"Historic Firearms Books and Records" means all historic books and records relating to the sale of firearms included in the Acquired Assets, including all records required to be kept pursuant to parts 447, 478, and, 479 of title 27, Code of Federal Regulations.

"HSR Act" means the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended.

"Income Tax" means any Tax based on, imposed on or measured by income, gross receipts or profits, including any interest, penalty or other addition with respect thereto.

"Income Tax Return" means any Tax Return with respect to Income Taxes.

"Insurance Claim" means any and all of Seller's Claims under Assumed Policies effective at any times prior to the Closing Date (except to the extent that such Claim arises from an Excluded Asset or Excluded Liability).

"Intellectual Property" means throughout the world (1) all intellectual property arising from or in respect of the following: (a) all patents and applications therefore, including continuations, divisionals, continuations-in-part, or reissues of patent applications and patents issuing thereon, (b) all trademarks, service marks, trade names, service names, brand names, all trade dress rights, logos, Internet domain names, websites, social media accounts, handles, and corporate names and general intangibles of a like nature, including the Business Name, together with the goodwill associated with any of the foregoing, and all applications, registrations and renewals thereof, (c) copyrights and registrations and applications therefore and works of authorship, and mask work rights, (d) all Software of Seller, (e) confidential information, know-how, research and development work product, trade secrets and inventions, and (f) all other intellectual property, (2) Seller's rights pursuant to any Contract with Remington Licensing Corporation and (3) all claims or causes of action arising out of or related to past, present or future infringement or misappropriation of Seller's rights or interests in intellectual property that is not an Excluded Asset and any related remedies, including, without limitation, the right to sue for past, present or future infringement, misappropriation, or violation of rights related to the Intellectual Property and collect damages therefor.

"Intercompany Note" means that certain Amended and Restated Promissory Note issued on April 18, 2019, for the principal amount of $100,000,000, by Remington Arms Company, LLC in favor of FGI Holding Company, LLC.

"Interests" means all rights and entitlements of any nature including, without limitation, security interests, assignments of Liens or Claims, licenses, leases, contract rights, indentures, instruments, licenses, options, escheatment, abandoned property, unclaimed property, covenants, conditions, zoning, planning and any other restrictions, easements, encroachments, Permits or other interests in property or limitations on the use of real property or irregularities in title, rights of first refusal, rights to injunctive or other legal relief, any attributes of ownership, rights or restrictions of any kind and nature, whenever incurred, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, matured or unmatured, legal or equitable (which Interests may also be Liens or Claims).

"Knowledge" or any other similar term or knowledge qualification means, with respect to (i) Seller, the actual conscious knowledge of any of Ken D'Arcy (President and Chief Executive Officer of ROC), Mark Little (Vice President and Chief Financial Officer of ROC), as of the date the applicable representation or warranty is made or deemed made under this Agreement and (ii) Buyer, the actual conscious knowledge of Albert Kasper (Chief Executive Officer of Savage Arms, Inc.) and David Piacentini (Chief Financial Officer of Savage Arms, Inc.), as of the date the applicable representation or warranty is made or deemed made under this Agreement.

33

"Leased Real Property" means all leasehold or subleasehold estates and other rights of Seller to possess, use or occupy (or to grant others the right to possess, use or occupy) any land, buildings, structures, improvements, fixtures or other interest in real property, in each of the foregoing cases, to the extent possessed, used or occupied in connection with the Business.

"Leasehold Improvements" means all buildings, structures, improvements and fixtures that are owned by Seller and located on any Leased Real Property, regardless of whether title to such buildings, structures, improvements or fixtures are subject to reversion to the landlord or other third party upon the expiration or termination of the Lease for such Leased Real Property.

"Leases" means all leases, ground leases, subleases, licenses and other agreements, including all amendments, extensions, renewals, and other agreements with respect thereto, pursuant to which Seller has the right to possess, use, lease or occupy (or to grant others the right to possess, use or occupy) any Leased Real Property.

"Lien" means any mortgage, pledge, security interest, encumbrance, lien (statutory or other) or conditional sale agreement, other than a lessor's interest in, and any mortgage, pledge, security interest, encumbrance, lien (statutory or other) or conditional sale agreement on or affecting a lessor's interest in, property underlying any leases.

"Material Adverse Effect" means a state of facts, event, change or effect on the value of the Acquired Assets that results in a material and adverse effect on the value of the Acquired Assets taken as a whole, but excludes any state of facts, event, change or effect caused by events, changes or developments relating to (A) changes resulting from, or from any motion, application, pleading or Order filed relating to, the Bankruptcy Case; (B) any action of Seller taken pursuant to, or any failure of Seller to take any action prohibited by, any Order of the Bankruptcy Court, this Agreement or any of the Ancillary Agreements to which Seller is a party; (C) the public disclosure of this Agreement or any of the Ancillary Agreements or any of the transactions contemplated hereby or thereby, (D) changes, after the Effective Date, in United States generally accepted accounting principles, (E) changes in general United States economic, monetary or financial conditions, including changes in prevailing interest rates, credit availability, and the credit markets generally, as well as changes in the commercial real estate markets in the geographic regions in which Seller operates the Business, (F) changes in the firearms, ammunition or sporting goods industries in general, (G) any acts of God, natural disasters, terrorism, armed hostilities, war (whether or not declared) or (H) any occurrence, outbreak, escalation or worsening of, or furloughs or Government actions (including any then-applicable COVID Restrictions) instituted in response to, any epidemic, pandemic or other disease (including without limitation the COVID-19 pandemic).

"Owned Real Property" means all land and all buildings, structures, fixtures and other improvements located thereon, and all easements, rights of way, servitudes, tenements, hereditaments, appurtenances, privileges and other rights thereto, owned by Seller and used in the ownership, operation or management of the Business.

"Pension Plan" means Remington Arms Company, LLC Pension and Retirement Plan, (f/k/a Remington Arms Company, Inc. Pension and Retirement Plan), as amended from time to time, whereby the Marlin Firearms Co. Employees' Pension Plan (a/k/a Marlin Firearms Company Employees Pension Plan), as amended from time to time, was merged into the Remington Arms

34

Company, LLC Pension and Retirement Plan.

"Permit" means any permit, license, authorization, registration or certificate obtained from any Government.

"Permitted Liens" mean: (a) Liens and Interests consisting of (X) Taxes not yet due, Liens and assessments for Taxes that are not yet delinquent, reservations in patents, and all easements, rights-of-way, encumbrances, Liens, covenants, conditions, restrictions, obligations, liabilities and other matters as may appear on record, and (Y) the applicable zoning and use regulations or other Laws of any Government; (b) purchase money Liens securing payments under capital lease arrangements; (c) all terms, conditions and restrictions under any Permit; (d) Liens that will attach to the proceeds of the sale under this Agreement pursuant to Section 363 of the Bankruptcy Code or that will not survive the Closing and (e) Liens that Buyer agrees in writing to accept.

"Person" means any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or Government.

"Plan" means a Joint Chapter 11 Plan filed by Seller with the Bankruptcy Court.

"Post-Closing Taxes" means any (i) Taxes, other than Transaction Taxes, imposed on the Acquired Assets in respect of a taxable period (or portion thereof) beginning after the close of business on the Closing Date and (ii) excise taxes of Seller attributable to the Business that relate to periods after Closing.

"Pre-Closing Taxes" means any Income Taxes and other Taxes paid, payable, or that become payable, in connection with Seller or any of its Affiliates or relating to the Business (whether or not deferred), in respect of a taxable period (or portion thereof) prior to or as of the close of business on the Closing Date.

"Priority Term Loan" means that certain Loan and Security Agreement, dated as of April 18, 2019 (as amended by that certain Amendment No. 1, dated May 1, 2019, that certain Amendment No. 2, dated June 24, 2019, that certain Amendment No. 3, dated August 15, 2019, that certain Amendment No. 4, dated October 11, 2019, that certain Amendment No. 5, dated February 21, 2020, and that certain Amendment No. 6, dated March 27, 2020, and as it may be further amended, supplemented or otherwise modified from time to time), by and among FGI Operating Company, LLC, the guarantors party thereto, Cantor Fitzgerald Securities, as administrative agent and initial collateral agent, and the lenders party thereto.

"Related Person" means, with respect to any Person, all past, present and future directors, officers, members, managers, stockholders, employees, controlling persons, agents, professionals, attorneys, accountants, investment bankers or representatives of any such Person.

"Retained Litigation" means all litigation and Claims arising or related to events on or prior to the Closing.

"Software" means any and all (a) computer programs, including any and all software implementations of algorithms, models and methodologies, whether in source code or object code, (b) databases and compilations, including any and all data and collections of data, whether machine readable or otherwise, (c) descriptions, flow-charts and other work product used to design, plan,

35

organize and develop any of the foregoing, (d) screens, user interfaces, report formats, firmware, development tools, templates, menus, buttons and icons, and (e) all Documents related to any of the foregoing.

"State of Alabama Project Development Liabilities" means all liabilities under that certain Project Agreement dated as of February 17, 2014, by and between the State of Alabama and ROC, as amended or otherwise modified from time to time.

"Straddle Period" means any taxable period beginning on or prior to, and ending after, the Closing Date.

"Subsidiary(ies)" means, when used with respect to any specified Person, any other Person (a) of which the specified Person or any Subsidiary thereof is a general partner, (b) of which the specified Person or a Subsidiary thereof own at least a majority of the securities or other interests having by their terms ordinary voting power to elect a majority of the board of directors or others performing similar functions for such other Person of which owns the specified person or a Subsidiary thereof, or (c) that is directly or indirectly controlled by the specified Person or any Subsidiary thereof.

"Tax Return" means any report, return, information return, filing or other information, including any schedules, exhibits or attachments thereto, and any amendments to any of the foregoing required to be filed or maintained in connection with the calculation, determination, assessment or collection of any Taxes (including estimated Taxes).

"Taxes" means all taxes, however denominated, including any interest, penalties or additions to tax that may become payable in respect thereof, imposed by any Government, which taxes shall include all income taxes, payroll and employee withholding, unemployment insurance, social security (or similar), sales and use, excise (whether or not deferred), franchise, gross receipts, occupation, real and personal property, stamp, transfer, worker's compensation, customs duties, registration, documentary, value added, alternative or add-on minimum, estimated, environmental (including taxes under section 59A of the Code) and other obligations of the same or a similar nature, whether arising before, on or after the Closing Date; and "Tax" shall mean any one of them.

Section 11.2    All Terms Cross-Referenced.  Each of the following terms is defined in the Section set forth opposite such term:

**Term:**

| | **Section** |
| --- | --- |
| Access to Records | Section 1.1(f) |
| Acquired Assets | Section 1.1 |
| Acquired Intellectual Property | Section 1.1(d) |
| Acquired Intellectual Property Assignment | Section 3.2(b) |
| Affiliate | Section 11.1 |
| Agreement | *Preamble* |
| Allocation | Section 7.3 |

36

Alternative Transaction.................................................................Section 11.1
Antitrust Law .............................................................................Section 11.1
Approval Termination Date ...........................................................Section 9.1(d)
Assignment and Assumption Agreement..........................................Section 11.1
Assignment and Assumption of Lease.............................................Section 11.1
Assumed FF&E Leases..................................................................Section 1.1(b)
Assumed Liabilities ......................................................................Section 1.3
Assumed Policy Rights ................................................................. Section 1.1(c)
Avoidance Actions........................................................................Section 11.1
Bankruptcy Case ........................................................................*Recitals*
Bankruptcy Code ........................................................................*Recitals*
Bankruptcy Court.........................................................................*Recitals*
Bidding Procedures Motion ..........................................................*Recitals*
Bidding Procedures Order .............................................................*Recitals*
Liquidated Damages Fee...............................................................Section 9.2(c)
Business .....................................................................................*Recitals*
Break Fee ...................................................................................Section 9.2(c)
Business Day................................................................................Section 11.1
Business Name .............................................................................Section 11.1
Buyer...........................................................................................Preamble
Buyer Acquisition Vehicle .............................................................Section 11.1
Cash.............................................................................................Section 11.1
Claims .........................................................................................Section 11.1
Closing ........................................................................................Section 3.1
Closing Date.................................................................................Section 3.1
Code ............................................................................................Section 11.1
Confidentiality Agreement.............................................................Section 5.1(b)
Contract.......................................................................................Section 11.1
COVID Restrictions.......................................................................Section 11.1
Creditworthy ...............................................................................Section 11.1
Documents ...................................................................................Section 11.1
Effective Date ..............................................................................*Preamble*
Employee Benefit Plans.................................................................Section 11.1
Employee Liabilities .....................................................................Section 11.1
Environmental Laws .....................................................................Section 11.1
ERISA ..........................................................................................Section 11.1
Excluded Assets ...........................................................................Section 1.2
Excluded Liabilities ......................................................................Section 1.4
Final Order ..................................................................................Section 11.1
Good Faith Deposit.......................................................................Section 2.2(a)
Government..................................................................................Section 11.1
Gross Closing Cash Payment.........................................................Section 2.1(a)
Intellectual Property .....................................................................Section 11.1
Intercompany Note.......................................................................Section 11.1
Insurance Policies ........................................................................Section 1.2(a)
Interests .......................................................................................Section 11.1

37

Law ..................................................................................................................... Section 4.1(c)
Leased FF&E ........................................................................................................ Section 1.1(b)
Leased Real Property ........................................................................................... Section 11.1
Leasehold Improvements ..................................................................................... Section 11.1
Leases .................................................................................................................. Section 11.1
Lien ...................................................................................................................... Section 11.1
Material Adverse Effect ....................................................................................... Section 11.1
Necessary Consent ............................................................................................... Section 1.6
Net Closing Cash Payment .................................................................................. Section 2.2(b)
Other Agreements ................................................................................................ Section 1.7
Other Buyer .......................................................................................................... Section 1.1(t)
Order .................................................................................................................... Section 4.1(c)
Owned FF&E ....................................................................................................... Section 1.1(a)
Owned Real Property ........................................................................................... Section 11.1
Pension Plan ......................................................................................................... Section 11.1
Permitted Liens .................................................................................................... Section 11.1
Person ................................................................................................................... Section 11.1
Petition Date ........................................................................................................ *Recitals*
Plan ...................................................................................................................... Section 11.1
Pre-Closing Taxes ............................................................................................... Section 11.1
Priority Term Loan .............................................................................................. Section 11.1
Purchase Orders ................................................................................................... Section 1.1(l)
Purchase Price ..................................................................................................... Section 2.1
Related Person ..................................................................................................... Section 11.1
Retained Litigation .............................................................................................. Section 11.1
ROC ..................................................................................................................... Preamble
Sale Hearing ........................................................................................................ Section 1.5(a)
Sale Order ............................................................................................................ *Recitals*
Seller .................................................................................................................... Preamble
Seller's Knowledge .............................................................................................. Section 11.1
Software ............................................................................................................... Section 11.1
State of Alabama Project Development Liabilities ............................................... Section 11.1
Subsidiary(ies) ..................................................................................................... Section 11.1
Tax Return ........................................................................................................... Section 11.1
Taxes .................................................................................................................... Section 11.1
Transaction Taxes ................................................................................................ Section 7.1
Warranty Termination Date ................................................................................. Section 9.1(b)

*[Signatures are on the following pages.]*

38

Case 20-81688-CRJ11   Doc 2406-5   Filed 09/30/22   Entered 09/30/22 13:49:54   Desc
Exhibit RJN 4: Order Approving Sale AP1   Page 246 of 249

IN WITNESS WHEREOF, the parties to this Agreement have caused this Agreement to be executed by their respective officers thereunto duly authorized as of the date first above written.

**BUYER**

LONG RANGE ACQUISITION LLC

By: _____
     Name:
     Title:

S-1

Case 20-81688-CRJ11 Doc 2406-5 Filed 09/30/22 Entered 09/30/22 13:49:54 Desc
Exhibit RJN 4: Order Approving Sale of AP41 Page 247 of 249

**ROC**

REMINGTON OUTDOOR COMPANY, INC.

By: _____
    Name:
    Title:

## SUBSIDIARIES OF ROC

FGI OPERATING COMPANY, LLC

By: _____
    Name:
    Title:

FGI HOLDING COMPANY, LLC

By: _____
    Name:
    Title:

BARNES BULLETS, LLC

By: _____
    Name:
    Title:

REMINGTON ARMS COMPANY, LLC

By: _____
    Name:
    Title:

RA BRANDS, L.L.C.

By: _____
    Name:
    Title:

OUTDOOR SERVICES, LLC

By: _____
    Name:
    Title:

FGI FINANCE INC.

By: _____
    Name:
    Title:

S-2

Case 20-81688-CRJ11 Doc 2406-5 Filed 09/30/22 Entered 09/30/22 13:49:54 Desc
Exhibit RJN 4: Order Approving Sale of AP Page 248 of 249

HUNTSVILLE HOLDINGS LLC

By: _____
    Name:
    Title:


TMRI, INC.

By: _____
    Name:
    Title:


REMINGTON ARMS DISTRIBUTION
COMPANY, LLC

By: _____
    Name:
    Title:


32E PRODUCTIONS, LLC

By: _____
    Name:
    Title:


GREAT OUTDOORS HOLDCO, LLC

By: _____
    Name:
    Title:

S-3

Case 20-81688-CR1 11   Doc 2406-5   Filed 09/30/22   Entered 09/30/22 13:49:54   Desc
Exhibit RJN 4: Order Approving Sale et al   Page 249 of 249